## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES SMALL BUSINESS ADMINISTRATION AS RECEIVER FOR ELK ASSOCIATES FUNDING CORP., <br><br> Plaintiff, <br><br> v. <br><br> MICHAEL FEINSOD, SILVIA MULLENS, RICHARD FEINSTEIN, GARY GRANOFF, STEVEN ETRA, JOHN LAIRD, IVAN J. WOLPERT, HOWARD SOMMER, MURRAY INDICK, ELLIOTT SINGER, AND PETER BOOCKVAR, <br><br> Defendants. | No. 17-CV-3586-SJF-AYS |

### DECLARATION OF JUSTIN V. SHUR

I, Justin V. Shur declare, pursuant to 28 U.S.C. § 1746:

1.      I am a partner at MoloLamken LLP and counsel for Michael Feinsod and Richard Feinstein in the above-captioned matter.

2.      Attached as Exhibit A is a true and correct copy of the October 20, 1999 N-14 Statement filed by Ameritrans Capital Corp. with the SEC.

3.      Attached as Exhibit B is a true and correct copy of the November 25, 1998 Application Under the Investment Company Act of 1940 (the "Act") for an Order Pursuant to Sections 6(c), 17(b) and 57(c) of the Act for an Order Granting Exemptions from Sections 12(d), 17(a), 17(d), 18(a), 18(c), 57(a), 60(a), and 61(a) and Permitting Under Sections 17(d) and 57(a)(4) of the Act and Rule 17d-1 Thereunder Certain Transactions (SEC File No. 811-3394).

4.      Attached as Exhibit C is a true and correct copy of the November 29, 1999 Amendment No. 1 to Application Under the Investment Company Act of 1940 (the "Act") for an Order Pursuant to Sections 6(c), 17(b) and 57(c) of the Act for an Order Granting Exemptions from Sections 12(d), 17(a), 17(d), 18(a), 18(c), 57(a), 60(a), and 61(a) and Permitting Under Sections 17(d) and 57(a)(4) of the Act and Rule 17d-1 Thereunder Certain Transactions (Application No. 812-11420).

5.      Attached as Exhibit D is a true and correct copy of the December 7, 1999 Order Under Sections 6(c), 12(d)(1)(J), and 57(c) of the Investment Company Act of 1940 Granting Exemptions from Sections 12(d)(1)(A) and (C), 18(a), 21(b), 57(a)(1) Through (a)(3), and 61(a) of the Act; Under Section 57(i) of the Act and Rule 17d-1 Under the Act To Permit Certain Joint Transactions Otherwise Prohibited by Section 57(a)(4) of the Act; and Under Section 12(h) of the Securities Exchange Act of 1934 Granting an Exemption from Section 13(a) of the Exchange Act (SEC Release No. 24185).

6.      Attached as Exhibit E is a true and correct copy of Ameritrans Capital Corp.'s SEC Form 10-Q filed February 16, 2010.

7.      Attached as Exhibit F is a true and correct copy of Ameritrans Capital Corp.'s SEC Form 10-K filed September 28, 2011.

8.      Attached as Exhibit G is a true and correct copy of Ameritrans Capital Corp.'s SEC Form 10-K filed September 28, 2012.

9.      Attached as Exhibit H is a true and correct copy of Ameritrans Capital Corp.'s SEC Form 8-K filed October 10, 2008.

10.      Attached as Exhibit I is a true and correct copy of Ameritrans Capital Corp.'s SEC Form 8-K filed July 7, 2010.

11.     Attached as Exhibit J is a true and correct copy of the Minutes of the Meeting of the Board of Directors of Ameritrans Capital Corp. and Elk Funding Corp. on February 22, 2012.

12.     Attached as Exhibit K is a true and correct copy of the Minutes of the Meeting of the Board of Directors of Ameritrans Capital Corp. and Elk Funding Corp. on February 24, 2012.

13.     Attached as Exhibit L is a true and correct copy of the Fair Value Analysis Attached to the Minutes of the Meeting of the Board of Directors of Ameritrans Capital Corp. and Elk Funding Corp. on February 24, 2012.

14.     Attached as Exhibit M is a true and correct copy of the Senior Secured Note Executed by Ameritrans Capital Corp. on March 7, 2012.

15.     Attached as Exhibit N is a true and correct copy of the Settlement Agreement and Mutual Release between the United States Small Business Administration and ELK Associates Funding Corp. executed on October 31, 2012.

16.     Attached as Exhibit O is a true and correct copy of the Amendment to the Settlement Agreement and Mutual Release between the United States Small Business Administration and ELK Associates Funding Corp. executed on October 31, 2012.

17.     Attached as Exhibit P is a true and correct copy of Elk Associates Funding Corp.'s SBA Form 468 for the period ending June 30, 2011.

18.     Attached as Exhibit Q is a true and correct copy of Elk Associates Funding Corp.'s Certificate of Incorporation provided under the seal of the Department of the State of New York on September 23, 2016.

19.     Attached as Exhibit R is a true and correct copy of the Amendments to the Certificate of Incorporation and Bylaws of Elk Associates Funding Corp.

20.     Attached as Exhibit S is a true and correct copy of Elk Associates Funding Corp.'s General Ledger for the Period from July 1, 2009 to June 30, 2010.

21.     Attached as Exhibit T is a true and correct copy of Elk Associates Funding Corp.'s SBA Form 468 for the period ending December 31, 2011.

I declare under penalty of perjury that the foregoing is true and correct.


Dated: August 14, 2017                         /s/ Justin V. Shur
                                               Justin V. Shur

4

# Exhibit A

# *AMERITRANS CAPITAL CORP; N-14/A*

October 20, 1999

## Company Information

**Address:** NEW YORK, New York, 10117

**CIK:** 0001064015

**Ticker:** AMTC

**Exchange:** Nasdaq Smallcap Mkt

**Industry Type:** Business Services

**Sector ID:** Services

## Filing Data

**SEC File Number:** *333-63951*

**Accession Number:** 0000950116-99-001904

## Contents

*EXHIBIT 5 - Opinion re Legality*

*EXHIBIT 8 - Opinion re Tax Matters*

*EXHIBIT 8 2*

*EXHIBIT 11 - Statement re Computation of per Share Earnings*

*EXHIBIT 14 - Code of Ethics*

## Text

As filed with the Securities and Exchange Commission on October 20, 1999

Registration No. *333-63951*

Investment Company

Act File No. 811-8847

AMERITRANS CAPITAL CORP; N-14/A

SECURITIES AND EXCHANGE COMMISSION

Washington, D.C. 20549

FORM *N-14/A*

REGISTRATION STATEMENT

UNDER

THE SECURITIES ACT OF 1933

[X] Pre-Effective Amendment No. 1 [ ] Post-Effective Amendment No.____

Ameritrans Capital Corporation

(Exact Name of Registrant as Specified in Charter)

(800) 214-1047

(Area Code and Telephone Number)

747 Third Avenue, 4th Floor, New York, New York 10017

(Address of Principal Executive Offices:

Number, Street, City, State, Zip Code)

Gary C. Granoff, Ameritrans Capital Corporation

747 Third Avenue, 4th Floor, New York, New York 10017

with a copy to:

Walter Stursberg, Esq., Stursberg & Veith

405 Lexington Avenue, Suite 4949, New York, New York 10174-4902

(Name and Address of Agent for Service)

Approximate Date of Proposed Public Offering: As soon as practicable after theeffectiveness of this Registration Statement and after the satisfaction orwaiver of all other conditions to the share exchange between the Registrant andElk Associates Funding Corporation pursuant to the Agreement and Plan of ShareExchange described in the Proxy Statement/Prospectus included as part of thisRegistration Statement.

The Registrant hereby amends this Registration Statement on such dateor dates as may be necessary to delay its effective date until the Registrantshall file further amendment which specifically states that this RegistrationStatement shall become effective on such date as the Commission, acting pursuantto said section 3(a) may determine.

AMERITRANS CAPITAL CORPORATION

Registration Statement on Form N-14

Cross-Reference Sheet Required by Rule 481(a) under theSecurities Act of 1933 Showing the Location in theProxy Statement/Prospectusof the Information Required by

Part A of Form N-14

Location or Section

Eric Nitz

AMERITRANS CAPITAL CORP; N-14/A

```
                                                      in Proxy Statement/
Form N-14 Item                                        Prospectus
--------------                                        ----------
1.  Beginning of Registration Statement and Outside Front
    Cover Page of Prospectus Cross-Reference Sheet; .............. Cover Page of Proxy
                                                                   Statement/Prospectus
2.  Beginning and Outside Back Cover Page of
    Prospectus .................................................. Table of Contents
3.  Synopsis Information and Risk Factors........................ SUMMARY
4.  Information About the Transaction............................ THE SHARE EXCHANGE
5.  Information About the Registrant............................. INFORMATION CONCERNING
                                                                   AMERITRANS CAPITAL
                                                                   CORPORATION
6.  Information About the Company Being Acquired................. INFORMATION CONCERNING ELK
                                                                   ASSOCIATES FUNDING
                                                                   CORPORATION
7.  Voting Information.......................................... INFORMATION CONCERNING THE
                                                                   ANNUAL MEETING
8.  Interest of Certain Persons and Experts...................... EXPERTS
9.  Additional Information Required for Reoffering by
    Persons Deemed to be Underwriters........................... Not Applicable
```

ELK ASSOCIATES FUNDING CORPORATION

747 Third Avenue

4th Floor

New York, New York 10017

Notice of Annual Meeting of Stockholders

to be held on _____ ___, 1999

The Annual Meeting of Stockholders of Elk Associates FundingCorporation, a New York corporation ("Elk"), will be held at the offices ofStursberg & Veith, 405 Lexington Avenue, Suite 4949, New York, New York, on_____, 1999, at 10:00 a.m. (New York Time) to consider and act uponthe following matters:

1. To consider and vote upon the adoption of an Agreement and Plan ofShare Exchange (the "Share Exchange Plan") dated August 2, 1999, betweenAmeritrans Capital Corporation, a newly-formed Delaware corporation("Ameritrans"), and Elk, pursuant to which each outstanding share of commonstock of Elk would be exchanged for one share of common stock of Ameritrans.Pursuant to this share exchange (the "Share Exchange"), the ownership of eachoutstanding share of Elk common stock would automatically vest in Ameritrans(making Ameritrans the holder of all outstanding shares of Elk common stock),and the holders of the outstanding shares of Elk common stock wouldautomatically become entitled to receive one share of Ameritrans common stock inexchange for each share of Elk common stock held by them (makingthe former holders of Elk common stock the holders of all of the shares ofcapital stock of Ameritrans then outstanding). A more complete description ofthe Share Exchange is contained in the enclosed Proxy Statement/Prospectus, anda copy of the Share Exchange Plan is attached as Exhibit A to the ProxyStatement/Prospectus.

2. To elect 10 directors to serve until the next Annual Meeting and untiltheir successors are chosen and qualified.

3. To ratify and approve the selection by the Board of Directors of Marcum &Kliegman, LLP as Elk's independent public accountants for the fiscal year endedJune 30, 1999.

4. To transact such other business as may properly come before themeeting or any adjournment or adjournments of the meeting.

Holders of record of Elk common stock at the close of business on_____ __, 1999, are entitled to notice of and to vote at the meeting. Thestock transfer books of Elk will remain open.

Eric Nitz

AMERITRANS CAPITAL CORP; N-14/A

If the Share Exchange Plan is approved by Elk stockholders at themeeting and effected by Elk, any stockholder who (i) files with Elk, before thevote on the adoption of the Share Exchange Plan, a written objection to theproposed Share Exchange Plan that includes notice of his election to dissent,his name and address, the number of shares of Elk common stock held, and ademand for payment of the fair value of his shares if the Share Exchange iseffected; (ii) does not vote his shares in favor of the Share Exchange Plan; and

(iii) otherwise complies with the terms of Section 623 of New York BusinessCorporation Law, will have the right to receive payment of the fair value of hisor her shares in lieu of receiving Ameritrans common stock pursuant to the ShareExchange. Elk and any such stockholder shall in such cases have the rights andduties and shall follow the procedure set forth in Section 623 of New YorkBusiness Corporation Law. See "APPRAISAL RIGHTS OF DISSENTING STOCKHOLDERS" inthe accompanying Proxy Statement/Prospectus for a more complete description ofthe rights of dissenting stockholders.

All stockholders are cordially invited to attend the meeting.

By Order of the Board of Directors

Margaret Chance, Secretary

_____, 1999

Whether or not you expect to attend the meeting, please complete, dateand sign the enclosed Proxy and mail it promptly in the enclosed envelope inorder to ensure representation of your shares.

PROXY STATEMENT/PROSPECTUS

_____ __, 1999

PROXY STATEMENT

ELK ASSOCIATES FUNDING CORPORATION

747 Third Avenue, 4th Floor

New York, New York 10017

(800) 214-1047

PROSPECTUS

AMERITRANS CAPITAL CORPORATION

747 Third Avenue, 4th Floor

New York, New York 10017

(800) 214-1047

1,745,600 Shares of Common Stock,

$.0001 par value per share

This Proxy Statement/Prospectus is being furnished to stockholders ofElk Associates Funding Corporation, a New York corporation ("Elk"), inconnection with, among other things, the proposed share exchange (the "ShareExchange") between Ameritrans Capital Corporation, a newly-formed Delawarecorporation ("Ameritrans"), and Elk, in accordance with an Agreement and Plan ofShare Exchange between Ameritrans and Elk, dated August 2, 1999 (the "ShareExchange Plan").

Both Ameritrans and Elk are closed-end management investment companiesregistered under the Investment Company Act of 1940, and Elk is a small businessinvestment company ("SBIC") registered under the Small Business InvestmentCompany Act

Eric Nitz

AMERITRANS CAPITAL CORP; N-14/A

of 1958, as amended (the "1958 Act"). Pursuant to the terms of the Share Exchange Plan, each outstanding share of common stock, par value $.01 per share, of Elk ("Elk Common Stock") would be exchanged for one (1) share of common stock, $.0001 par value per share, of Ameritrans ("Ameritrans Common Stock"), making Ameritrans the holder of all outstanding shares of Elk Common Stock and the parent corporation of Elk. The former holders of Elk Common Stock would become the holders of all of the shares of capital stock of Ameritrans then outstanding. Ameritrans would serve as the parent corporation of Elk. It is contemplated that Ameritrans will engage in broader and more diversified investment and lending business activities directly, as well as through a newly formed subsidiary, Elk Capital Corporation ("Elk Capital"), which business activities Elk, as an SBIC, is not permitted to transact under the 1958 Act.

This Proxy Statement/Prospectus is being furnished to Elk stockholders for the purposes of (1) the solicitation of proxies by the Board of Directors of Elk for use at the Annual Meeting of Stockholders of Elk to be held on _____, 1999, at 10:00 a.m. (New York Time) at the offices of Stursberg & Veith, 405 Lexington Avenue, New York, New York, and at any adjournment thereof, at which Elk stockholders will be asked to consider and vote upon (a) the adoption of the Share Exchange Plan, (b) to elect 10 (10) directors to serve until the next Annual Meeting and until their successors are chosen and qualified, (c) to ratify and approve the selection by the Board of Directors of Marcum & Kliegman, LLP as Elk's independent public accountants for the fiscal year ended June 30, 1999, and (d) to consider and act upon such other matters as may properly come before the meeting or any adjournment thereof. In considering whether or not to have an adjournment, management will consider what is in the best interest of the stockholders, and (2) the offer and issuance of up to 1,745,600 shares of Ameritrans Common Stock issuable to holders of Elk Common Stock pursuant to the terms of the Share Exchange Plan.

Since June 22, 1998, Elk's Common Stock has been listed on the Nasdaq SmallCap Market under the symbol EKFG. If the Share Exchange is completed, Ameritrans' Common Stock will be listed on the Nasdaq SmallCap Market under the symbol AMTC, and the listing of Elk's Common Stock will be terminated.

This Proxy Statement/Prospectus sets forth concisely the information about Ameritrans that a prospective investor should know before investing and should be retained for future reference. Additional information about Ameritrans is included in a Statement of Additional Information, also dated _____ ___,1999, which has been filed with the Securities and Exchange Commission ("SEC") and has been distributed to Elk stockholders along with this Proxy Statement/Prospectus. Copies of such Statement of Additional Information are available upon oral or written request without charge from Ameritrans Capital Corporation, Attn: Secretary, 747 Third Avenue, 4th Floor, New York, New York 10017, (800) 214-1047.

These securities have not been approved or disapproved by the Securities and Exchange Commission nor has the Commission passed upon the accuracy or adequacy of this Proxy Statement/Prospectus. Any Representation to the contrary is a criminal offense.

## TABLE OF CONTENTS

SUMMARY .............................................................................................. 1
INFORMATION                    CONCERNING               THE                    ANNUAL MEETING.................................................................. 4
     Date,                    Time,                    Place,                    and Purpose.................................................................... 4
     Voting                    and                    Revocation                    of Proxies.................................................................... 4
     Record           Date           and           Shares           entitled           to Vote.............................................................. 5
     Vote Required.................................................................. 5
THE                                                                            SHARE EXCHANGE.................................................................. 5

Background.................................................................. 5
     Effect               of                    the                    Share Exchange.................................................. 6
     Effective Date.................................................................. 6

AMERITRANS CAPITAL CORP; N-14/A

Conditions to the Share Exchange.................................................................... 7

Federal Income Tax Consequences................................................................. 7

Accounting Treatment............................................................................... 8

Unaudited Pro Forma Capitalization................................................................ 8

FEES AND EXPENSES.................................................................................. 10

INFORMATION CONCERNING ELK.......................................................................... 11

General........................................................................................... 11

SBIC Benefits...................................................................................... 15

Selected Financial Information..................................................................... 15

Loan Portfolio; Valuation......................................................................... 17

Taxi Medallion Finance Industry and Market Overview................................................ 18

Commercial (Non-Taxi) Loans -- Overview............................................................ 21

Competition........................................................................................ 22

Investment Policies................................................................................ 22

The Small Business Investment Act of 1958.......................................................... 24

The Investment Company Act of 1940; Election to Become a BDC....................................... 27

Security Ownership of Principal Stockholders and Management........................................ 28

Management......................................................................................... 30

Compliance with Section 16(a) of the 1934 Act..................................................... 00

Committees of the Board and Meeting Attendance.................................................... 33

Compensation of Directors and Executive Officers.................................................. 34

Report of the Board of Directors as to Compensation Matters....................................... 00

Compensation Philosophy............................................................................ 00

Executive Compensation Program..................................................................... 00

Interlocks and Insider Participation............................................................... 00

Stock Performance Graph............................................................................ 00

Stock Option Plans................................................................................. 35

Certain Transactions............................................................................... 37

Conflicts of Interest Policies..................................................................... 38

Description of Capital Stock....................................................................... 38

Elk Common Stock................................................................................... 39

Eric Nitz

AMERITRANS CAPITAL CORP; N-14/A

Market Information.................................................................................. 39
Tax Considerations................................................................................ 40
Taxation of a Regulated Investment Company.............................................. 40
Taxation of SBICs................................................................................ 41
State Taxes........................................................................................ 42
INFORMATION CONCERNING AMERITRANS........................................................... 42
General............................................................................................ 42
Investment Policies.............................................................................. 42
Corporate Organizational Matters............................................................... 43
Certificate of Incorporation.................................................................... 44
By-Laws............................................................................................ 45
Indemnification of Directors and Officers...................................................... 46
New York Corporation Law vs. Delaware Corporation Law......................................... 47
Federal Regulation............................................................................... 50
Management and Principal Stockholders........................................................... 51
Description of Capital Stock..................................................................... 51
Market Information................................................................................ 52
Tax Considerations............................................................................... 52
Elk Capital Corporation.......................................................................... 53
APPRAISAL RIGHTS OF DISSENTING STOCKHOLDERS................................................... 54
EXPERTS............................................................................................ 54
OTHER MATTERS..................................................................................... 55
ADDITIONAL INFORMATION............................................................................ 55

EXHIBITS

A. Agreement and Plan of Share Exchange between AmeritransCapital Corporation and Elk Associates Funding Corporation

B. Selected Provisions of Delaware Corporation Law

Section 623. Procedure to Enforce Stockholders'Right to Receive Payment for Shares

Section 910. Right of Stockholder to ReceivePayment for Shares Upon Merger orConsolidation, or Sale, Lease,Exchange or Other Disposition ofAssets, or Share Exchange

PROXY

Eric Nitz

STATEMENT OF ADDITIONAL INFORMATION

SELECTED FINANCIAL DATA

MANAGEMENT'S DISCUSSION AND ANALYSIS OF FINANCIAL

CONDITION AND RESULTS OF OPERATIONS

FINANCIAL STATEMENTS

SUMMARY

This Proxy Statement/Prospectus is being furnished to stockholders of Elk Associates Funding Corporation, a New York corporation ("Elk"), in connection with the Annual Meeting of Stockholders of Elk (the "Annual Meeting") called for _____ ___, 1999 at 10:00 a.m. (New York Time) at the offices of Stursberg & Veith, 405 Lexington Avenue, New York, New York. The purposes of the Annual Meeting are (i) to vote on the adoption of the Share Exchange Plan. The proposed share exchange (the "Share Exchange") between Ameritrans Capital Corporation, a Delaware corporation ("Ameritrans"), and Elk, in accordance with an Agreement and Plan of Share Exchange between Ameritrans and Elk dated August 2, 1999, a copy of which is attached hereto as Exhibit A (the "Share Exchange Plan"); (ii) to elect 10 directors to serve until the next Annual Meeting and until their successors are chosen and qualified, (iii) to ratify and approve the selection by the Board of Directors of Marcum & Kliegman, LLP as Elk's independent public accountants for the fiscal year ended June 30, 1999, and (iv) to consider and act upon such other matters as may properly come before the meeting or any adjournment thereof. In considering whether or not to have an adjournment, management will consider what is in the best interest of the stockholders.

Elk

Elk was formed on July 9, 1979 for the purpose of operating as a Specialized Small Business Investment Company ("SSBIC"), licensed under the Small Business Investment Act of 1958, (the "1958 Act"), and regulated and financed in part by the U.S. Small Business Administration (the "SBA"). Elk was granted a license to operate as an SSBIC by the SBA on July 24, 1980, is registered as a closed-end, non-diversified management investment company under the Investment Company Act of 1940 (the "1940 Act"), and has elected to be taxed as a "regulated investment company" under the Internal Revenue Code of 1954, as amended (the "Code") since the fiscal year ended June 30, 1984. Elk intends to elect to be taxed as a regulated investment company for the fiscal year ending June 30, 2000. Elk's business has historically been to provide financing to persons who qualify under SBA regulations as socially or economically disadvantaged persons or to entities which are at least 50% owned by such persons ("Disadvantaged Concerns").

The 1958 Act was amended on September 30, 1996, and in connection therewith, Elk entered into an agreement with the SBA in February 1997, and amended its Certificate of Incorporation, the effect of which was to convert Elk from an SSBIC to a Small Business Investment Company ("SBIC"). As such, Elk may now lend to persons who are not "disadvantaged" so long as Elk's aggregate loans to Disadvantaged Concerns are at least equal to the remaining amount of Elk's unamortized Restricted Capital Account (as hereinafter defined) resulting from the repurchase by Elk of its 3% Preferred Stock from the SBA. The Restricted Capital Account was $256,916 at June 30, 1999, representing less than 1% of Elk's loan portfolio of approximately $51,100,000 as of that date.

As of June 30, 1999, approximately 95% of Elk's loans and investments qualified as loans to Disadvantaged Concerns. As a result of Elk's conversion to an SBIC, Elk is only required to maintain approximately 1% of its portfolio as loans to such persons. Accordingly, while Elk intends to continue to make loans to Disadvantaged Concerns, particularly in connection with the ownership of taxicabs and related assets in the New York City, Chicago, Boston, and Miami markets, where many of the borrowers may qualify as Disadvantaged Concerns, Elk intends to diversify its activities by lending and investing in a broader range of businesses eligible for investments by SBICs under the 1958 Act ("Small Business Concerns"), many of which, it is anticipated, may not be Disadvantaged Concerns. In addition, Ameritrans, the new parent company, would have the ability to acquire or engage directly in businesses other than that of Elk, either directly or through Elk Capital or other subsidiaries it may form or acquire.

Eric Nitz

AMERITRANS CAPITAL CORP; N-14/A

To the best of its knowledge, Elk has never experienced any material losses of principal in connection with taxi financings since it began making loans to the owners of New York City taxicab medallions, taxicabs and related assets in 1980, nor since it began making taxi medallion loans in Boston, Chicago and Miami in 1995. Elk will continue to make loans in these markets without the historical restriction of lending solely to Disadvantaged Concerns. Loans made by Elk for the purpose of financing the purchase or continued ownership of taxicab medallions, taxicabs and

related assets, represented approximately 79% of Elk's loan portfolio as of June 30, 1999. Loans made to finance the acquisition and/or operation of other Small Business Concerns constitute the balance of Elk's current loan portfolio, and it intends to continue to make such loans.

By Agreement dated November 10, 1994, Elk repurchased all of the 547,271 outstanding shares of its 3% preferred stock from the SBA for an aggregate price of $1,915,449, representing a discount of 65% from the original aggregate issuance price of $10 per share. As a condition precedent to the repurchase, Elk granted the SBA a liquidating interest in a newly established restricted capital surplus account (the "Restricted Capital Account"). The Restricted Capital Account is equal to the amount of the net repurchase discount in which the SBA received a liquidating interest amortized over 60 months commencing November 10, 1994. However, if Elk is liquidated or if a material violation of SBA regulations occurs during the amortization period, the SBA would receive the remaining unamortized amount of the Restricted Capital Account prior to the stockholders of Elk receiving any amounts on their Common Stock. The unamortized balance of the SBA's liquidating interest at June 30, 1999 was $256,916.

Elk elected, effective September 28, 1998, to become a business development company ("BDC") under the 1940 Act. See "INFORMATION CONCERNING ELK-- Investment Company Act of 1940; Election to Become a BDC."

Ameritrans

Ameritrans was formed as a Delaware corporation on February 12, 1998, for the purposes of (1) acquiring and owning all of the outstanding Elk Common Stock pursuant to the Share Exchange, and (2) engaging in broader and more diversified investment and lending business activities directly, as well as through a newly-formed subsidiary, Elk Capital, which business activities Elk, as an SBIC, is not permitted to transact under the 1958 Act. Any such activities or operations would conform to the investment policies of Ameritrans described below. Ameritrans is registered under the 1940 Act as a closed-end, non-diversified management investment company. Ameritrans has also elected to become a BDC pursuant to the 1940 Act. See "INFORMATION CONCERNING ELK --Investment Company Act of 1940; Election to Become a BDC."

Following the consummation of the Share Exchange, Ameritrans will be the parent corporation of both Elk and Elk Capital. In addition, Ameritrans plans to engage in broader and more diversified investment and lending activities directly and, if it is in the best interests of its stockholders, through Elk Capital and/or other subsidiaries it may form or acquire. It is anticipated that Elk Capital will also make investments and/or loans and engage in businesses Elk is not permitted to make under the 1958 Act.

As a result, stockholders should realize that, in approving the Share Exchange Plan, they are giving broad discretion to the management of Ameritrans.

The investment policies of Ameritrans will allow greater flexibility in its investment and lending business activities than the investment policies of Elk. Because Ameritrans will not be licensed under the 1958 Act, it will not issue any debt or equity securities to the SBA. In addition, because it is anticipated that Ameritrans will engage as described above in a broader range of investment activities than does Elk, the ownership of Ameritrans Common Stock may be subject to a higher degree of risk than is the ownership of Elk Common Stock. See "INFORMATION CONCERNING AMERITRANS -- Investment Policies."

-2-

It is expected that the initial capitalization of Ameritrans and Elk Capital will be funded by up to $963,000 of the $3.0 million gross proceeds of Elk's January 1998 private placement of its Common Stock, or through borrowings by Ameritrans. On July 1, 1999, Ameritrans filed a Registration Statement on Form N-2 relating to the proposed sale of 1,100,000 shares (1,265,000 shares if the underwriters' over-allotment option is exercised) of its common stock after completion of the Share Exchange. It is anticipated that approximately half the net proceeds of such offering will be allocated to the operations of Ameritrans and Elk Capital and half to the operations of Elk. There is no assurance that this offering will be completed on the proposed terms or at all.

Eric Nitz

AMERITRANS CAPITAL CORP; N-14/A

The directors and officers of Ameritrans are the same individuals whoserve as the directors and officers of Elk. It is expected that following theconsummation of the Share Exchange, such officers and directors will initiallyreceive the same compensation as they are currently receiving from Elk, but suchcompensation will be allocated between Elk and Ameritrans, based upon factorsdetermined by their respective Boards of Directors. Such officers and directorsmay also receive increases in compensation from time to time as determined bythe Boards of Directors. Ameritrans and/or Elk may also hire additionalpersonnel as such personnel are needed in connection with the expansion anddiversification of their lending and/or investment activities. See "INFORMATIONCONCERNING AMERITRANS -- Management and Principal Stockholders."

The rights of the holders of Ameritrans Common Stock will besubstantially the same as the rights of holders of Elk Common Stock. See"INFORMATION CONCERNING AMERITRANS -- Description of Capital Stock." TheCertificate of Incorporation and By-laws of Ameritrans will differ in certainrespects from the Certificate of Incorporation and By-laws of Elk and, whereasElk is governed by New York Business Corporation Law, Ameritrans is governed byDelaware General Corporation Law. For a description of the significantdifferences, see "INFORMATION CONCERNING AMERITRANS -- Corporate OrganizationalMatters."

The Share Exchange

Pursuant to the terms of the Share Exchange Plan, each share of ElkCommon Stock would be exchanged for one share of Ameritrans Common Stock. As aresult of the Share Exchange, (i) Ameritrans would be the sole holder of all ofthe outstanding Elk Common Stock, and (ii) the former holders of the outstandingshares of Elk Common Stock (other than those dissenting stockholders whoexercise appraisal rights, as described below) would be the sole holders ofoutstanding Ameritrans Common Stock (which would represent the only capitalstock of Ameritrans outstanding at the time of the Share Exchange), and wouldhold the Ameritrans Common Stock in the same relative proportions as they holdElk Common Stock at the time of the Share Exchange. See "THE SHARE EXCHANGE."

As an SBIC, Elk is allowed to make investments only to Small BusinessConcerns, and a portion of its loans (which was $256,916 as of June 30, 1999)must be made to Disadvantaged Concerns. The purpose of the Share Exchange is tosecure to the holders of Elk Common Stock the benefit of a more diversifiedinvestment strategy, which the Board of Directors of Elk believes would be inthe best interests of Elk's stockholders. After consideration of the relevantbusiness and legal issues, Elk's Board of Directors has concluded that the bestway to establish an entity that may pursue a strategy that includes, but is notlimited to, investments in Disadvantaged and Small Business Concerns, and theinvestment activities of which would accrue to the benefit of the currentholders of Elk Common Stock, is to effect the Share Exchange, which would createa parent corporation (Ameritrans) that would be owned by the current holders ofElk Common Stock and that would own all of the outstanding Elk Common Stock.Ameritrans could then engage in broader and more diversified lending businessactivities directly or indirectly through its newly-formed subsidiary, ElkCapital, which business activities would be free from the restrictions imposedby the 1958 Act.

-3-

Because Elk and Elk Capital would be subsidiaries of Ameritrans, the incomederived from the activities of Elk and Elk Capital, as well as from anyactivities of Ameritrans (either directly or through other subsidiaries), wouldbenefit the current holders of Elk Common Stock (who, by virtue of the ShareExchange, would be the holders of Ameritrans Common Stock).

The Share Exchange is intended to constitute a tax-free transfer under

Section 351 of the Code, in which case (1) no gain or loss would be recognizedby either Ameritrans or Elk, and (2) no gain or loss would be recognized by Elkstockholders (except with respect to any cash received by holders of Elk CommonStock exercising appraisal rights). See "THE SHARE EXCHANGE -- Federal IncomeTax Consequences."

The adoption of the Share Exchange Plan requires the affirmative voteof the holders of two-thirds (66.67%) of the outstanding shares of Elk CommonStock. As of June 30, 1999, Elk had 1,745,600 shares of Common Stockoutstanding. The directors, officers, and principal stockholders of Elk,owning an aggregate of approximately 60% of the outstanding shares of ElkCommon Stock, have expressed an intention to vote in favor of the adoption ofthe Share Exchange Plan. The Share Exchange is also subject to the approval ofthe SBA.

AMERITRANS CAPITAL CORP; N-14/A

Holders of Elk Common Stock who object to the Share Exchange may elect to receive payment of the fair value of their shares of Elk Common Stock (as determined by agreement with Elk or by a court) in lieu of the Ameritrans Common Stock they would otherwise receive pursuant to the Share Exchange. In order to enforce his or her right to receive such payment, a dissenting stockholder must

(1) file with Elk, before the stockholder vote on the Share Exchange Plan is taken, a written objection to the Share Exchange that includes a notice of his or her election to dissent, his or her name and address, the number of shares of Elk Common Stock held by him and a demand for payment of the fair value of such shares if the Share Exchange is consummated, (2) not vote in favor of the adoption of the Share Exchange Plan, and (3) otherwise comply with the requirements of Section 623 of New York Business Corporation Law, the full text of which is set forth as Exhibit B hereto. Any deviation from such requirements may result in the forfeiture of appraisal rights. Failure to vote against the Share Exchange Plan will not constitute a waiver of appraisal rights; however, since a proxy left blank will be voted FOR the adoption of the Share Exchange Plan, any Elk stockholder who wishes to exercise his or her appraisal rights with respect to the Share Exchange must either vote AGAINST the Share Exchange Plan or abstain. See "APPRAISAL RIGHTS OF DISSENTING STOCKHOLDERS."

The Board of Directors of Elk has determined that if the holders of more than 3% of the outstanding shares exercise their appraisal rights, Elk may determine not to proceed with the Share Exchange.

The Board of Directors of Elk believes that the Share Exchange is in the best interests of Elk stockholders, has unanimously APPROVED the Share Exchange Plan, and unanimously recommends that ELK stockholders vote for the adoption of the Share Exchange Plan.

Election of Directors

A further purpose of the Annual Meeting is to elect 10 directors to serve until the next Annual Meeting and until their successors are chosen and qualified. Elk will continue to operate its current business, and the persons elected as directors of Elk will continue to act in that capacity, whether or not the Share Exchange is completed. All of the 10 nominees are presently directors of Elk.

Ratification of Auditors

Another purpose of the Annual Meeting is to ratify and approve the selection by the Board of Directors of Marcum & Kliegman, LLP as Elk's independent public accountants for the fiscal year ended June 30, 1999.

The Board of Directors recommends a vote "FOR" ratification of the appointment of Marcum & Kliegman, LLP as independent auditors.

INFORMATION CONCERNING THE ANNUAL MEETING

Date, Time, Place, and Purpose

The Annual Meeting will be held on _____ __, 1999 at 10:00 a.m. (New York Time) at the offices of Stursberg & Veith, 405 Lexington Avenue, New York, New York. The purposes of the Annual Meeting are (i) to consider and vote on the adoption of the Share Exchange Plan, pursuant to which the Share Exchange would be effected; (ii) to elect 10 directors to serve until the next Annual Meeting and until their successors are chosen and qualified, (iii) to ratify and approve the selection by the Board of Directors of Marcum & Kliegman, LLP as Elk's independent public accountants for the fiscal year ended June 30, 1999, and (iv) to consider and act upon such other matters as may properly come before the meeting or any adjournment thereof.

-4-

Voting and Revocation of Proxies

The proxy accompanying this Proxy Statement/Prospectus is solicited by the Board of Directors of Elk for use at the Annual Meeting. Holders of Elk Common Stock are requested to complete, date and sign the accompanying proxy and return it promptly in the enclosed envelope.

Eric Nitz

AMERITRANS CAPITAL CORP; N-14/A

All shares of Elk Common Stock represented at the Annual Meeting by properly executed proxies will, unless such proxies have been previously revoked, be voted at the Annual Meeting in accordance with the instructions indicated thereon. In the absence of such instructions, the shares represented by such proxies will be voted in favor of the adoption of the Share Exchange Plan, for the election of the named nominees as directors of Elk, and for the ratification of Marcum & Kliegman, LLP as independent auditors.

Management of Elk does not know of any other matters which will be brought before the Annual Meeting. If, however, other matters are presented to the Annual Meeting, all duly executed proxies will be voted in the discretion of the proxy holders.

Any stockholder has the power to revoke his or her proxy at any time before it is voted by (i) delivering written notice of such revocation to the Secretary of Elk, (ii) filing a duly executed proxy bearing a later date, or

(iii) appearing at the Annual Meeting and electing to vote in person.

In addition to solicitation by mail, directors, officers and employees of Elk may solicit proxies from holders of Elk Common Stock personally or by telephone. The expense, if any, of such solicitation shall be borne by Elk.

Record Date and Shares entitled to Vote

Holders of record of Elk Common Stock as of the close of business on_____ ___, 1999 (the "Record Date") will be entitled to notice of and to vote at the Annual Meeting. At the close of business on the Record Date, there were issued and outstanding and entitled to vote a total of 1,745,600 shares of Elk Common Stock.

Vote Required

Under the law of the State of New York and the Certificate of Incorporation of Elk, the adoption of the Share Exchange Plan must be approved by the affirmative vote of the holders of two-thirds (66.67%) of the shares of Elk Common Stock outstanding on the Record Date, with each share entitled to one

(1) vote. The directors, officers, and principal stockholders of Elk owning an aggregate of approximately 60% of the outstanding shares of Elk Common Stock have expressed an intention to vote in favor of the adoption of the Share Exchange Plan.

The affirmative vote of the holders of a majority of the Elk Common Stock present or represented at the Annual Meeting is required for the election of directors. The proxies will be voted to elect as directors the 10 nominees named below, unless authority to vote for the election of directors is withheld by marking the proxy to that effect or the proxy is marked with the names of directors as to whom authority to vote is withheld. The proxy may not be voted for more than 10 directors.

The affirmative vote of a majority of the Elk Common Stock present or represented at the meeting is required to ratify and approve the selection of Marcum & Kliegman, LLP as independent public accountants for Elk for fiscal 1999. Except as otherwise instructed, the proxies will be voted for the ratification and approval of Marcum & Kliegman, LLP.

PROPOSAL NO. 1

THE SHARE EXCHANGE

Set forth below is a description of the principal aspects of the Share Exchange. This description does not purport to be complete and is qualified in its entirety by reference to the Share Exchange Plan, a copy of which is attached as Exhibit A to this Proxy Statement/Prospectus.

Background

Elk is licensed as an SBIC under Section 301(c) of the 1958 Act, and as such, it may invest only in Small Business Concerns that qualify under applicable rules and regulations of the SBA. The majority of such investments by Elk has consisted of loans for the purchase of taxicab medallions and related taxicab assets.

-5-

Eric Nitz

AMERITRANS CAPITAL CORP; N-14/A

The Board of Directors of Elk believes that a more diversifiedinvestment strategy would be in the best interests of Elk and its stockholders.Elk's Board of Directors has further concluded that such diversification wouldbe best accomplished by the organization or acquisition of a company which wouldbe able to invest in other business concerns without regard to their social oreconomic status or to other limitations imposed by the 1958 Act and the rulesand regulations promulgated thereunder, thus enabling the Elk stockholders toreap the economic benefits from such business diversification. Accordingly,after analysis of the legal and regulatory issues involved, Elk's Board ofDirectors approved a reorganization of Elk, consisting of the following steps:

(1) the organization of Ameritrans, and its registration, for tax reasons, as aninvestment company under the 1940 Act; (2) the acquisition by Ameritrans of allof the outstanding Elk Common Stock from the current Elk stockholders inexchange for Ameritrans Common Stock. An exchange ratio of one (1) share of ElkCommon Stock for each share of Ameritrans Common Stock was chosen in order toproduce the same number of outstanding shares of Ameritrans Common Stock asthere were Elk Common Stock; and (3) the acquisition by Ameritrans of ElkCapital. As a result of this reorganization, the current holders of AmeritransCommon Stock would own all of the shares of capital stock of Elk thenoutstanding. Ameritrans would be the parent corporation of both Elk and ElkCapital.

The first part of this reorganization, the organization of Ameritrans,its registration as an investment company, its election to become a BDC and theacquisition of Elk Capital has been completed. The purpose of the Share Exchangeis to effect the second step. The consummation of the Share Exchange willaccomplish the final part of this reorganization.

Effect of the Share Exchange

On the Effective Date of this Share Exchange, as defined below, eachoutstanding share of Elk Common Stock (other than shares as to which appraisalrights have been exercised) will be exchanged for one (1) share of AmeritransCommon Stock with the ownership of each share of Elk Common Stock automaticallyvesting in Ameritrans and the holders of the outstanding shares of Elk CommonStock automatically becoming entitled to receive one (1) share of AmeritransCommon Stock for each share of Elk Common Stock held by them. As a result, as ofthe Effective Date, (1) Ameritrans will be the sole holder of all of theoutstanding Elk Common Stock, and (2) the persons holding Elk Common Stock as ofthe Effective Date will be the sole holders of the shares of Ameritrans CommonStock then outstanding (which will comprise all of the capital stock of Ameritrans then outstanding) in the same relative proportions as they held ElkCommon Stock (subject to any changes resulting from the exercise of appraisalrights). As of the date of this Proxy Statement/Prospectus, there were issuedand outstanding 1,745,600 shares of Elk Common Stock and one (1) share ofAmeritrans Common Stock (which share will be redeemed by Ameritrans uponcompletion of the Share Exchange).

The status of Elk as a licensed SBIC under the 1958 Act and as a BDCregistered under the 1940 Act will be unaffected by the Share Exchange.

As of the Effective Date, Ameritrans will automatically become the soleholder of Elk Common Stock, and the holders of Elk Common Stock willautomatically become entitled to receive one (1) share of Ameritrans CommonStock for each share of Elk Common Stock, despite the fact that new stockcertificates representing Elk Common Stock and Ameritrans Common Stock will nothave been issued to Ameritrans or the holders of Elk Common Stock, respectively.As soon as practicable following the Effective Date, Elk will issue toAmeritrans a stock certificate representing such number of shares of Elk CommonStock as are issued and outstanding as of the Effective Date, and Ameritranswill send to the former holders of Elk Common Stock written instructions on howto exchange their Elk Common Stock certificates for certificates representingshares of Ameritrans Common Stock.

-6-

Effective Date

The Share Exchange will become effective on the date (the "EffectiveDate") of the filing of a Certificate of Exchange regarding the Share Exchangewith the New York Department of State, in accordance with Section 913 of NewYork's Business Corporation Law. Such filing will be made as soon as practicablefollowing the satisfaction or waiver of all conditions to the Share Exchange(described below), including the adoption of the Share Exchange Plan by theholders of Elk Common Stock. It is currently anticipated that the Effective Datewill be on or about _____ ___, 1999.

AMERITRANS CAPITAL CORP; N-14/A

Conditions to the Share Exchange

The Share Exchange Plan specifically provides that the obligation ofAmeritrans and Elk to consummate the Share Exchange is subject to thefulfillment (or waiver) on or prior to the Effective Date of certain conditions,including the following: (1) the approval of the Share Exchange Plan by theholders of at least two-thirds (66.67%) of the outstanding shares of Elk CommonStock; (2) the approval of the Share Exchange by the SBA, in accordance with therequirements of the 1958 Act, which approval has been received; (3) theregistration (or the availability of an exemption therefrom) under theSecurities Act of 1933 (the "1933 Act"), of the shares of Ameritrans CommonStock to be issued to the former holders of Elk Common Stock pursuant to theShare Exchange, and the compliance with all applicable state securities laws inconnection with the issuance of such Ameritrans Common Stock; (4) the exerciseof appraisal rights by the holders of not more than 3% of the shares of ElkCommon Stock entitled to vote at the Annual Meeting; and (5) the absence of anygovernmental order or action prohibiting the Share Exchange.

Elk has received approval from the SBA to transfer up to $963,000 ofthe net proceeds of its January 1998 private offering to Ameritrans. It isintended that, if necessary, such funds will be used, in part, to purchase theshares of any Elk stockholders who exercise their appraisal rights and/or forcosts and expenses of the reorganization. These funds do not constitute aportion of Elk's "Regulatory Capital" as that term is defined in the 1958 Act orthe regulations of the SBA. Therefore, the use of a portion of these funds tobuy out dissenting Elk stockholders or for costs and expenses of thereorganization will not constitute a violation of the 1958 Act or any SBAregulations.

In addition, in order for Ameritrans and Elk to operate in the mannercontemplated by this Proxy Statement/Prospectus and consummate the ShareExchange, exemptions from certain provisions under the 1940 Act are required.An exemptive order granting such exemptions (the "Exemptive Order") to Elkand Ameritrans must be issued by the Securities and Exchange Commission ("SEC")prior to the stockholders' meeting. The management of Elk and Ameritransanticipates that the order will be granted prior to the meeting. If the order isnot granted, however, the meeting will be adjourned.

Federal Income Tax Consequences

The Share Exchange is intended to constitute a tax-free transfer under

Section 351 of the Code. If Section 351 of the Code is applicable, (1) no gainor loss for federal income tax purposes will be recognized by Ameritrans or Elkas a result of the Share Exchange; (2) no gain or loss will be recognized byholders of Elk Common Stock upon the receipt of Ameritrans Common Stock inexchange for their Elk Common Stock pursuant to the Share Exchange; (3) thebasis of the Ameritrans Common Stock received by each holder of Elk Common Stockpursuant to the Share Exchange will be equal to the basis of the Elk CommonStock which was converted into such Ameritrans Common Stock pursuant to theShare Exchange; (4) the holding period for tax purposes of the Ameritrans CommonStock received by each holder of Elk Common Stock will include the period forwhich such stockholder held the Elk Common Stock that was converted into suchAmeritrans Common Stock, provided that such Elk Common Stock was held as acapital asset at the time of the Share Exchange;

-7-

and (5) a holder of Elk Common Stock who exercises appraisal rights with respectto his or her Elk Common Stock and who receives payment for such shares in cashwill recognize a capital gain or ordinary loss for federal income tax purposes(provided such stock was held as a capital asset at the time of the ShareExchange), in an amount equal to the excess (if any) of the amount of cashreceived over such stockholder's tax basis in his or her Elk Common Stock.Management of Elk has been advised by its independent public accountants thatalthough there can be no assurance that the Internal Revenue Service (the "IRS")will not take a different position, they believe that Section 351 should beapplicable to the Share Exchange.

The belief that the foregoing tax consequences will apply is based uponcertain assumptions and subject to certain qualifications, including theassumption that (i) Elk is not under the jurisdiction of a court in a Title 11or similar case, (ii) the current holders of Elk Common Stock will not, pursuantto a plan or intent existing on or prior to the Effective Date, dispose of asmuch as 20% of the Ameritrans Common Stock received pursuant to the ShareExchange, (iii) there is no other class of Ameritrans stock outstanding whichwould represent as much as 20% of the voting stock or 20% of the number ofshares of non-

Eric Nitz

AMERITRANS CAPITAL CORP; N-14/A

voting stock (if any) outstanding, and (iv) the investment companyexception to Section 351 of the Code (351(e)) does not apply since the transferwill not result in a diversification of the Elk stockholders' interests.

If the IRS were to challenge successfully the tax-free status of theShare Exchange, each holder of Elk Common Stock would have to recognize a gainor loss with respect to his or her Elk Common Stock exchanged for AmeritransCommon Stock pursuant to the Share Exchange in an amount equal to the difference(if any) between (a) the fair market value of the Elk Common Stock exchanged bysuch stockholder pursuant to the Share Exchange over (b) such stockholder'sbasis in the Ameritrans Common Stock converted pursuant to the Share Exchange.In such event, an Elk stockholder's tax basis in the Ameritrans Common Stockreceived pursuant to the Share Exchange would be equal to the fair market valueof such Ameritrans Common Stock, and his or her tax holding period for suchAmeritrans Common Stock would not include the period for which he held his orher Elk Common Stock.

The foregoing discussion of federal income tax consequences is intendedonly as a general summary and does not deal with all aspects of federal taxationthat may be relevant in connection with the Share Exchange. In addition, state,local or foreign income tax consequences to Elk stockholders may be differentfrom the federal income tax consequences described above. Accordingly, each Elkstockholder is urged to consult his or her own tax advisor as to the federal,state, local or foreign income tax effects of the Share Exchange.

Accounting Treatment

The Share Exchange which represents a recapitalization of Elk will beaccounted for on a historical cost basis. The assets and liabilities of Elk andAmeritrans will be recorded at their combined bases as of the Effective Date ofthe Share Exchange.

Unaudited Pro Forma Capitalization

Set forth below is a table showing the pro forma capitalization ofAmeritrans and Elk as of June 30, 1999. The Share Exchange is accounted for ona historical cost basis, and therefore the total net assets of Ameritransimmediately after the Share Exchange are the same as the total net assets of Elk(comprised of Elk Common Stock plus accumulated undistributed investment incomeless unrealized loss in value of investments) immediately before the ShareExchange (see the footnotes to this table).

-8-

This financial information should be read in conjunction with the financialstatements for the years ended June 30, 1999 and 1998, and the related notes,together with the opinion of Marcum & Kliegman, LLP dated August 11, 1999,included in the Statement of Additional Information, which has been filed withthe SEC and has been distributed to Elk stockholders along with this ProxyStatement/Prospectus.

Net Assets as of June 30, 1999 Immediately Before Acquisition:

| | Ameritrans | Elk | Adjustments | Combined |
|---|---|---|---|---|
| | ---------- | --- | ---------- | -- ------ |
| Common Stock (Ameritrans-- 5,000,000 shares, $.0001 par value, authorized, 1 share outstanding; Elk-- 2,000,000 shares, $.01 par value, authorized, 1,745,600 shares outstanding) | | | $17,456 | $17,456 |
| Preferred Stock (Ameritrans-- 1,000,000 shares, $.01 par value, authorized, none outstanding; Elk --none authorized or outstanding) | | _____ | | _____ ____ |

AMERITRANS CAPITAL CORP; N-14/A

```
Additional   paid-in   capital                                    13,197,277
13,197,277
Restricted   capital                                                 256,916
256,916
Accumulated undistributed
investment  income,  net                                               4,815
4,815
Accumulated  other  comprehensive  income                            261,753
261,753
Unrealized loss in value of
investments  (loan  loss  reserve)                                  (380,000)
(380,000)
Total  Net  Assets:                                               13,358,217
13,358,217
```

Net Assets as of June 30, 1999 Immediately After Acquisition:

| | Ameritrans | Elk | Adjustments |
|---|---|---|---|
| Combined | | | |

```
                                         ----------     ---      -----------       --
------
Common Stock (Ameritrans--
5,000,000 shares, $.0001 par
value , authorized, 1,745,600
shares outstanding; Elk--
2,000,000 shares, $.01 par
value, authorized, 1,745,600
shares outstanding)               $       175(1)     $17,456       ($17,456)(2)   $
175
Preferred Stock (Ameritrans --
1,000,000 shares, $.01 par
value,  authorized, none
outstanding; Elk-- none
authorized  or  outstanding)                          _____                       _____
____
Additional paid-in capital              13,358,042    13,197,277    (13,340,761)
13,214,558
Restricted  capital                                                    256,916
256,916
```

-9-

```
Accumulated undistributed
investment  income,  net                                               4,815
4,815
Accumulated  other  comprehensive  income                            261,753
261,753
Unrealized loss in value of
investments  (loan  loss  reserve)                                  (380,000)
(380,000)
Total  Net  Assets:                    $13,358,217    13,358,217    (13,358,217)
13,358,217
```

(1) To record shares of Ameritrans issued for net assets (Common Stock plus accumulated undistributed investment income less unrealized loss in value of investments) of Elk.

(2) To eliminate equity of subsidiary (Elk) in consolidation.

The Board of Directors of Elk recommends a vote FOR Proposal No. 1.

PROPOSAL NO. 2

ELECTION OF DIRECTORS

Eric Nitz

The affirmative vote of the holders of a majority of the Elk CommonStock present or represented at the meeting is required for the election ofdirectors. The persons named in the proxy will vote, as permitted by the By-Lawsof Elk, to elect as directors the 10 nominees named below, unless authority tovote for the election of directors is withheld by marking the proxy to thateffect or the proxy is marked with the names of directors as to whom authorityto vote is withheld. The proxy may not be voted for more than 10 directors. Allof the 10 nominees are presently directors of Elk.

Each director will be elected to hold office until the next annualmeeting of stockholders and until his or her successor is elected and qualified.If a nominee becomes unavailable, the person acting under the proxy may vote theproxy for the election of a substitute. It is not presently contemplated thatany of the nominees will be unavailable.

The following persons are the 10 nominees for election as director ofElk:

Gary C. Granoff

Ellen M. Walker

Lee A. Forlenza

Steven Etra

Marvin Sabesan

Paul Creditor

Allen Kaplan

John L. Acierno

John R. Laird

Howard F. Sommer

Certain information concerning the nominees is contained in varioussubsections of "INFORMATION CONCERNING ELK," below. See "-- Management" and "--Committees of the Board and Meeting Attendance" for the positions and officesheld by each nominee, his or her age, the date on which he or she became adirector of Elk, his or her principal occupation and business experience for thelast five (5) years and the names of other publicly-held companies in which heor she serves as a director. See "-- Compensation of Directors and ExecutiveOfficers," "-- Executive Compensation Program" and "-- Stock Option Plans" fordescriptions of the compensation paid to directors and the plans in whichdirectors may be eligible to participate. See "-- Security Ownership ofPrincipal Stockholders and Management" and "-- Compliance with Section 16(a) ofthe 1934 Act" for information regarding the security ownership of directors. See"-- Certain Transactions" and "-- Conflicts of Interest Policies" forinformation regarding transactions with Elk and certain directors.

PROPOSAL NO. 3

APPOINTMENT OF INDEPENDENT PUBLIC ACCOUNTANTS FOR FISCAL 1999

The Board of Directors, including a majority of directors who are notinterested persons of Elk, subject to stockholder approval, has selected Marcum& Kliegman, LLP as independent public accountants to be employed by Elk for thefiscal year ending June 30, 1999, to sign or certify such financial statements,or any portions thereof, as may be filed by Elk with the SEC or any otherauthorities at any time. The employment of such independent public accountantsfor such purpose is subject to approval by the stockholders at this meeting. Nomember of Marcum & Kliegman, LLP or any associate thereof has a direct orindirect material financial interest in Elk or any of its affiliates.

The affirmative vote of a majority of the Elk Common Stock present orrepresented at the meeting is required to ratify and approve the selection ofMarcum & Kliegman, LLP as independent public accountants for Elk for fiscal1999.

AMERITRANS CAPITAL CORP; N-14/A

A representative of Marcum & Kliegman, LLP will be present at theAnnual Meeting of Stockholders for the purpose of answering stockholderquestions and making any other appropriate statement.

The Board of Directors of Elk recommends a vote FOR Proposal No. 3.

FEES AND EXPENSES

The purpose of the following table is to assist stockholders inunderstanding the various costs and expenses that stockholders in Elk bear, andthat, upon completion of the Share Exchange, stockholders in Ameritrans willbear, directly or indirectly.

FEE TABLE(1)

Annual Expenses (as a percentage of net assets attributable

```
  to Common Stock)(2)
  Interest Payments on Borrowed Funds.............................17.8%(3)
  Other Expenses.................................................13.9%(4)
Total Annual Expenses..........................................31.7%
------------------------------------
```

(1) Based on amounts for Elk for the fiscal year ended June 30, 1999. There willbe no underwriter and, consequently, no underwriting discounts orcommissions, associated with the Share Exchange.

(2) Assumes a net asset value of $13.7 million, which will be Ameritrans'estimated stockholders' equity upon completion of the Share Exchange.Operating expenses, interest payments on borrowed funds, and other expensesare calculated based on Elk's operations for the fiscal year ended June 30,1999.

(3) Interest payments on borrowed funds consist primarily of interest payableunder credit agreements with banks and on subordinated SBA debentures. See"INFORMATION CONCERNING ELK -- General -- Elk's Loans; Short-termBorrowings."

(4) Operating expenses consist primarily of general and administrative expenses,including compensation and employee benefits, professional fees, rent,travel and other marketing expenses, and various costs associated withcollections. See "MANAGEMENT'S DISCUSSION AND ANALYSIS OF FINANCIALCONDITIONS AND RESULTS OF OPERATIONS -- Operating Expenses" in the Statementof Additional Information.

EXAMPLE:

The following example demonstrates the projected dollar amount of totalcumulative expenses that would be incurred over various periods with respect toa hypothetical investment in Ameritrans. These amounts assume no increase ordecrease in leverage and are based upon payment by Ameritrans of operatingexpenses at the levels set forth in the table above.

-10-

An Ameritrans stockholder would pay the following expenses on a $1,000investment, assuming a 5.0% annual return:

```
1 YEAR        3 YEARS        5 YEARS        10 YEARS
------        -------        -------        --------
 $301         $862          $1,371          $2,447
```

This example, as well as the information set forth in the table above,should not be considered a representation of the future expenses of Ameritrans.Actual expenses may be greater or less than those shown. Moreover, while theexample assumes (as required by the SEC) a 5.0% annual return, Ameritrans'performance will vary and may result in a return greater or less than 5.0%.

-11-

INFORMATION CONCERNING ELK

General

Elk was formed on July 9, 1979, as a New York corporation for thepurpose of operating as a Specialized Small Business Investment Company("SSBIC"), licensed under the Small Business Investment Act of 1958 (the "1958Act"), and regulated and financed in part by the U.S. Small BusinessAdministration (the "SBA"). Elk was granted a license to operate as an SSBIC bythe SBA on July 24, 1980, is registered as a closed-end, non-diversifiedmanagement investment company under the Investment Company Act of 1940 (the"1940 Act"), and has elected to be taxed as a "regulated investment company"under the Internal Revenue Code of 1954, as amended (the "Code") since thefiscal year ended June 30, 1984. Elk, which elected on September 28, 1998 tobecome a business development company ("BDC") under the 1940 Act, intends toelect to be taxed as a regulated investment company for the fiscal year endingJune 30, 1999. Elk's business has historically been to provide financing topersons who qualify under SBA regulations as socially or economicallydisadvantaged persons or to entities which are at least 50% owned by suchpersons ("Disadvantaged Concerns").

The 1958 Act was amended on September 30, 1996, and in connectiontherewith, Elk entered into an agreement with the SBA in February, 1997, andamended its Certificate of Incorporation the effect of which was to convert Elkfrom an SSBIC to a Small Business Investment Company ("SBIC"). As such, Elk maynow lend to persons who are not "disadvantaged" so long as Elk's aggregate loansto Disadvantaged Concerns are at least equal to the remaining amount of Elk'sunamortized restricted capital account (the "Restricted Capital Account")resulting from the repurchase by Elk of its 3% Preferred Stock from the SBA. TheRestricted Capital Account was $256,916 at June 30, 1999, representing less than1% of Elk's loan portfolio of approximately $51,100,000 as of that date.

As of June 30, 1999, almost 95% of Elk's loans and investmentsqualified as loans to Disadvantaged Concerns. As a result of Elk's conversion toan SBIC, and as of June 30, 1999, Elk is only required to maintain less than$256,916 of its portfolio as loans to such persons. Accordingly, while Elkintends to continue to make loans to disadvantaged persons, particularly inconnection with the ownership of taxicabs and related assets especially in theNew York City and Chicago markets, where many of the borrowers may qualify asDisadvantaged Concerns, Elk intends to diversify its activities by lending andinvesting in a broader range of businesses eligible for investments by SBICsunder the 1958 Act ("Small Business Concerns"), many of which, it isanticipated, may not be Disadvantaged Concerns. In addition, Ameritrans, the newparent company, would have the ability to acquire or engage directly inbusinesses other than that of Elk, either directly or through Elk Capital orother subsidiaries it may form or acquire. See "INFORMATION CONCERNINGAMERITRANS."

To the best of its knowledge, Elk has never experienced any materiallosses of principal in connection with taxi financings since it began makingloans to the owners of New York City taxicab medallions, taxicabs and relatedassets in 1980, nor since it began making taxi medallion loans in Boston,Chicago, and Miami in 1995. Elk will continue to make loans in these marketswithout the historical restriction of lending solely to Disadvantaged Concerns.Loans made by Elk for the purpose of financing the purchase or continuedownership of taxicab medallions, taxicabs and related assets representedapproximately 79% of Elk's loan portfolio as of June 30, 1999. Loans made tofinance the acquisition and/or operation of other small businesses constitutethe balance of Elk's loan portfolio, and it intends to continue to make suchloans.

By agreement dated November 10, 1994, Elk repurchased all of the547,271 outstanding shares of its 3% preferred stock from the SBA for anaggregate price of $1,915,449, representing a

-12-

discount of 65% from the original aggregate issuance price of $10 per share.As a condition precedent to the repurchase, Elk granted the SBA a liquidatinginterest in a newly established restricted capital surplus account (the"Restricted Capital Account"). The Restricted Capital Account is equal to theamount of the net repurchase discount in which the SBA received a liquidatinginterest amortized over 60 months commencing November 10, 1994. However, if Elkis liquidated or if a material violation of SBA regulations occurs during theamortization period, the SBA would receive the remaining unamortized amount ofthe Restricted Capital Account prior to the stockholders of Elk receiving anyamounts on their Common Stock. The unamortized balance of the SBA's liquidatinginterest at June 30, 1999, was $256,916.

Elk, as a BDC, is required to file certain reports and otherinformation pursuant to the 1940 Act and the Securities Exchange Act of 1934(including annual and quarterly reports, and certain stockholder reports andproxy statements), with the SEC. Copies of such reports and information may beinspected and copied at the Public Reference Room of the SEC, 450 Fifth Street,N.W., Washington, D.C., 20549, as well as at the following regional offices: 7World Trade Center, 13th Floor, New York, New York

AMERITRANS CAPITAL CORP; N-14/A

10048; and 500 West MadisonStreet, Suite 1400, Chicago, Illinois, 60611. Copies of such material, or anyportion thereof, may be obtained from the Public Reference Branch, Office ofConsumer Affairs and Information Services, Securities and Exchange Commission,450 Fifth Street, N.W., Washington, D.C., 20549, at prescribed rates, or on theEDGAR web page of the SEC on the Internet at www.sec.gov. Elk's Common Stockis listed on the Nasdaq SmallCap Market and, after the Share Exchange,Ameritrans' Common Stock will be listed on the Nasdaq SmallCap Market. Reports,proxy statements and other information can also be inspected at the offices ofthe National Association of Securities Dealers, Inc., 1735 K Street, N.W.,Washington, D.C. 20006.

Elk registered under the 1940 Act for the fiscal year commencing July1, 1983, and has declared and paid dividends to holders of Common Stock for thefiscal years ended June 30, 1984 through June 30, 1992. Elk did not paydividends during the fiscal years ended June 30, 1993, 1994 and 1995. Elkrecommenced paying dividends for the fiscal year beginning July 1, 1995 andending June 30, 1996 and since that time, has paid dividends per share for thefiscal years ended June 30, 1996, 1997, 1998 and 1999 of $.73, $.74, $.57,and $.72 respectively. In December 1994 and September 1995 Elk raised additionalcapital of $450,000 and $1,249,585, respectively, less private placement costsof $76,445 and $21,482, respectively. These proceeds were used to repurchaseElk's 3% Preferred Stock held by the SBA pursuant to a preferred stockrepurchase agreement. In connection with the purchase, all dividends in arrearson the 3% Preferred Stock were extinguished.

In addition, during January 1998, Elk completed a private placement of462,000 shares of common stock at $6.50 per share for aggregate gross proceedsof $3,003,000 less offering expenses of $115,000. The net proceeds were utilizedto repay bank indebtedness and for working capital. A portion of the proceedswere temporarily used to reduce bank indebtedness, up to a maximum of $963,000,were allocated by Elk toward the organization and capitalization of its newparent company, Ameritrans, and Ameritrans' subsidiary Elk Capital.

Elk's Loans -- Elk obtained a license to operate as an SSBIC from theSBA on July 24, 1980. Until February 1997, as an SSBIC, Elk's primary businesswas to provide long-term loan funds at commercially competitive rates ofinterest (which at June 30, 1999, ranged from 8.25% to 18% per annum) topersons defined by SBA regulations as socially or economically disadvantagedpersons (or entities which are at least 50% owned by persons so defined), inconnection with the financing of diversified businesses. In February 1997, Elkentered into an agreement with the SBA (the "SBA Agreement") and amended itscertificate of incorporation, the effect of both of which steps converted Elkinto an SBIC. As an SBIC, Elk is permitted to lend to persons who are not"disadvantaged"

-13-

provided Elk maintains a level of loans to disadvantaged persons equal to theSBA's liquidating interest resulting from the 3% Preferred Stock repurchase.This limitation will terminate upon full amortization of the 3% Preferred Stockrepurchase discount, which is scheduled to occur in November 1999. Although Elk,as of June 30, 1999, was only required to have $256,916 of its total loanportfolio invested with "disadvantaged" persons, approximately 95%, or in excessof $48,500,000 of the portfolio, was so invested. Elk anticipates that itspresent ability to pursue investments and loans with persons who are not"disadvantaged" will afford it greater opportunities to make investments thatenhance Elk's profitability.

SBA Regulations set forth a ceiling on the interest rate that an SBICmay charge its borrowers. Currently, this ceiling is the higher of 19% for loansand 14% for debt securities or, alternatively, rates calculated with referenceto the weighted average cost of the SBIC's qualified borrowings, as determinedpursuant to SBA Regulations, or the SBA's current debenture rate. Themaximum rate of interest that Elk was permitted to charge under the SBARegulations as of June 30, 1999 was 19% for loans and 14% for debt securities.See " -- The Small Business Act of 1958."

To date, the large majority of Elk's loans have been made topurchasers or owners of New York City taxicab medallions (as described ingreater detail below). Since Elk commenced operations it has made $175over,000,000 in loans to New York City taxicab medallion owners. As of June 30,1999, approximately $19,800,000, or 39%, of the aggregate principal amountof its outstanding loans of $51,100,000 represented loans made to finance thepurchase or continued ownership of New York City taxicab medallions and relatedassets. An aggregate of approximately $15,800,000, or 31%, consisted of loansto finance the purchase or refinancing of taxi medallions in Chicago and thebalance of approximately $15,500,000, or 30%, consisted of loans to variouscommercial borrowers, of which approximately $2,700,000 was invested inBoston taxi medallion financing and $1,950,000 was invested in Miami taximedallion financing. See " -- Loan Portfolio; Valuation" below. Elk hasagreed with the

AMERITRANS CAPITAL CORP; N-14/A

SBA that it must maintain a non-taxi investment/loan portfolio(included with the combination of its assets acquired and receivables on assetsacquired in the future) in an amount not less than its outstanding SBAguaranteed leverage (i.e., debentures) issued since 1995, which amount iscurrently $2,470,000.

See "INVESTMENT POLICIES -- Concentration of Investments."

Although Elk has historically directed a significant portion of itsfinancing operations toward purchasers or owners of taxicab medallions in NewYork, the New York market has become increasingly more competitive, affordingElk more limited opportunities to make profitable loans. Commencing in 1995,Elk has been expanding its taxicab lending business into the Chicago, Boston,and Miami markets, where its taxi lending business has increased and continuedto be profitable.

Elk intends to continue to expand into new markets both in the taxiindustry as well as into other industries determined by management to offerinvestment opportunities. The loans that Elk plans to pursue will be made to avariety of businesses of all types provided that the loans made are in amajority of cases secured by real estate, business assets, equipment or othercollateral deemed adequate by management.

In connection with its lending to owners of taxicabs, Elk will,however, only make loans to borrowers who meet the standards required to operatethese vehicles by the New York City Taxi and Limousine Commission or otherregulatory agencies having jurisdiction in those markets where Elk engages inbusiness. Elk may revise the nature of its loan portfolio at such time as itsBoard of Directors determines, in its sole discretion, that such revision is inthe best interests of Elk in light of then existing business and financialconditions. Elk does not currently anticipate that its loan portfolio willrealize an annual turnover in excess of 50%. Elk will not lend to, or otherwiseinvest more than

-14-

the lesser of (i) 10% of its total assets, or (ii) 30% of its paid-in capitalattributable to its Common Stock in any one small business concern. Elk has notmade, and is prohibited by applicable SBA regulations from making, loans toofficers, directors or principal stockholders of Elk or "associates" of Elk,as such term is defined in applicable SBA regulations.

Short-Term Borrowings -- Elk is authorized to borrow money and issuedebentures, promissory notes and other obligations, subject to SBA regulatorylimitations. Other than the subordinated debentures issued to the SBA, Elk hasto date borrowed funds only from banks. As of June 30, 1999, Elk maintainedthree (3) lines of credit totaling $35,000,000. At June 30, 1999, Elk $31had,000,000 outstanding under these lines. In September 1999, Elk's banksapproved an increase in its credit lines to an aggregate of $40,000,000. Theloans, which mature through November 1999, bear interest based on an effectiverate of interest equal to approximately 150 basis points above LIBOR pluscertain fees. Upon maturity, Elk anticipates extending the lines of credit foranother year as has been the practice in previous years. Pursuant to the termsof the loan agreements, Elk is required to comply with certain terms, covenantsand conditions, and has pledged its loans receivable and other assets ascollateral for the lines of credit.

Pursuant to the SBA Agreement, Elk agreed to limit the aggregate of itsindebtedness based on a computation of a borrowing base each quarter. Theborrowing base computation is calculated to determine that the total amount ofdebt due on the senior bank debt and SBA debentures does not exceedapproximately 80% of the value of performing loans and investments in Elk'sportfolio. Loans that are more than 90 days in arrears are valued at a loweramount in computing the borrowing base.

In connection with the SBA Agreement, Elk has also entered into anintercreditor agreement (the "Intercreditor Agreement") and a custodianagreement (the "Custodian Agreement") with its banks and the SBA. Pursuant tothe Custodian Agreement, the banks and the SBA appointed Israel Discount Bank ofNew York as the custodian to hold certain notes, security agreements, financingstatements, assignments of financing statements, and other instruments andsecurities as part of the collateral for Elk's indebtedness to the banks and theSBA. The Intercreditor Agreement sets forth the respective rights and prioritiesof the banks and the SBA with respect to the repayment of indebtedness to thebanks and the SBA and as to their respective interests in the collateral.Pursuant to the Intercreditor Agreement, the banks consented to the grant by Elkto the SBA of a security interest in the collateral, which security interestranks junior in priority to the security interests of the banks.

Scope of Business Activities -- Elk has not purchased, and does notintend to purchase, commodities or commodity contracts and it has not engaged,nor does it intend to engage, in the business of underwriting the securities ofother issuers. In addition,

Elk does not intend to purchase any small businessexcept as may be necessary in the event of a foreclosure on the security for aparticular loan. Elk does not intend to engage in the purchase or sale of realestate (except to the extent necessary with respect to any defaulted loans, ordisposing of assets acquired) or in investments in the securities of otherinvestment companies.

As described above, Elk has been organized primarily to providelong-term loan funds to Small Business Concerns. While Elk has made, and intendsto continue to make loans for financing the purchase or continued ownership oftaxicab medallions, taxicabs and related assets, Elk intends to diversify itsinvestments into other businesses to the extent permitted by the 1958 Act andthe rules and regulations promulgated thereunder. If the Share Exchange Plan isapproved, Ameritrans intends to invest in businesses which would not qualify forinvestment by Elk under the 1958 Act.

Although Elk's certificate of incorporation provides Elk with theauthority to invest in the equity capital of Small Business Concerns, Elk makesequity investments in Small Business Concerns on a selective basis, and only toa limited extent. Equity securities in Elk's investment portfolio at June 30,1999 totaled $910,000 or 1.7% of total assets. Elk reserves the right,however, to make additional equity investments if determined by Elk's Board ofDirectors to be in the best interest

-15-

of Elk. Unless necessary to protect a prior investment of Elk that is atrisk, such equity investments shall not exceed 20% of Elk's total assets. Elkhas one (1) wholly-owned subsidiary, EAF Holding Corporation, formed in 1992,the sole activities of which are to own and operate certain real estate assetsacquired in satisfaction of loans.

SBIC Benefits

General. As an SBIC, Elk is eligible to receive certain financing fromthe SBA on favorable terms, and Elk and its stockholders are entitled tocertain tax benefits, both described below. The SBA has a certain amount ofdiscretion in determining the type and amount of financing that will be madeavailable to an SBIC. Therefore, there can be no assurance as to the nature andamount of SBA financing that may actually be obtained by Elk. Furthermore, thereare certain restrictions and requirements to which Elk is subject by virtue ofits being an SBIC.

Background. Small Business Investment Companies ("SBICs") were createdunder the 1958 Act as a vehicle for providing equity capital, long-term loanfunds and management assistance to small businesses. In general, the SBAconsiders a business to be "small," and therefore eligible to receive loans froman SBIC, only if (i) its net worth does not exceed $18,000,000 and if theaverage of its net annual income after taxes for the preceding two years was notmore than $6,000,000 or (ii) it meets the size standard for the industry inwhich it is primarily engaged, pursuant to SBA regulations. In addition, an SBICis required to allocate a portion of its portfolio to the financing of concernsthat (i) together with their affiliates do not have net worth in excess of $6million and do not have an average net income after taxes for the preceding twoyears in excess of $2 million or (ii) meet the size standard for the industry inwhich they are primarily engaged. SBICs are licensed, regulated and sometimesfinanced in part by the SBA.

Benefits. The principal benefits to Elk as a result of its beinglicensed as an SBIC are as follows:

The SBA is authorized to guaranty full repayment of all principal andinterest on debentures issued by an SBIC that makes loans to, or investmentsin, small businesses, to the extent of 300% of the SBIC's "LeverageableCapital," as defined in the applicable SBA Regulations. However, thepercentage of allowable leverage decreases if the SBIC's Leverageable Capitalexceeds $15,000,000. The term of such debentures is typically 10 years. The SBAwill guarantee such debentures only after such an SBIC has demonstrated a needfor such debentures as evidenced by the SBIC's investment activity and itslack of sufficient funds available for investments; provided, however, that anSBIC that has invested at least 50% of its Leverageable Capital andoutstanding leverage shall be presumed to lack sufficient funds available forinvestment. Generally, such debentures will bear interest at a fixed rate thatis based on the rate which is set by the underwriters of the pooled debenturessold through SBIC Funding Corp.

With respect to debentures guaranteed after July 1, 1991, the SBA'sclaim against an SBIC is subordinated, in the event of such SBIC's insolvency,only in favor of present and future indebtedness outstanding to lenders and onlyto the extent that the aggregate amount of such indebtedness does not exceed thelesser of 200% of such SBIC's paid-in capital and paid-in surplus (as adjustedpursuant to SBA regulations), or $10,000,000. However, the SBA may agree to asubordination in favor of one or

AMERITRANS CAPITAL CORP; N-14/A

more loans from certain lenders, in its solediscretion. Pursuant to the SBA Agreement and the Intercreditor Agreement, theSBA agreed to a subordination in favor of Elk's banks; provided, however, thatElk is required to keep its overall debt to certain levels based upon theperformance of its portfolio.

-16-

Selected Financial Information

The following financial information has been derived in part from andshould be read in conjunction with, Elk's consolidated financial statements andthe related notes for the years ended June 30, 1999, 1998 and 1997, which areincluded in the Statement of Additional Information, which has been filed withthe SEC and has been distributed to Elk stockholders along with this ProxyStatement/Prospectus.

| Statement of Operations Data | Fiscal Year Ended June 30, | | | | |
|---|---|---|---|---|---|
| | 1995 | 1996 | 1997 | 1998 | 1999 |
| | ---- | ---- | ---- | ---- | ---- |
| Investment Income | $2,629,901 | $3,084,412 | $4,023,795 | $4,606,456 | $5,583,894 |
| | ---------- | ---------- | ---------- | ---------- | ---------- |
| Interest Expense | 1,002,959 | 1,105,993 | 1,582,700 | 1,840,731 | 2,440,051 |
| Other Expenses | 960,474 | 1,108,505 | 1,408,034 | 1,852,262 | 1,903,182 |
| | ---------- | ---------- | ---------- | ---------- | ---------- |
| Total Expenses | 1,963,433 | 2,214,498 | 2,990,734 | 3,692,993 | 4,343,233 |
| | ---------- | ---------- | ---------- | ---------- | ---------- |
| Investment Income Before Credit (provision) for Loan Gains (losses) and Gains (Losses) on Assets Acquired and Income Taxes | 666,468 | 869,914 | 1,033,061 | 913,463 | 1,240,661 |
| | ---------- | ---------- | ---------- | ---------- | ---------- |
| Credit (provision) for Loan Gains (losses) and Gains (Losses) on Assets Acquired(1) | (13,515) | 44,292 | (8,923) | (14,649) | (11,272) |
| Other Income | | | 24,885 | 38,798 | 7,200 |
| Benefit of (Provision for) Income Taxes(2) | -- | (5,945) | (28,676) | (3,271) | 769 |
| | ---------- | ---------- | ---------- | ---------- | ---------- |
| Net Income | $652,953 | $908,261 | $1,020,347 | $934,341 | $1,237,358 |
| Net Income Per Common Share (Basic and Diluted) | $  .66 | $  .73 | $  .79 | $  .62 | $  .71 |
| | ======== | ======== | ========== | ======== | ========== |
| Common Stock Dividends Paid | $  -- | $937,028 | $946,655 | $986,724 | $1,256,832 |
| | ======== | ======== | ======== | ======== | ========== |
| Weighted Average Shares of | | | | | |

| Common Stock | | | | | |
|---|---|---|---|---|---|
| Outstanding  - Basic | 988,953 | 1,247,120 | 1,283,600 | 1,518,969 | 1,745,600 |
|             - Diluted | | | | | 1,750,684 |
| | ======= | ========= | ========== | ========= | ========= |

(1) Reference is made to Elk's Statements of Income for information on annualprovisions for loan loss reserves and losses on assets acquired. It shouldbe noted that the provision for loan losses and losses on assets acquiredreflects the amounts taken in accordance with generally accepted accountingprinciples. The actual amount of loans written off or (recoveries) forincome tax purposes were $78,000, ($24,000), ($24,000) and $222,748 for theyears ended June 30, 1995, 1996, 1997 and 1998, respectively. It isestimated that the amount of loans written off for income tax purposes forthe year ended June 30, 1999 will be $146,465. See "LOAN PORTFOLIO;VALUATION -- Collection Experience".

-17-

(2) Elk, since the fiscal year ended June 30, 1984, has elected and qualified tobe taxed as a regulated investment company and substantially all taxableincome was required to be distributed to stockholders. Therefore, onlyminimal taxes were required to be paid.

-18-

Loan Portfolio; Valuation

The following table sets forth a classification of Elk's outstandingloans as of June 30, 1999:

| TYPE OF LOAN | Number of Loans | Interest Rate | Maturity Date (in months) | Balance Outstanding June 30, 1999 |
|---|---|---|---|---|
| ------------ | -------- | ---- | ------- | ------------- |
| New York City: | | | | |
| Taxi medallion | 123 | 8.25-12% | 1-240 | $19,818,871 |
| Radio car service | 34 | 1-15% | 1-59 | 285,562 |
| Chicago taxi medallion | 417 | 11-15% | 15-84 | 15,825,539 |
| Boston taxi medallion | 25 | 9.25-14% | 21-60 | 2,717,995 |
| Miami taxi medallion | 38 | 12-18% | 100-120 | 1,943,335 |
| Other loans: | | | | |
| Restaurant | 2 | 10-12% | 1-66 | 243,629 |
| Hairdresser | 2 | 12% | 7 | 97,836 |
| Car wash | 1 | 11.5% | 36 | 214,234 |
| Ambulance service | 1 | 10.5% | 6 | 4,907 |
| Bagel store | 1 | 14% | 37 | 22,123 |
| Dry cleaner | 25 | 9-18% | 31-120 | 3,657,590 |
| Laundromat | 19 | 10-17% | 12-120 | 3,951,498 |
| Laundry equipment | 1 | 9.5% | 51 | 170,333 |
| Financial services | 1 | 14% | 3 | 4,980 |
| Black car service (real property) | 1 | 12% | 23 | 196,132 |
| Auto sales | 3 | 10.5-13% | 1-43 | 477,839 |
| Registered investment advisor | 1 | 14% | 3 | 169,012 |
| Embroidery manufacturer | 1 | 12% | 53 | 84,814 |
| Theater | 1 | 16% | 53 | 166,492 |
| Retirement home | 1 | 15% | 78 | 300,000 |
| Garden Center | 1 | 14% | 90 | 431,304 |
| Auto Center | 1 | 12% | 78 | 122,536 |
| Commercial Construction | 1 | 16% | 80 | 197,371 |
| | --- | | | ----------- |
| Total Loans Receivable | 701 | | | $51,103,932 |
| | === | | | ========== |

Loans made by Elk to finance the purchase or continued ownership oftaxi medallions, taxicabs and related assets are typically secured by suchmedallions, taxicabs and related assets. Loans made by Elk to finance theacquisition and/or operation of retail or manufacturing businesses are

Eric Nitz

AMERITRANS CAPITAL CORP; N-14/A

-19-

typically secured by real estate and other assets. In the case of loans to corporate owners, the loans are almost always personally guaranteed by the stockholders of the borrower. Elk generally obtains first mortgages, but occasionally has participated in certain financings where it has obtained a second mortgage on collateral. Elk has obtained a relatively higher rate of interest in connection with these subordinated financings. Elk has not committed more than 5% of its assets to any one business concern in Elk's portfolio. The interest rate charged by Elk on its currently outstanding loans ranges from 8.25% to 18% per annum. As of June 30, 1999, the average annual weighted rate per loan was approximately 11.0%. The average term of Elk's currently outstanding loans is approximately 48 months.

Valuation -- As an SBIC, Elk is required by applicable SBA regulations to submit to the SBA semi-annual valuations of its investment portfolio, as determined by its Board of Directors, which considers numerous factors including but not limited to the financial strength of its borrowers to determine "good" or "bad" status, and fluctuations in interest rates to determine marketability of loans. Reference is made to Footnotes 1, 2, and 3 of Notes to Financial Statements for the year ended June 30, 1999, for a discussion of Elk's method of valuation of its current portfolio of loans. In the event Elk invests in the future in securities for which price quotations are readily available, Elk will value such investments at their fair market value, based on such quoted prices. With respect to securities for which price quotations are not readily available, such securities will be valued at fair market value as determined by the Board of Directors.

Collection Experience -- Elk has historically had a greater success with taxi medallion financings than financings made in the radio car service business or in its diversified (non-taxi) loan portfolio. Substantially all of Elk's provisions for loan losses and losses on assets acquired that occurred during the period of 1991 through 1994 were related to business loans secured by real estate and radio car loans. In addition, during the period 1991 through 1995, Elk had difficulty selling off real estate acquired on defaulted loans as a result of a depressed real estate market. To its knowledge, Elk has never had a material loss of principal in any taxi medallion loan.

Taxi Medallion Finance Industry and Market Overview

The New York City Taxi Medallion Industry and Market. Under current law, the number of taxi medallions that may be issued by New York City is limited to 12,187. There are two types of medallions: corporate and individual owner-driver. Of the total of 12,187 medallions, 7,058 are corporate medallions and 5,129 are for individually owned cabs. A corporate medallion is issued for a cab owned by a corporation that owns a minimum of two cabs and two corporate medallions (i.e., one corporate medallion per cab). An individual owner-driver may not own more than one cab and one medallion. Corporate medallions are used by large fleet concerns with many taxis and many drivers or by small corporations owning at least two medallions and two taxis driven by two owner-drivers (the so-called "minifleet").

Only 11,787 medallions could be issued until August 8, 1995, when a law permitting the issuance of up to 400 additional taxi medallions over a three-year period went into effect. The New York City Taxi and Limousine Commission (the "TLC") conducted the sale of 133 medallions in May 1996, 133 medallions in October 1996, and 134 medallions on October 1, 1997. Of these new medallions, 160 were sold to individuals and the balance to minifleets in lots of two.

At the present time, most medallion sales are handled through brokers. As a result, an active marketplace has developed for the purchase and resale of medallions. The price of a medallion varies with supply and demand. Elk's most recent experience, in June 1999, was that individually owned medallions sold for approximately $210,000 and corporate medallions sold for approximately

-20-

$260,000 each. In addition, a 5% New York City transfer tax and various brokerage commissions are additional expenses incurred in the acquisition and sale of a medallion.

Based upon statistics obtained from the TLC, from 1989 through 1998, the number of corporate medallions that were resold by their holders varied each year from approximately 245 to 440, which suggests that there were between 122 and 220 minifleet corporations in need of financing each year, while the number of individual owner medallions sold each year varied from 250 to 415. Assuming that a typical minifleet financing for purchases of medallions might involve a sum of approximately $450,000,

AMERITRANS CAPITAL CORP; N-14/A

the dollar volume of New York City minifleet financings might range from $49 million to $88 million a year. Assuming that a typical individual medallion financing for a purchase of a medallion involves a sum of approximately $180,000, the dollar volume of New York City individual medallion financing might range from $45 million to $75 million a year.

In addition to financings for purchases and sales of medallions, a substantial market exists for refinancing the indebtedness of existing minifleet or individual medallions. Management estimates this market to exceed that of the market for financing transfers, and to be in excess of $100,000,000 per year.

A prospective medallion owner must meet the requirements of the TLC, which approves all sales and transfers. In general, the requirements are that the prospective owner have no criminal record, that the purchase funds be derived from legitimate sources, and that the taxi vehicle and meter meet specifications set by the TLC. Also required is a clearance from prior insurers of the seller in the form of letters stating that there are no outstanding claims for personal injuries in excess of insurance coverage.

New York Marketing Strategy for Medallion Financing. Medallion transfers in the New York City market are usually handled through medallion brokers, who have frequent contact with taxi owners and drivers. Medallion brokers locate buyers for sellers of medallions and sellers for buyers of medallions, and then typically employ a financing broker to arrange for the financing of the medallion purchases. In many cases the medallion broker and the financing broker are the same party or related parties.

Elk has received a significant number of referrals from certain medallion brokers in New York. Elk also receives referrals from financing brokers and its borrowers. In addition, Elk occasionally places advertisements in local industry newspapers and magazines. Elk also uses brokers, advertising and referrals in connection with its taxi lending business in the Chicago, Boston, and Miami markets.

Chicago Taxi Medallion Industry and Market. As part of its geographic diversification strategy, Elk studied the Chicago taxi medallion market in 1994, and began making loans in Chicago in April, 1995. The taxi market and medallion system in Chicago is regulated by the City of Chicago Department of Consumer Services, Public Vehicle Operations Division. The number of taxi medallions is limited by city ordinances, and until 1988, these ordinances gave control of 80% of the medallions to the two largest taxi operators in Chicago, Yellow Cab Co., and Checker Taxi Co., Inc.

Since 1988, the taxi industry in Chicago has shifted toward more individual ownership. Over the succeeding 10 years, the Yellow Cab Co. and Checker Taxi Co., Inc., pursuant to a new ordinance, gave 1,300 medallions back to the City, and the City added 100 medallions each year. These medallions were distributed in a lottery system to taxi drivers who had never owned a medallion. By July, 1997, there were a total of 5,700 medallions issued in Chicago, of which

-21-

Yellow Cab Co. owned approximately 2,071, and the remaining 3,629 were owned by individual owner drivers, or by individual operators who had purchased multiple medallions.

In December, 1997, the City Council increased the number of medallions by 1,000 additional medallions, to be issued over a period of the succeeding three years. Of these medallions, 500 will be issued in lotteries to taxi drivers who never owned a medallion, and the other 500 will be auctioned to the highest bidder. In the November 1998 auction of 150 medallions, there were 499 bids to purchase medallions, and the winning bid prices ranged from $57,000 $63 to,000 per medallion. In August 1999, 150 medallions were auctioned, there were more than 1,400 bids, and the winning bid prices ranged from $67,000 to $71,000. The prices at these auctions were approximately the same as open market prices for taxi medallions that were sold in Chicago at same times.

On January 21, 1999, the Yellow Cab Co. auctioned 175 medallions in a sealed bid auction at prices equal to the current open market value price for medallions. The Yellow Cab Co. is continuing to sell a limited number of medallions at current open market prices, in order to become a medallion service business serving the individual owner drivers who acquire the medallions.

It has been Elk's experience that as the Chicago market has expanded, it has also become more competitive. In addition, as the City of Chicago and now Yellow Cab Co. supply medallions to the market place, Elk expects that the taxi medallion market will continue to grow, with more and more owner-drivers and individual owner-operators of multiple medallions. To the extent that

Eric Nitz

AMERITRANS CAPITAL CORP; N-14/A

there aremore owner-operators and individual owner-operators of multiple medallions inthe market, Elk believes that there will be increased opportunities for us toserve this market.

Chicago city regulations set forth certain qualifications that allowners of taxi medallions must meet, and require that all security interests inmedallions be registered with the Department of Consumer Services. TheDepartment of Consumer Services also is involved (along with the City Council)in setting taxi fares, and in setting maximum lease rates that may be charged byowners to lessees of taxis, who drive them on a daily, weekly, or monthly basis.

Chicago Marketing Strategy for Medallion Financing. At the presenttime, most medallion sales in Chicago are handled through brokers or attorneys.An active market place has developed in Chicago for the purchase and resale ofmedallions. Elk's most recent experience, in April 1999, was that medallionswere selling for between $60,000 and $65,000 per medallion. In addition, theCity of Chicago imposes a 5% transfer tax on a medallion held for two years ormore, a 10% transfer tax on a medallion held for between one and two years, anda 25% transfer tax on a medallion held less than one year. The recent impositionof the transfer taxes, in addition to being a source of revenue to the City, wasalso scaled in order to inhibit speculation in the purchase and resale of taximedallions without the intent of actually operating taxis.

Elk believes that as many as 1,000 medallions are bought each year bypurchasers, and at today's market value, this would give gross potential volumeof approximately $65,000,000. If 80% of these purchases were financed, theannual market for loans to purchase medallions would be $52,000,000 per annum.In addition to purchases and sales of medallions, a substantial market existsfor refinancing the indebtedness of existing owners. Based on the number ofmedallions currently issued and to be issued, Elk believes the market forfinancing transfers could exceed $60,000,000 per year.

Boston Taxi Medallion Industry and Market. Elk began to review theBoston taxi market in the fall of 1994 and began making loans in this market in1995. Since 1930, the Boston Police Commissioner has had exclusive jurisdictionover the regulation of taxi operations,

-22-

including the issuance and transfer of medallions. The Hackney Carriage Unit ofthe Boston Police Department deals with taxi regulatory issues.

By statute, the number of medallions issued in the City of Boston maynot exceed 1,525, subject to increase or decrease in the Police Commissioner'sdiscretion. The number of medallions remained essentially unchanged from thelate 1940's until January 1999, when the City sold 75 additional medallions atauction. Prices at this auction exceeded $140,000 per medallion. The City ofBoston has announced that it will auction another 75 medallions in September1999.

Under the applicable statutes and rules, Boston taxi medallions areassignable, subject to the approval of the Police Commissioner. In practice,transfer applications are submitted to the Hackney Carriage Unit, which hasissued guidelines and forms for transfers. Loans by financial institutions orindividuals are secured by taxi medallions and assets are routinely allowed inaccordance with the Hackney Carriage Unit's "Procedures for Recording SecuredParty Interest."

Boston Marketing Strategy for Medallion Financing. The Boston taximarket services the City of Boston, which includes Logan Airport. Elk'smarketing efforts have included retention of a local attorney, advertising inthe CARRIAGE NEWS, a local trade newspaper, and the use of forwarding brokers.Elk's efforts have resulted in a loan portfolio of approximately $2,700,000 asof June 30, 1999.

Medallion Industry in Metro-Dade County (Miami Area), Florida. Elkbegan to investigate the Miami area taxi market in 1995, and began making loansin 1996. The Miami taxi industry has been regulated on a county-wide basis inMetro-Dade County, Florida since 1981. The Passenger Transportation RegulatoryDivision (the "PTRD") of the Metro-Dade County Consumer Services Divisionoversees taxi operations and licenses in accordance with the Metro-Dade CountyCode.

Until April 1999, each taxi operator in Metro-Dade County was requiredto obtain a "For-Hire" license. The number of licenses was limited to onelicense for each 1,000 of population in the county. With approximately 2,100,000residents in the county, 2,100 licenses could have been issued; however, only1,827 licenses are currently authorized, of which 1,824 have been issued. In1991, a For-Hire license loan program was approved, authorizing the use of loansto purchase (but not to refinance) licenses

AMERITRANS CAPITAL CORP; N-14/A

and taxis. Any lender must be a licensed lending institution authorized to do business in Florida. Elk is currently one of only two lending institutions that are authorized to make loans to the taxi industry in Metro-Dade County. Transfers of licenses and financing arrangements are subject to prior approval by the PTRD and the County Board of Commissioners.

For-Hire licenses were considered a privilege, not a property right. However, since licenses were limited in number, the marketplace created a "market price" or value in connection with the transfer of the license right to a purchaser. As of April 1999, the Metro- Dade County Code was amended to create a "medallion," or property right, system with a view to attracting traditional financing providers to provide the taxi industry with additional funding sources. Existing For-Hire licenses were automatically converted into medallions.

According to official Metro-Dade County publications, approximately one-third of the currently outstanding licenses are owned by individuals or corporations that own and operate only one license. Other than 106 licenses held by one owner, the balance of the licenses are owned mainly by holders of from two to five licenses. The number of license transfers has been generally increasing in recent years, with a high of 197 transfers in 1997, with an average

-23-

reported price of $51,658. However, Elk believes that the present market price of licenses/medallions in Metro-Dade County is between $65,000 and $70,000 per medallion.

Miami Area Marketing Strategy for Medallion Financing. Elk believes that the recent change to a medallion system and an emphasis on individual operator-ownership of medallions for the future will open a large new market for taxi medallion financing in the Miami area. Since this is an emerging market, Elk is currently developing strategies to develop contacts and market Elk's financing to potential purchasers of medallions, and in the event refinancing is permitted, to those owners who may wish to refinance their medallions in the future. As of June 30, 1999, the total principal amount of Elk's outstanding taxi loans in the Miami area was approximately $1,950,000.

Commercial (Non-Taxi) Loans -- Overview

Elk began making loans to diversified (non-taxi) small businesses ("Commercial Loans") in the New York City metropolitan area in 1985, in order to diversify its loan portfolio, which until that time had consisted almost entirely of loans to owners of New York City taxi medallions. After a period of losses in its Commercial Loan portfolio from 1991 to 1994, Elk has been increasing this portfolio on a selective basis since 1995, with a concentration on loans to operators of retail dry cleaners and laundromats. Recently, Elk has also begun geographically expanding its Commercial Loan portfolio, with loans in South Florida, Massachusetts, and North Carolina.

Elk has chosen to concentrate its Commercial Loan portfolio in loans secured by retail dry cleaning and coin-operated laundromat equipment because of certain characteristics similar to taxi medallion lending that make these industries attractive candidates for profitable lending. These factors include:

(i) relatively high fixed rates of interest ranging from approximately 325 to 700 basis points over the prevailing Prime Rate at the time of origination, (ii) low historical repossession rates, (iii) vendor recourse in many cases, (iv) significant equity investments by borrowers, (v) an active market for repossessed equipment, and for resale of businesses as going concerns through transfers of the leasehold and business equipment to new operators, and (vi) a collateral service life that is frequently twice as long as the term of the loans. Elk estimates that there are approximately 4,000 retail dry cleaners and approximately 3,000 laundromats in the New York City metropolitan area. In addition, Elk believes that specialization in the dry cleaning and laundromat industries will permit relatively low administrative costs because documentation and terms of credit are standardized, and the consistency among the loans has simplified credit review and portfolio analysis.

Elk further believes that other niche industries with similar characteristics will provide additional loan portfolio growth opportunities. Elk's other Commercial Loans are currently spread among other industries, including auto sales, retirement home, garden center, commercial construction, car wash, theater, restaurant, and financial services.

Elk's Commercial Loans finance either the purchase of the equipment and related assets necessary to open a new business or the purchase or improvement of an existing business, and Elk has originated Commercial Loans in principal amounts up to

AMERITRANS CAPITAL CORP; N-14/A

$1,000,000. Elk generally retains these loans, although from time to time it sells participation interests in its loans to diversify risk, or purchases participation interests in loans generated by other SBICs.

Competition

Banks, credit unions, and other finance companies, some of which are SSBICs and SBICs, compete with Elk in the origination of medallion loans and commercial installment loans. Finance

-24-

subsidiaries of equipment manufacturers also compete with Elk. Many of these competitors have greater resources than Elk and certain competitors are subject to less restrictive regulations than Elk. As a result, Elk expects to continue to encounter substantial competition from such lenders, many of which are well-established. Therefore, there can be no assurance that Elk will be able to identify and complete financing transactions that will permit it to compete successfully.

Investment Policies

The investment policies set forth herein constitute fundamental policies of Elk pursuant to the 1940 Act, which may be changed only by the vote of the lesser of (i) a majority of its outstanding Common Stock, or (ii) 67% of the number of shares of Common Stock present in person or by proxy at a duly held stockholder meeting at which at least 50% of the outstanding shares of Common Stock are present.

(a) Issuance of Senior Securities. Elk may issue subordinated debentures to the SBA in the maximum amounts permissible under the 1958 Act and the applicable regulations.

(b) Borrowing of Money. Elk has the power to borrow funds from banks, trust companies, other financial institutions, the SBA or any successor agency and/or other private or governmental sources, if determined by Elk's Board of Directors to be in its best interests.

(c) Underwriting. Elk has not engaged, and does not intend to engage, in the business of underwriting the securities of other issuers.

(d) Concentration of Investments. Elk may not concentrate 25% or more of its total assets in securities of issuers in any industry group except the taxicab industry. Elk will make at least 25% of its investments for financing the purchase or continued ownership of taxicab medallions, taxicabs and related assets. The balance of its investments includes, and Elk intends to continue to finance, the acquisition and/or operation of other small businesses.

(e) Real Estate. Elk has not engaged, and does not intend to engage, in the purchase and sale of real estate. However, Elk may elect to purchase and sell real estate in order to protect any of its prior investments which it considers at risk.

(f) Commodities Contracts. Elk has not engaged, and does not intend to engage, in the purchase and sale of commodities or commodities contracts.

(g) Loans. Elk has made, and will continue to make, loans to Small Business Concerns in accordance with the provisions of the 1958 Act and the regulations issued by the SBA thereunder.

(h) Writing Options. Elk has not engaged, and does not intend to engage, in the writing of options.

(i) Short Sales. Elk has not engaged, and does not intend to engage, in short sales of securities.

(j) Purchasing Securities on Margin. Elk has not engaged, and does not intend to engage, in the purchase of securities on margin.

(k) Futures Contracts. Elk has not engaged, and does not intend to engage, in the purchase or sale of futures contracts.

(l) Restricted Securities. Elk may invest up to 100% of its assets in restricted securities.

Eric Nitz

AMERITRANS CAPITAL CORP; N-14/A

-25-

(m) Types of Investments. Although Elk was organized primarily to provide long term loan funds to Small Business Concerns, Elk's certificate of incorporation provides Elk with the authority to invest in the equity capital of Small Business Concerns. Accordingly, Elk may make equity investments in Small Business Concerns if determined by its Board of Directors to be in the best interests of Elk. Further, except as otherwise provided by applicable regulations, there shall be no limitation on the amount of equity investments Elk may make.

(n) Maximum Investment. Elk will not lend or otherwise invest more than the lesser of (i) 10% of its total assets or (ii) 30% of its paid-in capital attributable to its Common Stock with respect to any one Small Business Concern.

(o) Percentage of Voting Securities. The percentage of voting securities of any one Small Business Concern which Elk may acquire may not exceed 49% of the outstanding voting equities of such Small Business Concern.

(p) Management Control. Elk does not intend to invest in any company for the purpose of exercising control of management. However, Elk may elect to acquire control in order to protect any of its prior investments which it considers at risk.

(q) Investment Companies. Elk has not invested, and does not intend to invest, in the securities of other investment companies.

(r) Portfolio Turnover. Elk intends to make changes in its portfolio when, in the judgment of its Board of Directors, such changes will be in the best interest of Elk's stockholders in light of the then existing business and financial conditions. Elk does not anticipate that its loan portfolio will realize an annual turnover in excess of 50%, although there can be no assurance with respect thereto.

The Small Business Investment Act of 1958

As the holder of a license from the SBA to operate as an SBIC, Elk qualifies for certain financing from the SBA on favorable terms as described above under the heading "Certain Financial Information," but is subject to certain restrictions and requirements under the 1958 Act and regulations promulgated by the SBA under such act (the "SBA Regulations"). These restrictions and requirements include, but are not limited to, the following:

(i) The interest rate charged by an SBIC on loans to small businesses may not exceed the higher of either an SBIC's certified weighted average cost of qualified borrowings, computed in accordance with SBA Regulations, or the current debenture rate, plus, in either case, seven (7) percentage points, rounded off to the next lower eighth of one percent; provided, however, that if the current debenture rate is 8% per annum or lower, an SBIC is permitted to charge up to 15%.

(ii) The aggregate commitments by an SBIC to any single small business enterprise may not exceed 30% of the aggregate paid-in capital and paid-in surplus of the SBIC.

(iii) Management and advisory services must be performed by an SBIC in accordance with a written contract and certain record-keeping requirements must be satisfied.

(iv) The term of SBIC loans to small businesses may not exceed 20 years.

-26-

(v) Prior written consent of the SBA is required in the event of any proposed transfer of control of an SBIC and any proposed transfer of 10% or more of any class of an SBIC's stock ownership by any person or group of persons acting in concert owning 10% or more of any class of an SBIC's stock.

(vi) Limitations are imposed on the ability of the officers, directors, managers or 10% stockholders of an SBIC to become an officer, director, manager or 10% stockholder of another SBIC.

(vii) Prior written consent of the SBA is required in the event of a merger, consolidation or reorganization of an SBIC.

(viii) SBIC funds in excess of $2,000 not invested or loaned to small businesses and not applied to the conduct of its operations are required to be deposited in, or invested in time deposits of, federally-insured banks.

Eric Nitz

(ix) Corporate SBICs issuing debentures after April 25, 1994are required to amend their articles of incorporation to indicate thatthey have consented, in advance, to the SBA's right to require theremoval of officers or directors and to the appointment of the SBA orits designee as receiver of the SBIC for the purpose of continuing tooperate the company upon the occurrence of certain events of default.The regulations divide the events of default into three categories.

The first category consists of three events that automaticallyaccelerate all outstanding debentures without notice or demand to the SBIC, andallow the SBA to apply for receivership of the SBIC without the SBIC'sobjection. The events are insolvency, a voluntary assignment for the benefit ofcreditors, and the filing of a voluntary or involuntary petition for reliefunder the Bankruptcy Code.

Under the second category, upon written notice, the SBA may demandimmediate repayment or redemption of all outstanding debentures or take anyother action permitted under the 1958 Act, specifically including institution ofproceedings for the appointment of the SBA or its designees as a receiver of theSBIC. Nine (9) violations are included in this category, and no opportunities tocure the default are afforded the SBIC. This category of violations includes:

fraud; fraudulent transfers; willful conflicts of interest; willfulnon-compliance of one or more of the substantive provisions of the 1958 Act orof a substantive regulation; repeated events of default; transfer of control;non-cooperation with remedial steps that the SBA may prescribe; non-notificationof events of default; and non-notification of events of default to others. Forthe first six (6) violations listed above the SBIC will have consented to theSBA's right to require the SBIC to replace officers or directors, with personsapproved by the SBA, and to the SBA's appointment as receiver for the purpose ofcontinuing operations.

Under the third category, which includes nine (9) violations, the SBAaffords the SBIC the opportunity to cure its violations. If the SBIC fails tocure to the SBA's satisfaction, the SBA may declare the SBIC's entireindebtedness evidenced by the debentures to be immediately due and payable. Theviolations in this category include: excessive compensation; improperdistributions; failure to make a timely payment of an SBA obligation; failure tomaintain minimum regulatory capital; capital impairment; failure to pay anyamount when due on any obligation greater than $100,000; nonperformance orviolation of the terms and conditions of any note, debenture, or otherobligation of the SBIC issued to, held or guaranteed by the SBA, or of anyagreement with, or conditions imposed by, the SBA; failure to comply with one ormore of the substantive provisions of the 1958 Act or regulations thereunder;and failure to maintain certain investment ratios for leverage in excess of 300%of Leverageable Capital, as defined in the 1958 Act. For the first threeviolations

-27-

listed above, if an SBIC fails to cure such violations the SBA can require theremoval of officers and directors and/or the appointment of its designee asreceiver of the SBIC.

In addition, if an SBIC repeatedly fails to comply with one or more"non-substantive" provisions of the 1958 Act or the regulations thereunder, theSBA, after written notification and until such condition is cured, may denyadditional leverage to such SBIC and/or require such SBIC to take such actionsas the SBA may determine to be appropriate under the circumstances. If the SBArequires the licensee to bring itself into full compliance and it fails to doso, the SBA may accelerate its leverage and take other remedies, including areceivership.

(x) As with debentures, corporate SBICs issuing preferredstock after April 25, 1994 are required to amend their articles ofincorporation to indicate that they have consented, in advance, to theSBA's right to require the removal of officers or directors and to theappointment of the SBA or its designees as receiver of the SBIC for thepurpose of continuing to operate the SBIC upon the occurrence ofcertain events of default. The regulations divide the events of defaultinto four (4) categories.

The first category consists of six (6) events, the occurrence of any ofwhich will permit SBA, upon notice to the SBIC, to require the SBIC to replace,with individuals approved by the SBA, one or more of its officers and/ordirectors. In addition, the SBA can apply for the institution of an operatingreceivership, with the SBA or its designee as receiver. The events are:

equitable or legal insolvency, or a capital impairment percentage of 100% ormore and such capital impairment is not cured within the time limits set by theSBA in writing; a voluntary assignment for the benefit of creditors; the filingof a voluntary or involuntary petition for relief under the bankruptcy code;transfer of control; fraud; and fraudulent transfers.

AMERITRANS CAPITAL CORP; N-14/A

The second category consists of willful conflicts of interest; willfulor repeated non-compliance with one or more of the substantive provisions of the1958 Act or any substantive regulation promulgated thereunder; and failure tocomply with a restriction imposed on the SBIC pursuant to the third category.Upon the occurrence of any such event, and only if the SBIC fails to remove theperson(s) the SBA identifies as responsible for such occurrence and/or cure suchoccurrence to the SBA's satisfaction within a time period determined by the SBA,upon written notice, the SBA may replace one or more of the SBIC's officersand/or directors or obtain the appointment of the SBA or its designee asreceiver of the SBIC.

The third category lists eleven (11) events, the occurrence of any ofwhich will allow the SBA, on written notice to the SBIC, to prohibit the SBICfrom making any additional investments except for investments pursuant tolegally binding commitments entered into by the SBIC prior to such notice and,subject to the SBA's prior written approval, investments that are necessary toprotect the SBIC's investment; to prohibit distributions by the SBIC to anyparty other than the SBA, its agent or trustee, until all leverage is redeemedand amounts due are paid; to require all commitments to the SBIC to be funded atthe earliest time(s) permitted in accordance with the SBIC's articles oforganization; and to review and re-determine the SBIC's approved managementcompensation. This category of events includes the occurrence of any eventlisted in the first two categories; the SBIC's failure to maintain its minimumregulatory capital; capital or liquidity impairment and failure to cure theimpairment within time limits set by SBA in writing; improper distributions;excessive compensation; failure to pay any amounts due under preferredsecurities, unless otherwise permitted by the SBA; noncompliance with one ormore of the substantive provisions of the 1958 Act, or any substantiveregulation promulgated thereunder; failure to maintain diversity betweenmanagement and ownership, if applicable to such SBIC; failure to maintaininvestment ratios for leverage in excess of 300% of Leverageable Capital orpreferred securities in excess of 100% of Leverageable Capital, if applicable tosuch SBIC, as of the end of each fiscal year; nonperformance of one or more ofthe terms and conditions of any preferred security or of any agreement with orconditions imposed by

-28-

SBA in its administration of the 1958 Act and the regulations promulgatedthereunder; and failure to take appropriate steps to accomplish such actions asthe SBA may have required for repeated non-substantive violations of the 1958Act or the regulations promulgated thereunder.

Under the fourth category if an SBIC repeatedly fails to comply withany one or more of the non-substantive provisions of the 1958 Act or anynon-substantive regulation promulgated thereunder, the SBA, after writtennotification to the SBIC and until such condition is cured to the SBA'ssatisfaction, can deny additional leverage to such SBIC and/or require such SBICto take such actions as the SBA may determine to be appropriate under thecircumstances.

(xi) An SBIC may not control (as such term is defined underapplicable SBA Regulations) its investee companies except to the extenttemporarily required to protect its investment. Additionally, SBARegulations require SBICs to conduct active operations. An SBIC isinactive and thus violates SBA Regulations if at the close of anyfiscal year it has more than 25% of its assets in idle funds and if ithas failed to provide financing aggregating 25% of the average amountof its idle funds during the past eighteen months. The SBA requires theSBIC to submit written justification of such inactivity.

(xii) As part of the regulatory framework, SBICs are subjectto examinations by SBA agents at least bi-annually and are required topay examination fees and maintain certain records, files, internalcontrol programs and reports. Moreover, the SBA is authorized tosuspend an SBIC's license, issue cease and desist orders, removeofficers and directors of an SBIC, subpoena witnesses and records,apply for injunctions to the appropriate district court, and apply forfurther acts of enforcement to the appropriate U.S. Circuit Court ofAppeals.

The foregoing summary of certain requirements under the 1958 Act andregulations thereunder does not purport to be complete and investors are urgedto consult the 1958 Act and regulations thereunder for more detailedinformation. See below under the heading "Tax Considerations" for a discussionof the taxation of SBICs.

The Investment Company Act of 1940; Election to Become a BDC

Ameritrans and Elk are closed-end, non-diversified managementinvestment companies that have elected to be treated as BDCs and, as such, aresubject to regulation under the 1940 Act. The 1940 Act contains prohibitions andrestrictions relating to transactions between investment companies and theiraffiliates, principal underwriters and affiliates of those affiliates

AMERITRANS CAPITAL CORP; N-14/A

orunderwriters. In addition, the 1940 Act provides that a BDC may not change thenature of its business so as to cease to be, or to withdraw its election as, aBDC unless so authorized by the vote of a "majority of its outstanding votingsecurities," as defined under the 1940 Act.

BDCs are permitted, under specified conditions, to issue multipleclasses of indebtedness and one class of stock (collectively, "seniorsecurities," as defined under the 1940 Act) senior to the shares of CommonStock offered hereby if their asset coverage of such indebtedness and all seniorsecurities is at least 200% immediately after each such issuance. SubordinatedSBA debentures, preferred stock guaranteed by or issued to the SBA by Elk,and Elk bank borrowings are not subject to this asset coverage test. Inaddition, while senior securities are outstanding, provision must be made toprohibit the declaration of any dividend or other distribution to stockholders(except stock dividends) or the repurchase of such securities or shares unlessElk meets the applicable asset coverage ratios at the time of the declarationof the dividend or distribution or repurchase. Ameritrans and Elk haverequested that the SEC grant certain relief from the asset coverage ratiosapplicable to BDCs.

-29-

Under the 1940 Act, a BDC may not acquire any asset other thanQualifying Assets unless, at the time the acquisition is made, certainQualifying Assets represent at least 70% of the value of the company's totalassets. The principal categories of Qualifying Assets relevant to Elk'sproposed business are the following:

(1) Securities purchased in transactions not involving a publicoffering from the issuer of such securities, which issuer is an eligibleportfolio company. An "eligible portfolio company" is defined in the 1940 Act asany issuer which:

(a) is organized under the laws of, and has its principalplace of business in, the United States;

(b) is not an investment company other than an SBICwholly-owned by the BDC; and

(c) satisfies one or more of the following requirements:

(i) the issuer does not have a class of securities withrespect to which a broker or dealer may extend margincredit; or

(ii) the issuer is controlled by a BDC and the BDC has anaffiliated person serving as a director of issuer;

(iii) the issuer has total assets of not more $4than,000,000 and capital and surplus (stockholders' equityless retained earnings) of not less than $2,000,000, orsuch other amounts as the SEC may establish by rule orregulation; or

(iv) the issuer meets such requirements as the SEC mayestablish from time to time by rule or regulation.

(2) Securities for which there is no public market and which arepurchased in transactions not involving a public offering from the issuer ofsuch securities where the issuer is an eligible portfolio company which iscontrolled by the BDC.

(3) Securities received in exchange for or distributed on or withrespect to securities described in (1) or (2) above, or pursuant to the exerciseof options, warrants or rights relating to such securities.

(4) Cash, cash items, government securities, or high quality debtsecurities maturing in one year or less from the time of investment.

In addition, a BDC must have been organized (and have its principalplace of business) in the United States for the purpose of making investments inthe types of securities described in (1) or (2) above. In order to countsecurities as Qualifying Assets for the purpose of the 70% test, the BDC musteither control the issuer of the securities or must make available to the issuerof the securities significant managerial assistance; except that, where the BDCpurchases such securities in conjunction with one or more other persons actingtogether, one of the other persons in the group may make available the requiredmanagerial assistance. Elk believes that the common stock of Elk to be held byAmeritrans will be Qualifying Assets.

-30-

Security Ownership of Principal Stockholders and Management

Eric Nitz

AMERITRANS CAPITAL CORP; N-14/A

The following table sets forth certain information as to (i) thosepersons who, to Elk's knowledge, owned 5% or more of its outstandingCommon Stock as of June 30, 1999, (ii) each of Elk's directors and (iii) allof Elk's officers and directors as a group. Except as set forth below or in"Management," the address of each person listed below is the address of Elk.

| Name | Number of Shares of Common Stock Owned | Percentage of Outstanding Common Stock Owned |
| ---- | ------------------ | ------------------ |
| *Gary C. Granoff | 350,708(1) | 19.0% |
| *Ellen M. Walker | 57,374(2) | 3.1% |
| *Lee A. Forlenza | 48,095(3) | 2.6% |
| *Steven Etra | 133,016(4) | 7.2% |
| Marvin Sabesan | 84,417(5) | 4.8% |
| Paul Creditor | 7,556(6) | ** |
| Allen Kaplan | 10,556(7) | ** |
| John L. Acierno | 5,556(8) | ** |
| John R. Laird | 100 | ** |
| Howard F. Sommer | -- | ** |
| Dan M. Granoff Children's Hospital Oakland Research Institute 747 52nd Street Oakland, CA | 155,979(9) | 8.9% |
| Alexander Nash 20 W. Lincoln Avenue Valley Stream, NY | 96,600(10) | 5.5% |
| Paul D. Granoff c/o Rush-Copley Medical Center 1900 Ogden Avenue Aurora, IL 60504 | 143,179(11) | 8.2% |
| All Officers and Directors as a group (12 persons) | 726,890(12) | 38.9% |

---

*   Gary C. Granoff, Ellen M. Walker, Lee A. Forlenza, and Steven Etra are each "interested persons" with respect to Ameritrans and Elk, as such term is defined in the 1940 Act.

**   Less than 1%.

1. Excludes (i) 24,933 shares owned directly or indirectly by Mr. Granoff'swife, as to which he disclaims beneficial ownership and (ii) 10,500 sharesowned by one of Mr. Granoff's sons, as to which shares he does not exerciseany control and disclaims beneficial ownership. Includes (i) 10,900 sharesowned by The Granoff Family Foundation, a charitable foundation of whichMr. Granoff and his father, mother, and brother, Dan M. Granoff, aretrustees; (ii)

-31-

35,321 shares held by Mr. Granoff as trustee for his children and otherfamily members; (iii) 261 shares held by GCG Associates Inc., a corporationowned by Mr. Granoff ; (iv) 76,084 shares owned by DAPARY Management Corp.,a corporation controlled by Mr. Granoff and (v) 30,000 shares issuable uponthe exercise of five-year options issued under the 1998 Employee Plan. See"-- Stock Option Plans -- 1998 Employee Plan."

2. Includes (i) 200 shares held by Ms. Walker as custodian for her son; (ii)22,800 shares held by various trusts of which Ms. Walker is a trustee andas to which she disclaims beneficial ownership (Mr. Granoff retains areversionary interest in 21,000 of such shares), and (iii) 20,000 sharesissuable upon the exercise of ten-year options issued under the 1998Employee Plan. See "-- Stock Option Plans -- 1998 Employee Plan."

3. Includes 17,500 shares issuable upon the exercise of ten-year optionsissued to under the 1998 Employee Plan. See "-- Stock Option Plans -- 1998Employee Plan."

AMERITRANS CAPITAL CORP; N-14/A

4. Includes (i) 29,022 shares held by Mr. Etra and his wife as joint tenants;

(ii) 27,000 shares held by Mr. Etra's wife; (iii) 1,500 shares held by Mr.Etra's son; (iv) 10,000 shares held by SRK Associates LLC, a limitedliability company controlled by Mr. Etra, (v) 10,000 shares held by Lance'sProperty Development Corp. Pension Plan, of which Mr. Etra is a trustee and

(vi) 17,500 shares issuable upon the exercise of ten-year options issuedunder the 1998 Employee Plan. See "-- Stock Option Plans -- 1998 EmployeePlan."

5. Includes 21,387 shares held by Mr. Sabesan and his wife as joint tenantsand 28,551 shares held by his wife. Mr. Sabesan disclaims beneficialownership of the 28,551 shares held by his wife. Also includes 5,556 sharesissuable upon the exercise of ten-year options issued under Elk's 1998Non-Employee Director Plan (the "1998 Director Plan"). See "- Stock OptionPlans - 1998 Director Plan."

6. Includes 5,556 shares issuable upon the exercise of ten-year options issuedunder the 1998 Director Plan. See "- Stock Option Plans - 1998 DirectorPlan."

7. Includes 5,556 shares issuable upon the exercise of ten-year options issuedunder the 1998 Director Plan. See "- Stock Option Plans - 1998 DirectorPlan."

8. Consists of 5,556 shares issuable upon the exercise of ten-year optionsissued under the 1998 Director Plan. See - Stock Option Plans - 1998Director Plan."

9. Includes (i) 10,900 shares owned by a charitable foundation, of which N.

Henry Granoff, his wife, Jeannette Granoff, Gary C. Granoff and Dr. Dan M.Granoff are the trustees, and (ii) 2,800 shares held in an IRA rolloveraccount for the benefit of Dr. Granoff.

10. Includes (i) 6,500 shares held by Dr. Nash as custodian for his daughterand (ii) 52,900 shares held by his wife, as to which shares Dr. Nashdisclaims beneficial ownership.

11. Includes 40,049 shares held by Paul Granoff directly, 77,630 held byGranoff Family Partners Ltd., of which Dr. Paul Granoff is a generalpartner, and 25,500 shares held by the Granoff Pediatric Associates ProfitSharing Plan. Excludes 14,127 shares held by Dr. Granoff's wife, of whichshares he disclaims beneficial ownership.

12. Includes 100,000 shares issuable upon the exercise of 30,000 five-year and70,000 ten-year options issued under the 1998 Employee Plan and 22,224shares issuable upon the exercise of ten-year options issued under the 1998Director Plan. See "- Stock Option Plans - 1998 Employee Plan -- 1998Director Plan."

Except pursuant to applicable community property laws or as describedabove, each person listed in the table above has sole voting and investmentpower, and is both the owner of record and the beneficial owner of his orher respective shares.

Persons listed above, for as long as they continue to be officersand/or directors of Elk or to hold 5% percent or more of Elk's outstandingCommon Stock, will be deemed "affiliated persons" of Elk, as such term isdefined in the 1940 Act.

Management

Directors and Executive Officers

The following table sets forth certain information concerning thedirectors and executive officers of Elk:

```
Name                    Address                     Position
----                    -------                     --------
Gary C. Granoff(1)(2)    c/o Elk Associates          President and Chairman of Board
                        Funding Corporation         of Directors
                        747 Third Avenue
                        New York, New York
```

AMERITRANS CAPITAL CORP; N-14/A

-32-

| Name | Address | Position |
| ---- | ------- | -------- |
| Ellen M. Walker(1)(2) | c/o Elk Associates Funding Corporation 747 Third Avenue New York, New York | Vice President, General Counsel and Director |
| Lee A. Forlenza(1)(2) | c/o Elk Associates Funding Corporation 747 Third Avenue New York, New York | Vice President and Director |
| Steven Etra | 55-25 58th Street Maspeth, New York | Vice President and Director |
| Margaret Chance(2) | c/o Elk Associates Funding Corporation 747 Third Avenue New York, New York | Secretary |
| Silvia M. Mullens(2) | c/o Elk Associates Funding Corporation 747 Third Avenue New York, New York | Vice President |
| Marvin Sabesan | c/o Pearl River Textiles, Inc. 57 West 38th Street New York, New York | Director |
| Paul Creditor | 747 Third Avenue, Ste. 4C New York, New York | Director |
| Allen Kaplan | c/o Team Systems, Inc. 30-17 40th Avenue Long Island City, New York | Director |
| John L. Acierno | c/o Executive Charge, Inc. 1440 39th Street Brooklyn, New York | Director |
| John R. Laird | 481 Canoe Hill Road New Canaan, CT | Director |
| Howard F. Sommer | c/o  New York Community Investment Co., LLC 120 Broadway New York, NY | Director |

(1) Ellen M. Walker, Gary C. Granoff and Lee A. Forlenza are officers andstockholders in the law firm of Granoff, Walker & Forlenza, P.C.

(2) As BDCs under the 1940 Act, a majority of the directors of both Ameritransand Elk are required to be individuals who are not "interested persons" ofthe company. Gary C. Granoff, Ellen M. Walker, Lee A. Forlenza,

-33-

Steven Etra, Margaret Chance and Silvia Mullens are each "interestedpersons" with respect to both Elk and Ameritrans, as such term is definedin the 1940 Act.

Gary C. Granoff, age 51, has been President and a director ofAmeritrans since its formation and of Elk since its formation in July 1979 andChairman of the Board of Directors since December 1995. Mr. Granoff has been apracticing attorney for the past twenty-six years and is presently an officerand stockholder in the law firm of Granoff, Walker & Forlenza, P.C. Mr. Granoffis a member of the bar of the State of New York and the State of Florida and isadmitted to the United States District Court of the Southern District of NewYork. Mr. Granoff is also President and the sole stockholder of GCG Associates,Inc. ("GCG"), Elk's former investment adviser. He has served as President andthe sole stockholder of Seacrest Associates, Inc., a hotel operator, sinceAugust 1994. Mr. Granoff has also been President and a director since June 1996of Gemini Capital Corporation ("Gemini"), a company primarily engaged in thebusiness of making consumer loans, and he has been a director of Enviro-Cleanof America, Inc. since September 1999. In February 1998, Mr. Granoff was electedto and is presently serving as a trustee

Eric Nitz

AMERITRANS CAPITAL CORP; N-14/A

on the Board of Trustees of The GeorgeWashington University. Mr. Granoff holds a Bachelor of Business Administrationdegree in Accounting and a Juris Doctor degree (with honors) from The GeorgeWashington University.

Ellen M. Walker, age 44, has been a Vice President, General Counseland a director of Ameritrans since its formation and a Vice President andGeneral Counsel of Elk since July 1983. She was a director of Elk from July 1983to August 1994, and has been a director of Elk since 1995. Ms. Walker hasbeen a practicing attorney for more than seventeen years and she is presently anofficer and stockholder in the law firm of Granoff, Walker & Forlenza, P.C.Ms. Walker is a member of the Bar of the State of New York and she is admittedto the United States District Court of the Southern District of New York. SinceAugust 1983 Ms. Walker has been Vice President of GCG. Ms. Walker has been adirector, Vice President and General Counsel of Gemini since June 1996. Ms.Walker received a Bachelor of Arts degree from Queens College and obtained herJuris Doctor degree with honors from Brooklyn Law School.

Lee A. Forlenza, age 42, has been a Vice President and a director ofAmeritrans since its formation, a Vice President of Elk since March 1992, and adirector of Elk since January 1995. Mr. Forlenza has been a practicing attorneysince February 1983 and is presently an officer and stockholder in the law firmof Granoff, Walker & Forlenza, P.C. Since March 1992 Mr. Forlenza has been aninvestment analyst for GCG. Mr. Forlenza has also been Vice President, Secretaryand a director of Gemini since June 1996. Mr. Forlenza was Vice President ofTrue Type Printing, Inc. from 1976-1995 and has been President since May 1995.From 1983 through 1986 Mr. Forlenza was an attorney with the SBA. Mr. Forlenzagraduated Phi Beta Kappa from New York University and obtained his Juris Doctordegree from Fordham University School of Law.

<* 1 moved from here; text not shown>

Steven Etra, age 50, has been a Vice President and a director of Ameritranssince its inception, a Vice President of Elk since January 1999, and a directorof Elk since November 1995. Mr. Etra has been Sales Manager since 1975 ofManufacturers Corrugated Box Company, a company owned by Mr. Etra's family formore than seventy-five years. Mr. Etra has also been a director of Gemini sinceJune 1996 and has been a director of Enviro-Clean of America, Inc. since January1999. Mr. Etra has extensive business experience in investing in emergingcompanies.

Margaret Chance, age 45, has been Secretary of Ameritrans since itsinception and Secretary of Elk and involved in loan administration sinceNovember 1980. Ms. Chance is the office manager of Granoff, Walker & Forlenza,P.C. and has served as the Secretary of GCG Associates Inc., since January 1982.Ms. Chance holds a paralegal certificate.

-34-

** 1 Silvia Maria Mullens, age 48, has been a Vice President ofAmeritrans since its inception, a Vice President of Elk since 1996, and theLoan Administrator of Elk since February 1994. Prior to joining Elk, she was theLegal Coordinator for Castle Oil Corporation from September 1991 through June1993 and from June 1993 through January 1994, a legal assistant specializing inforeclosures in the law firm of Greenberg & Posner. Ms. Mullens received a B.A.from Fordham University and an M.B.A. from The Leonard Stern School of BusinessAdministration of New York University.

Marvin Sabesan, age 70, has been a director of Ameritrans since itsinception and a director of Elk since July 1982. Mr. Sabesan has been employedby Pearl River Textiles, Inc. as an executive since 1990. He was an ExecutiveVice President of N.O.L. Inc., a lingerie company, from 1988 to 1990. Mr.Sabesan was an Executive Vice President of A.J. Schneierson & Son, a clothingmanufacturer from 1971 to 1987.

Paul Creditor, age 63, has been a director of Ameritrans since itsinception and a director of Elk since November 1995. Mr. Creditor has been apracticing attorney since 1961, engaging in the general practice of law andspecializing in corporate law. From 1974 through 1979 he served as an electedJudge in Suffolk County, New York. He also served as counsel to the New YorkState Constitutional Convention and various State Agencies and Commissions.

Allen Kaplan, age 49, has been a director of Ameritrans since itsinception and a director of Elk since November 1995. Mr. Kaplan has been sinceNovember 1986, Vice President and Chief Operating Officer of Team Systems, Inc.,a company which manages and operates more than 200 New York City medalliontaxis. Mr. Kaplan is currently Vice President of the Metropolitan Taxicab Boardof Trade, a trade association consisting of 22 member fleets representing 1,200New York City medallions.

Eric Nitz

AMERITRANS CAPITAL CORP; N-14/A

John L. Acierno, age 41, has been a director of Ameritrans since its inception and a director of Elk since October 1997. Mr. Acierno has served as president of Executive Charge Inc. and its affiliated companies for the last ten years. During that time, Executive Charge Inc. has become the largest executive sedan operation in the United States with over 1,300 vehicles servicing the greater New York Metropolitan area. His background includes practicing law as a labor attorney for Proskauer Rose and serving as counsel for R.H. Macy & Co. Mr. Acierno was founder and immediate past president for the last six years of the Black Car Assistance Corporation, the organization which serves as the New York black car industry association. He was named International Taxicab and Limousine Association Premium Service Operator of the Year for 1996. Mr. Acierno graduated Phi Beta Kappa from Tufts University, and Cum Laude from Cornell Law School.

John R. Laird, age 57, has been a director of Ameritrans and of Elk since January 1999. Mr. Laird has been a private investor since 1994, when he retired from Shearson Lehman Brothers Inc. ("Shearson"). Mr. Laird served as President and Chief Executive Officer of the Shearson Lehman Brothers Division of Shearson and as a member of the Shearson Executive Committee from 1992 to 1994. Mr. Laird was also Chairman and Chief Executive Officer of The Boston Company, a subsidiary of Shearson, from 1990 until its sale by Shearson in 1993. From 1977 to 1989 Mr. Laird was employed by American Express in various capacities including Senior Vice President and Treasurer. He also is and has been a member of boards of various cultural and philanthropic organizations, including but not limited to, the Corporate Advisory Committee of the Boston Museum of Fine Arts and the Board of Overseers for the Boston Symphony Orchestra. Mr. Laird received a B.S. in finance and an M.B.A. from

-35-

Syracuse University and attended the Advanced Management Program at Harvard Business School.

Howard F. Sommer, age 59, has been a director of Ameritrans and of Elk since January 1999. Mr. Sommer has been President and Chief Executive Officer of New York Community Investment Company L.L.C., an equity investment fund providing long-term capital to small businesses throughout the State of New York, since 1995. Mr. Sommer was President of Fundex Capital Corporation from 1978 to 1995, President of U.S. Capital Corporation from 1973 to 1995, worked in management consulting from 1971 to 1973 and held various positions at IBM and Xerox Corporations from 1962 to 1971. Mr. Sommer was also a member of the Board of Directors for the National Association of Small Business Investment Companies, serving on its executive committee from 1989 to 1993 and as Chairman of the Board in 1994. He received a B.S. in electrical engineering from City College of New York and attended the Graduate School of Business at New York University.

Elk's directors are actively involved in the oversight of its affairs, including financial and operational issues, credit and loan policies, asset valuation, and strategic direction.

Compliance with Section 16(a) of the 1934 Act

Section 16(a) of the Securities Exchange Act of 1934 (the "1934 Act") requires Elk's officers and directors, and persons who own more than 10% of the Elk Common Stock, to file initial reports of beneficial ownership and changes in beneficial ownership with the SEC and to furnish Elk with copies of all reports filed.

Based solely on a review of the forms furnished to Elk, or written representations from certain reporting persons, Elk believes that all persons who were subject to Section 16(a) in fiscal 1999 complied with the filing requirements.

Committees of the Board and Meeting Attendance

The Audit Committee is comprised of Paul Creditor, John Acierno and Gary Granoff. The function of the Audit Committee is to review the internal accounting control procedures of Elk, review the consolidated financial statements of Elk and review with the independent public accountants the results of their audit.

The 1998 Employee Plan Committee consists of Messrs. Sabesan, Kaplan, Creditor and Acierno. The function of the 1998 Employee Plan Committee is to administer Elk's 1998 Employee Plan.

The Holding Company Committee consists of Steven Etra and Lee Forlenza. The purpose of the Holding Company Committee is to oversee the formation and capitalization of, and the transactions with, Ameritrans.

Eric Nitz

AMERITRANS CAPITAL CORP; N-14/A

The Board of Directors does not have standing nominating orcompensation committees. The Board of Directors held four formal meetings duringfiscal 1999. Mr. Acierno attended 25% of the Board meetings and all committeemeetings, Mr. Kaplan attended 50% of the Board meetings and all committeemeetings, and each other director attended 100% of the meetings of the Board ofDirectors and all committees of the Board on which he or she served.

-36-

Compensation of Directors and Executive Officers

The following table sets forth certain compensation information for thefiscal year ended June 30, 1999 for Elk's (i) Chief Executive Officer; (ii)Directors and (iii) up four of Elk's most highly compensated executive officers,other than the Chief Executive Officer, whose total annual salary and bonusexceed $100,000 (the "Named Executive Officers").

Officers' salaries constitute a major portion of Elk's total"management fee compensation," which must be approved by the SBA. The SBA hasapproved total officer and employee compensation of $648,000 for Elk for fiscal1999. This amount includes officers' salaries, other salaries, and employeebenefits.

Summary Compensation Table

| Name and Principal Position | Salary($) | Other Annual Compensation($) | Long Term Compensation (Shares of Common Stock issuable upon exercise of options) |
|---|---|---|---|
| Gary C. Granoff, President and Chairman of the Board of Directors | 225,712 | 44,000(1) | 30,000(3) |
| Ellen M. Walker, Vice President, General Counsel and Director | 103,917 | 15,000(2) | 20,000(3) |

-37-

| | Directors Fees($) | Long Term Compensation (Shares of Common Stock issuable upon exercise of options) |
|---|---|---|
| Lee A. Forlenza, Vice President and Director | 51,750(4) | 17,500(3) |
| Steven Etra, Vice President and Director | 5,000(5) | 17,500(3) |
| Marvin Sabesan, Director | 5,000 | 5,556(6) |
| Paul Creditor, Director | 5,000 | 5,556(6) |
| Allen Kaplan, Director | 5,000 | 5,556(6) |
| John L. Acierno, Director | 3,500 | 5,556(6) |
| John R. Laird, Director | 3,250 | |
| Howard F. Sommer, Director | 3,250 | |

(1) Consists of $20,000 of reimbursed expenses and a $24,000 contribution toElk's Simplified Employee Pension Plan ("SEP").

(2) Consists of a $15,000 contribution to the SEP.

Eric Nitz

AMERITRANS CAPITAL CORP; N-14/A

(3) Consists of shares issuable upon the exercise of options granted underElk's 1998 Employee Incentive Stock Option Plan (the "1998 Employee Plan").

(4) Includes $45,000 of salary and a $6,750 contribution to the SEP paid to Mr.Forlenza in his capacity as an officer of Elk.

(5) Includes $2,500 of salary paid to Mr. Etra in his capacity as an officer ofElk, and $2,500 of director's fees paid to Mr. Etra prior to hisappointment as an officer of Elk.

(6) Consists of shares issuable upon the exercise of options granted underElk's 1998 Non-Employee Director Stock Option Plan (the "1998 DirectorPlan").

No cash bonuses were paid to any officers in fiscal 1999. Salaryincreases were authorized for Gary C. Granoff ($15,000), Ellen M. Walker($10,000) and Lee A. Forlenza ($5,000), effective July 1, 1999. The otherofficers are receiving, in the aggregate, the same compensation from Elk and/orAmeritrans as was paid by Elk as of the end of the fiscal year ended June 30,1999. However, if the Share Exchange is completed, it is anticipated that futurecompensation will be allocated between Elk and Ameritrans, based upon factorsdetermined by their respective Boards of Directors. The Boards of Directors mayincrease such compensation, in the form of salary increases for bonuses, for thefiscal year ending June 30, 2000.

Elk has a policy of paying its directors who are not employees fees $750of for each meeting attended. Elk pays each non-affiliated director a minimumfee of $2,000 per year in addition to the fees paid for each meeting attended.Eligible non-employee directors are entitled to participate in Elk's 1998Director Plan. The non-employee directors receive no other compensation fortheir services to Elk.

Employee directors of Elk are eligible to participate in Elk'sSimplified Employee Pension Plan and its 1998 Employee Plan. Elk does notprovide any other pension or retirement plan with respect to its directors oremployees.

-38-

The following table sets forth certain information regarding optionsgranted during the fiscal year ended June 30, 1999 by Elk to the following NamedExecutive Officers:

Option Grants -- Individual Grants

| Name | Number of Securities Underlying Options Granted(#) | Percent of Total Options Granted to Employees in Fiscal Year | Exercise Price ($/share)(1) | Expiration Date | Potential Realizable Value at Assumed Annual Rates of Stock Price Appreciation for Option Term(2) | |
|------|------|------|------|------|------|------|
| | | | | | 5%($) | 10%($) |
| Gary C. Granoff | 30,000 | 30.0% | 9.77 | 1/11/04 | 47,400 | 136,800 |
| Ellen M. Walker | 20,000 | 20.0% | 8.88 | 1/11/09 | 112,400 | 284,400 |

Aggregated Option Exercises in the Last Fiscal Year and Year-End Option Values

| Name | Shares Acquired on Exercise | Unexercised Options at Year End | Value of In-The-Money Options at Year End(1) |
|------|------|------|------|

AMERITRANS CAPITAL CORP; N-14/A

```
----                           ------------------    ------------------         ------------------
--
Gary C. Granoff                        0                 30,000                      $51,000
Ellen M. Walker                        0                 20,000                      $40,400
```

(1) All the options are currently exercisable.

Report of the Board of Directors as to Compensation Matters

The objectives of Elk's executive compensation program are to establishcompensation levels designed to enable Elk to attract, retain and rewardexecutive officers who contribute to the long-term success of Elk so as toenhance stockholder value. The Board of Directors makes decisions each yearregarding executive compensation, including annual base salaries and bonusawards, and the 1998 Employee Plan Committee, consisting of non-interesteddirectors, will make decisions each year regarding stock option grants. Optiongrants are key components of the executive compensation program and are intendedto provide executives with an equity interest in Elk so as to link a meaningfulportion of the compensation of Elk's executives with the performance of Elk'sCommon Stock. This report is submitted by the full Board of Directors andaddresses the compensation policies for fiscal 1999 as they affected Gary C.Granoff, in his capacity as the Chief Executive Officer of the Company, as wellas each of Elk's other officers.

-39-

Compensation Philosophy

Elk's executive compensation philosophy is based on the belief thatcompetitive compensation is essential to attract, motivate and retain highlyqualified and industrious employees. Elk's policy is to provide totalcompensation that is competitive for comparable work and comparable corporateperformance. The compensation program includes both motivational andretention-related compensation components. Bonuses may be included to encourageeffective performance relative to current plans and objectives. Stock optionsare included to help retain productive people and to more closely align theirinterests with those of stockholders.

In executing its compensation policy, Elk seeks to relate compensationwith Elk's financial performance and business objectives, reward high levels ofindividual performance and tie a significant portion of total executivecompensation to both the annual and long-term performance of Elk. Whilecompensation survey data are useful guides for comparative purposes, Elkbelieves that a successful compensation program also requires the application ofjudgment and subjective determinations of individual performance, and to thatextent the Board of Directors applies judgment in reconciling the program'sobjectives with the realities of retaining valued employees.

Executive Compensation Program

Annual compensation for Elk's executives consists of two principalelements: cash compensation, consisting of salaries and bonuses, and stockoptions.

Cash Compensation

In setting the annual base salaries for Elk's executives, the Board ofDirectors reviews the aggregate salary and bonus compensation for individuals incomparable positions with other companies, including competitors of Elk, andadjusts such amounts to reflect individual performance. Many of these companiesare specialty finance companies. Elk also regularly compares the salary levelsof its executive officers with other leading companies.

Increases in annual base salary are based on a review and evaluation ofthe performance of the activity for which the executive has responsibility, theimpact of that activity on Elk and the skills and experience required for thejob, coupled with a comparison of these elements with similar elements for otherexecutives both inside and outside Elk.

Cash bonuses are tied directly to Elk's financial performance and thecontribution of the executive to such performance.

Equity Ownership

Eric Nitz

AMERITRANS CAPITAL CORP; N-14/A

Executive officer compensation also includes long-term incentives afforded by options to purchase shares of Common Stock. The purposes of Elk's stock ownership program are to (i) highlight and reinforce the mutuality of long-term interests between employees and the stockholders and (ii) to assist in the attraction and retention of critically important key executives, managers and individual contributors who are essential to Elk's growth and development.

Elk's stock option plans were adopted in 1998. The purpose of these plans is to orient Elk's executive officers and non-employee directors to longer term success. The options granted to date under the 1998 Employee Plan were granted to persons who had been associated with Elk for at least five (5) years and, consequently, were immediately vested in full. Options granted in the future under the 1998 Employee Plan (or the Ameritrans 1999 Employee Plan, if the Share Exchange is completed) may be immediately vesting or may vest over a period of years after the date of grant. If employees leave Elk before the end of these vesting periods, they would forfeit the unvested portions of these awards.

The number of shares of Elk Common Stock subject to option grants under the 1998 Employee Plan is generally intended to reflect the significance of the executive's current and anticipated contributions to Elk. The exercise price of options granted by Elk is required under the 1940 Act to equal not less than 100% of the fair market value per share on the date of grant (110% for options granted to any holder of 10% or more of the outstanding Elk Common Stock). Prior to determining the 1999 option grants to Elk's executives, the Board of Directors considered the equity compensation policies of competitors and other companies, both privately held and publicly traded, with comparable capitalizations. The value realizable from exercisable options is dependent upon the extent to which Elk's performance is reflected in the price of the Elk Common Stock at any particular point in time. However, the decision as to whether such value will be realized through the exercise of an option in any particular year is primarily determined by each individual within the limits of the vesting schedule and not by the Board of Directors.

The grant of options under the 1998 Director Plan and the Ameritrans 1999 Director Plan is automatic.

Simplified Employee Pension Plan

In 1996, Elk adopted a simplified employee pension plan covering all eligible employees of Elk. Contributions to the plan are at the discretion of the Board of Directors. During the fiscal year ended June 30, 1999, contributions amounted to $64,137.

Gary C. Granoff's Fiscal 1999 Compensation

The Board of Directors has set Gary C. Granoff's total annual compensation at a level it believes to be competitive with the chief executive officers of similarly capitalized specialty finance companies. Gary C. Granoff, in his capacity as Chief Executive Officer, is eligible to participate in the same executive compensation program available to Elk's other senior executives.

Interlocks and Insider Participation

Elk does not currently have a compensation committee, and the Board of Directors as a whole considers executive compensation matters. Each of Messrs. Granoff, Forlenza and Etra and Ms. Walker, all of whom are executive officers and directors of Elk, is an "interested person" as such term is defined in

Section 2(a)(19) of the 1940 Act.

-40-

Stock Option Plans

The descriptions of the stock option plans set forth below are qualified in their entirety by reference to the text of the plans.

1998 Employee Plan.

Elk's Board of Directors, including a majority of the non-interested directors, has adopted, subject to stockholder approval, an employees stock option plan (the "1998 Employee Plan") in order to link the personal interests of key employees to the long-term financial success of Elk and the growth of stockholder value. The 1998 Employee Plan was approved by the stockholders at the Elk Annual Meeting of Stockholders held on September 28, 1998. The 1998 Employee Plan authorizes the grant of

AMERITRANS CAPITAL CORP; N-14/A

incentive stock options within the meaningof Section 422 of the Internal Revenue Code for the purchase of an aggregate of125,000 shares (subject to adjustment for stock splits and similar capitalchanges) of Common Stock to employees of Elk. By adopting the 1998 EmployeePlan, the Board believes that Elk will be better able to attract, motivate andretain as employees people upon whose judgment and special skills the success ofElk in large measure depends. As of the date of this Proxy Statement/Prospectus,options to purchase an aggregate of 100,000 shares of Common Stock had beengranted to various officers. Options for 70,000 shares are exercisable for 10years from the date of grant at a price of $8.88 per share (the fair marketvalue of the Common Stock on the date of grant), and options for 30,000 sharesare exercisable for five (5) years from the date of grant at a price of $9.77per share. Accordingly, 25,000 shares of Common Stock were available for futureawards under the 1998 Employee Plan.

-41-

An employee stock option plan (the "Ameritrans Employee Plan") that issubstantially identical to the 1998 Employee Plan has been adopted by Ameritransand received stockholder approval. If the Share Exchange is completed, theAmeritrans Employee Plan will be the successor to the 1998 Employee Plan, adoptions issued under the 1998 Employee Plan will be deemed to have been issuedby Ameritrans and will be issuable to purchase Ameritrans common stock.

The 1998 Employee Plan will be administered by the 1998 Employee PlanCommittee of the Board of Directors, which will be comprised solely ofnon-employee directors (who are "outside directors" within the meaning of

Section 152(m) of the Internal Revenue Code of 1986, as amended (the "Code") and"disinterested persons" within the meaning of Rule 16b-3 under the SecuritiesExchange Act of 1934 (the "1934 Act") (the "Committee")). The Committee can makesuch rules and regulations and establish such procedures for the administrationof the 1998 Employee Plan as it deems appropriate.

The exercise price of an incentive stock option must be at the fairmarket value of Elk's Common Stock on the date of grant (110% of the fair marketvalue for stockholders who, at the time the option is granted, own more than10% of the total combined classes of stock of Elk or any subsidiary). Noemployees may exercise more than $100,000 in options held by them in any year.

No option may have a term of more than ten years (five years for 10% orgreater stockholders). Options generally may be exercised only if the optionholder remains continuously associated with Elk or a subsidiary from the date ofgrant to the date of exercise. However, options may be exercised upontermination of employment or upon death or disability of any employee withincertain specified periods.

The following is a general summary of the federal income taxconsequences under current tax law of incentive stock options ("ISOs"). It doesnot purport to cover all of the special rules, including special rules relatingto persons subject to the reporting requirements of Section 16 under the 1934Act who do not hold the shares acquired upon the exercise of an option for atleast six months after the date of grant of the option and special rulesrelating to the exercise of an option with previously-acquired shares, or thestate or local income or other tax consequences inherent in the ownership andexercise of stock options and the ownership and disposition of the underlyingshares.

An optionee will not recognize taxable income for federal income taxpurposes upon the grant of an ISO.

Upon the exercise of an ISO, the optionee will not recognize taxableincome. If the optionee disposes of the shares acquired pursuant to the exerciseof an ISO more than two years after the date of grant and more than one yearafter the transfer of the shares to him or her, the optionee will recognizelong-term capital gain or loss and Elk will not be entitled to a deduction.However, if the optionee disposes of such shares within the required holdingperiod, all or a portion of the gain will be treated as ordinary income and Elkwill generally be entitled to deduct such amount.

In addition to the federal income tax consequences described above, anoptionee may be subject to the alternative minimum tax.

Non-Employee Director Plan.

Elk's Board of Directors adopted, subject to stockholder approval, astock option plan for non-employee directors (the "1998 Director Plan") in orderto link the personal interests of such non-employee directors to the long-term

-42-

Eric Nitz

financial success of Elk and the growth of stockholder value. The 1998 DirectorPlan was approved by the stockholders at the Elk Annual Meeting of Stockholdersheld on September 28, 1998. The 1998 Director Plan provides for the automaticgrant of options to directors of Elk who are not employees, officers orinterested persons of Elk (an "Eligible Director"). By adopting the DirectorPlan, the Board believes that Elk will be better able to attract, motivate andretain as directors people upon whose judgment and special skills the success ofElk in large measure depends. A non-employee director stock option plan (the"Ameritrans Director Plan;" together with the 1998 Director Plan, the "DirectorPlans") that is substantially identical to the 1998 Director Plan has beenadopted by Ameritrans and received stockholder approval. If the Share Exchangeis completed, the Ameritrans Director Plan will be the successor to the DirectorPlan, and options issued under the 1998 Director Plan will be deemed to havebeen issued by Ameritrans and will be issuable to purchase Ameritrans commonstock. Elk and Ameritrans submitted an application for, and on August 31, 1999(the "Approval Date"), received an exemptive order relating to the DirectorPlans. In accordance with the provisions of the 1940 Act, the automatic grant ofoptions under the Director Plans could not occur until after the date of theApproval Date. Accordingly, on August 31, 1999, options to purchase 5,556 sharesof Elk Common Stock at an exercise price of $9.00 per share were granted to eachof Messrs. Sabesan, Creditor, Kaplan, and Acierno.

The total number of shares for which options may be granted from timeto time under the 1998 Director Plan is 75,000 shares.

The 1998 Director Plan provides that an Eligible Director serving onElk's Board of Directors who has served as a director for at least one yearprior to the Approval Date will automatically receive on the Approval Date thegrant of an option to purchase the number of shares of Common Stock determinedby dividing $50,000 by the fair market value of the Common Stock on the ApprovalDate. With respect to any Eligible Director who is elected or reelected as adirector of Elk after the Approval Date such elected director will automaticallyreceive on the date such director has served as a director of Elk for one yearof such election or reelection an option to purchase the number of shares ofCommon Stock determined by dividing $50,000 by the fair market value of theCommon Stock on the date of the first anniversary such director became adirector of Elk.

The 1998 Director Plan will be administered by a committee of directorswho are not eligible to participate in the 1998 Directors Plan (the"Committee"). Options become exercisable with respect to such shares granted onthe date on which the option was granted, so long as the optionee remains anEligible Director. No option may be exercised more than five years after thedate on which it is granted. The number of shares available for options, thenumber of shares subject to outstanding options and their exercise prices willbe adjusted for changes in outstanding shares such as stock splits andcombinations of shares. Shares purchased upon exercise of options, in whole orin part, must be paid for in cash or by means of unrestricted shares of CommonStock or any combination thereof.

The following is a general summary of the federal income taxconsequences under current tax law of non-qualified stock options ("NQSOs"). Itdoes not purport to cover all of the special rules, including special rulesrelating to persons subject to the reporting requirements of Section 16 underthe 1934 Act who do not hold the shares acquired upon the exercise of an optionfor at least six months after the date of grant of the option and special rulesrelating to the exercise of an option with previously-acquired shares, or thestate or local income or other tax consequences inherent in the ownership andexercise of stock options and the ownership and disposition of the underlyingshares.

Upon the exercise of a NQSO, the optionee will recognize ordinaryincome in an amount equal to the excess, if any, of the fair market value of theshares acquired on the date of exercise over the exercise price thereof, and Elkwill generally be entitled to a deduction for such amount at that time. If theoptionee later sells shares acquired pursuant to the exercise of a NQSO, he orshe will recognize long-term or short-term capital gain or loss, depending onthe period for which the shares were held. Long-term capital gain is generallysubject to more favorable tax treatment than ordinary income or short-termcapital gains.

-43-

If the option does not have a readily ascertainable fair market value,an optionee will not recognize taxable income for federal income tax purposesupon the grant of an NQSO.

Options granted under the 1998 Director Plan will not be transferableleother than by the laws of descent and during the optionee's life may beexercised only by the optionee. All rights to exercise options will terminateafter the optionee ceases to be an Eligible Director. If the optionee diesbefore expiration of the option, his legal successors may have the right toexercise the option in whole or in part within one year of death.

AMERITRANS CAPITAL CORP; N-14/A

The 1998 Director Plan may be terminated at any time by the Board ofDirectors, and will terminate ten years after the effective date of the DirectorPlan. The Board of Directors may not materially increase the number of sharesauthorized under the plan or materially increase the benefits accruing toparticipants under the plan without the approval of the stockholders of Elk.

The exercise or conversion price of the options issued pursuant to theDirector Plan shall be not less than current market value at the date ofissuance, or if no such market value exists, the current net asset value of suchvoting securities.

Certain Transactions

Elk pays legal fees, on a fixed or hourly basis, for loan closingservices relating to loans other than New York taxi and radio car loan closingsto Granoff, Walker & Forlenza, P.C. ("Granoff, Walker") whose stockholders areofficers and directors of Elk and Ameritrans. Such services related to New Yorktaxi and radio car loans are provided by the officers and employees of Elk. Elkpaid Granoff, Walker fees of $62,987 during the fiscal year ended June 30, 1999.Elk generally charges its borrowers loan origination fees to generate income tooffset the legal fees paid by Elk for loan closing services.

Elk also rents office space from Granoff, Walker and share certainoffice expenses with that firm. For the fiscal year ended June 30, 1999, Elkpaid $39,600 in rent and $85,138 in shared overhead expense. For the year endingJune 30, 2000, Elk has agreed to pay $39,600 in rent and a minimum of $59,400 inexpenses and $22,000 for other shared expenses, which amount is subject toadjustment if actual expenses vary.

During the fiscal year ended June 30, 1998, Granoff, Walkerexercised an option in its lease, at Elk's request, and rented anadditional 1,800 square feet of office space contiguous with the offices of Elkat a below market rent (the "Additional Space"). Until Elk and/or Ameritransrequire the Additional Space, the law firm sublets the Additional Space tooutside tenants under short-term arrangements. In the event all or a portion ofthe Additional Space is vacant, Elk's Board of Directors has agreed toreimburse the law firm for the additional rent due. The estimated maximum amount

-44-

of rent for which Elk would be responsible is $58,000 per year, less any subletrental income received from the outside tenants. At present, the AdditionalSpace is fully occupied, thus requiring no reimbursement payment from Elk,although some liability under the reimbursement obligation may occur in thefuture. In the event the operations of Elk and Ameritrans expand, they couldoccupy all or part of the Additional Space without the inconvenience andexpense of having to relocate their offices .

Conflicts of Interest Policies

The Board of Directors of Elk has adopted policies governing potentialconflicts of interest between Elk and its directors and officers. Together,these policies comprise Elk's "Code of Ethics" as required under the 1940 Act.

These policies generally provide that no officer, director or employeeof Elk will make any loan which might be deemed to be appropriate for Elk,unless and until such transaction is first approved by a majority of thedirectors of Elk who are not "interested persons" of Elk within the meaning ofthe 1940 Act and who have no financial or other material interest in thetransaction. A loan would not be deemed to be appropriate for Elk if in anymanner such loan (or investment) would in any way violate SBA Regulations ineffect at the time of making such loan or investment. In reviewing any suchtransaction, the directors will examine, among other factors, whether thetransaction would deprive Elk of an opportunity or whether it would otherwiseconflict with the best interests of Elk and its stockholders. A completerecord of any such review and the results of the review will be maintained byElk as part of its permanent records.

Description of Capital Stock

The authorized capital stock of Elk consists of 3,000,000 shares ofCommon Stock, par value $.01 per share, of which 1,745,600 shares are issued andoutstanding. As of August 5, 1999, there were approximately 274 holders ofrecord of Elk Common Stock. Elk's Certificate of Incorporation was amended onMay 2, 1999 to eliminate its authorized preferred stock.

The Elk Common Stock is currently listed on the NASDAQ SmallCap Marketunder the symbol "EKFG." If the Share Exchange is completed, Ameritrans' CommonStock will be listed on the Nasdaq SmallCap Market under the symbol AMTC, andthe listing of the Elk Common Stock will be terminated.

Elk Common Stock

The holders of Elk Common Stock are entitled to one (1) vote per share on all matters submitted to a vote of stockholders. Holders of Elk Common Stock have neither cumulative voting rights (which means that the holders of a majority of the outstanding shares of Elk Common Stock may elect all of the directors of Elk) nor any preemptive rights. Holders of Elk Common Stock are entitled to receive ratably such dividends as may be declared by the Board of Directors out of funds legally available therefor. In order to qualify as a "regulated investment company" under the Code, Elk is required to distribute as dividends to its stockholders, for each fiscal year, at least 90% of its investment company taxable income and 90% of the excess of its tax-exempt income over certain disallowed deductions. In addition, in order to avoid a non-deductible 4% excise tax on any undistributed income of Elk, Elk is required to distribute as dividends, within each calendar year, at least 98% of its

-45-

ordinary income for such calendar year and 98% of its capital gain net income for the one-year period ending on October 31 of such calendar year. See "Tax Considerations." In the event of a liquidation, dissolution or winding up of Elk, holders of Elk Common Stock will be entitled to receive, subject to the prior right of the SBA to receive any amounts due to it on account of its remaining liquidating interest in the repurchased shares of Elk Preferred Stock, a ratable portion of the assets of Elk remaining after provision for payment of creditors. All of the outstanding shares of Elk Common Stock are fully paid and non-assessable.

The transfer agent for Elk Common Stock is Continental Stock Transfer & Trust Company, 2 Broadway, New York, New York 10004.

Market Information

The Elk Common Stock is traded in the over-the-counter market on a limited basis. The Elk Common Stock was listed on the Nasdaq SmallCap Market on June 22, 1998, under the symbol EKFG. Due to the limited number of transactions involving the Elk Common Stock during the periods presented below, it does not appear that an established public trading market has developed with respect to these securities.

The following tables show the closing high and low bid prices per share of Common Stock as reported by the National Quotation Bureau, Inc. or directly by dealers maintaining a market in the Common Stock (through June 22, 1998) and the high and low sale prices per share of Common Stock as reported by Nasdaq (from June 23, 1998), for the fiscal years ended June 30, 1998 and 1999 and for the current fiscal year to date.

| Elk | Bid | |
| --- | High | Low |
| --- | ---- | --- |
| Fiscal 1998 | | |
| 1st Quarter..................................... | 6.25 | 5.125 |
| 2nd Quarter..................................... | 6.625 | 6.25 |
| 3rd Quarter..................................... | 7.125 | 6.625 |
| 4th Quarter (to June 22, 1998)................... | 9.75 | 7.125 |

-46-

| Elk | Sale | |
| --- | -------------------- | |
| | High | Low |
| Fiscal 1998 | | |
| 4th Quarter (from June 23, 1998)............. | $9.50 | $9.50 |
| Fiscal 1999 | | |
| 1st Quarter.................................. | 11.25 | 7.75 |
| 2nd Quarter.................................. | 11.00 | 9.125 |
| 3rd Quarter.................................. | 10.625 | 8.875 |
| 4th Quarter ................................. | 14.00 | 8.6815 |
| Fiscal 2000 | | |
| 1st Quarter.................................. | 14.125 | 8.6875 |
| 2nd Quarter (to October 12, 1999)............ | -- | -- |

There were no sales of Elk Common Stock in the period from October 1through 12, 1999. On _____ ____, 1999, the high and low bid for a shareof Elk Common Stock were _____, and the high and low ask were _____ and_____, as reported by Nasdaq.

Tax Considerations

The following discussion is a general summary of the federal income taxprinciples applicable to Elk, based on the currently existing provisions of theCode and the regulations thereunder. This summary does not purport to be acomplete description of the tax considerations applicable to Elk or to theholders of Elk Common Stock. After the Share Exchange, these principles will, ingeneral, continue to apply to Elk, but the sole direct holder of Elk CommonStock will be Ameritrans.

Taxation of a Regulated Investment Company

Elk has elected for each taxable year since fiscal 1984, and expects tocontinue to elect, to be treated as a "regulated investment company" under

Section 851 of the Code. A regulated investment company may deduct, for federalincome tax purposes, most dividends paid to stockholders, thereby avoidingfederal income taxation at the corporate level on amounts distributed tostockholders as dividends. In order for Elk to qualify as a regulated investmentcompany for a given fiscal year, it must meet each of the following conditionsfor that fiscal year:

(1) Elk must be registered as an investment company under the 1940 Actat all times during the year.

(2) At least 90% of Elk's gross income for the year must be derivedfrom interest, gains on the sale or other disposition of stock or othersecurities, dividends and payment with respect to securities loans.

(3) Less than 30% of Elk's gross income must be derived from the saleor other disposition of securities held for less than three months.

(4) At the close of each quarter, at least 50% of the value of Elk'stotal assets must be represented by cash, cash items (including receivables),and securities. There are also limitations on the extent to which Elk's holdingsmay be concentrated in the securities of a single issuer.

-47-

(5) Elk must distribute as dividends at least 90% of its investmentcompany taxable income (as defined in Section 852 of the Code), as well as 90%of the excess of its tax-exempt income over certain disallowed tax-exemptinterest deductions.

In order to avoid the imposition of a non-deductible 4% excise tax onundistributed income of Elk, Elk is required, under the terms of the Revenue Actof 1987 as embodied in Section 4982 of the Code, to distribute within eachcalendar year at least 97% of its ordinary income for such calendar year and 98%of its capital gain net income for the one-year period ending on October 31 ofsuch calendar year.

Dividends distributed by Elk to Ameritrans will constitute ordinaryincome to Ameritrans to the extent derived from non-capital gain income of Elk,and will ordinarily constitute capital gain income to Ameritrans to the extentderived from capital gains of Elk. However, since Ameritrans also intends toqualify as a regulated investment company, Ameritrans will, in general, not besubject to a corporate level tax on its income to the extent that it makesdistributions to its stockholders. See "INFORMATION CONCERNING AMERITRANS -- TaxConsiderations." If Elk fails to continue to qualify as a regulated investmentcompany for any reason in any fiscal year, it will not be entitled to a federalincome tax deduction for dividends distributed, and will instead be liable topay corporate level tax on its earnings. Further, if Elk fails to qualify as aregulated investment company, such failure will cause Ameritrans to fail toqualify for regulated investment company status as well, as long as Elk stockheld by Ameritrans represents more than 25% of Ameritrans' assets. In such acase, Ameritrans will be taxed on dividends received from Elk, subject to thededuction for corporate dividends received, which is currently 70%. Thus, if Elkfails to qualify as a regulated investment company for any reason, its earningswould be taxed at three levels: to Elk, in part to Ameritrans, and finally, whenthey are distributed by Ameritrans, to its stockholders.

AMERITRANS CAPITAL CORP; N-14/A

Taxation of SBICs

As a result of Elk's status as a licensed SBIC under the 1958 Act, Elkand its stockholders qualify for the following tax benefits:

(1) Under Section 243 of the Code, Elk may deduct 100% of thedividends received by it from domestic corporations in which it has made equityinvestments, regardless of whether such corporations are subsidiaries of Elk (incontrast to the generally applicable 70% deduction under the Code). Because Elkgenerally makes long-term loans rather than equity investments, this potentialbenefit is not likely to be of practical significance to Elk or itsstockholders.

(2) Under Section 1243 of the Code, losses sustained on Elk'sinvestments in the convertible debentures, or stock derived from convertibledebentures, of Small Business Concerns are treated as ordinary losses ratherthan capital losses to Elk. Because Elk does not presently intend to purchaseconvertible debentures, however, this potential benefit is not likely to be ofpractical significance to Elk or its stockholders.

(3) Under Section 1242 of the Code, Elk's stockholders are entitled totake an ordinary rather than a capital loss deduction on losses resulting fromthe worthlessness or the sale or exchange of Elk Common Stock.

-48-

State Taxes

The foregoing discussion relates only to federal income tax matters.Elk is also subject to state and local taxation. Stockholders should consultwith their own tax advisors with respect to the state and local taxconsiderations pertaining to Elk and to Ameritrans.

INFORMATION CONCERNING AMERITRANS

General

Ameritrans was formed as a Delaware corporation on February 12, 1998,for the purposes of (1) acquiring and owning all of the outstanding Elk CommonStock pursuant to the Share Exchange, and (2) engaging in broader and morediversified investment and lending business activities directly, as well asthrough a newly-formed subsidiary, Elk Capital, which business activities Elk,as an SBIC, is not permitted to transact under the 1958 Act. Any such activitiesor operations would conform to the investment policies of Ameritrans describedbelow. Ameritrans is registered under the 1940 Act as a closed-end,non-diversified management investment company. Ameritrans will also elect tobecome a BDC pursuant to the 1940 Act upon the completion of the Share Exchangeor as soon thereafter as practicable. See "The Investment Company Act of 1940 --Election to Become a BDC."

Ameritrans, as a BDC, will be required to file certain reports pursuantto the 1940 Act and the Securities Exchange Act of 1934 and other information(including annual and quarterly reports and certain stockholder reports andproxy statements) with the SEC. Copies of such reports and information may beinspected and copied at the Public Reference Room of the SEC, 450 Fifth Street,N.W., Washington, D.C. 20549, as well as at the following regional offices: 25Federal Plaza, New York, New York 10278; Everett McKinley Dirksen Building 219South Dearborn Street, Chicago, Illinois 60604; and Suite 500, East 5757Wilshire Boulevard, Los Angeles, California 90036-3648. Copies of such material,or any portion thereof, may be obtained from the Public Reference Branch, Officeof Consumer Affairs and Information Services, Securities and ExchangeCommission, 450 Fifth Street, N.W., Washington, D.C. 20549, at prescribed rates,or on the EDGAR web page of the Securities and Exchange Commission on theInternet at www.sec.gov.

Investment Policies

Ameritrans' investment objectives will be to provide a high level ofcurrent income for its stockholders through quarterly distributions, consistentwith preservation of capital, as well as long term growth of net asset value.Ameritrans will seek to achieve its investment objectives by maximizing netinterest income and income from operations and expanding operations. There canbe no assurance that Ameritrans will achieve its investment objectives.

Eric Nitz

AMERITRANS CAPITAL CORP; N-14/A

Ameritrans' only fundamental policies, that is, policies that cannot be changed without the approval of the holders of a majority of Ameritrans'outstanding voting securities, as defined under the 1940 Act, are the restrictions described below. A "majority of Ameritrans' outstanding votingsecurities" as defined under the 1940 Act means the lesser of (i) 67% of the shares represented at a meeting at which more than 50% of the outstanding sharesare represented or (ii) more than 50% of the outstanding shares. The otherpolicies and investment restrictions referred to in this Prospectus, includingAmeritrans' investment objectives, are not fundamental policies of Ameritransand may be changed by Ameritrans' Board of Directors without stockholderapproval. Unless otherwise noted, whenever an investment policy or limitationstates a maximum percentage of Ameritrans' assets that may be invested in anysecurity or other asset, or sets forth a policy regarding quality standards,such standard or percentage limitation will be determined immediately after andas a result of Ameritrans' acquisition of such security or other asset.Accordingly, any subsequent change in values, assets, or other circumstanceswill not be considered when determining whether the investment complies withAmeritrans' investment policies and limitations. Ameritrans' fundamentalpolicies are as follows:

-49-

1. Ameritrans will at all times conduct its business so as to retainits status as a BDC under the 1940 Act. In order to retain that status,Ameritrans may not acquire any assets (other than non-investment assetsnecessary and appropriate to its operations as a BDC) if, after giving effect tosuch acquisition, the value of its "Qualifying Assets," amount to less than 70%of the value of its total assets. Ameritrans believes that the securities itproposes to acquire in connection with the acquisition of the Elk, as well astemporary investments it makes with its funds, will generally be QualifyingAssets. See "INFORMATION CONCERNING ELK -- The Investment Company Act of 1940;Election to Become a BDC."

2. Ameritrans may borrow funds and issue "senior securities" to themaximum extent permitted under the 1940 Act. As a BDC, Ameritrans may issuesenior securities if, immediately after such issuance, the senior securitieswill have an asset coverage of at least 200%. Under the 1940 Act, subordinateddebentures issued to or guaranteed by the SBA and preferred stock issued to theSBA by Elk may be considered senior securities issued by Ameritrans requiringasset coverage of 200%; however, pursuant to the Exemptive Order, suchdebentures and preferred stock are exempt from the asset coverage requirementsof the 1940 Act.

3. Ameritrans will not (i) underwrite securities issued by others(except to the extent that it may be considered an "underwriter" within themeaning of the Securities Act of 1933 in the disposition of restrictedsecurities), (ii) engage in short sales of securities, (iii) purchase securitieson margin (except to the extent that it may purchase securities with borrowedmoney), (iv) write or buy put or call options, or (v) engage in the purchase orsale of commodities or commodity contracts, including futures contracts (exceptwhere necessary in working out distressed loan or investment situations).Ameritrans and Elk may purchase interest rate caps and swaps covering up to 100%of their variable rate debt. In addition, Ameritrans may sponsor thesecuritization of loan portfolios.

4. Ameritrans and Elk may originate loans and loans with equityfeatures. To the extent permitted under SBA Regulations, Ameritrans may alsomake loans as permitted (i) under its existing stock option plans, (ii) underplans providing for options for disinterested directors that might be adopted byAmeritrans in the future, and (iii) to officers and directors for the purchaseof Ameritrans Common Stock.

Ameritrans will hold all of the outstanding common stock of Elk and may organizeadditional subsidiaries in the future. Ameritrans may acquire restrictedsecurities of small businesses.

Corporate Organizational Matters

If the holders of Elk Common Stock approve the adoption of the ShareExchange Plan and the Share Exchange is consummated, they will no longer bestockholders of Elk, but will instead become stockholders of Ameritrans.Ameritrans is governed by its own Certificate of Incorporation and By-laws,which are different from the Certificate of Incorporation and By-laws of Elk incertain material respects, and, as a Delaware corporation, is governed by theDelaware General Corporation Law ("Delaware Corporation Law"), which differsfrom the New York Business Corporation Law ("New York Corporation Law"), underwhich Elk is incorporated, in certain material respects. Set forth below isa summary of the significant differences between the Certificates of Incorporationof Elk and Ameritrans, the By-laws of Elk and Ameritrans, and New YorkCorporation Law and Delaware Corporation Law.

AMERITRANS CAPITAL CORP; N-14/A

-50-

Certificate of Incorporation

In addition to differences in the corporate name, corporate purpose(see "INFORMATION CONCERNING ELK -- Investment Policies" and "InvestmentPolicies," above) and authorized capital stock (see "INFORMATION CONCERNING ELK-- Description of Capital Stock," above, and "Description of Capital Stock,"below), Ameritrans' Certificate of Incorporation differs from Elk's Certificateof Incorporation in the following significant respects:

(1) Liability of Directors -- Ameritrans' Certificate of Incorporationincludes a provision (the "Liability Provision"), authorized under Section102(b)(7) of Delaware Corporation Law and the 1940 Act, the personal liabilityof a director to Ameritrans or its stockholders for monetary damages resultingfrom the breach of his fiduciary duty as a director. Under Delaware CorporationLaw, this provision may not be construed to eliminate or limit a director'sliability for any of the following: breaches of the director's duty of loyaltyto the corporation or its stockholders; acts or omissions not in good faith orwhich involve intentional misconduct or a knowing violation of law; payment of adividend or approval of stock repurchase which is illegal under Section 174 ofDelaware Corporation Law; and transactions from which the director derives animproper personal benefit. In addition, under the 1940 Act, this provision maynot be construed to protect a director against liability to the corporation orits stockholders for acts or omissions involving willful misfeasance, bad faith,gross negligence or reckless disregard of the duties involved in the conduct ofhis office.

The Liability Provision precludes actions for monetary damages againstdirectors of Ameritrans only with respect to certain violations of a director'sduty of care. Under Delaware Corporation Law, absent this provision, directorscould be held liable for negligence in the performance of their duty of care.The Liability Provision absolves directors of Ameritrans of monetary liabilityto Ameritrans and its stockholders for negligence in exercising their businessjudgment. A stockholder can prosecute an action against a director for monetarydamages only if he can show a breach of the duty of loyalty, gross negligence orreckless disregard of his duties, a failure to act in good faith, intentionalmisconduct or willful misfeasance, a knowing violation of the law, an illegaldividend or stock repurchase or an improper personal benefit. The LiabilityProvision does not affect the ability of Ameritrans or its stockholders to seekequitable remedies (such as an injunction or rescission) against a director forbreach of his fiduciary duty and does not limit the liability of directors underother laws such as the federal securities laws. The Liability Provision alsodoes not limit the liability of officers or employees of Ameritrans or anydirector acting in his capacity as an officer or employee of Ameritrans.

Elk's Certificate of Incorporation has no provision corresponding tothe Liability Provision. However, a section was added to New York CorporationLaw in 1987 which authorizes a New York corporation to eliminate or limit thepersonal liability of directors to a corporation or its stockholders formonetary damages in substantially the same manner and to substantially the sameextent as is authorized under Delaware Corporation Law; and, were it not for thereorganization of Elk contemplated by the Share Exchange Plan, Elk's Board ofDirectors would submit for stockholder approval at the next meeting ofstockholders a proposal to amend Elk's Certificate of Incorporation to include alimitation of liability provision virtually identical to the Liability Provisionincluded in Ameritrans' Certificate of Incorporation.

The provisions of the Delaware and New York Corporation Law authorizingthe Liability Provision are part of a nationwide legislative response to anincrease in the extent to which directors have been subjected to personalliability and to recent changes in the market for directors' liabilityinsurance. In recent years, directors of public companies have increasinglybecome subject to substantial personal liability for actions taken or omitted bythem as directors, as well as to significant expenses in defending their

-51-

conduct. The proliferation of these suits has in large part made it difficult toobtain directors' liability insurance. This unavailability or significantlyincreased cost of directors' liability insurance has been perceived as a threatto the quality and stability of the governance of corporations because directorshave become unwilling, in many instances, to serve without the protectionprovided by such insurance and, in other cases, have become inhibited in makingbusiness decisions that would be in the best interest of the corporations.

Eric Nitz

AMERITRANS CAPITAL CORP; N-14/A

The Board of Directors of both Elk and Ameritrans (which are comprisedof the same eight (8) persons) believe that the Liability Provision included inAmeritrans' Certificate of Incorporation is in the best interests of Ameritransand its stockholders and that it will enhance Ameritrans' ability to attract andretain individuals to serve as directors and allow such individuals to exercisetheir independent business judgment on behalf of Ameritrans. Although theLiability Provision limits the exposure of a director to monetary liability forhis actions as a director, the Boards of Directors of Elk and Ameritrans believethat the diligence exercised by directors stems primarily from their desire toact in the best interest of the corporation and its stockholders and not from afear of monetary damage awards, and that the level of scrutiny and careexercised by directors will not be lessened by this limitation.

(2) Written Actions of Stockholders -- Under Delaware Corporation Law,unless otherwise provided in the Certificate of Incorporation, any actionrequired or permitted to be taken at an annual or special meeting ofstockholders may be taken by the execution of a written consent setting forththe action to be taken and signed by the holders of the requisite number ofshares of outstanding voting stock necessary to take such action.

Elk's Certificate of Incorporation does not have a similar provisionbecause New York Corporation Law provides that stockholders may take an actionby written consent without a meeting only if such written action is signed byall stockholders who would be entitled to vote at a meeting held for suchpurpose.

(3) Amendments to Certificate of Incorporation -- Elk's Certificate ofIncorporation expressly provides that it may not be amended without the priorwritten approval of the SBA (which is required under the 1958 Act). BecauseAmeritrans will not be licensed under the 1958 Act, no similar provision isrequired or included in Ameritrans' Certificate of Incorporation.

By-Laws

Ameritrans' By-laws differ from Elk's By-laws in the followingsignificant respects:

(1) Special Meetings of Stockholders -- Ameritrans' By-laws providethat special meetings of stockholders may be called by the President or theBoard of Directors or the holders of at least 20% of the outstanding shares ofvoting stock.

(2) Amendments to By-Laws -- Ameritrans' By-laws provide that they maybe amended by either the directors of Ameritrans or by the stockholders ofAmeritrans. Elk's By-laws provide that they may be amended only by the Board ofDirectors or the stockholders of Elk.

(3) Indemnification of Directors and Officers -- See"Indemnification of Directors and Officers."

-52-

Indemnification of Directors and Officers

While the Liability Provision in its Certificate of Incorporationeliminates the liability of its directors to Ameritrans or its stockholders formonetary damages with respect to certain actions, the Liability Provision (i) isinapplicable to certain types of claims or actions by Ameritrans or itsstockholders, (ii) is inapplicable to claims or actions brought by parties otherthan Ameritrans or its stockholders, (iii) does not protect a director againstthe substantial legal and other expenses he may incur in defending himselfagainst a claim or action (even one against which he is protected by theLiability Provision) and (iv) affords no protection to officers of Ameritrans.Accordingly, Ameritrans' Bylaws include a provision (the "IndemnificationProvision") which requires Ameritrans to indemnify its directors and officers,to the maximum extent permitted by Delaware Corporation Law and by the 1940 Act,against liabilities and damages incurred in their capacity as directors orofficers of Ameritrans.

Under Delaware Corporation Law, a director or officer of a corporation

(i) shall be indemnified by the corporation for all expenses of litigation orother legal proceedings brought against him by virtue of his position as adirector or an officer to the extent he is successful, on the merits orotherwise, in such litigation or proceeding, (ii) may be indemnified by thecorporation for the expenses, judgments, fines and amounts paid in settlement ofsuch litigation or proceedings (other than an action by or in the rights of acorporation, which is hereinafter referred to as a "derivative action"), even ifhe is not successful, if he acted in good faith and in a manner he reasonablybelieved to be in or not opposed to the best interests of the corporation (and,in the case of a criminal proceeding, had no reason to believe that his

AMERITRANS CAPITAL CORP; N-14/A

conductwas unlawful), and (iii) may be indemnified by the corporation for expenses of aderivative action, even if he is not successful, if he acted in good faith andin a manner he reasonably believed to be in or not opposed to the best interestsof the corporation, provided that indemnification may not be made in the case ofa derivative action if the director or officer is adjudged to be liable to thecorporation, unless a court determines that, despite such adjudication but inview of all the circumstances, he is entitled to indemnification of suchexpenses. The indemnification described in (ii) and (iii) above may be made onlyupon the determination, by (a) a majority of disinterested directors, (b) acommittee of such directors designated by a majority of such directors, (c)under certain circumstances, independent legal counsel in a written opinion, or

(d) the stockholders, that indemnification because the applicable standard ofconduct has been met. Expenses incurred by a director or officer in defending anaction may be advanced by the corporation prior to the final disposition of suchaction upon receipt of an undertaking by such director or officer to repay suchexpenses if it is ultimately determined that he is not entitled to beindemnified in connection with the proceeding to which the expenses relate.These provisions or Delaware Corporation Law, by their terms, are not exclusiveof any other rights to which those seeking indemnification or advances ofexpenses may be entitled under any by-law, agreement, vote of stockholders ordisinterested directors or otherwise.

The 1940 Act prohibits the inclusion in Ameritrans' Certificate ofIncorporation or certain other organizational instruments of Ameritrans of aprovision which purports to protect any director or officer of Ameritransagainst liability to Ameritrans or its stockholders for willful misfeasance, badfaith, gross negligence or reckless disregard of the duties involved in theconduct of his office. The Indemnification Provision therefore specificallyprovides that indemnification shall only be made to the extent permitted by the1940 Act. This limitation would prohibit indemnification in certain situationsin which it may have been permitted under Delaware Corporation Law, such as asituation in which a director or officer has been guilty of gross negligence butnot bad faith or willful misconduct, or a situation in which the stockholders(but not the disinterested directors or independent legal counsel) determinethat indemnification is proper because the director or officer met theapplicable standard of conduct.

-53-

Because the Board of Directors of Ameritrans believes that theprovisions of Delaware Corporation Law concerning the indemnification ofdirectors and officers, which substantially define the substantive andprocedural content of the Liability Provision, are vague or inadequate incertain respects, Ameritrans' Board of Directors has entered into an indemnityagreement (the "Indemnity Agreement") with each of its directors and officers.Such Indemnity Agreement was approved by the written consent of the stockholdersof Ameritrans prior to the Share Exchange. The Indemnity Agreement clarifies ormodifies the indemnification provisions of Delaware Corporation Law as follows:

(i) the Indemnity Agreement establishes the presumption that the director orofficer has met the applicable standard of conduct required for indemnification,and provides that prompt indemnification shall be made unless a determination ismade by a majority of Ameritrans' disinterested directors or independent counselthat the director or officer has not met the applicable standard of conduct;

(ii) if the disinterested directors determine that the director or officer hasnot met the applicable standard of conduct, the Indemnity Agreement permits thedirector or officer to petition a court for an independent determination ofwhether such officer or director is entitled to indemnification under theIndemnity Agreement; (iii) the Indemnity Agreement provides that expenses shallbe promptly advanced to a director or officer upon receipt of an undertaking byhim to repay amounts so advanced if it is ultimately determined thatindemnification of such expenses is not permissible, provided that either (a)such director or officer shall have provided appropriate security for suchundertaking, (b) Ameritrans shall be insured against losses arising from anysuch advance payments or (c) either a majority of the disinterested directors orindependent legal counsel in a written opinion shall have determined, based upona review of readily available facts, that there is reason to believe that suchdirector or officer will be found entitled to indemnification; (iv) theIndemnity Agreement specifically provides that the indemnification provisionsapplicable to a derivative suit cover amounts paid in settlement; and (v) theIndemnity Agreement specifically permits partial indemnification to be made inthe event that the director or officer is not entitled to full indemnification.

Ameritrans may in the future elect to purchase directors' or officers'liability insurance, as is permitted by Delaware Corporation Law. However, thecoverage of such insurance is limited, and the premiums on such insurance arebecoming increasingly expensive.

AMERITRANS CAPITAL CORP; N-14/A

The Board of Directors of both Elk and Ameritrans believe that theIndemnification Provision and the Indemnity Agreement are in the best interestsof Ameritrans and its stockholders and that they will help Ameritrans to attractand retain qualified persons to serve as directors and officers and to enablethem to exercise their independent business judgment without excessive concernfor the costs and liabilities associated with possible litigation.

New York Corporation Law vs. Delaware Corporation Law

Set forth below is a summary of certain significant differences betweenNew York Corporation Law and Delaware Corporation Law which may affect theinterests of stockholders.

(1) Dividends -- Under both New York Corporation Law and DelawareCorporation Law, a corporation may generally pay dividends out of surplus. Inaddition, Delaware Corporation Law permits a corporation, under certaincircumstances, to pay dividends, if there is no surplus, out of its net profitsfor the fiscal year in which the dividend is declared and for the precedingfiscal year.

(2) Loans to Directors -- New York Corporation Law prohibits loans tocorporate directors unless authorized by stockholder vote. Delaware CorporationLaw permits the Board of Directors, without stockholder approval, to authorizeloans to corporate directors who are also officers. Ameritrans does notpresently intend to make any loans to its directors.

-54-

(3) Rights and Options -- New York Corporation Law requires stockholderapproval of any incentive plan pursuant to which rights or options are to begranted to directors, officers or employees. Delaware Corporation Law does notrequire stockholder approval of such incentive plans (although various otherlegal requirements may make such stockholder approval necessary or desirable,

i.e., Internal Revenue Code requirements).

(4) Consideration for Shares -- New York Corporation Law provides thatneither obligations of the subscriber for future payments nor future servicesshall constitute payment or part payment for shares of a corporation.Furthermore, certificates for shares may not be issued until the full amount ofthe consideration therefor has been paid. Delaware Corporation Law provides thata corporation may issue partly paid shares of stock, and shares of stock may bedeemed to be fully paid if the corporation receives consideration having a valuenot less than the par value of such shares and a binding obligation of thesubscriber to pay the balance of the subscription price.

(5) Dissenter's Rights -- New York Corporation Law provides that, uponcompliance with the applicable requirements and procedures, a dissentingstockholder has the right to receive the fair value of his shares if he objectsto (i) certain mergers, (ii) a consolidation, (iii) a share exchange, (iv)certain dispositions of substantially all of the assets of the corporation, or

(v) certain amendments to the certificate of incorporation which adverselyaffect the rights of such stockholder. While Delaware Corporation Law alsoprovides appraisal rights to dissenting stockholders in the case of certainmergers or a consolidation, such appraisal rights do not apply (a) in a merger,to stockholders of the surviving corporation if stockholder approval of themerger is not required, or (b) in a merger or a consolidation, to any class ofstock which is either listed on a national securities exchange or held of recordby more than 2,000 holders (unless stockholders are required to accept for theirshares in the merger or consolidation anything other than common stock of thesurviving corporation, common stock of another corporation that is so listed orheld, or cash in lieu of fractional shares of any such corporation). Inaddition, Delaware Corporation Law provides that a corporation may provide inits certificate of incorporation for appraisal rights in the event of (i) anamendment to its certificate of incorporation, (ii) any merger or consolidationin which the corporation is a constituent corporation, or (iii) for dispositionsof assets (there are no provisions for share exchanges under DelawareCorporation Law).

(6) Indemnification of Officers and Directors -- New York CorporationLaw and Delaware Corporation Law each provide that indemnification of itsdirectors and officers may not be made by a corporation in connection withderivative actions where the director or officer is adjudged to be liable to thecorporation, unless and only to the extent that, in view of all thecircumstances, such director or officer is fairly and reasonably entitled tosuch indemnification. New York Corporation Law additionally

AMERITRANS CAPITAL CORP; N-14/A

provides thatindemnification may not be made in connection with derivative actions where aclaim is settled or otherwise disposed of.

New York Corporation Law and Delaware Corporation Law also provide thatthe indemnification and advancements of expenses granted pursuant to, orprovided by, such laws are not exclusive of any other rights to which a directoror officer may be entitled. New York Corporation Law additionally provides thatno indemnification may be made to or on behalf of any director or officer forliability arising from actions taken in bad faith, intentional wrongdoing, orwhere an improper personal benefit was derived. Delaware Corporation Lawcontains no such express limitation.

(7) Vote Required for Mergers and Share Exchanges -- New YorkCorporation Law requires the affirmative vote of two-thirds of a corporation'soutstanding shares of voting stock to authorize a merger, consolidation, ordisposition of substantially all of its assets or a share exchange. Dissolution

-55-

also requires the affirmative vote of two-thirds of the outstanding shares ofvoting stock for corporations incorporated before February 23, 1998, unless thecertificate of incorporation or an amendment thereto provides for a lessernumber, which may not be less than a majority of the voting stock. Elk'scertificate of incorporation has not been so amended. Delaware Corporation Lawrequires the affirmative vote of a majority of the outstanding shares of votingstock to authorize a merger, consolidation, dissolution, or disposition ofsubstantially all of its assets, or a share exchange.

Also, Delaware Corporation Law permits a merger without approval of thestockholders of the surviving corporation if, among other things, no charteramendment is involved, the stock of the surviving corporation is unaffected bythe merger and the merger results in no more than a 20% increase in outstandingshares of common stock of such corporation. No such provision is contained inNew York Corporation Law.

(8) Written Actions of Stockholders -- New York Corporation Lawprovides that any action by stockholders may be taken without a meeting with thewritten consent of all stockholders who would be entitled to vote at a meetingheld for such purposes or, if the certificate of incorporation so provides, ofthe stockholders of the requisite number of shares of outstanding voting stocknecessary to take such action at a meeting at which all shares entitled to votethereon were present and voted. Elk's Certificate of Incorporation does notcontain such a provision. Under Delaware Corporation Law, unless thecorporation's certificate of incorporation provides otherwise, any action thatcould be taken at an annual or special meeting of stockholders may be taken by aconsent in writing setting forth the action to be taken which is signed by theholders of the requisite number of shares of outstanding voting stock necessaryto take such action at a meeting at which all shares entitled to vote thereonwere present and voted. This difference between New York Corporation Law andDelaware Corporation Law will not immediately affect the interests ofstockholders because Ameritrans' Certificate of Incorporation and By-lawsprovide that stockholders may act without a meeting only with the writtenconsent of all stockholders who would be entitled to vote at a meeting held forsuch purpose.

(9) Business Combinations with Interested Stockholders -- DelawareCorporation Law Section 203 is entitled "Business Combinations with InterestedStockholders." Set forth below is a summary of the principal provisions of

Section 203. This summary does not purport to be complete, and Elk stockholdersare encouraged to read Section 203 for more detailed information. Section 203generally prohibits any Delaware corporation covered by Section 203 fromengaging in any "business combination" with a person who is an "interestedstockholder" for a period of three (3) years following the date such personbecame an interested stockholder, unless (i) the Board of Directors approvedeither the interested stockholder or business combination in question prior tothe date such person became an interested stockholder, (ii) upon consummation ofthe transaction which resulted in such person becoming an interestedstockholder, such interested stockholder owned at least 85% of the voting stockof the corporation, excluding (for purposes of determining the number of sharesoutstanding) stock held by persons who are both directors and officers of thecorporation or by certain employee stock plans, or (iii) the businesscombination is approved by both the Board of Directors of the corporation and ata stockholders' meeting, by two-thirds of the outstanding voting stock not ownedby such interested stockholder. This prohibition is inapplicable to a businesscombination which is proposed subsequent to the announcement, but prior to theconsummation, of a transaction which is a merger, asset transfer of 50% or more

AMERITRANS CAPITAL CORP; N-14/A

-56-

of the corporation's assets, or tender or exchange offer for 50% or more of the corporation's outstanding voting stock involving the corporation and certain affiliated third parties, and which is approved or not opposed by a majority of directors who were directors prior to any person becoming an interested stockholder during the previous three (3) years or who were recommended for election or elected to succeed such directors by a majority of such directors. For purposes of Section 203, an "interested stockholder" means (a) any person who is the owner of 15% or more of the outstanding voting stock of the corporation, (b) any person who is an "affiliate" or "associate" (as defined in

Section 203) of the corporation and was the owner of 15% or more of outstanding voting stock of the corporation at any time within the previous three (3) years and (c) affiliates and associates of such persons. A "business combination," a used in Section 203, encompasses a broad variety of transactions, including (i) a merger or consolidation of the corporation with the interested stockholder,

(ii) the sale, lease, exchange, mortgage, pledge, transfer or other disposition of significant assets by the corporation to or with the interested stockholder,

(iii) various stock issuances by the corporation to the interested stockholder,

(iv) transaction involving the corporation which have the effect of increasing the proportionate stock ownership of the interested stockholder and (v) the receipt by the interested stockholder of any loans, advances, guarantees, pledges or other financial benefits by or through the corporation (for purposes of this definition, references to the corporation generally include any majority-owned subsidiaries). Section 203 generally applies to (a) any "public" corporation (i.e., one with a class of voting stock which is either listed or authorized for quotation on NASDAQ or with a national securities association, or held of record by more than 2,000 persons), unless such corporation elects (in the manner prescribed by Section 203) not to be governed by Section 203, and (b) any non-"public" corporation which elects by a provision in its certificate of incorporation to be governed by Section 203. Ameritrans' Certificate of Incorporation expressly provides that Ameritrans shall be governed by this

Section 203.

New York Corporation Law contains a provision somewhat comparable to

Section 203 of Delaware Corporation Law. Section 912 of New York Corporation Law generally prohibits a corporation for profit formed under the laws of New York

(a "domestic corporation") that is covered by Section 912 (as described below)

from engaging in any "business combination" with any "interested stockholder" for a period of five (5) years following the date such person became an interested stockholder, unless the Board of Directors approved either the interested stockholder or the business combination in question prior to the date such person became an interested stockholder. In addition, under Section 912, a domestic corporation covered by Section 912 generally may not engage in a business combination with an interested stockholder at any time, unless (i) the Board of Directors approves either the interested stockholder or the business combination in question prior to the date such person became an interested stockholder, (ii) the business combination is approved by the disinterested stockholders of the corporation at least five (5) years following the date such person became an interested stockholder, or (iii) the business combination satisfies certain criteria relating to the amount and nature of the consideration received in the business combination by the stockholders of the domestic corporation. For purposes of Section 912, an "interested stockholder" is any person who beneficially owns 20% or more of the outstanding voting stock of the corporation, or who is an "affiliate" or "associate" (as defined in

Section 912) of the corporation and beneficially owned 20% or more of the outstanding voting stock of the corporation at any time within the previous five

(5) years. The definition of "business combination" under Section 912 is substantially similar to the definition of "business combination" under Section 203 of Delaware Corporation Law. Section 912 applies only to a domestic corporation that either (1) has a class of stock registered under the 1934 Act (unless such corporation has elected by means of a provision in its

certificateof incorporation not to be governed by this Section) or (2) has elected by aprovision in its certificate of incorporation to be governed by Section 912. Elkis not currently covered by Section 912.

Federal Regulation

Ameritrans will be registered as a closed-end, non-diversifiedmanagement investment company under the 1940 Act. This status as a registeredinvestment company entitles Ameritrans to elect to be treated as a "regulatedinvestment company" under the Code, which entitles Ameritrans and itsstockholders to certain tax benefits. See "Tax Considerations," below. However,Ameritrans' status as a registered investment company also subjects Ameritransto the same restrictions and obligations under the 1940 Act to which Elk issubject (as modified by the Exemptive Order). For a summary of such restrictionsand obligations, see "INFORMATION CONCERNING ELK -- The Investment Company Actof 1940 ; Election to Become a BDC."

-57-

Ameritrans has also elected to become a BDC. See "INFORMATIONCONCERNING ELK -- The Investment Company Act of 1940; Election to Become a BDC."

Ameritrans is not licensed as an SBIC under the 1958 Act, and thus isneither eligible to raise funds from the SBA on relatively favorable terms, norsubject to the restrictions and obligations imposed by the 1958 Act (except asthey relate to Elk or any other licensee under the 1958 Act that may be owned oracquired by Ameritrans).

Management and Principal Stockholders

The directors and officers of Ameritrans are identical to the currentdirectors and officers of Elk. Ameritrans' directors and officers are currentlyreceiving no compensation from Ameritrans. It is currently anticipated that ifthe Share Exchange is consummated, the directors and officers of Ameritrans willinitially receive in the aggregate from Ameritrans and/or Elk the samecompensation in the aggregate that Elk officers and directors receive, but suchcompensation would be allocated between Elk and Ameritrans, based upon factorsdetermined by their respective Boards of Directors. Such officers and directorsmay also receive increases in compensation from time to time as determined bytheir respective Boards of Directors. Ameritrans and/or Elk may also hireadditional personnel as such personnel are needed in connection with theexpansion and diversification of Elk's lending and/or investment activities. See"INFORMATION CONCERNING ELK -- Management."

There is currently one (1) outstanding share of capital stock ofAmeritrans, which is owned by Gary C. Granoff. If the Share Exchange iscompleted, this share will be redeemed by Ameritrans. It is anticipated that theoutstanding capital stock of Ameritrans immediately following the Share Exchangewill consist of 1,745,600 shares of Ameritrans Common Stock in the same relativeproportions as they hold Elk Common Stock as of the Effective Date of the ShareExchange (subject to any changes resulting from the exercise of appraisal rightsby holders of Elk Common Stock). See "INFORMATION CONCERNING ELK -- SecurityOwnership of Principal Stockholders and Management."

Two stock option plans, the Ameritrans Employee Plan and the AmeritransDirector Plan, which are substantially identical to the Elk 1998 Employee Planand the Elk Director Plan, have been adopted by Ameritrans and receivedstockholder approval. If the Share Exchange is completed, the Ameritrans planswill be the successors to the Elk plans, and options issued under the Elk planswill be deemed to have been issued by Ameritrans and will be issuable topurchase Ameritrans common stock. See " INFORMATION CONCERNING ELK - StockOption Plans."

Description of Capital Stock

The authorized capital stock of Ameritrans consists of 5,000,000shares, $.0001 par value, of Ameritrans Common Stock and 1,000,000 shares of"blank check" preferred stock, $.01 par value. One (1) share of AmeritransCommon Stock is issued and outstanding, which share will be returned toAmeritrans upon completion of the Share Exchange. No preferred stock iscurrently issued or outstanding.

-58-

AMERITRANS CAPITAL CORP; N-14/A

The holders of Ameritrans Common Stock are entitled to one (1) vote pershare on all matters submitted to a vote of stockholders. Holders of AmeritransCommon Stock have neither cumulative voting rights (which means that the holdersof a majority of the outstanding shares of Ameritrans Common Stock may elect allof the directors of Ameritrans) nor any preemptive rights. Holders of AmeritransCommon Stock are entitled to receive ratably such dividends as may be declaredby the Board of Directors out of funds legally available therefor. In order toqualify as a "regulated investment company" under the Code, Ameritrans isrequired to distribute as dividends to its stockholders, for each fiscal year,at least 90% of its taxable income and 90% of the excess of its tax-exemptincome over certain disallowed deductions. In addition, in order to avoid anon-deductible 4% excise tax on any undistributed income of Ameritrans,Ameritrans is required to distribute as dividends, within each calendar year, atleast 97% of its ordinary income for such calendar year and 98% of its capitalgain net income for the one-year period ending on October 31 of such calendaryear. See "INFORMATION CONCERNING AMERITRANS -- Tax Considerations." In theevent of a liquidation, dissolution or winding up of Ameritrans, holders ofAmeritrans Common Stock will be entitled to receive a ratable portion of theassets of Ameritrans remaining after provision for payment of creditors. All ofthe shares of Ameritrans Common Stock issuable pursuant to the Share Exchangewill be fully paid and non-assessable.

The transfer agent for Ameritrans Common Stock is Continental StockTransfer & Trust Company, 2 Broadway, New York, New York 10004.

Market Information

There is currently no public market for Ameritrans Common Stock. If theShare Exchange is completed, Ameritrans' Common Stock will be listed on theNasdaq SmallCap Market under the symbol AMTC, and the listing of the Elk CommonStock will be terminated. See "INFORMATION CONCERNING ELK -- MarketInformation."

Tax Considerations

The following discussion is a general summary of the federal income taxprinciples applicable to Ameritrans, based on the currently existing provisionsof the Code and the regulations thereunder. This summary does not purport to bea complete description of the tax considerations applicable to Ameritrans or tothe holders of Ameritrans Common Stock. Persons currently holding Elk CommonStock are urged to consult with their own tax advisors concerning the taxconsiderations pertaining to Ameritrans.

Ameritrans has elected to be treated as a "regulated investmentcompany" under Section 851 of the Code. A regulated investment company maydeduct, for federal income tax purposes, most dividends paid to stockholders,thereby avoiding federal income taxation at the corporate level on stockholderdividends. In addition, because Elk currently qualifies for treatment as aregulated investment company, Ameritrans anticipates that the dividends itreceives from Elk will not be subject to corporate taxation at the level of Elk.Elk Capital will not be treated as a "regulated investment company" andtherefore it is contemplated its earnings will not be distributed tostockholders.

In order for Ameritrans to qualify as an regulated investment companyfor a given fiscal year, it must meet each of the following conditions for thatfiscal year:

(1) Ameritrans must be registered as an investment company under the1940 Act at all times during the year.

-59-

(2) At least 90% of Ameritrans' gross income for the year must bederived from interest, gains on the sale or other disposition of stock or othersecurities, dividends and payments with respect to securities loans.

(3) Less than 30% of Ameritrans gross income must be derived from thesale of other disposition of securities held for less than three months.

(4) At the close of each quarter, at least 50% of the value ofAmeritrans' total assets must be represented by cash, cash items (includingreceivables), and securities. There are also limitations on the extent to whichAmeritrans' holdings may be concentrated in the securities of a single issuer.However, these concentration limitations are not applicable to investments inother regulated investment companies. If Elk or Elk Capital fail to qualify asregulated investment companies in any fiscal year, the concentrationprohibitions will likely be violated.

Eric Nitz

AMERITRANS CAPITAL CORP; N-14/A

(5) Ameritrans must distribute as dividends at least 90% of its investment company taxable income (as defined in Section 852 of the Code) as well as 90% of the excess of its tax-exempt income over certain disallowed tax-exempt interest deductions in order to be allowed a tax deduction for dividends.

In order to avoid the imposition of a non-deductible 4% excise tax on undistributed income of Ameritrans, Ameritrans is required, under the terms of the Revenue Act of 1987 as embodied in Section 4982 of the Code, to distribute within each calendar year at least 97% of its ordinary income for such calendar year and 98% of its capital gain net income for the one-year period ending on October 31 of such calendar year.

Dividends distributed by Ameritrans to its stockholders constitute ordinary income to such stockholders to the extent derived from ordinary income and short-term capital gains of Ameritrans (such as interest from loans by Ameritrans). Any long-term capital gain dividends distributed by Ameritrans would constitute capital gain income to Ameritrans stockholders.

The tax benefits available to a qualified regulated investment company are prospective, commencing with the fiscal year in which all the conditions listed above are met, and would not permit Ameritrans to avoid income tax at the corporate level on income earned during prior taxable years. If Ameritrans fails to qualify as a regulated investment company for a given fiscal year, Ameritrans will not be entitled to a federal income tax deduction for dividends distributed, and amounts distributed as stockholder dividends by Ameritrans will therefore be subject to federal income tax at both the corporate level and the individual level. In addition, if Elk fails to qualify as a regulated investment company, such failure may cause Ameritrans to fail to qualify for regulated investment company status as well. See "INFORMATION CONCERNING ELK -- Tax Considerations."

Elk Capital Corporation

Ameritrans currently intends to engage in a broad range of investment and financial services business, not permitted under the 1958 Act, directly and indirectly through Elk Capital and/or other subsidiaries. Ameritrans has not yet formulated any definitive plans concerning the business or operations of Elk Capital. Consequently, stockholders should realize that, in approving the Share Exchange Plan, they are giving broad discretion to the management of Ameritrans with respect to the acquisition and the operations of Elk Capital.

-60-

The funds necessary to finance the initial organization and capitalization of Elk Capital will be provided from Elk from the proceeds from Elk's January 1998 private placement that may be transferred to Ameritrans or through borrowings by Ameritrans from an institutional lender. Elk may allocate up to $963,000 of the proceeds of such private placement (less any amounts used to purchase the shares of Elk stockholders who dissent from the Share Exchange Plan) for operating capital to be used by Ameritrans and/or Elk Capital.

APPRAISAL RIGHTS OF DISSENTING STOCKHOLDERS

Pursuant to Section 910 of New York Corporation Law, holders of Elk Common Stock at the close of business on the Record Date have the right to dissent from the Share Exchange and, if the Share Exchange Plan is approved and the Share Exchange is consummated, receive payment of the fair value of their Elk Common Stock (in lieu of Ameritrans Common Stock they would otherwise receive pursuant to the Share Exchange) by complying with the requirements of

Section 623 of New York Corporation Law (the full text of which is set forth as Exhibit B to this Proxy Statement/Prospectus). Section 623 requires that any such stockholder who wishes to exercise such appraisal rights must not vote in favor of the adoption of the Share Exchange Plan, and must file with Elk, before stockholders vote on the Share Exchange Plan, a written objection including a notice of election to dissent, his name and residence address, the number of shares as to which he dissents (stockholders may not dissent as to less than all of their shares) and a demand for payment for his shares if the Share Exchange is effected. Such objection is not required from any stockholder to whom Elk did not give proper notice of the Annual Meeting. Within 10 days after the vote of stockholders authorizing the Share Exchange, Elk must give written notice of such authorization to each dissenting stockholder who filed written objection or from whom written objection was not required. Any stockholder from whom written objection was not required and who elects to dissent from the Share Exchange must file with Elk, within 20 days after the giving of such notice to him, a written notice of such election, stating his name and residence address, the number of shares as to which he dissents and a demand for payment of the fair value for his shares. At the time of

Eric Nitz

filing the notice of election to dissent or within one month thereafter, the stockholder must submit the certificates representing his shares to Elk or its transfer agent for notation thereon of the election to dissent, after which such certificates will be returned to the stockholder. Failure to submit the certificates for such notation may result in the loss of appraisal rights. Within 15 days after the expiration of the period within which stockholders may file their notices of election to dissent or within 15 days after consummation of the Share Exchange, whichever is later (but not later than 90 days after the stockholders' vote authorizing the Share Exchange Plan), Elk must make a written offer (which if the Share Exchange has not been consummated, may be conditioned upon such consummation) to each stockholder who has filed such notice of election to pay for his shares at a specified price which Elk considers to be their fair value. If Elk fails to make the offer within such 15-day period, or if any dissenting stockholder fails to agree to it within 30 days after it is made, Elk shall institute a judicial proceeding within 20 days after the expiration of the applicable period to determine the rights of dissenting stockholders and to fix the fair market value of their shares of Elk Common Stock. If Elk fails to institute such proceeding, a dissenting stockholder may institute the same. A negative vote on the Share Exchange Plan does not constitute a "written objection" required to be filed by a dissenting stockholder. Failure to vote against the Share Exchange Plan will not constitute a waiver of appraisal rights; however, since a proxy left blank will be voted FOR the Share Exchange Plan, any Elk stockholder who wishes to exercise his appraisal rights must either vote AGAINST the Share Exchange Plan or abstain.

The foregoing summary does not purport to be a complete statement of the provisions of Section 623 of New York Corporation Law, and is qualified in its entirety by reference to the attached Exhibit B.

-61-

EXPERTS

The financial statements of Elk for the years ended June 30, 1999, 1998 and 1997, contained in the Statement of Additional Information of Ameritrans have been audited by Marcum & Kliegman LLP, independent public accountants, as indicated in their report dated August 11, 1999 with respect thereto and are incorporated herein. Such financial statements have been incorporated in reliance upon such reports given upon the authority of said firm as experts in accounting and auditing.

The legality of the shares of Ameritrans Common Stock to be issued pursuant to the Share Exchange will be passed upon for Ameritrans by Stursberg & Veith, which is counsel to both Ameritrans and Elk.

OTHER MATTERS

The Board of Directors of Elk does not know of any other matters which may come before the Annual Meeting, other than those specified in the Notice of Annual Meeting of Stockholders dated _____ _____, 1999 and this Proxy Statement/Prospectus. However, if any other matters are properly presented to the Annual Meeting, the persons named in the accompanying proxy intend to exercise the discretion conferred by any duly executed proxies to vote, or otherwise to act, in accordance with their judgment on such matters.

If the Share Exchange is not consummated, any proposal which a Elk stockholder intends to present at the 2000 Annual Meeting of Stockholders of Elk must be received by Elk at its principal executive offices a reasonable time before the management of Elk commences solicitation of proxies for such meeting, for such proposal to be included in the Proxy Statement for such meeting.

The Board of Directors invites stockholders to attend the Annual Meeting. Whether or not you plan to attend, you are urged to complete, date, sign and return the enclosed proxy in the accompanying envelope. Prompt response will greatly facilitate arrangements for the meeting, and your cooperation will be appreciated. Stockholders who attend the meeting may vote their stock personally even though they have sent in their proxies.

ADDITIONAL INFORMATION

Ameritrans has filed with the SEC, Washington, D.C., a Registration Statement on Form N-14 under both the 1933 Act and the 1940 Act which relates to Ameritrans, Elk and the shares of Ameritrans Common Stock being offered hereby. For further information pertaining to Ameritrans, Elk and the Ameritrans Common Stock being offered hereby, reference is hereby made to such Registration Statement, including the exhibits and financial statements filed therewith.

AMERITRANS CAPITAL CORP; N-14/A

-62-

Exhibit A

AGREEMENT AND PLAN OF SHARE EXCHANGE

between

AMERITRANS CAPITAL CORPORATION

and

ELK ASSOCIATES FUNDING CORPORATION

THIS AGREEMENT AND PLAN OF SHARE EXCHANGE (this "Plan") is made as of this 2nd day of August, 1999 by and between Ameritrans Capital Corporation, a Delaware corporation ("Ameritrans") and Elk Associates Funding Corporation, a New York corporation ("Elk").

WHEREAS, the respective Boards of Directors of Ameritrans and Elk deem it advisable and in the best interests of their respective stockholders that Ameritrans and Elk engage in a share exchange (the "Share Exchange") pursuant to this Plan and Section 913 of the Business Corporation Law of the State of New York ("New York BCL") pursuant to which Ameritrans would acquire all of the outstanding shares of common stock of Elk in exchange for shares of common stock of Ameritrans;

NOW, THEREFORE, in consideration of the mutual covenants set forth herein, Elk and Ameritrans hereby agree as follows:

ARTICLE I

SHARE EXCHANGE

1.1. Acquiring Corporation. Ameritrans shall be the acquiring corporation, within the meaning of Section 913 of New York BCL, in the Share Exchange.

1.2. Subject Corporation. Elk shall be the subject corporation, within the meaning of Section 913 of New York BCL, in the Share Exchange.

1.3. Share Exchange. Pursuant to the terms of this Plan and Section 913 of New York BCL, Ameritrans and Elk shall participate in the Share Exchange, pursuant to which each share of common stock, par value $.01 per share, of Elk ("Elk Common Stock") issued and outstanding on the Effective Date of the Share Exchange (as defined in Section 1.7 below) shall be exchanged for one (1) share of common stock, $.0001 par value per share, of Ameritrans ("Ameritrans Common Stock"). As of the Effective Date of the Share Exchange, (i) the ownership of each issued and outstanding share of Elk Common Stock shall automatically vest in Ameritrans, whether or not the certificates representing such shares have been surrendered for exchange by the holders thereof; and (ii) the holders of issued and outstanding shares of Elk Common Stock shall automatically become entitled to receive one (1) share of Ameritrans Common Stock for each share of Elk Common Stock held, and the certificates representing such shares of Elk Common Stock shall represent only the right to receive such shares of Ameritrans Common Stock and shall cease to represent shares of Elk Common Stock.

1.4. Treasury Shares. Notwithstanding the provisions of Section 1.3, any shares of Elk Common Stock held by Elk as treasury shares as of the Effective Date ("Treasury Shares") shall not be exchanged for shares of Ameritrans Common Stock, but shall be cancelled as of the Effective Date.

1.5. Dissenting Stockholders. Notwithstanding the provisions of Section 1.3, any holder of shares of Elk Common Stock who is entitled to dissenter's rights pursuant to Section 910 of New York BCL and who filed a written objection to this Plan in accordance with Section 623(a) of New York BCL and did not vote in favor of the Share Exchange shall not become entitled to receive one (1) share of Ameritrans Common Stock for each share of Elk Common Stock held by such holder on the Effective Date (with such shares of Elk Common Stock referred to herein as "Dissenting Shares") pursuant to the Share Exchange, but shall instead have the rights provided for in Section 623 of New York BCL; and as of the Effective Date, the certificates

Eric Nitz

representing the Dissenting Shares shall represent only the rights provided for in Section 623 of New York BCL and shall cease to represent shares of Elk Common Stock.

1.6. Preferred Stock. No shares of preferred stock are currently authorized or outstanding.

1.7. Effective Date. The Effective Date of the Share Exchange shall be the date on which a certificate of exchange for the Share Exchange is executed and filed with the New York Department of State in accordance with Section 913 of New York BCL. Such execution and filing shall occur on , 1999, or if all conditions (set forth in Article V hereof) to the obligation of Ameritrans or Elk to consummate the Share Exchange have not been satisfied or waived as of such date, as soon as practicable following the satisfaction or waiver of all conditions to the obligation of Ameritrans or Elk to consummate the Share Exchange.

1.8. Exchange of Elk Common Stock Certificates. From and after the Effective Date, each holder of a certificate representing shares of Elk Common Stock which were issued and outstanding as of the Effective Date (excluding Treasury Shares and Dissenting Shares) shall have the right to surrender such certificate to Ameritrans in exchange for a certificate representing such number of shares of Ameritrans Common Stock as is determined by multiplying the number of shares of Elk Common Stock formerly represented by the surrendered certificate by one. Such exchange shall be made in accordance with written instruction which will be sent by Ameritrans, as soon as practicable following the Effective Date. Between the Effective Date and the time of such certificate exchange, each certificate representing shares of Elk Common Stock that were issued and outstanding as of the Effective Date (excluding Treasury Shares and Dissenting Shares) shall be deemed for all corporate purposes to represent such number of shares of Ameritrans Common Stock as is determined by multiplying the number of shares of Elk Common Stock formerly represented by such certificate by one. No transfers of the shares of Elk Common Stock issued and outstanding as of the Effective Date shall be recognized by, or recorded on the books of, either Elk or Ameritrans between the Effective Date and the date of such certificate exchange. Holders of shares of Elk Common Stock issued and outstanding as of the Effective Date (excluding Treasury Shares and Dissenting Shares) shall be considered to be stockholders of record of Ameritrans for purposes of any dividends or distributions declared by Ameritrans to be payable to stockholders of record of Ameritrans as of the date between the Effective Date and the date of such certificate exchange.

1.9. Issuance to Ameritrans of Elk Common Stock Certificate. From and after the Effective Date, Ameritrans, as the sole holder of shares of Elk Common Stock, shall be entitled to receive a certificate from Elk representing such number of shares of Elk Common Stock as is equal to the number of shares of Elk Common Stock issued and outstanding as of the Effective Date (excluding Treasury Shares); and Elk shall promptly issue such stock certificate to Ameritrans. Between the Effective Date and the date of issuance of such stock certificate, Ameritrans shall be deemed for all corporate purposes to be the sole holder of Elk Common Stock.

-2-

ARTICLE II

CAPITALIZATION

2.1. Capitalization of Ameritrans. The authorized capital stock of Ameritrans consists of 5,000,000 shares of Ameritrans Common Stock, $.0001 par value, one (1) of which, as of the date hereof, is issued and outstanding and entitled to vote on the Plan. The number of authorized shares of Ameritrans Common Stock may be changed prior to the Effective Date by an amendment to the Certificate of Incorporation of Ameritrans, upon a vote of the Board of Directors and stockholders (if any) of Ameritrans; and shares of Ameritrans Common Stock may be issued prior to the Effective Date, upon a vote of the Board of Directors of Ameritrans.

2.2. Capitalization of Elk. The authorized capital stock of Elk consists of 3,000,000 shares of Elk Common Stock, $.01 par value, of which, as of the date hereof, 1,745,600 shares are issued and outstanding. The outstanding shares of Elk Common Stock are entitled to vote on this Plan. The number of authorized shares of Elk Common Stock or Elk Preferred Stock may be changed prior to the Effective Date by an amendment to the Certificate of Incorporation of Elk, upon a vote of the Board of Directors and stockholders (if any) of Elk. The number of outstanding shares of Elk Common Stock may be changed prior to the Effective Date by the issuance of additional shares of Elk Common Stock, upon a vote of the Board of Directors of Elk.

ARTICLE III

REPRESENTATIONS AND WARRANTIES OF AMERITRANS

Ameritrans represents and warrants to Elk as follows:

3.1. Corporate Status of Ameritrans. Ameritrans is a corporation duly organized, validly existing and in good standing under the laws of the State of Delaware. Ameritrans is a registered management investment company under the Investment Company Act of 1940, as amended (the "1940 Act").

3.2. Authority for Plan. Ameritrans has the corporate power to enter into this Plan and to carry out its obligations hereunder. The execution and delivery of this Plan and the consummation of the Share Exchange have been duly authorized by the Board of Directors of Ameritrans, and no other corporate proceedings on the part of Ameritrans are necessary to authorize the execution and delivery of this Plan and the consummation of the Share Exchange. The execution and delivery of this Plan and the consummation of the Share Exchange will not (i) conflict with or result in a violation of any provision of the Certificate of Incorporation or By-laws of Ameritrans or (ii) with or without the giving of notice or the lapse of time, or both, conflict with, or result in any violation of or default under, or in any right to accelerate or the creation of any lien, charge or encumbrance pursuant to, or right of termination under, any provision of any mortgage, indenture, lease, agreement or other instrument, permit, concession, grant, franchise, license, judgment, order, decree, statute, law, ordinance, rule or regulation applicable to Ameritrans or any of its properties. Other than in connection with or in compliance with the provision of

Section 913 of New York BCL, and applicable federal and state securities laws, no authorization, consent or approval of, or declaration of, filing for the execution and delivery of this Plan to Ameritrans or the consummation by Ameritrans of the Share Exchange. This Plan has been duly executed and delivered by Ameritrans and is a valid and binding obligation of Ameritrans enforceable in accordance with its terms.

-3-

3.3. Prior Activities. Ameritrans has not engaged in any business or other activity prior to the date of this Plan, other than matters relating to corporate organization, capitalization and financing and matters incidental to this Plan.

3.4. Best Efforts. Ameritrans shall use its best efforts, to the extent reasonable, to satisfy all conditions to the obligation of Ameritrans or Elk to consummate the Share Exchange.

ARTICLE IV

REPRESENTATIONS AND WARRANTIES OF ELK

Elk represents and warrants to Ameritrans as follows:

4.1. Corporate Status of Elk. Elk (i) is a corporation duly organized, validly existing and in good standing under the laws of the State of New York, and (ii) has all requisite corporate power and authority to own, lease and operate its properties and to conduct its business as it is now being conducted. Elk is a registered management investment company under the 1940 Act. Elk is licensed to operate as a small business investment company under Section 301(d) of the Small Business Investment Act of 1958, as amended (the "1958 Act").

4.2. Subsidiaries and Other Ownership Interests. Except as listed on Schedule 1 attached hereto or its financial statements, Elk does not own, directly or indirectly, any capital stock or other equity interest in any corporation, partnership, firm, association or other business organization, entity or enterprise.

4.3. Authority for Plan. Elk has the corporate power to enter into this Plan and to carry out its obligations hereunder. The execution and delivery of this Plan and the consummation of the Share Exchange have been duly authorized by Elk's Board of Directors and, except for the approval of this Plan by its stockholders as required by Section 913 of the New York BCL, no other corporate proceedings on the part of Elk are necessary to authorize the execution and delivery of this Plan and the consummation of the Share Exchange. The execution and delivery of this Plan and the consummation of the Share Exchange will not

AMERITRANS CAPITAL CORP; N-14/A

(i) conflict with or result in a violation of any provision of the Certificateof Incorporation or Bylaws of Elk or (ii) with or without the giving of noticeor the lapse of time, or both, conflict with, or result in any violation of ordefault under, or in any right to accelerate or the creation of any lien, chargeor encumbrance pursuant to, or right of termination under, any provision of anymortgage, indenture, lease, agreement or other instrument, permit, concession,grant, franchise, license, judgment, order, decree, statute, law, ordinance,rule or regulation applicable to Elk or any of its properties, except for suchconflicts, violations or defaults as have been consented to or waived by theappropriate party. Other than in connection with or in compliance with theprovision of Section 913 of New York BCL, and applicable federal and statesecurities laws, and for the approval of the Small Business Administration (the"SBA") required under the 1958 Act, no authorization, consent or approval of, ordeclaration of, or filing with or notice to any governmental body or authorityis necessary for the execution and delivery of this Plan by Elk or theconsummation by Elk of the Share Exchange. This Plan has been duly executed anddelivered by Elk and is a valid and binding obligation of Elk enforceable inaccordance with its terms.

4.4. Financial Statements. Elk has furnished to Ameritrans true andcomplete copies of (i) Elk's consolidated balance sheet as of June 30, 1998 and1997 and the related statement of income, stockholders' equity, cash flows andoperations for the years then ended, and statement of changes in net assets forthe fiscal year then ended, accompanied by the report of Marcum & Kliegman LLP,the independent accountants of Elk, and (ii) Elk's consolidated balance sheet asof March 31, 1998 and 1999, and the related statement of income, stockholders'equity, cash flows and operations for

-4-

the period then ended, and statement of changes in net assets for the periodthen ended. Such financial statements (i) are in accordance with the books andrecords of Elk, (ii) present fairly the financial position and results ofoperations and cash flow of Elk for the periods indicated, and (iii) have beenprepared in accordance with generally accepted accounting principlesconsistently applied (except as otherwise stated therein).

4.5. Assets. Elk has good and clear record and marketable title to, ora valid leasehold interest in, all of the assets and property shown on itsbalance sheet as of March 31, 1999, except as to assets and property disposedof since March 31, 1999, in the ordinary course of business and in a mannerconsistent with past practice. None of such assets or properties is subject toany mortgage, pledge, lien security interest, lease or other encumbrance, exceptfor those incurred or made in the ordinary course of business which do notmaterially impair the usefulness of such assets or properties in the conduct ofthe business of Elk.

4.6. Absence of Changes. Since March 31, 1999, and except as otherwisecontemplated by this Plan, Elk has not undergone any material adverse change ofany nature in its financial condition, business, operations, properties orprospects.

4.7. Compliance with Applicable Laws. The business of Elk is not beingconducted in violation of any applicable law, ordinance, regulation, decree ororder of any governmental entity, except for violations which either singly orin the aggregate do not and are not expected to have a material adverse effecton the financial condition, business, operations, properties or prospects ofElk.

4.8. Litigation. There is no material investigation or review by agovernmental entity with respect to Elk pending or, to the best of Elk'sknowledge, threatened; there is no claim, action, suit or proceeding pending, orto the best of Elk's knowledge, threatened against or affecting Elk or any ofits assets at law or in equity, which either singly or in the aggregate may haveany material adverse effect on the financial condition, business, operations,properties or prospects of Elk; and there is no basis or grounds, to the best ofElk's knowledge, for any such claim, action, suit, proceeding, investigation orreview.

4.9. Tax Matters. Elk has timely and appropriately filed all federal,state, local and foreign tax returns required to be filed by it or on itsbehalf. All taxes shown by such returns to be due and payable have been fullypaid or are reflected as a liability in Elk's financial statements, and in Elk'sopinion it has no material liability for such taxes in excess of the amount sopaid or accrued.

4.10. Best Efforts. Elk shall use its best efforts, to the extentreasonable, to satisfy all conditions to the obligation of Ameritrans or Elk toconsummate the Share Exchange.

ARTICLE V

CONDITIONS PRECEDENT

Eric Nitz

5.1. General Conditions. The obligations of Ameritrans and Elk toconsummate the Share Exchange shall be subject to the fulfillment on or prior tothe Effective Date of the following conditions:

(a) Stockholder Approval. This Plan shall have been approvedby the holders of at least two-thirds of the outstanding shares of ElkCommon Stock, as required by Section 913 of New York BCL.

-5-

(b) SBA Approval. The Plan shall have been approved by the SBAin accordance with the requirements of the 1958 Act.

(c) Compliance with Securities Laws. The shares of AmeritransCommon Stock to be issued to the holders of Elk Common Stock issued andoutstanding as of the Effective Date pursuant to the terms of this Planshall have been duly registered under the Securities Act of 1933, or anexemption from such registration shall be available. The issuance ofsuch shares of Ameritrans Common Stock pursuant to the terms of thisPlan shall be permissible under all applicable state securities laws,and all actions or filings required under such state securities laws inconnection with the issuance of such Ameritrans Common Stock shall havebeen effected.

(d) Appraisal Rights. Holders of not more than three percent(3%) of the shares of Elk Common Stock entitled to vote at the meetingof Elk stockholders at which the Plan is approved shall have exercisedtheir right to receive payment for their shares of Elk Common Stockpursuant to Section 623 of New York BCL by (i) filing with Elk awritten objection to this Plan before the stockholder vote on this Planis taken and (ii) not voting in favor of this Plan.

(e) No Governmental Proceedings. No injunction or restrainingor other order issued by a court of competent jurisdiction whichprohibits the consummation of the Share Exchange shall be in effect,and no governmental action or proceeding shall have been commenced orthreatened in writing seeking any injunction or restraining or otherorder which seeks to prohibit, restrain, invalidate or set asideconsummation of the Plan.

5.2. Conditions Precedent to Obligation of Ameritrans. The obligationof Ameritrans to consummate the Share Exchange shall be subject to thefulfillment prior to the Effective Date of the following conditions:

(a) Accuracy of Representations and Warranties. Therepresentations and warranties of Elk set forth in Article IV shall betrue and correct in all material respects as of the Effective Date,except as contemplated by this Plan.

(b) No Adverse Change. There shall not have occurred anymaterial adverse change in the financial condition, business,operations, properties or prospects of Elk between the date of thisPlan and the Effective Date.

5.3. Conditions Precedent to Obligation of Elk. The obligation of Elkto consummate the Share Exchange shall be subject to the fulfillment prior tothe Effective Date of the following condition:

(a) Accuracy of Representations and Warranties. Therepresentations and warranties of Ameritrans set forth in Article IIIshall be true and correct in all material respects as of the EffectiveDate, except as contemplated by this Plan.

ARTICLE VI

TERMINATION

6.1. Termination. This Plan shall terminate and the shall not becomeeffective, and no party to this Plan shall have any obligation to proceed withthe Share Exchange, upon mutual agreement of the Board of Directors ofAmeritrans and Elk.

-6-

6.2. Effect of Termination. In the event this Plan terminates pursuantto Section 6.1, all further obligations of the parties hereto under this Planshall terminate without further liability to the other party hereto.

ARTICLE VII

MISCELLANEOUS

AMERITRANS CAPITAL CORP; N-14/A

7.1. Amendments. This Plan may be amended at any time before theEffective Date by a written instrument signed by each party hereto, except thatfollowing approval of this plan by the stockholders of Elk, no amendment shallbe made which adversely affects the consideration payable to such stockholderspursuant to the Share Exchange.

7.2. Assignment. No party to this Plan may assign any of its rights ordelegate any of its duties under this Plan without the written consent of theother party to this Plan.

7.3. Non-survival of Representations and Warranties. The respectiverepresentations and warranties of the parties to this Plan set forth in ArticlesIII and IV shall expire and be terminated as of the Effective Date.

7.4. Notices. All notices and other communications under this Planshall be in writing and shall be deemed given if delivered by hand, sent via areputable nationwide courier service or deposited in the United States mail(postage prepaid), in each case to the applicable party at the followingaddress:

Ameritrans Capital Corporation

747 Third Avenue, 4th Floor

New York, New York 10017

Attention: President

Elk Associates Funding Corporation

747 Third Avenue, 4th Floor

New York, New York 10017

Attention: President

7.5. Governing Law. This Plan shall be governed by and construed inaccordance with the laws of the State of New York.

IN WITNESS WHEREOF, the parties hereto have executed this Plan as ofthe date first written above.

AMERITRANS CAPITAL CORPORATION

By: _____

Gary C. Granoff

President

ELK ASSOCIATES FUNDING

CORPORATION

By: _____

Gary C. Granoff

President

-7-

Selected Provisions of Delaware Corporation Law EXHIBIT B

Section 623. Procedure to Enforce Shareholders' Right to Receive Payment forShares.

AMERITRANS CAPITAL CORP; N-14/A

(a) A shareholder intending to enforce his right under a section of this chapter to receive payment for his shares if the proposed corporate action referred to therein is taken shall file with the corporation before the vote, written objection to the action. The objection shall include a notice of his election to dissent, his name and residence address, the number of classes of shares as to which he dissents and a demand for payment of the fair value of his shares if the action is taken. Such objection is not required from any shareholder to whom the corporation did not give notice of such meeting in accordance with this chapter or where the proposed action is authorized by written consent of shareholders without a meeting.

(b) Within ten days after the shareholders' authorization date, which term as used in this section means the date on which the shareholders' vote authorizing such action was taken, or the date on which such consent without a meeting was obtained from the requisite shareholders, the corporation shall give written notice of such authorization or consent by registered mail to each shareholder who filed written objection or from whom written objection was not required, excepting any shareholder who voted for or consented in writing to the proposed action and who thereby is deemed to have elected not to enforce his right to receive payment for his shares.

(c) Within twenty days after the giving of notice to him, any shareholder from whom written objection was not required and who elects to dissent shall file with the corporation a written notice of such election, stating his name and residence address, the number of classes of shares as to which he dissents and a demand for payment of the fair value of his shares. Any shareholder who elects to dissent from a merger under section 905 (Merger of subsidiary corporation) or paragraph (c) of section 907 (Merger or consolidation of domestic and foreign corporations) or from a share exchange under paragraph

(g) of section 913 (Share exchanges) shall file a written notice of such election to dissent within twenty days after the giving to him of a copy of the plan of merger or exchange or an outline of the material features thereof under section 905 or 913.

(d) A shareholder may not dissent as to less than all of the shares, as to which he has a right to dissent, held by him of record, that he owns beneficially. A nominee or fiduciary may not dissent on behalf of any beneficial owner as to less than all of the shares of such owner, as to which such nominee or fiduciary has a right to dissent, held of record by such nominee or fiduciary.

(e) Upon consummation of the corporate action, the shareholder shall cease to have any of the rights of a shareholder except the right to be paid the fair value of his shares and any other rights under this section. A notice of election may be withdrawn by the shareholder at any time prior to his acceptance in writing of an offer made by the corporation, as provided in paragraph (g), but in no case later than sixty days from the date of consummation of the corporate action except that if the corporation fails to make a timely offer, as provided in paragraph (g), the time for withdrawing a notice of election shall be extended until sixty days from the date an offer is made. Upon expiration of such time, withdrawal of a notice of election shall require the written consent of the corporation. In order to be effective, withdrawal of a notice of election must be accompanied by the return to the corporation of any advance payment made to the shareholder as provided in paragraph (g). If a notice of election is withdrawn, or the corporate action is rescinded, or a court shall determine that the shareholder is not entitled to receive payment for his shares, or the shareholder shall otherwise lose his dissenter's rights, he shall not have the right to receive payment for his shares and he shall be reinstated to all his rights as a shareholder as of the consummation of the corporate action, including any intervening preemptive rights and the right to payment of any intervening dividend or other distribution or, if any such rights have expired or any such dividend or distribution other than in cash

has been completed, in lieu thereof, at the election of the corporation, the fair value thereof in cash as determined by the board as of the time of such expiration or completion, but without prejudice otherwise to any corporate proceedings that may have been taken in the interim.

(f) At the time of filing the notice of election to dissent or within one month thereafter the shareholder of shares represented by certificates shall submit the certificates representing his shares to the corporation, or to its transfer agent, which shall forthwith note conspicuously thereon that a notice of election has been filed and shall return the certificates to the shareholder or other person who submitted them on his behalf. Any shareholder of shares represented by certificates who fails to submit his certificates for such notation as herein specified shall, at the option of the corporation exercised by written notice to him within forty-five days from the date of filing of such notice of election to dissent, lose his dissenter's rights unless a court, for good cause shown, shall otherwise direct. Upon transfer of a certificate bearing such notation, each new certificate issued therefor shall bear a similar notation together with the name of the original dissenting holder of the shares and a transferee shall acquire no rights in the corporation except those which the original dissenting shareholder had at the time of the transfer.

(g) Within fifteen days after the expiration of the period within whichshareholders may file their notices of election to dissent, or within fifteendays after the proposed corporate action is consummated, whichever is later (butin no case later than ninety days from the shareholders' authorization date),the corporation or, in the case of a merger or consolidation, the surviving ornew corporation shall make a written offer by registered mail to eachshareholder who has filed such notice of election to pay for his shares at aspecified price which the corporation considers to be their fair value. Suchoffer shall be accompanied by a statement setting forth the aggregate number ofshares with respect to which notices of election to dissent have been receivedfrom the aggregate number of holders of such shares. If the corporate action hasbeen consummated, such offer shall also be accompanied by (1) advance payment toeach such shareholder who has submitted the certificates representing his sharesto the corporation, as provided in paragraph (f), of an amount equal to eightypercent of the amount of such offer, or (2) as to each shareholder who has notyet submitted his certificates a statement that advance payment to him of anamount equal to eighty percent of the amount of such offer will be made by thecorporation promptly upon submission of his certificates. If the corporateaction has not been consummated at the time of this making of the offer, suchadvance payment or statement as to advance payment shall be sent to eachshareholder entitled thereto forthwith upon consummation of the corporateaction. Every advance payment or statement as to advance payment shall includeadvice to the shareholder to the effect that acceptance of such payment does notconstitute a waiver of any dissenters' rights. If the corporate action has notbeen consummated upon the expiration of the ninety day period after theshareholders' authorization date, the offer may be conditioned upon theconsummation of such action. Such offer shall be made at the same price pershare to all dissenting shareholders of the same class, or if divided intoseries, of the same series and shall be accompanied by a balance sheet of thecorporation whose shares the dissenting shareholder holds as of the latestavailable date, which shall not be earlier than twelve months before the makingof such offer, and a profit and loss statement or statements for not less than atwelve month period ended on the date of such balance sheet or, if thecorporation was not in existence throughout such twelve month period, for theportion thereof during which it was in existence. Notwithstanding the foregoing,the corporation shall not be required to furnish a balance sheet or profit andloss statement or statements to any shareholder to whom such balance sheet orprofit and loss statement or statements were previously furnished, nor if inconnection with obtaining the shareholders' authorization for or consent to theproposed corporate action the shareholders were furnished with a proxy orinformation statement, which included financial statements, pursuant toRegulation 14A or Regulation 14C of the United States the Securities andExchange Commission. If within thirty days after the making of such offer, thecorporation making the offer and any shareholder agree upon the price to be paidfor his shares, payment therefor shall be made within sixty days after

the making of such offer or the consummation of the proposed corporate action,whichever is later, upon the surrender of the certificates for any such sharesrepresented by certificates.

(h) The following procedure shall apply if the corporation fails tomake such offer within such period of fifteen days, or if it makes the offer andany dissenting shareholder or shareholders fail to agree with it within theperiod of thirty days thereafter upon the price to be paid for their shares:

(1) The corporation shall, within twenty days after theexpiration of whichever is applicable of the two periods lastmentioned, institute a special proceeding in the supreme court in thejudicial district in which the office of the corporation is located todetermine the rights of dissenting shareholders and to fix the fairvalue of their shares. If, in the case of merger or consolidation, thesurviving or new corporation is a foreign corporation without an officein this state, such proceeding shall be brought in the county where theoffice of the domestic corporation, whose shares are to be valued, waslocated.

(2) If the corporation fails to institute such proceedingwithin such period of twenty days , any dissenting shareholder mayinstitute such proceeding for the same purpose not later than thirtydays after the expiration of such twenty day period. If such proceedingis not instituted within such thirty day period, all dissenter's rightsshall be lost unless the supreme court, for good cause shown, shallotherwise direct.

(3) All dissenting shareholders, excepting those who, asprovided in paragraph (g), have agreed with the corporation upon theprice to be paid for their shares, shall be made parties to suchproceeding, which shall have the effect of an action quasi in remagainst their shares. The corporation shall serve a copy of thepetition in such proceeding upon each dissenting shareholder who is aresident of this state in the manner provided by law for the service ofa summons, and upon each nonresident dissenting shareholder either byregistered mail and publication, or in such other manner as ispermitted by law. The jurisdiction of the court shall be plenary andexclusive.

(4) The court shall determine whether each dissenting shareholder, as to whom the corporation requests the court to make such determination, is entitled to receive payment for his shares. If the corporation does not request any such determination or if the court finds that any dissenting shareholder is so entitled, it shall proceed to fix the value of the shares which, for the purposes of this section, shall be the fair value as of the close of business on the day prior to the shareholders' authorization date. In fixing the fair value of the shares, the court shall consider the nature of the transaction giving rise to the shareholder's right to receive payment for shares and its effects on the corporation and its shareholders, the concepts and methods then customary in the relevant securities and financial markets for determining fair value of shares of a corporation engaging in a similar transaction under comparable circumstances and all other relevant factors. The court shall determine the fair value of the shares without a jury and without referral to an appraiser or referee. Upon application by the corporation or by any shareholder who is a party to the proceeding, the court may, in its discretion, permit pretrial disclosure, including, but not limited to, disclosure of any expert's reports relating to the fair value of the shares whether or not intended for use at the trial in the proceeding and notwithstanding subdivision (d) of section 3101 of the civil practice law and rules.

(5) The final order in the proceeding shall be entered against the corporation in favor of each dissenting shareholder who is a party to the proceeding and is entitled thereto for the value of his shares so determined.

(6) The final order shall include an allowance for interest at such rate as the court finds to be equitable, from the date the corporate action was consummated to the date of payment. In determining the rate of interest, the court shall consider all relevant factors, including the rate of interest which the corporation would have had to pay to borrow money during the pendency of the proceeding. If the court finds that the refusal of any shareholder to accept the corporate offer of payment for his shares was arbitrary, vexatious or otherwise not in good faith, no interest shall be allowed to him.

(7) Each party to each proceeding shall bear its own costs and expenses, including the fees and expenses of its counsel and of any experts employed by it. Notwithstanding the foregoing, the court may, in its discretion, apportion and assess all or any part of the costs, expenses and fees incurred by the corporation against any or all of the dissenting shareholders who are parties to the proceeding, including any who have withdrawn their notices of election as provided in paragraph (e), if the court finds that their refusal to accept the corporate offer was arbitrary, vexatious or otherwise not in good faith. The court may, in its discretion, apportion and assess all or any part of the costs, expenses and fees incurred by any or all dissenting shareholders who are parties to the proceeding against the corporation if the court find any of the following: (A) that the fair value of the shares as determined materially exceeds the amount which the corporation offered to pay; (B) that no offer or required advanced payment was made by the corporation; (C) that the corporation failed to institute the special proceeding within the period specified therefor; or (D) that the action of the corporation in complying with its obligations as provided in clause (A), the court may consider the dollar amount or the percentage, or both, by which the fair value of the shares as determined exceeds the corporate offer.

(8) Within sixty days after final determination of the proceedings, the corporation shall pay to each dissenting shareholder the amount found to be due him, upon surrender of the certificate for any such shares represented by certificates.

(i) Shares acquired by the corporation upon the payment of the agreed value therefor or of the amount due under the final order, as provided in this section, shall become treasury shares or be cancelled as provided in section 515 (Reacquired shares), except that, in the case of a merger or consolidation, they may be held and disposed of as the plan of merger or consolidation may otherwise provide.

(j) No payment shall be made to a dissenting shareholder under this section at a time when the corporation is insolvent or when such payment would make it insolvent. In such event, the dissenting shareholder shall, at his option:

(1) Withdraw his notice of election, which shall in such event be deemed withdrawn with the written consent of the corporation; or

(2) Retain his status as a claimant against the corporation and, if it is liquidated, be subordinated to the rights of creditors of the corporation, but have rights superior to the non-dissenting shareholders, and if it is not liquidated, retain his right to be paid for his shares, which right the corporation shall be obliged to satisfy when the restrictions of this paragraph do not apply.

(3) The dissenting shareholder shall exercise such option under subparagraph (1) or (2) by written notice filed with the corporation within thirty days after the corporation has given him written notice that payment for his shares cannot be made because of the restrictions of this paragraph. If the dissenting shareholder fails to exercise such option as provided, the

AMERITRANS CAPITAL CORP; N-14/A

corporation shall exercise the option by written notice given to himwithin twenty days after the expiration of such period of thirty days.

(k) The enforcement by a shareholder of his right to receive paymentfor his shares in the manner provided herein shall exclude the enforcement bysuch shareholder of any other right to which he might otherwise be entitled byvirtue of share ownership, except as provided in paragraph (e), and except thatthis section shall not exclude the right of such shareholder to bring ormaintain an appropriate action to obtain relief on the ground that suchcorporate action will be or is unlawful or fraudulent as to him.

(l) Except as otherwise expressly provided in this section, any noticeto be given by a corporation to a shareholder under this section shall be givenin the manner provided in section 605 (Notice of meetings of shareholders).

(m) This section shall not apply to foreign corporations except asprovided in subparagraph (e)(2) of section 907 (Merger or consolidation ofdomestic and foreign corporations).

Section 910. Right of Shareholder to Receive Payment for Shares Upon Merger orConsolidation, or Sale, Lease, Exchange or Other Disposition of Assets, or ShareExchange.

(a) A shareholder of a domestic corporation shall, subject to and bycomplying with section 623 (Procedure to enforce shareholder's right to receivepayment for shares), have the right to receive payment of the fair value of hisshares and the other rights and benefits provided by such section, in thefollowing cases:

(1) Any shareholder entitled to vote who does not assent tothe taking of an action specified in subparagraphs (A), (B), or (C).

(A) Any plan of merger or consolidation to which thecorporation is a party; except that the right to receivepayment of the fair value of his shares shall not beavailable.

(i) To a shareholder of the surviving corporation ina merger authorized by section 905 (Merger ofsubsidiary corporation) or paragraph (c) of section

907 (Merger or consolidation of domestic and foreigncorporations); and

(ii) To a shareholder of the surviving corporation ina merger authorized by this article, other than amerger specified in subparagraph (i), unless suchmerger effects one or more of the changes specifiedin subparagraph (b)(6) of section 806 (Provisions asto certain proceedings) in the rights of the sharesheld by such shareholder.

(B) Any sale, lease, exchange or other disposition ofall or substantially all of the assets of a corporation whichrequires shareholder approval under section 909 (Sale, lease,exchange or other disposition of assets) other than atransaction wholly for cash where the shareholders' approvalthereof is conditioned upon the dissolution of the corporationand the distribution of substantially all its assets to theshareholders in accordance with their respective interestswithin one year after the date of such transaction.

(C) Any share exchange authorized by section 913 inwhich the corporation is participating as a subjectcorporation; except that the right to receive

payments of the fair value of his shares shall not beavailable to a shareholder whose shares have not been acquiredin the exchange.

(2) Any shareholder of the subsidiary corporation in a mergerauthorized by section 905 or paragraph (c) of section 907, or in ashare exchange authorized by paragraph (g) of section 913, who fileswith the corporation a written notice of election to dissent asprovided in paragraph (c) of section 623.

PROXY PROXY

ELK ASSOCIATES FUNDING CORPORATION

Proxy for Annual Meeting of

Eric Nitz

AMERITRANS CAPITAL CORP; N-14/A

Stockholders on _____ , 1999

The undersigned, having received notice of a Annual Meeting of Stockholders andrevoking all prior proxies, hereby appoint(s) Gary C. Granoff, Ellen M. Walkerand Margaret Chance with full power of substitution, as proxies to represent andvote as designated below, all shares of common stock of Elk Associates FundingCorporation ("Elk") which the undersigned would be entitled to vote ifpersonally present at the Annual Meeting of Stockholders of Elk to be held atthe offices of Stursberg & Veith, 405 Lexington Avenue, Suite 4949, New York,New York on _____, 1999, at 10:00 a.m. (New York Time) and any adjournmentthereof.

1. To adopt an Agreement and Plan of Share Exchange dated August 2, 1999 betweenElk and Ameritrans Corporation, as described in the accompanying ProxyStatement/ Prospectus.

FOR___ AGAINST___ ABSTAIN___

2. To Elect Directors

FOR electing all nominees listed (as recommended in the proxystatement) except as marked below _____

Gary C. Granoff, Ellen M. Walker, Lee A. Forlenza, Marvin Sabesan,Steven Etra, Paul Creditor, Allen Kaplan, John L. Acierno, John R.Laird, and Howard F. Sommer.

WITHHOLD AUTHORITY to vote for all nominees listed

(INSTRUCTION: To withhold authority to vote for any individualnominee, write that person's name in the space provided.)

3. To ratify and approve the appointment of Marcum & Kliegman, LLP as Elk'sindependent public accountants for the fiscal year ended June 30, 1999.

FOR___ AGAINST___ ABSTAIN___

4. To transact such other business as may properly come before the meeting orany adjournment of the meeting.

FOR___ AGAINST___ ABSTAIN___

The shares represented by this Proxy will be voted as directed by theundersigned. If no specification is made, the Proxy will be voted for thenominees named in the Proxy Statement to represent the holders of Common Stockand in favor of Proposals 1 and 3. The persons named as proxies havediscretionary authority, which they intend to exercise in favor of the proposalsreferred to and according to their best judgment as to other matters whichproperly come before the meeting.

If the undersigned hold(s) any of the shares of common stock of Elk in afiduciary, custodial or joint capacity or capacities, this Proxy is signed bythe undersigned in every such capacity as well as individually.

Date:_____

Signature(s)

When signed as an attorney, executor, administrator or other fiduciary, pleasegive your full title as such. Joint owners should each sign.

THIS PROXY IS SOLICITED ON BEHALF OF

THE BOARD OF DIRECTORS OF ELK

Ameritrans Capital Corporation4th Floor747 Third AvenueNew York, New York 10017

STATEMENT OF ADDITIONAL INFORMATION

_____, 1999

Eric Nitz

AMERITRANS CAPITAL CORP; N-14/A

This Statement of Additional Information is not a prospectus and should be read in conjunction with a Proxy Statement/Prospectus, also dated _____,1999, which has been prepared and distributed to stockholders of Elk Associates Funding Corporation, a New York corporation ("Elk"), for the purposes of (1) the solicitation of proxies by the Board of Directors of Elk for use at the Annual Meeting of Stockholders on _____, 1999, at which Elk stockholders will be asked (a) to consider and vote upon the adoption of an Agreement and Plan of Share Exchange between Ameritrans Capital Corporation, a Delaware corporation ("Ameritrans"), and Elk, pursuant to which each outstanding share of common stock of Elk would be exchanged for one (1) share of common stock of Elk, (b) to elect 10 directors to serve until the next Annual Meeting and until their successors are chosen and qualified, (c) to ratify and approve the selection by the Board of Directors of Marcum & Kliegman, LLP as Elk's independent public accountants for the fiscal year ended June 30, 1999, and (d) to consider and act upon such other matters as may properly come before the meeting or any adjournment thereof, and (2) the offer and issuance of up to 1,745,600 shares of common stock of Ameritrans to holders of common stock of Elk pursuant to the terms of such share exchange. A copy of the Proxy Statement/Prospectus may be obtained from the Secretary of Ameritrans, 4th Floor, 747 Third Avenue, New York, New York 10017, (800) 214-1047.

The financial statements of Elk included in this Statement of Additional Information have been examined by Marcum & Kliegman, LLP, independent public accountants, as stated in their report with respect thereto, and are included herein in reliance upon the authority of said firm as experts in accounting and auditing.

No financial statements for Ameritrans are included in this Statement of Additional Information because Ameritrans has not yet been capitalized nor has it engaged in any operations and will not do so until such time as the share exchange with Elk is consummated.

The securities described in the Proxy Statement/Prospectus have not been approved or disapproved by the Securities and Exchange Commission nor has the commission passed upon the accuracy or adequacy of the Proxy Statement/Prospectus or this statement of additional information.

Table of Contents

Selected Financial Data......................................................2
Management's Discussion and Analysis of Financial
   Condition and Results of Operations.....................................3
Financial Statements......................................................F-1

Selected Financial Data

The table below contains certain summary historical financial information of Elk. You should read these tables in conjunction with the consolidated financial statements of Elk and the related notes for the years ended June 30, 1999, 1998 and 1997 and "Management's Discussion and Analysis of Financial Condition and Results of Operations."

| Statement of Operations Data | Fiscal Year Ended June 30, | | | | |
|---|---|---|---|---|---|
| | 1995 | 1996 | 1997 | 1998 | 1999 |
| | ==== | ==== | ==== | ==== | ==== |
| Investment Income | $2,629,901 | $3,084,412 | $4,023,795 | $4,606,456 | $5,583,894 |
| | ---------- | ---------- | ---------- | ---------- | ---------- |
| Interest Expense | 1,002,959 | 1,105,993 | 1,582,700 | 1,840,731 | 2,440,051 |
| Other Expenses | 960,474 | 1,108,505 | 1,408,034 | 1,852,262 | 1,903,182 |
| | ---------- | ---------- | ---------- | ---------- | ---------- |
| Total Expenses | 1,963,433 | 2,214,498 | 2,990,734 | 3,692,993 | 4,343,233 |

Eric Nitz

AMERITRANS CAPITAL CORP; N-14/A

----------

| | | | | |
|---|---|---|---|---|
| Investment Income Before Credit (provision) for Loan Gains (losses) and Gains (Losses) on Assets Acquired and Income Taxes | 666,468 | 869,914 | 1,033,061 | 913,463 1,240,661 |
| Credit (provision) for Loan Gains (losses) and Gains (Losses) on Assets Acquired | (13,515) | 44,292 | (8,923) | (14,649) 11,272) |
| Other Income | | | 24,885 | 38,798 7,200 |
| Benefit of (Provision for) Income Taxes(1) | -- | (5,945) | (28,676) | (3,271) 769 |
| Net Income | 652,953 | 908,261 | 1,020,347 | 934,341 1,237,358 |
| Other Comprehensive Income | -- | -- | 58,241 | 140,548 62,964 |
| Total Comprehensive Income | $652,953 | $908,261 | $1,078,588 | $1,074,889 $1,300,322 |
| Net Income Per Common Share (Basic and Diluted) | $ .66 | $ .73 | $ .79 | $ .62 $ .71 |
| Common Stock Dividends Paid | $ -- | $ 937,028 | $ 946,655 | $ 986,724 $1,256,832 |
| Weighted Average Shares of Common Stock Outstanding | | | | |
| Basic | 988,953 | 1,247,120 | 1,283,600 | 1,518,969 1,745,600 |
| Diluted | | | | 1,750,684 |

-2-

MANAGEMENT'S DISCUSSION AND ANALYSIS OF FINANCIAL

CONDITION AND RESULTS OF OPERATIONS

This discussion is intended to assist in the analysis of the financial condition and results of operations of Elk. The information contained in this section should be read in conjunction with the summary financial information and the financial statements and notes thereto appearing in this Statement of Additional Information.

GENERAL

Eric Nitz

AMERITRANS CAPITAL CORP; N-14/A

Elk's principal activity is making small and medium sized business loans aspermitted under the 1958 Act. Historically, Elk's earnings have been derivedprimarily from net interest income, which is the difference between interestearned on interest-earning assets consisting of small and medium size businessloans, and the interest paid on interest-bearing liabilities consisting ofindebtedness to Elk's banks and subordinated debentures issued to the SBA. Netinterest income is a function of the net interest rate spread, which is thedifference between the average yield earned on interest-earning assets and theaverage interest rate paid on interest-bearing liabilities, as well as theaverage balance of interest-earning assets as compared to interest-bearingliabilities. Unrealized depreciation on loans and investments is recorded whenElk adjusts the value of a loan to reflect management's estimate of the fairvalue, as approved by the Board of Directors. See Note 1 of "Notes to theFinancial Statements."

Results of Operations For the Years ended June 30, 1999 and 1998

Total Investment Income

Elk's investment income increased $977,438 to $5,583,894 for the yearended June 30, 1999, when compared with the year ended June 30, 1998. Theincrease was due to an increase in interest earned on the loan portfolio($1,088,940) off-set by a decrease in other fees and income ($111,502). Thisreflects Elk's decision to maximize stockholders' return by maximizing the useof bank financing.

Operating Expenses

Interest expenses increased $599,320 to $2,440,051 when compared withthe prior year due to Elk's strategy to maximize bank financing which rose $31to,000,000 as of June 30, 1999, as compared to $22,085,000 at June 30, 1998.Other operating expenses increased to $1,914,454 for the year ended June 30,1999, as compared with $1,866,911 in the prior year. The increase in operatingexpenses was due increases in various administrative expenses and was partiallyoffset by a decrease in bad debt expense. Bad debt expense decreased $81,283 $146to,465 during the year ended June 30, 1999, as compared with the year endedJune 30, 1998.

Net Income

Net income for the year ended June 30, 1999 increased $303,017 $1to,237,358 when compared with the year ended June 30, 1998. The increasereflects the benefit of Elk's decision to maximize the use of leverage on bankfinancing.

-3-

Results of Operations For the Years ended June 30, 1998 and 1997.

Total Investment Income.

Elk's investment income for the fiscal year ended June 30, 1998increased to $4,606,456 from $4,023,795, or 14.5%, when compared with the yearended June 30, 1997. This increase was mainly due to an increase in its loanportfolio. The portfolio increased from $33,249,206, as of June 30, 1997 $41to,590,000 as of June 30, 1998, as part of our strategy to maximize stockholderrate of return primarily through the utilization of bank financing.

Operating Expenses.

Interest expense for the year ended June 30, 1998 increased $1to,840,731 as compared to $1,582,700 for the similar period ended June 30, 1997.This increase was mainly due to increased bank borrowings of $22,085,000 as ofJune 30, 1998, compared to $16,820,000 as of June 30, 1997.

Other operating expenses increased to $1,866,911 as compared $1to,416,957 for the year ended June 30, 1997. This increase was mainly due to $227a,748 increase in bad debt expense, in addition to various increases in theadministrative fees.

Net Income.

Eric Nitz

AMERITRANS CAPITAL CORP; N-14/A

Net income for the year ended June 30, 1998, decreased $86,006, ascompared to the year ended June 30, 1997. This decrease was mainly caused by anincrease in the bad debt expense of $227,748.

-4-

Balance Sheet and Reserves

Total assets increased by $9,111,063 as of June 30, 1999 as compared toJune 30, 1998. This increase was due to management's decision to expand itsportfolio in the Chicago taxi medallion market plus increases in the diversifiedloan portfolio. This expansion was financed by an increase in bank debt $8of,915,000 during the 1999 fiscal year.

Liquidity and Capital Resources

Prior to this Offering, Elk funded its operations through privateplacements of its securities, bank financing, and the issuance to the SBA of itssubordinated debentures.

In 1994, Elk agreed to repurchase all of the 547,271 outstandingshares of its 3% preferred stock from the SBA for an aggregate price $1of,915,449, representing a discount of 65% from the original issue price of $10per share. As a condition of the repurchase, Elk granted the SBA a liquidatinginterest in a newly established restricted capital surplus account (the"Restricted Capital Account"). The Restricted Capital Account is equal to theamount of the net repurchase discount in which the SBA received a liquidatinginterest, amortized over 60 months ending November 10, 1999. However, if Elk isliquidated or if a material violation of SBA Regulations occurs during theamortization period, the SBA would receive the remaining unamortized amount ofthe Restricted Capital Account prior to the stockholders of Elk receiving anyamounts on their Common Stock. The unamortized balance of the SBA's liquidatinginterest at June 30, 1999 was $256,916.

In December 1994 and September 1995 Elk raised additional capital $450of,000 and $1,249,585, respectively, less private placement costs of $76,445and $21,482, respectively. These proceeds were used to repurchase Elk's 3%preferred stock from the SBA. In connection with the purchase, all dividends inarrears on the preferred stock were extinguished.

During January 1998, Elk completed a private placement of 462,000shares of common stock at $6.50 per share for aggregate gross proceeds $3of,003,000, less offering expenses of $115,000. The net proceeds were utilizedto repay bank indebtedness and for working capital. A portion of the proceedstemporarily used to reduce bank indebtedness, up to a maximum of $963,000, wereallocated by Elk toward the organization and capitalization of its new parentcompany, Ameritrans.

At June 30, 1999, 78% of Elk's indebtedness was represented byindebtedness to its banks and 22% by the debentures issued to the SBA with fixedrates of interest ranging from 6.12 to 8.20%. Elk currently may borrow up $40to,000,000 under its existing lines of credit, subject to the limitationsimposed by its borrowing base agreement with its banks and the SBA, thestatutory and regulatory limitations imposed by the SBA, and the availability offunds. In addition, Elk is presently eligible to apply for additional leveragefrom the SBA if it is determined by the Board of Directors to be in the bestinterests of the company. No assurance can be given that, if applied for, suchadditional financing will be approved by the SBA.

Loan amortization and prepayments also provide a source of funding forElk. Prepayments on loans are influenced significantly by general interestrates, economic conditions and competition.

Like Elk, Ameritrans will distribute at least 90% of its investmentcompany taxable income and, accordingly, we will continue to rely upon externalsources of funds to finance growth. In order to provide the funds necessary forour expansion strategy, we expect to raise additional capital and to incur, fromtime to time, additional bank indebtedness and (if deemed

-5-

necessary by management) to obtain SBA loans. There can be no assurances thatsuch additional financing will be available on acceptable terms.

Year 2000 Compliance

Eric Nitz

AMERITRANS CAPITAL CORP; N-14/A

We have been taking steps to address and prevent problems in connection with the year 2000 ("Year 2000"). Such problems are expected to occur due to the inability of computer systems to properly recognize and process date-sensitive information relating to the Year 2000 and beyond. Year 2000 issues may affect our information technology systems ("IT") and non-information technology systems ("Non-IT"). The following are the IT systems that we use:

o We use a computer program to track our receivable loans ("Loan Track").To address Year 2000, in February 1998 we engaged the consultant who originally developed Loan Track for us, to test, upgrade and certify Loan Track as Year 2000-compliant. The consultant completed all of such tasks, and the Year 2000-compliant Loan Track program is now in use in our regular operations. We also use the standard Peachtree(TM) accounting system for general in-house accounting functions. The version of Peachtree we currently use has been upgraded to be Year2000-compliant.

o We also use other industry-wide programs such as Windows 95 and WordPerfect. It is expected that either the current versions are Year2000-compliant or that Year 2000-compliant upgrade versions will be obtained in the near future. In addition, during the past 12 months and at present, we have been replacing or upgrading our computer hardware with equipment that will be Year 2000-compliant.

Non-IT systems have been defined as embedded technology, such as micro-controllers, that may be included in elevators and other equipment and machinery. Most of our Non-IT systems consist of office equipment. We have inventoried our Non-IT systems, and we are in the process of contacting our office equipment and telecommunications suppliers and landlord to determine the status of their Year 2000 readiness. We do not believe that we face material Year 2000 issues with respect to our Non-IT systems.

Costs in connection with Year 2000 compliance have been (i) to review and upgrade existing IT systems; (ii) to analyze Year 2000 readiness of our banks and customers and (iii) to analyze Non-IT Year 2000 compliance. To date, such costs have aggregated approximately $10,000 and, for the most part, have been for IT review and upgrades. Such costs are being treated as expenses. During June and July 1999 we replaced certain hardware and purchased additional software and communications systems at a cost of approximately $55,000, and these costs are being capitalized and depreciated over a five year period. We do not believe that other costs associated with Year 2000 compliance will be material or that they will have a material effect on our financial condition.

We are dependent on banks for financing and for normal banking operations. In surveying Year 2000 readiness, we have received oral, and we are in the process of obtaining written, assurances from our banks that they are taking the actions necessary to be Year 2000-compliant so that neither the banks' nor their customers' business will be interrupted due to Year 2000 difficulties.

Our portfolio companies are taxi and taxi-medallion owners and other small businesses, which, to the best of our knowledge, use computer equipment and software only to a limited extent in the operation of their businesses. We are in the process of surveying certain of our

-6-

vendors to assess their potential Year 2000 exposure and to confirm that they are making arrangements for their own Year 2000 compliance.

To date we have attempted to comply fully with Year 2000 compliance requirements, and we are in the process of determining the compliance of our banks and customers. Our failure, or the failure of third parties, to adequately address Year 2000 issues could have a material adverse effect on our financial condition or results of operations. However, given the nature of our portfolio companies and the industries in which they operate, we anticipate that few of our customers would actually suffer material adverse effects from Year 2000. We believe that our reasonably likely maximum risk is (i) a material increase in our credit losses due to Year 2000 problems affecting our portfolio companies and our banks and (ii) disruption in financial markets, causing us liquidity stress.

At this point, our management is unable to quantify the amount of potential losses and disruptions due to Year 2000 issues, but is in the process of developing a contingency plan.

Eric Nitz

-7-

ELK ASSOCIATES FUNDING CORPORATION

INDEX TO FINANCIAL STATEMENTS

ELK ASSOCIATES FUNDING CORPORATION

AND SUBSIDIARY

CONTENTS

```
                                                                        Page
                                                                        ----
INDEPENDENT AUDITORS' REPORT ...................................................  F-1
CONSOLIDATED FINANCIAL STATEMENTS
     Balance Sheets at June 30, 1999 and June 30, 1998 .......................  F-2-3
     Statements of Income for the years ended June 30, 1999, 1998 and 1997 ....  F-4
     Statements of Comprehensive Income for the years ended June 30, 1999, 1998 and 1997 ........  F-5
     Statements of Stockholders' Equity for the years ended June 30, 1999, 1998 and 1997 ........  F-6-7
     Statements of Cash Flows for the years ended June 30, 1999, 1998 and 1997 .................  F-8-9
     Schedule of Loans as of June 30, 1999 ....................................  F-10
NOTES TO CONSOLIDATED FINANCIAL STATEMENTS ...................................  F-11-25
```

INDEPENDENT AUDITORS' REPORT

To the Board of Directors and Stockholders of Elk Associates Funding Corporation and Subsidiary

(A Small Business Investment Company Licensed by the SBA)

We have audited the accompanying consolidated balance sheets of Elk Associates Funding Corporation and Subsidiary as of June 30, 1999 and 1998, and the related consolidated statements of income, comprehensive income, stockholders' equity and cash flows for the years ended June 30, 1999, 1998 and 1997 and the schedule of loans as of June 30, 1999. These consolidated financial statements and schedule are the responsibility of the Company's management. Our responsibility is to express an opinion on these consolidated financial statements and schedule based on our audits.

We conducted our audits in accordance with generally accepted auditing standards. Those standards require that we plan and perform the audits to obtain reasonable assurance about whether the financial statements are free of material misstatement. An audit includes examining, on a test basis, evidence supporting the amounts and disclosures in the financial statements. An audit also includes assessing the accounting principles used and significant estimates made by management, as well as evaluating the overall financial statement presentation. We believe that our audits provide a reasonable basis for our opinion.

In our opinion, the consolidated financial statements and schedule referred to above present fairly, in all material respects, the financial position of Elk Associates Funding Corporation and Subsidiary as of June 30, 1999 and 1998, and the results of their operations and their cash flows for the years ended June 30, 1999, 1998 and 1997 in conformity with generally accepted accounting principles.

As explained in Note 1, the consolidated financial statements include loans valued at $50,723,932 and $41,295,000 as of June 30, 1999 and 1998, respectively, whose values have been estimated by the Board of Directors in the absence of readily ascertainable market values. We have reviewed the procedures used by the Board of Directors in arriving at their estimate of the value of such loans and have inspected underlying documentation and, in the circumstances, we believe the procedures are reasonable and the documentation is appropriate. However, because of the inherent uncertainty of valuation, those estimated values may differ significantly from the values that would have been used had a ready market for such loans existed, and the differences could be material.

MARCUM & KLIEGMAN LLP

New York, NY

AMERITRANS CAPITAL CORP; N-14/A

August 11, 1999, except for Note 15(b) as to which is dated August 31, 1999

ELK ASSOCIATES FUNDING CORPORATION

AND SUBSIDIARY

CONSOLIDATED BALANCE SHEETS

June 30, 1999 and 1998

```
                                                ASSETS
                                                ------

                                          1999              1998
                                     -------------------------------
Loans receivable                     $51,103,932       $41,590,000
Less: allowance for loan losses         (380,000)         (295,000)
                                     ------------      ------------
                                       50,723,932        41,295,000
Cash and cash equivalents                 542,290         1,755,429
Accrued interest receivable               714,626           516,110
Assets acquired in satisfaction of loans  612,491           400,470
Receivables from debtors on sales of assets acquired in
  satisfaction of loans                   409,939           451,222
Equity securities                         909,386           629,179
Furniture, fixtures and leasehold improvements, net  105,440    102,247
Prepaid expenses and other assets         492,697           250,081
                                     ------------      ------------
    TOTAL ASSETS                     $54,510,801       $45,399,738
                                     ============      ============
```

The accompanying notes are an integral part of these financial statements.

F-2

ELK ASSOCIATES FUNDING CORPORATION

AND SUBSIDIARY

CONSOLIDATED BALANCE SHEETS

June 30,1999 and 1998

```
                          LIABILITIES AND STOCKHOLDERS' EQUITY
                          ------------------------------------

                                          1999              1998
                                     -------------------------------
LIABILITIES
  Debentures payable to SBA          $ 8,880,000       $ 8,880,000
  Notes payable, banks                31,000,000        22,085,000
  Accrued expenses and other liabilities  223,458        204,099
  Accrued interest payable               354,918           221,704
  Dividends payable                      314,208           314,208
                                     ------------      ------------
    TOTAL LIABILITIES                  40,772,584        31,705,011
                                     ------------      ------------
COMMITMENTS AND CONTINGENCIES
STOCKHOLDERS' EQUITY
  Common stock, $.01 par value: 3,000,000 shares
    authorized; 1,745,600 shares issued and outstanding  17,456     17,456
  Additional paid-in-capital          13,197,277        12,485,825
  Restricted capital                     256,916           968,368
  Retained earnings                        4,815            24,289
```

Eric Nitz

AMERITRANS CAPITAL CORP; N-14/A

```
Accumulated other comprehensive income                261,753            198,789
                                                  -----------        -----------
     TOTAL STOCKHOLDERS' EQUITY                    13,738,217         13,694,727
                                                  -----------        -----------
     TOTAL LIABILITIES AND STOCKHOLDERS'
     EQUITY                                       $54,510,801        $45,399,738
                                                  ===========        ===========
```

The accompanying notes are an integral part of these financial statements.

F-3

ELK ASSOCIATES FUNDING CORPORATION

AND SUBSIDIARY

CONSOLIDATED STATEMENTS OF INCOME

For the Years Ended June 30, 1999, 1998 and 1997

|  | 1999 | 1998 | 1997 |
|---|---|---|---|
| **INVESTMENT INCOME** | | | |
| Interest on loans receivable | $5,197,667 | $4,108,727 | $3,660,825 |
| Fees and other income | 386,227 | 497,729 | 362,970 |
| TOTAL INVESTMENT INCOME | 5,583,894 | 4,606,456 | 4,023,795 |
| **OPERATING EXPENSES** | | | |
| Interest | 2,440,051 | 1,840,731 | 1,582,700 |
| Salaries and employee benefits | 533,352 | 495,889 | 469,060 |
| Legal fees | 303,995 | 336,700 | 307,127 |
| Miscellaneous administrative expenses | 886,995 | 739,875 | 604,347 |
| Loss on assets acquired in satisfaction of Loans, net | 11,272 | 14,649 | 8,923 |
| Directors' fee | 32,375 | 52,050 | 27,500 |
| Bad debt expense | 146,465 | 227,748 | -- |
| TOTAL OPERATING EXPENSES | 4,354,505 | 3,707,642 | 2,999,657 |
| OPERATING INCOME | 1,229,389 | 898,814 | 1,024,138 |
| **OTHER INCOME (EXPENSES)** | | | |
| (Write-off) gain of non-cash receivable | -- | (25,000) | 25,000 |
| Net gain (loss) from rental activities | 7,200 | 6,125 | (11,233) |
| Recoveries | -- | 57,673 | 11,118 |
| TOTAL OTHER INCOME | 7,200 | 38,798 | 24,885 |
| INCOME BEFORE INCOME TAXES | 1,236,589 | 937,612 | 1,049,023 |
| INCOME TAX (BENEFIT) EXPENSE | (769) | 3,271 | 28,676 |
| NET INCOME | $1,237,358 | $ 934,341 | $1,020,347 |
| Weighted Average Shares Outstanding | | | |
| - Basic | 1,745,600 | 1,518,969 | 1,283,600 |
| - Diluted | 1,750,684 | 1,518,969 | 1,283,600 |

Eric Nitz

AMERITRANS CAPITAL CORP; N-14/A

```
                                    ==========                    ===========
Net Income Per Common Share
   - Basic                            $0.71          $0.62           $0.79
                                      =====          =====           =====
   - Diluted                          $0.71          $0.62           $0.79
                                      =====          =====           =====
```

The accompanying notes are an integral part of these financial statements.

F-4

ELK ASSOCIATES FUNDING CORPORATION

AND SUBSIDIARY

CONSOLIDATED STATEMENTS OF COMPREHENSIVE INCOME

For the Years Ended June 30, 1999, 1998 and 1997

```
                                       1999           1998           1997
                                  -------------------------------------------
NET INCOME                          $1,237,358     $  934,341     $1,020,347
OTHER COMPREHENSIVE INCOME
  Unrealized gain on equity securities   62,964       140,548         58,241
                                    ----------     ----------     ----------
     TOTAL COMPREHENSIVE INCOME     $1,300,322     $1,074,889     $1,078,588
                                    ==========     ==========     ==========
```

The accompanying notes are an integral part of these financial statements.

F-5

ELK ASSOCIATES FUNDING CORPORATION AND SUBSIDIARY

CONSOLIDATED STATEMENTS OF STOCKHOLDERS' EQUITY

For the Years Ended June 30, 1999, 1998 and 1997

```
                                  Shares of        Common        Additional
                               Common Stock     Stock $0.01        Paid-In
Restricted
                                Outstanding      Par Value         Capital
Capital
                              -------------------------------------------------
-------------------
BALANCE - July 1, 1996          1,283,600        $12,836       $ 8,179,545
$2,391,268
  Transfer of restricted capital       --            --           711,448
(711,448)
  Dividends paid                       --            --                --
--
  Net income                           --            --                --
--
  Unrealized gain on equity
    securities                         --            --                --
--
                                ---------        -------       -----------
----------
BALANCE - June 30, 1997         1,283,600         12,836         8,890,993
1,679,820
```

Eric Nitz

AMERITRANS CAPITAL CORP; N-14/A

| | | | |
|---|---|---|---|
| Transfer of restricted capital (711,452) | -- | -- | 711,452 |
| Dividends paid -- | -- | -- | -- |
| Net income -- | -- | -- | -- |
| Unrealized gain on equity securities -- | -- | -- | -- |
| Proceeds from sale of common stock, net of direct costs -- | 462,000 | 4,620 | 2,883,380 |
| | --------- | ------- | ----------- |
| BALANCE - June 30, 1998 968,368 | 1,745,600 | 17,456 | 12,485,825 |
| Transfer of restricted capital (711,452) | -- | -- | 711,452 |
| Dividends declared -- | -- | -- | -- |
| Net income -- | -- | -- | -- |
| Unrealized gain on equity securities -- | -- | -- | -- |
| | --------- | ------- | ----------- |
| BALANCE - June 30, 1999 $   256,916 | 1,745,600 | $17,456 | $13,197,277 |
| | ========= | ======= | =========== |

The accompanying notes are an integral part of these financial statements.

F-6

[RESTUBED TABLE FOR ABOVE]

ELK ASSOCIATES FUNDING CORPORATION AND SUBSIDIARY

CONSOLIDATED STATEMENTS OF STOCKHOLDERS' EQUITY

For the Years Ended June 30, 1999, 1998 and 1997

| | Retained Earnings | Restricted Retained Earnings | Accumulated Other Comprehensive Income | Total |
|---|---|---|---|---|
| BALANCE - July 1, 1996 | $   317,186 | $    -- | $    -- | $10,900,835 |
| Transfer of restricted capital -- | -- | -- | -- |
| Dividends paid (946,655) | (946,655) | -- | -- |
| Net income 1,020,347 | 995,347 | 25,000 | -- |
| Unrealized gain on equity | | | |

AMERITRANS CAPITAL CORP; N-14/A

```
   securities                                  --              --            58,241
58,241
                                        -----------      --------      --------   -
----------
BALANCE - June 30, 1997                     365,878          25,000        58,241
11,032,768
 Transfer of restricted capital                 --              --            --
--
 Dividends paid                          (1,300,930)            --            --
(1,300,930)
 Net income                                 959,341        (25,000)           --
934,341
 Unrealized gain on equity
   securities                                  --              --           140,548
140,548
 Proceeds from sale of
 common stock, net of direct
 costs                                         --              --            --
2,888,000
                                        -----------      --------      --------   -
----------
BALANCE - June 30, 1998                      24,289            --           198,789
13,694,727
Transfer of restricted capital                 --              --            --
--
Dividends declared                       (1,256,832)           --            --
(1,256,832)
Net income                                1,237,358            --            --
1,237,358
Unrealized gain on equity
securities                                     --              --            62,964
62,964
                                        -----------      --------      --------   -
----------
BALANCE - June 30, 1999         $         4,815    $          --       $261,753
$13,738,217
                                        ===========      ========      ========
===========
```

The accompanying notes are an integral part of these financial statements.

F-7

ELK ASSOCIATES FUNDING CORPORATION

AND SUBSIDIARY

CONSOLIDATED STATEMENTS OF CASH FLOWS

For the Years Ended June 30, 1999, 1998 and 1997

```
                                             1999                      1998
1997
                                   ----------------------------------------
----------
CASH FLOWS FROM OPERATING ACTIVITIES
Net income                              $ 1,237,358    $    934,341      $
1,020,347
                                   -----------    -----------      ---
--------
Adjustments to reconcile net income to net cash
  provided by operating  activities:
```

Eric Nitz

AMERITRANS CAPITAL CORP; N-14/A

| | | | |
|---|---|---|---|
| Depreciation and amortization | | 63,649 | 49,890 |
| 53,546 | | | |
| Write-off (gain) on non-cash receivable | | -- | 25,000 |
| (25,000) | | | |
| Increase in accrued interest receivable | | (198,516) | (107,945) |
| (114,078) | | | |
| Increase in prepaid expenses and other assets | | (267,071) | (30,616) |
| (27,318) | | | |
| Decrease (increase) in accrued expenses and other liabilities | | 19,358 | 92,096 |
| (28,893) | | | |
| Increase (decrease) in accrued interest payable | | 133,214 | 40,456 |
| (15,204) | | | |
| | ------------ | ----------- | --- |
| -------- | | | |
| TOTAL ADJUSTMENTS | | (249,366) | 68,881 |
| (156,947) | | | |
| | ------------ | ----------- | --- |
| -------- | | | |
| NET CASH PROVIDED BY OPERATING ACTIVITIES | | 987,992 | 1,003,222 |
| 863,400 | | | |
| | ------------ | ----------- | --- |
| -------- | | | |
| CASH FLOWS FROM INVESTING ACTIVITIES | | | |
| Net change in loans receivable, assets acquired in satisfaction of loans and receivables from debtors on sales of assets acquired in satisfaction of loans | | (9,599,670) | (8,177,183) |
| (9,062,902) | | | |
| Payments for building improvements on assets acquired in satisfaction of loans | | -- | -- |
| (13,974) | | | |
| Purchases of equity securities | | (217,242) | (52,450) |
| (243,040) | | | |
| Acquisition of furniture, fixtures and leasehold improvements | | (42,387) | (37,468) |
| (18,530) | | | |
| | ------------ | ----------- | --- |
| -------- | | | |
| NET CASH USED IN INVESTING ACTIVITIES | | (9,859,299) | (8,267,101) |
| (9,338,446) | | | |
| | ------------ | ----------- | --- |
| -------- | | | |
| CASH FLOWS FROM FINANCING ACTIVITIES | | | |
| Proceeds from notes payable, banks, net | | 8,915,000 | 5,265,000 |
| 10,195,000 | | | |
| Payments for loan costs | | -- | -- |
| (15,050) | | | |
| Proceeds from debentures payable to SBA | | -- | -- |
| 430,000 | | | |
| Repayment of debentures payable to SBA | | -- | -- |
| (408,000) | | | |
| Net proceeds from sale of common stock | | -- | 2,888,000 |
| -- | | | |
| Dividends paid | | (1,256,832) | (986,724) |
| (946,655) | | | |
| | ------------ | ----------- | --- |
| -------- | | | |
| NET CASH PROVIDED BY FINANCING ACTIVITIES | | $ 7,658,168 | $ 7,166,276 | $ |
| 9,255,295 | | | |

Eric Nitz

AMERITRANS CAPITAL CORP; N-14/A

```
                                     ------------      -----------      ---
--------
```

The accompanying notes are an integral part of these financial statements.

F-8

ELK ASSOCIATES FUNDING CORPORATION

AND SUBSIDIARY

CONSOLIDATED STATEMENTS OF CASH FLOWS, Continued

For the Years Ended June 30, 1999, 1998 and 1997

| | 1999 | 1998 | 1997 |
|---|---|---|---|
| | --------------------------------------- | | |
| NET (DECREASE) INCREASE IN CASH AND CASH EQUIVALENTS | $(1,213,139) | $ (97,603) | $ 780,249 |
| CASH AND CASH EQUIVALENTS - Beginning | 1,755,429 | 1,853,032 | 1,072,783 |
| | ------------ | ---------- | |
| CASH AND CASH EQUIVALENTS - Ending | $ 542,290 | $1,755,429 | $1,853,032 |
| | =========== | ========== | |
| SUPPLEMENTAL DISCLOSURES OF CASH FLOW INFORMATION | | | |
| Cash paid during the years for: | | | |
| Interest | $ 2,306,837 | $1,840,276 | $1,597,904 |
| Income taxes | $ -- | $ 8,048 | $ 31,260 |
| Noncash investing and financing activities: | | | |
| Conversion of loans to assets acquired in satisfaction of loans | $ 381,500 | $ 26,090 | $ 140,914 |
| Exchange of preferred stock for a note resulting in a noncash gain of $25,000 | $ -- | $ -- | $ 125,000 |
| Unrealized gain on equity securities | $ 62,694 | $ 140,548 | $ 58,241 |
| Transfer of restricted capital | $ 711,452 | $ 711,452 | $ 711,448 |
| Declaration of cash dividend | $ 314,208 | $ 314,208 | $ -- |

The accompanying notes are an integral part of these financial statements.

F-9

ELK ASSOCIATES FUNDING CORPORATION

AND SUBSIDIARY

SCHEDULE OF LOANS

June 30, 1999

AMERITRANS CAPITAL CORP; N-14/A

|  | Number | Interest | Maturity Dates |
|---|---|---|---|
| Type of Loan Balance Outstanding | of Loans | Rates | (In Months) |
| New York City: |  |  |  |
| Taxi medallion $19,818,871 | 123 | 8.25 – 12% | 1 – 240 |
| Radio car service 285,562 | 34 | 1 – 15% | 1 – 59 |
| Chicago: |  |  |  |
| Taxi medallion 15,825,539 | 417 | 11 – 15% | 15 – 84 |
| Boston: |  |  |  |
| Taxi medallion 2,717,995 | 25 | 9.25 – 14% | 21 – 60 |
| Miami: |  |  |  |
| Taxi medallion 1,943,335 | 38 | 12 – 18% | 100 – 120 |
| Other loans: |  |  |  |
| Restaurant 243,629 | 2 | 10 – 12% | 1 – 66 |
| Hairdresser 97,836 | 2 | 12% | 7 |
| Car wash 214,234 | 1 | 11.5% | 36 |
| Ambulance service 4,907 | 1 | 10.5% | 6 |
| Bagel store 22,123 | 1 | 14% | 37 |
| Dry cleaners 3,657,590 | 25 | 9 – 18% | 31 – 120 |
| Laundromats 3,951,498 | 19 | 10 – 17% | 12 – 120 |
| Laundry equipment 170,333 | 1 | 9.5% | 51 |
| Financial services 4,980 | 1 | 14% | 3 |
| Black car service (real property) 196,132 | 1 | 12% | 23 |
| Auto sales 477,839 | 3 | 10.5 – 13% | 1 – 43 |
| Registered investment advisor 169,012 | 1 | 14% | 3 |
| Embroidery manufacturer 84,814 | 1 | 12% | 53 |
| Theater 166,492 | 1 | 16% | 53 |
| Retirement home 300,000 | 1 | 15% | 78 |
| Garden center 431,304 | 1 | 14% | 90 |
| Auto center 122,536 | 1 | 12% | 78 |
| Construction 197,371 | 1 | 16% | 80 |

-----------

| Total | Loans | | Receivable |
|---|---|---|---|
| 51,103,932 | | | |

Eric Nitz

AMERITRANS CAPITAL CORP; N-14/A

| Less: | Allowance | for | loan | losses |
|---|---|---|---|---|
| (380,000) | | | | |

-----------

|   Loans | | Receivable, | | net |
|---|---|---|---|---|
| $50,723,932 | | | | |

===========

The accompanying notes are an integral part of these financial statements.

F-10

ELK ASSOCIATES FUNDING CORPORATION

AND SUBSIDIARY

Notes to Consolidated Financial Statements

NOTE 1 - Organization and Summary of Significant Accounting Policies

Organization and Principal Business Activity

Elk Associates Funding Corporation (the "Company"), a New Yorkcorporation, is licensed by the Small Business Administration ("SBA")to operate as a Small Business Investment Company ("SBIC") under theSmall Business Investment Act of 1958, as amended. The Company has alsoregistered as an investment company under the Investment Company Act of1940 to make business loans.

The Company makes loans to taxi owners, to finance the acquisition andoperation of the medallion taxi businesses and related assets, and toother small businesses in the New York City, Chicago, Miami, and Bostonmarkets.

Loans and the Allowance for Loans Losses

Loans are stated at cost, net of participation with other lenders, lessan allowance for possible losses. This amount represents the fair valueof such loans as determined in good faith by the Board of Directors.The allowance for loan losses is maintained at a level that, in theBoard of Directors' judgement, is adequate to absorb losses inherent inthe portfolio. The allowance for loan losses is reviewed and adjustedperiodically by the Board of Directors on the basis of availableinformation, including the fair value of the collateral held, existingrisk of individual credits, past loss experience, the volume,composition and growth of the portfolio, and current and projectedeconomic conditions. Because of the inherent uncertainty in theestimation process, the estimated fair values of the loans may differsignificantly from the values that would have been used had a readymarket existed for such loans and the differences could be material. Asof June 30, 1999 and 1998, approximately 79% and 85% respectively, ofall loans are collateralized by New York City, Boston, Chicago, andMiami taxicab medallions.

Accounting Standard for Impairment of Loans

Pursuant to Statement of Financial Accounting Standards ("SFAS") No.114 as amended by SFAS No. 118, "Accounting by Creditors for Impairmentof a Loan - Income Recognition and Disclosure", a loan is determined tobe impaired if it is probable that the contractual amounts due will notbe collected in accordance with the terms of the loan. The SFASgenerally requires that impaired loans be measured based on the presentvalue of expected future cash flows discounted at the loan's effectiveinterest rate or, as a practical expedient, at the loan's observablemarket price or the fair value of the collateral if the loan iscollateral dependent. As all of the Company's loans are collateraldependent, impairment is measured based on the fair value of thecollateral. If the fair value of the impaired loan is less than therecorded investment in the loan (including accrued interest, net ofdeferred loan fees or costs, and unamortized premium or discount), theCompany recognized an impairment by creating a valuation allowance witha corresponding charge to the provision for loan losses. The Companyindividually evaluates all loans for impairment. See Note 3 for furtherdiscussion.

F-11

ELK ASSOCIATES FUNDING CORPORATION

AND SUBSIDIARY

Notes to Consolidated Financial Statements

NOTE 1 - Organization and Summary of Significant Accounting Policies, continued

Loans Receivable

Loans are placed on nonaccrual status once they become 180 days past due as to principal or interest. In addition, loans that are not fully collateralized and in the process of collection are placed on nonaccrual status when, in the judgement of management, the ultimate collectibility of interest and principal is doubtful.

Cash and Cash Equivalents

For the purposes of the statement of cash flows, the Company considers all short-term investments with an original maturity of three months or less to be cash equivalents.

The Company has cash balances in banks in excess of the maximum amount insured by the FDIC as of June 30, 1999 and 1998

Income Taxes

The Company has elected to be taxed as a Regulated Investment Company under the Internal Revenue Code. A Regulated Investment Company will generally not be taxed at the corporate level to the extent its income is distributed to its stockholders. In order to be taxed as a Regulated Investment Company, the Company must pay at least 90 percent of its net investment company taxable income to its stockholders as well as meet other requirements under the Code. In order to preserve this election for fiscal 1999, the Company intends to make the required distributions to its stockholders in accordance with applicable tax rules.

Depreciation and Amortization

Depreciation and amortization of furniture, fixtures and leasehold improvements is computed on the straight-line method at rates adequate to allocate the cost of applicable assets over their expected useful lives.

Net Income per Share

During the year ended June 30, 1998, the Company adopted the provision of SFAS No. 128, "Earnings per Share". SFAS No. 128 eliminates the presentation of primary and fully dilutive earnings per share ("EPS") and requires presentation of basic and diluted EPS. Basic EPS is computed by dividing income (loss) available to common stockholders by the weighted-average number of common shares outstanding for the period. Diluted EPS is based on the weighted-average number of shares of common stock and common stock equivalents outstanding at year-end. Common stock equivalents have been excluded from the weighted-average shares for 1998 and 1997, as inclusion is anti-dilutive. At June 30, 1999, the Company had 100,000 options outstanding, of which 30,000 options are considered antidilutive and the remaining 70,000 options are dilutive and resulted in common stock equivalents of 5,084 shares.

F-12

ELK ASSOCIATES FUNDING CORPORATION

AND SUBSIDIARY

Notes to Consolidated Financial Statements

NOTE 1 - Organization and Summary of Significant Accounting Policies, continued

Loan Costs

AMERITRANS CAPITAL CORP; N-14/A

Loan costs are included in prepaid expenses and other assets.Amortization of loan costs is computed on the straight-line method overten (10) years. At June 30, 1999 and 1998, loan costs amounted $129to,331 and $153,786, respectively, net of accumulated amortization $114of,650 and $90,195, respectively. Amortization expense for the yearsended June 30, 1999, 1998 and 1997 was $24,455, $24,455 and $23,283,respectively.

Assets Acquired in Satisfaction of Loans

Assets acquired in satisfaction of loans are carried at estimated fairvalue less selling costs. Losses incurred at the time of foreclosureare charged to the allowance for loan losses. Subsequent reductions inestimated net realizable value are recorded as losses on assetsacquired in satisfaction of loans.

Basis of Consolidation

The consolidated financial statements include the accounts of EAFHolding Corporation ("EAF"), a wholly owned subsidiary of the Company.All intercompany transactions have been eliminated. EAF was formed inJune 1992 and began operations in December 1993. The purpose of EAF isto own and operate certain real estate assets acquired in satisfactionof loans.

Use of Estimates in the Financial Statements

The preparation of financial statements in conformity with generallyaccepted accounting principles requires management to make estimatesand assumptions that affect the reported amounts of assets andliabilities at the date of the financial statements and the reportedamounts of revenues and expenses during the reporting period. Actualresults could differ from those estimates. Estimates that areparticularly susceptible to change relate to the determination of theallowance for loan losses and the fair value of financial instruments.

Comprehensive Income

During the year ended June 30, 1999, the Company adopted SFAS No. 130,"Reporting Comprehensive Income". SFAS 130 requires the reporting ofcomprehensive income in addition to net income from operations.Comprehensive income is a more inclusive financial reportingmethodology that includes disclosure of certain financial informationthat historically has not been recognized in the calculation of netincome.

Stock-Based Compensation

In October 1995, SFAS No. 123, "Accounting for Stock-BasedCompensation" was issued. SFAS 123 prescribes accounting and reportingstandards for all stock-based compensation plans, including employeestock options, restricted stock, employee stock purchase plans andstock appreciation rights. SFAS 123 requires compensation expense

F-13

ELK ASSOCIATES FUNDING CORPORATION

AND SUBSIDIARY

Notes to Consolidated Financial Statements

NOTE 1 - Organization and Summary of Significant Accounting Policies, continued

Stock-Based Compensation, continued

to be recorded (i) using the new fair value method or (ii) using theexisting accounting rules prescribed by Accounting Principles BoardOpinion No. 25, "Accounting for Stock Issued to Employees" ("APB 25")and related interpretations with pro forma disclosure of what netincome and earnings per share would have been had the Company adoptedthe new fair value method The Company intends to continue to accountfor its stock based compensation plans in accordance with theprovisions of APB 25.

Business Segment

AMERITRANS CAPITAL CORP; N-14/A

During the year ended June 30, 1999, the Company adopted SFAS No. 131,"Disclosures About Segments of an Enterprise and Related Information",which supersedes SFAS No. 14, "Financial Reporting for Segments of ABusiness Enterprise". SFAS No. 131 establishes standards for the waythat public enterprises report information about operating segments inannual financial statements and requires reporting of selectedinformation about operating segments in interim financial statementsregarding products and services, geographic areas and major customers.SFAS No. 131 defines operating segments as components of an enterpriseabout which separate financial information is available that isevaluated regularly by the chief operating decision maker in decidinghow to allocate resources and in assessing performance. The Company hasdetermined that under SFAS No. 131, it operates in one segment offinancing services. The Company's customers and operations are withinthe United States.

Loan Sales and Servicing Fee Receivable

SFAS No. 125, "Accounting for Transfers and Servicing of FinancialAssets and Extinguishments of Liabilities" was issued in June 1996.SFAS 125 provides accounting and reporting standards for transfers andservicing of financial assets and extinguishments of liabilities. Thisstatement also provides consistent standards for distinguishingtransfers of financial assets that are sales from transfers that aresecured borrowings. It requires that liabilities and derivativesincurred or obtained by transferors as part of a transfer of financialassets be initially measured at fair value. SFAS 125 also requires thatservicing assets be measured by allocating the carrying amount betweenthe assets sold and retained interests based on their relative fairvalues at the date of transfer. Additionally, this statement requiresthat the servicing assets and liabilities be subsequently measured by

(a) amortization in proportion to and over the period of estimated netservicing income or loss and (b) assessment for asset impairment orincreased obligation based on their fair values. SFAS 125 also requiresthe Company's excess servicing rights be measured at fair market valueand reclassified as interest only receivables and accounted for inaccordance with SFAS No. 115, "Accounting for Certain Investments inDebt and Equity Securities". As required by SFAS 125, the Companyadopted in the new requirements effective January 1, 1997.Implementation of SFAS 125 did not have any material impact on thefinancial statements of the Company.

F-14

ELK ASSOCIATES FUNDING CORPORATION

AND SUBSIDIARY

Notes to Consolidated Financial Statements

NOTE 1 - Organization and Summary of Significant Accounting Policies, continued

New Accounting Pronouncements

In April 1998, Statement of Position ("SOP") 98-5, "Reporting on theCosts of Start-Up Activities" was issued. This SOP provides guidance onthe financial reporting of start-up costs and organization costs. Itrequires the costs of start-up activities and organization costs to beexpensed as incurred. The SOP is effective for financial statements forfiscal year beginning after December 15, 1998. The Company does notexpect that the adoption of SOP No. 98-5 will have a material impact onits financial statements.

In June 1998, SFAS No. 133, "Accounting for Derivative Instruments andHedging Activities" was issued and is required to be adopted in yearsbeginning after June 15, 1999, which has been deferred to June 30,2000. Management does not anticipate that the adoption of the newstatement will have a significant effect on results of operations orthe financial position of the Company.

NOTE 2 - Assets Acquired in Satisfaction of Loans

Receivables from debtors on sales of assets acquired in satisfaction ofloans represent loans to borrowers arising out of the sales ofdefaulted assets. Pursuant to an SBA regulation, these loans arepresented separately in the accompanying consolidated balance sheets.

Radio

Assigned Mortgage

Eric Nitz

AMERITRANS CAPITAL CORP; N-14/A

| | Real Estate | Cars | Artwork | and Note Total |
|---|---|---|---|---|
| Balance - July 1, 1997 | $ 487,483 | $ 41,077 | $ 53,250 | $    -- $ 581,810 |
| Additions | 26,090 | -- | -- | -- 26,090 |
| Recoup on sale of assets previously sold | -- | 43,376 | -- | -- 43,376 |
| Sales | (192,560) | (45,168) | -- | -- (237,728) |
| Write-offs | (8,078) | -- | (5,000) | -- (13,078) |
| | --------- | -------- | -------- | -------- --------- |
| Balance - June 30, 1998 | 312,935 | 39,285 | 48,250 | -- 400,470 |
| Additions | -- | -- | -- | 381,500 381,500 |
| Sales | (122,000) | (8,044) | -- | -- (130,044) |
| Write-offs and payments | -- | (10,000) | (10,000) | (19,435) (39,435) |
| | --------- | -------- | -------- | -------- --------- |
| Balance - June 30, 1999 | $ 190,935 | $ 21,241 | $ 38,250 | $362,065 $ 612,491 |
| | ========= | ======== | ======== | ======== ========= |

F-15

ELK ASSOCIATES FUNDING CORPORATION

AND SUBSIDIARY

Notes to Consolidated Financial Statements

NOTE 3 - Loans Receivable

All loans on nonaccrual status have been classified as impaired. The Company recognizes interest income on a cash basis on these loans if the principal is fully secured. However, where there is doubt regarding the ultimate collectibility of the loan principal, cash receipts, whether designated as principal or interest, are applied to reduce the carrying value of the loan. The Company has loans totaling approximately $762,000 and $569,000 at June 1999 and 1998 respectively, which are still accruing interest but are not performing according to the terms of the contract and accordingly these loans are impaired under SFAS 114. At June 30, 1999 and 1998 approximately $743,000 $546 and ,000 respectively, of these loans were fully collateralized as to principal and interest. Interest receivable at June 30, 1999 and 1998 totaled approximately $78,000 and $35,000 respectively, for such loans.

The following table sets forth certain information concerning impaired loans as of June 30, 1999 and 1998:

| | 1999 | 1998 |
|---|---|---|
| Impaired loans with an allowance | $  167,212 | $174,952 |
| Impaired loans without an allowance | 1,512,456 | 571,896 |
| | ---------- | -------- |
| Total impaired loans | $1,679,668 | $746,848 |
| | ========== | ======== |
| Allowance for impaired loans | $157,886 | $150,626 |

Eric Nitz

AMERITRANS CAPITAL CORP; N-14/A

```
                                      ========        ========
Average balance of impaired loans     $1,213,258      $524,101
                                      ==========      ========
```

Transactions in the allowance for loan losses are summarized as follows:

```
Balance - July 1, 1997                               $325,000
Recoveries, net                                       (30,000)
                                                     --------
Balance - June 30, 1998                               295,000
Additions, net                                         85,000
                                                     --------
Balance - June 30, 1999                              $380,000
                                                     ========
```

F-16

ELK ASSOCIATES FUNDING CORPORATION
AND SUBSIDIARY

Notes to Consolidated Financial Statements

NOTE 4 - Equity Securities

Equity securities consist of the following as of June 30, 1999 and 1998:

| | Chicago Taxicab Medallions | Miami Taxicab Medallions | Investment Advisory Firm | Dry Cleaner Company | Telecom-munications Company | Total |
|---|---|---|---|---|---|---|
| Balance - July 1, 1997 | $380,966 | $21,215 | $20,000 | $14,000 | $ -- | $436,181 |
| Purchase of securities | 39,100 | 5,265 | 50,000 | 14,000 | -- | 108,365 |
| Sale of securities | (50,936) | (4,979) | -- | -- | -- | (55,915) |
| Unrealized gain | 75,297 | 65,251 | -- | -- | -- | 140,548 |
| Balance - June 30, 1998 | 444,427 | 86,752 | 70,000 | 28,000 | -- | 629,179 |
| Purchase of securities | 128,754 | 4,102 | -- | -- | 150,000 | 282,856 |
| Sale of securities | (15,613) | -- | (50,000) | -- | -- | (65,613) |
| Unrealized gain (loss) | 85,897 | (22,933) | -- | -- | -- | 62,964 |
| Balance - June 30, 1999 | $643,465 | $67,921 | $20,000 | $28,000 | $150,000 | $909,386 |

At June 30, 1999, the fair value of the Chicago Taxicab Medallions was increased, resulting in an unrealized gain, and the fair value of the Miami Taxicab Medallions was decreased resulting in a reduction in the unrealized gain recorded in prior periods. The fair value of the other equity securities approximated cost. At June 30, 1998, the fair value of the Chicago Taxicab Medallions and Miami Taxicab Medallions was increased resulting in an unrealized gain. The fair value of the other equity securities approximated cost.

F-17

Eric Nitz

AMERITRANS CAPITAL CORP; N-14/A

ELK ASSOCIATES FUNDING CORPORATION

AND SUBSIDIARY

Notes to Consolidated Financial Statements

NOTE 5 - Debentures Payable to SBA

At June 30, 1999 and 1998 debentures payable to the SBA consist of subordinated debentures with interest payable semiannually, as follows:

| Issue Date | Due Date | Current Effective Interest Rate | 1999 Principal Amount | 1998 Principal Amount |
|------------|----------|-------------------------------|----------------------|----------------------|
| September 1993 | September 2003 | 6.12 (1) | $1,500,000 | $1,500,000 |
| September 1993 | September 2003 | 6.12 | 2,220,000 | 2,220,000 |
| | | | ---------- | ---------- |
| (Forward) | | | $3,720,000 | $3,720,000 |
| | | | ---------- | ---------- |

F-18

ELK ASSOCIATES FUNDING CORPORATION

AND SUBSIDIARY

Notes to Consolidated Financial Statements

NOTE 5 - Debentures Payable to SBA, continued

| Issue Date | Due Date | Current Effective Interest Rate | 1999 Principal Amount | 1998 Principal Amount |
|------------|----------|-------------------------------|----------------------|----------------------|
| (Forward) | | | $3,720,000 | $3,720,000 |
| September 1994 | September 2004 | 8.20 | 2,690,000 | 2,690,000 |
| December 1995 | December 2005 | 6.54 | 1,020,000 | 1,020,000 |
| June 1996 | June 2006 | 7.71 | 1,020,000 | 1,020,000 |
| March 1997 | March 2007 | 7.38(2) | 430,000 | 430,000 |
| | | | ---------- | ------ |
| | | | $8,880,000 | $8,880,000 |

AMERITRANS CAPITAL CORP; N-14/A

==========                                                    ==========

(1) Interest Rate was 3.12% from inception through September 1998.

(2) The Company is also required to pay an additional annual user feeof 1% on this debenture.

Under the terms of the subordinated debentures, the Company may notrepurchase or retire any of its capital stock or make any distributionsto its stockholders other than dividends out of retained earnings (ascomputed in accordance with SBA regulations) without the prior writtenapproval of the SBA. In addition, the SBA has a junior collateralinterest to the banks' debt. (See Note 6).

NOTE 6 - Notes Payable to Banks

At June 30, 1999 and 1998 the Company had loan agreements with three

(3) banks and four (4) banks for lines of credit $35aggregating,000,000 and $33,500,000 respectively. At June 30, 1999 and 1998,the Company had $31,000,000 and $22,085,000 respectively, outstandingunder these lines. The loans, which mature through December 31, 1999,bear interest based on the Company's choice of the lower of either thereserve adjusted LIBOR rate plus 150 basis points or the banks' primerates including certain fees which make the effective rates range fromapproximately prime minus 1/4% to prime minus 1/2%. Upon maturity, theCompany anticipates extending the lines of credit for another year, ashas been the practice in previous years.

Pursuant to the terms of the agreements the Company is required tocomply with certain terms, covenants and conditions. The Companypledged its loans receivable and other assets as collateral for theabove lines of credit and was required to maintain compensatingbalances of 5% of loan balance outstanding with each individual bankfor the year ended June 30, 1998. The compensating balance requirementswere eliminated during the year ended June 30, 1999.

F-19

ELK ASSOCIATES FUNDING CORPORATION

AND SUBSIDIARY

Notes to Consolidated Financial Statements

NOTE 7 - Preferred Stock

Pursuant to a preferred stock repurchase agreement dated November 10,1994, the Company repurchased all cumulative preferred stock from theSBA for $3.50 per share, or an aggregate $1,915,449. As a conditionprecedent to the repurchase, the Company granted the SBA a liquidatinginterest in a newly established restricted capital surplus account. Thesurplus account is equal to the amount of the net repurchase discount.The initial value of the liquidating interest was $3,557,261, which isbeing amortized over a 60-month period on a straight-line basis. Shouldthe Company be in default under the repurchase agreement at any time,the liquidating interest will become fixed at the level immediatelypreceding the event of default and will not decline further until suchtime as the default is cured or waived. The liquidating interest shallexpire on (i) sixty months from the date of the repurchase agreement,or (ii) if any event of default has occurred and such default has beencured or waived, such later date on which the liquidating interest isfully amortized. Should the Company voluntarily or involuntarilyliquidate prior to the amortization of the liquidating interest, anyassets which are available, after the payment of all debts of theCompany, shall be distributed first to the SBA until the fair marketvalue of such assets is equal to the amount of the liquidatinginterest. Such payment, if any, would be prior in right to any paymentsmade to the Company's stockholders. The amount restricted under thisagreement at June 30, 1999 and 1998 was approximately $256,000 $968and,000, respectively.

During 1992, the Company authorized the issuance of 752,729 shares of anew Series B cumulative preferred stock with a 4 percent dividend and $10a par value. All preferred shares are restricted solely for issuanceto the SBA. No sales of the Series B preferred shares have occurred todate. On September 30, 1996, Congress passed a law that in effectprevents the SBA from making any further purchase of 4% preferred stockfrom any specialized small business investment company.

AMERITRANS CAPITAL CORP; N-14/A

In September 1998, the stockholders of the Company approved and inFebruary 1999 the SBA approved an amendment to the Certificate ofIncorporation of the Company eliminating all of the authorized Series Aand Series B preferred stock of the Company. This amendment to theCertificate of Incorporation was filed and became effective on May 21,1999.

NOTE 8 - Common Stock

For the year ended June 30, 1998, the Company completed the sale, aspart of a private placement offering, of 462,000 shares of commonstock. Total proceeds from the sale of common stock amounted $2to,888,000, net of direct related expenses of $115,000.

F-20ELK ASSOCIATES FUNDING CORPORATION

AND SUBSIDIARY

Notes to Consolidated Financial Statements

NOTE 8 - Common Stock, continued

In September 1998, the stockholders of the Company approved and inFebruary 1999, the SBA approved an amendment to the Certificate ofIncorporation increasing the total authorized shares of $0.01 par valuecommon stock to 3,000,000 shares authorized. This amendment to theCertificate of Incorporation was filed and became effective on May 21,1999.

On June 28, 1999, the Company declared a cash dividend of $0.18 percommon share, for a total of $314,208 which was paid on July 12, 1999.

NOTE 9 - Income Taxes

The provision for income tax expense (benefit) for the years ended June30, 1999, 1998 and 1997 consists of the following:

|  | 1999 | 1998 | 1997 |
|---|---|---|---|
| Federal | $1,689 | $(1,014) | $ 4,568 |
| State and City | (2,458) | 4,285 | 24,108 |
|  | $ (769) | $ 3,271 | $28,676 |

The above provision represents income taxes incurred on undistributedincome for the respective years.

NOTE 10 - Related Party Transactions/Commitments

Related Party Transactions

The Company paid $62,987, $43,234 and $43,645 to a related law firm forthe years June 30, 1999,1998 and 1997, respectively, for the servicesprovided. The Company generally charges its borrowers loan originationfees to generate income to offset expenses incurred by the Company forlegal fees paid by the Company for loan closing services.

The Company rents office space on a month-to-month basis from anaffiliated entity without a formal lease agreement. Rent expenseamounted to $39,600 each for the years ended June 30, 1999, 1998 and1997, respectively. The Company also shares overhead costs andreimburses for office and salary expenses from this affiliated entity.Overhead costs and reimbursed office and salary expenses amounted $85to,138, $81,308 and $51,513 for the years ended June 30, 1999, 1998and 1997, respectively.

F-21

ELK ASSOCIATES FUNDING CORPORATION

AND SUBSIDIARY

Notes to Consolidated Financial Statements

AMERITRANS CAPITAL CORP; N-14/A

NOTE 11 - Commitments and Contingencies

Interest Rate Swap

On June 8, 1998, the Company entered into a $10,000,000 interest rate Swap transaction with a bank expiring on June 8, 2001. On October 13,1998, the Company entered into an additional interest rate swap transaction with the same bank for $5,000,000 expiring on October 8,2001. These Swap transactions were entered into to protect the Company from an upward movement in interest rates relating to outstanding bank debt (see Note 6 for terms and effective interest rates). These Swap transactions call for a fixed rate of 5.86% and 4.95%, respectively for the Company and if the floating one month LIBOR rate is below the fixed rate then the Company is obligated to pay the bank for the difference in rates. When the one-month LIBOR rate is above the fixed rate then the bank is obligated to pay the Company for the differences in rates.

Interest Rate Cap

At March 20, 1997, the Company was a party to one $5 million notional interest rate cap. This cap, which expired on March 20, 1999, was purchased by the Company to protect it from the impact of upward movements in interest rates related to its outstanding bank debt. The cap provided interest rate protection in the event that the three-month LIBOR rate exceeded 6.75 percent. The premium paid for the purchase of this cap was amortized over its life and recorded as an adjustment to interest expense. Payments received under this cap would be credited to interest expense.

Loan commitments

At June 30, 1999 and 1998, the Company had commitments to make loans totaling approximately $4,058,000 and $2,568,000 respectively, at interest rates ranging from 8.25% to 18%.

NOTE 12 - Defined Contribution Plan

On April 15, 1996, the Company adopted a simplified employee pension plan covering all eligible employees of the Company. Contributions to the plan are at the discretion of the Board of Directors. During the years ended June 30, 1999, 1998 and 1997, contributions amounted $64 to,137, $63,435 and $58,805, respectively.

F-22

ELK ASSOCIATES FUNDING CORPORATION

AND SUBSIDIARY

Notes to Consolidated Financial Statements

NOTE 13 - Incentive Stock Option Plan

During September 1998, the Company adopted an employee incentive stock option plan, an aggregate of 125,000 shares of common stock are authorized for issuance under the plan. The plan provides that options may be granted to attract and retain key employees of the Company. Options granted under the plan are exercisable for periods ranging from five to ten years. In addition, the option price will be at least market value or at least 110% of market value of the common stock on the grant date for employees and stockholders who own more than 5% of the common stock, respectively. In January 1999, the Company granted 100,000 options to certain key employees at an exercise price ranging from $8.875 to $9.7625 per share.

Pro forma information regarding net income and earnings per share is required by SFAS 123, and has been determined as if the Company had accounted for its employee stock options under the fair value method of SFAS 123. The fair market value for these options was estimated at the date of grant using a Black-Scholes option-pricing model with the following weighted-average assumptions for the year ended June 30,1999.

```
                    Assumptions
-------------------------------------------------------------
Risk-free rate                          4.68%
Dividend yield                          7.5%
Volatility factor of the expected market
```

AMERITRANS CAPITAL CORP; N-14/A

```
  price of the Company's common stock                0.49
Average life                                         8.5 years
```

The Black-Scholes option valuation model was developed for use inestimating the fair value of traded options, which have no vestingrestrictions and are fully transferable. In addition, option valuationmodels require the input of highly subjective assumptions including theexpected stock price volatility. Because the Company's employee stockoptions have characteristics significantly different from those oftraded options, and because changes in the subjective input assumptionscan materially affect the fair value estimate, in management's opinion,the existing models do not necessarily provide a reliable singlemeasure of the fair value of its employee stock options.

For purposes of pro forma disclosures, the estimated fair value of theoptions is amortized to expense over the vesting period of the options.The Company's pro forma information for the year ended June 30, 1999 isas follows:

```
        Pro forma net income                    $1,035,958
                                                ==========

        Pro forma net income per share
                - basic                            $0.59
                                                   =====
                - diluted                          $0.59
                                                   =====

                        F-23
```

--------------------------------------------------------------------------------

                        ELK ASSOCIATES FUNDING CORPORATION
                                        AND SUBSIDIARY

Notes to Consolidated Financial Statements

NOTE 13 - Incentive Stock Option Plan, continued

The weighted average fair value of options granted during the yearended June 30, 1999 was $2.01 for shares. The weighted averageremaining contractual life of options exercisable at June 30, 1999 is7.5 years.

NOTE 14 - Fair Value of Financial Instruments

The following disclosures represent the Company's best estimate of thefair value of financial instruments, determined on a basis consistentwith requirements of SFAS No. 107, "Disclosure about Fair Value ofFinancial Instruments".

The estimated fair values of the Company's financial instruments arederived using estimation techniques based on various subjective factorsincluding discount rates. Such estimates may not necessarily beindicative of the net realizable or liquidation values of theseinstruments. Fair values typically fluctuate in response to changes inmarket or credit conditions. Additionally, valuations are presented asof a specific point in time and may not be relevant in relation to thefuture earnings potential of the Company. Accordingly, the estimatespresented herein are not necessarily indicative of the amounts theCompany will realize in a current market exchange. The use of differentmarket assumptions and/or estimation methodologies may have a materialeffect on the estimated fair value amounts.

Loans Receivable - The fair value of loans is estimated at cost net ofthe allowance for loan losses. The Company believes that the rates ofthese loans approximate current market rates (see Note 3).

Equity Securities - The Company's equity securities consist ofinvestments in corporations who own and operate Chicago taxicabmedallions (71%), an investment advisory firm (2%), a dry cleaner (3%),Miami taxicab medallions (7%) and a Telecommunications Company (17%)(see Note 4).

Debentures Payable to Small Business Administration - The fair value ofdebentures as of June 30, 1999 and 1998 were approximately $8,989,000and $9,035,000, respectively, and were estimated by discounting theexpected future cash flows using the current rate at which the SBA hasextended similar debentures to the Company (see Note 5).

The fair value of financial instruments that are short-term or repricefrequently and have a history of negligible credit losses is consideredto approximate their carrying value. Those instruments include balancesrecorded in the following captions:

AMERITRANS CAPITAL CORP; N-14/A

F-24

ELK ASSOCIATES FUNDING CORPORATION

AND SUBSIDIARY

Notes to Consolidated Financial Statements

NOTE 14 - Fair Value of Financial Instruments, continued

ASSETS LIABILITIES

```
Cash                                       Notes payable, banks
Accrued interest receivable                Accrued interest payable
Assets acquired in satisfaction of loans
Receivables from debtors on sales of
 assets acquired in satisfaction of loans
```

NOTE 15 - Subsequent Events

(a) Agreement and Plan of Share Exchange

The Company entered into an Agreement and Plan of Share Exchange withAmeritrans Capital Corporation, a newly-formed Delaware corporation("Ameritrans") by the stockholders of the Company, pursuant to whicheach outstanding share of common stock of the Company would beexchanged for one share of common stock of Ameritrans. Pursuant to thisShare Exchange Agreement, the ownership of each outstanding share ofthe Company's common stock would automatically vest in Ameritrans andthe holders of the outstanding shares of the Company's common stockwould automatically become entitled to receive one share of Ameritrans'common stock. This agreement has been approved by the board ofdirectors of the Company and is subject to approval by the stockholdersof the Company. In addition, Ameritrans has filed Form **_N-14, a_** proxyregistration statement under the Securities Act of 1933 with the SECand applied for certain "exemptive" orders to permit Ameritrans to actas a holding company. The SEC is currently reviewing these filings.

(b) Non-Employee Directors Stock Option Plan

On August 31, 1999, the SEC approved a Non-Employee Directors StockOption Plan with an aggregate of 75,000 options authorized forissuance. On this same date, 20,000 options were granted tonon-employee directors with an exercise price to be determined by theBoard of Directors.

F-25

AMERITRANS CAPITAL CORPORATION

Form N-14

Part C. Other Information

Item 15. Indemnification.

The Certificate of Incorporation of Ameritrans Capital Corporation("Ameritrans") includes a provision (the "Liability Provision"), authorizedunder Section 102(b)(7) of the Delaware General Corporation Law, whicheliminates, to the extent permitted by the Delaware General Corporation Law andthe Investment Company Act of 1940 (the "1940 Act"), the personal liability of adirector to Ameritrans or its stockholders for monetary damages resulting fromthe breach of his fiduciary duty as a director. Under the Delaware GeneralCorporation Law, this provision may not be construed to eliminate or limit adirector's liability for any of the following: breaches of the director's dutyof loyalty to the corporation or its stockholders; acts or omissions not in goodfaith or which involve intentional misconduct or a knowing violation of law;payment of a dividend or approval of a stock repurchase which is unlawful under

Eric Nitz

AMERITRANS CAPITAL CORP; N-14/A

Section 174 of the Delaware General Corporation Law; and transactions from which the director derives an improper personal benefit. In addition, under the 1940 Act, this provision may not be construed to protect a director against liability to the corporation or its stockholders for acts or omissions involving willful misfeasance, bad faith, gross negligence or reckless disregard of the duties involved in the conduct of his office.

The Liability Provision precludes actions for monetary damages against directors of Ameritrans only with respect to certain violations of a director's duty of care. Under the Delaware General Corporation Law, absent this provision, directors could be held liable for negligence in the performance of their duty of care. The Liability Provision absolves directors of Ameritrans of monetary liability to Ameritrans and its stockholders for negligence in exercising their business judgment. A stockholder can prosecute an action against a director for monetary damages only if he can show a breach of the duty of loyalty, gross negligence or reckless disregard of his duties, a failure to act in good faith, intentional misconduct or willful misfeasance, a knowing violation of the law, an unlawful dividend or stock repurchase, or an improper personal benefit. The Liability Provision does not affect the ability of Ameritrans or its stockholders to seek equitable remedies (such as an injunction or rescission) against a director for breach of his fiduciary duty and does not limit the liability of directors under other laws, such as the federal securities laws. The Liability Provision also does not limit the liability of officers or employees of Ameritrans or any director acting in his capacity as an officer or employee of Ameritrans.

In addition, Ameritrans' By-Laws also includes a provision (the "Indemnification Provision") that requires Ameritrans to indemnify its directors and officers, to the maximum extent permitted by the Delaware General Corporation Law and by the 1940 Act, against liabilities and damages incurred in their capacity as directors or officers of Ameritrans. Under the Delaware General Corporation Law, a director or officer of a corporation (i) shall be indemnified by the corporation for all expenses of litigation or other legal proceedings brought against him by virtue of his position as a director or officer to the extent he is successful, on the merits or otherwise, in such litigation or proceeding, (ii) may be indemnified by the corporation for the expenses, judgments, fines, and amounts paid in settlement of such litigation or proceedings (other than an action by or in the right of a corporation, which is hereinafter referred to as a "derivative action"), even if he is not successful, if he acted in good faith and in a manner he reasonably believed to be in or not opposed to the best interests of the corporation (and, in the case of a criminal proceeding, had no reason to believe that his conduct was unlawful), (iii) may be indemnified by the corporation for expenses of a derivative action, even if he is not successful, if he acted in good faith and in a manner he reasonably believed to be in or not opposed to the best interests of the corporation, provided that indemnification may not be made in the case of a derivative action if the director or officer is adjudged to be liable to the corporation, unless a court determines that, despite such adjudication but in view of all the circumstances, he is entitled to indemnification of such expenses, only upon the determination, by (a) a majority of directors who are not a party to the action (even though less than a quorum), (b) by a committee of such directors designated by a majority of such disinterested directors, (c) under certain circumstances, independent legal counsel in a written opinion, or (d) the stockholders, that indemnification is proper because the applicable standard of conduct has been met. Expenses incurred by a director or officer in defending an action may be advanced by the corporation prior to the final disposition of such action upon receipt of an undertaking by such director or officer to repay such expenses if it is ultimately determined that he is not entitled to be indemnified in connection with the proceeding to which the expenses relate. These provisions of

the Delaware General Corporation Law, by their terms, are not exclusive of any other rights to which those seeking indemnification or advances of expenses may be entitled under any by-law, agreement, vote of stockholders or disinterested directors, or otherwise.

The 1940 Act prohibits the inclusion in Ameritrans' Certificate of Incorporation or certain other organizational instruments of Ameritrans of a provision which purports to protect any director or officer of Ameritrans against liability to Ameritrans or its stockholders for willful misfeasance, bad faith, gross negligence, or reckless disregard of the duties involved in the conduct of his office. Accordingly, the Indemnification Provision specifically provides that indemnification shall only be made to the extent permitted by the 1940 Act.

Ameritrans has entered into an indemnity agreement (the "Indemnity Agreement") with each of its directors and officers. The Indemnity Agreement clarifies or modifies the indemnification provisions of the Delaware General Corporation Law as follows: (i) the Indemnity Agreement establishes the presumption that the director or officer has met the applicable standard of conduct required for indemnification and provides that prompt indemnification shall be made unless a determination is made by a majority of Ameritrans disinterested directors, independent counsel, or a majority of Ameritrans' stockholders that the director or

officer has not met the applicable standard of conduct; (ii) if the disinterested directors determine that the director or officer has not met the applicable standard of conduct, the Indemnity Agreement permits the director or officer to petition a court for an independent determination of whether such officer or director is entitled to indemnification under the Indemnity Agreement; (iii) the Indemnity Agreement provides that expenses shall be promptly advanced to a director or officer upon receipt of an undertaking by him to repay amounts so advanced if it is ultimately determined that indemnification of such expenses is not permissible, provided that either

(a) such director or officer shall have provided appropriate security for such undertaking, (b) Ameritrans shall be insured against losses arising from any such advance payments, or (c) either a majority of the disinterested directors (even though less than a quorum), a committee of such directors designated by such disinterested directors, or independent legal counsel in a written opinion shall have determined, based upon a review of readily available facts, that there is reason to believe that such director or officer will be found entitled to indemnification; (iv) the Indemnity Agreement specifically provides that the indemnification provisions applicable to a derivative suit cover amounts paid in settlement; and (v) the Indemnity Agreement specifically permits partial indemnification to be made in the event that the director or officer is not entitled to full indemnification.

Ameritrans may in the future elect to purchase directors' and officers' liability insurance, as is permitted by the Delaware General Corporation Law.

Insofar as indemnification for liability arising under the Securities Act of 1933 (the "1933 Act") may be permitted to directors, officers, and controlling persons of the registrant pursuant to the foregoing provisions or, otherwise, the registrant has been advised that in the opinion of the Securities and Exchange Commission such indemnification is against public policy as expressed in the Act and is, therefore, unenforceable. In the event that a claim for indemnification against such liabilities (other than the payment by the registrant of expenses incurred or paid by a director, officer, or controlling person of the registrant in the successful defense of any action, suit, or proceeding) is asserted by such director, officer, or controlling person in connection with the securities being registered, the registrant will, unless in the opinion of its counsel the matter has been settled by controlling precedent, submit to a court of appropriate jurisdiction the question whether such indemnification by it is against public policy as expressed in the 1933 Act and will be governed by the final adjudication of such issue.

Item 16. Exhibits.

1.1 Certificate of Incorporation of Ameritrans.*

2.1 By-laws of Ameritrans.*

4.1 Agreement and Plan of Share Exchange between Ameritrans and Elk Associates Funding Corporation (included as Exhibit A to the Proxy Statement/Prospectus included as a part of this Registration Statement).

5.1 Specimen certificate for shares of Ameritrans common stock.

```
8.1     Elk Employee Stock Option Plan.*
8.2     Elk Non-Employee Director Stock Option Plan.*
8.3     Ameritrans Employee Stock Option Plan
8.4     Ameritrans Non-Employee Director Plan
11.1    Opinion of Stursberg & Veith.
13.1    Form of indemnity agreement between Ameritrans and each of its
        directors and officers.*
14.1    Consent of Marcum and Kliegman, LLP.
14.2    Consent of Stursberg & Veith -- contained in their opinion.
16      Power of Attorney -- contained on signature page and previously filed.
------------------------------------
```

* Previously filed.

Item 17. Undertakings.

1. The undersigned registrant agrees that prior to any public reoffering of the securities registered through the use of a prospectus which is a part of this registration statement by any person or party who is deemed to be an underwriter within the meaning of Rule 145(c) of the 1933 Act, the reoffering prospectus will contain the information called for by the

AMERITRANS CAPITAL CORP; N-14/A

applicableregistration form for reofferings by persons who may be deemed underwriters, inaddition to the information called for by the other items of the applicableform.

2. The undersigned registrant agrees that every prospectus that isfiled under paragraph (1) above will be filed as a part of an amendment to theregistration statement and will not be used until the amendment is effective,and that, in determining any liability under the 1933 Act, each post-effectiveamendment shall be deemed to be a new registration statement for the securitiesoffered therein, and the offering of the securities at that time shall be deemedto be the initial bona fide offering of them.

SIGNATURES

As required by the Securities Act of 1933, this Registration Statementhas been signed on behalf of the registrant in the City of New York and State ofNew York on the 20 day of October, 1999.

AMERITRANS CAPITAL CORPORATION

By: Gary C. Granoff

Gary C. Granoff, President

As required by the Securities Act of 1933, this Registration Statementhas been signed by the following persons in the capacities and on the datesindicated.

| Signature | Title | Date |
| --------- | ----- | ---- |
| Gary C. Granoff | President and Chairman of the Board | October 20, 1999 |
| --------------- | of Directors | |
| Gary C. Granoff | | |
| * | Vice President, General Counsel and | October 20, 1999 |
| --------------- | Director | |
| Ellen M. Walker | | |
| * | Vice President and Director | October 20, 1999 |
| --------------- | | |
| Lee A. Forlenza | | |
| * | Vice President and Director | October 20, 1999 |
| --------------- | | |
| Steven Etra | | |
| * | Director | October 20, 1999 |
| --------------- | | |
| Marvin Sabesan | | |
| * | Director | October 20, 1999 |
| --------------- | | |
| Paul Creditor | | |
| * | Director | October 20, 1999 |
| --------------- | | |
| Allen Kaplan | | |
| * | Director | October 20, 1999 |
| --------------- | | |
| John L. Acierno | | |

*By: Gary C. Granoff
-------------------
    Gary C. Granoff

AMERITRANS CAPITAL CORP; N-14/A

Know all men by these presents, that each of the undersignedconstitutes and appoints Gary C. Granoff, as his true and lawfulattorney-in-fact and agent, with full power of substitution, for him, and in hisname, place, and stead, in any and all capacities, to sign any and allamendments, including post-effective amendments, to this registration statementor any registration statement relating to the offering to which thisregistration statement relates that is effective upon filing pursuant to Rule462(b) under the Securities Act of 1933 and any post-effective amendmentsthereto, and to file the same, with all exhibits thereto and other documents inconnection therewith, with the Securities and Exchange Commission, granting untosaid attorney-in-fact and agent, full power and authority to do and perform eachand every act and thing requisite and necessary to be done in and about thepremises, as fully to all intents and purposes as he might or could do inperson, hereby ratifying and confirming all that said attorney-in-fact andagent, or his substitute, may lawfully do or cause to be done by virtue hereof.

```
|s|John R. Laird
--------------------                     Director                        October
20, 1999
John R. Laird
|s|Howard F. Sommer
--------------------                     Director                        October
20, 1999
Howard F. Sommer
```

### EXHIBIT INDEX

```
Exhibit
Number                       Exhibit                                     Page
-------                      -------                                     ----
1.1        Certificate of Incorporation of Ameritrans.*
2.1        By-laws of Ameritrans.*
4.1        Agreement and Plan of Share Exchange between Ameritrans and Elk Associates
           Funding Corporation (included as Exhibit A to the Proxy Statement/Prospectus
           included as a part of this Registration Statement).
5.1        Specimen certificate for shares of Ameritrans common stock.
8.1        Elk Employee Stock Option Plan.*
8.2        Elk Non-Employee Director Stock Option Plan.*
8.3        Ameritrans Employee Stock Option Plan
8.4        Ameritrans Non-Employee Director Plan
11.1       Opinion of Stursberg & Veith.
13.1       Form of indemnity agreement between Ameritrans and each of its directors and
           officers.*
14.1       Consent of Marcum and Kliegman, LLP.
14.2       Consent of Stursberg & Veith-- contained in their opinion.
16.        Power of Attorney -- contained on signature page and previously filed.
```

* Previously filed.

# Classification

**Subject:** SECURITIES LAW (90%); COMMON STOCK (89%); STOCK OFFERINGS (78%); BANKING & FINANCE REGULATION (78%); US SECURITIES ACT OF 1933 (78%)

**Company:** AMERITRANS CAPITAL CORP (91 91%%)

EDGAR Online

# Exhibit B

# STURSBERG & VEITH

405 LEXINGTON AVENUE

SUITE 4949

NEW YORK, NEW YORK 10174-4902

———

(212) 922-1177

FACSIMILE (212) 922-0995

November 25, 1998

<u>VIA FEDERAL EXPRESS</u>

U.S. Securities and Exchange Commission
450 Fifth Street, N.W.
Washington, D.C.  20549

  Re: Elk Associates Funding Corporation,
    Ameritrans Capital Corporation and
    <u>Gary C. Granoff (the "Applicants")</u>

Ladies and Gentlemen:

  On behalf of the Applicants enclosed please find five (5) copies at least one (1) of which has been manually executed of an application for exemptive order with exhibits pursuant to sections 6(c), 17(b) and 57(c) of the Investment Company Act of 1940 for an order granting exemptions from sections 12(d), 17(a), 17(d), 18(a), 18(c) 57(a), 60(a), and 61(a) and permitting under sections 17(d) and 57(a)(4) of the act and rule 17d-1 thereunder certain transactions thereunder.

  Kindly acknowledge receipt of this letter and the enclosures hereto by signing or stamping the enclosed copy of this letter and returning it to the undersigned in the self-addressed, stamped envelope provided.

           Very truly yours,

           *Paula S Schifrin* (signature)

           Paula S. Schifrin

Enclosures
cc:  Gary C. Granoff, President
ELX\SECEXAPP.L98

# STURSBERG & VEITH

### 405 LEXINGTON AVENUE
### SUITE 4949
### NEW YORK, NEW YORK 10174-4902

#### (212) 922-1177
#### FACSIMILE (212) 922-0995

November 25, 1998

<u>VIA FEDERAL EXPRESS</u>

U.S. Securities and Exchange Commission
450 Fifth Street, N.W.
Washington, D.C.  20549

  Re: Elk Associates Funding Corporation,
    Ameritrans Capital Corporation and
    <u>Gary C. Granoff (the "Applicants")</u>

Ladies and Gentlemen:

  On behalf of the Applicants enclosed please find five (5) copies at least one (1) of which has been manually executed of an application for exemptive order with exhibits pursuant to sections 6(c), 17(b) and 57(c) of the Investment Company Act of 1940 for an order granting exemptions from sections 12(d), 17(a), 17(d), 18(a), 18(c) 57(a), 60(a), and 61(a) and permitting under sections 17(d) and 57(a)(4) of the act and rule 17d-1 thereunder certain transactions thereunder.

  Kindly acknowledge receipt of this letter and the enclosures hereto by signing or stamping the enclosed copy of this letter and returning it to the undersigned in the self-addressed, stamped envelope provided.

       Very truly yours,

       Paula S. Schifrin

Enclosures
cc:  Gary C. Granoff, President
ELK\SECEXAPP.L98

# STURSBERG & VEITH

405 LEXINGTON AVENUE
SUITE 4949
NEW YORK, NEW YORK 10174-4902
———
(212) 922-1177
FACSIMILE (212) 922-0995

November 25, 1998

VIA FEDERAL EXPRESS

Richard Pfordte, Esq.
Securities and Exchange Commission
Division of Investment Management
Mail Stop 10-6
450 Fifth Street N.W.
Washington, D.C.  20549

> Re:  Elk Associates Funding Corporation,
>      Ameritrans Capital Corporation and
>      Gary C. Granoff (the "Applicants")

Dear Mr. Pfordte:

On behalf of the Applicants, enclosed please find a courtesy copy of the application for exemptive order with exhibits pursuant to sections 6(c), 17(b) and 57(c) of the Investment Company Act of 1940 for an order granting exemptions from sections 12(d), 17(a), 17(d), 18(a), 18(c) 57(a), 60(a), and 61(a) and permitting under sections 17(d) and 57(a)(4) of the act and rule 17d-1 thereunder certain transactions thereunder.  The application is being filed concurrently with the Commission.

Very truly yours,

Paula S Schif

Paula S. Schifrin

Enclosure
ELK\SECRP2.L98

# STURSBERG & VEITH

405 LEXINGTON AVENUE

SUITE 4949

NEW YORK, NEW YORK 10174-4902

———

(212) 922-1177

FACSIMILE (212) 922-0995

November 25, 1998

**VIA FEDERAL EXPRESS**

Richard Pfordte, Esq.
Securities and Exchange Commission
Division of Investment Management
Mail Stop 10-6
450 Fifth Street N.W.
Washington, D.C.  20549

     Re:  Elk Associates Funding Corporation,
           Ameritrans Capital Corporation and
           <u>Gary C. Granoff (the "Applicants")</u>

Dear Mr. Pfordte:

    On behalf of the Applicants, enclosed please find a courtesy copy of the application for exemptive order with exhibits pursuant to sections 6(c), 17(b) and 57(c) of the Investment Company Act of 1940 for an order granting exemptions from sections 12(d), 17(a), 17(d), 18(a), 18(c) 57(a), 60(a), and 61(a) and permitting under sections 17(d) and 57(a)(4) of the act and rule 17d-1 thereunder certain transactions thereunder.  The application is being filed concurrently with the Commission.

                    Very truly yours,

                    Paula S. Schifrin

Enclosure
ELK\SECRP2.L98

# SECURITIES AND EXCHANGE COMMISSION

## Washington, D.C.  20549

---

APPLICATION UNDER THE INVESTMENT COMPANY ACT OF 1940 (THE "ACT") FOR AN ORDER PURSUANT TO SECTIONS 6(c), 17(b) AND 57(c) OF THE ACT FOR AN ORDER GRANTING EXEMPTIONS FROM SECTIONS 12(d), 17(a), 17(d), 18(a), 18(c) 57(a), 60(a), AND 61(a) AND PERMITTING UNDER SECTIONS 17(d) AND 57(a)(4) OF THE ACT AND RULE 17d-1 THEREUNDER CERTAIN TRANSACTIONS

---

Elk Associates Funding Corporation
SEC File No. 811-3394
Ameritrans Capital Corporation
Gary C. Granoff

---

Communications, Notice and Order to:
Gary C. Granoff
President
Elk Associates Funding Corporation
747 Third Avenue
4th Floor
New York, New York  10017
(212) 355-2449

---

Questions and Copies of
Communications,
Notice and Order to:
C. Walter Stursberg, Jr., Esq.
Stursberg & Veith
405 Lexington Avenue
Suite 4949
New York, New York  10174-4902
(212) 922-1177

ELK\476EXAP7.A98
November 25, 1998

UNITED STATES OF AMERICA
Before The
SECURITIES AND EXCHANGE COMMISSION

| | |
|---|---|
| IN THE MATTER OF<br><br>ELK ASSOCIATES FUNDING CORPORATION<br>AMERITRANS CAPITAL CORPORATION<br>GARY C. GRANOFF<br>747 Third Avenue<br>4th Floor<br>New York, New York  10017<br><br><br>Investment Company Act of 1940 | ) APPLICATION UNDER THE<br>) INVESTMENT COMPANY ACT<br>) OF 1940 (THE "ACT") FOR AN<br>) ORDER PURSUANT TO<br>) SECTIONS 6(c), 17(b) AND 57(c)<br>) OF THE ACT FOR AN ORDER<br>) GRANTING EXEMPTIONS<br>) FROM SECTIONS 12(d), 17(a),<br>) 17(d), 18(a), 18(c), 57(a), 60(a),<br>) AND 61(a) AND PERMITTING<br>) UNDER SECTIONS 17(d) AND<br>) 57(a)(4) OF THE ACT AND<br>) RULE 17d-1 THEREUNDER<br>) CERTAIN TRANSACTIONS |

Elk Associates Funding Corporation ("Elk" or the "Company"), Ameritrans Capital

Corporation ("Ameritrans"), and Gary C. Granoff (collectively, with Elk and Ameritrans, the

"Applicants") hereby submit this application (the "Application") pursuant to Sections 6(c), 17(b),

and 57(c) of the Investment Company Act of 1940 (the "Act") for an order of the Securities and

Exchange Commission (the "Commission") granting exemptions from the provisions of Sections

12(d), 17(a), 17(d), 18(a), 18(c), 57(a), 60(a), and 61(a) of the Act and permitting under

Sections 17(d) and 57(a)(4) of the Act and Rule 17d-1 thereunder certain transactions.

Table of Contents

Page

I. STATEMENT OF FACTS AND BACKGROUND  . . . . . . . . . . . . . . . . . . . .  1
    A.   Description of Ameritrans  . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1
    B.   Description of Elk  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2
    C.   The Proposed Reorganization  . . . . . . . . . . . . . . . . . . . . . . . . .  5

II. SUMMARY OF ISSUES PRESENTED  . . . . . . . . . . . . . . . . . . . . . . . .  9
    A.   Sections 12(d) and 60(a)  . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9
    B.   Sections 17(a) and 57(a)  . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9
    C.   Sections 17(d) and 57(a)(4) and Rule 17d-1  . . . . . . . . . . . . . . . .  9
    D.   Sections 18(a), 18(c) and 61(a)  . . . . . . . . . . . . . . . . . . . . . . .  10

III. IMPORTANT PRECEDENTS  . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10
    A.   Medallion Funding Corp. . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10
    B.   Allied Capital Corporation  . . . . . . . . . . . . . . . . . . . . . . . . . .  10
    C.   The Franklin Corporation . . . . . . . . . . . . . . . . . . . . . . . . . . .  10
    D.   Medallion Financial Corp.  . . . . . . . . . . . . . . . . . . . . . . . . . .  10

IV. DISCUSSION OF ISSUES  . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11
    A.   Sections 12(d)(1) and 60(a) . . . . . . . . . . . . . . . . . . . . . . . . . .  11
    B.   Sections 17(a) and 57(a)  . . . . . . . . . . . . . . . . . . . . . . . . . . .  13
    C.   Sections 17(d) and 57(a)(4) and Rule 17d-1 thereunder  . . . . . . . . . . .  15
    D.   Sections 18(a), 18(c) and 61(a)  . . . . . . . . . . . . . . . . . . . . . . .  17

V. CONDITIONS OF RELIEF  . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19

VI. CONCLUSIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  23
    A.   Legal Analysis and Conclusions  . . . . . . . . . . . . . . . . . . . . . . .  23
    B.   Precedents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  27

VII. REQUEST FOR ORDER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  27

VIII. PROCEDURAL MATTERS RELATING TO THE APPLICATION . . . . . . . .  28

SIGNATURES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  30

EXHIBIT INDEX . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  31

    A.   Release IC-16296, dated March 1, 1988 (File No. 812-6892), *In the Matter of Medallion Funding Corp.*

B.    Release IC-9540, dated November 24, 1976 (File No. 812-4014), *In the Matter of Allied Capital Corporation*

C.    Release IC-12371, dated April 14, 1982 (File No. 812-4798),  *In the Matter of Allied Capital Corporation*

D.    No Action Letter available June 1, 1981 (1981 CCH See Law Rep. ¶76,869) to The Franklin Corporation

E.    Release IC-21969, dated May 21, 1996, *In the Matter of Medallion Financial Corp. et al.*

F.    Copies of Corporate Resolutions
      1.    Elk Associates Funding Corporation
      2.    Ameritrans Capital Corporation

G.    Verifications
      1.    Elk Associates Funding Corporation
      2.    Ameritrans Capital Corporation
      3.    Gary C. Granoff

H.    Notice of Filing

# I. STATEMENT OF FACTS AND BACKGROUND

A.   Description of Ameritrans.

Ameritrans is a closed-end management investment company organized as a Delaware corporation in 1998 for the purpose of acquiring Elk by means of a share-for-share exchange of common stock with the shareholders of Elk (the "Share Exchange") and, following such acquisition, holding all of the outstanding voting capital stock of Elk.  Upon completion of the transactions described in this Application, Ameritrans will engage directly and/or through its principal subsidiary primarily in the business of making loans to small businesses.

Ameritrans has filed a registration statement under the Securities Act of 1933 (the "1933 Act") on Form N-14 (File No. 333-63951), covering the shares of its common stock to be issued in the Share Exchange.  Simultaneously with the acquisition of Elk, Ameritrans proposes to register its common stock under Section 12 of the Securities Exchange Act of 1934 and to file an election under Section 54 of the Act to be regulated as a business development company (a "BDC").  Ameritrans expects to obtain approval for quotation of its common stock on the Nasdaq SmallCap Market upon completion of the Share Exchange.  Elk's shares are presently quoted on the Nasdaq SmallCap Market under the symbol "EKFG."

Gary C. Granoff, Ellen M. Walker, Lee A. Forlenza, Steven Etra, Marvin Sabesan, Paul Creditor, Allen Kaplan, and John Acierno comprise the Board of Directors of Ameritrans.  A majority of Ameritrans' directors are persons who are not "interested persons" (as defined in Section 2(a)(19) of the Act), as will be required by Section 56 of the Act upon the filing by Ameritrans of its election under Section 54.  It is contemplated that John Laird and Howard Sommer will become directors of Ameritrans subject to the approval of the SBA of those

individuals as directors of Elk.  The executive officers of Ameritrans are Gary C. Granoff, President; Ellen M. Walker and Lee A. Forlenza, Vice Presidents; and Margaret Chance, Secretary.  The authorized capital stock of Ameritrans consists of 5,000,000 shares of common stock and 1,000,000 shares of preferred stock.  Gary C. Granoff has purchased one (1) share of common stock from Ameritrans at a price of $10.00, which share comprises all of Ameritrans' outstanding shares of common stock as of the date of this Application.  No shares of preferred stock are outstanding.  It is anticipated that, immediately upon the effectiveness of the Share Exchange, pursuant to which Elk will become a wholly-owned subsidiary of Ameritrans, Ameritrans will repurchase the one (1) share of common stock from Mr. Granoff for its original purchase price.

      B.     Description of Elk.

Elk was formed on July 9, 1979 for the purpose of operating as a Specialized Small Business Investment Company ("SSBIC"), licensed under the Small Business Investment Act of 1958 (the "1958 Act") and regulated and financed in part by the U.S. Small Business Administration (the "SBA").  The Company was granted a license to operate as an SSBIC by the SBA on July 24, 1980 and has been registered as an investment company under the Act and has elected to be taxed as a "regulated investment company" under the Internal Revenue Code of 1954, as amended (the "Code") since the fiscal year ended June 30, 1984.  On September 28, 1998, the Company elected to become a BDC.  The Company intends to elect to be taxed as a regulated investment company for the fiscal year ending June 30, 1999.  The Company's business has historically been to provide financing to persons who qualify under SBA regulations

as socially or economically disadvantaged persons or to entities that are at least 50% owned by such persons.

The 1958 Act was amended on September 30, 1996, and in connection therewith, the Company entered into an agreement with the SBA in March, 1997, and amended its certificate of incorporation, the effect of which was to convert the Company from an SSBIC to a Small Business Investment Company ("SBIC"). As such, the Company may now lend to persons who are not "disadvantaged" so long as the Company's aggregate loans to disadvantaged persons are at least equal to the remaining amount of the Company's unamortized restricted capital account (the "Restricted Capital Account") resulting from the repurchase by the Company of its 3% preferred stock from the SBA. The Restricted Capital Account was $790,504 at September 30, 1998, representing less than 5% of the Company's loan portfolio of approximately $45,000,000 as of that date.

As of the date of this Application, more than 95% of the Company's loans and investments qualify as loans to "disadvantaged" persons. As a result of the Company's conversion to an SBIC, the Company is presently required to maintain approximately $800,000 of its portfolio as loans to such persons. It is anticipated that the remaining restriction will expire on or about December, 1999. Accordingly, while the Company intends to continue to make loans to disadvantaged persons, particularly in connection with the ownership of taxicabs and related assets especially in the New York City, Boston, Miami, and Chicago markets, where many of the borrowers may qualify as "disadvantaged," the Company intends to diversify its activities by lending and investing in a broader range of businesses, many of which it is anticipated will be owned and operated by persons who are not disadvantaged, as defined under

the 1958 Act.  In addition, if the Company is acquired by Ameritrans as described herein, Ameritrans would have the ability to acquire or engage directly in businesses other than that of the Company, either directly or through new subsidiaries.

Because the Company has never experienced any losses of principal during its eighteen (18) year history of making loans in connection with the ownership of New York City taxicab medallions, taxicabs and related assets and its forty-two (42) months of making taxi medallion loans in Boston, Chicago and Miami, the Company, as stated above, will continue to make loans in these markets without the historical restriction of lending solely to disadvantaged persons. Loans made for the purpose of financing the purchase or continued ownership of taxi medallions, taxicabs and related assets represented 85% of the Company's loan portfolio as of September 30, 1998.  The balance of the Company's loan portfolio includes, and is intended to continue to include, loans made to finance the acquisition and/or operation of other small businesses.

The authorized capital stock of the Company consists of 3,000,000 shares of common stock, $.01 par value, and 1,000,000 shares of preferred stock.  As of September 30, 1998, Elk had 1,745,600 shares of common stock outstanding, and no shares of preferred stock were outstanding.

By Agreement dated November 10, 1994, the Company repurchased all of its 547,271 shares of 3% Preferred Stock from the SBA for an aggregate price of $1,915,449, representing a discount of 65% from the original aggregate issuance price of $10 per share.  The amount of repurchase price discount reflected the below-market 3% dividend rate, the fact that the 3% Preferred Stock was not subject to mandatory redemption at any time, and the satisfaction of the Company's retained earnings deficit.  The repurchase discount is being added to paid-in capital

on a straight-line basis over 60 months, commencing November 10, 1994.  As a condition precedent to the repurchase, the Company granted the SBA a liquidating interest (the "Liquidating Interest") in a newly-established restricted capital surplus account (the "Restricted Capital Account"), the amount of which was equal to the amount of the net repurchase discount. However, if the Company is liquidated or if a material violation of SBA regulations occurs during the accretion period, the SBA would receive the then remaining amount of its Liquidating Interest in the Restricted Capital Account prior to the shareholders of the Company receiving any amounts on their common stock.  The amount of the SBA's Liquidating Interest under this agreement was $790,504 at September 30, 1998.

      C.    <u>The Proposed Reorganization.</u>

Elk plans to enter into an Agreement and Plan of Share Exchange (the "Share Exchange Plan") with Ameritrans, pursuant to which each outstanding share of Elk's common stock would vest in Ameritrans, whereupon Elk would become a wholly-owned subsidiary of Ameritrans and the holders of all the outstanding shares of common stock of Elk would become the stockholders of Ameritrans and receive one (1) share of Ameritrans for each share of Elk owned (the "Share Exchange").

Gary C. Granoff, president and a director of Elk and Ameritrans, owns one (1) share of common stock of Ameritrans, representing the only outstanding share of Ameritrans. Simultaneously upon the effectiveness of the Share Exchange Plan, Ameritrans will redeem the Ameritrans share from Mr. Granoff for $10.00.

The Share Exchange Plan will require approval by Elk's shareholders at a special meeting of shareholders, which would be held subsequent to receipt of an Exemptive Order from the

Commission approving the Share Exchange Plan and certain related transactions. In connection therewith, Ameritrans, Elk and Gary C. Granoff are filing with the Commission this Application for an Exemptive Order approving the Share Exchange Plan and certain related transactions.

If the Share Exchange Plan is approved by the Commission, then Ameritrans, which plans to elect to become a BDC on or before the effectiveness of the Share Exchange Plan and to be treated for tax purposes as a regulated investment company, will engage in the lending/investment activities not subject to the restrictions of the 1958 Act. Elk would continue to operate as an SBIC, making loans to or investments in small business concerns as permitted by the 1958 Act.

Elk's management believes that the Share Exchange Plan, if approved, would be in the best interests of Elk's shareholders because it would allow Elk, through Ameritrans, to take advantage of business opportunities not otherwise permitted to an SBIC. It is anticipated that the initial funds necessary to finance the capitalization of Ameritrans will be provided from the proceeds of a private placement of shares of Elk's common stock completed in January 1998. In that financing, Elk raised total proceeds, before offering expenses, of $3,003,000 and disclosed to its investors that a portion of the proceeds would be utilized to capitalize a new holding company (Ameritrans) upon the approval of the Share Exchange Plan. Elk plans to utilize up to $963,000 of such proceeds, which were temporarily used to pay down Elk's borrowings, to capitalize Ameritrans. In addition to Commission and shareholder approval of the proposed Share Exchange Plan, Elk has obtained SBA approval of the capitalization of Ameritrans by Elk to the extent of $963,000.

It is presently expected that the officers and directors of Elk will be the same individuals who will serve as officers and directors of Ameritrans and that two (2) new directors, John Laird and Howard Sommer, will become directors to fill two (2) vacancies on Elk's Board of Directors, subject to approval by the SBA. It is further anticipated that following the consummation of the Share Exchange, such officers and directors would initially receive the same compensation, but that such compensation would be allocated between Elk and Ameritrans, based upon factors determined by the Boards of Directors of Elk and Ameritrans. Such officers and directors may also receive increases in compensation from time to time as determined by the respective Boards of Directors. Ameritrans and/or Elk may also hire additional personnel as such personnel are needed in connection with the expansion and diversification of their respective lending and/or investment activities.

More specifically, implementation of the Share Exchange Plan would not only permit Ameritrans, directly or through subsidiaries, to diversify by engaging in business not permitted due to regulatory constraints imposed on Elk, it would also provide the following advantages:

(1)    Cost efficiencies would result from Ameritrans and Elk being able to pursue business opportunities arising in connection with Elk's present business.

(2)    Ameritrans would engage in financings of taxicabs and businesses other than "small business concerns" (as defined under the 1958 Act) on a basis that is expected to provide a substantial additional return to its (Elk's) shareholders. For example, under SBA regulations, Elk may not make any loans with a term of less than four (4) years. Ameritrans would be permitted to make a loan with a lesser term,

ELK\476EXAP7.A98
November 25, 1998

thereby participating in the market for shorter term loans, a market segment currently not available to Elk.

(3)     Elk's existing management would be able to provide substantially all of the expertise required by Ameritrans to finance taxicab businesses in a market with which such management is intimately familiar, but a large part of which is currently foreclosed to Elk.

(4)     Although loans to "small business concerns" by Elk have proven to be low risk, it is reasonable to assume that financings by Ameritrans in the taxi medallion finance industry, both directly and through its subsidiary will be even less risky because it is anticipated that such concerns, in many instances, will either be (i) business concerns with greater creditworthiness, or (ii) businesses that qualify for shorter-term financing, rather than the minimum four-year loan term imposed upon Elk by the 1958 Act and applicable SBA regulations.   Any reduction in the average risk of the loan portfolio would be beneficial to Elk and its shareholders.

Management of Elk considered the alternative of creating a new finance entity that would be independent of Elk.   However, management determined, rather, to pursue the proposed holding company structure because (i) it enables existing Elk shareholders to participate in the expanded and more diversified business opportunities by preserving their existing equity interests and (ii) it is economical and efficient in that it will be able to utilize existing management, which already has the requisite expertise, to extend Elk's business to previously unavailable markets.

## II. SUMMARY OF ISSUES PRESENTED

### A. Sections 12(d) and 60(a).

Pursuant to Section 12(d)(1)(A), it is unlawful for any registered investment company to purchase or otherwise acquire the securities of any other registered investment company, except to the limited extent permitted by subsections (i), (ii) and (iii) of Section 12(d)(1)(A). In addition, Section 12(d)(1)(A) makes it unlawful for any registered investment company to purchase or otherwise acquire any security issued by a registered closed-end investment company, if the acquiring company (and any other affiliated investment companies) would own more than 10% of the voting stock of the closed-end company. Section 60 of the Act applies the provisions of Section 12 to BDCs. Rule 60a-1 under the Act exempts from the provisions of Sections 12(d)(1)(A) and (C) the acquisition by a BDC of the securities of an investment company licensed under the 1958 Act that is operated as a wholly-owned subsidiary of the BDC.

### B. Sections 17(a) and 57(a)

Ameritrans and Elk, as affiliates, may engage in sales and purchases or exchanges of stock and/or borrow money from each other in the ordinary course of business, which transactions may require exemptions pursuant to Rules 17(a) and 57(a) under the Act.

### C. Sections 17(d) and 57(a)(4) and Rule 17d-1.

Ameritrans and Elk, as affiliates, may engage in certain joint enterprises or transactions in the ordinary course of business, which transactions may require exemptions pursuant to Rule 17d-1 under the Act.

D.    Sections 18(a), 18(c) and 61(a).

Ameritrans and Elk may borrow from banks, insurance companies, the SBA and others in pursuit of their finance businesses, raising questions with respect to the asset coverage requirements in Sections 18(a), 18(c) and 61(a) of the Act.

### III.  IMPORTANT PRECEDENTS

A.    Medallion Funding Corp.

See the exemptive order granted in Release IC-16296 (March 1, 1988; 812-6892).  A copy is attached hereto as *Exhibit A*.

B.    Allied Capital Corporation

See, in particular, the exemptive orders granted in Releases IC-9540 (November 24, 1976; 812-4014) and IC-12371 (April 14, 1982; 812-4798).  Copies are attached hereto as *Exhibits B* and *C*, respectively.

C.    The Franklin Corporation

See the "no action letter" at 1981 CCH Sec. Law Rep. ¶ 76,869 (available June 1, 1981).  A copy is attached hereto as *Exhibit D*.

D.    Medallion Financial Corp.

See the exemptive order granted in Release IC-21969 (May 21, 1996, 812-9744).  A copy is attached hereto as *Exhibit E*.

## IV. DISCUSSION OF ISSUES

A.    Sections 12(d)(1) and 60(a).

(1)    General.  Section 12(e) of the Act provides an exception to the limitations set forth in Section 12(d)(1) of the Act with respect to acquisitions by registered investment companies of securities of certain corporations, such as those which are furnishing capital to industry, provided the requirements set forth in Sections 12(e)(1) - (3) are met.

Section 12(e)(1) reads as follows:

> That the securities issued by such corporation (other than short-term paper and securities representing bank loans) shall consist solely of one class of common stock and shall have been originally issued or sold for investment to registered investment companies only;

Section 12(e)(2) reads as follows:

> That the aggregate cost of the securities of such corporation purchased by such registered investment company does not exceed 5 per centum of the value of the total assets of such registered company at the time of any purchase or acquisition of such securities; and

Section 12(e)(3) reads as follows:

> That the aggregate paid-in capital and surplus of such corporation does not exceed $100,000,000.

(2)    Application of Sections 12(d)(1) and (60) to Ameritrans and Elk.  If the proposed reorganization were consummated, Ameritrans (a BDC) would own 100% of the voting capital stock of Elk (a BDC).  Section 60 provides that, notwithstanding the provisions of Section 6(f), Section 12 shall apply, with a limited exception, to a BDC to the same extent as if it were a registered investment company.  Rule 60a-1 exempts from the provisions of Sections

12(d)(1)(A) and (C) the acquisition by a BDC of the securities of an investment company licensed under the SBA Act that is operated as a wholly-owned subsidiary of the BDC. Under Section 12(d)(1), a registered investment company may not own more than 3% of the voting securities of any other registered investment company and may not invest more than 10% of its total assets in the securities of other registered investment companies.

Elk would not appear to satisfy the requirements of Section 12(e)(1) because Elk has issued debentures to the SBA in accordance with the customary operating procedures of SBICs. However, the Staff in the past has taken the position that the issuance by an SBIC of debentures to the SBA is actually consistent with, rather than contrary to, the purpose of Section 12(e). See the Staff's response to The Franklin Corporation, available June 1, 1981, *CCH Federal Securities Law Reporter* ¶76,869, a copy of which is attached hereto as *Exhibit D*. As the Staff stated in its response to The Franklin Corporation:

> It does not appear, therefore, that the SBA's ownership of SBIC's liquidating interest and debentures would defeat the purposes of the Act as indicated by Section 12(e). Instead, such ownership could aid [an] SBIC in performing the functions specifically contemplated by that Section, such as purchasing the securities of companies for which there is no ready market.

Further, it appears that the proposed reorganization would not conflict with the purpose of Section 12(e)(2). Although Elk would account for most of Ameritrans' assets immediately after the proposed reorganization, the 5% restriction in Section 12(e)(2) appears to relate to concerns with respect to the pyramiding of control or management fees, neither of which is relevant to the proposed reorganization.

ELK\476EXAP7.A98
November 25, 1998

-12-

The proposed reorganization appears to be consistent with Section 12(e)(3), as Elk's net assets were only $13,685,741 on September 30, 1998.

In addition, since Ameritrans will operate Elk as a wholly-owned subsidiary, the acquisition of the securities of Elk, any loans or advances made to Elk by Ameritrans and any other transfer from Ameritrans to Elk will be exempt from the prohibitions of Sections 12(d)(1)(A) and (C) by virtue of Rule 60a-1.  The making of loans or advances by Elk to Ameritrans, however, may be deemed to violate Section 12 if such loans or advances were deemed to be purchases by Elk of Ameritrans' debt securities.

(3)    Exemption Requested.  In general, the purpose of Section (12)(d)(1) is to prohibit investment companies from pyramiding control or management fees.  As the owner of 100% of the voting securities of Elk, Ameritrans would not be pyramiding control.  Elk is internally managed, as would be Ameritrans, so there is no opportunity to, or intention of, pyramiding management fees.  Accordingly, it does not appear that the proposed reorganization would violate in any respect the purposes for which Section (12)(d)(1) was enacted.  The Applicants, therefore, request the Commission grant an order exempting from the provisions of Sections 12(d)(1) and 12(e) of the Act the acquisition by Elk of any securities of Ameritrans representing indebtedness.

B.    Sections 17(a) and 57(a).

(1)    General.  Sections 17(a) and 57(a) of the Act provides in pertinent part that it is unlawful for any affiliated person of a registered investment company or any affiliated person of such person:  (1) to sell any security or other property to such registered investment company or to any company controlled by it except securities of which the buyer is the issuer

or of which the seller is the issuer and which are part of a general offering to holders of a class of its securities; (2) to purchase from such investment company or from any company controlled by it any security or other property (except securities of which the seller is the issuer) or (3) to borrow money or other property from such investment company or from any company controlled by it, with certain exceptions. Sections (1), (2) and (3) of Section 57(a) impose substantially the same prohibitions on transactions between BDCs and certain of their affiliates, including any director, officer or employee of a BDC and any entity controlled by a director, officer or employee of a BDC.

        (2)     <u>Application of Sections 17(a) and 57(a) to Ameritrans and Its Subsidiary</u>. Ameritrans and Elk will all be affiliated persons by reason of Ameritrans' ownership of all the voting stock of Elk, and Elk will be affiliated by reason of its common control by Ameritrans. It is anticipated that Elk will be a wholly-owned subsidiary and, therefore, transactions between it and Ameritrans will be exempt from the provisions of Section 17(a) under Rule 17a-3. In addition, Applicants submit that additional investments in its subsidiary by Ameritrans in the form of stock purchases, capital contributions or loans would not violate Section 17(a) since the seller will be a subsidiary and the issuer of any securities issued and will be controlled by the purchaser, Ameritrans.

        Purchases and sales of portfolio securities between Ameritrans and Elk would also appear to be violations of Section 17(a) with respect to Elk, since such transactions would not involve securities issued by Ameritrans or Elk. Since Ameritrans, an "upstream affiliated person," would be a participant to such transactions, the exemption provided by Rule 17a-6 would not be available.

Applicants also anticipate that small business or other concerns ("Portfolio Companies," as defined in Part V, Section A(1)(b), below) to which loans may be made by Ameritrans or Elk, which may become affiliated persons of Ameritrans and/or Elk, may borrow from, or sell securities issued by such concerns to, Ameritrans and Elk. Such transactions may constitute affiliated transactions within the prohibitions of Section 17(a), since (i) in the case of a sale of securities by a Portfolio Company, the sale may not be part of a general offering to a class of the issuer's stockholders, or (ii) in the case of a loan, the Portfolio Company may not be controlled by Ameritrans or Elk. In addition, such transactions may violate Section 57(a) since Rule 57b-1 only exempts transactions with affiliates of downstream affiliates of a BDC that are affiliated persons within the meaning of Section 2(a)(3)(C) or (D) of the Act. Accordingly, transactions between Ameritrans and Portfolio Companies of which Elk owns 5% of the outstanding voting securities would not be exempted by Rule 57b-1.

(3)    Exemption Requested.  Subject to condition "(6)" set forth in Section V of this Application, Ameritrans and Elk request that the Commission grant an order exempting from the provisions of Sections 17(a) and 57(a) of the Act (i) transactions solely between Ameritrans and Elk with respect to the purchase and sale of securities or other property and the borrowing of money or other property, and (ii) transactions in which Portfolio Companies, which have become affiliated persons of Ameritrans and/or Elk borrow from, or sell securities issued by such concerns to, Ameritrans and Elk.

C.    Sections 17(d) and 57(a)(4) and Rule 17d-1 thereunder.

(1)    General.  Section 17(d) and Rule 17d-1(a) thereunder make it unlawful for an affiliated person of a registered investment company or any affiliated person of such person,

acting as principal, to participate in or effect any transaction in connection with any joint enterprise or arrangement in which such investment company, or any company controlled thereby, unless an exemptive order relating to such transaction has been granted by the Commission.  Section 57(a)(4) imposes substantially the same prohibitions on joint transactions involving BDCs and certain of their affiliates, including any director, officer or employee of a BDC.  Section 57(i) of the Act provides that the rules and regulations under Sections 17(a) and 17(d) shall apply to transactions subject to Section 57(a) in the absence of rules under Section 57(a) and, therefore, the standards set forth under Rule 17d-1 govern the availability of the order requested herein.

      (2)     <u>Application of Sections 17(d) and 57(a)(4) and Rule 17d-1 to Ameritrans and its Subsidiary</u>.  In the course of their operations, it may become necessary or desirable for Ameritrans and its subsidiary, Elk, to participate with third persons that have no other affiliation with Ameritrans or its subsidiary in joint transactions such as investments in the same or different securities of the same issuer, either simultaneously or sequentially.  Section 17(d) and Rule 17d-1(a) thereunder may prohibit such joint participation by Ameritrans and its subsidiary, Elk.

      (3)     <u>Permission Requested</u>.  Subject to condition "(7)" set forth in Section V of this Application, Ameritrans and Elk request that the Commission grant an order permitting under Sections 17(d) and 57(a)(4) of the Act and Rule 17d-1 thereunder Ameritrans and Elk to participate in any joint enterprise or joint arrangement involving other participants only to the extent that any such transaction would not be prohibited if Ameritrans and Elk were not separate companies.

D.    Sections 18(a), 18(c) and 61(a).

(1)    General.    Section 18(a) of the Act prohibits a registered closed-end investment company from issuing any class of senior security or selling any such security of which it is the issuer, unless such company complies with the asset coverage requirements set forth in that Section.  "Asset coverage" is defined in Section 18(h) to mean the ratio that the value of the total assets of an issuer, less all liabilities not represented by senior securities, bears to the aggregate amount of senior securities of such issuer.  Under the provisions of Section 18(a)(1)(A), senior securities of closed-end investment companies representing indebtedness must have an asset coverage of 300% immediately after their issuance or sale and, under the provisions of Section 18(a)(2)(A), senior securities of such companies representing stock must have an asset coverage of 200%.  Section 18(k) of the Act provides an exemption from the foregoing asset coverage requirements for investment companies operating under the 1958 Act. Section 61 applies Section 18 to BDCs, with certain exceptions.

Section 18(c) of the Act prohibits a registered closed-end investment company from issuing or selling more than one class of senior security representing indebtedness. Promissory notes or other evidences of indebtedness "issued in consideration of any loan, extension, or renewal thereof, made by a bank or other person and privately arranged and not intended to be publicly distributed" are not deemed to be a separate class of senior securities for purposes of Section 18(c).  In addition, Rule 18c-1 exempts from Section 18(c) SBICs licensed to do business under the 1958 Act that do not have any outstanding publicly-held indebtedness and all senior securities representing indebtedness of which are (i) privately held by the SBA or banks, insurance companies, or other institutional investors, (ii) not intended to by publicly

distributed and (iii) not convertible into, exchangeable for, or accompanied by any option to acquire any equity security of such SBICs. Section 61(a)(2) exempts BDCs from the provisions of Section 18(c) subject to substantially the same conditions set forth in Rule 18(c)-1.

(2)     Application of Sections 18(a), 18(c) and 61(a) to Ameritrans and its Subsidiary. Ameritrans will be a BDC and Elk will be a BDC or a closed-end investment company registered under the Act and, accordingly, subject to the provisions of and the exemptions available under, Section 18 on an individual basis (as modified by Section 61(a)). In addition, as a holding company for a controlled, closed-end investment company or BDC subsidiary, Ameritrans may be subject to the asset coverage requirements of Section 61(a) on a consolidated basis because it may be deemed to be an indirect issuer of senior securities with respect to Elk's indebtedness. Accordingly, Ameritrans would then be required to treat as its own all assets held directly by Ameritrans and Elk and also to treat as its own any liabilities of Ameritrans and Elk (with intercompany receivables and liabilities eliminated), including liabilities of Elk in respect of senior securities as to which Elk is exempt from the provisions of Section 18(a)(1)(A) and (B) by virtue of Section 18(k).

In furtherance of this position, it should be noted that the Commission granted exemptive relief with respect to the asset coverage requirements to Tri-Magna Corporation ("Tri-Magna") and Medallion Funding Corp. ("Medallion Funding") (Release IC-16296, dated March 1, 1988) for "borrowings," whether bank borrowings or institutional borrowings as described in Section 18(g) of the Act, as well as any "Preferred Stock" interest granted to the SBA, provided that such borrowings were those of the SBIC subsidiary only. In fact, Medallion Funding and Tri-Magna were otherwise subject to the more burdensome asset coverage

requirements (300%) imposed by Section 18(a)(1)(A) of the Act because both were closed-end management companies and neither was a BDC. In addition, Tri-Magna's audited financial statements reflect that its bank loans represented 64% of its total assets for the fiscal year ended December 31, 1994, and 80% of its total assets for the fiscal year ended December 31, 1995.

In the case of Ameritrans and Elk, which would be the wholly-owned SBIC subsidiary of Ameritrans, not only is the corporate structure analogous to that of Tri-Magna and Medallion Funding, but Ameritrans, as a BDC, would otherwise be subject to a lesser asset coverage (200%) requirement than Tri-Magna by virtue of the application of Section 61(a) to BDCs. The Commission granted similar relief to Medallion Financial Corp. (See Release IC-21969, dated May 21, 1996).

In conclusion, such relief not only has been given in the past, but appears to be consistent with the statutory analysis of certain non-public, institutional financing as indebtedness not representing a senior security.

(3)    Exemption Requested.    Subject to condition "(4)" set forth in Part V hereof, Ameritrans and Elk request that the Commission issue an order granting an exemption from the provisions of Sections 18(a) and 61(a) to treat borrowings by Elk and the SBA's Liquidating Interest in Elk as "liabilities and indebtedness not represented by senior securities" within the meaning of Section 18(h) of the Act in applying the asset coverage requirements of Section 18(a) to Ameritrans (as modified by Section 61(a)) and Elk on a consolidated basis.

## V.  CONDITIONS OF RELIEF

In connection with the relief requested in Part IV hereof, Applicants request that the following conditions of relief be incorporated in any Order issued by the SEC:

(1)     At all times Ameritrans will own and hold, beneficially and of record, all of the outstanding voting capital stock of Elk;

(2)     Elk will have at least the same fundamental investment policies as those of Ameritrans as set forth in Ameritrans' registration statement; Elk will not engage in any other action referred to in Section 13(a) of the Act, unless such action shall have been authorized by Ameritrans after approval of such action by a vote of a majority (as defined in the Act) of the outstanding voting securities of Ameritrans.

(3)     Ameritrans will not cause or permit Elk to enter into, renew or perform any investment advisory or underwriting contract or agreement, written or oral, as contemplated by Section 15 of the Act, unless the terms of such contracts or agreements and any renewal thereof shall have been approved in compliance with said Section 15; and where any vote of the stockholders of Elk would be required by said Section 15, unless the stockholders of Ameritrans also shall have approved the same vote by a majority (as defined in the Act) of the outstanding voting securities of Ameritrans, or where any action of the directors of Elk would be required by said Section 15, unless the Board of Directors of Ameritrans, including a majority of those directors who are not parties to any such contract or agreement or interested persons of any such party, also shall have approved the same.

(4)     Ameritrans will not itself and Ameritrans will not cause or permit Elk to issue any senior security or sell any senior security of which Ameritrans or Elk is the issuer except as hereinafter set forth:

(a)     Elk may continue to have outstanding the SBA's Liquidating Interest in accordance with applicable SBA regulations pertaining to SBICs;

ELK\476EXAP7.A98
November 25, 1998                                   -20-

(b)     Ameritrans and Elk may issue and sell to banks, insurance companies and other financial institutions their secured or unsecured promissory notes or other evidences of indebtedness in consideration of any loan, or any extension or renewal thereof made by private arrangement and Elk may issue debt securities held or guaranteed by the SBA or the United States or any designee of the United States, provided the following conditions are met:

(i)     such notes or evidences of indebtedness are not intended to be publicly distributed;

(ii)     such notes or evidences of indebtedness are not convertible into, exchangeable for or accompanied by any options to acquire any equity security; and

(iii)     immediately after the issuance or sale of any such notes or evidences of indebtedness, Ameritrans and its subsidiary on a consolidated basis and Ameritrans, individually, shall have the asset coverage required by Section 18(a) of the Act as modified by Section 61(a), except that, in determining whether Ameritrans and Elk on a consolidated basis have the asset coverage required by Section 18(a) of the Act (as modified by Section 61(a)), any SBA Liquidating Interest in Elk and any institutional borrowings by Elk shall not be considered senior securities representing indebtedness and, for purposes of the definition of "asset coverage" in Section 18(h), shall be treated as indebtedness not represented by senior securities.

(5)     Ameritrans, as sole shareholder, will cause to be elected as directors of Elk only persons who are directors of Ameritrans, elected in compliance with Section 16(a) of the Act and subject to the provisions thereof relating to the filling of vacancies.

(6)     Any small business concern or other concern to which loans may be made by Ameritrans or Elk, which concern may become an affiliated person of Ameritrans and its subsidiary as a group, may borrow from, or sell securities issued by it to, Ameritrans or Elk, provided that such transaction meets the requirements for an exemption pursuant to Rule 17a-6 promulgated pursuant to the Act, except to the extent that it fails to meet the requirements of such Rule solely because the other member of the group (Ameritrans or Elk) is also a party to the transaction or has, or within six (6) months prior to the transaction had, or pursuant to an arrangement will acquire, a direct or indirect financial interest in the small business or other concern. In addition, Ameritrans and Elk may effect purchases and sales of securities and other property or the borrowing of money or other property, provided that Ameritrans and Elk are the sole participants in such transactions.

(7)     Ameritrans and Elk may participate in any joint enterprise or joint arrangement involving other participants, provided that such transaction meets the requirements for an exemption pursuant to Rule 17d-1 except to the extent it fails to meet the requirements of such Rule solely because the other of Ameritrans and Elk is, or proposes to be, a participant in the joint enterprise or joint arrangement.

(8)     Ameritrans and Elk will purchase and sell portfolio securities between themselves only if, in each case, the prior approval of the SBA has been obtained.

ELK\476EXAP7.A98
November 25, 1998

## VI. CONCLUSIONS

A.     Legal Analysis and Conclusions.

(1)     Standards for Exemption Under Section 6(c).   Section 6(c) of the Act permits the Commission to exempt conditionally or unconditionally any person or transaction from any provisions of the Act, if and to the extent such exemption is necessary or appropriate in the public interest and consistent with the protection of investors and the purposes fairly intended by the policy and provisions of the Act.   For the reasons that follow, Ameritrans hereby submits that granting the requested exemptions from the cited provisions of the Act, subject to the conditions set forth in this Application, will be in the public interest and will enhance the interests of Ameritrans' stockholders, while retaining for them the protection afforded by the other provisions of the Act applicable to Ameritrans and Elk.

(a)     Section 12(d).   Since (i) Elk will be a wholly-owned subsidiary of Ameritrans and (ii) Ameritrans has represented and agreed that it will exercise its rights as the sole shareholder of Elk on matters required by the Act to be approved by shareholders only as directed by Ameritrans' stockholders, the relationship of Ameritrans' stockholders to the activities to be carried out by Elk will be no different than if such activities were carried out by Ameritrans.   Accordingly, the objectives of Section 12(d) will not be compromised and the public interest will not be harmed by loans to Ameritrans by any subsidiary.   In addition, because Ameritrans will own all of the outstanding voting capital stock of Elk and because each of Ameritrans and Elk are or will be internally managed, there will be no opportunity to pyramid control or management fees in contravention of the purposes of Section 12(d).

(b)     Sections 17(a) and 57(a). Elk will be wholly-owned by Ameritrans, and no officers or directors of Ameritrans and Elk or any controlling persons or other "upstream affiliated persons" of Ameritrans will have any financial interest (other than as stockholders of Ameritrans) in transactions with "eligible portfolio companies," as such term is defined in Section 2(c)(46) of the Act (the "Portfolio Companies"), that may become affiliates of Ameritrans and/or Elk, nor will any such persons have any financial interest (other than as stockholders of Ameritrans) in the purchase and sale of securities or other property or the borrowing of money or other property solely between Ameritrans and Elk. Consequently, there can be no overreaching on the part of any person, and no harm to the public interest will occur in such transactions.

(c)     Sections 17(d) and 57(a)(4) and Rule 17d-1. The joint transactions contemplated by Ameritrans for which exemptive relief is sought herein would involve only third persons having no other affiliation with Ameritrans or Elk. If entered into by Ameritrans or Elk, individually, such transactions would be permissible under the Act without prior approval of the Commission. Since Ameritrans owns or will own all of the outstanding voting capital stock of Elk and, together, the two (2) entities will, in effect, operate as a single economic unit, there can be no overreaching on the part of any person and no harm to the public interest will occur if Ameritrans and Elk, as its wholly-owned subsidiary, are allowed to participate in joint transactions to the extent that each of them, individually, would not be subject to the provisions of Section 17(d) and Rule 17d-1, had each participated in such transactions on an individual basis.

(d)     <u>Sections 18(a) and 61(a)</u>.  Permitting direct borrowings by Elk will be consistent with the purposes of and protection afforded by the Act, provided that Ameritrans, individually, and Ameritrans and Elk on a consolidated basis, meet the asset coverage requirement imposed under Section 18(a)(1)(A) of the Act (as modified by Section 61(a)).  Since Section 18(k) makes the asset coverage requirements of Section 18(a) inapplicable to SBICs such as Elk, neither the borrowings of Elk nor the SBA's Liquidating Interest in Elk should be "charged" to Ameritrans and its subsidiary on a consolidated basis for Section 18(a) purposes, so long as such borrowings are treated as "liabilities and indebtedness not represented by senior securities" within the meaning of Section 18(h) of the Act in determining asset coverage.

The proposed exclusion from the provisions of Section 18(a) of certain borrowings by Elk, borrowings from Ameritrans by its subsidiary, Elk, and the SBA's Liquidating Interest in Elk, subject to the terms set forth in condition "(4)" set forth in Part V hereof, also will not impair the protection afforded by, and is consistent with the purposes of, Section 18, since Section 18(k) excludes SBICs from the asset coverage requirements of Section 18(a), and Rule 18c-1 provides an exemption from Section 18(c) for borrowings of Elk permitted under such proposed condition "(4)."  In addition, borrowings from Ameritrans by its subsidiary will not increase the aggregate indebtedness incurred by Ameritrans and its subsidiary as a group and, therefore, would be consistent with the purposes of Section 18.  Moreover, since such indebtedness is subject to the asset coverage requirement of Section 18(a), except as modified as described in such condition "(4)," the interests of investors are adequately protected from the adverse effects of leveraging in excess of that permitted by the Act.

(2)   Standards for Exemption Under Section 17(b) and 57(c).   Section 17(b) of the Act permits the Commission to exempt a proposed transaction from the provisions of Section 17(a) of the Act if evidence establishes that (i) the terms of the proposed transaction, including the consideration to be paid or received, are reasonable and fair and do not involve overreaching on the part of any person concerned; (ii) the proposed transaction is consistent with the policy of each registered investment company concerned, as recited in its registration statement and reports filed under the Act; and (iii) the proposed transaction is consistent with the general purposes of the Act.   Section 57(c) of the Act permits the Commission to exempt a proposed transaction from the provisions of Section 57(a)(1)-(3) using substantially the same standard imposed by Section 17(b).

In passing upon applications filed pursuant to Rule 17d-1, the Commission is directed by Rule 17d-1(b) to consider whether the participation of the registered investment company in a joint enterprise or arrangement is consistent with the provisions, policies and purposes of the Act and the extent to which such participation is on a basis different from or less advantageous than that of other participants.   Section 57(i) of the Act provides that the rules and regulations under Sections 17(a) and 17(d) shall apply to transactions subject to Section 57(a) in the absence of rules under Section 57(a).   No rules with respect to joint transactions have been adopted under Section 57(a) and, therefore, the standards set forth under Rule 17d-1 govern the order requested herein.

Assuming no "upstream affiliated persons" of Ameritrans will have any financial interest (other than as stockholders of Ameritrans) in the Portfolio Companies that may become affiliated persons of Ameritrans and its subsidiary, transactions with such Portfolio Companies would not

result in overreaching on the part of any person.  There can also be no overreaching on the part of any person, and no harm to the public interest will occur, in the purchase and sale of securities or other property or the borrowing of money or other property between Ameritrans and its subsidiary, Elk, so long as Ameritrans and its subsidiary are the sole participants in such transactions.  In addition, since Elk will have at least the same fundamental investment policies as those of Ameritrans, such transactions will be consistent with the fundamental policies of both.  Finally, the relief requested herein is consistent with the purposes of the Act for the reasons set forth in Section V of this Application.

B.    Precedents.

The Commission has previously granted exemptive relief substantially similar in all material respects to the relief requested in Parts IV and VII of this Application in orders issued to *Allied Capital Corporation*, Release IC-9540 (November 24, 1976, 814-4014) and *Medallion Funding Corp.*, Release IC-16296 (March 1, 1988, 812-6892).  *Allied Capital Corporation II et al.*, Release IC-17492 (May 16, 1990), *Bando McGlocklin Capital Corporation et al.*, Release IC-19092 (November 19, 1992), and *Medallion Financial Corp. et al.*, Release IC-21969 (May 21, 1996).

## VII. REQUEST FOR ORDER

Based on the foregoing, Applicants submit that the applicable standards for relief pursuant to Sections 6(c), 17(b) and 57(c) of the Act and Rule 17d-1 thereunder have been met and, therefore, respectfully request that the Commission issue an order:

(i)      exempting the Share Exchange from the provisions of Sections 17(a) and 57(a) and permitting the Share Exchange and the participation therein of Gary C. Granoff pursuant

to Sections 17(d), 57(a)(4) and 57(c) and Rule 17d-1 thereunder on the terms and conditions set forth in this Application, subject to the affirmative vote in favor of approving the Share Exchange Plan by a majority of the outstanding shares of Elk's common stock; and

      (ii)    exempting from the provisions of Sections 12(d)(1), 17(a), 18(a) and 57(a) and permitting certain joint transactions otherwise prohibited by the provisions of Sections 17(d) and 57(a)(4) to the extent necessary to allow Ameritrans to acquire and operate Elk, subject to the conditions set forth in Part V of this Application.

      In addition to the foregoing, the Applicants undertake to notify the Commission in writing if any material change occurs with respect to the Share Exchange Plan or the proposed transactions between the date of this Application and the date on which the Commission issues the order.

## VIII. PROCEDURAL MATTERS RELATING TO THE APPLICATION

      Pursuant to Rule 0-2(c) under the Act, each of Ameritrans and Elk states that its Board of Directors, by resolution duly adopted and attached thereto as *Exhibit F*, has authorized each of its named officers therein to prepare, or cause to be prepared and to execute and file with the Commission, this Application. Mr. Gary C. Granoff has signed this Application.

      The verifications required by Rule 0-2(d) under the Act are attached hereto as *Exhibit G*. All other requirements for the execution and filing of this Application in the name of and on behalf of, each of Ameritrans and Elk, by the undersigned officers, have been complied with and each such officer is fully authorized to do so.

      Pursuant to Rule 0-2(f) under the Act, each of the Applicants states that its or his address is 747 Third Avenue, 4th Floor, New York, New York  10017 and further states that all

communications or questions concerning this Application or any amendment thereto should be directed to C. Walter Stursberg, Jr., Esq., Stursberg & Veith, 405 Lexington Avenue, Suite 4949, New York, New York 10174, (212) 922-1177.

It is desired that the Commission issue an Order pursuant to Rule 0-5 under the Act without a hearing being held.

The proposed notice of the filing of this Application required by Rule 0-2(g) under the Act is attached hereto as *Exhibit H* and incorporated herein by reference.

## SIGNATURES

Pursuant to the requirements of the Investment Company Act of 1940, each of Ameritrans Capital Corporation and Elk Associates Funding Corporation has caused this Application to be duly signed on its behalf by the undersigned, thereunto duly authorized in the City of New York as of the 24th day of November, 1998. Mr. Gary C. Granoff has signed this Application as of this 24th day of November, 1998.

ELK ASSOCIATES FUNDING CORPORATION


By: /s/ Gary C. Granoff
     Gary C. Granoff, President

AMERITRANS CAPITAL CORPORATION


By: /s/ Gary C. Granoff
     Gary C . Granoff, President


By: /s/ Gary C. Granoff
     Gary C. Granoff

## SIGNATURES

Pursuant to the requirements of the Investment Company Act of 1940, each of Ameritrans Capital Corporation and Elk Associates Funding Corporation has caused this Application to be duly signed on its behalf by the undersigned, thereunto duly authorized in the City of New York as of the ___ day of November, 1998. Mr. Gary C. Granoff has signed this Application as of this ____ day of November, 1998.

ELK ASSOCIATES FUNDING CORPORATION


By:_____
      Gary C. Granoff, President

AMERITRANS CAPITAL CORPORATION


By:_____
      Gary C . Granoff, President


_____
      Gary C. Granoff

## SIGNATURES

Pursuant to the requirements of the Investment Company Act of 1940, each of Ameritrans Capital Corporation and Elk Associates Funding Corporation has caused this Application to be duly signed on its behalf by the undersigned, thereunto duly authorized in the City of New York as of the 24th day of November, 1998.  Mr. Gary C. Granoff has signed this Application as of this 24th day of November, 1998.

ELK ASSOCIATES FUNDING CORPORATION

By: _____
     Gary C. Granoff, President

AMERITRANS CAPITAL CORPORATION

By: _____
     Gary C. Granoff, President

_____
     Gary C. Granoff

ELK\476EXAP6.A98
November 24, 1998

## EXHIBIT INDEX

A.   Release IC-16296, dated March 1, 1988 (File No. 812-6892), *In the Matter of Medallion Funding Corp.*

B.   Release IC-9540, dated November 24, 1976 (File No. 812-4014), *In the Matter of Allied Capital Corporation*

C.   Release IC-12371, dated April 14, 1982 (File No. 812-4798), *In the Matter of Allied Capital Corporation*

D.   No Action Letter available June 1, 1981 (1981 CCH See Law Rep. ¶76,869) to The Franklin Corporation

E.   Release IC-21969, dated May 21, 1996, *In the Matter of Medallion Financial Corp. et al.*

F.   Copies of Corporate Resolutions
    1.   Elk Associates Funding Corporation
    2.   Ameritrans Capital Corporation

G.   Verifications
    1.   Elk Associates Funding Corporation
    2.   Ameritrans Capital Corporation
    3.   Gary C. Granoff

H.   Notice of Filing

EXHIBIT A

INVESTMENT COMPANY ACT OF 1940
Release No. IC-16294/March 1, 1988

SEE

SECURITIES ACT OF 1933
Release No. 33-6757/March 1, 1988

_____

INVESTMENT COMPANY ACT OF 1940
Release No. IC-16295/March 1, 1988

812-6833

In the Matter of

THE ROYAL BANK OF SCOTLAND plc
% Bruce W. Nichols, Esquire
Davis Polk & Wardwell
1 Chase Manhattan Plaza
New York, New York 10005

ORDER AND ERRATA

The Royal Bank of Scotland plc ("Applicant"),
filed an application on August 14, 1987, and an
amendment thereto on January 19, 1988, for an
order pursuant to Section 6(c) of the Investment
Company Act of 1940 (the "1940 Act"), permit-
ting Applicant to issue and sell its debt and equity
securities in the United States.

On January 29, 1988, a notice (Investment Com-
pany Act Release No. 16243) was issued of the
filing of the application. An amendment was filed
on February 5, 1988, during the notice period the
substance of which was contained in the notice.
The notice further contained an erroneous ap-
plication file number. The correct file number is
812-6833 (as stated above). The notice gave inter-
ested persons an opportunity to request a hearing
and stated an order disposing of the matter would
be issued unless a hearing should be ordered. No
request for a hearing has been filed, and the
Commission has not ordered a hearing.

The matter having been considered, it is found
that granting the exemption is appropriate, in the
public interest and consistent with the protection
of investors and the purposes fairly intended by
the policy and provisions of the 1940 Act. Ac-
cordingly,

IT IS ORDERED, pursuant to Section 6(c) of the
1940 Act, that the application for exemption from
all provisions of the 1940 Act be, and hereby is,
granted effective forthwith.

For the Commission, by the Division of Invest-
ment Management, pursuant to delegated au-
thority.

Jonathan G. Katz
Secretary

_____

INVESTMENT COMPANY ACT OF 1940
Release No. IC-16296/March 1, 1988

812-6892

In the Matter of

MEDALLION FUNDING CORP.
205 East 42nd Street
Suite 2020
New York, New York 10017

ORDER PURSUANT TO SECTION 6(c) OF
THE ACT GRANTING EXEMPTION
FROM THE PROVISIONS OF SECTIONS
8(b), 12(d)(1), 12(e), 17(a), 17(d), 18(a), 18(c),
30(b) AND 30(d) OF THE ACT AND
RULES 8b-16, 17d-1, 30b1-1 AND 30d-1
THEREUNDER

Medallion Funding Corp. ("Applicant") filed an
application on October 9, 1987, for an order of the
Commission pursuant to Section 6(c) of the In-
vestment Company Act of 1940 ("1940 Act"),
exempting Applicant from the provisions of Sec-
tions 8(b), 12(d)(1), 12(e), 17(a), 17(d), 18(a), 18(c),
30(b) and 30(d) of the 1940 Act and Rules 8b-16,
17d-1, 30b1-1 and 30d-1 thereunder.

A notice of filing of the application was issued on
February 4, 1988 (Investment Company Act Re-
lease No. 16253). The notice gave interested per-
sons an opportunity to request a hearing and
stated that an order disposing of the application
would be issued as of course unless a hearing
should be ordered. No request for a hearing has
been filed, and the Commission has not ordered a
hearing.

The matter has been considered and it is found,
on the basis of the information set forth in the
application, that the granting of the requested
exemption is appropriate in the public interest
and consistent with the protection of investors
and the purposes fairly intended by the policy
and provisions of the 1940 Act. Accordingly,

IT IS ORDERED, pursuant to Section 6(c) of the
1940 Act that the requested exemption from the
provisions of Sections 8(b), 12(d)(1), 12(e), 17(a),

NOV 24 '97 12:46

PAGE.02

17(d), 18(a), 18(c), 30(b) and 30(d) of the Act and Rules 8b-16, 17d-1, 30b1-1 and 30d-1 thereunder to the extent requested, be and hereby is granted, effective forthwith.

For the Commission, by the Division of Investment Management, under delegated authority.

Jonathan G. Katz
Secretary

---

**INVESTMENT COMPANY ACT OF 1940**
Release No. IC-16297/March 2, 1988

812-6275

ML Convertible Securities, Inc.; Notice of Application

*Action:* Notice of Application for Exemption under the Investment Company Act of 1940 ("the 1940 Act").

*Applicant:* ML Convertible Securities, Inc. ("the Company").

*Relevant 1940 Act Sections:* Exemption requested pursuant to Section 6(c) from the provisions of Section 30(f).

*Summary of Application:* The Company requests an order exempting any affiliated person of Merrill Lynch Asset Management, Inc. ("MLAM") from Section 30(f) of the 1940 Act, other than (1) any person who is directly or indirectly the beneficial owner of more than 10 percent of any class of the Company's shares, (2) any director or officer of the Company, (3) the President and all Executive and Senior Vice Presidents of MLAM, and (4) any other officer of MLAM who manages, or supervises the management of, or who makes recommendations or participates in the determination of which recommendations shall be made, or in connection with his duties obtains information concerning which securities are being purchased or sold for the Company.

*Filing Dates:* The application was filed on January 6, 1986 and amended on August 4, and September 5, 1986.

*Hearing or Notification of Hearing:* If no hearing is ordered, the application will be granted. Any interested person may request a hearing on the application or ask to be notified if a hearing is ordered. Any requests must be received by the SEC by 5:30 p.m., on March 28, 1988. Request a hearing in writing, giving the nature of your interest, the reason for the request, and the issues you contest. Serve the Company with the request, either personally or by mail, and also send it to the Secretary of the SEC, along with proof of service by affidavit, or, for lawyers, by certificate. Request notification of the date of a hearing by writing to the Secretary of the SEC.

*Addresses:* Secretary, SEC, 450 5th Street, N.W., Washington, D.C. 20549. ML Convertible Securities, Inc., P.O. Box 9011, Princeton, New Jersey 08543-9011.

*For Further Information Contact:* Fran Pollack-Matz, Staff Attorney (202) 272-3024 or Houghton R. Hallock, Special Counsel (202) 272-3030, Division of Investment Management.

*Supplementary Information:* Following is a summary of the application; the complete application is available for a fee from either the SEC's Public Reference Branch in person or the SEC's commercial copier, (800) 231-3282 (in Maryland (301) 258-4300).

*Applicant's Representations:*

1. The Company, registered under the 1940 Act as a closed-end, diversified management investment company, is a "dual-purpose" type of investment company which has issued two classes of securities, both of which are listed for trading on the New York Stock Exchange, Inc. The Company is registered under Section 12 of the Securities Exchange Act of 1934 ("1934 Act") (File No. 1-8950). The Company's by-laws provide that neither MLAM nor any officer, director or employee with managerial responsibilities of MLAM or the Company may own beneficially more of one class of the Company's securities than the other. MLAM, a wholly owned subsidiary of Merrill Lynch & Co., Inc. ("Merrill Lynch"), which serves as investment adviser to the Company, employed 92 officers and assistant officers as of December 6, 1985.

2. Because the Company is registered pursuant to Section 12 of the 1934 Act, any 10% shareholders, directors and officers of the Company are directly subject to the reporting requirements and liabilities of Section 16 of the 1934 Act. According to the Company, the significant effect of Section 30(f) of the 1940 Act, therefore, on the Company is to subject all other affiliated persons of MLAM—i.e., those affiliated persons who are not also 10% stockholders, directors or officers of the Company—to the requirements and liabilities of Section 16 of the 1934 Act.

3. Neither Merrill Lynch nor any Merrill Lynch subsidiary other than MLAM participates in, or is privy to, investment decision making on behalf

NOV 24 '97 12:47

PAGE.03

**EXHIBIT B**

PAGE    2

5TH ITEM of Level 1 printed in FULL format.
In the Matter of
ALLIED CAPITAL CORPORATION
1625 Eye Street, N.W.
Washington, D.C. 20006
ORDER PURSUANT TO SECTION 6(c) OF THE ACT EXEMPTING CERTAIN
TRANSACTIONS FROM SECTIONS 12(e), 17(a) AND 17(d) OF THE ACT
AND RULE 17d-1 THEREUNDER.
SECURITIES AND EXCHANGE COMMISSION
INVESTMENT COMPANY ACT OF 1940
Release No. 9540
(812-4014)
November 24, 1976

TEXT:
On October 29, 1976, a notice was issued (Investment Company Act Release No. 9502) of the filing of an application on August 13, 1976, and an amendment thereto on September 20, 1976, by Allied Capital Corporation ("Allied Capital") registered as a closed-end, non-diversified investment company under the Investment Company Act of 1940 ("Act"), for an order, pursuant to Section 6(c) of the Act, exempting from Sections 12(e), 17(a) and 17(d) of the Act and Rule 17d-1 thereunder certain transactions involving Allied Capital, and Allied Investment Corporation ("Allied Investment"), and Allied Lending Corporation ("Allied Lending"), both whollyowned subsidiaries of Allied Capital. On November 16, 1976, Allied Capital filed a second amendment to its application which altered the application in a manner not deemed to be material. All interested persons are referred to the application, as amended, on file with the Commission for a statement of the representations contained therein.

Allied Capital was organized in 1953 and commenced business as a "venture capital" company, principally furnishing capital to industry, financing promotional enterprises, purchasing securities of issuers for which no ready market is in existence and engaging in similar activities. Allied Capital is a licensed Small Business Investment Company ("SBIC") under the Small Business Investment Company Act of 1958 ("SBIC Act"). Allied Investment is a District of Columbia corporation newly organized by Allied Capital to conduct Allied Capital's operations as a SBIC. Allied Capital has applied to the Small Business Administration ("SBA") on behalf of Allied Investment for a transfer of Allied Capital's license as a SBIC to Allied Investment. Allied Capital proposes to acquire all of Allied Investment's issued and outstanding stock in exchange for substantially all of Allied Capital's assets and the assumption of all of Allied Capitalhs liabilities. Allied Investment proposes to register as a closed-end, non-diversified investment company under the Act. Allied Lending is a District of Columbia corporation newly organized by Allied Capital. Allied Capital has applied to the SBA on behalf of Allied Lending for a license as a small business lending company ("SBLC") under the SBIC Act. Allied Lending proposes to register as a closed-end, non-diversified investment company under the Act and to operate as a SBLC lending funds to small businesses. Allied Capital proposes to fund Allied Lending by acquiring all of the issued and outstanding stock of Allied Lending for an aggregate purchase price of $500,000. Allied Capital has applied for exemptive relief in order to create the holding company structure and to engage in certain affiliated transactions and joint transactions will Allied Investment or Allied Lending (Allied Capital, Allied Investment, and Allied Lending are jointly referred to as the "Allied Group").

The notice gave interested persons an opportunity to request a hearing and stated that an order disposing of the application would be issued on the basis

30

LEXIS NEXIS LEXIS NEXIS

PAGE    3

of the information contained therein unless a hearing should be ordered.  No
request for a hearing has been filed and the Commission has not ordered a
hearing.

The matter having been considered, it is found that the granting of the
requested exemptions, subject to the conditions set forth below, is appropriate
in the public interest and consistent with the protection of investors and the
purposes fairly intended by the policy and provisions of the Act.

Accordingly, IT IS ORDERED, pursuant to Section 6(c) of the Act, that the
requested exemptions from the provisions of Sections 12(e), 17(a) and 17(d) of
the Act and Rule 17d-1 thereunder are hereby granted, effective forthwith,
subject to the following conditions agreed to by Allied Capital:

1.  At all times Allied Capital will own and hold, beneficially and of
record, all of the outstanding capital stock of Allied Investment and Allied
Lending;

2.  Allied Capital will not cause or permit Allied Investment or Allied
Lending to change any of their fundamental investment policies, or take any
other action referred to in Section 13(a) of the Act, unless such action shall
have been authorized by Allied Capital after approval of such action by a vote
of a majority (as defined in the Act) of the outstanding voting securities of
Allied Capital;

3.  Allied Capital will not cause or permit Allied Investment or Allied
Lending to enter into, renew or perform any investment advisory or underwriting
contract or agreement, written or oral, as contemplated by Section 15 of the
Act, unless the terms of such contracts or agreements and any renewal thereof
shall have been approved in compliance with said Section 15; and where any vote
of the stockholders of Allied Investment or Allied Lending would be required by
said Section 15, unless the stockholders of Allied Capital also shall have
approved the same by vote by a majority (as defined in the Act) of the
outstanding voting securities of Allied Capital, or where any action of the
directors of Allied Investment or Allied Lending would be required by said
Section 15, unless the Board of Directors of Allied Capital, including a
majority of those directors who are not parties to any such contract or
agreement or affiliated persons of any such party, also shall have approved the
same;

4.  Subject to Allied Capital, individually, and Allied Capital, Allied
Investment and Allied Lending, on a consolidated basis, having the asset
coverage required by Section 18(a) of the Act immediately after the issuance or
sale of any senior securities, (a) Allied Capital may issue and sell to one or
more banks, or to one or more insurance companies (but not to both a bank or
banks and an insurance company or insurance companies), its unsecured promissory
notes or its other unsecured evidences of indebtedness in consideration of any
loan, extension or renewal thereof, made by private arrangement, provided that
such notes or evidences of indebtedness are not intended to be publicly
distributed, and provided further that such notes or evidences of indebtedness
are not convertible into, exchangeable for, or accompanied by any options to
acquire any equity security, and (b) Allied Investment may borrow from the SBA
on such basis as the SBA from time to time may lend to SBIC's and as may be
permitted to SBIC's under the Act, including Section 18(k) thereof and
applicable rules thereunder, provided that Allied Capital would not guarantee

31

LEXIS NEXIS LEXIS NEXIS

any such borrowings by Allied Investment; and in addition to borrowing from the SBA, Allied Investment and Allied Lending may borrow from Allied Capital, and (c) except as above specifically provided in this paragraph, Allied Capital will not itself, and Allied Capital will not cause or permit Allied Investment or Allied Lending to, issue any senior security or sell any senior security of which Allied Capital, Allied Investment or Allied Lending is the issuer;

5. Allied Capital will cause to be elected as directors of Allied Investment and Allied Lending only persons who are directors of Allied Capital, elected in compliance with Section 16(a) of the Act, and at all times officers of Allied Capital will also be officers of Allied Investment and Allied Lending;

6. Allied Capital will file with the Commission and transmit to its stockholders reports prescribed and required by Section 30 of the Act, including separate financial statements of Allied Investment and Allied Lending.  Allied Capital will also cause Allied Investment and Allied Lending to file with the Commission copies of all reports which Allied Investment and Allied Lending will be required to file with the SBA.  Any independent public accountant who signs a financial statement filed by Allied Capital, Allied Investment or Allied Lending with the Commission shall be selected and approved in compliance with Section 32(a) of the Act by a majority (as defined in the Act) of Allied Capital's outstanding voting securities.

7. Any small business concern which may become an affiliated person of the Allied Group may borrow from, or sell securities issued by it to, the Allied Group, or any member thereof, provided that such transaction meets the requirements for an exemption pursuant to Rule 17a-6 promulgated pursuant to the Act, except to the extent that it fails to meet the requirements of such Rule solely because another member of the Allied Group is also a party to the transactions or has, or within six (6) months prior to the transaction is had, or pursuant to an arrangement will acquire, a direct or indirect financial interest in the small business concern; and

8. The Allied Group, or any member thereof, may participate in any joint enterprise or joint arrangement involving other participants, provided that such transaction meets the requirements for an exemption pursuant to Rule 17d-1 except to the extent it fails to meet the requirements of such Rule solely because Allied Capital is, was, or proposes to be, a participant with Allied Investment or Allied Lending in the joint enterprise or joint arrangement.

IT IS FURTHER ORDERED that the Secretary of the Commission shall send a copy of this order by certified mail to the Associate Administrator for Investment, Investment Division, Small Business Administration, Washington, D.C. 20416.

For the Commission, by the Division of Investment Management, pursuant to delegated authority.

32

LEXIS NEXIS LEXIS NEXIS

Case 2:17-cv-03586-JFB-AYS   Document 47-2   Filed 10/06/17   Page 153 of 1053 PageID #: 727

EXHIBIT C

PAGE    4

19TH ITEM of Level 1 printed in FULL format.
Allied Capital  Corp., et al.; Filing of Application
INVESTMENT COMPANY ACT OF 1940
Release No. 12371
812-4798
April 14, 1982

TEXT:
Notice is hereby given that  Allied Capital  Corporation (" Allied
Capital" ), Allied Investment Corporation ("Allied Investment"), Allied Lending
Corporation ("Allied Lending"), all registered under the Investment Company Act
of 1940 ("Act") as closedend, non-diversified management investment companies;
and Allied Development Corporation ("Allied Development"), a District Columbia
Corporation, 1625 I Street, N.W., Washington, D.C. 20006, which intends to
register under the Act as a closedend, non-diversified management investment
company (collectively referred to herein as the "Funds". "Applicants" or the
"Allied Group"), filed an application on January 5, 1982, and amendments thereto
on February 17, and March 24, 1982, requesting an order of the Commission
pursuant to section 6(c) of the Act exempting Applicants from the provisions of
sections 8(b), 12(e), 17(a), 17(d), 18(a), 18(c), 30(a) and 30(d) of the Act and
Rules 8b-16, 17d-1. 30a-1 and 30d-1 thereunder to the extent requested: and
requesting an order of the Commission amending in the manner described below an
earlier order of the Commission dated November 24, 1978 (Investment Company Act
Release No. 9540). All interested persons are referred to the application on
file with the Commission for a statement of the representations contained
therein, which are summarized below.

Allied Capital  was organized in 1958 and commenced business as a "venture
capital" company. Until 1977 Allied Capital  was licensed by the Small
Business Administration ("SBA") as a small business investment company ("SBIC")
under the Small Business Investment Act of 1958. According to the application.
Allied Capital  became a holding company having in addition to an existing
wholly-owned subsidiary, Allied Advisory, Inc. ("Allied Advisory"), two newly
formed wholly-owned subsidiaries, Allied Investment and Allied Lending, pursuant
to a reorganization which was effective April 1, 1977. Pursuant to this
reorganization,  Allied Capital  transferred its SBIC license to Allied
Investment.

Allied Investment, a District of Columbia corporation, is licensed by the SBA
as a SBIC and is principally engaged in furnishing financial assistance to small
business concerns through loans, guarantees and equity investments. Allied
Lending, a District of Columbia corporation, is recognized by the SBA as a
participating lender under the small business lending company program and is
primarily engaged in making loans to qualified small businesses, which loans are
guaranteed as to principal and interest up to 90% by the SBA. Allied Advisory,
a District of Columbia corporation, is enagaged in the business of providing
loan packaging services, financial analysis and limited corporate consulting.

Allied Development is a District of Columbia corporation newly organized by
Allied Capital.  According to the application, Allied Development, which has
not commenced business, proposes to register as a non-diversifed, closedend,
investment company and to participate in government guaranteed lending programs
other than the SBA program such as the Business and Industrial Loan Program
administered by the Farmers Home Administration ("FHMA") of the Department of
Agriculture or the guaranteed loan program of the Economic Development
Administration ("EDA") of the Department of Commerce. Applicants state that the
FMHA and EDA may guarantee up to 90% of loans made under their programs, but

33

LEXIS NEXIS LEXIS NEXIS

Case 2:17-cv-03586-JFB-AYS   Document 47-2   Filed 10/06/17   Page 154 of 1053 PageID #: 728

that the continuation of such programs is dependent on their obtaining adequate
fundings. Applicants further state that Allied Development has been approved as
an eligible lender by both the FMHA and EDA.  Allied Capital proposes to fund
Allied Development by acquiring its common stock for an aggregate purchase price
of $100,000 and a direct loan of $100,000.

Applicants state that in connection with the 1977 reorganization of  Allied
Capital,  Allied Capital received an order of the Commission pursuant to
section 5(c) of the Act granting exemptions from sections 12(e), 17(a) and 17(d)
of the Act and Rule 17d-1 thereunder to the extent necessary to permit it to
acquire all of the issued and outstanding common stock of Allied Investment and
Allied Lending and to permit Allied Capital  and its wholly-owned subsidiaries
to engage in certain affiliated and joint transactions subject to conditions,
which order was dated November 24, 1976 (Investment Company Act Release No.
9540) ("1976 Order").  The present application seeks comparable exemptive relief
from the Act with respect to Allied Development.  In addition, the present
application seeks exemptive relief from the provisions of section 12(e) of the
Act to permit  Allied Capital  to make further acquisitions of securities
(including debt securities) of Allied Investment, Allied Landing and Allied
Development.  The present application also seeks exemptive relief from the
provisions of sections 18(a) and 18(c) of the Act to permit  Allied Capital  and
each of its wholly-owned investment company subsidiaries to borrow from banks,
insurance companies and other financial institutions (including in the case of
such subsidiaries from  Allied Capital)  on a secured or unsecured basis and to
permit  Allied Capital  to guarantee such borrowings.  Finally, the present
application seeks exemptive relief from the provisons of sections 8(c), 30(a)
and 30(d) of the Act and Rules 8b-16, 30a-1 and 30d-1 thereunder to permit
Allied Capital  to file with the Commission on behalf of itself and its three
wholly-owned investment company subsidiaries annual reports, and amendments to
its registration statement and to transmit to its shareholders reports
containing financial statements of  Allied Capital  and its investment company
subsidiaries on a consolidated basis only.

Section 12(d)(1)(A) of the Act, as here pertinent, prohibits a registered
investment company from acquiring more than three percent of the total
outstanding voting stock of any other investment company, and section
12(d)(1)(C) of the Act prohibits an investment company from acquiring more than
10 percent of the total outstanding voting stock of a registered closed-end
investment company.  Section 12(e) of the Act excludes from the provisions of
section 12(d)(1) any purchase or acquisition by a registered investment company
of any security issued by any one corporation engaged or proposing to engage in
the business of underwriting, furnishing capital to industry, financing
promotional enterprises, purchasing securities of issuers for which no ready
market is in existence, and reorganizing companies or similar activities
provided, among other things, that the aggregate cost of the securities of such
other corporation purchased by such registered investment company does not
exceed five percent of the value of the total assets of such registered company
at the time of any purchase or acquisition of such securities and that the
securities issued by such corporation (other than short-term paper and
securities representing bank loans) consist solely of one class of common stock.
Because the proposed investment by  Allied Capital  in Allied Development will
consist of the issuance of common stock and the creation of a debt security, the
transaction will involve the issuance by Allied Development of securities other
than one class of common stock.  In addition, Applicants seek exemptive relief
from the provisions of section 12(e) to permit future acquisitions by  Allied

34

LEXIS NEXIS LEXIS NEXIS

Case 2:17-cv-03586-JFB-AYS   Document 47-2   Filed 10/06/17   Page 155 of 1053 PageID #:
729

Capital  of the common stock of Allied Investment, Allied Lending and Allied
Development which purchases might cause  Allied Capital's  investment therein,
taken at cost, to exceed five percent of the value of its total assets at the
time of any such purchase.  Furthermore, Applicants seek exemptive relief from
the provisions of section 12(e) to permit  Allied Capital,  Banks, insurance
companies and other financial institutions to acquire notes or other evidences
of indebtedness issued by Allied Investment, Allied Lending or Allied
Development.

Section 17(a) of the Act, as here pertinent, provides that it shall be
unlawful for any affiliated person of a registered investment company, or any
affiliated person of such person, (1) to sell any security or other property to
such registered investment company or to any company controlled by such
registered investment company except securities of which the buyer is the issuer
and securities of which the seller is the issuer and which are part of a general
offering to holders of a class of its securities, (2) to purchase from a
registered investment company, any security or other property (except securities
of which the seller is the issuer), or (3) to borrow money or other property
from such registered company, with certain exceptions.  Section 2(a)(3) of the
Act, in pertinent part, defines affiliated person to include: (1) Any person
directly or indirectly owning, controlling, or holding with power to vote 5 per
centum or more of the outstanding voting securities of such other person; (ii)
any person 5 per centum or more of whose outstanding voting securities are
directly or indirectly owned, controlled, or held with power to vote, by such
other person; and (iii) any person directly or indirectly controlling,
controlled by, or under common control with, such other person.   Allied
Capital  is or will be an affiliated person of Allied Lending.  Allied
Investment, Allied Development by reason of its ownership (or proposed
ownership) of all the common stock of Allied Lending.  Allied Investment, and
Allied Development and its control of those companies.  In addition,  Allied
Capital,  Allied Lending, and Allied Development, and Allied Investment are
affiliated persons of one another.  Accordingly, any exchange of securities or
property or any borrowings between  Allied Capital  and Allied Development would
constitute an affiliated transaction prohibited by section 17(a).  Therefore,
Applicants request exemptive relief to permit transfers of property and
securities or the borrowing of money or other property between  Allied Capital
and Allied Development.  Applicants further seek to amend the 1976 Order to
permit, subject to condition (7) as hereinafter stated, any person to which
loans may be made by Allied Development and which may become an affiliated
person of the Applicants, to borrow from, or sell securities issued by it to
Allied Capital,  Allied Investment, Allied Lending or Allied Development.
Applicants state that the modification of the 1976 Order is necessary because
Allied Development's proposed lending activites are not limited to persons that
are "small business concerns".

Section 17(d) of the Act and Rule 17d-1 thereunder, taken together, provide,
among other things, that it shall be unlawful, with certain exceptions, not
applicable here, for an affiliated person of any registered investment company,
or an affiliated person of such a person, acting as principal, to participate in
or effect any transaction in connection with any joint enterprise or arrangement
in which any such registered company or a company controlled by such registered
company is a participant unless an application regarding such transaction has
been granted by the Commission.  Applicants state that the 1976 Order granted an
exemption from the provisions of section 17(d) of the Act and Rule 17d-1
thereunder to the extent necessary to permit  Allied Capital.   Allied

35

LEXIS NEXIS LEXIS NEXIS

Investment and Allied Lending to participate in any joint enterprise or joint arrangement involving other participants.  Applicants seek to extend such relief to include Allied Development.

Applicants state that the before-mentioned exemptive relief is necessary or appropriate in the public interest and consistent with the protection of investors and the purposes of the Act.  Applicants state that in order to protect investors any order of the Commission that may be issued pursuant to this notice of filing of application may be conditioned upon Applicants' compliance with all undertakings as herein stated.  Applicants further state that the exemptive relief requested for Allied Development is necessary because the SBA does not permit either Allied Investment or Allied Lending to make loans which are not part of SBA programs.

Applicants have also requested relief from those provisions of the Act governing capital structure.  Section 18(a) of the Act makes it unlawful for any registered closed-end investment company to issue or to sell any class of senior security of which it is the issuer, unless the company complies with the asset coverage requirements as set forth in that section.  Under the provisions of section 18 applicable to closed-end investment companies, senior securities representing indebtedness must have an asset coverage of 300 percent immediately after their issuance or sale.  Senior securities representing stock must have an asset coverage of 200 percent.  Section 18(c) of the Act, in pertinent part, makes it unlawful for any registered closed-end investment company to issue or sell any senior security representing indebtedness if immediately thereafter such company will have outstanding more than one class of senior security representing indebtedness."

According to the application, the 1976 Order prohibits  Allied Capital, Allied Investment and Allied Lending from issuing any senior securities except that: (i)  Allied Capital  may borrow from either banks or insurance companies, but not both, on the basis of unsecured promissory notes or other unsecured evidences of indebtedness; (ii) Allied Investment may borrow only from the SBA, which borrowing may not be guaranteed by  Allied Capital, and from  Allied Capital; and (iii) Allied Lending may borrow only from  Allied Capital.  Applicants state that the 1976 Order also requires that  Allied Capital individually, and  Allied Capital, Allied Investment and Allied Lending on a consolidated basis, meet the 300 percent asset coverage requirement of Section 18(a) immediately after the issuance of any senior securities.

Applicants seek to modify the 1976 Order to permit  Allied Capital,  Allied Investment, Allied Lending and Allied Development to borrow from banks, insurance companies and other financial institutions, including in the case of the wholly-owned investment company subsidiaries of  Allied Capital  from  Allied Capital,  on a secured or unsecured basis and to permit  Allied Capital to guarantee the borrowings of such subsidiaries.  Applicants represent that all borrowings by  Allied Capital,  Allied Lending and Allied Development except borrowings by Allied Capital, Allied Investment and Allied Development from  Allied Capital,  will be subject to the asset coverage requirements of section 18(a) of the Act as applied on an individual basis to each company and on a consolidated basis to Allied Captial and its subsidiaries.  In addition, any guarantee by  Allied Capital  of borrowings by its subsidiaries shall not be deemed a senior security and not subject to the asset coverage requirements of section 18(a) provided that 90 percent of  Allied Capital's  assets are represented by its investments in Allied Lending, Allied Investments and

36

LEXIS NEXIS LEXIS NEXIS

Allied Development or in securities similar to those in which such subsidiaries
invest. Furthermore, Applicants state that any borrowings by Allied Investment
are not subject to the section 18(a) asset coverage requirement by reason of the
section 18(k) exclusion for SBICs. However, Applicants represent that in
applying the section 18(a) asset coverage test on a consolidated basis an amount
of assets equal to any such borrowing by Allied Investment shall be excluded.
In addition, Applicants request an exemption from the provisions of section
18(c) of the Act to permit Allied Capital and its investment company
subsidiaries to have more than one class of senior security representing
indebtedness outstanding.

In support of their exemptive request, Applicants state that requiring
Allied Capital to borrow and then reloan such funds to its subsidiaries
involves considerable duplication of effort. Applicants further state that
restricting Allied Capital to borrow only from banks or insurance companies,
but not both, and only on an unsecured basis effectively limits the sources of
credit available to the Allied Group and hinders it from seeking or obtaining
credit on competitive terms. Applicants state that permitting direct borrowings
by Allied Lending, Allied Investment and Allied Development will be consistent
with the purposes of and protections of the Act since Allied Capital, Allied
Lending, and Allied Development individually, and Allied Capital and its
subsidiaries on a consolidated basis, as adjusted for the borrowings of Allied
Investment, will still have to meet the 300 percent asset coverage requirement
of section 18(a) subject to the above noted exclusions. Applicants state that
by excluding an amount of assets equal to the borrowings of Allied Investment
for purposes of calculating the asset coverage required by section 18(a),
investors are protected from the adverse effects of leveraging. Finally,
Applicants contend that the exclusion from the asset coverage requirements of
section 18(a) of borrowings from Allied Capital by its investment company
subsidiaries and Allied Capital's guarantee of its subsidiaries' borrowings
does not impair the protections of section 18 since neither type of senior
security (as defined in the Act) increases the aggregate indebtedness incurred
by the Allied Group.

Applicants have also requested relief from certain provisions of the Act
regarding filings with the Commission and transmittal of reports to
shareholders. Section 8(b) of the Act, in pertinent part, requires every
registered investment company to file with the Commission a registration
statement containing such information and documents as the Commission shall
prescribe. Rule 8b-16 thereunder, in part, requires every registered management
investment company filing annual reports on Form N-1R to amend its registration
statement filed pursuant to section 8(b) not more than 120 days after the close
of each fiscal year. Section 30(a) of the Act, requires a registered investment
company to file annually with the Commission such information, documents and
reports as is required to investment companies subject to section 13(a) of the
Securities Exchange Act of 1934. Rule 30a-1 thereunder, requires every
registered investment company to file an annual report with the Commission not
more than 120 days after the close of each fiscal year. Section 30(d) of the
Act, in part, requires every registered investment company to transmit to its
stockholders, at least semiannually, reports containing such information and
financial statements or their equivalent as the Commission may prescribe. Rule
30d-1 thereunder, in part, requires every registered management investment
company to transmit to its stockholders, at least semiannually, a report
containing the financial statements required to be included in such reports by
the Commission's registration statement from under the Act and prescribes the

37

LEXIS NEXIS LEXIS NEXIS

tise within which such report must be transmitted.

Applicants request an exemption from section 8(b) of the Act and Rule 8b-16 thereunder to the extent necessary to permit Allied Capital to file on behalf of itself and Allied Lending and Allied Development amendments to its registration statement filed under the Act containing information with respect to and financial statements of Allied Capital and its subsidiaries on a consolidated basis only. In addition, Applicants request an exemption from the provisions of section 30(a) of the Act and Rule 30a-1 thereunder to the extent necessary to permit Allied Capital to file on behalf of itself and Allied Investment, Allied Lending and Allied Development annual reports on form N-1R, or appropriate successor form, containing information with respect to Allied Capital and its subsidiaries on a consolidated basis only and a copy of the financial report of Allied Investment filed with the SBA on SBA Form 463. Applicants request that such consolidated forms and amendments shall be in lieu of the separate filing obligations of Allied Investments shall be in lieu of the separate filing obligations of Allied Investment, Allied Lending and Allied Development pursuant to section 30(a) of the Act and Rules 8b-16 and 30a-1 thereunder. Applicants also request an exemption from section 30(c) of the act and Rule 30c-1 thereunder to the extent necessary to permit Allied Capital to transmit to its shareholders semiannually reports containing financial information and statements prescribed on a consolidated basis for Allied Capital and its subsidiaries. Applicants request that such consolidated report be in lieu of the separate reporting obligations of Allied Development, Allied Investment and Allied Lending.

Applicants agree that separate financial statements will not be required in any amendment filed with the Commission pursuant to Rule 8b-16 under the Act and in any semiannual report to shareholders so long as the amount of Allied Capital's total assets on a consolidated basis invested in assets other than securities of its three investment company subsidiaries do not equal or exceed 10 percent. Applicants further state that in the event 10 percent or more of Allied Capital's total assets on a consolidated basis should be invested in securities other than those of its three investment company subsidiaries, additional financial statements will be required; namely, combined financial statements of Allied Capital's three investment company subsidiaries and separate financial statements of any other subsidiary in which Allied Capital's investment equals or exceeds 10 percent of its total assets on a consolidated basis.

Applicants state that separate filings for each is burdensome and there is a question as to whether multiple filings provide a convenient source of information to investors. Similarly, Applicants contend that transmitting semiannual reports containing consolidated financial statements will not lessen investors' understanding of the financial position or operations of the Allied Group. In this regard, Applicants state that since Allied Capital and its subsidiaries operate essentially as a single economic unit, consolidated financial statements present the most meaningful financial information for financial reporting purposes.

Section 6(c) of the Act provides, in part, that the Commission upon application, may conditionally or unconditionally exempt any person, security, or transaction, or any class or classes of persons, securities, or transactions, from any provision or provisions of the Act or of any rule or regulation thereunder, if and to the extent that such exemption is necessary or

38

LEXIS NEXIS LEXIS NEXIS

appropriate in the public interest and consistent with the protection of investors and the purposes fairly intended by the policy and provisions of the Act.

Applicants have agreed that any order granted by the Commission on their application may be subject to the following conditions:

1. At all times Allied Capital will own and hold, beneficially and of record, all of the outstanding capital stock of Allied Investment, Allied Lending and Allied Development;

2. Allied Capital will not cause or permit Allied Investment, Allied Lending or Allied Development to change any of their fundamental investment policies, or take any other action referred to in section 13(a) of the Act, unless such action shall have been authorized by Allied Capital after approval of such action by a vote of a majority (as defined in the Act) of the outstanding voting securities of Allied Capital;

3. Allied Capital will not cause or permit Allied Investment, Allied Lending or Allied Development to enter into, renew or perform any investment advisory or underwriting contract or agreement, written or oral, as contemplated by section 15 of the act, unless the terms of such contracts or agreements and any renewal thereof shall have been approved in compliance with said section 15; and where any vote of the stockholders of Allied Investment, Allied Lending or Allied Development would be required by said section 15 unless the stockholders of Allied Capital also shall have approved the same by vote by a majority (as defined in the Act) of the outstanding voting securities of Allied Capital, or where any action of the directors of Allied Investment, Allied Lending or Allied Development would be required he said section 15, unless the Board of Directors of Allied Capital, including a majority of those directors who are not parties to any such contract or agreement or interested persons of any such party, also shall have approved the same;

4. Allied Capital will not itself, and Allied Capital will not cause or permit Allied Investment, Allied Lending or Allied Development, to issue any security or sell any senior security of which Allied Capital. Allied Investment. Allied Lending or Allied Development is the issuer except as hereinafter set forth:

(a) Allied Capital and each of its investment company subsidiaries may issue and sell to banks, insurance companies and other financial institutions their secured or unsecured promissory notes or other evidences of indebtedness in consideration of any loan, or any extension or renewal thereof made by private arrangement, provided the following conditions are met: (i) such notes or evidences of indebtedness are not intended to be publicly distributed, (ii) such notes or evidences of indebtedness are not convertible into, exchangeable for or accompanied by any options to acquire any equity security, and (iii) Allied Capital and its subsidiaries on a consolidated basis, and Allied Capital. Allied Lending, and Allied Development individually, shall have the asset coverage required by Section 18(a) of the Act immediately after the issuance or sale of any such notes or evidences of indebtedness by any of them, except that, in determining whether Allied Capital and its subsidiaries on a consolidated basis have the asset coverage required by section 18(a), any borrowings by Allied Investment shall not be considered senior securities and, for purposes of the definition of "asset coverage" in section 13(b), shall be

39

LEXIS NEXIS LEXIS NEXIS

treated as indebtedness not represented by senior securities;

(b) In addition, (i) Allied Investment may borrow from the SBA on such basis as the SBA from time to time may lend to SBICs. (ii) Allied Lending. Allied Investment and Allied Development may borrow from Allied Capital, and (iii) Allied Capital may guarantee any borrowings by its subsidiaries, provided that 90% of the total assets of Allied Capital on a consolidated basis are represented by Allied Capital's investments in Allied Lending. Allied Investment and Allied Development or in securities similar to those in which such subsidiaries invest. None of the borrowings or other arrangements permitted by this sub-paragraph (b) shall be deemed senior securities for purposes of this order or section 18 of the Act.

5.   Allied Capital will cause to be elected as directors of Allied Investment. Allied Lending and Allied Development only persons who are directors of Allied Capital, elected in compliance with section 16(a) of the Act, and at all times officers of Allied Capital will also be officers of Allied Investment. Allied Lending and Allied Development;

6.   Allied Capital will file with the Commission pursuant to Rule 8b-16 amendments to its registration statement pursuant to section 8(b) of the Act on behalf of itself and Allied Lending and Allied Development containing information with respect to and financial statements of Allied Capital and its subsidiaries on a consolidated basis only, such amendments to be in lieu of and in satisfaction of the separate filing obligations of Allied Lending and Allied Development pursuant to Rule 8b-16. Allied Capital will file with the Commission pursuant to section 30(a) of the Act annual reports on Form N-1R, or appropriate successor form, on behalf of itself and Allied Investment. Allied Lending and Allied Development containing information with respect to Allied Capital and its subsidiaries on a consolidated basis only and a copy of the financial report of Allied Investment filed with the SBA on SBA Form 468, or appropriate successor form, such consolidated annual reports to be in lieu of and in satisfaction of the separate filing obligations of Allied Investment. Allied Lending and Allied Development pursuant to section 30(a). Allied Capital will transmit to its stockholders semi-annually pursuant to section 30(d) of the Act reports containing the financial information and statements prescribed and required by such section for Allied Capital and its subsidiaries on a consolidated basis only, which reports shall be in lieu of and in satisfaction of the separate reporting obligations of Allied Investment. Allied Lending and Allied Development pursuant to section 30(d); provided, however, that if 10 percent or more of Allied Capital's total assets on a consolidated basis are invested in assets other than securities issued by Allied Lending. Allied Investment, or Allied Development or securities similar to those in which such subsidiaries invest. than, in addition to the consolidated financial statements of Allied Capital and its subsidiaries, there shall be included in such reports combined financial statements of Allied Lending. Allied Investment, and Allied Development and separate financial statements of any subsidiary other than the aforementioned subsidiaries if Allied Capital's investment in such subsidiary amounts to 10 percent or more of Allied Capital's total assets on a consolidated basis.  Allied Capital will also cause Allied Investment and Allied Lending to file with the Commission copies of all reports which they are required to file with the SBA. Any independent public accountant who signs a financial statement filed by Allied Capital. Allied Investment. Allied Lending or Allied Development with the Commission shall be selected and approved in compliance with section 32(a) of the Act by

40

LEXIS NEXIS LEXIS NEXIS

holders of a majority (as defined in the Act) of Allied Capital's outstanding voting securities;

7.  Any small business concern or other concern to which loans may be made Allied Capital.  Allied Investment.  Allied Lending or Allied Development which concern may become an affiliated person of the Allied Group may borrow from, or sell securities issued by it to, Allied Capital.  Allied Investment. Allied Lending or Allied Development, provided that such transaction meets the requirements for an exemption pursuant to Rule 17a-6 promulgated pursuant to the Act, except to the extent that it fails to meet the requirements of such Rule solely because another member of the Allied Group is also a party to the transaction or has, or within six months prior to the transaction has, or pursuant to an arrangement will acquire, a direct of indirect financial interest in the small business or other concern;

8.  The Allied Group, or any member thereof, may participate in any joint enterprise or joint arrangement involving other participants, provided that such transaction meets the requirements for an exemption pursuant to Rule 17d-1 except to the extent if fails to meet the requirements of such Rule solely because other members of the Allied Group are, or propose to be, participants in the joint enterprise or joint arrangement.

Notice is further given that any interested person may, not later than May 10, at 5:30 p.m. submit to the Commission in writing a request for a hearing on the application accompanied by a statement as to the nature of his interest, the reason for such request, and the issues, if any, of fact or law proposed to be controverted, or he may request that he be notified if the Commission shall order a hearing thereon. Any such communication should be addressed; Secretary, Securities and Exchange Commission.  Washington, D.C. 20549.  A copy of such request shall be served personally or by mail upon Applicants at the address stated above.  Proof of such service (by affidavit or, in the case of an attorney-at-law, by certificate) shall be filed contemporaneously with the request.  As provided by Rule 0-5 of the rules and regulations promulgated under the Act, an order disposing of the application will be issued as of course following said date unless the Commission thereafter orders a hearing upon request or upon the Commission's own motion. Persons who request a hearing, or advice as to whether a hearing is ordered, will receive any notices and orders issued in this matter, including the date of the hearing (if ordered) and any postponements thereof.

For the Commission, by the Division of Investment Management, pursuant to delegated authority.

41

LEXIS NEXIS LEXIS NEXIS

action" letter to GIT Realty and Mortgage Investors, available January 7, 1976.

In conclusion, based upon the foregoing, we request the Staff issue a letter to the Company to the effect that it will

not recommend that the Commission take any enforcement action under the Act against the Company until at least December 31, 1980, by reason of the fact that the Company will not be registered under the Act.

[¶ 79,869] **Franklin Corporation (The).**

Securities and Exchange Commission. Division of Investment Management. April 30, 1981. (Available June 1, 1981.) On SEC Significant List of June 13, 1981. Correspondence in full text.

Investment Companies—Acquisitions—Small Business Investment Companies.—An investment company could become the sole common shareholder of a small business investment company even though the acquired company would also issue preferred stock to the Small Business Administration. Although an investment company is generally prohibited from owning more than 3% of another investment company's stock, there is an exception for SBICs whose stock consists solely of common stock issued only to investment companies. However, since issuance of preferred stock to the SBA was needed to take advantage of SBA funding and would not decrease investor protection, the issuance did not cause the exception to become unavailable.

See ¶ 44,142 and 46,192. "Investment Companies—Affiliates; Functions; Directors" division. Volume 4.

[*SEC Staff Reply*]

Section 12(d)(1)(A) of the Investment Company Act of 1940 ("the Act") generally prohibits a registered investment company from purchasing more than 3 percent of the total outstanding stock of another investment company. The purpose of this restriction is to prevent the pyramiding of costs and the control of investment companies.[1] Section 12(e) of the Act, however, states that no provision of the Act shall prevent any registered investment company from acquiring any security issued by any one company engaged or proposing to engage in the business of underwriting, furnishing new capital to industry, financing productional enterprises, purchasing activities of issuers for which no ready market is in existence, and reorganizing companies or similar activities provided that 1) the securities of the acquired company (other than short-term paper and bank loans) consist solely of one class of common stock originally issued and sold for investment to registered investment companies only, 2) that the aggregate cost of the securities of the acquired company purchased by the acquiring company does not exceed 5 percent of the value of the total assets of the acquiring company at the time of any purchase or acquisition of

such securities, and 3) the acquired company's aggregate paid-in capital and surplus does not exceed $100,000,000.

Your letter indicates that the acquiring company, The Franklin Corporation ("Franklin"), a registered investment company, and the to be acquired company, Franklin Mesbic Corporation ("Mesbic"), a minority enterprise small business investment company ("MESBIC"), will comply with all of the provisions of section 12(e), except section 12(d)(1) which will not be complied with because Mesbic will issue 3% preferred stock and debentures to the Small Business Administration ("the SBA").

Special treatment under the Act has been accorded to SBA held securities of small business investment companies ("SBICs") and MESBICs. See, e.g., rules 3e-3 [17 CFR 270.3e-3], 3c-2 [17 CFR 270.3c-2], 3c-3 [17 CFR 270.3c-3], 18c-1 [17 CFR 270.18c-1], and 18c-2 [17 CFR 270.18c-2]. See also *Sherbrooke Business Capital Corporation* (avail. November 26, 1979); *Telesciences, Inc.* (avail. September 15, 1978); *Marco's Capital Corporation* (avail. November 9, 1975). This special treatment has been afforded to SBA

1. See H. Rept. No. 96-1341, 96th Cong., 2d Sess. 33, n.8 (1980).

42

Case 2:17-cv-03586-JFB-AYS Document 17-3 Filed 10/06/17 Page 163 of 1053 PageID #: 737

ownership in recognition of the SBA's extensive knowledge of SBICs and MESBICs and of its ability to protect itself with respect to investments in securities of such companies.[2] In addition, SBA ownership of SBIC or MESBIC securities would not decrease investor protection nor allow the evils, such as pyramiding, that the Act was designed to prevent.

It does not appear, therefore, that the SBA's ownership of Mesbic's preferred stock and debentures would defeat the purposes of the Act as indicated by section 12 (e). Instead, such ownership could aid Mesbic in performing the functions specifically contemplated by that section, such as purchasing the securities of companies for which there is no ready market. Accordingly, based upon the facts and representations contained in your letter, we would not recommend that the Commission take any enforcement action under section 12 (d)(1) of the Act against Franklin if it were to own all of the common stock of Mesbic, and if the SBA were to own preferred stock or debt issued by Mesbic, provided that Franklin and Mesbic comply with all of the provisions of section 12(e) of the Act, other than section 12(e)(1), and that there are no security holders of Mesbic other than Franklin and the SBA.

You indicate that Mesbic intends to register under the Act so that it may be treated as a regulated investment company under the Internal Revenue Code. In this connection, we direct your attention to section 3(c)(1) of the Act which excepts from the definition of investment company an issuer having less than 100 beneficial holders of its securities and which is not making nor presently proposing to make a public offering of its securities. Section 3(c)(1) (A) provides that for purposes of determining the number of beneficial owners of an issuer's securities, beneficial ownership by a company shall be deemed to be beneficial ownership by one person, except that, if such company owns 10 per centum or more of the outstanding voting securities of the issuer, the beneficial ownership shall be deemed to be that of the holders of such company's outstanding securities (other than short-term paper) unless, as of the date of the most recent acquisition by such company of securities of that issuer, the value of all securities owned by such

company of all issuers which are or would, but for the exception set forth in this subparagraph, be excluded from the definition of investment company solely by this paragraph, does not exceed 10 percentum of the value of the company's total assets. Such issuer nonetheless is deemed to be an investment company for purposes of section 12(d)(1).

If Mesbic falls within section 3(c)(1), because of section 3(c)(1)(A), it would be excepted from the definition of an investment company. In that case, it could not register under the Act.[3]

[Letter of Inquiry]

I am writing this letter on behalf of The Franklin Corporation ("Franklin") requesting you recommend to the Securities & Exchange Commission ("SEC") that it take no action with the proposed transactions described below.

Franklin is a Small Business Investment Company ("SBIC") duly licensed under the Small Business Investment Act of 1958 and is a closed end company registered under the Investment Company Act of 1940 ("Act"). The common stock of Franklin is traded in the Over-the-Counter market and is quoted on the NASDAQ system.

Franklin has elected to be taxed as a Regulated Investment Company ("RIC") under Sections 851-5 of the Internal Revenue Code pursuant to which 90% of its income is distributed to shareholders. Franklin has caused the incorporation of a company known as Franklin Mesbic Corporation ("Mesbic"). An application has been filed with the SBA on behalf of Mesbic seeking to secure a license as a Minority Enterprise SBIC.

A Minority Enterprise SBIC provides long term funding and management assistance to disadvantaged small businessmen. The SBA defines a disadvantaged small business concern as being "at least 50% owned and managed by individuals from groups that are underrepresented in the free enterprise system". Franklin shall own 100% of the outstanding stock of Mesbic which intends to elect RIC status. To meet the requirements of a RIC, it must register under the Act.

---

[2]  See Investment Company Act Release No. 10944 (November 16, 1979), text at n.5.

[3]  See Stephen Burguner (avail. October 9, 1976); *Paradise & Alberts* (avail. October 27, 1976).

45

Section 12(d)(1)(A) provides among other items, that a registered investment company may not own more than 3% of the stock of another investment company. Section 12(e) provides notwithstanding 12(d), a registered investment company may acquire securities of a corporation engaged in the business, among others, of providing capital to industry and purchasing securities of issuers for which no ready market is in existence, provided requirements of Section 12(e)(1)-(3) are met.

Franklin will not invest more than 5% of its assets in the Mesbic and the Mesbic's paid in capital and surplus does not exceed $190,000,000. Accordingly, the requirements of 12(e)(2) and (3) are easily met.

Section 12(e)(1) reads as follows:

(1) that the securities issued by such corporation (other than short term paper and securities representing bank loans) shall consist solely of one class of common stock and shall have been originally issued or sold for investment to registered investment companies only

Initially Franklin will meet the requirements of this section as there shall be one class of common stock and Franklin shall be the sole shareholder. However, to accomplish the business purposes of the Mesbic and to take advantage of the SBA funding available to it, Mesbic intends to issue 3% preferred stock and debentures to the SBA. The issuance of such securities are not covered by Section 12(e)(1), although long term SBA funds can be equated with bank loans.

The Commission has in the past recognized the special characteristics of securities issued to the SBA by SBIC's. Rule 15c-2 of the Act specifically exempts such securities from the asset coverage requirements of Section 18 of the Act. While asset coverage is not at issue herein, in my opinion the intention of the 12(e)(1) exemption would be carried out by including in the exemption the issuance of securities to the SBA.

Franklin has formed Mesbic to cater to the financing needs of minority owned small business concerns because in its present format, Franklin cannot effectively meet the financing needs of these minority groups. By establishing Mesbic as a subsidiary, Franklin will be able to avail itself of the reduced costs of borrowing provided by the SBA for investment in minority concerns.

In reading Section 12 of the Act and comments thereto, it is obvious that the section did not seek to discourage investment in minority owned business. The purpose of Section 12 was to prohibit investment companies to acquire a concentration of control through pyramiding and to provide that there would not be a duplication of management fees or create undue complex financing structures.

The present situation does not come within such purview. The relief we seek is not contrary to the public interest or the protection of public investors. We can affirmatively state that the assistance Mesbic will render to the minority owned small business concerns is in furtherance of the public interest. In the matter of *American Research & Development Corp.*, (1946) 23 SEC 481, the Commission found:

In our opinion the paramount purpose and policy of Section 12(e), as conceived by the Congress, is to foster the formation of companies engaged in the business of furnishing new capital to industry and financing promotional activities and to encourage registered investment companies, despite the prohibitions contained in Section 12(d)(1), to invest a relatively small portion of their funds in such enterprises.

We would appreciate a prompt response, that provided the conditions of Section 12(e)(2) and (3) are continued to be met, the SEC will take no action if the Mesbic sells preferred stock and debentures to the SBA.

---

[¶ 76,870—76,999 reserved.]

---

¶ 76,869

© 1981, Commerce Clearing House, Inc.

44

EXHIBIT E

portfolio of a Series nor any affiliate thereof will act as broker for any Series in the purchase or sale of any security for its portfolio.

7. Applicant states that the requested relief is appropriate in the public interest and consistent with the protection of investors and the purposes fairly intended by the policy and provisions of the Act.

*Applicant's Condition:*

Applicant agrees that the requested exemptive order may be conditioned upon no company held in the portfolio of a Series nor any affiliate thereof, acting as broker for any Series in the purchase or sale of any security for the Series' portfolio.

For the SEC, by the Division of Investment Management, under delegated authority.

                                 Jonathan G. Katz
                                      Secretary

---

**INVESTMENT COMPANY ACT OF 1940**
Release No. IC-21966/May 21, 1996

**SEE**

**SECURITIES ACT OF 1933**
Release No. 33-7294/May 21, 1996

---

**INVESTMENT COMPANY ACT OF 1940**
Release No. IC-21967/May 21, 1996

**SEE**

**SECURITIES ACT OF 1933**
Release No. 33-7295/May 21, 1996

---

**INVESTMENT COMPANY ACT OF 1940**
Release No. IC-21968; International Series
Release No. IS-982/May 21, 1996

File No. 812-9846

In the Matter of

**THE MEXICO EQUITY AND INCOME FUND, INC.**
200 Liberty Street
New York, New York 10281

**ORDER UNDER SECTION 10(f) OF THE INVESTMENT COMPANY ACT OF 1940**

The Mexico Equity and Income Fund, Inc. (the "Fund") filed an application on November 8, 1995, and an amendment thereto on March 29, 1996, for an order granting exemptive relief from the provisions of section 10(f) of the Investment

Company of 1940. The order would permit the Fund to purchase securities in underwritten public offerings in Mexico in which an affiliated person of its Mexican investment adviser or U.S. co-adviser participates as a principal underwriter.

On April 24, 1996, a notice of the filing of the application was issued (Investment Company Act Release No. 21913; International Series Release No. 973). The notice gave interested persons an opportunity to request a hearing and stated that an order disposing of the application would be issued unless a hearing was ordered. No request for a hearing has been filed, and the Commission has not ordered a hearing.

The matter has been considered and it is found, on the basis of the information set forth in the application, that the proposed exemption is consistent with the protection of investors. Accordingly,

IT IS ORDERED, under section 10(f), that the proposed exemption is granted, effective forthwith, subject to the conditions stated in the application.

For the Commission, by the Division of Investment Management, under delegated authority.

                                 Jonathan G. Katz
                                      Secretary

---

**INVESTMENT COMPANY ACT OF 1940**
Release No. IC-21969/May 21, 1996

File No. 812-9744

In the Matter of

**MEDALLION FINANCIAL CORP.,** *ET AL.*
Suite 2000
205 East 42nd Street
New York, New York 10017

**ORDER UNDER SECTIONS 6(c), 17(b), 17(d), 54(a)(4), AND 57(c) OF THE INVESTMENT COMPANY ACT OF 1940 AND RULE 17d-1 THEREUNDER**

Medallion Financial Corp. ("Medallion"), Tri-Magna Corporation ("Tri-Magna"), Medallion Funding Corp., Alvin Murstein, and Andrew Murstein filed an application on September 1, 1995, and amendments thereto on January 16, 1996, and May 13, 1996. Applicants requested an order under section 6(c) of the Act for an exemption from sections 12(d), 18(a), and 61(a) of the Act, under sections 17(d) and 57(a)(4) of

the Act and rule 17d-1 thereunder permitting certain joint transactions; under section 17(b) of the Act for an exemption from section 17(a) of the Act, and under section 57(c) of the Act for an exemption from sections 57(a)(1), (2), and (3) of the Act. The order would permit Medallion to acquire all the outstanding stock of Tri-Magna Corporation through a merger and to acquire certain other companies. In addition, the order would permit Medallion to engage in certain joint transactions with its subsidiaries and would permit modified asset coverage requirements for Medallion and its subsidiaries on a consolidated basis.

On April 24, 1996, a notice of the filing of the application was issued (Investment Company Act Release No. 21915). The notice gave interested persons an opportunity to request a hearing and stated that an order disposing of the application would be issued unless a hearing was ordered. No request for a hearing has been filed, and the Commission has not ordered a hearing.

The matter has been considered and it is found, on the basis of the information set forth in the application, that (a) granting the requested exemption is appropriate in the public interest and consistent with the protection of investors and the purposes fairly intended by the policy and provisions of the Act and (b) the terms of the proposed transactions, including the consideration to be paid or received, are fair and reasonable and do not involve overreaching on the part of any person concerned, and that the proposed transactions are consistent with the policies of each investment company and business development company concerned. Accordingly,

IT IS ORDERED, that the application, under section 6(c) for an exemption from sections 12(d), 18(a), and 61(a), under sections 17(d) and 54(a)(4) and rule 17d-1 permitting certain joint transactions, under section 17(b) for an exemption from section 17(a), and under section 57(c) for an exemption from sections 57(a)(1), (2), and (3), is hereby granted effective forthwith.

For the Commission, by the Division of Investment Management, under delegated authority.

Jonathan G. Katz
Secretary

---

**INVESTMENT COMPANY ACT OF 1940**
Release No. IC-21970/May 22, 1996

File No. 812-9834

Order Granting Exemptions: The Travelers Life and Annuity Company, et al.

The Travelers Life and Annuity Company ("Company"), The Travelers Fund ABD II for Variable Annuities ("Fund ABD II"), and Tower Square Securities, Inc. filed an application on October 27, 1995, and an amended and restated application on March 12, 1996. Applicants sought an order of the Commission under Section 6(c) of the Investment Company Act of 1940 ("1940 Act") granting exemptions from Sections 26(a)(2)(C) and 27(c)(2) of the 1940 Act to the extent necessary to permit the payment to the Company of a mortality and expense risk charge from the assets of Fund ABD II and any other separate account established by the Company under certain flexible premium deferred variable annuity contracts issued by the Company.

A notice of the filing of the application was issued on April 22, 1996 (Investment Company Act Release No. 21910). The notice gave interested persons an opportunity to request a hearing and stated that an order disposing of the application would be issued unless a hearing should be ordered. No request for a hearing has been received, and the Commission has not ordered a hearing.

The matter has been considered and it is found that the granting of the exemptions is appropriate in the public interest and consistent with the protection of investors and the purposes fairly intended by the policy and provisions of the 1940 Act.

Accordingly,

IT IS ORDERED, pursuant to Section 6(c) of the 1940 Act, that the requested exemptions from Sections 26(a)(2)(C) and 27(c)(2) be, and hereby are, granted, effective forthwith.

For the Commission, by the Division of Investment Management, pursuant to delegated authority.

Jonathan G. Katz
Secretary

EXHIBIT F-1

## CERTIFIED COPY OF CORPORATE RESOLUTION

I, Margaret Chance, duly elected secretary of Elk Associates Funding Corporation, a New York corporation (the "Company"), do hereby certify that the below resolution is a true copy taken from a written consent of the Board of Directors of the Company dated September 25, 1998; that the below resolution is still in full force and effect and has not been rescinded; and that such resolution is not in conflict with the Certificate of Incorporation or By-Laws of the corporation.

"RESOLVED, that the Board of Directors authorizes and approves the preparation and filing with the Commission of a registration/proxy statement on Form N-14 (or such other appropriate form) with regard to the proposed share exchange between Ameritrans Capital Corporation ("Ameritrans") and the Company and all exhibits thereto (the "Share Exchange"); and be it further

RESOLVED, that the Board of Directors authorizes and approves the preparation and filing of an application for an exemptive order requesting approval of the Share Exchange and related transactions, including consolidated financial reporting of Ameritrans and the Company and certain relief from the asset coverage ratios required under the 1940 Act."

Certified by me this 24th day of November, 1998.

/s/ Margaret Chance
Margaret Chance, Secretary

ELK\476EXAP7.A98
November 25, 1998

EXHIBIT F-2

### CERTIFIED COPY OF CORPORATE RESOLUTION

I, Margaret Chance, duly elected secretary of Ameritrans Capital Corporation, a New York corporation (the "Company"), do hereby certify that the below resolution is a true copy taken from a written consent of the Board of Directors of the Company dated November 24, 1998; that the below resolution is still in full force and effect and has not been rescinded; and that such resolution is not in conflict with the Certificate of Incorporation or By-Laws of the corporation.

RESOLVED, that the Board of Directors authorizes and approves the preparation and filing of an application for an exemptive order requesting approval of the proposed share exchange between Elk Associates Funding Corporation ("Elk") and the Company and all exhibits thereto under the 1940 Act."

Certified by me this 24th day of November, 1998.

/s/ Margaret Chance
Margaret Chance, Secretary

ELK\476EXAP7.A98
November 25, 1998

Exhibit G-1

STATE OF NEW YORK          )
                           )  ss:
COUNTY OF NEW YORK         )

      The undersigned, being duly sworn deposes and says that he executed the attached application for and on behalf of Elk Associates Funding Corporation; that he is the President of said corporation; and that all action necessary to authorized deponent to execute and file such instrument on behalf of such corporation has been taken.  Deponent further says that he is familiar with such instrument and the contents thereof and that the facts therein set forth are true to the best of his knowledge, information and belief.

                                     /s/ Gary C. Granoff
                                      Gary C. Granoff

Subscribed and sworn to
before me this ___ day
of _____, 1998.

_____
Notary Public

ELK\476EXAP7.A98
November 25, 1998

Exhibit G-2

STATE OF NEW YORK     )
                              )  ss:
COUNTY OF NEW YORK  )

       The undersigned, being duly sworn deposes and says that he executed the attached application for and on behalf of Ameritrans Capital Corporation; that he is the President of said corporation; and that all action necessary to authorized deponent to execute and file such instrument on behalf of such corporation has been taken. Deponent further says that he is familiar with such instrument and the contents thereof and that the facts therein set forth are true to the best of his knowledge, information and belief.

                                          /s/ Gary C. Granoff
                                        Gary C. Granoff

Subscribed and sworn to
before me this _____ day
of _____, 1998.


_____
Notary Public

ELK\476EXAP7.A98
November 25, 1998

Exhibit G-3

STATE OF NEW YORK    )
                          )  ss:
COUNTY OF NEW YORK )

      The undersigned, being duly sworn deposes and says that he executed the attached application for and on behalf of Gary C. Granoff. Deponent further says that he is familiar with such instrument and the contents thereof and that the facts therein set forth are true to the best of his knowledge, information and belief.

                                              _/s/ Gary C. Granoff_____
                                              Gary C. Granoff

Subscribed and sworn to
before me this _____ day
of _____, 1998.


_____
Notary Public

EXHIBIT F-1

## CERTIFIED COPY OF CORPORATE RESOLUTION

I, Margaret Chance, duly elected secretary of Elk Associates Funding Corporation, a New York corporation (the "Company"), do hereby certify that the below resolution is a true copy taken from a written consent of the Board of Directors of the Company dated September 25, 1998; that the below resolution is still in full force and effect and has not been rescinded; and that such resolution is not in conflict with the Certificate of Incorporation or By-Laws of the corporation.

"RESOLVED, that the Board of Directors authorizes and approves the preparation and filing with the Commission of a registration/proxy statement on Form N-14 (or such other appropriate form) with regard to the proposed share exchange between Ameritrans Capital Corporation ("Ameritrans") and the Company and all exhibits thereto (the "Share Exchange"); and be it further

RESOLVED, that the Board of Directors authorizes and approves the preparation and filing of an application for an exemptive order requesting approval of the Share Exchange and related transactions, including consolidated financial reporting of Ameritrans and the Company and certain relief from the asset coverage ratios required under the 1940 Act."

Certified by me this 24th day of November, 1998.

Margaret Chance, Secretary

ELK\476EXAP6.A98
November 24, 1998

EXHIBIT F-2

## CERTIFIED COPY OF CORPORATE RESOLUTION

     I, Margaret Chance, duly elected secretary of Ameritrans Capital Corporation, a New York corporation (the "Company"), do hereby certify that the below resolution is a true copy taken from a written consent of the Board of Directors of the Company dated November 24, 1998; that the below resolution is still in full force and effect and has not been rescinded; and that such resolution is not in conflict with the Certificate of Incorporation or By-Laws of the corporation.

     RESOLVED, that the Board of Directors authorizes and approves the preparation and filing of an application for an exemptive order requesting approval of the proposed share exchange between Elk Associates Funding Corporation ("Elk") and the Company and all exhibits thereto under the 1940 Act."

     Certified by me this 24th day of November, 1998.

Margaret Chance, Secretary

ELK\476EXAP6.A98
November 24, 1998

Exhibit G-1

STATE OF NEW YORK    )
                               ) ss:
COUNTY OF NEW YORK )

      The undersigned, being duly sworn deposes and says that he executed the attached application for and on behalf of Elk Associates Funding Corporation; that he is the President of said corporation; and that all action necessary to authorized deponent to execute and file such instrument on behalf of such corporation has been taken.  Deponent further says that he is familiar with such instrument and the contents thereof and that the facts therein set forth are true to the best of his knowledge, information and belief.

                         Gary C. Granoff

Subscribed and sworn to
before me this 24ᵗʰ day
of _Nov_ , 1998.

Notary Public

MARGARET CHANCE
Notary Public, State of New York
No. 41-4630797
Qualified in Queens County
Commission Expires May 31, 19 2000

ELK\476EXAP6.A98
November 24, 1998

Exhibit G-2

STATE OF NEW YORK   )
                         ) ss:
COUNTY OF NEW YORK  )

      The undersigned, being duly sworn deposes and says that he executed the attached application for and on behalf of Ameritrans Capital Corporation; that he is the President of said corporation; and that all action necessary to authorized deponent to execute and file such instrument on behalf of such corporation has been taken.  Deponent further says that he is familiar with such instrument and the contents thereof and that the facts therein set forth are true to the best of his knowledge, information and belief.

Gary C. Granoff

Subscribed and sworn to
before me this 24ᵗʰ day
of _November_, 1998.

Notary Public

MARGARET CHANCE
Notary Public, State of New York
No. 41-4630797
Qualified in Queens County
Commission Expires May 31, 19__ 2000

ELK\476EXAP6.A98
November 24, 1998

Exhibit G-3

STATE OF NEW YORK    )
                            ) ss:

COUNTY OF NEW YORK )

       The undersigned, being duly sworn deposes and says that he executed the attached application for and on behalf of Gary C. Granoff.  Deponent further says that he is familiar with such instrument and the contents thereof and that the facts therein set forth are true to the best of his knowledge, information and belief.

_____
Gary C. Granoff

Subscribed and sworn to
before me this 24ᵗʰ day
of _November_, 1998.

_____
Notary Public

MARGARET CHANCE
Notary Public, State of New York
No. 41-4630797
Qualified in Queens County
Commission Expires May 31, 19 2000

ELK\476EXAP6.A98
November 24, 1998

UNITED STATES OF AMERICA
Before the
SECURITIES AND EXCHANGE COMMISSION

Investment Company Act of 1940

Release No.                                              /[date]

|  |  |
|---|---|
| IN THE MATTER OF | ) |
|  | ) |
|  | ) |
| ELK ASSOCIATES FUNDING CORPORATION | ) |
| 747 Third Avenue | ) |
| 4th Floor | ) |
| New York, New York  10017 | ) |
|  | ) |
|  | ) |

NOTICE OF FILING OF APPLICATION PURSUANT TO SECTIONS 6(c), 17(b), AND 57(c) OF THE ACT FOR AN ORDER GRANTING EXEMPTIONS FROM SECTIONS 12(d), 17(a), 17(d), 18(a), 18(c), 57(a), 60(a), AND 61(a) AND PERMITTING UNDER SECTIONS 17(d) AND 57(a)(4) OF THE ACT AND RULE 17d-1 THEREUNDER CERTAIN TRANSACTIONS

NOTICE IS HEREBY GIVEN that Elk Associates Funding Corporation ("Elk"), a Small Business Investment Company ("SBIC"), licensed as such by the Small Business Administration ("SBA"), and a business development company registered under the Investment Company Act of 1940 (the "Act") filed an application on November ___, 1998, pursuant to Sections 6(c), 17(b), and 57(c) of the Act for an Order granting exemptions from sections 12(d), 17(a), 17(d), 18(a), 18(c), 57(a), 60(a), and 61(a) and permitting under Sections 17(d) and 57(a)(4) of the Act and Rule 17d-1 thereunder certain transactions. All interested persons are referred to the application on file with the Commission  for a statement of the representations contained therein, which are summarized below.

Elk's current principal business has historically been the financing of the purchase of taxicab medallions, taxicabs and related assets in New York City.  More recently, Elk has expanded its business of financing the purchase of taxicab medallions, taxicabs and related assets into the Chicago, Miami, and

Boston markets, as well as increasing its diversified non-taxi loan portfolio.  In addition, Elk entered into an agreement with the SBA in March, 1997, and amended its certificate of incorporation, the effect of which was to convert Elk from an SSBIC to a Small Business Investment Company ("SBIC").  As such, Elk now lends to persons who are not "disadvantaged" so long as Elk's aggregate loans to disadvantaged persons are at least equal to the remaining amount of Elk's unamortized restricted capital account (the "Restricted Capital Account") resulting from the repurchase by Elk of its 3% preferred stock from the SBA.  The Restricted Capital Account was $790,504 at September 30, 1998, representing less than 5% of Elk's loan portfolio of approximately $45,000,000 as of that date.

It is proposed that Ameritrans Capital Corporation, a newly-formed Delaware corporation ("Ameritrans"), become the holder of all of the outstanding shares of common stock of Elk.  Each common shareholder of Elk would receive one share of the common stock of Ameritrans in exchange for each share of the common stock of Elk outstanding immediately prior to the exchange.

Upon the completion of the exchange, Ameritrans would engage in the business of making financings which Elk is not eligible to make by reason of its status as an SBIC.  Ameritrans will be capitalized from $963,000 of the proceeds of a private placement of shares of Elk's common stock completed in January, 1998.  Elk raised total proceeds, before offering expenses, of $3,003,000.  The proceeds to be utilized to capitalize Ameritrans were temporarily used to pay down Elk's borrowings.

It is proposed that Ameritrans, which will elect, prior to the share exchange, to become a business development company ("BDC"), will file periodic reports as required under Securities Exchange Act of 1934, as amended, including quarterly reports on Form 10-Q and annual reports on Form 10-K.

Elk seeks exemptions from certain provisions of the Act as hereinafter set forth.

<u>Sections 12(d)(1) and 60(a)</u>.

(1)     <u>General</u>.  Section 12(e) of the Act provides an exception to the limitations set forth in Section 12(d)(1) of the Act with respect to acquisitions by registered investment companies of securities

of certain corporations, such as those which are furnishing capital to industry, provided the requirements set forth in Sections 12(e)(1) - (3) are met.

Section 12(e)(1) reads as follows:

> That the securities issued by such corporation (other than short-term paper and securities representing bank loans) shall consist solely of one class of common stock and shall have been originally issued or sold for investment to registered investment companies only;

Section 12(e)(2) reads as follows:

> That the aggregate cost of the securities of such corporation purchased by such registered investment company does not exceed 5 per centum of the value of the total assets of such registered company at the time of any purchase or acquisition of such securities; and

Section 12(e)(3) reads as follows:

> That the aggregate paid-in capital and surplus of such corporation does not exceed $100,000,000.

(2)     Application of Sections 12(d)(1) and (60) to Ameritrans and Elk.    If the proposed reorganization were consummated, Ameritrans (a BDC) would own 100% of the voting capital stock of Elk (a BDC).  Section 60 provides that, notwithstanding the provisions of Section 6(f), Section 12 shall apply, with a limited exception, to a BDC to the same extent as if it were a registered investment company.  Rule 60a-1 exempts from the provisions of Sections 12(d)(1)(A) and (C) the acquisition by a BDC of the securities of an investment company licensed under the SBA Act that is operated as a wholly-owned subsidiary of the BDC.  Under Section 12(d)(1), a registered investment company may not own more than 3% of the voting securities of any other registered investment company and may not invest more than 10% of its total assets in the securities of other registered investment companies.

Elk would not appear to satisfy the requirements of Section 12(e)(1) because Elk has issued debentures to the SBA in accordance with the customary operating procedures of SBICs.  However, the Staff in the past has taken the position that the issuance by an SBIC of debentures to the SBA is actually

consistent with, rather than contrary to, the purpose of Section 12(e).  See the Staff's response to The

Franklin Corporation, available June 1, 1981, *CCH Federal Securities Law Reporter* ¶76,869, a copy of

which is attached hereto as *Exhibit D*.  As the Staff stated in its response to The Franklin Corporation:

> It does not appear, therefore, that the SBA's ownership of SBIC's
> liquidating interest and debentures would defeat the purposes of the Act
> as indicated by Section 12(e).  Instead, such ownership could aid [an]
> SBIC in performing the functions specifically contemplated by that
> Section, such as purchasing the securities of companies for which there
> is no ready market.

Further, it appears that the proposed reorganization would not conflict with the purpose of Section

12(e)(2).  Although Elk would account for most of Ameritrans' assets immediately after the proposed

reorganization, the 5% restriction in Section 12(e)(2) appears to relate to concerns with respect to the

pyramiding of control or management fees, neither of which is relevant to the proposed reorganization.

The proposed reorganization appears to be consistent with Section 12(e)(3), as Elk's net assets

were only $13,685,741 on September 30, 1998.

In addition, since Ameritrans will operate Elk as a wholly-owned subsidiary, the acquisition of

the securities of Elk, any loans or advances made to Elk by Ameritrans and any other transfer from

Ameritrans to Elk will be exempt from the prohibitions of Sections 12(d)(1)(A) and (C) by virtue of Rule

60a-1.  The making of loans or advances by Elk to Ameritrans, however, may be deemed to violate

Section 12 if such loans or advances were deemed to be purchases by Elk of Ameritrans' debt securities.

(3)    Exemption Requested.  In general, the purpose of Section (12)(d)(1) is to prohibit

investment companies from pyramiding control or management fees.  As the owner of 100% of the voting

securities of Elk, Ameritrans would not be pyramiding control.  Elk is internally managed, as would be

Ameritrans, so there is no opportunity to, or intention of, pyramiding management fees.  Accordingly,

it does not appear that the proposed reorganization would violate in any respect the purposes for which

Section (12)(d)(1) was enacted.  The Applicants, therefore, request the Commission grant an order

exempting from the provisions of Sections 12(d)(1) and 12(e) of the Act the acquisition by Elk of any securities of Ameritrans representing indebtedness.

Sections 17(a) and 57(a).

(1)    General. Sections 17(a) and 57(a) of the Act provides in pertinent part that it is unlawful for any affiliated person of a registered investment company or any affiliated person of such person:  (1) to sell any security or other property to such registered investment company or to any company controlled by it except securities of which the buyer is the issuer or of which the seller is the issuer and which are part of a general offering to holders of a class of its securities; (2) to purchase from such investment company or from any company controlled by it any security or other property (except securities of which the seller is the issuer) or (3) to borrow money or other property from such investment company or from any company controlled by it, with certain exceptions.  Sections (1), (2) and (3) of Section 57(a) impose substantially the same prohibitions on transactions between BDCs and certain of their affiliates, including any director, officer or employee of a BDC and any entity controlled by a director, officer or employee of a BDC.

(2)    Application of Sections 17(a) and 57(a) to Ameritrans and Its Subsidiary.  Ameritrans and Elk will all be affiliated persons by reason of Ameritrans' ownership of all the voting stock of Elk, and Elk will be affiliated by reason of its common control by Ameritrans.  It is anticipated that Elk will be a wholly-owned subsidiary and, therefore, transactions between it and Ameritrans will be exempt from the provisions of Section 17(a) under Rule 17a-3.  In addition, Applicants submit that additional investments in its subsidiary by Ameritrans in the form of stock purchases, capital contributions or loans would not violate Section 17(a) since the seller will be a subsidiary and the issuer of any securities issued and will be controlled by the purchaser, Ameritrans.

Purchases and sales of portfolio securities between Ameritrans and Elk would also appear to be violations of Section 17(a) with respect to Elk, since such transactions would not involve securities issued

by Ameritrans or Elk. Since Ameritrans, an "upstream affiliated person," would be a participant to such transactions, the exemption provided by Rule 17a-6 would not be available.

Applicants also anticipate that small business or other concerns ("Portfolio Companies," as defined in Part V, Section A(1)(b), below) to which loans may be made by Ameritrans or Elk, which may become affiliated persons of Ameritrans and/or Elk, may borrow from, or sell securities issued by such concerns to, Ameritrans and Elk. Such transactions may constitute affiliated transactions within the prohibitions of Section 17(a), since (i) in the case of a sale of securities by a Portfolio Company, the sale may not be part of a general offering to a class of the issuer's stockholders, or (ii) in the case of a loan, the Portfolio Company may not be controlled by Ameritrans or Elk. In addition, such transactions may violate Section 57(a) since Rule 57b-1 only exempts transactions with affiliates of downstream affiliates of a BDC that are affiliated persons within the meaning of Section 2(a)(3)(C) or (D) of the Act. Accordingly, transactions between Ameritrans and Portfolio Companies of which Elk owns 5% of the outstanding voting securities would not be exempted by Rule 57b-1.

(3)   <u>Exemption Requested</u>. Subject to condition "(6)" set forth in Section V of this Application, Ameritrans and Elk request that the Commission grant an order exempting from the provisions of Sections 17(a) and 57(a) of the Act (i) transactions solely between Ameritrans and Elk with respect to the purchase and sale of securities or other property and the borrowing of money or other property, and (ii) transactions in which Portfolio Companies, which have become affiliated persons of Ameritrans and/or Elk borrow from, or sell securities issued by such concerns to, Ameritrans and Elk. <u>Sections 17(d) and 57(a)(4) and Rule 17d-1 thereunder.</u>

(1)   <u>General</u>. Section 17(d) and Rule 17d-1(a) thereunder make it unlawful for an affiliated person of a registered investment company or any affiliated person of such person, acting as principal, to participate in or effect any transaction in connection with any joint enterprise or arrangement in which such investment company, or any company controlled thereby, unless an exemptive order relating to such

transaction has been granted by the Commission. Section 57(a)(4) imposes substantially the same prohibitions on joint transactions involving BDCs and certain of their affiliates, including any director, officer or employee of a BDC. Section 57(i) of the Act provides that the rules and regulations under Sections 17(a) and 17(d) shall apply to transactions subject to Section 57(a) in the absence of rules under Section 57(a) and, therefore, the standards set forth under Rule 17d-1 govern the availability of the order requested herein.

(2)     <u>Application of Sections 17(d) and 57(a)(4) and Rule 17d-1 to Ameritrans and its Subsidiary</u>. In the course of their operations, it may become necessary or desirable for Ameritrans and its subsidiary, Elk, to participate with third persons that have no other affiliation with Ameritrans or its subsidiary in joint transactions such as investments in the same or different securities of the same issuer, either simultaneously or sequentially. Section 17(d) and Rule 17d-1(a) thereunder may prohibit such joint participation by Ameritrans and its subsidiary, Elk.

(3)     <u>Permission Requested</u>. Subject to condition "(7)" set forth in Section V of this Application, Ameritrans and Elk request that the Commission grant an order permitting under Sections 17(d) and 57(a)(4) of the Act and Rule 17d-1 thereunder Ameritrans and Elk to participate in any joint enterprise or joint arrangement involving other participants only to the extent that any such transaction would not be prohibited if Ameritrans and Elk were not separate companies.

<u>Sections 18(a), 18(c) and 61(a)</u>.

(1)     <u>General</u>. Section 18(a) of the Act prohibits a registered closed-end investment company from issuing any class of senior security or selling any such security of which it is the issuer, unless such company complies with the asset coverage requirements set forth in that Section. "Asset coverage" is defined in Section 18(h) to mean the ratio that the value of the total assets of an issuer, less all liabilities not represented by senior securities, bears to the aggregate amount of senior securities of such issuer. Under the provisions of Section 18(a)(1)(A), senior securities of closed-end investment companies

representing indebtedness must have an asset coverage of 300% immediately after their issuance or sale and, under the provisions of Section 18(a)(2)(A), senior securities of such companies representing stock must have an asset coverage of 200%. Section 18(k) of the Act provides an exemption from the foregoing asset coverage requirements for investment companies operating under the 1958 Act. Section 61 applies Section 18 to BDCs, with certain exceptions.

Section 18(c) of the Act prohibits a registered closed-end investment company from issuing or selling more than one class of senior security representing indebtedness. Promissory notes or other evidences of indebtedness "issued in consideration of any loan, extension, or renewal thereof, made by a bank or other person and privately arranged and not intended to be publicly distributed" are not deemed to be a separate class of senior securities for purposes of Section 18(c). In addition, Rule 18c-1 exempts from Section 18(c) SBICs licensed to do business under the 1958 Act that do not have any outstanding publicly-held indebtedness and all senior securities representing indebtedness of which are (i) privately held by the SBA or banks, insurance companies, or other institutional investors, (ii) not intended to by publicly distributed and (iii) not convertible into, exchangeable for, or accompanied by any option to acquire any equity security of such SBICs. Section 61(a)(2) exempts BDCs from the provisions of Section 18(c) subject to substantially the same conditions set forth in Rule 18(c)-1.

(2)     Application of Sections 18(a), 18(c) and 61(a) to Ameritrans and its Subsidiary. Ameritrans will be a BDC and Elk will be a BDC or a closed-end investment company registered under the Act and, accordingly, subject to the provisions of and the exemptions available under, Section 18 on an individual basis (as modified by Section 61(a)). In addition, as a holding company for a controlled, closed-end investment company or BDC subsidiary, Ameritrans may be subject to the asset coverage requirements of Section 61(a) on a consolidated basis because it may be deemed to be an indirect issuer of senior securities with respect to Elk's indebtedness. Accordingly, Ameritrans would then be required to treat as its own all assets held directly by Ameritrans and Elk and also to treat as its own any liabilities

of Ameritrans and Elk (with intercompany receivables and liabilities eliminated), including liabilities of Elk in respect of senior securities as to which Elk is exempt from the provisions of Section 18(a)(1)(A) and (B) by virtue of Section 18(k).

In furtherance of this position, it should be noted that the Commission granted exemptive relief with respect to the asset coverage requirements to Tri-Magna Corporation ("Tri-Magna") and Medallion Funding Corp. ("Medallion Funding") (Release IC-16296, dated March 1, 1988) for "borrowings," whether bank borrowings or institutional borrowings as described in Section 18(g) of the Act, as well as any "Preferred Stock" interest granted to the SBA, provided that such borrowings were those of the SBIC subsidiary only.  In fact, Medallion Funding and Tri-Magna were otherwise subject to the more burdensome asset coverage requirements (300%) imposed by Section 18(a)(1)(A) of the Act because both were closed-end management companies and neither was a BDC.  In addition, Tri-Magna's audited financial statements reflect that its bank loans represented 64% of its total assets for the fiscal year ended December 31, 1994, and 80% of its total assets for the fiscal year ended December 31, 1995.

In the case of Ameritrans and Elk, which would be the wholly-owned SBIC subsidiary of Ameritrans, not only is the corporate structure analogous to that of Tri-Magna and Medallion Funding, but Ameritrans, as a BDC, would otherwise be subject to a lesser asset coverage (200%) requirement than Tri-Magna by virtue of the application of Section 61(a) to BDCs.  The Commission granted similar relief to Medallion Financial Corp. (See Release IC-21969, dated May 21, 1996).

In conclusion, such relief not only has been given in the past, but appears to be consistent with the statutory analysis of certain non-public, institutional financing as indebtedness not representing a senior security.

(3)    Exemption Requested.  Subject to condition "(4)" set forth in Part V hereof, Ameritrans and Elk request that the Commission issue an order granting an exemption from the provisions of Sections 18(a) and 61(a) to treat borrowings by Elk and the SBA's Liquidating Interest in Elk as "liabilities and

ELK\476EXAP7.A98
November 25, 1998

-9-

indebtedness not represented by senior securities" within the meaning of Section 18(h) of the Act in applying the asset coverage requirements of Section 18(a) to Ameritrans (as modified by Section 61(a)) and Elk on a consolidated basis.

## IX.  CONDITIONS OF RELIEF

In connection with the relief requested in Part IV hereof, Applicants request that the following conditions of relief be incorporated in any Order issued by the SEC:

(1)    At all times Ameritrans will own and hold, beneficially and of record, all of the outstanding voting capital stock of Elk;

(2)    Elk will have at least the same fundamental investment policies as those of Ameritrans as set forth in Ameritrans' registration statement; Elk will not engage in any other action referred to in Section 13(a) of the Act, unless such action shall have been authorized by Ameritrans after approval of such action by a vote of a majority (as defined in the Act) of the outstanding voting securities of Ameritrans.

(3)    Ameritrans will not cause or permit Elk to enter into, renew or perform any investment advisory or underwriting contract or agreement, written or oral, as contemplated by Section 15 of the Act, unless the terms of such contracts or agreements and any renewal thereof shall have been approved in compliance with said Section 15; and where any vote of the stockholders of Elk would be required by said Section 15, unless the stockholders of Ameritrans also shall have approved the same vote by a majority (as defined in the Act) of the outstanding voting securities of Ameritrans, or where any action of the directors of Elk would be required by said Section 15, unless the Board of Directors of Ameritrans, including a majority of those directors who are not parties to any such contract or agreement or interested persons of any such party, also shall have approved the same.

(4)    Ameritrans will not itself and Ameritrans will not cause or permit Elk to issue any senior security or sell any senior security of which Ameritrans or Elk is the issuer except as hereinafter set forth:

(a)    Elk may continue to have outstanding the SBA's Liquidating Interest in accordance with applicable SBA regulations pertaining to SBICs;

(b)    Ameritrans and Elk may issue and sell to banks, insurance companies and other financial institutions their secured or unsecured promissory notes or other evidences of indebtedness in consideration of any loan, or any extension or renewal thereof made by private arrangement and Elk may issue debt securities held or guaranteed by the SBA or the United States or any designee of the United States, provided the following conditions are met:

(i)    such notes or evidences of indebtedness are not intended to be publicly distributed;

(ii)    such notes or evidences of indebtedness are not convertible into, exchangeable for or accompanied by any options to acquire any equity security; and

(iii)    immediately after the issuance or sale of any such notes or evidences of indebtedness, Ameritrans and its subsidiary on a consolidated basis and Ameritrans, individually, shall have the asset coverage required by Section 18(a) of the Act as modified by Section 61(a), except that, in determining whether Ameritrans and Elk on a consolidated basis have the asset coverage required by Section 18(a) of the Act (as modified by Section 61(a)), any SBA Liquidating Interest in Elk and any institutional borrowings by Elk shall not be considered senior securities representing indebtedness and, for purposes of the definition of

"asset coverage" in Section 18(h), shall be treated as indebtedness not represented by senior securities.

(5)     Ameritrans, as sole shareholder, will cause to be elected as directors of Elk only persons who are directors of Ameritrans, elected in compliance with Section 16(a) of the Act and subject to the provisions thereof relating to the filling of vacancies.

(6)     Any small business concern or other concern to which loans may be made by Ameritrans or Elk, which concern may become an affiliated person of Ameritrans and its subsidiary as a group, may borrow from, or sell securities issued by it to, Ameritrans or Elk, provided that such transaction meets the requirements for an exemption pursuant to Rule 17a-6 promulgated pursuant to the Act, except to the extent that it fails to meet the requirements of such Rule solely because the other member of the group (Ameritrans or Elk) is also a party to the transaction or has, or within six (6) months prior to the transaction had, or pursuant to an arrangement will acquire, a direct or indirect financial interest in the small business or other concern.  In addition, Ameritrans and Elk may effect purchases and sales of securities and other property or the borrowing of money or other property, provided that Ameritrans and Elk are the sole participants in such transactions.

(7)     Ameritrans and Elk may participate in any joint enterprise or joint arrangement involving other participants, provided that such transaction meets the requirements for an exemption pursuant to Rule 17d-1 except to the extent it fails to meet the requirements of such Rule solely because the other of Ameritrans and Elk is, or proposes to be, a participant in the joint enterprise or joint arrangement.

(8)     Ameritrans and Elk will purchase and sell portfolio securities between themselves only if, in each case, the prior approval of the SBA has been obtained.

NOTICE IS FURTHER GIVEN that any interested person wishing to request a hearing on the application may, not later than _____, 198_, at _____ do so by submitting a written request setting forth the nature of his interest, the reasons for his request and the specific issues, if any, of fact or law

that are disputed, to the Secretary, Securities and Exchange Commission, Washington, DC 20549. A copy of the request should be served personally or by mail upon Elk at the address stated above. Proof of service (by affidavit or, in the case of an attorney-in-law, by certificate) shall be filed with the request. After said date, an order disposing of the application will be issued unless the Commission orders a hearing upon request or upon its own motion.

For the Commission by the Division of Investment Management, pursuant to delegated authority.

ELK\476EXAP7.A98
November 25, 1998                    -13-

# Exhibit C

# STURSBERG & VEITH

405 LEXINGTON AVENUE
SUITE 4949
NEW YORK, NEW YORK 10174-4902

(212) 922-1177
FACSIMILE (212) 922-0995



November 29, 1999

**VIA FEDERAL EXPRESS**

U.S. Securities and Exchange Commission
450 Fifth Street, N.W.
Washington, D.C.  20549

Re: Application No. 812-11420 — Elk Associates Funding Corporation,
Ameritrans Capital Corporation, and Gary C. Granoff (the "Applicants")

Ladies and Gentlemen:

On behalf of the Applicants, enclosed please find five (5) copies at least one (1) of which has been manually executed of Amendment No. 1 to an application for an order under (i) sections 6(c), 12(d)(1)(J) and 57(c) of the Investment Company Act of 1940 (the "Act") for an order granting exemptions from the provisions of sections 12(d)(1)(A) and (C), 18(a), 21(b), 57(a)(1) through (a)(3), and 61(a) of the Act; (ii) under section 57(i) of the Act and rule 17d-1 under the Act to permit certain joint transactions otherwise prohibited by section 57(a)(4) of the Act; and (iii) under section 12(h) of the Securities Exchange Act of 1934 (the "'34 Act") granting an exemption from section 13(a) of the '34 Act.

Please acknowledge receipt of this letter and the enclosures hereto by stamping the enclosed copy of this letter and returning it to the undersigned in the self-addressed, stamped envelope provided.

Sincerely,

Walter Stursberg

Enclosures

cc:  Gary C. Granoff, President

ELK\SECEXAPP.L99

# SECURITIES AND EXCHANGE COMMISSION

Washington, D.C. 20549

---

## AMENDMENT NO. 1

to

APPLICATION UNDER THE INVESTMENT COMPANY ACT OF 1940 (THE "ACT") FOR AN ORDER (i) UNDER SECTIONS 6(c), 12(d)(1)(J), AND 57(c) OF THE ACT GRANTING EXEMPTIONS FROM THE PROVISIONS OF SECTIONS 12(d)(1)(A) AND (C), 18(a), 21(b), 57(a)(1) THROUGH (a)(3), AND 61(a) OF THE ACT; (ii) UNDER SECTION 57(i) OF THE ACT AND RULE 17d-1 UNDER THE ACT TO PERMIT CERTAIN JOINT TRANSACTIONS OTHERWISE PROHIBITED BY SECTION 57(a)(4) OF THE ACT; AND (iii) UNDER SECTION 12(h) OF THE SECURITIES EXCHANGE ACT OF 1934 (THE "1934 ACT") GRANTING AN EXEMPTION FROM SECTION 13(a) OF THE 1934 ACT

---

Elk Associates Funding Corporation
Ameritrans Capital Corporation
Gary C. Granoff

Application No. 812-11420

---

Communications, Notice and Order to:
Gary C. Granoff
President
Elk Associates Funding Corporation
747 Third Avenue
4th Floor
New York, New York  10017
(212) 355-2449

---

Questions and Copies of
Communications,
Notice and Order to:
C. Walter Stursberg, Jr., Esq.
Stursberg & Veith
405 Lexington Avenue
Suite 4949
New York, New York  10174-4902
(212) 922-1177

ELK\476EXAMT.V12

UNITED STATES OF AMERICA
Before The
SECURITIES AND EXCHANGE COMMISSION

| | |
|---|---|
| IN THE MATTER OF<br><br>ELK ASSOCIATES FUNDING<br>CORPORATION<br>AMERITRANS CAPITAL<br>CORPORATION<br>GARY C. GRANOFF<br>747 Third Avenue<br>4th Floor<br>New York, New York  10017<br><br>Investment Company Act of 1940 | APPLICATION UNDER THE<br>INVESTMENT COMPANY ACT OF 1940<br>(THE "ACT") FOR AN ORDER (i)<br>UNDER SECTIONS 6(c), 12(d)(1)(J), AND<br>57(c) OF THE ACT GRANTING<br>EXEMPTIONS FROM THE PROVISIONS<br>OF SECTIONS 12(d)(1)(A) AND (C), 18(a),<br>21(b), 57(a)(1) THROUGH (a)(3), AND<br>61(a) OF THE ACT; (ii) UNDER SECTION<br>57(i) OF THE ACT AND RULE 17d-1<br>UNDER THE ACT TO PERMIT CERTAIN<br>JOINT TRANSACTIONS OTHERWISE<br>PROHIBITED BY SECTION 57(a)(4) OF<br>THE ACT; AND (iii) UNDER SECTION<br>12(h) OF THE SECURITIES EXCHANGE<br>ACT OF 1934 (THE "1934 ACT")<br>GRANTING AN EXEMPTION FROM<br>SECTION 13(a) OF THE 1934 ACT |

Elk Associates Funding Corporation ("Elk" or the "Company"), Ameritrans Capital

Corporation ("Ameritrans"), and Gary C. Granoff (collectively, with Elk and Ameritrans, the

"Applicants") hereby submit this application (the "Application") under the Investment Company

Act of 1940 (the "Act") for an order (i) under sections 6(c), 12(d)(1)(J), and 57(c) of the Act

granting exemptions from the provisions of sections 12(d)(1)(A) and (C), 18(a), 21(b), 57(a)(1)

through (a)(3), and 61(a) of the Act; (ii) under section 57(i) of the Act and rule 17d-1 under the

Act to permit certain joint transactions otherwise prohibited by section 57(a)(4) of the Act; and

(iii) under section 12(h) of the Securities Exchange Act of 1934 (the "1934 Act") granting an

exemption from section 13(a) of the 1934 Act.

Table of Contents

Page

I. STATEMENT OF FACTS AND BACKGROUND . . . . . . . . . . . . . . . . . . . . .   1
   A.   Description of Ameritrans . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1
   B.   Description of Elk . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3
   C.   The Proposed Reorganization . . . . . . . . . . . . . . . . . . . . . . . . . . .   5

II. PROPOSED OPERATIONS AS ONE COMPANY . . . . . . . . . . . . . . . . . .  10
   A.   Future Operations of Ameritrans and Elk . . . . . . . . . . . . . . . . . . .  10
   B.   Sections 12(d) and 60(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12
   C.   Sections 57(a)(1) and (2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15
   D.   Sections 21(b) and 57(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . .  24
   E.   Sections 57(a)(4) and 57(i) and Rule 17d-1 . . . . . . . . . . . . . . . . .  27
   F.   Sections 18(a) and 61(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  30
   G.   Precedents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  33

III. CONSOLIDATED REPORTING. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  34
   A.   General . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  34
   B.   Application of Section 12 of the 1934 Act to Applicants . . . . . . . . . . .  34
   C.   Requested Exemptions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  34
   D.   Legal Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  35
   E.   Precedents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  37

IV. CONDITIONS OF RELIEF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  38

V. CONCLUSIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  40

VI. REQUEST FOR ORDER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  41

VII. PROCEDURAL MATTERS RELATING TO THE APPLICATION . . . . . . . . .  42

SIGNATURES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  44

EXHIBIT INDEX . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  45

   A.   Copies of Corporate Resolutions
       1.   Elk Associates Funding Corporation
       2.   Ameritrans Capital Corporation

   B.   Verifications
       1.   Elk Associates Funding Corporation
       2.   Ameritrans Capital Corporation
       3.   Gary C. Granoff

   C.   Notice of Filing

# I. STATEMENT OF FACTS AND BACKGROUND

A.      Description of Ameritrans.

Ameritrans is a closed-end management investment company organized as a Delaware corporation in 1998 for the purpose of acquiring Elk by means of a share-for-share exchange of common stock with the shareholders of Elk (the "Share Exchange") and, following such acquisition, holding all of the outstanding voting capital stock of Elk. Upon completion of the transactions described in this Application, Ameritrans will engage directly and/or through its principal subsidiary primarily in the business of making loans to small businesses.

Ameritrans has filed a registration statement/proxy statement under the Securities Act of 1933 (the "1933 Act") on Form N-14, covering the shares of its common stock to be issued in the Share Exchange (the "Form N-14"). Ameritrans has also filed a Registration Statement on Form 8-A to register its common stock under section 12 of the 1934 Act and has requested that such registration be declared effective simultaneously with the Form N-14. Further, on July 28, 1999, Ameritrans filed, on Form N-54A, an election under section 54 of the Act to be regulated as a business development company (a "BDC").[1] In addition, Ameritrans had filed a Registration Statement on Form N-2 for an underwritten public offering of approximately 1,100,000 shares of its common stock (the "Public Offering"), to take place after completion of the Share Exchange. Ameritrans expects to obtain approval for quotation of its common stock on the Nasdaq SmallCap Market upon completion of the Share Exchange and on the Nasdaq National Market after the Public Offering, if completed.

---

[1]      Section 2(a)(48) generally defines a BDC to be any closed-end investment company that operates for the purpose of making investments in securities described in Sections 55(a)(1) through (3) of the Act and makes available significant managerial assistance with respect to issuers of such securities. Such issuers are small companies whose securities typically are illiquid.

ELK\476EXAMT.V12

Elk's shares are presently quoted on the Nasdaq SmallCap Market under the symbol "EKFG."

Gary C. Granoff, Ellen M. Walker, Lee A. Forlenza, Steven Etra, Marvin Sabesan, Paul Creditor, Allen Kaplan, John Acierno, John R. Laird and Howard F. Sommer comprise the Board of Directors of Ameritrans. Messrs. Laird and Sommer became directors in January 1999, subject to approval of the SBA of those individuals as directors of Elk. A majority of Ameritrans' directors are persons who are not "interested persons" (as defined in section 2(a)(19) of the Act), as is required by section 56 of the Act as a result of the election by Ameritrans under section 54 to be regulated as a BDC. The executive officers of Ameritrans are Gary C. Granoff, President; Ellen M. Walker, Lee A. Forlenza, and Steven Etra, Vice Presidents; and Margaret Chance, Secretary. Mr. Etra became a Vice President in January 1999. The authorized capital stock of Ameritrans consists of 5,000,000 shares of common stock, $.0001 par value, and 1,000,000 shares of preferred stock, $.01 par value. Gary C. Granoff has purchased one (1) share of common stock from Ameritrans at a price of $10.00, which share comprises all of Ameritrans' outstanding common stock as of the date of this Application. No shares of preferred stock are outstanding. It is anticipated that, immediately upon the effectiveness of the Share Exchange, pursuant to which Elk will become a wholly-owned subsidiary of Ameritrans, Ameritrans will repurchase the one (1) share of common stock from Mr. Granoff for its original purchase price.

ELK\476EXAMT.V12                                                        -2-

B.    Description of Elk.

Elk was organized as a New York corporation on July 9, 1979 for the purpose of operating as a Specialized Small Business Investment Company ("SSBIC"), licensed under the Small Business Investment Act of 1958 (the "1958 Act") and regulated and financed in part by the U.S. Small Business Administration (the "SBA").  The Company was granted a license to operate as an SSBIC by the SBA on July 24, 1980, it is registered as a closed-end management investment company under the Act, and it has elected to be taxed as a "regulated investment company" under the Internal Revenue Code of 1954, as amended (the "Code"), since the fiscal year ended June 30, 1984.  On September 28, 1998, the Company elected to become a BDC.  The Company intends to elect to be taxed as a regulated investment company for the fiscal year ending June 30, 2000.  The Company's business has historically been to provide financing to persons who qualify under SBA regulations as socially or economically disadvantaged persons or to entities that are at least 50% owned by such persons.

The 1958 Act was amended on September 30, 1996, and in connection therewith, the Company entered into an agreement with the SBA in March, 1997 and amended its certificate of incorporation, the effect of which was to convert the Company from an SSBIC to a Small Business Investment Company ("SBIC").  As such, the Company may now lend to persons who are not "disadvantaged" so long as the Company's aggregate loans to disadvantaged persons are at least equal to the remaining amount of the Company's unamortized restricted capital account (the "Restricted Capital Account") resulting from the repurchase by the Company of its 3% preferred stock from the SBA.  It is anticipated that

ELK\476EXAMT.V12                                 -3-

this restriction will expire in December, 1999. The Restricted Capital Account was $256,916 at June 30, 1999, representing less than 1% of the Company's loan portfolio of approximately $51,100,000 as of that date.

As of June 30, 1999, almost 95% of the Company's loans and investments qualify as loans to "disadvantaged" persons. Accordingly, while the Company intends to continue to make loans to disadvantaged persons, particularly in connection with the ownership of taxicabs and related assets especially in the New York City, Boston, Miami, and Chicago markets, where many of the borrowers may qualify as "disadvantaged," the Company intends to diversify its activities by lending and investing in a broader range of businesses, many of which it is anticipated will be owned and operated by persons who are not disadvantaged, as defined under the 1958 Act. In addition, if the Company is acquired by Ameritrans as described herein, Ameritrans would have the ability to acquire or engage directly in businesses other than that of the Company, either directly or through new subsidiaries.

The Company has never experienced any material losses of principal since it began making loans in connection with the ownership of New York City taxicab medallions, taxicabs and related assets in 1980, nor since it began making taxi medallion loans in Boston, Chicago and Miami in or about 1995. Loans made for the purpose of financing the purchase or continued ownership of taxi medallions, taxicabs and related assets represented approximately 79% of the Company's loan portfolio as of June 30, 1999. The balance of the Company's loan portfolio includes, and is intended to continue to include, loans made to finance the acquisition and/or operation of other small businesses.

ELK\476EXAMT.V12                    -4-

The authorized capital stock of the Company consists of 3,000,000 shares of common stock, $.01 par value. As of June 30, 1999, Elk had 1,745,600 shares of common stock outstanding.

By Agreement dated November 10, 1994, the Company repurchased all of its 547,271 shares of 3% Preferred Stock from the SBA for an aggregate price of $1,915,449, representing a discount of 65% from the original aggregate issuance price of $10 per share. The amount of repurchase price discount reflected the below-market 3% dividend rate, the fact that the 3% Preferred Stock was not subject to mandatory redemption at any time, and the satisfaction of the Company's retained earnings deficit. The repurchase discount is being added to paid-in capital on a straight-line basis over 60 months, commencing November 10, 1994. As a condition precedent to the repurchase, the Company granted the SBA a liquidating interest (the "Liquidating Interest") in the Restricted Capital Account, the amount of which was equal to the amount of the net repurchase discount. However, if the Company is liquidated or if a material violation of SBA regulations occurs during the accretion period, the SBA would receive the then remaining amount of its Liquidating Interest in the Restricted Capital Account prior to the shareholders of the Company receiving any amounts on their common stock. The amount of the SBA's Liquidating Interest under this agreement was $256,916 at June 30, 1999.

C.     The Proposed Reorganization.

Elk plans to enter into an Agreement and Plan of Share Exchange (the "Share Exchange Plan") with Ameritrans, pursuant to which each outstanding share of Elk's common stock would vest in Ameritrans, whereupon Elk would become a wholly-owned

subsidiary of Ameritrans, and the holders of all the outstanding shares of common stock of Elk would become the shareholders of Ameritrans and receive one (1) share of Ameritrans for each share of Elk owned (the "Share Exchange").

Gary C. Granoff, president and chairman of the Board of Directors of Elk and Ameritrans, owns one (1) share of common stock of Ameritrans, representing the only outstanding share of Ameritrans. Simultaneously upon the effectiveness of the Share Exchange Plan, Ameritrans will redeem the Ameritrans share from Mr. Granoff for $10.00.

The Board of Directors of Elk originally approved the Share Exchange Plan and voted to prepare and file the Form N-14 and submit the proposal to Elk's shareholders on September 22, 1998. The Share Exchange Plan submitted to Elk's shareholders was approved by the Elk Board of Directors on November 24, 1999. The plan provides that Elk may not proceed with the Share Exchange Plan if holders of more than 3% of Elk outstanding common stock dissent from the Share Exchange Plan and exercise appraisal rights unless Elk's Board of Directors determines that it is in Elk's best interest to proceed with the Share Exchange Plan.

The Share Exchange Plan will require approval by Elk's shareholders at a special meeting of shareholders. Elk intends to mail the Notice of Meeting, together with the Proxy Statement/Prospectus, on or about November 12, 1999, and to hold the special meeting on or about December 16, 1999, provided that prior to the date of the meeting, the Commission issues an exemptive order approving the Share Exchange Plan and certain related transactions. If the exemptive order is not issued by the Commission prior to the date of meeting set forth in the Notice of Meeting, the meeting will be adjourned until the order is

issued. In connection therewith, Ameritrans, Elk and Gary C. Granoff are filing with the Commission this Application for an exemptive order approving the Share Exchange Plan and certain related transactions.

If the Share Exchange is approved by the Commission, then Ameritrans, which has elected to become a BDC and plans to be treated for tax purposes as a regulated investment company, will engage in the lending/investment activities not subject to the restrictions of the 1958 Act. Elk would continue to operate as a BDC and an SBIC, making loans to or investments in small business concerns as permitted by the 1958 Act.

It is anticipated that the initial funds necessary to finance the capitalization of Ameritrans will be provided from the proceeds of a private placement of shares of Elk's common stock completed in January 1998. In that financing, Elk raised total proceeds, before offering expenses, of $3,003,000 and disclosed to its investors that a portion of the proceeds would be utilized to capitalize a new holding company (Ameritrans) upon the approval of the Share Exchange Plan. Elk plans to utilize up to $963,000 of such proceeds, which were temporarily used to pay down Elk's borrowings, to capitalize Ameritrans. In addition to seeking Commission and shareholder approval of the proposed Share Exchange Plan, Elk has obtained SBA approval of the capitalization of Ameritrans by Elk to the extent of $963,000. Proceeds of the Public Offering, if completed, will be used to fund the operations of Elk, Ameritrans, and, possibly, Future Subsidiaries, as defined below.

The officers and directors of Ameritrans are the same individuals who serve in the same capacities as officers and directors of Elk. It is further anticipated that following the consummation of the Share Exchange, such officers and directors would initially receive the

ELK\476EXAMT.V12                                    -7-

same compensation, but that such compensation would be allocated between Elk and Ameritrans, based upon factors determined by the Boards of Directors of Elk and Ameritrans. Such officers and directors may also receive increases in compensation from time to time as determined by the respective Boards of Directors. Ameritrans and/or Elk may also hire additional personnel as such personnel are needed in connection with the expansion and diversification of their respective lending and/or investment activities. In addition, Ameritrans may in the future create additional wholly-owned subsidiaries (the "Future Subsidiaries") that in some cases may be BDCs (the "Future BDC Subsidiaries"). Any Future Subsidiary that is not a BDC will not be an investment company. Elk and the Future Subsidiaries are collectively referred to as the "Subsidiaries." Any Future Subsidiary that relies on the order will do so only in accordance with the terms and conditions of the order.

Elk's management believes that the Share Exchange Plan, if approved, would be in the best interests of Elk's shareholders because it would allow Elk, through Ameritrans, to take advantage of business opportunities not otherwise permitted to an SBIC, and would also provide the following advantages:

(1)     Cost efficiencies would result from Ameritrans and Elk being able to pursue business opportunities as they arise, including opportunities arising in connection with Elk's present business.

(2)     Ameritrans would engage in financings of taxicabs and businesses other than "small business concerns" (as defined under the 1958 Act) on a basis that is expected to provide a substantial additional return to its (Elk's) shareholders. For

example, under SBA regulations, Elk may not make any loans with a term of less than four (4) years. Ameritrans would be permitted to make a loan with a lesser term, thereby participating in the market for shorter term loans, a market segment currently not available to Elk.

(3)    Elk's existing management would be able to provide substantially all of the expertise required by Ameritrans to finance taxicab businesses in a market with which such management is intimately familiar, but a large part of which is currently foreclosed to Elk due to various SBA regulations or policy restrictions relating to "active" or "passive" business enterprises or short term financing.

(4)    Although loans to "small business concerns" by Elk have proven to be low risk, it is reasonable to assume that financings by Ameritrans in the taxi medallion finance industry, both directly and through its subsidiary will be even less risky because it is anticipated that such concerns, in many instances, will either be (i) business concerns with greater creditworthiness, or (ii) businesses that qualify for shorter-term financing, rather than the minimum four-year loan term imposed upon Elk by the 1958 Act and applicable SBA regulations. Any reduction in the average risk of the loan portfolio would be beneficial to Elk and its shareholders.

Management of Elk considered the alternative of creating a new finance entity that would be independent of Elk. However, management determined, rather, to pursue the proposed holding company structure because (i) it enables existing Elk shareholders to participate in the expanded and more diversified business opportunities by preserving their existing equity interests and (ii) it is economical and efficient in that it will be able to utilize

ELK\476EXAMT.V12                              -9-

existing management, which already has the requisite expertise, to extend Elk's business to previously unavailable markets.

## II.  PROPOSED OPERATIONS AS ONE COMPANY

A.    Future Operations of Ameritrans and Elk.

As currently contemplated by Applicants, after the Share Exchange the following types of transactions may arise in the future involving Ameritrans, its subsidiary, Elk, and one or more Future Subsidiaries:

1.    Ameritrans may from time to time make additional investments in Elk either as contributions to capital, purchases of additional stock, or loans.  Such investments might be made for the purpose of increasing Elk's private capital to obtain additional financing under the SBA regulations or increasing the size of its "overline" limit for any one investment (defined by SBA regulations as 20% of private capital, *i.e.*, paid-in capital and surplus) or providing additional funds to Elk. Ameritrans may also make similar additional investments in the Future Subsidiaries. The investment by Ameritrans in a Subsidiary may be in cash or in kind (*i.e.*, by contributing property, such as portfolio securities, to the Subsidiary) in exchange for debt or equity securities of the Subsidiary.

2.    The Subsidiaries may from time to time pay dividends and make other distributions to Ameritrans, including capital gains dividends, subject in Elk's case to the requirements of the 1958 Act and regulations issued thereunder.  Elk intends to continue to qualify as a regulated investment company under the Code, and any Future BDC Subsidiary would also so qualify.  Consequently, Elk and any other

ELK\476EXAMT.V12                          -10-

Future BDC Subsidiary may be required to pay to Ameritrans substantially all of its income in the form of a dividend in order not to incur any Federal income tax. Ameritrans anticipates that, initially, at least one Future Subsidiary would not be a BDC or an investment company, and would accumulate earnings, if any, rather than pay dividends, except to the extent payment of such dividends was necessary to enable Ameritrans, as a regulated investment company, to pay the dividends it is required to pay to its shareholders.

3.    The Subsidiaries might from time to time make loans or other advances to Ameritrans or to each other, subject in Elk's case to the requirements of the 1958 Act and regulations.  Such loans and advances might be made for the purpose of providing funds to Ameritrans with which to pay dividends to maintain its qualification as a regulated investment company or to make investments for its own account or to pay operating expenses.  The Subsidiaries will not purchase or otherwise acquire any of the capital stock of Ameritrans.

4.    One or more of Ameritrans, Elk, and the Future Subsidiaries might from time to time invest in securities of the same issuer, simultaneously or sequentially, in the same or different securities of such issuer, and deal with such investments separately or jointly, subject, in Elk's case to the requirements of the 1958 Act and SBA regulations.  Such transactions may include, among other things, purchase and sale or loan transactions by Ameritrans with "eligible portfolio companies" (as defined in section 2(c)(46) of the Act (the "Portfolio Companies")) controlled by Elk or a Future BDC Subsidiary and purchase and sale or loan

transactions by Elk and the Future BDC Subsidiaries with Portfolio Companies controlled by Ameritrans or another of Elk or the Future BDC Subsidiaries.

5.    One or more of Ameritrans, Elk, and the Future Subsidiaries might from time to time purchase all or a portion of the portfolio investments held by any one or more of the others in order to enhance the liquidity of the selling company or for other reasons, subject in Elk's case to the requirements of the 1958 Act and SBA regulations.

6.    One or more of Ameritrans and the Subsidiaries may enter into a financial arrangement with a third party lender in which one or more of Ameritrans or the Subsidiaries are co-borrowers or guarantors.

7.    In addition to the foregoing, Ameritrans considers it imperative that Elk have the authority to issue and have outstanding the maximum amount of borrowing permitted under the 1958 Act, pursuant to sections 18(k) and 61 of the 1940 Act.

B.    Sections 12(d) and 60(a).

(1)    General.  Section 12(d)(1)(A) of the Act provides, in relevant part, that no registered investment company may purchase or otherwise acquire securities of another investment company if such securities represent more than 3% of the acquired company's outstanding voting stock or more than 5% of the acquiring company's total assets, or if such securities, together with the securities of other investment companies, represent more than 10% of the acquiring company's total assets.  Section 12(d)(1)(C) of the Act provides, in relevant part, that no investment company may acquire securities of a registered closed-end investment company if, immediately after such acquisition, the acquiring company owns

ELK\476EXAMT.V12                              -12-

more than 10% of the outstanding voting stock of the closed-end company. Section 60 of the Act applies the provisions of section 12 to BDCs. Rule 60a-1 under the Act exempts from the provisions of sections 12(d)(1)(A) and (C) the acquisition by a BDC of the securities of an SBIC licensed under the 1958 Act that is operated as a wholly-owned subsidiary of the BDC. Rule 60a-1 does not, however, exempt from the provisions of section 12(d)(1) certain upstream transactions between an SBIC subsidiary and its BDC parent, nor transactions between a BDC and any other subsidiaries.

   (2) <u>Application of Sections 12(d)(1) and 60 to Applicants</u>. If the proposed reorganization is consummated, Ameritrans (a BDC) will own 100% of the voting capital stock of Elk (a BDC and an SBIC). Consequently, rule 60a-1 will exempt from the prohibitions of sections 12(d)(1)(A) and (C) the acquisition of the securities of Elk, any loans or advances made to Elk by Ameritrans, and any other transfer from Ameritrans to Elk. However, section 12(d)(1) will apply to Elk with respect to its purchase or acquisition of debt securities issued by, or its making of loans or advances to, Ameritrans because Elk will be an entity controlled by a BDC. Likewise, section 12(d)(1) would prohibit (i) the acquisition by Ameritrans of the debt or equity securities of, or its making loans to, Future BDC Subsidiaries. It would also prohibit the acquisition of debt securities of Ameritrans by any Future Subsidiary since they would each be a BDC or an entity controlled by a BDC. Loans or advances to Ameritrans by the Future Subsidiaries would be prohibited if such transactions were deemed to be the purchase by the lender of the securities of the borrower. Similarly, the prohibitions could apply to the acquisition of debt securities of, or the making of loans to, Elk or any Future Subsidiary by any other Future Subsidiary or Elk.

(3)     Exemptions Requested.  Applicants, on behalf of themselves and any Future Subsidiaries, request that the Commission grant an order pursuant to section 12(d)(1)(J) exempting from sections 12(d)(1)(A) and (C)(i) the purchase of the debt or equity securities of, or a contribution to capital to, a Future BDC Subsidiary by Ameritrans, (ii) the making of loans or advances by any of Elk or any Future Subsidiary to Ameritrans or to any other of Elk or any Future Subsidiary, and (iii) the acquisition by Elk or any Future Subsidiary of any securities representing indebtedness of Ameritrans or of any securities representing indebtedness issued by any of the other Subsidiaries.  Applicants request the exemption to the extent that the transactions would not be prohibited if Elk or any Future Subsidiary were deemed to be part of Ameritrans and not a separate entity.

(4)     Legal Analysis.  Section 12(d)(1)(J) provides that the Commission may exempt persons or transactions from any provision of section 12(d)(1) if the exemption is consistent with the public interest and the protection of investors.  For the following reasons, granting the requested exemptions from the cited provisions of the Act, subject to the conditions set forth in this Application, will be in the public interest and will enhance the interests of Ameritrans' shareholders, while retaining for them the protection afforded by the other provisions of the Act applicable to Ameritrans and Elk.  Section 12(d)(1) is intended to prevent certain abuses associated with the pyramiding of investment companies.  These abuses include the investing fund exercising undue influence over the underlying funds, the layering of fees, and the creation of overly complex and confusing structures.  Applicants believe that Ameritrans, as the sole shareholder of the Subsidiaries, will have no incentive to act contrary to the interests of any Subsidiary and that the abuses that are the focus of the

ELK\476EXAMT.V12                        -14-

statute will not occur. Ameritrans has represented and agreed that it will exercise its rights as the sole shareholder of Elk and any Future BDC Subsidiaries on matters required by the Act to be approved by shareholders only as directed by Ameritrans' shareholders, so the relationship of Ameritrans' shareholders to the activities to be carried out by Elk and such Future BDC Subsidiaries will be no different than if such activities were carried out by Ameritrans. In addition, because Elk and any Future BDC Subsidiaries will be wholly-owned by Ameritrans, and because each of Ameritrans and Elk and any Future BDC Subsidiaries are or will be internally managed, there will be no opportunity to pyramid control or management fees in contravention of the purposes of section 12(d). Further, because Ameritrans, Elk and any Future Subsidiaries will operate as one company, there will be no unnecessary duplication of administrative costs. Moreover, the parent/subsidiary structure will serve a valid business purpose by facilitating more efficient public investment in the asset class of small business debt securities. Accordingly, it does not appear that the proposed holding company structure would violate in any respect the purposes for which section (12)(d)(1) was enacted, the objectives of section 12(d) will not be compromised, and the public interest will not be harmed.

      C.    <u>Sections 57(a)(1) and (2).</u>

      (1)    <u>General.</u> Sections 57(a)(1)and (2) of the Act provide, in pertinent part, that it is unlawful, with certain exceptions, for BDCs and certain of their affiliates to engage in sales or purchases of securities between themselves. Section 57(b), in turn, provides that Section 57(a) applies to, among other persons, directors, officers, and employees of a BDC and any person directly or indirectly controlled by or under common control with a BDC.

Because Elk and the Future Subsidiaries will be wholly-owned by Ameritrans, each of Ameritrans, Elk, and the Future Subsidiaries will be an affiliated person of the others within the meaning of section 57(b). Likewise, Ameritrans could be deemed to be an affiliate of Elk within the meaning of section 57(b)(1) because Ameritrans is controlled by Gary C. Granoff, who is a director and officer of Elk.

(2)     Application of Sections 57(a)(1) and (2) to Applicants in Connection with the Share Exchange.

(a)     General. The transfer of Ameritrans' shares to the shareholders of Elk may be deemed to be a prohibited sale of securities to Elk within the meaning of section 57(a)(1).

(b)     Exemption Requested in Connection with the Share Exchange. Applicants accordingly request relief under section 57(c) from section 57(a)(1) to permit such transfer as part of the Share Exchange. Applicants are not requesting relief from section 57(a) with respect to the repurchase by Ameritrans of the single share owned by Mr. Granoff because the buyer (Ameritrans) is the issuer of the security being purchased.

(c)     Legal Analysis in Connection with the Share Exchange. Under section 57(c)(1), the terms of the proposed transaction must be reasonable and fair and must not involve overreaching of the BDC or its shareholders on the part of any person. The Share Exchange will not involve potential overreaching because Mr. Granoff is only the nominal owner of a single Ameritrans share, and Ameritrans will repurchase that share at its original purchase price once the Share Exchange has been

ELK\476EXAMT.V12                                -16-

completed.  Accordingly, the Applicants meet the section 57(c)(1) standard with respect to the Share Exchange.

Under section 57(c)(2), relief may be granted if the proposed transactions are consistent with the policy of the BDC as specified in filings with the Commission and reports to shareholders.  The Share Exchange and the requested relief are consistent with the policy outlined in the prospectus included in the Form N-14 filed in connection with the Share Exchange Plan and the information to be provided in Ameritrans's regular reporting to shareholders.  Accordingly, this condition is also met.

Under section 57(c)(3), relief may be granted if the proposed transaction is consistent with the purposes of the Act.  Applicants believe that the Share Exchange will benefit the shareholders of Elk in that Ameritrans, directly and through Elk and other Subsidiaries, will have the ability to increase its portfolio diversity.  Further, since Ameritrans and its constituent entities will operate as one company after the Share Exchange, the Ameritrans shareholders will gain the benefits of greater investment diversity without incurring significantly increased operating costs. Accordingly, the Applicants meet the section 57(c)(3) standard.

(3)    Application of Sections 57(a)(1) and (2) in Connection with Certain Purchase and Sale Transactions.

(a)    General.  Following the Share Exchange, Ameritrans will be a person related to Elk and the Future Subsidiaries in a manner described in Section 57(b) as long as it continues to own more than 25% of the voting securities of, or

ELK\476EXAMT.V12                                   -17-

otherwise controls, Elk and such Future Subsidiaries.[2]  Elk and each Future Subsidiary will be a person related to Ameritrans in a manner described in Section 57(b) as long as more than 25% of its voting securities are owned, or it otherwise remains controlled, by Ameritrans.  Elk and each Future Subsidiary would also be a person related to each other Subsidiary in a manner described in Section 57(b) as long as the Subsidiaries remain under the common control of Ameritrans.  Purchases or sales of securities or other property between Ameritrans and Elk or a Future BDC Subsidiary may be deemed to violate sections 57(a)(1) and (2).  Similarly, purchases or sales of securities or other property between Elk or a Future BDC Subsidiary, on the one hand, and any other Subsidiary on the other hand, may be deemed to violate sections 57(a)(1) and (2).

In addition, there may be circumstances when it is in the interest of Ameritrans or its shareholders for Elk or a Future BDC Subsidiary to invest in securities of an issuer that may be deemed to be a person related to Ameritrans within the meaning of section 57(b), or for Ameritrans to invest in securities of an issuer that may be deemed to be a person related to Elk or a Future BDC Subsidiary within the meaning of section 57(b), as in the case of a Portfolio Company deemed to be related to Ameritrans, Elk, or a Future BDC Subsidiary as a result of its ownership of more than 25% of the Portfolio Company's stock.  Similarly, it may be desirable for Elk or

---

[2] The term "Control" is defined in Section 2(a)(9) of the 1940 Act as follows: "(9) 'Control' means the power to exercise a controlling influence over the management or policies of a company, unless such power is solely the result of an official position with such company."

a Future BDC Subsidiary to invest in securities of an issuer that may be deemed to be a person related to another Subsidiary within the meaning of section 57(b).

If Ameritrans were to engage in these activities other than through Elk and the Future BDC Subsidiaries, purchase or sale transactions with controlled affiliates would be permissible without Commission approval by virtue of rule 57b-1. Rule 57b-1 provides that the provisions of section 57(a) will not apply to any person: (a) solely because that person is directly or indirectly controlled by a BDC; or (b) solely because that person is, within the meaning of section 2(a)(3)(C) or (D) of the Act, an affiliated person of a person described in (a) of rule 57b-1. The Commission made this clear in 1980 when, in adopting rule 57b-1, it stated in relevant part:

> However, non-controlled portfolio affiliates of a business development company are not among those persons whose participation in transactions with the business development company requires Commission approval (under section 57(c) [15 U.S.C. 80a-56(c)]) or such specific statutory findings regarding the transaction by the company's board of directors (under section 57(f) [15 U.S.C. 80a-56(f)]). The legislative history of the 1980 Amendments indicates that Congress also did not intend to require Commission approval or such specific statutory findings by the board of directors of a business development company for transactions between the company and a controlled portfolio affiliate. As the House Committee Report on the bill which became the 1980 Amendments states:
>
>> Conspicuously absent from the prohibitions in section 57 against transactions with the business development company are *persons which it controls* or of which it holds at least 5 percent of the outstanding securities. Also omitted from the prohibitions are persons affiliated with such so-called "downstream affiliates" of the business development company. In this regard, it should be noted that the Commission has undertaken through rulemaking to exempt all investment

ELK\476EXAMT.V12                                   -19-

companies from prohibitions relating to
transactions solely between investment companies
and such downstream affiliates. The Committee
again wishes to note that if experience
demonstrates that under such exclusion from
statutory prohibitions investors are not being
adequately protected, the Committee would expect
to revisit this area.

H.R. Rep. No. 1341, 96th Cong., 2d Sess. 48(1980)
["Committee Report"] (emphasis added). However, due to an
apparently inadvertent drafting error, business development
company transactions involving controlled portfolio affiliates and
certain affiliated persons of such affiliates must be approved by
the Commission. The Commission proposes to correct this
error by the instant rulemaking.[3]

As pointed out in the foregoing Commission Report, even if Ameritrans

were a registered investment company under the Act, rather than a BDC, it would be

exempt from prohibitions relating to transactions between itself and its downstream

affiliates under rules 17a-6 and 17d-1(d)(5) and (6). Thus, it seems clear that

purchase or sale transactions between a BDC and its downstream affiliates are exempt

from the prohibitions of sections 57(a)(1) and (2).

However, without the relief requested by this Application, purchase or

sale transactions between Elk or any Future BDC Subsidiary and downstream

controlled affiliates of Ameritrans may violate section 57(a)(1) or (2) of the Act.

Similarly, purchase or sale transactions between Ameritrans and downstream

controlled affiliates of Elk or a Future BDC Subsidiary may violate section 57(a)(1)

or (2) since rule 57b-1 only exempts from the prohibitions of section 57(a) those

---

[3]     Investment Company Act Release No. 11493 (December 16, 1980).

affiliates of downstream controlled affiliates of a BDC that are affiliated within the meaning of section 2(a)(3)(C) or (D) of the Act. Thus, purchase or sale transactions between Ameritrans and a Portfolio Company of which Elk or a Future BDC Subsidiary owns more than 25% of the outstanding voting securities, and transactions between Elk or a Future BDC Subsidiary and a Portfolio Company of which Ameritrans or another Subsidiary owns more than 25% of the outstanding voting securities, would not be exempted by rule 57b-1 from the prohibitions of sections 57(a)(1) and (2).[4]

    (b)    <u>Exemptions Requested in Connection with Certain Purchase and Sale Transactions</u>. Applicants, on behalf of themselves and any Future Subsidiaries, request an order from the Commission pursuant to section 57(c) exempting from the provisions of sections 57(a)(1) and (2) any transaction between Ameritrans and Elk or any Future BDC Subsidiary, and any transaction between Elk or any Future BDC Subsidiary, on the one hand, and any other Future Subsidiary or Elk, on the other hand, with respect to the purchase or sale of securities or other property. Applicants, on behalf of themselves and any Future Subsidiaries, also request an order of the Commission pursuant to section 57(c) exempting from the provisions of sections 57(a)(1) and (2) any purchase or sale transaction between Ameritrans and a controlled portfolio affiliate of Elk or any Future BDC Subsidiary, and any purchase or sale

---

[4]    Although the Commission is not asked to concur with this view, no relief is being requested herein with respect to purchase or sale transactions between Ameritrans and any Future Non-BDC Subsidiary or between one Future Non-BDC Subsidiary and another Future Non-BDC Subsidiary. This is because these transactions are between a parent BDC and its controlled affiliates or between the controlled affiliates of the same BDC parent and thus are exempted from the prohibitions of section 57(a) by rule 57b-1.

transaction between Elk or any Future BDC Subsidiary and a controlled portfolio affiliate of Ameritrans or of another Future BDC Subsidiary or Elk, but only to the extent that any such transaction would not be prohibited if Elk and any Future BDC Subsidiaries were deemed to be part of Ameritrans and not a separate company.

       (c)    <u>Legal Analysis in Connection with Certain Purchase and Sale Transactions.</u>  Under section 57(c)(1), the terms of the proposed transaction must be reasonable and fair and must not involve overreaching of the BDC or its shareholders on the part of any person. Elk and any Future Subsidiaries will be wholly-owned by Ameritrans. The officers and directors of Ameritrans and Elk will be the same persons. No officers or directors of Ameritrans, Elk or any Future Subsidiary or any controlling persons or other "upstream affiliated persons" of Ameritrans will have any financial interest (other than as shareholders of Ameritrans) in transactions with Portfolio Companies that may become affiliates of Ameritrans and/or Elk and/or any Future BDC Subsidiary, nor will any such persons have any financial interest (other than as shareholders of Ameritrans) in the purchase and sale of securities or other property solely between Ameritrans and Elk, or between Ameritrans and any Future BDC Subsidiary or between Elk and any Future BDC Subsidiary. Further, as discussed herein, the proposed operations as one company will enhance efficient operations of Ameritrans, its wholly-owned subsidiary, Elk, and any Future BDC Subsidiaries. As discussed above, the contemplated transactions among the Applicants, any Future BDC Subsidiaries, and controlled portfolio affiliates will be reasonable and fair and will not involve overreaching on the part of any person.

Accordingly, the requested exemptions meet the section 57(c) standard because they will permit Ameritrans, Elk, and the Future BDC Subsidiaries to do what the Act would otherwise permit if Elk and the Future BDC Subsidiaries were part of Ameritrans and not separate companies.

Under section 57(c)(2), relief may be granted if the proposed transactions are consistent with the policy of the BDC as specified in filings with the Commission and reports to shareholders. The operation of Ameritrans, Elk, and any Future Subsidiaries as one company and the requested relief are consistent with the policy outlined in the prospectus included in the Form N-14 filed in connection with the Share Exchange Plan and the information to be provided in Ameritrans's regular reporting to shareholders. Accordingly, this condition is also met.

Under section 57(c)(3), relief may be granted if the proposed transaction is consistent with the purposes of the Act. As described in Part II.C(3)(a), above, if Ameritrans were to engage in the proposed purchase and sale transactions, including SBIC activities, directly, rather than through Elk or Future BDC Subsidiaries, transactions with controlled Portfolio Companies would be permissible without Commission approval pursuant to rule 57b-1. Applicants believe that such transactions would satisfy the section 57(c)(3) standards for the requested relief.

D.    Sections 21(b) and 57(a)(3).

(1)    General.  Section 57(a)(3) generally prohibits the borrowing of money or other property by an affiliated person of a BDC (as described in section 57(b)) from the BDC, except as permitted in section 21(b).  Section 21(b) of the Act (made applicable to BDCs by section 62 of the Act, with certain exceptions) generally prohibits loans from a BDC to a person who controls or is under common control with the BDC, except for loans to a company that owns all of the outstanding securities of the BDC.

(2)    Application of Sections 21(b) and 57(a)(3) to Applicants.  Because Elk and each Future Subsidiary will be wholly-owned by Ameritrans, each of Ameritrans, Elk, and the Future Subsidiaries will be an affiliate of the others under section 57(b).  In addition, controlled Portfolio Companies of Ameritrans and of Elk and each Future BDC Subsidiary may be deemed affiliates of the others of Ameritrans, Elk, and any Future BDC Subsidiaries under section 57(b).  Rule 57b-1 provides that the provisions of section 57(a) shall not apply to any person (a) solely because that person is controlled, directly or indirectly, by a BDC, or (b) solely because that person is, within the meaning of section 2(a)(3)(C) or (D) of the Act, an affiliate of a person controlled by a BDC.  Section 2(a)(9) of the Act defines "control" as the power to exercise a controlling influence over the management or policies of a company and provides that any person who owns beneficially, directly or though one or more controlled companies, more than 25% of the voting securities of a company shall be presumed to control such company.

Loans from Ameritrans to Elk or any Future BDC Subsidiary would be exempt from the provisions of section 57(a)(3) because the borrower would be controlled by the

lender. It does not appear that loans from Elk or any Future BDC Subsidiaries to Ameritrans would qualify for the rule 57b-1 exemption because, in such cases, the lender would be controlled by the borrower and, therefore, absent an exemptive order such loans would be prohibited by section 57(a)(3). Likewise, it does not appear that loans from Elk or any Future BDC Subsidiary to another Subsidiary would qualify for the rule 57b-1 exemption because, in such cases, the lender and the borrower would be under common control. Consequently, without an exemptive order, any loans from Elk or any Future BDC Subsidiary to Ameritrans or to any other Subsidiary could be deemed a violation of sections 57(a)(3). Section 21(b) prohibits Elk or a Future BDC Subsidiary from making loans to Ameritrans because it is, or would be, controlled by Ameritrans, and to any other Subsidiary, because it would be under common control with those entities. Ameritrans will always own 100% of the voting common stock of Elk and Future BDC Subsidiaries. However, in the event that Elk or a Future BDC Subsidiary has issued debt or equity securities to a person other than Ameritrans, then Elk or the Future BDC Subsidiary would require relief from section 21(b) to lend money to Ameritrans. This would be the case even though Ameritrans owned 100% of the voting common stock of Elk or the Future BDC Subsidiary. For example, Elk has issued subordinated debentures to the SBA. Within the meaning of section 57(b), Portfolio Companies controlled by Ameritrans may be deemed affiliates of Elk or any Future BDC Subsidiary, and Portfolio Companies controlled by Elk or any Future BDC Subsidiary may be deemed affiliates of Ameritrans and of Elk or any Future BDC Subsidiary. Consequently, it may be that Section 21(b) would prohibit loans (i) from Elk or a Future BDC Subsidiary to a Portfolio Company of Ameritrans and (ii) from

ELK\476EXAMT.V12                     -25-

Elk or a Future BDC Subsidiary to a Portfolio Company of another Future BDC Subsidiary or Elk because of such affiliate status.

(3)  Exemptions Requested.  Applicants request relief from section 57(a)(3) under section 57(c) to exempt any borrowing of money or other property by Ameritrans from Elk or any Future BDC Subsidiary or by a Subsidiary from Elk or any Future BDC Subsidiary.  Applicants also request relief from section 21(b) under section 6(c) of the Act to exempt any lending of money or other property by Elk or any Future BDC Subsidiary to Ameritrans or another Subsidiary.  Further, Applicants request relief from section 21(b) and 57(a)(3) to exempt any lending of money or other property from Elk or any Future BDC Subsidiary to a controlled portfolio affiliate of Ameritrans or of another of Elk or any Future BDC Subsidiary, but only to the extent that any such transaction would not be prohibited if Elk and any Future BDC Subsidiaries were deemed to be part of Ameritrans and not separate companies.

(4)  Legal Analysis.  Section 6(c) of the Act permits the Commission to conditionally or unconditionally exempt any person or transaction from any provision or provisions of the Act, if and to the extent that such exemption is necessary or appropriate in the public interest and consistent with the protection of investors and the purposes fairly intended by the policy or provisions of the Act.

The proposed loan transactions between Ameritrans, Elk, and the Future Subsidiaries will not have substantive economic effect because they will be between Ameritrans and its wholly-owned subsidiaries.  Further, it may be in the interests of the shareholders of Ameritrans for one or more of Ameritrans, Elk, or Future BDC Subsidiaries

to make loans to the controlled Portfolio Companies of the others and, as discussed above in Part II.C(4), such activity would be permissible if undertaken by one company. Alternatively, such transactions would be permissible if completed indirectly, such as, for example, if a loan was made by Elk or a Future BDC Subsidiary to Ameritrans which then loaned the proceeds to its Portfolio Company. The requested relief would permit Ameritrans and Elk and any Future BDC Subsidiaries to do what the Act would permit if they were one company. Therefore, Applicants believe that the proposed transactions will satisfy the section 6(c) and 57(c) standards, discussed above, for the requested relief.

E.     Sections 57(a)(4) and 57(i) and Rule 17d-1.

(1)     General.  Section 17(d) of the Act and rule 17d-1 under the Act prohibit an affiliated person of a registered investment company, or an affiliated person of such a person, acting as principal, from participating in any joint enterprise or arrangement in which the registered company or a company it controls is a participant, unless the Commission has issued an order authorizing the arrangement.  Section 57(a)(4) of the Act imposes substantially the same prohibitions on joint arrangements involving BDCs and certain of their affiliates, as described in section 57(b).  Section 57(i) of the Act provides that the rules and regulations under section 17(d) shall apply to transactions subject to section 57(a) in the absence of rules under section 57(a).

Rule 17d-1, as applied to a BDC, prohibits a person related to a BDC, as described in Section 57(b), acting as principal, from participating in, or effecting any transaction in connection with any joint enterprise or other joint arrangement in which a

BDC, or a company controlled by such BDC, is a participant unless the Commission has approved the arrangement.

(2)     Application of Sections 57(a)(4) and 57(i) and Rule 17d-1 to Applicants.  As described previously, Ameritrans, Elk, and Future Subsidiaries would be related to one another in a manner described in Section 57(b), based on Ameritrans' control of Elk and Future Subsidiaries.  The joint transaction prohibitions of Section 57(a)(4) and Rule 17d-1, taken together, would not apply to transactions involving two or more of Ameritrans and Elk and the Future Subsidiaries because the Section 57(b) relationship would arise solely from Ameritrans' ownership of each Subsidiary.  Therefore, Rule 57b-1 would exempt Ameritrans and its controlled affiliates from the prohibitions of Section 57(a)(4). However, a joint transaction[5] in which Elk or a Future BDC Subsidiary and Ameritrans or another Subsidiary participates could be deemed to be prohibited under Section 57(a)(4), because Ameritrans and the other Subsidiary would not be a controlled affiliate of Elk or the Future BDC Subsidiary.

(3)     Permission Requested.  Ameritrans and Elk, on behalf of themselves and the Future Subsidiaries, request that the Commission grant an order pursuant to section 57(i) of the Act and rule 17d-1 permitting any joint transaction that would otherwise be prohibited by section 57(a)(4) of the Act in which Elk or a Future BDC Subsidiary and Ameritrans or another Subsidiary participate, but only to the extent that any such transaction would not be prohibited if Elk or any Future BDC Subsidiary participating in the transaction was deemed to be a part of Ameritrans and not a separate company.

---

[5]     In this case, a joint transaction could include, *inter alia*, a co-investment or co-divestment transaction, a co-borrowing transaction, or a co-guarantor transaction.

(4)    Legal Analysis.  In passing upon applications filed pursuant to rule 17d-1, the Commission is directed by rule 17d-1(b) to consider whether the participation of the registered investment company in a joint enterprise or arrangement is consistent with the provisions, policies and purposes of the Act and the extent to which such participation is on a basis different from or less advantageous than that of other participants.  Section 57(i) of the Act provides that the rules and regulations under sections 17(a) and 17(d) shall apply to transactions subject to section 57(a) in the absence of rules under section 57(a).  No rules with respect to joint transactions have been adopted under section 57(a) and, therefore, the standards set forth under rule 17d-1 govern the order requested herein.

If entered into by Ameritrans, Elk, or any Future Subsidiary, individually, the joint transactions for which Applicants are seeking exemptive relief would be permissible under the Act without prior approval of the Commission.  Since Elk and the Future Subsidiaries will be wholly-owned by Ameritrans and the entities will, in effect, operate as a single economic unit, there can be no overreaching on the part of any person and no harm to the public interest will occur if Ameritrans, Elk, and the Future Subsidiaries are allowed to participate in joint transactions to the extent that each of them, individually, would not be subject to the provisions of section 57(a)(4),  had each participated in such transactions on an individual basis.

There would appear to be no provision of the Act, other than those from which relief is sought herein, with which such joint transactions are inconsistent.  The requested relief meets the standards in rule 17d-1 because it would simply permit Ameritrans and the Subsidiaries to conduct their operations as though they comprise one company (which

is, in effect, the economic reality with respect to the one group of public shareholders).

Therefore, the requested relief will enhance the interests of Ameritrans' shareholders while

retaining for them the important protections afforded by the provisions of the Act.

Consequently, the relief requested herein is consistent with the purposes of the Act.

    F.    <u>Sections 18(a) and 61(a)</u>.

    (1)    <u>General</u>.  Section 61(a) of the Act makes Section 18 applicable, within

certain modifications, to a BDC to the same extent as if it were a closed-end company

registered under the 1940 Act.

    Section 18(a) of the Act makes it unlawful for any closed-end company to

issue any class of senior security or to sell any senior security of which it is the issuer,

unless such company complies with the asset coverage and other requirements set forth

therein.  Paragraph (1) of Section 18(a) sets forth the requirements for a class of senior

security representing an indebtedness.  "Asset coverage" of such a class is defined in Section

18(h) to mean the ratio which the value of the total assets of the issuer, less all liabilities and

indebtedness not represented by senior securities, bears to the aggregate amount of senior

securities representing indebtedness of such issuer.  Section 18(k) makes the asset coverage

and other requirements of subparagraphs (A) and (B) of paragraph (1) of Section 18(a)

inapplicable to investment companies operating under the 1958 Act.

    (2)    <u>Application of Sections 18(a) and 61(a) to Applicants</u>.  Ameritrans,

Elk, and the Future BDC Subsidiaries would be treated as closed-end companies for the

purposes of Section 18 of the Act, which is made applicable to BDCs by Section 61(a)

thereof.  In light of the parent/wholly-owned subsidiary structure of Ameritrans and the

ELK\476EXAMT.V12        -30-

Subsidiaries, a question exists as to whether each of Ameritrans, Elk, and the Future BDC Subsidiaries must comply with the asset coverage requirements of Section 18(a) (as modified by section 61(a) for BDCs) solely on an individual basis or, alternatively, whether Ameritrans and the Subsidiaries must also comply with these asset coverage requirements on a consolidated basis, because Ameritrans may be deemed to be an indirect issuer of any class of senior securities issued by Elk or the Future Subsidiaries. Applying Section 18(a) (as modified by Section 61(a) for BDCs) on a consolidated basis generally would require that Ameritrans treat as its own all assets held directly either by itself or by the Subsidiaries (with the value of Ameritrans' investments in the Subsidiaries eliminated in consolidation), to treat as its own all liabilities and indebtedness not represented by senior securities either of itself or of the Subsidiaries (with intercompany receivables and liabilities eliminated), and to treat as its own all senior securities representing indebtedness and any senior security which is a stock issued either by itself or by the Subsidiaries, excluding all senior securities representing indebtedness and any senior security which is a stock held or guaranteed by the SBA of its subsidiaries operating under the 1958 Act.

(3)    Exemptions Requested.  Ameritrans and Elk do not concede that Ameritrans, Elk, and the Future Subsidiaries must comply with the asset coverage requirements of Section 18(a) (as modified by Section 61(a) for BDCs) on a consolidated basis.  Nevertheless, Ameritrans and Elk wish to avoid any question about their compliance with Section 18(a), as modified by Section 61(a).  Accordingly, Ameritrans and Elk respectfully request an order of the Commission pursuant to Section 6(c) of the 1940 Act exempting them from the provisions of Section 18(a), as modified by Section 61(a), such that

ELK\476EXAMT.V12                                      -31-

senior securities issued by Elk that are excluded from its individual asset coverage ratio by Section 18(k) will be excluded from Ameritrans' consolidated asset coverage ratio.

        (4)    <u>Legal Analysis</u>.  Section 18(k) exempts any class of senior securities representing an indebtedness issued by certain closed-end companies from the asset coverage and other requirements of subparagraphs (A) and (B) of paragraph (1) of Section 18(a), whether or not the class of senior securities representing an indebtedness is held or guaranteed by the SBA.[6]  The policy rationale for the exemption contained in Section 18(k) is that the SBA's substantive regulation of permissible leverage of an SBA-licensed investment company is an effective substitute for the Commission's substantive regulation of required asset coverage for each class of senior security issued by a registered closed-end company or a BDC.  As SBICs are SBA-licensed investment companies, each such entity is subject to the SBA's substantive regulation of permissible leverage in their capital structure. An SBIC with outstanding SBA financial assistance may not incur any secured third-party debt or refinance any debt with secured third-party debt without prior written approval of the SBA.[7]

        Applicants believe that if Ameritrans applies the asset coverage requirements of Section 18(a) on a consolidated basis, whereby the assets and liabilities of the Subsidiaries

---

[6]    Section 18(k) also exempts any class of senior securities that is a stock issued by certain closed-end companies from the asset coverage and other requirements of paragraph (2) of Section 18(a) "so long as such class of senior security shall be held or guaranteed by the [SBA]."  This condition of ownership or guarantee by the SBA applies only to a class of senior security that is a stock and not also to a class of senior security representing indebtedness, as evidenced by the absence of this condition from Section 18(k) prior to its amendment in 1972 by Pub. L. 92-595, which added the exemption for preferred stock together with the SBA ownership/guarantee condition.

[7]    <i>See</i> 13.C.F.R. § 107.550(b)(1996).

are consolidated for purposes of compliance with such requirements, Ameritrans should be able to apply the same exemptions from those requirements as are afforded to the Subsidiaries. To the extent the Subsidiaries on a stand-alone basis are entitled to rely on an exemption from the asset coverage requirements, when the parent consolidates the subsidiaries for purposes of testing compliance with such requirements, there is no basis in policy to deny the parent the benefit of the exemption. Applicants state that the requested relief satisfies the standard in section 6(c) of the Act.

G. _Precedents_. In connection with the preparation of this Application, with respect to transactions between the Applicants, Applicants have reviewed previous exemptive orders issued by the Commission granting exemptive relief similar to that requested herein. The Commission has previously granted exemptive relief substantially similar in all material respects to the relief requested in this Part II of this Application in orders issued to _Allied Capital Corporation_, Release IC-9540 (November 24, 1976, 814-4014) and _Medallion Funding Corp._, Release IC-16296 (March 1, 1988, 812-6892). _Allied Capital Corporation II et al._, Release IC-17492 (May 16, 1990), _Bando McGlocklin Capital Corporation et al._, Release IC-19092 (November 19, 1992), _Medallion Financial Corp. et al._, Release IC-21969 (May 21, 1996), _Allied Capital Corporation_, Release IC-22902 (November 21, 1997; notice); Release IC-22941 (December 16, 1997; order), _MACC Private Equities, Inc., et al._, File No. 812-9028, Release IC- 20887 and 34-35337 (February 7, 1995), and _MACC Private Equities, Inc._, Release IC-23478 (October 6, 1998; notice); Release IC-23518 (November 3, 1998; order).

ELK\476EXAMT.V12

## III.  CONSOLIDATED REPORTING.

A.    General.  Section 54 of the Act provides that a closed-end investment company may elect BDC treatment under the Act if the company has registered or filed a registration statement under section 12 of the 1934 Act for a class of its equity securities. Section 13(a) of the 1934 Act requires that issuers of securities registered under the 1934 Act file certain information and reports with the Commission.

B.    Application of Section 12 of the 1934 Act to Applicants.  Ameritrans will, prior to the Share Exchange, file (i) an election to become a BDC and (ii) a registration statement under section 12 of the 1934 Act for its common stock, with such registration statement to become effective simultaneously with the effectiveness of the Share Exchange. Elk, which is currently a reporting company under the 1934 Act, has also elected BDC status.  After the Share Exchange is completed, Elk will be a wholly-owned subsidiary of Ameritrans, will have only one investor and no public investors and, therefore, there will be no trading in the securities of Elk.  However, absent an exemptive order, Elk would not only have to remain registered under the 1934 Act, it would also be required to continue to file periodic reports with the Commission.  Likewise, without an exemptive order, any Future BDC Subsidiary, although it would have no public shareholders, would be required to register under the 1934 Act and file periodic reports with the Commission.

C.    Requested Exemptions.  Ameritrans and Elk, on behalf of themselves and the Future BDC Subsidiaries, request an order of the Commission pursuant to Section 12(h) of the 1934 Act exempting Elk and each Future BDC Subsidiary from the reporting

requirements of Section 13(a) of the 1934 Act, thereby permitting Ameritrans, Elk, and Future BDC Subsidiaries to report on a consolidated basis.

D. _Legal Analysis_. Section 12(h) of the 1934 Act provides that the Commission may exempt an issuer from section 13(a) of the 1934 Act if the Commission finds that by reason of a number of public investors, amount of trading interest in the securities, the nature and extent of the activities of the issuer, income or assets of the issuer, or otherwise, the exemption is not inconsistent with the public interest or the protection of investors.

Form N-2, used for registration of securities under the 1933 Act for a company electing BDC treatment, specifically contemplates that a BDC may have a wholly-owned SBIC subsidiary that also is a BDC. Item 6 of Form N-2 and the instructions contemplate exactly the same structure as that of the Applicants — a public parent with securities registered under the 1933 Act (and under the 1934 Act) and having a wholly-owned BDC subsidiary that is eligible to make the BDC election. This structure is also expressly contemplated by section 2(a)(46) of the Act, which allows a wholly-owned SBIC to be deemed an "eligible portfolio security" of a BDC. The BDC provisions of the Act were added by the Small Business Investment Incentive Act of 1980 (the "1980 Act"). The 1980 Act was designed to remove unnecessary and costly regulatory burdens to the entrepreneurial activities of the venture capital industry.

By requiring Elk and any Future BDC Subsidiaries to voluntarily register a class of equity securities under the 1934 Act solely to be able to elect to be regulated as BDCs under the Act, but not requiring them to report separately, the 1934 Act reporting

ELK\476EXAMT.V12                    -35-

structure for Ameritrans, Elk, and the Future BDC Subsidiaries would be the same as if Elk and any Future BDC Subsidiary did not voluntarily register. Accordingly, the requested action is not inconsistent with the public interest or the protection of investors. The order will permit the parent/wholly-owned subsidiary BDC structure, and normal rules for consolidated reporting under the 1934 Act will be applicable.

Applicants believe it was not the intent of Congress, in the 1980 Act, to liberalize registration and reporting requirements for a qualified venture capital investment company (*i.e.*, a BDC) parent while retaining those requirements for that parent's wholly-owned BDC subsidiary engaged in substantially the same business. Under the proposed reporting format, Elk and the Future BDC Subsidiaries, as controlled subsidiaries of an issuer with securities registered under the 1934 Act, will be participating in the consolidated disclosure and reporting under the 1934 Act that was deemed, in the 1980 Act, to be an adequate substitute for registration and reporting under the Act.

Applicants believe that to require detailed registration statements from, and impose 1934 Act reporting requirements on, a wholly-owned subsidiary BDC that is subject to consolidated 1934 Act disclosure and reporting requirements through its parent BDC, would be counter to Congressional intent. Much of the benefit accruing to BDCs would be thwarted by requiring detailed registration statements and duplicative reports of a BDC's wholly-owned BDC subsidiary.

The nature and extent of the activities of Elk and any Future Subsidiaries will be fully disclosed through consolidated reporting of Ameritrans and its Subsidiaries in accordance with Commission rules and generally accepted accounting principles. No public

ELK\476EXAMT.V12                                        -36-

interest or investor protection purpose would be served by separate reporting by Elk or any Future BDC Subsidiary. Therefore, the Applicants do not believe that, in these circumstances, Elk or any Future BDC Subsidiary should be denied the benefits of the 1980 Act. To do so would defeat the attempt of the 1980 Act to provide a measure of regulatory relief to the very kind of companies intended to receive such relief.

        E.    Precedents. In *Midland Capital Corporation et al.* (*"Midland"*), File No. 812-5313, Release IC-13021 and 34-19498 (February 9, 1983) and *MACC Private Equities, Inc., et al.* (*"MACC"*), File No. 812-9028, Release IC- 20887 and 34-35337 (February 7, 1995), parent BDCs with BDC/SBIC subsidiaries obtained joint exemptive orders with respect to various 1940 Act issues as well as relief from reporting requirements under section 12(h) of the 1934 Act. In *Midland*, a two-level BDC structure, the SBIC subsidiary had for some time filed 1934 Act reports with the Commission, but obtained relief from further filing. In *MACC*, the SBIC subsidiary was required to register under the 1934 Act, but was granted relief from the filing requirement.

        In addition, the consolidated reporting treatment permitted in *Bando McGlocklin Capital Corporation et al.*, File No. 812-8696; Release IC-20317 (May 25, 1994) (*"Bando"*) is the same as is requested in this Application. While *Bando* involved two closed-end management companies, the policies and principals involved in permitting consolidated reporting are the same as with respect to the Applicants as BDCs.

## IV.  CONDITIONS OF RELIEF

Applicants agree that the order granting the requested relief will be subject to the following conditions:

1.    Ameritrans will at all times own and hold beneficially and of record all of the outstanding voting capital stock of Elk and the Future Subsidiaries.

2.    Elk and any Future BDC Subsidiaries will have the same fundamental investment policies as Ameritrans, as set forth in Ameritrans' registration statement; Elk and any Future BDC Subsidiaries will not engage in any other activities described in section 13(a) of the Act, except in each case as authorized by the vote of a majority of the outstanding voting securities of Ameritrans.

3.    No person shall serve or act as investment adviser or principal underwriter to Elk or any Future BDC Subsidiary unless the directors and shareholders of Ameritrans shall have taken the action with respect thereto also required to be taken by the directors and the sole shareholder of such Subsidiary.

4.    Ameritrans will not itself issue or sell any senior security and Ameritrans will not cause or permit Elk or any Future BDC Subsidiary to issue or sell any senior security of which Ameritrans, Elk, or any Future BDC Subsidiary is the issuer except to the extent permitted by section 18 (as modified for BDCs by section 61) of the Act; provided that immediately after the issuance or sale by any of Ameritrans, Elk, or any Future BDC Subsidiary of any such notes or evidences of indebtedness, Ameritrans and its Subsidiaries on a consolidated basis, and Ameritrans individually, shall have the asset coverage required by section 18(a) of the Act (as modified by section 61(a) for Ameritrans), except that, in

ELK\476EXAMT.V12                                      -38-

determining whether Ameritrans and its Subsidiaries on a consolidated basis have the asset coverage required by section 18(a) of the Act as modified by section 61(a), any SBA preferred stock interest in Elk and the Future BDC Subsidiaries and any borrowings by Elk and any Future BDC Subsidiaries shall not be considered senior securities and, for purposes of the definition of "asset coverage" in section 18(h), will be treated as indebtedness not represented by senior securities.

5.      No person shall serve as a director of Elk or any Future Subsidiary unless elected as a director of Ameritrans at its most recent annual meeting, as contemplated by section 16(a) of the Act.  Vacancies on Ameritrans' board of directors will be filled in the manner provided for in section 16(a).  Notwithstanding the foregoing, the board of directors of Elk and of any Future Subsidiary will be elected by Ameritrans as the sole shareholder of such Subsidiary, and such board will be composed of the same persons that serve as directors of Ameritrans.

6.      Ameritrans and any Subsidiary will acquire securities representing indebtedness of Elk or a Future BDC Subsidiary operating as a SBIC only if, in each case, the prior approval of the SBA has been obtained.  In addition, Elk or any Future BDC Subsidiary operating as a SBIC, on the one hand, and Ameritrans or any other Subsidiary on the other hand, will purchase and sell portfolio securities between themselves only if, in each case, the prior approval of the SBA has been obtained.

7.      Ameritrans will (a) file with the Commission on behalf of itself, Elk, and any Future BDC Subsidiaries all information and reports required to be filed with the Commission under the 1934 Act and other federal securities laws, including information and

ELK\476EXAMT.V12                                    -39-

financial statements prepared solely on a consolidated basis as to Ameritrans, Elk, and any Future BDC Subsidiaries, such information and reports to be in satisfaction of the separate reporting obligations of Elk and any Future BDC Subsidiaries; and (b) provide to its shareholders such information and reports required to be disseminated to Ameritrans' shareholders, including information and financial statements prepared solely on a consolidated basis as to Ameritrans, Elk and any Future BDC Subsidiaries, such information and reports to be in satisfaction of the separate reporting obligations of Elk and any Future BDC Subsidiaries.  Notwithstanding anything in this condition, Ameritrans will not be relieved of any of its reporting obligations including, but not limited to, any consolidating statements setting forth the individual statements of Elk and any Future BDC Subsidiaries required by rule 6-03(c) of Regulation S-X.

      8.     Ameritrans, Elk, and any Future BDC Subsidiaries may file on a consolidated basis under Condition 7, above, only so long as the amount of Ameritrans's total consolidated assets invested in assets other than (a) securities issued by Elk and any Future BDC Subsidiary or (b) securities similar to those in which Elk and any Future BDC Subsidiary invests, does not exceed 10%.

## V.  CONCLUSIONS

      Sections 6(c), 12(d)(1)(J), and 57(c) of the Act and rule 17d-1 thereunder permit the Commission to exempt conditionally or unconditionally any person or transaction from any provisions of the Act, if and to the extent such exemption is necessary or appropriate in the public interest and consistent with the protection of investors and the purposes fairly intended by the policy and provisions of the Act.

Section 12(h) of the 1934 Act provides that the Commission may exempt an issuer from section 13(a) of the 1934 Act if the Commission finds that by reason of a number of public investors, amount of trading interest in the securities, the nature and extent of the activities of the issuer, income or assets of the issuer, or otherwise, the exemption is not inconsistent with the public interest or the protection of investors.

For the reasons set forth above, Applicants hereby submit that granting the requested exemptions from the cited provisions of the Act and the 1934 Act, subject to the conditions set forth in this Application, will be in the public interest and will enhance the interests of Ameritrans' shareholders, while retaining for them the protection afforded by the other provisions of the Act and the 1934 Act applicable to Ameritrans, Elk and the Future Subsidiaries.

## VI.  REQUEST FOR ORDER

Based on the foregoing, Applicants submit that the applicable standards for relief pursuant to sections 6(c) and 57(c) of the Act and rule 17d-1 thereunder have been met and, therefore, respectfully request that the Commission issue an order:

(i)     exempting the Share Exchange from the provisions of sections 57(a)(1) and (2) and permitting the Share Exchange and the participation therein of Gary C. Granoff pursuant to sections 57(a)(4) and 57(c) and rule 17d-1 thereunder on the terms and conditions set forth in this Application, subject to the affirmative vote in favor of approving the Share Exchange Plan by a majority of the outstanding shares of Elk's common stock;

(ii)    exempting Ameritrans, Elk, and the Future Subsidiaries from the provisions of sections 12(d)(1), 18(a), 21(a), 57(a), 60(a), and 61(a), and permitting certain joint

transactions otherwise prohibited by the provisions of sections 17(d) and 57(a)(4), to the extent necessary to allow Ameritrans to acquire and operate Elk and the Future Subsidiaries, subject to the conditions set forth in Part IV of this Application; and

(iii)    exempting Elk and any Future BDC Subsidiaries from the reporting provisions of section 13(a) of the 1934 Act.

In addition to the foregoing, the Applicants undertake to notify the Commission in writing if any material change occurs with respect to the Share Exchange Plan or the proposed transactions between the date of this Application and the date on which the Commission issues the order.

## VII.  PROCEDURAL MATTERS RELATING TO THE APPLICATION

Pursuant to rule 0-2(c) under the Act, each of Ameritrans and Elk states that its Board of Directors, by resolutions duly adopted and attached hereto as *Exhibit A*, has authorized each of its named officers therein to prepare, or cause to be prepared and to execute and file with the Commission, this Application.  Mr. Gary C. Granoff has signed this Application.

The verifications required by rule 0-2(d) under the Act are attached hereto as *Exhibit B*.  All other requirements for the execution and filing of this Application in the name of and on behalf of, each of Ameritrans and Elk, by the undersigned officers, have been complied with and each such officer is fully authorized to do so.

Pursuant to rule 0-2(f) under the Act, each of the Applicants states that its or his address is 747 Third Avenue, 4th Floor, New York, New York 10017 and further states that all communications or questions concerning this Application or any amendment thereto

ELK\476EXAMT.V12

should be directed to C. Walter Stursberg, Jr., Esq., Stursberg & Veith, 405 Lexington Avenue, Suite 4949, New York, New York 10174, (212) 922-1177.

It is desired that the Commission issue an Order pursuant to rule 0-5 under the Act without a hearing being held.

The proposed notice of the filing of this Application required by rule 0-2(g) under the Act is attached hereto as *Exhibit C* and incorporated herein by reference.

## SIGNATURES

Pursuant to the requirements of the Investment Company Act of 1940, each of Ameritrans Capital Corporation and Elk Associates Funding Corporation has caused this Amendment No. 1 to the Application to be duly signed on its behalf by the undersigned, thereunto duly authorized in the City of New York as of the 29th day of November, 1999. Mr. Gary C. Granoff has signed this Application as of this 29th day of November, 1999.

ELK ASSOCIATES FUNDING CORPORATION

By: _____
Gary C. Granoff, President

AMERITRANS CAPITAL CORPORATION

By: _____
Gary C. Granoff, President

_____
Gary C. Granoff

## EXHIBIT INDEX

A.    Copies of Corporate Resolutions
      1.     Elk Associates Funding Corporation
      2.     Ameritrans Capital Corporation

B.    Verifications
      1.     Elk Associates Funding Corporation
      2.     Ameritrans Capital Corporation
      3.     Gary C. Granoff

C.    Notice of Filing

EXHIBIT A-1

## CERTIFIED COPY OF CORPORATE RESOLUTIONS

I, Margaret Chance, duly elected secretary of Elk Associates Funding Corporation, a New York corporation (the "Company"), do hereby certify that the below resolutions are true copies taken from written consents of the Board of Directors of the Company dated October 6, 1998 and November 23, 1999; that the below resolutions are still in full force and effect and have not been rescinded; and that such resolutions are not in conflict with the Certificate of Incorporation or By-Laws of the corporation.

October 6, 1998

"RESOLVED, that the Board of Directors authorizes and approves the preparation and filing with the Commission of a registration/proxy statement on Form N-14 (or such other appropriate form) with regard to the proposed share exchange between Ameritrans Capital Corporation ("Ameritrans") and the Company and all exhibits thereto (the "Share Exchange").

RESOLVED, that the Board of Directors authorizes and approves the preparation and filing of an application for an exemptive order requesting approval of the Share Exchange and related transactions, including consolidated financial reporting of Ameritrans and the Company and certain relief from the asset coverage ratios required under the 1940 Act."

November 24, 1999

RESOLVED, that the execution by Gary C. Granoff of an application (the "Application") for an exemptive order with regard to the proposed share exchange between the Company and Ameritrans Capital Corporation ("Ameritrans"), various transactions involving the Company, Ameritrans, and any future subsidiaries of Ameritrans, consolidated financial reporting by Ameritrans, the Company, and such subsidiaries and certain relief from the asset coverage ratios required under the Investment Act of 1940, the filing of such Application with the Commission on November 25, 1998 by the Company, and all actions taken in connection with the preparation and filing of the Application, are hereby ratified and approved.

RESOLVED, that the designation of Gary C. Granoff as the person authorized to receive all notice and communications that may be issued by the Commission in connection with the Application and conferring upon him all powers that are provided by any rules and regulations of the Commission to be conferred on any person so designated is hereby ratified and approved.

ELK\476EXAMT.V12

RESOLVED, that the Board of Directors hereby ratifies and approves the Agreement and Plan of Share Exchange dated October 21, 1999 (the "Share Exchange Plan"), between Ameritrans Capital Corporation and the Company, as attached to the definitive proxy statement of the Company as filed with the Securities and Exchange Commission on November 12, 1999.

RESOLVED, that to the extent any of the terms contained in the Share Exchange Plan are different from terms previously authorized by the Board of Directors (including, but not limited to, the Company's right to proceed with the Share Exchange Plan even if shareholders who exercise their appraisal rights hold a number of shares which exceeds 3% of the outstanding shares, provided the Board of Directors determines it to be in the Company's best interest to proceed), such prior terms are hereby superseded and the terms set forth in the Share Exchange Plan dated October 21, 1999, are hereby ratified and approved.

RESOLVED, that the appropriate officers of the Company and its counsel, with full authority to act without the others, are hereby authorized to communicate with and appear before the Commission in connection with any matter relating to the Application.

RESOLVED, that Gary C. Granoff, as president of the Company, and the other appropriate officers of the Company are hereby authorized to perform on behalf of the Company any and all such acts as they may deem necessary or advisable in connection with the Application, and in furtherance thereof, to execute and file all requisite amendments, consents or other documents, and the execution by such officers of any such documents or the taking by them of any such action shall conclusively establish their authority therefor.

Certified by me this 29th day of November, 1999.


Margaret Chance, Secretary

ELK\476EXAMT.V12

EXHIBIT A-2

## CERTIFIED COPY OF CORPORATE RESOLUTIONS

I, Margaret Chance, duly elected secretary of Ameritrans Capital Corporation, a Delaware corporation (the "Company"), do hereby certify that the below resolutions are true copies taken from written consents of the Board of Directors of the Company dated September 22, 1998; that the below resolutions are still in full force and effect and has not been rescinded; and that such resolutions are not in conflict with the Certificate of Incorporation or By-Laws of the corporation.

<u>September 22, 1998</u>

"RESOLVED, that the proposed Agreement and Plan of Share Exchange (the "Share Exchange Plan") between the Company and Elk Associates Funding Corporation ("Elk") substantially in the form annexed hereto, pursuant to which each outstanding share of Elk's common stock would be exchanged for one (1) share of the Company's common stock and Elk would become a wholly-owned subsidiary of the Company (the "Share Exchange"), is hereby approved, and the appropriate officers of the Company are hereby authorized and directed

. . . .

(iii)    to prepare and submit to the SEC, together with Elk and Gary C. Granoff, the sole stockholder of the Company, an application (the "Application") for an exemptive order (the "Order") under the Investment Company Act of 1940 (the "1940 Act") with regard to the Share Exchange, various transactions involving the Company, Elk, and any future subsidiaries of the Company, Elk, and any future subsidiaries of the Company, certain relief from the asset coverage ratios required under the 1940 Act and consolidated financial reporting by Elk, the Company, and such subsidiaries under the Securities Exchange Act of 1934. . . ."

<u>May 21, 1999</u>

"RESOLVED, that the execution by Gary C. Granoff of an application (the "Application") for an exemptive order under the Investment Company Act of 1940 (the "1940 Act") with regard to the proposed share exchange between the Company and Elk, various transactions involving the Company, Elk, and any future subsidiaries of the Company, consolidated financial reporting by Elk, the Company, and such subsidiaries, and certain relief from the asset coverage ratios required under the 1940 Act, the filing of such Application with the Commission on November 25, 1998 by the Company, and all actions taken in connection with the preparation and filing of the Application, are hereby ratified and approved.

RESOLVED, that the designation of Gary C. Granoff as the person authorized to receive all notice and communications that may be issued by the Commission in connection with the Form N-14 and the Application and conferring upon him all powers that are

provided by any rules and regulations of the Commission to be conferred on any person so designated is hereby ratified and approved.

RESOLVED, that the appropriate officers of the Company and its counsel, with full authority to act without the others, are hereby authorized to communicate with and appear before the Commission in connection with any matter relating to the Application.

RESOLVED, that Gary C. Granoff, as president of the Company, and the other appropriate officers of the Company are hereby authorized to perform on behalf of the Company any and all such acts as they may deem necessary or advisable in connection with the Application, and in furtherance thereof, to execute and file all requisite amendments, consents or other documents, and the execution by such officers of any such documents or the taking by them of any such action shall conclusively establish their authority therefor."

November 24, 1999

RESOLVED, that the Board of Directors hereby ratifies and approves the Agreement and Plan of Share Exchange dated October 21, 1999 (the "Share Exchange Plan"), between Elk Associates Funding Corporation ("Elk") and the Company, as attached to the definitive proxy statement of Elk as filed with the Securities and Exchange Commission on November 12, 1999.

RESOLVED, that Gary C. Granoff, as president of the Company, and the other appropriate officers of the Company are hereby authorized to perform on behalf of the Company any and all such acts as they may deem necessary or advisable in connection with the Share Exchange Plan and related transactions, including, but not limited to, the Application for an Exemptive Order ("Application") from the Securities and Exchange Commission relating to the Share Exchange Plan and certain other matters set forth in the Application as previously submitted to the Commission, and in furtherance thereof, to execute and file all requisite amendments, consents or other documents, and the execution by such officers of any such documents or the taking by them of any such action shall conclusively establish their authority therefor.

Certified by me this 29th day of November, 1999.


Margaret Chance, Secretary

Exhibit B-1

STATE OF NEW YORK   )
                                ) ss:
COUNTY OF NEW YORK )

The undersigned, being duly sworn deposes and says that he executed the attached amended application dated November 29, 1999 for and on behalf of Elk Associates Funding Corporation; that he is the President of said corporation; and that all action necessary to authorized deponent to execute and file such instrument on behalf of such corporation has been taken.  Deponent further says that he is familiar with such instrument and the contents thereof and that the facts therein set forth are true to the best of his knowledge, information and belief.

_____
Gary C. Granoff

Subscribed and sworn to
before me this 29 day
of November, 1999.

_____
Notary Public

PETER MITCHELL
Notary Public, State of New York
No 4880001
Qualified in Nassau County
Commission Expires December 15, 1982
Jan 5, 2000

ELK\476EXAMT.V12

Exhibit B-2

STATE OF NEW YORK    )
                                  )   ss:
COUNTY OF NEW YORK )

        The undersigned, being duly sworn deposes and says that he executed the attached amended application dated November 29, 1999 for and on behalf of Ameritrans Capital Corporation; that he is the President of said corporation; and that all action necessary to authorized deponent to execute and file such instrument on behalf of such corporation has been taken.  Deponent further says that he is familiar with such instrument and the contents thereof and that the facts therein set forth are true to the best of his knowledge, information and belief.

_____
           Gary C. Granoff

Subscribed and sworn to
before me this 29 day
of November, 1999.

_____
Notary Public

PETER MITCHELL
Notary Public, State of New York
No 4880001
Qualified in Nassau County
Commission Expires December 15, 19__
Jan 5, 2000

Exhibit B-3

STATE OF NEW YORK    )
                     )   ss:
COUNTY OF NEW YORK   )

The undersigned, being duly sworn deposes and says that he executed the attached amended application dated November 2?, 1999 for and on behalf of Gary C. Granoff. Deponent further says that he is familiar with such instrument and the contents thereof and that the facts therein set forth are true to the best of his knowledge, information and belief.

_____

Gary C. Granoff

Subscribed and sworn to
before me this _2?_ day
of November, 1999.

_____

Notary Public

PETER MITCHELL
Notary Public, State of New York
No 4880001
Qualified in Nassau County
Commission Expires December 18, 19__

ELK\476EXAMT.V12

EXHIBIT C

UNITED STATES OF AMERICA
Before the
SECURITIES AND EXCHANGE COMMISSION

Investment Company Act of 1940

Release No.         /[date]

| | |
|---|---|
| IN THE MATTER OF<br><br>ELK ASSOCIATES FUNDING<br>CORPORATION<br>AMERITRANS CAPITAL<br>CORPORATION<br>GARY C. GRANOFF<br>747 Third Avenue<br>4th Floor<br>New York, New York  10017 | APPLICATION UNDER THE INVESTMENT<br>COMPANY ACT OF 1940 (THE "ACT") FOR AN<br>ORDER (i) UNDER SECTIONS 6(c), 12(d)(1)(J),<br>AND 57(c) OF THE ACT GRANTING<br>EXEMPTIONS FROM THE PROVISIONS OF<br>SECTIONS 12(d)(1)(A) AND (C), 18(a), 21(b),<br>57(a)(1) THROUGH (a)(3), AND 61(a) OF THE<br>ACT; (ii) UNDER SECTION 57(i) OF THE ACT<br>AND RULE 17d-1 UNDER THE ACT TO PERMIT<br>CERTAIN JOINT TRANSACTIONS OTHERWISE<br>PROHIBITED BY SECTION 57(a)(4) OF THE ACT;<br>AND (iii) UNDER SECTION 12(h) OF THE<br>SECURITIES EXCHANGE ACT OF 1934 (THE<br>"1934 ACT") GRANTING AN EXEMPTION FROM<br>SECTION 13(a) OF THE 1934 ACT |

NOTICE IS HEREBY GIVEN that Elk Associates Funding Corporation ("Elk"), a Small Business

Investment Company ("SBIC"), licensed as such by the Small Business Administration ("SBA"), and

a business development company ("BDC") registered under the Investment Company Act of 1940 (the

"Act"), Ameritrans Capital Corporation ("Ameritrans"), and Gary C. Granoff filed an application on

November 25, 1998, as amended on November 23, 1999, for an order (i) under sections 6(c),

12(d)(1)(J), and 57(c) of the Act granting exemptions from the provisions of sections 12(d)(1)(A) and

(C), 18(a), 21(b), 57(a)(1) through (a)(3), and 61(a) of the Act; (ii) under section 57(i) of the Act and

rule 17d-1 under the Act to permit certain joint transactions otherwise prohibited by section 57(a)(4)

ELK\476EXNOT.V12

of the Act; and (iii) under section 12(h) of the Securities Exchange Act of 1934 (the "1934 Act") granting an exemption from section 13(a) of the 1934 Act. All interested persons are referred to the application on file with the Commission for a statement of the representations contained therein, which are summarized below.

Elk's principal business has historically been the financing of the purchase of taxicab medallions, taxicabs and related assets in New York City. More recently, Elk has expanded its business of financing the purchase of taxicab medallions, taxicabs and related assets into the Chicago, Miami, and Boston markets, as well as increasing its diversified non-taxi loan portfolio. In addition, Elk entered into an agreement with the SBA in March, 1997, and amended its certificate of incorporation, the effect of which was to convert Elk from a Specialized Small Business Investment Company to an SBIC. As such, Elk now lends to persons who are not "disadvantaged" so long as Elk's aggregate loans to disadvantaged persons are at least equal to the remaining amount of Elk's unamortized restricted capital account (the "Restricted Capital Account") resulting from the repurchase by Elk of its 3% preferred stock from the SBA. The Restricted Capital Account was $256,916 at June 30, 1999, representing less than 1% of Elk's loan portfolio of approximately $51,100,000 as of that date.

It is proposed that Ameritrans, a newly-formed Delaware corporation, become the holder of all of the outstanding shares of common stock of Elk. Each common shareholder of Elk would receive one share of the common stock of Ameritrans in exchange for each share of the common stock of Elk outstanding immediately prior to the share exchange.

Upon the completion of the share exchange, Ameritrans would engage in the business of making financings that Elk is not eligible to make by reason of its status as an SBIC. Ameritrans will be capitalized initially from $963,000 of the proceeds of a private placement of shares of Elk's common stock completed in January, 1998. Elk raised total proceeds, before offering expenses, of

-2-

$3,003,000 in that private offering. The proceeds to be used to capitalize Ameritrans were temporarily used to pay down Elk's borrowings. In addition, Ameritrans may in the future create additional wholly-owned subsidiaries (the "Future Subsidiaries") that in some cases may be BDCs (the "Future BDC Subsidiaries"). Any Future Subsidiary that is not a BDC will not be an investment company. Elk and the Future Subsidiaries are collectively referred to as the "Subsidiaries." Any Future BDC Subsidiary that relies on the order will do so only in accordance with the terms and conditions of the order.

It is proposed that Ameritrans, which has elected to become a BDC, will file periodic reports as required under the 1934 Act, including quarterly reports on Form 10-Q and annual reports on Form 10-K.

The Applicants, on behalf of themselves and the Future Subsidiaries, seek exemptions from certain provisions of the Act and of the 1934 Act, as hereinafter set forth.

Sections 12(d)(1) and 60.

(1)    General.  Section 12(d)(1)(A) of the Act provides, in relevant part, that no registered investment company may purchase or otherwise acquire securities of another investment company if such securities represent more than 3% of the acquired company's outstanding voting stock or more than 5% of the acquiring company's total assets, or if such securities, together with the securities of other investment companies, represent more than 10% of the acquiring company's total assets. Section 12(d)(1)(C) of the Act provides, in relevant part, that no investment company may acquire securities of a registered closed-end investment company if, immediately after such acquisition, the acquiring company owns more than 10% of the outstanding voting stock of the closed-end company. Section 60 of the Act applies the provisions of section 12 to BDCs. Rule 60a-1 under the Act exempts from the provisions of sections 12(d)(1)(A) and (C) the acquisition by a BDC of the securities of an SBIC licensed under the 1958 Act that is operated as a wholly-owned

ELK\476EXNOT.V12                              -3-

subsidiary of the BDC. Rule 60a-1 would not, however, exempt from the provisions of section 12(d)(1) certain upstream transactions between an SBIC subsidiary and its BDC parent, nor transactions between a BDC and any other subsidiaries.

      (2)     Application of Sections 12(d)(1) and (60) to Applicants. If the proposed reorganization is consummated, Ameritrans (a BDC) will own 100% of the voting capital stock of Elk (a BDC and an SBIC). Consequently, since Ameritrans will operate Elk as a wholly-owned subsidiary, the acquisition of the securities of Elk, any loans or advances made to Elk by Ameritrans and any other transfer from Ameritrans to Elk will be exempt from the prohibitions of sections 12(d)(1)(A) and (C) by virtue of rule 60a-1. However, section 12(d)(1) may apply to Elk with respect to its purchase or acquisition of debt securities issued by Ameritrans because Elk will be an entity controlled by a BDC. Loans or advance to Ameritrans by the Future Subsidiaries would be prohibited if such transactions were deemed to be the purchase by the lender of the securities of the borrower. Similarly, the prohibitions could apply to the acquisition of debt securities of, or the making of loans to, Elk or any Future Subsidiary by any other Future Subsidiary or Elk.

      (3)     Exemptions Requested. In general, the purpose of section (12)(d)(1) is to prohibit investment companies from pyramiding control or management fees. As the owner of 100% of the voting securities of Elk and any Future Subsidiary, Ameritrans would not be pyramiding control. Elk is internally managed, as would be Ameritrans and any Future Subsidiary, so there is no opportunity to, or intention to, pyramiding management fees. In addition, Ameritrans has represented and agreed that it will exercise its rights as the sole shareholder of Elk and any Future Subsidiaries on matters required by the Act to be approved by shareholders only as directed by Ameritrans' shareholders, so the relationship of Ameritrans' shareholders to the activities to be carried out by Elk and such Future Subsidiaries will be no different than if such activities were carried out by Ameritrans. Further, because Ameritrans, Elk and any Future Subsidiaries will operate as one

company, there will be no unnecessary duplication of administrative costs. Moreover, the parent/subsidiary structure will serve a valid business purpose by facilitating more efficient public investment in the asset class of small business debt securities. Accordingly, it does not appear that the proposed reorganization would violate in any respect the purposes for which section (12)(d)(1) was enacted. Applicants, on behalf of themselves and any Future Subsidiaries, request that the Commission grant an order pursuant to section 12(d)(1)(J) exempting from sections 12(d)(1)(A) and (C)(i) the purchase of the debt or equity securities of, or a contribution to capital to, a Future BDC Subsidiary by Ameritrans, (ii) the making of loans or advances by any of Elk or any Future Subsidiary to Ameritrans or to any other of Elk or any Future Subsidiary, and (iii) the acquisition by Elk or any Future Subsidiary of any securities representing indebtedness of Ameritrans or of any securities representing indebtedness issued by any of the other Subsidiaries. Applicants request the exemption to the extent that the transactions would not be prohibited if Elk or any Future Subsidiary were deemed to be part of Ameritrans and not a separate entity.

Sections 57(a)(1) and (2).

(1)     General. Sections 57(a)(1)and (2) of the Act provide, in pertinent part, that it is unlawful, with certain exceptions, for BDCs and certain of their affiliates to engage in sales or purchases of securities between themselves. Section 57(b), in turn, provides that Section 57(a) applies to, among other persons, directors, officers, and employees of a BDC and any person directly or indirectly controlled by or under common control with a BDC. Because Elk and the Future Subsidiaries will be wholly-owned by Ameritrans, each of Ameritrans, Elk, and the Future Subsidiaries will be an affiliated person of the others within the meaning of section 57(b). Likewise, Ameritrans could be deemed to be an affiliate of Elk within the meaning of section 57(b)(1) because Ameritrans is controlled by Gary C. Granoff, who is a director and officer of Elk.

ELK\476EXNOT.V12                                    -5-

(2)    Application of Sections 57(a)(1) and (2) to Applicants in Connection with the Share Exchange.

(a)    General.  The transfer of Ameritrans' shares to the shareholders of Elk may be deemed to be a prohibited sale of securities to Elk within the meaning of section 57(a)(1).

(b)    Exemption Requested in Connection with the Share Exchange.  Under section 57(c)(1), the terms of the proposed transaction must be reasonable and fair and must not involve overreaching of the BDC or its shareholders on the part of any person.  The Share Exchange will not involve potential overreaching because Mr. Granoff is only the nominal owner of a single Ameritrans share, and Ameritrans will repurchase that share at its original purchase price once the Share Exchange has been completed.  Accordingly, the Applicants meet the section 57(c)(1) standard with respect to the Share Exchange.

Under section 57(c)(2), relief may be granted if the proposed transactions are consistent with the policy of the BDC as specified in filings with the Commission and reports to shareholders.  The Share Exchange and the requested relief are consistent with the policy outlined in the prospectus included in the Form N-14 filed in connection with the Share Exchange Plan and the information to be provided in Ameritrans's regular reporting to shareholders.  Accordingly, this condition is also met.

Under section 57(c)(3), relief may be granted if the proposed transaction is consistent with the purposes of the Act.  Applicants believe that the Share Exchange will benefit the shareholders of Elk in that Ameritrans, directly and through Elk and other Subsidiaries, will have the ability to increase its portfolio diversity.  Further, since Ameritrans and its constituent entities will operate as one company after the Share Exchange, the Ameritrans shareholders will gain the benefits of greater investment diversity without

ELK\476EXNOT.V12                              -6-

incurring significantly increased operating costs. Accordingly, the Applicants meet the section 57(c)(3) standard.

Applicants accordingly request relief under section 57(c) from section 57(a)(1) to permit such transfer as part of the Share Exchange. Applicants are not requesting relief from section 57(a) with respect to the repurchase by Ameritrans of the single share owned by Mr. Granoff because the buyer (Ameritrans) is the issuer of the security being purchased.

(3)    Application of Sections 57(a)(1) and (2) in Connection with Certain Purchase and Sale Transactions.

(a)    General.  Following the Share Exchange, Ameritrans will be a person related to Elk and the Future Subsidiaries in a manner described in Section 57(b) as long as it continues to own more than 25% of the voting securities of, or otherwise controls, Elk and such Future Subsidiaries. Elk and each Future Subsidiary will be a person related to Ameritrans in a manner described in Section 57(b) as long as more than 25% of its voting securities are owned, or it otherwise remains controlled, by Ameritrans. Elk and each Future Subsidiary would also be a person related to each other Subsidiary in a manner described in Section 57(b) as long as the Subsidiaries remain under the common control of Ameritrans. Purchases or sales of securities or other property between Ameritrans and Elk or a Future BDC Subsidiary may be deemed to violate sections 57(a)(1) and (2). Similarly, purchases or sales of securities or other property between Elk or a Future BDC Subsidiary, on the one hand, and any other Subsidiary on the other hand, may be deemed to violate sections 57(a)(1) and (2).

In addition, there may be circumstances when it is in the interest of Ameritrans or its shareholders for Elk or a Future BDC Subsidiary to invest in securities of an issuer that may be deemed to be a person related to Ameritrans within the meaning of

section 57(b), or for Ameritrans to invest in securities of an issuer that may be deemed to be a person related to Elk or a Future BDC Subsidiary within the meaning of section 57(b), as in the case of an "eligible portfolio company," as defined in section 2(a)(46) of the Act (a "Portfolio Company")) deemed to be related to Ameritrans, Elk, or a Future BDC Subsidiary as a result of its ownership of more than 25% of the Portfolio Company's stock.  Similarly, it may be desirable for Elk or a Future BDC Subsidiary to invest in securities of an issuer that may be deemed to be a person related to another Subsidiary within the meaning of section 57(b).

If Ameritrans were to engage in these activities other than through Elk or and the Future Subsidiaries, purchase or sale transactions with controlled affiliates would be permissible without Commission approval by virtue of rule 57b-1.  Rule 57b-1 provides that the provisions of section 57(a) will not apply to any person:  (a) solely because that person is directly or indirectly controlled by a BDC; or (b) solely because that person is, within the meaning of section 2(a)(3)(C) or (D) of the Act, an affiliated person of a person described in (a) of rule 57b-1.  Even if Ameritrans were a registered investment company under the Act, rather than a BDC, it would be exempt from prohibitions relating to transactions between itself and its downstream affiliates under rules 17a-6 and 17d-1(d)(5) and (6).  Thus, it seems clear that purchase or sale transactions between a BDC and its downstream affiliates are exempt from the prohibitions of sections 57(a)(1) and (2).

However, without the relief requested by this Application, purchase or sale transactions between any of Elk and any other Future Subsidiary or Elk and any Future BDC Subsidiaries and downstream controlled affiliates of Ameritrans may violate section 57(a)(1) or (2) of the Act.  Similarly, purchase or sale transactions between Ameritrans and downstream controlled affiliates of Elk or a Future BDC Subsidiary may violate section

57(a)(1) or (2) since rule 57b-1 only exempts from the prohibitions of section 57(a) those affiliates of downstream controlled affiliates of a BDC that are affiliated within the meaning of section 2(a)(3)(C) or (D) of the Act.  Thus, purchase or sale transactions between Ameritrans and a Portfolio Company of which Elk or a Future BDC Subsidiary owns more than 25% of the outstanding voting securities, and transactions between Elk or a Future BDC Subsidiary and a Portfolio Company of which Ameritrans or Future BDC Subsidiary owns more than 25% of the outstanding voting securities, would not be exempted by rule 57b-1 from the prohibitions of sections 57(a)(1) and (2).

> (b)     <u>Exemptions Requested in Connection with Certain Purchase and Sale Transactions</u>.  Under section 57(c)(1), the terms of the proposed transaction must be reasonable and fair and must not involve overreaching of the BDC or its shareholders on the part of any person.  Elk and any Future Subsidiaries will be wholly-owned by Ameritrans.  The officers and directors of Ameritrans and Elk will be the same persons.  No officers or directors of Ameritrans, Elk or any Future Subsidiary or any controlling persons or other "upstream affiliated persons" of Ameritrans will have any financial interest (other than as shareholders of Ameritrans) in transactions with Portfolio Companies that may become affiliates of Ameritrans and/or Elk and/or any Future BDC Subsidiary, nor will any such persons have any financial interest (other than as shareholders of Ameritrans) in the purchase and sale of securities or other property solely between Ameritrans and Elk, or between Ameritrans and any Future BDC Subsidiary or between Elk and any Future BDC Subsidiary.  Further, as discussed herein, the proposed operations as one company will enhance efficient operations of Ameritrans, its wholly-owned subsidiary, Elk, and any Future BDC Subsidiaries.  As discussed above, the contemplated transactions among the Applicants, any Future BDC Subsidiaries, and controlled portfolio affiliates will be reasonable and fair and

will not involve overreaching on the part of any person. Accordingly, the requested exemptions meet the section 57(c) standard because they will permit Ameritrans, Elk, and the Future BDC Subsidiaries to do what the Act would otherwise permit if Elk and the Future BDC Subsidiaries were part of Ameritrans and not separate companies.

Under section 57(c)(2), relief may be granted if the proposed transactions are consistent with the policy of the BDC as specified in filings with the Commission and reports to shareholders. The operation of Ameritrans, Elk, and any Future Subsidiaries as one company and the requested relief are consistent with the policy outlined in the prospectus included in the Form N-14 filed in connection with the Share Exchange Plan and the information to be provided in Ameritrans's regular reporting to shareholders. Accordingly, this condition is also met.

Under section 57(c)(3), relief may be granted if the proposed transaction is consistent with the purposes of the Act. As described above, if Ameritrans were to engage in the proposed purchase and sale transactions, including SBIC activities, directly, rather than through Elk or Future BDC Subsidiaries, transactions with controlled Portfolio Companies would be permissible without Commission approval pursuant to rule 57b-1. Applicants believe that such transactions would satisfy the section 57(c)(3) standards for the requested relief.

Applicants, on behalf of themselves and any Future Subsidiaries, request an order from the Commission pursuant to section 57(c) exempting from the provisions of sections 57(a)(1) and (2) any transaction between Ameritrans and Elk or any Future BDC Subsidiary, and any transaction between Elk or any Future BDC Subsidiary, on the one hand, and any other Future Subsidiary or Elk, on the other hand, with respect to the purchase or sale of securities or other property. Applicants, on behalf of themselves and any Future Subsidiaries,

-10-

also request an order of the Commission pursuant to section 57(c) exempting from the provisions of sections 57(a)(1) and (2) any purchase or sale transaction between Ameritrans and a controlled portfolio affiliate of Elk or any Future BDC Subsidiary, and any purchase or sale transaction between Elk or any Future BDC Subsidiary and a controlled portfolio affiliate of Ameritrans or of another Future BDC Subsidiary or Elk, but only to the extent that any such transaction would not be prohibited if Elk and any Future BDC Subsidiaries were deemed to be part of Ameritrans and not a separate company.

Sections 21(b) and 57(a)(3).

(1)     General.  Section 57(a)(3) generally prohibits the borrowing of money or other property by an affiliated person of a BDC (as described in section 57(b)) from the BDC, except as permitted in section 21(b).  Section 21(b) (made applicable to BDCs by section 62) of the Act generally prohibits loans between BDCs and persons controlling or under common control with the BDC, except for loans to a company that owns all of the outstanding securities of the BDC.

(2)     Application of Sections 21(b) and 57(a)(3) to Applicants.  Because Elk and each Future Subsidiary will be a wholly-owned subsidiary of Ameritrans, each of Ameritrans, Elk, and the Future Subsidiaries will be an affiliate of the other under section 57(b).  In addition, controlled Portfolio Companies of Ameritrans and of Elk and of each Future BDC Subsidiary may be deemed affiliates of the others of Ameritrans, Elk, and any Future BDC Subsidiaries under section 57(b). Rule 57b-1 provides that the provisions of section 57(a) shall not apply to any person (a) solely because that person is controlled, directly or indirectly, by a BDC, or (b) solely because that person is, within the meaning of section 2(a)(3)(C) or (D) of the Act, an affiliate of a person controlled by a BDC.  Section 2(a)(9) of the Act defines "control" as the power to exercise a controlling influence over the management or policies of a company and provides that any person who owns beneficially, directly or though one or more controlled companies, more than 25% of the voting securities of a

company shall be presumed to control such company. Loans from Ameritrans to Elk or any Future BDC Subsidiary would be exempt from the provisions of section 57(a)(3) because the borrower would be controlled by the lender. It does not appear that loans from Elk or any Future BDC Subsidiaries to Ameritrans would qualify for the rule 57b-1 exemption because, in such cases, the lender would be controlled by the borrower and, therefore, absent an exemptive order such loans would be prohibited by section 57(a)(3). Likewise, it does not appear that loans from Elk or any Future BDC Subsidiary to another Subsidiary would qualify for the rule 57b-1 exemption because, in such cases, the lender and the borrower would be under common control. Consequently, without an exemptive order, any loans from Elk or any Future BDC Subsidiary to Ameritrans to any other Subsidiary could be deemed a violation of sections 57(a)(3). Section 21(b) prohibits Elk or a Future BDC Subsidiary from making loans to Ameritrans because it is, or would be, controlled by Ameritrans, and to any other Subsidiary, because it would be under common control with those entities. Ameritrans will always own 100% of the voting common stock of Elk and Future BDC Subsidiaries. However, in the event that Elk or a Future BDC Subsidiary has issued debt or equity securities to a person other than Ameritrans, then Elk or the Future BDC Subsidiary would require relief from section 21(b) to lend money to Ameritrans. This would be the case even though Ameritrans owned 100% of the voting common stock of Elk or the Future BDC Subsidiary. For example, Elk has issued subordinated debentures to the SBA. Within the meaning of section 57(b), Portfolio Companies controlled by Ameritrans may be deemed affiliates of Elk or any Future BDC Subsidiary, and Portfolio Companies controlled by Elk or any Future BDC Subsidiary may be deemed affiliates of Ameritrans and of Elk or any Future BDC Subsidiary. Consequently, it may be that Section 21(b) would prohibit loans (i) from Elk or a Future BDC Subsidiary to a Portfolio Company of Ameritrans, and (ii) from Elk or a Future BDC Subsidiary to a Portfolio Company of another Future BDC Subsidiary or Elk because of such affiliate status.

(3) <u>Exemptions Requested</u>. Section 6(c) of the Act permits the Commission to conditionally or unconditionally exempt any person or transaction from any provision or provisions of the Act, if and to the extent that such exemption is necessary or appropriate in the public interest and consistent with the protection of investors and the purposes fairly intended by the policy or provisions of the Act.

The proposed transactions between Elk, Ameritrans, and the Future Subsidiaries will not have substantive economic effect because they will be between Ameritrans and its wholly-owned subsidiaries. Further, it may be in the interests of the shareholders of Ameritrans for Ameritrans, Elk, or Future BDC Subsidiaries to make loans to the controlled Portfolio Companies of the others and, as discussed above, such activity would be permissible if undertaken by one company. Alternatively, such transactions would be permissible if completed indirectly, such as, for example, if a loan was made by Elk or a Future BDC Subsidiary to Ameritrans which then loaned the proceeds to its Portfolio Company. The requested relief would permit Ameritrans and Elk or any Future BDC Subsidiaries to do what the Act would permit if they were one company or if the transactions were structured in the first instance as permitted loans. Therefore, Applicants believe that the proposed transactions will satisfy the section 6(c) and 57(c) standards, discussed above, for the requested relief.

Accordingly, Applicants, on behalf of themselves and the Future Subsidiaries, request an order from the Commission pursuant to sections 6(c) and 57(c) exempting from the provisions of section 57(a)(3) any borrowing of money or other property by Ameritrans from Elk or any Future BDC Subsidiary or by a Subsidiary from Elk or any Future BDC Subsidiary. Applicants also request relief from section 21(b) under section 6(c) of the Act to exempt any lending of money or other property by Elk or any Future BDC Subsidiary to Ameritrans or another Subsidiary. Further, Applicants request relief from section 21(b) and 57(a)(3) to exempt any lending of money or other property from Elk or any Future BDC Subsidiary to a controlled portfolio affiliate of Ameritrans or

ELK\476EXNOT.V12                                          -13-

of another of Elk or any Future BDC Subsidiary, but only to the extent that any such transaction would not be prohibited if Elk and any Future BDC Subsidiaries were deemed to be part of Ameritrans and not separate companies.

Sections 57(a)(4) and 57(i) and Rule 17d-1.

(1)     General.  Section 17(d) of the Act and rule 17d-1 under the Act prohibit an affiliated person of a registered investment company, or an affiliated person of such a person, acting as principal, from participating in any joint enterprise or arrangement in which the registered company or a company it controls is a participant, unless the Commission has issued an order authorizing the arrangement.  Section 57(a)(4) of the Act imposes substantially the same prohibitions on joint arrangements involving BDCs and certain of their affiliates, as described in section 57(b).  Section 57(i) of the Act provides that the rules and regulations under section 17(d) shall apply to transactions subject to section 57(a) in the absence of rules under section 57(a).

Rule 17d-1, as applied to a BDC, prohibits a person related to a BDC, as described in Section 57(b), acting as principal, from participating in, or effecting any transaction in connection with any joint enterprise or other joint arrangement in which a BDC, or a company controlled by such BDC, is a participant unless the Commission has approved the arrangement.

(2)     Application of Sections 57(a)(4) and 57(i) and Rule 17d-1 to Applicants.  As described previously, Ameritrans, Elk, and Future Subsidiaries would be related to one another in a manner described in Section 57(b), based on Ameritrans' control of Elk and Future Subsidiaries.  The joint transaction prohibitions of Section 57(a)(4) and Rule 17d-1, taken together, would not apply to transactions involving two or more of Ameritrans and Elk and the Future Subsidiaries because the Section 57(b) relationship would arise solely from Ameritrans' ownership of each Subsidiary.  Therefore, Rule 57b-1 would exempt Ameritrans and its controlled affiliates from the prohibitions of Section 57(a)(4).  However, a joint transaction in which Elk or a Future BDC Subsidiary and

Ameritrans or another Subsidiary participates could be deemed to be prohibited under Section 57(a)(4), because Ameritrans and the other Subsidiary would not be a controlled affiliate of Elk or the Future BDC Subsidiary. Sections 57(a)(4) and (d) and, through section 57(i), rule 17d-1(a) may prohibit such joint participation by Ameritrans and its Subsidiaries.

(3)     Permission Requested. In passing upon applications filed pursuant to rule 17d-1, the Commission is directed by rule 17d-1(b) to consider whether the participation of the registered investment company in a joint enterprise or arrangement is consistent with the provisions, policies and purposes of the Act and the extent to which such participation is on a basis different from or less advantageous than that of other participants. Section 57(i) of the Act provides that the rules and regulations under sections 17(a) and 17(d) shall apply to transactions subject to section 57(a) in the absence of rules under section 57(a). No rules with respect to joint transactions have been adopted under section 57(a) and, therefore, the standards set forth under rule 17d-1 govern the order requested herein.

If entered into by Ameritrans, Elk, or any Future Subsidiary, individually, the joint transactions for which Applicants are seeking exemptive relief would be permissible under the Act without prior approval of the Commission. Since Elk and the Future Subsidiaries will be wholly-owned by Ameritrans and the entities will, in effect, operate as a single economic unit, there can be no overreaching on the part of any person and no harm to the public interest will occur if Ameritrans, Elk, and the Future Subsidiaries are allowed to participate in joint transactions to the extent that each of them, individually, would not be subject to the provisions of section 57(a)(4), had each participated in such transactions on an individual basis.

There would appear to be no provision of the Act, other than those from which relief is sought herein, with which such joint transactions are inconsistent. The requested relief meets the standards in rule 17d-1 because it would simply permit Ameritrans and the Subsidiaries to conduct

their operations as though they comprise one company (which is, in effect, the economic reality with respect to the one group of public shareholders). Therefore, the requested relief will enhance the interests of Ameritrans' shareholders while retaining for them the important protections afforded by the provisions of the Act. Consequently, the relief requested herein is consistent with the purposes of the Act.

Accordingly, Ameritrans and Elk request, on behalf of themselves and the Future Subsidiaries, that the Commission grant an order pursuant to section 57(i) of the Act and rule 17d-1 permitting any joint transaction that would otherwise be prohibited by section 57(a)(4) of the Act in which Elk or a Future BDC Subsidiary and Ameritrans or another Subsidiary participate, but only to the extent that any such transaction would not be prohibited if Elk or any Future BDC Subsidiary participating in the transaction was deemed to be a part of Ameritrans and not a separate company. Sections 18(a) and 61(a).

(1)    General. Section 61(a) of the Act makes Section 18 applicable, within certain modifications, to a BDC to the same extent as if it were a closed-end company registered under the 1940 Act.

Section 18(a) of the Act makes it unlawful for any closed-end company to issue any class of senior security or to sell any senior security of which it is the issuer, unless such company complies with the asset coverage and other requirements set forth therein. Paragraph (1) of Section 18(a) sets forth the requirements for a class of senior security representing an indebtedness. "Asset coverage" of such a class is defined in Section 18(h) to mean the ratio which the value of the total assets of the issuer, less all liabilities and indebtedness not represented by senior securities, bears to the aggregate amount of senior securities representing indebtedness of such issuer. Section 18(k) makes the asset coverage and other requirements of subparagraphs (A) and (B) of paragraph (1) of Section 18(a) inapplicable to investment companies operating under the 1958 Act.

ELK\476EXNOT.V12                                          -16-

(2)    Application of Sections 18(a) and 61(a) to Applicants.  Ameritrans, Elk, and the Future BDC Subsidiaries would be treated as closed-end companies for the purposes of Section 18 of the Act, which is made applicable to BDCs by Section 61(a) thereof.  In light of the parent/wholly-owned subsidiary structure of Ameritrans and the Subsidiaries, a question exists as to whether each of Ameritrans, Elk, and the Future BDC Subsidiaries must comply with the asset coverage requirements of Section 18(a) (as modified by section 61(a) for BDCs) solely on an individual basis or, alternatively, whether Ameritrans and the Subsidiaries must also comply with these asset coverage requirements on a consolidated basis, because Ameritrans may be deemed to be an indirect issuer of any class of senior securities issued by Elk or the Future Subsidiaries.  Applying Section 18(a) (as modified by Section 61(a) for BDCs) on a consolidated basis generally would require that Ameritrans treat as its own all assets held directly either by itself or by the Subsidiaries (with the value of Ameritrans' investments in the Subsidiaries eliminated in consolidation), to treat as its own all liabilities and indebtedness not represented by senior securities either of itself or of the Subsidiaries (with intercompany receivables and liabilities eliminated), and to treat as its own all senior securities representing indebtedness and any senior security which is a stock issued either by itself or by the Subsidiaries, excluding all senior securities representing indebtedness and any senior security which is a stock held or guaranteed by the SBA of its subsidiaries operating under the 1958 Act.

(3)    Exemptions Requested.  Section 18(k) exempts any class of senior securities representing an indebtedness issued by certain closed-end companies from the asset coverage and other requirements of subparagraphs (A) and (B) of paragraph (1) of Section 18(a), whether or not the class of senior securities representing an indebtedness is held or guaranteed by the SBA.  The policy rationale for the exemption contained in Section 18(k) is that the SBA's substantive regulation of permissible leverage of an SBA-licensed investment company is an effective substitute for the Commission's substantive regulation of required asset coverage for each class of senior security issued

by a registered closed-end company or a BDC. As SBICs are SBA-licensed investment companies, each such entity is subject to the SBA's substantive regulation of permissible leverage in their capital structure. An SBIC with outstanding SBA financial assistance may not incur any secured third-party debt or refinance any debt with secured third-party debt without prior written approval of the SBA.

Applicants believe that if Ameritrans applies the asset coverage requirements of Section 18(a) on a consolidated basis, whereby the assets and liabilities of the Subsidiaries are consolidated for purposes of compliance with such requirements, Ameritrans should be able to apply the same exemptions from those requirements as are afforded to the Subsidiaries. To the extent the Subsidiaries on a stand-alone basis are entitled to rely on an exemption from the asset coverage requirements, when the parent consolidates the subsidiaries for purposes of testing compliance with such requirements, there is no basis in policy to deny the parent the benefit of the exemption. Applicants state that the requested relief satisfies the standard in section 6(c) of the Act.

Ameritrans and Elk do not concede that Ameritrans, Elk, and the Future Subsidiaries must comply with the asset coverage requirements of Section 18(a) (as modified by Section 61(a) for BDCs) on a consolidated basis. Nevertheless, Ameritrans and Elk wish to avoid any question about their compliance with Section 18(a), as modified by Section 61(a). Accordingly, Ameritrans and Elk respectfully request an order of the Commission pursuant to Section 6(c) of the Act exempting them from the provisions of Section 18(a), as modified by Section 61(a), such that senior securities issued by Elk that are excluded from its individual asset coverage ratio by Section 18(k) will be excluded from Ameritrans' consolidated asset coverage ratio.

Consolidated Reporting.

(1)    General. Section 54 of the Act provides that a closed-end investment company may elect BDC treatment under the Act if the company has registered or filed a registration statement under section 12 of the 1934 Act for a class of its equity securities. Section 13(a) of the 1934 Act

requires that issuers of securities registered under the 1934 Act file certain information and reports with the Commission.

(2)    Application of Section 12 of the 1934 Act to Applicants.  Ameritrans will, prior to the Share Exchange, file (i) an election to become a BDC and (ii) a registration statement under section 12 of the 1934 Act for its common stock, with such registration statement to become effective simultaneously with the effectiveness of the Share Exchange.  Elk, which is currently a reporting company under the 1934 Act, has also elected BDC status.  After the Share Exchange is completed, Elk will be a wholly-owned subsidiary of Ameritrans, will have only one investor and no public investors and, therefore, there will be no trading in the securities of Elk.  However, absent an exemptive order, Elk would not only have to remain registered under the 1934 Act, it would also be required to continue to file periodic reports with the Commission.  Likewise, without an exemptive order, any Future BDC Subsidiary, although it would have no public shareholders, would be required to register under the 1934 Act and file periodic reports with the Commission.

(3)    Exemptions Requested.  Section 12(h) of the 1934 Act provides that the Commission may exempt an issuer from section 13(a) of the 1934 Act if the Commission finds that by reason of a number of public investors, amount of trading interest in the securities, the nature and extent of the activities of the issuer, income or assets of the issuer, or otherwise, the exemption is not inconsistent with the public interest or the protection of investors.

Form N-2, used for registration of securities under the 1933 Act for a company electing BDC treatment, specifically contemplates that a BDC may have a wholly-owned SBIC subsidiary that also is a BDC.  This structure is also expressly contemplated by section 2(a)(46) of the Act, which allows a wholly-owned SBIC to be deemed an "eligible portfolio security" of a BDC.  The BDC provisions of the Act were added by the Small Business Investment Incentive Act of 1980 (the "1980 Act") to remove unnecessary and costly regulatory burdens to the entrepreneurial activities of the venture

capital industry. Much of the benefit accruing to BDCs would be thwarted by requiring detailed registration statements and duplicative reports of a BDC's wholly-owned BDC subsidiary.

The nature and extent of the activities of Elk and the Future BDC Subsidiaries will be fully disclosed through consolidated reporting of Ameritrans and its Subsidiaries in accordance with Commission rules and generally accepted accounting principles. No public interest or investor protection purpose would be served by separate reporting by Elk or any Future BDC Subsidiary. Therefore, the Applicants do not believe that, in these circumstances, Elk and the Future Subsidiaries should be denied the benefits of the 1980 Act. To do so would defeat the attempt of the 1980 Act to provide a measure of regulatory relief to the very kind of companies intended to receive such relief.

Accordingly, Ameritrans and Elk, on behalf of themselves and the Future BDC Subsidiaries, request an order of the Commission pursuant to Section 12(h) of the 1934 Act exempting Elk and each Future BDC Subsidiary from the reporting requirements of Section 13(a) of the 1934 Act, thereby permitting Ameritrans, Elk, and Future BDC Subsidiaries to report on a consolidated basis.

## I. CONDITIONS OF RELIEF

Applicants agree that the order granting the requested relief will be subject to the following conditions:

1.      Ameritrans will at all times own and hold beneficially and of record all of the outstanding capital stock of Elk and the Future Subsidiaries.

2.      Elk and any Future BDC Subsidiaries will have the same fundamental investment policies as Ameritrans, as set forth in Ameritrans' registration statement; Elk and any Future BDC Subsidiaries will not engage in any other activities described in section 13(a) of the Act, except in each case as authorized by the vote of a majority of the outstanding voting securities of Ameritrans.

3.      No person shall serve or act as investment adviser or principal underwriter to Elk or any Future BDC Subsidiary unless the directors and shareholders of Ameritrans shall have taken the

action with respect thereto also required to be taken by the directors and the sole shareholder of such Subsidiary.

4.      Ameritrans will not itself issue or sell any senior security and Ameritrans will not cause or permit Elk or any Future BDC Subsidiary to issue or sell any senior security of which Ameritrans, Elk, or any Future BDC Subsidiary is the issuer except to the extent permitted by section 18 (as modified for BDCs by section 61) of the Act; provided that immediately after the issuance or sale by any of Ameritrans, Elk, or any Future BDC Subsidiary of any such notes or evidences of indebtedness, Ameritrans and its Subsidiaries on a consolidated basis, and Ameritrans individually, shall have the asset coverage required by section 18(a) of the Act (as modified by section 61(a) for Ameritrans), except that, in determining whether Ameritrans and its Subsidiaries on a consolidated basis have the asset coverage required by section 18(a) of the Act as modified by section 61(a), any SBA preferred stock interest in Elk and the Future BDC Subsidiaries and any borrowings by Elk and any Future BDC Subsidiaries shall not be considered senior securities and, for purposes of the definition of "asset coverage" in section 18(h), will be treated as indebtedness not represented by senior securities.

5.      No person shall serve as a director of Elk or any Future Subsidiary unless elected as a director of Ameritrans at its most recent annual meeting, as contemplated by section 16(a) of the Act. Vacancies on Ameritrans' board of directors will be filled in the manner provided for in section 16(a). Notwithstanding the foregoing, the board of directors of Elk and any Future Subsidiary will be elected by Ameritrans as the sole shareholder of such Subsidiary, and such board will be composed of the same persons that serve as directors of Ameritrans.

6.      Ameritrans and any Subsidiary will acquire securities representing indebtedness of Elk or a Future BDC Subsidiary operating as a SBIC only if, in each case, the prior approval of the SBA has been obtained. In addition, Elk or any Future BDC Subsidiary operating as a SBIC, on the one

hand, and Ameritrans or any other Subsidiary on the other hand, will purchase and sell portfolio securities between themselves only if, in each case, the prior approval of the SBA has been obtained.

7.    Ameritrans will (a) file with the Commission on behalf of itself, Elk, and any Future BDC Subsidiaries all information and reports required to be filed with the Commission under the 1934 Act and other federal securities laws, including information and financial statements prepared solely on a consolidated basis as to Ameritrans, Elk, and any Future BDC Subsidiaries, such information and reports to be in satisfaction of the separate reporting obligations of Elk and any Future BDC Subsidiaries; and (b) provide to its shareholders such information and reports required to be disseminated to Ameritrans' shareholders, including information and financial statements prepared solely on a consolidated basis as to Ameritrans, Elk and any Future BDC Subsidiaries, such reports to be in satisfaction of the separate reporting obligations of Elk and any Future BDC Subsidiaries. Notwithstanding anything in this condition, Ameritrans will not be relieved of any of its reporting obligations including, but not limited to, any consolidating statements setting forth the individual statements of Elk and any Future BDC Subsidiaries required by rule 6-03(c) of Regulation S-X.

8.    Ameritrans, Elk, and any Future BDC Subsidiaries may file on a consolidated basis under Condition 7, above, only so long as the amount of Ameritrans's total consolidated assets invested in assets other than (a) securities issued by Elk and any Future BDC Subsidiary or (b) securities similar to those in which Elk and any Future BDC Subsidiary invests, does not exceed 10%.

NOTICE IS FURTHER GIVEN that any interested person wishing to request a hearing on the application may, not later than _____, 1999, at _____ do so by submitting a written request setting forth the nature of his interest, the reasons for his request and the specific issues, if any, of fact or law that are disputed, to the Secretary, Securities and Exchange Commission, Washington, DC 20549. A copy of the request should be served personally or by mail upon Elk, Ameritrans and Gary

C. Granoff at the address stated above.  Proof of service (by affidavit or, in the case of an attorney-in-law, by certificate) shall be filed with the request.  After said date, an order disposing of the application will be issued unless the Commission orders a hearing upon request or upon its own motion.

For the Commission by the Division of Investment Management, pursuant to delegated authority.

# Exhibit D

UNITED STATES OF AMERICA
BEFORE THE
SECURITIES AND EXCHANGE COMMISSION

INVESTMENT COMPANY ACT OF 1940
Release No.  24185     / December 7, 1999

---

In the Matter of

ELK ASSOCIATES FUNDING CORPORATION
AMERITRANS CAPITAL CORPORATION
GARY C. GRANOFF
747 Third Avenue
4th Floor
New York, New York  10017

(812-11420)

---

ORDER UNDER SECTIONS 6(c), 12(d)(1)(J), AND 57(c) OF THE INVESTMENT
COMPANY ACT OF 1940 GRANTING EXEMPTIONS FROM SECTIONS 12(d)(1)(A)
AND (C), 18(a), 21(b), 57(a)(1) THROUGH (a)(3), AND 61(a) OF THE ACT; UNDER
SECTION 57(i) OF THE ACT AND RULE 17d-1 UNDER THE ACT TO PERMIT
CERTAIN JOINT TRANSACTIONS OTHERWISE PROHIBITED BY SECTION 57(a)(4)
OF THE ACT; AND UNDER SECTION 12(h) OF THE SECURITIES EXCHANGE ACT
OF 1934 GRANTING AN EXEMPTION FROM SECTION 13(a) OF THE EXCHANGE
ACT

Elk Associates Funding Corporation, et al. filed an application on November 27, 1998, and
amended the application on November 30, 1999.  Applicants requested an order under sections
6(c), 12(d)(1)(J), and 57(c) of the Investment Company Act of 1940 ("Act") for exemptions
from sections 12(d)(1)(A) and (C), 18(a), 21(b), 57(a)(1) through (a)(3), and 61(a) of the Act;
under section 57(i) of the Act and rule 17d-1 under the Act to permit certain joint transactions
otherwise prohibited by section 57(a)(4) of the Act; and under section 12(h) of the Securities
Exchange Act of 1934 ("Exchange Act") for an exemption from section 13(a) of the Exchange
Act.  The order would permit a business development company ("BDC") to implement a
reorganization plan under which it would become a wholly-owned subsidiary of a newly-
formed BDC.  The order also would permit the two companies, and any additional wholly-
owned BDC subsidiaries of the parent established in the future, to engage in certain
transactions that would otherwise be permitted if the parent and its BDC subsidiaries were one
company, adhere to modified asset coverage requirements, and file certain reports on a
consolidated basis.

On November 2, 1999, a notice of the filing of the application was issued (Investment Company Act Release No. 24121). The notice gave interested persons an opportunity to request a hearing and stated that an order disposing of the application would be issued unless a hearing was ordered. No request for a hearing has been filed, and the Commission has not ordered a hearing.

The matter has been considered and it is found, on the basis of the information set forth in the application, as amended, that granting the requested exemptions is appropriate in the public interest and consistent with the protection of investors and the purposes fairly intended by the policy and provisions of the Act.

It is further found that granting the requested exemptions is consistent with the public interest and the protection of investors.

It is further found that the terms of the proposed purchase and sale and loan transactions are reasonable and fair and do not involve overreaching of a BDC or its shareholders on the part of any person concerned, and the proposed transactions are consistent with the policy of each BDC and the general purposes of the Act.

It is further found that the terms of the proposed joint transactions are consistent with the provisions, policies, and purposes of the Act, and that no BDC's participation in the joint transactions is on a basis different from or less advantageous than that of any other participant.

It is further found that granting the requested exemptions is not inconsistent with the public interest and the protection of investors. Accordingly,

IT IS ORDERED, under section 6(c) of the Act, that the requested exemptions from sections 18(a), 21(b), and 61(a) of the Act are granted, effective immediately, subject to the conditions contained in the application, as amended.

IT IS FURTHER ORDERED, under section 12(d)(1)(J), that the requested exemptions from sections 12(d)(1)(A) and (C) of the Act are granted, effective immediately, subject to the conditions contained in the application, as amended.

IT IS FURTHER ORDERED, under section 57(c) of the Act, that the requested exemptions from sections 57(a)(1) through (a)(3) of the Act are granted, effective immediately, subject to the conditions contained in the application, as amended.

IT IS FURTHER ORDERED, under section 57(i) of the Act and rule 17d-1 under the Act, that the proposed transactions are approved, effective immediately, subject to the conditions contained in the application, as amended.

3

IT IS FURTHER ORDERED, under section 12(h) of the Exchange Act, that the requested exemption from section 13(a) of the Exchange Act is granted, effective immediately, subject to the conditions contained in the application, as amended.

For the Commission, by the Division of Investment Management, under delegated authority.

Jonathan G. Katz
Secretary

# Exhibit E

10-Q 1 i10766.htm

# U.S. SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

# FORM 10-Q

☑   Quarterly Report Pursuant to Section 13 or 15(d) of the Securities Exchange Act 1934 for the Quarterly Period Ended December 31, 2009

or

☐   Transition Report Pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 for the transition period from _____ to _____

**Commission File Number 0-22153**

# AMERITRANS CAPITAL CORPORATION
(Exact name of registrant as specified in its charter)

| **Delaware** | **52-2102424** |
|---|---|
| (State of incorporation) | (I.R.S.  Employer Identification No.) |

**747 Third Avenue, New York, New York 10017**
(Address of Registrant's principal executive office) (Zip Code)

**(212) 355-2449**
(Registrant's telephone number, including area code)

**N/A**
(Former name, former address and former fiscal year, if changed since last report)

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 (the "Act") during the preceding 12 months (or for such shorter period that the Registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days.  Yes ☑ No ☐

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, a non-accelerated filer, or a smaller reporting company (as defined in Rule 12b-2 of the Act).

☐Large accelerated filer      ☐Accelerated filer      ☑Non-accelerated filer      ☐Smaller reporting company
(Do not check if a small reporting company.)

Indicate by check mark whether the registrant is a shell company (as defined in Rule 12b-2 of the Exchange Act).
Yes ☐ No ☑

The number of shares of registrant's common stock, par value $.0001 per share, outstanding as of February 4, 2010 was 3,395,583. The number of shares of Registrants 9⅜ cumulative participating redeemable preferred stock outstanding as of February 4 , 2010 was 300,000.

**AMERITRANS CAPITAL CORPORATION AND SUBSIDIARIES**

**FORM 10-Q**

**TABLE OF CONTENTS**

**PART I. FINANCIAL INFORMATION**                                                                                                 3

    **ITEM 1.**      FINANCIAL STATEMENTS                                                                        3

    **ITEM 2.**      MANAGEMENT'S DISCUSSION AND ANALYSIS OF FINANCIAL CONDITION
                     AND RESULTS OF OPERATIONS                                            26

    **ITEM 3.**      QUANTITATIVE AND QUALITATIVE DISCLOSURE ABOUT MARKET RISK                      30

    **ITEM 4T.**    CONTROLS AND PROCEDURES                                                                  31

**PART II. OTHER INFORMATION**                                                                                                    33

    Item 1.         Legal Proceedings                                                                    33
    Item 1A.        Risk Factors                                                                         33
    Item 2.         Unregistered Sales of Equity Securities and Use of Proceeds                          33
    Item 3.         Default upon Senior Securities                                                       33
    Item 4.         Submission of Matters to a Vote of Security Holders                                  33
    Item 5.         Other Information                                                                    33
    Item 6.         Exhibits                                                                             33
    Exhibit Index                                                                                                                33
                *(a) Exhibits*                                                                       33

    **SIGNATURES**                                                                                                               35

PART I.    FINANCIAL INFORMATION

ITEM 1.   FINANCIAL STATEMENTS

## AMERITRANS CAPITAL CORPORATION AND SUBSIDIARIES
## CONSOLIDATED STATEMENTS OF ASSETS AND LIABILITIES

### ASSETS

| | December 31, 2009 (unaudited) | June 30, 2009 |
|---|---|---|
| **Assets** | | |
| Investments at fair value | | |
| (cost of $27,328,913 and $28,769,396, respectively): | | |
|     Non-controlled/non-affiliated investments | $ 22,494,839 | $ 25,080,451 |
|     Non-controlled affiliated investments | 711,000 | 711,000 |
|     Controlled affiliated investments | 607,063 | 618,017 |
|       Total investments at fair value | 23,812,902 | 26,409,468 |
| Cash and cash equivalents | 10,896,740 | 885,434 |
| Accrued interest receivable | 413,240 | 540,213 |
| Assets acquired in satisfaction of loans | 28,325 | 28,325 |
| Furniture, equipment and leasehold improvements, net | 119,140 | 130,217 |
| Deferred loan costs, net | 437,586 | 146,096 |
| Prepaid expenses and other assets | 107,562 | 146,403 |
|       Total assets | $ 35,815,495 | $ 28,286,156 |

The accompanying notes are an integral part of these consolidated financial statements.

3

**AMERITRANS CAPITAL CORPORATION AND SUBSIDIARIES**
**CONSOLIDATED STATEMENTS OF ASSETS AND LIABILITIES**

### LIABILITIES AND NET ASSETS

| | | December 31, 2009 (unaudited) | | June 30, 2009 |
|---|---|---|---|---|
| **Liabilities and Net Assets** | | | | |
| **Liabilities:** | | | | |
| Debentures payable to SBA | $ | 21,175,000 | $ | 12,000,000 |
| Notes payable, other | | 2,025,000 | | - |
| Notes payable, banks | | 370,000 | | 370,000 |
| Accrued expenses and other liabilities | | 546,052 | | 562,149 |
| Accrued interest payable | | 223,583 | | 210,165 |
| Total liabilities | | 24,339,635 | | 13,142,314 |
| | | | | |
| **Commitments and contingencies** (Notes 2, 3, 4 and 8) | | | | |
| | | | | |
| **Net Assets:** | | | | |
| Preferred stock 9,500,000 shares authorized, none issued or outstanding | | - | | - |
| 9-3/8% cumulative participating redeemable preferred stock $.01 par value, $12.00 face value, 500,000 shares authorized; 300,000 shares issued and outstanding | | 3,600,000 | | 3,600,000 |
| Common stock, $.0001 par value; 45,000,000 shares authorized, 3,405,583 shares issued; 3,395,583 shares outstanding | | 341 | | 341 |
| Deferred compensation (Note 9) | | (2,269) | | (29,166) |
| Stock options outstanding (Note 9) | | 191,040 | | 191,040 |
| Additional paid-in capital | | 21,139,504 | | 21,139,504 |
| Losses and distributions in excess of earnings | | (9,866,745) | | (7,327,949) |
| Net unrealized depreciation on investments | | (3,516,011) | | (2,359,928) |
| Total | | 11,545,860 | | 15,213,842 |
| Less: Treasury stock, at cost, 10,000 shares of common stock | | (70,000) | | (70,000) |
| Total net assets | | 11,475,860 | | 15,143,842 |
| Total liabilities and net assets | $ | 35,815,495 | $ | 28,286,156 |
| Net asset value per common share (Note 5) | $ | 2.32 | $ | 3.40 |

The accompanying notes are an integral part of these consolidated financial statements.

4

**AMERITRANS CAPITAL CORPORATION AND SUBSIDIARIES**
**CONSOLIDATED STATEMENTS OF OPERATIONS**

|  | For the three months ended | | For the six months ended | |
|  | December 31, 2009 | December 31, 2008 | December 31, 2009 | December 31, 2008 |
| --- | --- | --- | --- | --- |
|  | (unaudited) | (unaudited) | (unaudited) | (unaudited) |
| **Investment income:** |  |  |  |  |
| Interest on loans receivable: |  |  |  |  |
| Non-controlled/non-affiliated investments | $ 436,539 | $ 864,110 | $ 674,063 | $ 2,208,647 |
| Non-controlled affiliated investments | - | 3,825 | - | 8,105 |
| Controlled affiliated investments | 11,691 | 13,454 | 23,545 | 43,549 |
|  | 448,230 | 881,389 | 697,608 | 2,260,301 |
| Fees and other income | 36,358 | 89,355 | 40,740 | 169,904 |
| Total investment income | 484,588 | 970,744 | 738,348 | 2,430,205 |
| **Expenses:** |  |  |  |  |
| Interest | 181,154 | 266,095 | 347,413 | 753,374 |
| Salaries and employee benefits | 464,256 | 787,998 | 914,412 | 1,271,959 |
| Occupancy costs | 70,978 | 79,239 | 145,853 | 153,274 |
| Professional fees | 301,773 | 355,039 | 510,611 | 789,973 |
| Directors fees and expenses | 18,548 | 18,461 | 49,346 | 50,478 |
| Advisory Fee | 268,932 | 49,395 | 313,932 | 49,395 |
| Other administrative expenses | 180,515 | 171,258 | 305,633 | 417,326 |
| Total expenses | 1,486,156 | 1,727,485 | 2,587,200 | 3,485,779 |
| Net investment loss | (1,001,568) | (756,741) | (1,848,852) | (1,055,574) |
| Net realized gains (losses) on investments: |  |  |  |  |
| Non-controlled/non-affiliated investments | (463,550) | (497,482) | (689,944) | (484,334) |
| Non-controlled affiliated investments | - | - | - | - |
| Controlled affiliated investments | - | - | - | 8,315 |
|  | (463,550) | (497,482) | (689,944) | (476,019) |
| Net unrealized appreciation (depreciation) on investments | 744,234 | (53,174) | (1,156,083) | (254,410) |
| Net realized/unrealized gain (losses) on investments | 280,684 | (550,656) | (1,846,027) | (730,429) |
| Net decrease in net assets from operations | (720,884) | (1,307,397) | (3,694,879) | (1,786,003) |
| Distributions to preferred shareholders | - | (84,375) | - | (168,750) |
| Net decrease in net assets from operations available to common shareholders | $ (720,884) | $ (1,391,772) | $ (3,694,879) | $ (1,954,753) |
| **Weighted Average Number of Common Shares Outstanding:** |  |  |  |  |
| Basic and diluted | 3,395,583 | 3,395,583 | 3,395,583 | 3,395,583 |
| **Net Decrease in Net Assets from Operations Per Common Share:** |  |  |  |  |
| Basic and diluted | $ (0.21) | $ (0.41) | $ (1.09) | $ (0.58) |

The accompanying notes are an integral part of these consolidated financial statements.

5

AMERITRANS CAPITAL CORPORATION AND SUBSIDIARIES
CONSOLIDATED STATEMENTS OF CHANGES IN NET ASSETS

|  | For the six months ended | |
|  | December 31, 2009 | December 31, 2008 |
|  | (unaudited) | (unaudited) |
| **Increase (decrease) in net assets from operations:** | | |
| Net investment loss | $ (1,848,852) | $ (1,055,574) |
| Net realized loss from investments | (689,944) | (476,019) |
| Unrealized depreciation on investments | (1,156,083) | (254,410) |
| Net decrease in net assets resulting from operations | (3,694,879) | (1,786,003) |
| **Shareholder distributions:** | | |
| Distributions to preferred shareholders | - | (168,750) |
| **Capital share transactions:** | | |
| Stock options compensation expense | 26,897 | 57,269 |
| Net increase (decrease) in net assets resulting from capital shares transactions and shareholder distributions | 26,897 | (111,481) |
| Total decrease in net assets | (3,667,982) | (1,897,484) |
| **Net assets:** | | |
| Beginning of period | 15,143,842 | 20,798,292 |
| End of period | $ 11,475,860 | $ 18,900,808 |
| Net assets per preferred | $ 3,600,000 | $ 3,600,000 |
| Net assets per common | $ 7,875,860 | $ 15,300,808 |

The accompanying notes are an integral part of these consolidated financial statements.

6

**AMERITRANS CAPITAL CORPORATION AND SUBSIDIARIES**
**CONSOLIDATED STATEMENTS OF CASH FLOWS**

|  | For the six months ended | |
|---|---|---|
|  | December 31, 2009 | December 31 2008 |
|  | (unaudited) | (unaudited) |
| **Cash flows from operating activities:** | | |
| Net decrease in net assets from operations | $ (3,694,879) | $ (1,786,003) |
| Adjustments to reconcile net decrease in net assets from operations to net cash provided by (used in) operating activities: | | |
| Depreciation and amortization | 38,061 | 35,612 |
| Deferred compensation | 26,897 | 57,269 |
| Net realized losses on investments | 689,944 | 476,019 |
| Net unrealized depreciation on investments | 1,156,083 | 254,410 |
| Portfolio Investments | (2,057,564) | (4,775,126) |
| Proceeds from principal receipts, sales, maturity of investments | 2,808,102 | 34,232,065 |
| Changes in operating assets and liabilities: | | |
| Accrued interest receivable | 126,973 | 5,910 |
| Prepaid expenses and other assets | 38,841 | 214,446 |
| Deferred Loan Cost | (314,243) | - |
| Accrued expenses and other liabilities | (16,097) | (279,029) |
| Accrued interest payable | 13,418 | (50,492) |
| Total adjustments | 2,510,415 | 30,171,084 |
| Net cash provided by (used in) operating activities | (1,184,464) | 28,385,081 |
| **Cash flows from investing activities:** | | |
| Purchases of furniture and equipment | (4,230) | (1,688) |
| Net cash used in investing activities | (4,230) | (1,688) |
| **Cash flows from financing activities:** | | |
| Repayment of note payable, related parties | - | (100,000) |
| Proceeds from debentures | 9,175,000 | 2,750,000 |
| Proceeds from note payable, other | 2,025,000 | - |
| Repayment of notes payable, banks | - | (30,245,697) |
| Dividends paid | - | (168,750) |
| Net cash provided by (used in) financing activities | 11,200,000 | (27,764,447) |
| Net increase in cash and cash equivalents | 10,011,306 | 618,946 |
| **Cash and cash equivalents:** | | |
| Beginning of period | 885,434 | 665,893 |
| End of period | $ 10,896,740 | $ 1,284,839 |
| **Supplemental disclosure of cash flow information:** | | |
| Cash paid during the period for: | | |
| Interest | $ 333,995 | $ 803,866 |

The accompanying notes are an integral part of these consolidated financial statements.

7

**AMERITRANS CAPITAL CORPORATION AND SUBSIDIARIES**
**CONSOLIDATED STATEMENT OF INVESTMENTS**

| Portfolio Company (1) | Investment Investment Rate/Maturity | Portfolio Valuation as of December 31, 2009 (Unaudited) | | |
|---|---|---|---|---|
| | | Principal | Net Cost | Value |
| **Medallion Loans Receivable (1.95%) (5)** | | | | |
| **Boston Taxicab Medallion Portfolio** | 2  Medallion Loans | | | |
| | 8.19% Weighted Average Rate | $ 25,810 | $ 25,810 | $ 25,810 |
| **Chicago Taxicab Medallions** | 2 Medallion Loans | | | |
| | 7.83% Weighted Average Rate | 46,813 | 46,813 | 46,813 |
| **Florida Taxicab** | 2 Medallion Loans | | | |
| | 9.34% Weighted Average Rate | 151,361 | 151,361 | 151,361 |
| | | | 223,984 | 223,984 |
| | | | | |
| **Commercial Loans  Receivable (80.19%) (5)** | | | | |
| PPCP Inc. | Business Loan | | | |
| *Computer Software* | 8.0%, due 1/10 | 36,691 | 36,691 | - |
| Geronimo ATM Fund LLC | Collateralized Business Loan | | | |
| *ATM Operator* | 12.0%, due 5/09 | 146,822 | 146,822 | - |
| Cleaners of North Beach, LLC | Collateralized Business Loan | | | |
| *Dry Cleaners* | 5.5%, due 6/11 | 19,223 | 19,223 | 19,223 |
| Crown Cleaners of Miami Lakes | Collateralized Business Loan | | | |
| *Dry Cleaners* | 6.0%, due 7/11 | 2,422 | 2,422 | 2,422 |
| Crown Cleaners of Miami Lakes | Collateralized Business Loan | | | |
| *Dry Cleaners* | 6.0%, due 7/11 | 14,416 | 14,416 | 14,416 |
| Andy Fur Dry Cleaning, Inc. | Collateralized Business Loan | | | |
| *Dry Cleaners* | 11.5%, due 1/10 | 12,103 | 12,103 | - |
| Vivas & Associates, Inc. | Collateralized Business Loan | | | |
| *Nail Salon* | 9.0%, due 1/10 | 11,985 | 11,985 | - |
| Monticello Desserts, Inc. | Collateralized Business Loan | | | |
| *Retail Bakery* | 10.5%, due 4/10 | 38,317 | 38,317 | 38,317 |
| Chao Tenga LLC d/b/a AsianChao | Collateralized Business Loan | | | |
| *Retail Fast Food* | 10.5%, due 5/10 | 40,328 | 40,328 | 40,328 |
| Just Salad LLC | Collateralized Business Loan | | | |
| *Retail Food Service* | 10.0%, due 11/10 | 300,000 | 300,000 | 300,000 |
| Mi Tren Greenlawn, Inc. (7) | Subordinate Real Estate Mortgage | | | |
| *Retail Fast Food* | 10.75%, due 2/11 | 24,967 | 24,967 | 24,967 |
| E&Y General Construction Co. | Senior Real Estate Mortgage | | | |
| *Construction Services* | 10.5%, due 10/10 | 870,791 | 870,791 | 870,791 |
| Sealmax, Inc. (7) | Senior Real Estate Mortgage | | | |
| *Construction Services* | 12.0%, due 4/11 | 914,434 | 914,434 | 914,434 |
| Pier-Tech, Inc. | Subordinate Real Estate Mortgage – | | | |
| *Specialty Construction Services* | Participation 12.0%, due 9/10 | 12,760 | 12,760 | 12,760 |
| Soundview Broadcasting LLC | Senior Real Estate Mortgage | | | |
| *Television and Broadcasting* | 6.0%, due 9/11 | 1,911,500 | 1,911,500 | 1,911,500 |
| Golden Triangle Enterprises LLC | Senior Real Estate Mortgage | | | |
| *Retail Food Service* | 4.78%, due 12/13 | 304,200 | 304,200 | 304,200 |
| Goldhkin Wholesale Ent. Inc. | Senior Real Estate Mortgage | | | |
| *Retail Gasoline* | 11.5%, due 7/12 | 602,319 | 602,319 | 602,319 |
| Conklin Services & Construction Inc. (7) | Collateralized Business Loan | | | |
| Specialty Construction and Maintenance | 11.0%, due 10/08 | 1,648,181 | 1,648,181 | 1,403,280 |
| Mountain View Bar & Grill Inc. (7) | Collateralized Business Loan | | | |
| Retail Food Service | 12.0%, due 5/09 | 406,067 | 406,067 | 406,067 |
| J. JG. Associates, Inc. (7) | Senior Loan | | | |
| Consumer Receivable Collections | no stated rate, no maturity | 199,736 | 199,736 | 87,750 |
| J. JG. Associates, Inc. (7) | Senior Loan | | | |
| Consumer Receivable Collections | no stated rate, no maturity | 38,431 | 38,431 | 22,960 |
| Car-Matt Real Estate LLC | Senior Real Estate Mortgage | | | |
| Real Estate Mortgage | 12.0%, due 11/08 | 135,577 | 135,577 | 135,577 |

The accompanying notes are an integral part of these consolidated financial statements.

8

AMERITRANS CAPITAL CORPORATION AND SUBSIDIARIES
CONSOLIDATED STATEMENT OF INVESTMENTS (continued)

| Portfolio Company (1) | Investment Investment Rate/Maturity | Principal | Net Cost | Value |
|---|---|---|---|---|
| | | **Portfolio Valuation as of December 31, 2009 (Unaudited)** | | |
| 633 Mead Street, LLC (3) | Senior Real Estate Mortgage | | | |
| *First lien mortgage* | 12.0%, due 8/08 | 215,000 | 215,000 | 215,000 |
| CMCA, LLC (3) | Collateralized Business Loan | | | |
| *Consumer Receivable Collections* | 12%, no stated maturity | 275,002 | 275,002 | 275,002 |
| CMCA, LLC #2 (3)(7) | Collateralized Business Loan | | | |
| *Consumer Receivable Collections* | 12%, no stated maturity | 106,261 | 106,261 | 106,261 |
| Adiel Homes Inc.(7) | Senior Real Estate Mortgage | | | |
| *Construction Services* | 12%, due 1/09 | 250,000 | 250,000 | 250,000 |
| Western Pottery LLC | Subordinated Business Loan | | | |
| *Ceramic Sanitaryware Distributor* | -%, due 12/11 | 361,609 | 361,609 | 361,609 |
| PWT Holdings Inc | Collateralized Business Loan | | | |
| *Water Cooler Distributor* | 12.5%, due 6/10 | 433,224 | 433,224 | 433,224 |
| Greaves-Peters Laundry Systems Inc. | Collateralized Business Loan | | | |
| *Laundromat* | 10.9%, due 10/13 | 325,064 | 325,064 | 325,064 |
| Other Miscellaneous Loans (6) | | 146,559 | 146,559 | 125,565 |
| | Total Commercial Loans | | 9,803,989 | 9,203,036 |
| **Corporate Loans Receivable (110.25%) (5)** | | | | |
| Charlie Brown's Acquisition Co. | Term Loan B | | | |
| *Retail Food Service* | 8.25%, due 3/12 | 2,057,566 | 2,057,566 | 2,057,566 |
| Resco Products Inc. | Term Loan, First Lien | | | |
| *Diversified Manufacturing* | 8.5%, due 6/13 | 1,560,174 | 1,560,174 | 1,560,174 |
| Alpha Media Group Inc. | Term Loan, First Lien | | | |
| *Publishing* | 12.00%, due 7/13 | 1,950,051 | 1,950,051 | 1,320,060 |
| Centaur LLC | Term Loan, First Lien | | | |
| *Gaming* | 11.25%, due 10/12 | 1,361,035 | 1,361,035 | 1,246,423 |
| Learning Care Group Inc | Term Loan, First Lien | | | |
| *Private Education* | 8.0%, due 6/15 | 953,412 | 953,412 | 984,999 |
| Hudson Products Holdings Inc. | Term Loan, First Lien | | | |
| *Diversified Manufacturing* | 8.0%, due 8/15 | 1,444,429 | 1,444,429 | 1,481,251 |
| X-Rite Inc. | Term Loan, First Lien | | | |
| *Process Control Instruments* | 8.0%, due 10/12 | 1,159,185 | 1,159,185 | 1,165,026 |
| BP Metals LLC | Term Loan, First Lien | | | |
| *Diversified Manufacturing* | 10.03%, due 6/13 | 876,786 | 876,786 | 876,786 |
| Education Affiliates Inc. | Term Loan, First Lien | | | |
| *Private Education* | 8.0%, due 1/15 | 1,000,000 | 980,140 | 980,000 |
| Fairway Group Holdings Corp. | Term Loan, First Lien | | | |
| *Diversified Supermarkets* | 12.0%, Due 1/15 | 1,000,000 | 970,180 | 980,000 |
| | Total Corporate Loans | | 13,312,958 | 12,652,285 |
| | **Total loans receivable** | | 23,340,931 | 22,079,305 |
| **Life Insurance Settlement Contracts (8.12%) (5)** | | | | |
| Vibrant Capital Corp. (J.V. #1) (4) | 5 life insurance policies, aggregate face value of $20,909,809 | | 2,543,055 | 931,297 |

The accompanying notes are an integral part of these consolidated financial statements.

9

AMERITRANS CAPITAL CORPORATION AND SUBSIDIARIES
CONSOLIDATED STATEMENT OF INVESTMENTS (continued)

| Portfolio Company (1) | Investment Investment Rate/Maturity | Portfolio Valuation as of December 31, 2009 (Unaudited) | | |
|---|---|---|---|---|
| | | Principal | Net Cost | Value |
| **Equity Investments (6.95%) (5)** | | | | |
| MBS Steeplecrest, Ltd. | | | | |
| *Rental Real Estate Limited Partnership* | Limited Partnership Interest | | - | - |
| MBS Huntwick, Ltd. | | | | |
| *Rental Real Estate Limited Partnership* | Limited Partnership Interest | | - | - |
| MBS Cranbrook Ltd. | | | | |
| *Rental Real Estate Limited Partnership* | Limited Partnership Interest | | - | - |
| MBS Serrano, Ltd. | | | | |
| *Rental Real Estate Limited Partnership* | Limited Partnership Interest | | 50,600 | - |
| MBS Colonnade, Ltd. | | | | |
| *Rental Real Estate Limited Partnership* | Limited Partnership Interest | | 50,000 | - |
| MBS Briar Meadows, Ltd. | | | | |
| *Rental Real Estate Limited Partnership* | Limited Partnership Interest | | - | - |
| MBS Indian Hollow, Ltd. | | | | |
| *Rental Real Estate Limited Partnership* | Limited Partnership Interest | | - | - |
| MBS Sage Creek, Ltd. | | | | |
| *Rental Real Estate Limited Partnership* | Limited Partnership Interest | | 50,000 | 27,558 |
| MBS Walnut Creek, Ltd. | | | | |
| *Rental Real Estate Limited Partnership* | Limited Partnership Interest | | 25,000 | 7,480 |
| MBS Lodge At Stone Oak, Ltd. | | | | |
| *Rental Real Estate Limited Partnership* | Limited Partnership Interest | | 60,000 | 30,896 |
| 238 W. 108 Realty LLC (2) | | | | |
| *Residential Real Estate Development* | 5% LLC Interest | | 106,000 | 11,000 |
| Asset Recovery & Management, LLC (3) | | | | |
| *Consumer Receivable Collections* | 30.0% LLC Interest | | 6,000 | 6,000 |
| 633 Mead Street, LLC (3) | | | | |
| *Real Estate Development* | 57.1% LLC Interest | | 800 | 800 |
| CMCA, LLC (3) | | | | |
| *Consumer Receivable Collections* | 30% LLC Interest | | 4,000 | 4,000 |
| Soha Terrace II LLC (2) | | | | |
| *Real Estate Development* | 6% LLC Interest | | 700,000 | 700,000 |
| Fusion Telecommunications | | | | |
| *Internet Telephony* | 69,736 Shares of Common Stock | | 367,027 | 9,066 |
| EraGen Biosciences | | | | |
| *Analytic Compounds* | 17,000 shares of Common Stock | | 25,500 | 5,500 |
| Alpha Media Group Inc. | | | | |
| *Publishing* | 1,040 Shares of Common Stock | | | |
| | 139 Shares of Preferred Stock | | - | - |
| | Total equity investments | | 1,444,927 | 802,300 |
| | Total investments | $ | 27,328,913 | $ 23,812,902 |

(1) Unless otherwise noted, all investments are collateral for the Notes payable, banks (see Note 6 to the consolidated financial statements).

(2) As defined in the Investment Company Act of 1940, we are an affiliate of this portfolio company because, as of December 31, 2009, we own 5% or more of the portfolio company's outstanding voting securities.

(3) As defined in the Investment Company Act of 1940, we maintain "control" of this portfolio company because we own more than 25% of the portfolio company's outstanding voting securities.

(4) The Company received interest at a rate of 12% per annum pursuant to an agreement with another company (see Note 2 to the consolidated financial statements for more details).

(5) Percentage of net assets.

(6) Other small balance loans.

(7) Loan receivable is on non-accrual status and therefore is considered non-income producing.

The accompanying notes are an integral part of these consolidated financial statements.

10

**AMERITRANS CAPITAL CORPORATION AND SUBSIDIARIES**
**CONSOLIDATED STATEMENT OF INVESTMENTS**

| Portfolio Company (1) | Investment Investment Rate/Maturity | Portfolio Valuation as of June 30, 2009 | | |
|---|---|---|---|---|
| | | Principal | Net Cost | Value |
| **Medallion Loans Receivable (2.36%) (5)** | | | | |
| **Boston Taxicab Medallion Portfolio** | 2  Medallion Loans | | | |
| | 8.19% Weighted Average Rate | $ 26,173 | $ 26,173 | $ 26,173 |
| **Chicago Taxicab Medallions** | 3 Medallion Loans | | | |
| | 7.83% Weighted Average Rate | 84,309 | 84,309 | 84,309 |
| **Florida Taxicab** | 2 Medallion Loans | | | |
| | 9.34% Weighted Average Rate | 252,129 | 252,129 | 246,218 |
| | | | 362,611 | 356,700 |
| | | | | |
| **Commercial Loans Receivable (74.57%) (5)** | | | | |
| A Lot of Cars LLC (7) | Collateralized Business Loan | | | |
| *Black Car Leasing* | 7.0%, due 6/09 | 75,050 | 75,050 | 75,050 |
| PPCP Inc. | Business Loan | | | |
| *Computer Software* | 8.0%, due 7/08 | 14,272 | 14,272 | - |
| PPCP Inc. | Business Loan | | | |
| *Computer Software* | 8.0%, due 7/08 | 16,499 | 16,499 | - |
| Geronimo ATM Fund LLC | Collateralized Business Loan | | | |
| *ATM Operator* | 12.0%, due 5/09 | 146,822 | 146,822 | - |
| Cleaners of North Beach, LLC | Collateralized Business Loan | | | |
| *Dry Cleaners* | 5.5%, due 5/11 | 24,454 | 24,454 | 24,454 |
| Crown Cleaners of Miami Lakes | Collateralized Business Loan | | | |
| *Dry Cleaners* | 6.0%, due 7/11 | 3,072 | 3,072 | 3,072 |
| Crown Cleaners of Miami Lakes | Collateralized Business Loan | | | |
| *Dry Cleaners* | 6.0%, due 7/11 | 19,262 | 19,262 | 19,262 |
| City Brite Cleaners Inc. | Collateralized Business Loan | | | |
| *Dry Cleaners* | 11.0%, due 7/09 | 665 | 665 | 665 |
| Andy Fur Dry Cleaning, Inc. | Collateralized Business Loan | | | |
| *Dry Cleaners* | 14.5%, due 1/10 | 12,103 | 12,103 | - |
| Vivas & Associates, Inc. | Collateralized Business Loan | | | |
| *Nail Salon* | 9.0%, due 1/10 | 12,185 | 12,185 | - |
| PPCP, Inc. | Business Loan | | | |
| *Computer Software* | 8.0%, due 1/10 | 5,965 | 5,965 | - |
| Monticello Desserts, Inc. | Collateralized Business Loan | | | |
| *Retail Bakery* | 14.0%, due 4/10 | 53,237 | 53,237 | 53,237 |
| Chao Tenga LLC d/b/a AsianChao | Collateralized Business Loan | | | |
| *Retail Fast Food* | 15.5%, due 5/10 | 98,481 | 98,481 | 98,481 |
| Just Salad LLC | Collateralized Business Loan | | | |
| *Retail Food Service* | 10.0%, due 10/10 | 320,925 | 320,925 | 320,925 |
| Mi Tren Greenlawn, Inc . (7) | Subordinate Real Estate Mortgage | | | |
| *Retail Fast Food* | 13.75%, due 2/11 | 54,616 | 54,616 | 54,616 |
| E&Y General Construction Co. | Senior Real Estate Mortgage | | | |
| *Construction Services* | 10.5%, due 10/10 | 870,791 | 870,791 | 870,791 |
| Lifehouse-Golden Acres Prop. | Senior Real Estate Mortgage – | | | |
| *Assisted Living Facility* | Participation 11.0%, due 2/09 | 770,840 | 770,840 | 770,840 |
| Sealmax, Inc. (7) | Senior Real Estate Mortgage | | | |
| *Construction Services* | 12.0%, due 4/11 | 437,230 | 437,230 | 437,230 |
| Sealmax, Inc. (7) | Senior Real Estate Mortgage | | | |
| *Construction Services* | 12.0%, due 4/11 | 325,000 | 325,000 | 325,000 |
| Pier-Tech, Inc. | Subordinate Real Estate Mortgage – | | | |
| *Specialty Construction Services* | Participation 12.0%, due 8/10 | 173,140 | 173,140 | 173,140 |
| Soundview Broadcasting LLC | Senior Real Estate Mortgage | | | |
| *Television and Broadcasting* | 7.75%, due 9/11 | 1,939,947 | 1,939,947 | 1,939,947 |
| Golden Triangle Enterprises LLC | Senior Real Estate Mortgage | | | |
| *Retail Food Service* | 7.01%, due 12/13 | 331,473 | 331,473 | 331,473 |
| Goldhkin Wholesale Ent. Inc. | Senior Real Estate Mortgage | | | |
| *Retail Gasoline* | 10.25%, due 7/12 | 632,414 | 632,414 | 632,414 |
| Sealmax, Inc. | Subordinate Real Estate Mortgage | | | |
| *Construction Services* | 12.0%, due 4/11 | 155,561 | 155,561 | 155,561 |
| Conklin Services & Construction Inc. (7) | Collateralized Business Loan | | | |
| Specialty Construction and Maintenance | 12%, due 10/08 | 1,713,280 | 1,713,280 | 1,463,280 |

The accompanying notes are an integral part of these consolidated financial statements.

11

**AMERITRANS CAPITAL CORPORATION AND SUBSIDIARIES**
**CONSOLIDATED STATEMENT OF INVESTMENTS (continued)**

| | | Portfolio Valuation as of June 30, 2009 | | |
| --- | --- | --- | --- | --- |
| Portfolio Company (1) | Investment<br>Investment Rate/Maturity | Principal | Net Cost | Value |
| Conklin Services & Construction Inc. Dem Note | Collateralized Business Loan | | | |
| *Specialty Construction and Maintenance (7)* | 11%, no maturity | 43,488 | 43,488 | 43,488 |
| Conklin Services & Construction Inc. Dem Note | Collateralized Business Loan | | | |
| *Specialty Construction and Maintenance (7)* | 11%, no maturity | 12,424 | 12,424 | 12,424 |
| Mountain View Bar & Grill Inc. | Collateralized Business Loan | | | |
| *Retail Food Service* | 12.0%, due 5/09 | 412,500 | 412,500 | 412,500 |
| J. JG. Associates, Inc. (7) | Senior Loan | | | |
| *Consumer Receivable Collections* | no stated rate, no maturity | 202,736 | 202,736 | 90,750 |
| J. JG. Associates, Inc. (7) | Senior Loan | | | |
| *Consumer Receivable Collections* | no stated rate, no maturity | 38,731 | 38,731 | 23,260 |
| Natural Person (7) | Senior Real Estate Mortgage | | | |
| *Real Estate Mortgage* | 12.0%, due 11/08 | 665,000 | 665,000 | 470,000 |
| Lifehouse – Golden Acres Prop. | Senior Real Estate Mortgage – | | | |
| *Assisted Living Facility* | Participation 11.0%, due 7/08 | 137,640 | 137,640 | 137,640 |
| Car-Matt Real Estate LLC | Senior Real Estate Mortgage | | | |
| *Real Estate Mortgage* | 12.0%, due 11/08 | 135,577 | 135,577 | 135,577 |
| 633 Mead Street, LLC (3) | Senior Real Estate Mortgage | | | |
| *First lien mortgage* | 12.0%, due 8/08 | 215,000 | 215,000 | 215,000 |
| CMCA, LLC (3) | Collateralized Business Loan | | | |
| *Consumer Receivable Collections* | 12%, no stated maturity | 285,956 | 285,956 | 285,956 |
| CMCA, LLC #2 (3) | Collateralized Business Loan | | | |
| *Consumer Receivable Collections* | 12%, no stated maturity | 106,261 | 106,261 | 106,261 |
| Adiel Homes Inc. | Senior Real Estate Mortgage | | | |
| *Construction Services* | 12%, due 1/09 | 250,000 | 250,000 | 250,000 |
| Western Pottery LLC (2) | Subordinated Business Loan | | | |
| *Ceramic Sanitaryware Distributor* | 5.0%, due 7/08 | 53,575 | 53,575 | 53,575 |
| Western Pottery LLC (2) | Subordinated Business Loan | | | |
| *Ceramic Sanitaryware Distributor* | 3.25%, due 10/08 | 107,142 | 107,142 | 107,142 |
| Western Pottery LLC (2) | Subordinated Business Loan | | | |
| *Ceramic Sanitaryware Distributor* | 5.0%, due 11/08 | 107,142 | 107,142 | 107,142 |
| Western Pottery LLC (2) | Subordinated Business Loan | | | |
| *Ceramic Sanitaryware Distributor* | 5.0%, due 3/09 | 56,250 | 56,250 | 56,250 |
| Western Pottery LLC (2) | Subordinated Business Loan | | | |
| *Ceramic Sanitaryware Distributor* | 5.0%, due 6/09 | 37,500 | 37,500 | 37,500 |
| PWT Holdings Inc | Collateralized Business Loan | | | |
| *Water Cooler Distributor* | 12.5%, due 6/10 | 508,159 | 508,159 | 508,159 |
| Greaves-Peters Laundry Systems Inc. | Collateralized Business Loan | | | |
| *Laundromat* | 10.9%, due 9/13 | 352,922 | 352,922 | 352,922 |
| Other Miscelleanous Loans (6) | | 159,143 | 159,143 | 138,148 |
| | Total Commercial Loans | | 12,094,430 | 11,293,132 |
| **Corporate Loans Receivable (80.52%) (5)** | | | | |
| Charlie Brown's Acquisition Co. | Term Loan B | | | |
| *Retail Food Service* | 6.67%, due 10/13 | 2,035,447 | 2,035,447 | 2,035,447 |
| Resco Products Inc. | Term Loan, First Lien | | | |
| *Diversified Manufacturing* | 5.95%, due 6/13 | 1,697,130 | 1,697,130 | 1,697,130 |
| Alpha Media Group Inc. | Term Loan, First Lien | | | |
| *Publishing* | 5.75%, due 8/14 | 1,845,791 | 1,845,791 | 1,935,172 |
| Centaur LLC | Term Loan, First Lien | | | |
| *Gaming* | 6.7%, due 10/12 | 1,356,931 | 1,356,931 | 1,384,913 |
| Learning Care Group Inc | Term Loan, First Lien | | | |
| *Private Education* | 8.4%, due 6/15 | 955,556 | 955,556 | 990,000 |
| Hudson Products Holdings Inc. | Term Loan, First Lien | | | |
| *Diversified Manufacturing* | 8.9%, due 8/15 | 1,448,715 | 1,448,715 | 1,488,751 |
| X-Rite Inc. | Term Loan, First Lien | | | |
| *Process Control Instruments* | 7.95%, due 10/12 | 1,244,210 | 1,244,210 | 1,251,051 |
| BP Metals LLC | Term Loan, First Lien | | | |
| *Diversified Manufacturing* | 8.76%, due 6/13 | 911,224 | 911,224 | 911,224 |
| Test Center LLC | Term Loan, First Lien | | | |
| *Data Collection Services* | 5.45%, due 10/13 | 512,935 | 512,935 | 499,567 |
| | Total Corporate Loans | | 12,007,939 | 12,193,255 |
| | **Total loans receivable** | | **24,464,980** | **23,843,087** |

The accompanying notes are an integral part of these consolidated financial statements.

12

**AMERITRANS CAPITAL CORPORATION AND SUBSIDIARIES**
**CONSOLIDATED STATEMENT OF INVESTMENTS (continued)**

| Portfolio Company (1) | Investment Investment Rate/Maturity | Portfolio Valuation as of June 30, 2009 | | |
|---|---|---|---|---|
| | | Principal | Net Cost | Value |
| **Life Insurance Settlement Contracts (11.65%) (5)** | | | | |
| Vibrant Capital Corp. (J.V. #1) (4) | 7 life insurance policies, aggregate face value of $30,750,000 | | 2,859,489 | 1,764,081 |
| | | | | |
| **Equity Investments (5.30%) (5)** | | | | |
| MBS Steeplecrest, Ltd. | | | | |
| *Rental Real Estate Limited Partnership* | Limited Partnership Interest | | - | - |
| MBS Huntwick, Ltd. | | | | |
| *Rental Real Estate Limited Partnership* | Limited Partnership Interest | | - | - |
| MBS Cranbrook Ltd. | | | | |
| *Rental Real Estate Limited Partnership* | Limited Partnership Interest | | - | - |
| MBS Serrano, Ltd. | | | | |
| *Rental Real Estate Limited Partnership* | Limited Partnership Interest | | 50,600 | - |
| MBS Colonnade, Ltd. | | | | |
| *Rental Real Estate Limited Partnership* | Limited Partnership Interest | | 50,000 | - |
| MBS Briar Meadows, Ltd. | | | | |
| *Rental Real Estate Limited Partnership* | Limited Partnership Interest | | - | - |
| MBS Indian Hollow, Ltd. | | | | |
| *Rental Real Estate Limited Partnership* | Limited Partnership Interest | | - | - |
| MBS Sage Creek, Ltd. | | | | |
| *Rental Real Estate Limited Partnership* | Limited Partnership Interest | | 50,000 | 27,558 |
| MBS Walnut Creek, Ltd. | | | | |
| *Rental Real Estate Limited Partnership* | Limited Partnership Interest | | 25,000 | 7,480 |
| MBS Lodge At Stone Oak, Ltd. | | | | |
| *Rental Real Estate Limited Partnership* | Limited Partnership Interest | | 60,000 | 30,896 |
| 238 W. 108 Realty LLC (2) | | | | |
| *Residential Real Estate Development* | 5% LLC Interest | | 106,000 | 11,000 |
| Asset Recovery & Management, LLC (3) | | | | |
| *Consumer Receivable Collections* | 30.0% LLC Interest | | 6,000 | 6,000 |
| 633 Mead Street, LLC (3) | | | | |
| *Real Estate Development* | 57.1% LLC Interest | | 800 | 800 |
| CMCA, LLC (3) | | | | |
| *Consumer Receivable Collections* | 30% LLC Interest | | 4,000 | 4,000 |
| Soha Terrace II LLC (2) | | | | |
| *Real Estate Development* | 6% LLC Interest | | 700,000 | 700,000 |
| Fusion Telecommunications | | | | |
| *Internet Telephony* | 69,736 Shares of Common Stock | | 367,027 | 9,066 |
| EraGen Biosciences | | | | |
| *Analytic Compounds* | 17,000 shares of Common Stock | | 25,500 | 5,500 |
| | Total equity investments | | 1,444,927 | 802,300 |
| | Total investments | $ 28,769,396 | | $ 26,409,468 |

(1) Unless otherwise noted, all investments as collateral for the Notes payable, banks (see Note 6 to the consolidated financial statements).

(2) As defined in the Investment Company Act of 1940, we are an affiliate of this portfolio company because, as of June 30, 2009, we own 5% or more of the portfolio company's outstanding voting securities.

(3) As defined in the Investment Company Act of 1940, we maintain "control" of this portfolio company because we own more than 25% of the portfolio company's outstanding voting securities.

(4) The Company receives interest at a rate of 12% per annum pursuant to an agreement with another company (see Note 2 to the consolidated financial statements for more details).

(5) Percentage of net assets.

(6) Other small balance loans.

(7) Loan receivable is on non-accrual status and therefore is considered non-income producing.

The accompanying notes are an integral part of these consolidated financial statements.

13

AMERITRANS CAPITAL CORPORATION AND SUBSIDIARIES

NOTES TO CONSOLIDATED FINANCIAL STATEMENTS

**Information at and for the three months and six months ended December 31, 2009 and 2008 are unaudited**

1. <u>**Organization and Summary of Significant Accounting Policies**</u>

<u>Financial Statements</u>

The consolidated statement of assets and liabilities of Ameritrans Capital Corporation ("Ameritrans", the "Company", "our", "us", or "we") as of December 31, 2009, and the related consolidated statements of operations, statement of changes in net assets, and cash flows for the three and six month periods ended December 31, 2009 and 2008 have been prepared by the Company, without audit, pursuant to the rules and regulations of the Securities and Exchange Commission (the "Commission"). Certain information and footnote disclosures normally included in financial statements prepared in accordance with accounting principles generally accepted in the United States have been condensed or omitted pursuant to such rules and regulations. In the opinion of management and the board of directors of the Company ("Management" and "Board of Directors"), the accompanying consolidated financial statements include all adjustments (consisting of normal, recurring adjustments) necessary to summarize fairly the Company's financial position and results of operations. The results of operations for the three and six month periods ended December 31, 2009 are not necessarily indicative of the results of operations for the full year or any other interim period. These financial statements should be read in conjunction with the audited financial statements and notes thereto included in the Company's Annual Report on Form 10-K for the fiscal year ended June 30, 2009, as filed with the Commission.

<u>Organization and Principal Business Activity</u>

Ameritrans Capital Corporation is a Delaware closed-end investment company formed in 1998, which, among other activities, makes loans and investments with the goal of generating both current income and capital appreciation. Through our subsidiary, Elk Associates Funding Corporation ("Elk"), we make loans to finance the acquisition and operation of small businesses as permitted by the U.S. Small Business Administration (the "SBA"). Ameritrans also makes loans to and invests in opportunities that Elk has historically been unable to make due to SBA restrictions. Ameritrans makes loans which have primarily been secured by real estate mortgages or, in the case of corporate loans, generally are senior within the capital structure. We also make equity investments which have primarily been in income producing real estate properties, or in real estate construction projects.

Elk was organized primarily to provide long-term loans to businesses eligible for investments by small business investment companies (each an "SBIC") under the Small Business Investment Act of 1958, as amended (the "1958 Act"). Elk makes loans for financing the purchase or continued ownership of businesses that qualify for funding as small concerns under SBA Regulations.

Both Ameritrans and Elk are registered as business development companies, or "BDCs," under the Investment Company Act of 1940, as amended (the "1940 Act"). Accordingly, Ameritrans and Elk are subject to the provisions of the 1940 Act governing the operation of BDCs. Both companies are managed by their executive officers under the supervision of their Boards of Directors.

The Company categorizes its investments into five security types: 1) Corporate Loans Receivable; 2) Commercial Loans Receivable; 3) Life Insurance Settlements; 4) Equity Investments; and 5) Medallion Loans Receivable. For a more detailed description of these investment categories please see the Company's Annual Report on Form 10-K for the year ended June 30, 2009, filed with the Commission by the Company on September 28, 2009 and which is available on the Company's web site at www.ameritranscapital.com .

<u>Basis of Consolidation</u>

The consolidated financial statements include the accounts of Ameritrans, Elk Capital Corporation ("ECC"), Elk and Elk's wholly owned subsidiary, EAF Holding Corporation ("EAF"). All significant inter-company transactions have been eliminated in consolidation.

ECC is a wholly owned subsidiary of Ameritrans, which may engage in lending and investment activities similar to its parent.

EAF began operations in December 1993 and owns and operates certain real estate assets acquired in satisfaction of defaulted loans by Elk debtors. At December 31, 2009 EAF was not operating any assets.

14

Investment Valuations

The Company's loans receivable, net of participations and any unearned discount are considered investment securities under the 1940 Act and are recorded at fair value. As part of fair value methodology, loans are valued at cost adjusted for any unrealized appreciation (depreciation). Since no ready market exists for these loans, the fair value is determined in good faith by management, and approved by the Board of Directors. In determining the fair value, the Company and Board of Directors consider factors such as the financial condition of the borrower, the adequacy of the collateral, individual credit risks, historical loss experience, and the relationships between current and projected market rates and portfolio rates of interest and maturities. Foreclosed properties, which represent collateral received from defaulted borrowers, are valued similarly.

Loans are considered "non-performing" once they become ninety (90) days past due as to principal or interest. The value of past due loans are periodically determined in good faith by management, and if, in the judgment of management, the amount is not collectible and the fair value of the collateral is less than the amount due, the value of the loan will be reduced to fair value.

Equity investments (common stock and stock warrants, including certain controlled subsidiary portfolio investments) and investment securities are recorded at fair value, represented as cost, plus or minus unrealized appreciation or depreciation. Investments for which market quotations are readily available are valued at such quoted amounts.  If no public market exists the fair value of investments that have no ready market are determined in good faith by management, and approved by the Board of Directors, based upon assets and revenues of the underlying investee companies as well as general market trends for businesses in the same industry.

The Company records the investment in life insurance policies at the Company's estimate of their fair value based upon various factors including a discounted cash flow analysis of anticipated life expectancies, future premium payments, and anticipated death benefits.  The fair value of the investment in life settlement contracts have no ready market and are determined in good faith by management, and approved by the Board of Directors (see Note 2).

Because of the inherent uncertainty of valuations, the Company's estimates of the values of the investments may differ significantly from the values that would have been used had a ready market for the investments existed, and the differences could be material.

Effective July 1, 2008, the Company adopted Accounting Standard Codification ("ASC") 820-10 previously Statement of Financial Accounting Standards No. 157, Fair Value Measurements ("SFAS 157"), which expands the application of fair value accounting for investments (see Note 2).

Income Taxes

The Company has elected to be taxed as a Regulated Investment Company ("RIC") under the Internal Revenue Code (the "Code").  A RIC generally is not taxed at the corporate level to the extent its income is distributed to its stockholders.  In order to qualify as a RIC, a company must pay out at least 90 percent of its net taxable investment income to its stockholders as well as meet other requirements under the Code.  In order to preserve this election for fiscal year 2009/2010, the Company intends to make the required distributions to its stockholders, therefore, no provision for federal income taxes has been provided in the accompanying consolidated financial statements.

The Company is subject to certain state and local franchise taxes, as well as related minimum filing fees assessed by state taxing authorities.  Such taxes and fees are included in "Other administrative expenses" in the consolidated statements of operations in each of the fiscal years presented.  The Company's tax returns for fiscal years ended 2006 through 2009 are subject to examination by federal, state and local income tax authorities.

Use of Estimates

The preparation of financial statements in conformity with U.S. generally accepted accounting principles requires management to make extensive use of estimates and assumptions that affect the reported amounts of assets and liabilities at the date of the financial statements and the reported amounts of revenues and expenses during the reporting period.  Actual results could differ from those estimates.  Estimates that are particularly susceptible to significant change relate to the determination of the fair value of the Company's investments.

15

Earnings (Loss) Per Share

Basic earnings (loss) per share includes no dilution and is computed by dividing current net increase (decrease) in net assets from operations available to common stockholders by the weighted average number of common shares outstanding for the period. Diluted earnings per share reflect, in periods in which they have a dilutive effect, the effect of common shares issuable upon the exercise of stock options and warrants. The difference between reported basic and diluted weighted average common shares results from the assumption that all dilutive stock options outstanding were exercised. For the years presented, the effect of common stock equivalents has been excluded from the diluted calculation since the effect would be antidilutive.

Dividends

Dividends and distributions to our common and preferred stockholders are recorded on the record date. The amount to be paid out as a dividend is determined by the Board each quarter and is generally based upon the earnings estimated by management. Net realized capital gains, if any, are distributed at least annually, although the Company may decide to retain such capital gains for investment.

On June 30, 2008, the Board approved and adopted a dividend reinvestment plan that provides for reinvestment of distributions in the Company's Common Stock on behalf of common stockholders, unless a stockholder elects to receive cash. As a result, if the Board authorizes, and the Company declares, a cash dividend, then those stockholders who have not "opted out" of the dividend reinvestment plan will have their cash dividends automatically reinvested in additional shares of Common Stock, rather than receiving the cash dividends. As of December 31, 2009, no shares have been purchased under the Plan.

Income Recognition

Interest income, including interest on loans in default, is recorded on an accrual basis and in accordance with loan terms to the extent such amounts are expected to be collected. The Company recognizes interest income on loans classified as non-performing only to the extent that the fair market value of the related collateral exceeds the specific loan balance. Loans that are not fully collateralized and in the process of collection are placed on nonaccrual status when, in the judgment of management, the collectability of interest and principal is doubtful.

Stock Options

The Company adopted ASC 718-10 (previously SFAS No. 123R, "*Accounting for Stock-Based Compensation*") and related interpretations in accounting for its stock option plans effective January 1, 2006, and accordingly, the Company will expense these grants as required. Stock-based employee compensation costs in the form of stock options will be reflected in net increase (decrease) in net assets from operations for grants made including and subsequent to January 1, 2006 only, since there were no unvested options outstanding at December 31, 2005, using the fair values established by usage of the Black-Scholes option pricing model, expensed over the vesting period of the underlying option. Previously, no compensation cost was recognized under these plans, as the Company followed the disclosure-only provisions under guidance at that time.

The Company elected the modified prospective transition method for adopting ASC 718-10. Under this method, the provisions of ASC 718-10 apply to all awards granted or modified after the date of adoption. The compensation cost is then recognized over the vesting period of the options (see Note 9). The Stock Option Plans expired on May 21, 2009. The Company has chosen not to renew the plans.

Financial Instruments

The carrying value of cash and cash equivalents, accrued interest receivable and payable, and other receivables and payables approximates fair value due to the relative short maturities of these financial instruments. The Company's investments, including loans receivable, life settlement contracts and equity securities, are carried at their estimated fair value. The carrying value of the bank debt is a reasonable estimate of their fair value as the interest rates are variable, based on prevailing market rates. The fair value of the SBA debentures were computed using the discounted amount of future cash flows using the Company's current incremental borrowing rate for similar types of borrowings (see Note 6).

Presentation of Prior Quarter Data

Certain reclassifications have been made to conform prior quarter data to the current presentation. Although the reclassifications resulted in changes to certain line items in the previously filed financial statements the overall effect of the reclassifications did not impact net assets available.

16

**2. Investments**

The following table shows the Company's portfolio by security type at December 31, 2009 and June 30, 2009:

| Security Type | December 31, 2009 Cost | Fair Value | % (1) | June 30, 2009 Cost | Fair Value | % (1) |
|---|---|---|---|---|---|---|
| Medallion Loans | $ 223,984 | $ 223,984 | 1.0% | $ 362,611 | $ 356,700 | 1.3% |
| Commercial Loans | 9,803,989 | 9,203,036 | 38.6% | 12,094,430 | 11,293,132 | 42.8% |
| Corporate Loans | 13,312,958 | 12,652,285 | 53.1% | 12,007,939 | 12,193,255 | 46.2% |
| Life Settlement Contracts | 2,543,055 | 931,297 | 3.9% | 2,859,489 | 1,764,081 | 6.7% |
| Equity Securities | 1,444,927 | 802,300 | 3.4% | 1,444,927 | 802,300 | 3.0% |
| Total | $ 27,328,913 | $ 23,812,902 | 100.0% | $ 28,769,396 | $ 26,409,468 | 100.0% |

   1)   Represents percentage of total portfolio at fair value

Investments by Industry

Investments by industry consist of the following as of December 31, 2009 and June 30, 2009:

| | Percentage of Portfolio at | |
|---|---|---|
| | December 31, 2009 | June 30, 2009 |
| Assisted Living Facilities | - | 3.4% |
| Broadcasting/Telecommunications | 8.0% | 7.3% |
| Commercial Construction | 11.7% | 11.6% |
| Construction and Predevelopment | 7.2% | 6.5% |
| Debt Collection | 2.1% | 2.0% |
| Education | 8.3% | 3.7% |
| Gaming | 5.2% | 5.2% |
| Gasoline Distribution | 2.5% | 2.4% |
| Laundromat | 1.4% | 1.3% |
| Life Insurance Settlement | 3.9% | 6.7% |
| Manufacturing | 16.5% | 15.5% |
| Office Water Systems | 1.8% | 1.9% |
| Printing/Publishing | 5.5% | 7.3% |
| Processing Control Instruments | 4.9% | 6.6% |
| Residential Mortgages | - | 1.8% |
| Restaurant/Food Service | 13.3% | 9.5% |
| Sanitaryware Distributor | 1.5% | 4.4% |
| Supermarkets | 4.1% | - |
| Industries less than 1% | 2.1% | 2.9% |
| TOTAL | 100.0% | 100.0% |

Loans Receivable

Loans are considered non-performing once they become ninety (90) days past due as to principal or interest. The Company had loans which are considered non-performing in the amount of $4,222,088 and $4,952,769 as of December 31, 2009 and June 30, 2009, respectively. These loans are either fully or substantially collateralized and are in some instances personally guaranteed by the debtor. Included in the total non-performing loans is $3,245,036 and $3,249,070 at December 31, 2009 and June 30, 2009, respectively, which is no longer accruing interest since the loan principal and accrued interest exceed the estimated fair value of the underlining collateral. The following table sets forth certain information regarding performing and non-performing loans as of December 31, 2009 and June 30, 2009:

| | December 31, 2009 | June 30, 2009 |
|---|---|---|
| Loans receivable | $ 22,079,305 | $ 23,843,087 |
| Performing loans | 17,857,217 | 18,890,318 |
| Nonperforming loans | $ 4,222,088 | $ 4,952,769 |
| Nonperforming loans: | | |
|   Accrual | $ 977,052 | $ 1,703,699 |
|   Nonaccrual | 3,245,036 | 3,249,070 |
| | $ 4,222,088 | $ 4,952,769 |

The Company has pledged its loans receivable and all other assets of the Company as collateral for its lines of credit (see Note 4).

On October 29, 2008 the Company completed the sale of substantially all of the Company's taxicab medallion portfolio to Medallion Financial Corp. and Medallion Bank, pursuant to that certain loan portfolio sale and purchase agreement dated as of July 16, 2008, as amended October 17, 2008 and further amended October 20, 2008 (the "Loan Purchase Agreement"). Ameritrans utilized cash on hand and all of the net proceeds from this transaction in the amount of $25,883,820 to fully pay down its existing bank indebtedness. Except for costs in the amount of approximately $340,000, relating to disposal of the assets, there was no gain or loss realized on this transaction as the taxi medallion portfolio was sold at par value. The loan Purchase Agreement was approved by the Company's shareholders on August 26, 2008.

As of December 31, 2009 the Company has accrued approximately $232,000 in professional fees, in connection with an investment advisory and management agreement related to Corporate Loans, which was approved by the shareholders on December 10, 2009 (the "Advisory Agreement"). The Company anticipates this will be paid upon execution of an amendment to said agreement, providing such additional fees, that will be submitted to shareholders for approval at a meeting of the Company's shareholders expected to be held in March, 2010. Pursuant to the Advisory Agreement, in future periods, the Company will pay a pro rated annual base fee of 1.50% per annum of the aggregate fair value of Corporate Loans outstanding at the end of each quarter. The Advisory Agreement also provides for an Income Based and Capital Gains fee as described therein.

Pursuant to the Advisory Agreement, Velocity Capital Advisors serve as the non-discretionary investment adviser to the Company with respect to the investment in (A) below investment grade (i) senior loans and notes, and (ii) subordinated notes, and (B) any other debt instruments to which the parties mutually agree ((A) and (B) which are generally collectively referred to as "Corporate Loans") and (C) incidental equity investments received in connection with the investment in the Debt Portfolio ("Incidental Equity") (collectively, the "Velocity Assets"). All investments in Corporate Loans are subject to the supervision of the Board and the review and recommendation of the Company's VCA investment committee.

At such time as the Velocity Assets exceed $75 million (and unless the Adviser has otherwise terminated the exclusivity obligations of the Company in accordance with the Advisory Agreement), the Adviser's services under the Advisory Agreement will be exclusive with respect to the Velocity Assets and assets similar to the Velocity Assets. The Advisory Agreement may be terminated at any time, without payment of a penalty, upon 60 days' written notice, by the vote of stockholders holding a majority of the outstanding voting securities of the Company, or by the vote of the Company's directors or by the Adviser. The Advisory Agreement will automatically terminate in the event of its assignment by the Adviser.

<u>Life Settlement Contracts</u>

In September 2006, the Company entered into an agreement with Vibrant Capital Corporation ("Vibrant"), (the "Vibrant Agreement"), an unaffiliated entity, to purchase life insurance policies owned by unrelated individuals. Under the terms of the Vibrant Agreement, the Company was designated as nominee to maintain possession of the policies and process transactions related to such policies until the policies were subsequently sold or a death benefit payment was made. Pursuant to the Vibrant Agreement, the Company was entitled to receive from Vibrant a twelve percent (12%) annual return on the amount of funds paid by the Company and outstanding on a monthly, prorated basis. Proceeds from the sale of the policies were to be distributed, net of direct expenses, as defined in the Vibrant Agreement.

In April, 2009, the Company learned that the manager of Vibrant had been charged with various violations of securities laws by the SEC. The SEC obtained a court order freezing the assets of the manager and other entities with which he was involved, including Vibrant (the "Receivership Estate"). As of April 14, 2009, a trustee and a receiver (the "Receiver") were appointed to operate Vibrant. Throughout calendar 2009, the Company worked with the Receiver and investigated potential opportunities to maximize the value of the Company's interest in the life insurance contracts.

Initially, the Company made certain contributions to the payment of the premiums in order to keep the policies in full force and effect and preserve their value. Thereafter, utilizing a line of credit secured by certain assets of the Receivership Estate, the Receiver advanced premiums due under certain policies to keep the policies in full force and effect. The Receiver engaged an independent specialist firm to service and market for sale all of the policies in the Receivership Estate.. In October 2009, the Receiver indicated it no longer had the funds available to pay future premiums and that it wanted to engage in a sale to one of two buyers that had indicated an interest in purchasing the Receivership Estate. Subsequently, both buyers determined not to complete a transaction. Following discussions with the Receiver, the Company negotiated an agreement (the "Purchase Agreement"), which among other items, granted the Company the right to purchase the policies, subject to certain terms and conditions and court approval.

18

Pursuant to the Purchase Agreement:

1)  The Company acquired all of the rights to and title and interest in, ten (10) life insurance policies (7 of which had been previously included in the Joint Venture), with an aggregate death benefit of $28,159,809, including one policy that had lapsed but could be possibly reinstated on appeal to the insurer.

2)  The Company agreed to pay the Receiver $30,000 to cover certain expenses;

3)  The Company agreed to pay the Receivership Estate 20% of all recoveries until such time as the Company has recouped approximately $2.1 million plus the amount of any premiums paid following the date of the Purchase Agreement;

4)  The Company agreed to pay the Receivership Estate 50% of all recoveries above the amounts described in Item 3 above;

5)  The Company agreed with the Receiver to enter into a settlement agreement with respect to the division of the proceeds from the rescission of one of the original Joint Venture policies, whereby the Company would receive $109,857;

6)  The Company agreed to the cancellation of certain claims the Company had against the Receivership Estate for premiums advanced since April 2, 2009;

7)  The Company and the Receivership Estate agreed that the Joint Venture Agreement would be cancelled, terminated and have no further effect; and

8)  Despite the percentage interest of the Receiver in any recovery, the Company reserved the right, in its sole discretion, to continue to fund premium payments or let any or all of the policies lapse.

The Purchase Agreement was dated December 18, 2009 and approved by the court on January 8, 2010.

Subsequent to court approval, the Company learned that certain of the policies had lapsed due to non-payment of premiums. As of December 31, 2009, the Company owned a total of five (5) policies with an aggregate death benefit of $20,909,809 which remained in full force and effect.

As of December 31, 2009, the fair value of the policies owned by the Company was $931,297, which represents the estimated fair value for the five (5) life insurance policies with an aggregate face value of $20,909,809. The Company's cost on these policies to date is $2,543,055, including insurance premiums of $63,500 which were paid in the quarter ended December 31, 2009.  Premiums on the policies must be paid until the policies are sold in order to keep the policies in full force.  As of December 31, 2009, Vibrant had paid the premiums on the policies in the aggregate amount of $513,903.  The Company no longer expects Vibrant to make any further premium payments and pursuant to the Purchase Agreement the Company has no duty to remit, any premium payments.

The Company is entitled to sell the policies at any time, in its sole discretion and has no obligation to pay future premiums on the various policies.  The approximate future minimum premiums due for each of the next five (5) years and in the aggregate thereafter, based on current life expectancy of the insureds, are as follows:

| Year Ending June 30 | | Policy Premiums |
|---|---|---|
| 2010 (six months) | $ | 411,425 |
| 2011 | | 822,850 |
| 2012 | | 822,850 |
| 2013 | | 822,850 |
| 2014 | | 822,850 |
| thereafter | | 2,527,300 |
| | $ | 6,230,125 |

Based upon the current uncertain state of the life settlement market, the lack of liquidity at this time in this market due to the difficult credit conditions and the overall economy, the fact that these policies may have diminished value due to having been associated with Vibrant, and the Company's previously stated decision to exit the life settlement area, the Company has adjusted the fair value of these policies to reflect the current anticipated recovery based on estimated actuarial values that take into account the various factors discussed above.   This is an estimate based upon the information currently available. The Company continues to pursue alternatives that could allow for a higher recovery.

19

Case 2:17-cv-03586-JFB-AYS   Document 47-2   Filed 10/06/17   Page 296 of 1053 PageID #: 870

Fair Value of Investments

Effective July 1, 2008, the Company adopted ASC 820-10 (previously SFAS 157, Fair Value Measurements), which expands application of fair value accounting. ASC 820-10 defines fair value, establishes a framework for measuring fair value in accordance with generally accepted accounting principles and expands disclosure of fair value measurements. ASC 820-10 determines fair value to be the price that would be received for an investment in a current sale, which assumes an orderly transaction between market participants on the measurement date. ASC 820-10 requires the Company to assume that the portfolio investment is sold in a principal market to market participants, or in the absence of a principal market, the most advantageous market, which may be a hypothetical market. Market participants are defined as buyers and sellers in the principal or most advantageous market that are independent, knowledgeable, and willing and able to transact. In accordance with ASC 820-10, the Company has considered its principal market as the market in which the Company exits its portfolio investments with the greatest volume and level of activity. ASC 820-10 specifies a hierarchy of valuation techniques based on whether the inputs to those valuation techniques are observable or unobservable. In accordance with ASC 820-10, these inputs are summarized in the three broad levels listed below:

- Level 1 – Valuations based on quoted prices in active markets for identical assets or liabilities that the Company has the ability to access.

- Level 2 – Valuations based on quoted prices in markets that are not active or for which all significant inputs are observable, either directly or indirectly.

- Level 3 – Valuations based on inputs that are unobservable and significant to the overall fair value measurement.

In addition to using the above inputs in investment valuations, we continue to employ the valuation policy approved by our board of directors that is consistent with ASC 820-10 (see Note 1).  Consistent with our valuation policy, we evaluate the source of inputs, including any markets in which our investments are trading (or any markets in which securities with similar attributes are trading), in determining fair value. Our valuation policy considers the fact that because there is not a readily available market value for most of the investments in our portfolio, the fair value of the investments must typically be determined using unobservable inputs.

Due to the inherent uncertainty of determining the fair value of investments that do not have a readily available market value, the fair value of our investments may fluctuate from period to period. Additionally, the fair value of our investments may differ significantly from the values that would have been used had a ready market existed for such investments and may differ materially from the values that we may ultimately realize.  Further, such investments are generally subject to legal and other restrictions on resale or otherwise are less liquid than publicly traded securities. If we were required to liquidate a portfolio investment in a forced or liquidation sale, we may realize significantly less than the value at which we have previously recorded it.

In addition, changes in the market environment and other events that may occur over the life of the investments may cause the gains or losses ultimately realized on these investments to be different than the valuations currently assigned.

The following table presents fair value measurements of investments as of December 31, 2009:

| | Total | | Fair Value Measurements Using | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- |
| | | | Level 1 | | Level 2 | | Level 3 |
| Investments | $ | 23,812,902 | $ | 9,066 | $ | - | $ | 23,803,836 |

The following table's present changes in investments that use Level 3 inputs for the six months ended December 31, 2009:

| | | Six months ended December 31, 2009 |
| --- | --- | --- |
| Balance as of June 30, 2009 | $ | 26,400,402 |
| Net unrealized gains (losses) | | (1,156,083) |
| Net purchases, sales or redemptions | | (1,440,483) |
| Net transfers in and/or out of Level 3 | | - |
| Balance as of December 31, 2009 | $ | 23,803,836 |

As of December 31, 2009, the net unrealized loss on the investments that use Level 3 inputs was $3,158,050.

20

**3.**    **Debentures Payable to SBA**

At December 31, 2009 and June 30, 2009 debentures payable to the SBA consisted of subordinated debentures with interest payable semiannually, as follows:

| Issue Date | Due Date | % Interest Rate | December 31, 2009 | June 30, 2009 | Annual Amount of Interest and User Fees |
|---|---|---|---|---|---|
| July 2002 | September 2012 | 4.67 (1) | $  2,050,000 | $  2,050,000 | $  113,488 |
| December 2002 | March 2013 | 4.63 (1) | 3,000,000 | 3,000,000 | 164,880 |
| September 2003 | March 2014 | 4.12 (1) | 5,000,000 | 5,000,000 | 249,300 |
| February 2004 | March 2014 | 4.12 (1) | 1,950,000 | 1,950,000 | 97,227 |
| December 2009 | March 2020 | (2) | 9,175,000 | - | - |
| | | | $  21,175,000 | $  12,000,000 | $  624,895 |

(1)   Elk is also required to pay an additional annual user fee of 0.866% on these debentures.
(2)   Interest rate to be established on March 23, 2010.  The long term ten (10) year interest rate will be determined at pooling based upon the then current ten (10) year rate for United States Treasury Notes, as adjusted  for certain fees and other items.  The interim interest rate is 0.87% per annum.

Under the terms of the subordinated debentures, Elk may not repurchase or retire any of its capital stock or make any distributions to its stockholders other than dividends out of retained earnings (as computed in accordance with SBA regulations) without the prior written approval of the SBA.

Pursuant to SBA's issuance of leverage in the form of debentures in the aggregate of $9,175,000, Elk submitted an application to draw the full amount of the awarded fiscal year 2009 commitment. SBA approved the leverage request and on December 2, 2009, Elk received the disbursement of $9,175,000 from the long term guaranteed debenture, and paid fees totaling $314,243 in accordance with SBA regulation.  The net proceeds of the draw were $8,952,506.

**4.**  **Notes Payable**

Banks

At December 31, 2009, the Company had credit lines with two (2) banks for lines of credit aggregating $370,000 of which $370,000 was outstanding.  The weighted average interest rate on the outstanding bank debt at December 31, 2009 was approximately 4.31% which represents an interest rate of 1.0% above the prime rate of interest designated by each bank. The credit line in the amount of $120,000 was extended to July 6, 2010.  The credit line of $250,000 was increased to $352,000 and has been extended to June 30, 2010.  Both lines extend under the same terms and conditions.

Pursuant to the terms of the current agreements the Company is required to comply with certain covenants and conditions, as defined in the agreements.  The Company has pledged its loans receivable and all other assets as collateral for the above lines of credit.
 Pursuant to the SBA agreement and an "intercreditor agreement" among the lending banks and the SBA, the SBA agreed to subordinate the SBA Debentures outstanding in favor of the banks.  In accordance with the loan documentation with the SBA and the banks, the Company must also comply with maintaining overall debt levels within a formula based upon the performance of its loan portfolio according to a "borrowing base" which is submitted for review to the SBA and the banks for periodic review.  The Company was in compliance with the terms and conditions of the "borrowing base" at December 31, 2009.

Other

On December 22, 2009, the Company issued $2,025,000 aggregate principal amount of its 8.75% notes due December 2011 (the "Notes") in a private offering.  The Notes bear interest at a rate of 8.75%, payable quarterly, but the Company has the option to extend the Notes until December 2012 at a rate of 5.5% , plus the then-current prime rate.  The Notes are redeemable by the Company at any time upon not less than 30 days prior notice.  A member of the Company's Board of Directors, and certain affiliated entities acquired $1,375,000 of the Notes in the offering.

**5.　Dividends to Stockholders**

The following table sets forth the dividends declared by the Company on our Common Stock and Preferred Stock for the six months ended December 31, 2009, and 2008:

| | For the six months ended December 31, 2009 | | | | |
|---|---|---|---|---|---|
| | Dividend Per Share | Amount | Declaration Date | Record Date | Pay Date |
| Preferred Stock: | | | | | |
| First quarter | | | | | |
| (July 1, 2009 - September 30, 2009) | Not Declared | | | | |
| Second quarter | | | | | |
| (October 1, 2009 – December 31, 2009) | Not Declared | | | | |
| Total Preferred Stock Dividends Declared | $　　　　-　| $　　　　- | | | |

| | For the six months ended December 31, 2008 | | | | |
|---|---|---|---|---|---|
| | Dividend Per Share | Amount | Declaration Date | Record Date | Pay Date |
| Preferred Stock: | | | | | |
| First quarter | | | | | |
| (July 1, 2008 - September 30, 2008) | $　0.28125 | $　84,375 | 09/29/08 | 10/09/08 | 10/15/08 |
| Second quarter | | | | | |
| (October 1, 2008 - December 31, 2008) | $　0.28125 | $　84,375 | 12/12/08 | 12/31/08 | 01/15/09 |
| Total Preferred Stock Dividends Declared | $　0.5625 | $　168,750 | | | |

The Company has not declared a preferred stock dividend for the quarters ended June 30, 2009, September 30, 2009, or December 31, 2009. Dividends on preferred stock accrue whether or not they have been declared. As of December 31, 2009, dividends not declared and in arrears are $253,125.  The net asset value after giving effect to the dividends when declared and paid would be $2.25.

**6.　Financial Instruments**

Fair value is defined as the amount at which the instrument could be exchanged in a current transaction between willing parties. The fair values presented below have been determined by using available market information and by applying valuation methodologies.

Loans Receivable and Life Settlement Contracts

- Loans receivable and life settlement contracts are recorded at their estimated fair value (see Note 2).

Investment Securities

- The estimated fair value of publicly traded equity securities is based on quoted market prices and privately held equity securities are recorded at their estimated fair value (see Note 2).

Debt

- The carrying value of the bank debt is a reasonable estimate of fair value as the interest rates are variable, based on prevailing market rates.

- The fair value of the SBA debentures was computed using the discounted amount of future cash flows using the Company's current incremental borrowing rate for similar types of borrowings.  The estimated fair values of such debentures as of December 31, 2009 and June 30, 2009 were approximately $21,204,000 and $11,844,000 respectively.  However, the Company does not expect that the estimated fair value amounts determined for these debentures would be realized in an immediate settlement of such debentures with the SBA.

- The carrying value of the note payable, other is a reasonable estimate of the fair value based on prevailing market rates.

Other

The carrying value of cash and cash equivalents, accrued interest receivable and payable, and other receivables and payables approximates fair value due to the relative short maturities of these financial instruments

22

**7.  Related Party Transactions**

The Company paid fees of $4,513 and $30,271 for the six months ended December 31, 2009 and 2008, respectively, for legal services provided by a law firm related to the chairman and certain other officers and directors of the Company (the "Law Firm").

Total occupancy costs under existing leases and overhead cost reimbursement agreements paid to the Law Firm and to another entity in which an officer of the Company has a financial interest amounted to $145,853 and $153,274 for the six months ended December 31, 2009 and 2008, respectively.

The Company utilized a relative of an officer of the Company to perform part-time administrative services.  This individual was paid per hour for administrative work he performs for the Company.  For the six months ended December 31, 2009 and 2008, he was paid an aggregate of $0 and $8,465, respectively.

The Company pays printing fees to a company partially owned by an officer and stockholder of the Company.  An aggregate of $3,838 and $8,760 for the six months ended December 31, 2009 and 2008, respectively, was paid for these services.

See Note 4 for additional related party transactions.

**8.  Commitments and Contingencies**

Interest Rate Swap

In October, 2005, Elk entered into two (2) interest rate swap transactions for $5,000,000 each, to hedge against an upward movement in interest rates relating to outstanding bank debt.  The swap transaction which expired October 15, 2007 provided for a fixed rate of 6.20%, and the swap transaction which expired October 14, 2008 provided for a fixed rate of 6.23%.  If the Company's floating borrowing rate (the one-month LIBOR rate plus 1.5%) fell below the fixed rate, Elk was obligated to pay the bank the differences in rates. If the Company's floating borrowing rate rose above the fixed rate, the bank was obligated to pay Elk the differences in rates.  For the six months ended December 31, 2009 and 2008, Elk incurred additional net interest expense of $0 and $32,973, respectively, due to the fluctuation of interest rates under these agreements.  As of December 31, 2009, the Company had no interest rate swaps outstanding.

**9.  Stock Option Plans**

Employee Incentive Stock Option Plan

An employee stock option plan (the "1999 Employee Plan") was adopted by the Ameritrans Board, including a majority of the non-interested directors, and approved by a vote of the stockholders, in order to link the personal interests of key employees to the Company's long-term financial success and the growth of stockholder value.  The Plan has a ten (10) year life which expires in May, 2009.  Subsequent amendments to the 1999 Employee Plan were approved by the stockholders in January 2002 and June 2007.  The amendments increased the number of shares reserved under the plan to 300,000 shares.

The 1999 Employee Plan authorized the grant of incentive stock options within the meaning of the Section 422 of the Internal Revenue Code for the purchase of an aggregate of 300,000 shares (subject to adjustment for stock splits and similar capital changes) of Common Stock to the Company's employees.  Effective as of May 21, 2009, in accordance with the terms of the 199 Employee Plan, the Board can no longer issue incentive stock options pursuant to such plan.  The Board adopted the 1999 Employee Plan to be in a better position attract, motivate, and retain as employees people upon whose judgment and special skills the Company's success in large measure depends.  As of December 31, 2009, options to purchase an aggregate of 291,850 shares of Common Stock outstanding with 271,850 fully vested.

The 1999 Employee Plan is administered by the 1999 Employee Plan Committee of the Board, which is comprised solely of non-employee directors (who are "outside directors" within the meaning of Section 152(m) of the Internal Revenue Code and "disinterested persons" within the meaning of Rule 16b-3 under the Securities Exchange Act of 1934 (the "Exchange Act")).  The committee can make such rules and regulations and establish such procedures for the administration of the 1999 Employee Plan as it deems appropriate.  Effective May 21, 2009, the 1999 Employee Plan expired.

Non-Employee Director Stock Option Plan

A stock option plan for non-employee directors (the "Director Plan") was adopted by the Ameritrans Board and approved by a vote of the stockholders, in order to link the personal interests of non-employee directors to the Company's long-term financial success and the growth of stockholder value.  The Director Plan is substantially identical to, and the successor to, a non-employee director stock option plan adopted by the Board of Elk and approved by its stockholders in September 1998 (the "Elk Director Plan").  Ameritrans and Elk submitted an application for, and received on August 31, 1999, an exemptive order relating to these plans from the SEC.  The Director Plan was amended by the Board on November 14, 2001, and

23

approved by the stockholders at the Annual Meeting on January 15, 2002. The amendment is still subject to the approval of the Securities and Exchange Commission. The amendment (i) increases the number of shares reserved under the plan from 75,000 to 125,000 and (ii) authorizes the automatic grant of an option to purchase up to 1,000 shares at the market value at the date of grant to each eligible director who is re-elected to the Board.

The total number of shares for which options may be granted from time to time under the Director Plan is 75,000 shares, which will be increased to 125,000 shares upon SEC approval of the Amended Director Plan. As of December 31, 2009, options to purchase an aggregate of 75,000 shares were issued and outstanding with 49,462 fully vested under the Director Plan. The Director Plan is administered by a committee of directors who are not eligible to participate in the Director Plan. Effective May 21, 2009, the Director Plan expired.

Options Granted, Expired and Canceled

There were no options granted or canceled during either of the six month periods ended December 31, 2009 and 2008.

On October 29, 2009, 29,425 grants expired.

After adoption of ASC 718-10 (previously SFAS No. 123R, " *Accounting for Stock-Based Compensation* ") (see Note 1), the fair value of the options granted amounted to $191,040 at December 31, 2009 and June 30, 2009, which is reflected as stock options outstanding in the accompanying consolidated statements of assets and liabilities. Compensation expense related to options vested for the six months ended December 31, 2009 and 2008 was $26,897 and $57,269, respectively. As of December 31, 2009, total deferred compensation related to unvested options was $2,269, which is expected to be recognized over a period of approximately one year.

The following tables summarize information about the transactions of both stock option plans as of December 31, 2009:

| | Stock Options | | |
| --- | --- | --- | --- |
| | | | Weighted Average |
| | Number of Options | | Exercise Price Per Share |
| Options outstanding at June 30, 2009 | 366,850 | $ | 3.90 |
| Granted | - | | - |
| Canceled | - | | - |
| Expired | 29,425 | | 4.70 |
| Exercised | - | | - |
| Options outstanding at December 31, 2009 | 337,425 | $ | 3.83 |

| Range of Exercise Prices | Options Outstanding | | | Options Exercisable | |
| --- | --- | --- | --- | --- | --- |
| | Number Outstanding at December 31, 2009 | Weighted Average Remaining Contractual Life | Weighted Average Exercise Price | Number Exercisable at December 31, 2009 | Weighted Average Exercise Price |
| $5.56-$6.12 | 29,425 | 1.00 years | $5.81 | 29,425 | $5.81 |
| $3.60 | 13,888 | 3.39 years | $3.60 | 13,888 | $3.60 |
| $6.25 | 16,000 | 0.04 years | $6.25 | 16,000 | $6.25 |
| $5.28 | 80,000 | 3.41 years | $5.28 | 80,000 | $5.28 |
| $5.30 | 9,433 | 1.98 years | $5.30 | 9,433 | $5.30 |
| $4.50 | 20,000 | 2.78 years | $4.50 | 20,000 | $4.50 |
| $4.93 | 10,141 | 2.36 years | $4.93 | 10,141 | $4.93 |
| $1.78 | 25,538 | 4.35 years | $1.78 | - | $1.78 |
| $2.36 | 133,000 | 3.78 years | $2.36 | 133,000 | $2.36 |
| $1.78-$6.25 | 337,425 | 3.14 years | $3.83 | 311,887 | $3.83 |

Effective December 10, 2009, the date on which the Investment Advisory Agreement with Velocity became effective, no further grants will be made under the Stock Option Plan. Effective May 21, 2009, the date on which the Employee Plan and the Director Plan expired, no further grants will be made pursuant to such plans. On October 29, 2009, 29,425 grants expired.

24

**10.    Financial Highlights**

| | Six Months Ended December 31, 2009 | Six Months Ended December 31, 2008 | Year Ended June 30, 2009 |
|---|---|---|---|
| **Net share data** | | | |
| Net asset value at the beginning of the period | $ 3.40 | $ 5.06 | $ 5.06 |
| Net investment loss | (0.54) | (.30) | (0.86) |
| Net realized and unrealized losses on investments | (0.54) | (.20) | (0.73) |
| **Net decrease in net assets from operations** | (1.08) | (.50) | (1.59) |
| Distributions to Stockholders (4) | - | (.05) | (0.07) |
| **Total decrease in net asset value** | (1.08) | (.65) | (1.66) |
| **Net asset value at the end of the period** | 2.32 | 4.51 | 3.40 |
| Per share market value at beginning of period | $ 1.63 | $ 3.01 | $ 3.01 |
| Per share market value at end of period | $ 1.30 | $ 2.36 | $ 1.63 |
| **Total return (1)** | (20.25%) | (19.9%) | (43.5%) |
| **Ratios/supplemental data** | | | |
| Average net assets (2) (in 000's) | $ 9,710 | $ 16,250 | $ 14,371 |
| Total expense ratio (3) | 53.3% | 42.9% | 43.7% |
| Net investment loss to average net assets (5) | (38.10%) | (13.0%) | (20.5%) |

(1)   Total return is calculated by dividing the change in market value of a share of common stock during the year, assuming the reinvestment of dividends on the payment date, by the per share market value at the beginning of the year.

(2)   Average net assets excludes capital from preferred stock.

(3)   Total expense ratio represents total expenses divided by average net assets annualized for interim periods.

(4)   Amount represents total dividends on both common and preferred stock divided by weighted average shares.

(5)   Annualized for interim periods.


**11.    Subsequent Events**

The Company has evaluated subsequent events that have occurred through February 16, 2010, the date of the financial statements issuance.

The Company extended its bank loan agreements through June 30, 2010 and July 6, 2010 (see Note 4).


**12.    Recent Accounting Pronouncements**

In January 2010, FASB issued ASU No. 2010-06, "Fair Value Measurements and Disclosures (Topic 820)," that requires reporting entities to make new disclosures about recurring or nonrecurring fair-value measurements including significant transfers into and out of Level 1 and Level 2 fair-value measurements and information on purchases, sales, issuances, and settlements on a gross basis in the reconciliation of Level 3 fair-value measurements. The FASB also clarified existing fair-value measurement disclosure guidance about the level of disaggregation, inputs, and valuation techniques. The new and revised disclosures are required to be implemented for interim and annual periods beginning after December 15, 2009, except for the disclosures about purchases, sales, issuances, and settlements of Level 3 activity. Those disclosures are effective for interim and annual periods beginning after December 15, 2010. The Company does not expect adoption of FASB ASU 2010-06 to have a material impact on its financial condition and results of operations.

In December 2009, FASB issued ASU No. 2009-17, "Consolidations: Improvements to Financial Reporting by Enterprises Involved with Variable Interest Entities," that amends the FASB ASC for the issuance of FASB Statement No. 167, "Amendments to FASB Interpretation No. 46(R)." The amendments in this ASU replace the quantitative-based risks and rewards calculation for determining which reporting entity, if any, has a controlling financial interest in a variable interest entity with an approach focused on identifying which reporting entity has the power to direct the activities of a variable interest entity that most significantly impact such entity's economic performance and (1) the obligation to absorb losses of such entity or (2) the right to receive benefits from such entity. An approach that is expected to be primarily qualitative will be more effective for identifying which reporting entity has a controlling financial interest in a variable interest entity. The amendments in ASU No. 2009-17 also require additional disclosures about a reporting entity's involvement in variable interest entities, which will enhance the information provided to users of financial statements. ASU No. 2009-17 is effective for annual periods beginning after November 15, 2009. The Company does not expect adoption of this standard to have a material impact on its financial condition and results of operations.

In September 2009, the FASB issued Accounting Standards Update 2009-12, "Fair Value Measurements and Disclosures (Topic 820), Investments in Certain Entities That Calculate Net Asset value per Share or its Equivalent" (FASB ASU 2009-12). FASB ASU 2009-12 amends Subtopic 820-10, Fair Value Measurements and Disclosures - Overall, and permits in certain circumstances a reporting entity to measure the fair value of an investment on the basis of the net asset value per share of the investment. Additionally, the update requires additional disclosures such as the nature of any restrictions on the investor's ability to redeem its investments at the measurement date, any unfunded commitments and the investment

25

strategies of the investees. FASB ASU 2009-12 is effective for reporting periods ending after December 15, 2009 with early adoption permitted. The adoption of FASB ASU 2009-12 did not have a material impact on its financial condition or results of operations.

In August 2009, the FASB issued Accounting Standards Update 2009-05, "Fair Value Measurements and Disclosures (Topic 820), Measuring Liabilities at Fair Value" (FASB ASU 2009-05). FASB ASU 2009-05 provides amendments to subtopic 820-10, Fair Value Measurements and Disclosures Overall, clarifies the techniques a reporting entity should use in valuing a liability in circumstances where a quoted price in an active market for an identical liability is not available, as well as clarifying that the requirements needed for Level 1 fair value measurements when the quoted price of an identical liability is utilized. FASB ASU 2009-05 is effective for the first reporting period beginning after issuance. The adoption of FASB ASU 2009-05 to did not have a material impact on its financial condition or results of operations.

In June 2009, FASB issued ASC 105, (previously SFAS NO. 168, *The FASB Accounting Standards Codification and the Hierarchy of Generally Accepted Accounting Principles ("GAAP") — a replacement of FASB Statement No. 162 ("Codification")* ). This Codification will become the source of authoritative U.S. GAAP recognized by FASB to be applied by nongovernmental entities. Once the Codification is in effect, all of its content will carry the same level of authority, effectively superseding SFAS No. 162, *The Hierarchy of Generally Accepted Accounting Principles* . In other words, the GAAP hierarchy will be modified to include only two levels of GAAP: authoritative and nonauthoritative. The Codification is not intended to change GAAP, but it will change the way GAAP is organized and presented. The Codification is effective for financial statements issued for interim and annual periods ending after September 15, 2009. In order to ease the transition to the Codification, the Company has provided the Codification cross-reference alongside the references to the standards issued and adopted prior to the adoption of the Codification.

In June 2009, FASB issued ASC 810 (previously SFAS No. 167, *Amendments to FASB Interpretation No. 46(R),* which amends the guidance in FASB Interpretation No. ("FIN") 46(R), *Consolidation of Variable Interest Entities* ). It requires reporting entities to evaluate former qualifying special-purpose entities ("QSPEs") for consolidation, changes the approach to determining the primary beneficiary of a variable interest entity (a "VIE") from a quantitative assessment to a qualitative assessment designed to identify a controlling financial interest, and increases the frequency of required reassessments to determine whether a company is the primary beneficiary of a VIE. It also clarifies, but does not significantly change, the characteristics that identify a VIE. ASC 810 requires additional year-end and interim disclosures for public and non-public companies that are similar to the disclosures required by FSP FAS 140-4 and FIN 46(R)-8, *Disclosures by Public Entities (Enterprises) about Transfers of Financial Assets and Interests in Variable Interest Entities.* ASC 810 is effective as of the beginning of a company's first fiscal year that begins after November 15, 2009, and for subsequent interim and annual reporting periods. All QSPE's and entities currently subject to FIN 46(R) will need to be reevaluated under the amended consolidation requirements as of the beginning of the first annual reporting period that begins after November 15, 2009. Early adoption is prohibited. The Company does not expect the adoption of the provisions of ASC 810 will have a material impact on our financial condition and results of operations.

In June 2009, the FASB issued ASC 860 (previously SFAS No. 166, Accounting for Transfer of Financial Assets, which amends the guidance in SFAS No. 140, Accounting for Transfers and Servicing of Financial Assets and Extinguishments of Liabilities).  It eliminates the QSPEs concept, creates more stringent conditions for reporting a transfer of a portion of a financial asset as a sale, clarifies the derecognition criteria, revises how retained interests are initially measured, and removes the guaranteed mortgage securitization recharacterization provisions. ASC 860 requires additional year-end and interim disclosures for public and nonpublic companies that are similar to the disclosures required by FSP FAS 140-4 and FIN 46(R)-8. ASC 860 is effective as of the beginning of a company's first fiscal year that begins after November 15, 2009, and for subsequent interim and annual reporting periods. ASC 860's disclosure requirements must be applied to transfers that occurred before and after its effective date. Early adoption is prohibited. The Company does not expect the adoption of the provisions of ASC 860 will have a material impact on our financial condition and results of operations.

26

AMERITRANS CAPITAL CORP 10-Q

**ITEM 2. MANAGEMENT'S DISCUSSION AND ANALYSIS OF FINANCIAL CONDITION AND RESULTS OF OPERATIONS**

The information contained in this section should be read in conjunction with the consolidated Financial Statements and Notes therewith appearing in this quarterly report on Form 10-Q and in the Company's Annual Report on Form 10-K for the year ended June 30, 2009, filed with the Commission by the Company on September 28, 2009 and which is available on the Company's web site at www.ameritranscapital.com.

**CRITICAL ACCOUNTING POLICIES**

**Investment Valuations**

The Company's loans receivable, net of participations and any unearned discount are considered investment securities under the 1940 Act and are recorded at fair value. As part of fair value methodology, loans are valued at cost adjusted for any unrealized appreciation (depreciation). Since no ready market exists for these loans, the fair value is determined in good faith by management, and approved by the Board of Directors. In determining the fair value, the Company and Board of Directors consider factors such as the financial condition of borrower, the adequacy of the collateral, individual credit risks, historical loss experience, and the relationships between current and projected market rates and portfolio rates of interest and maturities. Foreclosed properties, which represent collateral received from defaulted borrowers, are valued similarly.

Loans are considered "non-performing" once they become 90 days past due as to principal or interest. The value of past due loans are periodically determined in good faith by management, and if, in the judgment of management, the amount is not collectible and the fair value of the collateral is less than the amount due, the value of the loan will be reduced to fair value .

Equity investments (common stock and stock warrants, including certain controlled subsidiary portfolio investments) and investment securities are recorded at fair value.

The Company records the investment in life insurance policies at fair value, represented as cost, plus or minus unrealized appreciation or depreciation. The fair value of the investment in life settlement contracts have no ready market and are determined in good faith by management, and approved by the Board of Directors, based on secondary market conditions, policy characteristics and actuarial life expectancy, including health evaluations.

Because of the inherent uncertainty of valuations, the Company's estimates of the values of the investments may differ significantly from the values that would have been used had a ready market for the investments existed, and the differences could be material.

Effective July 1, 2008, the Company adopted ASC 820-10 (previously SFAS 157, Fair Value Measurements), which expands the application of fair value accounting for investments.

**Assets Acquired in Satisfaction of Loans**

Assets acquired in satisfaction of loans are carried at the estimated fair value adjusted for estimated cost of disposal. Losses incurred at the time of foreclosure are charged to the unrealized depreciation on loans receivable. Subsequent reductions in estimated net realizable value are charged to operations as losses on assets acquired in satisfaction of loans.

**Use of Estimates**

The preparation of financial statements in conformity with U.S. generally accepted accounting principles requires management to make extensive use of estimates and assumptions that affect the reported amounts of assets and liabilities at the date of the financial statements and the reported amounts of revenues and expenses during the reporting period. Actual results could differ from those estimates. Estimates that are particularly susceptible to significant change relate to the determination of the fair value of the Company's investments.

**Income Recognition**

Interest income, including interest on loans in default, is recorded on an accrual basis and in accordance with loan terms to the extent such amounts are expected to be collected. The Company recognizes interest income on loans classified as non-performing only to the extent that the fair market value of the related collateral exceeds the specific loan balance. Loans that are not fully collateralized and in the process of collection are placed on nonaccrual status when, in the judgment of management, the collectability of interest and principal is doubtful.

**Contingencies**

The Company is subject to legal proceedings in the course of its daily operations from enforcement of its rights in disputes pursuant to the terms of various contractual arrangements. In this connection, the Company assesses the likelihood of any adverse judgment or outcome to these matters as well as a potential range of probable losses. A determination of the amount of reserve required, if any, for these contingencies is made after careful analysis of each individual issue. The required

27

reserves may change in the future due to new developments in each matter or changes in approach, such as a change in settlement strategy in dealing with these matters.

**General**

Ameritrans acquired Elk on December 16, 1999. Elk is an SBIC that has been operating since 1980, making loans to (and, to a limited extent, investments in) small businesses, who qualify under SBA Regulations. Most of Elk's business historically consisted of originating and servicing loans collateralized by taxi medallions and loans to and investments in other diversified businesses. Since completing the sale of the medallion portfolio, most of the Company's net interest income has been generated from its Corporate and Commercial loans. Historically, Elk's earnings derived primarily from net interest income, which is the difference between interest earned on interest-earning assets (consisting of business loans), and the interest paid on interest-bearing liabilities (consisting of indebtedness to Elk's banks and subordinated debentures issued to the SBA). Net interest income is a function of the net interest rate spread, which is the difference between the average yield earned on interest-earning assets and the average interest rate paid on interest-bearing liabilities, as well as the average balance of interest-earning assets as compared to interest-bearing liabilities. Unrealized appreciation or depreciation on loans and investments is recorded when Elk adjusts the value of a loan to reflect management's estimate of the fair value, as approved by the Board of Directors.

**Results of Operations for the Three Months Ended December 31, 2009 and 2008**

**Total Investment Income**

The Company's investment income for the three months ended December 31, 2009 decreased $486,156, or 50%, to $484,588, as compared to the three months ended December 31, 2008. The decrease in investment income between the periods can be attributed primarily to an overall decrease in the size of the Company's loan receivable portfolio due to the sale of substantially all of the Company's taxicab medallion portfolio. The Company also stopped accruing interest income of approximately $70,000 for the quarter which primarily was interest on its life settlement portfolio and two (2) other Commercial Loans.

Medallion loans outstanding as of December 31, 2009 decreased by $453,829, or approximately 67%, to $223,984, as compared with December 31, 2008. The average interest rate earned on medallion loans decreased in 2009 as compared with the prior year, which coupled with the decline in portfolio size, lead to a decrease in medallion income for the quarter December 31, 2009 of approximately $364,500 as compared to the same period December 31, 2008.

Commercial Loans as of December 31, 2009 decreased by $3,317,461, or 26%, to $9,203,036, as compared with December 31, 2008. The decrease in Commercial Loans was due to loan amortization and paid off loans of approximately $2,400,000, a reduction in the fair value of a certain Commercial Loan of $250,000 and the sale of real estate which had collateralized a Commercial Loan which was foreclosed on and had been carried at $665,000.

Corporate Loans outstanding as of December 31, 2009 decreased by $159,825, or 1%, to $12,652,285, as compared with December 31, 2008. The interest rate earned on Corporate Loans increased in 2009, as compared with the prior year, primarily due to interest rate "resets" on Corporate Loans due to covenant defaults. The decrease in Corporate Loans outstanding was due to the sale of one (1) loan totaling approximately $940,000, amortization of other loans totaling approximately $500,000, and the reduction of the fair value of certain loans of approximately $715,000 partially offset by the addition of two (2) new loans totaling approximately $2,000,000. As these loans were originated in December, 2009, their contribution to income was minimal.

Life settlement contracts outstanding decreased by $1,505,139 as of December 31, 2009, or 62%, as compared with the three months ended December 31, 2008. This investment has stopped accruing interest and a fair value adjustment of $1,600,000 has been made to reflect the value of the investment. The investment has been valued based on industry valuation. This revaluation was partially offset by additional premiums paid. The reduction in interest income for the three months ended December 31, 2009 was approximately $66,000. (See Note 2 of the consolidated financial statements).

**Operating Expenses**

Interest expense for the three months ended December 31, 2009 decreased $84,941, or 32%, to $181,154, as compared to the three months ended December 31, 2008. This decrease was primarily due to the substantial reduction in bank debt outstanding which was paid off October 29, 2008 when compared with the three months ended December 31, 2008.

Salaries and employee benefits for the three months ended December 31, 2009 decreased $323,742 to $464,256, or approximately 41%, when compared to the three months ended December 31, 2008. This decrease reflects the reduction in payroll for an outsourced controller and a one-time payment to a key employee in connection with a restructuring of his employment agreement.

28

Occupancy costs for the three months ended December 31, 2009 decreased $8,261 to $70,978, or approximately 10% when compared with three months ended December 31, 2008.   This was due to a temporary increase in rented office space during 2008 that did not occur in 2009.

Professional fees for the three months ended December 31, 2009 decreased $53,266 to $301,773, or approximately 15%, when compared to the three months ended December 31, 2008.  Accounting fees for internal controls decreased approximately $41,000 to $35,829 when compared to the three months ended December 31, 2008.  In 2008, documentation with regard to controls was being improved, therefore considerably more fees were spent on implementation.  Legal fees to non-related parties decreased approximately $6,000 to $113,123 when compared to the three months ended December 31, 2008.  Legal fees to related parties decreased approximately $7,300 to $6,677 when compared to the three months ended December 31, 2008.   Accounting fees decreased approximately $2,200 to $49,925 when compared to the three months ended December 31, 2008.  Audit fees decreased approximately $34,000 to $63,868 when compared to the three months ended December 31, 2008.  This decrease was due to a reduction in audit fees attributable to the Company's smaller portfolio.  These decreases were partially offset by increases in legal fees associated with the Company's life settlement portfolio of $32,000.  Advisory Fees increased approximately $219,537 when compared to the three months ended December 31, 2008.  This increase was primarily due to a one-time payment of $225,000 as specified in the Advisory Agreement.  Miscellaneous administrative expenses decreased $28,401, or 19%, when compared with the three months ended December 31, 2008.  These decreases were primarily due to a reduction in line and facility fees as a result of the reduction in loan portfolio size.

### Decrease in Net Assets from Operations and Net Unrealized/Realized Gains (Losses)

Net decrease in net assets from operations was $720,884, for the three months ended December 31, 2009 as compared to $1,307,397, for the three months ended December 31, 2008.   The change in net assets from operations between the periods was attributable primarily to a decrease in unrealized depreciation of approximately $800,000, $540,000 of which is due a revaluation upward of life settlements and decreases in other loans' unrealized depreciation partially offset by reduction in net investment income of approximately $250,000 .  Dividends for Participating Preferred Stock were not declared for the three months ended December 31, 2009.  For three months ended December 31, 2008 dividends for Participating Preferred Stock were $84,375.

### Results of Operations for the Six Months Ended December 31, 2009 and 2008

### Total Investment Income

The Company's investment income for the six months ended December 31, 2009 decreased $1,691,857, or 70%, to $738,348, as compared to the six months ended December 31, 2008.  The decrease in investment income between the periods can be attributed to lower interest rates charged on the total loan portfolio for the quarter, and an overall decrease in the size of the Company's loan receivable portfolio due to the sale of substantially all of the Company's taxicab medallion portfolio.  A reduction of interest income of approximately $70,000 which primarily reflects non-performing loans and interest on life settlement during the six months ended December 31, 2009.

Medallion loans outstanding as of December 31, 2009 decreased by $453,829, or approximately 67%, to $223,984, as compared with December 31, 2008.  The interest rate earned on medallion loans decreased in 2009 as compared with the prior year, which coupled with the decline in portfolio size, lead to a decrease in medallion income for the quarter December 31, 2009 of approximately $30,000 as compared to the same period December 31, 2008.

Commercial Loans as of December 31, 2009 decreased by $3,317,461, or 26%, to $9,203,036, as compared with December 31, 2008.  The decrease was due to an increase of fair value adjustments of approximately $210,000, foreclosure and sale of real estate which had secured a Commercial Loan for $470,000, pay downs and pay off of loans.

Corporate Loans outstanding as of December 31, 2009 decreased by $159,825, or 1%, to $12,652,285, as compared with the six months ended December 31, 2008.  The interest rate earned on Corporate Loans decreased in 2009, as compared with the prior year, primarily due to decreases in LIBOR.  This LIBOR decrease was partially offset by higher rates earned on loans originated in this fiscal year, the use of LIBOR "floors" in loan agreements, and further offset by increases in rates on existing loans due to covenant resets.  The decrease in loans outstanding was due to a sale of a loan for approximately $940,000 and amortization on other corporate loans totaling approximately $500,000 and a fair value adjustment of loans of approximately $715,000, partially offset by the funding of two (2) new loans totaling $2,000,000.

Life settlement contracts outstanding decreased by $1,505,139 as of December 31, 2009, or 61%, as compared with the six months ended December 31, 2008.  This investment has stopped accruing interest and a fair value adjustment downward of approximately $1,611,758 has been made to reflect the value of the investment.   The reduction in interest income for the six months ended December 31, 2009 was approximately $66,000. (See Note 2 of the consolidated financial statements).

29

**Operating Expenses**

Interest expense for the six months ended December 31, 2009 decreased $405,961, or 54%, to $347,413, as compared to the six months ended December 31, 2008. This decrease was primarily due to the substantial reduction in bank debt outstanding when compared with the six months ended December 31, 2008.

Salaries and employee benefits for the six months ended December 31, 2009 decreased $357,547 to $914,412, or approximately 28%, when compared to the six months ended December 31, 2008. This decrease reflects the reduction in payroll for an outsourced controller and a one-time payment to a key employee in connection with a restructuring of his employment agreement in 2008.

Occupancy costs for the six months ended December 31, 2009 were $145,853 which did not materially change when compared with six months ended December 31, 2008.

Professional fees for the six months ended December 31, 2009 decreased $279,362 to $510,611, or approximately 35%, when compared to the six months ended December 31, 2008. Accounting fees for internal controls decreased approximately $129,906 to $78,850 when compared to the six months ended December 31, 2008. In 2008 documentation with regard to controls was being improved, therefore considerably more fees were spent on implementation. Legal fees to non-related parties decreased approximately $117,957 to $153,600 when compared to the six months ended December 31, 2008. Through better management of professional resources, the Company reduced the costs of preparing its SEC filings. Audit fees decreased approximately $69,275 to $103,524 when compared to the six months ended December 31, 2008. This decrease was due to a reduction in audit fees attributable the Company's smaller portfolio. These decreases were partially offset by increases in legal fees for Vibrant life services of $59,175 and accounting fees of $4,362. Advisory Fees increased approximately $264,537 when compared to the six months ended December 31, 2008. This increase was primarily due to a one-time payment of $225,000 as specified in the Advisory Agreement and further impacted by an increase in Corporate Loans outstanding when compared to the prior period. Miscellaneous administrative expenses decreased $111,694, or 27%, when compared with the six months ended December 31, 2008.

**Decrease in Net Assets from Operations and Net Unrealized/Realized Gains (Losses)**

Net assets from operations decreased to $3,694,879 for the six months ended December 31, 2009 as compared to $1,768,003 for the six months ended December 31, 2008. The decrease in net assets from operations between periods was attributable primarily to a decrease in investment income of approximately $1,600,000. This decrease was due to lower interest rates and smaller investment portfolio. Unrealized losses increased by approximately $900,000 reflected the restructuring of investments. Realized losses increased by approximately $200,000. The decreases were partially offset by a reduction in operating expenses of approximately $900,000 as discussed above.

Dividends on Participating Preferred Stock were not declared for the six months ended December 31, 2009. Dividends on Participating Preferred Stock were $168,750 for the six months ended December 31, 2008.

**Financial Condition at December 31, 2009 and June 30, 2009**

**Assets and Liabilities**

Total assets increased $7,529,339 to $35,815,495, at December 31, 2009 as compared to June 30, 2009 total assets of $28,286,156. This increase was primarily due to an increase in cash and equivalents of approximately $10,000,000, from funding of $9,175,000 in new debentures by the SBA and debt financing of approximately $2,000,000 partially offset by the funding of new loans of $2,000,000. This was partially offset by a decrease in investments of $2,596,506 due to a decrease in the fair value of the investments due to a revaluation of certain loans. Total liabilities increased by $11,197,321, to $24,339,635 at December 31, 2009 as compared to June 30, 2009, primarily due to an increase in SBA debentures and debt offering financing of $11,200,000.

**Liquidity and Capital Resources**

The Company has funded its operations through private and public placements of its securities, bank financing, the issuance to the SBA of its subordinated debentures and internally generated funds.

At December 31, 2009, approximately 1.5% of the Company's indebtedness was represented by indebtedness to its banks and other lenders with variable rates ranging from 3.9% to 4.5%, whereas approximately 87% of the Company's indebtedness was due to debentures issued to the SBA with fixed rates of interest plus user fees resulting in rates ranging from 4.99% to 5.54%. At December 31, 2009, approximately 11.5% of the Company's indebtedness was represented by certain notes payable which were issued in December, 2009. At December 31, 2009, the Company had available $370,000 of credit lines from its banks, of which $370,000 was drawn down as of that date, subject to the statutory and regulatory limitations imposed by the SBA.

30

In September 2006, the Company invested in life settlement contracts which require the company to continue premium payments to keep the policies in force through the insured's life expectancy, or until such time the policies are sold. The Company may sell the policies at any time, at its sole discretion. However, if the Company chooses to keep the policies, as of and after December 31, 2009, premium payments due through the life expectancy of the insured are approximately $3,703,000 over the next five years and approximately $2,527,000 thereafter (see Note 2 of the consolidated financial statements).

In December 31, 2009, the Company received from the SBA an additional $9,175,000 in SBA long term guaranteed debentures. The debentures carry an initial interest rate of 0.28%. On March 23, 2010, the debentures will be pooled and a new interest rate set. The new rate will then be fixed for the life of the debenture.

Loan amortization and prepayments also provide a source of funding for the Company. Prepayments on loans are influenced significantly by general interest rates, economic conditions and competition.

The Company will distribute at least 90% of its investment company taxable income and, accordingly, will continue to rely upon external sources of funds to finance growth. To provide the funds necessary for expansion, management expects to raise additional capital and to incur, from time to time, additional bank indebtedness and to obtain SBA loans. There can be no assurances that such additional financing will be available on acceptable terms.

### Recently Issued Accounting Standards

Refer to Note 12 in the accompanying consolidated financial statements for a summary of the recently issued accounting pronouncements.

### ITEM 3.   QUANTITATIVE AND QUALITATIVE DISCLOSURE ABOUT MARKET RISK

The Company's business activities contain elements of risk. The Company considers the principal types of risk to be fluctuations in interest rates and portfolio valuations. The Company considers the management of risk essential to conducting its businesses. Accordingly, the Company's risk management systems and procedures are designed to identify and analyze the Company's risks, to set appropriate policies and limits and to continually monitor these risks and limits by means of reliable administrative and information systems and other policies and programs.

The Company values its investment portfolio at fair value as determined in good faith by the Company's Board of Directors in accordance with the Company's valuation policy. Unlike certain lending institutions, the Company is not permitted to establish reserves for loan losses. Instead, the Company must value each individual investment and portfolio loan on a quarterly basis. The Company records unrealized depreciation on investments and loans when it believes that an asset has been impaired and full collection is unlikely. Without a readily ascertainable market value, the estimated value of the Company's portfolio of investments may differ significantly from the values that would be placed on the investment portfolio if there existed a ready market for the investments. The Company adjusts the valuation of the portfolio quarterly to reflect the Board of Directors' estimate of the current fair value of each component of the portfolio. Any changes in estimated fair value are recorded in the Company's statement of operations as net unrealized appreciation or depreciation on investments.

In addition, the illiquidity of our investment portfolio may adversely affect our ability to dispose of investments at times when it may be advantageous for us to liquidate such investments. Also, if we were required to liquidate some or all of the investments in the portfolio, the proceeds of such liquidation might be significantly less than the current value of such investments. Because we borrow money to make loans and investments, our net operating income is dependent upon the difference between the rate at which we borrow funds and the rate at which we loan and invest these funds. As a result, there can be no assurance that a significant change in market interest rates will not have a material adverse effect on our interest income. As interest rates rise, our interest costs increase, decreasing the net interest rate spread we receive and thereby adversely affect our profitability. Although we intend to continue to manage our interest rate risk through asset and liability management, including the use of interest rate swaps, general rises in interest rates will tend to reduce our interest rate spread in the short term.

Assuming that the assets and liabilities were to remain constant and no actions were taken to alter the existing interest rate sensitivity, a hypothetical immediate 1% increase in interest rates would have resulted in an additional net increase in net assets from operations of $95,532 at December 31, 2009. This is comprised of a 1% change in two components, loans receivable of $19,476,546 at variable interest rate terms, and $370,288 for bank debt subject to variable market rates. This hypothetical does not take into account interest rate floors or caps on the Company's loan receivable portfolio. No assurances can be given however, that actual results would not differ materially from the potential outcome simulated by these estimates.

31

**ITEM 4T. CONTROLS AND PROCEDURES**

**Disclosure Controls and Procedures**

Our management is responsible for establishing and maintaining adequate disclosure controls and procedures ( as defined in Rules 13a-15( e ) and 15d-15( e) under the Exchange Act). Our management, with the participation of our Chief Executive Officer, President and Chief Financial Officer, conducted an evaluation of the effectiveness of our disclosure controls and procedures. Based on such evaluation, our management, including our Chief Executive Officer, President and Chief Financial Officer concluded that our disclosure controls and procedures were effective as of December 31, 2009.

Because of their inherent limitations, disclosure controls and procedures may not prevent or detect misstatements. Also, projections of any evaluation of effectiveness to future periods are subject to the risks that disclosure controls and procedures may become inadequate because of changes in conditions, or that the degree of compliance with the policies or procedures may deteriorate.

**Internal Control over Financial Reporting**

There have been no changes in our internal control over financial reporting during the three months ended December 31, 2009 that have materially affected, or are reasonably likely to materially affect, the Company's internal control over financial reporting.

**IMPORTANT FACTORS RELATING TO FORWARD-LOOKING STATEMENTS**

**Cautionary Note Regarding Forward-Looking Statements**

This Quarterly Report includes forward-looking statements within the meaning of Section 27A of the Securities Act and Section 21E of the Securities Exchange Act. The matters discussed in this Quarterly Report, as well as in future oral and written statements by management of Ameritrans Capital Corporation, that are forward-looking statements are based on current management expectations that involve substantial risks and uncertainties which could cause actual results to differ materially from the results expressed in, or implied by, these forward-looking statements. Forward-looking statements relate to future events or our future financial performance. We generally identify forward-looking statements by terminology such as "may," "will," "should," "expects," "plans," "anticipates," "could," "intends," "target," "projects," "contemplates," "believes," "estimates," "predicts," "potential" or "continue" or the negative of these terms or other similar words. Important assumptions include our ability to originate new investments, achieve certain margins and levels of profitability, the availability of additional capital, and the ability to maintain certain debt to asset ratios. In light of these and other uncertainties, the inclusion of a projection or forward-looking statement in this Quarterly Report should not be regarded as a representation by us that our plans or objectives will be achieved. The forward-looking statements contained in this Quarterly Report include but are not limited to statements as to:

- our future operating results;

- our business prospects and the prospects of our existing and prospective portfolio companies;

- the impact of investments that we expect to make;

- our informal relationships with third parties;

- the dependence of our future success on the general economy and its impact on the industries in which we invest;

- the ability of our portfolio companies to achieve their objectives;

- our expected financings and investments;

- our regulatory structure and tax treatment;

- our ability to operate as a BDC and a RIC; and

- the adequacy of our cash resources and working capital.

You should not place undue reliance on these forward-looking statements. The forward-looking statements made in this Quarterly Report relate only to events as of the date on which the statements are made. We undertake no obligation to update any forward-looking statement to reflect events or circumstances occurring after the date of this Quarterly Report.

32

**PART II. OTHER INFORMATION**

INFORMATION INCORPORATED BY REFERENCE. Certain information previously disclosed in Part I of this quarterly report on Form 10-Q are incorporated by reference into Part II of this quarterly report on Form 10-Q.

**Item 1. Legal Proceedings**

The Company is not currently a party to any material legal proceeding. From time to time, the Company is engaged in various legal proceedings incident to the ordinary course of its business. In the opinion of the Company's management and based upon the advice of legal counsel, there is no proceeding pending, or to the knowledge of management threatened, which in the event of an adverse decision would result in a material adverse effect on the Company's results of operations or financial condition.

**Item 1A. Risk Factors**

None

**Item 2. Unregistered Sales of Equity Securities and Use of Proceeds**

None

**Item 3. Default upon Senior Securities**

None

**Item 4. Submission of Matters to a Vote of Security Holders**

The Company held a special meeting of its stockholders on December 10, 2009 (the "Meeting"). In connection with the Meeting, the Company solicited proxies from its stockholders pursuant to Regulation 14 under the Securities and Exchange Act of 1934, as amended. At the Meeting, the Company's stockholders voted upon a proposal to approve an Investment Advisory and Management Agreement with Velocity Capital Advisors LLC, and cast their votes as follows:

| | FOR | AGAINST | ABSTAIN |
|---|---|---|---|
| Common stock, par value $.0001 per share | 1,888,495 | 71,773 | 24,967 |
| 9-3/8% cumulative participating Redeemable preferred stock | 55,059 | 4,700 | 5,726 |

**Item 5. Other Information**

On January 4, 2010, Elk executed a fixed rate promissory note with Bank Leumi USA (the "Leumi Note") to extend its current line of credit in the principal amount of $120,000 to July 6, 2010 at an interest rate of 4.00%. As part of the agreement, Elk must maintain a certificate of deposit in the amount of $120,000.

On January 31, 2010, Elk executed an agreement to extend its line of credit with Israel Discount Bank in the principal amount of $352,000 to June 30, 2010 at an interest rate of 1% over the bank's prime rate of interest. The credit line was increased to $352,000 and currently $250,000 is drawn.

**Item 6. Exhibits**

The Exhibits filed as part of this report on Form 10-Q are listed on the Exhibit Index immediately preceding such Exhibits, which Exhibit index is incorporated by reference.

**Exhibit Index**

**(a)**      **Exhibits**

10.1     Executed Fixed Rate Promissory Note dated January 4, 2010 between Elk Associates Funding Corp. and Bank Leumi USA and extended to July 6, 2010. (attached hereto)

10.2     Executed Demand Grid Promissory Note dated April 30, 2009 between Elk and Israel Discount Bank of New York as amended as of October 31, 2009, January 31, 2010 and extended to June 30, 2010 (attached hereto)

31.1     Certification pursuant to Rule 13a-14(a) or Rule 15d-14(a), as adopted pursuant to Section 302 of the Sarbanes-Oxley Act of 2002. (attached hereto)

33

AMERITRANS CAPITAL CORP 10-Q

31.2 Certification pursuant to Rule 13a-14(a) or Rule 15d-14(a), as adopted pursuant to Section 302 of the Sarbanes-Oxley Act of 2002. (attached hereto)

32.1 Certification pursuant to 18 USC Section 1350, as adopted pursuant to Section 906 of the Sarbanes-Oxley Act of 2002. (attached hereto)

32.2 Certification pursuant to 18 USC Section 1350, as adopted pursuant to Section 906 of the Sarbanes-Oxley Act of 2002. (attached hereto)

(All other items of Part II are inapplicable)

34

Case 2:17-cv-03586-JFB-AYS   Document 17-2   Filed 10/06/17   Page 316 of 1053 PageID #: 8901

**AMERITRANS CAPITAL CORPORATION**

## SIGNATURES

Pursuant to the requirements of the Securities Exchange Act of 1934, the Registrant has duly caused this report to be signed on its behalf by the undersigned thereunto duly authorized.

**AMERITRANS CAPITAL CORPORATION**

Dated: February 16, 2010

By: /s/ Michael Feinsod

Michael Feinsod
Chief Executive Officer and President

35

EX-31.1 2 exh31_1.htm

**Exhibit 31.1**

**CERTIFICATIONS**

I, Michael Feinsod, certify that:

1.   I have reviewed this Quarterly Report on Form 10-Q of Ameritrans Capital Corporation;

2.   Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3.   Based on my knowledge, the financial statements and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;

4.   The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the registrant and have:

  a)   Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

  b)   Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

  c)   Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

  d)   Disclosed in this report any changes in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter, that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5.   The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

  a)   All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

  b)   Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

Date: February 16, 2010

/s/ Michael R. Feinsod
Michael R. Feinsod
Chief Executive Officer

EX-31.2 3 exh31_2.htm

**Exhibit 31.2**

**CERTIFICATIONS**

I, Gary C. Granoff, certify that:

1. I have reviewed this Quarterly Report on Form 10-Q of Ameritrans Capital Corporation;

2. Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3. Based on my knowledge, the financial statements and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;

4. The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the registrant and have:

   a) Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

   b) Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

   c) Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

   d) Disclosed in this report any changes in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter, that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5. The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

   a) All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

   b) Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

Date: February 16, 2010

/s/ Gary C. Granoff
Gary C. Granoff
Chief Financial Officer

EX-32.1 4 exh32_1.htm

**Exhibit 32.1**

## CERTIFICATION PURSUANT TO

## 18 U.S.C. SECTION 1350

## AS ADOPTED PURSUANT TO

## SECTION 906 OF THE SARBANES-OXLEY ACT OF 2002

In connection with the Quarterly Report of Ameritrans Capital Corporation (the "Company") on Form 10-Q for the period ended December 31, 2009 as filed with the Securities and Exchange Commission on February 16, 2010 (the "Report"), the undersigned, in the capacity and on the date indicated below, hereby certifies pursuant to 18 U.S.C. Section 1350, as adopted pursuant to Section 906 of the Sarbanes-Oxley Act of 2002, that:

1. The Report fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934, as amended; and

2. The information contained in the Report fairly presents, in all material respects, the financial condition and results of operation of the Company.

Date: February 16, 2010

/s/ Michael R. Feinsod
Michael R. Feinsod
Chief Executive Officer

EX-32.2 5 exh32_2.htm

**Exhibit 32.2**

## CERTIFICATION PURSUANT TO

## 18 U.S.C. SECTION 1350

## AS ADOPTED PURSUANT TO

## SECTION 906 OF THE SARBANES-OXLEY ACT OF 2002

In connection with the Quarterly Report of Ameritrans Capital Corporation (the "Company") on Form 10-Q for the period ended December 31, 2009 as filed with the Securities and Exchange Commission on February 16, 2010 (the "Report"), the undersigned, in the capacity and on the date indicated below, hereby certifies pursuant to 18 U.S.C. Section 1350, as adopted pursuant to Section 906 of the Sarbanes-Oxley Act of 2002, that:

1. The Report fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934, as amended; and

2. The information contained in the Report fairly presents, in all material respects, the financial condition and results of operation of the Company.

Date: February 16, 2010

/s/ Gary C. Granoff
Gary C. Granoff
Chief Financial Officer

# Exhibit F

Case 2:17-cv-03586-JFB-AYS Document 47-2 Filed 10/06/17 Page 322 of 1053 PageID #: 896

10-K 1 i11535.htm

# U.S. SECURITIES AND EXCHANGE COMMISSION
### Washington, D.C. 20549

# FORM 10-K

**[X] ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d)
OF THE SECURITIES EXCHANGE ACT OF 1934**

**For the Fiscal Year ended June 30, 2011**

# AMERITRANS CAPITAL CORPORATION

| Delaware | 814-00193 | 52-2102424 |
|---|---|---|
| (State of incorporation) | Commission File Number | (I.R.S. Employer Identification No.) |

**50 JERICHO QUADRANGLE, SUITE 109, JERICHO, NEW YORK 11753**

(212)355-2449
**Securities registered pursuant to Section 12(g) of the Act:**
Common Stock, par value $.0001 per share
9 3/8% Cumulative Participating Redeemable Preferred Stock (face value $12.00)

Indicate by check mark if the registrant is a well-known seasoned issuer, as defined in Rule 405 of the Securities Act.   Yes ☐ No ☒

Indicate by check mark if the registrant is not required to file reports pursuant to Section 13 or Section 15(d) of the Act.   Yes ☐ No ☒

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports) and (2) has been subject to such filing requirements for the past 90 days. Yes ☒   No ☐

Indicate by check mark if disclosure of delinquent filers pursuant to Item 405 of Regulation S-K is not contained herein, and will not be contained, to the best of the registrant's knowledge, in definitive proxy or information statements incorporated by reference in Part III of this Form 10-K or any amendment to this Form 10-K. ☐

Indicate by check mark whether registrant is a large accelerated filer, an accelerated filer, a non-accelerated filer or a smaller reporting company in Rule 12b-2 of the Exchange Act.

Large accelerated filer ☐     Accelerated filer ☐     Non-accelerated filer ☒     Smaller reporting company ☐

Indicate by check mark whether the registrant is a shell company (as defined in Rule 12b-2 of the Act).   Yes ☐   No ☒

The aggregate market value of the Registrant's common stock held by non-affiliates (based upon the closing price of the Registrant's common stock, $0.0001 par value, of $0.97 per share, as reported on the NASDAQ Capital Market on December 31, 2010) was approximately $1,679,705.

The number of outstanding shares of Registrant's common stock, $.0001 par value as of September 16, 2011 was 3,395,583.  The number of shares of Registrant's 9 ⅜ % cumulative participating redeemable preferred stock as of September 16, 2011, was 300,000.

DOCUMENTS INCORPORATED BY REFERENCE.  Portions of the registrant's Definitive Proxy Statement for its 2011 Annual Meeting of Shareholders, which Definitive Proxy Statement will be filed with the Securities and Exchange Commission not later than 120 days after the registrant's fiscal year-end of June 30, 2011, are incorporated by reference into Part III of this Form 10-K.  Certain exhibits previously filed with the Securities and Exchange Commission are incorporated by reference into Part IV of this report.

**NOTE ABOUT FORWARD-LOOKING STATEMENTS**

This Annual Report includes forward-looking statements within the meaning of Section 27A of the Securities Act and Section 21E of the Securities Exchange Act. The matters discussed in this Annual Report, as well as in future oral and written statements by management of Ameritrans Capital Corporation, that are forward-looking statements are based on current management expectations that involve substantial risks and uncertainties which could cause actual results to differ materially from the results expressed in, or implied by, these forward-looking statements. Forward-looking statements relate to future events or our future financial performance. We generally identify forward-looking statements by terminology such as "may," "will," "should," "expects," "plans," "anticipates," "could," "intends," "target," "projects," "contemplates," "believes," "estimates," "predicts," "potential" or "continue" or the negative of these terms or other similar words. Important assumptions include our ability to originate new investments, achieve certain margins and levels of profitability, the availability of additional capital, and the ability to maintain certain debt to asset ratios. In light of these and other uncertainties, the inclusion of a projection or forward-looking statement in this Annual Report should not be regarded as a representation by us that our plans or objectives will be achieved. The forward-looking statements contained in this Annual Report include, but are not limited, to statements as to:

- our future operating results;

- our business prospects and the prospects of our existing and prospective portfolio companies;

- the impact of investments that we expect to make;

- our relationships with third parties;

- the dependence of our future success on the general economy and its impact on the industries in which we invest;

- the ability of our portfolio companies to achieve their objectives;

- our expected financings and investments;

- our regulatory structure and tax treatment;

- our ability to operate as a Business Development Company ("BDC") and a Regulated Investment Company ("RIC"); and

- the adequacy of our cash resources and working capital.

For a discussion of factors that could cause our actual results to differ from forward-looking statements contained in this Annual Report, please see the discussion under "Risk Factors" in Item 1A. You should not place undue reliance on these forward-looking statements. The forward-looking statements made in this Annual Report relate only to events as of the date on which the statements are made. We undertake no obligation to update any forward-looking statement to reflect events or circumstances occurring after the date of this Annual Report.

---

# AMERITRANS CAPITAL CORPORATION
## 2011 FORM 10-K ANNUAL REPORT

### Table of Contents

| | | | |
|---|---|---|---:|
| **PART I** | | | 1 |
| | ITEM 1. | BUSINESS OF AMERITRANS | 1 |
| | ITEM 1A. | RISK FACTORS | 17 |
| | ITEM 2. | PROPERTIES | 22 |
| | ITEM 3. | LEGAL PROCEEDINGS | 22 |
| | ITEM 4. | [RESERVED] | 22 |
| **PART II** | | | 23 |
| | ITEM 5. | MARKET FOR THE REGISTRANT'S COMMON STOCK AND PREFERRED STOCK AND RELATED STOCKHOLDER MATTERS | 23 |
| | ITEM 6. | SELECTED FINANCIAL DATA | 24 |
| | ITEM 7. | MANAGEMENT'S DISCUSSION AND ANALYSIS OF FINANCIAL CONDITION AND RESULTS OF OPERATIONS | 25 |
| | ITEM 7A. | QUANTITATIVE AND QUALITATIVE DISCLOSURES ABOUT MARKET RISK | 33 |
| | ITEM 8. | FINANCIAL STATEMENTS AND SUPPLEMENTARY DATA | 33 |
| | ITEM 9. | CHANGES IN AND DISAGREEMENTS WITH ACCOUNTANTS ON ACCOUNTING AND FINANCIAL DISCLOSURE | 33 |
| | ITEM 9A. | CONTROLS AND PROCEDURES | 33 |
| **PART III** | | | 34 |
| | ITEM 10. | DIRECTORS AND EXECUTIVE OFFICERS OF THE REGISTRANT | 34 |
| | ITEM 11. | EXECUTIVE COMPENSATION | 34 |
| | ITEM 12. | SECURITY OWNERSHIP OF CERTAIN BENEFICIAL OWNERS AND MANAGEMENT AND RELATED STOCKHOLDER MATTERS | 34 |
| | ITEM 13. | CERTAIN RELATIONSHIPS AND RELATED TRANSACTIONS AND DIRECTOR INDEPENDENCE | 34 |
| | ITEM 14. | PRINCIPAL ACCOUNTING FEES AND SERVICES | 34 |
| **PART IV** | | | 34 |
| | ITEM 15. | EXHIBITS AND FINANCIAL STATEMENT SCHEDULES | 34 |

Case 2:17-cv-03586-JFB-AYS Document 47-2 Filed 10/06/17 Page 325 of 1053 PageID #: 899

# PART I

## ITEM 1. BUSINESS OF AMERITRANS

### GENERAL

Ameritrans Capital Corporation ( "Ameritrans") is a Delaware closed-end investment company formed in 1998, which makes loans and investments with the goal of generating both current income and capital appreciation. Through our wholly-owned subsidiary, Elk Associates Funding Corporation ("Elk"), we make loans to finance the acquisition and operation of small businesses as permitted by U.S. Small Business Administration (the "SBA") regulations. Elk Capital Corporation ("Elk Capital") is a wholly owned subsidiary of Ameritrans. From time-to-time, Elk Capital holds title to assets acquired in satisfaction of loans. As used in this Annual Report, references to the "Company", "we", "us" or "our" refer to Ameritrans and its subsidiaries, including Elk, collectively, unless otherwise indicated or the context otherwise requires.

Both Ameritrans and Elk are registered as business development companies, or "BDCs," under the Investment Company Act of 1940, as amended (the "1940 Act"). Accordingly, Ameritrans and Elk are subject to the provisions of the 1940 Act governing the operation of BDCs. Both companies are managed by their executive officers under the supervision of their boards of directors. Ameritrans and Elk have also elected to be treated as regulated investment companies, or "RICs," for tax purposes. Under the Internal Revenue Code, as a RIC, we will generally not be subject to U.S. federal corporate income tax on our investment income if we make qualifying distributions of our income to stockholders. We qualify for this treatment as long as we distribute at least 90% of our investment company taxable income, if any, to our stockholders as dividends. Elk's dividends are payable to Ameritrans as Elk's sole stockholder. For the fiscal year ended June 30, 2011, no 9 3/8% Cumulative Participating Redeemable Preferred Stock ("Preferred Stock") dividends have been paid. The dividends for the quarters ending June 30, 2009, September 30, 2009 and December 31, 2009, were paid on March 12, 2010 and the dividends for the quarters ended March 31, 2010 and June 30, 2010 were paid when due on April 27, 2010 and August 17, 2010, respectively.

### CORPORATE HISTORY AND OFFICES

Elk was formed in August 1980 as a New York Corporation. In December 1998, we completed a share-for-share exchange with Elk, whereby Ameritrans became Elk's sole shareholder. Both Ameritrans and Elk have the same boards of directors.

Our principal executive offices are located at 50 Jericho Quadrangle, Suite 109, Jericho, NY 11753 and our telephone number is (212)355-2449. We also maintain an office at 830 Third Avenue, 8 th Floor, New York, NY 10017. Information about us may also be obtained from the Securities and Exchange Commission's website ( http://www.sec.gov ). We maintain a website on the Internet at http://www.ameritranscapital.com . Information contained on our website is not incorporated by reference into this Annual Report, and that information should not be considered as part of this Annual Report. We make available free of charge on our website our annual reports on Form 10-K, quarterly reports on Form 10-Q, current reports on Form 8-K, and all amendments to those reports as soon as reasonably practicable after such material is electronically filed with or furnished to the SEC.

### CURRENT BUSINESS ACTIVITIES

Ameritrans was organized to be the sole shareholder of Elk and to make loans and investments that Elk may not be permitted to make under SBA regulations. Ameritrans makes loans which have primarily been secured by real estate mortgages, senior corporate loans, life insurance settlements and equity investments which have historically been in income producing real estate properties, or in real estate construction projects.

Elk was organized primarily to provide long-term loans to businesses eligible for investments ("Small Business Concerns") by small business investment companies ("SBICs") under the U.S. Small Business Investment Act of 1958 (the "1958 Act"). Elk makes loans for financing diversified businesses that qualify for funding under SBA Regulations.

During the fiscal year ended June 30, 2011, Elk had one (1) wholly owned subsidiary: EAF Holding Corporation. EAF Holding Corporation owns and operates certain real estate assets acquired in satisfaction of defaulted loans made by Elk. At June 30, 2011, it was operating certain assets held in satisfaction of loans.

1

## RENOVA STOCK PURCHASE AGREEMENT

As previously disclosed in our Form 8-K filed April 14, 2011 and in our Definitive Proxy Statement on Schedule 14A filed May 23, 2011 and amended on June 17, 2011, on April 12, 2011, the Company entered into a Stock Purchase Agreement (the "Renova Purchase Agreement") with Renova US Holdings Ltd. ("Renova"). Subject to the terms and conditions set forth in the Renova Purchase Agreement, the Company agreed to issue and sell to Renova, and Renova agreed to purchase, (i) $25,000,000 of Common Stock of the Company (the "Initial Purchased Stock") at a price per share equal to the greater of $1.80 and the then-prevailing per share net asset value of the Company at the time of issuance (as determined in accordance with the terms of the Renova Purchase Agreement) (the "Applicable Per Share Purchase Price"), at an initial closing (the "Initial Closing") to be held no later than November 30, 2011 following satisfaction or waiver of the conditions to such issuance and (ii) between an additional $35,000,000 to $40,000,000 of additional Common Stock (depending upon the timing of such purchases) at the Applicable Per Share Purchase Price (the "Additional Purchased Stock" and together with the Initial Purchased Stock, the "Purchased Stock") at subsequent closings (each, a "Subsequent Closing") to be held from time to time, subject to satisfaction of the conditions to such issuances, between the date of the Initial Closing and the second anniversary of the Initial Closing based upon the terms and conditions set forth in the Renova Purchase Agreement.

In connection with the transactions contemplated by the Renova Purchase Agreement the parties agreed, among other things, that: (1) the Company's Board of Directors would be reconstituted at the Initial Closing by increasing the size of the Board of Directors to eleven and appointing six individuals identified by Renova (as set forth in the Renova Purchase Agreement) to serve as members of the board; and (2) the Company's advisory agreement with Velocity Capital Advisors would be terminated and the Company would enter into an investment advisory agreement with Ameritrans Capital Management LLC, an affiliate of Renova, in each case, effective as of the Initial Closing.

Requisite stockholder approval of the transactions contemplated by the Renova Purchase Agreement was obtained at a special meeting of stockholders held on June 24, 2011. Consummation of the Initial Closing is subject to certain additional customary closing conditions, as well as the approval of the Small Business Administration (the "SBA") of the indirect change of ownership and control the Company's wholly-owned subsidiary, Elk Associates Funding Corporation ("Elk"), which is a SBA licensee.

Consummation of each Subsequent Closing is also subject to certain closing conditions, including, without limitation, (i) the absence of any injunction, court order or law prohibiting or enjoining such Subsequent Closing (subject to the parties' obligation to use commercially reasonable efforts to render permissible the consummation of the purchase and sale of the Purchased Stock); and (ii) Elk having remained in good standing with the SBA, in substantial compliance with all applicable rules and regulations and eligible to receive leverage commitments under normal requirements and conditions.

On September 19, 2011, we received a letter from the SBA describing certain concerns related to our change of ownership and control application and requesting certain additional pieces of information. In particular, the SBA has informed us that the proposed transaction, as currently structured, would not satisfy applicable SBA management-ownership diversity requirements. While we continue to believe that the transaction satisfies SBA diversity requirements, to date the SBA has not concurred with that view. We intend to continue discussions with the SBA on its diversity interpretation and are also discussing with Renova potential modifications to the terms of the transaction in order to satisfy the SBA's interpretation of those requirements. There is no assurance that the SBA will modify its position, that we and Renova will be able to reach agreement on revised terms or that the revised terms would satisfy the SBA. Furthermore, any revised terms may not be as favorable to us and our shareholders as the current terms and may also require resubmission of the agreement for shareholder approval. If we and Renova cannot agree on revised terms or if the SBA does not change its current view of the diversity requirements, the Renova Purchase Agreement and related agreements may be terminated.

The Common Stock to be issued and sold to Renova pursuant to the Renova Purchase Agreement has not been registered under the Securities Act of 1933, as amended (the "Securities Act"), and will be sold in a private transaction pursuant to an exemption from registration provided by Section 4(2) of the Securities Act and/or Regulation D promulgated thereunder based on representations made to the Company by Renova regarding its status as an accredited investor and the absence of any general solicitation in connection with the transaction.

In accordance with the terms of the Renova Purchase Agreement, on April 15, we notified Velocity Capital Advisors LLC ("Velocity" or "VCA") that we are terminating our advisory agreement effective as of the Initial Closing of the transactions contemplated by the Renova Purchase Agreement. In connection with such termination, the Company canceled a warrant that was issued to the Adviser on December 10, 2009. Such warrant gave the Adviser the right to purchase 100,000 shares of the Company's common stock at an initial exercise price of $1.25, subject to adjustment, for five years from the date of issuance.

2

## KEY QUANTITATIVE AND QUALITATIVE FINANCIAL MEASURES AND INDICATORS

**Net Asset (Liability) Value**

Our net asset (liability) value ("NAV") per share was $(0.40) and $1.40 as of June 30, 2011 and June 30, 2010, respectively. As we must report our assets at fair value for each reporting period, NAV also represents the amount of stockholders' equity (liability) per share for the reporting period.  Our NAV is comprised mostly of investment assets less debt and other liabilities:

|  | June 30, 2011 | | June 30, 2010 | |
|  | Fair Value | Per Share | Fair Value | Per Share |
| --- | --- | --- | --- | --- |
| Investments at fair value: | | | | |
| Investments in debt securities | $ 20,526,100 | $ 6.04 | $ 23,078,192 | $ 6.79 |
| Investments in life settlement contracts | 2,408,000 | 0.71 | 1,356,800 | 0.40 |
| Investments in equity securities | 987,635 | 0.29 | 1,020,706 | 0.30 |
| Cash and cash equivalents | 4,151,616 | 1.22 | 7,362,491 | 2.17 |
| Other assets | 2,048,783 | 0.61 | 1,091,173 | 0.32 |
| Total Assets | 30,122,134 | 8.87 | 33,909,362 | 9.98 |
| Borrowings | 25,675,000 | (7.56) | 24,545,000 | (7.23) |
| Other liabilities | 2,211,041 | (0.65) | 988,193 | (0.29) |
| Total Liabilities | 27,886,041 | (8.21) | 25,533,193 | (7.52) |
| Preferred Stock | 3,600,000 | (1.06) | 3,600,000 | (1.06) |
| NET ASSET (LIABILITY) VALUE APPLICABLE TO COMMON STOCK | $ (1,363,907) | $ (0.40) | $ 4,776,169 | $ 1.40 |

Please refer to the "Investment Portfolio" for a further description of our investment portfolio and the fair value thereof.

**Revenue**

Revenues consist primarily of investment income from interest on our investment portfolio and various ancillary fees related to our investment holdings.

*Interest from Investments in Debt Securities.*  We generate interest income from our investments in debt securities which consist primarily of secured loans.  Our debt securities portfolio is spread across multiple industries and geographic locations, and as such, we are broadly exposed to market conditions and business environments. We seek to limit concentration of exposure in any particular sector or issuer.

*Capital Structuring Service Fees.* We may earn ancillary structuring and other fees related to the origination and or investment in debt and investment securities.

**Expenses**

Expenses consist primarily of interest expense on outstanding borrowings, compensation expense and general and administrative expenses, including professional fees.

*Interest and Amortization of Debt Issuance Costs.*  Our interest expense has historically been dependent on the average outstanding balances on our bank lines of credit and the base index rate for the period.  However, we repaid our bank loans as of August 31, 2010 and, thereafter, our lines of credit expired in accordance with their terms. Our SBA debentures and notes payable carry fixed-rates of interest. Debt issuance costs represent fees and other direct costs incurred in connection with our borrowings.  These amounts are capitalized and amortized ratably over the contractual term of the borrowing.

*Compensation Expense.* Compensation expense includes base salaries, bonuses, stock compensation, employee benefits and employer-related payroll costs.  The largest components of total compensation costs are base salaries. Generally, base salaries are expensed as incurred.

*Professional Fees and General and Administrative Expenses.* The balance of our expenses includes professional fees (including legal, accounting and compliance fees), advisory fees, occupancy costs, general administrative expenses and other costs.

3

**Net Unrealized Depreciation on Investments**

During the year ended June 30, 2011, our investments had a net unrealized depreciation of approximately $142,197. The net unrealized depreciation for the year ended June 30, 2011 is primarily due to an unrealized write-down of $359,353 in our Corporate Loan portfolio and, to a lesser extent, a decrease in the fair value of our life insurance settlement portfolio of $61,741. These write-downs were partially offset by fair value increases in our Commercial Loans portfolio and our equity investments aggregating $251,168 and $27,729, respectively.

**Net Decrease in Net Assets Resulting From Operations**

The net decrease in net assets resulting from operations for the year ended June 30, 2011 was $5,802,576, or a decrease of $1.81 per outstanding share of Common Stock. The factors contributing to this decrease were: a net investment loss of $5,222,749, net realized losses on investments of $437,630 and unrealized losses on investments of $142,197.

**Net Investment Loss and Net Realized Loss**

Net investment loss and net realized loss represent the net decrease in stockholders' equity before net unrealized appreciation or depreciation on investments. For the year ended June 30, 2011, net investment loss and realized loss were approximately $5,660,379 or $1.67 per share. Generally, we seek to fund our dividend from net investment income and net realized gains. For the year ended June 30, 2011, dividends distributed and accrued on our Preferred Stock totaled $421,875 or approximately $1.41per share (equal to $0.12 per share of our Common Stock), which includes accruals of fiscal 2011 dividends aggregating $337,500 and the distribution of $84,375, relating to the fourth quarter of the prior year.

**Dividends**

To comply with excise tax regulation imposed on RICs, we currently intend to distribute during each calendar year an amount at least equal to the sum of:

- 98% of our ordinary net taxable income, if any, for the calendar year;
- 98% of our capital gains, if any, in excess of capital losses for the twelve-month period ending on October 31 of the calendar year; and
- Any net ordinary income and net capital gains for the preceding year that were not distributed during such year.

Generally, we seek to fund our dividend from GAAP current earnings, primarily from net interest and other income generated by our investment portfolio and without a return of capital or a high reliance on realized capital gains. The following table sets forth the dividends paid and accrued by us on our Preferred Stock (there were no dividends on Common Stock):

| | For the year ended June 30, 2011 | | | | |
|---|---|---|---|---|---|
| | Dividend Per Share | Amount | Declaration Date | Record Date | Pay Date |
| Preferred Stock: | | | | | |
| Fourth Quarter (April 1, 2010– June 30, 2010) | $ 0.28125 | $ 84,375 | 07/21/10 | 08/02/10 | 08/17/10 |
| First quarter (July 1, 2010 – September 30, 2010) | $ 0.28125 | $ 84,375 | Not Declared | | |
| Second quarter (October 1, 2010 – December 31, 2010) | $ 0.28125 | $ 84,375 | Not Declared | | |
| Third Quarter (January 1, 2011–March 31, 2011) | $ 0.28125 | $ 84,375 | Not Declared | | |
| Fourth Quarter (April 1, 2011– June 30, 2011) | $ 0.28125 | $ 84,375 | Not Declared | | |
| Total Preferred Stock Dividends Paid and Accrued | $ 1.40625 | $ 421,875 | | | |

4

Case 2:17-cv-03586-JFB-AYS    Document 47-2   Filed 10/06/17   Page 330 of 1053 PageID #: 904

### Business Categories

We currently aggregate our business into four categories:  1) Corporate Loans; 2) Commercial Loans; 3) Life Insurance Settlements and 4) Equity Investments.

### Corporate Loans

Beginning in June 2007, the Company began investing in middle market syndicated loans.  Our investment strategy is to build a diverse portfolio of corporate loans ("Corporate Loans") to middle market companies (the "Corporate Loan Strategy").  Given the size of the Corporate Loan market, we believe that the Corporate Loan Strategy will allow us to increase our asset base significantly, assuming the Company can obtain adequate financing.  As of June 30, 2011, the Company had assets with fair value aggregating $14,281,285 invested as part of our Corporate Loan Strategy.

To pursue its Corporate Loan Strategy, we engaged an adviser, Velocity Capital Advisors, LLC ("Velocity" or "VCA"), which is responsible for recommending to us for investment and, thereafter, recommending action, with respect to Corporate Loans.  On March 18, 2008, our stockholders approved an Investment Management and Advisory Agreement ("Advisory Agreement") pursuant to which Velocity would act as our adviser with respect to the Corporate Loan Strategy and on December 10, 2009 our stockholders approved an amendment to the Advisory Agreement. On June 2, 2010, an additional amendment to the Advisory Agreement was approved by our stockholders.

The Advisory Agreement provides for advisory fees payable to Velocity, which are comprised of (a) a base fee of 1.5% per annum, calculated quarterly, of the value of the Company's corporate loan portfolio; (b) an income-based fee of 5% per annum, calculated quarterly, computed on interest and dividends earned from the Company's Corporate Loan portfolio and (c) a capital gains fee of 17.5% based on capital gains generated from the Company's Corporate Loan portfolio.  Ameritrans has a formal Investment Committee, comprised of both internal management and disinterested directors, that reviews all potential investments and makes the final decision for each investment and the continuation of such investment. As such, Velocity provides only recommendations and advice and has no management authority in any of the Company's investment decisions.

On April 15, 2011 we notified Velocity that we are terminating the Advisory Agreement effective as of the Initial Closing of the transactions contemplated by the Renova Purchase Agreement.  Effective as of the Initial Closing, we will engage Ameritrans Capital Management, LLC, an affiliate of Renova, as our new investment advisor. See "Renova Stock Purchase Agreement," above, for additional information concerning the transaction contemplated by the Renova Purchase Agreement.

The Company defines the middle market as comprised of companies with earnings before interest, taxes and depreciation and amortization ("EBITDA") of between $10 million and $100 million. The Company believes many opportunities exist to provide loans to companies of this size, due to:

- The large size of the market,
- The high level of historical acquisition activity in this sector of the  market,
- The current dislocation of banks and other traditional lenders that provide capital to middle market companies,
- The significant amount of private equity that has been raised to invest explicitly in middle market companies, and
- The annual senior secured loan volume estimated to be over $30 billion.

Ameritrans invests primarily in senior loans of middle market companies which, because of their priority in a company's capital structure, we expect will have lower default rates and higher rates of recovery of principal if a default does occur.  Our Corporate Loan Strategy primarily targets companies that have strong historical cash flows, strong collateral coverage, equity sponsorship, experienced management teams and identifiable and defendable market positions.  The Corporate Loan Strategy focuses on average investments on the part of the Company of between $1 million and $3 million, with an objective of building a portfolio of Corporate Loans with significant diversity across both issuers and industries.

We expect that the investments made as part of the Corporate Loan Strategy will generate current income, capital appreciation and fee income related to the origination and investment management of such investments.  Growing our portfolio of Corporate Loan assets will require additional capital and the use of leverage to carry out this plan.

5

*Commercial Loans*

We began making loans to diversified small businesses ("Commercial Loans") primarily in the New York City metropolitan area in 1985.  Until we commenced the implementation of its Corporate Loan Strategy, we had been increasing this portfolio on a selective basis, with a concentration on loans to operators of restaurants, laundromats, commercial construction, broadcasting telecommunications and other diversified industries.  Many of our commercial loans are secured by real estate mortgages which are primarily first mortgages on various properties.  At June 30, 2011, the fair value of our Commercial Loans was $6,224,815.

Our Commercial Loans primarily finance either the purchase of the equipment and related assets necessary to open a new business or the purchase or improvement of an existing business.  We generally hold these loans to maturity, although from time to time we sell participation interests in our loans to share risk, or purchase participation interests in loans originated by other finance companies. We generally obtain interest rates on our Commercial Loans that are higher than can be obtained on Corporate Loans. We believe that the higher yield on Commercial Loans compensates for their higher risk of default relative to other investment categories and that we will benefit from the diversification of our portfolio. Interest rates on currently outstanding Commercial Loans range from 4.8% to 12.0%, with a weighted average of 9.14% (7.27% on performing loans).

SBA Regulations set a ceiling on the interest rates that an SBIC may charge its borrowers. The maximum rate of interest that Elk was allowed to charge its borrowers for loans originated during the year ended June 30, 2011 was 19.0%.

*Life Settlement Contracts*

In September, 2006, we entered into a joint venture agreement (the "JV Agreement") with Vibrant Capital Corp., an unaffiliated company (the "Joint Venture"), to purchase previously issued life insurance policies owned by unrelated individuals.  Under the terms of the JV Agreement, we were designated as nominee to maintain possession of the policies and process transactions related to such policies until the policies were subsequently sold or paid off.  We were entitled to receive a twelve percent (12%) annual return on the amount of funds paid by us and outstanding on a monthly, prorated basis.  Proceeds from the sale of the policies were to be distributed, net of direct expenses, as defined in JV Agreement.

In April, 2009, we learned that the manager of the Joint Venture had been charged with various violations of securities laws by the SEC. The SEC obtained a court order freezing the assets of the manager and other entities with which he was involved, including the Joint Venture (the "Receivership Estate").  As of April 14, 2009, a trustee and a receiver (the "Receiver") were appointed to operate the Joint Venture.  Throughout calendar 2009, the Company worked with the Receiver and investigated potential opportunities to maximize the value of our interest in the life insurance contracts.

Initially, we made certain contributions to the payment of the premiums in order to keep the policies in full force and effect and preserve their value.  Thereafter, utilizing a line of credit secured by certain assets of the Receivership Estate, the Receiver advanced premiums due under certain policies to keep the policies in full force and effect.  The Receiver engaged an independent specialist firm to service and market for sale all of the policies in the Receivership Estate. In October 2009, the Receiver indicated it no longer had the funds available to pay future premiums and that it wanted to engage in a sale to one of two buyers that had indicated an interest in purchasing the Receivership Estate. Subsequently, both buyers determined not to complete a transaction.  On December 18, 2009, we negotiated an agreement (the "Life Insurance Purchase Agreement"), which among other items, granted us the right to purchase the policies, subject to certain terms and conditions and court approval. Court approval was obtained on January 8, 2010.

As of January 8, 2010, we purchased the life insurance policies pursuant to a purchase agreement (the "Purchase Agreement") entered into with the Receiver:

1)    We purchased all of the rights to and title and interest in, ten (10) life insurance policies (7 of which had been previously included in the Joint Venture), with an aggregate death benefit of $28,159,809;

2)    We agreed to pay the Receiver $30,000 to cover certain expenses;

3)    We agreed to pay the Receivership Estate 20% of all recoveries until such time as we have recouped approximately $2.1 million plus the amount of any premiums paid following the date of the Purchase Agreement;

4)    We agreed to pay the Receivership Estate 50% of all recoveries above the amounts described in Item 3 above;

6

Case 2:17-cv-03586-JFB-AYS Document 47-2 Filed 10/06/17 Page 332 of 1053 PageID #: 906

5) We entered into an agreement of sale on the rescission of one of the original Joint Venture policies. In accordance with the terms of the settlement agreement with the Receiver, we recorded proceeds of $109,857 and recognized a loss on the sale of the policy of $342,496;

6) We agreed to the cancellation of certain claims we had against the Receivership Estate for premiums advanced since April 2, 2009;

7) We and the Receivership Estate agreed that the JV Agreement would be cancelled, terminated and have no further effect; and

8) Despite the retained interest of the Receiver in any recovery, we reserved the right, in our sole discretion, to continue to fund premium payments or let any, or all, of the policies lapse.

The Purchase Agreement was dated December 18, 2009 and approved by the court on January 8, 2010. Subsequently, we learned that certain of the policies had lapsed due to non-payment of premiums. As of June 30, 2011, we owned a total of five (5) policies with an aggregate death benefit of $17,659,809 which remained in full force and effect.

After a review of the current financing and regulatory environment, and other opportunities to make investments in the Corporate Loan Strategy and Commercial Loans, we decided to exit this line of business and plan to make no new investments in life insurance settlement policies other than the continued payment of premiums on existing investments.

As of June 30, 2011, the fair value of our life settlement portfolio was $2,408,000, which represents our estimate of their fair value based upon various factors including a discounted cash flow analysis of anticipated life expectancies, future premium payments and anticipated death benefits related to five (5) life insurance policies with an aggregate face value of $17,659,809. In August 2011, we were notified that one the insureds included in a life settlement policy in our portfolio had passed away. Accordingly, we received approximately $320,000 from the proceeds of such policy, net of 20% that was paid to the Receiver from whom we acquired the policy. As of June 30, 2011, the fair value of this policy was $58,400. See Note 16 to our Consolidated Financial Statements.

*Equity Investments*

Ameritrans, to a limited extent, makes equity investments. These investments may be independent or incidental to our other lines of business. The fair value of the equity securities in Ameritrans' investment portfolio at June 30, 2011 aggregated $987,635. Elk may make additional equity investments. However, under SBA rules, unless necessary to protect a prior investment of Elk that is at risk, equity investments shall not exceed 20% of Elk's total assets.

The following table shows our portfolio by business category at June 30, 2011 and June 30, 2010:

| Business Category | June 30, 2011 | | | | June 30, 2010 | | | |
|---|---|---|---|---|---|---|---|---|
| | | Cost | | Fair Value | % (1) | | Cost | | Fair Value | % (1) |
| Commercial Loans | $ | 6,745,797 | $ | 6,244,815 | 26.1% | $ | 9,693,482 | $ | 8,941,332 | 35.2% |
| Corporate Loans | | 16,023,064 | | 14,281,285 | 59.7% | | 15,519,286 | | 14,136,860 | 55.5% |
| Life Settlements | | 3,681,632 | | 2,408,000 | 10.1% | | 2,568,691 | | 1,356,800 | 5.3% |
| Equity Securities | | 1,378,127 | | 987,635 | 4.1% | | 1,438,927 | | 1,020,706 | 4.0% |
| Total | $ | 27,828,620 | $ | 23,921,735 | 100.0% | $ | 29,220,386 | $ | 25,455,698 | 100.0% |

(1) Represents percentage of total portfolio at fair value.

7

**Valuation details**

| | | June 30, 2011 | | June 30, 2010 | |
|---|---|---|---|---|---|
| | | Value | Percentage of Portfolio | Value | Percentage of Portfolio |
| Broadcasting/Telecommunications | $ | 1,820,868 | 7.6% | $ 1,882,189 | 7.4% |
| Commercial Construction | | 2,456,368 | 10.3% | 2,738,684 | 10.8% |
| Computer Software | | 910,067 | 3.8% | - | - |
| Construction and Predevelopment | | 1,300,494 | 5.4% | 1,901,881 | 7.5% |
| Direct Marketing | | 1,312,500 | 5.5% | - | - |
| Debt Collection | | 475,605 | 2.0% | 481,350 | 1.9% |
| Education | | 829,824 | 3.5% | 884,538 | 3.5% |
| Film Distribution | | 928,000 | 3.9% | - | - |
| Food and Candy Manufacturing | | 2,581,886 | 10.8% | 1,007,500 | 4.0% |
| Gaming | | - | - | 1,108,004 | 4.4% |
| Gasoline Distribution | | - | - | 570,413 | 2.2% |
| Laundromat | | - | - | 292,562 | 1.1% |
| Life Insurance Settlement Contracts | | 2,408,000 | 10.1% | 1,356,800 | 5.3% |
| Manufacturing | | 2,533,545 | 10.6% | 3,588,738 | 14.1% |
| Military/Defense | | - | - | 1,268,750 | 5.0% |
| Printing/Publishing | | 1,344,691 | 5.6% | 937,725 | 3.7% |
| Processing Control Instruments | | - | - | 1,039,059 | 4.0% |
| Restaurant/Food Service | | 3,215,663 | 13.5% | 3,297,267 | 13.0% |
| Sanitaryware Distribution | | - | - | 361,609 | 1.4% |
| Supermarkets | | 1,500,000 | 6.3% | 2,263,750 | 8.9% |
| Other industries less than 1% | | 304,224 | 1.1% | 474,879 | 1.8% |
| TOTAL | $ | 23,921,735 | 100.00% | $ 25,455,698 | 100.00% |

**SOURCES OF FUNDS**

We fund our operations from a variety of sources. Elk is authorized to borrow money and issue debentures, promissory notes and other obligations, subject to SBA regulatory limitations. Other than the subordinated debentures issued to the SBA, aggregating $21,175,000 with fixed rates of interest plus user fees, which results in rates ranging from 4.11% to 5.54%, Elk has, to date, borrowed funds only from banks. As of June 30, 2011, Elk had a line of credit with one bank that had been paid in full in August 2010 and which expired on July 6, 2011.

In December 2009 and March 2010, we issued 8.75% notes in an aggregate principal amount of $3,000,000. In January 2011, the interest rate was adjusted to 12% and the maturity was extended to May 2012 for which the holders of these notes were paid a fee of 1%.

Also, in January 2011, we issued a Senior Secured Note in the principal amount of $1,500,000 with an interest rate of 12%, maturing on February 1, 2012. See Note 5 of Notes to Consolidated Financial Statements.

As interest rates fluctuate, our cost of funds may also fluctuate, while the rates on our outstanding loans to a significant number of our borrowers remains fixed. This may contribute to fluctuations in our financial performance. To partially mitigate this volatility, from time to time we have purchased interest rate swaps. See "Management's Discussion and Analysis of Financial Condition and Results of Operations -- Results of Operations -- Interest Expense" and Note 12 of Notes to Consolidated Financial Statements.

Pursuant to an agreement with SBA (the "SBA Agreement"), Elk agreed to limit the aggregate of its indebtedness based on a computation of a borrowing base (the "Borrowing Base") each quarter. The borrowing base computation was calculated to determine that the total amount of debt due on senior bank debt and SBA debentures did not exceed approximately 80% of the value of performing loans and investments in Elk's portfolio. Loans that are more than 90 days in arrears are valued at a lower amount in computing the Borrowing Base. Inasmuch as Elk has paid off all of its bank debt, the SBA has agreed to waive its Borrowing Base requirements and, accordingly, Elk is no longer required to submit a Borrowing Base computation to the SBA. In connection with the

8

SBA Agreement, Elk has also entered into an intercreditor agreement (the "Intercreditor Agreement") and a custodian agreement (the "Custodian Agreement") with its banks and the SBA. Pursuant to the Custodian Agreement, the banks and the SBA appointed Israel Discount Bank of New York as the custodian to hold certain notes, security agreements, financing statements, assignments of financing statements, and other instruments and securities as part of the collateral for Elk's indebtedness to the banks and the SBA. The Intercreditor Agreement sets forth the respective rights and priorities of the banks and the SBA with respect to the repayment of indebtedness to the banks and the SBA and as to their respective interests in the collateral.  Pursuant to the Intercreditor Agreement, the banks consented to the grant by Elk to the SBA of a security interest in the collateral, which security interest ranks junior in priority to the security interests of the banks.  The Intercreditor Agreement provides Elk with a right of substitution, permitting other new bank lenders to become parties to the Intercreditor Agreement.

**Stock Purchase Agreement**

**RENOVA STOCK PURCHASE AGREEMENT**

As previously disclosed in our Form 8-K filed April 14, 2011 and in our Definitive Proxy Statement on Schedule 14A filed May 23, 2011 and amended on June 17, 2011, on April 12, 2011, the Company entered into a Stock Purchase Agreement (the "Renova Purchase Agreement") with Renova US Holdings Ltd. ("Renova").  Subject to the terms and conditions set forth in the Renova Purchase Agreement, the Company agreed to issue and sell to Renova, and Renova agreed to purchase, (i) $25,000,000 of Common Stock of the Company (the "Initial Purchased Stock") at a price per share equal to the greater of $1.80 and the then-prevailing per share net asset value of the Company at the time of issuance (as determined in accordance with the terms of the Renova Purchase Agreement) (the "Applicable Per Share Purchase Price"), at an initial closing (the "Initial Closing") to be held no later than November 30, 2011 following satisfaction or waiver of the conditions to such issuance  and (ii) between an additional $35,000,000 to $40,000,000 of additional Common Stock (depending upn the timing of such purchases) at the Applicable Per Share Purchase Price (the "Additional Purchased Stock" and together with the Initial Purchased Stock, the "Purchased Stock") at subsequent closings (each, a "Subsequent Closing") to be held from time to time, subject to satisfaction of the conditions to such issuances, between the date of the Initial Closing and the second anniversary of the Initial Closing based upon the terms and conditions set forth in the Renova Purchase Agreement.

In connection with the transactions contemplated by the Renova  Purchase Agreement the parties agreed, among other things, that: (1) the Company's Board of Directors would be reconstituted at the Initial Closing by increasing the size of the Board of Directors to eleven and appointing six individuals identified by Renova (as set forth in the Renova Purchase Agreement) to serve as members of the board; and (2) the Company's advisory agreement with Velocity Capital Advisors would be terminated and the Company would enter into an investment advisory agreement with Ameritrans Capital Management LLC, an affiliate of Renova, in each case, effective as of the Initial Closing.

Requisite stockholder approval of the transactions contemplated by the Renova Purchase Agreement was obtained at a special meeting of stockholders held on June 24, 2011. Consummation of the Initial Closing is subject to certain additional customary closing conditions, as well as the approval of the Small Business Administration (the "SBA") of the indirect change of ownership and control the Company's wholly-owned subsidiary, Elk Associates Funding Corporation ("Elk"), which is a SBA licensee.

Consummation of each Subsequent Closing is also subject to certain closing conditions, including, without limitation, (i) the absence of any injunction, court order or law prohibiting or enjoining such Subsequent Closing (subject to the parties' obligation to use commercially reasonable efforts to render permissible the consummation of the purchase and sale of the Purchased Stock); and (ii) Elk having remained in good standing with the SBA,  in substantial compliance with all applicable rules and regulations and eligible to receive leverage commitments under normal requirements and conditions.

On September 19, 2011, we received a letter from the SBA describing certain concerns related to our change of ownership and control application and requesting certain additional pieces of information. In particular, the SBA has informed us that the proposed transaction, as currently structured, would not satisfy applicable SBA management-ownership diversity requirements.  While we continue to believe that the transaction satisfies SBA diversity requirements, to date the SBA has not concurred with that view.  We intend to continue discussions with the SBA on its diversity interpretation and are also discussing with Renova potential modifications to the terms of the transaction in order to satisfy the SBA's interpretation of those requirements. There is no assurance that the SBA will modify its position, that we and Renova will be able to reach agreement on revised terms or that the revised terms would satisfy the SBA.  Furthermore, any revised terms may not be as favorable to us and our shareholders as the current terms and may also require resubmission of the agreement for shareholder approval. If we and Renova cannot agree on revised terms or if the SBA does not change its current view of the diversity requirements, the Renova Purchase Agreement and related agreements may be terminated.

9

The Common Stock to be issued and sold to Renova pursuant to the Renova Purchase Agreement has not been registered under the Securities Act of 1933, as amended (the "Securities Act"), and will be sold in a private transaction pursuant to an exemption from registration provided by Section 4(2) of the Securities Act and/or Regulation D promulgated thereunder based on representations made to the Company by Renova regarding its status as an accredited investor and the absence of any general solicitation in connection with the transaction.

In accordance with the terms of the Renova Purchase Agreement, on April 15, 2011, we notified Velocity that we are terminating our Advisory Agreement effective as of the Initial Closing of the transactions contemplated by the Renova Purchase Agreement.   In connection with such termination, the Company canceled a warrant that was issued to the Adviser on December 10, 2009.  Such warrant gave the Adviser the right to purchase 100,000 shares of the Company's common stock at an initial exercise price of $1.25, subject to adjustment, for five years from the date of issuance.

**Credit and Investment Process**

For our Corporate Loan investments, we employ a due diligence intensive investment strategy.  By focusing on the operating components of revenue and cash flow, we, alone or with our external advisors, develop underwriting cases, stress models and event-specific case scenarios for each company analyzed.

We focus on lending and investing opportunities in:

- companies with EBITDA of $10 million to $100 million;
- companies with financing needs of $1 million to $150 million;
- companies owned by well-known equity sponsors;
- non-sponsored companies with successful management; and
- high-yield bonds and broadly syndicated loans.

We expect to source investment opportunities from:

- our investment advisors;
- private equity sponsors;
- regional investment banks for non-sponsored companies;
- other middle market lenders with whom we can "club" loans;
- regional business brokers; and
- other finance companies, BDCs and SBICs.

In our experience, good credit judgment is based on a thorough understanding of the factors which determine a company's performance. Our analysis begins with an understanding of the fundamentals of the industry in which a company operates, including the current economic environment and the outlook for the industry. We also focus on the borrower's relative position within the industry and its historical ability to weather economic cycles. Other key qualitative factors include the experience and depth of the management team and the financial sponsor.

Our management team is involved in due diligence and analysis prior to the formal credit approval process.

An Investment Committee reviews each investment prior to commitment and monitors each investment's performance throughout its holding period and regularly reports its findings and recommendations to the board of directors.

**Credit Monitoring**

Our management team and external advisors have significant experience monitoring portfolios of credit-related investments.  Most of our investments will not be liquid and, therefore, we must be prepared to take action if potential issues arise, so that we can work closely with the portfolio company management team or private equity sponsor, if applicable, to take any necessary remedial action quickly. The management team of our outside advisors has substantial workout and restructuring experience.

10

In order to assist us in early detection of issues with portfolio companies, we perform regular and ongoing analyses of each portfolio company, its business, its products and its financial performance. These analyses may include:

- reviewing financial statements with comparisons to prior year financial statements, as well as the current budget, including key financial ratios such as debt/EBITDA, margins and fixed charge coverage ratios;
- independently computing and verifying compliance with financial covenants;
- discussing operating performance with company management and, if applicable, the private equity sponsor;
- determining if current performance could cause future financial covenant default;
- discussing prospects with the private equity sponsor, if applicable;
- determining if a portfolio company should be added to our "watch list" (companies to be reviewed in more depth); and
- reviewing original investment assumptions.

## COMPETITION

Banks, credit unions, other finance companies, and other private lenders compete with us in the origination of Corporate and Commercial Loans. A number of entities compete with us to make the types of investments that we make in middle market companies. We compete with other business development companies, public and private funds, commercial and investment banks, commercial finance companies, insurance companies, high yield investors, hedge funds, and, to the extent they provide an alternative form of financing, private equity funds. Many of our competitors are substantially larger and have considerably greater financial resources than we do. Some competitors may have a lower cost of funds and access to funding sources that are not available to us. In addition, some of our competitors may have higher risk tolerances or different risk assessments, which could allow them to consider a wider variety of investments and establish more relationships than we. Furthermore, many of our competitors are not subject to the regulatory restrictions that the Investment Company Act imposes on us as a BDC and the 1958 Act imposes on us as an SBIC.

## EMPLOYEES

As of June 30, 2011, we employed a total of five (5) employees.

## INVESTMENT POLICIES

### Ameritrans and Elk Investment Policies

The investment policies described below are the fundamental policies of Ameritrans and Elk (together the "Company"). Fundamental policies, that is, policies that cannot be changed without the approval of the holders of a majority of Ameritrans' outstanding voting securities, as defined under the 1940 Act, are described below. A "majority of Ameritrans' outstanding voting securities" as defined under the 1940 Act means the lesser of (i) 67% of the shares represented at a meeting at which more than 50% of the outstanding shares are represented or (ii) more than 50% of the outstanding shares. Because Ameritrans is the only stockholder of Elk, we have agreed with the SEC that Elk's fundamental investment policies will be changed only by the vote of the Ameritrans stockholders.

1. We may invest up to 100% of our assets in restricted securities.

2. We do not intend to engage in the purchase and sale of real estate. However, we may elect to purchase and sell real estate in order to protect any of our prior investments which we consider at risk.

3. We may engage in short sales of securities in order to hedge securities held in our portfolio.

4. We may write or buy put or call options in order to hedge a current security's position or to hedge our portfolio in general.

5. We may engage in the purchase or sale of commodities or commodity contracts, including futures contracts (i) where necessary in working out distressed loan or investment situations and (ii) to otherwise hedge all or a portion of the securities positions in our portfolio.

11

## CERTAIN FEDERAL INCOME TAX CONSIDERATIONS

The following discussion is a general summary of the federal income tax principles applicable to Ameritrans, based on the currently existing provisions of the Internal Revenue Code and the regulations thereunder. This summary does not purport to be a complete description of the tax considerations applicable to Ameritrans or to the holders of its Common Stock. These principles, in general, also apply to Elk, because the sole direct stockholder of Elk is Ameritrans.

Ameritrans has elected to be treated as a "regulated investment company" (a "RIC") under Section 851 of the Internal Revenue Code. Elk has been treated as a RIC since 1984. A regulated investment company may deduct, for federal income tax purposes, most dividends paid to stockholders, thereby avoiding federal income taxation at the corporate level.

## TAXATION OF REGULATED INVESTMENT COMPANIES

In order for us to qualify as a RIC for a given fiscal year, we must meet each of the following conditions for that fiscal year:

(a)   We must be registered as an investment company under the 1940 Act at all times during the year.

(b)   At least 90% of our gross income for the year must be derived from interest, gains on the sale or other disposition of stock or other securities, dividends and payment with respect to securities loans.

(c)   Less than 30% of our gross income must be derived from the sale or other disposition of securities held for less than three months.

(d)   At the close of each quarter, at least 50% of the value of our total assets must be represented by cash, cash items (including receivables), securities of other RICs and securities of other issuers, except that the investment in a single issuer of securities may not exceed 5% of the value of the RIC's assets, or 10% of the outstanding voting securities of the issuer.

(e)   At the close of each quarter, and with the exception of government securities or securities of other RICs, no more than 25% of the value of our assets may be made up of investments in the securities of a single issuer or in the securities of two or more issuers controlled by the RIC and engaged in the same or a related trade or business. However, if a non-RIC entity controlled by us subsequently sustains internally generated growth (as opposed to growth via acquisitions), the diversification requirement will not be violated even if the non-RIC subsidiary represents in excess of 25% of our assets.

(f)   We must distribute as dividends at least 90% of our investment company taxable income (as defined in Section 852 of the Internal Revenue Code), as well as 90% of the excess of our tax-exempt income over certain disallowed tax-exempt interest deductions. This treatment substantially eliminates the "double taxation" (i.e., taxation at both the corporate and stockholder levels) that generally results from the use of corporate investment vehicles. A RIC is, however, generally subject to federal income tax at regular corporate rates on undistributed investment company taxable income. No dividends on the Company's common stock were paid in each of the fiscal years ended June 30, 2011, 2010 and 2009, inasmuch as the Company has had no taxable income during such periods. Accordingly, the Company has maintained its status as a RIC.

In order to avoid the imposition of a non-deductible 4% excise tax on its undistributed income, a company is required, under Section 4982 of the Internal Revenue Code, to distribute within each calendar year at least 98% of its ordinary income for such calendar year and 98% of its capital gain net income (reduced by the RIC's net ordinary loss for the calendar year, but not below its net capital gain) for the one-year period ending on October 31 of such calendar year.

The tax benefits available to a qualified RIC are prospective, commencing with the fiscal year in which all the conditions listed above are met, and would not permit Ameritrans to avoid income tax at the corporate level on income earned during prior taxable years. If Ameritrans fails to qualify as a RIC for a given fiscal year, Ameritrans will not be entitled to a federal income tax deduction for dividends distributed, and amounts distributed as stockholder dividends by Ameritrans will therefore be subject to federal income tax at both the corporate level and the individual level.

12

Dividends distributed by Elk to Ameritrans will constitute ordinary income to Ameritrans to the extent derived from non-capital gain income of Elk, and will ordinarily constitute capital gain income to Ameritrans to the extent derived from capital gains of Elk. However, since Ameritrans is also a RIC, Ameritrans will, in general, not be subject to a corporate level tax on its income to the extent that it makes distributions to its stockholders. If Elk does not qualify as a RIC for any reason in any fiscal year, it will not be entitled to a federal income tax deduction for dividends distributed, and will instead be liable to pay corporate level tax on its earnings. Further, if Elk does not qualify as a RIC, such failure will cause Ameritrans to fail to qualify for RIC status as well, as long as Elk stock held by Ameritrans represents more than 25% of Ameritrans' assets. In such a case, Ameritrans will be taxed on dividends received from Elk, subject to the deduction for corporate dividends received, which is currently 70%. Thus, if Elk fails to qualify as a RIC for any reason, its earnings would be taxed at three levels: to Elk, in part to Ameritrans, and finally, when they are distributed by Ameritrans, to our stockholders.

As long as Ameritrans qualifies as a RIC, dividends distributed by Ameritrans to its stockholders out of current or accumulated earnings and profits constitute ordinary income to such stockholders to the extent derived from ordinary income and short-term capital gains of Ameritrans (such as interest from loans by Ameritrans). Any long-term capital gain dividends distributed by Ameritrans would constitute capital gain income to Ameritrans stockholders. To the extent Ameritrans makes distributions in excess of current and accumulated earnings and profits, these distributions are treated first as a tax-free return of capital to the stockholder, reducing the tax basis of the stockholder's stock by the amount of such distribution, but not below zero, with distributions in excess of the stockholder's basis taxable as capital gains if the stock is held as a capital asset.

## TAXATION OF SBICS

As a result of Elk's status as a licensed SBIC under the 1958 Act, Elk and its stockholders qualify for the following tax benefits:

    (i)      Under Section 243 of the Internal Revenue Code, Elk may deduct 100% of the dividends received by it from domestic corporations in which it has made equity investments, regardless of whether such corporations are subsidiaries of Elk (in contrast to the generally applicable 70% deduction under the Code).

    (ii)      Under Section 1243 of the Internal Revenue Code, losses sustained on Elk's investments in the convertible debentures, or stock derived from convertible debentures, of Small Business Concerns are treated as ordinary losses rather than capital losses to Elk.

## STATE AND OTHER TAXES

Ameritrans is also subject to state and local taxation. The state, local and foreign tax treatment may not conform to the federal tax treatment discussed above. Stockholders should consult with their own tax advisors with respect to the state and local tax considerations pertaining to Ameritrans.

## THE INVESTMENT COMPANY ACT OF 1940

Ameritrans and Elk are closed-end, non-diversified management investment companies that have elected to be treated as BDCs and, as such, are subject to regulation under the 1940 Act. The 1940 Act contains prohibitions and restrictions relating to transactions between investment companies and their affiliates, principal underwriters and affiliates of those affiliates or underwriters. In addition, the 1940 Act provides that a BDC may not change the nature of its business so as to cease to be, or to withdraw its election as, a BDC unless so authorized by the vote of a "majority of its outstanding voting securities," as defined under the 1940 Act.

BDCs are permitted, under specified conditions, to issue multiple classes of indebtedness and one class of stock (collectively, "senior securities," as defined under the 1940 Act) senior to shares of Common Stock if the asset coverage of such indebtedness and all senior securities is at least 200% immediately after each such issuance. In addition, while senior securities are outstanding, provision must be made to prohibit the declaration of any dividend or other distribution to stockholders (except stock dividends) or the repurchase of such securities or shares unless they meet the applicable asset coverage ratios at the time of the declaration of the dividend or distribution or repurchase. Pursuant to an exemptive order issued by the SEC, subordinated SBA debentures, preferred stock guaranteed by or issued to the SBA by Elk, and Elk bank borrowings are exempt from the asset coverage requirements of the 1940 Act. Additionally, this exemptive order applies to any future Elk SBIC subsidiaries. Ameritrans may, and currently does, when consolidating, exclude Elk borrowings for purposes of the asset coverage rules. The exemptive order also grants certain relief from the asset coverage ratios applicable to BDCs. Ameritrans and Elk must individually comply with Section 18 and Section 61(a) of the 1940 Act. So long as Ameritrans and Elk individually comply with Section 18, for purposes of consolidation, any borrowings of Elk will not be considered senior securities for asset coverage purposes and as such, will not affect Ameritrans' asset coverage ratio.

13

Under the 1940 Act, a BDC may not acquire any asset other than Qualifying Assets unless, at the time the acquisition is made, certain Qualifying Assets represent at least 70% of the value of our total assets. The principal categories of Qualifying Assets relevant to our proposed business are the following:

(1)  Securities purchased in transactions not involving a public offering from the issuer of such securities, which issuer is an eligible portfolio company. An "eligible portfolio company" is defined in the 1940 Act as any issuer which:

    (a)  is organized under the laws of, and has its principal place of business in, the United States;

    (b)  is not an investment company other than an SBIC wholly-owned by the BDC; and

    (c)  satisfies one or more of the following requirements:

        (i)  the issuer does not have a class of securities with respect to which a broker or dealer may extend margin credit;

        (ii)  the issuer is controlled by a BDC and the BDC has an affiliated person serving as a director of issuer;

        (iii)  the issuer has total assets of not more than $4,000,000 and capital and surplus (stockholders' equity less retained earnings) of not less than $2,000,000, or such other amounts as the SEC may establish by rule or regulation;

        (iv)  the issuer meets such requirements as the SEC may establish from time to time by rule or regulation; or

        (v)  does not have any class of securities listed on a national securities exchange; or

        (vi)  has a class of securities listed on a national securities exchange, but has an aggregate market value of outstanding voting and non-voting common equity of less than $250 million.

(2)  Securities for which there is no public market and which are purchased in transactions not involving a public offering from the issuer of such securities where the issuer is an eligible portfolio company which is controlled by the BDC.

(3)  Securities received in exchange for or distributed on or with respect to securities described in (1) or (2) above, or pursuant to the exercise of options, warrants or rights relating to such securities.

(4)  Cash, cash items, government securities, or high quality debt securities maturing in one year or less from the time of investment.

**Significant Managerial Assistance**

A BDC must be organized and have its principal place of business in the United States and must be operated for the purpose of making investments in the types of securities described above. However, to count portfolio securities as Qualifying Assets for the purpose of the 70% test discussed above, the BDC must either control the issuer of the securities or must offer to make available to the issuer of the securities (other than small and solvent companies described above) significant managerial assistance; except that, where the BDC purchases such securities in conjunction with one or more other persons acting together, one of the other persons in the group may make available such managerial assistance. Making available significant managerial assistance means, among other things, any arrangement whereby the BDC, through its directors, officers or employees, offers to provide, and, if accepted, does so provide, significant guidance and counsel concerning the management, operations or business objectives and policies of a portfolio company through monitoring of portfolio company operations, selective participation in board and management meetings, consulting with and advising a portfolio company's officers or other organizational or financial guidance. As provided in the 1940 Act, a loan made by an SBIC is considered the "offering of managerial assistance."

14

## Senior Securities; Coverage Ratio

We are permitted, under specified conditions, to issue multiple classes of indebtedness and one class of stock senior to our common stock if our asset coverage, as defined in the 1940 Act, is at least equal to 200% immediately after each such issuance. Debentures payable to the SBA by Elk are excluded for purposes of calculating the Company's asset coverage pursuant to an exemptive order granted by the SEC which permits us to exclude indebtedness incurred in connection with the Small Business Investment Company program. In addition, with respect to certain types of senior securities, we must make provisions to prohibit any dividend distribution to our stockholders or the repurchase of certain of our securities, unless we meet the applicable asset coverage ratios at the time of the dividend distribution or repurchase. We may also borrow amounts up to 5% of the value of our total assets for temporary purposes. For a discussion of the risks associated with the resulting leverage, see "Item 1A. Risk Factors—Risks Related to Our Business—The debt we incur could increase the risk of investing in our Company."

## Code of Ethics

We adopted and maintain a code of ethics pursuant to Rule 17j-1 under the 1940 Act that establishes procedures for personal investments and restricts certain personal securities transactions. Personnel subject to the code may invest in securities for their personal investment accounts, including securities that may be purchased or held by us, so long as such investments are made in accordance with the code's requirements. We may be prohibited under the 1940 Act from conducting certain transactions with our affiliates without the prior approval of our directors who are not interested persons and, in some cases, the prior approval of the SEC. A copy of the code of ethics is available on the Corporate Governance section of our website at *www.ameritranscapital.com*.

## Privacy Principles

We are committed to maintaining the privacy of our stockholders and safeguarding their non-public personal information. The following information is provided to help you understand what personal information we collect, how we protect that information and why, in certain cases, we may share information with select other parties.

Generally, we do not receive any non-public personal information relating to our stockholders, although some non-public personal information of our stockholders may become available to us. We do not disclose any non-public personal information about our stockholders or former stockholders to anyone, except as is necessary to service stockholder accounts, such as to a transfer agent, or as otherwise permitted or required by law.

We restrict access to non-public personal information about our stockholders to our employees with a legitimate business need for the information. We maintain physical, electronic and procedural safeguards designed to protect the non-public personal information of our stockholders.

## Proxy Voting Policy and Procedures

Although most of the securities we hold are not voting securities, some of our investments may entitle us to vote proxies. We vote proxies relating to our portfolio securities in the best interest of our stockholders. We review on a case-by-case basis each proposal submitted to a stockholder vote to determine its impact on the portfolio securities held by us. Although we generally vote against proposals that we believe may have a negative impact on our portfolio securities, we may vote for such a proposal if we believe there exists a compelling long-term reason to do so.

Our proxy voting decisions are made by our Investment Committee, which is responsible for monitoring each of our investments. To ensure that our vote is not the product of a conflict of interest, we require that (1) anyone involved in the decision making process disclose to our Chief Compliance Officer any potential conflict that he or she is aware of and any contact that he or she has had with any interested party regarding a proxy vote; and (2) employees involved in the decision making process or vote administration are prohibited from revealing how we intend to vote on a proposal to reduce any attempted influence from interested parties.

## Other

We are periodically examined by the SEC for compliance with the 1940 Act. Elk is examined, periodically, for compliance with SBA regulations.

We do not "concentrate" our investments, that is, invest 25% or more of our assets in any particular industry (determined at the time of investment).

15

We are required to provide and maintain a bond issued by a reputable fidelity insurance company to protect us against larceny and embezzlement. Furthermore, as a BDC, we are prohibited from indemnifying any director or officer against any liability to our stockholders arising from willful misfeasance, bad faith, gross negligence or reckless disregard of the duties involved in the conduct of such person's office.

We are required to adopt and implement written policies and procedures reasonably designed to prevent violation of the federal securities laws and to review these policies and procedures annually for their adequacy and the effectiveness of their implementation. We have designated the Chief Compliance Officer who is responsible for administering these policies and procedures.

## THE SMALL BUSINESS INVESTMENT ACT OF 1958

The 1958 Act authorizes the organization of SBICs as vehicles for providing equity capital, long-term financing and management assistance to Small Business Concerns.

For the Small Business Investment Company (SBIC) program, an applicant must meet one of the following standards (A) for Business Loans, generally, an applicant business concern must satisfy two criteria: (1) the size of the applicant alone (without affiliates) must not exceed the size standard designated for the industry in which the applicant is primarily engaged; and (2) the size of the applicant combined with its affiliates must not exceed the size standard designated for either the primary industry of the applicant alone or the primary industry of the applicant and its affiliates, whichever is higher, or, (B) the tangible net worth of the applicant, including its affiliates, may not exceed $18 million, and the average net income after federal income taxes (excluding any carry-over losses) of the applicant, including its affiliates, for the preceding two completed fiscal years not in excess of $6 million.

A Small Business Concern, as defined in the 1958 Act and the SBA Regulations, is a business that is independently owned and operated and which is not dominant in its field of operation. In addition, at the end of each fiscal year, at least 20% of the total amount of loans made since April 25, 1994 by each SBIC must be made to a subclass of Small Business Concerns that (i) have a net worth, together with any affiliates, of $6 million or less and average annual net income after U.S. federal income taxes for the preceding two (2) years of $2 million or less (average annual net income is computed without the benefit of any carryover loss), or (ii) satisfy alternative criteria under SBA Regulations that focus on the industry in which the business is engaged and the number of persons employed by the business or its gross revenues. SBA Regulations also prohibit an SBIC from providing funds to a Small Business Concern for certain purposes, such as relending and reinvestment.

Under current SBA Regulations and subject to local usury laws, the maximum rate of interest that Elk may charge may not exceed the higher of (i) 19% or (ii) a rate calculated with reference to Elk's weighted average cost of qualified borrowings, as determined under SBA Regulations or the SBA's current debenture interest rate. The current maximum rate of interest permitted on loans originated by Elk is 19%. At June 30, 2011, Elk's outstanding loans receivable had a weighted average rate of interest of 9.8%. SBA Regulations also require that each loan originated by SBICs have a term of between one year and twenty years.

The SBA restricts the ability of SBICs to repurchase their capital stock, to retire their subordinated SBA debentures and to lend money to their officers, directors and employees or invest in affiliates thereof. The SBA also prohibits, without prior SBA approval, a "change of control" or transfers which would result in any person (or group of persons acting in concert) owning 10% or more of any class of capital stock of an SBIC. A "change of control" is any event which would result in the transfer of the power, direct or indirect, to direct the management and policies of an SBIC, whether through ownership, contractual arrangements or otherwise. Because Ameritrans owns 100% of Elk, transfers of more than 10% of any class of voting securities of Ameritrans may require prior written SBA approval.

Under SBA Regulations, without prior SBA approval, loans by licensees with outstanding SBA leverage to any single Small Business Concern may not exceed 20% of an SBIC's Leverageable Capital (as defined by applicable SBA regulations). As of June 30, 2011, Elk's Leverageable Capital was approximately $10.6 million. Under the terms of the SBA Agreement, however, Elk is authorized to make loans to Disadvantaged Concerns in amounts not exceeding 20% of its respective Leverageable Capital.

SBICs must invest funds that are not being used to make loans in investments permitted under SBA Regulations. These permitted investments include direct obligations of, or obligations guaranteed as to principal and interest by, the government of the United States with a term of 15 months or less and deposits maturing in one year or less issued by an institution insured by the FDIC. SBICs may purchase voting securities of Small Business Concerns in accordance with SBA Regulations. SBA Regulations prohibit SBICs from controlling a Small Business Concern except where necessary to protect an investment. SBA Regulations presume control when SBICs purchase (i) 50% or more of the voting securities of a Small Business Concern if the Small Business Concern has less than 50 stockholders or (ii) more than 20% (and in certain situations up to 25%) of the voting securities of a Small Business Concern if the Small Business Concern has 50 or more stockholders.

16

## COMMON STOCK DIVIDEND REINVESTMENT PLAN

We have authorized a dividend reinvestment plan ("DRIP") that provides for reinvestment of our distributions on behalf of our common stockholders, unless a stockholder elects to receive cash as in the plan. As a result, if our Board of Directors authorizes, and we declare, a cash dividend, then our stockholders who have not "opted out" of our dividend reinvestment plan will have their cash dividends automatically reinvested in additional shares of our Common Stock, rather than receiving the cash. Our DRIP does not apply to our Preferred Stock.

No action is required on the part of a registered common stockholder to have their cash dividend reinvested in shares of our common stock. A registered stockholder may elect to receive an entire dividend in cash by notifying Continental Stock Transfer & Trust Company, the plan administrator and our transfer agent and registrar, in writing so that such notice is received by the plan administrator no later than the record date for dividends to stockholders. The plan administrator will set up an account for shares acquired through the plan for each stockholder who has not elected to receive dividends in cash and hold such shares in non-certificated form. Upon request by a stockholder participating in the plan, received in writing not less than ten days prior to the record date, the plan administrator will, instead of crediting shares to the participant's account, issue a certificate registered in the participant's name for the number of whole shares of our common stock and a check for any fractional share.

Those stockholders whose shares are held by a broker or other financial intermediary may receive dividends in cash by notifying their broker or other financial intermediary of their election.

We intend to use primarily newly issued shares to implement the plan, whether our shares are trading at a premium or at a discount to NAV. However, we reserve the right to purchase shares in the open market in connection with our implementation of the plan. The number of shares to be issued to a stockholder is determined by dividing the total dollar amount of the dividend payable to such stockholder by the market price per share of our common stock at the close of regular trading on The NASDAQ Capital Market on the dividend payment date. Market price per share on that date will be the closing price for such shares on The NASDAQ Capital Market or, if no sale is reported for such day, at the average of their reported bid and asked prices. The number of shares of our common stock to be outstanding after giving effect to payment of the dividend cannot be established until the value per share at which additional shares will be issued has been determined and elections of our stockholders have been tabulated.

## ITEM 1A. RISK FACTORS

## RISK FACTORS THAT MAY AFFECT FUTURE RESULTS

*You should carefully consider these risk factors, together with all of the other information included in this Annual Report on Form 10-K, including our consolidated financial statements and the related notes thereto before making a decision to purchase our Common Stock and Preferred Stock. The risks set out below are not the only risks we face. Additional risks and uncertainties not currently known to us or that we currently deem to be immaterial also may materially adversely affect our business, financial condition and/or operating results. If any of the following events occur, our business, financial condition and results of operations could be materially adversely affected. In such case, our net asset value and the trading price of our Common Stock and Preferred Stock could decline, and you may lose all or part of your investment.*

**A failure on our part to maintain our status as a BDC would significantly reduce our operating flexibility.**

If we do not continue to qualify as a BDC, we might be regulated as a closed-end investment company under the 1940 Act, which would significantly decrease our operating flexibility.

**Our ability to grow depends on our ability to raise capital.**

We need to periodically access the capital markets and/or SBA debentures to raise cash to fund new investments. Unfavorable economic conditions could increase our funding costs, limit our access to the capital markets or result in a decision by lenders not to extend credit to us. With certain exceptions, we are only allowed to borrow amounts such that our asset coverage, on a consolidated basis, as defined in the 1940 Act, equals at least 200% after such borrowing. The amount of leverage that we employ depends on our board of directors' assessment of market and other factors at the time of any proposed borrowing. We cannot assure you that we will be able to maintain our current, or obtain new, sources of financing on terms acceptable to us, if at all.

17

In general, SBA will only approve leverage request in excess of two tiers of equity after the SBIC has clearly demonstrated consistent, sustainable profitability, based on a conservative investment strategy that limits downside risk. In general, the maximum amount of leverage made available to any one SBIC may not exceed 200 percent of the SBIC's Regulatory Capital or $150 million, whichever is less. However, all future SBA loan commitments, including leverage levels, are within the discretion of the SBA.

As of June 30, 2011, Elk continued to have a condition of capital impairment under applicable SBA regulations, which, until cured, may prevent future borrowings by Elk from the SBA and/or could result in an acceleration of our SBA debentures. Further, in connection with its consideration of the Renova Transactions, the SBA has indicated that, upon the Initial Closing of the Renova Transaction, it may restrict our ability to access SBA leverage until, at least, January 2013, to allow SBA to assess our performance following the change in control and ownership contemplated by the Renova Transactions.

While we have entered into the Renova Purchase Agreement for the sale of shares of our Common Stock to Renova, the SBA has informed us that the transaction, as currently structured, will not satisfy certain SBA requirements. The Company and Renova are discussing potential modifications to the terms of the transaction in order to satisfy applicable SBA management-ownership diversity requirements.  While we continue to believe that the transaction satisfies SBA diversity requirements, to date the SBA has not concurred with that view.  We intend to continue discussions with the SBA on its diversity interpretation and are also discussing with Renova potential modifications to the terms of the transaction in order to satisfy the SBA's interpretation of those requirements. There is no assurance that the SBA will modify its position, that we and Renova will be able to reach agreement on revised terms or that the revised terms would satisfy the SBA.  Furthermore, any revised terms may not be as favorable to us and our shareholders as the current terms and may also require resubmission of the agreement for shareholder approval.  If we and Renova cannot agree on revised terms or if the SBA does not change its current view of the diversity requirements, the Renova Purchase Agreement and related agreements may be terminated. In such event, we would need to actively seek an alternative source of capital.  Any modified transaction with Renova or alternative transaction with a different party could take significant time and resources to complete, if it can be completed at all.

The terms of our stock purchase agreement with Renova and our loan arrangement with Ameritrans Holdings LLC also restrict our ability to raise capital or enter into other major corporate transactions while the agreement and loan arrangement, respectively, are effective.

**We will be subject to corporate-level income tax if we are unable to qualify as a RIC.**

To qualify as a RIC under the Code, we must meet certain income source, asset diversification and annual distribution requirements.

The annual distribution requirement for a RIC is satisfied if we distribute to our stockholders on a timely basis an amount equal to at least 90% of our ordinary income and net short-term capital gain in excess of net long-term capital losses, if any, reduced by deductible expenses, for each year. Because we use debt financing, we are subject to certain asset coverage ratio requirements under the 1940 Act and financial covenants under our loan agreements that could, under certain circumstances, restrict us from making distributions necessary to qualify as a RIC. If we are unable to obtain cash from other sources, we may fail to qualify as a RIC and, thus, may be subject to corporate level income tax. Because we must make distributions to our stockholders, as described above, such amounts, to the extent a stockholder is not participating in our dividend reinvestment plan, will not be available to fund investment originations.

To qualify as a RIC, we must also meet certain asset diversification requirements at the end of each calendar quarter. Failure to meet these tests may result in our having to (i) dispose of certain investments quickly or (ii) raise additional capital to prevent the loss of RIC status.  If we fail to qualify as a RIC for any reason and become or remain subject to corporate income tax, the resulting corporate taxes could substantially reduce our net assets, the amount of income available for distribution and the amount of our distributions. Such a failure would have a material adverse effect on us and our stockholders.

**We may have difficulty paying our required distributions if we recognize income before or without receiving cash representing such income.**

For federal income tax purposes, we include in income certain amounts that we have not yet received in cash, such as original issue discount, which may arise if we receive warrants in connection with the making of a loan or possibly in other circumstances, or contracted payment-in-kind interest, which represents contractual interest added to the loan balance and due at the end of the loan term.  Such original issue discount or increases in loan balances are included in income before we receive any corresponding cash payments.  We also may be required to include in income certain other amounts that we will not receive in cash, including, for example, non-cash income from pay-in-kind securities and deferred payment securities.

18

Since in certain cases we may recognize income before or without receiving cash representing such income, we may have difficulty meeting the tax requirement to distribute an amount equal to at least 90% of our ordinary income and realized net short-term capital gains in excess of realized net long-term capital losses, if any, reduced by deductible expenses, to maintain our status as a RIC. Accordingly, we may have to sell some of our investments at times we would not consider advantageous, raise additional debt or equity capital or reduce new investment originations to meet these distribution requirements. If we are not able to obtain cash from other sources, we may fail to qualify as a RIC and thus be subject to corporate-level income tax.

**Regulations governing our operation as a BDC affect our ability to, and the way in which, we raise additional capital.**

We may issue debt securities or preferred stock, which we refer to collectively as "senior securities," and borrow money from banks or other financial institutions up to the maximum amount permitted by the 1940 Act. Under the provisions of the 1940 Act, we are permitted, as a BDC, to incur indebtedness or issue senior securities only in amounts such that our asset coverage, as defined in the Investment Company Act, equals at least 200%, subject to certain exemptive relief we have received with respect to calculating this amount, after such incurrence or issuance. If the value of our assets declines, we may be unable to satisfy this test, which would prohibit us from paying dividends and could prevent us from maintaining our status as a RIC. If we cannot satisfy this test, we may be required to sell a portion of our investments and, depending on the nature of our leverage, repay a portion of our indebtedness at a time when such sales may be disadvantageous. We are not generally able to issue and sell our Common Stock at a price below net asset value per share. We may, however, sell our Common Stock, or warrants, options or rights to acquire our Common Stock, at a price below the current net asset value of the Common Stock if our board of directors determines that such sale is in our best interests and the best interests of our stockholders, and, in certain instances, our stockholders approve such sale. In any such case, the price at which our securities are to be issued and sold may not be less than a price which, in the determination of our board of directors, closely approximates the market value of such securities (less any commission or discount). To the extent our Common Stock trades at a discount to net asset value, this restriction may adversely affect our ability to raise capital.

**Most of our investments are not publicly traded and, as a result, there is uncertainty as to the value of our investments.**

A large percentage of our investments are not publicly traded. The fair value of investments that are not publicly traded may not be readily determinable. We value these investments quarterly at fair value as determined in good faith by our board of directors based on the input of our management and audit committee. However, we may be required to value our investments more frequently as determined in good faith by our board of directors to the extent necessary to reflect significant events affecting their value. The types of factors that may be considered in valuing our investments include the enterprise value of the portfolio company, the nature and realizable value of any collateral, the portfolio company's ability to make payments and its earnings, the markets in which the portfolio company does business, comparison to publicly traded companies, discounted cash flow and other relevant factors. Because such valuations and, particularly, valuations of private investments and private companies that are inherently uncertain, may fluctuate over short periods of time and may be based on estimates, our determinations of fair value may differ materially from the values that would have been used if a ready market for these investments existed and may differ materially from the values that we may ultimately realize.

**We invest in small businesses which may subject us to losses.**

Lending to small businesses involves a high degree of business and financial risk, which can result in substantial losses and should be considered speculative. Our borrower base consists primarily of small business owners who have limited resources and who are generally unable to obtain financing from banks or other primary sources. There is generally no publicly available information about these small business owners, and we must rely on the diligence of our employees and agents to obtain information in connection with our credit decisions. In addition, these small businesses often do not have audited financial statements. Some smaller businesses have narrower product lines and market shares than their competition. Therefore, they may be more vulnerable to customer preferences, market conditions, or economic downturns, which may adversely affect the return on, or the recovery of, our investment in these businesses.

**Our ability to achieve our investment objective depends on our senior management's ability to support our investment process; if we were to lose any of our senior management, our ability to achieve our investment objective could be significantly harmed.**

We have a small number of employees and, as a result, we depend on the investment expertise, skill and network of business contacts of our senior management. Our senior management team, with the assistance of outside advisors, evaluates, negotiates, structures, executes, monitors and services our investments. Our future success will depend to a significant extent on the continued service and coordination of the principals of our investment senior management team. The departure of any of these individuals could have a material adverse effect on our ability to achieve our investment objective. In particular, we are reliant on the continued service of our chief executive officer, Michael Feinsod. While we believe that we have partially mitigated loss of his services through his potential departure by entering into an employment contract with him, if he was not available to us, for any reason, our operations and our ability to reach our objectives would be severely adversely affected.

**Declining asset values and illiquidity in the corporate debt markets have adversely affected, and may continue to adversely affect, the fair value of our portfolio investments, reducing the value of our assets.**

As a BDC, we are required to carry our investments at market value or, if no market value is readily available, at fair value as determined in good faith by the board of directors. Decreases in the values of our investments are recorded as unrealized depreciation. The unprecedented declines in asset values and liquidity in the corporate debt markets have resulted in significant net unrealized depreciation in our portfolio. As a result, we have incurred and, depending on market conditions, we may incur further unrealized depreciation in future periods, which could have a material adverse impact on our business, financial condition and results of operations.

**The lack of liquidity in our investments may adversely affect our business.**

As we generally make investments in private companies, substantially all of these investments are subject to legal and other restrictions on resale or otherwise are less liquid than publicly traded securities. The illiquidity of our investments may make it difficult for us to sell such investments if the need arises. In addition, if we are required to liquidate all or a portion of our portfolio quickly, we may realize significantly less than the value at which we have previously recorded our investments.

**We may experience fluctuations in our quarterly results.**

We could experience fluctuations in our quarterly operating results due to a number of factors, including the interest rate payable on the debt investments we make, the default rate on such investments, the level of our expenses, variations in and the timing of the recognition of realized and unrealized gains or losses and the degree to which we encounter competition in our markets and general economic conditions. As a result of these factors, results for any period should not be relied upon as being indicative of performance in future periods.

**Changes in laws or regulations governing our operations, or changes in the interpretation thereof, and any failure by us to comply with laws or regulations governing our operations may adversely affect our business.**

We and our portfolio companies are subject to regulation by laws at the local, state and federal levels. These laws and regulations, as well as their interpretation, may be changed from time to time.

Accordingly, any change in these laws or regulations, or their interpretation, or any failure by us to comply with these laws or regulations may adversely affect our business. As discussed above, there is a risk that certain investments that we intend to treat as qualifying assets will be determined to not be eligible for such treatment. Any such determination would have a material adverse effect on our business.

**We have a history of losses and we expect to incur losses for the foreseeable future. If we are unable to achieve profitability, our business will suffer and our stock price is likely to decline.**

We have not operated at a profit in recent years and we anticipate incurring a loss in fiscal 2012 and may incur additional losses in 2013. At June 30, 2011, we had net assets of approximately $2.2 million, a decline of approximately $6.1 million from the prior fiscal year-end. As a result, we will need to significantly increase our revenues to achieve and sustain profitability. If revenues grow more slowly than we anticipate, or if operating and development expenses exceed our expectations or cannot be adjusted, accordingly, we may incur further losses in the future. We cannot assure you that we will be able to achieve or sustain profitability.

**If we fail to increase revenues, we will not achieve or maintain profitability.**

Our revenues have declined from $6.3 million in 2008 to $2.1 million in 2011. To achieve profitability, we will need to increase revenues substantially through implementation of our growth strategy and/or reduce expenses significantly. We cannot assure you that our revenues will grow or that we will achieve or maintain profitability in the future.

**Our current relationships could be terminated and we may not be able to obtain additional financing.**

At June 30, 2011, we had a line of credit with one bank that had been paid in full as of August 31, 2010 and which expired on July 6, 2011. We anticipate that, as the need for additional working capital arises from time to time, we may seek to establish new credit lines, subject to approval from the applicable lenders. We currently anticipate that our available cash resources, combined with cash generated from operations will be sufficient to meet our anticipated working capital and capital expenditure requirements for at least the next 12 months. However, additional financing may be required to satisfy our operating requirements and we cannot provide assurance that such additional financing will be available on terms favorable to us, or at all. If adequate funds are not available or are not available on acceptable terms, our ability to fund our operations, take advantage of unanticipated opportunities, develop or enhance services or products or otherwise respond to competitive pressures would be significantly limited. Our business, results of operations and financial condition could be materially adversely affected by these financing limitations.

At June 30, 2011, we had outstanding debentures payable to the SBA aggregating $21.175 million. As an SBIC we must comply with the rules and regulations of the SBA. However, since 2010 Elk is not in compliance with certain SBA regulations because of its capital impairment and may not be eligible for additional financing from the SBA. In addition, as a result of our capital impairment, the SBA may declare our loans immediately due and payable, or terminate our access to SBA financing until the capital impairment is cured.

In January 2011, we borrowed $1.5 million (the "January 2011 Loan") from Ameritrans Holdings LLC ("Ameritrans Holdings"), an affiliate of Renova. Currently, we are not in compliance with certain covenants under the January 2011 Loan. Accordingly, Ameritrans Holdings may declare that an event of default has occurred and declare the principal amount of our indebtedness, together with any accrued and unpaid interest (including default interest) due thereon, to be immediately due and payable.

Also, as described above, we will not be able to consummate the Renova Purchase Agreement on the current terms set forth in the agreement as a result of concerns raised by the SBA. The Company and Renova are discussing potential modifications to the terms of the transaction in order to satisfy SBA requirements. There is no assurance that the parties will be able to reach agreement on revised terms or that the revised terms would satisfy the SBA. Furthermore, any revised terms may not be as favorable to the Company and its shareholders as the current terms and may also require resubmission of the agreement for shareholder approval. If the parties cannot agree on revised terms, the Renova Purchase Agreement and related agreements may be terminated. In that event the Company would need to actively seek an alternative source of capital.

**If we fail to pay dividends on our Preferred Stock in an amount equal to two years of dividends, the holders of our Preferred Stock will be entitled to elect a majority of our directors.**

The terms of the Preferred stock provide for quarterly dividends in the amount of $0.28125 per outstanding share of Preferred Stock. The Company has not declared or paid dividends on the Preferred Stock for the quarterly periods ended September 30, 2010, December 31, 2010, March 31, 2011 and June 30, 2011. In addition, the Renova Purchase Agreement and the promissory note that we entered into with Ameritrans Holdings prohibit the Company from declaring or paying any dividends while those agreements remain in effect. In accordance with the terms of the Preferred Stock, if dividends on the Preferred Stock are unpaid in an amount equal to at least two years of dividends, the holders of Preferred Stock will be entitled to elect a majority of our board of directors.

**We are currently in a period of capital markets disruption and conditions may not improve in the near future.**

The current market conditions have materially and adversely affected the debt and equity capital markets in the United States, which could have a negative impact on our business and operations. The US capital markets have been experiencing extreme volatility and disruption for more than 36 months as evidenced by a lack of liquidity in the debt capital markets, significant write-offs in the financial services sector, the repricing of credit risk in the broadly syndicated credit market and the failure of major financial institutions. These events have contributed to worsening general economic conditions that are materially and adversely impacting the broader financial and credit markets and reducing the availability of credit and equity capital for the markets as a whole and financial services firms in particular. As a result, we believe these conditions may continue for a prolonged period of time or worsen in the future. A prolonged period of market illiquidity will continue to have an adverse effect on our business, financial condition, and results of operations. Unfavorable economic conditions also could increase our funding costs, limit our access to the capital markets or result in a decision by lenders not to extend credit to us. Equity capital may be difficult to raise because, subject to some limited exceptions, we generally are not able to issue and sell our common stock at a price below net asset value per share. In addition, the debt capital that will be available, if at all, may be at a higher cost and on less favorable terms and conditions. These events and the inability to raise capital may significantly limit our originations, therefore, our ability to grow and, potentially, limit our operating results.

**Economic turmoil, including the current market turmoil, could impair our portfolio companies and harm our operating results.**

Many of the companies in which we have made or will make investments are susceptible to economic slowdowns or recessions. Economic turmoil, including the current economic slowdown and future slowdowns or recessions, may affect the ability of a company to repay our loans or engage in a liquidity event such as a sale, recapitalization, or initial public offering. Our nonperforming assets are likely to increase and the value of our portfolio is likely to decrease during these periods. Current adverse economic conditions also have decreased the value of collateral securing our loans, if any, and a prolonged recession or depression may further decrease such value. These conditions are contributing to and, if prolonged, could lead to further losses of value in our portfolio and a decrease in our revenues, net income, assets and net worth.

**We borrow money to fund our operations, which magnifies the potential for gain or loss on amounts invested, and may increase the risk of investing in us.**

21

Case 2:17-cv-03586-JFB-AYS Document 47-2 Filed 10/06/17 Page 350 of 1053 PageID #: 924

Borrowings magnify the potential for gain or loss on amounts invested, and therefore increase the risk associated with investing in us. We may borrow from and issue senior debt securities to banks, investment banks and other lenders and through long-term subordinated SBA debentures.  These creditors have fixed dollar claims on our assets that are superior to the claims of our shareholders.  If the value of our assets decreases, leveraging would cause net asset value to decline more sharply than it otherwise would have had we not leveraged. In addition, our existing indebtedness may have important consequences, including: limiting our ability to obtain additional financing to fund future working capital, future investments and other general corporate requirements; increasing the cost of future borrowing; requiring a substantial portion of our cash flow to be dedicated to debt service payments and/or mandatory repayments or acceleration payments instead of other purposes, thereby reducing the amount of available cash flows for working capital, future investments and other general corporate purposes; and limiting our flexibility in planning for and reacting to changes in our industry.

## ITEM 2. PROPERTIES

On July 1, 2010, we entered into a thirty-one month sublease with an unrelated party for office space in Manhattan. This sublease calls for payments of $6,000 per month, including electric. Rent expense under this lease aggregated $76,350 for the year ended June 30, 2011.

On July 16, 2010, we entered into a seven-year and one month sublease with an unrelated party for office space for our headquarters in Jericho, New York. This sublease requires rental payments ranging from $98,250 to $115,769 per year, including electric. The sublease calls for escalation based on changes, from a base period, in real estate tax amounts as incurred by the sublandlord. The sublandlord may terminate this sublease with us effective July 30, 2014, if written notice is given on or before July 30, 2013. Rent expense under this lease aggregated $95,325 for the year ended June 30, 2011.

## ITEM 3. LEGAL PROCEEDINGS

We are not currently a party to any material legal proceeding.  From time to time, we are engaged in various legal proceedings incident to the ordinary course of its business. In the opinion of our management and based upon the advice of legal counsel, there is no proceeding pending, or, to the knowledge of our management, threatened, which, in the event of an adverse decision, would result in a material adverse effect on our results of operations or financial condition.

## ITEM 4. [RESERVED]

AMERITRANS CAPITAL CORP (Form 10-K)

PART II

**ITEM 5. MARKET FOR THE REGISTRANT'S COMMON STOCK AND PREFERRED STOCK AND RELATED STOCKHOLDER MATTERS**

Ameritrans Common Stock is listed on the NASDAQ Capital Market under the symbol AMTC. Ameritrans Preferred Stock is listed on the NASDAQ Capital Market under the symbol AMTCP.

The following table shows the high and low sale prices per share of Common Stock and Preferred Stock as reported by NASDAQ, for each quarter in the fiscal years ended June 30, 2010 and June 30, 2011.

| Ameritrans Common Stock | High | Low |
|---|---|---|
| **Fiscal 2010** | | |
| 1st Quarter | $1.63 | $0.73 |
| 2nd Quarter | $2.15 | $0.75 |
| 3rd Quarter | $1.45 | $1.13 |
| 4th Quarter | $1.32 | $0.95 |
| **Fiscal 2011** | | |
| 1st Quarter | $1.32 | $1.01 |
| 2nd Quarter | $1.32 | $0.95 |
| 3rd Quarter | $1.15 | $0.95 |
| 4th Quarter | $1.57 | $0.96 |
| 1st Quarter through September 16, 2011 | $1.17 | $0.89 |
| **Ameritrans Preferred Stock** | **High** | **Low** |
| **Fiscal 2010** | | |
| 1st Quarter | $10.96 | $4.44 |
| 2nd Quarter | $ 7.75 | $3.99 |
| 3rd Quarter | $11.33 | $6.01 |
| 4th Quarter | $10.17 | $8.18 |
| **Fiscal 2011** | | |
| 1st Quarter | $11.98 | $8.50 |
| 2nd Quarter | $10.94 | $8.51 |
| 3rd Quarter | $10.00 | $8.78 |
| 4th Quarter | $11.00 | $9.15 |
| 1st Quarter through September16, 2011 | $11.03 | $9.12 |

The following table details information regarding our existing equity compensation plans as of June 30, 2011:

| Plan Category | (a)<br>Number of securities to be issued upon exercise of fully vested outstanding options | (b)<br>Weighted-average exercise price of fully vested options | (c)<br>Number of securities remaining available for future issuance under equity compensation plans (excluding securities reflected in column (a) |
|---|---|---|---|
| Equity compensation plans approved by security holders | 289,000 [1] | $3.51 | 0 [1][3] |
| Equity compensation plans not | -- | -- | -- |

| approved by security holders [2] | | | |
|---|---|---|---|
| Totals | 289,000 [1] | $3.51 | 0 [1][3] |

23

(1) Includes fully vested options to purchase up to 230,000 shares of Common Stock granted to employees under the 1999 Employee Plan and options to purchase up to 59,000 shares granted to non-employee directors under the Non-Employee Director Plan. See "Stock Option Plans."

(2) All of our equity compensation plans have been approved by our stockholders.

(3) Our stock options plans expired May 21, 2009.

We have declared and paid the quarterly dividend on the Preferred Stock since the Preferred Stock was issued through June 30, 2010. Our Board of Directors declared a dividend of $0.28125 per share on July 21, 2010 on the Preferred Stock for the period April 1, 2010 through June 30, 2010, which was paid on August 17, 2010 for all holders of the Preferred Stock of record as of August 2, 2010. On March 12, 2010, we paid the cumulative arrearages on our Preferred Stock of $0.28125 per share for the periods April 1, 2010 through June 30, 2010; July 1, 2009 - September 30, 2009 and October 1, 2009-December 31, 2009. The dividends for these quarters were declared on February 25, 2010 and paid on March 12, 2010. The dividend for the fiscal quarter January 1, 2010 through March 31, 2010 was declared on April 9, 2010 and paid on April 27, 2010. No dividends on Preferred Stock have been paid or declared for any quarter subsequent to that date. Prior to the Initial Closing or termination of the Renova Purchase Agreement, the Renova Purchase Agreement prohibits us from declaring or paying any dividends (other than dividends required to maintain our RIC status) or making any other distribution on, or directly or indirectly redeeming, purchasing or otherwise acquiring any shares of our capital stock without Renova's prior written consent. The promissory note that we entered into with Ameritrans Holdings also prohibits us from declaring or paying dividends while the note remains outstanding. The terms of the Preferred Stock provide that if dividends on the Preferred Stock are unpaid in an amount equal to at least two years of dividends, the holders of Preferred Stock will be entitled to elect a majority of our board of directors.

As of September 16, 2011, there were 143 holders of record of the Ameritrans Common Stock, and 4 holders of record of the Preferred Stock, which is exclusive of those shares held in street name.

## ITEM 6. SELECTED FINANCIAL DATA

The table below contains certain summary historical financial information of Ameritrans. You should read this table in conjunction with the consolidated financial statements of Ameritrans (the "Financial Statements") and "Management's Discussion and Analysis of Financial Condition and Results of Operations" included elsewhere in this Annual Report.

**STATEMENTS OF OPERATIONS DATA**

| | FISCAL YEAR ENDED JUNE 30, | | | | |
|---|---|---|---|---|---|
| | 2011 | 2010 | 2009 | 2008 | 2007 |
| Investment income | $ 2,128,632 | $ 1,655,436 | $ 3,344,324 | $ 6,260,277 | $ 5,876,670 |
| Interest expense | $ 1,446,193 | $ 906,202 | $ 1,090,074 | $ 2,357,504 | $ 2,117,675 |
| Other expenses | $ 5,905,188 | $ 4,725,649 | $ 5,194,210 | $ 3,949,293 | $ 3,916,815 |
| Total expenses | $ 7,351,381 | $ 5,631,851 | $ 6,284,284 | $ 6,306,797 | $ 6,034,490 |
| Net investment loss | $ (5,222,749) | $ (3,976,415) | $ (2,939,960) | $ (46,520) | $ (157,820) |
| Net realized/unrealized gains (losses) on investments | $ (579,827) | $ (2,398,548) | $ (2,522,493) | $ (491,051) | $ 356,892 |
| Net increase (decrease) in net assets from operations | $ (5,802,576) | $ (6,374,963) | $ (5,462,453) | $ (537,571) | $ 199,072 |
| Dividends on Preferred Stock | $ (337,500) | $ (421,875) | $ (253,125) | $ (337,500) | $ (337,500) |
| Net decrease in net assets from operations available to common stockholders | $ (6,140,076) | $ (6,796,838) | $ (5,715,578) | $ (875,071) | $ (138,428) |
| Net decrease in net assets from operations per common share | $ (1.81) | $ (2.00) | $ (1.68) | $ (0.26) | $ (0.04) |
| Common Stock dividends paid | $ - | $ - | $ - | $ 67,912 | $ - |
| Common Stock dividends paid per common share | $ - | $ - | $ - | $ 0.02 | $ - |
| Weighted average number of shares of Common Stock outstanding | 3,395,583 | 3,395,583 | 3,395,583 | 3,394,981 | 3,391,208 |

**STATEMENTS OF ASSETS AND LIABILITIES DATA**

| | 2011 | 2010 | 2009 | 2008 | 2007 |
|---|---|---|---|---|---|
| Investments | $ 23,921,735 | $ 25,455,698 | $ 26,409,468 | $ 59,598,287 | $ 62,380,367 |
| Total assets | $ 30,122,134 | $ 33,909,362 | $ 28,286,156 | $ 61,981,468 | $ 63,944,883 |
| Notes payable and demand notes | $ 4,500,000 | $ 3,370,000 | $ 370,000 | $ 28,195,697 | $ 29,482,500 |
| Subordinated SBA debentures | $ 21,175,000 | $ 21,175,000 | $ 12,000,000 | $ 12,000,000 | $ 12,000,000 |
| Total liabilities | $ 27,886,041 | $ 25,533,193 | $ 13,142,314 | $ 41,183,176 | $ 42,300,043 |
| Total net assets | $ 2,236,093 | $ 8,376,169 | $ 15,143,842 | $ 20,798,292 | $ 21,644,840 |

24

Case 2:17-cv-03586-JFB-AYS   Document 2-2   Filed 06/00/17   Page 354 of 1053 PageID #: 928

## ITEM 7. MANAGEMENT'S DISCUSSION AND ANALYSIS OF FINANCIAL CONDITION AND RESULTS OF OPERATIONS

You should read the following discussion in conjunction with the financial statements and notes to financial statements. The results described below are not necessarily indicative of the results to be expected in any future period. Certain statements in this discussion and analysis, including statements regarding our strategy, financial performance, and revenue sources, are forward-looking statements based on current expectations and entail various risks and uncertainties that could cause actual results to differ materially from those expressed in the forward-looking statements, including those described in "Risk Factors" and elsewhere in this Annual Report.

## CRITICAL ACCOUNTING POLICIES

### Investment Valuations

Our loans receivable, net of participations and any unearned discount, are considered investment securities under the 1940 Act and are recorded at fair value. As part of fair value methodology, loans are valued at cost adjusted for any unrealized appreciation (depreciation). Since no ready market exists for these loans, the fair value is determined in good faith by management, and approved by the Board of Directors. In determining the fair value, we and our Board of Directors consider factors such as the financial condition of borrower, the adequacy of the collateral, individual credit risks, historical loss experience, and the relationships between current and projected market rates and portfolio rates of interest and maturities. Foreclosed properties, which represent collateral received from defaulted borrowers, are valued based on appraisals prepared by third parties and market analysis.

Loans are, generally, considered "non–performing" once they become 90 days past due as to principal or interest. The value of past due loans are periodically determined in good faith by management, and if, in the judgment of management, the amount is not collectible and the fair value of the collateral is less than the amount due, the value of the loan will be reduced to fair value .

Equity investments (preferred stock, common stock, LLC interests, LP interest, and stock warrants, including controlled subsidiary portfolio investments) and investment securities are recorded at fair value, represented as cost, plus or minus unrealized appreciation or depreciation. Investments for which market quotations are readily available are valued at such quoted amounts. If no public market exists, the fair value of investments that have no ready market are determined in good faith by management, and approved by the Board of Directors, based upon assets and revenues of the underlying investee companies as well as general market trends for businesses in the same industry.

We record the investment in life insurance policies at fair value, represented as cost, plus or minus unrealized appreciation or depreciation. The fair value of the investment in life settlement contracts have no ready market and are determined in good faith by management, and approved by the Board of Directors, based on actuarial life expectancy, health evaluations and market trends.

Because of the inherent uncertainty of valuations, our estimates of the values of the investments may differ significantly from the values that would have been used had a ready market for the investments existed, and the differences could be material.

### Assets Acquired in Satisfaction of Loans

Assets acquired in satisfaction of loans are carried at the lower of the net value of the related foreclosed loan or the estimated fair value less cost of disposal.  Losses incurred at the time of foreclosure are charged to the unrealized depreciation on loans receivable. Subsequent reductions in estimated net realizable value are charged to operations as losses on assets acquired in satisfaction of loans.

### Use of Estimates

The preparation of financial statements in conformity with U.S. generally accepted accounting principles requires management to make extensive use of estimates and assumptions that affect the reported amounts of assets and liabilities at the date of the financial statements and the reported amounts of revenues and expenses during the reporting period.  Actual results could differ from those estimates.  Estimates that are particularly susceptible to significant change relate to the determination of the fair value of our investments.

AMERITRANS CAPITAL CORP (Form: 10-K)

**Income Recognition**

Interest income, including interest on non-performing loans, is recorded on an accrual basis and in accordance with loan terms to the extent such amounts are expected to be collected. We recognize interest income on loans classified as non-performing only to the extent that the fair market value of the related collateral exceeds the specific loan principal balance. Loans that are not fully collateralized and in the process of collection are placed on nonaccrual status when, in the judgment of management, the collectability of interest and principal is doubtful.

**Contingencies**

We are subject to legal proceedings in the course of our daily operations from enforcement of our rights in disputes pursuant to the terms of various contractual arrangements. We may assess the likelihood of any adverse judgment or outcome to these matters as well as a potential range of probable losses. A determination of the amount of reserve required, if any, for these contingencies may be made after analysis of each individual issue. The required reserves may change in the future due to new developments in each matter or changes in approach, such as a change in settlement strategy in dealing with these matters.

**RESULTS OF OPERATIONS FOR THE YEARS ENDED JUNE 30, 2011 AND 2010**

**Total Investment Income**

Our investment income for the year ended June 30, 2011, increased $473,196 or 28.6% to $2,128,632 as compared with the prior year's investment income of $1,655,436. The increase is primarily due to a net increase in interest income of $511,609. This net increase in interest income is primarily due to an increase approximately $750,000 in interest from Corporate Loans that were maintained throughout most of the fiscal year, as partially offset by a decrease in interest from Commercial Loans of approximately $240,000. Such increase in Corporate Loans was reduced, in part, by sales of five loans, principal payments and fair value adjustments. Commercial Loans outstanding at June 30, 2011, decreased by $2,696,517, or 30.2%, to $6,244,815, as compared with the prior year's amount of $8,941,332. Of this decrease, approximately $1.75 million relates to repayments and approximately $1.1 million is due to the foreclosure of real estate assets which had secured certain Commercial Loans. This aggregate decrease of approximately $2.7 million was partially offset by approximately $250,000 in fair value adjustments. This net decrease in Commercial Loans continues to reflect our business strategy of moving toward Corporate Loans.

**Loans**

Corporate Loans outstanding at June 30, 2011, increased by $144,425, or 1.0%, to $14,281,285, as compared with Corporate Loans outstanding of $14,136,860 at June 30, 2010. This net increase is primarily attributable to new loans of approximately $12.0 million. Substantially offsetting this increase were (i) the repayment of loans aggregating approximately $6.4 million; (ii) the sale of five loans for approximately $5.1 million; and (iii) downward adjustments of fair value aggregating approximately $360,000. The interest income earned on Corporate Loans increased in 2011 by approximately $750,000 or 67%, primarily due to an increase in the number of investments during the period and total value of the Corporate Loan portfolio at the end of June 30, 2011.

Life Settlements Contracts outstanding at June 30, 2011, increased by $1,050,200 or 77.5% to $2,408,000, as compared with the prior year-end's Life Settlements contracts of $1,356,800. This increase in value is primarily attributable to actual premiums paid during fiscal 2011.

**Operating Expenses**

Interest expense for the year ended June 30, 2011, increased $539,991 or 59.6% to $1,446,193 when compared to $906,202 for the year ended June 30, 2010. Interest expense increased due primarily to a full year of interest related to $9.175 million of debentures proceeds received in January 2010 and $3.0 million in notes payable proceeds in December 2009 and March 2010 and, to a lesser extent, a $1.5 million senior secured note entered into in January 2011 and the increase in interest rates from 8.75% to 12.0% on the $3.0 million in notes beginning in January 2011. At June 30, 2011, we had no outstanding bank borrowings as compared with $370,000 at June 30, 2010.

26

Salaries and employee benefits decreased $270,215 or 14.7% to $1,570,634 in fiscal 2011 as compared with $1,840,849 for the prior fiscal year. This decrease is primarily attributable to a reduction in the number of our employees, as partially offset by termination payments.

Occupancy costs decreased $348,201 or 67.0% to $171,675 in fiscal 2011 from $519,876 for the year ended June 30, 2010, primarily due to a one-time payment of $260,000 in fiscal 2010 made in connection with the termination of the lease obligation on our former New York City office in 2010. Further, the lower rents resulting from termination of a storage facility lease effective June 30, 2010 and the less expensive office space rented in fiscal 2011 contributed to the decline in occupancy costs.

Legal fees increased $1,522,052, or 318.6%, to $1,999,752 in fiscal 2011 from $477,700 in fiscal 2010 due, primarily, to legal work in connection with our capital raising efforts, most significantly, the work relating to the stock purchase agreement and the $1.5 million senior secured note (see Notes 5 and 15 to our consolidated financial statements), and, to a lesser extent, SEC filings, compliance and general legal matters.

Accounting and compliance fees increased $98,981 or 15.7% to $729,993 in fiscal 2011 from $631,012 in the prior fiscal year. Accounting and compliance fees in fiscal 2011 consisted of consulting fees aggregating $407,437 for financial management personnel (an increase of approximately $220,000 from the prior year, related, primarily, to the Company's CFO, engaged in September 2010), $16,000 for tax return preparation, consulting fees related to internal controls development and testing of $69,294 (a decrease of approximately $77,000 from the prior fiscal year), Sarbanes-Oxley compliance monitoring of $57,292 (substantially, unchanged from fiscal 2010) and audit and audit-related fees of $179,970 (a decrease of approximately $16,000, from the prior fiscal year). In fiscal 2011, we incurred no fees related to enterprise risk management, a decrease of approximately $28,000 from 2010. The net reduction in accounting and compliance fees, other than management personnel, is primarily attributable to two factors: (a) significant cost-cutting measures in the current year and (b) disproportionately high internal control-related costs in the prior year.

Directors' fees and expense increased by $109,472, or 55.9%, to $305,140 in 2011 from $195,668 in 2010. This increase is primarily attributable to additional board and committee meetings being held in connection with capital raising activities, including the Renova Purchase Agreement and, to a lesser extent, increased board and committee meetings related to personnel issues.

Advisory fees decreased approximately $118,000 or 32.4% to approximately $246,000 in 2011 from approximately $364,000 in the prior fiscal year. This decrease is reflective of the absence of certain one-time payments made in fiscal 2010.

Other administrative expenses increased $185,022, or 26.5%, to $822,100 in fiscal 2011 when compared with the prior year's amount of $697,078. This net increase in administrative expenses was due to the following increases: loan costs of $114,772 (attributable to increased loan activity), foreclosure expenses of $99,489 (reflective of additional loan foreclosures), printing of financial and other filing documents of $39,453 (related primarily to a proxy statement in connection with the Renova Purchase Agreement), moving and storage of $18,165 (due to our moves to our two new offices), general office expense of $21,223 (due to our moves to our two new offices), SBA fees of $12,671 (related to the additional SBA debenture of $9.175 million), filing fees of $11,463 and other miscellaneous expenses, net, of $9,011. These increases were partially offset by decreases in depreciation of $87,629 (as a result of the prior year's write-off of office equipment and leasehold improvements), insurance of $23,663 (due to the assignment of an executive's life insurance policy), website and computer fees of $15,193 the effect of cost-cutting and recruitment costs of $14,740 (because there were no new hires during 2011).

**Net Realized Loss on Investments**

The components of net realized losses of approximately $438,000 were as follows: a loss of approximately $257,000 related to the sale of a Corporate Loan; a loss of approximately $271,000 attributable to the settlement of a Commercial Loan; a loss of approximately $107,000 on a foreclosed loan and a loss of $60,000 related to an equity investment. These losses were partially offset by gains realized in sales and payoffs of Corporate Loans aggregating approximately $257,000.

**Net Unrealized Depreciation on Investments**

During the year ended June 30, 2011, our investments had a net unrealized depreciation of approximately $142,197 compared with $1,404,700 in the prior fiscal year. The net unrealized depreciation for the year ended June 30, 2011 is primarily due to decreases in the fair value of certain investments in our portfolio.

27

An unrealized write-down of $359,353 in our Corporate Loan portfolio was the largest component of unrealized depreciation and, to a lesser extent, we decreased the fair value of our life insurance settlement portfolio by $61,741. These write-downs were partially offset by fair value increases in our Commercial Loans portfolio and our equity investments aggregating $251,168 and $27,729, respectively.

**Net Increase (Decrease) in Net Assets from Operations**

Net decrease in net assets resulting from operations for the year ended June 30, 2011 was $5,802,576 as compared to a net decrease in net assets resulting from operations for the year ended June 30, 2010 of $6,374,963.

## STATEMENTS OF ASSETS AND LIABILITIES

Total assets decreased by $3.8 million to $30.1 million as of June 30, 2011 when compared to total assets of $33.9 million as of June 30, 2010. This decrease was primarily due to a decrease in cash of approximately $3.2 million and a decrease in investments of $1.6 million, partially offset by an increase in assets acquired in satisfaction of loans of $1.0 million. We also had an increase in liabilities aggregating approximately $2.3 million, comprised, primarily, of a net increase in notes payable of $1.13 million, an increase in accrued expenses and other liabilities of approximately $931,000 and a dividends payable increase of approximately $253,000. The net increase in notes payable reflects the payoff of a bank loan of $370,000 and the incurrence of a $1.5 million senior secured note. The increase in accrued liabilities is significantly attributable to legal and related fees in connection with an equity transaction that has not yet closed and the increase in dividends payable represent fiscal 2011 preferred stock dividends that have not been declared.

## RESULTS OF OPERATIONS FOR THE YEARS ENDED JUNE 30, 2010 AND 2009

**Total Investment Income**

Our investment income for the year ended June 30, 2010, decreased $1,688,888 or 50.5% to $1,655,436 as compared with the prior year's investment income of $3,344,324. The decrease is primarily due to a decrease in interest income of $1,514,643. The decrease in interest income is primarily due to the reduction of income producing assets under management as a result of the sale of medallion loans as compared to the year ended June 30, 2009, and a reduction in interest rates received on variable rate loans.

Commercial Loans outstanding decreased by $2,570,784, or 22.8%, to $8,722,348, as compared with the prior year's amount of $11,293,132. Of this decrease, approximately $2.4 million relates to repayments and $600,000 is due to a sale of a foreclosed asset. This aggregate decrease of approximately $3 million was reduced by approximately $380,000 in new loans and a reduction in fair value of approximately $50,000. This net decrease in Commercial Loans reflects our business strategy of moving toward Corporate Loans. Interest income decreased approximately $1.6 million, or 78.5%, primarily due to a decrease in Commercial Loans outstanding, interest rate declines and a higher percentage of loans on non-accrual status. Included in this decrease is approximately $500,000 of interest earned during the 2009 fiscal year, which related to the taxicab medallion loans that were sold in September 2008.

Corporate Loans outstanding increased by $1,943,605, or 15.9%, to $14,136,860, as compared with Corporate Loans outstanding of $12,193,255 at June 30, 2009. This net increase is primarily attributable to new loans of approximately $7.25 million. Partially offsetting this increase were (i) the repayment of loans aggregating approximately $2.36 million; (ii) the sale of one loan for approximately $1.75 million and (iii) downward adjustments of fair value aggregating approximately $1.20 million. The interest income earned on Corporate Loans increased in 2010 by approximately $98,000 or 9.0%, primarily due to an increase in the number of investments and total value of the Corporate Loan portfolio at the end of June 30, 2010.

Life Settlements Contracts outstanding decreased by $407,281 or 23.1% to $1,356,800, as compared with the prior year-end's Life Settlements contracts of $1,764,081. We adjusted the fair value of these policies lower, based on market conditions and other factors more specifically detailed below.

**Operating Expenses**

Interest expense for the year ended June 30, 2010 decreased $183,872 or 16.9% to $906,202 when compared to $1,090,074 for the year ended June 30, 2009. Interest expense decreased due primarily to declines in interest rates for our variable rate borrowings, as well as the payoff of our credit lines in October 2008, following the sale of our medallion loans. At June 30, 2010, overall bank borrowings were unchanged at $370,000 at June 30, 2010 and June 30, 2009.

Salaries and employee benefits decreased $376,114 or 17.0% to $1,840,849 in fiscal 2010 as compared with $2,216,963 for the prior fiscal year. This decrease reflects a one-time expense of $250,000 in the prior year in connection with the restructuring of an employment agreement and a fiscal year 2010 reduction in head count and discontinuation of pension contributions, as partially offset by increases in other employment agreements.

Occupancy costs increased $239,374 or 85.3% to $519,876 in fiscal 2010 from $280,502 for the year ended June 30, 2009, primarily due to a one-time payment of $260,000 made in connection with the termination of the lease obligation on our former New York City office.

Accounting and compliance fees decreased $164,356, or 20.7%, to $631,012 in fiscal 2010 from $795,368 in the prior fiscal year. Accounting and compliance fees in fiscal 2010 consisted of accounting fees of $186,950 for an out-sourced controller, tax preparation fees of $15,000, consulting fees related to compliance with Sarbanes Oxley of $205,875, enterprise risk assessment fees of $27,775, and audit and audit-related fees of $195,412. Each of these items decreased when compared with the same expense categories in the year ended June 30, 2009.

Legal fees in fiscal 2010, aggregating $477,700, decreased $391,000, or 45.0%, from the prior year's legal fees of $868,853. Such fees were comprised of $412,299 related, primarily, to general legal matters, including SEC filings and compliance and, less significantly, to $65,401 of legal fees incurred in connection with life settlement-related matters.

Other administrative expenses decreased $73,048 or 9.5% to $697,078 in 2010 when compared with the prior year's amount of $770,126. This decrease in administrative expenses was due to the following reductions: service fees of $35,808, bank audit fees of $5,357, investor relation fees of $12,238, outside help of $10,500, advertising fees of $11,123, foreclosure expenses of $10,301, telephone expense of $6,747, transfer agent fees of $7,780, messenger service of $3,066, printing fees of $4,922, custodial fees of $59,117 and miscellaneous expenses of $45,924. These decreases were partially offset by increases in recruitment fees of $14,740, loan processing fees of $5,810, insurance expense of $34,663, SBA commitment fees of $17,516, loss on furniture and fixtures and leasehold improvements retired of $65,623 and website and computer fees of $1,483.

Advisory fees increased approximately $219,000 or 151.1% to approximately $364,000 in 2010 from $145,000 in the prior fiscal year. This increase was approved by our shareholders and reflects the greater level of activity of our advisor, Velocity, as reflected in the increase in our Corporate Loan portfolio.

**Net Realized Loss on Investments**

The components of realized losses of approximately $993,000 were as follows: A loss of approximately $843,000 related to our Life Settlement portfolio, comprised of the write-off of lapsed policies aggregating approximately $451,000 and the sale of one policy under a rescission agreement for a loss of approximately $392,000. In addition, we had a loss of approximately $213,000 associated with the foreclosure and sale of the collateral related to a Commercial Loan and other miscellaneous loan losses aggregating approximately $26,000. Partially offsetting these losses was an aggregate gain of approximately $89,000, of which approximately $59,000 related to the sale of a Corporate Loan and approximately $30,000 resulted from the early repayment of a Corporate Loan.

**Net Unrealized Depreciation on Investments**

During the year ended June 30, 2010, our investments had a net unrealized depreciation of approximately $1,404,700 compared with $1,283,620 in the prior fiscal year. The net unrealized depreciation for the year ended June 30, 2010 is primarily due to decreases in the fair value of certain investments in our portfolio.

An unrealized write-down of $1,567,742 in our Corporate Loan portfolio was the largest component of unrealized depreciation. Other significant factors were a write-down of the fair value of a Commercial Loan receivable of $139,882 to reflect our estimate of the recoverable value in the related collateral, a $190,883 decrease in the fair value of our Life Settlement portfolio to reflect the estimated recovery value based on current market conditions. Partially offsetting these items was approximately $208,400 of investment value that was reclassified as "realized losses" and an increase in value of our equity investments of approximately $224,000, almost all of which was attributable to appreciation of a real estate investment of approximately $218,000.

**Net Increase (Decrease) in Net Assets from Operations**

Net decrease in net assets resulting from operations for the year ended June 30, 2010 was $6,374,963 as compared to a net decrease in net assets resulting from operations for the year ended June 30, 2009 of $5,462,453.

29

AMERITRANS CAPITAL CORP. (Form: 10-K)

## STATEMENTS OF ASSETS AND LIABILITIES

Total assets increased by $5.6 million to $33.9 million as of June 30, 2010 when compared to total assets of $28.3 million as of June 30, 2009. This increase was primarily due to an increase in cash of approximately $6.5 million and an increase in other assets of approximately $100,000, as partially offset by a decrease in investments of approximately $1.0 million. The increase in assets was partially offset by an increase in liabilities of approximately $12.4 million, from approximately $13.1 million at June 30, 2009 to approximately $25.5 million at June 30, 2010. This increase in liabilities is primarily attributable to an increase in debentures payable to the SBA of approximately $9.2 million, an increase in notes payable, other of $3.0 million and an increase in accrued expenses and other payables aggregating approximately $216,000 (including approximately $84,000 accrued for the dividend on our Preferred Stock).

## ASSET / LIABILITY MANAGEMENT
### Interest Rate Sensitivity

We are subject to interest rate risk to the extent our interest-earning assets rise or fall at a different rate over time in comparison to our interest-bearing liabilities (consisting primarily of our credit facilities with banks and subordinated SBA debentures, which currently have fixed rates of interest).

A relative measure of interest rate risk can be derived from Ameritrans' interest rate sensitivity gap, i.e. the difference between interest-earning assets and interest-bearing liabilities, which mature and/or reprice within specified intervals of time. The gap is considered to be positive when repriceable assets exceed repriceable liabilities and negative when repriceable liabilities exceed repriceable assets. A relative measure of interest rate sensitivity is provided by the cumulative difference between interest sensitive assets and interest sensitive liabilities for a given time interval expressed as a percentage of total assets.

Our interest rate sensitive assets were $15,876,356 and we had no interest rate sensitive liabilities at June 30, 2011. Having interest-bearing liabilities that mature or reprice more frequently on average than assets may be beneficial in times of declining interest rates, although such an asset/liability structure may result in declining net earnings during periods of rising interest rates. Abrupt increases in market rates of interest may have an adverse impact on our earnings until we are able to originate new loans at the higher prevailing interest rates. Conversely, having interest-earning assets that mature or reprice more frequently on the average than liabilities may be beneficial in times of rising interest rates, although this asset/liability structure may result in declining net earnings during periods of falling interest rates. This mismatch between maturities and interest rate sensitivities of our interest-earning assets and interest-bearing liabilities results in interest rate risk.

The effect of changes in interest rates is mitigated by regular turnover of the portfolio. Based on past experience, Ameritrans anticipates that approximately 20% of the portfolio will mature or be prepaid each year. Ameritrans believes that the average life of its loan portfolio varies to some extent as a function of changes in interest rates. Borrowers are more likely to exercise prepayment rights in a decreasing interest rate environment because the interest rate payable on the borrower's loan is high relative to prevailing interest rates. Conversely, borrowers are less likely to prepay in a rising interest rate environment.

### Interest Rate Swap Agreements

Ameritrans has the ability to manage the exposure of its portfolio to increases in market interest rates by entering into interest rate swap agreements to hedge a portion of its variable-rate debt against increases in interest rates and by incurring fixed-rate debt consisting primarily of subordinated SBA debentures.

As of June 30, 2011 and 2010, we were not a party to any interest rate swaps.

### Investment Considerations

In the fiscal year ended June 30, 2011, our investment income was negatively affected by historically low LIBOR due to the Federal Reserve's decrease in interest rates. This low interest rate had a direct effect on the actual rate of interest we received on our outstanding Corporate Loans, and to a lesser extent, certain Commercial Loans. The dollar amount of our adjustable rate loans receivable at June 30, 2011 was approximately $15.9 million with the remainder of $4.6 million being fixed rate loans. Because we borrow money to finance the origination of loans, our income is dependent upon the differences between the rate at which we borrow funds and the rate at which we lend funds. While many of the loans in our portfolio bear interest at fixed-rates or adjustable-rates, we may, in the future, finance a substantial portion of such loans by incurring indebtedness with floating interest rates. As short-term

30

interest rates rise, our interest costs increase, decreasing the net interest rate spread we receive and thereby adversely affect our profitability. Although we intend to continue to manage our interest rate risk through asset and liability management, including the use of interest rate swaps, general rises in interest rates will tend to reduce our interest rate spread in the short term. However, a decrease in prevailing interest rates may lead to more loan prepayments, which could adversely affect our business over time. A borrower is likely to exercise prepayment rights at a time when the interest rate payable on the borrower's loan is high relative to prevailing interest rates. In a lower interest rate environment, we will have difficulty re-lending prepaid funds at comparable rates, which may reduce the net interest spread we receive.

Lending to small businesses involves a high degree of business and financial risk, which can result in substantial losses and should be considered speculative. Our borrower base consists primarily of small business owners who have limited resources and who are generally unable to obtain financing from banks or other primary sources. There is generally no publicly available information about these small business owners, and we must rely on the diligence of our employees and agents to obtain information in connection with our credit decisions. In addition, these small businesses often do not have audited financial statements. Some smaller businesses have narrower product lines and market shares than their competition. Therefore, they may be more vulnerable to customer preferences, market conditions, or economic downturns, which may adversely affect the return on, or the recovery of, our investment in these businesses.

**Liquidity and Capital Resources**

We have funded our operations through private and public placements of our securities, bank financing, the issuance to the SBA of our subordinated debentures and internally generated funds. We entered into a Loan Purchase Agreement dated July 16, 2008 with Medallion Financial Corp. and Medallion Bank pursuant to which we sold substantially all of our taxicab medallion loans. We used the proceeds of sale to pay down our bank lines. Since exiting the taxicab medallion business, the Company has relied on SBA Debentures and, to a lesser extent, private placements of debt. At June 30, 2011, we had negative working capital of approximately $2.0 million. Substantially, all of our cash is subject to restrictions pursuant to SBA regulations. At June 30, 2011, 82.5% or $21,175,000 of our total indebtedness of $25,675,000 was attributable to the debentures issued to the SBA with fixed rates of interest plus user fees which results in rates ranging from 4.11% to 5.54%. An additional 5.8%, or $1.5 million, of our total indebtedness was represented by a senior secured note with a fixed rate of interest of 12%. The remaining 11.7%, or $3.0 million, of our total indebtedness was represented by notes sold in a private placement with an adjusted fixed rate of interest of 12%. Elk currently may borrow additional amounts from banks subject to the limitations imposed by its borrowing base agreement with its banks and the SBA, the statutory and regulatory limitations imposed by the SBA and the availability of future bank credit lines.

Contractual obligations expire or mature at various dates through March 1, 2020. The following table shows all contractual obligations at June 30, 2011.

| | Payments due by period | | | | | | |
|---|---|---|---|---|---|---|---|
| | Less than 1 year | 1 - 2 years | 2 - 3 years | 3 - 4 years | 4 - 5 years | More than 5 years | Total |
| Fixed rate borrowings | $ 4,500,000 | $ 5,050,000 | $ 6,950,000 | $ - | $ | $ 9,175,000 | $ 25,675,000 |
| Operating lease obligations including overhead) | 173,186 | 145,933 | 106,763 | 109,676 | 112,678 | 125,682 | 773,918 |
| Total | $ 4,673,186 | $ 5,195,933 | $ 7,056,763 | $ 109,676 | $ 112,678 | $ 9,300,680 | $ 26,448,918 |

Our sources of liquidity are credit lines with banks, long-term SBA debentures that are issued to or guaranteed by the SBA, private sources of debt and equity capital and loan amortization and prepayment. As a RIC, we distribute at least 90% of our investment company taxable income. Consequently, we primarily rely upon external sources of funds to finance growth.

Loan amortization and prepayments also provide a source of funding for Elk. Prepayments on loans are influenced significantly by general interest rates, economic conditions and competition.

Like Elk, Ameritrans will distribute at least 90% of its investment company taxable income and, accordingly, we will continue to rely upon external sources of funds to finance growth. In order to provide the funds necessary for our expansion strategy, we expect to raise additional capital and to incur, from time to time, additional bank indebtedness and (if deemed necessary by management and the Board of Directors) to obtain SBA loans. There can be no assurances that such additional financing will be available on acceptable terms.

At June 30, 2011, we had cash on hand and cash equivalents aggregating approximately $4.2 million and negative working capital of approximately $2.0 million. Substantially, all of our cash is subject to restrictions pursuant to SBA regulations.

31

On April 12, 2011, the Company entered into the Renova Purchase Agreement with Renova. Pursuant to the Purchase Agreement, the Company agreed to issue and sell to the Purchaser, and the Purchaser agreed to purchase, (i) the Initial Purchased Stock for an aggregate purchase price of $25,000,000 at the Initial Closing to be held no later than November 30, 2011 and (ii) the Additional Purchased Stock, for an aggregate purchase price initially equal to $35,000,000 (if such investment is made at the Initial Closing) as may be increased to up to $40,000,000 in accordance with the terms of the Renova Purchase Agreement at the Subsequent Closing to be held from time to time between the date of the Initial Closing and the second anniversary of the Initial Closing based on the terms and conditions of the Renova Purchase Agreement. See Note 15, Stock Purchase Agreement, of Notes to Consolidated Financial Statements. Although certain aspects of the Renova Transaction have been approved by our stockholders, the consummation of the Renova Transaction remains subject to various conditions to closing, including approval by the SBA of the change of ownership and control of Elk that would occur upon the Initial Closing. To date, the SBA has not approved such change of ownership and control and no assurance can be given that such approval will be obtained or, if such approval is obtained, that we will be able to consummate the Renova Transaction on the terms set forth in the Renova Purchase Agreement or at all. Even if we consummate the Initial Closing, the Subsequent Closings contemplated by the Renova Purchase Agreement (including the purchase by Renova of up to $40,000,000 of our common stock) will remain subject to the satisfaction of various conditions to Renova's obligation to consummate the Subsequent Closings. If the transaction contemplated by the Renova Purchase Agreement is not consummated, we will require additional sources of capital and new bank lines of credit and cash flow from operations to fund our business plan. As a result, we continue to explore additional options, including cost reductions and obtaining additional financing, which may increase available funds for our growth and expansion of this strategy. Such financing may not be available or available on attractive terms and thus may adversely affect our plans and strategies. Nevertheless, we believe that we have sufficient resources currently available to sustain our business for, at least, the next twelve months.

The Renova Purchase Agreement also limits our ability to engage in certain financings until the earlier to occur of the Initial Closing or the termination of the Renova Purchase Agreement. Specifically, the Renova Purchase Agreement prohibits the Company from, among other things, issuing any capital stock or debt securities (or debt securities convertible into or exchangeable for securities) having voting rights; or incurring any indebtedness for borrowed money, other than indebtedness incurred in the ordinary course of business and consistent with past practices for use as working capital in an aggregate principal amount not in excess of $500,000, in each case without Renova's prior written consent.

**Recently Issued Accounting Standards**

In May 2011, the Financial Accounting Standards Board ("FASB") issued Accounting Standards Update ("ASU") 2011-04, "Amendments to Achieve Common Fair Value Measurement and Disclosure Requirements in U.S. GAAP and International Financial Reporting Standards." ASU 2011-04 amends Topic 820 (Fair Value Measurement) by providing a consistent definition of fair value, ensuring that the fair value measurement and disclosure requirements are similar between U.S. GAAP and International Financial Reporting Standards. ASU 2011-04 changes certain fair value measurement principles and enhances the disclosure requirements, particularly for level 3 fair value measurements. ASU 2011-04 is effective for the first interim or annual reporting period beginning after December 15, 2011 and is to be applied prospectively. We are evaluating the impact adoption of ASU 2011-04 will have on our disclosures and do not believe adoption will have an impact on our financial condition or results of operations.

In April 2011, the FASB issued ASU 2011-02, "A Creditor's Determination of Whether a Restructuring Is a Troubled Debt Restructuring." ASU 2011-02 amends Topic 310 by requiring that a creditor, when evaluating whether a restructuring constitutes a troubled debt restructuring, separately conclude that both the restructuring constitutes a concession and that the debtor is experiencing financial difficulties. ASU 2011-02 is effective for the first interim or annual reporting period beginning on or after June 15, 2011, and is to be applied retrospectively to the beginning of the annual period of adoption. We do not expect the adoption of ASU 2011-02 to have an impact on our financial condition or results of operations.

In January 20 I 0, FASB issued ASU No. 20 10-06, "Fair Value Measurements and Disclosures (Topic 820)," that requires reporting entities to make new disclosures about recurring or nonrecurring fair-value measurements, including significant transfers into and out of Level I and Level 2 fair-value measurements and information on purchases, sales, issuances and settlements on a gross basis in the reconciliation of Level 3 fair-value measurements. The FASB also clarified existing fair-value measurement disclosure guidance about the level of disaggregation, inputs, and valuation techniques. The new and revised disclosures are required to be implemented for interim and annual periods beginning after December 15, 2009, except for the disclosures about purchases, sales, issuances and settlements of Level 3 activity. Those disclosures are effective for interim and annual periods beginning after December 15, 2010. The adoption of FASB ASU 2010-06 did not have a material impact on our financial condition and results of operations.

There are no other recently issued accounting pronouncements that are not yet effective that are expected to have a material impact on our financial position or results of operations or disclosures in the consolidated financial statements.

32

## ITEM 7A. QUANTITATIVE AND QUALITATIVE DISCLOSURES ABOUT MARKET RISK

Our business activities contain elements of risk. We consider the principal types of risk to be fluctuations in interest rates and portfolio valuations. We consider the management of risk essential to conducting our businesses. Accordingly, our risk management systems and procedures are designed to identify and analyze our risks, to set appropriate policies and limits and to continually monitor these risks and limits by means of reliable administrative and information systems and other policies and programs.

We value our portfolio at fair value as determined in good faith by our Board of Directors in accordance with our valuation policy. We must value each individual investment and portfolio loan on a quarterly basis. We record unrealized depreciation on investments and loans when we believe that an asset has been impaired and full collection is unlikely. Without a readily ascertainable market value, the estimated value of our portfolio of investments and loans may differ significantly from the values that would be placed on the portfolio if there existed a ready market for the investments. We adjust the valuation of the portfolio quarterly to reflect our Board of Directors' estimate of the current fair value of each component of the portfolio. Any changes in estimated fair value are recorded in our statement of operations as net unrealized appreciation (depreciation) on investments.

In addition, the illiquidity of our loan portfolio and investments may adversely affect our ability to dispose of loans at times when it may be advantageous for us to liquidate such portfolio or investments. Also, if we were required to liquidate some or all of the investments in the portfolio, the proceeds of such liquidation might be significantly less than the current value of such investments. Because we borrow money to make loans and investments, our net operating income is dependent upon the difference between the rate at which we borrow funds and the rate at which we loan and invest these funds. As a result, there can be no assurance that a significant change in market interest rates will not have a material adverse effect on our interest income. As interest rates rise, our interest costs increase, decreasing the net interest rate spread we receive and thereby adversely affect our profitability. Although we intend to continue to manage our interest rate risk through asset and liability management, including the use of interest rate swaps, general increases in interest rates will tend to reduce our interest rate spread in the short term.

Assuming that the balance sheet were to remain constant and no actions were taken to alter the existing interest rate sensitivity, a hypothetical immediate 1% increase in interest rates would have resulted (by applying such theoretical increase to our $15.9 million variable rate loans receivable portfolio) in an additional net increase in net assets from operations of approximately $159,000 at June 30, 2011. This is comprised solely of an increase of interest on loans receivable of $159,000.

## ITEM 8. FINANCIAL STATEMENTS AND SUPPLEMENTARY DATA

The response to this item is submitted in the response found under Item 15(a)(1) in this Annual Report on Form 10-K.

## ITEM 9. CHANGES IN AND DISAGREEMENTS WITH ACCOUNTANTS ON ACCOUNTING AND FINANCIAL DISCLOSURE

None.

## ITEM 9A. CONTROLS AND PROCEDURES

### Disclosure Controls and Procedures

Our management, with the participation of our Chief Executive Officer and Chief Financial Officer, conducted an evaluation of the effectiveness of our disclosure controls and procedures (as defined in Rules 13(a) -15(e) and 15(d)-15(e) under the Exchange Act). Based on such evaluation, our management, including our Chief Executive Officer and Chief Financial Officer, concluded that our disclosure controls and procedures were effective as of June 30, 2011.

### Management's Report on Internal Control Over Financial Reporting

Our management is responsible for establishing and maintaining adequate internal control over financial reporting as defined in Rules 13a-15(f) and 15d-15(f) under the Exchange Act. Our management, including our Chief Executive Officer and Chief Financial Officer, conducted an evaluation of the effectiveness of our internal control over financial reporting based on criteria established in the framework in Internal Control Integrated Framework issued by the Committee of Sponsoring Organizations of the Treadway Commission. Based on this evaluation, our management concluded that our internal control over financial reporting was effective as of June 30, 2011. Further, this evaluation included enhancements to our internal control over financial reporting that have not materially affected, or are reasonably likely to materially affect, our internal control over financial reporting.

33

Because of its inherent limitations, internal control over financial reporting may not prevent or detect misstatements. Also, projections of any evaluation of effectiveness to future periods are subject to the risks that controls may become inadequate because of changes in conditions, or that the degree of compliance with the policies or procedures may deteriorate.

This Form 10-K does not include an attestation report of our registered public accounting firm regarding internal control over financial reporting. Management's report was not subject to attestation by our registered public accounting firm pursuant to Congressional legislation that permits us to provide only management's report in this Annual Report.

## PART III

## ITEM 10. DIRECTORS AND EXECUTIVE OFFICERS OF THE REGISTRANT

The information required by this item will be contained in our definitive Proxy Statement for our 2011 Annual Stockholder Meeting or an amendment to this Annual Report on Form 10-K, to be filed with the SEC within 120 days after June 30, 2011, and is incorporated herein by reference.

## ITEM 11. EXECUTIVE COMPENSATION

The information required by this item will be contained in our definitive Proxy Statement for our 2011 Annual Stockholder Meeting or an amendment to this Annual Report on Form 10-K, to be filed with the SEC within 120 days after June 30, 2011, and is incorporated herein by reference.

## ITEM 12. SECURITY OWNERSHIP OF CERTAIN BENEFICIAL OWNERS AND MANAGEMENT AND RELATED STOCKHOLDER MATTERS

The information required by this item will be contained in our definitive Proxy Statement for our 2011 Annual Stockholder Meeting or an amendment to this Annual Report on Form 10-K, to be filed with the SEC within 120 days after June 30, 2011, and is incorporated herein by reference.

## ITEM 13. CERTAIN RELATIONSHIPS AND RELATED TRANSACTIONS AND DIRECTOR INDEPENDENCE

The information required by this item will be contained in our definitive Proxy Statement for our 2011 Annual Stockholder Meeting or an amendment to this Annual Report on Form 10-K, to be filed with the SEC within 120 days after June 30, 2011, and is incorporated herein by reference.

## ITEM 14. PRINCIPAL ACCOUNTING FEES AND SERVICES

The information required by this item will be contained in our definitive Proxy Statement for our 2011 Annual Stockholder Meeting or an amendment to this Annual Report on Form 10-K, to be filed with the SEC within 120 days after June 30, 2011, and is incorporated herein by reference.

## PART IV

## ITEM 15. EXHIBITS AND FINANCIAL STATEMENT SCHEDULES

a)    1 and 2 FINANCIAL STATEMENTS AND FINANCIAL STATEMENT SCHEDULES

     1.    The financial statements and financial statement schedules as listed in the Index to Financial Statements are filed as part of this Annual Report on Form 10-K.

     2.    No financial statement schedules are filed herewith because the information required has been presented in the aforementioned financial statements.

     3.    EXHIBITS

       The Exhibits filed as part of this Annual Report on Form 10-K are listed on the Exhibit Index immediately preceding such Exhibits, which Exhibit Index is incorporated by reference.

<u>EXHIBIT INDEX</u>

| Exhibit Number | Exhibit |
|---|---|
| 3 (i) | Certificate of Incorporation (1) |
| 3 (ii) | Amended and Restated By-laws (2) |
| 4 | Form of subordinated debentures issued to the U.S. Small Business Administration ("SBA") by Elk Associates Funding Corporation ("Elk") Debenture issued March 26, 1997 - principal amount - $430,000; Maturity Date - March 1, 2007; Stated Interest Rate - 7.38 %.(3) |

The following debentures are omitted pursuant to Rule 483:

f.    Debenture issued July 22, 2002 - principal amount $2,050,000; Maturity Date – September 1, 2012, Stated Interest Rate – 4.67%.

g.    Debenture issued December 22, 2002 - principal amount $3,000,000; Maturity Date – March 1, 2013; Stated Interest Rate – 4.63%.

h.    Debenture issued September 28, 2003 - principal amount $5,000,000; Maturity Date – March 1 2014; Stated Interest Rate – 4.12%.

i.    Debenture issued February 14, 2004 - principal amount $1,950,000; Maturity Date – March 1 2014; Stated Interest Rate – 4.12%.

j.    Debenture issued December 26, 2009 principal amount $9,175,000 Maturity Date - March 1, 2020; Stated Interest Rate – 4.11%.

| | |
|---|---|
| 10.1 | Security Agreement between Elk and the SBA, dated September 9, 1993. (3) |
| 10.2 | 1999 Employee Stock Option Plan, as amended. (4) |
| 10.3 | Non-Employee Director Stock Option Plan, as amended. (4) |
| 10.4 | Custodian Agreement among Elk; Bank Leumi Trust Company of New York ("Leumi"), Israel Discount Bank of New York ("IDB"), Bank Hapoalim B.M. ("Hapoalim") and Extebank; the SBA, and IDB as Custodian; dated September 9, 1993 (the "Custodian Agreement").(3) |
| 10.5 | Agreements between Elk and the SBA.(3) |
| 10.6 | Intercreditor Agreement among Elk, Leumi, IDB, Hapoalim, Extebank and the SBA dated September 9, 1993 (the "Intercreditor Agreement") (3) |
| 10.7 | Amendments to the Custodian and Intercreditor Agreements. (3) |
| 10.8 | Bank Intercreditor Agreement among Elk, Leumi, IDB, Hapoalim and Extebank, dated September 9, 1993 (the "Bank Intercreditor Agreement"). (3) |
| 10.9 | Amendments to the Bank Intercreditor Agreement. (3) |
| 10.10 | Form of indemnity agreement between Ameritrans and each of its directors and officers.(1) |
| 10.11 | Amended and Restated Employment Agreement dated as of February 21, 2006 between Ameritrans and Lee Forlenza. (5) |
| 10.12 | Amended and Restated Employment Agreement dated as of February 21, 2006 between Ameritrans and Ellen Walker. (5) |
| 10.13 | Employment Agreement dated as of January 1, 2002 between Ameritrans and Silvia Mullens. (6) |
| 10.14 | Amendment dated August 25, 2006 to Silvia Mullens Employment Agreement dated as of January 1, 2002. |
| 10.15 | Employment Agreement dated as of January 1, 2002 between Ameritrans and Margaret Chance. (6) |
| 10.16 | Amendment dated August 25, 2006 to Margaret Chance Employment Agreement dated as of January 1, 2002. |
| 10.17 | Amended and Restated Employment Agreement dated as of September 20, 2007 between Ameritrans and Gary Granoff. (7) |
| 10.18 | Amended and Restated Consulting Agreement dated as of September 20, 2007 between Ameritrans and Gary Granoff. (7) |
| 10.19 | Amended and Restated Employment Agreement dated as of October 10, 2008 between Ameritrans and Gary Granoff. (8) |
| 10.20 | Amended and Restated Employment Agreement dated as of May 28, 2010 between Ameritrans and Michael Feinsod. (9) |

Case 2:17-cv-03586-JFB-AYS   Document 47-2   Filed 10/06/17   Page 365 of 1053 PageID #: 939

| | |
|---|---|
| 10.21 | Executed Demand Grid Promissory Note dated April 30, 2009, between Elk and Israel Discount Bank of New York as amended as of October 31, 2009, January 31, 2010, and extended to (10) |
| 10.22 | Executed Fixed Rate Promissory Note dated January 4, 2010, between Elk Associates Funding Corp. and Bank Leumi USA and extended to July 6, 2010.  (10) |
| 10.23 | Agreement of Sublease made as of the 1st day of July, 2010, by and between Commonwealth Associates, LP and Ameritrans Capital Corporation/Elk Associates Funding Corporation. (11) |
| 10.24 | Agreement of Sublease dated as of the 13th day of July, 2010, by and between CRC Insurance Services, Inc and Ameritrans Capital Corporation. (11) |
| 10.25 | Executed Fixed Rate Promissory Note dated January 4, 2010 between Elk Associates Funding Corp. and Bank Leumi USA (incorporated by reference from Amendment No. 2 to the Quarterly Report for the Quarterly Period Ended December 31, 2009 on Form 10-Q/A filed with the SEC on April 13, 2011) |
| 10.26 | Executed Demand Grid Promissory Note dated April 30, 2009 between Elk Associates Funding Corp. and Israel Discount Bank of New York as amended as of October 31, 2009, January 31, 2010 and extended to June 30, 2010 (incorporated by reference from Amendment No. 2 to the Quarterly Report for the Quarterly Period Ended December 31, 2009 on Form 10-Q/A filed with the SEC on April 13, 2011) |
| 10.27 | Agreement of Sublease, effective as of July 1, 2010, between Ameritrans Capital Corporation and Commonwealth Associates, LP (incorporated by reference from the Current Report on Form 8-K filed with the SEC on July 15, 2010) |
| 10.28 | Sublease, dated July 13, 2010, between Ameritrans Capital Corporation and CRC Insurance Services, Inc. (incorporated by reference from the Current Report on Form 8-K filed with the SEC on July 15, 2010) |
| 10.29 | Independent Contractor Agreement, effective as of September 29, 2010, between Ameritrans Capital Corporation and Richard L. Feinstein (incorporated by reference from the Current Report on Form 8-K filed with the SEC on October 5, 2010) |
| 10.30 | Senior Secured Note in the principal amount of $1,500,000, dated January 19, 2011 (incorporated by reference from the Current Report on Form 8-K filed with the SEC on January 24, 2011) |
| 10.31 | Form of Amendment to Promissory Note (incorporated by reference from the Current Report on Form 8-K filed with the SEC on January 24, 2011) |
| 10.32 | Stock Pledge Agreement, dated January 19, 2011 by Ameritrans Capital Corporation in favor of Ameritrans Holdings LLC (incorporated by reference from the Current Report on Form 8-K filed with the SEC on January 24, 2011) |
| 10.33 | Separation Agreement and General Release, dated March 31, 2011, among Ameritrans Capital Corporation, Elk Associates Funding Corporation and Ellen M. Walker (incorporated by reference from the Current Report on Form 8-K filed with the SEC on April 5, 2011) |
| 10.34 | Separation Agreement and General Release, dated March 31, 2011, among Ameritrans Capital Corporation, Elk Associates Funding Corporation and Lee Forlenza (incorporated by reference from the Current Report on Form 8-K filed with the SEC on April 5, 2011) |
| 10.35 | Stock Purchase Agreement, dated April 12, 2011, by and between Ameritrans Capital Corporation ("the Company") and Renova US Holdings Ltd. (incorporated by reference from the Current Report on Form 8-K filed with the SEC on April 14, 2011) |
| 10.36 | Amendment to Senior Secured Note, dated April 12, 2011, by and between the Company and Ameritrans Holdings LLC (incorporated by reference from the Current Report on Form 8-K filed with the SEC on April 14, 2011) |
| 10.37 | Amended and Restated Pledge Agreement, dated as of May 5, 2011, by Ameritrans Capital Corporation in favor of Ameritrans Holdings, LLC (incorporated by reference from the Current Report on Form 8-K filed with the SEC on May 11, 2011) |
| 10.38 | Release Letter, dated May 5, 2011, addressed to Ameritrans Capital Corporation from Ameritrans Holdings, LLC (incorporated by reference from the Current Report on Form 8-K filed with the SEC on May 11, 2011) |
| 10.39 | First Amendment to Stock Purchase Agreement, dated as of June 17, 2011, by and between Ameritrans Capital Corporation and Renova US Holdings Ltd. (incorporated by reference from the Current Report on Form 8-K filed with the SEC on June 17, 2011) |
| 12.1 | Computation of Ratio of Earnings to Fixed Charges and Preference Dividends |
| 14.2 | Code of Ethics of Ameritrans Capital Corporation as amended July 1. 2009 |
| 21.1 | List of Subsidiaries of Ameritrans. (12) |

36

Case 2:17-cv-03586-JFB-AYS   Document 49-2   Filed 10/06/17   Page 367 of 1053 PageID #: 941

| 23.1 | Consent of Independent Registered Public Accounting Firm |
|---|---|
| 31.1 | Certification of the Chief Executive Officer pursuant to Rule 13a-14(a) or Rule 15d-14(a), as adopted pursuant to Section 302 of the Sarbanes-Oxley Act of 2002. |
| 31.2 | Certification of the Chief Financial Officer pursuant to Rule 13a-14(a) or Rule 15d-14(a), as adopted pursuant to Section 302 of the Sarbanes-Oxley Act of 2002. |
| 32.1 | Certification of the Chief Executive Officer pursuant to 18 USC Section 1350, as adopted pursuant to Section 906 of the Sarbanes-Oxley Act of 2002. |
| 32.2 | Certification of the Chief Financial Officer pursuant to 18 USC Section 1350, as adopted pursuant to Section 906 of the Sarbanes-Oxley Act of 2002. |
| 99.1 | Ameritrans Audit Committee Charter (13) |
| 99.2 | Ameritrans Registration Statement on Form N-2 (File No. 333-132438) filed March 15, 2006. (14) |

NOTES

(1)   Incorporated by reference from the Registrant's Registration Statement on Form N-14 (File No. 333-63951) filed September 22, 1998.

(2)   Incorporated by reference from the Registrant's Current Report on Form 8-K (File No. 814-00193) filed on July 1, 2008.

(3)   Incorporated by reference from the Registrant's Registration Statement filed on Form N-2 (File No. 333-82693) filed July 12, 1999.

(4)   Incorporated by reference from the Registrant's Proxy Statement on Form 14A (File No. 814-00193) filed on May 21, 2007.

(5)   Incorporated by reference from the Registrant's N-2 (File No. 333-132438) filed on March 15, 2006.

(6)   Incorporated by reference from the Registrant's 10-Q (File No. 814-00193) filed February 14, 2002.

(7)   Incorporated by reference from the Registrant's Current Report on Form 8-K (File No. 814-00193) filed September 20, 2007.

(8)   Incorporated by reference from the Registrant's Current Report on Form 8-K (File No. 814-00193) filed on October 10, 2008.

(9)   Incorporated by reference from the Registrant's Current Report on Form 8-K (File No. 814-00193) filed June 4, 2010.

(10)  Incorporated by reference from the Registrant's 10-Q (File No. 814-00193) filed July 15, 2010.

(11)  Incorporated by reference from the Registrant's  Current Report on Form 8-K(File No. 814-00193) filed July 15, 2010.

(12)  Incorporated by reference from the Registrant's 10-K (File No. 814-00193) filed September 28, 2004.

(13)  Incorporated by reference from the Registrant's 10-Q (File No. 814-00193) filed February 14, 2007.

(14)  Incorporated by reference from the Registrant's N-2 (File No. 333-132438) filed on March 15, 2006.

37

SIGNATURES

Pursuant to the requirements of Section 13 or 15(d) of Securities Act of 1934, the Registrant has duly caused this report to be signed on its behalf by the undersigned, thereunto duly authorized, on this 28th day of September, 2011.

**AMERITRANS CAPITAL CORPORATION**

By: */s/ Michael R. Feinsod* _____
     *Michael R. Feinsod*
     *Chief Executive Officer,*
     *President, Chairman of the Board of Directors and Chief*
     *Compliance Officer*

By: */s/ Richard L. Feinstein*
     *Richard L. Feinstein*
     *Chief Financial Officer,*
     *Senior Vice President-Finance*

As required by the Securities Exchange Act of 1934, this report has been signed by the following persons in the capacities and on the dates indicated.

| SIGNATURE | TITLE | DATE |
|---|---|---|
| /s/ Michael Feinsod<br>Michael Feinsod | Chief Executive Officer, President, Chairman of the Board of Directors and Chief Compliance Officer | September 28, 2011 |
| /s/ Gary C. Granoff<br>Gary C. Granoff | Director | September 28, 2011 |
| /s/ Steven Etra<br>Steven Etra | Director | September 28, 2011 |
| /s/ John R. Laird<br>John R. Laird | Director | September 28, 2011 |
| /s/ Howard F. Sommer<br>Howard F. Sommer | Director | September 28, 2011 |
| /s/ Ivan Wolpert<br>Ivan Wolpert | Director | September 28, 2011 |
| /s/ Peter Boockvar<br>Peter Boockvar | Director | September 28, 2011 |
| /s/ Elliott Singer<br>Elliott Singer | Director | September 28, 2011 |

38

AMERITRANS CAPITAL CORPORATION AND SUBSIDIARIES

CONTENTS

June 30, 2011, 2010 and 2009

|  | Page |
|---|---|
| **REPORT OF INDEPENDENT REGISTERED PUBLIC ACCOUNTING FIRM** |  |
| Rosen Seymour Shapss Martin & Company LLP | F-2 |
| **CONSOLIDATED FINANCIAL STATEMENTS** |  |
| Statements of Assets and Liabilities at June 30, 2011 and 2010 | F-3 |
| Statements of Operations for the Years Ended June 30, 2011, 2010 and 2009 | F-4 |
| Statements of Changes in Net Assets for the Years Ended June 30,  2011, 2010 and 2009 | F-5 |
| Statements of Cash Flows for the Years Ended June 30, 2011, 2010 and 2009 | F-6 |
| Schedules of Investments as of June 30, 2011 and 2010 | F-7 – F-11 |
| Notes to Consolidated Financial Statements | F-12 – F-33 |

F-1

REPORT OF INDEPENDENT REGISTERED PUBLIC ACCOUNTING FIRM

To the Board of Directors and Stockholders of

Ameritrans Capital Corporation and Subsidiaries:

We have audited the accompanying consolidated statements of assets and liabilities, including the schedules of investments, of Ameritrans Capital Corporation and Subsidiaries (the "Company") as of June 30, 2011 and 2010, and the related consolidated statements of operations, changes in net assets, and cash flows for each of the three years in the period ended June 30, 2011, and the financial highlights for each of the periods presented. These consolidated financial statements and financial highlights are the responsibility of the Company's management. Our responsibility is to express an opinion on these consolidated financial statements based on our audits.

We conducted our audits in accordance with the standards of the Public Company Accounting Oversight Board (United States). Those standards require that we plan and perform the audit to obtain reasonable assurance about whether the financial statements and financial highlights are free of material misstatement. The Company is not required to have, nor were we engaged to perform, an audit of its internal control over financial reporting. Our audit included consideration of internal control over financial reporting as a basis for designing audit procedures that are appropriate in the circumstances, but not for the purpose of expressing an opinion on the effectiveness of the Company's internal control over financial reporting. Accordingly, we express no such opinion. An audit also includes examining, on a test basis, evidence supporting the amounts and disclosures in the financial statements, assessing the accounting principles used and significant estimates made by management, as well as evaluating the overall financial statement presentation. We believe that our audits provide a reasonable basis for our opinion.

In our opinion, the consolidated financial statements and financial highlights referred to above present fairly, in all material respects, the financial position of Ameritrans Capital Corporation and Subsidiaries as of June 30, 2011 and 2010, and the results of their operations and their cash flows for each of the years in the three-year period ended June 30, 2011 and the financial highlights for each of the periods presented, in conformity with accounting principles generally accepted in the United States of America.

/s/ Rosen Seymour Shapss Martin & Company LLP

New York, New York
September 28, 2011

F-2

AMERITRANS CAPITAL CORPORATION AND SUBSIDIARIES

CONSOLIDATED STATEMENTS OF ASSETS AND LIABILITIES

June 30, 2011 and 2010

|  | | 2011 | | 2010 |
|---|---|---|---|---|
| **Assets** | | | | |
| Investments at fair value (cost of $27,828,620 and $29,220,386, respectively): | | | | |
| Non-controlled/non-affiliated investments | $ | 23,565,240 | $ | 24,904,497 |
| Non-controlled affiliated investments | | 4,761 | | 4,761 |
| Controlled affiliated investments | | 351,734 | | 546,440 |
| Total investments at fair value | | 23,921,735 | | 25,455,698 |
| Cash | | 4,151,616 | | 6,992,156 |
| Certificate of deposit – restricted cash | | - | | 370,335 |
| Accrued interest receivable | | 412,647 | | 417,925 |
| Assets acquired in satisfaction of loans | . | 1,075,547 | | 28,325 |
| Furniture and equipment, net | | 52,075 | | 40,254 |
| Deferred loan costs, net | | 331,310 | | 402,160 |
| Prepaid expenses and other assets | | 177,204 | | 202,509 |
| Total assets | $ | 30,122,134 | $ | 33,909,362 |
| **Liabilities and Net Assets** | | | | |
| **Liabilities:** | | | | |
| Debentures payable to SBA | $ | 21,175,000 | $ | 21,175,000 |
| Notes payable, banks | | - | | 370,000 |
| Note payable, other | | 4,500,000 | | 3,000,000 |
| Accrued expenses and other liabilities | | 1,505,969 | | 576,242 |
| Accrued interest payable | | 367,572 | | 327,576 |
| Dividends payable | | 337,500 | | 84,375 |
| Total liabilities | | 27,886,041 | | 25,533,193 |
| **Commitments and contingencies** (Notes 2, 4, 5, 9 and 12) | | | | |
| **Net Assets:** | | | | |
| Preferred stock 9,500,000 shares authorized, none issued or outstanding | | - | | - |
| 9-3/8% cumulative participating redeemable preferred stock; $.01 par value, $12.00 face value, 500,000 shares authorized; 300,000 shares issued and outstanding | | 3,600,000 | | 3,600,000 |
| Common stock, $.0001 par value; 45,000,000 shares authorized, 3,405,583 shares issued; 3,395,583 shares outstanding | | 341 | | 341 |
| Additional paid-in capital | | 21,330,544 | | 21,330,544 |
| Losses and distributions in excess of earnings | | (18,717,907) | | (12,720,028) |
| Net unrealized depreciation on investments | | (3,906,885) | | (3,764,688) |
| Total | | 2,306,093 | | 8,446,169 |
| Less: Treasury stock, at cost, 10,000 shares of common stock | | (70,000) | | (70,000) |
| Total net assets | | 2,236,093 | | 8,376,169 |
| Total liabilities and net assets | $ | 30,122,134 | $ | 33,909,362 |
| Net asset (liability) value per common share | $ | (0.40) | $ | 1.40 |

The accompanying notes are an integral part of these consolidated financial statements.

F-3

AMERITRANS CAPITAL CORPORATION AND SUBSIDIARIES

CONSOLIDATED STATEMENTS OF OPERATIONS

Years Ended June 30, 2011, 2010 and 2009

| | 2011 | 2010 | 2009 |
|---|---|---|---|
| **Investment income:** | | | |
| Interest on loans receivable: | | | |
| Non-controlled/non-affiliated investments | $ 2,062,576 | $ 1,544,667 | $ 3,023,497 |
| Non-controlled affiliated investments | - | - | 13,981 |
| Controlled affiliated investments | 39,644 | 45,944 | 67,776 |
| | 2,102,220 | 1,590,611 | 3,105,254 |
| Fees and other income | 26,412 | 64,825 | 239,070 |
| Total investment income | 2,128,632 | 1,655,436 | 3,344,324 |
| | | | |
| **Operating expenses:** | | | |
| Interest | 1,446,193 | 906,202 | 1,090,074 |
| Salaries and employee benefits | 1,570,634 | 1,840,849 | 2,216,963 |
| Occupancy costs | 171,675 | 519,876 | 280,502 |
| Legal fees | 1,999,752 | 477,700 | 868,853 |
| Accounting and compliance fees | 729,993 | 631,012 | 795,368 |
| Directors fees and expenses | 305,140 | 195,668 | 107,715 |
| Advisory fees | 245,894 | 363,466 | 144,758 |
| Other administrative expenses | 882,100 | 697,078 | 780,051 |
| Total operating expenses | 7,351,381 | 5,631,851 | 6,284,284 |
| Net investment loss | (5,222,749) | (3,976,415) | (2,939,960) |
| **Net realized losses on investments:** | | | |
| Non-controlled/non-affiliated investments | (437,630) | (993,848) | (642,495) |
| Non-controlled affiliated investments | - | - | (604,693) |
| Controlled affiliated investments | - | - | 8,315 |
| | (437,630) | (993,848) | (1,238,873) |
| **Net unrealized depreciation on investments** | (142,197) | (1,404,700) | (1,283,620) |
| **Net realized/unrealized losses on investments** | (579,827) | (2,398,548) | (2,522,493) |
| Net decrease in net assets from operations | (5,802,576) | (6,374,963) | (5,462,453) |
| **Distributions to preferred shareholders** | (337,500) | (421,875) | (253,125) |
| | | | |
| Net decrease in net assets from operations available to common shareholders | $ (6,140,076) | $ (6,796,838) | $ (5,715,578) |
| **Weighted Average Number of Common Shares Outstanding:** | | | |
| Basic and diluted | 3,395,583 | 3,395,583 | 3,395,583 |
| **Net Decrease in Net Assets from Operations Per Common Share:** | | | |
| Basic and diluted | $ (1.81) | $ (2.00) | $ (1.68) |

The accompanying notes are an integral part of these consolidated financial statements.

F-4

AMERITRANS CAPITAL CORPORATION AND SUBSIDIARIES

CONSOLIDATED STATEMENTS OF CHANGES IN NET ASSETS

Years Ended June 30, 2011, 2010 and 2009

|  | 2011 | 2010 | 2009 |
|---|---|---|---|
| **Decrease in net assets from operations:** |  |  |  |
| Net investment loss | $ (5,222,749) | $ (3,976,415) | $ (2,939,960) |
| Net realized losses from investments | (437,630) | (993,848) | (1,238,873) |
| Unrealized depreciation on investments | (142,197) | (1,404,700) | (1,283,620) |
| Net decrease in net assets resulting from operations | (5,802,576) | (6,374,963) | (5,462,453) |
| **Shareholder distributions:** |  |  |  |
| Distributions to preferred shareholders | (337,500) | (421,875) | (253,125) |
| **Capital share transactions:** |  |  |  |
| Stock options compensation expense | - | 29,165 | 61,128 |
| Net decrease in net assets resulting from capital shares transactions and shareholder distributions | (337,500) | (392,710) | (191,997) |
| Total decrease in net assets | (6,140,076) | (6,767,673) | (5,654,450) |
| **Net assets:** |  |  |  |
| Beginning of year | 8,376,169 | 15,143,842 | 20,798,292 |
| End of year | $ 2,236,093 | $ 8,376,169 | $ 15,143,842 |
| Net assets (liabilities) per common | $ (1,363,907) | $ 4,776,169 | $ 11,543,842 |
| Net assets per preferred | $ 3,600,000 | $ 3,600,000 | $ 3,600,000 |

The accompanying notes are an integral part of these consolidated financial statements.

F-5

AMERITRANS CAPITAL CORPORATION AND SUBSIDIARIES

CONSOLIDATED STATEMENTS OF CASH FLOWS

Years Ended June 30, 2011, 2010 and 2009

| | 2011 | 2010 | 2009 |
|---|---|---|---|
| **Cash flows from operating activities:** | | | |
| Net decrease in net assets from operations | $ (5,802,576) | $ (6,374,963) | $ (5,462,453) |
| Adjustments to reconcile net decrease in net assets from operations to net cash used in operating activities: | | | |
| Depreciation and amortization | 79,550 | 88,885 | 70,986 |
| Deferred compensation | - | 29,166 | 61,128 |
| Net realized losses on investments | 437,630 | 993,848 | 1,238,873 |
| Net unrealized depreciation on investments | 142,197 | 1,404,700 | 1,283,620 |
| Portfolio investments | (13,115,304) | (8,139,938) | (5,206,619) |
| Proceeds from principal receipts, sales, maturity of investments | 14,069,440 | 6,695,159 | 35,872,945 |
| Transfer out of portfolio to assets acquired in satisfaction of loan | (1,047,222) | - | - |
| Loss on disposal of furniture, equipment and leasehold improvements | - | 65,623 | - |
| Assets acquired in satisfaction of loans | - | - | 9,925 |
| Changes in operating assets and liabilities: | | | |
| Accrued interest receivable | 5,278 | 122,288 | 62,743 |
| Prepaid expenses and other assets | 25,304 | (56,106) | 586,794 |
| Accrued expenses and other liabilities | 929,727 | 14,093 | (78,427) |
| Accrued interest payable | 39,996 | 117,411 | (52,363) |
| Dividends payable | - | - | (84,375) |
| Total adjustments | 1,566,596 | 1,335,129 | 33,765,230 |
| Net cash provided by (used in) operating activities | (4,235,980) | (5,039,834) | 28,302,777 |
| **Cash flows from investing activities:** | | | |
| Purchase of furniture and equipment | (20,520) | (6,365) | (4,414) |
| Net cash used in investing activities | (20,520) | (6,365) | (4,414) |
| **Cash flows from financing activities:** | | | |
| Repayment of note payable, related parties | - | - | (100,000) |
| Proceeds from notes payable, banks | - | - | 3,130,000 |
| Proceeds from debentures payable to SBA | - | 9,175,000 | - |
| Proceeds from note payable, other | 1,500,000 | 3,000,000 | - |
| Repayment of note payable, banks | (370,000) | - | (30,855,697) |
| Deferred loan costs | - | (314,244) | - |
| Dividends paid on preferred stock | (84,375) | (337,500) | (253,125) |
| Net cash provided by (used in) financing activities | 1,045,625 | 11,523,256 | (28,078,822) |
| Net increase (decrease) in cash and cash equivalents | (3,210,875) | 6,477,057 | 219,541 |
| **Cash:** | | | |
| Beginning of year | 7,362,491 | 885,434 | 665,893 |
| End of year | $ 4,151,616 | $ 7,362,491 | $ 885,434 |
| **Supplemental disclosure of cash flow information:** | | | |
| Cash paid during the year for: | | | |
| Interest | $ 1,406,197 | $ 788,791 | $ 1,142,437 |
| **Supplemental disclosure of non-cash investing and financing activities:** | | | |
| Stock options granted | $ - | $ - | $ 49,372 |
| Accrued dividends on preferred stock | $ 337,500 | $ 84,375 | $ - |

The accompanying notes are an integral part of these consolidated financial statements.

F-6

**AMERITRANS CAPITAL CORPORATION AND SUBSIDIARIES**
**CONSOLIDATED STATEMENT OF INVESTMENTS**

| Portfolio Company (1) | Investment Investment Rate/Maturity | Principal | Net Cost | Value |
|---|---|---|---|---|
| **Commercial Loans Receivable (279.27%) (4)** | | | | |
| PPCP Inc. (6) | Business Loan | | | |
| *Computer Software* | 8.00%, due 7/08 and 1/10 | $　36,691 | $　36,691 | $　- |
| Geronimo ATM Fund LLC (6) | Collateralized Business Loan | | | |
| *ATM Operator* | 12.0%, due 5/09 | 123,282 | 123,282 | - |
| Vivas & Associates, Inc. (6) | Collateralized Business Loan | | | |
| *Nail Salon* | 9.00%, due 1/10 | 11,985 | 11,985 | - |
| E&Y General Construction Co. (6) | Senior Real Estate Mortgage | | | |
| *Construction Services* | 10.50%, due 10/10 | 870,791 | 870,791 | 870,791 |
| Soundview Broadcasting LLC | Senior Real Estate Mortgage | | | |
| *Television and Broadcasting* | 6.00%, due 9/11 | 1,820,868 | 1,820,868 | 1,820,868 |
| Golden Triangle Enterprises LLC | Senior Real Estate Mortgage | | | |
| *Retail Food Service* | 4.74%, due 12/13 | 218,824 | 218,824 | 218,824 |
| Conklin Services & Construction Inc. (6) | Collateralized Business Loan | | | |
| *Specialty Construction and Maintenance* | 11.00%, due 10/08 | 1,648,181 | 1,648,181 | 1,450,000 |
| Mountain View Bar & Grill Inc. (6) | Collateralized Business Loan | | | |
| *Retail Food Service* | 12.00%, due 5/09 | 406,067 | 406,067 | 406,067 |
| J. JG. Associates, Inc. (6) | Senior Loan | | | |
| *Consumer Receivable Collections* | no stated rate, no maturity | 185,436 | 185,436 | 87,750 |
| J. JG. Associates, Inc. (6) | Senior Loan | | | |
| *Consumer Receivable Collections* | no stated rate, no maturity | 36,121 | 36,121 | 36,121 |
| Car-Matt Real Estate LLC (6) | Senior Real Estate Mortgage | | | |
| *Real Estate Mortgage* | 12.00%, due 11/08 | 135,577 | 135,577 | 135,577 |
| CMCA, LLC (3) | Collateralized Business Loan | | | |
| *Consumer Receivable Collections* | 12.00% no stated maturity | 235,473 | 235,473 | 235,473 |
| CMCA, LLC #2 (3) (6) | Collateralized Business Loan | | | |
| *Consumer Receivable Collections* | 12.00%, no stated maturity | 106,261 | 106,261 | 106,261 |
| Adiel Homes Inc. (6) | Senior Real Estate Mortgage | | | |
| *Construction Services* | 12.00%, due 1/09 | 270,000 | 270,000 | 270,000 |
| Adiel Homes Inc. (6) | Senior Real Estate Mortgage | | | |
| *Construction Services* | 12.0%, no stated maturity | 89,396 | 89,396 | 89,396 |
| Andy Fur (6) | Collateralized Business Loan | | | |
| *Dry Cleaners* | 11.5%, due 1/10 | 12,103 | 12,103 | - |
| Greaves-Peters Laundry Systems Inc.(6) | Collateralized Business Loan | | | |
| *Laundromat* | 10.90%, due 9/13 | 20,471 | 20,471 | 20,471 |
| Patroon Operating Co. LLC | Collateralized Business Loan | | | |
| *Retail Food Service* | 10.00%, due 6/12 | 250,000 | 250,000 | 250,000 |
| Medallion Loans | 2 Medallion Loan | | | |
| *Taxicab Medallion Loans* | 11.7% weighted average rate | 152,000 | 152,000 | 152,000 |
| Other Miscellaneous Loans (5) (6) | | 116,270 | 116,270 | 95,216 |
| | Total Commercial Loans | | 6,745,797 | 6,244,815 |
| **Corporate Loans Receivable (638.96%) (4)** | | | | |
| Charlie Brown's Acquisition Co. (6) | Term Loan B | | | |
| *Retail Food Service* | 10.25%, all PIK, due 10/13 | 2,356,682 | 2,356,682 | 1,343,309 |
| Resco Products Inc. | Term Loan, First Lien | | | |
| *Diversified Manufacturing* | 8.50%, due 6/13 | 1,301,945 | 1,301,945 | 1,301,945 |
| Alpha Media Group Inc. | Term Loan, First Lien | | | |
| *Publishing* | 12.00%, of which 8% is PIK , due 7/13 | 2,359,106 | 2,304,012 | 1,344,691 |
| Hudson Products Holdings Inc. | Term Loan, First Lien | 1,269,691 | 1,242,511 | 1,231,600 |

Case 2:17-cv-03586-JFB-AYS   Document 17-2   Filed 10/06/17   Page 377 of 1053 PageID #: 951

| | | | | |
|---|---|---|---|---|
| *Diversified Manufacturing* | 8.5%, due 8/15 | | | |
| Education Affiliates Inc. | Term Loan, First Lien | | | |
| *Private Education* | 8.0%, due 1/15 | 829,824 | 815,922 | 829,824 |
| Fairway Group Acquisition Company | Term Loan, First Lien | | | |
| *Diversified Supermarkets* | 7.5%, due 3/17 | 1,500,000 | 1,485,635 | 1,500,000 |
| Shearer's Foods Inc. | Term Loan, First Lien | | | |
| *Wholesale Food Supplier* | 15.50%, due 6/15 | 1,035,751 | 1,015,960 | 1,043,519 |
| Syncsort Incorporated | Term Loan, First Lien | | | |
| *Data Protection Software* | 7.50%, due 03/15 | 910,067 | 894,298 | 910,067 |

The accompanying notes are an integral part of these consolidated financial statements.

F-7

AMERITRANS CAPITAL CORPORATION (FORM 10-K)

## AMERITRANS CAPITAL CORPORATION AND SUBSIDIARIES
## CONSOLIDATED STATEMENT OF INVESTMENTS (continued)

| Portfolio Company (1) | Investment Investment Rate/Maturity | Principal | Net Cost | Value |
|---|---|---|---|---|
| | | **Portfolio Valuation as of June 30, 2011** | | |
| Centerplate Inc. | Term Loan, First Lien | | | |
| *Stadium Concessions Provider* | 10.5%, due 09/16 | $ 992,500 | $ 967,150 | $ 997,463 |
| Impact Confections Inc. | Term Loan, First Lien | | | |
| *Candy Manufacturer* | 17.00%, due 07/15 | 1,538,367 | 1,538,367 | 1,538,367 |
| Affinity Group Inc. | Term Loan, First Lien | | | |
| *Direct marketing organization-focus RV's* | 11.50%, due 12/16 | 1,250,000 | 1,226,456 | 1,312,500 |
| Miramax Film NY, LLC | Term Loan, First Lien | | | |
| *Film Library* | 7.75%, due 06/16 | 892,308 | 874,126 | 928,000 |
| | Total Corporate Loans | | 16,023,064 | 14,281,285 |
| | **Total loans receivable** | | 22,768,861 | 20,526,100 |
| **Life Insurance Settlement Contracts (107.74%) (4)** | | | | |
| Life Settlement Contracts | 5 life insurance policies, aggregate face value of $17,659,809 | | 3,681,632 | 2,408,000 |
| **Equity Investments (44.19%) (4)** | | | | |
| MBS Serrano, Ltd. | | | | |
| *Rental Real Estate Limited Partnership* | Limited Partnership Interest | | 50,600 | 8,487 |
| MBS Colonnade, Ltd. | | | | |
| *Rental Real Estate Limited Partnership* | Limited Partnership Interest | | 50,000 | 10,211 |
| MBS Sage Creek, Ltd. | | | | |
| *Rental Real Estate Limited Partnership* | Limited Partnership Interest | | 50,000 | 10,015 |
| MBS Walnut Creek, Ltd. | | | | |
| *Rental Real Estate Limited Partnership* | Limited Partnership Interest | | 25,000 | - |
| 238 W. 108 Realty LLC (2) | | | | |
| *Residential Real Estate Development* | 5.00% LLC Interest | | 100,000 | 4,761 |
| Asset Recovery & Management, LLC (3) | | | | |
| *Consumer Receivable Collections* | 30.00% LLC Interest | | 6,000 | 6,000 |
| CMCA, LLC (3) | | | | |
| *Consumer Receivable Collections* | 30.00% LLC Interest | | 4,000 | 4,000 |
| Soha Terrace II LLC | | | | |
| *Real Estate Development* | 4.20% LLC Interest | | 700,000 | 936,337 |
| Fusion Telecommunications | | | | |
| *Internet Telephony* | 69,736 Shares of Common Stock | | 367,027 | 6,974 |
| EraGen Biosciences | | | | |
| *Analytic Compounds* | 17,000 shares of Common Stock | | 25,500 | 850 |
| | Total equity investments | | 1,378,127 | 987,635 |
| | Total investments | $ 27,828,620 | $ | 23,921,735 |

(1) Unless otherwise noted, all investments are pledged as collateral for the Notes Payable, Banks (see Note 5 to the consolidated financial statements).

(2) As defined in the Investment Company Act of 1940, we are an affiliate of this portfolio company because, as of June 30, 2011, we own 5% or more of the portfolio company's outstanding voting securities.

(3) As defined in the Investment Company Act of 1940, we maintain "control" of this portfolio company because we own more than 25% of the portfolio company's outstanding voting securities.

(4) Percentage of net assets.

(5) Other small balance loans.

(6) Loan receivable is on non-accrual status and therefore is considered non-income producing. Included in Other Miscellaneous Loans is a loan valued at $12,000 that is on non-accrual status.

The accompanying notes are an integral part of these consolidated financial statements.

F-8

## AMERITRANS CAPITAL CORPORATION AND SUBSIDIARIES
## CONSOLIDATED STATEMENT OF INVESTMENTS

|  |  | Portfolio Valuation as of June 30, 2010 | | |
| --- | --- | --- | --- | --- |
| Portfolio Company [1] | Investment<br>Investment Rate/Maturity | Principal | Net Cost | Value |
| **Commercial Loans Receivable (106.75%) [4]** | | | | |
| PPCP Inc [6] | Business Loan | $ 36,691 | $ 36,691 | $ - |
| *Computer Software* | 8.0%, due 7/08 and 1/10 | | | |
| Geronimo ATM Fund LLC. [6] | Collateralized Business Loan | 146,822 | 146,822 | 19,234 |
| *ATM Operator* | 12.0%, due 5/09 | | | |
| Cleaners of North Beach, LLC | Collateralized Business Loan | 13,800 | 13,800 | 13,800 |
| *Dry Cleaners* | 5.5%, due 5/11 | | | |
| Crown Cleaners of Miami Lakes | Collateralized Business Loan | 1,858 | 1,858 | 1,858 |
| *Dry Cleaners* | 6.0%, due 7/11 | | | |
| Crown Cleaners of Miami Lakes | Collateralized Business Loan | 10,236 | 10,236 | 10,236 |
| *Dry Cleaners* | 6.0%, due 7/11 | | | |
| Andy Fur Dry Cleaning, Inc. [6] | Collateralized Business Loan | 12,103 | 12,103 | - |
| *Dry Cleaners* | 11.5%, due 1/10 | | | |
| Vivas & Associates, Inc. [6] | Collateralized Business Loan | 11,985 | 11,985 | - |
| *Nail Salon* | 9.0%, due 1/10 | | | |
| Monticello Desserts, Inc. | Collateralized Business Loan | 26,033 | 26,033 | 26,033 |
| *Retail Bakery* | 10.50%, due 4/10 | | | |
| Just Salad LLC | Collateralized Business Loan | 300,000 | 300,000 | 300,000 |
| *Retail Food Service* | 10.0%, due 10/10 | | | |
| E&Y General Construction Co. [6] | Senior Real Estate Mortgage | 870,791 | 870,791 | 870,791 |
| *Construction Services* | 10.5%, due 10/10 | | | |
| Sealmax, Inc. [6] | Senior Real Estate Mortgage | 914,195 | 914,195 | 775,000 |
| *Construction Services* | 12.0%, due 4/11 | | | |
| Soundview Broadcasting LLC | Senior Real Estate Mortgage | 1,882,189 | 1,882,189 | 1,882,189 |
| *Television and Broadcasting* | 6.0%, due 9/11 | | | |
| Golden Triangle Enterprises LLC | Senior Real Estate Mortgage | 276,370 | 276,370 | 276,370 |
| *Retail Food Service* | 4.9%, due 12/13 | | | |
| Goldhkin Wholesale Ent. Inc. | Senior Real Estate Mortgage | 570,413 | 570,413 | 570,413 |
| *Retail Gasoline* | 11.5%, due 7/12 | | | |
| Conklin Services & Construction Inc. [6] | Collateralized Business Loan | 1,648,181 | 1,648,181 | 1,400,954 |
| *Specialty Construction and Maintenance* | 11.0%, due 10/08 | | | |
| Mountain View Bar & Grill Inc. [6] | Collateralized Business Loan | 406,067 | 406,067 | 406,067 |
| *Retail Food Service* | 12.0%, due 5/09 | | | |
| J. JG. Associates, Inc. [6] | Senior Loan | 190,236 | 190,236 | 87,750 |
| *Consumer Receivable Collections* | no stated rate, no maturity | | | |
| J. JG. Associates, Inc. [6] | Senior Loan | 36,781 | 36,781 | 22,960 |
| *Consumer Receivable Collections* | no stated rate, no maturity | | | |
| Car-Matt Real Estate LLC [6] | Senior Real Estate Mortgage | 135,577 | 135,577 | 135,577 |
| *Real Estate Mortgage* | 12.0%, due 11/08 | | | |
| 633 Mead Street, LLC [3] [6] | Senior Real Estate Mortgage | 215,000 | 215,000 | 175,000 |
| *Unimproved real estate* | 15.0%, due 8/08 | | | |
| CMCA, LLC [3] | Collateralized Business Loan | 254,379 | 254,379 | 254,379 |
| *Consumer Receivable Collections* | 12.0%, no stated maturity | | | |
| CMCA, LLC #2 [3] | Collateralized Business Loan | 106,261 | 106,261 | 106,261 |
| *Consumer Receivable Collections* | 12.0%, no stated maturity | | | |
| Adiel Homes Inc. [6] | Senior Real Estate Mortgage | 270,000 | 270,000 | 270,000 |
| *Construction Services* | 12.0%, due 1/09 | | | |
| Adiel Homes Inc. [6] | Senior Real Estate Mortgage | 89,386 | 89,386 | 89,386 |
| *Construction Services* | 12.0%, no stated maturity | | | |
| Western Pottery LLC | Subordinated Business Loan | 361,609 | 361,609 | 361,609 |
| *Ceramic Sanitaryware Distributor* | 4.25.%, due 6/09 | | | |

| | | | | |
|---|---|---|---|---|
| Greaves-Peters Laundry Systems Inc. | Collateralized Business Loan | 292,562 | 292,562 | 292,562 |
| *Laundromat* | 10.9%, due 9/13 | | | |
| Patroon Operating Co. LLC | Collateralized Business Loan | | | |
| *Retail Food Service* | 10.0%, due 6/12 | 250,000 | 250,000 | 250,000 |
| Medallion Loans | 5  Medallion Loan | | | |
| *Taxicab Medallion Loans* | 10.7% weighted average rate | 218,984 | 218,984 | 218,984 |
| Other Miscellaneous Loans [5] | | 144,973 | 144,973 | 123,919 |
| **Total Commercial Loans** | | | 9,693,482 | 8,941,332 |

The accompanying notes are an integral part of these consolidated financial statements.

F-9

## AMERITRANS CAPITAL CORPORATION AND SUBSIDIARIES
## CONSOLIDATED STATEMENT OF INVESTMENTS (continued)

| Portfolio Company [1] | Investment Investment Rate/Maturity | Portfolio Valuation as of June 30, 2010 | | |
|---|---|---|---|---|
| | | Principal | Net Cost | Value |
| **Corporate Loans Receivable (168.71%)** [4] | | | | |
| Charlie Brown's Acquisition Co. | Term Loan B | $ 2,146,101 | $ 2,146,101 | $ 2,038,796 |
| *Retail Food Service* | 10.25%, all PIK, due 10/13 | | | |
| Resco Products Inc. | Term Loan, First Lien | 1,494,405 | 1,494,405 | 1,494,405 |
| *Diversified Manufacturing* | 8.5%, due 6/13 | | | |
| Alpha Media Group Inc. | Term Loan, First Lien | 2,155,014 | 2,082,778 | 937,725 |
| *Publishing* | 12.0%, of which 8% is PIK, due 8/14 | | | |
| Centaur LLC [6] | Term Loan, First Lien | 1,384,914 | 1,365,139 | 1,108,004 |
| *Gaming* | 11.25%, due 10/12 | | | |
| X-Rite Inc. | Term Loan, First Lien | 1,047,948 | 1,043,107 | 1,039,059 |
| *Process Control Instruments* | 7.5%, due 10/12 | | | |
| BP Metals LLC | Term Loan, First Lien | 859,567 | 859,567 | 859,567 |
| *Diversified Manufacturing* | 10.03%, due 6/13 | | | |
| Hudson Products Holdings Inc. | Term Loan, First Lien | 1,272,955 | 1,239,347 | 1,234,766 |
| *Diversified Manufacturing* | 8.5%, due 8/15 | | | |
| Education Affiliates Inc. | Term Loan, First Lien | 884,538 | 866,663 | 884,538 |
| *Private Education* | 8.0%, due 1/15 | | | |
| Fairway Group Holdings Corp. | Term Loan, First Lien | 995,000 | 968,162 | 995,000 |
| *Diversified Supermarkets* | 12.0%, Due 1/15 | | | |
| Shearer's Foods Inc. | Term Loan, First Lien | 1,000,000 | 978,542 | 1,007,500 |
| *Wholesale Food Supplier* | 12%, due 6/15 | | | |
| Kratos Defense & Security Solutions Inc. | Term Loan, First Lien | 1,250,000 | 1,250,000 | 1,268,750 |
| *Multi-platform Defense Systems* | 10%, due 10/13 | | | |
| Roundy's Supermarkets Inc. | Term Loan, First Lien | 1,225,000 | 1,225,475 | 1,268,750 |
| *Retail Food Supplier* | 10%, due 6/15 | | | |
| | **Total Corporate Loans** | | **15,519,286** | **14,136,860** |
| | **Total loans receivable** | | **25,212,768** | **23,078,192** |
| **Life Insurance Settlement Contracts (16.20%)** [4] | | | | |
| Life insurance policies | 5 life insurance policies, aggregate face value of $17,659,809 | | **2,568,691** | **1,356,800** |
| **Equity Investments (12.19%)** [4] | | | | |
| MBS Serrano, Ltd. | Limited Partnership Interest | | 50,600 | 8,487 |
| *Rental Real Estate Limited Partnership* | | | | |
| MBS Colonnade, Ltd. | Limited Partnership Interest | | 50,000 | 12,009 |
| *Rental Real Estate Limited Partnership* | | | | |
| MBS Sage Creek, Ltd. | Limited Partnership Interest | | 50,000 | 18,800 |
| *Rental Real Estate Limited Partnership* | | | | |
| MBS Walnut Creek, Ltd. | Limited Partnership Interest | | 25,000 | - |
| *Rental Real Estate Limited Partnership* | | | | |
| MBS Lodge At Stone Oak, Ltd. | Limited Partnership Interest | | 60,000 | 30,896 |
| *Rental Real Estate Limited Partnership* | | | | |
| 238 W. 108 Realty LLC [2] | 5.00% LLC Interest | | 100,000 | 4,761 |
| *Residential Real Estate Development* | | | | |
| Asset Recovery & Management, LLC [3] | 30.00% LLC Interest | | 6,000 | 6,000 |
| *Consumer Receivable Collections* | | | | |

The accompanying notes are an integral part of these consolidated financial statements.

F-10

**AMERITRANS CAPITAL CORPORATION AND SUBSIDIARIES**
**CONSOLIDATED STATEMENT OF INVESTMENTS (continued)**

| Portfolio Company [1] | Investment Investment Rate/Maturity | Principal | Net Cost | Value |
|---|---|---|---|---|
| | | **Portfolio Valuation as of June 30, 2010** | | |
| 633 Mead Street, LLC [3] | 57.10% LLC Interest | $ 800 | $ 800 | |
| *Real Estate Development* | | | | |
| CMCA, LLC [3] | 30.00% LLC Interest | | | |
| *Consumer Receivable Collections* | | 4,000 | 4,000 | |
| Soha Terrace II LLC | | 700,000 | 918,295 | |
| *Real Estate Development* | 4.20% LLC Interest | | | |
| Fusion Telecommunications | 69,736 Shares of Common Stock | | | |
| *Internet Telephony* | | 367,027 | 11,158 | |
| EraGen Biosciences | 17,000 shares of Common Stock | | | |
| *Analytic Compounds* | | 25,500 | 5,500 | |
| | Total equity investments | **1,438,927** | **1,020,706** | |
| | Total investments | $ **29,220,386** | $ **25,455,698** | |

(1) Unless otherwise noted, all investments are pledged as collateral for the Notes Payable, Banks (see Note 5 to the consolidated financial statements).
(2) As defined in the Investment Company Act of 1940, we are an affiliate of this portfolio company because, as of June 30, 2010, we own 5% or more of the portfolio company's outstanding voting securities.
(3) As defined in the Investment Company Act of 1940, we maintain "control" of this portfolio company because we own more than 25% of the portfolio company's outstanding voting securities.
(4) Percentage of net assets.
(5) Other small balance loans.
(6) Loan receivable is on non-accrual status and therefore is considered non-income producing.

The accompanying notes are an integral part of these consolidated financial statements.

F-11

AMERITRANS CAPITAL CORPORATION AND SUBSIDIARIES

NOTES TO CONSOLIDATED FINANCIAL STATEMENTS

Years Ended June 30, 2011, 2010 and 2009

## 1. Organization and Summary of Significant Accounting Policies

Organization and Principal Business Activity

Ameritrans Capital Corporation ("Ameritrans" or the "Company") is a Delaware closed-end investment company formed in 1998, which, among other activities, makes loans and investments with the goal of generating both current income and capital appreciation. Through our subsidiary, Elk Associates Funding Corporation ("Elk"), we make loans to finance the acquisition and operation of small businesses as permitted by the U.S. Small Business Administration (the "SBA"). Ameritrans also makes direct loans to and directly invests in opportunities that Elk has historically been unable to make due to SBA restrictions. Ameritrans makes loans which have primarily been secured by real estate mortgages or, in the case of corporate loans, generally are senior within the capital structure. Elk was organized primarily to provide long-term loans to businesses eligible for investments by small business investment companies (each an "SBIC") under the Small Business Investment Act of 1958, as amended (the "1958 Act"). Elk makes loans for financing the purchase or continued ownership of businesses that qualify for funding as small concerns under SBA Regulations. The Company categorizes its investments into four security types: 1) Corporate Loans Receivable; 2) Commercial Loans Receivable; 3) Life Insurance Settlements and 4) Equity Investments.

Both Ameritrans and Elk are registered as business development companies, or "BDCs," under the Investment Company Act of 1940, as amended (the "1940 Act"). Accordingly, Ameritrans and Elk are subject to the provisions of the 1940 Act governing the operation of BDCs. Both companies are managed by their executive officers under the supervision of their Boards of Directors.

Basis of Presentation and Consolidation

The consolidated financial statements are presented based on accounting principles generally accepted in the United States of America ("GAAP"). These consolidated financial statements include the accounts of Ameritrans, Elk Capital Corporation ("Elk Capital"), Elk and Elk's wholly owned subsidiary, EAF Holding Corporation ("EAF") and five single-member, limited liability companies, each wholly-owned by Ameritrans and each holding one insurance policy in connection with our life settlement investments portfolio. All significant inter-company transactions have been eliminated in consolidation.

Elk Capital is a wholly owned subsidiary of Ameritrans, which may engage in lending and investment activities similar to its parent.

EAF began operations in December 1993 and owns and operates certain real estate assets acquired in satisfaction of defaulted loans by Elk debtors. At June 30, 2011, EAF was operating the real estate of Sealmax. Inc., acquired in satisfaction of loans.

Presentation of Prior Year Data

Certain reclassifications have been made to conform prior years' data to the current year's presentation. Although the reclassifications resulted in changes to certain line items in the previously filed financial statements, the overall effect of the reclassifications did not impact net assets available.

Investment Valuations

The Company's loans receivable, net of participations and any unearned discount are considered investment securities under the 1940 Act and are recorded at fair value. As part of fair value methodology, loans are valued at cost adjusted for any unrealized appreciation (depreciation). Since no ready market exists for these loans, the fair value is determined in good faith by management and approved by its Board of Directors. In determining the fair value, the Company and Board of Directors consider factors such as the financial condition of the borrower, the adequacy of the collateral, individual credit risks, historical loss experience and the relationships between current and projected market rates and portfolio rates of interest and maturities. Foreclosed properties, which represent collateral received from defaulted borrowers, are valued similarly.

Loans are, generally, considered "non–performing" once they become 90 days past due as to principal or interest. The value of past due loans are periodically determined in good faith by management, and if, in the judgment of management, the amount is not collectible and the fair value of the collateral is less than the amount due, the value of the loan will be reduced to fair value .

F-12

AMERITRANS CAPITAL CORPORATION AND SUBSIDIARIES

NOTES TO CONSOLIDATED FINANCIAL STATEMENTS (Continued)

Years Ended June 30, 2011, 2010 and 2009

Equity investments (preferred stock, common stock, stock warrants, LLC interests, and LP interests including certain controlled subsidiary portfolio investments) and investment securities are recorded at fair value, represented as cost, plus or minus unrealized appreciation or depreciation. Investments for which market quotations are readily available are valued at such quoted amounts. If no public market exists the fair value of investments that have no ready market are determined in good faith by management and approved by the Board of Directors, based upon assets and revenues of the underlying investee companies as well as general market trends for businesses in the same industry.

The Company records the investment in life insurance policies at the Company's estimate of their fair value based upon various factors including a discounted cash flow analysis of anticipated life expectancies, future premium payments and anticipated death benefits. The Company also considers the market for similar policies. The fair value of the investment in life settlement contracts have no ready market and are determined in good faith by management and approved by the Board of Directors.

Because of the inherent uncertainty of valuations, the Company's estimates of the values of the investments may differ significantly from the values that would have been used had a ready market for the investments existed and the differences could be material.

Income Taxes

The Company has elected to be taxed as a Regulated Investment Company ("RIC") under the Internal Revenue Code (the "Code"). A RIC, generally, is not taxed at the corporate level to the extent its income is distributed to its stockholders. In order to qualify as a RIC, a company must pay out at least 90 percent of its net taxable investment income to its stockholders as well as meet other requirements under the Code. In order to preserve this election for fiscal year 2011, the Company intends to make the required distributions to its stockholders to the extent the Company has net taxable investment income. No dividends on the Company's common stock have been paid in each of the fiscal years ended June 30, 2011, 2010 and 2009, inasmuch as the Company had no taxable investment income during such periods. Accordingly, the Company has maintained its status as a RIC. The Company is subject to certain state and local franchise taxes, as well as related minimum filing fees assessed by state taxing authorities. Such taxes and fees are included in "Other administrative expenses" in the consolidated statements of operations in each of the fiscal years presented. The Company's tax returns for fiscal years ended 2008 through 2011 are subject to examination by federal, state and local income tax authorities.

Depreciation and Amortization

Depreciation and amortization are computed using the straight-line method over the useful lives of the respective assets. Leasehold improvements are amortized over the life of the respective leases. In 2010, in connection with its termination of an office lease, the Company wrote off to expense, $65,623, of related leasehold improvements, furniture and fixtures and office equipment.

Deferred Loan Costs and Fees

Amortization of deferred loan costs is computed on the straight-line method over the respective loan term. Amortization of deferred loan costs and fees for the years ended June 30, 2011, 2010 and 2009 was $70,850, $58,180 and $40,664, respectively. At June 30, 2011 and 2010, deferred loan costs and commitment fees amounted to $331,310 and $402,160, net of accumulated amortization of $402,933 and $332,083, respectively.

Assets Acquired in Satisfaction of Loans

Assets acquired in satisfaction of loans are carried at the lower of the net value of the related foreclosed loan or the estimated fair value. Losses incurred at the time of foreclosure are charged to the realized depreciation on loans receivable. Subsequent reductions in estimated net realizable value are charged to operations as losses on assets acquired in satisfaction of loans.

F-13

AMERITRANS CAPITAL CORPORATION AND SUBSIDIARIES

NOTES TO CONSOLIDATED FINANCIAL STATEMENTS (Continued)

Years Ended June 30, 2011, 2010 and 2009

Use of Estimates

The preparation of financial statements in conformity with GAAP requires management to make extensive use of estimates and assumptions that affect the reported amounts of assets and liabilities at the date of the financial statements and the reported amounts of revenues and expenses during the reporting period. Actual results could differ from those estimates. The fair value of the Company's investments is particularly susceptible to significant changes.

Treasury Stock

Treasury stock is carried at cost. Gains and losses on disposition of treasury stock, if any, are recorded as increases or decreases to additional paid-in capital with losses in excess of previously recorded gains charged directly to retained earnings.

Increase (Decrease) in Net Assets Per Share

Increase (decrease) in net assets per share includes no dilution and is computed by dividing current net increase (decrease) in net assets from operations available to common stockholders by the weighted average number of common shares outstanding for the period. Diluted increase (decrease) in net assets per share reflects, in periods in which they have a dilutive effect, the effect of common shares issuable upon the exercise of stock options and warrants. The difference between reported basic and diluted weighted average common shares results from the assumption that all dilutive stock options outstanding were exercised. For the years presented, the effect of common stock equivalents has been excluded from the diluted calculation since the effect would be antidilutive.

Dividends

Dividends and distributions to our common and preferred stockholders are recorded on the record date. The amount to be paid out as a dividend is determined by the Board each quarter and is generally based upon the earnings estimated by management. Net realized capital gains, if any, are distributed at least annually, although the Company may decide to retain such capital gains for investment.

On June 30, 2008, the Board approved and adopted a dividend reinvestment plan that provides for reinvestment of distributions in the Company's Common Stock on behalf of common stockholders, unless a stockholder elects to receive cash. As a result, if the Board authorizes, and the Company declares, a cash dividend, then those stockholders who have not "opted out" of the dividend reinvestment plan will have their cash dividends automatically reinvested in additional shares of Common Stock, rather than receiving the cash dividends. As of June 30, 2011, no shares have been purchased under the plan.

Income Recognition

Interest income, including interest on loans in default, is recorded on an accrual basis and in accordance with loan terms to the extent such amounts are expected to be collected. The Company recognizes interest income on loans classified as non-performing only to the extent that the fair market value of the related collateral exceeds the specific loan balance. Loans that are not fully collateralized and in the process of collection are placed on nonaccrual status when, in the judgment of management, the collectability of interest and principal is doubtful.

Stock Options

The Company adopted ASC 718-10 (previously SFAS No. 123R, "*Share-Based Payment*") and related interpretations in accounting for its stock option plans effective January 1, 2006, and accordingly, the Company will expense these grants as required. Stock-based employee compensation costs in the form of stock options will be reflected in net increase (decrease) in net assets from operations for grants made including and subsequent to January 1, 2006 only, since there were no unvested options outstanding at December 31, 2005, using the fair values established by usage of the Black-Scholes option pricing model, expensed over the vesting period of the underlying option. Previously, no compensation cost was recognized under these plans, as the Company followed the disclosure-only provisions under guidance at that time.

The Company elected the modified prospective transition method for adopting ASC 718-10. Under this method, the provisions of ASC 718-10 apply to all awards granted or modified after the date of adoption. The compensation cost is then recognized over the vesting period of the options (see Note 14).

F-14

AMERITRANS CAPITAL CORPORATION AND SUBSIDIARIES

NOTES TO CONSOLIDATED FINANCIAL STATEMENTS (Continued)

Years Ended June 30, 2011, 2010 and 2009

The Stock Option Plans expired on May 21, 2009. The Company has chosen not to renew the plans and, as a result of the restrictions contained in the 1940 Act, the Company's ability to grant equity-based compensation in the future may be limited due to compensation terms contained in the agreement with its investment advisor.

Financial Instruments

The carrying value of cash and cash equivalents, accrued interest receivable and payable and other receivables and payables approximates fair value due to the relative short maturities of these financial instruments. The Company's investments, including loans receivable, life settlement contracts and equity securities, are carried at their estimated fair value. The carrying value of the bank debt is a reasonable estimate of their fair value as the interest rates are variable, based on prevailing market rates. The fair value of the SBA debentures was computed using the discounted amount of future cash flows using the Company's current incremental borrowing rate for similar types of borrowings (see Note 10).

Derivatives

The Company from time to time enters into interest rate swap agreements in order to manage interest rate risk. The Company does not use interest rate swaps or other derivatives for trading or other speculative purposes. In accordance with ASC 815 (formerly, Statement of Financial Accounting Standards No. 133, *Accounting for Derivative Instruments and Hedging Activities* ," as subsequently amended), all derivative instruments are recorded at fair value. For derivative instruments designed as cash flow hedges, the effective portion of that hedge is deferred and recorded as a component of other comprehensive income. Any portion of the hedge deemed to be ineffective is recognized promptly in the consolidated statements of operations.

Recently Issued Accounting Standards

In May 2011, the Financial Accounting Standards Board ("FASB") issued Accounting Standards Update ("ASU") 2011-04, "Amendments to Achieve Common Fair Value Measurement and Disclosure Requirements in U.S. GAAP and International Financial Reporting Standards." ASU 2011-04 amends Topic 820 (Fair Value Measurement) by providing a consistent definition of fair value, ensuring that the fair value measurement and disclosure requirements are similar between U.S. GAAP and International Financial Reporting Standards. ASU 2011-04 changes certain fair value measurement principles and enhances the disclosure requirements, particularly for level 3 fair value measurements. ASU 2011-04 is effective for the first interim or annual reporting period beginning after December 15, 2011 and is to be applied prospectively. The Company is evaluating the impact adoption of ASU 2011-04 will have on its disclosures and does not believe adoption will have an impact on its financial condition or results of operations.

In April 2011, the FASB issued ASU 2011-02, "A Creditor's Determination of Whether a Restructuring Is a Troubled Debt Restructuring." ASU 2011-02 amends Topic 310 by requiring that a creditor, when evaluating whether a restructuring constitutes a troubled debt restructuring, separately conclude that both the restructuring constitutes a concession and that the debtor is experiencing financial difficulties. ASU 2011-02 is effective for the first interim or annual reporting period beginning on or after June 15, 2011, and is to be applied retrospectively to the beginning of the annual period of adoption. The Company does not expect the adoption of ASU 2011-02 to have an impact on its financial condition or results of operations.

In January 2010, FASB issued ASU No. 2010-06, "Fair Value Measurements and Disclosures (Topic 820)," that requires reporting entities to make new disclosures about recurring or nonrecurring fair-value measurements including, significant transfers into and out of Level 1 and Level 2 fair-value measurements and information on purchases, sales, issuances and settlements on a gross basis in the reconciliation of Level 3 fair-value measurements. The FASB also clarified existing fair-value measurement disclosure guidance about the level of disaggregation, inputs, and valuation techniques. The new and revised disclosures are required to be implemented for interim and annual periods beginning after December 15, 2009, except for the disclosures about purchases, sales, issuances and settlements of Level 3 activity. Those disclosures are effective for interim and annual periods beginning after December 15, 2010. The adoption of FASB ASU 2010-06 did not have a material impact on the Company's financial condition and results of operations.

Other recently issued accounting pronouncements are not expected to have a material impact on our financial position or results of operations.

F-15

AMERITRANS CAPITAL CORPORATION AND SUBSIDIARIES

NOTES TO CONSOLIDATED FINANCIAL STATEMENTS (Continued)

Years Ended June 30, 2011, 2010 and 2009

## 2. Investments

Investments by Industry

Investments by industry consist of the following as of June 30, 2011 and 2010:

| | June 30, 2011 | | June 30, 2010 | |
|---|---|---|---|---|
| | Value | Percentage of Portfolio | Value | Percentage of Portfolio |
| Broadcasting/Telecommunications | $ 1,820,868 | 7.6% | $ 1,882,189 | 7.4% |
| Commercial Construction | 2,456,368 | 10.3% | 2,738,684 | 10.8% |
| Computer Software | 910,067 | 3.8% | - | - |
| Construction and Predevelopment | 1,300,494 | 5.4% | 1,901,881 | 7.5% |
| Direct Marketing | 1,312,500 | 5.5% | - | - |
| Debt Collection | 475,605 | 2.0% | 481,350 | 1.9% |
| Education | 829,824 | 3.5% | 884,538 | 3.5% |
| Film Distribution | 928,000 | 3.9% | - | - |
| Food and Candy Manufacturing | 2,581,886 | 10.8% | 1,007,500 | 4.0% |
| Gaming | - | - | 1,108,004 | 4.4% |
| Gasoline Distribution | - | - | 570,413 | 2.2% |
| Laundromat | - | - | 292,562 | 1.1% |
| Life Insurance Settlement Contracts | 2,408,000 | 10.1% | 1,356,800 | 5.3% |
| Manufacturing | 2,533,545 | 10.6% | 3,588,738 | 14.1% |
| Military/Defense | - | - | 1,268,750 | 5.0% |
| Printing/Publishing | 1,344,691 | 5.6% | 937,725 | 3.7% |
| Processing Control Instruments | - | - | 1,039,059 | 4.0% |
| Restaurant/Food Service | 3,215,663 | 13.5% | 3,297,267 | 13.0% |
| Sanitaryware Distribution | - | - | 361,609 | 1.4% |
| Supermarkets | 1,500,000 | 6.3% | 2,263,750 | 8.9% |
| Other industries less than 1% | 304,224 | 1.1% | 474,879 | 1.8% |
| TOTAL | $ 23,921,735 | 100.00% | $ 25,455,698 | 100.00% |

Loans Receivable

Loans are considered non-performing once they become ninety (90) days past due as to principal or interest. The Company had loans which are considered non-performing aggregating $4,827,743 and $7,531,813 as of June 30, 2011 and June 30, 2010, respectively. These loans are either fully or substantially collateralized and are in some instances personally guaranteed by the debtor. Included in the total non-performing loans are seventeen and twenty loans, aggregating $4,827,743 and $5,360,723 at June 30, 2011 and June 30, 2010, respectively, which are no longer accruing interest since the loan principal and accrued interest exceed the estimated fair value of the underlying collateral. The following table sets forth certain information regarding performing and non-performing loans as of June 30, 2011 and June 30, 2010:

| | 2011 | | 2010 |
|---|---|---|---|
| Loans receivable | $ 20,526,100 | $ | 23,078,192 |
| Performing loans | 15,698,357 | | 15,546,379 |
| Nonperforming loans | $ 4,827,743 | $ | 7,531,813 |
| Nonperforming loans: | | | |
| Accrual | $ - | $ | 2,171,090 |
| Nonaccrual | 4,827,743 | | 5,360,723 |
| | $ 4,827,743 | $ | 7,531,813 |

AMERITRANS CAPITAL CORPORATION AND SUBSIDIARIES

NOTES TO CONSOLIDATED FINANCIAL STATEMENTS (Continued)

Years Ended June 30, 2011, 2010 and 2009

As of June 30, 2011 the Company has accrued, but not yet paid, approximately $59,000 in fees in connection with the Company's Investment Advisory and Management Agreement, as amended, (the "Advisory Agreement") with Velocity Capital Advisors LLC (the "Adviser") related to its Corporate Loans business. Pursuant to the Advisory Agreement, the Company pays fees to the Adviser that are comprised of the following: (a) an annual base fee of 1.50% per annum of the aggregate fair value of Corporate Loans outstanding at the end of each quarter; (b) an income-based fee of 5% per annum, calculated quarterly, computed on interest and dividends earned from the Corporate Loan portfolio and (c) a capital gains fee of 17.5% based on capital gains from the Corporate Loan portfolio. Pursuant to the Advisory Agreement, the Adviser serves as the non-discretionary investment adviser to the Company with respect to the investment in below investment grade senior loans and notes, and subordinated notes, which are collectively referred to as "Corporate Loans" and incidental equity investments received in connection with the investment in the Debt Portfolio ("Incidental Equity") (collectively, the "Velocity Assets"). All investments in Corporate Loans are subject to the supervision of management and the Board.

At such time as the Velocity Assets exceed $75 million, the Adviser's services under the Advisory Agreement will be exclusive to the Company with respect to the Velocity Assets. The Advisory Agreement may be terminated at any time, without payment of a penalty, upon 60 days' written notice, by the vote of stockholders holding a majority of the outstanding voting securities of the Company, or by the vote of the Company's directors or by the Adviser. The Advisory Agreement will automatically terminate in the event of its assignment by the Adviser. Pursuant to a Stock Purchase Agreement (see Note 15, Stock Purchase Agreement), on April 15, 2011, the Advisor was notified as to termination of the Advisory Agreement. As such, the Advisory Agreement will terminate upon the Initial Closing of the Stock Purchase Agreement.

Life Settlement Contracts

In September, 2006, the Company entered into a joint venture agreement with an unaffiliated entity (the "Joint Venture") to purchase previously issued life insurance policies owned by unrelated individuals. Under the terms of the Joint Venture, the Company was designated as nominee to maintain possession of the policies and process transactions related to such policies until the policies were subsequently sold. The Company was entitled to receive a twelve percent (12%) annual return on the amount of funds paid by the Company on a monthly, prorated basis for outstanding policies. Under the terms of the Joint Venture, proceeds from the sale of the policies were to be distributed, net of direct expenses.

As of June 30, 2011 and 2010, the fair value of the policies owned by the Company was $2,408,000 and $1,356,800, respectively, which represents the estimated fair value for the five life insurance policies with an aggregate face value of $17,659,809. The Company's cost on these policies to date is $3,681,632, including insurance premiums of $1,112,941, which were paid in fiscal 2011. Premiums on the policies must be paid until the policies are sold in order to keep the policies in full force. In August 2011, the Company was notified that one of the insureds covered by a policy included in the portfolio had passed away. See Note 16, Subsequent Events.

On April 2, 2009, the Company learned that the manager of the Joint Venture had been charged with various violations of securities laws by the SEC. The SEC obtained a court order freezing the assets of the manager of the Joint Venture and other entities with which he was involved, including the assets of the Joint Venture. On April 14, 2009, a receiver was appointed (the "Receiver") to handle the affairs of the manager of the Joint Venture. Initially, the Company made certain contributions to the payment of the premiums in order to keep the policies in full force and effect and preserve their value. Thereafter, utilizing a line of credit secured by certain assets of the Receivership Estate, the Receiver advanced premiums due under certain policies to keep the policies in full force and effect. The Receiver engaged an independent specialist firm to service and market for sale all of the policies in the Receivership Estate. Following discussions with the Receiver, the Company negotiated an agreement (the "Purchase Agreement"), which among other items, granted the Company the right to purchase the policies, subject to certain terms and conditions and court approval.

F-17

AMERITRANS CAPITAL CORPORATION AND SUBSIDIARIES

NOTES TO CONSOLIDATED FINANCIAL STATEMENTS (Continued)

Years Ended June 30, 2011, 2010 and 2009

As of January 8, 2010, the Company purchased the life insurance policies pursuant to the Purchase Agreement entered into with the Receiver:

1)  The Company acquired all of the rights to and title and interest in, ten (10) life insurance policies (7 of which had been previously included in the Joint Venture), with an aggregate death benefit of $28,159,809;

2)  The Company agreed to pay the Receiver $30,000 to cover certain expenses;

3)  The Company agreed to pay the Receivership Estate 20% of all recoveries until such time as the Company has recouped approximately $2.1 million plus the amount of any premiums paid following the date of the Purchase Agreement;

4)  The Company agreed to pay the Receivership Estate 50% of all recoveries above the amounts described in Item 3 above;

5)  The Company entered into an agreement of sale on the rescission of one of the original Joint Venture policies.  In accordance with the terms of the settlement agreement with the Receiver, the Company recorded proceeds of $109,857 and recognized a loss on the sale of the policy of $342,496;

6)  The Company agreed to the cancellation of certain claims the Company had against the Receivership Estate for premiums advanced since April 2, 2009;

7)  The Company and the Receivership Estate agreed that the Joint Venture would be cancelled, terminated and have no further effect; and

8)  Despite the retained interest of the Receiver in any recovery, the Company reserved the right, in its sole discretion, to continue to fund premium payments or let any or all of the policies lapse.

Subsequent to court approval, the Company learned that certain of the policies had lapsed due to non-payment of premiums. After a review of the current financing and regulatory environment, and other opportunities to make loans and investments, the Company decided to exit this line of business and plans to make no new investments in life insurance settlement policies other than the continued payment of premiums on existing investments.

The Company is entitled to sell the policies at any time, in its sole discretion and has no obligation to pay future premiums on the various policies.  The approximate future minimum premiums due for each of the next five (5) years and in the aggregate thereafter, to keep the policies in effect, based on current life expectancy of the insureds, are as follows:

| Year Ending June 30, | | Policy Premiums |
|---|---|---|
| 2012 | $ | 736,778 |
| 2013 | | 908,808 |
| 2014 | | 908,808 |
| 2015 | | 908,808 |
| 2016 | | 908,808 |
| Thereafter | | 1,225,830 |
| | $ | 5,597,840 |

Based upon the current uncertain state of the life settlement market, the lack of liquidity at this time in this market due to the difficult credit conditions and the overall economy, the fact that these policies may have diminished value due to having been associated with the former manager of the Joint Venture, and the Company's previously stated decision to exit the life settlement area, the Company has adjusted the fair value of these policies to reflect the current anticipated recovery based on estimated actuarial values that take into account the various factors discussed above.   This is an estimate based upon the information currently available. The Company intends to pay future premiums and continues to pursue alternatives that could allow for a higher recovery.

F-18

Case 2:17-cv-03586-JFB-AYS Document 2-1 Filed 06/00/17 Page 391 of 1053 PageID #: 965

AMERITRANS CAPITAL CORPORATION AND SUBSIDIARIES

NOTES TO CONSOLIDATED FINANCIAL STATEMENTS (Continued)

Years Ended June 30, 2011, 2010 and 2009

Fair Value of Investments

Effective July 1, 2008, the Company adopted ASC 820-10 (previously SFAS 157, Fair Value Measurements), which expands application of fair value accounting. ASC 820-10 defines fair value, establishes a framework for measuring fair value in accordance with generally accepted accounting principles and expands disclosure of fair value measurements. ASC 820-10 determines fair value to be the price that would be received for an investment in a current sale, which assumes an orderly transaction between market participants on the measurement date. ASC 820-10 requires the Company to assume that the portfolio investment is sold in a principal market to market participants, or in the absence of a principal market, the most advantageous market, which may be a hypothetical market. Market participants are defined as buyers and sellers in the principal or most advantageous market that are independent, knowledgeable, and willing and able to transact. In accordance with ASC 820-10, the Company has considered its principal market as the market in which the Company exits its portfolio investments with the greatest volume and level of activity. ASC 820-10 specifies a hierarchy of valuation techniques based on whether the inputs to those valuation techniques are observable or unobservable. In accordance with ASC 820-10, these inputs are summarized in the three broad levels listed below:

Level 1 – Valuations based on quoted prices in active markets for identical assets or liabilities that the Company has the ability to access.

Level 2 – Valuations based on quoted prices in markets that are not active or for which all significant inputs are observable, either directly or indirectly.

Level 3 – Valuations based on inputs that are unobservable and significant to the overall fair value measurement.

In addition to using the above inputs in investment valuations, the Company continues to employ the valuation policy approved by the Board of Directors that is consistent with ASC 820-10. Consistent with its valuation policy, the Company evaluates the source of inputs, including any markets in which its investments are trading (or any markets in which securities with similar attributes are trading), in determining fair value. The Company's valuation policy considers the fact that because there may not be a readily available market value for most of the investments in its portfolio, the fair value of the investments must typically be determined using unobservable inputs. The Company's Level 3 investments require significant judgments by its investment committee, its investment advisor and its management and include market price quotations from market makers, original transaction price, recent transactions in the same or similar investments, financial analysis, economic analysis and related changes in financial ratios or cash flows to determine fair value. Such investments may also be discounted to reflect observed or reported illiquidity and/or restrictions on transferability. See Note 1 for additional information on the Company's valuation policy.

Due to the inherent uncertainty of determining the fair value of investments that do not have a readily available market value, the fair value of the Company's investments may fluctuate from period to period. Additionally, the fair value of the Company's investments may differ significantly from the values that would have been used had a ready market existed for such investments and may differ materially from the values that we may ultimately realize. Further, such investments are generally subject to legal and other restrictions on resale or otherwise are less liquid than publicly traded securities. If the Company was required to liquidate a portfolio investment in a forced or liquidation sale, the Company may realize significantly less than the value at which the Company recorded it.

In addition, changes in the market environment and other events that may occur over the life of the investments may cause the gains or losses ultimately realized on these investments to be different than the valuations currently assigned.

F-19

AMERITRANS CAPITAL CORPORATION AND SUBSIDIARIES

NOTES TO CONSOLIDATED FINANCIAL STATEMENTS (Continued)

Years Ended June 30, 2011, 2010 and 2009

Assets measured at fair value on a recurring basis are:

| | | | Fair Value at Reporting Date Using | | |
| | June 30, 2011 | | Quoted Prices in Active Markets for Identical Assets (Level 1) | Significant Other Observable Inputs (Level 2) | Significant Unobservable Inputs (Level 3) |
| --- | --- | --- | --- | --- | --- |
| Commercial Loans | $ 6,244,815 | $ | - | $ - | $ 6,244,815 |
| Corporate Loans | 14,281,285 | | 1,312,500 | - | 12,968,785 |
| Life Settlement Contracts | 2,408,000 | | - | - | 2,408,000 |
| Equity Securities | 987,635 | | 6,974 | - | 980,661 |
| Total Investments | $ 23,921,735 | $ | 1,319,474 | $ - | $ 22,602,261 |

| | | | Fair Value at Reporting Date Using | | |
| | June 30, 2010 | | Quoted Prices in Active Markets for Identical Assets (Level 1) | Significant Other Observable Inputs (Level 2) | Significant Unobservable Inputs (Level 3) |
| --- | --- | --- | --- | --- | --- |
| Commercial Loans | $ 8,941,332 | $ | - | $ - | $ 8,941,332 |
| Corporate Loans | 14,136,860 | | 1,268,750 | - | 12,868,110 |
| Life Settlement Contracts | 1,356,800 | | - | - | 1,356,800 |
| Equity Securities | 1,020,706 | | 11,158 | - | 1,009,548 |
| Total Investments | $ 25,455,698 | $ | 1,279,908 | $ - | $ 24,175,790 |

Assets measured at fair value on a recurring basis using significant unobservable inputs (Level 3) are:

| | Commercial Loans | Corporate Loans | Life Settlement Contracts | Equity Securities | Total |
| --- | --- | --- | --- | --- | --- |
| Beginning balance as of June 30, 2010 | $ 8,941,332 | $ 12,868,110 | $ 1,356,800 | $ 1,009,548 | $ 24,175,790 |
| Net realized losses on investments | (377,139) | (122,853) | - | (60,800) | (560,792) |
| Net unrealized gains (losses) on investments | 251,168 | (445,397) | (61,741) | 31,913 | (224,057) |
| Purchases of investments | 1,719 | 10,530,640 | 1,112,941 | - | 11,645,300 |
| Repayments, sales or redemptions of investments | (2,572,265) | (9,861,715) | - | - | (12,433,980) |
| Transfers in and/or out of Level 3 | - | - | - | - | - |
| Ending balance as of June 30, 2011 | $ 6,244,815 | $ 12,968,785 | $ 2,408,000 | $ 980,661 | $ 22,602,261 |

Amount of total gains or losses for the period included in changes in net assets attributable to the change in unrealized gains or losses relating to assets still held at the reporting date $ (224,057)

Gains and losses (realized and unrealized) included in net decrease in net assets from operations for the period above are reported as follows:

Gain (loss) on sales and dispositions (560,792)

Change in unrealized gains or (losses) relating to assets still held at reporting date $ (784,849)

As of June 30, 2010, the aggregate net unrealized loss on the investments that use Level 3 inputs was $3,427,569. As of June 30, 2010, the aggregate net unrealized loss on Level 1 investments was $337,119. For the year ended June 30, 2010, the net unrealized gain on Level 1 investments aggregated $20,842. At June 30, 2010, only the investments in Kratos Defense & Security Systems, Inc. and Fusion Communications were included in Level 1.

As of June 30, 2011, the aggregate net unrealized loss on the investments that use Level 3 inputs was $3,632,876. As of June 30, 2011, the aggregate net unrealized loss on Level 1 investments was $274,009. For the year ended June 30, 2011, the net unrealized gain on Level 1 investments aggregated $81,860. At June 30, 2011, only the investments in Affinity Group, Inc. and Fusion Communications were included in Level 1.

F-20

AMERITRANS CAPITAL CORPORATION AND SUBSIDIARIES

NOTES TO CONSOLIDATED FINANCIAL STATEMENTS (Continued)

Years Ended June 30, 2011, 2010 and 2009

### 3. Furniture and Equipment

Major classes of furniture, equipment and leasehold improvements as of June 30, 2011 and 2010 are as follows:

|  | | 2011 | | 2010 | Estimated Useful Lives |
|---|---|---|---|---|---|
| Furniture and fixtures | $ | 31,219 | $ | 31,219 | 7 years |
| Office equipment | | 109,181 | | 88,661 | 3-5 years |
| | | 140,400 | | 119,880 | Life of lease |
| Less accumulated depreciation | | 88,325 | | 79,626 | |
| | $ | 52,075 | $ | 40,254 | |

Depreciation expense for the years ended June 30, 2011, 2010 and 2009 was $8,699, $30,705 and $30,322, respectively.

In June 2010, the Company relocated its offices. Accordingly, the net balance of related leasehold improvements, furniture and fixtures and office equipment retired, aggregating $65,623, was written off at June 30, 2010.

### 4. Debentures Payable to SBA

At June 30, 2011 and 2010 subordinated debentures payable to the SBA with interest payable semiannually, consisted of the following:

| Issue Date | Due Date | % Interest Rate | | June 30, 2011 and June 30, 2010 | | Annual Amount of Interest and User Fees |
|---|---|---|---|---|---|---|
| July 2002 | September 2012 | 4.67 (1) | $ | 2,050,000 | $ | 113,488 |
| December 2002 | March 2013 | 4.63 (1) | | 3,000,000 | | 164,880 |
| September 2003 | March 2014 | 4.12 (1) | | 5,000,000 | | 249,300 |
| February 2004 | March 2014 | 4.12 (1) | | 1,950,000 | | 97,227 |
| December 2009 | March 2020 | 4.11 (2) | | 9,175,000 | | 402,782 |
| | | | $ | 21,175,000 | $ | 1,027,677 |

(1) Elk is also required to pay an additional annual user fee of 0.866% on these debentures.
(2) Elk is also required to pay an additional annual user fee of 0.28% on this debenture.

Under the terms of the subordinated debentures, Elk may not repurchase or retire any of its capital stock or make any distributions to its stockholders other than dividends out of retained earnings (as computed in accordance with SBA regulations) without the prior written approval of the SBA.

Pursuant to SBA's issuance of leverage in the form of debentures in the aggregate of $9,175,000, Elk submitted an application to draw the full amount of the awarded fiscal year 2009 commitment. SBA approved the leverage request and on December 2, 2009, Elk received the disbursement of $9,175,000 from the long-term guaranteed debenture, and paid fees totaling $314,244. In accordance with SBA regulation, $91,750 of these fees was paid prior to closing. Therefore the net fees at closing were $222,494. The net proceeds of the draw were $8,952,506.

F-21

AMERITRANS CAPITAL CORPORATION AND SUBSIDIARIES

NOTES TO CONSOLIDATED FINANCIAL STATEMENTS (Continued)

Years Ended June 30, 2011, 2010 and 2009

Elk is required to calculate the amount of capital impairment each reporting period based on SBA regulations. The purpose of the calculation is to determine if the Undistributed Net Realized Earnings (Deficit) after adjustment for net unrealized gain or loss on securities exceeds the SBA regulatory limits. If so, Elk is considered to have impaired capital. As of June 30, 2011, Elk's maximum permitted calculated impairment percentage (regulatory limit) was 40%, with an actual capital impairment percentage of approximately 53.3%. Accordingly, Elk had a condition of capital impairment as of June 30, 2011, which would require additional capital of approximately $4.1 million to cure. In October 2010, members of management met with representatives of SBA for a portfolio review meeting. After discussions with SBA, management has undertaken a plan to invest additional equity in Elk which it is anticipated, will cure the condition of capital impairment. See Note 15, Stock Purchase Agreement, for recent developments in connection with such plan.

**5.** **Notes Payable**

Banks

At June 30, 2011, the Company has a $120,000 line of credit with a bank, with no balance outstanding, as the line had been paid in full as of August 31, 2010. Although this loan was paid in full, the line remained available until its maturity date of July 6, 2011. Pursuant to the terms of the current agreement governing the line of credit, the Company is required to comply with certain covenants and conditions, as defined in the agreement. The Company had pledged its loans receivable and all other assets as collateral for the line of credit. Pursuant to the SBA agreement and an "intercreditor agreement" between the lending bank and the SBA, the SBA agreed to subordinate the SBA Debentures outstanding in favor of the bank. In accordance with the loan documentation with the SBA and the bank, the Company must also comply with maintaining overall debt levels within a formula based upon the performance of its loan portfolio according to an SBA formula "borrowing base," which was submitted for review to the SBA and the bank for periodic review. As there are no outstanding bank balances, SBA has indicated that the Company is not required to submit the borrowing base. The Company also had another credit line with availability of $352,000. As additional security for this bank loan, the Company had a certificate of deposit (restricted cash) pledged as security at June 30, 2010. The amount outstanding on this line was paid in full as of August 31, 2010. This line, which was previously extended to December 10, 2010, expired by its terms as of that date and the certificate of deposit was no longer restricted.

Other

On December 22, 2009, the Company issued $2,025,000 aggregate principal amount of its 8.75% notes due December 2011 (the "December Notes") in a private offering. Prior to their amendment, as described below, the Notes bore interest at a rate of 8.75%, payable quarterly, but the Company had the option to extend the December Notes until December 2012 at a rate of 5.5%, plus the then-current prime rate. The December Notes are redeemable by the Company at any time upon not less than 30 days prior notice. A member of the Company's Board of Directors and certain affiliated entities acquired $1,375,000 of the December Notes in the offering. The total amount of interest incurred on the December Notes issued to related parties was $142,217 and $65,838 for the fiscal years ended June 30, 2011 and 2010, respectively.

On March 24, 2010, the Company issued $975,000 aggregate principal amount of its 8.75% notes due March 2012 (the "March Notes" and, together with the December Notes, the "2009/2010 Notes") in a private offering. The March Notes have the same terms as the December Notes, except prior to their amendment as described below, the March Notes were scheduled to mature in March 2012. A member of the Company's Board of Directors, and certain affiliated entities acquired $685,000 of the March Notes in the offering. The total amount of interest incurred on the March Notes issued to related parties was $70,850 and $15,881 for the fiscal years ended June 30, 2011 and 2010, respectively.

F-22

AMERITRANS CAPITAL CORPORATION AND SUBSIDIARIES

NOTES TO CONSOLIDATED FINANCIAL STATEMENTS (Continued)

Years Ended June 30, 2011, 2010 and 2009

In connection with the issuance of a Senior Secured Note on January 19, 2011 (See below), in order to facilitate certain covenants under this Senior Secured Note relating to the 2009/2010 Notes, the Company entered into an Amendment to Promissory Note (the "Amendment") with each holder of the 2009/2010 Notes. Pursuant to the Amendment, the interest rate on the 2009/2010 Notes was increased from 8.75% to 12.0% and the maturity date was extended until May 2012. The holders of the 2009/2010 Notes also waived certain covenants contained in the 2009/2010 Notes related to additional borrowings by the Company. In connection with the Amendment, the Company paid a fee equal to 1% of principal, or an aggregate of $30,000, to the holders of the 2009/2010 Notes.

On January 19, 2011, the Company issued a Senior Secured Note in the principal amount of $1,500,000 (the "2011 Note") to an unaffiliated lender. The lender is an affiliate of Renova US Holdings Ltd., the purchaser under the Stock Purchae Agreement (See Note 15, Stock Purchase Agreement). The Note bears interest at the rate of 12% per annum (except following an event of default under the 2011 Note, in which case the interest rate would be 14%) and matures on February 1, 2012. The Company may prepay the 2011 Note at any time. The Company is required to prepay the 2011 Note in certain circumstances, including in the event and to the extent (i) the Company issues any capital stock (other than upon the conversion of securities outstanding as of January 19, 2011), (ii) a subsidiary of the Company pays a dividend to the Company; (iii) the Company sells assets (other than in the ordinary course of business in an amount less than $100,000 in the aggregate and only to the extent of 50% of the proceeds from such sales); or (iv) the Company engages in a transaction that results in a change of control. The Company will incur a 15% fee for any principal prepayments other than in respect of asset sales. The Company's obligations under the 2011 Note may be accelerated by the 2011 Note holder under certain circumstances, including: (i) the Company fails to pay the principal of the 2011 Note when due or interest on the 2011 Note when due and such failure continues for three business days and/or fails to pay any other amount payable under the 2011 Note for thirty days following notice of such failure; (ii) the Company materially breaches any representation, warranty or covenant made pursuant to the 2011 Note and such breach is not cured within five business days following the Company's awareness thereof or receipt of notice with respect thereto; (iii) the Company or any of its subsidiaries commences a bankruptcy or similar proceeding (or such a proceeding is commenced against the Company or its subsidiaries); (iv) a person or group of persons acquires a majority of the voting power of the Company or Elk; (v) a judgment is entered against the Company or any of its subsidiaries in an aggregate amount exceeding $500,000 or any execution, garnishment or attachment is levied against the Company's or any of its subsidiaries' assets and such execution, garnishment or attachment impairs the Company's or its subsidiaries' ability to conduct its business; (vi) the Company fails to pay obligations in excess of $500,000 when due; or (vii) an event occurs which has or would reasonably be expected to have a material adverse effect on the Company's or any of its subsidiaries' business. The 2011 Note also contains customary representations and warranties as well as affirmative and negative covenants. Pursuant to the 2011 Note, the Company has agreed, among other things, (i) to reimburse the lender for certain out-of-pocket expenses incurred in connection with the 2011 Note; (ii) to maintain a minimum consolidated net asset value of $4,000,000; (iii) not to sell any material assets with a fair market value in excess of $500,000; (iv) not to declare or pay any dividend with respect to any class of capital stock or make any payment on any indebtedness ranking junior to the lender under the 2011 Note; (v) not incur any indebtedness for borrowed money in excess of $250,000; and (vi) not to enter into certain related party transactions. Currently, the Company is not in compliance with certain covenants, including financial covenants and interest payment obligations. Accordingly, the lender may declare that an event of default has occurred and declare the principal amount of the Company's indebtedness, together with any accrued and unpaid interest (including default interest) due thereon, to be immediately due and payable.

The 2011 Note was originally secured by a pledge of 100% of the issued and outstanding shares of common stock of Elk owned by the Company and was subsequently amended to include all personal property and other assets of the Company other than the common stock and all other equity interests of Elk. In order to facilitate certain covenants under the 2011 Note relating to the Company's 2009/2010 Notes, on January 19, 2011, the Company entered into an Amendment to Promissory Note with each holder of the 2009/2010 Notes (see above).

In connection with a Stock Purchase Agreement (see Note 15, Stock Purchase Agreement), on April 12, 2011, the Company also entered into an amendment to the 2011 Note (the "Note Amendment"), which amended a provision of the 2011 Note that prohibited the Company from incurring any indebtedness for borrowed money in excess of $250,000. Such provision, as modified by the Note Amendment, provides that the Company shall not incur any indebtedness for borrowed money in excess of $250,000 other than indebtedness incurred in the ordinary course of business consistent with past practices for use as working capital in an aggregate principal amount not to exceed $500,000. All other terms of the 2011 Note remain in full force and effect. Interest expense incurred in connection with the 2011 Note aggregated $81,500 in the fiscal year ended June 30, 2011.

F-23

AMERITRANS CAPITAL CORPORATION AND SUBSIDIARIES

NOTES TO CONSOLIDATED FINANCIAL STATEMENTS (Continued)

Years Ended June 30, 2011, 2010 and 2009

**6. Preferred Stock**

Ameritrans had 1,000,000 shares of "blank check" preferred shares authorized of which 500,000 shares were designated as 9-3/8% cumulative participating preferred stock $.01 par value, $12.00 face value. On March 18, 2008, the Company filed an amendment to the Company's Articles of Incorporation to increase the number of shares of authorized preferred stock from 1,000,000 to 10,000,000 shares. The remaining 9,500,000 and 500,000 shares, respectively, of these "blank check" preferred shares were unissued at June 30, 2011 and 2010.

As part of the April 2002 stock offering (see Note 8), Ameritrans issued 300,000 shares of 9-3/8% cumulative participating redeemable preferred stock $.01 par value, $12.00 face value. Since April 2007, these preferred shares are redeemable at the option of the Company at face value without any premium.

**7. Common Stock**

Ameritrans had 5,000,000 authorized common shares, $0.0001 par value, of which 1,745,600 were issued and outstanding after the shares exchange with Elk (see Note 1) as of June 30, 2001. As part of stock offerings completed in April 2002 and March 2006, the Company issued an additional 300,000 and 1,355,608 shares of Common Stock, respectively (see Note 8).

On June 24, 2011, the Company's stockholders approved an amended and restated certificate of incorporation of the Company, which, among other things, would increase the number of authorized shares of its capital stock from 55,000,000 shares (consisting of 45,000,000 shares of common stock and 10,000,000 shares of preferred stock) to 110,000,000 shares (consisting of 100,000,000 shares of common stock and 10,000,000 shares of preferred stock). However, such amended and restated certificate of incorporation has not been implemented and may not be implemented unless the Initial Closing of the transactions contemplated by the Stock Purchase Agreement occurs. (See Note 15, Stock Purchase Agreement.)

Pursuant to a foreclosure agreement with a borrower, Elk obtained 10,000 shares of Ameritrans Common Stock, which had previously been pledged by the borrower as collateral. At June 30, 2011 and 2010 these shares are recorded as treasury stock at cost, which was the market value of the shares at the foreclosure date.

**8. Stock Offerings**

In March, 2006, the Company closed on the sale of 1,355,608 shares of Common Stock of the Company and 338,902 warrants to purchase shares of Common Stock ("Private Offering Warrants") for aggregate gross proceeds totaling $7,930,310 ($7,250,407 net of expenses). Each Private Offering Warrant entitles the holder thereof to purchase one share of Common Stock at an exercise price of $6.44 per share. The Private Offering Warrants may be exercised in whole or in part, and expire five (5) years from the date of issuance. The Common Stock and Private Offering Warrants were issued pursuant to the private offering by the Company dated July 29, 2005, of which various closings took place throughout December 2005 and January, February and March of 2006. As of June 30, 2010, none of the Private Offering Warrants had been exercised. On July 29, 2010, all private offering warrants expired. In December 2009, as part of the advisory agreement with Velocity, warrants for 100,000 shares of the Company's Common Stock with an exercise price of $1.25 per share were issued to Velocity for $15,000 and were subsequently canceled in April 2011. On March 18, 2008, the stockholders of the Company approved a private offering of one or a combination of the following securities of the Company's (i) Common Stock, (ii) warrants exercisable into shares of Common Stock and/or (iii) shares of Preferred Stock, with such rights and preferences as determined by the Company's Board of Directors, subject to applicable law and regulation. The Company proposes to raise aggregate gross proceeds between a minimum of $5,000,000 and up to a maximum of $65,000,000. See Note 15, Stock Purchase Agreement.

F-24

AMERITRANS CAPITAL CORPORATION AND SUBSIDIARIES

NOTES TO CONSOLIDATED FINANCIAL STATEMENTS (Continued)

Years Ended June 30, 2011, 2010 and 2009

9. **Dividends to Stockholders**

The following table sets forth the dividends declared by the Company on our Common Stock and Preferred Stock in each of the years ended June 30, 2011, 2010 and 2009:

| | | For the year ended June 30, 2011: | | | |
|---|---|---|---|---|---|
| | Dividend Per Share | Amount | Declaration Date | Record Date | Pay Date |
| Preferred Stock: | | | | | |
| First quarter | $ 0.28125 | $ 84,375 | Not Declared | | |
| Second quarter | 0.28125 | 84,375 | Not Declared | | |
| Third quarter | 0.28125 | 84,375 | Not Declared | | |
| Fourth quarter | 0.28125 | 84,375 | Not Declared | | |
| | $ 1.12500 | $ 337,500 | | | |

| | | For the year ended June 30, 2010: | | | |
|---|---|---|---|---|---|
| | Dividend Per Share | Amount | Declaration Date | Record Date | Pay Date |
| Preferred Stock: | | | | | |
| Fourth quarter 2009 | $ 0.28125 | $ 84,375 | 02/25/10 | 03/08/10 | 03/12/10 |
| First quarter | 0.28125 | 84,375 | 02/25/10 | 03/08/10 | 03/12/10 |
| Second quarter | 0.28125 | 84,375 | 02/25/10 | 03/08/10 | 03/12/10 |
| Third quarter | 0.28125 | 84,375 | 04/09/10 | 04/22/10 | 04/27/10 |
| Fourth quarter | 0.28125 | 84,375 | 07/21/10 | 08/02/10 | 08/17/10 |
| | $ 1.40625 | $ 421,875 | | | |

| | | For the year ended June 30, 2009: | | | |
|---|---|---|---|---|---|
| | Dividend Per Share | Amount | Declaration Date | Record Date | Pay Date |
| Preferred Stock: | | | | | |
| First quarter | $ 0.28125 | $ 84,375 | 10/09/08 | 10/09/08 | 10/15/08 |
| Second quarter | 0.28125 | 84,375 | 12/31/08 | 12/31/08 | 01/15/09 |
| Third quarter | 0.28125 | 84,375 | 03/20/09 | 03/31/09 | 04/15/09 |
| Fourth quarter | Not Declared | - | | | |
| | $ 0.84375 | $ 253,125 | | | |

The Company has not declared a Preferred Stock dividend for the quarters ended September 30, 2010, December 31, 2010, March 31, 2011 or June 30, 2011. Dividends on Preferred Stock accrue whether or not they have been declared. As of June 30, 2011, dividends not declared and in arrears were $337,500. The Company did not declare or pay any dividends on its Common Stock during the fiscal year ended June 30, 2011, 2010 and 2009.

F-25

Case 2:17-cv-03586-JFB-AYS   Document 17-2   Filed 10/06/17   Page 399 of 1053 PageID #: 973

AMERITRANS CAPITAL CORPORATION AND SUBSIDIARIES

NOTES TO CONSOLIDATED FINANCIAL STATEMENTS (Continued)

Years Ended June 30, 2011, 2010 and 2009

The table below shows the tax character of distributions for tax reporting purposes.

| | For the years ended June 30, | | |
| --- | --- | --- | --- |
| | 2011 | 2010 | 2009 |
| Dividends paid from: | | | |
| Ordinary income | $ - | $ - | $ - |
| Return of capital | - | 421,875 | 253,125 |
| Total Dividends | $ - | $ 421,875 | $ 253,125 |

Our ability to make dividend payments is restricted by SBA regulations and under the terms of the SBA debentures, as well as by the 2011 Note and the Stock Purchase Agreement (See Notes 4, 5 and 15).

**10.  Financial Instruments**

Fair value is defined as the amount at which the instrument could be exchanged in a current transaction between willing parties.  The fair values presented below have been determined by using available market information and by applying valuation methodologies.

Loans Receivable and Life Settlement Contracts

- Loans receivable and life settlement contracts are recorded at their estimated fair value (see Note 2).

Investment Securities

- The estimated fair value of publicly traded equity securities is based on quoted market prices and privately held equity securities are recorded at their estimated fair value (see Note 2).

Debt

- The carrying value of the bank debt is a reasonable estimate of fair value as the interest rates are variable, based on prevailing market rates.
- The fair value of the SBA debentures was computed using the discounted amount of future cash flows using the Company's current incremental borrowing rate for similar types of borrowings.  The estimated fair values of such debentures as of June 30, 2011 and 2010 were approximately $22,188,391  and $21,247,000, respectively.  However, the Company does not expect that the estimated fair value amounts determined for these debentures would be realized in an immediate settlement of such debentures with the SBA.
- The carrying value of the note payable, other is a reasonable estimate of the fair value based on prevailing market rates.

Other

- The carrying value of cash and cash equivalents, accrued interest receivable and payable, and other receivables and payables approximates fair value due to the relative short maturities of these financial instruments.

**11.  Related Party Transactions**

Prior to fiscal 2011, occupancy costs include amounts paid to a law firm related to the Company's former Chairman of the Board and certain other former officers and directors of the Company (the "Law Firm") and to another entity in which a former officer of the Company has a financial interest, under previously existing leases and overhead cost reimbursement agreements aggregating $519,876 (including a lease termination payment of $260,000) and $280,502 for the years ended June 30,  2010 and 2009, respectively.

Additionally, in years prior to fiscal 2011, the Company paid legal fees to the Law Firm aggregating $13,000 and $30,000 in the years ended June 30, 2010 and 2009, respectively.

Also see Note 5 for related party loan transactions.

F-26

Case 2:17-cv-03586-JFB-AYS Document 17-2 Filed 10/06/17 Page 400 of 1053 PageID #: 974

AMERITRANS CAPITAL CORPORATION AND SUBSIDIARIES

NOTES TO CONSOLIDATED FINANCIAL STATEMENTS (Continued)

Years Ended June 30, 2011, 2010 and 2009

## 12. Commitments and Contingencies

Leases

On July 1, 2010, the Company entered into a thirty-one month sublease with an unrelated party for office space in Manhattan. This sublease calls for payments of $6,000 per month, including electric.

On July 16, 2010, the Company entered into a seven-year and one month sublease with an unrelated party for office space for the Company's headquarters in Jericho, New York. This sublease requires rental payments ranging from $98,250 to $115,769 per year, including electric. The sublease calls for escalation based on changes, from a base period in real estate tax amounts as incurred by the sublandlord. The sublandlord may terminate this sublease with the Company effective July 30, 2014, if written notice is given on or before July 30, 2013.

Total occupancy costs under the above leases, including the previously existing related-party leases and overhead cost reimbursement agreements, amounted to $171,675, $519,876 (including a lease termination payment of $260,000) and $280,502 for the years ended June 30, 2011, 2010, and 2009, respectively.

The future minimum rental payments for each of the next five years and in the aggregate, thereafter, are as follows:

| Year Ending June 30, | Amount |
|---|---|
| 2012 | $ 173,186 |
| 2013 | 145,933 |
| 2014 | 106,763 |
| 2015 | 109,676 |
| 2016 | 112,678 |
| Thereafter | 125,682 |
| | $ 773,918 |

Employment Agreements

The Company entered into employment agreements with six executives of the Company for various terms expiring through June, 2013. Certain agreements also provided for minimum bonuses.

*Termination of Officers*

Effective March 31, 2011, the Company entered into Separation and Release Agreements with two former executives, Ellen Walker and Lee Forlenza, that provided for severance payments of $57,512 and $36,631, respectively, in exchange for release of the Company for any claims they may have or, potentially may have with respect to their employment and the cessation of such employment with the Company. Effective April 8, 2011, the Company entered into a Separation and Release Agreement with a former executive, Margaret Chance, that provided for a severance payment of $162,650 plus attorneys' fees of $7,350 in exchange for release of the Company for any claims she may have or, potentially, may have with respect to her employment and the cessation of such employment with the Company.

The table below summarizes the minimum payments due under remaining employment agreements in effect, including minimum bonuses, except for the severance amount due to Margaret Chance, as noted above:

| Year ending June 30, | Amount |
|---|---|
| 2012 | $ 713,540 |
| 2013 | 170,241 |
| | $ 883,781 |

F-27

AMERITRANS CAPITAL CORPORATION AND SUBSIDIARIES

NOTES TO CONSOLIDATED FINANCIAL STATEMENTS (Continued)

Years Ended June 30, 2011, 2010 and 2009

Litigation

From time to time, the Company is engaged in various legal proceedings incident to the ordinary course of its business. In the opinion of the Company's management and based upon the advice of legal counsel, there is no proceeding pending, or to the knowledge of management, threatened, which in the event of an adverse decision would result in a material adverse effect on the Company's results of operations or financial condition.

### 13.  Defined Contribution Plan

The Company maintains a simplified employee pension plan covering all eligible employees of the Company. During the years ended June 30, 2011, 2010 and 2009, contributions amounted to $46,430, $40,258 and $171,020, respectively.

### 14.  Stock Option Plans

The Company's stock option plans expired on May 21, 2009.

Employee Incentive Stock Option Plan

An employee stock option plan (the "1999 Employee Plan") was adopted by the Ameritrans Board, including a majority of the non-interested directors, and approved by a vote of the stockholders, in order to link the personal interests of key employees to the Company's long-term financial success and the growth of stockholder value. The Plan had a ten (10) year life which expired in May, 2009. Subsequent amendments to the 1999 Employee Plan were approved by the stockholders in January 2002 and June 2007. The amendments increased the number of shares reserved under the plan to 300,000 shares.

The 1999 Employee Plan authorized the grant of incentive stock options within the meaning of the Section 422 of the Internal Revenue Code for the purchase of an aggregate of 300,000 shares (subject to adjustment for stock splits and similar capital changes) of Common Stock to the Company's employees. Effective as of May 21, 2009, in accordance with the terms of the 1999 Employee Plan, the Board can no longer issue incentive stock options pursuant to such plan. The Board adopted the 1999 Employee Plan to be in a better position to attract, motivate, and retain as employees people upon whose judgment and special skills the Company's success in large measure depends. As of June 30, 2011, options to purchase an aggregate of 230,000 shares of Common Stock were outstanding and fully vested.

The 1999 Employee Plan is administered by the 1999 Employee Plan Committee of the Board, which is comprised solely of non-employee directors (who are "outside directors" within the meaning of Section 152(m) of the Internal Revenue Code and "disinterested persons" within the meaning of Rule 16b-3 under the Securities Exchange Act of 1934 (the "Exchange Act"). The committee can make such rules and regulations and establish such procedures for the administration of the 1999 Employee Plan as it deems appropriate. Effective May 21, 2009, the 1999 Employee Plan expired.

Non-Employee Director Stock Option Plan

A stock option plan for non-employee directors (the "Director Plan") was adopted by the Ameritrans Board and approved by a vote of the stockholders, in order to link the personal interests of non-employee directors to the Company's long-term financial success and the growth of stockholder value. The Director Plan is substantially identical to, and the successor to, a non-employee director stock option plan adopted by the Board of Elk and approved by its stockholders in September 1998 (the "Elk Director Plan"). Ameritrans and Elk submitted an application for, and received on August 31, 1999, an exemptive order relating to these plans from the SEC. The Director Plan was amended by the Board on November 14, 2001, and approved by the stockholders at the Annual Meeting on January 18, 2002. The amendment was subject to the approval of the Securities and Exchange Commission. The amendment was to (i) increase the number of shares reserved under the plan from 75,000 to 125,000 and (ii) authorize the automatic grant of an option to purchase up to 1,000 shares at the market value at the date of grant to each eligible director who is re-elected to the Board.

The total number of shares for which options may be granted from time to time under the Director Plan was 75,000 shares. As of June 30, 2011, options to purchase an aggregate of 59,000 shares were outstanding and fully vested under the Director Plan. The Director Plan is administered by a committee of directors who are not eligible to participate in the Director Plan. Effective May 21, 2009, the Director Plan expired.

F-28

AMERITRANS CAPITAL CORPORATION AND SUBSIDIARIES

NOTES TO CONSOLIDATED FINANCIAL STATEMENTS (Continued)

Years Ended June 30, 2011, 2010 and 2009

Options Granted, Expired and Canceled

There were no options granted or canceled during the fiscal year ended June 30, 2011.

On December 28, 2010, 29,425 options in connection with the 1999 Employee Plan expired. In addition, during the fiscal year ended June 30, 2011, options to purchase 3,000 granted to a previously terminated employee expired unexercised.

After adoption of ASC 718-10 (previously SFAS No. 123R, "*Share-Based Payment*") (see Note 1), the fair value of the options granted amounted to $191,040 at June 30, 2011 and June 30, 2010, which is reflected in additional paid-in capital in the accompanying consolidated statements of assets and liabilities. Compensation expense related to options vested for the fiscal years ended June 30, 2011, 2010 and 2009 was $0, $29,166 and $61,128, respectively. As of June 30, 2011, all options were fully vested.

| | Stock Options | | |
| --- | --- | --- | --- |
| | Number of Options | | Weighted Average Exercise Price Per Share |
| Options outstanding at June 30, 2008 | 208,312 | $ | 5.14 |
| Granted | 158,538 | $ | 2.27 |
| Canceled | - | | - |
| Expired | - | | - |
| Exercised | - | | - |
| Options outstanding at June 30, 2009 | 366,850 | $ | 3.90 |
| Granted | - | | - |
| Canceled | - | | - |
| Expired | (45,425) | $ | 5.25 |
| Exercised | - | | - |
| Options outstanding at June 30, 2010 | 321,425 | $ | 3.71 |
| Granted | - | | - |
| Canceled | - | | - |
| Expired | (32,425) | $ | 5.49 |
| Exercised | - | | - |
| Options outstanding at June 30, 2011 | 289,000 | $ | 3.51 |

The following table summarizes information about the stock options outstanding under the Company's options plans as of June 30, 2011:

| | Options Outstanding | | | Options Exercisable | |
| --- | --- | --- | --- | --- | --- |
| Range of Exercise Prices | Number Outstanding at June 30, 2011 | Weighted Average Remaining Contractual Life | Weighted Average Exercise Price | Number Exercisable at June 30, 2011 | Weighted Average Exercise Price |
| $3.60 | 13,888 | 1.89 years | $3.60 | 13,888 | $3.60 |
| $5.28 | 80,000 | 1.91 years | $5.28 | 80,000 | $5.28 |
| $5.30 | 9,433 | .48 years | $5.30 | 9,433 | $5.30 |
| $4.50 | 20,000 | 1.28 years | $4.50 | 20,000 | $4.50 |
| $4.93 | 10,141 | .86 years | $4.93 | 10,141 | $4.93 |
| $2.36 | 130,000 | 2.28 years | $2.36 | 130,000 | $2.36 |
| $1.78 | 25,538 | 2.85 years | $1.78 | 25,538 | $1.78 |
| $ 1.78-$ 5.30 | 289,000 | 2.03 years | $3.50 | 289,000 | $3.51 |

https://www.sec.gov/Archives/edgar/data/1064015/000139843211000765/i11535.htm
81/86

AMERITRANS CAPITAL CORPORATION AND SUBSIDIARIES

NOTES TO CONSOLIDATED FINANCIAL STATEMENTS (Continued)

Years Ended June 30, 2011, 2010 and 2009

The fair market value for options granted was estimated at the date of grant using a Black-Scholes option-pricing model and the following assumptions for the year ended June 30, 2009:

|  | 2009 |
| --- | --- |
| Risk-free rate | 2.04% |
| Dividend yield | 0.00% |
| Volatility factor | .08 |
| Average life | 5 years |

The Black-Scholes option valuation model was developed for use in estimating the fair value of traded options, which have no vesting restrictions and are fully transferable. In addition, option valuation models require the input of highly subjective assumptions including the expected stock price volatility. Because the Company's employee stock options have characteristics significantly different from those of traded options, and because changes in the subjective input assumptions can materially affect the fair value estimate, in management's opinion, the existing models do not necessarily provide a reliable single measure of the fair value of its employee stock options.

### 15. Stock Purchase Agreement

As previously disclosed in the Company's Form 8-K filed April 14, 2011 and in its Definitive Proxy Statement on Schedule 14A filed May 23, 2011 and amended on June 17 2011, on April 12, 2011, the Company entered into a Stock Purchase Agreement (the "Purchase Agreement") with Renova US Holdings Ltd. ("Renova"). Subject to the terms and conditions set forth in the Purchase Agreement, the Company agreed to issue and sell to Renova, and Renova agreed to purchase, (i) $25,000,000 of Common Stock of the Company (the "Initial Purchased Stock") at a price per share equal to the greater of $1.80 and the then-prevailing per share net asset value of the Company at the time of issuance (as determined in accordance with the terms of the Purchase Agreement) (the "Applicable Per Share Purchase Price"), at an initial closing (the "Initial Closing") to be held no later than November 30, 2011 following satisfaction or waiver of the conditions to such issuance and (ii) between an additional $35,000,000 to $40,000,000 of additional Common Stock (depending upon the timing of such purchases) at the Applicable Per Share Purchase Price (the "Additional Purchased Stock" and together with the Initial Purchased Stock, the "Purchased Stock") at subsequent closings (each, a "Subsequent Closing") to be held from time to time, subject to satisfaction of the conditions to such issuances, between the date of the Initial Closing and the second anniversary of the Initial Closing based upon the terms and conditions set forth in the Purchase Agreement.

In connection with the transactions contemplated by the Purchase Agreement the parties agreed, among other things, that: (1) the Company's Board of Directors would be reconstituted at the Initial Closing by increasing the size of the Board of Directors to eleven and appointing six individuals identified by Renova (as set forth in the Purchase Agreement) to serve as members of the board; and (2) the Company's advisory agreement with Velocity would be terminated and the Company would enter into an investment advisory agreement with Ameritrans Capital Management LLC, an affiliate of Renova, in each case, effective as of the Initial Closing.

Requisite stockholder approval of the transactions contemplated by the Purchase Agreement was obtained at a special meeting of stockholders held on June 24, 2011. Consummation of the Initial Closing is subject to certain additional customary closing conditions, as well as the approval of the SBA of the indirect change of ownership and control the Company's wholly-owned subsidiary, Elk, which is a SBA licensee.

Consummation of each Subsequent Closing is also subject to certain closing conditions, including, without limitation, (i) the absence of any injunction, court order or law prohibiting or enjoining such Subsequent Closing (subject to the parties' obligation to use commercially reasonable efforts to render permissible the consummation of the purchase and sale of the Purchased Stock); and (ii) Elk having remained in good standing with the SBA, in substantial compliance with all applicable rules and regulations and eligible to receive leverage commitments under normal requirements and conditions.

F-30

AMERITRANS CAPITAL CORPORATION AND SUBSIDIARIES

NOTES TO CONSOLIDATED FINANCIAL STATEMENTS (Continued)

Years Ended June 30, 2011, 2010 and 2009

On September 19, 2011, the Company received a letter from the SBA describing certain concerns related to its change of ownership and control application and requesting certain additional pieces of information. In particular, the SBA has informed the Company that the proposed transaction, as currently structured, would not satisfy applicable SBA management-ownership diversity requirements. While the Company continues to believe that the transaction satisfies SBA diversity requirements, to date the SBA has not concurred with that view. The Company intends to continue discussions with the SBA on its diversity interpretation and is also discussing with Renova potential modifications to the terms of the transaction in order to satisfy the SBA's interpretation of those requirements. There is no assurance that the SBA will modify its position, that the Company and Renova will be able to reach agreement on revised terms or that the revised terms would satisfy the SBA. Furthermore, any revised terms may not be as favorable to the Company and its shareholders as the current terms and may also require resubmission of the agreement for shareholder approval. If the Company and Renova cannot agree on revised terms or if the SBA does not change its current view of the diversity requirements, the Purchase Agreement and related agreements may be terminated.

In connection with the termination of the Advisory Agreement, described above, the Company canceled a warrant that was issued to the Adviser on December 10, 2009. Such warrant gave the Adviser the right to purchase 100,000 shares of the Company's common stock at an initial exercise price of $1.25, subject to adjustment, for five years from the date of issuance.

**16.   Subsequent Events**

Subsequent to June 30, 2011, one of the insureds who was covered by one of the policies in the Company's life insurance settlement portfolio, passed away on August 17, 2011. The Company has received approximately $320,000 from the proceeds of such policy after payment to the Receiver (see Note 2). At June 30, 2011, the fair value of such policy was $58,400 and future premiums associated with such policy were $19,330 in fiscal 2012; $23,196 in each of the years 2013 through 2017 and $0, thereafter.

On July 7, 2011 Elk Capital Corporation took title to property and homes that were collateral for the Company's loan to Adiel Homes, Inc. and expects to realize net proceeds of approximately $200,000 from the sale of one of the homes. At June 30, 2011 the fair value of this house was $179,698.

On September 7, 2011, the Company was paid off approximately $1.28 million on its loan to Resco Products, Inc.

On September 19, 2011, the Company received a letter from the SBA describing certain concerns related to its change of ownership and control application and requesting certain additional pieces of information. In particular, the SBA has informed the Company that the proposed transaction, as currently structured, would not satisfy applicable SBA management-ownership diversity requirements. While the Company continues to believe that the Renova transaction satisfies SBA diversity requirements, to date the SBA has not concurred with that view. The Company intends to continue discussions with the SBA on its diversity interpretation and is also discussing with Renova potential modifications to the terms of the transaction in order to satisfy the SBA's interpretation of those requirements. There is no assurance that the SBA will modify its position, that the Company and Renova will be able to reach agreement on revised terms or that the revised terms would satisfy the SBA. Furthermore, any revised terms may not be as favorable to the Company and its shareholders as the current terms and may also require resubmission of the agreement for shareholder approval. If the Company and Renova cannot agree on revised terms or if the SBA does not change its current view of the diversity requirements, the Renova Purchase Agreement and related agreements may be terminated.

On September 20, 2011, the Company received a letter (the "Notice") from The Nasdaq Stock Market ("Nasdaq") notifying the Company that, because the closing bid price for the Company's common stock has been below $1.00 per share for the 30 consecutive business days preceding the Notice, the Company no longer complies with the continued listing requirements under Nasdaq Marketplace Rule 5550(a)(2). Nasdaq Marketplace Rule 5550(a)(2) requires securities listed on the Nasdaq Capital Market to maintain a minimum bid price of $1.00 per share (the "Minimum Bid Requirement"). The Notice will not immediately result in the delisting of the Company's common stock. Nasdaq Marketplace Rule 5810(c)(3)(A) provides the Company with 180 calendar days from the date of the Notice (the "Initial Grace Period") to regain compliance with the Minimum Bid Requirement. To regain compliance, the closing bid price for the Company's common stock must be at least $1.00 per share for a minimum of ten consecutive business days. In the event the Company does not regain compliance with the Minimum Bid Requirement during the Initial Grace Period, the Company may be eligible for an additional 180 day period to regain compliance with the Minimum Bid Requirement.

F-31

AMERITRANS CAPITAL CORPORATION AND SUBSIDIARIES

NOTES TO CONSOLIDATED FINANCIAL STATEMENTS (Continued)

Years Ended June 30, 2011, 2010 and 2009

**17.** **Financial Highlights**

| | | Years Ended June 30, | | | |
|---|---|---|---|---|---|
| | **2011** | **2010** | **2009** | **2008** | **2007** |
| **Net share data** | | | | | |
| Net asset value at the beginning of the year | $ 1.40 | $ 3.40 | $ 5.06 | $ 5.32 | $ 5.36 |
| Net investment loss | (1.53) | (1.17) | (0.86) | (0.01) | (0.05) |
| Net realized and unrealized (losses) on investments | (0.17) | (0.71) | (0.73) | (0.14) | 0.11 |
| **Net decrease in net assets from operations** | (1.70) | (1.88) | (1.59) | (0.15) | 0.06 |
| Net change in net assets from capital share transactions | - | - | - | 0.01 | - |
| Distributions to stockholders [4] | (0.10) | (0.12) | (0.07) | (0.12) | (0.10) |
| **Total increase (decrease) in net asset value** | $ (1.80) | $ (2.00) | $ (1.66) | $ (0.26) | $ (0.04) |
| **Net asset (liability) value at the end of the year** | $ (0.40) | $ 1.40 | $ 3.40 | $ 5.06 | $ 5.32 |
| Per share market value at beginning of year | $ 1.32 | $ 1.63 | $ 3.01 | $ 5.21 | $ 5.07 |
| Per share market value at end of year | 1.17 | 1.32 | 1.63 | 3.01 | 5.21 |
| **Total return** [1] | (11.4%) | (11.6%) | (43.5%) | (39.9%) | 4.7% |
| **Ratios/supplemental data** | | | | | |
| Average net assets [2] (in 000's) | $ 1,706 | $ 8,160 | $ 14,371 | $ 17,622 | $ 18,102 |
| Total expense ratio [3] | 431.0% | 69.0% | 43.7% | 35.8% | 34.8% |
| Net investment loss to average net assets | (306.2%) | (48.8%) | (20.5%) | (0.26%) | (0.9%) |

(1) Total return is calculated by dividing the change in market value of a share of common stock during the year, assuming the reinvestment of common stock dividends on the payment date, by the per share market value at the beginning of the year.

(2) Average net assets excludes capital from preferred stock.

(3) Total expense ratio represents total expenses divided by average net assets.

(4) Amount represents total dividends on both common and preferred stock divided by weighted average shares.

**18.** **Quarterly Financial Data (Unaudited)**

For the year ended June 30, 2011:

| | First Quarter | Second Quarter | Third Quarter | Fourth Quarter |
|---|---|---|---|---|
| Investment income | $ 500,738 | $ 581,531 | $ 624,200 | $ 422,523 |
| Net investment loss | $ (763,162) | $ (797,354) | $ (1,660,793) | $ (2,001,442) |
| Net decrease in net assets from operations | $ (594,549) | $ (843,645) | $ (2,428,122) | $ (1,936,263) |
| Net decrease in net assets from operations per common share: | | | | |
| Basic and diluted | $ (0.20) | $ (0.27) | $ (0.74) | $ (0.60) |

F-32

Case 2:17-cv-03586-JFB-AYS Document 47-2 Filed 10/00/17 Page 407 of 1053 PageID #: 981

AMERITRANS CAPITAL CORPORATION AND SUBSIDIARIES

NOTES TO CONSOLIDATED FINANCIAL STATEMENTS (Continued)

Years Ended June 30, 2011, 2010 and 2009

For the year ended June 30, 2010:

|  | First Quarter | | Second Quarter | | Third Quarter | | Fourth Quarter |
|---|---|---|---|---|---|---|---|
| Investment income | $ | 253,758 | $ | 484,588 | $ | 486,673 | $ 430,417 |
| Net investment loss | $ | (847,287) | $ | (1,001,568) | $ | (795,593) | $ (1,331,967) |
| Net decrease in net assets from operations | $ | (2,973,998) | $ | (720,884) | $ | (915,297) | $ (1,764,784) |
| Net decrease in net assets from operations per common share: | | | | | | | |
| Basic and diluted | $ | (0.88) | $ | (0.21) | $ | (0.37) | $ (0.54) |

F-33

EX-12.1 2 exh12_1.htm

**EXHIBIT 12.1**

**COMPUTATION OF RATIO OF EARNINGS TO FIXED CHARGES AND PREFERENCE DIVIDENDS**

|  | | Year ended June 30, | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
|  | | **2011** | | **2010** | | **2009** | | **2008** | | **2007** |
| **Earnings:** | | | | | | | | | | |
| Net increase (decrease) in net assets from operations | $ | (5,802,576) | $ | (6,374,963) | $ | (5,462,453) | $ | (537,571) | $ | 199,072 |
| Fixed charges | | 1,517,044 | | 964,382 | | 1,130,738 | | 2,398,654 | | 2,158,679 |
| Adjusted earnings | $ | (4,285,532) | $ | (5,410,581) | $ | (4,331,715) | $ | 1,861,083 | $ | 2,357,751 |
| | | | | | | | | | | |
| **Fixed charges:** | | | | | | | | | | |
| Interest expense | $ | 1,446,193 | $ | 906,202 | $ | 1,090,074 | $ | 2,357,540 | $ | 2,117,675 |
| Amortization of deferred loan costs | | 70,851 | | 58,180 | | 40,664 | | 41,114 | | 41,004 |
| Total fixed charges | $ | 1,517,044 | $ | 964,382 | $ | 1,130,738 | $ | 2,398,654 | $ | 2,158,679 |
| | | | | | | | | | | |
| Preference dividends | | 337,500 | | 421,875 | | 253,125 | | 337,500 | | 337,500 |
| Total fixed charges and preference dividends | $ | 1,854,544 | $ | 1,386,257 | $ | 1,383,863 | $ | 2,736,154 | $ | 2,496,179 |
| | | | | | | | | | | |
| Ratio of earnings to fixed charges | | (2.31) | | (3.90) | | (3.13) | | 0.68 | | 0.94 |
| | | | | | | | | | | |
| Deficiency of earnings to cover fixed charges and preference dividends (less than 1:1 ratio) | $ | 6,140,076 | $ | 6,796,838 | $ | 5,715,578 | $ | 875,071 | $ | 138,428 |

Case 2:17-cv-03586-JFB-AYS   Document 47-2   Filed 10/06/17   Page 409 of 1053 PageID #: 983

EX-23.1 3 exh23_1.htm

**Exhibit 23.1**

## CONSENT OF INDEPENDENT REGISTERED PUBLIC ACCOUNTING FIRM

To the Board of Directors and Stockholders of
Ameritrans Capital Corporation and Subsidiaries:

We consent to the reference to our firm under the caption "Experts" in the Registration Statement on Form N-2 and the related Prospectus of Ameritrans Capital Corporation and Subsidiaries and the incorporation by reference of our report dated September  ,  2011, relating to the consolidated financial statements, which appear in this Form 10-K.

/s/ Rosen Seymour Shapss Martin & Company LLP

New York, New York
September 28, 2011

EX-31.1 4 exh31_1.htm

**Exhibit 31.1**

## CERTIFICATIONS

I, Michael Feinsod, certify that:

1.  I have reviewed this annual report on Form 10-K of Ameritrans Capital Corporation;

2.  Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3.  Based on my knowledge, the financial statements and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;

4.  The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the registrant and have:

    a)  Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

    b)  Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

    c)  Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

    d)  Disclosed in this report any changes in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter, that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5.  The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

    a)  All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

    b)  Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

Date: September 28, 2011

/s/ Michael R. Feinsod
Michael R. Feinsod
Chief Executive Officer

EX-31.2 5 exh31_2.htm

**Exhibit 31.2**

## CERTIFICATIONS

I, Richard L. Feinstein, certify that:

1.  I have reviewed this annual report on Form 10-K of Ameritrans Capital Corporation;

2.  Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3.  Based on my knowledge, the financial statements and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;

4.  The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the registrant and have:

    a)  Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

    b)  Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

    c)  Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

    d)  Disclosed in this report any changes in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter, that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5.  The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

    a)  All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

    b)  Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

Date: September 28, 2011

/s/ Richard L. Feinstein
Richard L. Feinstein
Chief Financial Officer

EX-32.2 7 exh32_2.htm

**Exhibit 32.2**

### CERTIFICATION PURSUANT TO
### 18 U.S.C. SECTION 1350
### AS ADOPTED PURSUANT TO

### SECTION 906 OF THE SARBANES-OXLEY ACT OF 2002

In connection with the Annual Report of Ameritrans Capital Corporation (the "Company") on Form 10-K for the period ended June 30, 2011 as filed with the Securities and Exchange Commission on September , 2011 (the "Report"), the undersigned, in the capacity and on the date indicated below, hereby certifies pursuant to 18 U.S.C. Section 1350, as adopted pursuant to Section 906 of the Sarbanes-Oxley Act of 2002, that:

1. The Report fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934, as amended; and

2. The information contained in the Report fairly presents, in all material respects, the financial condition and results of operation of the Company.

Date: September 28, 2011

/s/ Richard L. Feinstein
_____

Richard L. Feinstein
Chief Financial Officer

EX-32.1 6 exh32_1.htm

**Exhibit 32.1**

### CERTIFICATION PURSUANT TO
### 18 U.S.C. SECTION 1350
### AS ADOPTED PURSUANT TO

### SECTION 906 OF THE SARBANES-OXLEY ACT OF 2002

In connection with the Annual Report of Ameritrans Capital Corporation (the "Company") on Form 10-K for the period ended June 30, 2011 as filed with the Securities and Exchange Commission on September , 2011 (the "Report"), the undersigned, in the capacity and on the date indicated below, hereby certifies pursuant to 18 U.S.C. Section 1350, as adopted pursuant to Section 906 of the Sarbanes-Oxley Act of 2002, that:

1. The Report fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934, as amended; and

2. The information contained in the Report fairly presents, in all material respects, the financial condition and results of operation of the Company.

Date: September 28, 2011                                    /s/ Michael R. Feinsod
                                                          ————————————————————————
                                                          Michael R. Feinsod
                                                          Chief Executive Officer

# Exhibit G

# U.S. SECURITIES AND EXCHANGE COMMISSION

Washington, D.C. 20549

# FORM 10-K

**[X] ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d)**
**OF THE SECURITIES EXCHANGE ACT OF 1934**

**For the Fiscal Year ended June 30, 2012**

# AMERITRANS CAPITAL CORPORATION

| | | |
|---|---|---|
| Delaware | 814-00193 | 52-2102424 |
| (State of incorporation) | Commission File Number | (I.R.S. Employer Identification No.) |

**50 JERICHO QUADRANGLE, SUITE 109, JERICHO, NEW YORK 11753**

(212)355-2449
**Securities registered pursuant to Section 12(g) of the Act:**
Common Stock, par value $.0001 per share
9 3/8% Cumulative Participating Redeemable Preferred Stock (face value $12.00)

Indicate by check mark if the registrant is a well-known seasoned issuer, as defined in Rule 405 of the Securities Act.   Yes ☐ No ☑

Indicate by check mark if the registrant is not required to file reports pursuant to Section 13 or Section 15(d) of the Act.   Yes ☐ No ☑

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports) and (2) has been subject to such filing requirements for the past 90 days. Yes ☑   No ☐

Indicate by check mark if disclosure of delinquent filers pursuant to Item 405 of Regulation S-K is not contained herein, and will not be contained, to the best of the registrant's knowledge, in definitive proxy or information statements incorporated by reference in Part III of this Form 10-K or any amendment to this Form 10-K. ☑

Indicate by check mark whether registrant is a large accelerated filer, an accelerated filer, a non-accelerated filer or a smaller reporting company in Rule 12b-2 of the Exchange Act.

Large accelerated filer ☐     Accelerated filer ☐     Non-accelerated filer ☑     Smaller reporting company ☐

Indicate by check mark whether the registrant is a shell company (as defined in Rule 12b-2 of the Act).   Yes ☐   No ☑

The aggregate market value of the Registrant's common stock held by non-affiliates (based upon the closing price of the Registrant's common stock, $0.0001 par value, of $0.12 per share, as reported on the NASDAQ Capital Market on December 30, 2011) was approximately $184,662.

The number of outstanding shares of Registrant's common stock, $.0001 par value as of September 21, 2012 was 3,395,583. The number of shares of Registrant's 9 ⅜ % cumulative participating redeemable preferred stock as of September 21, 2012, was 300,000.

DOCUMENTS INCORPORATED BY REFERENCE. Portions of the registrant's Definitive Proxy Statement for its 2012 Annual Meeting of Shareholders, which Definitive Proxy Statement as filed with the Securities and Exchange Commission on September 7, 2012, are incorporated by reference into Part III of this Form 10-K. Certain exhibits previously filed with the Securities and Exchange Commission are incorporated by reference into Part IV of this report.

## NOTE ABOUT FORWARD-LOOKING STATEMENTS

This Annual Report includes forward-looking statements within the meaning of Section 27A of the Securities Act and Section 21E of the Securities Exchange Act. The matters discussed in this Annual Report, as well as in future oral and written statements by management of Ameritrans Capital Corporation, that are forward-looking statements are based on current management expectations that involve substantial risks and uncertainties which could cause actual results to differ materially from the results expressed in, or implied by, these forward-looking statements. Forward-looking statements relate to future events or our future financial performance. We generally identify forward-looking statements by terminology such as "may," "will," "should," "expects," "plans," "anticipates," "could," "intends," "target," "projects," "contemplates," "believes," "estimates," "predicts," "potential" or "continue" or the negative of these terms or other similar words. Important assumptions include our ability to originate new investments, achieve certain margins and levels of profitability, the availability of additional capital, and the ability to maintain certain debt to asset ratios. In light of these and other uncertainties, the inclusion of a projection or forward-looking statement in this Annual Report should not be regarded as a representation by us that our plans or objectives will be achieved. The forward-looking statements contained in this Annual Report include, but are not limited, to statements as to:

- our ability to continue operating as a going concern

- our future operating results;

- our business prospects and the prospects of our existing and prospective portfolio companies;

- the impact of investments that we expect to make;

- our relationships with third parties;

- the dependence of our future success on the general economy and its impact on the industries in which we invest;

- the ability of our portfolio companies to achieve their objectives;

- our expected financings and investments;

- our regulatory structure and tax treatment;

- our ability to maintain our subsidiary's license as a Small Business Investment Company ("SBIC");

- our ability to cause our subsidiary to be removed from the Small Business Administration's Office of Liquidation;

- our ability to operate as a Business Development Company ("BDC") and a Regulated Investment Company ("RIC"); and

- the adequacy of our cash resources and working capital.

For a discussion of factors that could cause our actual results to differ from forward-looking statements contained in this Annual Report, please see the discussion under "Risk Factors" in Item 1A. You should not place undue reliance on these forward-looking statements. The forward-looking statements made in this Annual Report relate only to events as of the date on which the statements are made. We undertake no obligation to update any forward-looking statement to reflect events or circumstances occurring after the date of this Annual Report.

## AMERITRANS CAPITAL CORPORATION
## 2012 FORM 10-K ANNUAL REPORT

### Table of Contents

PART I     1

|  |  |  |  |
|---|---|---|---|
| ITEM 1. | BUSINESS OF AMERITRANS | | 1 |
| ITEM 1A. | RISK FACTORS | | 21 |
| ITEM 1B. | UNRESOLVED STAFF COMMENTS | | 26 |
| ITEM 2. | PROPERTIES | | 26 |
| ITEM 3. | LEGAL PROCEEDINGS | | 27 |
| ITEM 4. | MINE SAFETY DISCLOSURES | | 28 |

PART II     29

|  |  |  |  |
|---|---|---|---|
| ITEM 5. | MARKET FOR THE REGISTRANT'S COMMON STOCK AND PREFERRED STOCK AND RELATED STOCKHOLDER MATTERS AND ISSUER PURCHASES OF EQUITY SECURITIES | | 29 |
| ITEM 6. | SELECTED FINANCIAL DATA | | 30 |
| ITEM 7. | MANAGEMENT'S DISCUSSION AND ANALYSIS OF FINANCIAL CONDITION AND RESULTS OF OPERATIONS | | 31 |
| ITEM 7A. | QUANTITATIVE AND QUALITATIVE DISCLOSURES ABOUT MARKET RISK | | 41 |
| ITEM 8. | FINANCIAL STATEMENTS AND SUPPLEMENTARY DATA | | 41 |
| ITEM 9. | CHANGES IN AND DISAGREEMENTS WITH ACCOUNTANTS ON ACCOUNTING AND FINANCIAL DISCLOSURE | | 41 |
| ITEM 9A. | CONTROLS AND PROCEDURES | | 41 |
| ITEM 9B. | OTHER INFORMATION | | 42 |

PART III     42

|  |  |  |  |
|---|---|---|---|
| ITEM 10. | DIRECTORS, EXECUTIVE OFFICERS AND CORPORATE GOVERNANCE | | 42 |
| ITEM 11. | EXECUTIVE COMPENSATION | | 42 |
| ITEM 12. | SECURITY OWNERSHIP OF CERTAIN BENEFICIAL OWNERS AND MANAGEMENT AND RELATED STOCKHOLDER MATTERS | | 42 |
| ITEM 13. | CERTAIN RELATIONSHIPS AND RELATED TRANSACTIONS AND DIRECTOR INDEPENDENCE | | 42 |
| ITEM 14. | PRINCIPAL ACCOUNTANT FEES AND SERVICES | | 42 |

PART IV     43

|  |  |  |  |
|---|---|---|---|
| ITEM 15. | EXHIBITS AND FINANCIAL STATEMENT SCHEDULES | | 43 |

SIGNATURES     46

## PART I

## ITEM 1. BUSINESS OF AMERITRANS

### GENERAL

Ameritrans Capital Corporation ( "Ameritrans") is a Delaware closed-end investment company formed in 1998, which makes loans and investments with the goal of generating both current income and capital appreciation. Through our wholly-owned subsidiary, Elk Associates Funding Corporation ("Elk"), we make loans to finance the acquisition and operation of small businesses as permitted by U.S. Small Business Administration (the "SBA") regulations. Elk Capital Corporation ("Elk Capital") is a wholly owned subsidiary of Ameritrans. From time-to-time, Elk Capital holds title to assets acquired in satisfaction of loans. As used in this Annual Report, references to the "Company", "we", "us" or "our" refer to Ameritrans and its subsidiaries, including Elk, collectively, unless otherwise indicated or the context otherwise requires.

Both Ameritrans and Elk are registered as business development companies, or "BDCs," under the Investment Company Act of 1940, as amended (the "1940 Act"). Accordingly, Ameritrans and Elk are subject to the provisions of the 1940 Act governing the operation of BDCs. Both companies are managed by their executive officers under the supervision of their boards of directors. Ameritrans and Elk have also elected to be treated as regulated investment companies, or "RICs," for tax purposes. Under the Internal Revenue Code, as a RIC, we will generally not be subject to U.S. federal corporate income tax on our investment income if we make qualifying distributions of our income to stockholders. We qualify for this treatment as long as we distribute at least 90% of our investment company taxable income, if any, to our stockholders as dividends. Elk's dividends are payable to Ameritrans as Elk's sole stockholder. For the fiscal years ended June 30, 2011 and 2012, no 9 3/8% Cumulative Participating Redeemable Preferred Stock ("Preferred Stock") dividends have been paid. The dividends for the quarters ending June 30, 2009, September 30, 2009 and December 31, 2009, were paid on March 12, 2010 and the dividends for the quarters ended March 31, 2010 and June 30, 2010 were paid when due on April 27, 2010 and August 17, 2010, respectively. Accordingly, holders of the Preferred Stock are currently entitled to elect a majority of Ameritrans' board of directors.

### CORPORATE HISTORY AND OFFICES

Elk was formed in August 1980 as a New York Corporation. In December 1998, we completed a share-for-share exchange with Elk, whereby Ameritrans became Elk's sole shareholder. Both Ameritrans and Elk have the same boards of directors.

Our principal executive offices are located at 50 Jericho Quadrangle, Suite 109, Jericho, NY 11753 and our telephone number is (212)355-2449. We also maintain an office at 830 Third Avenue, 8 th Floor, New York, NY 10017. Information about us may also be obtained from the Securities and Exchange Commission's website ( *http://www.sec.gov* ). We maintain a website on the Internet at *http://www.ameritranscapital.com* . Information contained on our website is not incorporated by reference into this Annual Report, and that information should not be considered as part of this Annual Report. We make available free of charge on our website our annual reports on Form 10-K, quarterly reports on Form 10-Q, current reports on Form 8-K, and all amendments to those reports as soon as reasonably practicable after such material is electronically filed with or furnished to the SEC.

### CURRENT BUSINESS ACTIVITIES

Ameritrans was organized to be the sole shareholder of Elk and to make loans and investments that Elk may not be permitted to make under SBA regulations. Ameritrans makes loans which have primarily been secured by real estate mortgages, senior corporate loans, life insurance settlements and equity investments which have historically been in income producing real estate properties, or in real estate construction projects.

1

Elk was organized primarily to provide long-term loans to businesses eligible for investments ("Small Business Concerns") by small business investment companies ("SBICs") under the U.S. Small Business Investment Act of 1958 (the "1958 Act"). Elk makes loans for financing diversified businesses that qualify for funding under SBA Regulations.

During the fiscal year ended June 30, 2012, Ameritrans had, in addition to Elk, five single-member limited liability companies, each of which is wholly owned and four of which each hold one life insurance policy included in our life insurance settlement portfolio. Elk had one (1) wholly owned subsidiary: EAF Holding Corporation.   EAF Holding Corporation owns and operates certain real estate assets acquired in satisfaction of defaulted loans made by Elk. At June 30, 2012, it was operating certain assets held in satisfaction of loans.

2

**RENOVA STOCK PURCHASE AGREEMENT**

On April 12, 2011, we entered into a Stock Purchase Agreement (the "Purchase Agreement") with Renova US Holdings Ltd. ("Renova"). Subject to the terms and conditions set forth in the Purchase Agreement, we agreed to issue and sell to Renova, and Renova agreed to purchase, (i) $25,000,000 of our Common Stock at a price per share equal to the greater of $1.80 and the then-prevailing per share net asset value of the Company at the time of issuance (as determined in accordance with the terms of the Purchase Agreement) (the "Applicable Per Share Purchase Price"), at an initial closing to be held no later than November 30, 2011, following satisfaction or waiver of the conditions to such issuance  and (ii) between an additional $35,000,000 to $40,000,000 of additional Common Stock (depending upon the timing of such purchases) at the Applicable Per Share Purchase Price at subsequent closings to be held from time to time, subject to satisfaction of the conditions to such issuances, between the date of the initial closing and the second anniversary of the initial closing, based upon the terms and conditions set forth in the Purchase Agreement.

 Requisite stockholder approval of the transactions contemplated by the Purchase Agreement was obtained at a special meeting of stockholders held on June 24, 2011. Consummation of the Initial Closing was subject to certain additional customary closing conditions, as well as the approval of the SBA of the indirect change of ownership and control of our wholly-owned subsidiary, Elk, which is a SBA licensee.

On September 19, 2011, we received a letter from the SBA describing certain concerns related to its change of ownership and control application and requesting certain additional pieces of information. In particular, the SBA informed us that the proposed transaction, as then structured, would not satisfy applicable SBA management-ownership diversity requirements. While we believed that the transaction satisfied all SBA regulatory requirements, the SBA did not concur with that view.

As of November 16, 2011, Renova and we terminated the Purchase Agreement, although we continued to engage in discussions with Renova regarding potential modifications to the terms of the transaction contemplated by the Purchase Agreement in order to satisfy the SBA interpretation of its management-ownership diversity regulations. As noted, below, in Note 12, Commitments and Contingencies – Litigation, we presented a restructured transaction with Renova, specifically drawn to address SBA's stated concerns. On December 22, 2012, SBA informed Elk that it would not approve the transaction. In light of the SBA's continued belief that the Renova Transaction, as proposed to be modified, would not satisfy such regulations, on January 19, 2012, Renova advised us that Renova was ceasing its efforts to pursue a transaction with us and Elk. As a result, Renova and we are no longer engaging in discussions regarding a potential financing transaction.

On January 19, 2012, Ameritrans Holdings LLC (the "Secured Lender"), an affiliate of Renova  and the holder of the Senior Secured Note (the "Secured Note"), dated January 19, 2011, issued by Ameritrans in favor of the Secured Lender, delivered written notice (the "Default Notice") to Ameritrans that an event of default under the Secured Note had occurred and was continuing.  Pursuant to the Default Notice, the Secured Lender declared all outstanding principal, interest, fees and other amounts owed by Ameritrans under the Secured Note to be immediately due and payable.   As of the date of the Default Notice, Ameritrans' outstanding indebtedness under the Secured Note included $1,423,000 million of principal and approximately $29,000 of accrued and unpaid interest, or approximately $1,452,000 in the aggregate.  On March 7, 2012, Ameritrans paid the Secured Lender, $1,420,000 (the "Payoff Amount") in full satisfaction of Ameritrans' obligations under the Secured Note.  Upon the Secured Lender's receipt of such payment, the Secured Note, Ameritrans' obligations thereunder, all liens and security interests previously granted by Ameritrans to the Lender to secure such obligations, and the related pledge agreement terminated. The Payoff Amount represents an approximate 9.8% discount from the principal, interest and other amounts payable under the Secured Note as of the date of payment.

**SBA CAPITAL IMPAIRMENT AND REFERRAL TO OFFICE OF LIQUIDATION**

Elk is required to calculate the amount of capital impairment each reporting period based on SBA regulations. The purpose of the calculation is to determine if the Undistributed Net Realized Earnings (Deficit) after adjustment for net unrealized gain or loss on securities exceeds the SBA regulatory limits. If so, Elk is considered to have impaired capital.  Since June 30, 2010, Elk's capital has been impaired. As of June 30, 2012, Elk's maximum permitted calculated impairment percentage (regulatory limit) was 40%, with an actual capital impairment percentage of approximately 69.6%. Accordingly, Elk had a condition of capital impairment as of June 30, 2012, which would require additional capital of approximately $10.5 million to cure.

3

On March 6, 2012 (the "Notice Date"), Sean J. Greene ("Greene"), Associate Administrator Office of Investment and Innovation of SBA delivered written notice (the "Notice") to Elk of SBA's determination that Elk has a condition of capital impairment, based on Elk's financial condition as of September 30, 2011. As stated in the Notice, Elk's capital impairment percentage as of September 30, 2011 was 59%.  Pursuant to the Notice, Greene directed Elk to cure the capital impairment within fifteen days from the Notice Date (the "Cure Period"). The Notice indicated the SBA may declare Elk's total indebtedness to the SBA to be immediately due and payable and/or institute legal proceedings seeking the appointment of the SBA as Elk's receiver if Elk failed to cure the capital impairment within the Cure Period. To date, Elk has not cured its capital impairment.

The Notice also indicated that, on February 22, 2012, Elk was referred to the Office of Liquidation of the SBA, based on Elk's condition of capital impairment for the quarterly periods ended March 31, 2010 and September 30, 2011, which are continuing.  Also, on March 20, 2012, Elk filed a lawsuit against the SBA and its Administrator in the United States District Court of the District of Columbia, alleging, among other things, that the SBA's refusal to approve prior financing transactions intended to recapitalize Elk and cure its condition of capital impairment were arbitrary and capricious.  Additionally, the SBA has notified Elk that it was not interested in exploring previous settlement proposals by Elk and planned to proceed with liquidation activities.

On June 1, 2012, Elk received a written notice from the SBA (the "Second SBA Notice") that declared Elk's entire indebtedness to the SBA, including principal, accrued interest and any other amounts owed by Elk to the SBA pursuant to Elk's outstanding debentures, to be immediately due and payable.  The Second SBA Notice indicates that such acceleration of Elk's obligations relates to an event of default under Elk's outstanding debentures resulting from Elk's condition of capital impairment described above, which, according to the Second SBA Notice, Elk failed to cure within applicable cure periods.

According to the Second SBA Notice, as of May 25, 2012, Elk was indebted to the SBA in the aggregate principal amount of $21,175,000, plus accrued interest of $239,372 (with an additional $2,816 of interest accruing on a per diem basis) (the "Indebtedness") pursuant to the following subordinated debentures:

| Date of Issuance | Principal Amount | Stated Interest Rate | Scheduled Maturity Date |
|---|---|---|---|
| July 22, 2002 | $2,050,000 | 4.67% | September 1, 2012 |
| December 22, 2002 | $3,000,000 | 4.63% | March 1, 2013 |
| September 28, 2003 | $5,000,000 | 4.12% | March 1, 2014 |
| February 14, 2004 | $1,950,000 | 4.12% | March 1, 2014 |
| December 26, 2009 | $21,175,000 | 4.11% | March 1, 2020 |

4

The Second SBA Notice stated that Elk was required to remit the entire amount of the Indebtedness to the SBA no later than June 15, 2012. In addition the Second SBA Notice stated that the SBA may avail itself of any remedy available to it under the 1958 Act, including institution of proceedings for the appointment of SBA or its designee as receiver for Elk's assets. In the event Elk is placed into receivership, the interests represented by any such receiver could differ materially from the interests of Ameritrans' stockholders.

On June 5, 2012, Elk submitted a proposal to cure its condition of capital impairment and return to the active business of providing capital to small business concerns. Notwithstanding the submission of a plan that would permit Elk to remain an active SBIC, SBA requested that Elk submit a proposed settlement plan relating to Elk's liquidation process to the SBA no later than June 18, 2012. Elk has submitted the requested settlement plan, which included a proposed schedule for the payment of Elk's indebtedness to SBA and alternatives to SBA's potential attempts to appoint a receiver. There can be no assurance, however, that the settlement plan submitted by Elk will be acceptable to the SBA or that the SBA will not pursue the appointment of a receiver or any other remedy available to the SBA.

Elk also intends to continue prosecution of its lawsuit against the SBA, subject to any amicable settlement that may be worked out between the parties, including settlements that would allow Elk to return to the SBA's Office of Operations and to active lending. To this end, Elk has filed an amended complaint in the matter while also pursuing a settlement proposal with the Office of Liquidation. The amended complaint includes information that was discovered during Elk's review of the SBA's "Administrative Record."

As stated above, the SBA has notified Elk that it was not interested in exploring previous settlement proposals by Elk which would cure the regulatory issue that has been cited by SBA as rationale for its continued attempts to remove Elk from the SBIC program. Accordingly, there can be no assurance that any settlement will be reached.

If the SBA continues to pursue the liquidation of Elk, Ameritrans and/or Elk may be required to terminate certain of their employees, and Elk may no longer be able to provide financing to small business concerns. In addition, Elk could be required to dispose of its assets in a forced sale that could result in proceeds less than the carrying value of the asset being sold. In the event Elk is placed in receivership or is otherwise forced to liquidate, Ameritrans' interest in Elk may lose all value, which would have a material adverse effect on Ameritrans' business, financial condition and results of operations and Ameritrans may be forced to cease operations and liquidate or seek bankruptcy protection, in which case shareholders may receive little or no value for their investment in Ameritrans' securities. See "Item 1A. Risk Factors".

5

**LAWSUIT AGAINST THE SBA**

On March 20, 2012, Elk filed a lawsuit against the SBA and its Administrator in the United States District Court for the District of Columbia (the "District Court") (Case No. 1200438 CKK), seeking temporary, preliminary, and permanent injunctive relief; declaratory relief; and damages (the "Litigation"). The injunctive relief sought by Elk includes: (i) setting aside the SBA's decision to transfer Elk to the SBA's Office of Liquidation (see Note 4, Debentures Payable to SBA), (ii) requiring the SBA to provide Elk with a commercially reasonable amount of time to present a plan for curing Elk's position of capital impairment and (iii) requiring the SBA to accept legitimate commitment letters from qualified investors in the Company as a cure to Elk's position of capital impairment, so long as those letters guaranty that funds identified in the commitment letters are transferred by the Company to Elk. Elk's lawsuit also seeks monetary damages in an amount to be determined at trial.

On the evening of March 20, 2012, the SBA and Elk notified the District Court that the SBA had agreed to suspend liquidation activities and take no action to revoke Elk's license for 15 days from March 21, 2012. On March 21, 2012, the District Court held a Scheduling Conference in connection with the Litigation. During the Scheduling Conference, the SBA represented that it would suspend liquidation activities involving Elk and refrain from taking any action to revoke Elk's license until April 25, 2012. This representation on the record by the SBA made Elk's motion for a temporary restraining order seeking to preserve the status quo pending a decision on Elk's motion for a preliminary injunction moot. Also on March 21, 2012, the District Court set (i) a briefing schedule on Elk's motion for a preliminary injunction and (ii) a schedule related to the SBA's production of a complete certified administrative record concerning the events identified by Elk in the lawsuit that are the subject of the Litigation.

On April 24, 2012, the District Court denied Elk's motion for a preliminary injunction and ordered the SBA to file a response to Elk's lawsuit no later than June 4, 2012. Accordingly, since April 25, 2012, the SBA is no longer required to suspend liquidation activities with respect to Elk.

While Elk believed the settlement conditions proposed by the SBA were vague and created additional uncertainty, in a series of communications designed to create greater certainty, Elk expressed its willingness to agree to substantially all of the terms of the SBA's proposal and in accordance with SBA's proposal and committed to cure its capital impairment within 60 days from the date of any such settlement. Moreover, Elk committed to a capital infusion within that time period sufficient to reduce Elk's capital impairment percentage below 35%, a level that is significantly below the 40% threshold required under SBA regulations. Elk also advised the SBA of its view that, based on Elk's historic returns, the capital infusion with which Elk proposed to cure its capital impairment would be sufficient to return Elk to profitability and would be advantageous to the SBA inasmuch as it would permit Elk to continue to pay interest on its SBA debentures and repay certain debentures that are scheduled to mature in October 2012. More importantly, an amicable settlement would permit Elk to return to the active business of providing capital to small businesses. In its various communications, Elk offered to meet in person with representatives of SBA to discuss its proposal.

Although Ameritrans believed its counter-proposals were consistent in material respects with the proposal initially set forth by the SBA, on May 16, 2012 the SBA indicated, through an e-mail received from SBA's counsel, that the SBA "was not interested in exploring those proposals," refused to consider a refinancing of Elk's debentures and will be "proceeding with liquidation activities." Ameritrans believes that the SBA's response to its settlement proposals is consistent with its arbitrary and capricious conduct to date.

On June 1, 2012, Elk received a written notice (the "Notice") from the SBA that declared Elk's entire indebtedness to the SBA, including principal, accrued interest and any other amounts owed by Elk to the SBA pursuant to Elk's outstanding debentures, to be immediately due and payable. The Notice indicates that such acceleration of Elk's obligations relates to an event of default under Elk's outstanding debentures resulting from Elk's condition of capital impairment described above, which, according to the Notice, Elk failed to cure within applicable cure periods.

According to the Notice, as of May 25, 2012, Elk was indebted to the SBA in the aggregate principal amount of $21,175,000, plus accrued interest of $239,372 (with an additional $2,816 of interest accruing on a per diem basis) (the "Indebtedness") (as of June 30, 2012, Elk's aggregate Indebtedness to the SBA was $21,517,506, including $342,506 of interest and fees) pursuant to the following subordinated debentures:

| Date of Issuance | Principal Amount | Stated Interest Rate | Scheduled Maturity Date |
| --- | --- | --- | --- |
| July 22, 2002 | $2,050,000 | 4.67% | September 1, 2012 |
| December 22, 2002 | $3,000,000 | 4.63% | March 1, 2013 |
| September 28, 2003 | $5,000,000 | 4.12% | March 1, 2014 |

Case 2:17-cv-03586-JFB-AYS    Document 47-20   Filed 10/06/17    Page 424 of 1053 PageID #: 9982

| | | | |
|---|---|---|---|
| February 14, 2004 | $1,950,000 | 4.62% | March 1, 2014 |
| December 26, 2009 | $9,175,000 | 4.11% | March 1, 2020 |

The Notice states that Elk is required to remit the entire amount of the Indebtedness to the SBA no later than June 15, 2012. In addition the Notice states that the SBA may avail itself of any remedy available to it under the Act, including institution of proceedings for the appointment of SBA or its designee as receiver for Elk's assets. In the event Elk is placed into receivership, the interests represented by any such receiver could differ materially from the interests of Ameritrans' stockholders.

On June 5, 2012, Elk submitted a proposal to cure its condition of capital impairment and return to the active business of providing capital to small business concerns. Notwithstanding the submission of a plan that would permit Elk to remain an active SBIC, SBA has requested that Elk submit a proposed settlement plan relating to Elk's liquidation process to the SBA no later than June 18, 2012. Any such plan would specify a proposed payment schedule for the Indebtedness and would be intended as an alternative to SBA's potential attempts for the appointment of a receiver. Elk intends to submit the requested settlement plan by June 18, 2012. There can be no assurance, however, that any settlement plan submitted by Elk would be acceptable to the SBA or that the SBA would not pursue the appointment of a receiver or any other remedy available to the SBA.

6

Elk also intends to continue prosecution of its lawsuit against the SBA, subject to any amicable settlement that may be worked out between the parties, including settlements that would allow Elk to return to the SBA's Office of Operations and to active lending. To this end, Elk filed an amended complaint in the matter while also pursuing a settlement proposal with the Office of Liquidation. The amended complaint includes information that was discovered during Elk's review of the SBA's "Administrative Record."

While Elk has repeatedly brought financing proposals to the SBA that would permit it to return to active lending, the SBA has consistently rejected these proposals. We continue to believe that the SBA's actions to date have been arbitrary and capricious. In light of this latest negative response from the SBA, Elk intends to continue prosecution of its lawsuit against the SBA, described above. The lawsuit may be expanded and/or amended to reflect the actions of certain parties which were discovered through the production of the SBA's Administrative Record.

If the SBA determines to pursue the liquidation of Elk, Ameritrans and/or Elk may be required to terminate certain of their employees, and Elk may no longer be able to provide financing to small businesses.

In addition, if the SBA were to require Elk to immediately repay its outstanding indebtedness, Elk could be required to dispose of its assets in a forced sale that could result in proceeds less than the carrying value of the asset being sold. The SBA may institute proceedings to place Elk into receivership and to appoint the SBA or its designee as the receiver. The interests represented by any such receiver could differ materially from the interests of Ameritrans' stockholders. As noted above, in the event Elk is placed in receivership or is otherwise forced to liquidate, Ameritrans' interest in Elk may lose all value, which would have a material adverse effect on Ameritrans' business, financial condition and results of operations and Ameritrans may be forced to cease operations and liquidate or seek bankruptcy protection, in which case shareholders may receive little or no value for their investment in Ameritrans' securities.

Additional information about the Litigation can be found on the Public Access to Court Electronic Records (PACER) web site at *www.pacer.gov*. The PACER website is operated by the Administrative Office of the U.S. Courts. The Company does not warrant the accuracy or completeness of the PACER website and expressly disclaims liability for errors or omissions on such website. The information set forth on the PACER website shall not be deemed to be a part of or incorporated by reference into this filing or any other filing by the Company with the SEC.

**Other Events**

On September 20, 2011, the staff of The Nasdaq Stock Market ("Nasdaq") notified Ameritrans that it was not in compliance with Nasdaq Marketplace Rule 5550(a)(2), which requires listed issuers to maintain a minimum closing bid price of $1.00 per share for continued listing (the "Minimum Bid Requirement"). On October 3, 2011, the Nasdaq staff notified Ameritrans that Ameritrans was not in compliance with Nasdaq Marketplace Rule 5550(b)(1), which requires listed companies to maintain minimum stockholders' equity of $2.5 million (the "Minimum Stockholders' Equity Requirement"). Following the Nasdaq staff's review of information provided by Ameritrans, by letter dated February 1, 2012 (the "Determination Letter") the Nasdaq staff notified Ameritrans that it did not satisfy certain conditions necessary for an extension of the time period in which Ameritrans might demonstrate its compliance with the Minimum Stockholders' Equity Requirement. The Determination Letter also indicated the Nasdaq staff's determination to suspend trading in, and delist, Ameritrans' securities, subject to Ameritrans' right to appeal such determination. Ameritrans appealed such determination to Nasdaq Hearings Panel (the "Panel"), which stayed the suspension of trading in, and delisting of, Ameritrans securities.

On May 1, 2012, Ameritrans received a letter from the Nasdaq staff informing Ameritrans that the Panel had denied Ameritrans' appeal and determined to delist Ameritrans' securities from Nasdaq, effective at the open of trading on May 3, 2012, based on Ameritrans' non-compliance with the Minimum Stockholders' Equity Requirement and the Minimum Bid Requirement. On June 27, 2012, Nasdaq filed a Form 25 Notification of Delisting with the SEC after all appeal periods had expired. Following delisting of Ameritrans' securities, Ameritrans securities began trading in the over-the-counter market on the OTC Bulletin Board.

On March 16, 2012, Ameritrans paid the holders of its Promissory Notes issued December 19, 2009 and March 23, 2011, as amended, which were scheduled to mature in May 2012 (the "Senior Notes"), an aggregate of $2,650,000, including default interest of approximately $77,000, (the "Senior Notes Payoff Amount") in full satisfaction of Ameritrans' obligations under the Senior Notes. Upon the noteholders' receipt of such payment, the Senior Notes and Ameritrans' obligations thereunder terminated. The Senior Notes Payoff Amount represents an approximate 14.2% discount from the principal, interest and other amounts payable under the Senior Notes as of date of payment. A member of Ameritrans' board of directors and certain affiliated entities held $2,035,000 principal amount of the Senior Notes, and as such received approximately $1,799,000 of the Senior Notes Payoff Amount.

**KEY QUANTITATIVE AND QUALITATIVE FINANCIAL MEASURES AND INDICATORS**

**Net Asset (Liability) Value**

Our net asset (liability) value ("NAV") per share was $(2.11) and $(0.40) as of June 30, 2012 and June 30, 2011, respectively. As we must report our assets at fair value for each reporting period, NAV also represents the amount of stockholders' equity (liability) per share for the reporting period.  Our NAV is comprised mostly of investment assets less debt and other liabilities:

| | June 30, 2012 | | June 30, 2011 | |
| --- | --- | --- | --- | --- |
| | Fair Value | Per Share | Fair Value | Per Share |
| Investments at fair value: | | | | |
| Investments in debt securities | $ 12,219,741 | $ 3.60 | $ 20,526,100 | $ 6.04 |
| Investments in life settlement contracts | 3,204,001 | 0.94 | 2,408,000 | 0.71 |
| Investments in equity securities | 1,078,864 | 0.32 | 987,635 | 0.29 |
| Cash and cash equivalents | 184,338 | 0.05 | 4,151,616 | 1.22 |
| Other assets | 2,254,427 | 0.66 | 2,048,783 | 0.61 |
| Total Assets | 18,941,371 | 5.57 | 30,122,134 | 8.87 |
| Borrowings | 21,175,000 | (6.23) | 25,675,000 | (7.56) |
| Other liabilities | 1,329,859 | (0.39) | 2,211,041 | (0.65) |
| Total Liabilities | 22,504,859 | (6.62) | 27,886,041 | (8.21) |
| Preferred Stock | 3,600,000 | (1.06) | 3,600,000 | (1.06) |
| NET ASSET (LIABILITY) VALUE APPLICABLE TO COMMON STOCK | $ (7,163,488) | $ (2.11) | $ (1,363,907) | $ (0.40) |

Please refer to the "Investment Portfolio" for a further description of our investment portfolio and the fair value thereof.

7

Case 2:17-cv-03586-JFB-AYS   Document 47-2   Filed 10/06/17   Page 427 of 1053 PageID #: 1001

**Revenue**

Revenues consist primarily of investment income from interest on our investment portfolio and various ancillary fees related to our investment holdings.

*Interest from Investments in Debt Securities.* We generate interest income from our investments in debt securities which consist primarily of secured loans. Our debt securities portfolio is spread across multiple industries and geographic locations, and as such, we are broadly exposed to market conditions and business environments. We seek to limit concentration of exposure in any particular sector or issuer.

*Capital Structuring Service Fees.* We may earn ancillary structuring and other fees related to the origination and or investment in debt and investment securities.

**Expenses**

Expenses consist primarily of interest expense on outstanding borrowings, compensation expense and general and administrative expenses, including professional fees.

*Interest and Amortization of Debt Issuance Costs.* Our interest expense has historically been dependent on the average outstanding balances on our bank lines of credit and the base index rate for the period. However, we repaid our bank loans as of August 31, 2010 and, thereafter, our lines of credit expired in accordance with their terms. Our SBA debentures and notes payable carry fixed-rates of interest. Debt issuance costs represent fees and other direct costs incurred in connection with our borrowings. These amounts are capitalized and amortized ratably over the contractual term of the borrowing.

*Compensation Expense.* Compensation expense includes base salaries, bonuses, stock compensation, employee benefits and employer-related payroll costs. The largest components of total compensation costs are base salaries. Generally, base salaries are expensed as incurred.

*Professional Fees and General and Administrative Expenses.* The balance of our expenses includes professional fees (including legal, accounting and compliance fees), advisory fees, occupancy costs, general administrative expenses and other costs.

8

**Net Unrealized Depreciation on Investments**

During the year ended June 30, 2012, our investments had a net unrealized depreciation of approximately $1,991,890. The net unrealized depreciation for the year ended June 30, 2012 is primarily due to unrealized write-downs of $1,934,918 in our Corporate Loan portfolio and, to a lesser extent, decreases in the fair value of our Commercial Loan portfolio of $128,644 and our Life Insurance Settlement Contracts portfolio of $95,657. These write-downs were partially offset by a fair value increase in our Equity Investments portfolio aggregating $167,329.

**Net Decrease in Net Assets Resulting From Operations**

The net decrease in net assets resulting from operations for the year ended June 30, 2012 was $5,462,081, or a decrease of $1.61 per outstanding share of Common Stock. The factors contributing to this decrease were: a net investment loss of $3,654,870, net realized gains on retirement of debt of $184,679 and unrealized losses on investments of $1,991,890.

**Net Investment Loss and Net Realized Gains**

Net investment loss and net realized loss represent the net decrease in stockholders' equity before net unrealized appreciation or depreciation on investments. For the year ended June 30, 2012, net investment loss and net realized gains were approximately $3,470,191 or $1.02 per share. Generally, we seek to fund our dividend from net investment income and net realized gains. For the year ended June 30, 2012, dividends accrued on our Preferred Stock totaled $337,500 or approximately $1.125 per share (equal to $0.10 per share of our Common Stock).

**Dividends**

To comply with excise tax regulation imposed on RICs, we currently intend to distribute during each calendar year an amount at least equal to the sum of:

- 98% of our ordinary net taxable income, if any, for the calendar year;

- 98% of our capital gains, if any, in excess of capital losses for the twelve-month period ending on October 31 of the calendar year; and

- Any net ordinary income and net capital gains for the preceding year that were not distributed during such year.

Generally, we seek to fund our dividend from GAAP current earnings, primarily from net interest and other income generated by our investment portfolio and without a return of capital or a high reliance on realized capital gains. The following table sets forth the dividends paid and accrued by us on our Preferred Stock (there were no dividends on Common Stock):

| | For the year ended June 30, 2012 | | | | | |
|---|---|---|---|---|---|---|
| | Dividend Per Share | | Amount | | Declaration Date | Record Date | Pay Date |
| Preferred Stock: | | | | | | |
| First quarter (July 1, 2011 – September 30, 2011) | $ | 0.28125 | $ | 84,375 | Not Declared | | |
| Second quarter (October 1, 2011 – December 31, 2011) | $ | 0.28125 | $ | 84,375 | Not Declared | | |
| Third Quarter (January 1, 2012–March 31, 2012) | $ | 0.28125 | $ | 84,375 | Not Declared | | |
| Fourth Quarter (April 1, 2012– June 30, 2012) | $ | 0.28125 | $ | 84,375 | Not Declared | | |
| Total Preferred Stock Dividends Paid and Accrued | $ | 1.1250 | $ | 337,500 | | | |

9

Case 2:17-cv-03586-JFB-AYS Document 47-20 Filed 10/06/17 Page 429 of 1053 PageID #: 1003

*Business Categories*

We currently report our investments in four categories: 1) Corporate Loans; 2) Commercial Loans; 3) Life Insurance Settlements and 4) Equity Investments.

*Corporate Loans*

Beginning in June 2007, the Company began investing in middle market syndicated loans. Our investment strategy is to build a diverse portfolio of corporate loans ("Corporate Loans") to middle market companies (the "Corporate Loan Strategy"). Given the size of the Corporate Loan market, we believe that the Corporate Loan Strategy will allow us to increase our asset base significantly, assuming the Company can obtain adequate financing. As of June 30, 2012, the Company had assets with fair value aggregating $6,991,494 invested as part of our Corporate Loan Strategy.

To pursue our Corporate Loan Strategy, we engaged an adviser, Velocity Capital Advisors, LLC ("Velocity" or "VCA"), which was responsible for recommending to us for investment and, thereafter, recommending action, with respect to Corporate Loans. Our stockholders approved an Investment Management and Advisory Agreement ("Advisory Agreement") pursuant to which Velocity would act as our adviser with respect to the Corporate Loan Strategy on March 18, 2008 and on December 10, 2009 our stockholders approved an amendment to the Advisory Agreement. On June 2, 2010, an additional amendment to the Advisory Agreement was approved by our stockholders.

The Advisory Agreement provided for advisory fees payable to Velocity, which were comprised of (a) a base fee of 1.5% per annum, calculated quarterly, of the value of the Company's corporate loan portfolio; (b) an income-based fee of 5% per annum, calculated quarterly, computed on interest and dividends earned from the Company's Corporate Loan portfolio and (c) a capital gains fee of 17.5% based on capital gains generated from the Company's Corporate Loan portfolio. Ameritrans has a formal Investment Committee, comprised of both internal management and disinterested directors, that reviews all potential investments and makes the final decision for each investment and the continuation of such investment. As such, Velocity provided only recommendations and advice and had no management authority in any of the Company's investment decisions.

On December 10, 2011 the Advisory Agreement expired and our management has been responsible for the investment portfolio.

The Company defines the middle market as comprised of companies with earnings before interest, taxes and depreciation and amortization ("EBITDA") of between $10 million and $100 million. The Company believes many opportunities exist to provide loans to companies of this size, due to:

- The large size of the market,

- The high level of historical acquisition activity in this sector of the market,

- The current dislocation of banks and other traditional lenders that provide capital to middle market companies,

- The significant amount of private equity that has been raised to invest explicitly in middle market companies, and

- The annual senior secured loan volume estimated to be over $30 billion.

Ameritrans invests primarily in senior loans of middle market companies which, because of their priority in a company's capital structure, we expect will have lower default rates and higher rates of recovery of principal if a default does occur. Our Corporate Loan Strategy primarily targets companies that have strong historical cash flows, strong collateral coverage, equity sponsorship, experienced management teams and identifiable and defendable market positions. The Corporate Loan Strategy focuses on average investments on the part of the Company of between $1 million and $3 million, with an objective of building a portfolio of Corporate Loans with significant diversity across both issuers and industries.

We expect that the investments made as part of the Corporate Loan Strategy will generate current income, capital appreciation and fee income related to the origination and investment management of such investments. Growing our portfolio of Corporate Loan assets will require additional capital and the use of leverage to carry out this plan.

10

*Commercial Loans*

We began making loans to diversified small businesses ("Commercial Loans") primarily in the New York City metropolitan area in 1985. Until we commenced the implementation of its Corporate Loan Strategy, we had been increasing this portfolio on a selective basis, with a concentration on loans to operators of restaurants, laundromats, commercial construction, broadcasting telecommunications and other diversified industries. Many of our commercial loans are secured by real estate mortgages which are primarily first mortgages on various properties. At June 30, 2012, the fair value of our Commercial Loans was $5,228,247.

Our Commercial Loans primarily finance either the purchase of the equipment and related assets necessary to open a new business or the purchase or improvement of an existing business. We generally hold these loans to maturity, although from time to time we sell participation interests in our loans to share risk, or purchase participation interests in loans originated by other finance companies. We generally obtain interest rates on our Commercial Loans that are higher than can be obtained on Corporate Loans. We believe that the higher yield on Commercial Loans compensates for their higher risk of default relative to other investment categories and that we will benefit from the diversification of our portfolio. Interest rates on currently outstanding Commercial Loans range from 4.8% to 12.0%, with a weighted average of 10.7% (6.5% on performing loans).

SBA Regulations set a ceiling on the interest rates that an SBIC may charge its borrowers. The maximum rate of interest that Elk was allowed to charge its borrowers for loans originated during the year ended June 30, 2012 was 19.0%.

*Life Settlement Contracts*

In September, 2006, we entered into a joint venture agreement with an unaffiliated entity (the "Joint Venture") to purchase previously issued life insurance policies owned by unrelated individuals. Subsequently, after a series of events involving charges against the manager of the Joint Venture for securities law violations and a court order freezing the assets of the manager, including the Joint Venture, on April 14, 2009, a receiver was appointed (the "Receiver") to operate the Joint Venture and to administer the assets of the Joint Venture and other entities with which the manager of the Joint Venture was involved (the "Receivership Estate"). Following discussions with the Receiver, in December 2009, we negotiated an agreement, which, among other items, granted us the right to purchase the policies, subject to certain terms and conditions, including, but not limited to our agreement to pay the Receivership Estate 20% of all recoveries until the Company has recouped $2.1 million, plus the amount of any premiums paid following the date of the Purchase Agreement and 50% of all recoveries above such amount.

After a review of the current financing and regulatory environment, and other opportunities to make loans and investments, we decided to exit this line of business and plan to make no new investments in life insurance settlement policies other than the continued payment of premiums on existing investments.

As of June 30, 2012, the fair value of our life settlement portfolio was $3,204,001, which represents our estimate of their fair value based upon various factors including a discounted cash flow analysis of anticipated life expectancies, future premium payments and anticipated death benefits related to four (4) life insurance policies with an aggregate face value of $17,250,000. In August 2011, we were notified that one of the insureds included in a life settlement policy in our portfolio had passed away. Accordingly, we received approximately $320,000 from the proceeds of such policy, net of 20% that was paid to the Receiver from whom we acquired the policy.

*Equity Investments*

Ameritrans, to a limited extent, makes equity investments. These investments may be independent or incidental to our other lines of business. The fair value of the equity securities in Ameritrans' investment portfolio at June 30, 2012 aggregated $1,078,864. Elk may make additional equity investments. However, under SBA rules, unless necessary to protect a prior investment of Elk that is at risk, equity investments shall not exceed 20% of Elk's total assets.

11

The following table shows our portfolio by business category at June 30, 2012 and June 30, 2011:

| Business Category | June 30, 2012 | | | June 30, 2011 | | |
|---|---|---|---|---|---|---|
| | Cost | Fair Value | % (1) | Cost | Fair Value | % (1) |
| Commercial Loans | $ 5,857,873 | $ 5,228,247 | 31.7% | $ 6,745,797 | $ 6,244,815 | 26.1% |
| Corporate Loans | 10,668,191 | 6,991,494 | 42.4% | 16,023,064 | 14,281,285 | 59.7% |
| Life Settlements | 4,573,290 | 3,204,001 | 19.4% | 3,681,632 | 2,408,000 | 10.1% |
| Equity Securities | 1,302,027 | 1,078,864 | 6.5% | 1,378,127 | 987,635 | 4.1% |
| Total | $ 22,401,381 | $ 16,502,606 | 100.0% | $ 27,828,620 | $ 23,921,735 | 100.0% |

(1)　Represents percentage of total portfolio at fair value.

The Company's total investments at fair value, as estimated by management and approved by the board of directors, approximated 99% of total assets and June 30, 2012 and 96% of total assets at June 30, 2011.

### Valuation details

| | June 30, 2012 | | June 30, 2011 | |
|---|---|---|---|---|
| | Value | Percentage of Portfolio | Value | Percentage of Portfolio |
| Broadcasting/Telecommunications | $ 1,761,340 | 10.7% | $ 1,820,868 | 7.6% |
| Commercial Construction | 2,339,724 | 14.2% | 2,456,368 | 10.3% |
| Computer Software | - | - | 910,067 | 3.8% |
| Construction and Predevelopment | 1,050,000 | 6.4% | 1,300,494 | 5.4% |
| Direct Marketing | - | - | 1,312,500 | 5.5% |
| Debt Collection | 453,909 | 2.7% | 475,605 | 2.0% |
| Education | 719,308 | 4.3% | 829,824 | 3.5% |
| Film Distribution | - | - | 928,000 | 3.9% |
| Food and Candy Manufacturing | 2,693,471 | 16.3% | 2,581,886 | 10.8% |
| Gaming | 1,001,250 | 6.1% | - | - |
| Life Insurance Settlement Contracts | 3,204,001 | 19.4% | 2,408,000 | 10.1% |
| Manufacturing | 1,165,407 | 7.1% | 2,533,545 | 10.6% |
| Printing/Publishing | 940,722 | 5.7% | 1,344,691 | 5.6% |
| Restaurant/Food Service | 1,052,162 | 6.4% | 3,215,663 | 13.5% |
| Supermarkets | - | - | 1,500,000 | 6.3% |
| Other industries less than 1% | 121,312 | 0.7% | 304,224 | 1.1% |
| TOTAL | $ 16,502,606 | 100.00% | $ 23,921,735 | 100.00% |

### SOURCES OF FUNDS

We fund our operations from a variety of sources.  Historically, Elk has been authorized to borrow money and issue debentures, promissory notes and other obligations, subject to SBA regulatory limitations. Other than the subordinated debentures issued to the SBA, aggregating $21,175,000 with fixed rates of interest plus user fees, which results in rates ranging from 4.11% to 5.54%, Elk has, to date, borrowed funds only from banks. Elk had a line of credit with one bank that had been paid in full in August 2010 and which expired on July 6, 2011.

In December 2009 and March 2010, we issued 8.75% notes in an aggregate principal amount of $3,000,000. In January 2011, the interest rate was adjusted to 12% and the maturity was extended to May 2012 for which the holders of these notes were paid a fee of 1%. Our obligations under these notes were satisfied on March 7, 2012. See Note 5 of Notes to Consolidated Financial Statements.

Also, in January 2011, we issued a Senior Secured Note in the principal amount of $1,500,000 with an interest rate of 12%, maturing on February 1, 2012. Our obligations under this note were satisfied on March 16, 2012. See Note 5 of Notes to Consolidated Financial Statements.

As interest rates fluctuate, our cost of funds may also fluctuate, while the rates on our outstanding loans to a significant number of our borrowers remain fixed. This may contribute to fluctuations in our financial performance.   To partially mitigate this volatility, from time to time we have purchased interest rate swaps.

Pursuant to an agreement with SBA (the "SBA Agreement"), Elk agreed to limit its aggregate indebtedness based on a computation of a borrowing base (the "Borrowing Base") each quarter. The borrowing base computation was calculated to determine that the total amount of debt due on senior bank debt and SBA debentures did not exceed approximately 80% of the value of performing loans and investments in Elk's portfolio. Loans that are more than 90 days in arrears are valued at a lower amount in computing the Borrowing Base. Inasmuch as Elk has paid off all of its bank debt, the SBA has agreed to waive its Borrowing Base requirements and, accordingly, Elk is no longer required to submit a Borrowing Base computation to the SBA. In connection with the SBA Agreement, Elk has also entered into an intercreditor agreement (the "Intercreditor Agreement") and a custodian agreement (the "Custodian Agreement") with its banks and the SBA. Pursuant to the Custodian Agreement, the banks and the SBA appointed Israel Discount Bank of New York as the custodian to hold certain notes, security agreements, financing statements, assignments of financing statements, and other instruments and securities as part of the collateral for Elk's indebtedness to the banks and the SBA. The Intercreditor Agreement sets forth the respective rights and priorities of the banks and the SBA with respect to the repayment of indebtedness to the banks and the SBA and as to their respective interests in the collateral. Pursuant to the Intercreditor Agreement, the banks consented to the grant by Elk to the SBA of a security interest in the collateral, which security interest ranks junior in priority to the security interests of the banks. The Intercreditor Agreement provides Elk with a right of substitution, permitting other new bank lenders to become parties to the Intercreditor Agreement.

### Alternative Sources of Financing

On April 12, 2011, we entered into the Purchase Agreement with Renova. Subject to the terms and conditions set forth in the Purchase Agreement, we agreed to issue and sell to Renova, and Renova agreed to purchase, (i) $25,000,000 of our Common Stock at the Applicable Per Share Purchase Price, at an initial closing to be held no later than November 30, 2011, following satisfaction or waiver of the conditions to such issuance and (ii) between an additional $35,000,000 to $40,000,000 of additional Common Stock (depending upon the timing of such purchases) at the Applicable Per Share Purchase Price at subsequent closings to be held from time to time, subject to satisfaction of the conditions to such issuances, between the date of the initial closing and the second anniversary of the initial closing, based upon the terms and conditions set forth in the Purchase Agreement.

Requisite stockholder approval of the transactions contemplated by the Purchase Agreement was obtained at a special meeting of stockholders held on June 24, 2011. Consummation of the Initial Closing was subject to certain additional customary closing conditions, as well as the approval of the SBA of the indirect change of ownership and control of the Company's wholly-owned subsidiary, Elk, which is a SBA licensee.

On September 19, 2011, we received a letter from the SBA describing certain concerns related to its change of ownership and control application and requesting certain additional pieces of information. In particular, the SBA informed us that the proposed transaction, as then structured, would not satisfy applicable SBA management-ownership diversity requirements. While we believed that the transaction satisfied all SBA regulatory requirements, the SBA did not concur with that view.

As of November 16, 2011, the Company and Renova terminated the Purchase Agreement, although the Company continued to engage in discussions with Renova regarding potential modifications to the terms of the transaction contemplated by the Purchase Agreement in order to satisfy the SBA interpretation of its management-ownership diversity regulations. As noted, below, in Note 12 of Notes to Consolidated Financial Statements, Commitments and Contingencies – Litigation, we presented a restructured transaction with Renova, specifically drawn to address SBA's stated concerns. On December 22, 2012, SBA informed Elk that it would not approve the transaction. In light of the SBA's continued belief that the Renova Transaction, as proposed to be modified, would not satisfy such regulations, on January 19, 2012, Renova advised us that Renova was ceasing its efforts to pursue a transaction with us and Elk. As a result, Renova and we are no longer engaging in discussions regarding a potential financing transaction.

As also discussed in Note 12, in February 2012, we presented a potential transaction with another party, which was rejected by SBA.

The Company is actively pursuing alternative sources of financing. There is no assurance that any alternative sources of financing will be available, especially in light of Elk's current status with respect to the SBA and the status of the SBA subordinated debentures, or what the terms of any alternative transaction would be.

In connection with the anticipated termination of the Advisory Agreement, as contemplated by the Purchase Agreement, we canceled a warrant that was issued to Velocity on December 10, 2009. Such warrant gave Velocity the right to purchase 100,000 shares of our Common Stock at an initial exercise price of $1.25, subject to adjustment, for five years from the date of issuance.

### Credit and Investment Process

For our Corporate Loan investments, we employ a due diligence intensive investment strategy.  By focusing on the operating components of revenue and cash flow, we, alone or with our external advisors, develop underwriting cases, stress models and event-specific case scenarios for each company analyzed.

13

We focus on lending and investing opportunities in:

- companies with EBITDA of $10 million to $100 million;

- companies with financing needs of $1 million to $150 million;

- companies owned by well-known equity sponsors;

- non-sponsored companies with successful management; and

- high-yield bonds and broadly syndicated loans.

We expect to source investment opportunities from:

- our investment advisors, if any;

- private equity sponsors;

- regional investment banks for non-sponsored companies;

- other middle market lenders with whom we can "club" loans;

- regional business brokers; and

- other finance companies, BDCs and SBICs.

In our experience, good credit judgment is based on a thorough understanding of the factors which determine a company's performance. Our analysis begins with an understanding of the fundamentals of the industry in which a company operates, including the current economic environment and the outlook for the industry. We also focus on the borrower's relative position within the industry and its historical ability to weather economic cycles. Other key qualitative factors include the experience and depth of the management team and the financial sponsor.

Our management team is involved in due diligence and analysis prior to the formal credit approval process.

An Investment Committee reviews each investment prior to commitment and monitors each investment's performance throughout its holding period and regularly reports its findings and recommendations to the board of directors.

**Credit Monitoring**

Our management team has significant experience monitoring portfolios of credit-related investments.  Most of our investments will not be liquid and, therefore, we must be prepared to take action if potential issues arise, so that we can work closely with the portfolio company management team or private equity sponsor, if applicable, to take any necessary remedial action quickly.

14

In order to assist us in early detection of issues with portfolio companies, we perform regular and ongoing analyses of each portfolio company, its business, its products and its financial performance. These analyses may include:

- reviewing financial statements with comparisons to prior year financial statements, as well as the current budget, including key financial ratios such as debt/EBITDA, margins and fixed charge coverage ratios;

- independently computing and verifying compliance with financial covenants;

- discussing operating performance with company management and, if applicable, the private equity sponsor;

- determining if current performance could cause future financial covenant default;

- discussing prospects with the private equity sponsor, if applicable;

- determining if a portfolio company should be added to our "watch list" (companies to be reviewed in more depth); and

- reviewing original investment assumptions.

## COMPETITION

Banks, credit unions, other finance companies, and other private lenders compete with us in the origination of Corporate and Commercial Loans. A number of entities compete with us to make the types of investments that we make in middle market companies. We compete with other business development companies, public and private funds, commercial and investment banks, commercial finance companies, insurance companies, high yield investors, hedge funds, and, to the extent they provide an alternative form of financing, private equity funds. Many of our competitors are substantially larger and have considerably greater financial resources than we do. Some competitors may have a lower cost of funds and access to funding sources that are not available to us. In addition, some of our competitors may have higher risk tolerances or different risk assessments, which could allow them to consider a wider variety of investments and establish more relationships than we. Furthermore, many of our competitors are not subject to the regulatory restrictions that the Investment Company Act imposes on us as a BDC and the 1958 Act imposes on us as an SBIC.

## EMPLOYEES

As of June 30, 2012, we employed a total of four (4) employees. We augment our staff utilizing part-time consultants, as needed, including our chief financial officer and controller.

## INVESTMENT POLICIES

### Ameritrans and Elk Investment Policies

The investment policies described below are the fundamental policies of Ameritrans and Elk (together the "Company"). Fundamental policies, that is, policies that cannot be changed without the approval of the holders of a majority of Ameritrans' outstanding voting securities, as defined under the 1940 Act, are described below. A "majority of Ameritrans' outstanding voting securities" as defined under the 1940 Act means the lesser of (i) 67% of the shares represented at a meeting at which more than 50% of the outstanding shares are represented or (ii) more than 50% of the outstanding shares. Because Ameritrans is the only stockholder of Elk, we have agreed with the SEC that Elk's fundamental investment policies will be changed only by the vote of the Ameritrans stockholders.

1. We may invest up to 100% of our assets in restricted securities.

2. We do not intend to engage in the purchase and sale of real estate. However, we may elect to purchase and sell real estate in order to protect any of our prior investments which we consider at risk.

3. We may engage in short sales of securities in order to hedge securities held in our portfolio.

4. We may write or buy put or call options in order to hedge a current security's position or to hedge our portfolio in general.

5. We may engage in the purchase or sale of commodities or commodity contracts, including futures contracts (i) where necessary in working out distressed loan or investment situations and (ii) to otherwise hedge all or a portion of the securities positions in our portfolio.

**CERTAIN FEDERAL INCOME TAX CONSIDERATIONS**

The following discussion is a general summary of the federal income tax principles applicable to Ameritrans, based on the currently existing provisions of the Internal Revenue Code and the regulations thereunder. This summary does not purport to be a complete description of the tax considerations applicable to Ameritrans or to the holders of its Common Stock. These principles, in general, also apply to Elk, because the sole direct stockholder of Elk is Ameritrans.

Ameritrans has elected to be treated as a "regulated investment company" (a "RIC") under Section 851 of the Internal Revenue Code. Elk has been treated as a RIC since 1984. A regulated investment company may deduct, for federal income tax purposes, most dividends paid to stockholders, thereby avoiding federal income taxation at the corporate level.

**TAXATION OF REGULATED INVESTMENT COMPANIES**

In order for us to qualify as a RIC for a given fiscal year, we must meet each of the following conditions for that fiscal year:

(a)　We must be registered as an investment company under the 1940 Act at all times during the year.

(b)　At least 90% of our gross income for the year must be derived from interest, gains on the sale or other disposition of stock or other securities, dividends and payment with respect to securities loans.

(c)　Less than 30% of our gross income must be derived from the sale or other disposition of securities held for less than three months.

(d)　At the close of each quarter, at least 50% of the value of our total assets must be represented by cash, cash items (including receivables), securities of other RICs and securities of other issuers, except that the investment in a single issuer of securities may not exceed 5% of the value of the RIC's assets, or 10% of the outstanding voting securities of the issuer.

(e)　At the close of each quarter, and with the exception of government securities or securities of other RICs, no more than 25% of the value of our assets may be made up of investments in the securities of a single issuer or in the securities of two or more issuers controlled by the RIC and engaged in the same or a related trade or business. However, if a non-RIC entity controlled by us subsequently sustains internally generated growth (as opposed to growth via acquisitions), the diversification requirement will not be violated even if the non-RIC subsidiary represents in excess of 25% of our assets.

(f)　We must distribute as dividends at least 90% of our investment company taxable income (as defined in Section 852 of the Internal Revenue Code), as well as 90% of the excess of our tax-exempt income over certain disallowed tax-exempt interest deductions. This treatment substantially eliminates the "double taxation" (i.e., taxation at both the corporate and stockholder levels) that generally results from the use of corporate investment vehicles. A RIC is, however, generally subject to federal income tax at regular corporate rates on undistributed investment company taxable income. No dividends on the Company's common stock were paid in each of the fiscal years ended June 30, 2012 and 2011, inasmuch as the Company has had no taxable income during such periods. Accordingly, the Company has maintained its status as a RIC.

In order to avoid the imposition of a non-deductible 4% excise tax on its undistributed income, a company is required, under Section 4982 of the Internal Revenue Code, to distribute within each calendar year at least 98% of its ordinary income for such calendar year and 98% of its capital gain net income (reduced by the RIC's net ordinary loss for the calendar year, but not below its net capital gain) for the one-year period ending on October 31 of such calendar year.

The tax benefits available to a qualified RIC are prospective, commencing with the fiscal year in which all the conditions listed above are met, and would not permit Ameritrans to avoid income tax at the corporate level on income earned during prior taxable years. If Ameritrans fails to qualify as a RIC for a given fiscal year, Ameritrans will not be entitled to a federal income tax deduction for dividends distributed, and amounts distributed as stockholder dividends by Ameritrans will therefore be subject to federal income tax at both the corporate level and the individual level.

16

Dividends distributed by Elk to Ameritrans will constitute ordinary income to Ameritrans to the extent derived from non-capital gain income of Elk, and will ordinarily constitute capital gain income to Ameritrans to the extent derived from capital gains of Elk. However, since Ameritrans is also a RIC, Ameritrans will, in general, not be subject to a corporate level tax on its income to the extent that it makes distributions to its stockholders. If Elk does not qualify as a RIC for any reason in any fiscal year, it will not be entitled to a federal income tax deduction for dividends distributed, and will instead be liable to pay corporate level tax on its earnings. Further, if Elk does not qualify as a RIC, such failure will cause Ameritrans to fail to qualify for RIC status as well, as long as Elk stock held by Ameritrans represents more than 25% of Ameritrans' assets. In such a case, Ameritrans will be taxed on dividends received from Elk, subject to the deduction for corporate dividends received, which is currently 70%. Thus, if Elk fails to qualify as a RIC for any reason, its earnings would be taxed at three levels: to Elk, in part to Ameritrans, and finally, when they are distributed by Ameritrans, to our stockholders.

As long as Ameritrans qualifies as a RIC, dividends distributed by Ameritrans to its stockholders out of current or accumulated earnings and profits constitute ordinary income to such stockholders to the extent derived from ordinary income and short-term capital gains of Ameritrans (such as interest from loans by Ameritrans). Any long-term capital gain dividends distributed by Ameritrans would constitute capital gain income to Ameritrans stockholders. To the extent Ameritrans makes distributions in excess of current and accumulated earnings and profits, these distributions are treated first as a tax-free return of capital to the stockholder, reducing the tax basis of the stockholder's stock by the amount of such distribution, but not below zero, with distributions in excess of the stockholder's basis taxable as capital gains if the stock is held as a capital asset.

## TAXATION OF SBICS

As a result of Elk's status as a licensed SBIC under the 1958 Act, Elk and its stockholders qualify for the following tax benefits:

(i)    Under Section 243 of the Internal Revenue Code, Elk may deduct 100% of the dividends received by it from domestic corporations in which it has made equity investments, regardless of whether such corporations are subsidiaries of Elk (in contrast to the generally applicable 70% deduction under the Code).

(ii)   Under Section 1243 of the Internal Revenue Code, losses sustained on Elk's investments in the convertible debentures, or stock derived from convertible debentures, of Small Business Concerns are treated as ordinary losses rather than capital losses to Elk.

## STATE AND OTHER TAXES

Ameritrans is also subject to state and local taxation. The state, local and foreign tax treatment may not conform to the federal tax treatment discussed above. Stockholders should consult with their own tax advisors with respect to the state and local tax considerations pertaining to Ameritrans.

## THE INVESTMENT COMPANY ACT OF 1940

Ameritrans and Elk are closed-end, non-diversified management investment companies that have elected to be treated as BDCs and, as such, are subject to regulation under the 1940 Act. The 1940 Act contains prohibitions and restrictions relating to transactions between investment companies and their affiliates, principal underwriters and affiliates of those affiliates or underwriters. In addition, the 1940 Act provides that a BDC may not change the nature of its business so as to cease to be, or to withdraw its election as, a BDC unless so authorized by the vote of a "majority of its outstanding voting securities," as defined under the 1940 Act.

BDCs are permitted, under specified conditions, to issue multiple classes of indebtedness and one class of stock (collectively, "senior securities," as defined under the 1940 Act) senior to shares of Common Stock if the asset coverage of such indebtedness and all senior securities is at least 200% immediately after each such issuance. In addition, while senior securities are outstanding, provision must be made to prohibit the declaration of any dividend or other distribution to stockholders (except stock dividends) or the repurchase of such securities or shares unless they meet the applicable asset coverage ratios at the time of the declaration of the dividend or distribution or repurchase. Pursuant to an exemptive order issued by the SEC, subordinated SBA debentures, preferred stock guaranteed by or issued to the SBA by Elk, and Elk bank borrowings are exempt from the asset coverage requirements of the 1940 Act. Additionally, this exemptive order applies to any future Elk SBIC subsidiaries. Ameritrans may, and currently does, when consolidating, exclude Elk borrowings for purposes of the asset coverage rules. The exemptive order also grants certain relief from the asset coverage ratios applicable to BDCs. Ameritrans and Elk must individually comply with Section 18 and Section 61(a) of the 1940 Act. So long as Ameritrans and Elk individually comply with Section 18, for purposes of consolidation, any borrowings of Elk will not be considered senior securities for asset coverage purposes and as such, will not affect Ameritrans' asset coverage ratio.

17

Under the 1940 Act, a BDC may not acquire any asset other than Qualifying Assets unless, at the time the acquisition is made, certain Qualifying Assets represent at least 70% of the value of our total assets. The principal categories of Qualifying Assets relevant to our proposed business are the following:

(1)  Securities purchased in transactions not involving a public offering from the issuer of such securities, which issuer is an eligible portfolio company. An "eligible portfolio company" is defined in the 1940 Act as any issuer which:

    (a)  is organized under the laws of, and has its principal place of business in, the United States;

    (b)  is not an investment company other than an SBIC wholly-owned by the BDC; and

    (c)  satisfies one or more of the following requirements:

        (i)  the issuer does not have a class of securities with respect to which a broker or dealer may extend margin credit;

        (ii)  the issuer is controlled by a BDC and the BDC has an affiliated person serving as a director of issuer;

        (iii)  the issuer has total assets of not more than $4,000,000 and capital and surplus (stockholders' equity less retained earnings) of not less than $2,000,000, or such other amounts as the SEC may establish by rule or regulation;

        (iv)  the issuer meets such requirements as the SEC may establish from time to time by rule or regulation; or

        (v)  does not have any class of securities listed on a national securities exchange; or

        (vi)  has a class of securities listed on a national securities exchange, but has an aggregate market value of outstanding voting and non-voting common equity of less than $250 million.

(2)  Securities for which there is no public market and which are purchased in transactions not involving a public offering from the issuer of such securities where the issuer is an eligible portfolio company which is controlled by the BDC.

(3)  Securities received in exchange for or distributed on or with respect to securities described in (1) or (2) above, or pursuant to the exercise of options, warrants or rights relating to such securities.

(4)  Cash, cash items, government securities, or high quality debt securities maturing in one year or less from the time of investment.

**Significant Managerial Assistance**

A BDC must be organized and have its principal place of business in the United States and must be operated for the purpose of making investments in the types of securities described above. However, to count portfolio securities as Qualifying Assets for the purpose of the 70% test discussed above, the BDC must either control the issuer of the securities or must offer to make available to the issuer of the securities (other than small and solvent companies described above) significant managerial assistance; except that, where the BDC purchases such securities in conjunction with one or more other persons acting together, one of the other persons in the group may make available such managerial assistance. Making available significant managerial assistance means, among other things, any arrangement whereby the BDC, through its directors, officers or employees, offers to provide, and, if accepted, does so provide, significant guidance and counsel concerning the management, operations or business objectives and policies of a portfolio company through monitoring of portfolio company operations, selective participation in board and management meetings, consulting with and advising a portfolio company's officers or other organizational or financial guidance. As provided in the 1940 Act, a loan made by an SBIC is considered the "offering of managerial assistance."

18

**Senior Securities; Coverage Ratio**

We are permitted, under specified conditions, to issue multiple classes of indebtedness and one class of stock senior to our common stock if our asset coverage, as defined in the 1940 Act, is at least equal to 200% immediately after each such issuance. Debentures payable to the SBA by Elk are excluded for purposes of calculating the Company's asset coverage pursuant to an exemptive order granted by the SEC which permits us to exclude indebtedness incurred in connection with the Small Business Investment Company program. In addition, with respect to certain types of senior securities, we must make provisions to prohibit any dividend distribution to our stockholders or the repurchase of certain of our securities, unless we meet the applicable asset coverage ratios at the time of the dividend distribution or repurchase. We may also borrow amounts up to 5% of the value of our total assets for temporary purposes. For a discussion of the risks associated with the resulting leverage, see "Item 1A. Risk Factors—Risks Related to Our Business—The debt we incur could increase the risk of investing in our Company."

**Code of Ethics**

We adopted and maintain a code of ethics pursuant to Rule 17j-1 under the 1940 Act that establishes procedures for personal investments and restricts certain personal securities transactions. Personnel subject to the code may invest in securities for their personal investment accounts, including securities that may be purchased or held by us, so long as such investments are made in accordance with the code's requirements. We may be prohibited under the 1940 Act from conducting certain transactions with our affiliates without the prior approval of our directors who are not interested persons and, in some cases, the prior approval of the SEC. A copy of the code of ethics is available on the Corporate Governance section of our website at *www.ameritranscapital.com.*

**Privacy Principles**

We are committed to maintaining the privacy of our stockholders and safeguarding their non-public personal information. The following information is provided to help you understand what personal information we collect, how we protect that information and why, in certain cases, we may share information with select other parties.

Generally, we do not receive any non-public personal information relating to our stockholders, although some non-public personal information of our stockholders may become available to us. We do not disclose any non-public personal information about our stockholders or former stockholders to anyone, except as is necessary to service stockholder accounts, such as to a transfer agent, or as otherwise permitted or required by law.

We restrict access to non-public personal information about our stockholders to our employees with a legitimate business need for the information. We maintain physical, electronic and procedural safeguards designed to protect the non-public personal information of our stockholders.

**Proxy Voting Policy and Procedures**

Although most of the securities we hold are not voting securities, some of our investments may entitle us to vote proxies. We vote proxies relating to our portfolio securities in the best interest of our stockholders. We review on a case-by-case basis each proposal submitted to a stockholder vote to determine its impact on the portfolio securities held by us. Although we generally vote against proposals that we believe may have a negative impact on our portfolio securities, we may vote for such a proposal if we believe there exists a compelling long-term reason to do so.

Our proxy voting decisions are made by our Investment Committee, which is responsible for monitoring each of our investments. To ensure that our vote is not the product of a conflict of interest, we require that (1) anyone involved in the decision making process disclose to our Chief Compliance Officer any potential conflict that he or she is aware of and any contact that he or she has had with any interested party regarding a proxy vote; and (2) employees involved in the decision making process or vote administration are prohibited from revealing how we intend to vote on a proposal to reduce any attempted influence from interested parties.

**Other**

We are periodically examined by the SEC for compliance with the 1940 Act. Elk is examined, periodically, for compliance with SBA regulations.

We do not "concentrate" our investments, that is, invest 25% or more of our assets in any particular industry (determined at the time of investment).

We are required to provide and maintain a bond issued by a reputable fidelity insurance company to protect us against larceny and embezzlement. Furthermore, as a BDC, we are prohibited from indemnifying any director or officer against any liability to our stockholders arising from willful misfeasance, bad faith, gross negligence or reckless disregard of the duties involved in the conduct of such person's office.

We are required to adopt and implement written policies and procedures reasonably designed to prevent violation of the federal securities laws and to review these policies and procedures annually for their adequacy and the effectiveness of their implementation. We have designated the Chief Compliance Officer who is responsible for administering these policies and procedures.

**THE SMALL BUSINESS INVESTMENT ACT OF 1958**

The 1958 Act authorizes the organization of SBICs as vehicles for providing equity capital, long-term financing and management assistance to Small Business Concerns.

For the Small Business Investment Company (SBIC) program, an applicant must meet one of the following standards (A) for Business Loans, generally, an applicant business concern must satisfy two criteria:  (1) the size of the applicant alone (without affiliates) must not exceed the size standard designated for the industry in which the applicant is primarily engaged; and (2) the size of the applicant combined with its affiliates must not exceed the size standard designated for either the primary industry of the applicant alone or the primary industry of the applicant and its affiliates, whichever is higher, or, (B) the tangible net worth of the applicant, including its affiliates, may not exceed $18 million, and the average net income after federal income taxes (excluding any carry-over losses) of the applicant, including its affiliates, for the preceding two completed fiscal years not in excess of $6 million.

A Small Business Concern, as defined in the 1958 Act and the SBA Regulations, is a business that is independently owned and operated and which is not dominant in its field of operation. In addition, at the end of each fiscal year, at least 20% of the total amount of loans made since April 25, 1994 by each SBIC must be made to a subclass of Small Business Concerns that (i) have a net worth, together with any affiliates, of $6 million or less and average annual net income after U.S. federal income taxes for the preceding two (2) years of $2 million or less (average annual net income is computed without the benefit of any carryover loss), or (ii) satisfy alternative criteria under SBA Regulations that focus on the industry in which the business is engaged and the number of persons employed by the business or its gross revenues. SBA Regulations also prohibit an SBIC from providing funds to a Small Business Concern for certain purposes, such as relending and reinvestment.

Under current SBA Regulations and subject to local usury laws, the maximum rate of interest that Elk may charge may not exceed the higher of (i) 19% or (ii) a rate calculated with reference to Elk's weighted average cost of qualified borrowings, as determined under SBA Regulations or the SBA's current debenture interest rate.  The current maximum rate of interest permitted on loans originated by Elk is 19%.  At June 30, 2012, Elk's outstanding loans receivable had a weighted average rate of interest of 10.4%.  SBA Regulations also require that each loan originated by SBICs have a term of between one year and twenty years.

The SBA restricts the ability of SBICs to repurchase their capital stock, to retire their subordinated SBA debentures and to lend money to their officers, directors and employees or invest in affiliates thereof.  The SBA also prohibits, without prior SBA approval, a "change of control" or transfers which would result in any person (or group of persons acting in concert) owning 10% or more of any class of capital stock of an SBIC.  A "change of control" is any event which would result in the transfer of the power, direct or indirect, to direct the management and policies of an SBIC, whether through ownership, contractual arrangements or otherwise. Because Ameritrans owns 100% of Elk, transfers of more than 10% of any class of voting securities of Ameritrans may require prior written SBA approval.

Under SBA Regulations, without prior SBA approval, loans by licensees with outstanding SBA leverage to any single Small Business Concern may not exceed 20% of an SBIC's Leverageable Capital (as defined by applicable SBA regulations).  As of June 30, 2012, Elk's Leverageable Capital was approximately $10.6 million. Under the terms of the SBA Agreement, however, Elk is authorized to make loans to Disadvantaged Concerns in amounts not exceeding 20% of its respective Leverageable Capital.

SBICs must invest funds that are not being used to make loans in investments permitted under SBA Regulations.  These permitted investments include direct obligations of, or obligations guaranteed as to principal and interest by, the government of the United States with a term of 15 months or less and deposits maturing in one year or less issued by an institution insured by the FDIC.  SBICs may purchase voting securities of Small Business Concerns in accordance with SBA Regulations.  SBA Regulations prohibit SBICs from controlling a Small Business Concern except where necessary to protect an investment. SBA Regulations presume control when SBICs purchase (i) 50% or more of the voting securities of a Small Business Concern if the Small Business Concern has less than 50 stockholders or (ii) more than 20% (and in certain situations up to 25%) of the voting securities of a Small Business Concern if the Small Business Concern has 50 or more stockholders.

Effective February 22, 2012, Elk was referred to the SBA's Office of Liquidation.

## COMMON STOCK DIVIDEND REINVESTMENT PLAN

We have authorized a dividend reinvestment plan ("DRIP") that provides for reinvestment of our distributions on behalf of our common stockholders, unless a stockholder elects to receive cash, as allowed in the plan.  As a result, if our Board of Directors authorizes, and we declare, a cash dividend, then our stockholders who have not "opted out" of our dividend reinvestment plan will have their cash dividends automatically reinvested in additional shares of our Common Stock, rather than receiving the cash. Our DRIP does not apply to our Preferred Stock.

No action is required on the part of a registered common stockholder to have their cash dividend reinvested in shares of our common stock. A registered stockholder may elect to receive an entire dividend in cash by notifying Continental Stock Transfer & Trust Company, the plan administrator and our transfer agent and registrar, in writing so that such notice is received by the plan administrator no later than the record date for dividends to stockholders. The plan administrator will set up an account for shares acquired through the plan for each stockholder who has not elected to receive dividends in cash and hold such shares in non-certificated form. Upon request by a stockholder participating in the plan, received in writing not less than ten days prior to the record date, the plan administrator will, instead of crediting shares to the participant's account, issue a certificate registered in the participant's name for the number of whole shares of our common stock and a check for any fractional share.

Those stockholders whose shares are held by a broker or other financial intermediary may receive dividends in cash by notifying their broker or other financial intermediary of their election.

We intend to use primarily newly issued shares to implement the plan, whether our shares are trading at a premium or at a discount to NAV. However, we reserve the right to purchase shares in the open market in connection with our implementation of the plan. The number of shares to be issued to a stockholder is determined by dividing the total dollar amount of the dividend payable to such stockholder by the market price per share of our common stock at the close of regular trading on The NASDAQ Capital Market on the dividend payment date. Market price per share on that date will be the closing price for such shares on The NASDAQ Capital Market or, if no sale is reported for such day, at the average of their reported bid and asked prices. The number of shares of our common stock to be outstanding after giving effect to payment of the dividend cannot be established until the value per share at which additional shares will be issued has been determined and elections of our stockholders have been tabulated.

## ITEM 1A. RISK FACTORS

## RISK FACTORS THAT MAY AFFECT FUTURE RESULTS

*You should carefully consider these risk factors, together with all of the other information included in this Annual Report on Form 10-K, including our consolidated financial statements and the related notes thereto before making a decision to purchase our Common Stock and Preferred Stock.  The risks set out below are not the only risks we face. Additional risks and uncertainties not currently known to us or that we currently deem to be immaterial also may materially adversely affect our business, financial condition and/or operating results.  If any of the following events occur, our business, financial condition and results of operations could be materially adversely affected. In such case, our net asset value and the trading price of our Common Stock and Preferred Stock could decline, and you may lose all or part of your investment.*

### There is doubt about our ability to continue as a going concern.

We have incurred operating losses and negative operating cash flow and future losses are anticipated.  The SBA has referred Elk to the Office of Liquidation and has declared Elk's total indebtedness to the SBA to be immediately due and payable. Further, it may institute legal proceedings seeking the appointment of the SBA as Elk's receiver and force Elk to liquidate. As such, our ability to pay our indebtedness and/or raise capital has been severely adversely impacted.   Management has determined that significant additional sources of capital will likely be required for us to continue operating through the end of our next fiscal year and beyond and we are actively pursuing financing and alternative transactions to strengthen our capitalization. Our plan of obtaining equity financing may not be successful, especially so long as Elk remains in the Office of Liquidation.  Our plan of obtaining equity financing, even if successful, may not result in funds sufficient to maintain and expand our business and/or satisfy the capital requirements of the SBA. In addition, restrictions imposed by the SBA may limit our ability to attract potential investors and/or consummate a financing or other transaction.  These factors raise doubt about our ability to continue as a going concern.  Realization of assets is dependent upon our continued operations, which in turn is dependent upon management's plans to meet its financing requirements and the success of its future operations. Our ability to continue as a going concern is dependent on securing additional financing and on improving our profitability and cash flow. There can be no assurance that we will be able to obtain financing or improve profitability and cash flow or that doing so will enable us to continue as a going concern.

**The delisting of our securities from the Nasdaq Capital Market may adversely affect the market price and liquidity of our Common Stock and Preferred Stock, our ability to raise additional capital and our corporate governance.**

Effective May 3, 2012 our Common Stock and Preferred Stock were delisted from the Nasdaq Capital Market and began trading in the over-the-counter market.  Delisting of our securities from the Nasdaq Capital Market could materially and adversely affect the value and liquidity of our Common Stock and Preferred Stock.  In the absence of an active trading market for our securities, you may be unable to buy or sell your Common Stock or Preferred Stock on short notice, if at all, and the sale of a large number of shares of our Common Stock or Preferred Stock could result in a significant decrease in the market price for our securities.  Delisting may also adversely affect our ability to raise additional capital, which is critical to the execution of our business strategy.

As a result of the delisting of our securities from the Nasdaq Capital Market, we are no longer subject to the rules of The Nasdaq Stock Market, including rules related to corporate governance matters such as the circumstances (including but not limited to certain issuances of our securities) in which shareholder approval is required, requirements regarding the independence of our directors and the existence of committees of our board of directors comprised of independent directors. Delisting could also have other negative results, including the potential loss of confidence by employees, the loss of institutional interest (if any) in our securities, and our inability to take advantage of certain exemptions available to listed securities under the Exchange Act and the 1940 Act.   We remain subject to corporate governance requirements applicable to BDCs under the 1940 Act, including, without limitation, the requirement that a majority of the board be disinterested directors as determined under the 1940 Act.

**Our securities are subject to "penny stock" rules which may further reduce the liquidity and market price for our Common Stock and Preferred Stock.**

Certain securities that are not listed on a national securities exchange, have a trading price below $5.00 and satisfy certain other requirements, such as our Common Stock and Preferred Stock, are subject to the SEC's "penny stock" rules.  Under the SEC's penny stock rules, among other things, broker-dealers may not sell a penny stock to, or effect the purchase of a penny stock by an investor (other than an accredited investor or an "established customer" as defined in Rule 15g-9), unless, prior to executing the transaction, the broker-deal has determined that transactions in penny stocks are suitable for the purchaser (and delivers a written statement of such determination to the purchaser), obtained the purchaser's written agreement to engage in the transaction, provided the purchaser with a written disclosure document regarding certain risks associated with investing in penny stocks and obtained written acknowledgement from the purchaser that the purchaser has receive the required disclosure documents.  Broker-dealers may find it difficult to execute transactions in our Common Stock and Preferred Stock as a result of the penny stock rules summarized above.  These requirements may further reduce the liquidity and trading price of our common stock.

**A failure on our part to maintain our status as a BDC would significantly reduce our operating flexibility.**

If we do not continue to qualify as a BDC, we might be regulated as a closed-end investment company under the 1940 Act, which would significantly decrease our operating flexibility.

**Our ability to grow depends on our ability to raise capital.**

We need to periodically access the capital markets and, historically, have participated in the SBA debenture program to raise cash to fund new investments.  We will not have access to additional SBA financing unless Elk is transferred out of the SBA's Office of Liquidation (and no assurance can be given that such transfer will occur in the near future or at all).  In addition, unfavorable economic conditions, our operating results and uncertainty regarding the continued viability of Elk as a licensed SBIC could increase our funding costs, limit our access to the capital markets or result in a decision by lenders not to extend credit to us. With certain exceptions, we are only allowed to borrow amounts such that our asset coverage, on a consolidated basis, as defined in the 1940 Act, equals at least 200% after such borrowing. The amount of leverage that we employ depends on our Board of Directors' assessment of market and other factors at the time of any proposed borrowing. We cannot assure you that we will be able to maintain our current, or obtain new, sources of financing on terms acceptable to us, if at all.

**The SBA's declaration of Elk's debentures to be immediately due and payable and Elk's transfer to the SBA's Office of Liquidation may materially and adversely affect our business and the value of our securities.**

As an SBIC we must comply with the rules and regulations of the SBA. At June 30, 2012, the aggregate amount of principal, interest and fees due under Elk's outstanding debentures payable to the SBA was $21,517,506, including $342,506 of interest and fees.  On March 6, 2012, we received a notice from the SBA of the SBA's determination that Elk has a condition of impairment, directing Elk to cure the capital impairment within 15 days of the date of the notice and indicating, among other things, that on February 22, 2012, the SBA referred Elk to the SBA's Office of Liquidation. As the capital impairment has not been cured to date, the SBA has declared Elk's debentures immediately due and payable.  If the SBA were to require Elk to immediately repay its outstanding indebtedness, Elk could be

Case 2:17-cv-03586-JFB-AYS   Document 4-2   Filed 10/06/17   Page 448 of 1053 PageID #: 1022

required to dispose of its assets in a forced sale that could result in proceeds less than the carrying value of the asset being sold. As a result of Elk's having been referred to the SBA's Office of Liquidation, Elk is not eligible for additional financing from the SBA and the SBA may institute proceedings to place Elk into receivership and to appoint the SBA or its designee as the receiver. The interests represented by any such receiver could differ materially from the interests of our stockholders. In the event Elk is placed in receivership or is otherwise forced to liquidate, our interest in Elk may lose all value, which would have a material adverse effect on our business, financial condition and results of operations. If Elk is placed into receivership, we may be forced to cease operations and liquidate or seek bankruptcy protection, in which case shareholders may receive little or no value for their investment in our securities. In addition, Elk would, likely, not be permitted to make any new investments or significant expenditures without the SBA's prior approval unless and until it is transferred out of the SBA's Office of Liquidation.

22

---

**We failed to pay dividends on our Preferred Stock in an amount equal to two years of dividends, so the holders of our Preferred Stock are entitled to elect a majority of our directors.**

The terms of the Preferred stock provide for quarterly dividends in the amount of $0.28125 per outstanding share of Preferred Stock. We have not declared or paid dividends on the Preferred Stock for the quarterly periods ended September 30, 2010, December 31, 2010, March 31, 2011, June 30, 2011, September 30, 2011, December 31, 2011, March 31, 2012 and June 30, 2012. The terms of the Preferred Stock provide that, if dividends on the Preferred Stock are unpaid in an amount equal to at least two years of dividends, the holders of Preferred Stock will be entitled to elect a majority of our Board of Directors. Accordingly, the holders of our Preferred Stock will be entitled to elect a majority of our the members of our Board of Directors until such time as the accrued but unpaid dividends on our Preferred Stock have been paid.

**We will be subject to corporate-level income tax if we are unable to qualify as a RIC.**

To qualify as a RIC under the Code, we must meet certain income source, asset diversification and annual distribution requirements.

The annual distribution requirement for a RIC is satisfied if we distribute to our stockholders on a timely basis an amount equal to at least 90% of our ordinary income and net short-term capital gain in excess of net long-term capital losses, if any, reduced by deductible expenses, for each year. Because we use debt financing, we are subject to certain asset coverage ratio requirements under the 1940 Act and financial covenants under our loan agreements that could, under certain circumstances, restrict us from making distributions necessary to qualify as a RIC. If we are unable to obtain cash from other sources, we may fail to qualify as a RIC and, thus, may be subject to corporate level income tax. Because we must make distributions to our stockholders, as described above, such amounts, to the extent a stockholder is not participating in our dividend reinvestment plan, will not be available to fund investment originations.

To qualify as a RIC, we must also meet certain asset diversification requirements at the end of each calendar quarter. Failure to meet these tests may result in our having to (i) dispose of certain investments quickly or (ii) raise additional capital to prevent the loss of RIC status. If we fail to qualify as a RIC for any reason and become or remain subject to corporate income tax, the resulting corporate taxes could substantially reduce our net assets, the amount of income, if any, available for distribution and the amount of our distributions. Such a failure would have a material adverse effect on us and our stockholders.

**We may have difficulty paying our required distributions if we recognize income before or without receiving cash representing such income.**

For federal income tax purposes, we include in income certain amounts that we have not yet received in cash, such as original issue discount, which may arise if we receive warrants in connection with the making of a loan or possibly in other circumstances, or contracted payment-in-kind interest, which represents contractual interest added to the loan balance and due at the end of the loan term.  Such original issue discount or increases in loan balances are included in income before we receive any corresponding cash payments.  We also may be required to include in income certain other amounts that we will not receive in cash, including, for example, non-cash income from pay-in-kind securities and deferred payment securities.

Since in certain cases we may recognize income before or without receiving cash representing such income, we may have difficulty meeting the tax requirement to distribute an amount equal to at least 90% of our ordinary income and realized net short-term capital gains in excess of realized net long-term capital losses, if any, reduced by deductible expenses, to maintain our status as a RIC. Accordingly, we may have to sell some of our investments at times we would not consider advantageous, raise additional debt or equity capital or reduce new investment originations to meet these distribution requirements.  If we are not able to obtain cash from other sources, we may fail to qualify as a RIC and thus be subject to corporate-level income tax.

23

**Regulations governing our operation as a BDC affect our ability to, and the way in which, we raise additional capital.**

We may issue debt securities or preferred stock, which we refer to collectively as "senior securities," and borrow money from banks or other financial institutions up to the maximum amount permitted by the 1940 Act. Under the provisions of the 1940 Act, we are permitted, as a BDC, to incur indebtedness or issue senior securities only in amounts such that our asset coverage, as defined in the Investment Company Act, equals at least 200%, subject to certain exemptive relief we have received with respect to calculating this amount, after such incurrence or issuance. If the value of our assets declines, we may be unable to satisfy this test, which would prohibit us from paying dividends and could prevent us from maintaining our status as a RIC. If we cannot satisfy this test, we may be required to sell a portion of our investments and, depending on the nature of our leverage, repay a portion of our indebtedness at a time when such sales may be disadvantageous. We are not generally able to issue and sell our Common Stock at a price below net asset value per share. We may, however, sell our Common Stock, or warrants, options or rights to acquire our Common Stock, at a price below the current net asset value of the Common Stock if our board of directors determines that such sale is in our best interests and the best interests of our stockholders, and, in certain instances, our stockholders approve such sale. In any such case, the price at which our securities are to be issued and sold may not be less than a price which, in the determination of our board of directors, closely approximates the market value of such securities (less any commission or discount). To the extent our Common Stock trades at a discount to net asset value, this restriction may adversely affect our ability to raise capital.

**Most of our investments are not publicly traded and, as a result, there is uncertainty as to the value of our investments.**

A large percentage of our investments are not publicly traded. The fair value of investments that are not publicly traded may not be readily determinable. We value these investments quarterly at fair value as determined in good faith by our board of directors based on the input of our management and audit committee. However, we may be required to value our investments more frequently as determined in good faith by our board of directors to the extent necessary to reflect significant events affecting their value. The types of factors that may be considered in valuing our investments include the enterprise value of the portfolio company, the nature and realizable value of any collateral, the portfolio company's ability to make payments and its earnings, the markets in which the portfolio company does business, comparison to publicly traded companies, discounted cash flow and other relevant factors. Because such valuations and, particularly, valuations of private investments and private companies that are inherently uncertain, may fluctuate over short periods of time and may be based on estimates, our determinations of fair value may differ materially from the values that would have been used if a ready market for these investments existed and may differ materially from the values that we may ultimately realize.

**We invest in small businesses which may subject us to losses.**

Lending to small businesses involves a high degree of business and financial risk, which can result in substantial losses and should be considered speculative. Our borrower base consists primarily of small business owners who have limited resources and who are generally unable to obtain financing from banks or other primary sources. There is generally no publicly available information about these small business owners, and we must rely on the diligence of our employees and agents to obtain information in connection with our credit decisions. In addition, these small businesses often do not have audited financial statements. Some smaller businesses have narrower product lines and market shares than their competition. Therefore, they may be more vulnerable to customer preferences, market conditions, or economic downturns, which may adversely affect the return on, or the recovery of, our investment in these businesses.

**Our ability to achieve our investment objective depends on our senior management's ability to support our investment process; if we were to lose any of our senior management, our ability to achieve our investment objective could be significantly harmed.**

We have a small number of employees and, as a result, we depend on the investment expertise, skill and network of business contacts of our senior management. Our senior management team, with the assistance of outside advisors, evaluates, negotiates, structures, executes, monitors and services our investments. Our future success will depend to a significant extent on the continued service and coordination of the principals of our investment senior management team. The departure of any of these individuals could have a material adverse effect on our ability to achieve our investment objective. In particular, we are reliant on the continued service of our chief executive officer, Michael Feinsod. While we believe that we have partially mitigated loss of his services through his potential departure by entering into an employment contract with him, if he was not available to us, for any reason, our operations and our ability to reach our objectives would be severely adversely affected.

24

**Declining asset values and illiquidity in the corporate debt markets have adversely affected, and may continue to adversely affect, the fair value of our portfolio investments, reducing the value of our assets.**

As a BDC, we are required to carry our investments at market value or, if no market value is readily available, at fair value as determined in good faith by the board of directors. Decreases in the values of our investments are recorded as unrealized depreciation. The unprecedented declines in asset values and liquidity in the corporate debt markets have resulted in significant net unrealized depreciation in our portfolio. As a result, we have incurred and, depending on market conditions, we may incur further unrealized depreciation in future periods, which could have a material adverse impact on our business, financial condition and results of operations.

**The lack of liquidity in our investments may adversely affect our business.**

As we generally make investments in private companies, substantially all of these investments are subject to legal and other restrictions on resale or otherwise are less liquid than publicly traded securities.  The illiquidity of our investments may make it difficult for us to sell such investments if the need arises. In addition, if we are required to liquidate all or a portion of our portfolio quickly, we may realize significantly less than the value at which we have previously recorded our investments.

**We may experience fluctuations in our quarterly results.**

We could experience fluctuations in our quarterly operating results due to a number of factors, including the interest rate payable on the debt investments we make, the default rate on such investments, the level of our expenses, variations in and the timing of the recognition of realized and unrealized gains or losses and the degree to which we encounter competition in our markets and general economic conditions.  As a result of these factors, results for any period should not be relied upon as being indicative of performance in future periods.

**Changes in laws or regulations governing our operations, or changes in the interpretation thereof, and any failure by us to comply with laws or regulations governing our operations may adversely affect our business.**

We and our portfolio companies are subject to regulation by laws at the local, state and federal levels.  These laws and regulations, as well as their interpretation, may be changed from time to time.

Accordingly, any change in these laws or regulations, or their interpretation, or any failure by us to comply with these laws or regulations may adversely affect our business.  As discussed above, there is a risk that certain investments that we intend to treat as qualifying assets will be determined to not be eligible for such treatment. Any such determination would have a material adverse effect on our business.

**We have a history of losses and we expect to incur losses for the foreseeable future. If we are unable to achieve profitability, our business will suffer and our stock price is likely to decline.**

We have not operated at a profit in recent years and we incurred a loss in fiscal 2012 and may incur additional losses in 2013. At June 30, 2012, we had net liabilities of approximately $3.6 million, a decline of approximately $5.8 million from the prior fiscal year-end. As a result, we will need to significantly increase our revenues to achieve and sustain profitability. If revenues grow more slowly than we anticipate, or if operating and development expenses exceed our expectations or cannot be adjusted, accordingly, we may incur further losses in the future. We cannot assure you that we will be able to achieve or sustain profitability.

**If we fail to increase revenues, we will not achieve or maintain profitability.**

Our revenues have declined from $6.3 million in 2008 to $2.1 million in 2012. To achieve profitability, we will need to increase revenues substantially through implementation of our growth strategy and/or reduce expenses significantly. We cannot assure you that our revenues will grow or that we will achieve or maintain profitability in the future.

**Our current relationships could be terminated and we may not be able to obtain additional financing.**

We had a line of credit with one bank that had been paid in full as of August 31, 2010 and which expired on July 6, 2011.  We anticipate that, as the need for additional working capital arises from time to time, we may seek to establish new credit lines, subject to approval from the applicable lenders. We currently anticipate that, assuming we are not forced into liquidation by the SBA, our available cash resources, combined with cash generated from operations will be sufficient to meet our anticipated working capital and capital expenditure requirements for at least the next 12 months. However, additional financing may be required to satisfy our operating requirements and we cannot provide assurance that such additional financing will be available on terms favorable to us, or at all.  If adequate funds are not available or are not available on acceptable terms, our ability to fund our operations, take advantage of unanticipated opportunities, develop or enhance services or products or otherwise respond to competitive pressures would be significantly limited. Our business, results of operations and financial condition could be materially adversely affected by these financing limitations.

Case 2:17-cv-03586-JFB-AYS   Document 47-20   Filed 10/06/17   Page 453 of 1053 PageID #: 1027

**We are currently in a period of capital markets disruption and conditions may not improve in the near future.**

The current market conditions have materially and adversely affected the debt and equity capital markets in the United States, which could have a negative impact on our business and operations. The US capital markets have been experiencing extreme volatility and disruption for more than 36 months as evidenced by a lack of liquidity in the debt capital markets, significant write-offs in the financial services sector, the repricing of credit risk in the broadly syndicated credit market and the failure of major financial institutions. These events have contributed to worsening general economic conditions that are materially and adversely impacting the broader financial and credit markets and reducing the availability of credit and equity capital for the markets as a whole and financial services firms in particular. As a result, we believe these conditions may continue for a prolonged period of time or worsen in the future. A prolonged period of market illiquidity will continue to have an adverse effect on our business, financial condition, and results of operations. Unfavorable economic conditions also could increase our funding costs, limit our access to the capital markets or result in a decision by lenders not to extend credit to us. Equity capital may be difficult to raise because, subject to some limited exceptions, we generally are not able to issue and sell our common stock at a price below net asset value per share. In addition, the debt capital that will be available, if at all, may be at a higher cost and on less favorable terms and conditions. These events and the inability to raise capital may significantly limit our originations, therefore, our ability to grow and, potentially, limit our operating results.

**Economic turmoil, including the current market turmoil, could impair our portfolio companies and harm our operating results.**

Many of the companies in which we have made or will make investments are susceptible to economic slowdowns or recessions. Economic turmoil, including the current economic slowdown and future slowdowns or recessions, may affect the ability of a company to repay our loans or engage in a liquidity event such as a sale, recapitalization, or initial public offering. Our nonperforming assets are likely to increase and the value of our portfolio is likely to decrease during these periods. Current adverse economic conditions also have decreased the value of collateral securing our loans, if any, and a prolonged recession or depression may further decrease such value. These conditions are contributing to and, if prolonged, could lead to further losses of value in our portfolio and a decrease in our revenues, net income, assets and net worth.

**We borrow money to fund our operations, which magnifies the potential for gain or loss on amounts invested, and may increase the risk of investing in us.**

Borrowings magnify the potential for gain or loss on amounts invested, and therefore increase the risk associated with investing in us. We may borrow from and issue senior debt securities to banks, investment banks and other lenders and through long-term subordinated SBA debentures.  These creditors have fixed dollar claims on our assets that are superior to the claims of our shareholders.  If the value of our assets decreases, leveraging would cause net asset value to decline more sharply than it otherwise would have had we not leveraged. In addition, our existing indebtedness may have important consequences, including: limiting our ability to obtain additional financing to fund future working capital, future investments and other general corporate requirements; increasing the cost of future borrowing; requiring a substantial portion of our cash flow to be dedicated to debt service payments and/or mandatory repayments or acceleration payments instead of other purposes, thereby reducing the amount of available cash flows for working capital, future investments and other general corporate purposes; and limiting our flexibility in planning for and reacting to changes in our industry.


## ITEM 1B. UNRESOLVED STAFF COMMENTS

Not applicable.

## ITEM 2. PROPERTIES

On July 1, 2010, we entered into a thirty-one month sublease with an unrelated party for office space in Manhattan. This sublease calls for payments of $6,000 per month, including electric. Rent expense under this lease aggregated $72,000 for the year ended June 30, 2012.

On July 16, 2010, we entered into a seven-year and one month sublease with an unrelated party for office space for our headquarters in Jericho, New York. This sublease requires rental payments ranging from $98,250 to $115,769 per year, including electric. The sublease calls for escalation based on changes, from a base period, in real estate tax amounts as incurred by the sublandlord. The sublandlord may terminate this sublease with us effective July 30, 2014, if written notice is given on or before July 30, 2013. Rent expense under this lease aggregated $101,187 for the year ended June 30, 2012.

26

## ITEM 3. LEGAL PROCEEDINGS

**Lawsuit Against the SBA**

On March 20, 2012, Elk filed a lawsuit against the SBA and its Administrator in the United States District Court for the District of Columbia (the "District Court") (Case No. 1200438 CKK), seeking temporary, preliminary, and permanent injunctive relief; declaratory relief; and damages (the "Litigation"). The injunctive relief sought by Elk includes: (i) setting aside the SBA's decision to transfer Elk to the SBA's Office of Liquidation (see Note 4, Debentures Payable to SBA), (ii) requiring the SBA to provide Elk with a commercially reasonable amount of time to present a plan for curing Elk's position of capital impairment and (iii) requiring the SBA to accept legitimate commitment letters from qualified investors in the Company as a cure to Elk's position of capital impairment, so long as those letters guaranty that funds identified in the commitment letters are transferred by the Company to Elk. Elk's lawsuit also seeks monetary damages in an amount to be determined at trial.

On the evening of March 20, 2012, the SBA and Elk notified the District Court that the SBA had agreed to suspend liquidation activities and take no action to revoke Elk's license for 15 days from March 21, 2012. On March 21, 2012, the District Court held a Scheduling Conference in connection with the Litigation. During the Scheduling Conference, the SBA represented that it would suspend liquidation activities involving Elk and refrain from taking any action to revoke Elk's license until April 25, 2012. This representation on the record by the SBA made Elk's motion for a temporary restraining order seeking to preserve the status quo pending a decision on Elk's motion for a preliminary injunction moot. The District Court indicated during the Scheduling Conference that a decision on Elk's motion for a preliminary injunction would be rendered on or before April 25, 2012. Also on March 21, 2012, the District Court set (i) a briefing schedule on Elk's motion for a preliminary injunction and (ii) a schedule related to the SBA's production of a complete certified administrative record concerning the events identified by Elk in the lawsuit that are the subject of the Litigation.

On April 24, 2012, the District Court denied Elk's motion for a preliminary injunction and ordered the SBA to file a response to Elk's lawsuit no later than June 4, 2012. Accordingly, since April 25, 2012, the SBA is no longer required to suspend liquidation activities with respect to Elk.

As described above, on June 1, 2012, Elk received the Second SBA Notice, which declared Elk's entire indebtedness to the SBA, including principal, accrued interest and any other amounts owed by Elk to the SBA pursuant to Elk's outstanding debentures, to be immediately due and payable. The Notice stated that Elk is required to remit the entire amount of the Indebtedness to the SBA no later than June 15, 2012. In addition the Notice states that the SBA may avail itself of any remedy available to it under the Act, including institution of proceedings for the appointment of SBA or its designee as receiver for Elk's assets. In the event Elk is placed into receivership, the interests represented by any such receiver could differ materially from the interests of Ameritrans' stockholders.

On June 5, 2012, Elk submitted a proposal to cure its condition of capital impairment and return to the active business of providing capital to small business concerns. Notwithstanding the submission of a plan that would permit Elk to remain an active SBIC, SBA requested that Elk submit a proposed settlement plan relating to Elk's liquidation process and Elk submitted such a plan on June 18, 2012. There can be no assurance, however, that any settlement plan submitted by Elk would be acceptable to the SBA or that the SBA would not pursue the appointment of a receiver or any other remedy available to the SBA.

Elk also intends to continue prosecution of its lawsuit against the SBA, subject to any amicable settlement that may be worked out between the parties, including settlements that would allow Elk to return to the SBA's Office of Operations and to active lending. To this end, Elk filed an amended complaint in the Litigation on June 7, 2012 while also pursuing a settlement proposal with the Office of Liquidation. The amended complaint includes information that was discovered during Elk's review of the SBA's "Administrative Record." There can be no assurance that the Litigation will be successful or that any settlement will be reached between Elk and the SBA.

The SBA made a motion for Summary Judgment in the Litigation and Elk filed its Memorandum of Law in Opposition to SBA's motion for Summary Judgment. Simultaneously with the filing of its reply, Elk filed a motion seeking leave to conduct discovery.

On September 17, 2012, the Court issued a ruling finding it prudent to postpone further briefing on SBA's Motion for Summary Judgment to allow Elk's Motion for Leave to Serve Discovery to be fully briefed. The court ruled that the Motion for Summary Judgment was held-in-abeyance. The court ruled that the SBA need not and shall not file a reply until otherwise ordered by the Court. The court ordered the SBA to file a response to Elk's Motion for Leave to Serve Discovery by no later than October 1, 2012; Elk shall file its reply, if any, by no later than October 11, 2012.

The court also stated that the "parties are STRONGLY encouraged to meet and confer in an attempt to resolve their disagreement or narrow the areas of dispute requiring the Court's resolution."

If the SBA continues to pursue the liquidation of Elk, Ameritrans and/or Elk may be required to terminate certain of their employees, and Elk may no longer be able to provide financing to small business concerns.  In addition, Elk could be required to dispose of its assets in a forced sale that could result in proceeds less than the carrying value of the asset being sold.   In the event Elk is placed in receivership or is otherwise forced to liquidate, Ameritrans' interest in Elk may lose all value, which would have a material adverse effect on Ameritrans' business, financial condition and results of operations and Ameritrans may be forced to cease operations and liquidate or seek bankruptcy protection, in which case shareholders may receive little or no value for their investment in Ameritrans' securities.

Additional information about the Litigation can be found on the Public Access to Court Electronic Records (PACER) web site at *www.pacer.gov*. The PACER website is operated by the Administrative Office of the U.S. Courts.  The Company does not warrant the accuracy or completeness of the PACER website and expressly disclaims liability for errors or omissions on such website.  The information set forth on the PACER website shall not be deemed to be a part of or incorporated by reference into this filing or any other filing by the Company with the SEC.

27

---

Case 2:17-cv-03586-JFB-AYS   Document 47-2   Filed 10/06/17   Page 456 of 1053 PageID #: 1030

**Other**

From time to time, we are engaged in various legal proceedings incident to the ordinary course of our business.  In the opinion of our management and based upon the advice of legal counsel, other than the matter referred to in the previous paragraphs, there is no proceeding pending, or to the knowledge of management, threatened, which in the event of an adverse decision would result in a material adverse effect on the Company's results of operations or financial condition.

**ITEM 4. MINE SAFETY DISCLOSURES**

Not applicable.

28

**PART II**

**ITEM 5. MARKET FOR THE REGISTRANT'S COMMON STOCK AND PREFERRED STOCK AND RELATED STOCKHOLDER MATTERS**

Ameritrans Common Stock was listed on the NASDAQ Capital Market under the symbol AMTC until the open of trading on May 3, 2012. Ameritrans Preferred Stock was listed on the NASDAQ Capital Market under the symbol AMTCP until the open of trading on May 3, 2012. Our Common Stock and Preferred Stock were delisted from the NASDAQ Capital Market at the open of business on May 3, 2012, and thereafter were traded in the over-the-counter market.

The following table shows (i) the high and low sale prices per share of Common Stock and Preferred Stock as reported by NASDAQ, for each quarter in the fiscal years ended June 30, 2011 and the period commencing July 1, 2012 and ending on May 2, 2012 and (ii) the high and low closing bid prices per share of Common Stock and Preferred Stock in the over-the-counter markets, for the period commencing May 3, 2012 and ending on June 30, 2012.

| Ameritrans Common Stock | High | Low |
|---|---|---|
| **Fiscal 2011** | | |
| 1st Quarter | $1.32 | $1.01 |
| 2nd Quarter | $1.32 | $0.95 |
| 3rd Quarter | $1.15 | $0.95 |
| 4th Quarter | $1.57 | $0.96 |
| **Fiscal 2012** | | |
| 1st Quarter | $1.17 | $0.54 |
| 2nd Quarter | $0.70 | $0.12 |
| 3rd Quarter | $0.32 | $0.11 |
| 4th Quarter | $0.24 | $0.11 |

| Ameritrans Preferred Stock | High | Low |
|---|---|---|
| **Fiscal 2011** | | |
| 1st Quarter | $11.98 | $8.50 |
| 2nd Quarter | $10.94 | $8.51 |
| 3rd Quarter | $10.00 | $8.78 |
| 4th Quarter | $11.00 | $9.15 |
| **Fiscal 2012** | | |
| 1st Quarter | $11.03 | $6.29 |
| 2nd Quarter | $6.27 | $2.50 |
| 3rd Quarter | $4.00 | $2.00 |
| 4th Quarter | $2.00 | $0.75 |

The following table details information regarding our existing equity compensation plans as of June 30, 2012:

| Plan Category | (a) Number of securities to be issued upon exercise of fully vested outstanding options | (b) Weighted-average exercise price of fully vested options | (c) Number of securities remaining available for future issuance under equity compensation plans (excluding securities reflected in column (a) |
|---|---|---|---|
| Equity compensation plans approved by security holders | 239,426 [(1)] | $3.28 | 0 [(1)(3)] |
| Equity compensation plans not approved by security holders [(2)] | -- | -- | -- |
| Totals | 239,426 [(1)] | $3.28 | 0 [(1)(3)] |

(1) Includes fully vested options to purchase up to 200,000 shares of Common Stock granted to employees under the 1999 Employee Plan and options to purchase up to 39,426 shares granted to non-employee directors under the Non-Employee Director Plan. See "Stock Option Plans."

(2) All of our equity compensation plans have been approved by our stockholders.

(3) Our stock options plans expired May 21, 2009.

We declared and paid the quarterly dividend on the Preferred Stock since the Preferred Stock was issued through June 30, 2010. On March 12, 2010, we paid the cumulative arrearages on our Preferred Stock of $0.28125 per share for the periods April 1, 2009 through June 30, 2009; July 1, 2009 - September 30, 2009 and October 1, 2009-December 31, 2009. The dividends for these quarters were declared on February 25, 2010 and paid on March 12, 2010. The dividend for the fiscal quarter January 1, 2010 through March 31, 2010 was declared on April 9, 2010 and paid on April 27, 2010. Our Board of Directors declared a dividend of $0.28125 per share on July 21, 2010 on the Preferred Stock for the period April 1, 2010 through June 30, 2010, which was paid on August 17, 2010 for all holders of the Preferred Stock of record as of August 2, 2010. No dividends on Preferred Stock have been paid or declared for any quarter subsequent to that date. The terms of the Preferred Stock provide, among other things, that if dividends on the Preferred Stock are unpaid in an amount equal to at least two years of dividends, the holders of Preferred Stock will be entitled to elect a majority of our board of directors.

As of September 21, 2012, there were 140 holders of record of the Ameritrans Common Stock, and 4 holders of record of the Preferred Stock, which is exclusive of those shares held in street name.

## ITEM 6. SELECTED FINANCIAL DATA

The table below contains certain summary historical financial information of Ameritrans. You should read this table in conjunction with the consolidated financial statements of Ameritrans (the "Financial Statements") and "Management's Discussion and Analysis of Financial Condition and Results of Operations" included elsewhere in this Annual Report.

### STATEMENTS OF OPERATIONS DATA

| | FISCAL YEAR ENDED JUNE 30, | | | | |
|---|---|---|---|---|---|
| | **2012** | **2011** | **2010** | **2009** | **2008** |
| Investment income | $ 2,061,077 | $ 2,128,632 | $ 1,655,436 | $ 3,344,324 | $ 6,260,277 |
| Interest expense | $ 1,280,954 | $ 1,446,193 | $ 906,202 | $ 1,090,074 | $ 2,357,504 |
| Other expenses | $ 4,788,613 | $ 5,905,188 | $ 4,725,649 | $ 5,194,210 | $ 3,949,293 |
| Total expenses | $ 6,069,567 | $ 7,351,381 | $ 5,631,851 | $ 6,284,284 | $ 6,306,797 |
| Net investment loss | $ (3,654,870) | $ (5,222,749) | $ (3,976,415) | $ (2,939,960) | $ (46,520) |
| Net realized/unrealized losses on investments | $ (1,807,211) | $ (579,827) | $ (2,398,548) | $ (2,522,493) | $ (491,051) |
| Net decrease in net assets from operations | $ (5,462,081) | $ (5,802,576) | $ (6,374,963) | $ (5,462,453) | $ (537,571) |
| Dividends on Preferred Stock | $ (337,500) | $ (337,500) | $ (421,875) | $ (253,125) | $ (337,500) |
| Net decrease in net assets from operations available to common stockholders | $ (5,799,581) | $ (6,140,076) | $ (6,796,838) | $ (5,715,578) | $ (875,071) |
| Net decrease in net assets from operations per common share | $ (1.71) | $ (1.81) | $ (2.00) | $ (1.68) | $ (0.26) |
| Common Stock dividends paid | $ - | $ - | $ - | $ - | $ 67,912 |
| Common Stock dividends paid per common share | $ - | $ - | $ - | $ - | $ 0.02 |
| Weighted average number of shares of Common Stock outstanding | 3,395,583 | 3,395,583 | 3,395,583 | 3,395,583 | 3,394,981 |

### STATEMENTS OF ASSETS AND LIABILITIES DATA

| | **2012** | **2011** | **2010** | **2009** | **2008** |
|---|---|---|---|---|---|
| Investments | $ 16,502,606 | $ 23,921,735 | $ 25,455,698 | $ 26,409,468 | $ 59,598,287 |
| Total assets | $ 18,941,371 | $ 30,122,134 | $ 33,909,362 | $ 28,286,156 | $ 61,981,468 |
| Notes payable and demand notes | $ - | $ 4,500,000 | $ 3,370,000 | $ 370,000 | $ 28,195,697 |
| Subordinated SBA debentures | $ 21,175,000 | $ 21,175,000 | $ 21,175,000 | $ 12,000,000 | $ 12,000,000 |
| Total liabilities | $ 22,504,859 | $ 27,886,041 | $ 25,533,193 | $ 13,142,314 | $ 41,183,176 |
| Total net assets (liabilities) | $ (3,563,488) | $ 2,236,093 | $ 8,376,169 | $ 15,143,842 | $ 20,798,292 |

30

**ITEM 7. MANAGEMENT'S DISCUSSION AND ANALYSIS OF FINANCIAL CONDITION AND RESULTS OF OPERATIONS**

You should read the following discussion in conjunction with the financial statements and notes to financial statements. The results described below are not necessarily indicative of the results to be expected in any future period. Certain statements in this discussion and analysis, including statements regarding our strategy, financial performance, and revenue sources, are forward-looking statements based on current expectations and entail various risks and uncertainties that could cause actual results to differ materially from those expressed in the forward-looking statements, including those described in "Risk Factors" and elsewhere in this Annual Report.

**CRITICAL ACCOUNTING POLICIES**

**Investment Valuations**

Our loans receivable, net of participations and any unearned discount, are considered investment securities under the 1940 Act and are recorded at fair value. As part of fair value methodology, loans are valued at cost adjusted for any unrealized appreciation  (depreciation). Since no ready market exists for these loans, the fair value is determined in good faith by management, and approved by the Board of Directors. In determining the fair value, we and our Board of Directors consider factors such as the financial condition of borrower, the adequacy of the collateral, individual credit risks, historical loss experience, and the relationships between current and projected market rates and portfolio rates of interest and maturities. Foreclosed properties, which represent collateral received from defaulted borrowers, are valued based on appraisals prepared by third parties and market analysis.

Loans are, generally, considered "non–performing" once they become 90 days past due as to principal or interest. The value of past due loans are periodically determined in good faith by management, and if, in the judgment of management, the amount is not collectible and the fair value of the collateral is less than the amount due, the value of the loan will be reduced to fair value .

Equity investments (preferred stock, common stock, LLC interests, LP interest, and stock warrants, including controlled subsidiary portfolio investments) and investment securities are recorded at fair value, represented as cost, plus or minus unrealized appreciation or depreciation. Investments for which market quotations are readily available are valued at such quoted amounts. If no public market exists, the fair value of investments that have no ready market are determined in good faith by management, and approved by the Board of Directors, based upon assets and revenues of the underlying investee companies as well as general market trends for businesses in the same industry.

We record the investment in life insurance policies at fair value, represented as cost, plus or minus unrealized appreciation or depreciation. The fair value of the investment in life settlement contracts have no ready market and are determined in good faith by management, and approved by the Board of Directors, based on actuarial life expectancy, health evaluations and market trends.

Because of the inherent uncertainty of valuations, our estimates of the values of the investments may differ significantly from the values that would have been used had a ready market for the investments existed, and the differences could be material.

**Assets Acquired in Satisfaction of Loans**

Assets acquired in satisfaction of loans are carried at the lower of the net value of the related foreclosed loan or the estimated fair value less cost of disposal.  Losses incurred at the time of foreclosure are charged to the unrealized depreciation on loans receivable.  Subsequent reductions in estimated net realizable value are charged to operations as losses on assets acquired in satisfaction of loans.

**Use of Estimates**

The preparation of financial statements in conformity with U.S. generally accepted accounting principles requires management to make extensive use of estimates and assumptions that affect the reported amounts of assets and liabilities at the date of the financial statements and the reported amounts of revenues and expenses during the reporting period.  Actual results could differ from those estimates.  Estimates that are particularly susceptible to significant change relate to the determination of the fair value of our investments.

31

Case 2:17-cv-03586-JFB-AYS   Document 47-20   Filed 10/06/17   Page 461 of 1053 PageID #:
1035

**Income Recognition**

Interest income, including interest on non-performing loans, is recorded on an accrual basis and in accordance with loan terms to the extent such amounts are expected to be collected.  We recognize interest income on loans classified as non-performing only to the extent that the fair market value of the related collateral exceeds the specific loan principal balance.  Loans that are not fully collateralized and in the process of collection are placed on nonaccrual status when, in the judgment of management, the collectability of interest and principal is doubtful.

**Contingencies**

We are subject to legal proceedings in the course of our daily operations from enforcement of our rights in disputes pursuant to the terms of various contractual arrangements.  We may assess the likelihood of any adverse judgment or outcome to these matters as well as a potential range of probable losses.  A determination of the amount of reserve required, if any, for these contingencies may be made after analysis of each individual issue.  The required reserves may change in the future due to new developments in each matter or changes in approach, such as a change in settlement strategy in dealing with these matters.

**RESULTS OF OPERATIONS FOR THE YEARS ENDED JUNE 30, 2012 AND 2011**

**Total Investment Income**

Our investment income for the year ended June 30, 2012, decreased $67,555 or 3% to $2,061,077 as compared with the prior year's investment income of $2,128,632. The decrease is primarily due to a net decrease in interest income of $52,609. This net decrease in interest income is attributable, primarily, to a decrease of approximately $360,000 in interest from Corporate Loans and $83,000 from Commercial Loans due to a smaller portfolio maintained throughout most of the year. This aggregate decrease was partially offset by an interest recovery of approximately $390,000 from Commercial Loans.

**Loans**

Corporate Loans outstanding at June 30, 2012, decreased by $7,289,791, or 51%, to $6,991,494, as compared with Corporate Loans outstanding of $14,281,285 at June 30, 2011.  This net decrease is primarily attributable to sales (primarily for liquidity purposes) and payoffs of approximately $8.4 million and a downward adjustment of fair values of approximately $1.9 million. This Corporate Loans portfolio decrease was partially offset by new loans aggregating approximately $3.0 million. Additionally, Commercial Loans decreased approximately $1.0 million, or 16%, from $6.2 million in 2011 to $5.2 million in 2012, pursuant to our business strategy of reducing our Commercial Loan portfolio in favor of Corporate Loans. Life Settlements Contracts outstanding at June 30, 2012, increased by $796,001 or 33% to $3,204,001, as compared with the prior year-end's Life Settlements contracts of $2,408,000. This increase in value is primarily attributable to actual premiums paid during fiscal 2012, aggregating approximately $931,000, partially offset by an unrealized loss on one policy whose insured passed away during the fiscal year and a fair value adjustment of approximately $95,000.

**Operating Expenses**

Interest expense for the year ended June 30, 2012, decreased $165,239 or 11% to $1,280,954 when compared to $1,446,193 for the year ended June 30, 2011.  The interest expense decrease was due, primarily, to the payoff in April 2012 of $4.5 million of notes, resulting in less than a full year of interest on such notes.   At June 30, 2012 and 2011, we had no outstanding bank borrowings.

32

Salaries and employee benefits decreased $295,352 or 19% to $1,275,282 in fiscal 2012 as compared with $1,570,634 for the prior fiscal year. This decrease is primarily attributable to the reduction in staff throughout the 2012 fiscal year.

Occupancy costs remained relatively consistent, aggregating $173,187 in fiscal 2012 as compared with $171,675 for the year ended June 30, 2011.

Legal fees decreased $591,859, or 30%, to $1,407,893 in fiscal 2012 from $1,999,752 in fiscal 2011 due, primarily, to a reduction in legal work in connection with our capital raising efforts from fiscal 2011, during which we incurred additional expenses with respect to work on a proxy filing, most significantly, the work relating to the Purchase Agreement with Renova. Partially, offsetting this reduction were increases in legal fees related to the litigation with the SBA. (See Notes 4 and 12 to our consolidated financial statements.)

Accounting and compliance fees in fiscal 2012, at $737,036, were consistent with $729,993 in the prior fiscal year. The significant components of accounting and compliance fees in fiscal 2012 were consulting fees aggregating $236,030 for financial management personnel, accounting fees of $202,600 ($16,000 for tax return preparation and $186,000 in fees for an outsourced controller), Sarbanes-Oxley compliance monitoring of $43,285 and audit and audit-related fees of $180,412.

Directors' fees and expense decreased by $154,499, or 51%, to $150,641 in 2012 from $305,140 in 2011. This decrease is primarily attributable to fewer board and committee meetings being held as our capital raising activities declined.

Advisory fees decreased $143,910 or 59% to approximately $101,984 in 2012 from $245,894 in the prior fiscal year. This decrease is reflective of the termination of our Advisory Agreement in December 2011.

Other administrative expenses increased $60,490, or 7%, to $942,590 in fiscal 2012 when compared with the prior year's amount of $882,100. This net increase in administrative expenses was primarily due to increases in administrative expenses aggregating $213,492, as follows: net expenses in connection with assets acquired of $156,555, insurance increases of $54,632 (due to an errors and omissions insurance policy) and, to a lesser extent, increases in depreciation of $907 and audit and compliance increases of $1,398. This aggregate increase was partially offset by decreases, aggregating $153,002, as follows: foreclosure expenses of $66,446 (reflective of fewer loan foreclosures), printing of financial and other filing documents of $26,394 (related primarily to a proxy statement in connection with the Renova Purchase Agreement in the prior fiscal year), elimination of moving and storage of $16,642, general office expense of $9,442 (due to cost cutting measures) and other miscellaneous expenses net reductions of $34,078.

**Gain on Extinguishment of Debt**

In connection with the satisfaction of debt in connection with a note payable in connection with the Renova Purchase Agreement and other notes payable, in 2012, we realized an aggregate gain from the extinguishment of debt of $353,620. (See Note 5 to our consolidated financial statements.)

**Net Realized Gain (Loss) on Investments**

The components of net realized gains of approximately $185,000 were as follows: a gain of approximately $288,000 related to the proceeds from an insurance policy, as partially offset by losses, aggregating approximately $53,000 in connection with realized gains on Corporate Loans and a loss on Equity Investments of approximately $50,000.

**Net Unrealized Depreciation on Investments**

During the year ended June 30, 2012, our investments had a net unrealized depreciation of approximately $1,991,890 compared with $142,197 in the prior fiscal year. The net unrealized depreciation for the year ended June 30, 2012 is primarily due to decreases in the fair value of certain investments in our portfolio.

An unrealized write-down of $1,934,918 in our Corporate Loan portfolio was the largest component of unrealized depreciation and, to a lesser extent, we decreased the fair values of our Commercial Loan portfolio and our Life Insurance Settlement portfolio by $128,644 and $95,657, respectively. These write-downs were partially offset by a fair value increase in our Equity Investments portfolio, aggregating $167,329.

**Net Increase (Decrease) in Net Assets from Operations**

Net decrease in net assets resulting from operations for the year ended June 30, 2012 was $5,462,081 as compared to a net decrease in net assets resulting from operations for the year ended June 30, 2011 of $5,802,576.

**STATEMENTS OF ASSETS AND LIABILITIES**

Total assets decreased by $11.2 million to $18.9 million as of June 30, 2012 when compared to total assets of $30.1 million as of June 30, 2011. This decrease was primarily due to a decrease in cash of approximately $4.0 million and a decrease in investments of $7.4 million. We also had a decrease in liabilities aggregating approximately $5.4 million, comprised, primarily, of a decrease in notes payable of $4.5 million, and a decrease in accrued expenses and other liabilities of approximately $1.2 million, as partially offset by an increase of approximately $338,000 in dividends payable. The $4.5 million decrease in notes payable reflects the payoff of senior secured notes. The decrease in accrued liabilities is significantly attributable to the substantial elimination, in fiscal 2012, of legal and related fees that were incurred in the prior fiscal year in connection with a contemplated equity transaction.  The increase in dividends payable represents fiscal 2012 preferred stock dividends that have not been declared.

**RESULTS OF OPERATIONS FOR THE YEARS ENDED JUNE 30, 2011 and 2010**

**Total Investment Income**

Our investment income for the year ended June 30, 2011, increased $473,196 or 28.6% to $2,128,632 as compared with the prior year's investment income of $1,655,436. The increase is primarily due to a net increase in interest income of $511,609. This net increase in interest income is primarily due to an increase approximately $750,000 in interest from Corporate Loans that were maintained throughout most of the fiscal year, as partially offset by a decrease in interest from Commercial Loans of approximately $240,000. Such increase in Corporate Loans was reduced, in part, by sales of five loans, principal payments and fair value adjustments. Commercial Loans outstanding at June 30, 2011, decreased by $2,696,517, or 30.2%, to $6,244,815, as compared with the prior year's amount of $8,941,332. Of this decrease, approximately $1.75 million relates to repayments and approximately $1.1 million is due to the foreclosure of real estate assets which had secured certain Commercial Loans. This aggregate decrease of approximately $2.7 million was partially offset by approximately $250,000 in fair value adjustments. This net decrease in Commercial Loans continues to reflect our business strategy of moving toward Corporate Loans.

**Loans**

Corporate Loans outstanding at June 30, 2011, increased by $144,425, or 1.0%, to $14,281,285, as compared with Corporate Loans outstanding of $14,136,860 at June 30, 2010.  This net increase is primarily attributable to new loans of approximately $12.0 million. Substantially offsetting this increase were (i) the repayment of loans aggregating approximately $6.4 million; (ii) the sale of five loans for approximately $5.1 million; and (iii) downward adjustments of fair value aggregating approximately $360,000. The interest income earned on Corporate Loans increased in 2011 by approximately $750,000 or 67%, primarily due to an increase in the number of investments during the period and total value of the Corporate Loan portfolio at the end of June 30, 2011.

Life Settlements Contracts outstanding at June 30, 2011, increased by $1,050,200 or 77.5% to $2,408,000, as compared with the prior year-end's Life Settlements contracts of $1,356,800. This increase in value is primarily attributable to actual premiums paid during fiscal 2011.

**Operating Expenses**

Interest expense for the year ended June 30, 2011, increased $539,991 or 59.6% to $1,446,193 when compared to $906,202 for the year ended June 30, 2010.  Interest expense increased due primarily to a full year of interest related to $9.175 million of debentures proceeds received in January 2010 and $3.0 million in notes payable proceeds in December 2009 and March 2010 and, to a lesser extent, a $1.5 million senior secured note entered into in January 2011 and the increase in interest rates from 8.75% to 12.0% on the $3.0 million in notes beginning in January 2011.  At June 30, 2011, we had no outstanding bank borrowings as compared with $370,000 at June 30, 2010.

34

Salaries and employee benefits decreased $270,215 or 14.7% to $1,570,634 in fiscal 2011 as compared with $1,840,849 for the prior fiscal year. This decrease is primarily attributable to a reduction in the number of our employees, as partially offset by termination payments.

Occupancy costs decreased $348,201 or 67.0% to $171,675 in fiscal 2011 from $519,876 for the year ended June 30, 2010, primarily due to a one-time payment of $260,000 in fiscal 2010 made in connection with the termination of the lease obligation on our former New York City office in 2010. Further, the lower rents resulting from termination of a storage facility lease effective June 30, 2010 and the less expensive office space rented in fiscal 2011 contributed to the decline in occupancy costs.

Legal fees increased $1,522,052, or 318.6%, to $1,999,752 in fiscal 2011 from $477,700 in fiscal 2010 due, primarily, to legal work in connection with our capital raising efforts, most significantly, the work relating to the stock purchase agreement and the $1.5 million senior secured note (see Notes 5 and 15 to our consolidated financial statements), and, to a lesser extent, SEC filings, compliance and general legal matters.

Accounting and compliance fees increased $98,981 or 15.7% to $729,993 in fiscal 2011 from $631,012 in the prior fiscal year. Accounting and compliance fees in fiscal 2011 consisted of consulting  fees aggregating $407,437 for financial management personnel (an increase of approximately $220,000 from the prior year, related, primarily, to the Company's CFO, engaged in September 2010), $16,000 for tax return preparation, consulting fees related to internal controls development and testing of $69,294 (a decrease of  approximately $77,000 from the prior fiscal year), Sarbanes-Oxley compliance monitoring of $57,292 (substantially, unchanged from fiscal 2010) and audit and audit-related fees of $179,970 (a decrease of approximately $16,000, from the prior fiscal year). In fiscal 2011, we incurred no fees related to enterprise risk management, a decrease of approximately $28,000 from 2010.  The net reduction in accounting and compliance fees, other than management personnel,  is primarily attributable to two factors: (a) significant cost-cutting measures in the current year and (b) disproportionately high internal control-related costs in the prior year.

Directors' fees and expense increased by $109,472, or 55.9%, to $305,140 in 2011 from $195,668 in 2010. This increase is primarily attributable to additional board and committee meetings being held in connection with capital raising activities, including the Renova Purchase Agreement and, to a lesser extent, increased board and committee meetings related to personnel issues.

Advisory fees decreased approximately $118,000 or 32.4% to approximately $246,000 in 2011 from approximately $364,000 in the prior fiscal year. This decrease is reflective of the absence of certain one-time payments made in fiscal 2010.

Other administrative expenses increased $185,022, or 26.5%, to $822,100 in fiscal 2011 when compared with the prior year's amount of $697,078.  This net increase in administrative expenses was due to the following increases: loan costs of $114,772 (attributable to increased loan activity), foreclosure expenses of $99,489 (reflective of additional loan foreclosures), printing of financial and other filing documents of $39,453 (related primarily to a proxy statement in connection with the Renova Purchase Agreement), moving and storage of $18,165 (due to our moves to our two new offices), general office expense of $21,223 (due to our moves to our two new offices), SBA fees of $12,671 (related to the additional SBA debenture of $9.175 million), filing fees of $11,463 and other miscellaneous expenses, net, of $9,011. These increases were partially offset by decreases in depreciation of $87,629 (as a result of the prior year's write-off of office equipment and leasehold improvements), insurance of $23,663 (due to the assignment of an executive's life insurance policy), website and computer fees of $15,193 the effect of cost-cutting and recruitment costs of $14,740 (because there were no new hires during 2011).

**Net Realized Loss on Investments**

The components of net realized losses of approximately $438,000 were as follows:  a loss of approximately $257,000 related to the sale of a Corporate Loan; a loss of approximately $271,000 attributable to the settlement of a Commercial Loan; a loss of approximately $107,000 on a foreclosed loan and a loss of $60,000 related to an equity investment. These losses were partially offset by gains realized in sales and payoffs of Corporate Loans aggregating approximately $257,000.

**Net Unrealized Depreciation on Investments**

During the year ended June 30, 2011, our investments had a net unrealized depreciation of approximately $142,197 compared with $1,404,700 in the prior fiscal year.  The net unrealized depreciation for the year ended June 30, 2011 is primarily due to decreases in the fair value of certain investments in our portfolio.

35

An unrealized write-down of $359,353 in our Corporate Loan portfolio was the largest component of unrealized depreciation and, to a lesser extent, we decreased the fair value of our life insurance settlement portfolio by $61,741. These write-downs were partially offset by fair value increases in our Commercial Loans portfolio and our equity investments aggregating $251,168 and $27,729, respectively.

**Net Increase (Decrease) in Net Assets from Operations**

Net decrease in net assets resulting from operations for the year ended June 30, 2011 was $5,802,576 as compared to a net decrease in net assets resulting from operations for the year ended June 30, 2010 of $6,374,963.

**ASSET / LIABILITY MANAGEMENT**
**Interest Rate Sensitivity**

We are subject to interest rate risk to the extent our interest-earning assets rise or fall at a different rate over time in comparison to our interest-bearing liabilities (consisting primarily of our credit facilities with banks and subordinated SBA debentures, which currently have fixed rates of interest).

A relative measure of interest rate risk can be derived from Ameritrans' interest rate sensitivity gap, i.e. the difference between interest-earning assets and interest-bearing liabilities, which mature and/or reprice within specified intervals of time. The gap is considered to be positive when repriceable assets exceed repriceable liabilities and negative when repriceable liabilities exceed repriceable assets. A relative measure of interest rate sensitivity is provided by the cumulative difference between interest sensitive assets and interest sensitive liabilities for a given time interval expressed as a percentage of total assets.

Our interest rate sensitive assets were $11,438,446 and we had no interest rate sensitive liabilities at June 30, 2012.  Having interest-bearing liabilities that mature or reprice more frequently on average than assets may be beneficial in times of declining interest rates, although such an asset/liability structure may result in declining net earnings during periods of rising interest rates.  Abrupt increases in market rates of interest may have an adverse impact on our earnings until we are able to originate new loans at the higher prevailing interest rates. Conversely, having interest-earning assets that mature or reprice more frequently on the average than liabilities may be beneficial in times of rising interest rates, although this asset/liability structure may result in declining net earnings during periods of falling interest rates. This mismatch between maturities and interest rate sensitivities of our interest-earning assets and interest-bearing liabilities results in interest rate risk.

The effect of changes in interest rates is mitigated by regular turnover of the portfolio. Based on past experience, Ameritrans anticipates that approximately 20% of the portfolio will mature or be prepaid each year. Ameritrans believes that the average life of its loan portfolio varies to some extent as a function of changes in interest rates. Borrowers are more likely to exercise prepayment rights in a decreasing interest rate environment because the interest rate payable on the borrower's loan is high relative to prevailing interest rates. Conversely, borrowers are less likely to prepay in a rising interest rate environment.

**Interest Rate Swap Agreements**

Ameritrans has the ability to manage the exposure of its portfolio to increases in market interest rates by entering into interest rate swap agreements to hedge a portion of its variable-rate debt against increases in interest rates and by incurring fixed-rate debt consisting primarily of subordinated SBA debentures.

As of June 30, 2012 and 2011, we were not a party to any interest rate swaps.

**Investment Considerations**

In the fiscal year ended June 30, 2012, our investment income was adversely affected by historically low LIBOR due to the Federal Reserve's decrease in interest rates. This low interest rate had a direct effect on the actual rate of interest we received on our outstanding Corporate Loans, and to a lesser extent, certain Commercial Loans.  The dollar amount of our adjustable rate loans receivable at June 30, 2012 was approximately $11.4 million with the remainder of $800,000 being fixed rate loans.  Because we borrow money to finance the origination of loans, our income is dependent upon the differences between the rate at which we borrow funds and the rate at which we lend funds.  While many of the loans in our portfolio bear interest at fixed-rates or adjustable-rates, we may, in the future, finance a substantial portion of such loans by incurring indebtedness with floating interest rates.  As short-term interest rates rise, our interest costs increase, decreasing the net interest rate spread we receive and thereby adversely affect our profitability.  Although we intend to continue to manage our interest rate risk through asset and liability management, including the use of interest rate swaps, general rises in interest rates will tend to reduce our interest rate spread in the short term.  However, a decrease in prevailing interest rates may lead to more loan prepayments, which could adversely affect our business over time.  A borrower is likely to exercise prepayment rights at a time when the

Case 2:17-cv-03586-JFB-AYS    Document 4-2   Filed 10/06/17    Page 466 of 1053 PageID #: 1040

interest rate payable on the borrower's loan is high relative to prevailing interest rates. In a lower interest rate environment, we will have difficulty re-lending prepaid funds at comparable rates, which may reduce the net interest spread we receive.

36

Lending to small businesses involves a high degree of business and financial risk, which can result in substantial losses and should be considered speculative. Our borrower base consists primarily of small business owners who have limited resources and who are generally unable to obtain financing from banks or other primary sources. There is generally no publicly available information about these small business owners, and we must rely on the diligence of our employees and agents to obtain information in connection with our credit decisions. In addition, these small businesses often do not have audited financial statements. Some smaller businesses have narrower product lines and market shares than their competition. Therefore, they may be more vulnerable to customer preferences, market conditions, or economic downturns, which may adversely affect the return on, or the recovery of, our investment in these businesses.

### Liquidity and Capital Resources

We have funded our operations through private and public placements of our securities, bank financing, the issuance to the SBA of our subordinated debentures and internally generated funds. We entered into a Loan Purchase Agreement dated July 16, 2008 with Medallion Financial Corp. and Medallion Bank pursuant to which we sold substantially all of our taxicab medallion loans. We used the proceeds of sale to pay down our bank lines. Since exiting the taxicab medallion business, the Company has relied on SBA Debentures and, to a lesser extent, private placements of debt. At June 30, 2012, we had negative working capital of approximately $21.3 million. Substantially, all of our cash is subject to restrictions pursuant to SBA regulations. At June 30, 2012, 100% of our total indebtedness of $21,175,000 was attributable to the debentures issued to the SBA with fixed rates of interest plus user fees which results in rates ranging from 4.11% to 5.54%. On June 1, 2012, we received notice from the SBA that the entire debenture indebtedness to the SBA, i.e., $21,175,000, plus accrued interest, was due currently. See Note 4 to Notes to Consolidated Financial Statements. Elk currently may borrow additional amounts from banks subject to the limitations imposed by its borrowing base agreement with its banks and the SBA, the statutory and regulatory limitations imposed by the SBA and the availability of future bank credit lines.

Contractual obligations expire or mature at various dates through August 16, 2017. The following table shows all contractual obligations at June 30, 2012.

| | Payments due by period | | | | | | |
|---|---|---|---|---|---|---|---|
| | Less than 1 year | 1 - 2 years | 2 - 3 years | 3 - 4 years | 4 - 5 years | More than 5 years | Total |
| Fixed rate borrowings | $ 21,175,000 | $ - | $ - | $ - | $ - | $ - | $ 21,175,000 |
| Operating lease obligations (including overhead) | 145,933 | 106,763 | 109,676 | 112,678 | 115,769 | 9,913 | 600,732 |
| Total | $ 21,320,933 | $ 106,763 | $ 109,676 | $ 112,678 | $ 115,769 | $ 9,913 | $ 21,775,732 |

Our sources of liquidity have historically been credit lines with banks, long-term SBA debentures that are issued to or guaranteed by the SBA, private sources of debt and equity capital and loan amortization and prepayment. As a RIC, we distribute at least 90% of our investment company taxable income, if any. Consequently, we primarily rely upon external sources of funds to finance growth. However, as a result of Elk's having been referred to the SBA's Office of Liquidation, Elk is not eligible for additional financing from the SBA. In addition, the SBA's referral of Elk to the Office of Liquidation, and SBA's unwillingness to date to enter into a settlement plan may materially and adversely affect our ability to obtain third party financing.

Loan amortization and prepayments also provide a source of funding for Elk. Prepayments on loans are influenced significantly by general interest rates, economic conditions and competition.

Like Elk, Ameritrans will distribute at least 90% of its investment company taxable income and, accordingly, we will continue to rely upon external sources of funds to finance growth. In order to provide the funds necessary for our expansion strategy, we expect to raise additional capital and to incur, from time to time, additional bank indebtedness and (if deemed necessary by management and the Board of Directors) to obtain SBA loans. There can be no assurances that such additional financing will be available on acceptable terms.

At June 30, 2012, we had cash on hand and cash equivalents aggregating approximately $200,000 and negative working capital of approximately $21.3 million. Substantially, all of our cash is subject to restrictions pursuant to SBA regulations.

On April 12, 2011, we entered into the Purchase Agreement with Renova. ("Renova"). Subject to the terms and conditions set forth in the Purchase Agreement, we agreed to issue and sell to Renova, and Renova agreed to purchase, (i) $25,000,000 of our Common Stock at the Applicable Per Share Purchase Price, at an initial closing to be held no later than November 30, 2011, following satisfaction or waiver of the conditions to such issuance  and (ii) between an additional $35,000,000 to $40,000,000 of additional Common Stock (depending upon the timing of such purchases) at the Applicable Per Share Purchase Price at subsequent closings to be held from time to time, subject to satisfaction of the conditions to such issuances, between the date of the initial closing and the second anniversary of the initial closing, based upon the terms and conditions set forth in the Purchase Agreement.

 Requisite stockholder approval of the transactions contemplated by the Purchase Agreement was obtained at a special meeting of stockholders held on June 24, 2011. Consummation of the Initial Closing was subject to certain additional customary closing conditions, as well as the approval of the SBA of the indirect change of ownership and control of the Company's wholly-owned subsidiary, Elk, which is a SBA licensee.

 Following receipt of notice from the SBA that, in its view, the proposed transaction, as then structured, would not satisfy applicable SBA management-ownership diversity requirements, on November 16, 2011, we and Renova terminated the Purchase Agreement, although we continued to engage in discussions with Renova regarding potential modifications to the terms of the transaction contemplated by the Purchase Agreement in order to satisfy the SBA interpretation of its management-ownership diversity regulations. We presented a restructured transaction with Renova, specifically drawn to address SBA's stated concerns. On December 22, 2012, SBA informed Elk that it would not approve the transaction. In light of the SBA's continued belief that the Renova Transaction, as proposed to be modified, would not satisfy such regulations, on January 19, 2012, Renova advised us that Renova was ceasing its efforts to pursue a transaction with us and Elk. As a result, Renova and we are no longer engaging in discussions regarding a potential financing transaction.

In February 2012, we presented a potential transaction with another party, which was rejected by SBA.

On June 1, 2012, Elk received a written notice (the "Notice") from the SBA that declared Elk's entire indebtedness to the SBA, including principal, accrued interest and any other amounts owed by Elk to the SBA pursuant to Elk's outstanding debentures, to be immediately due and payable.  The Notice indicates that such acceleration of Elk's obligations relates to an event of default under Elk's outstanding debentures resulting from Elk's condition of capital impairment described above, which, according to the Notice, Elk failed to cure within applicable cure periods.


According to the Notice, as of May 25, 2012, Elk was indebted to the SBA in the aggregate principal amount of $21,175,000, plus accrued interest of $239,372 (with an additional $2,816 of interest accruing on a per diem basis) (the "Indebtedness") (as of June 30, 2012, Elk's aggregate Indebtedness to the SBA was $21,517,506, including $342,506 of interest and fees) pursuant to the following subordinated debentures:

| Date of Issuance | Principal Amount | Stated Interest Rate | Scheduled Maturity Date |
| --- | --- | --- | --- |
| July 22, 2002 | $2,050,000 | 4.67% | September 1, 2012* |
| December 22, 2002 | $3,000,000 | 4.63% | March 1, 2013 |
| September 28, 2003 | $5,000,000 | 4.12% | March 1, 2014 |
| February 14, 2004 | $1,950,000 | 4.12% | March 1, 2014 |
| December 26, 2009 | $9,175,000 | 4.11% | March 1, 2020 |

* The July 22, 2002 subordinated debenture has not been repaid to date and remains outstanding.

The Notice states that Elk is required to remit the entire amount of the Indebtedness to the SBA no later than June 15, 2012.  In addition the Notice states that the SBA may avail itself of any remedy available to it under the Act, including institution of proceedings for the appointment of SBA or its designee as receiver for Elk's assets.  In the event Elk is placed into receivership, the interests represented by any such receiver could differ materially from the interests of Ameritrans' stockholders.

On June 5, 2012, Elk submitted a proposal to cure its condition of capital impairment and return to the active business of providing capital to small business concerns. Notwithstanding the submission of a plan that would permit Elk to remain an active SBIC, SBA has requested that Elk submit a proposed settlement plan relating to Elk's liquidation process to the SBA no later than June 18, 2012. Any such plan would specify a proposed payment schedule for the Indebtedness and would be intended as an alternative to SBA's potential attempts for the appointment of a receiver. Elk submitted the requested settlement plan by June 18, 2012. On September 14, 2012, Elk submitted a revised settlement plan. There can be no assurance, however, that any settlement plan submitted by Elk would be acceptable to the SBA or that the SBA would not pursue the appointment of a receiver or any other remedy available to the SBA.

Elk also intends to continue prosecution of its lawsuit against the SBA, subject to any amicable settlement that may be worked out between the parties, including settlements that would allow Elk to return to the SBA's Office of Operations and to active lending. To this end, Elk filed an amended complaint in the matter while also pursuing a settlement proposal with the Office of Liquidation. The amended complaint includes information that was discovered during Elk's review of the SBA's "Administrative Record."

As stated above, the SBA has notified Elk that it was not interested in exploring previous settlement proposals by Elk which would cure the single regulatory issue that has been cited by SBA as rationale for its continued attempts to remove Elk from the SBIC program. Accordingly, there can be no assurance that any settlement will be reached.

If the SBA continues to pursue the liquidation of Elk, Ameritrans and/or Elk may be required to terminate certain of their employees, and Elk may no longer be able to provide financing to small business concerns. In addition, Elk could be required to dispose of its assets in a forced sale that could result in proceeds less than the carrying value of the asset being sold. In the event Elk is placed in receivership or is otherwise forced to liquidate, our interest in Elk may lose all value, which would have a material adverse effect on our business, financial condition and results of operations and we may be forced to cease operations and liquidate or seek bankruptcy protection, in which case our shareholders may receive little or no value for their investment in our securities.

We are actively pursuing an alternative transaction and alternative sources of financing. There is no assurance that any alternative sources of financing will be available, especially in light of Elk's status with respect to the SBA and the status of Elk's debentures, or what the terms of any alternative transaction would be or, if we reached agreement with another party, that the SBA would approve such transaction.

**Recently Issued Accounting Standards**

In December 2011, the FASB issued Accounting Standards Update (ASU) 2011-11, "Disclosures about Offsetting Assets and Liabilities." ASU 2011-11 adds certain additional disclosure requirements about financial instruments and derivative instruments that are subject to offsetting and related arrangements. The new disclosures are required for annual reporting periods beginning on or after January 1, 2013, and interim periods within those periods. As the amendment impacts disclosures only, it will not have an effect on the Company's financial condition or results of operation.

39

In January 20 I 0, FASB issued ASU No. 20 10-06, "Fair Value Measurements and Disclosures (Topic 820)," that requires reporting entities to make new disclosures about recurring or nonrecurring fair-value measurements, including significant transfers into and out of Level I and Level 2 fair-value measurements and information on purchases, sales, issuances and settlements on a gross basis in the reconciliation of Level 3 fair-value measurements. The FASB also clarified existing fair-value measurement disclosure guidance about the level of disaggregation, inputs, and valuation techniques. The new and revised disclosures are required to be implemented for interim and annual periods beginning after December 15, 2009, except for the disclosures about purchases, sales, issuances and settlements of Level 3 activity. Those disclosures are effective for interim and annual periods beginning after December 15, 2010. The adoption of FASB ASU 2010-06 did not have a material impact on our financial condition and results of operations.

There are no other recently issued accounting pronouncements that are not yet effective that are expected to have a material impact on our financial position or results of operations or disclosures in the consolidated financial statements.

40

## ITEM 7A. QUANTITATIVE AND QUALITATIVE DISCLOSURES ABOUT MARKET RISK

Our business activities contain elements of risk. We consider the principal types of risk to be fluctuations in interest rates and portfolio valuations. We consider the management of risk essential to conducting our businesses. Accordingly, our risk management systems and procedures are designed to identify and analyze our risks, to set appropriate policies and limits and to continually monitor these risks and limits by means of reliable administrative and information systems and other policies and programs.

We value our portfolio at fair value as determined in good faith by our Board of Directors in accordance with our valuation policy. We must value each individual investment and portfolio loan on a quarterly basis. We record unrealized depreciation on investments and loans when we believe that an asset has been impaired and full collection is unlikely. Without a readily ascertainable market value, the estimated value of our portfolio of investments and loans may differ significantly from the values that would be placed on the portfolio if there existed a ready market for the investments. We adjust the valuation of the portfolio quarterly to reflect our Board of Directors' estimate of the current fair value of each component of the portfolio. Any changes in estimated fair value are recorded in our statement of operations as net unrealized appreciation (depreciation) on investments.

In addition, the illiquidity of our loan portfolio and investments may adversely affect our ability to dispose of loans at times when it may be advantageous for us to liquidate such portfolio or investments. Also, if we were required to liquidate some or all of the investments in the portfolio, the proceeds of such liquidation might be significantly less than the current value of such investments. Because we borrow money to make loans and investments, our net operating income is dependent upon the difference between the rate at which we borrow funds and the rate at which we loan and invest these funds. As a result, there can be no assurance that a significant change in market interest rates will not have a material adverse effect on our interest income. As interest rates rise, our interest costs increase, decreasing the net interest rate spread we receive and thereby adversely affect our profitability. Although we intend to continue to manage our interest rate risk through asset and liability management, including the use of interest rate swaps, general increases in interest rates will tend to reduce our interest rate spread in the short term.

Assuming that the balance sheet were to remain constant and no actions were taken to alter the existing interest rate sensitivity, a hypothetical immediate 1% increase in interest rates would have resulted (by applying such theoretical increase to our $11.4 million variable rate loans receivable portfolio) in an additional net increase in net assets from operations of approximately $114,000 at June 30, 2012, which is comprised, solely, of an increase of interest on loans receivable.

## ITEM 8. FINANCIAL STATEMENTS AND SUPPLEMENTARY DATA

The response to this item is submitted in the response found under Item 15(a)(1) in this Annual Report on Form 10-K.

## ITEM 9. CHANGES IN AND DISAGREEMENTS WITH ACCOUNTANTS ON ACCOUNTING AND FINANCIAL DISCLOSURE

None.

## ITEM 9A. CONTROLS AND PROCEDURES

### Disclosure Controls and Procedures

Our management, with the participation of our Chief Executive Officer and Chief Financial Officer, conducted an evaluation of the effectiveness of our disclosure controls and procedures (as defined in Rules 13(a) -15(e) and 15(d)-15(e) under the Exchange Act). Based on such evaluation, our management, including our Chief Executive Officer and Chief Financial Officer, concluded that our disclosure controls and procedures were effective as of June 30, 2012.

### Management's Report on Internal Control Over Financial Reporting

Our management is responsible for establishing and maintaining adequate internal control over financial reporting as defined in Rules 13a-15(f) and 15d-15(f) under the Exchange Act. Our management, including our Chief Executive Officer and Chief Financial Officer, conducted an evaluation of the effectiveness of our internal control over financial reporting based on criteria established in the framework in Internal Control Integrated Framework issued by the Committee of Sponsoring Organizations of the Treadway Commission. Based on this evaluation, our management concluded that our internal control over financial reporting was effective as of June 30, 2012. Further, this evaluation included enhancements to our internal control over financial reporting that have not materially affected, or are reasonably likely to materially affect, our internal control over financial reporting.

Case 2:17-cv-03586-JFB-AYS   Document 47-20   Filed 10/06/17   Page 473 of 1053 PageID #: 1047

Because of its inherent limitations, internal control over financial reporting may not prevent or detect misstatements. Also, projections of any evaluation of effectiveness to future periods are subject to the risks that controls may become inadequate because of changes in conditions, or that the degree of compliance with the policies or procedures may deteriorate.

This Form 10-K does not include an attestation report of our registered public accounting firm regarding internal control over financial reporting. Management's report was not subject to attestation by our registered public accounting firm pursuant to Congressional legislation that permits us to provide only management's report in this Annual Report.

## ITEM 9B. OTHER INFORMATION

None

## PART III

## ITEM 10. DIRECTORS, EXECUTIVE OFFICERS AND CORPORATE GOVERNANCE

The information required by this item will be contained in our definitive Proxy Statement for our next Annual Stockholder Meeting or an amendment to this Annual Report on Form 10-K, to be filed with the SEC within 120 days after June 30, 2012, and is incorporated herein by reference.

## ITEM 11.  EXECUTIVE COMPENSATION

The information required by this item will be contained in our definitive Proxy Statement for our next Annual Stockholder Meeting or an amendment to this Annual Report on Form 10-K, to be filed with the SEC within 120 days after June 30, 2012, and is incorporated herein by reference.

## ITEM 12.  SECURITY OWNERSHIP OF CERTAIN BENEFICIAL OWNERS AND MANAGEMENT AND RELATED STOCKHOLDER MATTERS

The information required by this item will be contained in our definitive Proxy Statement for our next Annual Stockholder Meeting or an amendment to this Annual Report on Form 10-K, to be filed with the SEC within 120 days after June 30, 2012, and is incorporated herein by reference.

## ITEM 13. CERTAIN RELATIONSHIPS AND RELATED TRANSACTIONS AND DIRECTOR INDEPENDENCE

The information required by this item will be contained in our definitive Proxy Statement for our next Annual Stockholder Meeting or an amendment to this Annual Report on Form 10-K, to be filed with the SEC within 120 days after June 30, 2012, and is incorporated herein by reference.

## ITEM 14. PRINCIPAL ACCOUNTANT FEES AND SERVICES

The information required by this item will be contained in our definitive Proxy Statement for our next Annual Stockholder Meeting or an amendment to this Annual Report on Form 10-K, to be filed with the SEC within 120 days after June 30, 2012, and is incorporated herein by reference.

PART IV

ITEM 15. EXHIBITS AND FINANCIAL STATEMENT SCHEDULES

### EXHIBIT INDEX

Exhibit

Number　Exhibit
3 (i)　Certificate of Incorporation (1)
3 (ii)　Amended and Restated By-laws  (2)
3 (iii)　Amendment to Amended and Restated By-laws, adopted February 24, 2012 (3)
3 (iv)　Amendment to Amended and Restated By-laws, adopted September 10, 2012 (4)
4　Form of subordinated debentures issued to the U.S. Small Business Administration ("SBA") by Elk Associates Funding Corporation ("Elk") Debenture issued March 26, 1997 - principal amount - $430,000; Maturity Date - March 1, 2007; Stated Interest Rate - 7.38 %.(5)

The following debentures are omitted pursuant to Rule 483:

f.　Debenture issued July 22, 2002 - principal amount $2,050,000; Maturity Date – September 1, 2012, Stated Interest Rate – 4.67%.

g.　Debenture issued December 22, 2002 - principal amount $3,000,000; Maturity Date – March 1, 2013; Stated Interest Rate – 4.63%.

h.　Debenture issued September 28, 2003 - principal amount $5,000,000; Maturity Date – March 1 2014; Stated Interest Rate – 4.12%.

i.　Debenture issued February 14, 2004 - principal amount $1,950,000; Maturity Date – March 1 2014; Stated Interest Rate – 4.12%.

j.　Debenture issued December 26, 2009 principal amount $9,175,000 Maturity Date - March 1, 2020; Stated Interest Rate – 4.11%.

10.1　Security Agreement between Elk and the SBA, dated September 9, 1993. (5)
10.2　1999 Employee Stock Option Plan, as amended. (6)
10.3　Non-Employee Director Stock Option Plan, as amended. (6)
10.4　Custodian Agreement among Elk; Bank Leumi Trust Company of New York ("Leumi"), Israel Discount Bank of New York ("IDB"), Bank Hapoalim B.M. ("Hapoalim") and Extebank; the SBA, and IDB as Custodian; dated September 9, 1993 (the "Custodian Agreement").(5)
10.5　Agreements between Elk and the SBA.(5)
10.6　Intercreditor Agreement among Elk, Leumi, IDB, Hapoalim, Extebank and the SBA dated September 9, 1993 (the "Intercreditor Agreement") (5)
10.7　Amendments to the Custodian and Intercreditor Agreements. (5)
10.8　Bank Intercreditor Agreement among Elk, Leumi, IDB, Hapoalim and Extebank, dated September 9, 1993 (the "Bank Intercreditor Agreement"). (5)
10.9　Amendments to the Bank Intercreditor Agreement. (5)
10.10　Form of indemnity agreement between Ameritrans and each of its directors and officers.(1)
10.11　Amended and Restated Employment Agreement dated as of February 21, 2006 between Ameritrans and Lee Forlenza. (7)
10.12　Amended and Restated Employment Agreement dated as of February 21, 2006 between Ameritrans and Ellen Walker. (7)
10.13　Employment Agreement dated as of January 1, 2002 between Ameritrans and Silvia Mullens. (7)
10.14　Amendment dated September 28, 2006 to Silvia Mullens Employment Agreement dated as of January 1, 2002.
10.15　Employment Agreement dated as of January 1, 2002 between Ameritrans and Margaret Chance. (7)
10.16　Amendment dated September 28, 2006 to Margaret Chance Employment Agreement dated as of January 1, 2002.
10.17　Amended and Restated Employment Agreement dated as of September 20, 2007 between Ameritrans and Gary Granoff. (9)
10.18　Amended and Restated Consulting Agreement dated as of September 20, 2007 between Ameritrans and Gary Granoff. (9)
10.19　Amended and Restated Employment Agreement dated as of October 10, 2008 between Ameritrans and Gary Granoff. (10)
10.20　Amended and Restated Employment Agreement dated as of May 28, 2010  between Ameritrans and Michael Feinsod. (11)

| | |
|---|---|
| 10.21 | Executed Demand Grid Promissory Note dated April 30, 2009, between Elk and Israel Discount Bank of New York as amended as of October 31, 2009, January 31, 2010, and extended to (12) |
| 10.22 | Executed Fixed Rate Promissory Note dated January 4, 2010, between Elk Associates Funding Corp. and Bank Leumi USA and extended to July 6, 2010.  (12) |
| 10.23 | Agreement of Sublease made as of the 1st day of July, 2010, by and between Commonwealth Associates, LP and Ameritrans Capital Corporation/Elk Associates Funding Corporation. (13) |
| 10.24 | Agreement of Sublease dated as of the 13th day of July, 2010, by and between CRC Insurance Services, Inc and Ameritrans Capital Corporation. (13) |
| 10.25 | Executed Fixed Rate Promissory Note dated January 4, 2010 between Elk Associates Funding Corp. and Bank Leumi USA (incorporated by reference from Amendment No. 2 to the Quarterly Report for the Quarterly Period Ended December 31, 2009 on Form 10-Q/A filed with the SEC on April 13, 2011) |
| 10.26 | Executed Demand Grid Promissory Note dated April 30, 2009 between Elk Associates Funding Corp. and Israel Discount Bank of New York as amended as of October 31, 2009, January 31, 2010 and extended to June 30, 2010 (incorporated by reference from Amendment No. 2 to the Quarterly Report for the Quarterly Period Ended December 31, 2009 on Form 10-Q/A filed with the SEC on April 13, 2011) |
| 10.27 | Agreement of Sublease, effective as of July 1, 2010, between Ameritrans Capital Corporation and Commonwealth Associates, LP (incorporated by reference from the Current Report on Form 8-K filed with the SEC on July 15, 2010) |
| 10.28 | Sublease, dated July 13, 2010, between Ameritrans Capital Corporation and CRC Insurance Services, Inc. (incorporated by reference from the Current Report on Form 8-K filed with the SEC on July 15, 2010) |
| 10.29 | Independent Contractor Agreement, effective as of September 29, 2010, between Ameritrans Capital Corporation and Richard L. Feinstein (incorporated by reference from the Current Report on Form 8-K filed with the SEC on October 5, 2010) |
| 10.30 | Senior Secured Note in the principal amount of $1,500,000, dated January 19, 2011 (incorporated by reference from the Current Report on Form 8-K filed with the SEC on January 24, 2011) |
| 10.31 | Form of Amendment to Promissory Note (incorporated by reference from the Current Report on Form 8-K filed with the SEC on January 24, 2011) |
| 10.32 | Stock Pledge Agreement, dated January 19, 2011 by Ameritrans Capital Corporation in favor of Ameritrans Holdings LLC (incorporated by reference from the Current Report on Form 8-K filed with the SEC on January 24, 2011) |
| 10.33 | Separation Agreement and General Release, dated March 31, 2011, among Ameritrans Capital Corporation, Elk Associates Funding Corporation and Ellen M. Walker (incorporated by reference from the Current Report on Form 8-K filed with the SEC on April 5, 2011) |
| 10.34 | Separation Agreement and General Release, dated March 31, 2011, among Ameritrans Capital Corporation, Elk Associates Funding Corporation and Lee Forlenza (incorporated by reference from the Current Report on Form 8-K filed with the SEC on April 5, 2011) |
| 10.35 | Stock Purchase Agreement, dated April 12, 2011, by and between Ameritrans Capital Corporation ("the Company") and Renova US Holdings Ltd. (incorporated by reference from the Current Report on Form 8-K filed with the SEC on April 14, 2011) |
| 10.36 | Amendment to Senior Secured Note, dated April 12, 2011, by and between the Company and Ameritrans Holdings LLC (incorporated by reference from the Current Report on Form 8-K filed with the SEC on April 14, 2011) |
| 10.37 | Amended and Restated Pledge Agreement, dated as of May 5, 2011, by Ameritrans Capital Corporation in favor of Ameritrans Holdings, LLC (incorporated by reference from the Current Report on Form 8-K filed with the SEC on May 11, 2011) |
| 10.38 | Release Letter, dated May 5, 2011, addressed to Ameritrans Capital Corporation from Ameritrans Holdings, LLC (incorporated by reference from the Current Report on Form 8-K filed with the SEC on May 11, 2011) |
| 10.39 | First Amendment to Stock Purchase Agreement, dated as of June 17, 2011, by and between Ameritrans Capital Corporation and Renova US Holdings Ltd. (incorporated by reference from the Current Report on Form 8-K filed with the SEC on June 17, 2011) |
| 12.1 | Computation of Ratio of Earnings to Fixed Charges and Preference Dividends |
| 14.2 | Code of Ethics of Ameritrans Capital Corporation as amended July 1. 2009 |
| 21.1 | List of Subsidiaries of Ameritrans. |

44

| 23.1 | Consent of Independent Registered Public Accounting Firm |
|---|---|
| 31.1 | Certification of the Chief Executive Officer pursuant to Rule 13a-14(a) or Rule 15d-14(a), as adopted pursuant to Section 302 of the Sarbanes-Oxley Act of 2002. |
| 31.2 | Certification of the Chief Financial Officer pursuant to Rule 13a-14(a) or Rule 15d-14(a), as adopted pursuant to Section 302 of the Sarbanes-Oxley Act of 2002. |
| 32.1 | Certification of the Chief Executive Officer pursuant to 18 USC Section 1350, as adopted pursuant to Section 906 of the Sarbanes-Oxley Act of 2002. |
| 32.2 | Certification of the Chief Financial Officer pursuant to 18 USC Section 1350, as adopted pursuant to Section 906 of the Sarbanes-Oxley Act of 2002. |
| 99.1 | Ameritrans Audit Committee Charter (14) |
| 99.2 | Ameritrans Registration Statement on Form N-2 (File No. 333-132438) filed March 15, 2006. (15) |

NOTES

(1) Incorporated by reference from the Registrant's Registration Statement on Form N-14 (File No. 333-63951) filed September 22, 1998.

(2) Incorporated by reference from Exhibit 3.1 to the Registrant's Current Report on Form 8-K, filed on March 1, 2012

(3) Incorporated by reference from Exhibit 3.1 to the Registrant's Current Report on Form 8-K, filed on September 10, 2012

(4) Incorporated by reference from the Registrant's Current Report on Form 8-K (File No. 814-00193) filed on July 1, 2008.

(5) Incorporated by reference from the Registrant's Registration Statement filed on Form N-2 (File No. 333-82693) filed July 12, 1999.

(6) Incorporated by reference from the Registrant's Proxy Statement on Form 14A (File No. 814-00193) filed on May 21, 2007.

(7) Incorporated by reference from the Registrant's N-2 (File No. 333-132438) filed on March 15, 2006.

(8) Incorporated by reference from the Registrant's 10-Q (File No. 814-00193) filed February 14, 2002.

(9) Incorporated by reference from the Registrant's Current Report on Form 8-K (File No. 814-00193) filed September 20, 2007.

(10) Incorporated by reference from the Registrant's Current Report on Form 8-K (File No. 814-00193) filed on October 10, 2008.

(11) Incorporated by reference from the Registrant's Current Report on Form 8-K (File No. 814-00193) filed June 4, 2010.

(12) Incorporated by reference from the Registrant's 10-Q (File No. 814-00193) filed July 15, 2010.

(13) Incorporated by reference from the Registrant's  Current Report on Form 8-K(File No. 814-00193) filed July 15, 2010.

(14) Incorporated by reference from the Registrant's 10-Q (File No. 814-00193) filed February 14, 2007.

(15) Incorporated by reference from the Registrant's N-2 (File No. 333-132438) filed on March 15, 2006.

45

SIGNATURES

Pursuant to the requirements of Section 13 or 15(d) of Securities Act of 1934, the Registrant has duly caused this report to be signed on its behalf by the undersigned, thereunto duly authorized, on this 28th day of September, 2012.

AMERITRANS CAPITAL CORPORATION

By: /s/ Michael R. Feinsod
Michael R. Feinsod
Chief Executive Officer,
President, Chairman of the Board of Directors
and Chief Compliance Officer

By: /s/ Richard L. Feinstein
Richard L. Feinstein
Chief Financial Officer,
Senior Vice President-Finance

As required by the Securities Exchange Act of 1934, this report has been signed by the following persons in the capacities and on the dates indicated.

| SIGNATURE | TITLE | DATE |
|---|---|---|
| /s/ Michael Feinsod<br>Michael Feinsod | Chief Executive Officer, President, Chairman of the Board of Directors and Chief Compliance Officer | September 28, 2012 |
| /s/ Steven Etra<br>Steven Etra | Director | September 28, 2012 |
| /s/ John R. Laird<br>John R. Laird | Director | September 28, 2012 |
| /s/ Howard F. Sommer<br>Howard F. Sommer | Director | September 28, 2012 |
| /s/ Ivan Wolpert<br>Ivan Wolpert | Director | September 28, 2012 |
| /s/ Peter Boockvar<br>Peter Boockvar | Director | September 28, 2012 |
| /s/ Elliott Singer<br>Elliott Singer | Director | September 28, 2012 |

46

AMERITRANS CAPITAL CORPORATION AND SUBSIDIARIES

CONTENTS

June 30, 2012, 2011 and 2010

| | Page |
|---|---|
| **REPORT OF INDEPENDENT REGISTERED PUBLIC ACCOUNTING FIRM** | |
| Rosen Seymour Shapss Martin & Company LLP | F-2 |
| **CONSOLIDATED FINANCIAL STATEMENTS** | |
| Statements of Assets and Liabilities at June 30, 2012 and 2011 | F-3 |
| Statements of Operations for the Years Ended June 30, 2012, 2011 and 2010 | F-4 |
| Statements of Changes in Net Assets for the Years Ended June 30,  2012, 2011 and 2010 | F-5 |
| Statements of Cash Flows for the Years Ended June 30, 2012, 2011 and 2010 | F-6 |
| Schedules of Investments as of June 30, 2012 and 2011 | F-7 – F-10 |
| Notes to Consolidated Financial Statements | F-11 – F-38 |

F-1

REPORT OF INDEPENDENT REGISTERED PUBLIC ACCOUNTING FIRM

To the Board of Directors and Stockholders of Ameritrans Capital Corporation and Subsidiaries:

We have audited the accompanying consolidated statements of assets and liabilities, including the schedules of investments, of Ameritrans Capital Corporation and Subsidiaries (the "Company") as of June 30, 2012 and 2011, and the related consolidated statements of operations, changes in net assets, and cash flows for each of the years in the three-year period ended June 30, 2012, and the financial highlights for each of the periods presented.  These consolidated financial statements and financial highlights are the responsibility of the Company's management.  Our responsibility is to express an opinion on these consolidated financial statements based on our audits.

We conducted our audits in accordance with the standards of the Public Company Accounting Oversight Board (United States). Those standards require that we plan and perform the audit to obtain reasonable assurance about whether the financial statements and financial highlights are free of material misstatement.  The Company is not required to have, nor were we engaged to perform, an audit of its internal control over financial reporting.  Our audit included consideration of internal control over financial reporting as a basis for designing audit procedures that are appropriate in the circumstances, but not for the purpose of expressing an opinion on the effectiveness of the Company's internal control over financial reporting.  Accordingly, we express no such opinion.  An audit also includes examining, on a test basis, evidence supporting the amounts and disclosures in the financial statements, assessing the accounting principles used and significant estimates made by management, as well as evaluating the overall financial statement presentation.  We believe that our audits provide a reasonable basis for our opinion.

In our opinion, the consolidated financial statements and financial highlights referred to above present fairly, in all material respects, the financial position of Ameritrans Capital Corporation and Subsidiaries as of June 30, 2012 and 2011, and the results of their operations and their cash flows for each of the years in the three-year period ended June 30, 2012 and the financial highlights for each of the periods presented, in conformity with accounting principles generally accepted in the United States of America.

The accompanying financial statements have been prepared assuming that the Company will continue as a going concern. As discussed in Note 1 to the financial statements, the Company's cash resources will not be sufficient to sustain its operations through 2013 without additional financing. The Company has also suffered recurring operating losses and negative cash flows from operations. This raises substantial doubt about the Company's ability to continue as a going concern. Management's plans in regard to these matters are also described in Note 1. The financial statements do not include any adjustments that might result from the outcome of this uncertainty.

/s/ Rosen Seymour Shapss Martin & Company LLP

New York, New York
September 28, 2012

F-2

AMERITRANS CAPITAL CORPORATION AND SUBSIDIARIES

CONSOLIDATED STATEMENTS OF ASSETS AND LIABILITIES

June 30, 2012 and 2011

|  | 2012 | 2011 |
|---|---|---|
| **Assets** | | |
| Investments at fair value (cost of $22,401,381 and $27,828,620, respectively): | | |
| Non-controlled/non-affiliated investments | $ 16,169,728 | $ 23,565,240 |
| Non-controlled affiliated investments | - | 4,761 |
| Controlled affiliated investments | 332,878 | 351,734 |
| Total investments at fair value | 16,502,606 | 23,921,735 |
| Cash | 184,338 | 4,151,616 |
| Accrued interest receivable | 807,643 | 412,647 |
| Assets acquired in satisfaction of loans | 878,325 | 1,075,547 |
| Furniture and equipment, net | 44,359 | 52,075 |
| Deferred loan costs, net | 260,459 | 331,310 |
| Prepaid expenses and other assets | 263,641 | 177,204 |
| Total assets | $ 18,941,371 | $ 30,122,134 |
| **Liabilities and Net Assets (Liabilities)** | | |
| **Liabilities:** | | |
| Debentures payable to SBA | $ 21,175,000 | $ 21,175,000 |
| Note payable, other | - | 4,500,000 |
| Accrued expenses and other liabilities | 312,353 | 1,505,969 |
| Accrued interest payable | 342,506 | 367,572 |
| Dividends payable | 675,000 | 337,500 |
| Total liabilities | 22,504,859 | 27,886,041 |
| **Commitments and contingencies** (Notes 2, 4, 5, 9 and 12) | | |
| **Net Assets (Liabilities):** | | |
| Preferred stock 9,500,000 shares authorized, none issued or outstanding | - | - |
| 9-3/8% cumulative participating redeemable preferred stock; $.01 par value, $12.00 face value, 500,000 shares authorized; 300,000 shares issued and outstanding | 3,600,000 | 3,600,000 |
| Common stock, $.0001 par value; 45,000,000 shares authorized, 3,405,583 shares issued; 3,395,583 shares outstanding | 341 | 341 |
| Additional paid-in capital | 21,330,544 | 21,330,544 |
| Losses and distributions in excess of earnings | (22,525,598) | (18,717,907) |
| Net unrealized depreciation on investments | (5,898,775) | (3,906,885) |
| Total | (3,493,488) | 2,306,093 |
| Less: Treasury stock, at cost, 10,000 shares of common stock | (70,000) | (70,000) |
| Total net assets (liabilities) | (3,563,488) | 2,236,093 |
| Total liabilities and net assets | $ 18,941,371 | $ 30,122,134 |
| Net liability value per common share | $ (2.11) | $ (0.40) |

The accompanying notes are an integral part of these consolidated financial statements.

AMERITRANS CAPITAL CORPORATION AND SUBSIDIARIES

CONSOLIDATED STATEMENTS OF OPERATIONS

Years Ended June 30, 2012, 2011 and 2011

| | 2012 | 2011 | 2010 |
|---|---|---|---|
| **Investment income:** | | | |
| Interest on loans receivable: | | | |
| Non-controlled/non-affiliated investments | $ 2,022,374 | $ 2,062,576 | $ 1,544,667 |
| Non-controlled affiliated investments | - | - | - |
| Controlled affiliated investments | 27,237 | 39,644 | 45,944 |
| | 2,049,611 | 2,102,220 | 1,590,611 |
| Fees and other income | 11,466 | 26,412 | 64,825 |
| Total investment income | 2,061,077 | 2,128,632 | 1,655,436 |
| | | | |
| **Operating expenses:** | | | |
| Interest | 1,280,954 | 1,446,193 | 906,202 |
| Salaries and employee benefits | 1,275,282 | 1,570,634 | 1,840,849 |
| Occupancy costs | 173,187 | 171,675 | 519,876 |
| Legal fees | 1,407,893 | 1,999,752 | 477,700 |
| Accounting and compliance fees | 737,036 | 729,993 | 631,012 |
| Directors fees and expenses | 150,641 | 305,140 | 195,668 |
| Advisory fees | 101,984 | 245,894 | 363,466 |
| Other administrative expenses | 942,590 | 882,100 | 697,078 |
| Total operating expenses | 6,069,567 | 7,351,381 | 5,631,851 |
| Net investment loss, before gain on extinguishment of debt | (4,008,490) | (5,222,749) | (3,976,415) |
| Gain on extinguishment of debt | 353,620 | - | - |
| Net investment loss | (3,654,870) | (5,222,749) | (3,976,415) |
| **Net realized gains (losses) on investments:** | | | |
| Non-controlled/non-affiliated investments | | (437,630) | (993,848) |
| Non-controlled affiliated investments | - | - | - |
| Controlled affiliated investments | 184,679 | - | - |
| | 184,679 | (437,630) | (993,848) |
| **Net unrealized depreciation on investments** | (1,991,890) | (142,197) | (1,404,700) |
| **Net realized/unrealized losses on investments** | (1,807,211) | (579,827) | (2,398,548) |
| Net decrease in net assets from operations | (5,462,081) | (5,802,576) | (6,374,963) |
| **Distributions to preferred shareholders** | (337,500) | (337,500) | (421,875) |
| | | | |
| Net decrease in net assets from operations available to common shareholders | $ (5,799,581) | $ (6,140,076) | $ (6,796,838) |
| **Weighted Average Number of Common Shares Outstanding:** | | | |
| Basic and diluted | 3,395,583 | 3,395,583 | 3,395,583 |
| **Net Decrease in Net Assets from Operations Per Common Share:** | | | |
| Basic and diluted | $ (1.71) | $ (1.81) | $ (2.00) |

The accompanying notes are an integral part of these consolidated financial statements.

F-4

AMERITRANS CAPITAL CORPORATION AND SUBSIDIARIES

CONSOLIDATED STATEMENTS OF CHANGES IN NET ASSETS

Years Ended June 30, 2012, 2011 and 2010

|  | **2012** | **2011** | **2010** |
|---|---|---|---|
| **Decrease in net assets from operations:** |  |  |  |
| Net investment loss | $ (3,654,870) | $ (5,222,749) | $ (3,976,415) |
| Net realized gains ( losses) from investments | 184,679 | (437,630) | (993,848) |
| Unrealized depreciation on investments | (1,991,890) | (142,197) | (1,404,700) |
| Net decrease in net assets resulting from operations | (5,462,081) | (5,802,576) | (6,374,963) |
| **Shareholder distributions:** |  |  |  |
| Distributions to preferred shareholders | (337,500) | (337,500) | (421,875) |
| **Capital share transactions:** |  |  |  |
| Stock options compensation expense | - | - | 29,165 |
| Net decrease in net assets resulting from capital shares transactions and shareholder distributions | (337,500) | (337,500) | (392,710) |
| Total decrease in net assets | (5,779,581) | (6,140,076) | (6,767,673) |
| **Net assets (liabilities):** |  |  |  |
| Beginning of year | 2,236,093 | 8,376,169 | 15,143,842 |
| End of year | $ (3,563,488) | $ 2,236,093 | $ 8,376,169 |
| Net assets (liabilities) per common | $ (7,163,488) | $ (1,363,907) | $ 4,776,169 |
| Net assets per preferred | $ 3,600,000 | $ 3,600,000 | $ 3,600,000 |

The accompanying notes are an integral part of these consolidated financial statements.

F-5

AMERITRANS CAPITAL CORPORATION AND SUBSIDIARIES

CONSOLIDATED STATEMENTS OF CASH FLOWS

Years Ended June 30, 2012, 2011 and 2010

| | 2012 | 2011 | 2010 |
|---|---|---|---|
| **Cash flows from operating activities:** | | | |
| Net decrease in net assets from operations | $ (5,462,081) | $ (5,802,576) | $ (6,374,963) |
| Adjustments to reconcile net decrease in net assets from operations to net cash provided by (used in) operating activities: | | | |
| Depreciation and amortization | 80,456 | 79,550 | 88,885 |
| Deferred compensation | - | - | 29,166 |
| Net realized (gains) losses on investments | (184,679) | 437,630 | 993,848 |
| Net unrealized depreciation on investments | 1,991,890 | 142,197 | 1,404,700 |
| Portfolio investments | (3,991,943) | (13,115,304) | (8,139,938) |
| Proceeds from principal receipts, sales, maturity of investments | 9,603,861 | 14,069,440 | 6,695,159 |
| Transfer out of portfolio to assets acquired in satisfaction of loan | - | (1,047,222) | - |
| Impairments on assets acquired in satisfaction of loans | 197,222 | - | - |
| Gain on extinguishment of debt | (353,620) | - | - |
| Loss on disposal of furniture, equipment and leasehold improvements | - | - | 65,623 |
| Changes in operating assets and liabilities: | | | |
| Accrued interest receivable | (394,996) | 5,278 | 122,288 |
| Prepaid expenses and other assets | (86,437) | 25,304 | (56,106) |
| Accrued expenses and other liabilities | (1,193,616) | 929,727 | 14,093 |
| Accrued interest payable | (25,066) | 39,996 | 117,411 |
| Total adjustments | 5,643,073 | 1,566,596 | 1,335,129 |
| Net cash provided by (used in) operating activities | 180,9911 | (4,235,980) | (5,039,834) |
| | | | |
| **Cash flows from investing activities:** | | | |
| Purchase of furniture and equipment | (1,889) | (20,520) | (6,365) |
| Net cash used in investing activities | (1,889) | (20,520) | (6,365) |
| | | | |
| **Cash flows from financing activities:** | | | |
| Proceeds from debentures payable to SBA | - | - | 9,175,000 |
| Proceeds from note payable, other | - | 1,500,000 | 3,000,000 |
| Repayment of note payable, other | (4,146,380) | - | - |
| Repayment of note payable, banks | - | (370,000) | - |
| Deferred loan costs | - | - | (314,244) |
| Dividends paid on preferred stock | - | (84,375) | (337,500) |
| Net cash provided by (used in) financing activities | (4,146,380) | 1,045,625 | 11,523,256 |
| Net increase (decrease) in cash and cash equivalents | (3,967,278) | (3,210,875) | 6,477,057 |
| | | | |
| **Cash:** | | | |
| Beginning of year | 4,151,616 | 7,362,491 | 885,434 |
| End of year | $ 184,338 | $ 4,151,616 | $ 7,362,491 |
| | | | |
| **Supplemental disclosure of cash flow information:** | | | |
| Cash paid during the year for: | | | |
| Interest | $ 1,306,020 | $ 1,406,197 | $ 788,791 |
| | | | |
| **Supplemental disclosure of non-cash investing and financing activities:** | | | |
| Accrued dividends on preferred stock | $ 337,500 | $ 337,500 | $ 84,375 |

The accompanying notes are an integral part of these consolidated financial statements.

**AMERITRANS CAPITAL CORPORATION AND SUBSIDIARIES**
**CONSOLIDATED STATEMENT OF INVESTMENTS**

| Portfolio Company (1) | Investment Investment Rate/Maturity | Principal | Net Cost | Value |
|---|---|---|---|---|
| | | \multicolumn Portfolio Valuation as of June 30, 2012 | | |
| **Commercial Loans Receivable (146.72%)** [4] | | | | |
| PPCP Inc. [6] | Business Loan | | | |
| *Computer Software* | 8.00%, due 7/08 and 1/10 | $ 36,691 | $ 36,691 | $ - |
| Geronimo ATM Fund LLC [6] | Collateralized Business Loan | | | |
| *ATM Operato* | 12.0%, due 5/09 | 123,282 | 123,282 | - |
| Vivas & Associates, Inc. [6] | Collateralized Business Loan | | | |
| *Nail Salon* | 9.00%, due 1/10 | 11,985 | 11,985 | - |
| E&Y General Construction Co. [6] | Senior Real Estate Mortgage | | | |
| *Construction Services* | 10.50%, due 10/10 | 870,791 | 870,791 | 870,791 |
| Soundview Broadcasting LLC | Senior Real Estate Mortgage | | | |
| *Television and Broadcasting* | 6.00%, due 9/16 | 1,761,340 | 1,761,340 | 1,761,340 |
| Golden Triangle Enterprises LLC | Senior Real Estate Mortgage | | | |
| *Retail Food Service* | 4.74%, due 12/13 | 174,759 | 174,759 | 174,759 |
| Conklin Services & Construction Inc. [6] | Collateralized Business Loan | | | |
| *Specialty Construction and Maintenance* | 11.00%, due 10/08 | 1,648,181 | 1,648,181 | 1,450,000 |
| Mountain View Bar & Grill Inc. [6] | Collateralized Business Loan | | | |
| *Retail Food Service* | 12.00%, due 5/09 | 406,067 | 406,067 | 406,067 |
| J. JG. Associates, Inc. [6] | Senior Loan | | | |
| *Consumer Receivable Collections* | no stated rate, no maturity | 182,936 | 182,936 | 85,250 |
| J. JG. Associates, Inc. [6] | Senior Loan | | | |
| *Consumer Receivable Collections* | no stated rate, no maturity | 35,781 | 35,781 | 35,781 |
| Car-Matt Real Estate LLC [6] | Senior Real Estate Mortgage | | | |
| *Real Estate Mortgage* | 12.00%, due 11/08 | 135,577 | 135,577 | 18,933 |
| CMCA, LLC [3] | Collateralized Business Loan | | | |
| *Consumer Receivable Collections* | 12,00% no stated maturity | 216,617 | 216,617 | 216,617 |
| CMCA, LLC #2 [3][6] | Collateralized Business Loan | | | |
| *Consumer Receivable Collections* | 12.00%, no stated maturity | 106,261 | 106,261 | 106,261 |
| Andy Fur [6] | Collateralized Business Loan | | | |
| *Dry Cleaners* | 11.5%, due 1/10 | 12,103 | 12,103 | - |
| Greaves-Peters Laundry Systems Inc.[6] | Collateralized Business Loan | | | |
| *Laundromat* | 10.90%, due 9/13 | 20,471 | 20,471 | 20,471 |
| Other Miscellaneous Loans [5][6] | | 115,031 | 115,031 | 81,977 |
| | Total Commercial Loans | | 5,857,873 | 5,228,247 |
| **Corporate Loans Receivable (196.20%)** [4] | | | | |
| Charlie Brown's Acquisition Co. [6] | Term Loan B | | | |
| *Retail Food Service* | 10.25%, all PIK, due 10/13 | 2,356,682 | 2,356,682 | 471,336 |
| Alpha Media Group Inc. | Term Loan, First Lien | | | |
| *Publishing* | 12.00%, all PIK , due 7/13 | 2,687,778 | 2,649,826 | 940,722 |
| Hudson Products Holdings Inc. | Term Loan, First Lien | | | |
| *Diversified Manufacturing* | 8.5%, due 8/15 | 1,259,899 | 1,239,147 | 1,165,407 |
| Education Affiliates Inc. | Term Loan, First Lien | | | |
| *Private Education* | 8.0%, due 1/15 | 773,449 | 763,519 | 719,308 |
| | Term Loan, First Lien | | | |
| Shearer's Foods Inc. | 15.75%, of which 3.75% is PIK, due | | | |
| *Wholesale Food Supplier* | 6/15 | 1,075,400 | 1,059,775 | 1,075,400 |
| | Term Loan, First Lien | | | |
| Impact Confections Inc. | 17.00%, of which 5% is PIK, due | | | |
| Candy Manufacturer | 07/15 | 1,618,071 | 1,618,071 | 1,618,071 |
| Sterling Infosystems, Inc. | Term Loan, First Lien | | | |
| Information Data Systems | 7.25%, due 02/18 | 1,000,000 | 981,171 | 1,001,250 |
| | Total Corporate Loans | | 10,668,191 | 6,991,494 |

| | | |
|---|---|---|
| Total loans receivable | 16,526,064 | 12,219,741 |

The accompanying notes are an integral part of these consolidated financial statements.

F-7

**AMERITRANS CAPITAL CORPORATION AND SUBSIDIARIES**
**CONSOLIDATED STATEMENT OF INVESTMENTS (continued)**

| Portfolio Company (1) | Investment Investment Rate/Maturity | Portfolio Valuation as of June 30, 2012 | | |
|---|---|---|---|---|
| | | Principal | Net Cost | Value |
| **Life Insurance Settlement Contracts (89.91%)** [4] | | | | |
| Life Settlement Contracts | 4 life insurance policies, aggregate face value of $17,250,000 | | $  4,573,290 | $  3,204,001 |
| **Equity Investments (30.28.%)** [4] | | | | |
| MBS Colonnade, Ltd. | | | | |
| *Rental Real Estate Limited Partnership* | Limited Partnership Interest | | 50,000 | 10,211 |
| MBS Sage Creek, Ltd. | | | | |
| *Rental Real Estate Limited Partnership* | Limited Partnership Interest | | 50,000 | 2,377 |
| MBS Walnut Creek, Ltd. | | | | |
| *Rental Real Estate Limited Partnership* | Limited Partnership Interest | | 25,000 | - |
| 238 W. 108 Realty LLC [2] | | | | |
| *Residential Real Estate Development* | 5.00% LLC Interest | | 100,000 | - |
| Asset Recovery & Management, LLC [3] | | | | |
| *Consumer Receivable Collections* | 30.00% LLC Interest | | 6,000 | 6,000 |
| CMCA, LLC [3] | | | | |
| *Consumer Receivable Collections* | 30.00% LLC Interest | | 4,000 | 4,000 |
| Soha Terrace II LLC | | | | |
| *Real Estate Development* | 4.20% LLC Interest | | 700,000 | 1,050,000 |
| Fusion Telecommunications | | | | |
| *Internet Telephony* | 69,736 Shares of Common Stock | | 367,027 | 6,276 |
| | Total equity investments | | 1,302,027 | 1,078,864 |
| | Total investments | | $ 22,401,381 | $ 16,502,606 |

(1)  As of July 5, 2011, all investments previously pledged as collateral for a note payable to a bank were released in connection with the expiration of the credit line. All investments, other than investments held through Elk Associates Funding Corporation, were pledged as collateral for a Senior Secured Note, but were released as such notes were paid off in March 2012 (see Note 5 to the consolidated financial statements).

(2)  As defined in the Investment Company Act of 1940, we are an affiliate of this portfolio company because, as of June 30, 2012, we own 5% or more of the portfolio company's outstanding voting securities.

(3)  As defined in the Investment Company Act of 1940, we maintain "control" of this portfolio company because we own more than 25% of the portfolio company's outstanding voting securities.

(4)  Percentage of net assets.

(5)  Other small balance loans.

(6)  Loan receivable is on non-accrual status and therefore is considered non-income producing. Included in Other Miscellaneous Loans is a loan at  no value that is on non-accrual status.

The accompanying notes are an integral part of these consolidated financial statements.

F-8

**AMERITRANS CAPITAL CORPORATION AND SUBSIDIARIES**
**CONSOLIDATED STATEMENT OF INVESTMENTS**

| Portfolio Company (1) | Investment Investment Rate/Maturity | Portfolio Valuation as of June 30, 2011 | | |
|---|---|---|---|---|
| | | Principal | Net Cost | Value |
| **Commercial Loans Receivable (279.27%)** [4] | | | | |
| PPCP Inc. [6] | Business Loan | | | |
| *Computer Software* | 8.00%, due 7/08 and 1/10 | $    36,691 | $    36,691 | $          - |
| Geronimo ATM Fund LLC [6] | Collateralized Business Loan | | | |
| *ATM Operator* | 12.0%, due 5/09 | 123,282 | 123,282 | - |
| Vivas & Associates, Inc. [6] | Collateralized Business Loan | | | |
| *Nail Salon* | 9.00%, due 1/10 | 11,985 | 11,985 | - |
| E&Y General Construction Co. [6] | Senior Real Estate Mortgage | | | |
| *Construction Services* | 10.50%, due 10/10 | 870,791 | 870,791 | 870,791 |
| Soundview Broadcasting LLC | Senior Real Estate Mortgage | | | |
| *Television and Broadcasting* | 6.00%, due 9/11 | 1,820,868 | 1,820,868 | 1,820,868 |
| Golden Triangle Enterprises LLC | Senior Real Estate Mortgage | | | |
| *Retail Food Service* | 4.74%, due 12/13 | 218,824 | 218,824 | 218,824 |
| Conklin Services & Construction Inc. [6] | Collateralized Business Loan | | | |
| Specialty Construction and Maintenance | 11.00%, due 10/08 | 1,648,181 | 1,648,181 | 1,450,000 |
| Mountain View Bar & Grill Inc. [6] | Collateralized Business Loan | | | |
| *Retail Food Service* | 12.00%, due 5/09 | 406,067 | 406,067 | 406,067 |
| J. JG. Associates, Inc. [6] | Senior Loan | | | |
| *Consumer Receivable Collections* | no stated rate, no maturity | 185,436 | 185,436 | 87,750 |
| J. JG. Associates, Inc. [6] | Senior Loan | | | |
| *Consumer Receivable Collections* | no stated rate, no maturity | 36,121 | 36,121 | 36,121 |
| Car-Matt Real Estate LLC [6] | Senior Real Estate Mortgage | | | |
| *Real Estate Mortgage* | 12.00%, due 11/08 | 135,577 | 135,577 | 135,577 |
| CMCA, LLC [3] | Collateralized Business Loan | | | |
| *Consumer Receivable Collections* | 12,00% no stated maturity | 235,473 | 235,473 | 235,473 |
| CMCA, LLC #2 [3][6] | Collateralized Business Loan | | | |
| *Consumer Receivable Collections* | 12.00%, no stated maturity | 106,261 | 106,261 | 106,261 |
| Adiel Homes Inc. [6] | Senior Real Estate Mortgage | | | |
| *Construction Services* | 12.00%, due 1/09 | 270,000 | 270,000 | 270,000 |
| Adiel Homes Inc. [6] | Senior Real Esate Mortgage | | | |
| *Construction Services* | 12.0%, no stated maturity | 89,396 | 89,396 | 89,396 |
| Andy Fur [6] | Collateralized Business Loan | | | |
| *Dry Cleaners* | 11.5%, due 1/10 | 12,103 | 12,103 | - |
| Greaves-Peters Laundry Systems Inc.[6] | Collateralized Business Loan | | | |
| *Laundromat* | 10.90%, due 9/13 | 20,471 | 20,471 | 20,471 |
| Patroon Operating Co. LLC | Collateralized Business Loan | | | |
| *Retail Food Service* | 10.00%, due 6/12 | 250,000 | 250,000 | 250,000 |
| Medallion Loans | 2 Medallion Loan | | | |
| *Taxicab Medallion Loans* | 11.7% weighted average rate | 152,000 | 152,000 | 152,000 |
| Other Miscellaneous Loans [5][6] | | 116,270 | 116,270 | 95,216 |
| | Total Commercial Loans | | 6,745,797 | 6,244,815 |
| **Corporate Loans Receivable (638.67%)** [4] | | | | |
| Charlie Brown's Acquisition Co. [6] | Term Loan B | | | |
| *Retail Food Service* | 10.25%, all PIK, due 10/13 | 2,356,682 | 2,356,682 | 1,343,309 |
| Resco Products Inc. | Term Loan, First Lien | | | |
| *Diversified Manufacturing* | 8.50%, due 6/13 | 1,301,945 | 1,301,945 | 1,301,945 |
| Alpha Media Group Inc. | Term Loan, First Lien 12.00%, of which 8% is PIK , due | | | |
| *Publishing* | 7/13 | 2,359,106 | 2,304,012 | 1,344,691 |
| Hudson Products Holdings Inc. | Term Loan, First Lien | | | |
| *Diversified Manufacturing* | 8.5%, due 8/15 | 1,269,691 | 1,242,511 | 1,231,600 |
| Education Affiliates Inc. | Term Loan, First Lien | 829,824 | 815,922 | 829,824 |

| | | | | |
|---|---|---|---|---|
| *Private Education* | 8.0%, due 1/15 | | | |
| Fairway Group Acquisition Company | Term Loan, First Lien | | | |
| *Diversified Supermarkets* | 7.5%, due 3/17 | 1,500,000 | 1,485,635 | 1,500,000 |
| Shearer's Foods Inc. | Term Loan, First Lien | | | |
| *Wholesale Food Supplier* | 15.50%, due 6/15 | 1,035,751 | 1,015,960 | 1,043,519 |
| Syncsort Incorporated | Term Loan, First Lien | | | |
| *Data Protection Software* | 7.50%, due 03/15 | 910,067 | 894,298 | 910,067 |

The accompanying notes are an integral part of these consolidated financial statements.

F-9

**AMERITRANS CAPITAL CORPORATION AND SUBSIDIARIES
CONSOLIDATED STATEMENT OF INVESTMENTS (continued)**

| Portfolio Company (1) | Investment Investment Rate/Maturity | Principal | Net Cost | Value |
|---|---|---|---|---|
| Centerplate Inc. | Term Loan, First Lien | | | |
| *Stadium Concessions Provider* | 10.5%, due 09/16 | $ 992,500 | $ 967,150 | $ 997,463 |
| Impact Confections Inc. | Term Loan, First Lien | | | |
| *Candy Manufacturer* | 17.00%, due 07/15 | 1,538,367 | 1,538,367 | 1,538,367 |
| Affinity Group Inc. | Term Loan, First Lien | | | |
| *Direct marketing organization-focus RV's* | 11.50%, due 12/16 | 1,250,000 | 1,226,456 | 1,312,500 |
| Miramax Film NY, LLC | Term Loan, First Lien | | | |
| *Film Library* | 7.75%, due 06/16 | 892,308 | 874,126 | 928,000 |
| | Total Corporate Loans | | 16,023,064 | 14,281,285 |
| | **Total loans receivable** | | 22,768,861 | 20,526,100 |
| **Life Insurance Settlement Contracts (107.69%) (4)** | | | | |
| | 5 life insurance policies, aggregate | | | |
| Life Settlement Contracts | face value of $17,659,809 | | 3,681,632 | 2,408,000 |
| **Equity Investments (44.17%) (4)** | | | | |
| MBS Serrano, Ltd. | | | | |
| *Rental Real Estate Limited Partnership* | Limited Partnership Interest | | 50,600 | 8,487 |
| MBS Colonnade, Ltd. | | | | |
| *Rental Real Estate Limited Partnership* | Limited Partnership Interest | | 50,000 | 10,211 |
| MBS Sage Creek, Ltd. | | | | |
| *Rental Real Estate Limited Partnership* | Limited Partnership Interest | | 50,000 | 10,015 |
| MBS Walnut Creek, Ltd. | | | | |
| *Rental Real Estate Limited Partnership* | Limited Partnership Interest | | 25,000 | - |
| 238 W. 108 Realty LLC (2) | | | | |
| *Residential Real Estate Development* | 5.00% LLC Interest | | 100,000 | 4,761 |
| Asset Recovery & Management, LLC (3) | | | | |
| *Consumer Receivable Collections* | 30.00% LLC Interest | | 6,000 | 6,000 |
| CMCA, LLC (3) | | | | |
| *Consumer Receivable Collections* | 30.00% LLC Interest | | 4,000 | 4,000 |
| Soha Terrace II LLC | | | | |
| *Real Estate Development* | 4.20% LLC Interest | | 700,000 | 936,337 |
| Fusion Telecommunications | | | | |
| *Internet Telephony* | 69,736 Shares of Common Stock | | 367,027 | 6,974 |
| EraGen Biosciences | | | | |
| *Analytic Compounds* | 17,000 shares of Common Stock | | 25,500 | 850 |
| | Total equity investments | | 1,378,127 | 987,635 |
| | Total investments | | $ 27,828,620 | $ 23,921,735 |

(1)  As of July 5, 2011, all investments previously pledged as collateral for a note payable to a bank were released in connection with the expiration of the credit line. All investments, other than investments held through Elk Associates Funding Corporation, were pledged as collateral for a Senior Secured Note, but were released as such notes were paid off in March 2012 (see Note 5 to the consolidated financial statements).

(2)  As defined in the Investment Company Act of 1940, we are an affiliate of this portfolio company because, as of June 30, 2011, we own 5% or more of the portfolio company's outstanding voting securities.

(3)  As defined in the Investment Company Act of 1940, we maintain "control" of this portfolio company because we own more than 25% of the portfolio company's outstanding voting securities.

(4)  Percentage of net assets.

(5)  Other small balance loans.

(6)  Loan receivable is on non-accrual status and therefore is considered non-income producing. Included in Other Miscellaneous Loans is a loan valued at $12,000 that is on non-accrual status.

The accompanying notes are an integral part of these consolidated financial statements.

F-10

AMERITRANS CAPITAL CORPORATION AND SUBSIDIARIES

NOTES TO CONSOLIDATED FINANCIAL STATEMENTS

Years Ended June 30, 2012, 2011 and 2010

**1. Organization and Summary of Significant Accounting Policies**

Organization and Principal Business Activity

Ameritrans Capital Corporation ("Ameritrans" or the "Company") is a Delaware closed-end investment company formed in 1998, which, among other activities, makes loans and investments with the goal of generating both current income and capital appreciation. Through our subsidiary, Elk Associates Funding Corporation ("Elk"), we make loans to finance the acquisition and operation of small businesses as permitted by the U.S. Small Business Administration (the "SBA"). Ameritrans also makes direct loans to and directly invests in opportunities that Elk has historically been unable to make due to SBA restrictions. Ameritrans makes loans which have primarily been secured by real estate mortgages or, in the case of corporate loans, generally are senior within the capital structure. Elk was organized primarily to provide long-term loans to businesses eligible for investments by small business investment companies (each an "SBIC") under the Small Business Investment Act of 1958, as amended (the "1958 Act"). Elk makes loans for financing the purchase or continued ownership of businesses that qualify for funding as small concerns under SBA Regulations. The Company invests in: 1) Corporate Loans Receivable; 2) Commercial Loans Receivable; 3) Life Insurance Settlements and 4) Equity Investments.

Both Ameritrans and Elk are registered as business development companies, or "BDCs," under the Investment Company Act of 1940, as amended (the "1940 Act"). Accordingly, Ameritrans and Elk are subject to the provisions of the 1940 Act governing the operation of BDCs. Both companies are managed by their executive officers under the supervision of their Boards of Directors.

Basis of Presentation and Consolidation

The consolidated financial statements are presented based on accounting principles generally accepted in the United States of America ("GAAP"). These consolidated financial statements include the accounts of Ameritrans, Elk Capital Corporation ("Elk Capital"), Elk and Elk's wholly owned subsidiary, EAF Holding Corporation ("EAF") and five single-member, limited liability companies, each wholly-owned by Ameritrans and each holding one insurance policy in connection with our life settlement investments portfolio. All significant inter-company transactions have been eliminated in consolidation.

Elk Capital is a wholly owned subsidiary of Ameritrans, which may engage in lending and investment activities similar to its parent.

EAF began operations in December 1993 and owns and operates certain real estate assets acquired in satisfaction of defaulted loans by Elk debtors. At June 30, 2012, EAF was operating the real estate of Sealmax. Inc. and 633 Meade Street, acquired in satisfaction of loans.

F-11

Investment Valuations

The Company's loans receivable, net of participations and any unearned discount are considered investment securities under the 1940 Act and are recorded at fair value. As part of fair value methodology, loans are valued at cost adjusted for any unrealized appreciation (depreciation). Since no ready market exists for these loans, the fair value is determined in good faith by management and approved by its Board of Directors. In determining the fair value, the Company and Board of Directors consider factors such as the financial condition of the borrower, the adequacy of the collateral, individual credit risks, historical loss experience and the relationships between current and projected market rates and portfolio rates of interest and maturities. Foreclosed properties, which represent collateral received from defaulted borrowers, are valued similarly.

Loans are, generally, considered "non–performing" once they become 90 days past due as to principal or interest. The value of past due loans are periodically determined in good faith by management, and if, in the judgment of management, the amount is not collectible and the fair value of the collateral is less than the amount due, the value of the loan will be reduced to fair value .

F-12

AMERITRANS CAPITAL CORPORATION AND SUBSIDIARIES

NOTES TO CONSOLIDATED FINANCIAL STATEMENTS (Continued)

Years Ended June 30, 2012, 2011 and 2010

Equity investments (preferred stock, common stock, stock warrants, LLC interests, and LP interests including certain controlled subsidiary portfolio investments) and investment securities are recorded at fair value, represented as cost, plus or minus unrealized appreciation or depreciation.  Investments for which market quotations are readily available are valued at such quoted amounts. If no public market exists the fair value of investments that have no ready market are determined in good faith by management and approved by the Board of Directors, based upon assets and revenues of the underlying investee companies as well as general market trends for businesses in the same industry.

The Company records the investment in life insurance policies at the Company's estimate of their fair value based upon various factors including a discounted cash flow analysis of anticipated life expectancies, future premium payments and anticipated death benefits. The Company also considers the market for similar policies. The fair value of the investment in life settlement contracts have no ready market and are determined in good faith by management and approved by the Board of Directors.

Because of the inherent uncertainty of valuations, the Company's estimates of the values of the investments may differ significantly from the values that would have been used had a ready market for the investments existed and the differences could be material.

Income Taxes

The Company has elected to be taxed as a Regulated Investment Company ("RIC") under the Internal Revenue Code (the "Code").  A RIC, generally, is not taxed at the corporate level to the extent its income is distributed to its stockholders. In order to qualify as a RIC, a company must pay out at least 90 percent of its net taxable investment income to its stockholders as well as meet other requirements under the Code.  In order to preserve this election for fiscal year 2011, the Company intends to make the required distributions to its stockholders to the extent the Company has net taxable investment income. No dividends on the Company's common stock have been paid in each of the fiscal years ended June 30, 2012, 2011 and 2010, inasmuch as the Company had no taxable investment income during such periods. Accordingly, the Company has maintained its status as a RIC. The Company is subject to certain state and local franchise taxes, as well as related minimum filing fees assessed by state taxing authorities.  Such taxes and fees are included in "Other administrative expenses" in the consolidated statements of operations in each of the fiscal years presented.  The Company's tax returns for fiscal years ended 2008 through 2011 are subject to examination by federal, state and local income tax authorities.

Depreciation and Amortization

Depreciation and amortization are computed using the straight-line method over the useful lives of the respective assets.  Leasehold improvements are amortized over the life of the respective leases. In 2010, in connection with its termination of an office lease, the Company wrote off to expense, $65,623, of related leasehold improvements, furniture and fixtures and office equipment.

Deferred Loan Costs and Fees

Amortization of deferred loan costs is computed on the straight-line method over the respective loan term.  Amortization of deferred loan costs and fees for the years ended June 30, 2012, 2011 and 2010 was $70,851, $70,850 and $58,180, respectively.  At June 30, 2012 and 2011, deferred loan costs and commitment fees amounted to $260,459 and $331,310, net of accumulated amortization of $473,784 and $402,933, respectively.

F-13

Assets Acquired in Satisfaction of Loans

Assets acquired in satisfaction of loans are carried at the lower of the net value of the related foreclosed loan or the estimated fair value. Losses incurred at the time of foreclosure are charged to the realized depreciation on loans receivable. Subsequent reductions in estimated net realizable value are charged to operations as losses on assets acquired in satisfaction of loans.

Use of Estimates

The preparation of financial statements in conformity with GAAP requires management to make extensive use of estimates and assumptions that affect the reported amounts of assets and liabilities at the date of the financial statements and the reported amounts of revenues and expenses during the reporting period.  Actual results could differ from those estimates.  The fair value of the Company's investments is particularly susceptible to significant changes.

F-14

AMERITRANS CAPITAL CORPORATION AND SUBSIDIARIES

NOTES TO CONSOLIDATED FINANCIAL STATEMENTS (Continued)

Years Ended June 30, 2012, 2011 and 2010

Treasury Stock

Treasury stock is carried at cost.  Gains and losses on disposition of treasury stock, if any, are recorded as increases or decreases to additional paid-in capital with losses in excess of previously recorded gains charged directly to retained earnings.

Increase (Decrease) in Net Assets Per Share

Increase (decrease) in net assets per share includes no dilution and is computed by dividing current net increase (decrease) in net assets from operations available to common stockholders by the weighted average number of common shares outstanding for the period.  Diluted increase (decrease) in net assets per share reflects, in periods in which they have a dilutive effect, the effect of common shares issuable upon the exercise of stock options and warrants.  The difference between reported basic and diluted weighted average common shares results from the assumption that all dilutive stock options outstanding were exercised.  For the years presented, the effect of common stock equivalents has been excluded from the diluted calculation since the effect would be antidilutive.

Dividends

Dividends and distributions to our common and preferred stockholders are recorded on the record date.  The amount to be paid out as a dividend is determined by the Board each quarter and is generally based upon the earnings estimated by management.  Net realized capital gains, if any, are distributed at least annually, although the Company may decide to retain such capital gains for investment.

On June 30, 2008, the Board approved and adopted a dividend reinvestment plan that provides for reinvestment of distributions in the Company's Common Stock on behalf of common stockholders, unless a stockholder elects to receive cash.  As a result, if the Board authorizes, and the Company declares, a cash dividend, then those stockholders who have not "opted out" of the dividend reinvestment plan will have their cash dividends automatically reinvested in additional shares of Common Stock, rather than receiving the cash dividends. As of June 30, 2012, no shares have been purchased under the plan.

Income Recognition

Interest income, including interest on loans in default, is recorded on an accrual basis and in accordance with loan terms to the extent such amounts are expected to be collected.  The Company recognizes interest income on loans classified as non-performing only to the extent that the fair market value of the related collateral exceeds the specific loan balance.  Loans that are not fully collateralized and in the process of collection are placed on nonaccrual status when, in the judgment of management, the collectability of interest and principal is doubtful.

Stock Options

Stock-based employee compensation costs in the form of stock options is recognized as an expense over the vesting period of the underlying option using the fair values established by usage of the Black-Scholes option pricing model.

The 1940 Act restricts BDCs' ability to grant equity-based incentive compensation at a time when it has engaged an investment adviser.  The Company's stock option plans expired on May 21, 2009 and during the two year period ended December 10, 2011 for which the Company engaged Velocity Capital Advisors LLC as the Company's investment adviser, the Company's ability to grant equity-based incentive compensation was severely limited by the 1940 Act.

F-15

AMERITRANS CAPITAL CORPORATION AND SUBSIDIARIES

NOTES TO CONSOLIDATED FINANCIAL STATEMENTS (Continued)

Years Ended June 30, 2012, 2011 and 2010

Financial Instruments

The carrying value of cash and cash equivalents, accrued interest receivable and payable and other receivables and payables approximates fair value due to the relative short maturities of these financial instruments. The Company's investments, including loans receivable, life settlement contracts and equity securities, are carried at their estimated fair value. The carrying value of the bank debt is a reasonable estimate of their fair value as the interest rates are variable, based on prevailing market rates. The fair value of the SBA debentures was computed using the discounted amount of future cash flows using the Company's current incremental borrowing rate for similar types of borrowings (see Note 10). The carrying value of the notes payable is a reasonable estimate of the fair value based on prevailing market rates.

Derivatives

The Company from time to time enters into interest rate swap agreements in order to manage interest rate risk. The Company does not use interest rate swaps or other derivatives for trading or other speculative purposes. In accordance with GAAP, all derivative instruments are recorded at fair value. For derivative instruments designed as cash flow hedges, the effective portion of that hedge is deferred and recorded as a component of other comprehensive income. Any portion of the hedge deemed to be ineffective is recognized promptly in the consolidated statements of operations.

Recently Issued Accounting Standards

In December 2011, the FASB issued Accounting Standards Update (ASU) 2011-11, "Disclosures about Offsetting Assets and Liabilities." ASU 2011-11 adds certain additional disclosure requirements about financial instruments and derivative instruments that are subject to offsetting and related financial instruments and derivative instruments that are subject to offsetting and related arrangements. The new disclosures are required for annual reporting periods beginning on or after January 1, 2013, and interim periods within those periods. As the amendment impacts disclosures only, it will not have an effect on the Company's financial condition or results of operation.

Other recently issued accounting pronouncements are not expected to have a material impact on our financial position or results of operations.

Going Concern and Management's Plans

The accompanying financial statements have been prepared assuming that the Company will continue as a going concern which contemplates the realization of assets and the satisfaction of liabilities in the normal course of business. The Company has incurred operating losses and negative operating cash flow and future losses are expected to continue. The Company's plan of obtaining equity financing, even if successful, may not result in funds sufficient to maintain and expand its business and/or satisfy the capital requirements of the SBA. These factors raise doubt about the Company's ability to continue as a going concern. Realization of assets is dependent upon continued operations of the Company, which in turn is dependent upon Management's plans to meet its financing requirements and the success of its future operations. The ability of the Company to continue as a going concern is dependent on securing additional financing and on improving the Company's profitability and cash flow. In addition, on February 22, 2012, the SBA referred Elk to the SBA's Office of Liquidation, based on Elk's violation of capital impairment percentage requirements in prior periods, which is continuing. Although the Company has attempted to obtain equity financing on multiple occasions with a view towards, among other things, curing Elk's capital impairment and executing its growth strategy, the SBA has rejected all financing transactions that the Company has submitted to it (see Note 4 to the consolidated financial statements). As discussed in Note 4, the SBA has declared Elk's total indebtedness to the SBA to be immediately due and payable and may institute legal proceedings seeking the appointment of the SBA as Elk's receiver. In such instance, the Company's ability to pay its indebtedness and/or raise capital would be adversely impacted. While the Company believes in the viability of its strategy to obtain financing and increase profitability and in its ability to execute that strategy and believes that the actions presently being taken by the Company provide the opportunity for it to continue as a going concern, including its continuing activities in seeking potential financing transactions, there can be no assurances to that effect, especially in light of Elk's current status with respect to the SBA and the current status of its debentures. These financial statements do not include any adjustments related to the recoverability and classification of asset amounts or the amounts and classification of liabilities that might be necessary if the Company is unable to continue as a going concern.

F-16

AMERITRANS CAPITAL CORPORATION AND SUBSIDIARIES

NOTES TO CONSOLIDATED FINANCIAL STATEMENTS (Continued)

Years Ended June 30, 2012, 2011 and 2010

## 2. **Investments**

Investments by Industry

Investments by industry consist of the following as of June 30, 2012 and 2011:

| | June 30, 2012 | | June 30, 2011 | |
| --- | --- | --- | --- | --- |
| | Value | Percentage of Portfolio | Value | Percentage of Portfolio |
| Broadcasting/Telecommunications | $ 1,761,340 | 10.7% | $ 1,820,868 | 7.6% |
| Commercial Construction | 2,339,724 | 14.2% | 2,456,368 | 10.3% |
| Computer Software | - | - | 910,067 | 3.8% |
| Construction and Predevelopment | 1,050,000 | 6.4% | 1,300,494 | 5.4% |
| Direct Marketing | - | - | 1,312,500 | 5.5% |
| Debt Collection | 453,909 | 2.7% | 475,605 | 2.0% |
| Education | 719,308 | 4.3% | 829,824 | 3.5% |
| Film Distribution | - | - | 928,000 | 3.9% |
| Food and Candy Manufacturing | 2,693,471 | 16.3% | 2,581,886 | 10.8% |
| Gaming | 1,001,250 | 6.1% | - | - |
| Life Insurance Settlement Contracts | 3,204,001 | 19.4% | 2,408,000 | 10.1% |
| Manufacturing | 1,165,407 | 7.1% | 2,533,545 | 10.6% |
| Printing/Publishing | 940,722 | 5.7% | 1,344,691 | 5.6% |
| Restaurant/Food Service | 1,052,162 | 6.4% | 3,215,663 | 13.5% |
| Supermarkets | - | - | 1,500,000 | 6.3% |
| Other industries less than 1% | 121,312 | 0.7% | 304,224 | 1.1% |
| TOTAL | $ 16,502,606 | 100.00% | $ 23,921,735 | 100.00% |

Loans Receivable

Loans are considered non-performing once they become ninety (90) days past due as to principal or interest. The Company had loans which are considered non-performing aggregating $3,476,890 and $4,827,743 as of June 30, 2012 and June 30, 2011, respectively. These loans are either fully or substantially collateralized and are in some instances personally guaranteed by the debtor. Included in the total non-performing loans are fifteen and seventeen loans, aggregating $3,476,890 and $4,827,743 at June 30, 2012 and June 30, 2011, respectively, which are no longer accruing interest since the loan principal and accrued interest exceed the estimated fair value of the underlying collateral. The following table sets forth certain information regarding performing and non-performing loans as of June 30, 2012 and June 30, 2011:

| | **2012** | **2011** |
| --- | --- | --- |
| Loans receivable | $ 12,219,741 | $ 20,526,100 |
| Performing loans | 8,754,851 | 15,698,357 |
| Nonperforming loans | $ 3,464,890 | $ 4,827,743 |
| Nonperforming loans: | | |
| Accrual | $ - | $ - |
| Nonaccrual | 3,464,890 | 4,827,743 |
| | $ 3,464,890 | $ 4,827,743 |

F-17

AMERITRANS CAPITAL CORPORATION AND SUBSIDIARIES

NOTES TO CONSOLIDATED FINANCIAL STATEMENTS (Continued)

Years Ended June 30, 2012, 2011 and 2010

As of June 30, 2012 the Company had paid all fees in connection with the Company's Investment Advisory and Management Agreement, as amended, (the "Advisory Agreement") with Velocity Capital Advisors LLC (the "Adviser") related to its Corporate Loans business. Pursuant to the Advisory Agreement, the Company incurred fees payable to the Adviser that were comprised of the following: (a) an annual base fee of 1.50% per annum of the aggregate fair value of Corporate Loans outstanding at the end of each quarter; (b) an income-based fee of 5% per annum, calculated quarterly, computed on interest and dividends earned from the Corporate Loan portfolio and (c) a capital gains fee of 17.5%, based on capital gains from the Corporate Loan portfolio. However, because minimum thresholds were not met during the term of the Advisory Agreement, the fees paid or accrued pursuant to the Advisory Agreement were based solely on each quarterly portion of the annual fee. As of December 10, 2011, the Advisory Agreement expired and has not been renewed. On May 14, 2012, all amounts due to the Advisor were paid.

Life Settlement Contracts

In September, 2006, the Company entered into a joint venture agreement with an unaffiliated entity (the "Joint Venture") to purchase previously issued life insurance policies owned by unrelated individuals. Subsequently, after a series of events involving charges against the manager of the Joint Venture for securities law violations and a court order freezing the assets of the manager, including the Joint Venture, on April 14, 2009, a receiver was appointed (the "Receiver") to operate the Joint Venture and to administer the assets of the Joint Venture and other entities with which the manager of the Joint Venture was involved (the "Receivership Estate"). Following discussions with the Receiver, in December 2009, the Company negotiated an agreement, which, among other items, granted the Company the right to purchase the policies, subject to certain terms and conditions, including, but not limited to the Company's agreement to pay the Receivership Estate 20% of all recoveries until the Company has recouped $2.1 million, plus the amount of any premiums paid following the date of the Purchase Agreement and 50% of all recoveries above such amount.

After a review of the current financing and regulatory environment, and other opportunities to make loans and investments, the Company decided to exit this line of business and plans to make no new investments in life insurance settlement policies other than the continued payment of premiums on existing investments.

As of June 30, 2012 and June 30, 2011, the fair value of the policies owned by the Company was $3,204,001 and $2,408,000, respectively, which represents the estimated fair value for the four (as of June 30, 2012) and five (as of June 30, 2011) life insurance policies with an aggregate face value of $17,250,000 and $17,659,809, respectively. The Company's cost on these policies to date is $4,573,290, including insurance premiums of $931,366, which were paid during the year ended June 30, 2012. Premiums on the policies must be paid until the policies are sold in order to keep the policies in full force. One of the insureds who was covered by one of the policies in the Company's life insurance settlement portfolio, passed away in August, 2011. The Company received approximately $320,000 from the proceeds of such policy after payment to the Receiver. At June 30, 2011, the fair value of such policy was $58,400, with a cost of $39,708.

F-18

AMERITRANS CAPITAL CORPORATION AND SUBSIDIARIES

NOTES TO CONSOLIDATED FINANCIAL STATEMENTS (Continued)

Years Ended June 30, 2012, 2011 and 2010

The Company is entitled to sell the policies at any time, in its sole discretion and has no obligation to pay future premiums on the various policies.  The approximate future minimum premiums due for each of the next five (5) years and in the aggregate thereafter, to keep the policies in effect, based on current life expectancy of the insureds, are as follows:

| Year Ending June 30, | | Policy Premiums |
|---|---|---|
| 2013 | $ | 871,236 |
| 2014 | | 871,236 |
| 2015 | | 871,236 |
| 2016 | | 871,236 |
| 2017 | | 837,252 |
| Thereafter | | 682,647 |
| | $ | 5,004,843 |

Based upon the current uncertain state of the life settlement market, the lack of liquidity at this time in this market due to the difficult credit conditions and the overall economy, the fact that these policies may have diminished value due to having been associated with the former manager of the Joint Venture, and the Company's previously stated decision to exit the life settlement area, the Company has adjusted the fair value of these policies to reflect the current anticipated recovery based on estimated actuarial values that take into account the various factors discussed above.   This is an estimate based upon the information currently available. The Company intends to pay future premiums and continues to pursue alternatives that could allow for a higher recovery.

F-19

AMERITRANS CAPITAL CORPORATION AND SUBSIDIARIES

NOTES TO CONSOLIDATED FINANCIAL STATEMENTS (Continued)

Years Ended June 30, 2012, 2011 and 2010

<u>Fair Value of Investments</u>

GAAP has established a framework for measuring fair value and has expanded the disclosure requirements related to fair value measurements. Fair value is the price that would be received for an investment in a current sale, which assumes an orderly transaction between market participants on the measurement date. GAAP requires the Company to assume that the portfolio investment is sold in a principal market to market participants, or in the absence of a principal market, the most advantageous market, which may be a hypothetical market. Market participants are defined as buyers and sellers in the principal or most advantageous market that are independent, knowledgeable, and willing and able to transact. In accordance with GAAP, the Company has considered its principal market as the market in which the Company exits its portfolio investments with the greatest volume and level of activity. GAAP specifies a hierarchy of valuation techniques based on whether the inputs to those valuation techniques are observable or unobservable. In accordance with GAAP, these inputs are summarized in the three broad levels listed below:

Level 1 – Valuations based on quoted prices in active markets for identical assets or liabilities that the Company has the ability to access.

Level 2 – Valuations based on quoted prices in markets that are not active or for which all significant inputs are observable, either directly or indirectly.

Level 3 – Valuations based on inputs that are unobservable and significant to the overall fair value measurement.

In addition to using the above inputs in investment valuations, the Company continues to employ the valuation policy approved by the Board of Directors that is consistent with GAAP. Consistent with its valuation policy, the Company evaluates the source of inputs, including any markets in which its investments are trading (or any markets in which securities with similar attributes are trading), in determining fair value. The Company's valuation policy considers the fact that because there may not be a readily available market value for most of the investments in its portfolio, the fair value of the investments must typically be determined using unobservable inputs. The Company's Level 3 investments require significant judgments by its investment committee, its investment advisor (if any) and its management and include market price quotations from market makers, original transaction price, recent transactions in the same or similar investments, financial analysis, economic analysis and related changes in financial ratios or cash flows to determine fair value. Such investments may also be discounted to reflect observed or reported illiquidity and/or restrictions on transferability. See Note 1 for additional information on the Company's valuation policy.

Due to the inherent uncertainty of determining the fair value of investments that do not have a readily available market value, the fair value of the Company's investments may fluctuate from period to period. Additionally, the fair value of the Company's investments may differ significantly from the values that would have been used had a ready market existed for such investments and may differ materially from the values that we may ultimately realize. Further, such investments are generally subject to legal and other restrictions on resale or otherwise are less liquid than publicly traded securities. If the Company was required to liquidate a portfolio investment in a forced or liquidation sale, the Company may realize significantly less than the value at which the Company recorded it.

In addition, changes in the market environment and other events that may occur over the life of the investments may cause the gains or losses ultimately realized on these investments to be different than the valuations currently assigned.

F-20

AMERITRANS CAPITAL CORPORATION AND SUBSIDIARIES

NOTES TO CONSOLIDATED FINANCIAL STATEMENTS (Continued)

Years Ended June 30, 2012, 2011 and 2010

Assets measured at fair value on a recurring basis are:

| | | Fair Value at Reporting Date Using | | |
|---|---|---|---|---|
| | June 30, 2012 | Quoted Prices in Active Markets for Identical Assets (Level 1) | Significant Other Observable Inputs (Level 2) | Significant Unobservable Inputs (Level 3) |
| Commercial Loans | $ 5,228,247 | $ - | $ - | $ 5,228,247 |
| Corporate Loans | 6,991,494 | - | - | 6,991,494 |
| Life Settlement Contracts | 3,204,001 | - | - | 3,204,001 |
| Equity Securities | 1,078,864 | 6,276 | - | 1,072,588 |
| Total Investments | $ 16,502,606 | $ 6,276 | $ - | $ 16,496,330 |

| | | Fair Value at Reporting Date Using | | |
|---|---|---|---|---|
| | June 30, 2011 | Quoted Prices in Active Markets for Identical Assets (Level 1) | Significant Other Observable Inputs (Level 2) | Significant Unobservable Inputs (Level 3) |
| Commercial Loans | $ 6,244,815 | $ - | $ - | $ 6,244,815 |
| Corporate Loans | 14,281,285 | 1,312,500 | - | 12,968,785 |
| Life Settlement Contracts | 2,408,000 | - | - | 2,408,000 |
| Equity Securities | 987,635 | 6,974 | - | 980,661 |
| Total Investments | $ 23,921,735 | $ 1,319,474 | $ - | $ 22,602,261 |

Assets measured at fair value on a recurring basis using significant unobservable inputs (Level 3) are:

| | Commercial Loans | Corporate Loans | Life Settlement Contracts | Equity Securities | Total |
|---|---|---|---|---|---|
| Beginning balance as of June 30, 2011 | $ 6,244,815 | $ 12,968,785 | $ 2,408,000 | $ 980,661 | $ 22,602,261 |
| Net realized gains (losses) on investments | - | (28,011) | 288,139 | (75,250) | 184,878 |
| Net unrealized gains (losses) on investments | (128,644) | (1,848,874) | (95,657) | 168,027 | (1,905,148) |
| Purchases of investments | 2,463 | 1,517,902 | 931,366 | - | 2,451,731 |
| Repayments, sales or redemptions of investments | (890,387) | (5,618,308) | (327,847) | (850) | (6,837,392) |
| Transfers in and/or out of Level 3 | - | - | - | - | - |
| Ending balance as of June 30, 2012 | $ 5,228,247 | $ 6,991,494 | $ 3,204,001 | $ 1,072,588 | $ 16,496,330 |

| | |
|---|---|
| Amount of total gains or losses for the period included in changes in net assets attributable to the change in unrealized gains or losses relating to assets still held at the reporting date | $ (1,905,148) |
| Gains and losses (realized and unrealized) included in net decrease in net assets from operations for the period above are reported as follows: | |
| Gain (loss) on sales and dispositions | 54,055 |
| Change in unrealized losses relating to assets still held at reporting date | $ (1,851,093) |

F-21

| | Commercial Loans | Corporate Loans | Life Settlement Contracts | Equity Securities | Total |
|---|---|---|---|---|---|
| Beginning balance as of June 30, 2010 | $ 8,941,332 | $ 12,868,110 | $ 1,356,800 | $ 1,009,548 | $ 24,175,790 |
| Net realized losses on investments | (377,139) | (122,853) | - | (60,800) | (560,792) |
| Net unrealized gains (losses) on investments | 251,168 | (445,397) | (61,741) | 31,913 | (224,057) |
| Purchases of investments | 1,719 | 10,530,640 | 1,112,941 | - | 11,645,300 |
| Repayments, sales or redemptions of investments | (2,572,265) | (9,861,715) | - | - | (12,433,980) |
| Transfers in and/or out of Level 3 | - | - | - | - | - |
| Ending balance as of June 30, 2011 | $ 6,244,815 | $ 12,968,785 | $ 2,408,000 | $ 980,661 | $ 22,602,261 |

| | | |
|---|---|---|
| Amount of total gains or losses for the period included in changes in net assets attributable to the change in unrealized gains or losses relating to assets still held at the reporting date | $ | (224,057) |
| Gains and losses (realized and unrealized) included in net decrease in net assets from operations for the period above are reported as follows: | | |
| Gain (loss) on sales and dispositions | | (560,792) |
| Change in unrealized gains or (losses) relating to assets still held at reporting date | $ | (784,849) |

As of June 30, 2011, the aggregate net unrealized loss on the investments that use Level 3 inputs was $3,632,876. As of June 30, 2011, the aggregate net unrealized loss on Level 1 investments was $274,009. For the year ended June 30, 2012, the net unrealized gain on Level 1 investments aggregated $81,860. At June 30, 2011, only the investments in Affinity Group, Inc. and Fusion Communications were included in Level 1.

As of June 30, 2012, the aggregate net unrealized loss on the investments that use Level 3 inputs was $5,538,024. As of June 30, 2012, the aggregate net unrealized loss on Level 1 investments was $360,751. For the year ended June 30, 2012, the net unrealized loss on Level 1 investments aggregated $86,742. At June 30, 2012, only the investment in Fusion Communications was included in Level 1.

F-22

AMERITRANS CAPITAL CORPORATION AND SUBSIDIARIES

NOTES TO CONSOLIDATED FINANCIAL STATEMENTS (Continued)

Years Ended June 30, 2012, 2011 and 2010

3.  **Furniture and Equipment**

Major classes of furniture, equipment and leasehold improvements as of June 30, 2012 and 2011 are as follows:

|  | 2012 | 2011 | Estimated Useful Lives |
|---|---|---|---|
| Furniture and fixtures | $ 31,951 | $ 31,219 | 7 years |
| Office equipment | 110,339 | 109,181 | 3-5 years |
|  | 142,290 | 140,400 | Life of lease |
| Less accumulated depreciation | 97,931 | 88,325 |  |
|  | $ 44,359 | $ 52,075 |  |

Depreciation expense for the years ended June 30, 2012, 2011 and 2010 was $9,605, $8,699 and $30,075, respectively.

In June 2010, the Company relocated its offices.  Accordingly, the net balance of related leasehold improvements, furniture and fixtures and office equipment retired, aggregating $65,623, was written off at June 30, 2010.

4.  **Debentures Payable to SBA**

At June 30, 2012 and 2011 subordinated debentures payable to the SBA with interest payable semiannually, consisted of the following:

| Issue Date | Original Due Date (3) | % Interest Rate | June 30, 2012 and June 30, 2011 | Annual Amount of Interest and User Fees |
|---|---|---|---|---|
| July 2002 | September 2012 | 4.67(1) | $ 2,050,000 | $ 113,488 |
| December 2002 | March 2013 | 4.63(1) | 3,000,000 | 164,880 |
| September 2003 | March 2014 | 4.12(1) | 5,000,000 | 249,300 |
| February 2004 | March 2014 | 4.12(1) | 1,950,000 | 97,227 |
| December 2009 | March 2020 | 4.11(2) | 9,175,000 | 402,782 |
|  |  |  | $ 21,175,000 | $ 1,027,677 |

(1)  Elk is also required to pay an additional annual user fee of 0.866% on these debentures.
(2)  Elk is also required to pay an additional annual user fee of 0.28% on this debenture.
(3)  See SBA Litigation discussed below and in Note 12.

Under the terms of the subordinated debentures, Elk may not repurchase or retire any of its capital stock or make any distributions to its stockholders other than dividends out of retained earnings (as computed in accordance with SBA regulations) without the prior written approval of the SBA.

F-23

Elk is required to calculate the amount of capital impairment each reporting period based on SBA regulations. The purpose of the calculation is to determine if the Undistributed Net Realized Earnings (Deficit) after adjustment for net unrealized gain or loss on securities exceeds the SBA regulatory limits. If so, Elk is considered to have impaired capital. Since June 30, 2010, Elk's capital has been impaired. As of March 31, 2012, Elk's maximum permitted calculated impairment percentage (regulatory limit) was 40%, with an actual capital impairment percentage of approximately 69.6%. Accordingly, Elk had a condition of capital impairment as of June 30, 2012, which would require additional capital of approximately $10.5 million to cure.

On March 6, 2012 (the "Notice Date"), Sean J. Greene ("Greene"), Associate Administrator Office of Investment and Innovation of SBA delivered written notice (the "Notice") to Elk of SBA's determination that Elk has a condition of capital impairment, based on Elk's financial condition as of September 30, 2011. As stated in the Notice, Elk's capital impairment percentage as of September 30, 2011 was 59%. Pursuant to the Notice, Greene directed Elk to cure the capital impairment within fifteen days from the Notice Date (the "Cure Period"). The Notice indicated the SBA may declare Elk's total indebtedness to the SBA to be immediately due and payable and/or institute legal proceedings seeking the appointment of the SBA as Elk's receiver if Elk failed to cure the capital impairment within the Cure Period. To date, Elk has not cured its capital impairment.

The Notice also indicated that, on February 22, 2012, the SBA referred Elk to the SBA's Office of Liquidation, based on Elk's violation of capital impairment percentage requirements in prior periods, which are continuing. The Company believes that this referral was in error as it was enacted prior to Elk's receiving the applicable fifteen day notice and opportunity to cure required under SBA regulations. Prior to receiving the Notice, Elk had notified the SBA of Elk's belief that the SBA was in error. In this regard, the Notice stated that, notwithstanding the prior transfer to the Office of Liquidation, the SBA would suspend liquidation activities during the Cure Period to allow Elk the opportunity to cure its condition of capital impairment to the SBA's satisfaction.

On March 20, 2012, Elk filed a lawsuit against the SBA and its Administrator. The following day, in connection with preliminary discussions regarding such litigation, the SBA represented that it would suspend liquidation activities involving Elk and refrain from taking any action to revoke Elk's license as an SBIC until April 25, 2012. For additional information regarding such litigation. See  Note 12 to the consolidated financial statements.

On June 1, 2012, Elk received a written notice from the SBA (the "Second SBA Notice") that declared Elk's entire indebtedness to the SBA, including principal, accrued interest and any other amounts owed by Elk to the SBA pursuant to Elk's outstanding debentures, to be immediately due and payable. The Second SBA Notice indicates that such acceleration of Elk's obligations relates to an event of default under Elk's outstanding debentures resulting from Elk's condition of capital impairment described above, which, according to the Second SBA Notice, Elk failed to cure within applicable cure periods.

According to the Second SBA Notice, as of May 25, 2012, Elk was indebted to the SBA in the aggregate principal amount of $21,175,000, plus accrued interest of $239,372 (with an additional $2,816 of interest accruing on a per diem basis) (the "Indebtedness").

The Second SBA Notice stated that Elk was required to remit the entire amount of the Indebtedness to the SBA no later than June 15, 2012. In addition the Second SBA Notice states that the SBA may avail itself of any remedy available to it under the 1958 Act, including institution of proceedings for the appointment of SBA or its designee as receiver for Elk's assets. In the event Elk is placed into receivership, the interests represented by any such receiver could differ materially from the interests of Ameritrans' stockholders.

On June 5, 2012, Elk submitted a proposal to cure its condition of capital impairment and return to the active business of providing capital to small business concerns. Notwithstanding the submission of a plan that would permit Elk to remain an active SBIC, SBA requested that Elk submit a proposed settlement plan relating to Elk's liquidation process to the SBA no later than June 18, 2012. Elk has submitted the requested settlement plan which included a proposed schedule for the payment of Elk's indebted to SBA and alternatives to SBA's potential attempts to appoint a receiver. There can be no assurance, however, that the settlement plan submitted by Elk will be acceptable to the SBA or that the SBA will not pursue the appointment of a receiver or any other remedy available to the SBA.

F-24

Elk also intends to continue prosecution of its lawsuit against the SBA, subject to any amicable settlement that may be worked out between the parties, including settlements that would allow Elk to return to the SBA's Office of Operations and to active lending. To this end, Elk has filed an amended complaint in the matter while also pursuing a settlement proposal with the Office of Liquidation. The amended complaint includes information that was discovered during Elk's review of the SBA's "Administrative Record."

As stated above, the SBA has notified Elk that it was not interested in exploring previous settlement proposals by Elk which would cure the regulatory issue that has been cited by SBA as rationale for its continued attempts to remove Elk from the SBIC program. Accordingly, there can be no assurance that any settlement will be reached.

If the SBA continues to pursue the liquidation of Elk, Ameritrans and/or Elk may be required to terminate certain of their employees, and Elk may no longer be able to provide financing to small business concerns. In addition, Elk could be required to dispose of its assets in a forced sale that could result in proceeds less than the carrying value of the asset being sold. In the event Elk is placed in receivership or is otherwise forced to liquidate, Ameritrans' interest in Elk may lose all value, which would have a material adverse effect on Ameritrans' business, financial condition and results of operations and Ameritrans may be forced to cease operations and liquidate or seek bankruptcy protection, in which case shareholders may receive little or no value for their investment in Ameritrans' securities.

F-25

AMERITRANS CAPITAL CORPORATION AND SUBSIDIARIES

NOTES TO CONSOLIDATED FINANCIAL STATEMENTS (Continued)

Years Ended June 30, 2012, 2011 and 2010

## 5. __Notes Payable__

Banks

At June 30, 2011, the Company has a $120,000 line of credit with a bank, with no balance outstanding, as the line had been paid in full as of August 31, 2010. Although this loan was paid in full, the line remained available until its maturity date of July 6, 2011. Pursuant to the terms of the agreement governing the line of credit, the Company was required to comply with certain covenants and conditions, as defined in the agreement. The Company had pledged its loans receivable and all other assets as collateral for the line of credit. Pursuant to the SBA agreement and an "intercreditor agreement" between the lending bank and the SBA, the SBA agreed to subordinate the SBA Debentures outstanding in favor of the bank. In accordance with the loan documentation with the SBA and the bank, the Company was also required to maintain overall debt levels within a formula based upon the performance of its loan portfolio according to an SBA formula "borrowing base," which was submitted for review to the SBA and the bank for periodic review. As there are no outstanding bank balances, SBA has indicated that the Company is not required to submit the borrowing base. The Company also had another credit line with availability of $352,000. As additional security for this bank loan, the Company had a certificate of deposit (restricted cash) pledged as security at June 30, 2010. The amount outstanding on this line was paid in full as of August 31, 2010. This line, which was previously extended to December 10, 2010, expired by its terms as of that date and the certificate of deposit was no longer restricted.

Other

On December 22, 2009, the Company issued $2,025,000 aggregate principal amount of its 8.75% notes due December 2011 (the "December Notes") in a private offering.  Prior to their amendment, as described below, the Notes bore interest at a rate of 8.75%, payable quarterly, but the Company had the option to extend the December Notes until December 2012 at a rate of 5.5%, plus the then-current prime rate.  The December Notes were redeemable by the Company at any time upon not less than 30 days prior notice.  A member of the Company's Board of Directors and certain affiliated entities acquired $1,375,000 of the December Notes in the offering. The total amount of interest incurred on the December Notes issued to related parties was $82,500, $142,217 and $65,838 for the years ended June 30, 2012, 2011 and 2010, respectively.

On March 24, 2010, the Company issued $975,000 aggregate principal amount of its 8.75% notes due March 2012 (the "March Notes" and, together with the December Notes, the "2009/2010 Notes") in a private offering.  The March Notes had the same terms as the December Notes, except prior to their amendment as described below, the March Notes were scheduled to mature in March 2012.  A member of the Company's Board of Directors, and certain affiliated entities acquired $685,000 of the March Notes in the offering. The total amount of interest incurred on the March Notes issued to related parties was $41,100, $70,850 and $15,881 for the years ended June 30, 2012, 2011 and 2010, respectively.

In connection with the issuance of a Senior Secured Note on January 19, 2011 (see below), in order to facilitate certain covenants under the Senior Secured Note relating to the 2009/2010 Notes, the Company entered into an Amendment to Promissory Note (the "Amendment") with each holder of the 2009/2010 Notes. Pursuant to the Amendment, the interest rate on the 2009/2010 Notes was increased from 8.75% to 12.0% and the maturity date was extended until May 2012. The holders of the 2009/2010 Notes also waived certain covenants contained in the 2009/2010 Notes related to additional borrowings by the Company. In connection with the Amendment, the Company paid a fee equal to 1% of principal, or an aggregate of $30,000, to the holders of the 2009/2010 Notes.

On March 16, 2012, the Company paid the holders of the 2009/2010 Notes an aggregate of $2,650,000 (the "Senior Notes Payoff Amount") in full satisfaction of the Company's obligations under the 2009/2010 Notes, including default interest of approximately $77,000.  Upon the noteholders' receipt of such payment, the 2009/2010 Notes and the Company's obligations thereunder terminated. The Senior Notes Payoff Amount represents an approximate 14.2% discount from the principal, interest and other amounts payable under the 2009/2010 Notes as of date of payment. A member of the Company's Board of Directors and certain affiliated entities held $2,060,000 principal amount of the 2009/2010 Notes, and as such received approximately $1,820,000 of the Senior Notes Payoff Amount. As a result of the 14.2% discount, the Company realized a gain of $350,000, in the third quarter of fiscal 2012, from the satisfaction of the obligations related to the 2009/2010 Notes.

F-26

On January 19, 2011, the Company issued a Senior Secured Note in the principal amount of $1,500,000 (the "Original 2011 Note") to an unaffiliated lender, Ameritrans Holdings LLC (the "Lender"). The Lender is an affiliate of Renova US Holdings Ltd., the purchaser under the Stock Purchase Agreement (See Note 7, Stock Purchase Agreement). The Original 2011 Note provided for interest at the rate of 12% per annum, except following an event of default under the Original 2011 Note, in which case the Original 2011 Note provided that interest would accrue at the rate of 14%. The Original 2011 Note matured on February 1, 2012.

The Original 2011 Note was originally secured by a pledge of 100% of the issued and outstanding shares of common stock of Elk owned by the Company and was subsequently amended to include all personal property and other assets of the Company other than the common stock and all other equity interests of Elk as provided in the Amended and Restated Pledge Agreement, dated May 5, 2011, between the Company and the Lender (the "Pledge Agreement").

On April 12, 2011, the Company also entered into an amendment to the Original 2011 Note (the "Note Amendment" and the Original 2011 Note, as amended, the "2011 Note"), which amended a provision of the Original 2011 Note that prohibited the Company from incurring any indebtedness for borrowed money in excess of $250,000.  Such provision, as modified by the Note Amendment, provided that the Company would not incur any indebtedness for borrowed money in excess of $250,000 other than indebtedness incurred in the ordinary course of business consistent with past practices for use as working capital in an aggregate principal amount not to exceed $500,000.  All other terms of the Original 2011 Note remained in full force and effect. Interest expense incurred in connection with the 2011 Note aggregated $87,903 and $81,500, respectively, in the years ended June 30, 2012 and 2011, respectively, without giving effect to any default interest as discussed below.

On January 19, 2012 (the "Notice Date"), the Lender delivered written notice (the "Notice") to the Company that an event of default under the 2011 Note had occurred and was continuing. Pursuant to the Notice, the Lender declared all outstanding principal, interest (including default interest), fees and other amounts owed by the Company under the 2011 Note to be immediately due and payable. Based on the occurrence of an event of default under the 2011 Note, the Lender also declared an event of default under the Pledge Agreement. The event of default specified in the Notice related to the Company's failure as of June 30, 2011 to maintain a minimum consolidated net asset value equal to at least $4,000,000, in violation of a covenant contained in the 2011 Note.

As of the Notice Date, the Company's outstanding indebtedness under the 2011 Note included $1,424,000 million of principal and approximately $36,000 of accrued and unpaid interest, including default interest, or approximately $1,460,000 in the aggregate (the "Indebtedness"). In addition to payment of the Indebtedness, the Lender sought reimbursement of costs and expenses related to the execution, delivery, performance, administration and enforcement of the 2011 Note and Pledge Agreement in an unspecified amount, which the Lender estimated to be approximately $100,000.

The 2011 Note matured on February 1, 2012. On March 7, 2012, the Company paid the Lender $1,420,000 (the "Payoff Amount") in full satisfaction of the Company's obligations under the 2011 Note. Upon the Lender's receipt of such payment, the 2011 Note, the Company's obligations thereunder, all liens and security interests previously granted by the Company to the Lender to secure such obligations, and the related pledge agreement was terminated. The Payoff Amount represents an approximate 9.8% discount from the principal, interest and other amounts payable under the 2011 Note as of the date of payment. Accordingly, the Company realized a gain of $3,620 in the third quarter of fiscal 2012 from the extinguishment of this debt.

F-27

AMERITRANS CAPITAL CORPORATION AND SUBSIDIARIES

NOTES TO CONSOLIDATED FINANCIAL STATEMENTS (Continued)

Years Ended June 30, 2012, 2011 and 2010

## 6.   Preferred Stock

Ameritrans had 1,000,000 shares of "blank check" preferred shares authorized of which 500,000 shares were designated as 9-3/8% cumulative participating preferred stock $.01 par value, $12.00 face value.  On March 18, 2008, the Company filed an amendment to the Company's Articles of Incorporation to increase the number of shares of authorized preferred stock from 1,000,000 to 10,000,000 shares.  The remaining 9,500,000 and 500,000 shares, respectively, of these "blank check" preferred shares were unissued at June 30, 2012 and 2011.

As part of the April 2002 stock offering (see Note 8), Ameritrans issued 300,000 shares of 9-3/8% cumulative participating redeemable preferred stock $.01 par value, $12.00 face value.  Since April 2007, these preferred shares are redeemable at the option of the Company at face value without any premium.

## 7.   Common Stock

Ameritrans had 5,000,000 authorized common shares, $0.0001 par value, of which 1,745,600 were issued and outstanding after the shares exchange with Elk (see Note 1) as of June 30, 2001.  As part of stock offerings completed in April 2002 and March 2006, the Company issued an additional 300,000 and 1,355,608 shares of Common Stock, respectively (see Note 8).

On June 24, 2011, the Company's stockholders approved an amended and restated certificate of incorporation of the Company, which, among other things, would increase the number of authorized shares of its capital stock from 55,000,000 shares (consisting of 45,000,000 shares of common stock and 10,000,000 shares of preferred stock) to 110,000,000 shares (consisting of 100,000,000 shares of common stock and 10,000,000 shares of preferred stock).  However, such amended and restated certificate of incorporation has not been implemented and may not be implemented unless the Initial Closing of the transactions contemplated by the Stock Purchase Agreement occurs. (See Note 15, Stock Purchase Agreement.)

Pursuant to a foreclosure agreement with a borrower, Elk obtained 10,000 shares of Ameritrans Common Stock, which had previously been pledged by the borrower as collateral.  At June 30, 2012 and 2011 these shares are recorded as treasury stock at cost, which was the market value of the shares at the foreclosure date.

## 8.   Stock Offerings

In March, 2006, the Company issued 338,902 warrants to purchase shares of Common Stock ("Private Offering Warrants").  Each Private Offering Warrant entitled the holder thereof to purchase one share of Common Stock at an exercise price of $6.44 per share.   On July 29, 2010, all of those Private Offering Warrants expired. In December 2009, as part of the advisory agreement with Velocity, warrants for 100,000 shares of the Company's Common Stock with an exercise price of $1.25 per share were issued to Velocity for $15,000 and were subsequently canceled in April 2011. On March 18, 2008, the stockholders of the Company approved a private offering of one or a combination of the following securities of the Company's (i) Common Stock, (ii) warrants exercisable into shares of Common Stock and/or (iii) shares of Preferred Stock, with such rights and preferences as determined by the Company's Board of Directors, subject to applicable law and regulation.

F-28

AMERITRANS CAPITAL CORPORATION AND SUBSIDIARIES

NOTES TO CONSOLIDATED FINANCIAL STATEMENTS (Continued)

Years Ended June 30, 2012, 2011 and 2010

9. **Dividends to Stockholders**

The following table sets forth the dividends declared by the Company on our Common Stock and Preferred Stock in each of the years ended June 30, 2012, 2011 and 2010 (no dividend has been declared on our Common Stock during this period):

| | For the year ended June 30, 2012: | | | | |
|---|---|---|---|---|---|
| | Dividend Per Share | Amount | Declaration Date | Record Date | Pay Date |
| Preferred Stock: | | | | | |
| First quarter | $ 0.28125 | $ 84,375 | Not Declared | | |
| Second quarter | 0.28125 | 84,375 | Not Declared | | |
| Third quarter | 0.28125 | 84,375 | Not Declared | | |
| Fourth quarter | 0.28125 | 84,375 | Not Declared | | |
| | $ 1.12500 | $ 337,500 | | | |

| | For the year ended June 30, 2011: | | | | |
|---|---|---|---|---|---|
| | Dividend Per Share | Amount | Declaration Date | Record Date | Pay Date |
| Preferred Stock: | | | | | |
| First quarter | $ 0.28125 | $ 84,375 | Not Declared | | |
| Second quarter | 0.28125 | 84,375 | Not Declared | | |
| Third quarter | 0.28125 | 84,375 | Not Declared | | |
| Fourth quarter | 0.28125 | 84,375 | Not Declared | | |
| | $ 1.12500 | $ 337,500 | | | |

| | For the year ended June 30, 2010: | | | | |
|---|---|---|---|---|---|
| | Dividend Per Share | Amount | Declaration Date | Record Date | Pay Date |
| Preferred Stock: | | | | | |
| Fourth quarter 2009 | $ 0.28125 | $ 84,375 | 02/25/10 | 03/08/10 | 03/12/10 |
| First quarter | 0.28125 | 84,375 | 02/25/10 | 03/08/10 | 03/12/10 |
| Second quarter | 0.28125 | 84,375 | 02/25/10 | 03/08/10 | 03/12/10 |
| Third quarter | 0.28125 | 84,375 | 04/09/10 | 04/22/10 | 04/27/10 |
| Fourth quarter | 0.28125 | 84,375 | 07/21/10 | 08/02/10 | 08/17/10 |
| | $ 1.40625 | $ 421,875 | | | |

The Company has not declared a Preferred Stock dividend for any quarter after June 30, 2009. Dividends on Preferred Stock accrue whether or not they have been declared. As of June 30, 2012, dividends not declared and in arrears were $675,000.

F-29

AMERITRANS CAPITAL CORPORATION AND SUBSIDIARIES

NOTES TO CONSOLIDATED FINANCIAL STATEMENTS (Continued)

Years Ended June 30, 2012, 2011 and 2010

The table below shows the tax character of distributions for tax reporting purposes.

| | For the years ended June 30, | | |
| | 2012 | 2011 | 2010 |
|---|---|---|---|
| Dividends paid from: | | | |
|    Ordinary income | $ - | $ - | $ - |
|    Return of capital | - | - | 421,875 |
| Total Dividends | $ - | $ - | $ 421,875 |

Our ability to make dividend payments is restricted by SBA regulations and under the terms of the SBA debentures.

**10.**   **Financial Instruments**

Fair value is defined as the amount at which the instrument could be exchanged in a current transaction between willing parties. The fair values presented below have been determined by using available market information and by applying valuation methodologies indicated.

Loans Receivable and Life Settlement Contracts

Loans receivable and life settlement contracts are recorded at their estimated fair value based on discounted expected future cash flows and other factors (see Note 2).

Investment Securities

The estimated fair value of publicly traded equity securities is based on quoted market prices and privately held equity securities are recorded at their estimated fair value (see Note 2).

Debt

The fair value of the SBA debentures was computed using the discounted amount of future cash flows using the Company's current incremental borrowing rate for similar types of borrowings. The estimated fair values of such debentures as of June 30, 2012 and June 30, 2011 were approximately $21,175,000 and $22,188,000, respectively. For 2012, the fair value is the same as the recorded value, inasmuch as the SBA has given the Company notice on June 1, 2012 that Elk's entire indebtedness to the SBA was due and payable currently. See Note 4.

However, for the June 30, 2011 value, the Company does not expect that the estimated fair value amounts determined for these debentures would have been realized in an immediate settlement of such debentures with the SBA.

The carrying value of the notes payable is a reasonable estimate of the fair value based on prevailing market rates.

**11.**   **Related Party Transactions**

Prior to fiscal 2011, occupancy costs include amounts paid to a law firm related to the Company's former Chairman of the Board and certain other former officers and directors of the Company (the "Law Firm") and to another entity in which a former officer of the Company has a financial interest, under previously existing leases and overhead cost reimbursement agreements aggregating $519,876 (including a lease termination payment of $260,000) for the year ended June 30, 2010.

Additionally, in years prior to fiscal 2011, the Company paid legal fees to the Law Firm aggregating $13,000 in the year ended June 30, 2010.

See Note 5 for other related party transactions.

F-30

AMERITRANS CAPITAL CORPORATION AND SUBSIDIARIES

NOTES TO CONSOLIDATED FINANCIAL STATEMENTS (Continued)

Years Ended June 30, 2012, 2011 and 2010

**12.** **Commitments and Contingencies**

Leases

On July 1, 2010, the Company entered into a thirty-one month sublease with an unrelated party to lease office space in Manhattan. This sublease calls for payments of $6,000 per month, including electric.

On July 16, 2010, the Company entered into a seven-year and one month sublease with an unrelated party for office space for the Company's headquarters in Jericho, New York. This sublease requires rental payments ranging from $98,250 to $115,769 per year, including electric. The sublease calls for escalation based on changes, from a base period in real estate tax amounts as incurred by the sublandlord. The sublandlord may terminate this sublease with the Company effective July 30, 2014, if written notice is given on or before July 30, 2013.

Total occupancy costs under the above leases, including the previously existing related-party leases and overhead cost reimbursement agreements, amounted to $173,187, $171,675 and $519,876 (including a lease termination payment of $260,000) for the years ended June 30, 2012, 2011, and 2010, respectively.

The future minimum rental payments for each of the next five years and in the aggregate, thereafter, are as follows:

| Year Ending June 30, | Amount |
|---|---|
| 2013 | 145,933 |
| 2014 | 106,763 |
| 2015 | 109,676 |
| 2016 | 112,678 |
| 2017 | 115,769 |
| Thereafter | 9,913 |
| | $ 600,732 |

Employment Agreements

The Company entered into employment agreements with six executives of the Company for various terms expiring through June, 2013. Certain agreements also provided for minimum bonuses.

*Termination of Officers*

Effective March 31, 2011, the Company entered into Separation and Release Agreements with two former executives, Ellen Walker and Lee Forlenza, that provided for severance payments of $57,512 and $36,631, respectively, in exchange for release of the Company for any claims they may have or, potentially may have with respect to their employment and the cessation of such employment with the Company. Effective April 8, 2011, the Company entered into a Separation and Release Agreement with a former executive, Margaret Chance, that provided for a severance payment of $162,650 plus attorneys' fees of $7,350 in exchange for release of the Company for any claims she may have or, potentially, may have with respect to her employment and the cessation of such employment with the Company.

The minimum payments due under remaining employment agreements in effect, including minimum bonuses is $719,786 in the year ending June 30, 2013**.**

F-31

Case 2:17-cv-03586-JFB-AYS Document 47-20 Filed 10/06/17 Page 518 of 1053 PageID #: 1092

AMERITRANS CAPITAL CORPORATION AND SUBSIDIARIES

NOTES TO CONSOLIDATED FINANCIAL STATEMENTS (Continued)

Years Ended June 30, 2012, 2011 and 2010

<u>Litigation</u>

*Lawsuit Against the SBA*

On March 20, 2012, Elk filed a lawsuit against the SBA and its Administrator in the United States District Court for the District of Columbia (the "District Court") (Case No. 1200438 CKK), seeking temporary, preliminary, and permanent injunctive relief; declaratory relief; and damages (the "Litigation"). The injunctive relief sought by Elk includes: (i) setting aside the SBA's decision to transfer Elk to the SBA's Office of Liquidation (see Note 3, Debentures Payable to SBA), (ii) requiring the SBA to provide Elk with a commercially reasonable amount of time to present a plan for curing Elk's position of capital impairment and (iii) requiring the SBA to accept legitimate commitment letters from qualified investors in the Company as a cure to Elk's position of capital impairment, so long as those letters guaranty that funds identified in the commitment letters are transferred by the Company to Elk. Elk's lawsuit also seeks monetary damages in an amount to be determined at trial.

On the evening of March 20, 2012, the SBA and Elk notified the District Court that the SBA had agreed to suspend liquidation activities and take no action to revoke Elk's license for 15 days from March 21, 2012. On March 21, 2012, the District Court held a Scheduling Conference in connection with the Litigation. During the Scheduling Conference, the SBA represented that it would suspend liquidation activities involving Elk and refrain from taking any action to revoke Elk's license until April 25, 2012. This representation on the record by the SBA made Elk's motion for a temporary restraining order seeking to preserve the status quo pending a decision on Elk's motion for a preliminary injunction moot. Also on March 21, 2012, the District Court set (i) a briefing schedule on Elk's motion for a preliminary injunction and (ii) a schedule related to the SBA's production of a complete certified administrative record concerning the events identified by Elk in the lawsuit that are the subject of the Litigation.

On April 24, 2012, the District Court denied Elk's motion for a preliminary injunction and ordered the SBA to file a response to Elk's lawsuit no later than June 4, 2012. Accordingly, since April 25, 2012, the SBA is no longer required to suspend liquidation activities with respect to Elk.

Subsequently, Elk has filed an amended complaint in the matter while also pursuing a settlement proposal with the Office of Liquidation. The amended complaint includes information that was discovered during Elk's review of the SBA's "Administrative Record."

The SBA made a motion for Summary Judgment in the Litigation and Elk filed its Memorandum of Law in Opposition to SBA's motion for Summary Judgment. Simultaneously with the filing of its reply, Elk filed a motion seeking leave to conduct discovery.

On September 17, 2012, the Court issued a ruling finding it prudent to postpone further briefing on SBA's Motion for Summary Judgment to allow Elk's Motion for Leave to Serve Discovery to be fully briefed. The court ruled that the Motion for Summary Judgment was held-in-abeyance. The court ruled that the SBA need not and shall not file a reply until otherwise ordered by the Court. The court ordered the SBA to file a response to Elk's Motion for Leave to Serve Discovery by no later than October 1, 2012; Elk shall file its reply, if any, by no later than October 11, 2012.

The court also stated that the "parties are STRONGLY encouraged to meet and confer in an attempt to resolve their disagreement or narrow the areas of dispute requiring the Court's resolution."

Additional information about the Litigation can be found on the Public Access to Court Electronic Records (PACER) web site at *www.pacer.gov*. The PACER website is operated by the Administrative Office of the U.S. Courts. The Company does not warrant the accuracy or completeness of the PACER website and expressly disclaims liability for errors or omissions on such website. The information set forth on the PACER website shall not be deemed to be a part of or incorporated by reference into this filing or any other filing by the Company with the SEC.

*Other*

From time to time, the Company is engaged in various legal proceedings incident to the ordinary course of its business. In the opinion of the Company's management and based upon the advice of legal counsel, there is no proceeding pending, or to the knowledge of

management, threatened, which in the event of an adverse decision would result in a material adverse effect on the Company's results of operations or financial condition.

## 13. **Defined Contribution Plan**

The Company is the sponsor of a simplified employee pension plan covering all eligible employees of the Company.  During the years ended June 30, 2012, 2011 and 2010, the Company's contributions were $0, $46,430 and $40,258, respectively.

## 14. **Stock Option Plans**

The Company's stock option plans expired on May 21, 2009.

Employee Incentive Stock Option Plan

An employee stock option plan (the "1999 Employee Plan") was adopted by the Ameritrans Board, including a majority of the non-interested directors, and approved by a vote of the stockholders, in order to link the personal interests of key employees to the Company's long-term financial success and the growth of stockholder value.  The Plan had a ten (10) year life which expired in May, 2009.  Subsequent amendments to the 1999 Employee Plan were approved by the stockholders in January 2002 and June 2007.  The amendments increased the number of shares reserved under the plan to 300,000 shares.

F-32

The 1999 Employee Plan authorized the grant of incentive stock options within the meaning of the Section 422 of the Internal Revenue Code for the purchase of an aggregate of 300,000 shares (subject to adjustment for stock splits and similar capital changes) of Common Stock to the Company's employees. Effective as of May 21, 2009, in accordance with the terms of the 1999 Employee Plan, the Board can no longer issue incentive stock options pursuant to such plan. The Board adopted the 1999 Employee Plan to be in a better position to attract, motivate, and retain as employees people upon whose judgment and special skills the Company's success in large measure depends. As of June 30, 2012, options to purchase an aggregate of 200,000 shares of Common Stock were outstanding and fully vested.

The 1999 Employee Plan is administered by the 1999 Employee Plan Committee of the Board, which is comprised solely of non-employee directors (who are "outside directors" within the meaning of Section 152(m) of the Internal Revenue Code and "disinterested persons" within the meaning of Rule 16b-3 under the Securities Exchange Act of 1934 (the "Exchange Act"). The committee can make such rules and regulations and establish such procedures for the administration of the 1999 Employee Plan as it deems appropriate. Effective May 21, 2009, the 1999 Employee Plan expired.

Non-Employee Director Stock Option Plan

A stock option plan for non-employee directors (the "Director Plan") was adopted by the Ameritrans Board and approved by a vote of the stockholders, in order to link the personal interests of non-employee directors to the Company's long-term financial success and the growth of stockholder value. The Director Plan is substantially identical to, and the successor to, a non-employee director stock option plan adopted by the Board of Elk and approved by its stockholders in September 1998 (the "Elk Director Plan"). Ameritrans and Elk submitted an application for, and received on August 31, 1999, an exemptive order relating to these plans from the SEC. The Director Plan was amended by the Board on November 14, 2001, and approved by the stockholders at the Annual Meeting on January 18, 2002. The amendment was subject to the approval of the Securities and Exchange Commission. The amendment was to (i) increase the number of shares reserved under the plan from 75,000 to 125,000 and (ii) authorize the automatic grant of an option to purchase up to 1,000 shares at the market value at the date of grant to each eligible director who is re-elected to the Board.

The total number of shares for which options may be granted from time to time under the Director Plan was 75,000 shares. As of June 30, 2012, options to purchase an aggregate of 39,426 shares were outstanding and fully vested under the Director Plan. The Director Plan is administered by a committee of directors who are not eligible to participate in the Director Plan. Effective May 21, 2009, the Director Plan expired.

F-33

AMERITRANS CAPITAL CORPORATION AND SUBSIDIARIES

NOTES TO CONSOLIDATED FINANCIAL STATEMENTS (Continued)

Years Ended June 30, 2012, 2011 and 2010

<u>Options Granted, Expired and Canceled</u>

There were no options granted or canceled during the fiscal years ended June 30, 2012 and 2011.

On December 28, 2010, 29,425 options in connection with the 1999 Employee Plan expired. In addition, during the fiscal year ended June 30, 2011, options to purchase 3,000 granted to a previously terminated employee expired unexercised and in fiscal 2012, options to purchase 49,574 shares expired unexercised. .

The fair value of the options outstanding was $140,305 and $191,040 at June 30, 2012 and June 30, 2011, respectively.  Compensation expense related to options vested for the fiscal years ended June 30, 2012, 2011 and 2010 was $0, $0 and $29,166, respectively. As of June 30, 2012, all options were fully vested.

|  | Stock Options | |
|---|---|---|
|  | Number of Options | Weighted Average Exercise Price Per Share |
| Options outstanding at June 30, 2009 | 366,850 | $ 3.90 |
| Granted | - | - |
| Canceled | - | - |
| Expired | (45,425) | $ 5.25 |
| Exercised | - | - |
| Options outstanding at June 30, 2010 | 321,425 | $ 3.71 |
| Granted | - | - |
| Canceled | - | - |
| Expired | (32,425) | $ 5.49 |
| Exercised | - | - |
| Options outstanding at June 30, 2011 | 289,000 | $ 3.51 |
| Granted | - | - |
| Canceled | - | - |
| Expired | (49,574) | $ 4.55 |
| Exercised | - | - |
| Options outstanding at June 30, 2012 | 239,426 | $ 3.28 |

The following table summarizes information about the stock options outstanding under the Company's options plans as of June 30, 2012:

| | Options Outstanding and Exercisable | | |
|---|---|---|---|
| Range of Exercise Prices | Number Outstanding at June 30, 2012 | Weighted Average Remaining Contractual Life | Weighted Average Exercise Price |
| $3.60 | 13,888 | .89 years | $ 3.60 |
| $5.28 | 60,000 | 1.41 years | $ 5.28 |
| $4.50 | 20,000 | .28 years | $ 4.50 |
| $2.36 | 120,000 | 1.28 years | $ 2.36 |
| $1.78 | 25,538 | 1.85 years | $ 1.78 |
| $ 1.78-$ 5.28 | 239,426 | 1.24 years | $ 3.28 |

Case 2:17-cv-03586-JFB-AYS   Document 47-20   Filed 10/06/17   Page 523 of 1053 PageID #: 1097

AMERITRANS CAPITAL CORPORATION AND SUBSIDIARIES

NOTES TO CONSOLIDATED FINANCIAL STATEMENTS (Continued)

Years Ended June 30, 2012, 2011 and 2010

The fair market value for options previously granted and outstanding was estimated at the date of grant using a Black-Scholes option-pricing model. The Black-Scholes option valuation model was developed for use in estimating the fair value of traded options, which have no vesting restrictions and are fully transferable.  In addition, option valuation models require the input of highly subjective assumptions including the expected stock price volatility.  Because the Company's employee stock options have characteristics significantly different from those of traded options, and because changes in the subjective input assumptions can materially affect the fair value estimate, in management's opinion, the existing models do not necessarily provide a reliable single measure of the fair value of its employee stock options.

### 15.  Stock Purchase Agreement

On April 12, 2011, the Company entered into a Stock Purchase Agreement (the "Purchase Agreement") with Renova US Holdings Ltd. ("Renova"). Subject to the terms and conditions set forth in the Purchase Agreement, the Company agreed to issue and sell to Renova, and Renova agreed to purchase, (i) $25,000,000 of Common Stock of the Company at a price per share equal to the greater of $1.80 and the then-prevailing per share net asset value of the Company at the time of issuance (as determined in accordance with the terms of the Purchase Agreement) (the "Applicable Per Share Purchase Price"), at an initial closing to be held no later than November 30, 2011, following satisfaction or waiver of the conditions to such issuance  and (ii) between an additional $35,000,000 to $40,000,000 of additional Common Stock (depending upon the timing of such purchases) at the Applicable Per Share Purchase Price at subsequent closings to be held from time to time, subject to satisfaction of the conditions to such issuances, between the date of the initial closing and the second anniversary of the initial closing, based upon the terms and conditions set forth in the Purchase Agreement.

 Requisite stockholder approval of the transactions contemplated by the Purchase Agreement was obtained at a special meeting of stockholders held on June 24, 2011. Consummation of the Initial Closing was subject to certain additional customary closing conditions, as well as the approval of the SBA of the indirect change of ownership and control of the Company's wholly-owned subsidiary, Elk, which is a SBA licensee.

On September 19, 2011, the Company received a letter from the SBA describing certain concerns related to its change of ownership and control application and requesting certain additional pieces of information. In particular, the SBA informed the Company that the proposed transaction, as then structured, would not satisfy applicable SBA management-ownership diversity requirements. While the Company believed that the transaction satisfied all SBA regulatory requirements, the SBA did not concur with that view.

As of November 16, 2011, the Company and Renova terminated the Purchase Agreement, although the Company continued to engage in discussions with Renova regarding potential modifications to the terms of the transaction contemplated by the Purchase Agreement in order to satisfy the SBA interpretation of its management-ownership diversity regulations. As noted, below, in Note 12, Commitments and Contingencies – Litigation, the Company presented a restructured transaction with Renova, specifically drawn to address SBA's stated concerns. On December 22, 2012, SBA informed Elk that it would not approve the transaction. In light of the SBA's continued belief that the Renova Transaction, as proposed to be modified, would not satisfy such regulations, on January 19, 2012, Renova advised the Company that Renova was ceasing its efforts to pursue a transaction with the Company and Elk. As a result, the Company and Renova are no longer engaging in discussions regarding a potential financing transaction.

F-35

AMERITRANS CAPITAL CORPORATION AND SUBSIDIARIES

NOTES TO CONSOLIDATED FINANCIAL STATEMENTS (Continued)

Years Ended June 30, 2012, 2011 and 2010

As also discussed in Note 12, in February 2012, the Company presented a potential transaction with another party, which was rejected by SBA.

The Company is actively pursuing an alternative transaction and alternative sources of financing. There is no assurance that any alternative sources of financing will be available, especially in light of Elk's current status with respect to the SBA and the status of the SBA debentures, or what the terms of any alternative transaction would be.

**16.** **Other Matters**

On September 20, 2011, the Company received a letter (the "Minimum Bid Notice") from The Nasdaq Stock Market ("Nasdaq") notifying the Company that, because the closing bid price for the Company's common stock had been below $1.00 per share for the 30 consecutive business days preceding the Minimum Bid Notice, the Company no longer complied with the continued listing requirements under Nasdaq Marketplace Rule 5550(a)(2). Nasdaq Marketplace Rule 5550(a)(2) requires securities listed on the Nasdaq Capital Market to maintain a minimum bid price of $1.00 per share (the "Minimum Bid Requirement"). The Company did not regain compliance with the Minimum Bid Requirement during the applicable 180-day grace period.

On October 3, 2011, the Company received a letter (the "Stockholders' Equity Notice") from Nasdaq notifying the Company that the Company did not satisfy the minimum stockholders' equity requirement (or alternative standards) for continued listing under Nasdaq Marketplace Rule 5550(b) (the "Minimum Stockholders' Equity Requirement"), based on its stockholders' equity as of June 30, 2011. Nasdaq Marketplace Rule 5550(b)(1) requires listed companies to maintain a minimum of $2.5 million of stockholders' equity or satisfy alternative standards of market value of listed securities or net income from continuing operations.

On February 1, 2012, the Company received a letter from Nasdaq notifying the Company of the Nasdaq staff's determination that the Company had not regained compliance with the Minimum Stockholders' Equity Requirement, and did not satisfy certain conditions necessary for an extension of the time period in which the Company could demonstrate its compliance with such requirement. Under Nasdaq rules, the suspension of trading and delisting of the Company's securities (which would otherwise have taken effect on February 10, 2012) was stayed based on the Company's request for a hearing with a Nasdaq Hearings Panel (the "Panel") to appeal the Nasdaq staff's determination described in the preceding sentence.

On November 8, 2011, Company received a letter (the "Common MVPHS Notice") from Nasdaq notifying the Company that it does not satisfy the minimum market value of publicly held shares ("MVPHS") requirement for continued listing of its common stock under Nasdaq Marketplace Rule 5550(a)(5), based on the Company's MVPHS during the period from September 26, 2011 through November 7, 2011. Nasdaq Marketplace Rule 5550(a)(5) requires listed companies to maintain a minimum MVPHS of $1,000,000. The Common MVPHS Notice did not immediately result in the delisting of the Company's common stock. Under Nasdaq rules, the Company had 180 calendar days to regain compliance with the MVPHS requirement.

On January 24, 2012, Company received a letter (the "Preferred MVPHS Notice") from Nasdaq notifying the Company that it does not satisfy MVPHS requirement for continued listing of its preferred stock under Nasdaq Market place Rule 5550(a)(5), based on the Company's preferred stock MVPHS during the period from December 7, 2011 through January 20, 2012. The Preferred MVPHS Notice did not immediately result in the delisting of the Company's preferred stock. Under Nasdaq rules, the Company had 180 calendar days to regain compliance with the MVPHS requirement.

On May 1, 2012, the Company received a letter from the Nasdaq staff informing the Company that the Panel had denied the Company's appeal and determined to delist the Company's securities from Nasdaq, effective at the open of trading on Thursday, May 3, 2012, based on the Company's non-compliance with the Minimum Stockholders' Equity Requirement and the Minimum Bid Requirement. Nasdaq also informed that Company that Nasdaq will file a Form 25 Notification of Delisting with the SEC after all appeal periods have expired. The Company did not appeal the determination of the Panel. The Company's stock was delisted by Nasdaq on May 3, 2012.

F-36

AMERITRANS CAPITAL CORPORATION AND SUBSIDIARIES

NOTES TO CONSOLIDATED FINANCIAL STATEMENTS (Continued)

Years Ended June 30, 2012, 2011 and 2010

**17. Subsequent Event**

On August 7, 2012, the Company sold a Corporate Loan for approximately $967,000 and realized a loss on such sale of approximately $103,000.

**18. Financial Highlights**

| | | Years Ended June 30, | | | |
|---|---|---|---|---|---|
| | **2012** | **2011** | **2010** | **2009** | **2008** |
| **Net share data** | | | | | |
| Net asset (liability) value at the beginning of the year | $ (0.40) | $ 1.40 | $ 3.40 | $ 5.06 | $ 5.32 |
| Net investment loss | (1.08) | (1.53) | (1.17) | (0.86) | (0.01) |
| Net realized and unrealized (losses) on investments | (0.53) | (0.17) | (0.71) | (0.73) | (0.14) |
| **Net decrease in net assets from operations** | (1.61) | (1.70) | (1.88) | (1.59) | (0.15) |
| Net change in net assets from capital share transactions | - | - | - | - | 0.01 |
| Distributions to stockholders [4] | (0.10) | (0.10) | (0.12) | (0.07) | (0.12) |
| **Total increase (decrease) in net asset value** | $ (1.71) | $ (1.80) | $ (2.00) | $ (1.66) | $ (0.26) |
| **Net asset (liability) value at the end of the year** | $ (2.11) | $ (0.40) | $ 1.40 | $ 3.40 | $ 5.06 |
| Per share market value at beginning of year | $ 1.17 | $ 1.32 | $ 1.63 | $ 3.01 | $ 5.21 |
| Per share market value at end of year | 0.11 | 1.17 | 1.32 | 1.63 | 3.01 |
| **Total return** [1] | (90.6%) | (11.4%) | (11.6%) | (43.5%) | (39.9%) |
| **Ratios/supplemental data** | | | | | |
| Average net assets (liabilities)[2] (in 000's) | $ (4,264) | $ 1,706 | $ 8,160 | $ 14,371 | $ 17,622 |
| Total expense ratio [3] | 142.4% | 431.0% | 69.0% | 43.7% | 35.8% |
| Net investment loss to average net assets (liabilities) | 85.7% | (306.2%) | (48.8%) | (20.5%) | (0.26%) |

(1) Total return is calculated by dividing the change in market value of a share of common stock during the year, assuming the reinvestment of common stock dividends on the payment date, by the per share market value at the beginning of the year.

(2) Average net assets excludes capital from preferred stock.

(3) Total expense ratio represents total expenses divided by average net assets.

(4) Amount represents total dividends on both common and preferred stock divided by weighted average shares.

**19. Quarterly Financial Data (Unaudited)**

For the year ended June 30, 2012:

| | First Quarter | Second Quarter | Third Quarter | Fourth Quarter |
|---|---|---|---|---|
| Investment income | $ 531,630 | $ 424,771 | $ 406,169 | $ 698,507 |
| Net investment loss | $ (1,140,043) | $ (995,721) | $ (693,033) | $ (826,073) |
| Net decrease in net assets from operations | $ (1,435,530) | $ (1,669,544) | $ (898,307) | $ (1,458,700) |
| Net decrease in net assets from operations per common share: | | | | |
| Basic and diluted | $ (0.45) | $ (0.52) | $ (0.29) | $ (0.45) |

AMERITRANS CAPITAL CORPORATION AND SUBSIDIARIES

NOTES TO CONSOLIDATED FINANCIAL STATEMENTS (Continued)

Years Ended June 30, 2012, 2011 and 2010

For the year ended June 30, 2011:

|  | First Quarter | Second Quarter | Third Quarter | Fourth Quarter |
|---|---|---|---|---|
| Investment income | $ 500,738 | $ 581,531 | $ 624,200 | $ 422,523 |
| Net investment loss | $ (763,162) | $ (797,354) | $ (1,660,793) | $ (2,001,442) |
| Net decrease in net assets from operations | $ (594,549) | $ (843,645) | $ (2,428,122) | $ (1,936,263) |
| Net decrease in net assets from operations per common share: |  |  |  |  |
| Basic and diluted | $ (0.20) | $ (0.27) | $ (0.74) | $ (0.60) |

F-38

EX-12.1 2 ex12-1.htm EXHIBIT 12.1

**EXHIBIT 12.1**

**COMPUTATION OF RATIO OF EARNINGS TO FIXED CHARGES AND PREFERENCE DIVIDENDS**

| | Year ended June 30, | | | | |
|---|---|---|---|---|---|
| | **2012** | **2011** | **2010** | **2009** | **2008** |
| Earnings: | | | | | |
| Net increase (decrease) in net assets from operations | $ (5,462,081) | $ (5,802,576) | $ (6,374,963) | $ (5,462,453) | $ (537,571) |
| Fixed charges | 1,351,805 | 1,517,044 | 964,382 | 1,130,738 | 2,398,654 |
| Adjusted earnings | $ (4,110,276) | $ (4,285,532) | $ (5,410,581) | $ (4,331,715) | $ 1,861,083 |
| | | | | | |
| Fixed charges: | | | | | |
| Interest expense | $ 1,280,954 | $ 1,446,193 | $ 906,202 | $ 1,090,074 | $ 2,357,540 |
| Amortization of deferred loan costs | 70,851 | 70,851 | 58,180 | 40,664 | 41,114 |
| Total fixed charges | $ 1,351,805 | $ 1,517,044 | $ 964,382 | $ 1,130,738 | $ 2,398,654 |
| | | | | | |
| Preference dividends | 337,500 | 337,500 | 421,875 | 253,125 | 337,500 |
| Total fixed charges and preference dividends | $ 1,689,305 | $ 1,854,544 | $ 1,386,257 | $ 1,383,863 | $ 2,736,154 |
| | | | | | |
| Ratio of earnings to fixed charges | (2.43) | (2.31) | (3.90) | (3.13) | 0.68 |
| | | | | | |
| Deficiency of earnings to cover fixed charges and preference dividends (less than 1:1 ratio) | $ 5,799,581 | $ 6,140,076 | $ 6,796,838 | $ 5,715,578 | $ 875,071 |

Exhibit 23.1

**CONSENT OF INDEPENDENT REGISTERED PUBLIC ACCOUNTING FIRM**

To the Board of Directors and Stockholders of
Ameritrans Capital Corporation and Subsidiaries:

We consent to the reference to our firm under the caption "Experts" in the Registration Statement on Form N-2 and the related Prospectus of Ameritrans Capital Corporation and Subsidiaries and the incorporation by reference of our report dated September 28, 2012, relating to the consolidated financial statements, which appear in this Form 10-K.

/s/ Rosen Seymour Shapss Martin & Company LLP

New York, New York
September 28, 2012

Case 2:17-cv-03586-JFB-AYS   Document 47-2   Filed 10/06/17   Page 530 of 1053 PageID #: 1104

**Exhibit 31.1**

## CERTIFICATIONS

I, Michael Feinsod, certify that:

1.  I have reviewed this Annual Report on Form 10-K of Ameritrans Capital Corporation;

2.  Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3.  Based on my knowledge, the financial statements and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;

4.  The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the registrant and have:

    a)  Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

    b)  Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

    c)  Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

    d)  Disclosed in this report any changes in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter, that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5.  The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

    a)  All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

    b)  Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

Date: September 28, 2012

/s/ Michael R. Feinsod
Michael R. Feinsod
Chief Executive Officer

Case 2:17-cv-03586-JFB-AYS   Document 47-2   Filed 10/06/17   Page 531 of 1053 PageID #: 1105

**Exhibit 31.2**

## CERTIFICATIONS

I, Richard L. Feinstein, certify that:

1.   I have reviewed this Annual Report on Form 10-K of Ameritrans Capital Corporation;

2.   Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3.   Based on my knowledge, the financial statements and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;

4.   The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the registrant and have:

   a)   Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

   b)   Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

   c)   Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

   d)   Disclosed in this report any changes in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter, that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5.   The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

   a)   All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

   b)   Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.


Date: September 28, 2012

/s/ Richard L. Feinstein
Richard L. Feinstein
Chief Financial Officer

EX-32.1 6 ex32-1.htm EXHIBIT 32.1

**Exhibit 32.1**

## CERTIFICATION PURSUANT TO
## 18 U.S.C. SECTION 1350
## AS ADOPTED PURSUANT TO

### SECTION 906 OF THE SARBANES-OXLEY ACT OF 2002

In connection with the Annual Report of Ameritrans Capital Corporation (the "Company") on Form 10-K for the period ended June 30, 2012 as filed with the Securities and Exchange Commission on September 28, 2012 (the "Report"), the undersigned, in the capacity and on the date indicated below, hereby certifies pursuant to 18 U.S.C. Section 1350, as adopted pursuant to Section 906 of the Sarbanes-Oxley Act of 2002, that to the best of my knowledge:

1. The Report fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934, as amended; and

2. The information contained in the Report fairly presents, in all material respects, the financial condition and results of operation of Ameritrans Capital Corporation and Subsidiaries.

Date: September 28, 2012

/s/ Michael R. Feinsod
Michael R. Feinsod
Chief Executive Officer

EX-32.2 7 ex32-2.htm EXHIBIT 32.2

**Exhibit 32.2**

## CERTIFICATION PURSUANT TO
## 18 U.S.C. SECTION 1350
## AS ADOPTED PURSUANT TO

### SECTION 906 OF THE SARBANES-OXLEY ACT OF 2002

In connection with the Annual Report of Ameritrans Capital Corporation (the "Company") on Form 10-K for the period ended June 30, 2012 as filed with the Securities and Exchange Commission on September 28, 2012 (the "Report"), the undersigned, in the capacity and on the date indicated below, hereby certifies pursuant to 18 U.S.C. Section 1350, as adopted pursuant to Section 906 of the Sarbanes-Oxley Act of 2002, that to the best of my knowledge:

1. The Report fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934, as amended; and

2. The information contained in the Report fairly presents, in all material respects, the financial condition and results of operation of Ameritrans Captial Corporation and Subsidiaries.

Date: September 28, 2012

/s/ Richard L. Feinstein
Richard L. Feinstein
Chief Financial Officer

# Exhibit H

U.S. SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

FORM 8-K

Current Report Pursuant to Section 13 or 15(d) of
the Securities Exchange Act of 1934

October 10, 2008
------------
Date of Report
(Date of Earliest Event Reported)

AMERITRANS CAPITAL CORPORATION

(Exact name of Registrant as specified in its charter)

Delaware              333-63951        52-2102424
------------------------------    ----------    ---------------
(State or other jurisdiction of   (Commission    (I.R.S. Employee
incorporation or organization)    File No.)       I.D. Number)

747 Third Avenue, 4th Floor
New York, New York                 10017
---------------------------------------    ----------
(Address of principal executive offices    (Zip Code)

(800) 214-1047
-----------------------
(Registrant's telephone number, including area code)

Check the appropriate box below if the Form 8-K filing is intended to simultaneously satisfy the filing obligation of the registrant under any of the following provisions (see General Instruction A.2. below):

[ ]  Written communications pursuant to Rule 425 under the  Securities Act (17 CFR 230.425)

[ ]  Soliciting material pursuant to Rule 14a-12 under  the Exchange Act(17CFR240.14a-12)

[ ] Pre-commencement communications pursuant to Rule 14d-2(b) under the Exchange Act (17CFR240.14d-2(b))

[ ] Pre-commencement communications pursuant to Rule 13e-4(c) under the Exchange Act (17CFR240.13e-4(c))
 --------------------------------------------------------------------------------

Items to be included in this Report

Items 1.01 and 5.02.   Entry Into a Material Definitive  Agreement and Departure of Directors or Certain Officers; Election of Directors; Appointment of Certain Officers; Compensatory Arrangements of Certain Officers.

Ameritrans Capital Corporation (the "Company") entered into amended and restated employment agreements with each of Michael R. Feinsod and Gary C. Granoff.

The information furnished is not deemed "filed" for  purposes of Section 18 of the Securities Exchange Act of 1934, as amended, is not subject to the liabilities of that section and is not deemed  incorporated by reference in any filing under the Securities Act of 1933, as amended.

A copy of the press release is attached hereto as Exhibit 99.1, a copy of Mr. Feinsod's amended and restated employment agreement is attached hereto as Exhibit 99.2, and a copy of Mr. Granoff's amended and restated employment agreement is attached hereto as Exhibit 99.3 and are incorporated herein by reference.


SIGNATURES

 Pursuant to the requirements of the Securities Exchange Act of 1934, the Registrant has duly authorized and caused the undersigned to sign this Report on the Registrant's behalf.

AMERITRANS CAPITAL CORPORATION


By:  /s/ Michael R. Feinsod
        ----------------------------------
        Name:  Michael R. Feinsod
        Title: Chief Executive Officer

Dated:  October 10, 2008


Exhibit Index


| Exhibit Number | Description |
| --- | --- |
| 99.1 | Press Release dated October 10, 2008 |
| 99.2 | Amended and restated employment agreement with Michael Feinsod dated October 10, 2008 |
| 99.3 | Amended and restated employment agreement with Gary Granoff dated October 10, 2008 |

<u>For Immediate Release</u>

Ameritrans Capital Corporation
For more information Contact:
Michael Feinsod
(212) 355-2449

## Ameritrans Capital Corporation Announces Michael Feinsod Appointed Chief Executive Officer

NEW YORK, NY, October 10, 2008 -- Ameritrans Capital Corporation, (NASDAQ: AMTC, AMTCP), today announced that its board of directors appointed Michael Feinsod Chief Executive Officer, in addition to his duties as President, effective October 10, 2008. As part of the management change, Gary C. Granoff will step down as Chief Executive Officer and take the title of Managing Director, while continuing as Ameritrans' Chairman of the Board and Chief Financial Officer. Mr. Granoff has served as Ameritrans' Chairman since its founding.

Mr. Feinsod said "I am pleased to take on this added responsibility. It is with great appreciation that I accept the position and look forward to continuing the transformation of Ameritrans into a premier business development company. As we face the current challenges in financial markets, there is a premium on solid underwriting, risk management, and a focus on core lending principles. Ameritrans has built a business plan based on these principles."

The Company's management further stated, "On behalf of the entire Ameritrans Board, we thank Gary Granoff for his hard work and dedication to Ameritrans. Gary has grown the Company since inception and hands over a firm that is on solid financial footing and poised for future growth."

Mr. Granoff said, "I'm extremely proud of my tenure at Ameritrans. In 1980, we set out to build the Company into a premier niche lender in the taxicab medallion business. I am happy to say we accomplished that goal and now look forward to the expansion of the Company's new area of focus. I look forward to remaining as Chairman of the Board and as an active member of management over the coming years. I have great confidence in Michael's leadership abilities and look forward to the successful execution of the strategy."

Ameritrans has a 28 year history of portfolio growth through secured lending. Important facts worth noting:

- Ameritrans' net asset value per share, as of June 30, 2008, was $5.06. As of September 30, 2008, our portfolio continued to perform with record low delinquencies.

- As of September 30, 2008, Ameritrans had approximately $57.6 million of total loans receivable. Adjusted for the anticipated sale of our medallion

portfolio, on a pro forma basis, Ameritrans will have approximately $30.1 million of total loans receivable outstanding. As of September, 30, 2008, Ameritrans had approximately $12.5 million in corporate loans, a 9% increase over the previous quarter. All corporate loans are performing.

- Ameritrans has implemented various internal processes to reduce risk in recent months. Ameritrans owns no synthetic securities with its portfolio comprised of over 75% in first lien loans.

- As of September 30, 2008, Ameritrans had approximately $41 million in total debt, including $12 million of SBA Subordinated Debentures. We expect to pay down all of the Company's existing bank debt with the proceeds from our medallion sale. We are exploring new relationships for the financing of our corporate loan strategy.

- Ameritrans recently announced the first quarter dividend on its 9 3/8 participating preferred stock. The Company has paid all dividends due on the preferred stock since its issuance.

"I am confident that this change will enhance future performance as we intensify our focus on the corporate loan strategy and conservatively manage our balance sheet," Mr. Feinsod concluded.

Mr. Feinsod becomes CEO after approximately two years as President of Ameritrans and Senior Vice President of Elk Associates Funding Corporation, the company's wholly-owned SBIC subsidiary. Since 1999, Mr. Feinsod has been Managing Member of Infinity Capital, LLC, an investment management company. Mr. Feinsod earned a BA from George Washington University and a JD from Fordham University School of Law.

## ABOUT AMERITRANS CAPITAL CORPORATION

Ameritrans Capital Corporation is an internally managed, closed-end investment company that has elected to be regulated as a business development company ("BDC") under the Investment Company Act of 1940, as amended. Ameritrans originates, structures and manages a portfolio of medallion loans, secured business loans and selected equity securities. Ameritrans' wholly owned subsidiary Elk Associates Funding Corporation is licensed by the United States Small Business Administration as a Small Business Investment Company (SBIC) in 1980. The Company maintains its offices at 747 Third Avenue, 4th Floor, New York, NY 10017.

## FORWARD-LOOKING STATEMENTS

Statements included herein may constitute "forward-looking statements," which relate to future events or our future performance or financial condition. These statements are not guarantees of future performance, conditions or results and involve a number of risks and uncertainties. Actual results and conditions may differ materially from those in the forward-looking statements as a result of a number of factors, including those described from time to time in our filings with the Securities and Exchange Commission.

Ameritrans Capital undertakes no duty to update any forward-looking statements made herein.

# Exhibit I

# U.S. SECURITIES AND EXCHANGE COMMISSION

**Washington, D.C. 20549**

———————

# FORM 8-K

———————

### Current Report Pursuant to Section 13 or 15(d) of
### the Securities Exchange Act of 1934

### June 30, 2010

Date of Report

(Date of Earliest Event Reported)

# AMERITRANS CAPITAL CORPORATION

(Exact name of Registrant as specified in its charter)

| Delaware | 333-63951 | 52-2102424 |
|---|---|---|
| (State or other jurisdiction of incorporation or organiztion) | (Commission File No.) | (I.R.S. Employee I.D. Number) |

**830 Third Avenue, 8th Floor**
**New York, New York 10022**

(Address of principal executive offices (Zip Code)

**(212) 355-2449**

(Registrant's telephone number, including area code)

Check the appropriate box below if the Form 8-K filing is intended to simultaneously satisfy the filing obligation of the registrant under any of the following provisions:

[_]   Written communications pursuant to Rule 425 under the Securities Act (17 CFR 230.425)

[_]   Soliciting material pursuant to Rule 14a-12 under the Exchange Act (17 CFR 240.14a-12)

[_]   Pre-commencement communications pursuant to Rule 14d-2(b) under the Exchange Act (17 CFR 240.14d-2(b))

[_]   Pre-commencement communications pursuant to Rule 13e-4(c) under the Exchange Act (17 CFR 240.13e-4(c))

**Item 5.02.  Departure of Directors or Certain Officers; Election of Directors; Appointment of Certain Officers; Compensatory Arrangements of Certain Officers.**

Effective July 1, 2010, Michael Feinsod, Chief Executive Officer, President and a Director of Ameritrans Capital Corporation ("Ameritrans"), and Senior Vice President and a Director of Elk Associates Funding Corporation ("Elk" and, together with Ameritrans, the "Company"), a wholly-owned subsidiary of Ameritrans, was appointed to serve as Chief Financial Officer and Treasurer of the Company for an interim period until his successor is duly elected and qualified. The Company is in the process of identifying a qualified person to serve as the Company's Chief Financial Officer on a permanent basis.

Mr. Feinsod replaces the Company's former Chief Financial Officer, Gary Granoff, who had agreed to serve as Chief Financial Officer of the Company until June 30, 2010 in accordance with the Amended and Restated Employment Agreement between the Company and Mr. Granoff, dated as of October 1, 2008, as amended on November 12, 2009. Mr. Granoff continues to serve as a member of the Company's Board of Directors and as the Managing Director of Ameritrans.

Mr. Feinsod, age 39, has been a director of the Company since December 2005, President since November, 2006, Chief Compliance Officer since July 2008 and Chief Executive Officer since October 2008. Since November 2006, Mr. Feinsod has also served as a Senior Vice President of Elk. Since 1999, Mr. Feinsod has been a managing member of Infinity Capital, LLC, an investment management company. Prior to founding Infinity Capital, LLC, Mr. Feinsod worked as an analyst and portfolio manager for Mark Boyar & Company, Inc. Mr. Feinsod is a member of the board of directors of The Kingstone Companies, Inc. (NASDAQ: KINS) and its wholly-owned subsidiary Kingstone Insurance Company, Inc., a property and casualty insurance company. Mr. Feinsod is admitted to practice law in New York and was an associate in the corporate law department of Paul, Hastings, Janofsky & Walker LLP from 1996 to 1997. Mr. Feinsod holds a BA from The George Washington University and a JD from Fordham University School of Law.

On May 28, 2010, Mr. Feinsod entered into an amended and restated employment agreement with the Company. The material terms of such agreement were described in Item 5.02 of Ameritrans' Current Report on Form 8-K filed with the Securities and Exchange Commission on June 4, 2010, which is incorporated herein by reference. The terms of Mr. Feinsod's employment agreement with the Company were not amended in connection with his appointment as Chief Financial Officer and Treasurer.

**SIGNATURES**

Pursuant to the requirements of the Securities Exchange Act of 1934, the Registrant has duly authorized and caused the undersigned to sign this Report on the Registrant's behalf.

**AMERITRANS CAPITAL CORPORATION**

By:   /s/ Michael Feinsod
        Name:  Michael Feinsod
        Title: Chief Executive Officer and President

Dated: July 7 , 2010

# Exhibit J

# MINUTES OF A REGULAR MEETING
## OF
## THE BOARD OF DIRECTORS
## OF
## AMERITRANS CAPITAL CORPORATION AND
## ELK ASSOCIATES FUNDING CORPORATION

A regular meeting of the Board of Directors (the "**Board**") of Ameritrans Capital Corporation ("**Ameritrans**") and Elk Associates Funding Corporation ("**Elk**", and together with Ameritrans, the "**Company**") took place at the offices of the Company located at 830 Third Avenue, New York, NY on February 22, 2012.  The meeting was also held by conference call where all members could hear and be heard.

The following members of the Board were present in person or by telephone:

> Michael Feinsod – Chairman of the Board,
> Steven Etra,
> Elliott Singer,
> Howard Sommer,
> Ivan Wolpert, and
> Peter Boockvar.

Richard Feinstein, Senior Vice President and Chief Financial Officer of the Company, was also present by telephone.  Also present by telephone, at the invitation of the Board, were Elliot Press, Jonathan Weiner and Jeff Friedman of Katten Muchin Rosenman LLP, counsel to the Company, and John Mark Zeberkiewicz of Richards, Layton & Finger, P.A., counsel to Ameritrans.

Mr. Feinsod acted as chairman and secretary of the meeting.

Mr. Feinsod confirmed that a quorum was present and called the meeting to order at 3:05 p.m.

The first item on the agenda was an update regarding potential financing transactions with various sources of capital.

Mr. Feinsod updated the Board regarding recent conversations with Michael Jahrmarkt of Northlight Capital ("Northlight"), a lending firm with approximately $300 million in assets under management.  Mr. Feinsod noted that Northlight expressed willingness to consummate a transaction without necessarily obtaining Small Business Administration ("SBA") approval, or proceeding with a transaction that would result in Elk maintaining its status as an SBIC, without access to SBA leverage.  Northlight indicated that it had no desire to operate an SBIC and its main interest was in the BDC structure.

Mr. Feinsod then updated the Board regarding recent conversations with Edward Levy of Velocity Capital Advisors regarding a potential transaction.  Mr. Feinsod noted that he advised Mr. Levy of the difficulties the Company had encountered with obtaining SBA approval.  In that

84585835

regard, he also advised Mr. Levy that any transaction in which the purchaser acquires beneficial ownership of more than 10% of the Company would likely require SBA approval, and therefore might not be viable. Mr. Feinsod indicated to the Board that he had not received assurances from Velocity that it has sufficient available funds to complete a transaction with the Company.

Mr. Feinsod also provided a brief update regarding recent discussion between Messrs. Laird and Wolpert on the one hand and representatives of Columbus Nova on the other hand, noting that Columbus Nova had raised the prospect of foreclosing on Company assets if the Senior Secure Note (the "CN Note") issued to Ameritrans Holding LLC, an affiliate of Columbus Nova, was not paid immediately. The Board determined to defer any discussion of the Company's indebtedness until the end of the meeting.

The next item on the agenda was a discussion of a potential amendment (the "Amendment") to Ameritrans' bylaw provisions related to the indemnification of directors and officers of Ameritrans. Mr. Feinsod noted that, generally speaking, the Amendment would provide for the advancement of expenses incurred by directors and officers to defend against claims arising from their service as directors and officers of Ameritrans. Mr. Feinsod invited Messrs. Press and Zeberkiewicz to explain the content of the Amendment and the applicable standard for approving it.

Mr. Press explained that, while Ameritrans' directors and officers are currently entitled to indemnification with respect claims arising from actions taken by them on behalf of the Company in good faith ("Indemnified Claims"), the current bylaws do not require Ameritrans to pay defense costs in advance of the final disposition of an Indemnified Claim. The Amendment, he noted, would require Ameritrans to pay legal fees and other expenses incurred by directors and officers to defend against Indemnified Claims as such fees and expenses are incurred, prior to the final disposition of such Indemnified Claims and prior to a final determination that the relevant officer or director is entitled to indemnification. He noted that such advances would be subject to certain restrictions imposed by the Delaware General Corporation Law and the Investment Company Act of 1940.

A discussion ensued regarding the need for the Amendment to retain and, should the need arise, to attract qualified directors and officers, particularly given the Company's current financial condition.

The Board discussed whether the adoption of the Amendment would create a presumption or implication that Board members had not acted in good faith. At the Board's request, Mr. Zeberkiewicz explained that approval of the proposed bylaw amendment is a matter of the Board's business judgment so long as no director is currently seeking payment of expenses to defend against a claim for his activities as a director or officer.

Following discussion, the Board concluded that an amendment to Ameritrans' bylaws providing for advancement of expenses was advisable and that Mr. Feinsod, with the assistance of counsel, should distribute the full text of a proposed bylaw amendment for the Board's review and, if appropriate, approval by written consent or at the next meeting of the Board.

The next item on the agenda was a discussion of the Company's obligations to creditors. At the request of the Board, Mr. Press stated that it would be advisable for Mr. Etra, who, together with his affiliates, hold a portion of the Company's outstanding debt, recuse himself from deliberations regarding the disposition of Company debt. The Board, including Mr. Etra, concurred and Mr. Etra left the meeting at 3:34 p.m.

Following Mr. Etra's departure, Mr. Wolpert updated the Board regarding a meeting he and John Laird had with Andrew Intrater, Paul Lipari and Arnold Jung of Columbus Nova. Mr. Wolpert indicated the meeting was cordial, although Columbus Nova seemed eager to resolve the payoff of the CN Note. He noted that he and Mr. Laird had indicated to Columbus Nova that a financing transaction was being considered at the time of the meeting that would facilitate the payoff of Ameritrans' secured debt (although the identity of the potential investor was not disclosed to Columbus Nova). He noted that Columbus Nova did not want to wait for a transaction to be completed. Mr. Wolpert indicated that a follow up call with Columbus Nova was scheduled to occur later in the week.

The Board then discussed the possibility of satisfying certain of the Company's debt obligations at a discount with the proceeds of a secured loan from Elk to Ameritrans. Mr. Feinsod noted that he thought the Company could negotiate with Columbus Nova to settle the Company's obligations under the CN Note for less than the full amount due, and potentially less than the par value of the CN Note. He noted his belief that, given the time and uncertainty of completing a financing transaction, CN might agree to a discount in exchange for prompt payment of the discounted amount.

At the request of the Board, Messrs. Press and Friedman led a discussion of the proposed use of Elk funds to pay off all or a portion of the CN Note. Mr. Friedman indicated that, in light of the fact that CN is oversecured, CN would have little incentive (other than expedience) to accept a discounted payoff of the CN Note, and that as a secured creditor CN would have priority of payment over the Company's other creditors, all of which he understood to be unsecured. He further noted that, in a bankruptcy context, a payment to holders of the Company's Senior Notes (the "Senior Notes") (which include affiliates of Mr. Etra) might be challenged as a preference, but might be justified if the note holders agreed to a discount that adequately reflected their unsecured position.

The Board then held a detailed discussion regarding the payoff of the Company's outstanding debt, including potential negotiating points to realize a discount in connection with the payoff of the CN Note. The Board also discussed the benefits to all stakeholders of the Company of paying off Columbus Nova and the Senior Note holders at a discount. During the discussion, Mr. Feinsod noted that the SBA had recently taken action to put several SBICs into liquidation. He noted that a liquidation or receivership was unlikely to maximize the value of the Company's assets for both its creditors and shareholders and that it would be in all stakeholders' interest to avoid liquidation, particularly in the context of a receivership where the value of the Company's assets might not be maximized.

Following the foregoing discussion, upon a motion duly made and seconded, the Board unanimously:

**RESOLVED**, to authorize Messrs. Feinsod, Laird and Wolpert to engage in further discussions with Columbus Nova aimed at satisfying the Company's obligations under the CN Note for an amount less than par, or otherwise discounted from the total amount of the Company's obligations thereunder, provided that a payoff of the CN Note will not be undertaken without further approval of the Board.

There being no further business to come before the Board in this meeting, the meeting was adjourned at 3:49 p.m..

Respectfully submitted,

Michael Feinsod, as Secretary of the Meeting

# Exhibit K

MINUTES OF A SPECIAL MEETING
OF
THE BOARD OF DIRECTORS
OF
AMERITRANS CAPITAL CORPORATION AND
ELK ASSOCIATES FUNDING CORPORATION

Special meetings of the Board of Directors (the "**Board**") of each of Ameritrans Capital Corporation ("**Ameritrans**") and Elk Associates Funding Corporation ("**Elk**") took place at the offices of Ameritrans located at 830 Third Avenue, New York, NY on February 24, 2012. Members not present in person were present by telephone conference, whereby all members and could hear and be heard.

The following members of the Board of each of Ameritrans and Elk were present in person or by telephone, as follows:

> Michael Feinsod – Chairman of the Board,
> Steven Etra,
> Elliott Singer,
> Ivan Wolpert, and
> Peter Boockvar.

Richard Feinstein, Senior Vice President and Chief Financial Officer of Ameritrans, was also present by telephone.

Also present by telephone, at the invitation of each Board, were:

> Elliot Press, Jeff Friedman and Robert Kohl of Katten Muchin Rosenman LLP, counsel to Ameritrans and Elk;
> John Mark Zeberkiewicz of Richards, Layton & Finger, P.A., special Delaware counsel to Ameritrans;
> Phillip Feigen of Patton Boggs LLP, counsel to Elk; and
> William Heyman of Offit Kurman, counsel to Ameritrans and Elk.

Mr. Feinsod acted as chairman and secretary of the meeting.

Mr. Feinsod confirmed that a quorum was present and called the meeting of each Board to order at 11:09 a.m.

The first item on the agenda was a discussion of a referral of Elk to the Small Business Administration's ("SBA") office of liquidation.

Mr. Feinsod advised the Board he received a voicemail from Paul Salgado of the SBA, in which Mr. Salgado advised that a recommendation to transfer Elk to the SBA's office of liquidation had been approved, and that Sean Greene and Harry Haskins of the SBA had signed appropriate paperwork to effectuate the transfer of Elk to the office of liquidation within the next week.

Mr. Feinsod stated his view, formed after consultation with counsel, that the Board of Elk had two general options: (1) accept the transfer of Elk to the SBA's office of liquidation and proceed with the liquidation of Elk or (2) take action to forestall such transfer and liquidation, potentially including the commencement of litigation to obtain an injunction, temporary restraining order or similar relief.

Mr. Feinsod then explained some of the consequences of being transferred to the SBA's office of liquidation. He stated that, once transferred to the office of liquidation, an SBIC will not emerge unless it complies with the SBA's then-current licensing standards. Accordingly, Elk would be required to undergo significant structural changes to satisfy certain licensing requirements that are not currently applicable to it, having obtained its license prior to the adoption of certain current SBA licensing requirements.

At the request of Elk's Board, Mr. Feigen explained two possible procedural paths for Elk following a referral to the SBA office of liquidation. First, he noted, Elk could propose a plan of liquidation to the SBA and, if approved, Elk would control the process of liquidating its assets for purposes of repaying SBA debt. Alternatively, if the SBA does not approve of Elk's plan of liquidation, the SBA would appoint a receiver to operate and liquidate Elk's assets for the purpose of satisfying Elk's obligations to the SBA.

Elk's Board then discussed the differences between an Elk-led liquidation and a receiver-led liquidation. The general consensus was that the value of Elk's assets would be best preserved and maximized by Elk (as opposed to a receiver) if liquidation is necessary. Mr. Feinsod stated his belief that approximately 50% of Elk's assets are relatively liquid and, with respect to those assets, while a receiver might realize approximately 90% of the fair value that Elk would realize if Elk handled the liquidation, the recovery difference would likely be greater for the less liquid assets. The Board discussed the extended time and efforts by management that it would take to recover Elk's investment in the illiquid assets.

Elk's Board then discussed procedural aspects of a referral to the office of liquidation. Mr. Feigen noted that, in the case of a liquidation based on an SBIC's capital impairment, the SBA ordinarily is required to notify the SBIC of its capital impairment, in writing, before referring the SBIC to the office of liquidation (such notice, an "Impairment Notice"). An Impairment Notice, he explained, typically includes a 15-day cure period, delaying the referral of the SBIC to the office of liquidation until the expiration of such period. Mr. Feinsod stated that Elk received an Impairment Notice in 2010 and subsequently notified the SBA that the impairment had been cured. Elk has not received another Impairment Notice to date.

Elk's Board then discussed whether Elk was entitled to a new Impairment Notice prior to being referred to the office of liquidation. Mr. Feinsod noted that, based on Mr. Salgado's voicemail, it is unclear whether the SBA intended to provide a new Impairment Notice prior to referring Elk to the office of liquidation. Mr. Feigen advised the Board that once a referral to the office of liquidation occurs, the failure by the SBA to deliver an Impairment Notice would not necessarily mitigate the consequences of the referral. The Board discussed whether it would be advisable to notify the SBA that Elk had not received an Impairment Notice, for purposes of gaining a 15-day cure period rather than facing immediate referral to the liquidation office.

Elk's Board then discussed seeking a temporary restraining order or injunction or pursuing another litigation strategy to prevent or defer a referral of Elk to the office of liquidation. At the request of the Board, Mr. Heyman led the discussion. He estimated that pursuing injunctive relief would cost approximately $50,000 and expressed his belief that it is very unlikely that a court would grant a temporary restraining order or other injunctive relief under the circumstances. He explained that, while the SBA's rejections of the Columbus Nova and Full Circle Capital transactions may have been arbitrary and capricious, it is unclear what relief Elk would be entitled to in light of the fact neither transaction is currently pending. He advised the Board that it is possible the SBA would not object to a delay for a specified period of time, but he could not predict how the SBA would respond. Nonetheless, he explained, it would be difficult to successfully prosecute a claim if the SBA is entitled to pursue a liquidation based on Elk's capital impairment.

When Mr. Heyman's telephone connection was inadvertently terminated the Ameritrans Board turned to a discussion of an Ameritrans bylaw amendment as set forth in Exhibit A hereto. Although the Ameritrans Board had previously discussed such amendment, members of the Board requested that Mr. Press provide a brief explanation thereof. Mr. Press explained that the bylaw amendment would provide for the advancement of expenses incurred by officers and directors of Ameritrans in the event they were subjected to claims for actions taken on behalf of Ameritrans. He noted that the provisions contained in the proposed amendment are nearly identical to corresponding provisions in Elk's bylaws. He also noted that, as set forth in the form of bylaw amendment previously distributed to the Ameritrans Board, there are certain limitations on a director or officer's right to have expenses advanced under the Delaware General Corporation law and the Investment Company Act of 1940. The Ameritrans Board revisited its prior discussion with respect to the need to effect the changes in the proposed amendment and the implications thereof.

Following further discussion, upon a motion duly made and seconded, the Board of Ameritrans unanimously approved and adopted the recitals and resolutions set forth in Exhibit A hereto, which were previously distributed to members of the Ameritrans Board.

Mr. Heyman re-joined the meeting and the Elk Board continued its discussion of a potential litigation strategy. Mr. Heyman stated that he could not predict how the SBA would respond to an action seeking injunctive relief and that the probability of obtaining such relief would be low unless an adequate remedy could be crafted. In his view, litigation would be beneficial if the SBA could be enjoined from putting Elk into liquidation for a period of time, but, in light of Elk's capital impairment, such a remedy might not be available.

3

The consensus of the Board was that Mr. Feinsod and Elk's counsel should further discuss and consider the costs, benefits and likely outcomes of an action to delay or enjoin the SBA from moving Elk into liquidation. Mr. Heyman then left the meeting.

The next item on the agenda was an update regarding Ameritrans' directors and officers insurance. Mr. Feinsod noted that the cost of a six year "tail" policy would be approximately $130,000, and that the premium would be subject to a refund if Ameritrans terminated the policy prior to its expiration. Mr. Feinsod advised the Board that, subject to Board approval, he was planning to purchase a tail policy. After discussion, the Board approved the purchase of the tail policy, and instructed Mr. Feinsod to affect such purchase.

The next item on the agenda was a discussion of Ameritrans' outstanding indebtedness. Mr. Feinsod updated the Board regarding the payoff of Ameritrans' senior secured note (the "CN Note") issued to Ameritrans Holdings LLC, an affiliate of Columbus Nova. Mr. Feinsod indicated that he and Mr. Wolpert again met with Columbus Nova on February 23 and negotiated a settlement of Ameritrans' obligations under the CN Note for $1.42 million, which represented approximately 90% of the principal, interest (including penalty interest) and other amounts claimed due under the CN Note and approximately 99% of the face value of the CN Note. Mr. Feinsod noted that settlement of the obligation to Columbus Nova is important because it forestalls Columbus Nova's liquidating Ameritrans' assets held as security which is likely to impair its ability to raise additional capital and contribute additional capital to Elk.

After discussion, Mr. Feinsod indicated that it was in order for the Board to discuss Ameritrans' outstanding unsecured senior notes in the aggregate principal amount of $3 million (the "Unsecured Notes") and the Company's overall plan to address its indebtedness. As a holder of such indebtedness, Mr. Etra recused himself from such deliberations and left the meeting.

Mr. Feinsod reported that, based on discussions with several holders of the Unsecured Notes, he believed the Unsecured Notes could be extinguished in exchange for payments representing approximately 80% of the principal and interest due thereunder or approximatley 88% of the face value thereof.

Mr. Feinsod led a discussion of the proposal (the "Payoff Proposal") for Ameritrans to issue a fully-secured note (the "Intercompany Note") to Elk in exchange for a loan in the principal amount of approximately $4.5 million, the proceeds of which would be used by Ameritrans to pay off the CN Note and the Unsecured Notes and provide for additional working capital. After discussion, the Ameritrans Board concluded that the ability to pay off Ameritrans' indebtedness at a discount would be advantageous to Ameritrans and its stockholders. The Ameritrans Board noted that the Payoff Proposal would avoid a foreclosure with respect to the collateral securing the CN Note and a "fire sale" liquidation of assets which could result in the liquidation of Ameritrans and eliminate, or make highly unlikely, the possibility of obtaining outside financing or engaging in any strategic transaction.

4

The Elk Board then discussed whether the Payoff Proposal was in the best interest of Elk and its stakeholders. Mr. Feinsod noted that, as reflected in Ameritrans' most recent financial statements and in a fair value analysis prepared for and circulated to the Board, the collateral that would secure the Intercompany Note should be more than sufficient to repay the proposed loan from Elk. He also noted that, if either Ameritrans or Elk were to begin liquidating its portfolio in order to satisfy creditors, it is likely their employees would leave Ameritrans and Elk, making an orderly liquidation of either Ameritrans or Elk very difficult to accomplish. Mr. Feinsod also noted that permitting Ameritrans to repay its debt would enhance its ability to attract additional capital, which in turn would strengthen Elk's financial position and allow it to preserve and maximize the value of its assets. Mr. Feinsod then invited Messrs. Press and Friedman to discuss the Payoff Proposal, and respond to questions posed by the Board.

As a preliminary matter, a short discussion of the current approximately $5 million intercompany payable from Ameritrans to Elk ensued, including the risk that a receiver appointed for Elk could force Ameritrans into bankruptcy in respect of such intercompany payable. Mr. Friedman advised the Board that if a debtor has fewer than 12 creditors, a single creditor (such as Elk in a receivership scenario with respect to the current unsecured intercompany payable from Ameritrans to Elk) can file an involuntary bankruptcy petition against the debtor, without the cooperation of any additional creditors. Mr. Feinsod noted he thought Ameritrans had more than 12 creditors.

Mr. Press then discussed the Payoff Proposal including some of the risks thereof. He discussed the risk that the SBA, as the major creditor of Elk, could bring a claim against the members of Elk's Board, Ameritrans and/or Elk on the theory that a loan to Ameritrans is improper because it subverts Elk's ability to repay its debt to the SBA. Mr. Press also noted the fact that, in light of the SBA's informal notification that it intended to transfer Elk to the office of liquidation, the discussion of whether the Payoff Proposal was in the best interests of Elk and its stakeholders had become more complex.

Mr. Friedman added that the Board should carefully consider whether the value of Ameritrans' collateral was indeed sufficient to repay the intercompany loan. If such value is sufficient, he believed the Board's stated goal of satisfying creditors in order to preserve the possibility of paying Elk's obligations to the SBA in the ordinary course in full rather than in liquidation might justify the Payoff Proposal. He also reminded the Board that Katten had prepared a memorandum which was provided to the Board explaining the justifications for entering into the Payoff Proposal and that those justifications were generally still applicable. Mr. Friedman also noted that even if Elk was going to be liquidated, something not contemplated by Katten's memorandum, according to Mr. Feinsod, the value realizable upon liquidation of Elk's loan portfolio and the value of the intercompany obligation from Ameritrans might well be in excess of the amounts necessary to pay the SBA's debentures in full. If so, then Ameritrans would have equity in Elk and Elk's Board had justification for considering the interests of both its creditor, the SBA, and its equity holder, Ameritrans.

After discussion, and at the request of the Board, Mr. Feigen discussed the SBA's possible reactions to an intercompany loan. He noted that it was difficult to predict how the SBA might respond. He cautioned the Board that the SBA might object to an intercompany loan, but that, assuming the assets securing the loan are sufficient to cover the amount of the loan, and in view of the relatively short duration of the loan, the SBA or an Elk receiver may elect not to pursue any claim in respect of the intercompany secured loan. He reiterated that is was difficult to predict the reaction of the SBA or any receiver. He also noted that an intercompany loan might increase the likelihood that SBA would insist that a receiver be appointed to handle a liquidation of Elk.

Mr. Press reiterated that the Board's confidence in the valuation of the collateral securing the intercompany loan is an important factor in the Board's deliberation on the matter.

At the request of the Board, Mr. Zeberkiewicz explained the Board's fiduciary duties. He noted that the board of directors of a wholly-owned subsidiary generally owes a fiduciary duty to the parent company's stockholders (e.g., in the case of Elk, Ameritrans' stockholders). Where the subsidiary is insolvent, those duties may be expanded to include the company's creditors. He noted that a majority of the Board members of each of Elk and Ameritrans did not appear to have any interests different from the interests of Elk or Ameritrans, or their stakeholders and that the decision of each Board made in good faith and on an informed basis should be entitled to deference under the business judgment rule.

Members of the Board then asked counsel for clarification on the exposure of members of the Board to claims by the SBA or otherwise with respect to the intercompany loan. Mr. Friedman noted that, if the Board concluded that the intercompany loan and repayment of certain indebtedness is advisable and in the best interests of the Company's stakeholders, it was unlikely, in his view, that a claim for breach of fiduciary duty would be successful on the merits. He cautioned, however, that the SBA could nonetheless file a claim against Elk's directors or officers, regardless of whether such claim is likely to be successful and that there can be no assurance as to the outcome of any such claim.

A further discussion of the intercompany loan ensued. Mr. Feinsod noted the short term of the proposed intercompany loan of less than two years and stated that Ameritrans would move to liquidate certain assets in an orderly manner so as to pay off the loan even before its due date. After taking into consideration the many factors addressed during the meeting, and after discussion, the consensus of the Board was that (i) repaying Ameritrans' outstanding notes, would be the best way to preserve and maximize the value of both Ameritrans and Elk, and would be in the best interests of Ameritrans, Elk and their respective stakeholders; and (ii) the Ameritrans assets that would secure the intercompany loan are more than sufficient to repay the secured intercompany loan. Mr. Feinsod noted that the valuation of the assets to be used as collateral was consistent with GAAP and previously reported values of these assets.

6

Upon a motion duly made and seconded, the Board of Elk unanimously:

**RESOLVED**, that a loan in the principal amount of $4.5 million made by Elk to Ameritrans be, and it hereby is, approved in all respects; provided that Ameritrans executes and delivers to Elk a secured promissory note evidencing its obligation to repay such indebtedness and granting to Elk a first priority security interest in all of the assets of Ameritrans, other than Ameritrans' equity in Elk; and,

Upon a motion duly made and seconded, the Board of Ameritrans unanimously:

**RESOLVED**, that the borrowing by Ameritrans of $4.5 million dollars from Elk be, and it hereby is, approved in all respects and that the President of Ameritrans be, and he hereby is, authorized, empowered and directed to execute and deliver a secured promissory note (the "Note") evidencing its obligation to repay such indebtedness in such form, and containing such terms and provisions, as the President shall approve, such approval to be conclusively evidenced by the execution thereof; and

**RESOLVED**, that, contemporaneously with the borrowing contemplated by the foregoing resolution, the President of Ameritrans be, and he hereby is, authorized empowered and directed to take such actions, execute such security agreements, financing statements, instruments and other documents as the President shall determine to be necessary, advisable or appropriate to grant to Elk a perfected, first priority security interest in all of the assets of Ameritrans, other than Ameritrans' equity interest in Elk, to secure the obligations of Ameritrans under the Note, such determination to be conclusively evidenced by the execution of such documents thereof.

Mr. Etra then returned to the meeting.

The Board then returned to its discussion regarding avoiding or deferring a referral of Elk to the SBA's office of liquidation. The consensus of the Board was that proactively advising appropriate individuals at the SBA that Elk had not received an Impairment Notice might be a cost-effective means for delaying such referral and allowing the Company more time to explore its options. Nonetheless, the Board believed that, if litigation is necessary, time would be of the essence and it would be advisable to authorize the commencement of litigation. Upon a motion duly made, it was unanimously

**RESOLVED**, that the Chief Executive Officer and President of the Company be, and he hereby is, authorized and empowered, in the name and on behalf of the Company to take all action which he determines to be necessary, appropriate or advisable, and to execute (in the name and on behalf of the Company) all pleadings, affidavits, certifications or other documents as may be necessary to commence litigation against the SBA including, without limitation, seeking a temporary restraining order, injunction or similar relief if, after discussing the same with counsel to the Company, such officer determines that such action is advisable.

7

The Board then deemed it in order to ratify and confirm the actions of the officers of Elk and Ameritrans taken since the last Board meeting.  Upon motion duly made and seconded, it was

**RESOLVED**, that the acts of the officers of Elk and Ameritrans taken since the last meeting of the Board are hereby approved and ratified.

Mr. Feinsod advised the Board that he would keep it apprised of matters as warranted.

There being no further business to come before the Board in this meeting, the meeting was adjourned.

Respectfully submitted,

*Mel G—*

Michael Feinsod, as Secretary of the Meeting

8

## EXHIBIT A

WHEREAS, Article XII of the Amended and Restated Bylaws (the "Bylaws") of Ameritrans Capital Corporation (the "Company") currently provides for mandatory indemnification, to the fullest extent permitted by the General Corporation Law of the State of Delaware (the "General Corporation Law"), of any person made or threatened to be made a party to any threatened, pending or completed action, suit or proceeding by reason of the fact that such person is or was a director or officer of the Company or is or was serving at the specific request of the Company as a director, officer, employee or agent of another enterprise in which the Company should own, directly or indirectly, an equity interest or of which it may be a creditor;

WHEREAS, the Bylaws currently do not provide such persons mandatory rights to advancement of expenses in connection with any action, suit or proceeding as permitted by the General Corporation Law;

WHEREAS, competent and experienced persons may be reluctant to serve public corporations as directors or officers unless they are provided with adequate protection through mandatory rights to indemnification and advancement of expenses in connection with actions, suits or proceedings arising out of their service to and activities on behalf of the corporation;

WHEREAS, the Board of Directors of the Company (the "Board") has determined that, in order to retain qualified and experienced individuals as directors and officers of the Company, and to attract any such individuals to serve the Company in any such capacity as and when the need should arise, it is advisable to provide such persons such protection; and

WHEREAS, the Board has determined that it is advisable and in the best interests of the Company and its stockholders to amend the Bylaws to extend such protection to persons serving the Company in such capacities, on the terms and subject to the conditions set forth in the amendment to the Bylaws submitted for approval by the Board at this meeting.

NOW, THEREFORE, IT IS HEREBY:

RESOLVED, that Article XII of the Bylaws is hereby deleted in its entirety and replaced with the following:

## "ARTICLE XII

### Indemnification and Advancement of Expenses

   1. *Right to Indemnification.* The corporation shall indemnify and hold harmless, to the fullest extent permitted by applicable law as it presently exists or may hereafter be amended, any person (a "Covered Person") who was or

9

is made or is threatened to be made a party or is otherwise involved in any action, suit or proceeding, whether civil, criminal, administrative or investigative (a "proceeding"), by reason of the fact that he or she, or a person for whom he or she is the legal representative, is or was a director or officer of the corporation or, while a director or officer of the corporation, is or was serving at the request of the corporation as a director, officer, employee or agent of another corporation or of a partnership, joint venture, trust, enterprise or nonprofit entity, including service with respect to employee benefit plans, against all liability and loss suffered and expenses (including attorneys' fees) reasonably incurred by such Covered Person.   Notwithstanding the preceding sentence, except as otherwise provided in Section 3 of this Article XII, the corporation shall be required to indemnify a Covered Person in connection with a proceeding (or part thereof) commenced by such Covered Person only if the commencement of such proceeding (or part thereof) by the Covered Person was authorized in the specific case by the board of directors of the corporation.

      2.     *Advancement of Expenses.*   The corporation shall to the fullest extent not prohibited by applicable law pay the expenses (including attorneys' fees) incurred by a Covered Person in defending any proceeding in advance of its final disposition, *provided, however*, that, to the extent required by applicable law, such payment of expenses in advance of the final disposition of the proceeding shall be made only upon (a) receipt by the corporation of (i) a written affirmation by the Covered Person of the Covered Person's good faith belief that the standards of conduct necessary for indemnification under applicable law have been met, and (ii) a written undertaking by the Covered Person to repay all amounts advanced if it should be ultimately determined that the standards of conduct necessary for indemnification under applicable law have not been met or the Covered Person is otherwise not entitled to indemnification; and (b) the satisfaction of at least one of the following conditions: (i) the Covered Person shall have provided adequate security for his or her undertaking, (ii) the corporation shall be insured against losses arising by reason of any lawful advances or (iii) a majority of a quorum of the Independent, Non-Party Directors, or if such quorum is not obtainable or even if obtainable, if a majority vote of such quorum so direct, Special Counsel in a written opinion, shall conclude, based on a review of readily available facts (as opposed to a full trial-type inquiry), that there is substantial reason to believe that the Covered Person ultimately will be found entitled to indemnification under applicable law. "Special Counsel" shall mean an "independent legal counsel" as defined in Reg. §270.0-1(a)(6) promulgated under the Investment Company Act of 1940, as amended (the "1940 Act") and such counsel shall be selected by a majority of the Independent, Non-Party Directors. "Independent, Non-Party Director" shall mean directors who are both (x) not an "interested person" as defined in Section 2(a)(19) of the 1940 Act and (y) not a party to the proceeding.

      3.     *Claims.*   If a claim for indemnification (following the final disposition of such proceeding) or advancement of expenses under this Article

10

XII is not paid in full within thirty days after a written claim therefor by the Covered Person has been received by the corporation, the Covered Person may file suit to recover the unpaid amount of such claim and, if successful in whole or in part, shall be entitled to be paid the expense of prosecuting such claim to the fullest extent permitted by law. In any such action the corporation shall have the burden of proving that the Covered Person is not entitled to the requested indemnification or advancement of expenses under applicable law.

4.    *Nonexclusivity of Rights*.   The rights conferred on any Covered Person by this Article XII shall not be exclusive of any other rights which such Covered Person may have or hereafter acquire under any statute, provision of the Certificate of Incorporation, these By-laws, agreement, vote of stockholders or disinterested directors or otherwise.

5.    *Other Sources*.   The corporation's obligation, if any, to indemnify or to advance expenses to any Covered Person who was or is serving at its request as a director, officer, employee or agent of another corporation, partnership, joint venture, trust, enterprise or nonprofit entity shall be reduced by any amount such Covered Person may collect as indemnification or advancement of expenses from such other corporation, partnership, joint venture, trust, enterprise or non-profit enterprise.

6.    *Amendment or Repeal*.   Any right to indemnification or to advancement of expenses of any Covered Person arising hereunder shall not be eliminated or impaired by an amendment to or repeal of these By-laws after the occurrence of the act or omission that is the subject of the civil, criminal, administrative or investigative action, suit or proceeding for which indemnification or advancement of expenses is sought.

7.    *Other Indemnification and Advancement of Expenses*.   This Article XII shall not limit the right of the corporation, to the extent and in the manner permitted by law, to indemnify and to advance expenses to persons other than Covered Persons when and as authorized by appropriate corporate action."

RESOLVED, FURTHER, that the Secretary of the Company is hereby authorized and directed to file a copy of the foregoing amendment to the Bylaws with the books and records of the Company; and

RESOLVED, FURTHER, that the officers of the Company be, and each of them hereby is, authorized, empowered and directed, for and on behalf of the Company, to take any and all actions, to negotiate for and enter into agreements and amendments to agreements, to perform all such acts and things, to execute, file, deliver or record in the name and on behalf of the Company, all such certificates, instruments, agreements or other documents, and to make all such payments as they, in their judgment, or in the judgment of any one or more of them, may deem necessary, advisable or appropriate in order to carry out the purpose and intent of,

11

or consummate the transactions contemplated by, the foregoing resolutions and/or all of the transactions contemplated therein or thereby, the authorization therefor to be conclusively evidenced by the taking of such action or the execution and delivery of such certificates, instruments, agreements or documents.

# Exhibit L

| | 6/30/11 | 30-Sep | 12/31/11 | Accrued 1/1-3/7 | Fees Claimed | Total Claim Due on 3/7 | Proposed Settlement | Percentage of Par | Percentage of Claim | |
|---|---|---|---|---|---|---|---|---|---|---|
| **CN Note** | 1,500,000 | 1,423,000 | 1,423,000 | 1,423,000 | 100,000 | 1,576,204 | 1,420,000 | 99.8% | 90.1% | |
| Default Int | | 7,115 | 7,115 | 5,297 | | | | | | 19,527 |
| Regular Interest Accrued but not paid | | | 9,012 | 31,780 | | | | | | 40,793 |
| | | | | | | | | | | |
| **Senior Notes** | 3,000,000 | 3,000,000 | 3,000,000 | 3,000,000 | 200,000 | 3,286,000 | 2,650,000 | 88.3% | 80.6% | |
| Default Int | - | - | | | | | | | | |
| Regular Interest | | | 19,000 | 67,000 | | | | | | 86,000 |
| | | | | | | | | | | |
| **Total Proposed Settlement** | | | | | | | 4,070,000 | | | |
| | | | | | | | | | | |
| **Proposed Loan Elk to AMTC** | | | | | | | 4,500,000 | | | |
| | | | | | | | | | | |
| | | | | | | **Excess Working Capital at AMTC** | 430,000 | | | |

| | Principal Balance | Fair Value | 2-27 Update | | | |
|---|---|---|---|---|---|---|
| Pro Forma | | | | | | |
| **Collateral Pool (as of 12/31/11** | | | | **Change to AMTC Equity** | | |
| Cash | 430,000 | 430,000 | | | | |
| J. JG. Associates, Inc. | 182,936 | 85,250 | no change anticipated | Debt Outstanding | 4,423,000 | |
| J. JG. Associates, Inc. | 35,781 | 35,781 | no change anticipated | Interest Outstanding | 146,319 | |
| Car-Matt Real Estate LLC | 135,578 | 75,000 | no change anticipated | Total | 4,569,319 | |
| CMCA, LLC | 221,585 | 221,585 | no change anticipated | | | |
| CMCA, LLC #2 | 106,261 | 106,261 | no change anticipated | Payoff Amounts | 4,070,000 | |
| MBS Serrano, Ltd. | 50,600 | 8,487 | no change anticipated | | | |
| MBS Colonnade, Ltd. | 50,000 | 10,211 | no change anticipated | Increase to Book Value | 499,319 | |
| MBS Sage Creek, Ltd. | 50,000 | 10,015 | no change anticipated | | | |
| 238 W. 108 Realty LLC | 100,000 | 4,000 | no change anticipated | | | |
| Vibrant Capital Corp. (J.V.#1) | 4,102,667 | 2,830,400 | no change anticipated | | | |
| Asset Recovery & Mgmt. LLC | 6,000 | 6,000 | no change anticipated | | | |
| CMCA, LLC | 4,000 | 4,000 | no change anticipated | | | |
| Soha Terrace II LLC | 700,000 | 936,377 | anticipate mark-up based on recent discussions regarding restructuring | | | |
| | | | | | | |
| Total Collateral Value | 6,175,408 | 4,763,367 | 1,932,967 | | | |
| | | | | | | |
| Proposed Loan as a Percentage of Collateral Value | 72.9% | 94.5% | | | | |

# Exhibit M

THIS NOTE HAS NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED OR THE SECURITIES LAWS OF ANY STATE OF THE UNITED STATES. THIS NOTE MAY NOT BE SOLD, OFFERED FOR SALE, PLEDGED, HYPOTHECATED, TRANSFERRED OR ASSIGNED IN THE ABSENCE OF AN EFFECTIVE REGISTRATION STATEMENT FOR THE NOTE UNDER APPLICABLE SECURITIES LAWS OR UNLESS OFFERED, SOLD, PLEDGED, HYPOTHECATED OR TRANSFERRED PURSUANT TO AN AVAILABLE EXEMPTION FROM THE REGISTRATION REQUIREMENTS OF THOSE LAWS.

## SENIOR SECURED NOTE

March 7, 2012                                                              $4,500,000

For value received, AMERITRANS CAPITAL CORPORATION, a Delaware corporation (the "Issuer") hereby promises to pay to the order of Elk Associates Funding Corporation ("Holder") the aggregate unpaid amount of all advances, indebtedness, loans, payables and other extensions of credit and obligations (individually, an "Advance" and, collectively, "Advances") made by Holder to Issuer, or otherwise owing by Issuer to Holder, from time to time, as set forth on the books and records of Holder (this Senior Secured Note, together with and any notes issued in substitution therefor from time to time as permitted hereunder, as any of the same may be amended, restated, supplemented or otherwise modified from time to time, are referred to herein as this "Note"). Each Advance made by Holder to Issuer, and all payments made on account of principal thereof, shall be recorded by Holder and, prior to any transfer thereof, endorsed on the grid attached hereto, which is part of this Note; provided, however, that any failure to make such endorsement on such grid shall not limit or otherwise affect the obligations of Borrower hereunder. The date on which each Advance is made is hereby referred to as the "Issuance Date").

Section 1.      Payment of Interest. Interest shall accrue on the unpaid principal amount of this Note outstanding from time to time at a rate per annum equal to 10% (the "Interest Rate"). Interest on this Note shall be computed on the basis of a 365-day year for the actual days elapsed. All interest accruing on this Note shall be paid in cash in arrears commencing on September 30, 2012 and continuing on the last Business Day of each subsequent December, March, June and September thereafter.

Section 2.      Payment of Principal on Note.

(a)      Regularly Scheduled Payments. The Issuer shall repay the Note in full on July 1, 2013] (the "Maturity Date"), together with all accrued and unpaid interest thereon and all other obligations arising under this Note that are due and payable at such time.

(b)      Prepayment. The Issuer may prepay this Note (a "Prepayment") in whole or in part at any time and from time to time upon five (5) Business Days prior notice to the Holder, together with all accrued and unpaid interest thereon, and any and all other sums payable to Holder arising under this Note.

Section 3.      Representations and Warranties

(a)      Organization, Qualifications; Corporate Power. The Issuer is duly organized, validly existing and in good standing under the laws of the State of Delaware and is duly licensed or qualified to transact business as a foreign corporation and is in good standing in each jurisdiction in which the nature

of the business transacted by it or the character of the properties owned or leased by it requires such licensing or qualification except where the failure to be so qualified, licensed or in good standing would not, in the aggregate, be material to the Issuer. The Issuer has the requisite power and authority to own and hold its properties, to carry on its business as now conducted and as proposed to be conducted and to execute, issue and deliver this Note. The Issuer is in material compliance with all of the terms and provisions of its certificate of incorporation and bylaws and any shareholders agreement or similar agreement to which it is a party (the "Constituent Documents").

(b)     Authorization of Agreements, Etc. The execution, issuance and delivery by the Issuer of this Note and the performance by the Issuer of its obligations hereunder have been duly authorized by all requisite corporate action and will not violate any material provision of law, any order of any court or other agency of government, the Constituent Documents or other organizational documents of the Issuer, or materially conflict with, result in a material breach of or constitute a material default under (with due notice or lapse of time or both) any indenture or other instrument, or result in the creation or imposition of any claim upon any of the properties or assets of the Issuer, or require the consent of, or the delivery of any notice to, any third party, other than such consents or notices which have been duly obtained or given, as applicable, as of the date of this Note or except as such notice requirements as may be required under state or Federal securities laws.

(c)     Validity. This Note has been duly executed and delivered by the Issuer and constitutes a valid and binding obligation of the Issuer, enforceable in accordance with its terms, except (a) as limited by applicable bankruptcy, insolvency, reorganization, moratorium, fraudulent conveyance, or other laws of general application relating to or affecting the enforcement of creditors' rights generally or (b) as limited by laws relating to the availability of specific performance, injunctive relief or other equitable remedies.

Section 4.     Amendment and Waiver. Except as otherwise expressly provided herein, the provisions of the Note may be amended and the Issuer may take any action herein prohibited, or omit to perform any act herein required to be performed by it, only if the Issuer has obtained the written consent of the Holder.

Section 5.     Definitions. For purposes of this Note, (i) the terms "Account", "Chattel Paper", "Commercial Tort Claims", "Deposit Accounts", "Documents", "Electronic Chattel Paper", "Equipment", "Fixture", "General Intangibles", "Goods", "Instrument", "Inventory", "Investment Property", "Letter-of-Credit Right", "Payment Intangible", "Proceeds", "Software" and "Supporting Obligation" shall have the meanings assigned to such terms in the UCC and the following terms shall have the respective meaning set forth in this Section 5.

"Business Day" means any day other than a Saturday, a Sunday or a day on which banks in New York, New York are authorized or obligated by law or executive order to close.

"Person" means any individual, partnership, joint venture, trust, limited liability company, business trust, joint stock company, unincorporated association, corporation, institution, entity, or any governmental authority.

"UCC" shall mean the Uniform Commercial Code as in effect from time to time in the State of Delaware.

Section 6.     Transfers. Without the prior written consent of Issuer, Holder may not at any time assign its interest in this Note. Any such "transfer" will be made in accordance with applicable securities laws. In the event Holder (or any subsequent holder) assigns, disposes of, grants a participation

in or otherwise transfers all or any portion of this Note, the terms of this Note shall be binding upon the permitted successors and assigns of Holder (or any subsequent holder), as provided herein.

Section 7.   Replacement.   Upon receipt of evidence reasonably satisfactory to the Issuer of the loss, theft, destruction or mutilation of this Note and, in the case of any such loss, theft or destruction of this Note, upon receipt of an indemnity reasonably satisfactory to the Issuer (provided that, if Holder is a financial institution, its own unsecured agreement shall be satisfactory) or, in the case of any such mutilation, upon the surrender and cancellation of this Note, the Issuer, at its expense, shall execute and deliver, in lieu thereof, a new Note of like tenor and dated the date of such lost, stolen, destroyed or mutilated Note. Any Note in lieu of which any such new Note has been so executed and delivered by the Issuer shall not be deemed to be an outstanding Note.

Section 8.   Security.   The Issuer, as collateral security for the prompt and complete payment and performance when due (whether at stated maturity, by acceleration or otherwise) of the obligations of the Issuer under this Note, hereby mortgages, pledges and hypothecates to the Holder, a lien on and security interest in, all of its right, title and interest in, to and under all of the Issuer's Accounts, Chattel Paper, Commercial Tort Claims, Deposit Accounts, Documents, Electronic Chattel Paper, Equipment, Fixtures, General Intangibles, Goods, Instruments, Inventory, Investment Property, Letter-of-Credit Rights, Payment Intangibles, Software, Supporting Obligations, any other property and assets of Issuer now or hereafter in the possession, custody or control of Holder and all additions and accessions to, substitutions for, and replacements, products and Proceeds of the foregoing property, including, without limitation, proceeds of all insurance policies insuring the foregoing property, and all of Issuer's books and records relating to any of the foregoing whether now existing or hereafter arising or acquired, including all proceeds thereof.

Section 9.   Waivers.   Except as expressly set forth herein, Issuer hereby waives presentation for payment, demand, notice of nonpayment and notice of protest with respect to this Note.

Section 10.   Cancellation.   After all principal and accrued interest at any time on this Note has been paid in full, this Note shall be surrendered to the Issuer for cancellation and shall not be reissued.

Section 11.   Form of Payments.   All payments to be made to Holder of this Note shall be made in the lawful money of the United States of America in immediately available funds, with no offsets against or withholding from any payments due hereunder.

Section 12.   Place of Payment.   Payments of principal, interest and all other obligations at maturity or otherwise shall be delivered to Holder at the following address:

Ameritrans Capital Corporation
50 Jericho Quadrangle
Jericho, NY 11753

or to such other address or to the attention of such other Person as specified by prior written notice to the Issuer.

Section 13.   Notices.   All notices hereunder shall be deemed given if in writing and delivered personally, or sent by facsimile transmission, by nationally-recognized express overnight delivery service, or by registered or certified mail (return receipt requested) to the Parties at the following addresses (or at such other addresses as shall be specified by like notice):

If to the Issuer:

      Ameritrans Capital Corporation
      50 Jericho Quadrangle
      Jericho, New York 11753
      Attention: President
      Fax: 212-759-3338

With a copy to ("Issuer's Counsel"):

      Katten Muchin Rosenman LLP
      575 Madison Avenue
      New York, New York 10022
      Attention: Angela L. Batterson, Esq.
      Fax: (212) 940-8776

If to Holder:

      Elk Associates Funding Corporation
      50 Jericho Quadrangle Suite 109
      Jericho, New York 11753
      Attention: President
      Fax: 212-759-3338

Date of service of such notice shall be (a) the date such notice is delivered by hand, (b) one Business Day following the delivery by express overnight delivery service, (c) the date confirmation of transmission is received if sent by facsimile during any Business Day, or the next succeeding Business Day if confirmation of transmission is not received on a Business Day, or (d) three days after the date of mailing if sent by certified or registered mail.

      Section 14.     Business Days.  If any payment is due, or any time period for giving notice or taking action expires, on a day other than a Business Day, the payment shall be due and payable on, and the time period shall automatically be extended to, the next Business Day immediately following such date, and interest shall continue to accrue at the required rate hereunder until any such payment is made.

      Section 15.     Governing Law.  This Note shall be governed by and construed in accordance with the laws of the State of Delaware.

      Section 16.     Successors and Assigns.  This Note and the rights evidenced hereby shall inure to the benefit of and be binding upon the successors of the Issuer and the permitted transferees, successors and assigns of Holder hereof.

      Section 17.     Usury Laws.  It is the intention of the Issuer and Holder to conform strictly to all applicable usury laws now or hereafter in force, and any interest payable under this Note shall be subject to reduction to the amount not in excess of the maximum legal amount allowed under the applicable usury laws as now or hereafter construed by the courts having jurisdiction over such matters. If the maturity of this Note is accelerated by reason of a voluntary prepayment by the Issuer or otherwise, then earned interest may never include more than the maximum amount permitted by law, computed from

the date hereof until payment, and any interest in excess of the maximum amount permitted by law shall be canceled automatically and, if theretofore paid, shall at the option of Holder either be rebated to the Issuer or credited on the principal amount of this Note, or if this Note has been paid, then the excess shall be rebated to the Issuer.  The aggregate of all interest (whether designated as interest, service charges, points or otherwise) contracted for, chargeable, or receivable under this Note shall under no circumstances exceed the maximum legal rate upon the unpaid principal balance of this Note remaining unpaid from time to time.  If such interest does exceed the maximum legal rate, it shall be deemed a mistake and such excess shall be canceled automatically and, if theretofore paid, rebated to the Issuer or credited on the principal amount of this Note, or if this Note has been repaid, then such excess shall be rebated to the Issuer.

* * *

[SIGNATURE PAGE FOLLOWS]

IN WITNESS WHEREOF, the Issuer has executed and delivered this Note on the date first set forth above.

AMERITRANS CAPITAL CORPORATION

By: _____

Name:  Michael Feinsod

Title:   Chief Executive Officer and President

# Exhibit N

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

For and in consideration of payment of the funds referenced below, and the representations and covenants herein, this Settlement Agreement and Release ("the Agreement") is made and delivered by and between the United States Small Business Administration ("SBA"), a federal agency, and ELK Associates Funding Corp. ("ELK") (collectively "the Parties") as of October 31, 2012 ("the Effective Date").

WHEREAS, ELK is a small business investment company ("SBIC") licensed and regulated by SBA under the provisions of the Small Business Investment Act, 15 U.S.C. §661 *et seq.* and the regulations promulgated thereunder at 13 C.F.R. §107.20 et seq. (collectively "the Act");

WHEREAS, Section 303 of the Act, 15 U.S.C. §683, authorizes SBA to provide financing, or Leverage, as that term is defined in the Act, to licensed SBICs, such as ELK;

WHEREAS, ELK currently has $21,175,000 in outstanding Leverage, as that term is defined in 13 C.F.R. §107.50, plus interest, fees and any other funds owed to the SBA through the Effective Date and additional interest which may accrue through the date the Payment is tendered (the "SBA Debt");

WHEREAS, on or about March 20, 2012, ELK filed a complaint and motion for preliminary injunction and temporary restraining order against SBA and its Administrator, Karen Mills, in *ELK Associates Funding v. U.S. Small Business Administration, et. al.*, Case No. 12-cv-00438 (CKK) in the United States District Court for the District of Columbia ("the Litigation") alleging, among other things, arbitrary and capricious actions by SBA;

WHEREAS, on or about June 7, 2012, ELK filed an Amended Complaint ("the

1

Amended Complaint") in the Litigation alleging, among other things, arbitrary and capricious actions by SBA;

WHEREAS, SBA has filed an Answer denying ELK's allegations as set forth in the Amended Complaint and has filed a Motion for Summary Judgment in the Litigation, which motion is still pending;

WHEREAS, ELK has filed a Motion for Leave to Serve Discovery on Defendant Small Business Administration, which motion is still pending;

WHEREAS, the Parties are desirous of resolving all matters at issue between them, including the Litigation;

WHEREAS, ELK has offered, and SBA has agreed to accept, the sum of $7,900,000 in one lump sum payment, due forty five (45) days from the Effective Date of this Agreement, in full satisfaction of the SBA Debt;

WHEREAS, ELK has offered, and SBA has agreed to accept, the surrender of ELK's license to operate as an SBIC;

WHEREAS, ELK and SBA will file a Joint Stipulation of Dismissal With Prejudice of the Litigation upon execution of this Agreement, with each side bearing its own costs and attorney's fees;

WHEREAS, the Parties understand and acknowledge that this Agreement contains settlement of disputed claims in the Litigation and that the Parties, by entering into this Agreement, make no admission of fault or liability for any purpose.

NOW, THEREFORE:

1.     Subject to the terms of this Agreement, ELK shall tender to SBA and SBA shall accept $7,900,000 ("the Payment") in full and final satisfaction of ELK's SBA Debt.

2

2.  ELK shall tender the Payment in one (1) lump sum payment due no later than forty five days from the Effective Date of this Agreement, which Payment shall be tendered via wire transfer per instructions forwarded by SBA.

3.  ELK shall offer, and SBA shall accept, the surrender of ELK's SBIC license in the form of a Surrender Letter substantially similar to Exhibit A, attached hereto to this Agreement;

4.  ELK shall execute a Consent Order of Receivership, attached hereto as Exhibit B, which Consent Order of Receivership shall be filed by SBA only in the event that ELK fails to make the Payment as set forth in paragraph 1 and 2 of this Agreement within the time period set forth therein. In the event the Payment is made as agreed herein, the Consent to Receivership, by its terms, shall become immediately void and shall have no force and effect.

5.  Upon execution of this Agreement, the Parties will file a Joint Stipulation Dismissing the Litigation, *ELK Associates Funding v. U.S. Small Business Administration, et al.*, Case No. 12-cv-00438 (CKK), currently pending in the United States District Court for the District of Columbia, the form of which is attached hereto as Exhibit C, with each party bearing its own costs and attorney's fees.

6.  With the exception of the items set forth in paragraph 7, below, SBA, on behalf of itself and its successors and assigns, predecessors, officers, officials and its present and former employees and agents, in their official capacities only (collectively, the "SBA Releasors"), hereby releases and forever discharges ELK, its successors and assigns, predecessors, shareholders, officers, directors, representatives, agents, and employees (collectively, the "Elk Releasees") from any and all actions, causes of action, claims, rights, and demands of every kind and nature, in law or equity, whether known or

3

unknown, suspected or unsuspected, which the SBA Releasors now have, may have or has ever had against any Elk Releasee, from the beginning of the world to the Effective Date. SBA acknowledges and agrees that all Elk Releasees who or which are not parties to this Agreement are third party beneficiaries of this paragraph 6, and are entitled to independently enforce the provisions hereof.

7.  **THIS AGREEMENT DOES NOT CONSTITUTE A RELEASE FOR THE FOLLOWING:**

(a)    Any civil, criminal or administrative claims by the Internal Revenue Service arising under Title 26, U.S. Code (Internal Revenue Code); or

(b)    Any criminal liability; or

(c)    Any claims based upon the representations, rights, duties, or obligations of the Parties set forth in this Agreement; or

(d)    Any claims arising from fraudulent conduct; or

(e)    Any claims by any other federal agency of the United States;

SBA acknowledges that it is, as of the Effective Date of this Agreement, unaware of any such claims or referrals regarding Elk.

8.    ELK, on behalf of itself and its successors and assigns, predecessors, officers, present or former employees and agents, in their official capacities only (collectively the "Elk Releasors"), hereby releases and forever discharges SBA, its officials or its present or former employees or agents, in their official capacities only (collectively, the "SBA Releasees") from any and all actions, causes of action, claims, rights, and demands of every kind and nature, in law or equity, whether known or unknown, suspected or unsuspected, which the SBA Releasors now have, may have or has ever had against any Elk Releasee, from the beginning of the world to the Effective

4

Date. Elk acknowledges and agrees that all SBA Releasees who or which are not parties to this Agreement are third party beneficiaries of this paragraph 8, and are entitled to independently enforce the provisions hereof.

9.      Each party represents and warrants that the consideration it has given and received hereunder is fair and adequate consideration for the covenants, undertakings, forbearances, representations and promises contained herein.

10.     Each party warrants that it, through its signatories below, has the authority to execute and enter into this Agreement.

11.     This Agreement shall be governed by federal law except where no federal law exists, in which case the laws of the State of New York shall control.

12.     The Parties have each retained counsel of their own choosing, and have obtained the advice of counsel with regard to each and every issue directly or collaterally embraced within this Agreement.

13.     This Agreement contains the entire agreement of the Parties.  No promise or inducement has been made except as set forth herein, and no representation or understanding, whether written or oral, that is not expressly set forth herein shall be enforced or otherwise be given any force and effect in connection therewith.

14.     The Parties agree that preparation of this Agreement was collaborative in nature, and so agree that any presumption or rule that an agreement is construed against its drafter shall not apply to the interpretation of this Agreement or any term or provision hereof.

15.     This Agreement may be executed in counterparts, all of which together shall constitute one Agreement.  A facsimile or PDF copy of an executed copy of this Agreement shall be fully as valid and binding as an original signed copy thereof.

Executed and delivered as of this 31st day of October, 2012.

U.S. Small Business Administration,
a federal agency

By: *Gail G. Green*

GAIL G. GREEN
Acting Director, OL

ELK Associates Funding Corp.

By: _____

Executed and delivered as of this 31st day of October, 2012.

U.S. Small Business Administration,
a federal agency

By: _____

ELK Associates Funding Corp.

By: _____

MICHAEL FEINSOD
PRESIDENT

6

# Exhibit O

**FOR SETTLEMENT PURPOSES ONLY**
**SUBJECT TO FRE 408**

## AMENDMENT TO THE SETTLEMENT AGREEMENT
## AND MUTUAL RELEASE

The parties to the Settlement Agreement and Mutual Release, effective as of October 31, 2012 (the "Original Agreement"), entered into by and among the United States Small Business Administration ("SBA") and Elk Associates Funding Corp. ("Elk") (each of the SBA and Elk is a "Party" under this Agreement, and together they constitute the "Parties"), hereby agree to amend the Original Agreement effective as of December 7, 2012, as follows:

1.  The seventh WHEREAS clause is hereby amended to state as follows: WHEREAS, ELK has offered, and SBA has agreed to accept, the sum of $7,900,000 in one lump sum payment, due on or before January 7, 2013 from the Effective Date of this Agreement, in full satisfaction of the SBA Debt;

2.  Paragraph 2 of the Original Agreement is hereby amended to state as follows: Elk shall tender the Payment in one (1) lump sum payment due no later than January 7, 2013 days from the Effective Date of this Agreement, which Payment shall be tendered via wire transfer per instructions forwarded by SBA.

The Original Agreement remains unchanged in all other respects.

IN WITNESS WHEREOF, AND INTENDING TO BE LEGALLY BOUND, the Parties hereto have caused this Amendment to the Original Agreement to be executed effective as of December 7, 2012.

U.S. Small Business Administration

By: _____

ELK Associates Funding Corp.

By: _____
MSCHANL FEEWADD, CEO

# Exhibit P



ANNUAL FINANCIAL REPORT
ON SBA FORM 468
(CORPORATE SBICs)

OMB Approval No 3245-0063
Expiration Date 10/31/2007



| | |
|---|---|
| NAME OF LICENSEE: | ELK ASSOCIATES FUNDING CORP. |
| LICENSE NUMBER: | 02/02-5377 |
| STREET ADDRESS: | 50 Jericho Quadrangle Suite 109 |
| CITY, STATE, AND ZIP CODE: | Jericho, NY 11753 |
| COUNTY: | NEW YORK |
| EMPLOYER ID NUMBER: | 11-2502336 |
| FOR THE REPORTING PERIOD ENDED: | 06/30/2011        MONTHS: 12 |

A - TOTAL ASSETS AT COST          $10 MILLION OR MORE

B - OWNERSHIP                     PUBLICLY OWNED FINANCIAL CORP.

C - INDUSTRY CONCENTRATION        NON-DIVERSIFIED

   Non-Diversified NAICS Code    485310

Please Note: The estimated burden for completing this form is 17 hours per response. You will not be required to respond to this information collection if a valid OMB approval number is not displayed. If you have questions or comments concerning this estimate or other aspects of this information collection, please contact the US Small Business Administration, Chief, Administrative Information Branch, Washington, D.C. 20416 and/or Office of Management and Budget, Clearance Officer, Paperwork Reduction Project (3425-0063), Washington, D.C. 20503. PLEASE DO NOT SEND FORMS TO OMB.

 **ROSEN SEYMOUR SHAPSS MARTIN & COMPANY LLP**
*Certified Public Accountants & Profitability Consultants*



**INDEPENDENT AUDITORS' REPORT**

To the Board of Directors and Stockholder of
Elk Associates Funding Corporation and Subsidiary
(A Small Business Investment Company Licensed by the SBA)

We have audited the accompanying statement of financial position of Elk Associates Funding Corporation and Subsidiary as of June 30, 2011, including the schedule of investments, and the related statements of operations realized, cash flows and analysis of stockholders' equity for the year then ended. These financial statements and schedule are the responsibility of the Company's management. Our responsibility is to express an opinion on these financial statements and schedule based on our audit.

We conducted our audit in accordance with auditing standards generally accepted in the United States of America. Those standards require that we plan and perform the audit to obtain reasonable assurance about whether the financial statements and schedule are free of material misstatement. An audit includes examining on a test basis, evidence supporting the amounts and disclosures in the financial statements. An audit also includes assessing the accounting principles used and significant estimates made by management, as well as evaluating the overall financial statement presentation. We believe that our audit provides a reasonable basis for our opinion.

Elk Associates Funding Corporation and Subsidiary present their financial statements in conformity with accounting practices prescribed by the Small Business Administration, which is substantially the same as accounting principles generally accepted in the United States of America except for specific allocations of certain types of income to specific capital accounts and unrealized income derived from appreciation in value of loans are not included for SBA purposes.

In our opinion, such financial statements and schedule present fairly, in all material respects, the financial position of Elk Associates Funding Corporation and Subsidiary as of June 30, 2011, and the results of their operations and their cash flows for the year then ended, on the form provided by the Small Business Administration, in conformity with accounting principles generally accepted in the United States of America.

As explained in Note 1, the financial statements include investments valued at $19,573,345 as of June 30, 2011, whose values have been estimated by the Board of Directors in the absence of readily ascertainable market values, using valuation criteria applicable to the licensee. These criteria were established in accordance with Section 310(d)(2) of the Small Business Investment Act of 1958 as amended. We have reviewed the procedures used by the Board of Directors in arriving at their estimate of the value of such investments and have inspected underlying documentation and, in the circumstances, we believe the procedures are reasonable and the documentation is appropriate.

757 THIRD AVENUE, NEW YORK, NY 10017-2049 ❖ TEL. (212) 303-1800 ❖ FAX (212) 755-5600 ❖ www.rssmcpa.com
*Member of the Center for Audit Quality, an Affiliate of the American Institute of Certified Public Accountants ("AICPA")*
*Member of the AICPA Employee Benefit Plan Audit Quality Center*





However, because of the inherent uncertainty of valuation, those estimated values may differ significantly from the values that would have been used had a ready market for such loans existed, and the differences could be material.

Our audit was made for the purpose of forming an opinion on the basic financial statements taken as a whole. The supplementary information included in the computation of retained earnings available for dividend distribution, schedule of regulatory and leverageable capital, schedule of commitments, schedule of guarantees and schedules 1-8 is presented for the purposes of additional analysis and is not part of the basic financial statements. The information in such schedules has been subjected to the auditing procedures applied in the audit of the basic financial statements and, in our opinion, such information is fairly presented, in all material respects, in relation to the basic financial statements taken as a whole.

*Rosen Seymour Shapss Martin & Company LLP*

CERTIFIED PUBLIC ACCOUNTANTS

New York, New York
September 28, 2011

STATEMENT OF FINANCIAL POSITION
AS OF 06/30/2011
(Amounts rounded to nearest dollar)

OMB Approval No. 3245-0063
Expiration Date 10/31/2007

Name of Licensee:  ELK ASSOCIATES FUNDING CORP.

License No.: 02/02-5377

## ASSETS
### LOANS AND INVESTMENTS:

| | COST (Col. 1) | UNREALIZED DEPRECIATION (Col. 2) | UNREALIZED APPRECIATION (Col. 3) | VALUE (1) (Col. 4) |
|---|---|---|---|---|
| Portfolio Securities: | | | | |
| 1 Loans | 19,946,146 | 1,799,821 | 0 | 18,146,325 |
| 2 Debt Securities | 1,648,181 | 198,181 | 0 | 1,450,000 |
| 3 Equity Securities | 392,527 | 384,703 | 0 | 7,824 |
| 4 TOTAL PORTFOLIO SECURITIES: | 21,986,854 | 2,382,705 | 0 | 19,604,149 |
| Assets Acquired in Liquidation of Portfolio Securities: | | | | |
| 5 Receivables from Sale of Assets Acquired | 116,268 | 21,054 | 0 | 95,214 |
| 6 Assets Acquired | 970,547 | 0 | 0 | 970,547 |
| 7 TOTAL ASSETS ACQUIRED | 1,086,815 | 21,054 | 0 | 1,065,761 |
| 8 Operating Concerns Acquired | 0 | 0 | 0 | 0 |
| 9 Notes and Other Securities Received | 0 | 0 | 0 | 0 |
| 10 TOTAL LOANS AND INVESTMENTS | 23,073,669 | 2,403,759 | 0 | 20,669,910 |
| 11 Less Current Maturities | | | | 0 |
| 12 Loans and Investments Net of Current Maturities | | | | 20,669,910 |
| Investment in 301(d) Licensee (2): | | | | |
| 13 Name | | | | 0 |
| License No. | | | | |

## CURRENT ASSETS

| | | | |
|---|---|---|---|
| 14 Cash and Cash Equivalents | 4,136,439 | | |
| 15 Invested Idle Funds | 0 | 4,136,439 | |
| 16 Interest and Dividends Receivable | 335,649 | | |
| 17 Notes and Accounts Receivable | 0 | | |
| 18 Receivables from Parent or Other Associates | 0 | | |
| 19 Less:  Allowance for Losses (lines 16, 17 & 18) | 0 | 335,649 | |
| 20 Current Maturities of Portfolio Securities | 0 | | |
| 21 Current Maturities of Assets Acquired | 0 | | |
| 22 Current Maturities of Operating Concerns Acquired | 0 | | |
| 23 Current Maturities of Other Securities | 0 | 0 | |
| 24 Other (specify)  Due from parent | | 2,949,442 | |
| 25 Other (specify) | | 0 | 7,421,530 |

## OTHER ASSETS

| | | | |
|---|---|---|---|
| 26 a.  Furniture and Equipment | 132,359 | | |
| b.  Less:  Accumulated Depreciation | 86,835 | 45,524 | |
| 27 Other (specify)  Prepaid Expenses & Other receivables | | 152,177 | |
| 28 Other (specify)  Loan Cost | | 331,310 | 529,011 |
| 29 TOTAL ASSETS | | | 28,620,451 |

(1) Column Headings apply to items 1 through 12 only. (Cost - Unrealized Depreciation + Unrealized Appreciation = Value)
(2) Note to item 13 should include percent owned, cost basis and changes resulting from equity method of accounting.

SBA Form 468.1 (7/04) Previous editions obsolete

Page 2C

| STATEMENT OF FINANCIAL POSITION AS OF 06/30/2011 (Amounts rounded to nearest dollar) | OMB Approval No. 3245-0063 Expiration Date 10/31/2007 |
|---|---|

| Name of Licensee:  ELK ASSOCIATES FUNDING CORP. | License No.:  02/02-5377 |
|---|---|

**LIABILITIES AND CAPITAL**

**LONG-TERM DEBT (Net of Current Maturities)**

| | | | |
|---|---|---|---|
| 30 Notes and Debentures Payable to or Guaranteed by SBA | | 21,175,000 | |
| 31 Notes and Debentures Payable to Others | | 0 | 21,175,000 |

**CURRENT LIABILITIES**

| | | | |
|---|---|---|---|
| 32 Accounts Payable and Accrued Expenses | | 477,545 | |
| 33 Due to Parent or Other Associates | | 0 | |
| 34 Accrued Interest Payable | | 343,572 | |
| 35 Accrued Taxes Payable | | 0 | |
| 36 a. Current Maturities of Line 30 | 0 | | |
|     b. Current Maturities of Line 31 | 0 | | |
| 37 Dividends Payable | | 0 | |
| 38 Short-term Notes Payable/Lines of Credit | | 0 | |
| 39 Other (specify) | | 0 | |
| 40 Other (specify) | | 0 | 821,117 |

**OTHER LIABILITIES**

| | | | |
|---|---|---|---|
| 41 Deferred Credits | | 0 | |
| 42 Other (specify) | | 0 | |
| 43 Other (specify) | | 0 | 0 |
| **44 TOTAL LIABILITIES** | | | **21,996,117** |

**REDEEMABLE SECURITIES (guaranteed or purchased by SBA)**

| | | | |
|---|---|---|---|
| 45 a. 4% Redeemable Preferred Stock (301(d) Licensees only) | 0 | | |
|     b. Cumulative Undeclared 4% Dividends | 0 | 0 | 0 |
| **46 TOTAL REDEEMABLE SECURITIES** | | | **0** |

**CAPITAL**

| | | | | |
|---|---|---|---|---|
| 47 Capital Stock | 17,456 | | | |
| 48 Paid-in Surplus | 10,611,699 | 10,629,155 | | |
| 49 Restricted Contributed Capital Surplus | | 3,557,261 | | |
| 50 Capital Stock and Surplus | | | 14,186,416 | |
| 51 3% Preferred Stock Purchased by SBA | | | 0 | |
| 52 Unrealized Gain (Loss) on Securities Held | | | -2,403,759 | |
| 53 Non-Cash Gains/Income | | 0 | | |
| 54 Undistributed Net Realized Earnings: | | | | |
|     a. Restricted (Equal to Cost of Treasury Stock) | 0 | | | |
|     b. Unrestricted | -5,158,323 | | | |
|     c. Total (54a plus 54b) | | -5,158,323 | | |
| 55 Undistributed Realized Earnings (53 plus 54c) | | | -5,158,323 | |
| 56 Total | | | | 6,624,334 |
| 57 Less:  Cost of Treasury Stock | | | | 0 |
| 58 TOTAL CAPITAL | | | | 6,624,334 |
| 59 TOTAL LIABILITIES, REDEEMABLE SECURITIES AND CAPITAL (lines 44 plus 46 plus 58) | | | | 28,620,451 |

SBA Form 468.1 (7/04) Previous editions obsolete

Page 3C

| STATEMENT OF OPERATIONS REALIZED<br>FOR    12 MONTHS ENDED   06/30/2011<br>(Amounts rounded to nearest dollar) | OMB Approval No. 3245-0063<br>Expiration Date  10/31/2007 |
|---|---|

| Name of Licensee:  ELK ASSOCIATES FUNDING CORP. | License No.:  02/02-5377 |
|---|---|

**INVESTMENT INCOME**

| | | |
|---|---|---|
| 1 Interest Income | 2,043,383 | |
| 2 Dividend Income | 0 | |
| 3 Income (Loss) from Investments in Partnerships/Flow-through Entities | 0 | |
| 4 Income (Loss) from Investment in Section 301(d) Licensee | 0 | |
| 5 Fees for Management Services | 0 | |
| 6 Application, Closing and Other Fees | 0 | |
| 7 Interest on Cash Equivalents and Invested Idle Funds | 0 | |
| 8 Income from Assets Acquired in Liquidation of<br>   Loans and Investments (net of $          0  Expenses) | 0 | |
| 9 Other Income | 21,537 | |
| **10 GROSS INVESTMENT INCOME** | | 2,064,920 |

**EXPENSES**

| | | |
|---|---|---|
| 11 Interest Expense | 1,030,776 | |
| 12 Commitment Fees | 0 | |
| 13 Other Financial Costs | 0 | |
| 14 Officers' Compensation and Benefits | 352,444 | |
| 15 Employee Compensation and Benefits | 93,759 | |
| 16 Investment Advisory and Management Services | 0 | |
| 17 Directors' and Stockholders' Meetings | 152,570 | |
| 18 Advertising and Promotion | 8,978 | |
| 19 Appraisal and Investigation | 0 | |
| 20 Communication | 11,221 | |
| 21 Travel | 6,438 | |
| 22 Cost of Space Occupied | 85,837 | |
| 23 Depreciation and Amortization | 78,294 | |
| 24 Insurance | 52,853 | |
| 25 Payroll Taxes | 19,741 | |
| 26 Other Taxes (excluding income taxes) | 0 | |
| 27 Provision for Losses on Receivables (excluding loans receivable) | 0 | |
| 28 Legal Fees | 176,781 | |
| 29 Audit and Examination Fees | 301,703 | |
| 30 Miscellaneous Expenses (attach schedule) | 321,617 | |
| **31 TOTAL EXPENSES** | | 2,693,012 |
| **32 NET INVESTMENT INCOME (LOSS) BEFORE INCOME TAXES** | | -628,092 |
| **33 NET REALIZED GAIN (LOSS) ON INVESTMENTS BEFORE INCOME TAXES  (1)** | | -379,223 |
| **34 NET INCOME (LOSS) BEFORE INCOME TAXES AND NONRECURRING ITEMS** | | -1,007,315 |
| **35 Income Tax Expense (Benefit)** | | 2,975 |
| **36 NET INCOME (LOSS) BEFORE NONRECURRING ITEMS** | | -1,010,290 |
| **37 Extraordinary Item** | | 0 |
| **38 Cumulative Effect of Change in Accounting Principle** | | 0 |
| **39 NET INCOME (LOSS)** | | -1,010,290 |

(1) Provide supporting detail for all realized gains and losses on Page 14C of this form.

SBA Form 468.1 (7/04)  Previous editions obsolete

Misc Exp - Line 30 -

**ELK ASSOCIATES FUNDING CORPORATION & SUBSIDIARIES**
**MISCELLANEOUS EXPENSES - LINE 30 PAGE 4C**
**FOR THE PERIOD ENDING JUNE 30, 2011**

| | |
|---|---:|
| INVESTOR RELATIONS | 4,178 |
| MEALS & ENTERTAINMENT | 756 |
| LOAN FEES | 104,430 |
| CONTRIBUTIONS | 3,250 |
| REPAIRS & MAINTENANCE | 104 |
| FILING FEES | 22,900 |
| SERVICE FEES | 3,026 |
| COMPUTER | 23,405 |
| OFFICE | 13,922 |
| BANK CHARGES | 3,442 |
| ASSOCIATION DUES | 7,190 |
| PRINTING | 1,876 |
| GIFTS | 1,519 |
| MESSENGER/OVERNIGHT FEES | 4,688 |
| FORECLOSURE EXPENSES | 92,612 |
| PAYROLL SERVICE | 2,292 |
| AUDIT AND COMPLIANCE FEES | 7,696 |
| MISCELLANEOUS | 24,331 |
| **TOTAL MISCELLANEOUS EXPENSES** | **321,617** |

| STATEMENT OF CASH FLOWS<br>FOR  12  MONTHS ENDED 06/30/2011<br>(page 1 of 2)<br>(Amounts rounded to nearest dollar) | OMB Approval No. 3245-0063<br>Expiration Date 10/31/2004 |
|---|---|
| Name of Licensee:  ELK ASSOCIATES FUNDING CORP. | License No.:  02/02-5377 |

**OPERATING ACTIVITIES:**

**Cash Inflows:**

| | |
|---|---|
| 1 Interest Received from Portfolio Concerns | 2,053,319 |
| 2 Dividends Received from Portfolio Concerns | 0 |
| 3 Other Income Received from Portfolio Concerns | 0 |
| 4 Management Services and Other Fees Received | 0 |
| 5 Interest on Cash Equivalents and Invested Idle Funds | 0 |
| 6 Cash Received from Assets Acquired in Liquidation | 0 |
| 7 Other Operating Cash Receipts | 21,537 |

**Cash Outflows:**

| | |
|---|---|
| 8 Interest Paid | 1,005,738 |
| 9 Commitment Fees and Other Financial Costs | 0 |
| 10 Investment Advisory and Management Fees | 0 |
| 11 Officers, Directors and Employees' Compensation and Benefits | 446,203 |
| 12 Operating Expenditures (excluding compensation and benefits) | 851,646 |
| 13 Income Taxes Paid | 2,975 |
| 14 Other Operating Cash Disbursements | 0 |
| **15 NET CASH PROVIDED BY (USED IN) OPERATING ACTIVITIES** | **-231,706** |

**INVESTING ACTIVITIES:**

**Cash Inflows:**

| | |
|---|---|
| 16 Loan Principal Payments Received from Portfolio Concerns | 11,715,641 |
| 17 Returns of Capital Received from Portfolio Concerns | 0 |
| 18 Net Proceeds from Disposition of Portfolio Securities | 0 |
| 19 Liquidation of Idle Funds Investments | 0 |
| 20 Other (Specify) | 0 |

**Cash Outflows:**

| | |
|---|---|
| 21 Purchase of Portfolio Securities | 0 |
| 22 Loans to Portfolio Concerns | 11,988,008 |
| 23 Idle Funds Investments | 0 |
| 24 Other (Specify)   Due from Parent & Other | 2,373,489 |
| **25 NET CASH PROVIDED BY (USED IN) INVESTING ACTIVITIES** | **-2,645,856** |

**FINANCING ACTIVITIES:**

**Cash Inflows:**

| | |
|---|---|
| 26 Proceeds from Issuance of SBA-Guaranteed Debentures | 0 |
| 27 Proceeds from Non-SBA Borrowing | 0 |
| 28 Proceeds from Sale of Stock or Other Capital Contribution | 0 |
| 29 Other (Specify)   Additional Paid in Capital | 40,000 |

**Cash Outflows:**

| | |
|---|---|
| 30 SBA Leverage Fees | 0 |
| 31 Principal Payments on SBA-Guaranteed Debentures | 0 |
| 32 Principal Payments on Non-SBA Borrowing | 370,000 |
| 33 Redemption of 4% Preferred Stock | 0 |
| 34 Redemption of 3% Preferred Stock | 0 |
| 35 Redemption of Stock (excluding 3% and 4% Preferred) | 0 |
| 36 Dividends Paid | 0 |
| 37 Other (Specify) | 0 |
| **38 NET CASH PROVIDED BY (USED IN) FINANCING ACTIVITIES** | **-330,000** |

SBA Form 468.1 (7/04)  Previous editions obsolete

Page 5C

| STATEMENT OF CASH FLOWS<br>FOR 12 MONTHS ENDED 06/30/2011<br>(page 2 of 2)<br>(Amount rounded to nearest dollar) | OMB Approval No. 3245-0063<br>Expiration Date 10/31/2007 |
|---|---|
| Name of Licensee:  ELK ASSOCIATES FUNDING CORP. | License No.:  02/02-5377 |

| | |
|---|---|
| 39 INCREASE (DECREASE) IN CASH AND CASH EQUIVALENTS | -3,207,562 |
| 40 CASH AND CASH EQUIVALENTS AT BEGINNING OF PERIOD | 7,344,001 |
| 41 CASH AND CASH EQUIVALENTS AT END OF PERIOD (line 14, page 2C) | 4,136,439 |

**RECONCILIATION OF NET INCOME (LOSS) TO NET CASH PROVIDED
BY (USED IN) OPERATING ACTIVITIES:**

| | |
|---|---|
| 42 Net Income (Loss) (page 4C, line 39) | -1,010,290 |

**Adjustments to Reconcile Net Income (Loss) to Net
Cash Provided by (Used in) Operating Activities:**

| | |
|---|---|
| 43 Depreciation and Amortization | 78,294 |
| 44 Provision for Losses on Accounts Receivable | 0 |
| 45 Provision for Deferred Income Taxes | 0 |
| 46 (Income) Loss from Investments in Partnerships/Flow-through<br>    Entities (excluding income received in cash) | 0 |
| 47 Realized (Gain) Losses on Investments | 379,223 |
| 48 Other (Specify) | 0 |

**Changes in Operating Assets and Liabilities
Net of Noncash Items:**

| | |
|---|---|
| 49 (Increase) Decrease in Interest and Dividends Receivable | 9,936 |
| 50 (Increase) Decrease in Other Current Assets | 22,876 |
| 51 Increase (Decrease) in Accounts Payable | 263,217 |
| 52 Increase (Decrease) in Accrued Interest Payable | 25,038 |
| 53 Increase (Decrease) in Accrued Taxes Payable | 0 |
| 54 Increase (Decrease) in Dividends Payable | 0 |
| 55 Increase (Decrease) in Other Current Liabilities | 0 |
| 56 Other (Specify) | 0 |
| 57 Other (Specify) | 0 |

| | |
|---|---|
| 58 **NET CASH PROVIDED BY (USED IN) OPERATING ACTIVITIES**<br>    (total must agree with line 15, page 5C) | -231,706 |

**Supplemental disclosure of non-cash financing and investing activities may be required.
See FASB Statement No. 95, paragraph 32.**

| STATEMENT OF STOCKHOLDERS' EQUITY<br>AS OF 06/30/2011<br>(page 1 of 2)<br>(Amount rounded to nearest dollar) | OMB Approval No. 3245-0063<br>Expiration Date 10/31/2007 |
|---|---|

| Name of Licensee:  ELK ASSOCIATES FUNDING CORP. | License No.:  02/02-5377 |
|---|---|

**PART I.   CAPITAL STOCK AND PAID-IN SURPLUS (excluding capital contributed by SBA)**

| | CAPITAL STOCK (page 3C, line 47) | PAID-IN SURPLUS (page 3C, line 48) | TOTAL |
|---|---|---|---|
| 1  BALANCE AT BEGINNING OF PERIOD | 17,456 | 10,571,699 | 10,589,155 |
| 2  ADDITIONS: | | | |
| a. Capital stock issued for cash | 0 | 0 | 0 |
| b. Capital stock issued for services rendered | 0 | 0 | 0 |
| c. Capital stock issued for contributed non-cash assets | 0 | 0 | 0 |
| d. Capitalization of Retained Earnings Available for Distribution | 0 | 0 | 0 |
| e. Gain on Sale of Treasury Stock | 0 | 0 | 0 |
| f. Other credits (specify)   Capital Contribution | 0 | 40,000 | 40,000 |
| 3  Total additions (sum of 2a through 2f) | 0 | 40,000 | 40,000 |
| 4  Subtotal (line 1 plus line 3) | 17,456 | 10,611,699 | 10,629,155 |
| 5  DEDUCTIONS: | | | |
| a. Retirement of capital stock | 0 | 0 | 0 |
| b. Distributions in partial liquidation | 0 | 0 | 0 |
| c. Loss on sale of Treasury Stock | 0 | 0 | 0 |
| d. Other debits (specify) | 0 | 0 | 0 |
| 6  Total deductions (sum of 5a through 5d) | 0 | 0 | 0 |
| 7  BALANCE AT END OF PERIOD (line 4 minus line 6)-- total must agree with lines 47 and 48, page 3C | 17,456 | 10,611,699 | 10,629,155 |

**PART II.   UNDISTRIBUTED REALIZED EARNINGS**

| | NON-CASH GAINS/ INCOME (1) | UNDISTRIBUTED NET REALIZED EARNINGS (2) | UNDISTRIBUTED REALIZED EARNINGS (1)+(2) |
|---|---|---|---|
| 1  BALANCE AT BEGINNING OF PERIOD | 0 | -4,148,033 | -4,148,033 |
| 2  ADDITIONS: | | | |
| a. Net investment income | 0 | -631,067 | -631,067 |
| b. Realized gain (loss) on investments | 0 | -379,223 | -379,223 |
| c. Gain on appreciation of securities distributed in kind | 0 | 0 | 0 |
| d. Other (specify) | 0 | 0 | 0 |
| 3  Total additions (sum of 2a through 2d) | 0 | -1,010,290 | -1,010,290 |
| 4  Subtotal (line 1 plus line 3) | 0 | -5,158,323 | -5,158,323 |
| 5  DEDUCTIONS: | | | |
| a. Dividends-Cash | | 0 | 0 |
| b. Dividends-Stock | | 0 | 0 |
| c. Dividends-in-kind (at fair value) | 0 | 0 | 0 |
| d. Capitalization of Retained Earnings Available for Distribution | | 0 | 0 |
| e. Other (specify) | 0 | 0 | 0 |
| 6  Total deductions (sum of 5a through 5e) | 0 | 0 | 0 |
| 7  Total before collection of non-cash gains/income(line 4 minus line 6) | 0 | -5,158,323 | -5,158,323 |
| 8  ADJUSTMENT: Collection of non-cash gains/income | 0 | 0 | |
| 9  BALANCE AT END OF PERIOD (line 7 plus line 8)-- totals must agree with lines 53, 54c and 55, page 3C | 0 | -5,158,323 | -5,158,323 |

| STATEMENT OF STOCKHOLDERS' EQUITY<br>AS OF 06/30/2011<br>(page 2 of 2)<br>(Amount rounded to nearest dollar) | OMB Approval No. 3245-0063<br>Expiration Date 10/31/2007 |
|---|---|
| Name of Licensee:   ELK ASSOCIATES FUNDING CORP. | License No.:  02/02-5377 |

**PART III.    UNREALIZED GAIN (LOSS) ON SECURITIES HELD**

1  NET UNREALIZED APPRECIATION (DEPRECIATION)
   AT BEGINNING OF PERIOD                                                       **-2,000,376**

2  INCREASE (DECREASE) IN UNREALIZED APPRECIATION
    a. Portfolio securities:
       (i) Increases                                0
       (ii) Decreases due to revaluation of securities    -403,383
       (iii) Decreases due to sale of securities         0
       (iv) Decreases due to write-off of securities    0      **-403,383**
    b. Assets acquired in liquidation of portfolio securities    0
    c. Operating concerns acquired                   0
    d. Notes and other securities received           0
3  TOTAL (sum of 2a through 2d)                    **-403,383**
4  Subtotal (line 1 plus line 3)                    **-2,403,759**

5  (INCREASE) DECREASE IN UNREALIZED DEPRECIATION
    a. Portfolio securities
       (i) Increases                                0
       (ii) Decreases due to revaluation of securities    0
       (iii) Decreases due to sale of securities/repayment of principal    0
       (iv) Decreases due to write-off of securities    0      0
    b. Assets acquired in liquidation of portfolio securities    0
    c. Operating concerns acquired                   0
    d. Notes and other securities received           0
6  TOTAL (sum of 5a through 5d)                    0
7  NET UNREALIZED APPRECIATION (DEPRECIATION) AT
   END OF PERIOD (line 4 plus line 6)             **-2,403,759**
8  LESS:  Estimated future tax expense (benefit) on
   net unrealized appreciation (depreciation)          0
9  UNREALIZED GAIN (LOSS) ON SECURITIES HELD --
   total must agree with line 52, page 3C           **-2,403,759**

| I. RETAINED EARNINGS AVAILABLE FOR DISTRIBUTION<br>II. REGULATORY AND LEVERAGEABLE CAPITAL<br>AS OF 06/30/2011<br>(Amounts rounded to nearest dollar) | OMB Approval No. 3245-0063<br>Expiration Date 10/31/2007 |
|---|---|
| Name of Licensee:  ELK ASSOCIATES FUNDING CORP. | License No.:  02/02-5377 |

## PART I.    RETAINED EARNINGS AVAILABLE FOR DISTRIBUTION OR CAPITALIZATION

| | |
|---|---:|
| 1 Undistributed Net Realized Earnings--Unrestricted  (line 54b, page 3C) | -5,158,323 |
| 2 LESS:  Unrealized Depreciation (line 10, column 2, page 2C) | 2,403,759 |
| 3 ADD:  Cumulative Undeclared Dividends on 4% Redeemable<br>  Preferred Stock--Section 301(d) Licensees only (line 45b, page 3C) | 0 |
| **4 RETAINED EARNINGS AVAILABLE FOR DISTRIBUTION OR CAPITALIZATION** | **-7,562,082** |

## PART II.    SCHEDULE OF REGULATORY AND LEVERAGEABLE CAPITAL

| | | |
|---|---:|---:|
| 1 Capital Stock and Paid-in Surplus (sum of lines 47 and 48, page 3C) | | 10,629,155 |
| 2 ADD:  Unfunded binding commitments from Institutional Investors | | 0 |
| 3 LESS:  Regulatory Deductions | | |
|   a. Organization Expenses Not Approved by SBA (1) | 0 | |
|   b. Capital Stock Issued for Services | 0 | |
|   c. Capital Stock Issued for Non-cash Assets (unless approved by SBA<br>     for inclusion in Regulatory Capital or converted to cash) | 0 | |
|   d. Investment in 301(d) Licensee | 0 | |
|   e. Treasury Stock at Cost | 0 | |
|   f. Other (specify) | 0 | |
| 4 Total Regulatory Deductions (Sum of 3a through 3f) | | 0 |
| 5 Other Adjustments to Regulatory Capital | | 0 |
| **6 REGULATORY CAPITAL (sum of lines 1, 2, 4 and 5)** | | **10,629,155** |
| 7 LESS:  Unfunded binding commitments from Institutional Investors | | 0 |
| 8 LESS:  Non-cash assets included in Regulatory Capital, other than<br>     eligible investments in Small Concerns | | 0 |
| 9 LESS:  Other deductions (specify) | | 0 |
| **10 LEVERAGEABLE CAPITAL (sum of lines 6 through 9)** | | **10,629,155** |

## PART IIa.    ADJUSTMENTS TO REGULATORY CAPITAL FOR CAPITAL IMPAIRMENT AND OVERLINE PURPOSES

COMPLETE THIS PART IIa ONLY IF (1) LICENSEE HAS COMPLETED THE REPURCHASE OF ITS 3% PREFERRED STOCK FROM SBA, AND/OR (2) PURSUANT TO 13 CFR 107.740(c), LICENSEE WISHES TO INCREASE ITS OVERLINE LIMITATION BY THE AMOUNT OF ITS NET UNREALIZED GAINS ON MARKETABLE SECURITIES. NOTE: Licensee must have positive Retained Earnings Available for Distribution at the time the increased overline limit is established.

| | |
|---|---:|
| **11 REGULATORY CAPITAL (Part II, line 6)** | **10,629,155** |
| 12 ADD:  Restricted Contributed Capital Surplus (line 49, page 3C) | 3,557,261 |
| **13 ADJUSTED REGULATORY CAPITAL FOR IMPAIRMENT PURPOSES (line 11 plus line 12)** | **14,186,416** |
| 14 ADD:  Net Unrealized Gains on Marketable Securities (2) | 0 |
| **15 ADJUSTED REGULATORY CAPITAL FOR OVERLINE PURPOSES (line 13 plus line 14)** | **14,186,416** |

(1) Deduct only those organizational expenses which were not accepted as reasonable by SBA.
(2) As defined in 13 CFR 107.740(c). Attach a schedule showing the following for each marketable security:  name of Small
    Business Concern, Market in which traded, names of market makers for companies not listed on a stock exchange or NASDAQ,
    class of security, cost, valuation, and unrealized gain or loss in accordance with the requirements of Section 107.740(c).

| SCHEDULE OF COMMITMENTS | | | | | OMB Approval No. 3245-0063 | |
| AS OF 06/30/2011 | | | | | Expiration Date 10/31/2007 | |

Name of Licensee:  ELK ASSOCIATES FUNDING CORP.                                           License No.: 02/02-5377

| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
|---|---|---|---|---|---|---|
| Name of Small Business | Amount of Commitment | Date Made | Expiration Date | Loan, Debt, or Equity? | New investment or follow-on? | If follow-on, is existing investment a Portfolio Security, Asset Acquired, or Operating Concern Acquired? |
| No Information | | | | | | |
| | | | | | | |



| | | | | SCHEDULE OF GUARANTEES<br>AS OF 06/30/2011 | | OMB Approval No. 3245-0063<br>Expiration Date  10/31/2007 |
| --- | --- | --- | --- | --- | --- | --- |

| Name of Licensee:  ELK ASSOCIATES FUNDING CORP. | | | | | | License No.:  02/02-5377 |
| --- | --- | --- | --- | --- | --- | --- |
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| Name of<br>Small Business | Guarantee<br>Amount | Date<br>Made | Expiration<br>Date | Name of<br>Guaranteed Party | Is guarantee<br>collateralized?<br>If so, by what? | Description of<br>underlying obligation of<br>Small Business |
| No Information | | | | | | |
| | | | | | | |

| SCHEDULE 1 | | | SCHEDULE OF LOANS AND INVESTMENTS AS OF 06/30/2011 | | | | OMB Approval No. 3245-0063 Expiration Date 10/31/2007 | |
|---|---|---|---|---|---|---|---|---|

Name of Licensee: ELK ASSOCIATES FUNDING CORP.  License No.: 02/02-5377

| 1 | 2 See Note (1) Below | | | 3 Security Type- See Note (2) Below | | | 4 Cost at Beginning of Period | 5 Additions/ (Deductions) | 6 Description of Addition/Deduction | 7 Cost at End of Period | 8 Unrealized Appreciation (Depreciation) | 9 Fair Value as Determined by Board of Directors |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Description of Investment | (a) | (b) | (c) | (a) | (b) | (c) | | | | | | |
| Affinity Group Inc. | | | | S | L | NP | 0 | 1,500,000 | Loan Disbursement | 1,226,456 | 0 | 1,226,456 |
| Employer ID No.: 13-3377709  LMI Investment: | | | | | | | | -31,470 | Loan Discount | | | |
| Invest Date: 11/30/2010  Invest Amt: 1,500,000  Interest: 11.50 | | | | | | | | -250,000 | Loan Payoff | | | |
| Mat. Date: 12/01/2016 | | | | | | | | 7,926 | Loan Discount Amortization | | | |
| NAICS Code: 561599  Address: 2575 Vista Del Mar Ventura, CA 93001- | | | | | | | | | | | | |
| Other Comments: EAF084647 | | | | | | | | | | | | |
| Airvana Network Solutions Inc. | | | | S | L | NP | 0 | 1,500,000 | Loan Disbursement | 0 | 0 | 0 |
| Employer ID No.: 04-3507654  LMI Investment: | | | | | | | | -30,000 | Loan Discount | | | |
| Invest Date: 08/30/2010  Invest Amt: 1,500,000  Interest: 11.00 | | | | | | | | -1,500,000 | Loan Payments / Payoff | | | |
| Mat. Date: 08/27/2014 | | | | | | | | 30,000 | Loan Discount Amortization | | | |
| NAICS Code: 334210  Address: 19 Alpha Road Chelmsford, MA 01824- | | | | | | | | | | | | |
| Alpha Media Group Inc. | | | | S | L | NP | 2,082,778 | 204,090 | Loan Addition | 2,304,012 | -602,387 | 1,701,625 |
| Employer ID No.: 13-3927614  LMI Investment: EAF084508 | | | | | | | | 17,144 | Loan Discount Amortization | | | |
| Invest Date: 09/18/2007  Invest Amt: 2,000,000  Interest: 12.00 | | | | | | | | | | | | |
| Mat. Date: 01/01/2013 | | | | | | | | | | | | |
| NAICS Code: 511120  Address: 1040 Avenue of the Americas New York, NY 10018 | | | | | | | | | | | | |
| Andy Fur Dry Cleaning, Inc. | D | P | S | L | NP | | 12,103 | 0 | | 12,103 | -12,103 | 0 |
| Employer ID No.:  LMI Investment: EAF004078 | | | | | | | | | | | | |
| Invest Date: 11/11/2004  Invest Amt: 60,000  Interest: 14.50 | | | | | | | | | | | | |
| Mat. Date: 10/13/2009 | | | | | | | | | | | | |
| NAICS Code: 812320  Address: 224 West 29th Street New York, NY 10001- | | | | | | | | | | | | |

| SCHEDULE 1 | | | SCHEDULE OF LOANS AND INVESTMENTS<br>AS OF 06/30/2011 | | | | OMB Approval No. 3245-0063<br>Expiration Date 10/31/2007 | |

Name of Licensee:  ELK ASSOCIATES FUNDING CORP.                                    License No.: 02/02-5377

| 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 |
|---|---|---|---|---|---|---|---|---|
| Description of Investment | See Note (1) Below<br>(a) (b) (c) | Security Type- See Note (2) Below<br>(a) (b) (c) | Cost at Beginning of Period | Additions/ (Deductions) | Description of Addition/Deduction | Cost at End of Period | Unrealized Appreciation (Depreciation) | Fair Value as Determined by Board of Directors |
| Artwork | S AA NP | | 28,325 | 0 | | 28,325 | 0 | 28,325 |
| Employer ID No.:          LMI Investment:  EAF000011 | | | | | | | | |
| Invest Date: 01/01/1992     Invest Amt: 38,250 | | | | | | | | |
| NAICS Code:          Address:  50 Jericho Quadrangle Jericho, NY 11753- | | | | | | | | |
| BP Metals LLC | S L NP | | 859,567 | -63,138 | Loan Payments | 0 | 0 | 0 |
| Employer ID No.:          LMI Investment:  EAF084607 | | | | -796,429 | Loan Payoff | | | |
| Invest Date: 06/27/2008     Invest Amt: 1,000,000     Interest: 8.76 | | | | | | | | |
| Mat. Date:  01/01/2013 | | | | | | | | |
| NAICS Code: 333298     Address:  127 Public Square Cleveland, OH 44114 | | | | | | | | |
| Centaur LLC | S L NP | | 1,365,139 | -1,108,004 | Loan Payoff | 0 | 0 | 0 |
| Employer ID No.:  33-1038148     LMI Investment:  EAF084534 | | | | -276,910 | Loss on Sale | | | |
| Invest Date: 11/16/2007     Invest Amt: 2,500,000     Interest: 11.25 | | | | 19,775 | Loan Discount | | | |
| Mat. Date:  10/01/2026 | | | | | | | | |
| NAICS Code: 713210     Address:  10 W. Market Street Indianapolis, IN 46204 | | | | | | | | |
| Centerplate Inc. | S L NP | | 0 | 1,000,000 | Loan Disbursement | 967,150 | 0 | 967,150 |
| Employer ID No.:  57-0969174     LMI Investment: | | | | -30,000 | Loan Discount | | | |
| Invest Date: 09/22/2010     Invest Amt: 1,000,000     Interest: 10.75 | | | | -7,500 | Loan Payments | | | |
| Mat. Date:  09/16/2015 | | | | 4,650 | Loan Discount Amortization | | | |
| NAICS Code: 722310     Address:  2187 Atlantic Street Stamford, CT 06902- | | | | | | | | |
| Other Comments:  EAF084644 | | | | | | | | |

| SCHEDULE 1 | | | | | SCHEDULE OF LOANS AND INVESTMENTS AS OF 06/30/2011 | | | | OMB Approval No. 3245-0063 Expiration Date 10/31/2007 |

Name of Licensee:  ELK ASSOCIATES FUNDING CORP.   License No.: 02/02-5377

| 1 | 2 | | | 3 | | | 4 | 5 | 6 | 7 | 8 | 9 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Description of Investment | See Note (1) Below | | | Security Type- See Note (2) Below | | | Cost at Beginning of Period | Additions/ (Deductions) | Description of Addition/Deduction | Cost at End of Period | Unrealized Appreciation (Depreciation) | Fair Value as Determined by Board of Directors |
| | (a) | (b) | (c) | (a) | (b) | (c) | | | | | | |
| Charlie Brown's Acquisition Co | D | | | S | L | NP | 2,146,101 | 210,581 | Loan Addition | 2,356,682 | -1,013,373 | 1,343,309 |
| Employer ID No.:  13-3948367          LMI Investment:  EAF084466 | | | | | | | | | | | | |
| Invest Date:  06/28/2007     Invest Amt:  2,000,000          Interest:  10.25 | | | | | | | | | | | | |
| Mat. Date:  11/14/2014 | | | | | | | | | | | | |
| NAICS Code:  722110          Address:  1450 Route 22 West Mountainside, NJ 07092 | | | | | | | | | | | | |
| Claude Angrand #671 | | | | S | L | NP | 148,859 | -4,516 | Loan Payments | 144,343 | 0 | 144,343 |
| Employer ID No.:          LMI Investment:  EAF064536 | | | | | | | | | | | | |
| Invest Date:  11/29/2007     Invest Amt:  160,000          Interest:  12.00 | | | | | | | | | | | | |
| Mat. Date:  11/01/2010 | | | | | | | | | | | | |
| NAICS Code:  485310          Address:  1738 NW 108 Street Miami, FL 33167 | | | | | | | | | | | | |
| Cleaners of North Beach, LLC | | P | | S | L | NP | 13,800 | -13,800 | Loan Payments | 0 | 0 | 0 |
| Employer ID No.:  20-1045725          LMI Investment:  EAF004010 | | | | | | | | | | | | |
| Invest Date:  04/30/2004     Invest Amt:  170,000          Interest:  5.50 | | | | | | | | | | | | |
| Mat. Date:  12/01/2008 | | | | | | | | | | | | |
| NAICS Code:  812320          Address:  3789 NW 46th Street Hialeh, FL 33010 | | | | | | | | | | | | |
| Clopay Ames Holding Corp. | | | | S | L | NP | 0 | 1,250,000 | Loan Disbursement | 0 | 0 | 0 |
| Employer ID No.:  74-3261127          LMI Investment: | | | | | | | | -25,000 | Loan Discount | | | |
| Invest Date:  09/30/2010     Invest Amt:  1,250,000          Interest:  7.75 | | | | | | | | -1,250,000 | Loan Payments / Payoff | | | |
| Mat. Date:  09/30/2016 | | | | | | | | 25,000 | Loan Discount Amortization | | | |
| NAICS Code:  332212          Address:  712 Fifth Avenue New York, NY 10019- | | | | | | | | | | | | |

SBA Form 468.1 (7/04) Previous editions obsolete

| SCHEDULE 1 | | | | | SCHEDULE OF LOANS AND INVESTMENTS<br>AS OF 06/30/2011 | | | OMB Approval No. 3245-0063<br>Expiration Date 10/31/2007 |

Name of Licensee: ELK ASSOCIATES FUNDING CORP.                                                      License No.: 02/02-5377

| 1 | 2 | | | 3 | | | 4 | 5 | 6 | 7 | 8 | 9 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Description of Investment | See Note (1) Below | | | Security Type-See Note (2) Below | | | Cost at Beginning of Period | Additions/(Deductions) | Description of Addition/Deduction | Cost at End of Period | Unrealized Appreciation (Depreciation) | Fair Value as Determined by Board of Directors |
| | (a) | (b) | (c) | (a) | (b) | (c) | | | | | | |
| Conklin Svcs.&Construction Inc | D | | S | D | | NP | 1,648,181 | 0 | | 1,648,181 | -198,181 | 1,450,000 |
| Employer ID No.:     LMI Investment: EAF024495 | | | | | | | | | | | | |
| Invest Date: 08/17/2007   Invest Amt: 263,197 | | | | | | | | | | | | |
| NAICS Code: 236220   Address: 94 Stewart Avenue Newburgh, NY 12550- | | | | | | | | | | | | |
| Crown Cleaners of Miami Lakes | | | P | S | L | NP | 10,236 | -10,236 | Loan Payments | 0 | 0 | 0 |
| Employer ID No.: 20-1077008   LMI Investment: EAF004017 | | | | | | | | | | | | |
| Invest Date: 05/05/2004   Invest Amt: 154,000   Interest: 6.00 | | | | | | | | | | | | |
| Mat. Date: 08/01/2008 | | | | | | | | | | | | |
| NAICS Code: 812320   Address: 8010 NW 154th Street Miami Lakes, FL 33016 | | | | | | | | | | | | |
| Crown Cleaners of Miami Lakes, | | | P | S | L | NP | 1,858 | -1,858 | Loan Payments | 0 | 0 | 0 |
| Employer ID No.: 20-1077008   LMI Investment: EAF004016 | | | | | | | | | | | | |
| Invest Date: 05/05/2004   Invest Amt: 30,000   Interest: 6.00 | | | | | | | | | | | | |
| Mat. Date: 12/01/2008 | | | | | | | | | | | | |
| NAICS Code: 812320   Address: 8010 NW 154th Street Miami Lakes, FL 33016 | | | | | | | | | | | | |
| E&Y General Construction Co. | D | | S | | L | NP | 870,791 | 0 | | 870,791 | 0 | 870,791 |
| Employer ID No.:   LMI Investment: EAF024247 | | | | | | | | | | | | |
| Invest Date: 08/26/2005   Invest Amt: 900,000   Interest: 10.50 | | | | | | | | | | | | |
| Mat. Date: 08/01/2008 | | | | | | | | | | | | |
| NAICS Code: 236210   Address: 5201 2nd Avenue Brooklyn, NY 11232 | | | | | | | | | | | | |

| SCHEDULE 1 | | | SCHEDULE OF LOANS AND INVESTMENTS AS OF 06/30/2011 | | | | OMB Approval No. 3245-0063 Expiration Date 10/31/2007 | |

Name of Licensee:  ELK ASSOCIATES FUNDING CORP.                                                      License No.:  02/02-5377

| 1 | 2 | | | 3 | | | 4 | 5 | 6 | 7 | 8 | 9 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Description of Investment | See Note (1) Below | | | Security Type- See Note (2) Below | | | Cost at Beginning of Period | Additions/ (Deductions) | Description of Addition/Deduction | Cost at End of Period | Unrealized Appreciation (Depreciation) | Fair Value as Determined by Board of Directors |
| | (a) | (b) | (c) | (a) | (b) | (c) | | | | | | |
| Education Affiliates Inc. (BMO) | | S | | L | NP | | 433,331 | -27,357 | Loan Payments | 407,960 | 0 | 407,960 |
| Employer ID No.:  20-1589793        LMI Investment: | | | | | | | | 1,986 | Loan Discount Amortization | | | |
| Invest Date: 12/18/2009      Invest Amt: 500,000             Interest: 8.00 | | | | | | | | | | | | |
| Mat. Date:  01/01/2015 | | | | | | | | | | | | |
| NAICS Code: 611310         Address:  5024A Campbell Blvd. Baltimore, MD 21236- | | | | | | | | | | | | |
| Other Comments:  EAF084636 | | | | | | | | | | | | |
| Education Affiliates Inc. (GE) | | S | | L | NP | | 433,332 | -27,357 | Loan Payments | 407,962 | 0 | 407,962 |
| Employer ID No.:  20-1589793        LMI Investment: | | | | | | | | 1,987 | Loan Discount Amortization | | | |
| Invest Date: 12/18/2009      Invest Amt: 500,000             Interest: 8.00 | | | | | | | | | | | | |
| Mat. Date:  01/01/2015 | | | | | | | | | | | | |
| NAICS Code: 611310         Address:  5024A Campbell Blvd Baltimore, MD 21236- | | | | | | | | | | | | |
| Other Comments:  EAF084634 | | | | | | | | | | | | |
| Eragen Bioscience | | S | | E | NP | | 25,500 | 0 | | 25,500 | -24,650 | 850 |
| Employer ID No.:  59-3564685        LMI Investment: EAF000008 | | | | | | | | | | | | |
| Invest Date: 03/06/2000      Invest Amt: 25,500 | | | | | | | | | | | | |
| NAICS Code: 541711         Address:  918 Deming Way Madison, WI 53717-1944 | | | | | | | | | | | | |
| Fairway Group Acquisition Company | | S | | L | NP | | 0 | 1,500,000 | Loan Disbursement | 1,485,635 | 0 | 1,485,635 |
| Employer ID No.:  20-5942788        LMI Investment: | | | | | | | | -15,000 | Loan Discount | | | |
| Invest Date: 03/15/2011      Invest Amt: 1,500,000          Interest: 7.50 | | | | | | | | 635 | Loan Discout Amortization | | | |
| Mat. Date:  03/03/2017 | | | | | | | | | | | | |
| NAICS Code: 445110         Address:  2284 12th Avenue New York, NY 10027- | | | | | | | | | | | | |
| Other Comments:  EAF084649 | | | | | | | | | | | | |

| SCHEDULE 1 | SCHEDULE OF LOANS AND INVESTMENTS AS OF 06/30/2011 | OMB Approval No. 3245-0063 Expiration Date 10/31/2007 |
|---|---|---|

| Name of Licensee: ELK ASSOCIATES FUNDING CORP. | License No.: 02/02-5377 |
|---|---|

| 1 | 2 | | | 3 | | | 4 | 5 | 6 | 7 | 8 | 9 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Description of Investment | See Note (1) Below | | | Security Type- See Note (2) Below | | | Cost at Beginning of Period | Additions/ (Deductions) | Description of Addition/Deduction | Cost at End of Period | Unrealized Appreciation (Depreciation) | Fair Value as Determined by Board of Directors |
| | (a) | (b) | (c) | (a) | (b) | (c) | | | | | | |
| Fairway Group Holdings Corp. | | S | | L | NP | | 968,162 | -4,998 | Loan Payments | 0 | 0 | 0 |
| Employer ID No.: 20-5942788   LMI Investment: | | | | | | | | -990,002 | Loan Payoff | | | |
| Invest Date: 12/18/2009   Invest Amt: 1,000,000   Interest: 12.00 | | | | | | | | 26,838 | Loan Discount Amortization | | | |
| Mat. Date: 01/01/2015 | | | | | | | | | | | | |
| NAICS Code: 445110   Address: 2284 12th Avenue New York, NY 10027- | | | | | | | | | | | | |
| Other Comments: EAF084635 | | | | | | | | | | | | |
| Fusion Telecommunications Int. | | S | | E | NP | | 367,027 | 0 | | 367,027 | -360,053 | 6,974 |
| Employer ID No.: 58-2342021   LMI Investment: EAF000010 | | | | | | | | | | | | |
| Invest Date: 02/26/1999   Invest Amt: 75,000 | | | | | | | | | | | | |
| NAICS Code: 517919   Address: 420 Lexington Avenue New York, NY 10170- | | | | | | | | | | | | |
| Geronimo ATM Fund LLC | D | S | | L | NP | | 146,822 | -23,540 | Loan Payments | 123,282 | -123,282 | 0 |
| Employer ID No.:   LMI Investment: EAF003987 | | | | | | | | | | | | |
| Invest Date: 03/26/2004   Invest Amt: 150,000   Interest: 12.00 | | | | | | | | | | | | |
| Mat. Date: 01/01/2010 | | | | | | | | | | | | |
| NAICS Code: 238290   Address: 7332 East Earll Drive Scottsdale, AZ 85251 | | | | | | | | | | | | |
| Golden Triangle EnterprisesLLC | P | S | | L | NP | | 276,370 | -57,546 | Loan Payments | 218,824 | 0 | 218,824 |
| Employer ID No.:   LMI Investment: EAF024366 | | | | | | | | | | | | |
| Invest Date: 12/05/2006   Invest Amt: 425,000   Interest: 4.7355 | | | | | | | | | | | | |
| Mat. Date: 03/01/2010 | | | | | | | | | | | | |
| NAICS Code: 722211   Address: 16350 E. Valley Blvd. La Puente, CA 91744 | | | | | | | | | | | | |

| SCHEDULE 1 | SCHEDULE OF LOANS AND INVESTMENTS AS OF 06/30/2011 | OMB Approval No. 3245-0063 Expiration Date 10/31/2007 |
|---|---|---|

Name of Licensee:  ELK ASSOCIATES FUNDING CORP.  License No.: 02/02-5377

| 1 | 2 | | | 3 | | | 4 | 5 | 6 | 7 | 8 | 9 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Description of Investment | See Note (1) Below | | | Security Type- See Note (2) Below | | | Cost at Beginning of Period | Additions/ (Deductions) | Description of Addition/Deduction | Cost at End of Period | Unrealized Appreciation (Depreciation) | Fair Value as Determined by Board of Directors |
| | (a) | (b) | (c) | (a) | (b) | (c) | | | | | | |
| Goldhkin Wholesale Ent. Inc. Employer ID No.: 22-3670162    LMI Investment: EAF024470 Invest Date: 06/28/2007    Invest Amt: 800,000    Interest: 10.25 Mat. Date: 12/01/2010 NAICS Code: 423120    Address:  2 Broad Street Bloomfield, NJ 07003 | | P | S | L | NP | | 570,413 | -570,413 | Loan Payoff | 0 | 0 | 0 |
| Greaves-Peters Laundry Systems Employer ID No.:    LMI Investment: EAF004616 Invest Date: 08/06/2008    Invest Amt: 400,000    Interest: 10.90 Mat. Date: 09/01/2013 NAICS Code: 327216    Address:  1519 Avenue J Brooklyn, NY 11230- | | D | S | L | NP | | 292,562 | -272,091 | Loan Payments | 20,471 | 0 | 20,471 |
| Holly Bull Cab Corp. Employer ID No.: 36-3969307    LMI Investment: EAF054630 Invest Date: 10/29/2008    Invest Amt: 29,406    Interest: 8.00 Mat. Date: 07/01/2009 NAICS Code: 485310    Address:  4020 Glenlake Chicago, IL 60646- | | | S | L | NP | | 24,736 | -1,575 -23,161 | Loan Payments Loan Payoff | 0 | 0 | 0 |
| Hudson Products Holdings Inc. Employer ID No.: 20-5908912    LMI Investment: EAF084621 Invest Date: 09/22/2008    Invest Amt: 1,500,000    Interest: 8.50 Mat. Date: 10/01/2015 NAICS Code: 332410    Address:  1307 Soldiers Field Drive Sugarland, TX 77479- | | | S | L | NP | | 1,239,347 | -3,264 6,428 | Loan Payments Loan Discount Amortization | 1,242,511 | 0 | 1,242,511 |




| SCHEDULE 1 | SCHEDULE OF LOANS AND INVESTMENTS<br>AS OF 06/30/2011 | | | | | | OMB Approval No. 3245-0063<br>Expiration Date 10/31/2007 | | |

Name of Licensee: ELK ASSOCIATES FUNDING CORP.    License No.: 02/02-5377

| 1 | 2 | | | 3 | | | 4 | 5 | 6 | 7 | 8 | 9 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Description of Investment | See Note (1) Below | | | Security Type- See Note (2) Below | | | Cost at Beginning of Period | Additions/ (Deductions) | Description of Addition/Deduction | Cost at End of Period | Unrealized Appreciation (Depreciation) | Fair Value as Determined by Board of Directors |
| | (a) | (b) | (c) | (a) | (b) | (c) | | | | | | |
| Impact Confections Inc. | | | | S | L | NP | 0 | 1,500,000 | Loan Disbursement | 1,538,367 | 0 | 1,538,367 |
| Employer ID No.: 85-0308777   LMI Investment: | | | | | | | | 38,367 | Loan Additions | | | |
| Invest Date: 09/30/2010   Invest Amt: 1,500,000   Interest: 17.00 | | | | | | | | | | | | |
| Mat. Date: 07/15/2015 | | | | | | | | | | | | |
| NAICS Code: 311340   Address: 888 Garden of the Gods Road Colorado Springs, CO 80907- | | | | | | | | | | | | |
| Other Comments: EAF084645 | | | | | | | | | | | | |
| Just Salad LLC | | | | S | L | NP | 300,000 | -300,000 | Loan Payoff | 0 | 0 | 0 |
| Employer ID No.: 06-1755674   LMI Investment: EAF004513 | | | | | | | | | | | | |
| Invest Date: 09/28/2007   Invest Amt: 500,000   Interest: 10.00 | | | | | | | | | | | | |
| Mat. Date: 12/18/2008 | | | | | | | | | | | | |
| NAICS Code: 722211   Address: 767 Third Avenue New York, NY 10017 | | | | | | | | | | | | |
| Kratos Defense & Security Solutions | | | | S | L | P | 1,250,000 | -1,250,000 | Loan Payoff | 0 | 0 | 0 |
| Employer ID No.: 13-3818604   LMI Investment: Not Applicable | | | | | | | | | | | | |
| Invest Date: 05/19/2010   Invest Amt: 1,250,000   Interest: 10.00 | | | | | | | | | | | | |
| Mat. Date: 06/01/2017 | | | | | | | | | | | | |
| NAICS Code: 517410   Address: 4820 Eastgate Mall San Diego, CA 92121- | | | | | | | | | | | | |
| Other Comments: EAF084639 | | | | | | | | | | | | |
| Miramax Film NY LLC | | | | S | L | NP | 0 | 1,000,000 | Loan Disbursement | 874,126 | 0 | 874,126 |
| Employer ID No.: 27-3102725   LMI Investment: | | | | | | | | -20,000 | Loan Discount | | | |
| Invest Date: 12/30/2010   Invest Amt: 1,000,000   Interest: 7.75 | | | | | | | | -107,692 | Loan Payments | | | |
| Mat. Date: 06/01/2016 | | | | | | | | 1,818 | Loan Discount Amortization | | | |
| NAICS Code: 512110   Address: 2450 Broadway, 6th Floor Santa Monica, CA 90404- | | | | | | | | | | | | |
| Other Comments: EAF084648 | | | | | | | | | | | | |

| SCHEDULE 1 | | | SCHEDULE OF LOANS AND INVESTMENTS AS OF 06/30/2011 | | | | OMB Approval No. 3245-0063 Expiration Date 10/31/2007 | |
|---|---|---|---|---|---|---|---|---|

Name of Licensee: ELK ASSOCIATES FUNDING CORP.                    License No.: 02/02-5377

| 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 |
|---|---|---|---|---|---|---|---|---|
| Description of Investment | See Note (1) Below (a) (b) (c) | Security Type- See Note (2) Below (a) (b) (c) | Cost at Beginning of Period | Additions/ (Deductions) | Description of Addition/Deduction | Cost at End of Period | Unrealized Appreciation (Depreciation) | Fair Value as Determined by Board of Directors |
| Monticello Desserts, Inc. | S L NP | | 26,033 | -26,033 | Loan Payments | 0 | 0 | 0 |
| Mountain View Bar & Grill Inc. | D S L NP | | 406,067 | 0 | | 406,067 | 0 | 406,067 |
| Odney Cab Inc. | S L NP | | 17,657 | -225 | Loan Payments | 0 | 0 | 0 |
| | | | | -17,432 | Loan Payoff | | | |
| Patroon Operating Co. LLC | S L NP | | 250,000 | 0 | | 250,000 | 0 | 250,000 |

**Monticello Desserts, Inc.**
Employer ID No.: 22-3139283     LMI Investment: EAF004187
Invest Date: 02/15/2005     Invest Amt: 150,000     Interest: 14.00
Mat. Date: 08/01/2009
NAICS Code: 722213     Address: 131 North Broadway South Amboy, NJ 08879

**Mountain View Bar & Grill Inc.**
Employer ID No.:     LMI Investment: EAF024581
Invest Date: 03/26/2008     Invest Amt: 412,500     Interest: 12.00
Mat. Date: 07/01/2010
NAICS Code: 722110     Address: 141 Schooley's Mountain Road Long Valley, NJ 07853

**Odney Cab Inc.**
Employer ID No.: 06-3682500     LMI Investment: EAF044629
Invest Date: 10/29/2008     Invest Amt: 18,460     Interest: 8.75
Mat. Date: 01/01/2026
NAICS Code: 485310     Address: 62 Clinton Street Everett, MA 02149-

**Patroon Operating Co. LLC**
Employer ID No.: 13-3857372     LMI Investment:
Invest Date: 06/08/2010     Invest Amt: 250,000     Interest: 10.00
Mat. Date: 01/01/2012
NAICS Code: 722110     Address: 169 East 46th Street New York, NY 10017-
Other Comments: EAF004640

| SCHEDULE 1 | | | | | SCHEDULE OF LOANS AND INVESTMENTS AS OF 06/30/2011 | | | OMB Approval No. 3245-0063 Expiration Date 10/31/2007 |
|---|---|---|---|---|---|---|---|---|

Name of Licensee:  ELK ASSOCIATES FUNDING CORP.                                                                 License No.: 02/02-5377

| 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 |
|---|---|---|---|---|---|---|---|---|
| Description of Investment | See Note (1) Below (a) (b) (c) | Security Type- See Note (2) Below (a) (b) (c) | Cost at Beginning of Period | Additions/ (Deductions) | Description of Addition/Deduction | Cost at End of Period | Unrealized Appreciation (Depreciation) | Fair Value as Determined by Board of Directors |
| PPCP Inc. Employer ID No.: LMI Investment: EAF003810 Invest Date: 05/31/2002   Invest Amt: 15,000     Interest: 8.00 Mat. Date: 03/01/2009 NAICS Code: 541511     Address:   4 Court Square Long Island City, NY 11101 | D      S   L   NP | | 14,272 | 0 | | 14,272 | -14,272 | 0 |
| PPCP Inc. Employer ID No.: LMI Investment: EAF003809 Invest Date: 05/08/2003   Invest Amt: 20,000     Interest: 8.00 Mat. Date: 04/01/2009 NAICS Code: 541511     Address:  4 Court Square Long Island City, NY 11101 | D      S   L   NP | | 16,454 | 0 | | 16,454 | -16,454 | 0 |
| PPCP, Inc. Employer ID No.: LMI Investment: EAF004081 Invest Date: 11/19/2004   Invest Amt: 6,500     Interest: 8.00 Mat. Date: 03/01/2009 NAICS Code: 541511     Address:   10 Lewis Parkway Yonkers, NY 10705 | D      S   L   NP | | 5,965 | 0 | | 5,965 | -5,965 | 0 |
| Receivables reclass as Loan Employer ID No.: LMI Investment: EAF000026 Invest Date:     Invest Amt: 0 NAICS Code:     Address:   50 Jericho Quadrangle Jericho, NY 11753- | AA | | 144,973 | -5,998 -22,716 9 | Loan Payments Loan Payoff Loan Addition | 116,268 | -21,054 | 95,214 |

| SCHEDULE 1 | | | | SCHEDULE OF LOANS AND INVESTMENTS<br>AS OF 06/30/2011 | | | OMB Approval No. 3245-0063<br>Expiration Date 10/31/2007 | | |
|---|---|---|---|---|---|---|---|---|---|

Name of Licensee: ELK ASSOCIATES FUNDING CORP.  License No.: 02/02-5377

| 1 | 2 | | | 3 | | | 4 | 5 | 6 | 7 | 8 | 9 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Description of Investment | See Note (1) Below | | | Security Type- See Note (2) Below | | | Cost at Beginning of Period | Additions/ (Deductions) | Description of Addition/Deduction | Cost at End of Period | Unrealized Appreciation (Depreciation) | Fair Value as Determined by Board of Directors |
| | (a) | (b) | (c) | (a) | (b) | (c) | | | | | | |

**Resco Products Inc.** S L NP — 1,494,405 / -192,460 / Loan Payments / 1,301,945 / 0 / 1,301,945
Employer ID No.: 23-1279448  LMI Investment: EAF084475
Invest Date: 06/28/2007  Invest Amt: 2,000,000  Interest: 8.50
Mat. Date: 08/01/2013
NAICS Code: 424690  Address: Penn Center West Two Pittsburgh, PA 15276

**Sealmax Inc.** AA NP — 0 / 872,222 / Foreclosure / 872,222 / 0 / 872,222
Employer ID No.:  LMI Investment:
Invest Date:  Invest Amt: 0  Interest:
NAICS Code:  Address: 130-41 91st Avenue Queens, NY 11418-

**Sealmax Inc.** S L NP — 155,561 / -155,561 / Loan Payoff / 0 / 0 / 0
Employer ID No.:  LMI Investment: EAF024478
Invest Date: 07/09/2007  Invest Amt: 160,000  Interest: 12.00
Mat. Date: 08/01/2008
NAICS Code: 238900  Address: 130-41 91st Avenue Queens, NY 11418

**Sealmax, Inc.** S L NP — 325,000 / -325,000 / Loan Payoff / 0 / 0 / 0
Employer ID No.:  LMI Investment: EAF024299
Invest Date: 03/24/2006  Invest Amt: 325,000  Interest: 10.50
Mat. Date: 08/01/2008
NAICS Code: 238900  Address: 130-41 91st Avenue Queens, NY 11418

| SCHEDULE 1 | | | | SCHEDULE OF LOANS AND INVESTMENTS AS OF 06/30/2011 | | | | OMB Approval No. 3245-0063 Expiration Date 10/31/2007 |
|---|---|---|---|---|---|---|---|---|

Name of Licensee: ELK ASSOCIATES FUNDING CORP.      License No.: 02/02-5377

| 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 |
|---|---|---|---|---|---|---|---|---|
| Description of Investment | See Note (1) Below (a) (b) (c) | Security Type-See Note (2) Below (a) (b) (c) | Cost at Beginning of Period | Additions/ (Deductions) | Description of Addition/Deduction | Cost at End of Period | Unrealized Appreciation (Depreciation) | Fair Value as Determined by Board of Directors |

| Seahnax, Inc. | S  L  NP | | 433,634 | 1,719 | Loan Addition | 0 | 0 | 0 |
| Employer ID No.:  LMI Investment: EAF024298 | | | | -435,353 | Loan Payoff | | | |
| Invest Date: 03/24/2006  Invest Amt: 450,000  Interest: 10.50 | | | | | | | | |
| Mat. Date: 09/01/2012 | | | | | | | | |
| NAICS Code: 238900  Address: 130-41 91st Avenue Queens, NY 11418 | | | | | | | | |

| Shearer's Foods Inc. | S  L  NP | | 978,542 | 33,251 | Loan Additions | 1,015,960 | 0 | 1,015,960 |
| Employer ID No.: 34-1319359  LMI Investment: | | | | 4,167 | Loan Discount Amortization | | | |
| Invest Date: 04/01/2010  Invest Amt: 1,000,000  Interest: 15.50 | | | | | | | | |
| Mat. Date: 03/31/2016 | | | | | | | | |
| NAICS Code: 311919  Address: 692 Wabash Avenue North Brewster, OH 44613- | | | | | | | | |
| Other Comments: EAF084638 | | | | | | | | |

| Soundview Broadcasting LLC | S  L  NP | | 1,882,189 | -61,321 | Loan Payments | 1,820,868 | 0 | 1,820,868 |
| Employer ID No.: 20-0806825  LMI Investment: EAF024342 | | | | | | | | |
| Invest Date: 08/22/2006  Invest Amt: 2,000,000  Interest: 6.00 | | | | | | | | |
| Mat. Date: 09/01/2011 | | | | | | | | |
| NAICS Code: 515120  Address: 11 Soundview Drive Bayville, NY 11709 | | | | | | | | |

| Standard Taxi Corp. | S  L  NP | | 19,924 | -534 | Loan Payments | 0 | 0 | 0 |
| Employer ID No.:  LMI Investment: EAF054631 | | | | -19,390 | Loan Payoff | | | |
| Invest Date: 10/29/2008  Invest Amt: 21,935  Interest: 8.00 | | | | | | | | |
| Mat. Date: 07/01/2009 | | | | | | | | |
| NAICS Code: 485310  Address: 4020 Glenlake Chicago, IL 60646- | | | | | | | | |

| SCHEDULE 1 | | | | | SCHEDULE OF LOANS AND INVESTMENTS<br>AS OF 06/30/2011 | | | OMB Approval No. 3245-0063<br>Expiration Date 10/31/2007 |
|---|---|---|---|---|---|---|---|---|

Name of Licensee:  ELK ASSOCIATES FUNDING CORP.                                                                     License No.: 02/02-5377

| 1 | 2 | | | 3 | | | 4 | 5 | 6 | 7 | 8 | 9 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Description of Investment | See Note (1) Below | | | Security Type-See Note (2) Below | | | Cost at Beginning of Period | Additions/ (Deductions) | Description of Addition/Deduction | Cost at End of Period | Unrealized Appreciation (Depreciation) | Fair Value as Determined by Board of Directors |
| | (a) | (b) | (c) | (a) | (b) | (c) | | | | | | |
| Syncsort Incorporated | | S | | L | NP | | 0 | 1,000,000 | Loan Disbursement | 894,298 | 0 | 894,298 |
| Employer ID No.:  22-1854351          LMI Investment: | | | | | | | | -20,000 | Loan Discount | | | |
| Invest Date: 07/13/2010     Invest Amt: 1,000,000          Interest: 7.50 | | | | | | | | -89,933 | Loan Payments | | | |
| Mat. Date:  03/01/2015 | | | | | | | | 4,231 | Loan Discount Amortization | | | |
| NAICS Code:  511210        Address:  50 Tice Boulevard Woodcliff Lake, NJ 07677- | | | | | | | | | | | | |
| Other Comments:  EAF084641 | | | | | | | | | | | | |
| Treasury Stock Acquired | | S | | AA | NP | | 70,000 | 0 | | 70,000 | 0 | 70,000 |
| Employer ID No.:          LMI Investment:  EAF000005 | | | | | | | | | | | | |
| Invest Date: 05/30/2001     Invest Amt: 70,000 | | | | | | | | | | | | |
| NAICS Code:          Address:  50 Jericho Quadrangle Jericho, NY 11753- | | | | | | | | | | | | |
| Vivas & Associates, Inc. | D | S | | L | NP | | 11,985 | 0 | | 11,985 | -11,985 | 0 |
| Employer ID No.:          LMI Investment:  EAF004080 | | | | | | | | | | | | |
| Invest Date: 11/15/2004     Invest Amt: 50,000          Interest: 9.00 | | | | | | | | | | | | |
| Mat. Date:  12/13/2009 | | | | | | | | | | | | |
| NAICS Code:  812113        Address:  766 Third Avenue New York, NY 10017 | | | | | | | | | | | | |
| W.L.E.J. Inc. | | S | | L | NP | | 7,808 | -151 | Loan Payments | 7,657 | 0 | 7,657 |
| Employer ID No.:  80-0260955      LMI Investment:  EAF044632 | | | | | | | | | | | | |
| Invest Date: 01/14/2009     Invest Amt: 8,000          Interest: 8.25 | | | | | | | | | | | | |
| Mat. Date:  02/01/2031 | | | | | | | | | | | | |
| NAICS Code:  485310        Address:  15 William Street Medford, MA 02155- | | | | | | | | | | | | |

| SCHEDULE 1 | SCHEDULE OF LOANS AND INVESTMENTS AS OF 06/30/2011 | OMB Approval No. 3245-0063 Expiration Date 10/31/2007 |
|---|---|---|

Name of Licensee:  ELK ASSOCIATES FUNDING CORP.                                                                                 License No.: 02/02-5377

| 1 | 2 | | | 3 | | | 4 | 5 | 6 | 7 | 8 | 9 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Description of Investment | See Note (1) Below (a)  (b)  (c) | | | Security Type- See Note (2) Below (a)  (b)  (c) | | | Cost at Beginning of Period | Additions/ (Deductions) | Description of Addition/Deduction | Cost at End of Period | Unrealized Appreciation (Depreciation) | Fair Value as Determined by Board of Directors |

| Western Pottery LLC | | S | | L | NP | | 361,609 | -90,384 | Loan Payoff | 0 | 0 | 0 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Employer ID No.: 20-5015264   LMI Investment: | | | | | | | | -271,225 | Loss on Payoff | | | |
| Invest Date: 12/31/2009   Invest Amt: 361,609   Interest: 4.25 | | | | | | | | | | | | |
| Mat. Date: 12/31/2011 | | | | | | | | | | | | |
| NAICS Code: 332998   Address: 14405 Best Avenue Norwalk, CT 90650- | | | | | | | | | | | | |
| Other Comments: EAF004637 | | | | | | | | | | | | |

| Wyle Services Corporation | | S | | L | NP | | 0 | 1,250,000 | Loan Disbursement | 0 | 0 | 0 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Employer ID No.: 20-0446393   LMI Investment: | | | | | | | | -18,750 | Loan Discount | | | |
| Invest Date: 09/10/2010   Invest Amt: 1,250,000   Interest: 7.75 | | | | | | | | -1,250,000 | Loan Payments / Payoff | | | |
| Mat. Date: 03/26/2016 | | | | | | | | 18,750 | Loan Discount Amortization | | | |
| NAICS Code: 541512   Address: 1960 East Grand Avenue El Segundo, CA 90245- | | | | | | | | | | | | |
| Other Comments: EAF084643 | | | | | | | | | | | | |

| X-Rite Inc. | | S | | L | NP | | 1,043,107 | -78,055 | Loan Payments | 0 | 0 | 0 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Employer ID No.: 38-1737300   LMI Investment: EAF084539 | | | | | | | | -969,893 | Loan Payoff | | | |
| Invest Date: 11/30/2007   Invest Amt: 2,000,000   Interest: 9.50 | | | | | | | | 4,841 | Loan Discount Amortization | | | |
| Mat. Date: 08/01/2011 | | | | | | | | | | | | |
| NAICS Code: 424950   Address: 3100 44th Street SW Grandville, MI 49418 | | | | | | | | | | | | |

(1) (a): Put a "D" in this column if the Financing has become delinquent as to interest and/or principal.
    (b): Put a "P" in this column if the Financing is a participation or a joint financing with an Associate as defined in the instructions for Schedule5.
    (c): Put an "S" in this column if this is a Financing of a "Smaller Concern" in accordance with section 107.710(a).
(2) (a): Indicate the category of Loans and Investments in which the financing is included on page 2P:  L=Loans; D=Debt; E=Equity; R=Receivables from
    sale of assets acquired; AA=Assets acquired; OC=Operating concerns acquired; NS=Notes and other securities received
    (b): P=Publicly Traded and Marketable (as defined in section 107.50); PR=Public-Restricted; PE=Public-Encumbered; NP=Nonpublic
    (c): EC=Equity Capital Investment (as defined in section 107.50), V=Venture Capital Financing (as defined in section 107.1160(f))

| SCHEDULE 1 A/B | 1 A.  SUMMARY OF LOANS AND INVESTMENTS<br>1 B.  SMALLER ENTERPRISE FINANCINGS | OMB Approval No. 3245-0063<br>Expiration Date  10/31/2007 |
|---|---|---|

| Name of Licensee:  ELK ASSOCIATES FUNDING CORP. | License No.:  02/02-5377 |
|---|---|

**1 A.  SUMMARY OF LOANS AND INVESTMENTS**

| 1<br><br>Investment Category | 2<br>Cost at<br>Beginning<br>of Period | 3<br><br>Additions/<br>(Deductions) | 4<br>Cost at<br>End of<br>Period | 5<br>Unrealized<br>Appreciation<br>(Depreciation) | 6<br>Fair Value as<br>Determined by<br>Board of Directors |
|---|---|---|---|---|---|
| TOTAL LOANS (line1, page 2C) | 20,896,519 | -950,373 | 19,946,146 | -1,799,821 | 18,146,325 |
| TOTAL DEBT SECURITIES (line 2, page 2C) | 1,648,181 | 0 | 1,648,181 | -198,181 | 1,450,000 |
| TOTAL EQUITY SECURITIES (line 3, page 2C) | 392,527 | 0 | 392,527 | -384,703 | 7,824 |
| **TOTAL PORTFOLIO SECURITIES (line 4, page 2C)** | 22,937,227 | -950,373 | 21,986,854 | -2,382,705 | 19,604,149 |
| TOTAL ASSETS ACQUIRED (line 7, page 2C) | 243,298 | 843,517 | 1,086,815 | -21,054 | 1,065,761 |
| TOTAL OPERATING CONCERNS ACQUIRED (line 8, page 2C) | 0 | 0 | 0 | 0 | 0 |
| TOTAL NOTES AND OTHER SECS. RECEIVED (line 9, page 2C) | 0 | 0 | 0 | 0 | 0 |
| **TOTAL LOANS AND INVESTMENTS (line 10, page 2C)** | 23,180,525 | -106,856 | 23,073,669 | -2,403,759 | 20,669,910 |

**1 B. SMALLER ENTERPRISE  FINANCINGS**

1  Cumulative dollar amount of Smaller Enterprise Financings extended between April 25, 1994 and close of reporting fiscal year.     | 120,195,531 |

2  Cumulative dollar amount of all Financings extended between April 25, 1994 and close of reporting fiscal year.     | 121,813,517 |

3  Percentage of total Financings extended to Smaller Enterprises (line 1 divided by line 2)     | **98.7%** |

SEE 13 CFR 107.710 FOR PERCENTAGE OF TOTAL FINANCINGS WHICH MUST BE IN SMALLER ENTERPRISES.

| SCHEDULE 2 | | | SCHEDULE OF REALIZED GAINS AND LOSSES ON LOANS AND INVESTMENTS FOR 12 MONTHS ENDED 06/30/2011 | | | | | OMB Approval No. 3245-0063 Expiration Date 10/31/2007 |
|---|---|---|---|---|---|---|---|---|

Name of Licensee:  ELK ASSOCIATES FUNDING CORP.                                  License No.  02/02-5377

| 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 |
|---|---|---|---|---|---|---|---|---|
| | | | | | Net Realized Gain (Loss) | | | |
| Name of Small Business | Security Type (1) | Transaction Type (2) | Net Sales Price | Cost | Total | Cash | Non-cash (gains only) | Name and Address of Purchaser (applies to sales and exchanges) |
| Affinity Group | L | S | 246,250 | 244,650 | 1,600 | 1,600 | 0 | |
| Airvana | L | S | 1,062,500 | 1,036,292 | 26,208 | 26,208 | 0 | |
| Centaur | L | S | 1,108,004 | 1,365,142 | -257,138 | -257,138 | 0 | |
| Clopay | L | S | 1,234,375 | 1,211,111 | 23,264 | 23,264 | 0 | |
| Fairway Group | L | S | 990,002 | 967,140 | 22,862 | 22,862 | 0 | |
| Kratos | L | S | 547,500 | 500,000 | 47,500 | 47,500 | 0 | |
| Kratos | L | S | 824,063 | 750,000 | 74,063 | 74,063 | 0 | |
| Sealmax | L | C | 872,222 | 938,136 | -65,914 | -65,914 | 0 | |

| SCHEDULE 2 | | | SCHEDULE OF REALIZED GAINS AND LOSSES ON LOANS AND INVESTMENTS FOR 12 MONTHS ENDED 06/30/2011 | | | | | OMB Approval No. 3245-0063 Expiration Date  10/31/2007 |

Name of Licensee:  ELK ASSOCIATES FUNDING CORP.                                                                 License No.  02/02-5377

| 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 |
|---|---|---|---|---|---|---|---|---|
| | | | | | Net Realized Gain (Loss) | | | |
| Name of Small Business | Security Type (1) | Transaction Type (2) | Net Sales Price | Cost | Total | Cash | Non-cash (gains only) | Name and Address of Purchaser (applies to sales and exchanges) |
| Western Pottery | L | C | 90,384 | 361,609 | -271,225 | -271,225 | 0 | |
| Wyle Services | L | S | 1,222,375 | 1,205,781 | 16,594 | 16,594 | 0 | |
| Xrite | L | S | 968,681 | 965,718 | 2,963 | 2,963 | 0 | |
| TOTAL | | | $9,166,356 | $9,545,579 | ($379,223) | ($379,223) | $0 | |

(1)  Security Type:  L = Loans, D = Debt, E = Equity, AA = Assets Acquired, OC = Operating concerns acquired, NS = Notes and Other Securities Received
(2)  Transaction Type:  S = Sale, E = Exchange, C = Charge-off

| SCHEDULE 3 | SCHEDULE OF NON-CASH GAINS/INCOME | | | | OMB Approval No. 3245-0063 | |
|---|---|---|---|---|---|---|
| | AS OF 06/30/2011 | | | | Expiration Date 10/31/2007 | |

Name of Licensee: ELK ASSOCIATES FUNDING CORP.     License No. 02/02-5377

| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
|---|---|---|---|---|---|---|
| Name of Small Business | Description of Non-cash Gains/Income (1) | Balance at Beginning of Period | Additions During Period | Collections During Period | Balance at End of Period | Amount of "Includible Non-cash Gain" for Capital Impairment Purposes |
| No Information | | | | | | |
| TOTAL | | | | | | |

(1) Examples of non-cash gains and income include the following:
- Non-cash gains on sale or exchange of securities
- Interest income accrued on deferred interest notes, zero coupon bonds or similiar instruments
- Dividends received in kind
- Accrued interest converted into a new note or added to principal of an existing note. The amount of any such interest which was previously included in Undistributed Net Realized Earnings must be reclassified to Non-cash Gains/Income.

| SCHEDULE 4 | SCHEDULE OF DELINQUENT LOANS AND INVESTMENTS<br>AS OF 06/30/2011 | OMB Approval No. 3245-0063<br>Expiration Date  10/31/2007 |
|---|---|---|

Name of Licensee:  ELK ASSOCIATES FUNDING CORP.                                                                                                License No.  02/02-5377

| 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 |
|---|---|---|---|---|---|---|---|---|---|---|
| Name of<br>Small Business | Outstanding<br>Principal<br>Balance | Delinquent Principal: | | Delinquent Interest: | | Date of Last Payment | | Amount of Last Payment | | Fair Market<br>Value of<br>Collateral |
| | | Amount<br>Past Due | Days<br>Past Due | Amount<br>Past Due | Days<br>Past Due | Principal | Interest | Principal | Interest | |
| Andy Fur Dry Cleaning, Inc. | 12,103 | 12,103 | 880 | 796 | 880 | 01/21/2009 | 01/21/2009 | 1,226 | 149 | 0 |
| Charlie Brown's Acquisition Co | 2,356,682 | 0 | 0 | 66,608 | 487 | | 10/01/2010 | 0 | 1,146 | 0 |
| Conklin Svcs.&Construction Inc | 1,648,181 | 1,648,181 | 365 | 154,187 | 273 | 12/31/2009 | 08/18/2010 | 60,160 | 1,185 | 1,450,000 |
| E&Y General Construction Co. | 870,791 | 870,791 | 303 | 112,649 | 911 | 08/15/2008 | 09/22/2009 | 5,000 | 6,000 | 870,791 |
| Geronimo ATM Fund LLC | 123,282 | 123,282 | 2,190 | 26,910 | 2,340 | 09/14/2010 | 01/14/2005 | 23,540 | 1,475 | 0 |
| Greaves-Peters Laundry Systems | 20,471 | 20,471 | 303 | 2,598 | 181 | 12/30/2010 | 12/30/2010 | 244,951 | 13,576 | 0 |
| Mountain View Bar & Grill Inc. | 406,067 | 406,067 | 821 | 61,388 | 1,003 | 10/30/2009 | 10/30/2009 | 1,433 | 247 | 406,067 |
| PPCP Inc. | 14,272 | 14,272 | 2,098 | 1,206 | 2,098 | 03/23/2007 | 02/28/2010 | 86 | 80 | 0 |
| PPCP Inc. | 16,454 | 16,454 | 1,733 | 0 | 0 | 08/04/2009 | 05/28/2009 | 45 | 3 | 0 |
| PPCP, Inc. | 5,965 | 5,965 | 1,125 | 728 | 1,125 | 04/03/2007 | 04/03/2007 | 233 | 117 | 0 |
| Vivas & Associates, Inc. | 11,985 | 11,985 | 577 | 0 | 0 | 08/12/2009 | 04/10/2006 | 200 | 296 | 0 |
| TOTAL | $5,486,253 | $3,129,571 | | $427,070 | | | | $336,874 | $24,274 | $2,726,858 |

| SCHEDULE 5 | | | SCHEDULE OF PARTICIPATIONS AND JOINT FINANCINGS AS OF 06/30/2011 | | | | OMB Approval No. 3245-0063 Expiration Date 10/31/2007 |

Name of Licensee: ELK ASSOCIATES FUNDING CORP.      License No. 02/02-5377

**PART I. PARTICIPATIONS AND JOINT FINANCINGS INITIATED BY LICENSEE**

| 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 |
|---|---|---|---|---|---|---|---|
| Name of Small Business | L/D/E (1) | P/J (2) | Total Amount of Financing- original cost | Financing provided by Licensee- original cost | Financing provided by Licensee- current balance | Name of Co-investors | Did Licensee sell any interest with recourse? (3) |
| Andy Fur Dry Cleaning, Inc. | L | P | 60,000 | 60,000 | 12,103 | Pedcom Leasing Limited | N |
| Cleaners of North Beach, LLC | L | P | 170,000 | 170,000 | 0 | Hanam Capital Corp<br>Freshstart Venture Capital Corp<br>Venture Opportunities Corp LLC<br>D & B Portnoy/Ackerman Trustees<br>Milestone Growth Capital Corp<br>Medallion Funding Corp | N |
| Crown Cleaners of Miami Lakes | L | J | 154,000 | 154,000 | 0 | D & B Portnoy/Ackerman Trustee<br>Milestone Growth Fund<br>Hanam Capital Corp<br>Venture Opportunities LLC<br>Freshstart Venture Capital Corp | N |
| Crown Cleaners of Miami Lakes, | L | P | 30,000 | 30,000 | 0 | Milestone Growth Fund<br>Venture Opportunities, LLC<br>Hanam Capital Corp<br>Freshstart Venture Capital Corp | N |
| Golden Triangle EnterprisesLLC | L | P | 475,000 | 425,000 | 218,824 | Pinnacle Commercial Capital Corp | N |
| Goldhkin Wholesale Ent. Inc. | L | P | 800,000 | 800,000 | 0 | The OSG Group | N |




| SCHEDULE 5 | SCHEDULE OF PARTICIPATIONS AND JOINT FINANCINGS<br>AS OF 06/30/2011 | OMB Approval No. 3245-0063<br>Expiration Date  10/31/2007 |
|---|---|---|
| Name of Licensee:  ELK ASSOCIATES FUNDING CORP. | | License No.   02/02-5377 |

(1)  Indicate "L" for Loan, "D" for Debt, "E" for Equity.
(2)  Indicate "P" for Participation, "J" for Joint Financing (see "Instructions for Preparation of SBA Form 468" for defintions).
(3)  If yes, provide details on a separate sheet of paper.

| SCHEDULE 6 | SCHEDULE OF CASH AND INVESTED IDLE FUNDS<br>AS OF 06/30/2011 | OMB Approval No. 3245-0063<br>Expiration Date 10/31/2007 |
|---|---|---|

| Name of Licensee: ELK ASSOCIATES FUNDING CORP. | License No.   02/02-5377 |
|---|---|

**COMPLETE SCHEDULE ONLY IF LICENSEE HAS, OR PLANS TO APPLY FOR, SBA LEVERAGE**

### III. CERTIFICATES OF DEPOSIT ISSUED BY FEDERALLY - INSURED INSTITUTIONS

| Name and Location of Financial Institution | Maturity Date | Amount |
|---|---|---|
| | | |

### V. OTHER CASH AND INVESTED IDLE FUNDS

| Description | Maturity Date (if applicable) | Amount |
|---|---|---|
| CASH - Signature Bank | | 3,779,999 |
| CASH - Capital One Bank | | 1,006 |
| CASH - Israel Discount Bank -EAF Holding | | 1,080 |
| CASH - Bank Leumi | | 31,368 |
| CASH-Israel Discount Bank | | 137,702 |
| CASH-EAB/Citibank | | 182,487 |
| CASH - JP Morgan Chase | | 2,797 |
| TOTAL CASH, CASH EQUIVALENTS AND IDLE FUNDS<br>(total must agree with sum of lines 14 and 15, page 2C) | | $4,136,439 |

| SCHEDULE 7 | SCHEDULE OF ACTIVITY AS OF 06/30/2011 (Amount rounded to nearest dollar) | OMB Approval No. 3245-0063 Expiration Date 10/31/2007 |
|---|---|---|
| Name of Licensee:  ELK ASSOCIATES FUNDING CORP. | | License No.:  02/02-5377 |

### PART I.   FIRST ACTIVITY TEST

1. Cash & cash equivalents (page 2C, line 14)        4,136,439

2. Invested idle funds (page 2C, line 15)        0

3. Total cash and idle funds        4,136,439

4. Total Assets at Cost:

    a.  Total Assets (page 2C, line 29)        28,620,451

    b.  ADD:  Unrealized Depreciation (page 2C, line 10, col. 2)        2,403,759

    c.  LESS:  Unrealized Appreciation (page 2C, line 10, col. 3)        0

    d.  Total Assets at cost        31,024,210

5. Line 3 Divided by Line 4d (expressed as a percentage)        13.3%

IF LINE 5 IS LESS THAN OR EQUAL TO 20 PERCENT, LICENSEE IS NOT INACTIVE--
    DO NOT COMPLETE PART II
IF LINE 5 IS GREATER THAN 20%, COMPLETE THE SECOND ACTIVITY TEST IN PART II

### PART II   SECOND ACTIVITY TEST

6. Financings during past 18 months:

    a.  Loans        14,860,508

    b.  Debt        0

    c.  Equity        0

    d.  Guarantees        0

7. Total (lines 6a through 6d)        14,860,508

8. Regulatory Capital        10,629,155

9. Line 7 divided by line 8 (expressed as a percentage)        139.8%

IF LINE 9 IS LESS THAN 20%, LICENSEE MAY BE INACTIVE UNDER SECTION 107.590-
    ATTACH EXPLANATION OF INACTIVITY AND PLANNED CORRECTIVE ACTION.

| SCHEDULE 8 | SHAREHOLDERS, OFFICERS AND DIRECTORS, AND MANAGEMENT AS OF 06/30/2011 | | OMB Approval No. 3245-0063 Expiration Date 10/31/2007 |

| Name of Licensee:  ELK ASSOCIATES FUNDING CORP. | License No.:  02/02-5377 |

| 1 | 2 | 3 | 4 | 5 | 6 | |
|---|---|---|---|---|---|---|
| | | | | | % Owned or Controlled of Total Class Outstanding | |
| Name and Address | Officer/Director/ Manager -- give exact title(s) | Title of Class Owned or Controlled | Shares legally or beneficially owned or controled? | Number of Shares Owned or Controlled | Beginning of Period | End of Period |
| AMERITRANS CAPITAL CORPORATION 50 JERICHO QUADRANGLE JERICHO, NY 11753 | SHAREHOLDER | COMMON | Legally Owned | ALL | 100.00 | 100.00 |
| PETER BOOCKVAR 11 VANDERBILT DRIVE LIVINGSTON, NJ 07039 | DIRECTOR | N/A | Beneficially Owned | N/A | 0.00 | 0.00 |
| STEVE ETRA HEATHER HILLS ROAD BROOKVILLE, NY 11545 | DIRECTOR | N/A | Beneficially Owned | N/A | 0.00 | 0.00 |
| MICHAEL FEINSOD 60 THE INTERVALE ROSLYN, NY 11576 | CEO President | N/A | Beneficially Owned | N/A | 0.00 | 0.00 |
| Richard Feinstein 50 Jericho Quandrangle suite 109 Jericho, NY 11753 | CFO | | | N/A | 0.00 | 0.00 |
| GARY GRANOFF 2 FIR DRIVE GREAT NECK, NY 11024 | Chairman of the Board, Managing Director | N/A | Beneficially Owned | N/A | 0.00 | 0.00 |
| MURRAY INDICK 44 MONTGOMERY STREET SAN FRANCISCO, CA 94104 | DIRECTOR | N/A | Beneficially Owned | N/A | 0.00 | 0.00 |
| JOHN LAIRD 481 CANOE HILL ROAD NEW CANAAN, CT 06840 | DIRECTOR | N/A | Beneficially Owned | N/A | 0.00 | 0.00 |
| SILVIA MULLENS 15 SUNRISE DRIVE MORRIS PLAINS, NJ 07950 | EXECUTIVE VICE PRESIDENT AND SECRETARY | N/A | Beneficially Owned | N/A | 0.00 | 0.00 |

| SCHEDULE 8 | SHAREHOLDERS, OFFICERS AND DIRECTORS, AND MANAGEMENT AS OF 06/30/2011 | OMB Approval No. 3245-0063 Expiration Date 10/31/2007 |

Name of Licensee:  ELK ASSOCIATES FUNDING CORP.                    License No.:  02/02-5377

| 1 | 2 | 3 | 4 | 5 | 6 | |
|---|---|---|---|---|---|---|
| Name and Address | Officer/Director/ Manager -- give exact title(s) | Title of Class Owned or Controlled | Shares legally or beneficially owned or controled? | Number of Shares Owned or Controlled | % Owned or Controlled of Total Class Outstanding | |
| | | | | | Beginning of Period | End of Period |
| ELLIOTT SINGER 4101 GULF SHORE BLVD NORTH NAPLES, FL 34103 | DIRECTOR | N/A | Beneficially Owned | N/A | 0.00 | 0.00 |
| HOWARD SOMMER 120 BROADWAY NEW YORK, NY 10017 | DIRECTOR | N/A | Beneficially Owned | N/A | 0.00 | 0.00 |
| IVAN WOLPERT 19 FULTON STREET NEW YORK, NY 10038 | DIRECTOR | N/A | Beneficially Owned | N/A | 0.00 | 0.00 |

| OPERATING PLAN UPDATE | OMB Approval No. 3245-0063<br>Expiration Date  10/31/2007 |
|---|---|

**INSTRUCTIONS**

Any Licensee which has SBA leverage outstanding, or which expects to apply for leverage in the current fiscal year, must prepare an annual update of its plan of operations.  The update must be submitted to SBA as an addendum to the Licensee's Annual Financial Report on Form 468.  SBA will consider the information provided as part of its evaluation of the financial soundness of the Licensee, in accordance with the provisions of Section 406 of the Small Business Equity Enhancement Act.

The plan update must include analysis and discussion of key events of the past year, as well as expectations for the current year.  SBA expects that most Licensees will be able to provide the required information in a narrative of no more than 3 pages.

**Content of Report**

    1. For the fiscal year ended, the Licensee should discuss the following:
        a. Major positive and negative events which affected overall performance during the year; highlight any significant differences between last year's plan and actual performance
        b. Any significant changes in the operations of the Licensee, such as changes in organizational structure, scope of operations, level or phase of investment activity, or types of investments being made
        c. Any management changes
        d. Any lawsuits or other events giving rise to contingent liabilities

    2. For the current fiscal year, the Licensee should discuss the following:
        a. Levels of new and follow-on investment anticipated
        b. Anticipated exits from investments
        c. Any material changes expected in investment strategy or portfolio composition
        d. Any material changes expected in overhead expenditures
        e. Any changes expected in management
        f. Any other anticipated events which may have a significant effect on Licensee's performance

ADDENDUM TO ANNUAL FINANCIAL REPORT ON FORM 468
FOR
ELK ASSOCIATES FUNDING CORPORATION
FOR THE FISCAL YEAR ENDED JUNE 30, 2011

ANNUAL UPDATE OF OPERATIONS

During the fiscal year ended June 30, 2011, the Licensee continued to service and administer its loan portfolio. In December 2009, the SBA approved additional debentures aggregating $9,175,000 (the "Additional Debentures"), which the Licensee drew down at that time. The interest rate on these debentures was established in March 2010 at 4.11%. The Licensee's bank lines of credit, which aggregated $28,000,000, were substantially paid off in October 2008, with a balance remaining of $370,000 at October 31, 2010. This balance, $120,000 of which was with Bank Leumi and $250,000 of which was with Israel Discount Bank, remained outstanding through the rest of the fiscal year and were each fully paid off at August 31, 2010.

Total assets decreased by $1,455,418 from $30,075,869 in fiscal 2010 to $28,620,451 in fiscal 2011 and cash decreased by $3,207,562 during the same period, from $7,344,001in fiscal 2010 to $4,136,439 in fiscal 2011. The decrease in cash was significantly attributable to the Additional Debentures' proceeds that had not been deployed as of June 30, 2010, which were invested in fiscal 2011. Due to the current economic conditions and other factors, including the Licensee's sensitivity to credit quality, the Licensee has continued with the extensive process it had developed to source and qualify potential loan candidates. The process is detailed and time-consuming and, at times, eliminated various transactions in the pipeline that did not meet the Licensee's underwriting criteria. As a result of improved underwriting, the quality of the Licensee's loan portfolio has improved, but, fewer loan candidates are accepted and the period of time from initial contact to loan close has expanded. In its fiscal year 2011, the Licensee funded nine new loans aggregating approximately $12.0 million in principal with interest rates ranging from 7.5% to 12.0% and a combined weighted average of 10.2%. The loans funded in the Licensee's 2011 fiscal year employed all of the loan proceeds from the December 2009 Additional Debentures plus receipts from paydowns of existing loans as well as the sale of an existing loan.

Total liabilities decreased by $81,745 to $21,996,117 in fiscal 2011 from $22,077,862 in fiscal 2010. This decrease was the result of a reduction in notes payable of $370,000, partially, offset by an increase in accounts payable of $263,217 and an increase in interest payable of $25,038.

Total capital of the Licensee decreased by $1,373,673 to $6,624,334 in fiscal 2011 from $7,998,007 in fiscal 2010.

Gross income increased to $2,064,920 in the current fiscal year ended June 30, 2011 from $1,775,588 in the prior fiscal year. All of this net increase in gross income of $289,332 is attributable to the use of proceeds from the Additional Debentures. The

current year's net loss of $1,010,290 is comprised of a net investment loss of $631,067 and a net realized loss on investments of $379,223, as compared with a net loss in fiscal 2010 of $1,443,741 that was comprised of an investment loss of $1,461,483 and a net realized gain on investments of $17,742.

Total interest costs incurred by the Licensee increased by $243,538 in fiscal 2011 to $1,030,776 from $787,238 in the 2010 fiscal year. This increase in interest expense is primarily attributable to the Additional Debentures that were issued in December 2009 having been in place for a full year in fiscal 2011.

For the past three and a half years, the Licensee has experienced significant operating losses. This has been due, primarily, to two factors:

- A high contractual cost structure that could not be reduced quickly following the sale of the taxi medallion portfolio; and
- The general slowdown of the economy and the decrease in interest rates.

Management of the Licensee is focused on returning to profitability while avoiding credit losses. Among the recent steps that have been taken in this regard are those that are reducing the Licensee's cost structure. Significant reductions include the following:

- Total officers' and employees' compensation and benefits have decreased by $589,779 (57%) to $446,203 in fiscal 2011 from $1,035,982 in fiscal 2010, primarily from a reduction in staff. This significant reduction was effected even with the payment of substantial severance fees.
- Advertising and promotion expense in fiscal 2011 decreased $2,266 (20%) to $8,978 in fiscal 2011 from $11,244 in fiscal 2010 as the Licensee curtailed unnecessary activities in this area.
- Cost of space decreased by $255,338 (75%) to $85,837 in fiscal 2011, from $341,175 in fiscal 2010, primarily due to the Licensee's move of its headquarters office and its other facilities to less expensive space and termination of a storage facility, as well as the absence of a one-time $130,000 charge in fiscal 2010 for cancelation of a lease in connection with the Licensee's moves.
- Audit and examination fees decreased $43,764 (13%) to $301,703 in fiscal 2011 from $345,467 in fiscal 2010. In fiscal 2011, the Licensee had fewer loans in its portfolio and was more efficient.

Although these net decreases, aggregating $891,147, were substantial, they were, partially, offset by unavoidable increases, aggregating $216,225, as follows:

- Legal fees increased $125,935 (248%) to $176,781 in fiscal 2011 from $50,846 in fiscal 2010. In fiscal 2011, as part of its plans to become compliant with the SBA capital requirements, the Licensee entered into a stock purchase transaction (the "Renova Transaction") with an independent investor. In connection with the negotiations, investigations and completion of the related agreements, the Licensee incurred substantial legal fees.

Additionally, the Licensee incurred legal fees in connection with the terminations of some of its former officers.

- Directors and stockholders meeting expense increased $80,769 (112%) to $152,570 in fiscal 2011 from $71,801 in fiscal 2010. This was the direct result of the additional meetings required to analyze and approve the Renova Transaction and, to a lesser extent, the meetings necessary to review and approve the terminations of some of the Licensee's former officers.
- Miscellaneous expenses had a small net increase of $9,521 (3%) to $321,617 in fiscal 2011 from $312,096 in fiscal 2010 that was primarily attributable to increases in loan costs.

There was a net decrease in depreciation and amortization of $10,355 (12%) to $78,294 in fiscal 2011 from $88,649 in fiscal 2010. This small net decrease is primarily attributable to a decrease in depreciation and amortization associated with the Licensee's fixed assets and leasehold improvements as a result of its office relocation as, partially, offset by an increase in loan amortization associated with the Additional Debentures.

The Licensee intends to continue its cost reduction and has implemented steps to do so, including optimizing its staffing levels and moving other management expenses to its parent company.

The balance of the Licensee's loan and investment portfolio at the end of its most recent fiscal year, June 30, 2011, of $20,669,910 shows a small decrease of $510,239 (2%) from the balance at the end of its 2010 fiscal year of $21,180,149. This is the net result of the runoff and sale of some legacy loans in favor of new loans, mostly funded with the proceeds of the Additional Debentures.

The Licensee's outstanding indebtedness to the SBA was unchanged at $21,175,000 at June 30, 2011 from June 30, 2010. The Licensee's notes and debentures payable to others decreased by $370,000 to $0 at June 30, 2011 from $370,000 at June 30, 2010, with $120,000 being paid to Bank Leumi and $250,000 paid to Israel Discount Bank in fiscal 2011.

With respect to the Licensee's portfolio performance, it should be noted that it is comprised, primarily, of two major components: Commercial loan portfolio and Corporate loan portfolio. The Commercial loan portfolio is, mostly, legacy loans and it has experienced significant payment defaults. Historical results had been supported primarily by the taxi medallion loans. This portfolio has more recently been adversely impacted by the decline in general economic conditions. In particular, this portfolio had significant exposure to the construction industry in the New York metropolitan area. The weighted average yield for this portfolio at June 30, 2011 is, approximately, 9.0%. Historically, weaker loan monitoring, due to the difficulty in acquiring current financial information related to the performance of the borrowers that comprised the legacy loan segment of the Commercial loan portfolio, led to a slow response to declining credit quality of buyers. The pre-2006 loans continue to reduce the performance of the portfolio. It is anticipated that the runoff of these loans will be completed by the end of fiscal 2012. Currently,

approximately 47% of these loans are on non-accrual status and principal reserves have been taken where current market value of collateral justifies reduction.

The Corporate loan portfolio has expanded and performed within expectations. This portfolio, from its inception, has been subject to the stringent due diligence process and credit worthiness assessments. The average yield on this portfolio is in excess of 11% and it is characterized by a low default rate.

The Licensee has now constructed a portfolio of predominantly senior secured loans to middle market companies. This is leading to more consistent cash flow and performance across the portfolio. At June 30, 2011 approximately 82% of the Licensee's loans are performing and on accrual with the other approximate 18% on non-accrual. The majority of these loans on non-accrual status are secured by real estate that the Licensee intends to recover and sell in the next twelve months.

In the entire loan portfolio, at June 30, 2011, the average loan size is approximately $656,000, as compared with the average loan amount of $582,000 in fiscal 2010. (Note that this has grown from an average loan size of approximately $80,000 in fiscal 2006.) Significantly, the average loan in the Corporate loan portfolio is approximately $1.2 million. This larger investment amount allows the Licensee to gain more efficiency in underwriting and monitoring. As such, the Licensee focuses on a broad-based, diversified portfolio, with no overline investments and little industry or geographic concentrations. The Corporate loan portfolio has a lower incidence of payment defaults and higher recovery rates than historical Commercial loans. These results are primarily due to (i) the strict underwriting criteria and related due diligence, (ii) the fact that the sophisticated borrowers and junior investors are quick to take action to protect equity, and (iii) benefits run to senior lenders that all lead to quick and proactive workouts with little diminution of value to the Licensee's collateral.

The Licensee's future growth is dependent on its strategy to make additional loans underwritten with its new stringent standards that will result in higher quality borrowers and better performing loans. The dislocation of banks, currently, creates continued opportunities for the Licensee in this niche which management of the Licensee expects will continue. The ability of the Licensee to execute its strategy and take advantage of its opportunities is dependent on the Licensee's ability to raise additional financing.

To this end, management of the Licensee believes that additional equity capital will permit it to return to profitability and compliance with the SBA capital requirements. As noted above, on April 12, 2011, the Licensee's parent, Ameritrans Capital Corporation ("Ameritrans") entered into a Stock Purchase Agreement (the "Renova Purchase Agreement") with Renova US Holdings Ltd. ("Renova") the purpose of which is to obtain sufficient capital to enable the Licensee to return to profitability and compliance with the SBA's capital requirements. Subject to the terms and conditions set forth in the Renova Purchase Agreement, Ameritrans agreed to issue and sell to Renova, and Renova agreed to purchase, (i) $25,000,000 of Common Stock of Ameritrans (the "Initial Purchased Stock") at a price per share equal to the greater of $1.80 and the then-prevailing per share net asset value of

Ameritrans at the time of issuance (as determined in accordance with the terms of the Renova Purchase Agreement) (the "Applicable Per Share Purchase Price"), at an initial closing (the "Initial Closing") to be held no later than November 30, 2011 following satisfaction or waiver of the conditions to such issuance and (ii) between an additional $35,000,000 to $40,000,000 of additional Common Stock (depending upon the timing of such purchases) at the Applicable Per Share Purchased Price (the "Additional Purchased Stock" and together with the Initial Purchased Stock, the "Purchased Stock") at subsequent closings (each, a "Subsequent Closing") to be held from time to time, subject to satisfaction of the conditions to such issuances, between the date of the Initial Closing and the second anniversary of the Initial Closing based upon the terms and conditions set forth in the Renova Purchase Agreement.

On September 19, 2011, the Licensee received a letter from the SBA describing certain concerns related to its change of ownership and control application and requesting certain additional pieces of information. In particular, the SBA has informed Licensee that the proposed transaction, as currently structured, would not satisfy applicable SBA management-ownership diversity requirements. While the Licensee continues to believe that the transaction satisfies SBA diversity requirements, to date the SBA has not concurred with that view. The Licensee intends to continue discussions with the SBA on its diversity interpretation and is also discussing with Renova potential modifications to the terms of the Transaction in order to satisfy the SBA's interpretation of those requirements. There is no assurance that the SBA will modify its position, that The Ameritrans and Renova will be able to reach agreement on revised terms or that the revised terms would satisfy the SBA. In such event, the Licensee would need to actively seek an alternative source of capital.

Subsequently, the Licensee will look to the SBA for additional debenture funding in an amount or amounts to be determined. However, in connection with its consideration of the Renova Transactions, the SBA has indicated that it may restrict the Licensee's ability to access SBA leverage until a date, as yet undetermined, to allow SBA to assess its performance following the change in ownership and control contemplated by the Renova Transactions.

In December 2010, the SBA conducted an audit of the Licensee for the period October 1, 2009 through September 30, 2010. As a result of this audit the Licensee received its third consecutive "no finding" letter from the SBA.
There were no management changes in fiscal 2011 other than Michael Feinsod relinquished the position of Interim Chief Financial Officer after his successor, Richard L. Feinstein (who was engaged by the Licensee in September 2010), was approved as an officer by the SBA. During fiscal 2011, Margaret Chance, Vice-President and former Secretary of the Licensee; Lee Forlenza, Senior Vice-President of the Licensee; and Ellen Walker, Executive Vice-President of the Licensee, were terminated.

There was no change during fiscal 2011 in the manner in which the Licensee conducted its customary business operations. However, as described above, more

stringent loan requirements and due diligence procedures were employed to both accept borrowers and monitor loan performance.

The Licensee is not currently a party to any material legal proceeding.  From time to time, it is engaged in various legal proceedings incident to the ordinary course of its business. In the opinion of its management and based upon the advice of legal counsel, there is no proceeding pending, or, to the knowledge of the Licensee's management, threatened, which, in the event of an adverse decision, would result in a material adverse effect on the Licensee's results of operations or its financial condition.

The Licensee anticipates that it will continue to operate in its current mode of operations during the current fiscal year ending June 30, 2012. The Licensee plans to continue its strategy of making new Corporate and Commercial loans to high quality borrowers and will continue to collect on its existing loan portfolio and, as necessary, realize proceeds from its collateral. As noted, above, and as part of its strategy, the Licensee expects an equity infusion from its parent company during fiscal 2012 and plans to begin to immediately begin utilizing such capital to make new loans. However, the capital infusion from the Licensee's parent is dependent, in part, upon the successful completion of the Licensee's parent company's Renova Transaction. Such success is not assured and to the extent such offering is not completed or is completed at a lesser gross amount of proceeds than contemplated, the amount that the parent can invest in the Licensee will be diminished. Consequently, the Licensee's ability to grow its loan portfolio during the succeeding fiscal year may be limited by its parent's ability to raise capital.

Management of the Licensee anticipates that, while there will be no material changes in its overhead structure, cost-cutting and efficiency procedures will continue to be implemented and are expected to result in a general decrease of overhead.



| | | | ECONOMIC DATA FOR PORTFOLIO CONCERNS (unaudited) | | | | OMB Approval No. 3245-0063 Expiration Date 10/31/2007 |

**Name of Licensee:  ELK ASSOCIATES FUNDING CORP.**  License No.   02/02-5377

| 1 | 2 | 3 | 4 | | 5 | 6 | 7 | 8 |
|---|---|---|---|---|---|---|---|---|
| Name of Portfolio Concern and Employer ID Number | Most recent fiscal year end (Mo./Year) | Full-time equivalent employees at fiscal year end | Income taxes paid during most recent fiscal year: | | Total employee income tax withholding for fiscal year: | | Gross revenue for most recent fiscal year | After-tax profit(loss) for most recent fiscal year |
| | | | Federal | State and Local | Federal | State and Local | | |
| Affinity Group Inc. Emp. ID:  13-3377709 | 12/31/2010 | 1,565 | 0 | 0 | 0 | 0 | 470,700,000 | -18,773,000 |
| Alpha Media Group Inc. Emp. ID:  13-3927614 | 12/31/2010 | 310 | 0 | 0 | 0 | 0 | 6,542,289 | -830,426 |
| Andy Fur Dry Cleaning, Inc. Emp. ID: | | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Artwork Emp. ID: | | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Centerplate Inc. Emp. ID:  57-0969174 | 12/31/2010 | 800 | 568,000 | 0 | 0 | 0 | 778,270,000 | -19,651,000 |
| Charlie Brown's Acquisition Co Emp. ID:  13-3948367 | 09/26/2010 | 4,900 | 190,501 | 24,765 | 2,295,928 | 298,500 | 178,114,000 | -17,204,000 |
| Claude Angrand #671 Emp. ID: | | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Conklin Svcs.&Construction Inc Emp. ID: | | 0 | 0 | 0 | 0 | 0 | 0 | 0 |

Page 22C



| ECONOMIC DATA FOR PORTFOLIO CONCERNS (unaudited) | | | | | | OMB Approval No. 3245-0063 Expiration Date 10/31/2007 | |
|---|---|---|---|---|---|---|---|

Name of Licensee:  ELK ASSOCIATES FUNDING CORP.                                   License No.    02/02-5377

| 1 | 2 | 3 | 4 | | 5 | 6 | 7 | 8 |
|---|---|---|---|---|---|---|---|---|
| Name of Portfolio Concern and Employer ID Number | Most recent fiscal year end (Mo./Year) | Full-time equivalent employees at fiscal year end | Income taxes paid during most recent fiscal year: | | Total employee income tax withholding for fiscal year: | | Gross revenue for most recent fiscal year | After-tax profit(loss) for most recent fiscal year |
| | | | Federal | State and Local | Federal | State and Local | | |
| E&Y General Construction Co. Emp. ID: | 12/31/2009 | 2 | 0 | 0 | 3,996 | 2,057 | 500,000 | 0 |
| Education Affiliates Inc. (BMO) Emp. ID: 20-1589793 | 12/31/2010 | 2,369 | 12,140,000 | 5,362,940 | 14,692,912 | 3,810,042 | 376,386,816 | 11,961,784 |
| Education Affiliates Inc. (GE) Emp. ID: 20-1589793 | 12/31/2010 | 2,369 | 12,140,000 | 5,362,940 | 14,692,912 | 3,810,042 | 376,386,816 | 11,961,784 |
| Eragen Bioscience Emp. ID: 59-3564685 | 12/31/2010 | 64 | 0 | 0 | 698,200 | 244,400 | 11,700,000 | -1,500,000 |
| Fairway Group Acquisition Company Emp. ID: 20-5942788 | 06/30/2011 | 4,000 | 0 | 0 | 0 | 0 | 488,512,000 | -21,186,000 |
| Fusion Telecommunications Int. Emp. ID: 58-2342021 | 12/31/2010 | 56 | 0 | 0 | 0 | 0 | 41,763,002 | -5,799,480 |
| Geronimo ATM Fund LLC Emp. ID: | | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Golden Triangle EnterprisesLLC Emp. ID: | | 0 | 0 | 0 | 0 | 0 | 0 | 0 |

**ECONOMIC DATA FOR PORTFOLIO CONCERNS**
(unaudited)

OMB Approval No. 3245-0063
Expiration Date  10/31/2007

Name of Licensee:  ELK ASSOCIATES FUNDING CORP.

License No.   02/02-5377

| 1 | 2 | 3 | 4 | | 5 | 6 | 7 | 8 |
|---|---|---|---|---|---|---|---|---|
| Name of Portfolio Concern and Employer ID Number | Most recent fiscal year end (Mo./Year) | Full-time equivalent employees at fiscal year end | Income taxes paid during most recent fiscal year: | | Total employee income tax withholding for fiscal year: | | Gross revenue for most recent fiscal year | After-tax profit(loss) for most recent fiscal year |
| | | | Federal | State and Local | Federal | State and Local | | |
| Greaves-Peters Laundry Systems Emp. ID: | | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Hudson Products Holdings Inc. Emp. ID:  20-5908912 | 12/31/2010 | 586 | 0 | 321,000 | 2,524,000 | 220,000 | 171,705,000 | -12,300,000 |
| Impact Confections Inc. Emp. ID:  85-0308777 | 12/31/2010 | 193 | 0 | 54,938 | 641,194 | 229,238 | 37,910,398 | -4,232,307 |
| Miramax Film NY LLC Emp. ID:  27-3102725 | | 49 | 0 | 0 | 0 | 0 | 0 | 0 |
| Mountain View Bar & Grill Inc. Emp. ID: | | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Patroon Operating Co. LLC Emp. ID:  13-3857372 | 12/31/2009 | 50 | 0 | 0 | 213,093 | 157,665 | 4,800,000 | -341,025 |
| PPCP Inc. Emp. ID: | | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| PPCP, Inc. Emp. ID: | | 0 | 0 | 0 | 0 | 0 | 0 | 0 |



| | | | ECONOMIC DATA FOR PORTFOLIO CONCERNS (unaudited) | | | | | OMB Approval No. 3245-0063 Expiration Date 10/31/2007 |

Name of Licensee:  ELK ASSOCIATES FUNDING CORP.          License No.   02/02-5377

| 1 | 2 | 3 | 4 | | 5 | 6 | 7 | 8 |
|---|---|---|---|---|---|---|---|---|
| Name of Portfolio Concern and Employer ID Number | Most recent fiscal year end (Mo./Year) | Full-time equivalent employees at fiscal year end | Income taxes paid during most recent fiscal year: | | Total employee income tax withholding for fiscal year: | | Gross revenue for most recent fiscal year | After-tax profit(loss) for most recent fiscal year |
| | | | Federal | State and Local | Federal | State and Local | | |
| Receivables reclass as Loan Emp. ID: | | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Resco Products Inc. Emp. ID: 23-1279448 | 12/31/2010 | 610 | 0 | 60,586 | 2,347,151 | 790,949 | 169,041,000 | 2,926,000 |
| Sealmax Inc. Emp. ID: | | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Shearer's Foods Inc. Emp. ID: 34-1319359 | 09/25/2010 | 1,481 | 570,030 | 0 | 4,446,000 | 1,569,000 | 303,304,000 | -4,675,000 |
| Soundview Broadcasting LLC Emp. ID: 20-0806825 | 12/31/2010 | 28 | 194,615 | 49,815 | 194,615 | 49,815 | 4,385,921 | -564,993 |
| Syncsort Incorporated Emp. ID: 22-1854351 | 12/31/2010 | 286 | 0 | 369,766 | 6,569,660 | 1,757,891 | 92,960,000 | -43,410,000 |
| Treasury Stock Acquired Emp. ID: | | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Vivas & Associates, Inc. Emp. ID: | | 0 | 0 | 0 | 0 | 0 | 0 | 0 |



| ECONOMIC DATA FOR PORTFOLIO CONCERNS (unaudited) | | | | | | OMB Approval No. 3245-0063 Expiration Date 10/31/2007 | |
|---|---|---|---|---|---|---|---|

Name of Licensee:  ELK ASSOCIATES FUNDING CORP.                      License No.    02/02-5377

| 1 | 2 | 3 | 4 | | 5 | 6 | 7 | 8 |
|---|---|---|---|---|---|---|---|---|
| Name of Portfolio Concern and Employer ID Number | Most recent fiscal year end (Mo./Year) | Full-time equivalent employees at fiscal year end | Income taxes paid during most recent fiscal year: | | Total employee income tax withholding for fiscal year: | | Gross revenue for most recent fiscal year | After-tax profit(loss) for most recent fiscal year |
| | | | Federal | State and Local | Federal | State and Local | | |
| W.L.E.J. Inc. Emp. ID:  80-0260955 | 12/31/2009 | 0 | 0 | 0 | 0 | 0 | 35,100 | -80 |

# CERTIFICATIONS

OMB Approval No. 3245-0063
Expiration Date 10/31/2007

Name of Licensee: ELK ASSOCIATES FUNDING CORP.  License No.  02/02-5377

## MANAGEMENT CERTIFICATION

I, Richard Feinstein _____, the Chief Financial Offier of ELK ASSOCIATES FUNDING CORP. (Licensee), do hereby certify as follows:

1. The audited Annual Financial Report for the fiscal year ended 06/30/2011 submitted by ELK ASSOCIATES FUNDING CORP. _____ (Licensee) to the Small Business Administration on SBA Form 468 is true and correct in all aspects. The statements and schedules listed below have been omitted from the submission.

2. ELK ASSOCIATES FUNDING CORP. _____ (Licensee) has filed all federal, state and local tax returns required through the date hereof, including but not limited to income and payroll tax returns.

STATEMENTS AND SCHEDULES OMITTED:

Date:  09/28/2011    By: _____

Name:  Richard Feinstein
Title:   Chief Financial Officer

## SECRETARY'S CERTIFICATION

I, Silvia Mullens _____ the duly elected, qualified and acting Secretary of ELK ASSOCIATES FUNDING CORP. _____ (Licensee), do hereby certify as follows:

1. ELK ASSOCIATES FUNDING CORP. _____ (Licensee) is in good standing under the laws of the State of New York _____

2. The minutes of the meeting of the Board of Directors of ELK ASSOCIATES FUNDING CORP. _____ (Licensee) on 09/27/2011 , document that the Board at such meeting, reviewed and approved the audited Annual Financial Report of such company for the fiscal year ended 06/30/2011 _____

Date:  09/28/2011    By: _____

Name:  Silvia Mullens
Title:   Secretary

Title 18, Sections 1001 and 1006 of the U.S. Code subjects to punishment by fine and/or imprisonment any person who makes any oral or written statement, entry or representation to SBA, knowing it to be false, or willfully conceals a material fact, in a matter within SBA's jurisdiction or who with intent to defraud shares, directly or indirectly, any benefits derived from any act of an SBIC. Title 15, Section 645(a) subjects to punishment by fine and/or imprisonment any person making a false statement or willfully overvaluing any security, for the purpose of obtaining for himself or another any loan, extension thereof, or the acceptance, release or substitution of security therefor, or for the purpose of influencing in any way the action of SBA, or for the  purpose of obtaining money or anything of value.

# Exhibit Q

# *STATE OF NEW YORK*

# *DEPARTMENT OF STATE*

I hereby certify that the annexed copy has been compared with the original document in the custody of the Secretary of State and that the same is a true copy of said original.



WITNESS my hand and official seal of the Department of State, at the City of Albany, on September 23, 2016.

Brendan Fitzgerald
Executive Deputy Secretary of State

Rev. 09/16

CERTIFICATE OF INCORPORATION

ELK ASSOCIATES FUNDING CORPORATION

Under Section 402 of the Business Corporation Law

The undersigned, for the purpose of forming a
corporation pursuant to Section 402 of the Business Corporation
Law of the State of New York, does hereby certify and set
forth:

FIRST:   The name of the corporation is ELK
ASSOCIATES FUNDING CORPORATION.

SECOND:   As used in this Certificate of
Incorporation, the term "Act" means the Small Business
Investment Act of 1958, as amended.

THIRD.   This corporation is organized and
chartered solely for the purpose of performing the
functions and conducting the activities contemplated
under the Small Business Investment Act of 1958, as
amended from time to time, and will provide assistance
solely to small business concerns which will contribute
to a well-balanced national economy by facilitating
ownership in such concerns by persons whose participation

A588859

in the free enterprise system is hampered because of social or economic disadvantages.

In accordance with the aforesaid statement of purposes of this corporation, this corporation shall have the following powers and authorities to carry out said purposes:

(a)  To operate under the name set forth in FIRST above and to operate solely as a small business investment company qualified under Section 301(d) of the Act;

(b)  To issue in consideration for cash or such other consideration permitted by the Regulations the number of shares or stock indicated in Paragraph FOURTH herein;

(c)  To borrow money and issue its debenture bonds, promissory notes, or other obligations under such general conditions and subject to such limitations and regulations as the Small Business Administration may prescribe;

(d)  To provide equity capital to small business concerns (as defined by the Small Business Administration) under conditions authorized by Section 304 of the Act and pertinent sections of the Regulations, with the right to sell or dispose of securities so acquired in such manner and under such terms and conditions as the Licensee shall determine;

(e)  To make long-term loans (as defined by the Small Business Administration) to small business concerns (as defined by the Small Business Administration) for the purposes and in the manner and subject to the conditions described in Section 305 of the Act, with the right to sell or dispose of such loans in such manner and under such terms and conditions as the Company shall determine;

(f)  To acquire and make commitments for obligations and securities of a single enterprise only within the limitations established by Section 306 of the Act, unless such limitations are waived by the Small Business Administration;

-2-

(g)  To undertake its operations in cooperation with banks or other financial institutions, as contemplated under Section 308(a) of the Act;

(h)  To provide consulting and advisory services to small business concerns on a fee basis;

(i)  To invest funds not reasonably needed for its current operations only in direct obligations of, or obligations guaranteed as to principal and interest by, the United States Government;

(j)  To conduct its operations in accordance with and subject to regulations prescribed by the Small Business Administration;

(k)  To submit to and pay for examinations made by direction of the Small Business Administration by examiners selected, employed or approved by the Small Business Administration;

(l)  To make reports to the Small Business Administration at such time and in such form as the Small Business Administration may require;

(m)  To conduct its operation under the Act in the County of Nassau, State of New York, without limitation however, as to the residence, domicile, or place of business of parties with which it transacts its business, or otherwise deals in accordance with regulations issued by SBA;

(n)  To regulate its business and conduct its affairs in a manner not inconsistent with the Act and regulations prescribed by the Small Business Administration thereunder;

(o)  To adopt and use a corporate seal;

(p)  To have succession for a period of not less than thirty (30) years subject to dissolution in accordance with the laws of the State of New York and subject to forfeiture of its license from the Small Business Administration for violation of law or of regulations issued under the Act;

(q)  To make contracts;

(r)  To sue and be sued, complain and defend in any court of law or equity;

-3-

(s)  By its Board of Directors, to appoint such officers and employees as may be deemed proper, define their authority and duties, fix their compensation, require bonds of such of them as it deems advisable and fix the penalty thereof, dismiss such officers or employees, or any thereof, at pleasure, and appoint others to fill their places.

(t)  To adopt by-laws regulating the manner in which its stock shall be transferred, its officers and employees appointed, its property transferred, and the privileges granted to it by law exercised and enjoyed;

(u)  To maintain its principal office at 2 Fir Drive, Great Neck, New York and to establish branch offices or agencies within its operating territory subject to the approval of the Small Business Administration.

(v)  To acquire, hold, operate and dispose of any property (real, personal or mixed) whenever necessary or appropriate to the carrying out of its lawful functions;

(w)  To exercise such incidental powers as may reasonably be necessary to carry out the business for which the corporation is established.

FOURTH.  The total number of authorized shares of capital stock of this corporation shall consist of 86,000 shares of which 85,000 shares shall be preferred stock having a par value of $10.00 each and 1,000 shares shall be common stock having no par value.  The designation of each class, the number of shares of each class and the par value, if any, of the shares of each class, are as follows:

-4-

| NUMBER OF SHARES | CLASS | PAR VALUE PER SHARE |
|---|---|---|
| 85,000 | Preferred | $10.00 |
| 1,000 | Common | No Par Value |

FIFTH:  The designation, preferences, privileges
and voting powers of the shares of each class of shares of
capital stock which the corporation is authorized to issue
and the restrictions or qualifications thereof, shall be
as follows:

(a)  PREFERRED STOCK

(i)  Issuance of Preferred Stock to Small Business
Administration and Preferred Stockholders Right of Dividend
Payments.  Preferred stock may only be issued to the Govern-
ment of the United States of America Small Business Administra-
tion pursuant to applicable provisions of the Small Business
Investment Act of 1958, as amended, and the regulations
promulgated thereunder.  Subject to the sound discretion
of the Board of Directors, the Small Business Administration
shall be paid from the retained earnings of the corporation,
an annual dividend of three (3%) percent of the par value
of its preferred stock, payable from the date of issuance.
Such dividends shall be payable on a preferred and cumulative
basis so that no amount shall be set aside or paid to any
other class of stock until the full amount of dividends due

-5-

the Small Business Administration at the annual rate of three (3%) percent cumulated to the intended date of payment, shall have been paid to the Small Business Administration.

(ii) <u>Redemption Rights</u>. The corporation may, at its option, redeem the whole or any part of the Small Business Administration's outstanding preferred stock on any dividend payment date where at least thirty (30) days prior written notice has been given to the Small Business Administration. The corporation shall pay the Small Business Administration the par value of the shares to be redeemed ($50,000.00 minimum per transaction), and accumulated dividends.

(iii) <u>Redemption, Liquidation or Distribution of Assets</u>. Before any redemption of stock not purchased by the Small Business Administration, or liquidation in whole or in part, or any distribution of assets to other stockholders, the Small Business Administration shall be entitled to preferred payment in full of the amounts stated in FOURTH (a)(i) above and the par value of its preferred stock issued and outstanding. Notwithstanding the foregoing, such par value need not be paid to the Small Business Administration before the distribution of ordinary dividends from retained earnings to other shareholders.

(iv) The Small Business Administration shall not be entitled to vote on any matters for which a vote of the share-

-6-

holders of the corporation may be sought

B.  COMMON STOCK

The voting power of shares of capital stock in this corporation shall be vested solely in the shares of common capital stock and the preferred capital stock shall have no voting power whatsoever.  Subsequent to payment of the amounts due in accordance with this Paragraph FIFTH (A) of this Certificate of Incorporation to the Small Business Administration on account of its preferred stock hereinabove described (or other obligations currently due the Small Business Administration in accordance with applicable SBA Regulations), the common stockholders shall be entitled to receive dividends and distributions on a share and share alike basis when, as and if declared by the Board of Directors of the corporation.

SIXTH:  This Certificate of Incorporation shall not be amended without the prior written approval of the Small Business Administration.

SEVENTH:  The office of the corporation is to be located in the Town of North Hampstead, County of Nassau, State of New York.

EIGHTH:  The Secretary of State is designated as agent of the corporation whom process against it may be served.  The post office address to which the Secretary of State shall mail a copy of any process against the corporation served upon him is:

-7-

GARY C. GRANOFF, ESQ
2 Park Avenue, Suite 2204
New York, New York   10016

NINTH:  The fiscal year of this corporation
shall terminate on May 31.

IN WITNESS WHEREOF, this certificate has been
subscribed to this 25th day of June, 1979, by the undersigned
who affirms that the statements made herein are true under
the penalties of perjury.

GARY C. GRANOFF
2 Park Avenue
New York, New York

### NYS DEPARTMENT OF STATE

FILING RECEIPT — NAME RESERVATION (BUSINESS)

CORPORATION NAME

LEA ASSOCIATES FUND, INCORPORATED (GOOD FOR 60 DAYS)

| DATE FILED | DURATION & COUNTY CODE | FILM NUMBER | CASH NUMBER |
|---|---|---|---|
| 05/22/79 | | 790522-1 | 671053 |

| NUMBER AND KIND OF SHARES | LOCATION OF PRINCIPAL OFFICE |
|---|---|

COMMENTS:

FOR GARY GRANOFF (SUBMIT THIS COPY WHEN FILING)
GN

| ADDRESS FOR PROCESS | REGISTERED AGENT |
|---|---|

FEES AND/OR TAX PAID AS FOLLOWS:

AMOUNT OF CHECK $ 00010.00    AMOUNT OF MONEY ORDER $ _____    AMOUNT OF CASH $ _____

$ _____ DOLLAR FEE TO COUNTY

| | |
|---|---|
| | FILING |
| | TAX |
| | CERTIFIED COPY |
| | CERTIFICATE 10.30 |

FILER NAME AND ADDRESS

GARY GRANOFF
2 PARK AVE

NEW YORK          NY 10016

TOTAL PAYMENT $ 0000010.00

REFUND OF $ _____

TO FOLLOW

G030-518 (1/78)          BASIL A PATERSON — SECRETARY OF STATE

A588859

CERTIFICATE OF INCORPORATION

OF

ELK ASSOCIATES FUNDING CORPORATION

STATE OF NEW YORK
DEPARTMENT OF STATE
FILED   JUL - 9 1979

AMT
FILING
TAX $
COPY $
CERT $
REFUND $

BY:

383958

Filed by:

Gary C. Granoff
Attorney at Law
2 Park Avenue
Suite 2204
New York, N.Y. 10016
683-6360

# Exhibit R

Amendment to Bylaws

[1.2.1.1.7] [EAFC Amend Bylaws 1982.1.8.pdf] [Page 1 of 3]

UNANIMOUS WRITTEN CONSENT
OF THE
COMMON STOCKHOLDERS
OF
ELK ASSOCIATES FUNDING CORPORATION

The undersigned, being all of the holders of the Common Stock of ELK ASSOCIATES FUNDING CORPORATION (the "Company"), do hereby consent to, adopt and approve the following resolutions:

RESOLVED, that, subject to the approval of the Small Business Administration of the United States (if required by applicable federal regulation), the Certificate of Incorporation of the Company be amended to (a) provide for the elimination of any and all preemptive rights of the holders of the shares of the Common Stock of the Company, (b) to authorize the Board of Directors of the Company, by the affirmative vote of a majority of the Directors, to amend or repeal the By-Laws of the Company, (c) to authorize an increase in the number of authorized shares of the Preferred Stock of the Company to 120,000 shares, and (d) to provide for the indemnification of the officers and directors of the Company to the fullest extent permissible under the Business Corporation Law of New York;

RESOLVED, that Section 1 of Article II of the By-Laws of the Company be and hereby is amended to read in its entirety as follows:

"The affairs and the business of the Corporation, except as otherwise provided in the Certificate of Incorporation, shall be managed by a Board of not less than three (3) nor more than seven (7) Directors";

RESOLVED, that the authorization by the Board of Directors of the Company of the officers of the Company to enter into, on behalf of the Company, a Management Agreement with GCG Associates, Inc. substantially in the form attached hereto, and all of the transactions contemplated thereby, are hereby ratified and approved, such ratification and approval having been given hereby in full acknowledgement of the provisions of Section 6 of said proposed Management Agreement;

RESOLVED, that the grant by the Company of options with respect to a total of 100 authorized but unissued shares of the Common Stock of the Company to the current shareholders of the Company in proportion to their shareholdings, as set forth in the Unanimous Written Consent of the Board of

Directors dated January 8 , 1982, a copy of which is attached hereto and on the terms and conditions set forth therein, is hereby ratified and approved; and

RESOLVED, that the Board of Directors and the President of the Company be, and they hereby are authorized to take such steps, to do such other acts and things, to execute such letters, certificates, agreements, papers or instruments as, in their judgment, may be necessary or appropriate or desirable in order to carry out and effectuate the intent of the preceding resolutions and otherwise to consummate the transactions therein referred to.

Dated: January 8 , 1982

NHG Associates

Gary C. Granoff

Gary C. Granoff, Trustee
for Robert M. Granoff u/t
dated 12/15/77

Gary C. Granoff, Trustee
for Joshua S. Granoff u/t
dated 5/7/79

Gary C. Granoff, Trustee,
for Jonathan Granoff u/t
dated 12/15/77

Gary C. Granoff,
Trustee for Melissa
Granoff u/t dated 12/15/77

Gary C. Granoff, Trustee
for Stephen E. Granoff
u/t dated 11/28/75

Dan M. Granoff,
custodian for
Elizabeth Granoff

Gary C. Granoff, Trustee
for Stephen E. Granoff
u/t dated 12/15/77

Gary C. Granoff, Trustee
for Jeffrey Granoff
u/t dated 12/15/77

Marvin Sabesan

-2-

# Exhibit S

6/22/11 at 14:44:27.10

### Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Page: 1

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID / Account Description | Date / Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 1001 CASH – BANK LEUMI | 7/1/09 | | Beginning Balance | | | 36,229.79 |
| | 7/8/09 0708TRSF | CRJ | MISCELLANEOUS DEPOSIT | 20,000.00 | | |
| | 7/10/09 0710BL | CDJ | BANK LEUMI | | 45.46 | |
| | 7/10/09 0717BLINT | CDJ | BANK LEUMI | | 409.99 | |
| | | | Current Period Change | 20,000.00 | 455.45 | 19,544.55 |
| | 8/1/09 | | Beginning Balance | | | 55,774.34 |
| | 8/4/09 0804BLINT | CDJ | BANK LEUMI | | 403.01 | |
| | 8/11/09 0811BL | CDJ | BANK LEUMI | | 44.01 | |
| | | | Current Period Change | | 447.02 | -447.02 |
| | 9/1/09 | | Beginning Balance | | | 55,327.32 |
| | 9/1/09 0901BLINT | CDJ | BANK LEUMI | | 403.00 | |
| | 9/23/09 2177 | CDJ | JOHN R. LAIRD | | 1,250.00 | |
| | 9/23/09 2178 | CDJ | HOWARD SOMMER | | 1,000.00 | |
| | 9/23/09 2179 | CDJ | JOHN R. LAIRD | | 1,250.00 | |
| | 9/23/09 2180 | CDJ | STEVEN ETRA | | 1,000.00 | |
| | 9/23/09 2181 | CDJ | IVAN WOLPERT | | 1,000.00 | |
| | 9/23/09 2182 | CDJ | PETER BOOCKVAR | | 1,000.00 | |
| | 9/23/09 2183 | CDJ | STEVEN ETRA | | 1,000.00 | |
| | 9/23/09 2184 | CDJ | JOHN R. LAIRD | | 1,000.00 | |
| | 9/23/09 2185 | CDJ | HOWARD SOMMER | | 1,000.00 | |
| | 9/23/09 2186 | CDJ | IVAN WOLPERT | | 1,000.00 | |
| | 9/23/09 2187 | CDJ | PRIDES CAPITAL LLC | | 1,000.00 | |
| | 9/24/09 0924BL | CDJ | BANK LEUMI | | 42.53 | |
| | | | Current Period Change | | 11,945.53 | -11,945.53 |
| | 10/1/09 | | Beginning Balance | | | 43,381.79 |
| | 10/1/09 1001BLInt | CDJ | BANK LEUMI | | 390.00 | |
| | 10/16/09 1016BL | CDJ | BANK LEUMI | | 45.54 | |
| | | | Current Period Change | | 435.54 | -435.54 |
| | 11/1/09 | | Beginning Balance | | | 42,946.25 |
| | 11/4/09 1104D02 | CRJ | MISCELLANEOUS DEPOSIT | 207,000.00 | | |
| | 11/10/09 1110D01 | CRJ | Loan Track deposits | 58,545.00 | | |
| | 11/23/09 | CDJ | BANK LEUMI | | 49.14 | |

6/22/11 at 14:44:27.16

Page: 2

## Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| | 1123BL | | | | | |
| | 11/24/09 2188 | CDJ | STEVEN ETRA | | 1,000.00 | |
| | 11/24/09 2189 | CDJ | STEVEN ETRA | | 1,000.00 | |
| | 11/24/09 2190 | CDJ | JOHN R. LAIRD | | 1,250.00 | |
| | 11/24/09 2191 | CDJ | JOHN R. LAIRD | | 1,000.00 | |
| | 11/24/09 2192 | CDJ | IVAN WOLPERT | | 1,000.00 | |
| | 11/24/09 2193 | CDJ | IVAN WOLPERT | | 1,250.00 | |
| | 11/24/09 2194 | CDJ | FEDERAL EXPRESS | | 443.59 | |
| | 11/24/09 2195 | CDJ | MURRAY INDICK | | 1,082.69 | |
| | 11/24/09 2196 | CDJ | ROBERT MAZLIACH | | 252.94 | |
| | 11/24/09 2197 | CDJ | ROSEN SEYMOUR SHAPSS | | 28,483.00 | |
| | 11/24/09 2198 | CDJ | SECURE CONCEPTS LLC | | 141.54 | |
| | 11/24/09 2199 | CDJ | TRUE TYPE PRINTING CO. INC. | | 4,536.11 | |
| | 11/24/09 2200 | CDJ | GRANOFF WALKER FORLENZA PC | | 3,440.00 | |
| | 11/24/09 2201 | CDJ | GRANOFF WALKER FORLENZA PC | | 2,945.00 | |
| | 11/30/09 1130BLINT | CDJ | BANK LEUMI | | 416.00 | |
| | | | Current Period Change | 265,545.00 | 48,290.01 | 217,254.99 |
| | 12/1/09 | | Beginning Balance | | | 260,201.24 |
| | 12/1/09 1201BLINT | CDJ | BANK LEUMI | | 357.66 | |
| | 12/18/09 1218BL | CDJ | BANK LEUMI | | 44.02 | |
| | | | Current Period Change | | 401.68 | -401.68 |
| | 1/1/10 | | Beginning Balance | | | 259,799.56 |
| | 1/4/10 0104BL | CDJ | BANK LEUMI | | 382.34 | |
| | 1/13/10 0113BLINT | CDJ | BANK LEUMI | | 36.99 | |
| | 1/20/10 0120BL | CDJ | BANK LEUMI | | 42.49 | |
| | | | Current Period Change | | 461.82 | -461.82 |
| | 2/1/10 | | Beginning Balance | | | 259,337.74 |
| | 2/1/10 0201BLINT | CDJ | BANK LEUMI | | 373.34 | |
| | 2/24/10 0224BL | CDJ | BANK LEUMI | | 35.86 | |
| | | | Current Period Change | | 409.20 | -409.20 |
| | 3/1/10 | | Beginning Balance | | | 258,928.54 |
| | 3/1/10 0301BLINT | CDJ | BANK LEUMI | | 373.33 | |

6/22/11 at 14:44:27.21

## Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| | 3/22/10<br>0322BL | CDJ | BANK LEUMI | | 35.43 | |
| | | | Current Period Change | | 408.76 | -408.76 |
| | 4/1/10 | | Beginning Balance | | | 258,519.78 |
| | 4/1/10<br>0401BL | CDJ | BANK LEUMI | | 413.33 | |
| | 4/21/10<br>0421BL | CDJ | BANK LEUMI | | 24.23 | |
| | | | Current Period Change | | 437.56 | -437.56 |
| | 5/1/10 | | Beginning Balance | | | 258,082.22 |
| | 5/3/10<br>0504BLINT | CDJ | BANK LEUMI | | 400.00 | |
| | 5/18/10<br>0518BL | CDJ | BANK LEUMI | | 22.80 | |
| | | | Current Period Change | | 422.80 | -422.80 |
| | 6/1/10 | | Beginning Balance | | | 257,659.42 |
| | 6/1/10<br>0601BL | CDJ | BANK LEUMI | | 413.34 | |
| | 6/16/10<br>0616BL | CDJ | BANK LEUMI | | 21.94 | |
| | | | Current Period Change | | 435.28 | -435.28 |
| | 6/30/10 | | Ending Balance | | | 257,224.14 |
| 1002<br>CASH - IDB | 7/1/09 | | Beginning Balance | | | 145,553.64 |
| | 7/1/09<br>27043 | CDJ | MEDALLION FUNDING<br>CORP. AS SER | | 1,323.19 | |
| | 7/1/09<br>27044 | CDJ | MEDALLION FUNDING<br>CORP. AS SER | | 1,262.03 | |
| | 7/2/09<br>27045 | CDJ | SURGE ELECTRONIC<br>MEDIA GROUP L | | 8,000.00 | |
| | 7/2/09<br>27046 | CDJ | AMERICAN EXPRESS | | 1,408.29 | |
| | 7/2/09<br>27047 | CDJ | BLOOMBERG<br>FINANCE LP | | 6,177.38 | |
| | 7/2/09<br>27048 | CDJ | BLOOMBERG<br>FINANCE LP | | 1,154.25 | |
| | 7/2/09<br>27049 | CDJ | BLOOMBERG<br>FINANCE LP | | 14.13 | |
| | 7/2/09<br>27050 | CDJ | CABLEVISION | | 49.95 | |
| | 7/2/09<br>27051 | CDJ | LAW OFFICES OF<br>JACOB FISHMAN | | 2,500.00 | |
| | 7/2/09<br>27052 | CDJ | Gary C. Granoff | | 49.33 | |
| | 7/2/09<br>27053 | CDJ | STEPHEN H.<br>TARNOFSKY CPA | | 6,600.00 | |
| | 7/2/09<br>27054 | CDJ | T-MOBILE | | 82.99 | |
| | 7/2/09<br>27055 | CDJ | TRANSITCENTER INC. | | 2,782.03 | |
| | 7/2/09<br>27056 | CDJ | VERIZON | | 272.27 | |
| | 7/2/09<br>27057 | CDJ | GRANOFF WALKER<br>FORLENZA PC | | 450.00 | |

6/22/11 at 14:44:27.24

# Elk Associates Funding Corporation
## General Ledger
## For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID / Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 1002 (cont.) | 7/2/09 27058 | CDJ | PETER BOOCKVAR | | 1,000.00 | |
| | 7/2/09 27059 | CDJ | STEVEN ETRA | | 1,000.00 | |
| | 7/2/09 27060 | CDJ | HOWARD SOMMER | | 1,000.00 | |
| | 7/2/09 27061 | CDJ | JOHN R. LAIRD | | 1,000.00 | |
| | 7/2/09 27062 | CDJ | PRIDES CAPITAL LLC | | 1,000.00 | |
| | 7/2/09 27063 | CDJ | IVAN WOLPERT | | 1,000.00 | |
| | 7/2/09 0702ACH1 | CRJ | CITY BRITE CLEANER INC. | 671.28 | | |
| | 7/2/09 0702ACH2 | CRJ | CHAO TENGA LLC | 10,303.57 | | |
| | 7/2/09 0702ACH3 | CRJ | GWE INC. | 12,181.94 | | |
| | 7/2/09 0702ACH4 | CRJ | SOUNDVIEW BROADCASTING LLC | 14,381.99 | | |
| | 7/2/09 0702WT | CRJ | Loan Track deposits | 11,787.58 | | |
| | 7/2/09 0702IDBIN | CDJ | ISRAEL DISCOUNT BANK | | 906.25 | |
| | 7/2/09 0702IDB | CRJ | MISCELLANEOUS DEPOSIT | 25.00 | | |
| | 7/2/09 0702IDB | CDJ | AT&T | | 169.76 | |
| | 7/6/09 0706IDBBK | CDJ | ISRAEL DISCOUNT BANK | | 30.00 | |
| | 7/6/09 0706CDINT | CRJ | MISCELLANEOUS DEPOSIT | 43.79 | | |
| | 7/8/09 0708TRSF | CRJ | MISCELLANEOUS DEPOSIT | 20,000.00 | | |
| | 7/9/09 27075 | CDJ | GRANOFF WALKER FORLENZA PC | | 26,612.76 | |
| | 7/10/09 27023V | CDJ | THE FLORIDA BAR | 360.00 | | |
| | 7/10/09 0710ach1 | CRJ | ANDY FUR DRY CLEANING INC. | 1,374.68 | | |
| | 7/14/09 27076 | CDJ | THE FLORIDA BAR | | 380.00 | |
| | 7/15/09 0715BC1 | CDJ | ISRAEL DISCOUNT BANK | | 1,374.68 | |
| | 7/20/09 0720ACH1 | CRJ | MISCELLANEOUS DEPOSIT | 910.00 | | |
| | 7/22/09 27077 | CDJ | JOHN R. LAIRD | | 1,250.00 | |
| | 7/22/09 27078 | CDJ | JOHN R. LAIRD | | 1,250.00 | |
| | 7/22/09 27082 | CDJ | IVAN WOLPERT | | 1,000.00 | |
| | 7/22/09 27083 | CDJ | IVAN WOLPERT | | 1,000.00 | |
| | 7/22/09 27080 | CDJ | STEVEN ETRA | | 1,000.00 | |
| | 7/22/09 27081 | CDJ | STEVEN ETRA | | 1,000.00 | |
| | 7/22/09 27079 | CDJ | JOHN R. LAIRD | | 1,250.00 | |
| | 7/22/09 27084 | CDJ | PETER BOOCKVAR | | 1,000.00 | |
| | 7/22/09 | CDJ | HOWARD SOMMER | | 1,000.00 | |

6/22/11 at 14:44:27.29

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 1002 (cont.) | 27085 7/29/09 | CDJ | AETNA US HEALTHCARE | | 893.00 | |
| | 27086 7/29/09 | CDJ | ARIZONA DEPT OF REVENUE | | 54.05 | |
| | 27087 7/29/09 | CDJ | CAFE BASIL | | 33.26 | |
| | 27088 7/29/09 | CDJ | MARGARET CHANCE | | 97.86 | |
| | 27089 7/29/09 | CDJ | MARGARET CHANCE | | 84.78 | |
| | 27090 7/29/09 | CDJ | Continental Stock Transfer & | | 933.57 | |
| | 27091 7/29/09 | CDJ | EMPIRE HEALTH CHOICE HMO | | 4,544.54 | |
| | 27092 7/29/09 | CDJ | FEDERAL EXPRESS | | 49.42 | |
| | 27093 7/29/09 | CDJ | FEDERAL EXPRESS | | 173.85 | |
| | 27094 7/29/09 | CDJ | ROSEN SEYMOUR SHAPSS | | 11,789.30 | |
| | 27095 7/29/09 | CDJ | STEPHEN H. TARNOFSKY CPA | | 6,600.00 | |
| | 27096 7/29/09 | CDJ | STEPHEN H. TARNOFSKY CPA | | 8,800.00 | |
| | 27097 7/29/09 | CDJ | STURSBERG AND ASSOCIATES LLC | | 3,902.11 | |
| | 27098 7/29/09 | CDJ | TIME WARNER CABLE OF NYC | | 79.69 | |
| | 27099 7/29/09 | CDJ | TRANS UNION | | 43.35 | |
| | 27100 7/29/09 | CDJ | VERIZON | | 527.70 | |
| | 27101 7/29/09 | CDJ | VERIZON | | 271.17 | |
| | 27102 7/29/09 | CDJ | HOWARD SOMMER | | 1,000.00 | |
| | 27103 7/29/09 | CDJ | PETER BOOCKVAR | | 1,000.00 | |
| | 27104 7/29/09 | CDJ | STEVEN ETRA | | 1,000.00 | |
| | 27105 7/29/09 | CDJ | JOHN R. LAIRD | | 1,000.00 | |
| | 27106 7/29/09 | CDJ | PRIDES CAPITAL LLC | | 1,000.00 | |
| | 27107 7/29/09 | CDJ | IVAN WOLPERT | | 1,000.00 | |
| | 27108 7/30/09 | CDJ | ISRAEL DISCOUNT BANK | | 937.50 | |
| | 0730IDBIN 7/31/09 | CRJ | MISCELLANEOUS DEPOSIT | 263,380.43 | | |
| | 0731D03 7/31/09 | CRJ | GOLDEN TRIANGLE ENT. LLC | 6,250.89 | | |
| | 0731ach1 | | Current Period Change | 341,671.15 | 123,164.44 | 218,506.71 |
| | 8/1/09 | | Beginning Balance | | | 364,060.35 |
| | 8/3/09 0803WT2 | CRJ | Loan Track deposits | 12,204.86 | | |
| | 8/4/09 0804ACH1 | CRJ | CHAO TENGA LLC | 10,303.57 | | |
| | 8/4/09 0804ACH2 | CRJ | GWE INC. | 12,181.94 | | |

6/22/11 at 14:44:27.35

# Elk Associates Funding Corporation
## General Ledger
## For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID / Account Description | Date / Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 1002 (cont.) | 8/4/09 0804ACH3 | CRJ | SOUNDVIEW BROADCASTING LLC | 14,381.99 | | |
| | 8/4/09 0804ACH4 | CRJ | PWT HOLDINGS INC. | 15,000.00 | | |
| | 8/5/09 0805CDINT | CRJ | MISCELLANEOUS DEPOSIT | 41.06 | | |
| | 8/19/09 0819ACH1 | CRJ | MISCELLANEOUS DEPOSIT | 906.67 | | |
| | 8/24/09 0824IDB1 | CDJ | ISRAEL DISCOUNT BANK | | 25.00 | |
| | 8/31/09 0831ACH | CRJ | GOLDEN TRIANGLE ENT. LLC | 6,250.89 | | |
| | | | Current Period Change | 71,270.98 | 25.00 | 71,245.98 |
| | 9/1/09 | | Beginning Balance | | | 435,306.33 |
| | 9/1/09 27109 | CDJ | AMERICAN EXPRESS | | 351.92 | |
| | 9/1/09 27110 | CDJ | ROBERT MAZLIACH | | 254.91 | |
| | 9/1/09 0901WT6 | CRJ | Loan Track deposits | 12,230.90 | | |
| | 9/1/09 0901ACH1 | CRJ | CHAO TENGA LLC | 10,303.57 | | |
| | 9/1/09 0901ACH2 | CRJ | SOUNDVIEW BROADCASTING LLC | 14,381.99 | | |
| | 9/1/09 0901ACH3 | CRJ | GWE INC. | 12,181.94 | | |
| | 9/1/09 0901ACH4 | CRJ | PWT HOLDINGS INC. | 15,000.00 | | |
| | 9/1/09 0901IDB | CDJ | SMALL BUSINESS ADMINISTRATION | | 314,985.32 | |
| | 9/1/09 0901IDBIN | CDJ | ISRAEL DISCOUNT BANK | | 1,031.25 | |
| | 9/2/09 27111 | CDJ | MEDALLION FUNDING CORP. AS SER | | 1,323.19 | |
| | 9/2/09 27112 | CDJ | MEDALLION FUNDING CORP. AS SER | | 1,262.03 | |
| | 9/4/09 0904IDB | CRJ | MISCELLANEOUS DEPOSIT | 41.05 | | |
| | 9/14/09 27113 | CDJ | BWD GROUP LIMITED | | 73,698.00 | |
| | 9/14/09 27114 | CDJ | NATIONAL REGULATORY SERVICES | | 1,525.00 | |
| | 9/14/09 27115 | CDJ | SURGE ELECTRONIC MEDIA GROUP L | | 906.00 | |
| | 9/14/09 27116 | CDJ | SURGE ELECTRONIC MEDIA GROUP L | | 2,140.00 | |
| | 9/14/09 27117 | CDJ | TRANS UNION | | 43.55 | |
| | 9/14/09 27118 | CDJ | VERIZON | | 271.55 | |
| | 9/14/09 27119 | CDJ | GRANOFF WALKER FORLENZA PC | | 17,889.07 | |
| | 9/14/09 27120 | CDJ | PPCP INC. | | 400.00 | |
| | 9/14/09 27121 | CDJ | PPCP INC. | | 100.00 | |
| | 9/15/09 27123 | CDJ | NYS CORPORATION TAX | | 2,000.00 | |
| | 9/15/09 27124 | CDJ | NYC DEPT. OF FINANCE | | 300.00 | |

6/22/11 at 14:44:27.40

# Elk Associates Funding Corporation
## General Ledger
## For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 1002 (cont.) | 9/15/09<br>27127 | CDJ | NYS CORPORATION TAX | | 155.00 | |
| | 9/15/09<br>27128 | CDJ | NYC DEPT. OF FINANCE | | 300.00 | |
| | 9/21/09<br>0921ACH1 | CRJ | MISCELLANEOUS DEPOSIT | 903.33 | | |
| | 9/30/09<br>0930IDBIN | CDJ | ISRAEL DISCOUNT BANK | | 906.25 | |
| | | | Current Period Change | 65,042.78 | 419,843.04 | -354,800.26 |
| | 10/1/09 | | Beginning Balance | | | 80,506.07 |
| | 10/2/09<br>1002D01 | CRJ | Loan Track deposits | 150.00 | | |
| | 10/2/09<br>1002WT2 | CRJ | Loan Track deposits | 11,859.60 | | |
| | 10/5/09<br>1005ACH1 | CRJ | PWT HOLDINGS INC. | 20,000.00 | | |
| | 10/5/09<br>1005ACH2 | CRJ | SOUNDVIEW BROADCASTING LLC | 14,381.99 | | |
| | 10/5/09<br>1005ACH3 | CRJ | GWE INC. | 12,181.94 | | |
| | 10/5/09<br>1005ACH4 | CRJ | CHAO TENGA LLC | 10,303.57 | | |
| | 10/5/09<br>1005IDB | CRJ | MISCELLANEOUS DEPOSIT | 31.83 | | |
| | 10/7/09<br>1007ACH1 | CRJ | GOLDEN TRIANGLE ENT. LLC | 6,250.89 | | |
| | 10/9/09<br>1009D01 | CRJ | Loan Track deposits | 2,687.98 | | |
| | 10/12/09<br>27129 | CDJ | BUSINESS WIRE, INC. | | 1,685.00 | |
| | 10/12/09<br>27130 | CDJ | CAFE BASIL | | 79.93 | |
| | 10/12/09<br>27131 | CDJ | Continental Stock Transfer & | | 925.20 | |
| | 10/12/09<br>27132 | CDJ | ELLEN WALKER | | 430.82 | |
| | 10/12/09<br>27133 | CDJ | FAIRVIEW INVESTMENT SERVICES | | 2,604.16 | |
| | 10/12/09<br>27134 | CDJ | FUNDEX CAPITAL CORPORATION | | 17,329.85 | |
| | 10/12/09<br>27135 | CDJ | MURRAY INDICK | | 1,127.55 | |
| | 10/12/09<br>27136 | CDJ | ADRIAN R JONES | | 93.75 | |
| | 10/12/09<br>27137 | CDJ | NCIC IT CONSULTING INC. | | 2,593.60 | |
| | 10/12/09<br>27138 | CDJ | NCIC IT CONSULTING INC. | | 522.60 | |
| | 10/12/09<br>27139 | CDJ | THE OSG CORP. | | 1,218.19 | |
| | 10/12/09<br>27140 | CDJ | STAPLES | | 644.30 | |
| | 10/12/09<br>27141 | CDJ | STAPLES | | 289.53 | |
| | 10/12/09<br>27142 | CDJ | STURSBERG AND ASSOCIATES LLC | | 3,294.90 | |
| | 10/12/09<br>27143 | CDJ | TRANS UNION | | 43.55 | |
| | 10/12/09<br>27144 | CDJ | MARKIT WSO CORPORATION | | 964.09 | |

6/22/11 at 14:44:27.45

# Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 1002 (cont.) | 10/13/09<br>1013D01 | CRJ | MISCELLANEOUS DEPOSIT | 3,006.90 | | |
| | 10/13/09<br>1013D02 | CRJ | Loan Track deposits | 344.28 | | |
| | 10/19/09<br>1019ACH1 | CRJ | MISCELLANEOUS DEPOSIT | 900.00 | | |
| | 10/21/09<br>27145 | CDJ | BRIAN ACKERMAN | | 34.65 | |
| | 10/21/09<br>27146 | CDJ | FRESHSTART VENTURE CAPITAL CO | | 743.60 | |
| | 10/21/09<br>27147 | CDJ | HANAM CAPITAL CORPORATION | | 328.28 | |
| | 10/21/09<br>27148 | CDJ | MEDALLION FUNDING CORP. | | 712.35 | |
| | 10/21/09<br>27149 | CDJ | MEYER ACKERMAN | | 121.03 | |
| | 10/21/09<br>27150 | CDJ | MILESTONE GROWTH FUND INC. | | 650.39 | |
| | 10/21/09<br>27151 | CDJ | Pinnacle Commercial Capital, L | | 533.53 | |
| | 10/21/09<br>27152 | CDJ | STEVE PORTNOY TRUSTEE | | 51.74 | |
| | 10/21/09<br>27155 | CDJ | STEVE PORTNOY TRUSTEE | | 51.74 | |
| | 10/21/09<br>27154 | CDJ | JERROLD MARCH | | 525.53 | |
| | 10/21/09<br>27156 | CDJ | NYC Dept. of Finance | | 4,414.85 | |
| | 10/23/09<br>1023D01 | CRJ | Loan Track deposits | 19,298.31 | | |
| | 10/26/09<br>1026D01 | CRJ | Loan Track deposits | 9,371.44 | | |
| | 10/30/09<br>1030ACH1 | CRJ | GOLDEN TRIANGLE ENT. LLC | 6,250.89 | | |
| | 10/30/09<br>1030D01 | CRJ | Loan Track deposits | 6,937.26 | | |
| | 10/31/09<br>27160 | CDJ | BRIAN ACKERMAN | | 34.65 | |
| | 10/31/09<br>27161 | CDJ | FRESHSTART VENTURE CAPITAL CO | | 743.60 | |
| | 10/31/09<br>27162 | CDJ | HANAM CAPITAL CORPORATION | | 328.28 | |
| | 10/31/09<br>27163 | CDJ | MEDALLION FUNDING CORP. | | 712.35 | |
| | 10/31/09<br>27164 | CDJ | MEYER ACKERMAN | | 121.03 | |
| | 10/31/09<br>27165 | CDJ | MILESTONE GROWTH FUND INC. | | 650.39 | |
| | 10/31/09<br>27166 | CDJ | Pinnacle Commercial Capital, L | | 533.36 | |
| | 10/31/09<br>27167 | CDJ | STEVE PORTNOY TRUSTEE | | 51.74 | |
| | 10/31/09<br>27168 | CDJ | STEVE PORTNOY TRUSTEE | | 51.74 | |
| | 10/31/09<br>27169 | CDJ | THE OSG CORP. | | 1,218.19 | |
| | 10/31/09<br>27170 | CDJ | JERROLD MARCH | | 525.53 | |
| | | | Current Period Change | 123,956.88 | 46,985.57 | 76,971.31 |
| | 11/1/09 | | Beginning Balance | | | 157,477.38 |

6/22/11 at 14:44:27.49

Page: 9

# Elk Associates Funding Corporation
## General Ledger
## For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID / Account Description | Date / Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 1002 (cont.) | 11/2/09 1102WT | CDJ | SMALL BUSINESS ADMINISTRATION | | 91,800.00 | |
| | 11/2/09 1102ACH1 | CRJ | PWT HOLDINGS INC. | 20,000.00 | | |
| | 11/2/09 1102ACH2 | CRJ | SOUNDVIEW BROADCASTING LLC | 14,381.99 | | |
| | 11/2/09 1102ACH3 | CRJ | GWE INC. | 12,181.94 | | |
| | 11/2/09 1102ACH4 | CRJ | CHAO TENGA LLC | 10,303.57 | | |
| | 11/2/09 1102WT1 | CRJ | Loan Track deposits | 12,201.65 | | |
| | 11/2/09 1102IDB | CDJ | ISRAEL DISCOUNT BANK | | 937.50 | |
| | 11/3/09 1103WT1 | CRJ | Loan Track deposits | 770,830.00 | | |
| | 11/4/09 27157 | CDJ | ELK ASSOCIATES FUNDING | | 207,000.00 | |
| | 11/4/09 27158 | CDJ | ELK ASSOCIATES FUNDING | | 203,000.00 | |
| | 11/4/09 27159 | CDJ | ELK ASSOCIATES FUNDING | | 115,000.00 | |
| | 11/4/09 1104INT | CRJ | MISCELLANEOUS DEPOSIT | 30.80 | | |
| | 11/9/09 27171 | CDJ | AETNA US HEALTHCARE | | 1,156.00 | |
| | 11/9/09 27172 | CDJ | AMERICAN EXPRESS | | 341.79 | |
| | 11/9/09 27173 | CDJ | BUSINESS WIRE, INC. | | 410.00 | |
| | 11/9/09 27174 | CDJ | CONTINENTAL CASUALTY COMPANY D | | 2,864.07 | |
| | 11/9/09 27175 | CDJ | ELLEN WALKER | | 438.93 | |
| | 11/9/09 27176 | CDJ | STAPLES | | 225.54 | |
| | 11/9/09 27177 | CDJ | STEPHEN H. TARNOFSKY CPA | | 11,000.00 | |
| | 11/9/09 27178 | CDJ | STEPHEN H. TARNOFSKY CPA | | 4,400.00 | |
| | 11/9/09 27179 | CDJ | SURGE ELECTRONIC MEDIA GROUP L | | 2,183.13 | |
| | 11/9/09 27180 | CDJ | VERIZON | | 277.02 | |
| | 11/9/09 27181 | CDJ | GRANOFF WALKER FORLENZA PC | | 18,845.13 | |
| | 11/9/09 27182 | CDJ | HOWARD SOMMER | | 1,000.00 | |
| | 11/9/09 27183 | CDJ | JOHN R. LAIRD | | 1,250.00 | |
| | 11/9/09 27184 | CDJ | PETER BOOCKVAR | | 1,000.00 | |
| | 11/11/09 27185 | CDJ | STEVEN ETRA | | 1,000.00 | |
| | 11/11/09 27186 | CDJ | HOWARD SOMMER | | 1,000.00 | |
| | 11/11/09 27187 | CDJ | JOHN R. LAIRD | | 1,000.00 | |
| | 11/11/09 27188 | CDJ | PRIDES CAPITAL LLC | | 1,000.00 | |
| | 11/11/09 | CDJ | IVAN WOLPERT | | 1,000.00 | |

6/22/11 at 14:44:27.54

## Elk Associates Funding Corporation
## General Ledger
## For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 1002 (cont.) | 27189 | | | | | |
| | 11/11/09<br>27190 | CDJ | PETER BOOCKVAR | | 1,000.00 | |
| | 11/18/09<br>27191 | CDJ | MARGARET CHANCE | | 111.86 | |
| | 11/18/09<br>27192 | CDJ | CLAREWOOD<br>CONSULTING LLC | | 662.78 | |
| | 11/18/09<br>27193 | CDJ | CLAREWOOD<br>CONSULTING LLC | | 6,620.00 | |
| | 11/18/09<br>27194 | CDJ | Continental Stock<br>Transfer & | | 964.94 | |
| | 11/18/09<br>27195 | CDJ | Executive Charge Inc. | | 326.51 | |
| | 11/18/09<br>27196 | CDJ | FAIRVIEW<br>INVESTMENT<br>SERVICES | | 2,604.17 | |
| | 11/18/09<br>27197 | CDJ | JOHN LAIRD | | 266.50 | |
| | 11/18/09<br>27198 | CDJ | OXFORD HEALTH<br>PLANS | | 6,135.10 | |
| | 11/18/09<br>27199 | CDJ | PPCP INC. | | 45.00 | |
| | 11/18/09<br>27200 | CDJ | PPCP INC. | | 180.00 | |
| | 11/18/09<br>27201 | CDJ | SILVIA MULLENS | | 53.49 | |
| | 11/18/09<br>27202 | CDJ | STEPHEN H.<br>TARNOFSKY CPA | | 9,900.00 | |
| | 11/18/09<br>27203 | CDJ | STURSBERG AND<br>ASSOCIATES LLC | | 3,919.07 | |
| | 11/18/09<br>27204 | CDJ | SURGE ELECTRONIC<br>MEDIA GROUP L | | 1,317.84 | |
| | 11/18/09<br>27205 | CDJ | TIME WARNER CABLE<br>OF NYC | | 79.70 | |
| | 11/18/09<br>27206 | CDJ | TRANS UNION | | 43.55 | |
| | 11/18/09<br>27207 | CDJ | VERIZON | | 537.00 | |
| | 11/19/09<br>1119ACH1 | CRJ | MISCELLANEOUS<br>DEPOSIT | 896.67 | | |
| | 11/30/09<br>1130ach1 | CRJ | GOLDEN TRIANGLE<br>ENT. LLC | 6,250.89 | | |
| | 11/30/09<br>1130IDBIN | CDJ | ISRAEL DISCOUNT<br>BANK | | 968.75 | |
| | 11/30/09<br>27208 | CDJ | BRIAN ACKERMAN | | 34.65 | |
| | 11/30/09<br>27209 | CDJ | FRESHSTART<br>VENTURE CAPITAL<br>CO | | 743.60 | |
| | 11/30/09<br>27210 | CDJ | HANAM CAPITAL<br>CORPORATION | | 328.28 | |
| | 11/30/09<br>27211 | CDJ | MEDALLION FUNDING<br>CORP. | | 712.35 | |
| | 11/30/09<br>27212 | CDJ | MEYER ACKERMAN | | 121.03 | |
| | 11/30/09<br>27213 | CDJ | MILESTONE GROWTH<br>FUND INC. | | 650.39 | |
| | 11/30/09<br>27214 | CDJ | Pinnacle Commercial<br>Capital, L | | 533.33 | |
| | 11/30/09<br>27215 | CDJ | STEVE PORTNOY<br>TRUSTEE | | 51.74 | |
| | 11/30/09<br>27216 | CDJ | STEVE PORTNOY<br>TRUSTEE | | 51.74 | |

6/22/11 at 14:44:27.59

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID / Account Description | Date / Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 1002 (cont.) | 11/30/09 27217 | CDJ | THE OSG CORP. | | 1,218.19 | |
| | 11/30/09 27218 | CDJ | JERROLD MARCH | | 525.53 | |
| | | | Current Period Change | 847,077.51 | 708,836.20 | 138,241.31 |
| | 12/1/09 | | Beginning Balance | | | 295,718.69 |
| | 12/1/09 1201ACH1 | CRJ | PWT HOLDINGS INC. | 20,000.00 | | |
| | 12/1/09 1201ACH2 | CRJ | SOUNDVIEW BROADCASTING LLC | 14,381.99 | | |
| | 12/1/09 1201ACH3 | CRJ | GWE INC. | 12,181.94 | | |
| | 12/1/09 1201ach4 | CRJ | CHAO TENGA LLC | 10,303.57 | | |
| | 12/1/09 1201wt1 | CRJ | Loan Track deposits | 11,832.85 | | |
| | 12/2/09 27219 | CDJ | MEDALLION FUNDING CORP. AS SER | | 1,262.03 | |
| | 12/2/09 1202WT1 | CRJ | MISCELLANEOUS DEPOSIT | 8,952,496.25 | | |
| | 12/3/09 27220 | CDJ | GEORGE WASHINGTON UNIVERSITY | | 3,000.00 | |
| | 12/3/09 1203WT | CDJ | BANK OF NEW YORK | | 24,940.76 | |
| | 12/3/09 1203BC1 | CDJ | ISRAEL DISCOUNT BANK | | 6,250.89 | |
| | 12/4/09 1204IDB | CRJ | MISCELLANEOUS DEPOSIT | 30.80 | | |
| | 12/4/09 1204SBIC | CRJ | MISCELLANEOUS DEPOSIT | 24,880.76 | | |
| | 12/7/09 27221 | CDJ | AETNA US HEALTHCARE | | 1,156.00 | |
| | 12/7/09 27222 | CDJ | AMERICAN EXPRESS | | 518.67 | |
| | 12/7/09 27223 | CDJ | BROADRIDGE INVESTORS COMMUNICA | | 1,568.61 | |
| | 12/7/09 27224 | CDJ | BUSINESS WIRE, INC. | | 1,345.00 | |
| | 12/7/09 27225 | CDJ | CT CORPORATION | | 113.50 | |
| | 12/7/09 27226 | CDJ | EMPIRE HEALTH CHOICE HMO | | 4,338.56 | |
| | 12/7/09 27227 | CDJ | Lee A. Forlenza | | 139.95 | |
| | 12/7/09 27228 | CDJ | PPCP INC. | | 140.00 | |
| | 12/7/09 27229 | CDJ | PPCP INC. | | 35.00 | |
| | 12/7/09 27230 | CDJ | STEPHEN H. TARNOFSKY CPA | | 5,500.00 | |
| | 12/7/09 27231 | CDJ | TEMPLE BETH EL OF GREAT NECK | | 250.00 | |
| | 12/7/09 27232 | CDJ | TRANSITCENTER INC. | | 1,864.52 | |
| | 12/7/09 27233 | CDJ | True Type Printing | | 3,837.84 | |
| | 12/7/09 27234 | CDJ | VERIZON | | 277.27 | |
| | 12/7/09 | CDJ | VISITING NURSE SERVICE OF NEW | | 250.00 | |

6/22/11 at 14:44:27.63

## Elk Associates Funding Corporation
## General Ledger
## For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 1002 (cont.) | 27235 12/7/09 | CDJ | SERVICE OF NEW NYC Dept. of Finance | | 4,283.41 | |
| | 27236 12/11/09 1211ACH1 | CRJ | GOLDEN TRIANGLE ENT. LLC | 6,250.89 | | |
| | 12/18/09 1218WT1 | CDJ | BANK OF MONTREAL | | 490,050.00 | |
| | 12/18/09 1218WT2 | CDJ | DEUTSCHE BANK | | 490,050.00 | |
| | 12/18/09 1218WT3 | CDJ | BANK OF NEW YORK | | 970,050.00 | |
| | 12/21/09 1221D01 | CRJ | Loan Track deposits | 35.00 | | |
| | 12/21/09 1221ACH1 | CRJ | MISCELLANEOUS DEPOSIT | 893.33 | | |
| | 12/31/09 1231ACH | CRJ | GOLDEN TRIANGLE ENT. LLC | 6,250.89 | | |
| | 12/31/09 123IIDB | CDJ | ISRAEL DISCOUNT BANK | | 968.75 | |
| | 12/31/09 27237 | CDJ | BRIAN ACKERMAN | | 34.65 | |
| | 12/31/09 27238 | CDJ | FRESHSTART VENTURE CAPITAL CO | | 743.60 | |
| | 12/31/09 27239 | CDJ | HANAM CAPITAL CORPORATION | | 328.28 | |
| | 12/31/09 27240 | CDJ | MEDALLION FUNDING CORP. | | 712.35 | |
| | 12/31/09 27241 | CDJ | MEYER ACKERMAN | | 121.03 | |
| | 12/31/09 27242 | CDJ | MILESTONE GROWTH FUND INC. | | 650.39 | |
| | 12/31/09 27243 | CDJ | Pinnacle Commercial Capital, L | | 533.22 | |
| | 12/31/09 27244 | CDJ | STEVE PORTNOY TRUSTEE | | 51.74 | |
| | 12/31/09 27245 | CDJ | STEVE PORTNOY TRUSTEE | | 51.74 | |
| | 12/31/09 27246 | CDJ | THE OSG CORP. | | 1,218.19 | |
| | 12/31/09 27247 | CDJ | JERROLD MARCH | | 525.53 | |
| | 12/31/09 1231Wt10 | CRJ | Loan Track deposits | 127,742.90 | | |
| | | | Current Period Change | 9,187,281.17 | 2,017,161.48 | 7,170,119.69 |
| | 1/1/10 | | Beginning Balance | | | 7,465,838.38 |
| | 1/4/10 0104ACH1 | CRJ | PWT HOLDINGS INC. | 30,000.00 | | |
| | 1/4/10 0104ACH2 | CRJ | SOUNDVIEW BROADCASTING LLC | 14,381.99 | | |
| | 1/4/10 0104ACH3 | CRJ | GWE INC. | 12,181.94 | | |
| | 1/4/10 0104ACH4 | CRJ | CHAO TENGA LLC | 10,303.57 | | |
| | 1/4/10 0104WT1 | CRJ | Loan Track deposits | 12,252.81 | | |
| | 1/4/10 0104IDB | CRJ | MISCELLANEOUS DEPOSIT | 31.83 | | |
| | 1/5/10 27248 | CDJ | ROBERT MAZLIACH | | 252.27 | |
| | 1/7/10 | CDJ | ELK ASSOCIATES FUNDING | | 250,050.00 | |

6/22/11 at 14:44:27.68

# Elk Associates Funding Corporation
## General Ledger
## For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 1002 (cont.) | 0107WT | | FUNDING | | | |
| | 1/19/10 | CRJ | Loan Track deposits | 7,101.11 | | |
| | 0119WT | | | | | |
| | 1/20/10 | CRJ | MISCELLANEOUS DEPOSIT | 890.00 | | |
| | 0120ACH1 | | | | | |
| | 1/21/10 | CRJ | MISCELLANEOUS DEPOSIT | 37,048.68 | | |
| | 0121D01 | | | | | |
| | 1/28/10 | CDJ | AETNA US HEALTHCARE | | 1,156.00 | |
| | 27249 | | | | | |
| | 1/28/10 | CDJ | AMERICAN EXPRESS | | 290.58 | |
| | 27250 | | | | | |
| | 1/28/10 | CDJ | BROADRIDGE INVESTORS COMMUNICA | | 36.32 | |
| | 27251 | | | | | |
| | 1/28/10 | CDJ | CAFE BASIL | | 14.23 | |
| | 27252 | | | | | |
| | 1/28/10 | CDJ | MARGARET CHANCE | | 77.86 | |
| | 27253 | | | | | |
| | 1/28/10 | CDJ | Continental Stock Transfer & | | 2,213.60 | |
| | 27254 | | | | | |
| | 1/28/10 | CDJ | FAIRVIEW INVESTMENT SERVICES | | 2,604.16 | |
| | 27255 | | | | | |
| | 1/28/10 | CDJ | FEDERAL EXPRESS | | 108.04 | |
| | 27256 | | | | | |
| | 1/28/10 | CDJ | Lee A. Forlenza | | 279.90 | |
| | 27257 | | | | | |
| | 1/28/10 | CDJ | MEDIANT COMMUNICATIONS LLC | | 30.19 | |
| | 27258 | | | | | |
| | 1/28/10 | CDJ | OXFORD HEALTH PLANS | | 6,135.10 | |
| | 27259 | | | | | |
| | 1/28/10 | CDJ | ROBERT MAZLIACH | | 251.59 | |
| | 27260 | | | | | |
| | 1/28/10 | CDJ | STEPHEN H. TARNOFSKY CPA | | 14,300.00 | |
| | 27261 | | | | | |
| | 1/28/10 | CDJ | SURGE ELECTRONIC MEDIA GROUP L | | 2,183.13 | |
| | 27262 | | | | | |
| | 1/28/10 | CDJ | TIME WARNER CABLE OF NYC | | 79.70 | |
| | 27263 | | | | | |
| | 1/28/10 | CDJ | VERIZON | | 538.86 | |
| | 27264 | | | | | |
| | 1/28/10 | CDJ | VERIZON | | 283.53 | |
| | 27265 | | | | | |
| | 1/28/10 | CDJ | THE WEEKS-LERMAN GROUP | | 40.29 | |
| | 27266 | | | | | |
| | 1/29/10 | CRJ | Loan Track deposits | 14,990.00 | | |
| | 0129wt1 | | | | | |
| | 1/29/10 | CRJ | Loan Track deposits | 2,212.22 | | |
| | 0129wt2 | | | | | |
| | 1/29/10 | CRJ | GOLDEN TRIANGLE ENT. LLC | 6,250.89 | | |
| | 0129ACH1 | | | | | |
| | 1/31/10 | CDJ | BRIAN ACKERMAN | | 34.65 | |
| | 27267 | | | | | |
| | 1/31/10 | CDJ | FRESHSTART VENTURE CAPITAL CO | | 743.60 | |
| | 27268 | | | | | |
| | 1/31/10 | CDJ | HANAM CAPITAL CORPORATION | | 328.28 | |
| | 27269 | | | | | |
| | 1/31/10 | CDJ | MEDALLION FUNDING CORP. | | 712.35 | |
| | 27270 | | | | | |
| | 1/31/10 | CDJ | MEYER ACKERMAN | | 121.03 | |
| | 27271 | | | | | |

6/22/11 at 14:44:27.73

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 1002 (cont.) | 1/31/10 27272 | CDJ | MILESTONE GROWTH FUND INC. | | 650.39 | |
| | 1/31/10 27273 | CDJ | STEVE PORTNOY TRUSTEE | | 51.74 | |
| | 1/31/10 27274 | CDJ | STEVE PORTNOY TRUSTEE | | 51.74 | |
| | 1/31/10 27275 | CDJ | JERROLD MARCH | | 525.53 | |
| | 1/31/10 27276 | CDJ | THE OSG CORP. | | 1,218.19 | |
| | 1/31/10 27277 | CDJ | Pinnacle Commercial Capital, L | | 533.17 | |
| | | | Current Period Change | 147,645.04 | 285,896.02 | -138,250.98 |
| | 2/1/10 | | Beginning Balance | | | 7,327,587.40 |
| | 2/1/10 201ACH1 | CRJ | PWT HOLDINGS INC. | 30,000.00 | | |
| | 2/1/10 0201ACH2 | CRJ | SOUNDVIEW BROADCASTING LLC | 14,381.99 | | |
| | 2/1/10 0201ACH3 | CRJ | GOLDEN TRIANGLE ENT. LLC | 12,181.94 | | |
| | 2/1/10 0201ACH4 | CRJ | CHAO TENGA LLC | 10,303.57 | | |
| | 2/1/10 0201WT1 | CRJ | Loan Track deposits | 15,837.55 | | |
| | 2/1/10 0201INT | CDJ | ISRAEL DISCOUNT BANK | | 1,000.00 | |
| | 2/1/10 0201IDB | CDJ | ISRAEL DISCOUNT BANK | | 750.00 | |
| | 2/3/10 0203ACH1 | CRJ | GWE INC. | 12,181.94 | | |
| | 2/3/10 0203IDB | CRJ | MISCELLANEOUS DEPOSIT | 30.80 | | |
| | 2/4/10 27278 | CDJ | PPCP INC. | | 320.00 | |
| | 2/4/10 27279 | CDJ | PPCP INC. | | 80.00 | |
| | 2/4/10 27280 | CDJ | MEDALLION FUNDING CORP. AS SER | | 1,262.03 | |
| | 2/4/10 27281 | CDJ | THE WEEKS-LERMAN GROUP | | 145.29 | |
| | 2/4/10 27282 | CDJ | JOHN R. LAIRD | | 1,250.00 | |
| | 2/4/10 27283 | CDJ | HOWARD SOMMER | | 1,000.00 | |
| | 2/4/10 27284 | CDJ | PETER BOOCKVAR | | 1,000.00 | |
| | 2/4/10 27285 | CDJ | IVAN WOLPERT | | 1,250.00 | |
| | 2/4/10 27286 | CDJ | JOHN R. LAIRD | | 1,000.00 | |
| | 2/4/10 27287 | CDJ | STEVEN ETRA | | 1,000.00 | |
| | 2/4/10 0204BC1 | CDJ | ISRAEL DISCOUNT BANK | | 12,181.94 | |
| | 2/8/10 0208D01 | CRJ | Loan Track deposits | 7,740.30 | | |
| | 2/9/10 0209D01 | CRJ | Loan Track deposits | 1,920.27 | | |
| | 2/11/10 0211WT1 | CRJ | Loan Track deposits | 7,304.94 | | |
| | 2/12/10 | CRJ | Loan Track deposits | 10,118.09 | | |

6/22/11 at 14:44:27.77

## Elk Associates Funding Corporation
## General Ledger
## For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 1002 (cont.) | 0212WT | | | | | |
| | 2/16/10<br>27288 | CDJ | CLAREWOOD<br>CONSULTING LLC | | 19,155.00 | |
| | 2/16/10<br>27289 | CDJ | EMPIRE HEALTH<br>CHOICE HMO | | 3,789.00 | |
| | 2/16/10<br>27290 | CDJ | ELLEN WALKER | | 432.16 | |
| | 2/16/10<br>27291 | CDJ | FAIRVIEW<br>INVESTMENT<br>SERVICES | | 2,604.17 | |
| | 2/16/10<br>27292 | CDJ | NEW YORK STATE<br>INSURANCE FUND | | 1,352.16 | |
| | 2/16/10<br>27293 | CDJ | STAPLES | | 1,477.62 | |
| | 2/16/10<br>27294 | CDJ | STEPHEN H.<br>TARNOFSKY CPA | | 5,500.00 | |
| | 2/16/10<br>27295 | CDJ | STEPHEN H.<br>TARNOFSKY CPA | | 4,400.00 | |
| | 2/16/10<br>27296 | CDJ | TRANS UNION | | 43.55 | |
| | 2/16/10<br>27297 | CDJ | GRANOFF WALKER<br>FORLENZA PC | | 18,301.12 | |
| | 2/16/10<br>27298 | CDJ | GRANOFF WALKER<br>FORLENZA PC | | 2,855.00 | |
| | 2/18/10<br>27300 | CDJ | SMALL BUSINESS<br>ADMINISTRATION | | 200.00 | |
| | 2/18/10<br>0218D01 | CRJ | Loan Track deposits | 8,677.03 | | |
| | 2/19/10<br>0219ACH1 | CRJ | MISCELLANEOUS<br>DEPOSIT | 886.67 | | |
| | 2/26/10<br>0226ACH1 | CRJ | GOLDEN TRIANGLE<br>ENT. LLC | 6,250.89 | | |
| | | | Current Period Change | 137,815.98 | 82,349.04 | 55,466.94 |
| | 3/1/10 | | Beginning Balance | | | 7,383,054.34 |
| | 3/1/10<br>0301ACH1 | CRJ | PWT HOLDINGS INC. | 30,000.00 | | |
| | 3/1/10<br>0301ACH2 | CRJ | GWE INC. | 12,181.94 | | |
| | 3/1/10<br>0301ACH3 | CRJ | SOUNDVIEW<br>BROADCASTING LLC | 14,381.99 | | |
| | 3/1/10<br>0301ACH4 | CRJ | CHAO TENGA LLC | 10,303.57 | | |
| | 3/1/10<br>0301IDBIN | CDJ | ISRAEL DISCOUNT<br>BANK | | 875.00 | |
| | 3/1/10<br>0301SBAIN | CDJ | SMALL BUSINESS<br>ADMINISTRATION | | 309,849.66 | |
| | 3/2/10<br>0302wt1 | CRJ | Loan Track deposits | 1,046.80 | | |
| | 3/3/10<br>0303D01 | CRJ | Loan Track deposits | 27,734.69 | | |
| | 3/5/10<br>0305INT | CRJ | MISCELLANEOUS<br>DEPOSIT | 30.80 | | |
| | 3/19/10<br>0319Ach1 | CRJ | MISCELLANEOUS<br>DEPOSIT | 883.33 | | |
| | 3/22/10<br>0322WT | CDJ | BANK OF NEW YORK | | 24,940.76 | |
| | 3/23/10<br>0323D01 | CRJ | Loan Track deposits | 905.34 | | |
| | 3/30/10<br>26219V | CDJ | GAROFALO &<br>THIERSCH, P.C. | 20,000.00 | | |
| | 3/31/10 | CRJ | GOLDEN TRIANGLE<br>ENT. LLC | 6,250.89 | | |

6/22/11 at 14:44:27.82

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 1002 (cont.) | 331ACH1 | | ENT. LLC | | | |
| | | | Current Period Change | 123,719.35 | 335,665.42 | -211,946.07 |
| | 4/1/10 | | Beginning Balance | | | 7,171,108.27 |
| | 4/1/10<br>0401WT | CDJ | HARRIS N.A. | | 975,050.00 | |
| | 4/1/10<br>0401ACH1 | CRJ | PWT HOLDINGS INC. | 30,000.00 | | |
| | 4/1/10<br>0401ACH2 | CRJ | GWE INC. | 12,181.94 | | |
| | 4/1/10<br>0401ACH3 | CRJ | SOUNDVIEW<br>BROADCASTING LLC | 14,381.99 | | |
| | 4/1/10<br>0401ACH4 | CRJ | CHAO TENGA LLC | 10,303.57 | | |
| | 4/1/10<br>0401wt1 | CRJ | Loan Track deposits | 1,161.85 | | |
| | 4/1/10<br>0401IDB | CDJ | ISRAEL DISCOUNT<br>BANK | | 937.50 | |
| | 4/5/10<br>0405IDB | CRJ | MISCELLANEOUS<br>DEPOSIT | 31.83 | | |
| | 4/9/10<br>27301 | CDJ | GLOCAP SEARCH LLC | | 13,750.00 | |
| | 4/16/10<br>0416D01 | CRJ | MISCELLANEOUS<br>DEPOSIT | 1,229.04 | | |
| | 4/19/10<br>0419D01 | CRJ | MISCELLANEOUS<br>DEPOSIT | 880.00 | | |
| | 4/22/10<br>0422WT | CRJ | Loan Track deposits | 10,141.21 | | |
| | 4/22/10<br>0422IDB | CDJ | ISRAEL DISCOUNT<br>BANK | | 25.00 | |
| | 4/23/10<br>0423D01 | CRJ | Loan Track deposits | 733.22 | | |
| | 4/23/10<br>0423D02 | CRJ | MISCELLANEOUS<br>DEPOSIT | 378.58 | | |
| | 4/26/10<br>27302 | CDJ | AETNA US<br>HEALTHCARE | | 1,156.00 | |
| | 4/26/10<br>27303 | CDJ | BUSINESS WIRE, INC. | | 470.00 | |
| | 4/26/10<br>27304 | CDJ | MARGARET CHANCE | | 172.70 | |
| | 4/26/10<br>27305 | CDJ | COMMISSIONER OF<br>TAXATION & FIN | | 141.00 | |
| | 4/26/10<br>27306 | CDJ | DEPT OF STATE | | 9.00 | |
| | 4/26/10<br>27307 | CDJ | EMPIRE HEALTH<br>CHOICE HMO | | 4,271.62 | |
| | 4/26/10<br>27308 | CDJ | FEDERAL EXPRESS | | 241.14 | |
| | 4/26/10<br>27309 | CDJ | INTERNATIONAL<br>PRINT GROUP LLC | | 283.08 | |
| | 4/26/10<br>27310 | CDJ | INTERNATIONAL<br>PRINT GROUP LLC | | 217.75 | |
| | 4/26/10<br>27311 | CDJ | INTERNATIONAL<br>PRINT GROUP LLC | | 293.96 | |
| | 4/26/10<br>27312 | CDJ | INTERNATIONAL<br>PRINT GROUP LLC | | 370.18 | |
| | 4/26/10<br>27313 | CDJ | OXFORD HEALTH<br>PLANS | | 6,135.10 | |
| | 4/26/10<br>27314 | CDJ | STEPHEN H.<br>TARNOFSKY CPA | | 8,800.00 | |
| | 4/26/10<br>27315 | CDJ | TIME WARNER CABLE<br>OF NYC | | 86.14 | |

6/22/11 at 14:44:27.87

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 1002 (cont.) | 4/26/10 27316 | CDJ | THE WEEKS-LERMAN GROUP | | 16.33 | |
| | 4/26/10 27317 | CDJ | CON EDISON | | 868.85 | |
| | 4/26/10 0426D01 | CRJ | Loan Track deposits | 2,569.82 | | |
| | 4/30/10 27306V | CDJ | DEPT OF STATE | 9.00 | | |
| | 4/30/10 0430wt1 | CRJ | Loan Track deposits | 34,908.89 | | |
| | 4/30/10 0430ACH1 | CRJ | GOLDEN TRIANGLE ENT. LLC | 6,250.89 | | |
| | 4/30/10 0430IDBIN | CDJ | ISRAEL DISCOUNT BANK | | 937.50 | |
| | 4/30/10 0430IDB1 | CDJ | ISRAEL DISCOUNT BANK | | 52.50 | |
| | 4/30/10 0430IDB2 | CDJ | ISRAEL DISCOUNT BANK | | 55.50 | |
| | | | Current Period Change | 125,161.83 | 1,014,340.85 | -889,179.02 |
| | 5/1/10 | | Beginning Balance | | | 6,281,929.25 |
| | 5/3/10 0503WT3 | CRJ | Loan Track deposits | 1,126.00 | | |
| | 5/3/10 0503ACH1 | CRJ | PWT HOLDINGS INC. | 100,000.00 | | |
| | 5/4/10 0504ACH1 | CRJ | SOUNDVIEW BROADCASTING LLC | 14,381.99 | | |
| | 5/4/10 0504ACH2 | CRJ | GWE INC. | 12,181.94 | | |
| | 5/5/10 27318 | CDJ | KENNETH A EDELSTEIN | | 100.00 | |
| | 5/5/10 0505IDB | CRJ | MISCELLANEOUS DEPOSIT | 30.80 | | |
| | 5/6/10 27319 | CDJ | CON EDISON | | 405.00 | |
| | 5/17/10 0517WT | CRJ | Loan Track deposits | 24,675.09 | | |
| | 5/19/10 0519ach1 | CRJ | MISCELLANEOUS DEPOSIT | 876.67 | | |
| | 5/19/10 0519WT | CDJ | JEFFERIES & COMPANY INC. | | 1,250,050.00 | |
| | 5/25/10 0525WT | CRJ | Loan Track deposits | 85,452.03 | | |
| | 5/25/10 0525DM | CDJ | CON EDISON | | 45.00 | |
| | 5/31/10 0531ACH1 | CRJ | GOLDEN TRIANGLE ENT. LLC | 6,250.89 | | |
| | | | Current Period Change | 244,975.41 | 1,250,600.00 | -1,005,624.59 |
| | 6/1/10 | | Beginning Balance | | | 5,276,304.66 |
| | 6/1/10 0601wt1 | CRJ | Loan Track deposits | 1,165.82 | | |
| | 6/1/10 0601wt2 | CRJ | Loan Track deposits | 0.15 | | |
| | 6/1/10 0601IDB | CDJ | ISRAEL DISCOUNT BANK | | 1,000.00 | |
| | 6/2/10 0602ACH1 | CRJ | PWT HOLDINGS INC. | 100,000.00 | | |
| | 6/2/10 0602ACH2 | CRJ | GWE INC. | 12,181.94 | | |
| | 6/2/10 | CRJ | SOUNDVIEW BROADCASTING LLC | 14,381.99 | | |

6/22/11 at 14:44:27.91

# Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 1002 (cont.) | 0602ACH3 | | BROADCASTING LLC | | | |
| | 6/3/10 27320 | CDJ | A-1 INTERNATIONAL INC. | | 17.00 | |
| | 6/3/10 27321 | CDJ | AMERICAN EXPRESS | | 489.07 | |
| | 6/3/10 27322 | CDJ | MARGARET CHANCE | | 946.91 | |
| | 6/3/10 27323 | CDJ | EMPIRE HEALTH CHOICE HMO | | 3,303.22 | |
| | 6/3/10 27324 | CDJ | EMPIRE HEALTH CHOICE HMO | | 205.42 | |
| | 6/3/10 27325 | CDJ | PEPPER HAMILTON LLP | | 318.86 | |
| | 6/3/10 27326 | CDJ | ROSEN SEYMOUR SHAPSS | | 32,623.05 | |
| | 6/3/10 27327 | CDJ | STEPHEN H. TARNOFSKY CPA | | 7,700.00 | |
| | 6/3/10 27328 | CDJ | SURGE ELECTRONIC MEDIA GROUP L | | 5,996.00 | |
| | 6/3/10 27329 | CDJ | SURGE ELECTRONIC MEDIA GROUP L | | 61.07 | |
| | 6/3/10 27330 | CDJ | SURGE ELECTRONIC MEDIA GROUP L | | 2,678.13 | |
| | 6/3/10 27331 | CDJ | SURGE ELECTRONIC MEDIA GROUP L | | 155.06 | |
| | 6/3/10 27332 | CDJ | TRANSITCENTER INC. | | 1,068.23 | |
| | 6/3/10 27333 | CDJ | VERIZON | | 308.13 | |
| | 6/3/10 27334 | CDJ | MARKIT WSO CORPORATION | | 1,996.71 | |
| | 6/4/10 0604IDBIN | CRJ | MISCELLANEOUS DEPOSIT | 30.80 | | |
| | 6/7/10 27335 | CDJ | GRANOFF WALKER FORLENZA PC | | 18,167.86 | |
| | 6/8/10 27336 | CDJ | ELK ASSOCIATES FUNDING | | 2,500.00 | |
| | 6/8/10 27337 | CDJ | MARINO & ASSOCIATES, P.C. | | 2,500.00 | |
| | 6/8/10 27338 | CDJ | MARINO & ASSOCIATES, P.C. | | 600.00 | |
| | 6/8/10 27339 | CDJ | PATROON OPERATING COMPANY,LLC | | 4,536.00 | |
| | 6/8/10 0608WT | CDJ | CPM BUILDERS INC. d/b/a MG &CO | | 239,914.00 | |
| | 6/14/10 27341 | CDJ | CLAREWOOD CONSULTING LLC | | 13,887.50 | |
| | 6/14/10 27342 | CDJ | CON EDISON | | 16.12 | |
| | 6/14/10 27343 | CDJ | CON EDISON | | 234.49 | |
| | 6/14/10 27344 | CDJ | Continental Stock Transfer & | | 1,283.44 | |
| | 6/14/10 27345 | CDJ | CT CORPORATION | | 157.18 | |
| | 6/14/10 27346 | CDJ | ELLEN WALKER | | 430.54 | |
| | 6/14/10 27347 | CDJ | FAIRVIEW INVESTMENT SERVICES | | 2,604.17 | |
| | 6/14/10 27348 | CDJ | STAPLES | | 297.20 | |

6/22/11 at 14:44:27.96

Page: 19

# Elk Associates Funding Corporation
## General Ledger
## For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 1002 (cont.) | 6/14/10<br>27349 | CDJ | TRANS UNION | | 43.55 | |
| | 6/14/10<br>27350 | CDJ | GRANOFF WALKER<br>FORLENZA PC | | 1,963.50 | |
| | 6/14/10<br>27399 | CDJ | GRANOFF WALKER<br>FORLENZA PC | | 725.50 | |
| | 6/14/10<br>27400 | CDJ | THE WEEKS-LERMAN<br>GROUP | | 61.51 | |
| | 6/14/10<br>27340 | CDJ | MARINO &<br>ASSOCIATES PC | | 6,737.75 | |
| | 6/18/10<br>0618WT | CDJ | STURSBERG AND<br>ASSOCIATES LLC | | 45,000.00 | |
| | 6/21/10<br>0618IDB | CDJ | ISRAEL DISCOUNT<br>BANK | | 50.00 | |
| | 6/22/10<br>0622ACH | CRJ | MISCELLANEOUS<br>DEPOSIT | 873.33 | | |
| | 6/24/10<br>27351 | CDJ | GRANOFF WALKER<br>FORLENZA PC | | 530.00 | |
| | 6/30/10<br>0630ACh1 | CRJ | PWT HOLDINGS INC. | 136,945.01 | | |
| | 6/30/10<br>0630ACH2 | CRJ | GOLDEN TRIANGLE<br>ENT. LLC | 6,250.89 | | |
| | 6/30/10<br>0630Wt1 | CRJ | Loan Track deposits | 0.61 | | |
| | 6/30/10<br>0630INT | CDJ | ISRAEL DISCOUNT<br>BANK | | 906.25 | |
| | 6/30/10<br>0631IDB | CDJ | ISRAEL DISCOUNT<br>BANK | | 750.00 | |
| | | | Current Period Change | 271,830.54 | 402,763.42 | -130,932.88 |
| | 6/30/10 | | **Ending Balance** | | | **5,145,371.78** |
| 1004.11<br>CASH - CAPITAL ON | 7/1/09 | | Beginning Balance | | | 1,935.76 |
| | 8/1/09 | | Beginning Balance | | | 1,935.76 |
| | 9/1/09 | | Beginning Balance | | | 1,935.76 |
| | 10/1/09 | | Beginning Balance | | | 1,935.76 |
| | 11/1/09 | | Beginning Balance | | | 1,935.76 |
| | 11/6/09<br>1106COB | CDJ | CAPITAL ONE BANK | | 125.21 | |
| | | | Current Period Change | | 125.21 | -125.21 |
| | 12/1/09 | | Beginning Balance | | | 1,810.55 |
| | 1/1/10 | | Beginning Balance | | | 1,810.55 |
| | 2/1/10 | | Beginning Balance | | | 1,810.55 |
| | 2/8/10<br>0208COB | CDJ | CAPITAL ONE BANK | | 310.29 | |
| | | | Current Period Change | | 310.29 | -310.29 |
| | 3/1/10 | | Beginning Balance | | | 1,500.26 |
| | 4/1/10 | | Beginning Balance | | | 1,500.26 |
| | 5/1/10 | | Beginning Balance | | | 1,500.26 |

6/22/11 at 14:44:28.01

## Elk Associates Funding Corporation
## General Ledger
## For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 1004.11 (cont.) | 6/1/10 | | Beginning Balance | | | 1,500.26 |
| | 6/30/10 | | **Ending Balance** | | | **1,500.26** |
| 1004.2<br>CASH - JP MORGAN | 7/1/09 | | Beginning Balance | | | 2,763.59 |
| | 7/31/09<br>0731Int | CRJ | MISCELLANEOUS DEPOSIT | 0.59 | | |
| | | | Current Period Change | 0.59 | | 0.59 |
| | 8/1/09 | | Beginning Balance | | | 2,764.18 |
| | 8/31/09<br>0831JPMCI | CRJ | MISCELLANEOUS DEPOSIT | 0.59 | | |
| | | | Current Period Change | 0.59 | | 0.59 |
| | 9/1/09 | | Beginning Balance | | | 2,764.77 |
| | 9/30/09<br>0930JPINT | CRJ | MISCELLANEOUS DEPOSIT | 0.57 | | |
| | | | Current Period Change | 0.57 | | 0.57 |
| | 10/1/09 | | Beginning Balance | | | 2,765.34 |
| | 10/30/09<br>1030INT | CRJ | MISCELLANEOUS DEPOSIT | 0.57 | | |
| | 10/31/09<br>5219V | CDJ | JP MORGAN CHASE | 25.00 | | |
| | | | Current Period Change | 25.57 | | 25.57 |
| | 11/1/09 | | Beginning Balance | | | 2,790.91 |
| | 11/30/09<br>1130INT | CRJ | MISCELLANEOUS DEPOSIT | 0.59 | | |
| | | | Current Period Change | 0.59 | | 0.59 |
| | 12/1/09 | | Beginning Balance | | | 2,791.50 |
| | 12/31/09<br>1231Int | CRJ | MISCELLANEOUS DEPOSIT | 0.59 | | |
| | | | Current Period Change | 0.59 | | 0.59 |
| | 1/1/10 | | Beginning Balance | | | 2,792.09 |
| | 1/29/10<br>0129INT | CRJ | MISCELLANEOUS DEPOSIT | 0.55 | | |
| | | | Current Period Change | 0.55 | | 0.55 |
| | 2/1/10 | | Beginning Balance | | | 2,792.64 |
| | 2/26/10<br>0226INT | CRJ | MISCELLANEOUS DEPOSIT | 0.53 | | |
| | | | Current Period Change | 0.53 | | 0.53 |
| | 3/1/10 | | Beginning Balance | | | 2,793.17 |
| | 3/31/10<br>0331Int | CRJ | MISCELLANEOUS DEPOSIT | 0.63 | | |
| | | | Current Period Change | 0.63 | | 0.63 |
| | 4/1/10 | | Beginning Balance | | | 2,793.80 |

6/22/11 at 14:44:28.04

Page: 21

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 1004.2 (cont.) | 4/30/10 0430Int | CRJ | MISCELLANEOUS DEPOSIT | 0.55 | | |
| | | | Current Period Change | 0.55 | | 0.55 |
| | 5/1/10 | | Beginning Balance | | | 2,794.35 |
| | 5/28/10 0528INT | CRJ | MISCELLANEOUS DEPOSIT | 0.42 | | |
| | | | Current Period Change | 0.42 | | 0.42 |
| | 6/1/10 | | Beginning Balance | | | 2,794.77 |
| | 6/30/10 0630INT | CRJ | MISCELLANEOUS DEPOSIT | 0.50 | | |
| | | | Current Period Change | 0.50 | | 0.50 |
| | 6/30/10 | | Ending Balance | | | 2,795.27 |
| 1004.41 CITIBANK | 7/1/09 | | Beginning Balance | | | 70,936.58 |
| | 7/3/09 0703WT | CRJ | Loan Track deposits | 5.56 | | |
| | 7/6/09 0706WT | CRJ | Loan Track deposits | 24,491.36 | | |
| | 7/8/09 10599 | CDJ | ELK ASSOCIATES FUNDING | | 20,000.00 | |
| | 7/8/09 10600 | CDJ | ELK ASSOCIATES FUNDING | | 20,000.00 | |
| | 7/8/09 10601 | CDJ | ELK ASSOCIATES FUNDING | | 30,000.00 | |
| | 7/20/09 0720CITI | CDJ | CITIBANK | | 118.11 | |
| | 7/22/09 0722WT | CRJ | Loan Track deposits | 15,022.22 | | |
| | 7/27/09 0727WT1 | CRJ | Loan Track deposits | 32,386.18 | | |
| | 7/29/09 10602 | CDJ | CLAREWOOD CONSULTING LLC | | 10,000.00 | |
| | 7/29/09 10603 | CDJ | CLAREWOOD CONSULTING LLC | | 676.29 | |
| | 7/29/09 10604 | CDJ | CLAREWOOD CONSULTING LLC | | 1,331.25 | |
| | 7/29/09 10605 | CDJ | FIREMAN FUND | | 17,367.34 | |
| | 7/29/09 10606 | CDJ | OXFORD HEALTH PLANS | | 5,746.08 | |
| | 7/29/09 10607 | CDJ | PPCP INC. | | 180.00 | |
| | 7/29/09 10608 | CDJ | PPCP INC. | | 45.00 | |
| | 7/29/09 10609 | CDJ | ROBERT MAZLIACH | | 255.56 | |
| | 7/29/09 10610 | CDJ | TRUE TYPE PRINTING CO. INC. | | 4,386.39 | |
| | 7/31/09 0731WT1 | CRJ | Loan Track deposits | 23,278.24 | | |
| | 7/31/09 0731WT2 | CRJ | Loan Track deposits | 2,206.90 | | |
| | | | Current Period Change | 97,390.46 | 110,106.02 | -12,715.56 |
| | 8/1/09 | | Beginning Balance | | | 58,221.02 |

6/22/11 at 14:44:28.09

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 1004.41 (cont.) | 8/3/09 10611 | CDJ | MEDALLION FUNDING CORP. AS SER | | 1,323.19 | |
| | 8/3/09 10612 | CDJ | MEDALLION FUNDING CORP. AS SER | | 1,262.03 | |
| | 8/3/09 0803WT1 | CRJ | Loan Track deposits | 31.06 | | |
| | 8/6/09 0806WT | CRJ | Loan Track deposits | 2,570.16 | | |
| | 8/10/09 10613 | CDJ | GRANOFF WALKER FORLENZA PC | | 18,092.53 | |
| | 8/12/09 0812D01 | CRJ | Loan Track deposits | 200.00 | | |
| | 8/13/09 0813WT | CRJ | Loan Track deposits | 1.76 | | |
| | 8/18/09 0818WT | CRJ | MISCELLANEOUS DEPOSIT | 1,251.05 | | |
| | 8/18/09 0818CITI | CDJ | CITIBANK | | 94.91 | |
| | 8/26/09 0826D01 | CRJ | MISCELLANEOUS DEPOSIT | 24.59 | | |
| | 8/31/09 10614 | CDJ | BRIAN ACKERMAN | | 34.65 | |
| | 8/31/09 10615 | CDJ | FRESHSTART VENTURE CAPITAL CO | | 743.60 | |
| | 8/31/09 10616 | CDJ | HANAM CAPITAL CORPORATION | | 328.28 | |
| | 8/31/09 10617 | CDJ | MEDALLION FUNDING CORP. | | 712.35 | |
| | 8/31/09 10618 | CDJ | MEYER ACKERMAN | | 121.03 | |
| | 8/31/09 10619 | CDJ | MILESTONE GROWTH FUND INC. | | 650.39 | |
| | 8/31/09 10620 | CDJ | Pinnacle Commercial Capital, L | | 533.81 | |
| | 8/31/09 10621 | CDJ | STEVE PORTNOY TRUSTEE | | 51.74 | |
| | 8/31/09 10625 | CDJ | STEVE PORTNOY TRUSTEE | | 51.74 | |
| | 8/31/09 10623 | CDJ | THE OSG CORP. | | 1,218.19 | |
| | 8/31/09 10624 | CDJ | JERROLD MARCH | | 525.53 | |
| | | | Current Period Change | 4,078.62 | 25,743.97 | -21,665.35 |
| | 9/1/09 | | Beginning Balance | | | 36,555.67 |
| | 9/1/09 0901WT1 | CRJ | Loan Track deposits | 25,000.00 | | |
| | 9/1/09 0901WT2 | CRJ | Loan Track deposits | 17,001.47 | | |
| | 9/1/09 0901WT3 | CRJ | Loan Track deposits | 17,037.04 | | |
| | 9/1/09 0901WT4 | CRJ | Loan Track deposits | 213.20 | | |
| | 9/1/09 0901WT5 | CRJ | Loan Track deposits | 31.05 | | |
| | 9/9/09 10626 | CDJ | ELK ASSOCIATES FUNDING | | 50,000.00 | |
| | 9/9/09 0909WT1 | CRJ | Loan Track deposits | 30,360.00 | | |
| | 9/9/09 0909WT2 | CRJ | Loan Track deposits | 76.67 | | |

6/22/11 at 14:44:28.13

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 1004.41 (cont.) | 9/10/09<br>0910WT1 | CRJ | Loan Track deposits | 14.47 | | |
| | 9/14/09<br>10627 | CDJ | BLOOMBERG<br>FINANCE LP | | 6,205.88 | |
| | 9/14/09<br>10628 | CDJ | BLOOMBERG<br>FINANCE LP | | 370.78 | |
| | 9/14/09<br>10629 | CDJ | BLOOMBERG<br>FINANCE LP | | 1,159.65 | |
| | 9/14/09<br>10630 | CDJ | CHARLES L.<br>GOODBAR, III, ESQ. | | 1,200.00 | |
| | 9/14/09<br>10631 | CDJ | CLAREWOOD<br>CONSULTING LLC | | 10,000.00 | |
| | 9/14/09<br>10632 | CDJ | COMPUWEB | | 149.85 | |
| | 9/14/09<br>10633 | CDJ | Continental Stock<br>Transfer & | | 1,000.00 | |
| | 9/14/09<br>10634 | CDJ | FAIRVIEW<br>INVESTMENT<br>SERVICES | | 2,604.17 | |
| | 9/14/09<br>10635 | CDJ | Gary C. Granoff | | 320.17 | |
| | 9/14/09<br>10636 | CDJ | JUSLER ELECTRICAL<br>CORP. | | 700.07 | |
| | 9/14/09<br>10637 | CDJ | ROSEN SEYMOUR<br>SHAPSS | | 6,526.50 | |
| | 9/14/09<br>10638 | CDJ | STEPHEN H.<br>TARNOFSKY CPA | | 7,700.00 | |
| | 9/14/09<br>10639 | CDJ | STEPHEN H.<br>TARNOFSKY CPA | | 8,800.00 | |
| | 9/14/09<br>10640 | CDJ | STURSBERG AND<br>ASSOCIATES LLC | | 1,875.85 | |
| | 9/18/09<br>0918CITI | CDJ | CITIBANK | | 46.79 | |
| | 9/23/09<br>0923wt1 | CRJ | Loan Track deposits | 37,037.04 | | |
| | 9/23/09<br>0923wt2 | CRJ | Loan Track deposits | 625.32 | | |
| | 9/28/09<br>0928WT1 | CRJ | Loan Track deposits | 89.93 | | |
| | 9/30/09<br>0930wt1 | CRJ | Loan Track deposits | 17,219.39 | | |
| | 9/30/09<br>0930wt2 | CRJ | Loan Track deposits | 3,750.00 | | |
| | 9/30/09<br>0930wt3 | CRJ | Loan Track deposits | 3,045.74 | | |
| | 9/30/09<br>0930wt4 | CRJ | Loan Track deposits | 2,874.48 | | |
| | 9/30/09<br>0930wt5 | CRJ | Loan Track deposits | 2,102.86 | | |
| | 9/30/09<br>0930wt6 | CRJ | Loan Track deposits | 346.84 | | |
| | 9/30/09<br>0930wt7 | CRJ | Loan Track deposits | 311.11 | | |
| | 9/30/09<br>0930wt8 | CRJ | Loan Track deposits | 17.26 | | |
| | | | Current Period Change | 157,153.87 | 98,659.71 | 58,494.16 |
| | 10/1/09 | | Beginning Balance | | | 95,049.83 |
| | 10/1/09<br>1001WT1 | CRJ | Loan Track deposits | 31.09 | | |
| | 10/6/09<br>1006WT1 | CRJ | Loan Track deposits | 24,079.01 | | |

6/22/11 at 14:44:28.18

## Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 1004.41 (cont.) | 10/12/09 10641 | CDJ | AMERICAN EXPRESS | | 260.72 | |
| | 10/12/09 10642 | CDJ | CLAREWOOD CONSULTING LLC | | 10,000.00 | |
| | 10/12/09 10643 | CDJ | ROSEN SEYMOUR SHAPSS | | 45,121.75 | |
| | 10/12/09 10644 | CDJ | SURGE ELECTRONIC MEDIA GROUP L | | 2,183.13 | |
| | 10/12/09 10645 | CDJ | TRUE TYPE PRINTING CO. INC. | | 4,521.09 | |
| | 10/12/09 10646 | CDJ | GRANOFF WALKER FORLENZA PC | | 17,879.71 | |
| | 10/15/09 1015CITIB | CDJ | CITIBANK | | 816.56 | |
| | 10/20/09 1020CITI | CDJ | CITIBANK | | 192.67 | |
| | 10/21/09 1021WT1 | CRJ | Loan Track deposits | 15,187.30 | | |
| | 10/28/09 10647 | CDJ | ROSEN SEYMOUR SHAPSS | | 31,718.00 | |
| | 10/30/09 1030WT1 | CRJ | Loan Track deposits | 22,507.80 | | |
| | 10/30/09 1030WT2 | CRJ | Loan Track deposits | 1,923.05 | | |
| | 10/31/09 AJE8 | GENJ | Ck# 10645 10/12/09 - $4,521.09 debited by Citibank $4,521.08 | 0.01 | | |
| | | | Current Period Change | 63,728.26 | 112,693.63 | -48,965.37 |
| | 11/1/09 | | Beginning Balance | | | 46,084.46 |
| | 11/3/09 1103WT2 | CRJ | Loan Track deposits | 63.40 | | |
| | 11/4/09 1104D03 | CRJ | MISCELLANEOUS DEPOSIT | 203,000.00 | | |
| | 11/4/09 1104WT | CRJ | Loan Track deposits | 10.01 | | |
| | 11/6/09 1106wt | CRJ | Loan Track deposits | 2,570.16 | | |
| | 11/17/09 1117d01 | CRJ | Loan Track deposits | 2,000.00 | | |
| | 11/18/09 1118CITI | CDJ | CITIBANK | | 45.63 | |
| | | | Current Period Change | 207,643.57 | 45.63 | 207,597.94 |
| | 12/1/09 | | Beginning Balance | | | 253,682.40 |
| | 12/1/09 1201wt2 | CRJ | Loan Track deposits | 25,000.00 | | |
| | 12/1/09 1201wt3 | CRJ | Loan Track deposits | 17,655.84 | | |
| | 12/4/09 1204WT1 | CRJ | Loan Track deposits | 61.36 | | |
| | 12/7/09 1207wt1 | CRJ | Loan Track deposits | 43.43 | | |
| | 12/9/09 1209D01 | CRJ | Loan Track deposits | 2,500.00 | | |
| | 12/9/09 1209WT1 | CRJ | Loan Track deposits | 86,956.52 | | |
| | 12/9/09 1209WT2 | CRJ | Loan Track deposits | 30,030.00 | | |
| | 12/9/09 1209WT3 | CRJ | MISCELLANEOUS DEPOSIT | 7,800.90 | | |

Case 2:17-cv-03586-JFB-AYS   Document 47-2   Filed 10/06/17   Page 676 of 1053 PageID #: 1250

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 1004.41 (cont.) | 12/11/09<br>10648 | CDJ | ELK ASSOCIATES<br>FUNDING | | 150,000.00 | |
| | 12/14/09<br>10649 | CDJ | GRANOFF WALKER<br>FORLENZA PC | | 18,080.08 | |
| | 12/17/09<br>1217WT | CRJ | MISCELLANEOUS<br>DEPOSIT | 1,856.25 | | |
| | 12/22/09<br>1222WT1 | CRJ | Loan Track deposits | 25,925.93 | | |
| | 12/22/09<br>1222WT2 | CRJ | Loan Track deposits | 413.57 | | |
| | 12/24/09<br>1224WT1 | CRJ | MISCELLANEOUS<br>DEPOSIT | 8,940.05 | | |
| | 12/29/09<br>10650 | CDJ | AETNA US<br>HEALTHCARE | | 1,156.00 | |
| | 12/29/09<br>10651 | CDJ | BLOOMBERG<br>FINANCE LP | | 6,205.88 | |
| | 12/29/09<br>10652 | CDJ | BLOOMBERG<br>FINANCE LP | | 1,159.65 | |
| | 12/29/09<br>10653 | CDJ | BLOOMBERG<br>FINANCE LP | | 128.39 | |
| | 12/29/09<br>10654 | CDJ | BUSINESS WIRE, INC. | | 325.00 | |
| | 12/29/09<br>10655 | CDJ | MARGARET CHANCE | | 97.86 | |
| | 12/29/09<br>10656 | CDJ | MARGARET CHANCE | | 870.00 | |
| | 12/29/09<br>10657 | CDJ | EMPIRE HEALTH<br>CHOICE HMO | | 4,338.56 | |
| | 12/29/09<br>10658 | CDJ | OXFORD HEALTH<br>PLANS | | 6,135.10 | |
| | 12/29/09<br>10659 | CDJ | SURGE ELECTRONIC<br>MEDIA GROUP L | | 4,151.25 | |
| | 12/29/09<br>10660 | CDJ | SURGE ELECTRONIC<br>MEDIA GROUP L | | 1,679.81 | |
| | 12/29/09<br>10661 | CDJ | TRUE TYPE PRINTING<br>CO. INC. | | 4,485.49 | |
| | 12/29/09<br>10662 | CDJ | TRUE TYPE PRINTING<br>CO. INC. | | 4,490.96 | |
| | 12/29/09<br>10663 | CDJ | THE WEEKS-LERMAN<br>GROUP | | 24.32 | |
| | 12/29/09<br>10664 | CDJ | ZURICH INSURANCE<br>GROUP | | 306.48 | |
| | 12/31/09<br>1231Wt1 | CRJ | Loan Track deposits | 2,102.85 | | |
| | 12/31/09<br>1231Wt2 | CRJ | Loan Track deposits | 324.07 | | |
| | 12/31/09<br>1231Wt3 | CRJ | Loan Track deposits | 2,500.00 | | |
| | 12/31/09<br>1231Wt4 | CRJ | Loan Track deposits | 17,219.39 | | |
| | 12/31/09<br>1231Wt5 | CRJ | Loan Track deposits | 352.53 | | |
| | 12/31/09<br>1231Wt6 | CRJ | Loan Track deposits | 801.15 | | |
| | 12/31/09<br>1231Wt7 | CRJ | Loan Track deposits | 2,979.61 | | |
| | 12/31/09<br>1231Wt8 | CRJ | Loan Track deposits | 18.08 | | |
| | 12/31/09<br>1231Wt9 | CRJ | Loan Track deposits | 3,750.00 | | |
| | | | Current Period Change | 237,231.53 | 203,634.83 | 33,596.70 |
| | 1/1/10 | | Beginning Balance | | | 287,279.10 |

6/22/11 at 14:44:28.27                                                                Page: 26

# Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 1004.41 (cont.) | 1/6/10<br>0106WT1 | CRJ | Loan Track deposits | 22,028.60 | | |
| | 1/6/10<br>0106WT2 | CRJ | Loan Track deposits | 64.44 | | |
| | 1/11/10<br>0111WT | CRJ | Loan Track deposits | 8,000.00 | | |
| | 1/14/10<br>0114WT | CRJ | Loan Track deposits | 3.44 | | |
| | 1/15/10<br>10665 | CDJ | AMERICAN EXPRESS | | 1,708.73 | |
| | 1/15/10<br>10666 | CDJ | BUSINESS WIRE, INC. | | 325.00 | |
| | 1/15/10<br>10667 | CDJ | CLAREWOOD<br>CONSULTING LLC | | 19,155.00 | |
| | 1/15/10<br>10668 | CDJ | ELLEN WALKER | | 432.16 | |
| | 1/15/10<br>10669 | CDJ | FEDERAL EXPRESS | | 287.69 | |
| | 1/15/10<br>10670 | CDJ | INTERNATIONAL<br>PRINT GROUP LLC | | 919.99 | |
| | 1/15/10<br>10671 | CDJ | INTERNATIONAL<br>PRINT GROUP LLC | | 424.61 | |
| | 1/15/10<br>10672 | CDJ | INTERNATIONAL<br>PRINT GROUP LLC | | 244.97 | |
| | 1/15/10<br>10673 | CDJ | INTERNATIONAL<br>PRINT GROUP LLC | | 244.97 | |
| | 1/15/10<br>10674 | CDJ | INTERNATIONAL<br>PRINT GROUP LLC | | 228.64 | |
| | 1/15/10<br>10675 | CDJ | INTERNATIONAL<br>PRINT GROUP LLC | | 293.96 | |
| | 1/15/10<br>10676 | CDJ | INVESHARE INC. | | 25.60 | |
| | 1/15/10<br>10677 | CDJ | INVESHARE INC. | | 25.60 | |
| | 1/15/10<br>10678 | CDJ | MEDALLION FUNDING<br>CORP. AS SER | | 1,262.03 | |
| | 1/15/10<br>10679 | CDJ | NEW YORK STATE<br>INSURANCE FUND | | 1,342.16 | |
| | 1/15/10<br>10680 | CDJ | PPCP INC. | | 40.00 | |
| | 1/15/10<br>10681 | CDJ | PPCP INC. | | 10.00 | |
| | 1/15/10<br>10682 | CDJ | ROSEN SEYMOUR<br>SHAPSS | | 14,385.00 | |
| | 1/15/10<br>10683 | CDJ | STAPLES | | 1,680.30 | |
| | 1/15/10<br>10684 | CDJ | STEPHEN H.<br>TARNOFSKY CPA | | 13,200.00 | |
| | 1/15/10<br>10685 | CDJ | TRANS UNION | | 43.55 | |
| | 1/15/10<br>10686 | CDJ | THE TRIEBER GROUP,<br>LLC | | 243.91 | |
| | 1/15/10<br>10687 | CDJ | VERIZON | | 277.27 | |
| | 1/15/10<br>10688 | CDJ | GRANOFF WALKER<br>FORLENZA PC | | 17,726.23 | |
| | 1/15/10<br>10689 | CDJ | GRANOFF WALKER<br>FORLENZA PC | | 870.00 | |
| | 1/20/10<br>0120CITI | CDJ | CITIBANK | | 99.30 | |
| | 1/21/10<br>0121WT1 | CRJ | Loan Track deposits | 15,187.30 | | |

6/22/11 at 14:44:28.32

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 1004.41 (cont.) | 1/25/10 0125D01 | CRJ | Loan Track deposits | 905.15 | | |
| | 1/26/10 0126D01 | CRJ | Loan Track deposits | 10.00 | | |
| | 1/29/10 0129wt3 | CRJ | Loan Track deposits | 21,990.38 | | |
| | 1/29/10 0129wt4 | CRJ | Loan Track deposits | 1,351.33 | | |
| | | | Current Period Change | 69,540.64 | 75,496.67 | -5,956.03 |
| | 2/1/10 | | Beginning Balance | | | 281,323.07 |
| | 2/5/10 0205WT | CRJ | Loan Track deposits | 95.75 | | |
| | 2/8/10 0208WT1 | CRJ | Loan Track deposits | 2,626.03 | | |
| | 2/8/10 0208WT2 | CRJ | Loan Track deposits | 20.48 | | |
| | 2/11/10 0211WT2 | CRJ | Loan Track deposits | 6,200.00 | | |
| | 2/16/10 0216D01 | CRJ | MISCELLANEOUS DEPOSIT | 378.50 | | |
| | 2/22/10 0222D01 | CRJ | Loan Track deposits | 76.65 | | |
| | 2/25/10 0225D01 | CRJ | Loan Track deposits | 2,548.55 | | |
| | 2/28/10 10690 | CDJ | BRIAN ACKERMAN | | 34.65 | |
| | 2/28/10 10691 | CDJ | FRESHSTART VENTURE CAPITAL CO | | 743.60 | |
| | 2/28/10 10692 | CDJ | HANAM CAPITAL CORPORATION | | 328.28 | |
| | 2/28/10 10693 | CDJ | MEDALLION FUNDING CORP. | | 712.35 | |
| | 2/28/10 10694 | CDJ | MEYER ACKERMAN | | 121.03 | |
| | 2/28/10 10695 | CDJ | MILESTONE GROWTH FUND INC. | | 650.39 | |
| | 2/28/10 10696 | CDJ | Pinnacle Commercial Capital, L | | 533.14 | |
| | 2/28/10 10697 | CDJ | STEVE PORTNOY TRUSTEE | | 51.74 | |
| | 2/28/10 10698 | CDJ | STEVE PORTNOY TRUSTEE | | 51.74 | |
| | 2/28/10 10699 | CDJ | THE OSG CORP. | | 1,218.19 | |
| | 2/28/10 10700 | CDJ | JERROLD MARCH | | 525.53 | |
| | | | Current Period Change | 11,945.96 | 4,970.64 | 6,975.32 |
| | 3/1/10 | | Beginning Balance | | | 288,298.39 |
| | 3/1/10 0301WT1 | CRJ | Loan Track deposits | 462.33 | | |
| | 3/1/10 0301WT2 | CRJ | Loan Track deposits | 41,666.67 | | |
| | 3/1/10 0301WT3 | CRJ | Loan Track deposits | 67.18 | | |
| | 3/1/10 0301WT4 | CRJ | Loan Track deposits | 86.48 | | |
| | 3/1/10 0301WT5 | CRJ | Loan Track deposits | 25,000.00 | | |

6/22/11 at 14:44:28.37

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 1004.41 (cont.) | 3/1/10 0301WT6 | CRJ | Loan Track deposits | 25,049.46 | | |
| | 3/1/10 0301WT7 | CRJ | Loan Track deposits | 2,881.60 | | |
| | 3/2/10 0302wt2 | CRJ | Loan Track deposits | 7,836.04 | | |
| | 3/3/10 0303BC1 | CDJ | CITIBANK | | 1,710.30 | |
| | 3/9/10 10701 | CDJ | AETNA US HEALTHCARE | | 1,156.00 | |
| | 3/9/10 10702 | CDJ | AMERICAN EXPRESS | | 414.59 | |
| | 3/9/10 10703 | CDJ | BWD GROUP LIMITED | | 6,228.00 | |
| | 3/9/10 10704 | CDJ | CAFE BASIL | | 9.93 | |
| | 3/9/10 10705 | CDJ | MARGARET CHANCE | | 255.12 | |
| | 3/9/10 10706 | CDJ | ELLEN WALKER | | 432.16 | |
| | 3/9/10 10707 | CDJ | INTERNATIONAL PRINT GROUP LLC | | 195.98 | |
| | 3/9/10 10708 | CDJ | MEDALLION FUNDING CORP. AS SER | | 1,262.03 | |
| | 3/9/10 10709 | CDJ | SURGE ELECTRONIC MEDIA GROUP L | | 2,183.13 | |
| | 3/9/10 10710 | CDJ | SURGE ELECTRONIC MEDIA GROUP L | | 2,183.13 | |
| | 3/9/10 10711 | CDJ | TANTON AND COMPANY LLP | | 6,500.00 | |
| | 3/9/10 10712 | CDJ | TANTON AND COMPANY LLP | | 600.00 | |
| | 3/9/10 10713 | CDJ | VERIZON | | 279.69 | |
| | 3/9/10 10714 | CDJ | GRANOFF WALKER FORLENZA PC | | 2,026.00 | |
| | 3/9/10 10715 | CDJ | STAPLES | | 1,213.66 | |
| | 3/9/10 10716 | CDJ | TRANSITCENTER INC. | | 1,585.50 | |
| | 3/9/10 10717 | CDJ | STATE OF NEW JERSEY CBT | | 1,040.00 | |
| | 3/9/10 10718 | CDJ | STATE OF NEW JERSEY CBT | | 35.00 | |
| | 3/9/10 0309wt1 | CRJ | Loan Track deposits | 29,550.00 | | |
| | 3/9/10 0309wt2 | CRJ | Loan Track deposits | 75.00 | | |
| | 3/11/10 10719 | CDJ | ELK ASSOCIATES FUNDING | | 150,000.00 | |
| | 3/11/10 10720 | CDJ | GRANOFF WALKER FORLENZA PC | | 18,164.02 | |
| | 3/11/10 10721 | CDJ | PETER BOOCKVAR | | 7,250.00 | |
| | 3/11/10 10722 | CDJ | STEVEN ETRA | | 7,250.00 | |
| | 3/11/10 10723 | CDJ | PRIDES CAPITAL LLC | | 7,250.00 | |
| | 3/11/10 10724 | CDJ | JOHN R. LAIRD | | 8,500.00 | |
| | 3/11/10 10725 | CDJ | ELLIOTT H SINGER | | 7,250.00 | |
| | 3/11/10 | CDJ | HOWARD SOMMER | | 7,250.00 | |

6/22/11 at 14:44:28.41

Page: 29

# Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 1004.41 (cont.) | 10726 3/11/10 | CDJ | IVAN WOLPERT | | 8,500.00 | |
| | 10727 3/11/10 0311WT | CRJ | Loan Track deposits | 5,600.00 | | |
| | 3/19/10 0319D01 | CRJ | MISCELLANEOUS DEPOSIT | 228.92 | | |
| | 3/19/10 0319D02 | CRJ | MISCELLANEOUS DEPOSIT | 378.66 | | |
| | 3/19/10 0319WT1 | CRJ | MISCELLANEOUS DEPOSIT | 3,703.13 | | |
| | 3/26/10 0326WT | CRJ | Loan Track deposits | 12,231.51 | | |
| | 3/30/10 0330D01 | CRJ | Loan Track deposits | 2,687.98 | | |
| | 3/30/10 0330wt1 | CRJ | Loan Track deposits | 3,185.19 | | |
| | 3/30/10 0330wt2 | CRJ | Loan Track deposits | 52.73 | | |
| | 3/31/10 10728 | CDJ | A.F. LAMA REALTY SERVICES INC. | | 1,000.00 | |
| | 3/31/10 10729 | CDJ | AETNA US HEALTHCARE | | 1,156.00 | |
| | 3/31/10 10730 | CDJ | AMERICAN EXPRESS | | 1,593.66 | |
| | 3/31/10 10731 | CDJ | MARGARET CHANCE | | 117.85 | |
| | 3/31/10 10732 | CDJ | Continental Stock Transfer & | | 1,595.77 | |
| | 3/31/10 10733 | CDJ | EMPIRE HEALTH CHOICE HMO | | 4,271.62 | |
| | 3/31/10 10734 | CDJ | FEDERAL EXPRESS | | 224.65 | |
| | 3/31/10 10735 | CDJ | GLOCAP SEARCH LLC | | 48.47 | |
| | 3/31/10 10736 | CDJ | GNEIL | | 15.00 | |
| | 3/31/10 10737 | CDJ | INTERNATIONAL PRINT GROUP LLC | | 206.86 | |
| | 3/31/10 10738 | CDJ | ROSEN SEYMOUR SHAPSS | | 12,049.00 | |
| | 3/31/10 10739 | CDJ | SAFEGUARD BUSINESS SYSTEMS | | 137.93 | |
| | 3/31/10 10740 | CDJ | SILVIA MULLENS | | 154.93 | |
| | 3/31/10 10741 | CDJ | VERIZON | | 291.30 | |
| | 3/31/10 10742 | CDJ | GRANOFF WALKER FORLENZA PC | | 409.50 | |
| | 3/31/10 10743 | CDJ | THE WEEKS-LERMAN GROUP | | 42.95 | |
| | 3/31/10 331WT1 | CRJ | Loan Track deposits | 2,767.71 | | |
| | 3/31/10 331WT2 | CRJ | Loan Track deposits | 2,057.15 | | |
| | 3/31/10 331WT3 | CRJ | Loan Track deposits | 17,219.39 | | |
| | 3/31/10 331WT4 | CRJ | Loan Track deposits | 346.84 | | |
| | 3/31/10 331WT5 | CRJ | Loan Track deposits | 3,750.00 | | |
| | 3/31/10 331WT6 | CRJ | Loan Track deposits | 18.08 | | |

6/22/11 at 14:44:28.46

# Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 1004.41 (cont.) | 3/31/10 331WT7 | CRJ | Loan Track deposits | 2,864.89 | | |
| | 3/31/10 331WT8 | CRJ | Loan Track deposits | 491.25 | | |
| | | | Current Period Change | 190,258.19 | 274,039.73 | -83,781.54 |
| | 4/1/10 | | Beginning Balance | | | 204,516.85 |
| | 4/1/10 0401D01 | CRJ | MISCELLANEOUS DEPOSIT | 10,001.00 | | |
| | 4/1/10 0401D02 | CRJ | MISCELLANEOUS DEPOSIT | 62.02 | | |
| | 4/1/10 0401wt | CRJ | Loan Track deposits | 96.78 | | |
| | 4/2/10 0402wt | CRJ | Loan Track deposits | 68.01 | | |
| | 4/5/10 0405D01 | CRJ | Loan Track deposits | 8,850.74 | | |
| | 4/6/10 10744 | CDJ | BLOOMBERG FINANCE LP | | 6,205.88 | |
| | 4/6/10 10745 | CDJ | BLOOMBERG FINANCE LP | | 1,253.27 | |
| | 4/6/10 10746 | CDJ | CLAREWOOD CONSULTING LLC | | 10,000.00 | |
| | 4/6/10 10747 | CDJ | Gary C. Granoff | | 10,000.00 | |
| | 4/6/10 10748 | CDJ | SURGE ELECTRONIC MEDIA GROUP L | | 2,183.13 | |
| | 4/6/10 10749 | CDJ | TRUE TYPE PRINTING CO. INC. | | 4,387.83 | |
| | 4/6/10 0406WT | CRJ | Loan Track deposits | 20,628.40 | | |
| | 4/12/10 0412WT1 | CRJ | Loan Track deposits | 44,444.44 | | |
| | 4/12/10 0412WT2 | CRJ | Loan Track deposits | 105.94 | | |
| | 4/12/10 0412WT3 | CRJ | Loan Track deposits | 6,400.00 | | |
| | 4/13/10 10750 | CDJ | HOWARD SOMMER | | 1,000.00 | |
| | 4/13/10 10751 | CDJ | JOHN R. LAIRD | | 1,500.00 | |
| | 4/13/10 10752 | CDJ | PETER BOOCKVAR | | 1,000.00 | |
| | 4/15/10 0415WT | CRJ | Loan Track deposits | 12,886.96 | | |
| | 4/16/10 10753 | CDJ | BUSINESS WIRE, INC. | | 470.00 | |
| | 4/16/10 10754 | CDJ | BWD GROUP LIMITED | | 1,687.00 | |
| | 4/16/10 10755 | CDJ | CAFE BASIL | | 23.18 | |
| | 4/16/10 10756 | CDJ | CLAREWOOD CONSULTING LLC | | 10,000.00 | |
| | 4/16/10 10757 | CDJ | Continental Stock Transfer & | | 952.11 | |
| | 4/16/10 10758 | CDJ | ELLEN WALKER | | 431.02 | |
| | 4/16/10 10759 | CDJ | Executive Charge Inc. | | 120.52 | |
| | 4/16/10 10760 | CDJ | FAIRVIEW INVESTMENT SERVICES | | 2,604.17 | |

6/22/11 at 14:44:28.51

# Elk Associates Funding Corporation
## General Ledger
## For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 1004.41 (cont.) | 4/16/10<br>10761 | CDJ | ROBERT MAZLIACH | | 249.52 | |
| | 4/16/10<br>10762 | CDJ | STAPLES | | 203.65 | |
| | 4/16/10<br>10763 | CDJ | STEPHEN H.<br>TARNOFSKY CPA | | 8,800.00 | |
| | 4/16/10<br>10764 | CDJ | SURGE ELECTRONIC<br>MEDIA GROUP L | | 214.58 | |
| | 4/16/10<br>10765 | CDJ | TRANS UNION | | 43.55 | |
| | 4/16/10<br>10766 | CDJ | VERIZON | | 542.47 | |
| | 4/16/10<br>10767 | CDJ | IVAN WOLPERT | | 78.51 | |
| | 4/20/10<br>0420CITI | CDJ | CITIBANK | | 182.32 | |
| | 4/21/10<br>0421WT1 | CRJ | Loan Track deposits | 14,857.14 | | |
| | 4/27/10<br>0427WT1 | CRJ | Loan Track deposits | 743,847.62 | | |
| | 4/27/10<br>0427WT2 | CRJ | Loan Track deposits | 127,893.34 | | |
| | 4/27/10<br>0427WT3 | CRJ | Loan Track deposits | 114,602.75 | | |
| | 4/27/10<br>0427WT4 | CRJ | Loan Track deposits | 9,825.00 | | |
| | 4/30/10<br>10768 | CDJ | BRIAN ACKERMAN | | 34.65 | |
| | 4/30/10<br>10769 | CDJ | MEDALLION FUNDING<br>CORP. | | 712.35 | |
| | 4/30/10<br>10770 | CDJ | MEYER ACKERMAN | | 121.03 | |
| | 4/30/10<br>10771 | CDJ | MILESTONE GROWTH<br>FUND INC. | | 650.39 | |
| | 4/30/10<br>10772 | CDJ | Pinnacle Commercial<br>Capital, L | | 533.38 | |
| | 4/30/10<br>10773 | CDJ | STEVE PORTNOY<br>TRUSTEE | | 51.74 | |
| | 4/30/10<br>10774 | CDJ | STEVE PORTNOY<br>TRUSTEE | | 51.74 | |
| | 4/30/10<br>10775 | CDJ | THE OSG CORP. | | 1,218.19 | |
| | 4/30/10<br>10776 | CDJ | JERROLD MARCH | | 525.53 | |
| | 4/30/10<br>10777 | CDJ | FRESHSTART<br>VENTURE  CAPITAL<br>CO | | 743.60 | |
| | 4/30/10<br>10778 | CDJ | HANAM CAPITAL<br>CORPORATION | | 328.28 | |
| | 4/30/10<br>0430wt2 | CRJ | Loan Track deposits | 21,472.95 | | |
| | 4/30/10<br>0430wt3 | CRJ | Loan Track deposits | 1,351.33 | | |
| | 4/30/10<br>0430D01 | CRJ | MISCELLANEOUS<br>DEPOSIT | 41.59 | | |
| | 4/30/10<br>0430WT4 | CDJ | ELK ASSOCIATES<br>FUNDING | | 1,000,000.00 | |
| | 4/30/10<br>10124V | CDJ | CINGULAR | 146.83 | | |
| | 4/30/10<br>2602V | CDJ | ZUNEERA & HUMNA<br>INC. | 757.72 | | |
| | 4/30/10<br>AJE13 | GENJ | To adjust deposi 4/1/10<br>- $62.02 per bank is<br>$62.00 | | 0.02 | |

6/22/11 at 14:44:28.55

# Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 1004.41 (cont.) | | | $62.00<br>Current Period Change | 1,138,340.56 | 1,069,103.61 | 69,236.95 |
| | 5/1/10 | | Beginning Balance | | | 273,753.80 |
| | 5/3/10<br>0503WT1 | CRJ | Loan Track deposits | 22,222.22 | | |
| | 5/3/10<br>0503WT2 | CRJ | Loan Track deposits | 145.66 | | |
| | 5/4/10<br>0504WT12 | CRJ | Loan Track deposits | 123.96 | | |
| | 5/4/10<br>0504wt2 | CRJ | Loan Track deposits | 99.77 | | |
| | 5/5/10<br>0505WT1 | CRJ | Loan Track deposits | 10,000.00 | | |
| | 5/10/10<br>10779 | CDJ | AMERICAN EXPRESS | | 1,922.44 | |
| | 5/10/10<br>10780 | CDJ | CAFE BASIL | | 29.97 | |
| | 5/10/10<br>10781 | CDJ | CHUBB GROUP OF<br>INSURANCE CO. | | 4,688.00 | |
| | 5/10/10<br>10782 | CDJ | CLAREWOOD<br>CONSULTING LLC | | 10,000.00 | |
| | 5/10/10<br>10783 | CDJ | Continental Stock<br>Transfer & | | 1,097.55 | |
| | 5/10/10<br>10784 | CDJ | ELLEN WALKER | | 430.54 | |
| | 5/10/10<br>10785 | CDJ | FAIRVIEW<br>INVESTMENT<br>SERVICES | | 2,604.17 | |
| | 5/10/10<br>10786 | CDJ | GNEIL | | 57.99 | |
| | 5/10/10<br>10787 | CDJ | INTERNATIONAL<br>PRINT GROUP LLC | | 244.97 | |
| | 5/10/10<br>10788 | CDJ | Lee A. Forlenza | | 139.95 | |
| | 5/10/10<br>10789 | CDJ | NLFDNYC, INC. | | 163.31 | |
| | 5/10/10<br>10790 | CDJ | ROSEN SEYMOUR<br>SHAPSS | | 6,747.25 | |
| | 5/10/10<br>10791 | CDJ | SILVIA MULLENS | | 154.93 | |
| | 5/10/10<br>10792 | CDJ | STAPLES | | 392.12 | |
| | 5/10/10<br>10793 | CDJ | STEPHEN H.<br>TARNOFSKY CPA | | 8,800.00 | |
| | 5/10/10<br>10794 | CDJ | SURGE ELECTRONIC<br>MEDIA GROUP L | | 2,678.13 | |
| | 5/10/10<br>10795 | CDJ | TRUE TYPE PRINTING<br>CO. INC. | | 4,588.97 | |
| | 5/10/10<br>10796 | CDJ | TRUE TYPE PRINTING<br>CO. INC. | | 4,533.38 | |
| | 5/10/10<br>10797 | CDJ | VERIZON | | 309.04 | |
| | 5/12/10<br>0512WT | CRJ | Loan Track deposits | 6,000.00 | | |
| | 5/18/10<br>0518CITI | CDJ | CITIBANK | | 90.09 | |
| | 5/20/10<br>10798 | CDJ | AETNA US<br>HEALTHCARE | | 1,156.00 | |
| | 5/20/10<br>10799 | CDJ | MELVIN<br>BRANDL/BRANDL<br>ELECTRIC | | 485.00 | |

6/22/11 at 14:44:28.60

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 1004.41 (cont.) | 5/20/10<br>10800 | CDJ | MARGARET CHANCE | | 117.86 | |
| | 5/20/10<br>10801 | CDJ | FEDERAL EXPRESS | | 477.84 | |
| | 5/20/10<br>10802 | CDJ | OXFORD HEALTH PLANS | | 6,135.10 | |
| | 5/20/10<br>10803 | CDJ | ROBERT MAZLIACH | | 248.81 | |
| | 5/20/10<br>10804 | CDJ | STEPHEN H. TARNOFSKY CPA | | 6,600.00 | |
| | 5/20/10<br>10805 | CDJ | TIME WARNER CABLE OF NYC | | 86.14 | |
| | 5/20/10<br>10806 | CDJ | TRANS UNION | | 43.55 | |
| | 5/20/10<br>10807 | CDJ | VERIZON | | 587.57 | |
| | 5/20/10<br>10808 | CDJ | GRANOFF WALKER FORLENZA PC | | 18,185.36 | |
| | 5/21/10<br>10809 | CDJ | CLAREWOOD CONSULTING LLC | | 6,943.75 | |
| | 5/21/10<br>10809V | CDJ | CLAREWOOD CONSULTING LLC | 6,943.75 | | |
| | 5/21/10<br>10810 | CDJ | CLAREWOOD CONSULTING LLC | | 6,943.75 | |
| | 5/27/10<br>10811 | CDJ | BRIAN ACKERMAN | | 34.65 | |
| | 5/27/10<br>10812 | CDJ | FRESHSTART VENTURE CAPITAL CO | | 743.60 | |
| | 5/27/10<br>10813 | CDJ | HANAM CAPITAL CORPORATION | | 328.28 | |
| | 5/27/10<br>10814 | CDJ | MEDALLION FUNDING CORP. | | 712.35 | |
| | 5/27/10<br>10815 | CDJ | MEYER ACKERMAN | | 121.03 | |
| | 5/27/10<br>10816 | CDJ | MILESTONE GROWTH FUND INC. | | 650.39 | |
| | 5/27/10<br>10817 | CDJ | Pinnacle Commercial Capital, L | | 533.75 | |
| | 5/27/10<br>10818 | CDJ | STEVE PORTNOY TRUSTEE | | 51.74 | |
| | 5/27/10<br>10819 | CDJ | STEVE PORTNOY TRUSTEE | | 51.74 | |
| | 5/27/10<br>10820 | CDJ | THE OSG CORP. | | 1,218.19 | |
| | 5/27/10<br>10821 | CDJ | JERROLD MARCH | | 525.53 | |
| | 5/31/10<br>0531D01 | CRJ | Loan Track deposits | 2,569.82 | | |
| | | | Current Period Change | 48,105.18 | 102,654.78 | -54,549.60 |
| | 6/1/10 | | Beginning Balance | | | 219,204.20 |
| | 6/1/10<br>0601wt3 | CRJ | Loan Track deposits | 32,866.67 | | |
| | 6/1/10<br>0601wt4 | CRJ | Loan Track deposits | 18,638.12 | | |
| | 6/1/10<br>0601wt5 | CRJ | Loan Track deposits | 196.83 | | |
| | 6/1/10<br>0601wt6 | CRJ | Loan Track deposits | 128.10 | | |
| | 6/1/10<br>0601wt7 | CRJ | MISCELLANEOUS DEPOSIT | 1,477.50 | | |

# Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 1004.41 (cont.) | 6/2/10 0602WT | CRJ | Loan Track deposits | 6,361.87 | | |
| | 6/4/10 0604WT1 | CRJ | Loan Track deposits | 283.20 | | |
| | 6/9/10 0609WT1 | CRJ | Loan Track deposits | 30,206.67 | | |
| | 6/14/10 0614WT | CRJ | Loan Track deposits | 6,600.00 | | |
| | 6/18/10 0618Citi | CDJ | CITIBANK | | 5.62 | |
| | 6/23/10 0623WT1 | CRJ | Loan Track deposits | 204,545.45 | | |
| | 6/23/10 0623WT2 | CRJ | Loan Track deposits | 627.65 | | |
| | 6/24/10 0624WT1 | CRJ | Loan Track deposits | 2,500.00 | | |
| | 6/24/10 0624WT2 | CRJ | MISCELLANEOUS DEPOSIT | 6,364.77 | | |
| | 6/25/10 10822 | CDJ | AETNA US HEALTHCARE | | 1,156.00 | |
| | 6/25/10 10823 | CDJ | BLOOMBERG FINANCE LP | | 6,205.88 | |
| | 6/25/10 10824 | CDJ | BLOOMBERG FINANCE LP | | 299.00 | |
| | 6/25/10 10825 | CDJ | BLOOMBERG FINANCE LP | | 1,300.08 | |
| | 6/25/10 10826 | CDJ | MARGARET CHANCE | | 175.98 | |
| | 6/25/10 10827 | CDJ | COMPUWEB | | 59.85 | |
| | 6/25/10 10828 | CDJ | EMPIRE HEALTH CHOICE HMO | | 4,858.53 | |
| | 6/25/10 10829 | CDJ | EMPIRE HEALTH CHOICE HMO | | 205.42 | |
| | 6/25/10 10830 | CDJ | Executive Charge Inc. | | 54.88 | |
| | 6/25/10 10831 | CDJ | FIREMAN FUND | | 17,825.10 | |
| | 6/25/10 10832 | CDJ | Gary C. Granoff | | 891.58 | |
| | 6/25/10 10833 | CDJ | OXFORD HEALTH PLANS | | 6,135.10 | |
| | 6/25/10 10834 | CDJ | NYC Dept. of Finance | | 4,410.19 | |
| | 6/25/10 10835 | CDJ | STEPHEN H. TARNOFSKY CPA | | 6,600.00 | |
| | 6/25/10 10836 | CDJ | STRATEGIC INFORMATION | | 11.55 | |
| | 6/25/10 10837 | CDJ | TIME WARNER CABLE OF NYC | | 86.15 | |
| | 6/25/10 10838 | CDJ | TRUE TYPE PRINTING CO. INC. | | 4,442.58 | |
| | 6/25/10 10839 | CDJ | VERIZON | | 606.72 | |
| | 6/28/10 0628WT | CRJ | Loan Track deposits | 12,281.10 | | |
| | 6/30/10 10851 | CDJ | BRIAN ACKERMAN | | 34.65 | |
| | 6/30/10 10852 | CDJ | FRESHSTART VENTURE CAPITAL CO | | 743.60 | |
| | 6/30/10 10853 | CDJ | HANAM CAPITAL CORPORATION | | 328.28 | |

Case 2:17-cv-03586-JFB-AYS   Document 47-2   Filed 10/06/17   Page 686 of 1053 PageID #: 1260

# Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 1004.41 (cont.) | 6/30/10 10854 | CDJ | MEDALLION FUNDING CORP. | | 712.35 | |
| | 6/30/10 10855 | CDJ | MEYER ACKERMAN | | 121.03 | |
| | 6/30/10 10856 | CDJ | MILESTONE GROWTH FUND INC. | | 650.39 | |
| | 6/30/10 10857 | CDJ | Pinnacle Commercial Capital, L | | 534.59 | |
| | 6/30/10 10858 | CDJ | STEVE PORTNOY TRUSTEE | | 51.74 | |
| | 6/30/10 10859 | CDJ | STEVE PORTNOY TRUSTEE | | 51.74 | |
| | 6/30/10 10860 | CDJ | VENTURE OPPORTUNITY LLC | | 525.53 | |
| | 6/30/10 10861 | CDJ | THE OSG CORP. | | 1,218.19 | |
| | 6/30/10 0630Wt2 | CRJ | Loan Track deposits | 5,981.14 | | |
| | 6/30/10 0630Wt3 | CRJ | Loan Track deposits | 2,693.95 | | |
| | 6/30/10 0630Wt4 | CRJ | Loan Track deposits | 175.36 | | |
| | 6/30/10 0630Wt5 | CRJ | Loan Track deposits | 173.42 | | |
| | | | Current Period Change | 332,101.80 | 60,302.30 | 271,799.50 |
| | **6/30/10** | | **Ending Balance** | | | **491,003.70** |
| 1004.6 CASH  EAF HOLDIN | 7/1/09 | | Beginning Balance | | | 1,003.69 |
| | 8/1/09 | | Beginning Balance | | | 1,003.69 |
| | 8/24/09 0824IDB2 | CDJ | ISRAEL DISCOUNT BANK | | 25.00 | |
| | | | Current Period Change | | 25.00 | -25.00 |
| | 9/1/09 | | Beginning Balance | | | 978.69 |
| | 10/1/09 | | Beginning Balance | | | 978.69 |
| | 11/1/09 | | Beginning Balance | | | 978.69 |
| | 12/1/09 | | Beginning Balance | | | 978.69 |
| | 1/1/10 | | Beginning Balance | | | 978.69 |
| | 2/1/10 | | Beginning Balance | | | 978.69 |
| | 3/1/10 | | Beginning Balance | | | 978.69 |
| | 4/1/10 | | Beginning Balance | | | 978.69 |
| | 4/23/10 0423D03 | CRJ | MISCELLANEOUS DEPOSIT | 126.00 | | |
| | | | Current Period Change | 126.00 | | 126.00 |
| | 5/1/10 | | Beginning Balance | | | 1,104.69 |
| | 6/1/10 | | Beginning Balance | | | 1,104.69 |
| | **6/30/10** | | **Ending Balance** | | | **1,104.69** |

6/22/11 at 14:44:28.74

# Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 1004.80<br>CASH SIGNATURE B | 7/1/09 | | Beginning Balance | | | 186,647.28 |
| | 7/1/09<br>070109OF | GENJ | Officer Salaries - Signature Bank - Taxes OFFICERS SALARIES 070109 | | 39,075.24 | |
| | 7/1/09<br>070109OF | GENJ | Officer Salaries - Signature Bank  Net Pay OFFICERS SALARIES 070109 | | 78,900.69 | |
| | 7/1/09<br>070109OF | GENJ | Officer Salaries - Signature Bank - ADP FEE OFFICERS SALARIES O70109 | | 59.78 | |
| | 7/3/09<br>070309OF | GENJ | Office Salaries - Signature Bank - Taxes 070309 OFFICE SALARIES | | 1,534.18 | |
| | 7/3/09<br>070309OF | GENJ | Office Salaries - Signature Bank - Net Pay  070309 OFFICE SALARIES | | 3,555.52 | |
| | 7/3/09<br>070309OF | GENJ | Office Salaries - Signature Bank - ADP FEE 070309 OFFICE SALARIES | | 44.00 | |
| | 7/6/09<br>0706D01 | CRJ | MISCELLANEOUS DEPOSIT | 3,055.05 | | |
| | 7/7/09<br>0707D01 | CRJ | Loan Track deposits | 802.70 | | |
| | 7/8/09<br>0708TRSF | CRJ | MISCELLANEOUS DEPOSIT | 30,000.00 | | |
| | 7/9/09<br>0709SIGBK | CDJ | SIGNATURE BANK | | 10.00 | |
| | 7/9/09<br>0709BC1 | CDJ | SIGNATURE BANK | | 6,000.00 | |
| | 7/10/09<br>0710D01 | CRJ | Loan Track deposits | 2,000.00 | | |
| | 7/10/09<br>0710D02 | CRJ | Loan Track deposits | 8,677.03 | | |
| | 7/15/09<br>0715D01 | CRJ | Loan Track deposits | 2,674.38 | | |
| | 7/16/09<br>0716D01 | CRJ | Loan Track deposits | 2,000.00 | | |
| | 7/17/09<br>071709OF | GENJ | Office Salaries - Signature Bank - Taxes 071709 OFFICE SALARIES | | 1,525.40 | |
| | 7/17/09<br>071709OF | GENJ | Office Salaries - Signature Bank - Net Pay  071709 OFFICE SALARIES | | 3,607.36 | |
| | 7/17/09<br>071709OF | GENJ | Office Salaries - Signature Bank - ADP FEE 071709 OFFICE SALARIES | | 44.00 | |
| | 7/20/09<br>0720D01 | CRJ | Loan Track deposits | 372.49 | | |
| | 7/21/09<br>0721D01 | CRJ | MISCELLANEOUS DEPOSIT | 34,220.42 | | |
| | 7/27/09<br>0727D01 | CRJ | Loan Track deposits | 6,179.49 | | |

6/22/11 at 14:44:28.79

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 1004.6 (cont.) | 7/29/09<br>0729D01 | CRJ | Loan Track deposits | 5,362.36 | | |
| | 7/31/09<br>073109OF | GENJ | Office Salaries - Signature Bank - Net Pay  073109 OFFICE SALARIES | | 3,574.60 | |
| | 7/31/09<br>073109OF | GENJ | Office Salaries - Signature Bank - Taxes 073109 OFFICE SALARIES | | 1,505.41 | |
| | 7/31/09<br>073109OF | GENJ | Office Salaries - Signature Bank - ADP FEE 073109 OFFICE SALARIES | | 44.00 | |
| | 7/31/09<br>0731D01 | CRJ | Loan Track deposits | 9,871.38 | | |
| | 7/31/09<br>0731D02 | CRJ | MISCELLANEOUS DEPOSIT | 16.39 | | |
| | 7/31/09<br>0731D04 | CRJ | Loan Track deposits | 152,401.67 | | |
| | 7/31/09<br>0731D05 | CRJ | MISCELLANEOUS DEPOSIT | 34,220.42 | | |
| | 7/31/09<br>J/E 2D | GENJ | To record Prepaid Payroll | | 80,556.87 | |
| | 7/31/09<br>J/E 2D | GENJ | To record Prepaid Payroll | | 39,064.15 | |
| | | | Current Period Change | 291,853.78 | 259,101.20 | 32,752.58 |
| | 8/1/09 | | Beginning Balance | | | 219,399.86 |
| | 8/1/09<br>J/E 2D | GENJ | To record Prepaid Payroll | 80,556.87 | | |
| | 8/1/09<br>J/E 2D | GENJ | To record Prepaid Payroll | 39,064.15 | | |
| | 8/3/09<br>0809OFFIC | GENJ | Officer Salaries - Signature Bank - ADP FEE 0809 OFFICERS SALARIES | | 49.28 | |
| | 8/3/09<br>0809OFFIC | GENJ | Officer Salaries - Signature Bank - Taxes 0809 OFFICERS SALARIES | | 39,064.15 | |
| | 8/3/09<br>0809OFFIC | GENJ | Officer Salaries - Signature Bank  Net Pay 0809 OFFICERS SALARIES | | 80,556.87 | |
| | 8/3/09<br>0803D01 | CRJ | Loan Track deposits | 1,920.27 | | |
| | 8/4/09<br>0804D01 | CRJ | Loan Track deposits | 45.00 | | |
| | 8/6/09<br>0806D01 | CRJ | Loan Track deposits | 40,000.00 | | |
| | 8/6/09<br>0806D02 | CRJ | Loan Track deposits | 8,677.03 | | |
| | 8/7/09<br>0807D01 | CRJ | Loan Track deposits | 847.57 | | |
| | 8/14/09<br>081409OF | GENJ | Office Salaries - Signature Bank - ADP FEE OFFICE SALARIES 081409 | | 44.00 | |
| | 8/14/09<br>081409OF | GENJ | Office Salaries - Signature Bank - Net Pay  OFFICE SALARIES 081409 | | 3,574.60 | |

# Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 1004.6 (cont.) | 8/14/09<br>081409OF | GENJ | SALARIES 081409<br>Office Salaries -<br>Signature Bank - Taxes<br>OFFICE SALARIES<br>081409 | | 1,505.41 | |
| | 8/18/09<br>1012 | CDJ | AMERICAN EXPRESS | | 1,572.49 | |
| | 8/18/09<br>1013 | CDJ | CAFE BASIL | | 59.29 | |
| | 8/18/09<br>1014 | CDJ | CLAREWOOD<br>CONSULTING LLC | | 10,000.00 | |
| | 8/18/09<br>1015 | CDJ | Continental Stock<br>Transfer & | | 900.00 | |
| | 8/18/09<br>1016 | CDJ | ELLEN WALKER | | 101.35 | |
| | 8/18/09<br>1017 | CDJ | Executive Charge Inc. | | 109.28 | |
| | 8/18/09<br>1018 | CDJ | Lee A. Forlenza | | 249.95 | |
| | 8/18/09<br>1019 | CDJ | NCIC IT CONSULTING<br>INC. | | 260.10 | |
| | 8/18/09<br>1020 | CDJ | PPCP INC. | | 307.53 | |
| | 8/18/09<br>1021 | CDJ | PPCP INC. | | 76.89 | |
| | 8/18/09<br>1022 | CDJ | PPCP INC. | | 171.20 | |
| | 8/18/09<br>1023 | CDJ | PPCP INC. | | 42.80 | |
| | 8/18/09<br>1024 | CDJ | SILVIA MULLENS | | 53.49 | |
| | 8/18/09<br>1025 | CDJ | STAPLES | | 355.98 | |
| | 8/18/09<br>1026 | CDJ | STEPHEN H.<br>TARNOFSKY CPA | | 8,800.00 | |
| | 8/18/09<br>1027 | CDJ | STRATEGIC<br>INFORMATION | | 22.39 | |
| | 8/18/09<br>1028 | CDJ | STURSBERG AND<br>ASSOCIATES LLC | | 5,305.84 | |
| | 8/18/09<br>1029 | CDJ | SURGE ELECTRONIC<br>MEDIA GROUP L | | 1,702.11 | |
| | 8/18/09<br>1030 | CDJ | SURGE ELECTRONIC<br>MEDIA GROUP L | | 2,050.00 | |
| | 8/18/09<br>1031 | CDJ | T-MOBILE | | 19.24 | |
| | 8/18/09<br>1032 | CDJ | TRANS UNION | | 43.35 | |
| | 8/18/09<br>1033 | CDJ | VERIZON | | 527.07 | |
| | 8/18/09<br>1034 | CDJ | W.B. MASON CO. INC. | | 758.57 | |
| | 8/18/09<br>1035 | CDJ | GRANOFF WALKER<br>FORLENZA PC | | 240.00 | |
| | 8/18/09<br>1036 | CDJ | GRANOFF WALKER<br>FORLENZA PC | | 65.00 | |
| | 8/18/09<br>1037 | CDJ | THE WEEKS-LERMAN<br>GROUP | | 75.59 | |
| | 8/18/09<br>1038 | CDJ | THE WEEKS-LERMAN<br>GROUP | | 93.74 | |
| | 8/18/09<br>1039 | CDJ | THE WEEKS-LERMAN<br>GROUP | | 78.30 | |
| | 8/18/09<br>1040 | CDJ | IVAN WOLPERT | | 167.16 | |

6/22/11 at 14:44:28.88

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 1004.6 (cont.) | 8/18/09<br>1041 | CDJ | BRIAN ACKERMAN | | 34.65 | |
| | 8/18/09<br>1042 | CDJ | FRESHSTART<br>VENTURE CAPITAL<br>CO | | 743.60 | |
| | 8/18/09<br>1043 | CDJ | HANAM CAPITAL<br>CORPORATION | | 328.28 | |
| | 8/18/09<br>1044 | CDJ | MEDALLION FUNDING<br>CORP. | | 712.35 | |
| | 8/18/09<br>1045 | CDJ | MEYER ACKERMAN | | 121.03 | |
| | 8/18/09<br>1046 | CDJ | MILESTONE GROWTH<br>FUND INC. | | 650.39 | |
| | 8/18/09<br>1047 | CDJ | Pinnacle Commercial<br>Capital, L | | 534.22 | |
| | 8/18/09<br>1048 | CDJ | STEVE PORTNOY<br>TRUSTEE | | 51.74 | |
| | 8/18/09<br>1049 | CDJ | STEVE PORTNOY<br>TRUSTEE | | 51.74 | |
| | 8/18/09<br>1050 | CDJ | THE OSG CORP. | | 1,218.19 | |
| | 8/18/09<br>1051 | CDJ | JERROLD MARCH | | 525.53 | |
| | 8/18/09<br>0818D01 | CRJ | Loan Track deposits | 3,445.93 | | |
| | 8/18/09<br>0818D02 | CRJ | MISCELLANEOUS<br>DEPOSIT | 378.58 | | |
| | 8/19/09<br>0819D01 | CRJ | MISCELLANEOUS<br>DEPOSIT | 462.04 | | |
| | 8/20/09<br>0820D01 | CRJ | Loan Track deposits | 119.69 | | |
| | 8/21/09<br>0821D01 | CRJ | Loan Track deposits | 12,005.27 | | |
| | 8/24/09<br>1052 | CDJ | AETNA US<br>HEALTHCARE | | 1,156.00 | |
| | 8/24/09<br>1053 | CDJ | MARGARET CHANCE | | 282.86 | |
| | 8/24/09<br>1054 | CDJ | EMPIRE HEALTH<br>CHOICE HMO | | 5,641.36 | |
| | 8/24/09<br>1055 | CDJ | FAIRVIEW<br>INVESTMENT<br>SERVICES | | 1,302.09 | |
| | 8/24/09<br>1056 | CDJ | FEDERAL EXPRESS | | 133.09 | |
| | 8/24/09<br>1057 | CDJ | JOHN LAIRD | | 2,472.06 | |
| | 8/24/09<br>1058 | CDJ | Lee A. Forlenza | | 29.95 | |
| | 8/24/09<br>1059 | CDJ | OXFORD HEALTH<br>PLANS | | 6,318.18 | |
| | 8/24/09<br>1060 | CDJ | SAFEGUARD<br>BUSINESS SYSTEMS | | 137.03 | |
| | 8/24/09<br>1061 | CDJ | SILVIA MULLENS | | 53.49 | |
| | 8/24/09<br>1062 | CDJ | TIME WARNER CABLE<br>OF NYC | | 79.69 | |
| | 8/24/09<br>1063 | CDJ | TRUE TYPE PRINTING<br>CO. INC. | | 4,411.92 | |
| | 8/24/09<br>0824D01 | CRJ | MISCELLANEOUS<br>DEPOSIT | 378.58 | | |
| | 8/24/09<br>0824D02 | CRJ | MISCELLANEOUS<br>DEPOSIT | 169.76 | | |
| | 8/25/09 | CRJ | Loan Track deposits | 550.81 | | |

6/22/11 at 14:44:28.93

# Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 1004.6 (cont.) | 0825D01 | | | | | |
| | 8/27/09<br>0827D01 | CRJ | Loan Track deposits | 48,838.05 | | |
| | 8/28/09<br>0828OFFIC | GENJ | Office Salaries -<br>Signature Bank - Net<br>Pay 082809 OFFICE<br>SALARIES | | 3,574.59 | |
| | 8/28/09<br>0828OFFIC | GENJ | Office Salaries -<br>Signature Bank - Taxes<br>- 082809 OFFICE<br>SALARIES | | 1,505.43 | |
| | 8/28/09<br>0828OFFIC | GENJ | Office Salaries -<br>Signature Bank - ADP<br>FEE 082809 OFFICE<br>SALARIES | | 44.00 | |
| | 8/31/09<br>0831D01 | CRJ | Loan Track deposits | 2,687.98 | | |
| | 8/31/09<br>0831D02 | CRJ | Loan Track deposits | 2,569.82 | | |
| | 8/31/09<br>J/E 2-D | GENJ | PAYROLL DEDUCTED<br>0N 8/31/09 OFFICERS<br>SALARY | | 79,753.42 | |
| | 8/31/09<br>J/E 2-D | GENJ | PAYROLL DEDUCTED<br>0N 8/31/09 OFFICERS<br>SALARY | | 37,337.73 | |
| | | | Current Period Change | 242,717.40 | 308,207.63 | -65,490.23 |
| | 9/1/09 | | Beginning Balance | | | 153,909.63 |
| | 9/1/09<br>090109OF | GENJ | Officer Salaries -<br>Signature Bank - Taxes<br>090109 OFFICER<br>SALARIES | | 37,337.73 | |
| | 9/1/09<br>090109OF | GENJ | Officer Salaries -<br>Signature Bank  Net Pay<br>- 090109 OFFICER<br>SALARIES | | 79,753.42 | |
| | 9/1/09<br>090109OF | GENJ | Officer Salaries -<br>Signature Bank - ADP<br>FEE - 090109 OFFICER<br>SALARIES | | 49.28 | |
| | 9/1/09<br>J/E 2-D | GENJ | PAYROLL DEDUCTED<br>0N 8/31/09 OFFICERS<br>SALARY | 79,753.42 | | |
| | 9/1/09<br>J/E 2-D | GENJ | PAYROLL DEDUCTED<br>0N 8/31/09 OFFICERS<br>SALARY | 37,337.73 | | |
| | 9/2/09<br>0902D01 | CRJ | MISCELLANEOUS<br>DEPOSIT | 4,944.67 | | |
| | 9/8/09<br>0908D01 | CRJ | Loan Track deposits | 3,586.94 | | |
| | 9/9/09<br>0909D01 | CRJ | Loan Track deposits | 172.13 | | |
| | 9/9/09<br>0909D02 | CRJ | MISCELLANEOUS<br>DEPOSIT | 50,000.00 | | |
| | 9/10/09<br>0910D01 | CRJ | Loan Track deposits | 10,677.03 | | |
| | 9/11/09<br>091109OF | GENJ | Office Salaries -<br>Signature Bank - ADP<br>FEE 091109 OFFICE<br>SALARIES | | 44.00 | |
| | 9/11/09<br>091109OF | GENJ | Office Salaries -<br>Signature Bank - Net<br>Pay 091109 OFFICE | | 3,574.60 | |

6/22/11 at 14:44:28.96

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 1004.6 (cont.) | 9/11/09<br>091109OF | GENJ | Pay  091109 OFFICE SALARIES<br>Office Salaries - Signature Bank - Taxes 091109 OFFICE SALARIES | | 1,505.41 | |
| | 9/14/09<br>0914D01 | CRJ | Loan Track deposits | 6,001.64 | | |
| | 9/15/09<br>0915D01 | CRJ | Loan Track deposits | 100.00 | | |
| | 9/15/09<br>0915D02 | CRJ | MISCELLANEOUS DEPOSIT | 34,220.42 | | |
| | 9/17/09<br>0917BC1 | CDJ | SIGNATURE BANK | | 3,327.26 | |
| | 9/17/09<br>0917SBK | CDJ | SIGNATURE BANK | | 10.00 | |
| | 9/18/09<br>0918901 | CRJ | Loan Track deposits | 22,707.68 | | |
| | 9/18/09<br>0918D02 | CRJ | Loan Track deposits | 3,327.26 | | |
| | 9/22/09<br>0922D01 | CRJ | Loan Track deposits | 6,552.50 | | |
| | 9/23/09<br>0923BC1 | CDJ | SIGNATURE BANK | | 3,327.26 | |
| | 9/23/09<br>0923SBK | CDJ | SIGNATURE BANK | | 10.00 | |
| | 9/25/09<br>092509 OF | GENJ | Office Salaries - Signature Bank - Net Pay  092509 OFFICE SALARIES | | 3,602.54 | |
| | 9/25/09<br>092509 OF | GENJ | Office Salaries - Signature Bank - Taxes 092509 OFFICE SALARIES | | 1,521.84 | |
| | 9/25/09<br>092509 OF | GENJ | Office Salaries - Signature Bank - ADP FEE 092509 OFFICE SALARIES | | 44.00 | |
| | 9/30/09<br>1064 | CDJ | AETNA US HEALTHCARE | | 1,156.00 | |
| | 9/30/09<br>1065 | CDJ | MARGARET CHANCE | | 133.16 | |
| | 9/30/09<br>1066 | CDJ | EMPIRE HEALTH CHOICE HMO | | 3,035.76 | |
| | 9/30/09<br>1067 | CDJ | ELLEN WALKER | | 296.47 | |
| | 9/30/09<br>1068 | CDJ | ELLEN WALKER | | 418.29 | |
| | 9/30/09<br>1069 | CDJ | Executive Charge Inc. | | 164.64 | |
| | 9/30/09<br>1070 | CDJ | FEDERAL EXPRESS | | 159.02 | |
| | 9/30/09<br>1071 | CDJ | Lee A. Forlenza | | 139.95 | |
| | 9/30/09<br>1072 | CDJ | NCIC IT CONSULTING INC. | | 2,177.50 | |
| | 9/30/09<br>1073 | CDJ | NATIONAL REGULATORY SERVICES | | 81.11 | |
| | 9/30/09<br>1074 | CDJ | OXFORD HEALTH PLANS | | 5,952.02 | |
| | 9/30/09<br>1075 | CDJ | STEPHEN H. TARNOFSKY CPA | | 7,700.00 | |

Case 2:17-cv-03586-JFB-AYS Document 47-2 Filed 10/06/17 Page 693 of 1053 PageID #: 1267

# Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 1004.6 (cont.) | 9/30/09<br>1076 | CDJ | STEPHEN H.<br>TARNOFSKY CPA | | 7,700.00 | |
| | 9/30/09<br>1077 | CDJ | SURGE ELECTRONIC<br>MEDIA GROUP L | | 299.00 | |
| | 9/30/09<br>1078 | CDJ | SURGE ELECTRONIC<br>MEDIA GROUP L | | 43.13 | |
| | 9/30/09<br>1079 | CDJ | TIME WARNER CABLE<br>OF NYC | | 79.69 | |
| | 9/30/09<br>1080 | CDJ | TRUE TYPE PRINTING<br>CO. INC. | | 5,108.89 | |
| | 9/30/09<br>1081 | CDJ | VERIZON | | 277.97 | |
| | 9/30/09<br>1082 | CDJ | VERIZON | | 534.41 | |
| | 9/30/09<br>1083 | CDJ | GRANOFF WALKER<br>FORLENZA PC | | 15.00 | |
| | 9/30/09<br>1084 | CDJ | GRANOFF WALKER<br>FORLENZA PC | | 15.00 | |
| | 9/30/09<br>1085 | CDJ | PPCP INC. | | 600.00 | |
| | 9/30/09<br>1086 | CDJ | PPCP INC. | | 150.00 | |
| | 9/30/09<br>0930D01 | CRJ | MISCELLANEOUS<br>DEPOSIT | 34,220.38 | | |
| | 9/30/09<br>J/E 2D | GENJ | PAYROLL DEDUCTED<br>ON 9/30/09 OFFICERS<br>SALARY | | 82,143.82 | |
| | 9/30/09<br>J/E 2D | GENJ | PAYROLL DEDUCTED<br>ON 9/30/09 OFFICERS<br>SALARY | | 36,330.62 | |
| | | | Current Period Change | 293,601.80 | 288,818.79 | 4,783.01 |
| | 10/1/09 | | Beginning Balance | | | 158,692.64 |
| | 10/1/09<br>1009OFFIC | GENJ | Officer Salaries -<br>Signature Bank  Net Pay<br>1009 OFFICER<br>SALARIES | | 82,143.82 | |
| | 10/1/09<br>1009OFFIC | GENJ | Officer Salaries -<br>Signature Bank - Taxes<br>1009 OFFICER<br>SALARIES | | 36,330.62 | |
| | 10/1/09<br>1009OFFIC | GENJ | Officer Salaries -<br>Signature Bank - ADP<br>FEE 1009 OFFICER<br>SALARIES | | 59.78 | |
| | 10/1/09<br>1087 | CDJ | ROBERT MAZLIACH | | 254.26 | |
| | 10/1/09<br>1088 | CDJ | MEDALLION FUNDING<br>CORP. AS SER | | 1,323.19 | |
| | 10/1/09<br>1089 | CDJ | MEDALLION FUNDING<br>CORP. AS SER | | 1,262.03 | |
| | 10/1/09<br>J/E 2D | GENJ | PAYROLL DEDUCTED<br>ON 9/30/09 OFFICERS<br>SALARY | 36,330.62 | | |
| | 10/1/09<br>J/E 2D | GENJ | PAYROLL DEDUCTED<br>ON 9/30/09 OFFICERS<br>SALARY | 82,143.82 | | |
| | 10/5/09<br>1005D01 | CRJ | Loan Track deposits | 1,920.27 | | |
| | 10/7/09<br>1007D01 | CRJ | Loan Track deposits | 165.30 | | |
| | 10/9/09 | GENJ | Office Salaries -<br>Signature Bank - ADP | | 44.00 | |

# Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID / Account Description | Date / Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 1004.6 (cont.) | 100909OF | | Signature Bank - ADP FEE 100909 OFFICE SALARIES | | | |
| | 10/9/09 100909OF | GENJ | Office Salaries - Signature Bank - Net Pay 100909 OFFICE SALARIES | | 3,602.52 | |
| | 10/9/09 100909OF | GENJ | Office Salaries - Signature Bank - Taxes 100909 OFFICE SALARIES | | 1,538.06 | |
| | 10/14/09 1014D01 | CRJ | Loan Track deposits | 2,674.38 | | |
| | 10/14/09 1014D02 | CRJ | Loan Track deposits | 2,000.00 | | |
| | 10/16/09 1016D01 | CRJ | Loan Track deposits | 6,674.52 | | |
| | 10/16/09 1016D02 | CRJ | MISCELLANEOUS DEPOSIT | 378.58 | | |
| | 10/19/09 1019D01 | CRJ | Loan Track deposits | 2,569.82 | | |
| | 10/20/09 1020D01 | CRJ | Loan Track deposits | 20,925.00 | | |
| | 10/23/09 102309OF | GENJ | Office Salaries - Signature Bank - ADP FEE 10/23/09 OFFICE SALARIES | | 44.00 | |
| | 10/23/09 102309OF | GENJ | Office Salaries - Signature Bank - Net Pay 10/23/09 OFFICE SALARIES | | 3,428.68 | |
| | 10/23/09 102309OF | GENJ | Office Salaries - Signature Bank - Taxes 10/23/09 OFFICE SALARIES | | 1,434.79 | |
| | 10/28/09 1090 | CDJ | MARGARET CHANCE | | 108.82 | |
| | 10/28/09 1091 | CDJ | EMPIRE HEALTH CHOICE HMO | | 4,338.56 | |
| | 10/28/09 1092 | CDJ | Executive Charge Inc. | | 330.39 | |
| | 10/28/09 1093 | CDJ | FEDERAL EXPRESS | | 77.41 | |
| | 10/28/09 1094 | CDJ | FEDERAL EXPRESS | | 170.96 | |
| | 10/28/09 1095 | CDJ | Lee A. Forlenza | | 249.95 | |
| | 10/28/09 1096 | CDJ | OXFORD HEALTH PLANS | | 6,135.10 | |
| | 10/28/09 1097 | CDJ | SILVIA MULLENS | | 106.98 | |
| | 10/28/09 1098 | CDJ | TIME WARNER CABLE OF NYC | | 79.70 | |
| | 10/28/09 1099 | CDJ | VERIZON | | 546.36 | |
| | 10/28/09 1100 | CDJ | GRANOFF WALKER FORLENZA PC | | 292.50 | |
| | 10/28/09 1101 | CDJ | MARKIT WSO CORPORATION | | 2,510.55 | |
| | 10/30/09 0109-0909 | GENJ | Salaries - Signature Bank - Taxes 01/01/09 - 09/30/09 COMMUTER TAX DUE | | 2,747.47 | |

6/22/11 at 14:44:29.10

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 1004.6 (cont.) | 10/30/09<br>1030D02 | CRJ | Loan Track deposits | 92,500.00 | | |
| | 10/31/09<br>J/E 2D | GENJ | To record Prepaid Payroll | | 36,225.50 | |
| | 10/31/09<br>J/E 2D | GENJ | To record Prepaid Payroll | | 82,177.50 | |
| | | | Current Period Change | 248,282.31 | 267,563.50 | -19,281.19 |
| | 11/1/09 | | Beginning Balance | | | 139,411.45 |
| | 11/1/09<br>J/E 2D | GENJ | To record Prepaid Payroll | 82,177.50 | | |
| | 11/1/09<br>J/E 2D | GENJ | To record Prepaid Payroll | 36,225.50 | | |
| | 11/2/09<br>1109OFFIC | GENJ | Officer Salaries - Signature Bank - Taxes 1109 OFFICER SALARIES | | 36,225.50 | |
| | 11/2/09<br>1109OFFIC | GENJ | Officer Salaries - Signature Bank - ADP FEE 1109 OFFICER SALARIES | | 49.28 | |
| | 11/2/09<br>1109OFFIC | GENJ | Officer Salaries - Signature Bank  Net Pay 1109 OFFICER SALARIES | | 82,177.50 | |
| | 11/4/09<br>1104D01 | CRJ | MISCELLANEOUS DEPOSIT | 115,000.00 | | |
| | 11/6/09<br>110609OF | GENJ | Office Salaries - Signature Bank - Taxes 110609 OFFICE SALARIES | | 1,521.45 | |
| | 11/6/09<br>110609OF | GENJ | Office Salaries - Signature Bank - ADP FEE 110609 OFFICE SALARIES | | 44.00 | |
| | 11/6/09<br>110609OF | GENJ | Office Salaries - Signature Bank - Net Pay  110609 OFFICE SALARIES | | 3,574.60 | |
| | 11/9/09<br>1109D01 | CRJ | Loan Track deposits | 21,895.68 | | |
| | 11/9/09<br>1109D02 | CRJ | MISCELLANEOUS DEPOSIT | 35,070.88 | | |
| | 11/10/09<br>1102 | CDJ | ROBERT MAZLIACH | | 253.60 | |
| | 11/10/09<br>1103 | CDJ | MEDALLION FUNDING CORP. AS SER | | 1,323.19 | |
| | 11/10/09<br>1104 | CDJ | MEDALLION FUNDING CORP. AS SER | | 1,262.03 | |
| | 11/16/09<br>1116D01 | CRJ | Loan Track deposits | 157.47 | | |
| | 11/16/09<br>1116D02 | CRJ | Loan Track deposits | 40,600.26 | | |
| | 11/18/09<br>1105 | CDJ | SMITH BARNEY AS CUSTODIAN | | 972.33 | |
| | 11/18/09<br>1106 | CDJ | SMITH BARNEY AS CUSTODIAN | | 1,136.96 | |
| | 11/18/09<br>1107 | CDJ | SMITH BARNEY AS SEP\IRA CUST | | 4,322.70 | |
| | 11/18/09<br>1108 | CDJ | SMITH BARNEY AS SEP\IRA CUST | | 4,339.33 | |
| | 11/18/09 | CDJ | PERSHING LLC AS CUSTODIAN | | 14,672.81 | |

6/22/11 at 14:44:29.15

# Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID / Account Description | Date / Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 1004.6 (cont.) | 1109 | | CUSTODIAN | | | |
| | 11/18/09 | CDJ | PERSHING LLC AS | | 7,404.38 | |
| | 1110 | | CUSTODIAN | | | |
| | 11/18/09 | CDJ | SOUTHWEST | | 5,809.83 | |
| | 1111 | | SECURITIES AS SEP\IR | | | |
| | 11/18/09 | CDJ | SOUTHWEST | | 6,100.32 | |
| | 1112 | | SECURITIES AS SEP\IR | | | |
| | 11/18/09 | CDJ | SMITH BARNEY SEP | | 1,467.72 | |
| | 1113 | | PLAN FOR THE | | | |
| | 11/18/09 | CDJ | SMITH BARNEY SEP | | 1,712.34 | |
| | 1114 | | PLAN FOR THE | | | |
| | 11/18/09 | CDJ | STATEN ISLAND BANK | | 2,181.78 | |
| | 1115 | | AND TRUST | | | |
| | 11/18/09 | CDJ | STATEN ISLAND BANK | | 2,545.41 | |
| | 1116 | | AND TRUST | | | |
| | 11/18/09 | CDJ | SOUTHWEST | | 3,936.16 | |
| | 1117 | | SECURITIES | | | |
| | 11/18/09 | CDJ | SOUTHWEST | | 4,078.61 | |
| | 1118 | | SECURITIES | | | |
| | 11/18/09 | CDJ | MICHAEL FEINSOD | | 14,580.00 | |
| | 1121 | | CGM SEP IRA | | | |
| | 11/18/09 | CDJ | MICHAEL FEINSOD | | 7,590.00 | |
| | 1122 | | CGM SEP IRA | | | |
| | 11/19/09 | CDJ | WELLS FARGO | | 5,329.95 | |
| | 1123 | | ADVISORS LLC AS CU | | | |
| | 11/19/09 | CDJ | WELLS FARGO | | 5,350.82 | |
| | 1124 | | ADVISORS LLC AS CU | | | |
| | 11/19/09 | CRJ | Loan Track deposits | 45.00 | | |
| | 1119d01 | | | | | |
| | 11/20/09 | GENJ | Office Salaries - Signature Bank - Net Pay  11 20 09 OFFICE SALARIES | | 3,501.63 | |
| | 112009OF | | | | | |
| | 11/20/09 | GENJ | Office Salaries - Signature Bank - Taxes 11 20 09 OFFICE SALARIES | | 1,478.09 | |
| | 112009OF | | | | | |
| | 11/20/09 | GENJ | Office Salaries - Signature Bank - ADP FEE 11 20 09 OFFICE SALARIES | | 44.00 | |
| | 112009OF | | | | | |
| | 11/23/09 | CRJ | Loan Track deposits | 6,345.95 | | |
| | 1123D01 | | | | | |
| | 11/25/09 | CRJ | Loan Track deposits | 8,677.03 | | |
| | 1125D01 | | | | | |
| | 11/25/09 | CRJ | MISCELLANEOUS | 378.58 | | |
| | 1125D02 | | DEPOSIT | | | |
| | 11/25/09 | CRJ | MISCELLANEOUS | 55.71 | | |
| | 1125D03 | | DEPOSIT | | | |
| | 11/25/09 | CRJ | MISCELLANEOUS | 35,070.88 | | |
| | 1125D04 | | DEPOSIT | | | |
| | 11/30/09 | CRJ | Loan Track deposits | 5,257.80 | | |
| | 1130D01 | | | | | |
| | 11/30/09 | CRJ | Loan Track deposits | 1,948.97 | | |
| | 1130D02 | | | | | |
| | 11/30/09 | GENJ | To record Prepaid Payroll | | 35,124.20 | |
| | J/E 2D | | | | | |
| | | | Current Period Change | 388,907.21 | 260,110.52 | 128,796.69 |
| | 12/1/09 | | Beginning Balance | | | 268,208.14 |

# Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID / Account Description | Date / Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 1004.6 (cont.) | 12/1/09 1209OFFIC | GENJ | Officer Salaries - Signature Bank  Net Pay 1209 OFFICER SALARIES | | 82,728.15 | |
| | 12/1/09 1209OFFIC | GENJ | Officer Salaries - Signature Bank - Taxes 1209 OFFICER SALARIES | | 35,124.20 | |
| | 12/1/09 1209OFFIC | GENJ | Officer Salaries - Signature Bank - ADP FEE 1209 OFFICER SALARIES | | 49.28 | |
| | 12/1/09 1201D01 | CRJ | MISCELLANEOUS DEPOSIT | 378.58 | | |
| | 12/1/09 J/E 2D | GENJ | To record Prepaid Payroll | 35,124.20 | | |
| | 12/4/09 120409OF | GENJ | Office Salaries - Signature Bank - Taxes 120409 OFFICE SALARIES | | 1,331.47 | |
| | 12/4/09 120409OF | GENJ | Office Salaries - Signature Bank - Net Pay 120409 OFFICE SALARIES | | 3,241.25 | |
| | 12/4/09 120409OF | GENJ | Office Salaries - Signature Bank - ADP FEE 120409 OFFICE SALARIES | | 44.00 | |
| | 12/8/09 1208D01 | CRJ | Loan Track deposits | 1,920.27 | | |
| | 12/11/09 1211D01 | CRJ | MISCELLANEOUS DEPOSIT | 16,129.45 | | |
| | 12/11/09 1211D02 | CRJ | MISCELLANEOUS DEPOSIT | 150,000.00 | | |
| | 12/16/09 1216D01 | CRJ | Loan Track deposits | 904.99 | | |
| | 12/18/09 121809OF | GENJ | Office Salaries - Signature Bank - Taxes 121809 OFFICE SALARIES | | 1,392.86 | |
| | 12/18/09 121809OF | GENJ | Office Salaries - Signature Bank - Net Pay 121809 OFFICE SALARIES | | 3,354.32 | |
| | 12/18/09 121809ADJ | GENJ | OFFICE SALARIES - CORRECT 12/18/09 OFFICE SALARIES - SIGNATURE BANK TAXES | 166.29 | | |
| | 12/18/09 121809ADJ | GENJ | OFFICE SALARIES - CORRECT 12/18/09 OFFICE SALARIES - SIGNATURE BANK NET SALARIES | 531.48 | | |
| | 12/21/09 1125 | CDJ | BUSINESS WIRE, INC. | | 325.00 | |
| | 12/21/09 1126 | CDJ | CLAREWOOD CONSULTING LLC | | 2,921.14 | |
| | 12/21/09 1127 | CDJ | COMPUWEB | | 149.85 | |
| | 12/21/09 1128 | CDJ | Continental Stock Transfer & | | 1,311.09 | |
| | 12/21/09 | CDJ | CRAIN'S | | 69.95 | |

# Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 1004.6 (cont.) | 1129 | | | | | |
| | 12/21/09 | CDJ | ELLEN WALKER | | 430.06 | |
| | 1130 | | | | | |
| | 12/21/09 | CDJ | Executive Charge Inc. | | 54.33 | |
| | 1131 | | | | | |
| | 12/21/09 | CDJ | FAIRVIEW INVESTMENT SERVICES | | 2,604.17 | |
| | 1132 | | | | | |
| | 12/21/09 | CDJ | JOHN LAIRD | | 50.65 | |
| | 1133 | | | | | |
| | 12/21/09 | CDJ | SAFEGUARD BUSINESS SYSTEMS | | 139.21 | |
| | 1134 | | | | | |
| | 12/21/09 | CDJ | SILVIA MULLENS | | 53.49 | |
| | 1135 | | | | | |
| | 12/21/09 | CDJ | STAPLES | | 967.11 | |
| | 1136 | | | | | |
| | 12/21/09 | CDJ | STURSBERG AND ASSOCIATES LLC | | 1,770.35 | |
| | 1137 | | | | | |
| | 12/21/09 | CDJ | SURGE ELECTRONIC MEDIA GROUP L | | 2,183.13 | |
| | 1138 | | | | | |
| | 12/21/09 | CDJ | TIME WARNER CABLE OF NYC | | 79.70 | |
| | 1139 | | | | | |
| | 12/21/09 | CDJ | TRANS UNION | | 43.55 | |
| | 1140 | | | | | |
| | 12/21/09 | CDJ | VERIZON | | 537.98 | |
| | 1141 | | | | | |
| | 12/22/09 | CRJ | Loan Track deposits | 3,500.00 | | |
| | 1222D01 | | | | | |
| | 12/23/09 | CDJ | DOLLIE CAMPBELL | | 1,523.78 | |
| | 1142 | | | | | |
| | 12/23/09 | CDJ | DOMINIC GRANITO | | 5,079.25 | |
| | 1143 | | | | | |
| | 12/23/09 | GENJ | Office Salaries - Signature Bank - Taxes 2009 OFFICE BONUSES | | 1,118.25 | |
| | 122309200 | | | | | |
| | 12/28/09 | CRJ | Loan Track deposits | 2,569.82 | | |
| | 1228D01 | | | | | |
| | 12/29/09 | CRJ | Loan Track deposits | 905.09 | | |
| | 1229D01 | | | | | |
| | 12/30/09 | GENJ | Office Salaries - Signature Bank - Net Pay BONUS 2009 | | 692.63 | |
| | 123009BO | | | | | |
| | 12/30/09 | GENJ | Office Salaries - Signature Bank - Taxes BONUS 2009 | | 117.29 | |
| | 123009BO | | | | | |
| | 12/31/09 | CRJ | Loan Track deposits | 2,687.98 | | |
| | 1231D01 | | | | | |
| | 12/31/09 | GENJ | To record Prepaid Payroll | | 2,752.46 | |
| | J/E 2D | | | | | |
| | 12/31/09 | GENJ | To record Prepaid Payroll | | 1,323.59 | |
| | J/E 2D | | | | | |
| | | | Current Period Change | 214,818.15 | 153,563.54 | 61,254.61 |
| | 1/1/10 | | Beginning Balance | | | 329,462.75 |
| | 1/1/10 | GENJ | To record Prepaid Payroll | 2,752.46 | | |
| | J/E 2D | | | | | |
| | 1/1/10 | GENJ | To record Prepaid Payroll | 1,323.59 | | |
| | J/E 2D | | | | | |
| | 1/4/10 | GENJ | Office Salaries - Signature Bank - Taxes 010110 OFFICE SALARIES | | 1,323.59 | |
| | 010110OF | | | | | |

6/22/11 at 14:44:29.27

**Elk Associates Funding Corporation**
**General Ledger**
**For the Period From Jul 1, 2009 to Jun 30, 2010**

Page: 48

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 1004.6 (cont.) | 1/4/10<br>010110OF | GENJ | SALARIES<br>Office Salaries -<br>Signature Bank - Net<br>Pay 010110 OFFICE<br>SALARIES | | 2,752.46 | |
| | 1/4/10<br>0110OFFIC | GENJ | Officer Salaries -<br>Signature Bank - Taxes<br>0110 OFFICERS<br>SALARIES | | 48,977.61 | |
| | 1/4/10<br>0110OFFIC | GENJ | Officer Salaries -<br>Signature Bank - ADP<br>FEE 0110 OFFICERS<br>SALARIES | | 14.50 | |
| | 1/4/10<br>0110OFFIC | GENJ | Officer Salaries -<br>Signature Bank  Net Pay<br>0110 OFFICERS<br>SALARIES | | 77,042.37 | |
| | 1/5/10<br>0105D01 | CRJ | Loan Track deposits | 3,500.00 | | |
| | 1/7/10<br>0107WT | CRJ | MISCELLANEOUS<br>DEPOSIT | 250,000.00 | | |
| | 1/8/10<br>123109ADJ | GENJ | ADJUST ADP FEE<br>1/1/10 PAYROLL | 14.50 | | |
| | 1/8/10<br>010810AD | GENJ | ADP FEE W2 FORMS<br>2009 | | 94.10 | |
| | 1/10/10<br>0110D01 | CRJ | Loan Track deposits | 1,920.27 | | |
| | 1/11/10<br>0111D01 | CRJ | MISCELLANEOUS<br>DEPOSIT | 378.58 | | |
| | 1/15/10<br>011510OF | GENJ | Office Salaries -<br>Signature Bank - Taxes<br>011510 OFFICE<br>SALARIES | | 1,323.59 | |
| | 1/15/10<br>011510OF | GENJ | Office Salaries -<br>Signature Bank - Net<br>Pay 011510 OFFICE<br>SALARIES | | 2,752.46 | |
| | 1/15/10<br>0115D01 | CRJ | Loan Track deposits | 2,577.31 | | |
| | 1/20/10<br>0120D01 | CRJ | MISCELLANEOUS<br>DEPOSIT | 162,821.65 | | |
| | 1/27/10<br>0127D01 | CRJ | Loan Track deposits | 8,677.03 | | |
| | 1/29/10<br>012910OF | GENJ | Office Salaries -<br>Signature Bank - Taxes<br>01/29/10 OFFICE<br>SALARIES | | 1,658.10 | |
| | 1/29/10<br>012910OF | GENJ | Office Salaries -<br>Signature Bank - Net<br>Pay 01/29/10 OFFICE<br>SALARIES | | 3,557.83 | |
| | 1/29/10<br>0129D01 | CRJ | Loan Track deposits | 5,257.80 | | |
| | 1/29/10<br>0129D02 | CRJ | MISCELLANEOUS<br>DEPOSIT | 37,048.68 | | |
| | | | Current Period Change | 476,271.87 | 139,496.61 | 336,775.26 |
| | 2/1/10 | | Beginning Balance | | | 666,238.01 |
| | 2/1/10<br>201DM | CDJ | SIGNATURE BANK | | 69,069.83 | |
| | 2/1/10<br>202DM | CDJ | SIGNATURE BANK | | 47,671.07 | |

# Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 1004.6 (cont.) | 2/3/10<br>203DM | CDJ | SIGNATURE BANK | | 8,127.12 | |
| | 2/11/10<br>204DM | CDJ | SIGNATURE BANK | | 3,557.83 | |
| | 2/11/10<br>205DM | CDJ | SIGNATURE BANK | | 1,627.72 | |
| | 2/16/10<br>206DM | CDJ | SIGNATURE BANK | | 23,934.00 | |
| | 2/16/10<br>207DM | CDJ | SIGNATURE BANK | | 13,862.50 | |
| | 2/17/10<br>0217D01 | CRJ | MISCELLANEOUS<br>DEPOSIT | 3,535.85 | | |
| | 2/25/10<br>1144 | CDJ | PETER BOOCKVAR | | 1,000.00 | |
| | 2/25/10<br>1145 | CDJ | PETER BOOCKVAR | | 1,000.00 | |
| | 2/25/10<br>1146 | CDJ | HOWARD SOMMER | | 1,000.00 | |
| | 2/25/10<br>1147 | CDJ | HOWARD SOMMER | | 1,000.00 | |
| | 2/25/10<br>1148 | CDJ | PRIDES CAPITAL LLC | | 1,000.00 | |
| | 2/25/10<br>1149 | CDJ | STEVEN ETRA | | 1,000.00 | |
| | 2/25/10<br>1150 | CDJ | IVAN WOLPERT | | 1,000.00 | |
| | 2/25/10<br>1151 | CDJ | ELLIOTT H SINGER | | 1,000.00 | |
| | 2/25/10<br>1152 | CDJ | CAFE BASIL | | 9.61 | |
| | 2/25/10<br>1154 | CDJ | COMPUWEB | | 149.85 | |
| | 2/25/10<br>1155 | CDJ | Continental Stock<br>Transfer & | | 1,317.38 | |
| | 2/25/10<br>1156 | CDJ | EMPIRE HEALTH<br>CHOICE HMO | | 4,271.62 | |
| | 2/25/10<br>1157 | CDJ | FEDERAL EXPRESS | | 634.52 | |
| | 2/25/10<br>1158 | CDJ | INTERNATIONAL<br>PRINT GROUP LLC | | 822.01 | |
| | 2/25/10<br>1159 | CDJ | NASBIC | | 6,060.00 | |
| | 2/25/10<br>1160 | CDJ | OXFORD HEALTH<br>PLANS | | 6,135.10 | |
| | 2/25/10<br>1161 | CDJ | ROBERT MAZLIACH | | 250.91 | |
| | 2/25/10<br>1162 | CDJ | ROSEN SEYMOUR<br>SHAPSS | | 19,469.00 | |
| | 2/25/10<br>1163 | CDJ | NYC Dept. of Finance | | 7,911.97 | |
| | 2/25/10<br>1164 | CDJ | SILVIA MULLENS | | 106.98 | |
| | 2/25/10<br>1165 | CDJ | STEPHEN H.<br>TARNOFSKY CPA | | 8,800.00 | |
| | 2/25/10<br>1166 | CDJ | TIME WARNER CABLE<br>OF NYC | | 79.67 | |
| | 2/25/10<br>1167 | CDJ | TRUE TYPE PRINTING<br>CO. INC. | | 4,483.60 | |
| | 2/25/10<br>1168 | CDJ | VERIZON | | 546.93 | |
| | 2/25/10<br>1169 | CDJ | GRANOFF WALKER<br>FORLENZA PC | | 455.50 | |
| | 2/25/10 | CDJ | SIGNATURE BANK | | 3,521.35 | |

6/22/11 at 14:44:29.37

Page: 50

### Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 1004.6 (cont.) | 208DM | | | | | |
| | 2/25/10 | CDJ | SIGNATURE BANK | | 1,647.55 | |
| | 209DM | | | | | |
| | 2/26/10 | CDJ | SIGNATURE BANK | | 77,197.00 | |
| | 210DM | | | | | |
| | 2/26/10 | CDJ | SIGNATURE BANK | | 47,670.97 | |
| | 211DM | | | | | |
| | 2/28/10 | CRJ | Loan Track deposits | 5,257.80 | | |
| | 0228D01 | | | | | |
| | 2/28/10 | CRJ | MISCELLANEOUS | 37,048.68 | | |
| | 0228D02 | | DEPOSIT | | | |
| | | | Current Period Change | 45,842.33 | 367,391.59 | -321,549.26 |
| | 3/1/10 | | Beginning Balance | | | 344,688.75 |
| | 3/5/10 | CRJ | Loan Track deposits | 239.20 | | |
| | 0305D01 | | | | | |
| | 3/5/10 | CRJ | MISCELLANEOUS | 378.58 | | |
| | 0305D02 | | DEPOSIT | | | |
| | 3/10/10 | CRJ | Loan Track deposits | 10,597.30 | | |
| | 0310D01 | | | | | |
| | 3/11/10 | CRJ | MISCELLANEOUS | 150,000.00 | | |
| | 0311D01 | | DEPOSIT | | | |
| | 3/12/10 | CDJ | MANUAL PAYROLL | | 1,468.86 | |
| | 2804 | | CHECK #2804 | | | |
| | 3/12/10 | CDJ | SIGNATURE BANK | | 3,557.84 | |
| | 301DM | | | | | |
| | 3/12/10 | CDJ | SIGNATURE BANK | | 2,534.63 | |
| | 302DM | | | | | |
| | 3/12/10 | CDJ | SIGNATURE BANK | | 45.40 | |
| | 303DM | | | | | |
| | 3/15/10 | CRJ | Loan Track deposits | 2,500.00 | | |
| | 0315D01 | | | | | |
| | 3/16/10 | CRJ | Loan Track deposits | 2,569.82 | | |
| | 0316D01 | | | | | |
| | 3/19/10 | CDJ | BUSINESS WIRE, INC. | | 400.00 | |
| | 1170 | | | | | |
| | 3/19/10 | CDJ | FAIRVIEW | | 2,604.17 | |
| | 1171 | | INVESTMENT | | | |
| | | | SERVICES | | | |
| | 3/19/10 | CDJ | MURRAY INDICK | | 551.40 | |
| | 1172 | | | | | |
| | 3/19/10 | CDJ | INTERNATIONAL | | 206.86 | |
| | 1173 | | PRINT GROUP LLC | | | |
| | 3/19/10 | CDJ | Lee A. Forlenza | | 169.90 | |
| | 1174 | | | | | |
| | 3/19/10 | CDJ | OXFORD HEALTH | | 6,135.10 | |
| | 1175 | | PLANS | | | |
| | 3/19/10 | CDJ | PEACHTREE FORMS | | 119.17 | |
| | 1176 | | | | | |
| | 3/19/10 | CDJ | ROBERT MAZLIACH | | 250.22 | |
| | 1177 | | | | | |
| | 3/19/10 | CDJ | SAFEGUARD | | 61.50 | |
| | 1178 | | BUSINESS SYSTEMS | | | |
| | 3/19/10 | CDJ | SMALL BUSINESS | | 6,822.00 | |
| | 1179 | | ADMINISTRATION | | | |
| | 3/19/10 | CDJ | STEPHEN H. | | 6,600.00 | |
| | 1180 | | TARNOFSKY CPA | | | |
| | 3/19/10 | CDJ | TIME WARNER CABLE | | 79.67 | |
| | 1181 | | OF NYC | | | |
| | 3/19/10 | CDJ | TRANS UNION | | 43.55 | |
| | 1182 | | | | | |
| | 3/19/10 | CDJ | VERIZON | | 543.68 | |

6/22/11 at 14:44:29.41

**Elk Associates Funding Corporation**
**General Ledger**
**For the Period From Jul 1, 2009 to Jun 30, 2010**

Page: 51

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 1004.6 (cont.) | 1183 | | | | | |
| | 3/19/10<br>1184 | CDJ | THE WEEKS-LERMAN<br>GROUP | | 65.98 | |
| | 3/22/10<br>304DM | CDJ | SIGNATURE BANK | | 2,006.11 | |
| | 3/25/10<br>305DM | CDJ | SIGNATURE BANK | | 15,470.30 | |
| | 3/25/10<br>306DM | CDJ | SIGNATURE BANK | | 3,861.50 | |
| | 3/26/10<br>1185 | CDJ | MARKIT WSO<br>CORPORATION | | 2,460.74 | |
| | 3/30/10<br>1186 | CDJ | BRIAN ACKERMAN | | 34.65 | |
| | 3/30/10<br>1187 | CDJ | FRESHSTART<br>VENTURE  CAPITAL<br>CO | | 743.60 | |
| | 3/30/10<br>1188 | CDJ | HANAM CAPITAL<br>CORPORATION | | 328.28 | |
| | 3/30/10<br>1189 | CDJ | MEDALLION FUNDING<br>CORP. | | 712.35 | |
| | 3/30/10<br>1190 | CDJ | MEYER ACKERMAN | | 121.03 | |
| | 3/30/10<br>1191 | CDJ | MILESTONE GROWTH<br>FUND INC. | | 650.39 | |
| | 3/30/10<br>1192 | CDJ | Pinnacle Commercial<br>Capital, L | | 533.14 | |
| | 3/30/10<br>1193 | CDJ | STEVE PORTNOY<br>TRUSTEE | | 51.74 | |
| | 3/30/10<br>1194 | CDJ | STEVE PORTNOY<br>TRUSTEE | | 51.74 | |
| | 3/30/10<br>1195 | CDJ | THE OSG CORP. | | 1,218.19 | |
| | 3/30/10<br>1196 | CDJ | JERROLD MARCH | | 525.53 | |
| | 3/30/10<br>0330WT | CDJ | CHARLES GOODBAR<br>IOLTA ACCT. | | 20,000.00 | |
| | 3/31/10<br>307DM | CDJ | SIGNATURE BANK | | 79,967.20 | |
| | 3/31/10<br>308DM | CDJ | SIGNATURE BANK | | 42,130.57 | |
| | 3/31/10<br>309DM | CDJ | SIGNATURE BANK | | 45.70 | |
| | | | Current Period Change | 166,284.90 | 203,172.69 | -36,887.79 |
| | 4/1/10 | | Beginning Balance | | | 307,800.96 |
| | 4/5/10<br>0405WT | CDJ | DEUTSCHE BANK<br>TRUST CO. AMERIC | | 416.66 | |
| | 4/6/10<br>0406D01 | CRJ | MISCELLANEOUS<br>DEPOSIT | 35,740.84 | | |
| | 4/7/10<br>401DM | CDJ | SIGNATURE BANK | | 59.78 | |
| | 4/9/10<br>402DM | CDJ | SIGNATURE BANK | | 3,584.26 | |
| | 4/9/10<br>403DM | CDJ | SIGNATURE BANK | | 1,639.15 | |
| | 4/9/10<br>0409D01 | CRJ | Loan Track deposits | 2,152.15 | | |
| | 4/14/10<br>404DM | CDJ | SIGNATURE BANK | | 44.00 | |
| | 4/15/10<br>0415D01 | CRJ | Loan Track deposits | 4,000.00 | | |
| | 4/15/10 | CRJ | MISCELLANEOUS<br>DEPOSIT | 52.67 | | |

6/22/11 at 14:44:29.46

### Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 1004.6 (cont.) | 0415D02 | | DEPOSIT | | | |
| | 4/16/10 405DM | CDJ | SIGNATURE BANK | | 2,031.70 | |
| | 4/16/10 406DM | CDJ | SIGNATURE BANK | | 450.36 | |
| | 4/21/10 1201 | CDJ | GRANOFF WALKER FORLENZA PC | | 18,204.21 | |
| | 4/21/10 407DM | CDJ | SIGNATURE BANK | | 40.60 | |
| | 4/22/10 408DM | CDJ | SIGNATURE BANK | | 3,121.16 | |
| | 4/22/10 409DM | CDJ | SIGNATURE BANK | | 1,531.92 | |
| | 4/22/10 410DM | CDJ | SIGNATURE BANK | | 9.27 | |
| | 4/22/10 0422D01 | CRJ | Loan Track deposits | 8,677.03 | | |
| | 4/28/10 411DM | CDJ | SIGNATURE BANK | | 42.30 | |
| | 4/30/10 412DM | CDJ | SIGNATURE BANK | | 81,200.35 | |
| | 4/30/10 413DM | CDJ | SIGNATURE BANK | | 39,664.27 | |
| | 4/30/10 0430WT4 | CRJ | MISCELLANEOUS DEPOSIT | 1,000,000.00 | | |
| | 4/30/10 0430D02 | CRJ | Loan Track deposits | 2,687.98 | | |
| | | | Current Period Change | 1,053,310.67 | 152,039.99 | 901,270.68 |
| | 5/1/10 | | Beginning Balance | | | 1,209,071.64 |
| | 5/5/10 501DM | CDJ | SIGNATURE BANK | | 49.28 | |
| | 5/6/10 502DM | CDJ | SIGNATURE BANK | | 3,178.88 | |
| | 5/6/10 503DM | CDJ | SIGNATURE BANK | | 1,495.48 | |
| | 5/7/10 0507D01 | CRJ | MISCELLANEOUS DEPOSIT | 131.00 | | |
| | 5/7/10 0507D02 | CRJ | MISCELLANEOUS DEPOSIT | 600.00 | | |
| | 5/10/10 0510D01 | CRJ | Loan Track deposits | 1,920.27 | | |
| | 5/11/10 0511D01 | CRJ | MISCELLANEOUS DEPOSIT | 35,070.88 | | |
| | 5/12/10 504DM | CDJ | SIGNATURE BANK | | 42.30 | |
| | 5/12/10 0512D01 | CRJ | Loan Track deposits | 2,500.00 | | |
| | 5/17/10 0517D01 | CRJ | Loan Track deposits | 12,147.83 | | |
| | 5/20/10 0520D01 | CRJ | Loan Track deposits | 1,077.70 | | |
| | 5/21/10 505DM | CDJ | SIGNATURE BANK | | 3,172.47 | |
| | 5/21/10 506DM | CDJ | SIGNATURE BANK | | 1,478.47 | |
| | 5/24/10 0524D01 | CRJ | Loan Track deposits | 83.64 | | |
| | 5/26/10 0526D01 | CRJ | MISCELLANEOUS DEPOSIT | 378.58 | | |
| | 5/26/10 507DM | CDJ | SIGNATURE BANK | | 42.30 | |

6/22/11 at 14:44:29.51

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 1004.6 (cont.) | 5/28/10<br>508DM | CDJ | SIGNATURE BANK | | 81,200.33 | |
| | 5/28/10<br>509DM | CDJ | SIGNATURE BANK | | 39,664.31 | |
| | 5/31/10<br>0531D02 | CRJ | Loan Track deposits | 2,687.98 | | |
| | | | Current Period Change | 56,597.88 | 130,323.82 | -73,725.94 |
| | 6/1/10 | | Beginning Balance | | | 1,135,345.70 |
| | 6/3/10<br>601DM | CDJ | SIGNATURE BANK | | 49.28 | |
| | 6/3/10<br>602DM | CDJ | SIGNATURE BANK | | 1,431.88 | |
| | 6/4/10<br>603DM | CDJ | SIGNATURE BANK | | 3,121.16 | |
| | 6/8/10<br>0608D01 | CRJ | Loan Track deposits | 3,538.81 | | |
| | 6/8/10<br>0608D02 | CRJ | MISCELLANEOUS DEPOSIT | 35,070.88 | | |
| | 6/8/10<br>608CM | CRJ | MISCELLANEOUS DEPOSIT | 5.42 | | |
| | 6/9/10<br>0609d01 | CRJ | Loan Track deposits | 2,500.00 | | |
| | 6/9/10<br>0609d02 | CRJ | MISCELLANEOUS DEPOSIT | 2,500.00 | | |
| | 6/10/10<br>605DM | CDJ | SIGNATURE BANK | | 42.30 | |
| | 6/15/10<br>606DM | CDJ | SIGNATURE BANK | | 245.77 | |
| | 6/16/10<br>607DM | CDJ | SIGNATURE BANK | | 2,879.07 | |
| | 6/17/10<br>608DM | CDJ | SIGNATURE BANK | | 3,121.16 | |
| | 6/17/10<br>609DM | CDJ | SIGNATURE BANK | | 1,431.88 | |
| | 6/23/10<br>610DM | CDJ | SIGNATURE BANK | | 40.60 | |
| | 6/23/10<br>611DM | CDJ | SIGNATURE BANK | | 42.30 | |
| | 6/24/10<br>0624D01 | CRJ | Loan Track deposits | 733.38 | | |
| | 6/25/10<br>0625D01 | CRJ | Loan Track deposits | 4,490.09 | | |
| | 6/29/10<br>0629D01 | CRJ | Loan Track deposits | 10,597.06 | | |
| | 6/30/10<br>612DM | CDJ | SIGNATURE BANK | | 72,512.88 | |
| | 6/30/10<br>613DM | CDJ | SIGNATURE BANK | | 35,196.61 | |
| | | | Current Period Change | 59,435.64 | 120,114.89 | -60,679.25 |
| | 6/30/10 | | Ending Balance | | | 1,074,666.45 |
| 1005<br>TRANSFERS | 7/1/09 | | Beginning Balance | | | |
| | 7/8/09<br>10599 | CDJ | ELK ASSOCIATES FUNDING - TRANSFER CITIBANK TO IDB | 20,000.00 | | |
| | 7/8/09<br>10600 | CDJ | ELK ASSOCIATES FUNDING - TRANSFER CITIBANK TO BANK LEUMI | 20,000.00 | | |

6/22/11 at 14:44:29.55

# Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| | | | LEUMI | | | |
| 1005 (cont.) | 7/8/09<br>10601 | CDJ | ELK ASSOCIATES FUNDING - TRANSFER CITIBANK TO SIGNATURE BANK | 30,000.00 | | |
| | 7/8/09<br>0708TRSF | CRJ | MISCELLANEOUS DEPOSIT - TRANSFER CITIBANK TO SIGNATURE BANK | | 30,000.00 | |
| | 7/8/09<br>0708TRSF | CRJ | MISCELLANEOUS DEPOSIT - TRANSFER CITIBANK TO IDB | | 20,000.00 | |
| | 7/8/09<br>0708TRSF | CRJ | MISCELLANEOUS DEPOSIT - TRANSFER CITIBANK TO BANK LEUMI | | 20,000.00 | |
| | | | Current Period Change | 70,000.00 | 70,000.00 | |
| | 8/1/09 | | Beginning Balance | | | |
| | 9/1/09 | | Beginning Balance | | | |
| | 9/9/09<br>10626 | CDJ | ELK ASSOCIATES FUNDING - TRANSFER CITIBANK TO SIGNATURE BANK | 50,000.00 | | |
| | 9/9/09<br>0909D02 | CRJ | MISCELLANEOUS DEPOSIT - TRANSFER CITIBANK TO SIGNATURE BANK | | 50,000.00 | |
| | | | Current Period Change | 50,000.00 | 50,000.00 | |
| | 10/1/09 | | Beginning Balance | | | |
| | 11/1/09 | | Beginning Balance | | | |
| | 11/4/09<br>27157 | CDJ | ELK ASSOCIATES FUNDING - TRANSFER EAFC IDB TO BANK LEUMI | 207,000.00 | | |
| | 11/4/09<br>27158 | CDJ | ELK ASSOCIATES FUNDING - TRANSFER EAFC IDB TO CITIBANK | 203,000.00 | | |
| | 11/4/09<br>27159 | CDJ | ELK ASSOCIATES FUNDING - TRANSFER EAFC IDB TO EAFC SIGNATURE BANK | 115,000.00 | | |
| | 11/4/09<br>1104D01 | CRJ | MISCELLANEOUS DEPOSIT - TRANSFER EAFC IDB TO EAFC SIGNATURE BANK | | 115,000.00 | |
| | 11/4/09<br>1104D02 | CRJ | MISCELLANEOUS DEPOSIT - TRANSFER EAFC IDB TO BANK LEUMI | | 207,000.00 | |
| | 11/4/09<br>1104D03 | CRJ | MISCELLANEOUS DEPOSIT - TRANSFER EAFC IDB TO CITIBANK | | 203,000.00 | |
| | | | Current Period Change | 525,000.00 | 525,000.00 | |
| | 12/1/09 | | Beginning Balance | | | |

# Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 1005 (cont.) | 12/11/09<br>10648 | CDJ | ELK ASSOCIATES FUNDING - TRANSFER EAFC CITIBANK TO EAFC SIGNATURE BANK | 150,000.00 | | |
| | 12/11/09<br>1211D02 | CRJ | MISCELLANEOUS DEPOSIT - TRANSFER EAFC CITIBANK TO EAFC SIGNATURE BANK | | 150,000.00 | |
| | | | Current Period Change | 150,000.00 | 150,000.00 | |
| | 1/1/10 | | Beginning Balance | | | |
| | 1/7/10<br>0107WT | CRJ | MISCELLANEOUS DEPOSIT - TRANSFER EAFC IDB TO EAFC SIGNATURE BANK | | 250,000.00 | |
| | 1/7/10<br>0107WT | CDJ | ELK ASSOCIATES FUNDING - TRANSFER EAFC IDB TO EAFC SIGNATURE BANK | 250,000.00 | | |
| | | | Current Period Change | 250,000.00 | 250,000.00 | |
| | 2/1/10 | | Beginning Balance | | | |
| | 3/1/10 | | Beginning Balance | | | |
| | 3/11/10<br>10719 | CDJ | ELK ASSOCIATES FUNDING - TRANSFER EAFC CITIBANK TO EAFC SIGNATURE BANK | 150,000.00 | | |
| | 3/11/10<br>0311D01 | CRJ | MISCELLANEOUS DEPOSIT - TRANSFER EAFC CITIBANK TO EAFC SIGNATURE BANK | | 150,000.00 | |
| | | | Current Period Change | 150,000.00 | 150,000.00 | |
| | 4/1/10 | | Beginning Balance | | | |
| | 4/30/10<br>0430WT4 | CRJ | MISCELLANEOUS DEPOSIT - TRANSFER EAFC CITIBANK TO EAFC SIGNATURE BANK | | 1,000,000.00 | |
| | 4/30/10<br>0430WT4 | CDJ | ELK ASSOCIATES FUNDING - TRANSFER EAFC CITIBANK TO EAFC SIGNATURE BANK | 1,000,000.00 | | |
| | | | Current Period Change | 1,000,000.00 | 1,000,000.00 | |
| | 5/1/10 | | Beginning Balance | | | |
| | 6/1/10 | | Beginning Balance | | | |
| | 6/30/10 | | Ending Balance | | | |
| 1009.00 | 7/1/09 | | Beginning Balance | | | 370,000.00 |

6/22/11 at 14:44:29.62

# Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| CERTIFICATE OF DE | | | | | | |
| | 7/31/09<br>AJE6 | GENJ | To record Bank Leumi<br>C.D. Interest income | 124.27 | | |
| | | | Current Period Change | 124.27 | | 124.27 |
| | 8/1/09 | | Beginning Balance | | | 370,124.27 |
| | 9/1/09 | | Beginning Balance | | | 370,124.27 |
| | 10/1/09 | | Beginning Balance | | | 370,124.27 |
| | 11/1/09 | | Beginning Balance | | | 370,124.27 |
| | 11/30/09<br>AJE7 | GENJ | To record Bank Leumi<br>C.D. interest income | 163.24 | | |
| | | | Current Period Change | 163.24 | | 163.24 |
| | 12/1/09 | | Beginning Balance | | | 370,287.51 |
| | 1/1/10 | | Beginning Balance | | | 370,287.51 |
| | 1/31/10<br>AJE6 | GENJ | To record Bank Leumi<br>C.D. interest income | 47.46 | | |
| | | | Current Period Change | 47.46 | | 47.46 |
| | 2/1/10 | | Beginning Balance | | | 370,334.97 |
| | 3/1/10 | | Beginning Balance | | | 370,334.97 |
| | 4/1/10 | | Beginning Balance | | | 370,334.97 |
| | 5/1/10 | | Beginning Balance | | | 370,334.97 |
| | 6/1/10 | | Beginning Balance | | | 370,334.97 |
| | **6/30/10** | | **Ending Balance** | | | **370,334.97** |
| 1010<br>Accrued interest recei | 7/1/09 | | Beginning Balance | | | 575,174.22 |
| | 7/1/09<br>AJE21 | GENJ | To capitalize interest per<br>restated agreement<br>Alpha Media | 48,302.95 | | |
| | 7/1/09<br>AJE22 | GENJ | To capitalize PIK<br>Interest - Charlie<br>Brown's | 29,004.74 | | |
| | 7/1/09<br>AJE27 | GENJ | To accrue interest at<br>default rate -<br>Lifehouse-Golden Acres | | 22,707.68 | |
| | 7/31/09<br>AJE7 | GENJ | Adjust accrual for<br>Conklin & Sealmax<br>loans | | 24,390.37 | |
| | 7/31/09<br>J/E - 2Z | GENJ | TO ACCRUE JULY,<br>2009 | 1,801.65 | | |
| | 7/31/09<br>J/E - 2Z | GENJ | TO REVERSE JUNE<br>ACCRUAL | | 92,851.19 | |
| | 7/31/09<br>J/E - 2Q | GENJ | REVERSE JUNE 2009<br>ACCRUAL | | 536,923.04 | |
| | 7/31/09<br>J/E - 2Q | GENJ | TO RECORD JULY<br>2009 ACCRUED<br>INTEREST<br>RECEIVABLE | 550,328.17 | | |
| | | | Current Period Change | 629,437.51 | 676,872.28 | -47,434.77 |

6/22/11 at 14:44:29.65

Page: 57

# Elk Associates Funding Corporation
## General Ledger
## For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 1010 (cont.) | 8/1/09 | | Beginning Balance | | | 527,739.45 |
| | 8/1/09<br>AJE7 | GENJ | Adjust accrual for Conklin & Sealmax loans | 24,390.37 | | |
| | 8/31/09<br>J/E - 2Z | GENJ | TO ACCRUE AUGUST 2009 | 41,765.07 | | |
| | 8/31/09<br>J/E - 2Z | GENJ | TO REVERSE JULY ACCRUAL | | 1,801.65 | |
| | 8/31/09<br>J/E - 2Q | GENJ | TO RECORD AUG 2009 ACCRUED INTEREST RECEIVABLE | 587,955.74 | | |
| | 8/31/09<br>J/E - 2Q | GENJ | REVERSE JULY 2009 ACCRUAL | | 550,328.17 | |
| | | | Current Period Change | 654,111.18 | 552,129.82 | 101,981.36 |
| | 9/1/09 | | Beginning Balance | | | 629,720.81 |
| | 9/30/09<br>J/E 2Q | GENJ | To reverse prior month's accrual | | 587,955.74 | |
| | 9/30/09<br>J/E 2Q | GENJ | To record Accrued Interest Receivable | 579,851.37 | | |
| | 9/30/09<br>J/E 2Z | GENJ | To record Velocity interest accrual | 40,493.05 | | |
| | 9/30/09<br>J/E 2Z | GENJ | To reverse prior month's Velocity accrual | | 41,765.07 | |
| | | | Current Period Change | 620,344.42 | 629,720.81 | -9,376.39 |
| | 10/1/09 | | Beginning Balance | | | 620,344.42 |
| | 10/31/09<br>J/E 2Z | GENJ | To record Velocity interest accrual | 29,950.81 | | |
| | 10/31/09<br>J/E 2Z | GENJ | To reverse prior month's Velocity accrual | | 40,493.05 | |
| | 10/31/09<br>J/E 2Q | GENJ | To record Accrued Interest Receivable | 580,740.88 | | |
| | 10/31/09<br>J/E 2Q | GENJ | To reverse prior month's accrual | | 579,851.37 | |
| | | | Current Period Change | 610,691.69 | 620,344.42 | -9,652.73 |
| | 11/1/09 | | Beginning Balance | | | 610,691.69 |
| | 11/30/09<br>J/E 2Q | GENJ | To record Accrued Interest Receivable | 577,317.02 | | |
| | 11/30/09<br>J/E 2Q | GENJ | To reverse prior month's accrual | | 580,740.88 | |
| | 11/30/09<br>J/E 2Z | GENJ | To reverse prior month's Velocity accrual | | 29,950.81 | |
| | 11/30/09<br>J/E 2Z | GENJ | To record Velocity interest accrual | 77,849.13 | | |
| | | | Current Period Change | 655,166.15 | 610,691.69 | 44,474.46 |
| | 12/1/09 | | Beginning Balance | | | 655,166.15 |
| | 12/31/09<br>J/E 2Q | GENJ | To record Accrued Interest Receivable | 601,485.66 | | |
| | 12/31/09<br>J/E 2Q | GENJ | To reverse prior month's accrual | | 577,317.02 | |
| | 12/31/09<br>J/E -2Z | GENJ | TO ACCRUED DEC 2009 | 39,377.59 | | |
| | 12/31/09<br>J/E -2Z | GENJ | TO REVERSE NOV ACCRUAL | | 77,849.13 | |

6/22/11 at 14:44:29.70

# Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 1010 (cont.) | | | Current Period Change | 640,863.25 | 655,166.15 | -14,302.90 |
| | 1/1/10 | | Beginning Balance | | | 640,863.25 |
| | 1/31/10<br>J/E 2Q | GENJ | To record Accrued<br>Interest Receivable | 614,028.04 | | |
| | 1/31/10<br>J/E 2Q | GENJ | To reverse prior month's<br>accrual | | 601,485.66 | |
| | 1/31/10<br>J/E 2Z | GENJ | To record Velocity<br>interest accrual | 31,403.12 | | |
| | 1/31/10<br>J/E 2Z | GENJ | To reverse prior month's<br>Velocity accrual | | 39,377.59 | |
| | | | Current Period Change | 645,431.16 | 640,863.25 | 4,567.91 |
| | 2/1/10 | | Beginning Balance | | | 645,431.16 |
| | 2/28/10<br>J/E 2Q | GENJ | To record Accrued<br>Interest Receivable | 633,537.43 | | |
| | 2/28/10<br>J/E 2Q | GENJ | To reverse prior month's<br>accrual | | 614,028.04 | |
| | 2/28/10<br>J/E 2Z | GENJ | To record Velocity<br>interest accrual | 30,686.45 | | |
| | 2/28/10<br>J/E 2Z | GENJ | To reverse prior month's<br>Velocity accrual | | 31,403.12 | |
| | | | Current Period Change | 664,223.88 | 645,431.16 | 18,792.72 |
| | 3/1/10 | | Beginning Balance | | | 664,223.88 |
| | 3/31/10<br>J/E 2Q | GENJ | To record Accrued<br>Interest Receivable | 648,124.02 | | |
| | 3/31/10<br>J/E 2Q | GENJ | To reverse prior month's<br>accrual | | 633,537.43 | |
| | 3/31/10<br>J/E 2Z | GENJ | To reverse prior month's<br>Velocity accrual | | 30,686.45 | |
| | 3/31/10<br>J/E 2Z | GENJ | To record Velocity<br>interest accrual | 53,085.83 | | |
| | | | Current Period Change | 701,209.85 | 664,223.88 | 36,985.97 |
| | 4/1/10 | | Beginning Balance | | | 701,209.85 |
| | 4/30/10<br>J/E 2Q | GENJ | To record Accrued<br>Interest Receivable | 648,038.03 | | |
| | 4/30/10<br>J/E 2Q | GENJ | To reverse prior month's<br>accrual | | 648,124.02 | |
| | 4/30/10<br>J/E 2Z | GENJ | To reverse prior month's<br>Velocity accrual | | 53,085.83 | |
| | 4/30/10<br>J/E 2Z | GENJ | To record Velocity<br>interest accrual | 32,011.17 | | |
| | | | Current Period Change | 680,049.20 | 701,209.85 | -21,160.65 |
| | 5/1/10 | | Beginning Balance | | | 680,049.20 |
| | 5/31/10<br>J/E 2Q | GENJ | To record Accrued<br>Interest Receivable | 668,938.91 | | |
| | 5/31/10<br>J/E 2Q | GENJ | To reverse prior month's<br>accrual | | 648,038.03 | |
| | 5/31/10<br>J/E 2Z | GENJ | To reverse prior month's<br>Velocity accrual | | 32,011.17 | |
| | 5/31/10<br>J/E 2Z | GENJ | To record Velocity<br>interest accrual | 62,944.19 | | |
| | | | Current Period Change | 731,883.10 | 680,049.20 | 51,833.90 |
| | 6/1/10 | | Beginning Balance | | | 731,883.10 |

6/22/11 at 14:44:29.74

### Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 1010 (cont.) | 6/30/10<br>J/E 2Q | GENJ | To record Accrued Interest Receivable | 678,096.58 | | |
| | 6/30/10<br>J/E 2Q | GENJ | To reverse prior month's accrual | | 668,938.91 | |
| | 6/30/10<br>J/E 2Z | GENJ | To record Velocity interest accrual | 62,788.65 | | |
| | 6/30/10<br>J/E 2Z | GENJ | To reverse prior month's Velocity accrual | | 62,944.19 | |
| | 6/30/10<br>AJE15 | GENJ | To capitalize Charlie Brown interest and Shearer's Foods PIK interest | | 82,253.77 | |
| | | | Current Period Change | 740,885.23 | 814,136.87 | -73,251.64 |
| | **6/30/10** | | **Ending Balance** | | | **658,631.46** |
| 1010.10<br>Reserve for interest re | 7/1/09 | | Beginning Balance | | | -301,894.09 |
| | 8/1/09 | | Beginning Balance | | | -301,894.09 |
| | 9/1/09 | | Beginning Balance | | | -301,894.09 |
| | 10/1/09 | | Beginning Balance | | | -301,894.09 |
| | 10/31/09<br>AJE9 | GENJ | To reclassify reserve on Ravelo to realized | 13,073.29 | | |
| | | | Current Period Change | 13,073.29 | | 13,073.29 |
| | 11/1/09 | | Beginning Balance | | | -288,820.80 |
| | 12/1/09 | | Beginning Balance | | | -288,820.80 |
| | 1/1/10 | | Beginning Balance | | | -288,820.80 |
| | 2/1/10 | | Beginning Balance | | | -288,820.80 |
| | 3/1/10 | | Beginning Balance | | | -288,820.80 |
| | 3/31/10<br>AJE9 | GENJ | To adjust reserve for net realized gain to interest income for payment received | 28,538.76 | | |
| | | | Current Period Change | 28,538.76 | | 28,538.76 |
| | 4/1/10 | | Beginning Balance | | | -260,282.04 |
| | 4/30/10<br>AJE11 | GENJ | To adjust Reserve for Interest Receivable for payments received | 10,151.21 | | |
| | | | Current Period Change | 10,151.21 | | 10,151.21 |
| | 5/1/10 | | Beginning Balance | | | -250,130.83 |
| | 5/31/10<br>AJE11 | GENJ | To adjust reserve for net realized gain for payment received | 24,685.09 | | |
| | | | Current Period Change | 24,685.09 | | 24,685.09 |
| | 6/1/10 | | Beginning Balance | | | -225,445.74 |
| | 6/30/10 | GENJ | To write off interest | | 87,600.66 | |

6/22/11 at 14:44:29.79

**Elk Associates Funding Corporation**
**General Ledger**
**For the Period From Jul 1, 2009 to Jun 30, 2010**

Page: 60

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 1010.10 (cont.) | AJE13 | | income on Centaur sold in July 2010 | | | |
| | | | Current Period Change | | 87,600.66 | -87,600.66 |
| | **6/30/10** | | **Ending Balance** | | | **-313,046.40** |
| 1010.20<br>Debt Securities | 7/1/09 | | Beginning Balance | | | 2,638,959.27 |
| | 7/31/09<br>AJE8 | GENJ | To reclass PWT Holdings Inc. to loans receivable | | 508,158.77 | |
| | | | Current Period Change | | 508,158.77 | -508,158.77 |
| | 8/1/09 | | Beginning Balance | | | 2,130,800.50 |
| | 9/1/09 | | Beginning Balance | | | 2,130,800.50 |
| | 10/1/09 | | Beginning Balance | | | 2,130,800.50 |
| | 10/31/09<br>AJE7 | GENJ | To adjust for Conklin loan paydowns | | 4,939.24 | |
| | | | Current Period Change | | 4,939.24 | -4,939.24 |
| | 11/1/09 | | Beginning Balance | | | 2,125,861.26 |
| | 12/1/09 | | Beginning Balance | | | 2,125,861.26 |
| | 12/31/09<br>AJE6 | GENJ | To adjust Western Pottery restructured as a loan | | 361,609.00 | |
| | 12/31/09<br>AJE6 | GENJ | To adjust for Conklin loan paydowns | | 116,071.20 | |
| | | | Current Period Change | | 477,680.20 | -477,680.20 |
| | 1/1/10 | | Beginning Balance | | | 1,648,181.06 |
| | 2/1/10 | | Beginning Balance | | | 1,648,181.06 |
| | 3/1/10 | | Beginning Balance | | | 1,648,181.06 |
| | 4/1/10 | | Beginning Balance | | | 1,648,181.06 |
| | 5/1/10 | | Beginning Balance | | | 1,648,181.06 |
| | 6/1/10 | | Beginning Balance | | | 1,648,181.06 |
| | **6/30/10** | | **Ending Balance** | | | **1,648,181.06** |
| 1013<br>Loan Track-Loans Re | 7/1/09 | | Beginning Balance | | | |
| | 7/2/09<br>0702ACH1 | CRJ | CITY BRITE CLEANER INC. - ACH | | 671.28 | |
| | 7/2/09<br>0702ACH2 | CRJ | CHAO TENGA LLC - ACH | | 10,303.57 | |
| | 7/2/09<br>0702ACH3 | CRJ | GWE INC. - ACH | | 12,181.94 | |
| | 7/2/09<br>0702ACH4 | CRJ | SOUNDVIEW BROADCASTING LLC - ACH | | 14,381.99 | |
| | 7/2/09<br>0702WT | CRJ | Loan Track deposits - PYT - CHARLIE | | 11,797.58 | |

6/22/11 at 14:44:29.82

# Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| | | | BROWNS | | | |
| 1013 (cont.) | 7/3/09<br>0703WT | CRJ | Loan Track deposits -<br>PYT - BP METALS LLC<br>- SKIM INT. - JUNE 09 | | 5.56 | |
| | 7/6/09<br>0706WT | CRJ | Loan Track deposits -<br>PYT - X-RITE INC. | | 24,491.36 | |
| | 7/7/09<br>0707D01 | CRJ | Loan Track deposits -<br>PYT | | 802.70 | |
| | 7/9/09<br>0709BC1 | CDJ | SIGNATURE BANK -<br>BOUNCED CHECK -<br>E&Y CONSTRUCTION | 6,000.00 | | |
| | 7/10/09<br>0710D01 | CRJ | Loan Track deposits -<br>PYT | | 2,000.00 | |
| | 7/10/09<br>0710D02 | CRJ | Loan Track deposits -<br>PYT | | 8,677.03 | |
| | 7/10/09<br>0710ach1 | CRJ | ANDY FUR DRY<br>CLEANING INC. - ACH | | 1,374.68 | |
| | 7/15/09<br>0715D01 | CRJ | Loan Track deposits -<br>PYT | | 2,674.38 | |
| | 7/15/09<br>0715BC1 | CDJ | ISRAEL DISCOUNT<br>BANK - BOUNCED ACH<br>- ANDY FUR DRY<br>CLEANING | 1,374.68 | | |
| | 7/16/09<br>0716D01 | CRJ | Loan Track deposits -<br>PYT | | 2,000.00 | |
| | 7/20/09<br>0720D01 | CRJ | Loan Track deposits -<br>PYT | | 372.49 | |
| | 7/22/09<br>0722WT | CRJ | Loan Track deposits -<br>PYT - LEARNING CARE<br>GROUP INC. | | 15,022.22 | |
| | 7/27/09<br>0727D01 | CRJ | Loan Track deposits -<br>PYT | | 6,179.49 | |
| | 7/27/09<br>0727WT1 | CRJ | Loan Track deposits -<br>PYT - CENTAUR LLC | | 32,386.18 | |
| | 7/29/09<br>0729D01 | CRJ | Loan Track deposits -<br>PYT | | 5,362.36 | |
| | 7/31/09<br>0731D01 | CRJ | Loan Track deposits -<br>PYT | | 9,871.38 | |
| | 7/31/09<br>0731ach1 | CRJ | GOLDEN TRIANGLE<br>ENT. LLC - ACH | | 6,250.89 | |
| | 7/31/09<br>0731WT1 | CRJ | Loan Track deposits -<br>PYT - BP METALS LLC | | 23,278.24 | |
| | 7/31/09<br>0731WT2 | CRJ | Loan Track deposits -<br>PYT - BP METALS LLC<br>- SKIM INT<br>4/30/09-7/31/09 | | 2,206.90 | |
| | 7/31/09<br>0731D04 | CRJ | Loan Track deposits -<br>D/I/T 8/3/09 - PARTIAL<br>PAYOFF PIER-TECH<br>INC. | | 152,401.67 | |
| | 7/31/09<br>AJE1 | GENJ | Reclass OLS receipts | 512.37 | | |
| | 7/31/09<br>AJE1 | GENJ | Reclass OLS receipts | 163,908.28 | | |
| | 7/31/09<br>AJE1 | GENJ | Reclass OLS receipts | 140,921.16 | | |
| | 7/31/09<br>AJE1 | GENJ | Reclass OLS receipts | 233.35 | | |
| | 7/31/09<br>AJE2 | GENJ | Reclass OLS returned<br>receipts | | 7,374.68 | |
| | 7/31/09<br>AJE4 | GENJ | Reclass OLS other<br>amount receipts | 39,118.73 | | |
| | | | Current Period Change | 352,068.57 | 352,068.57 | |

6/22/11 at 14:44:29.87                                                                      Page: 62

# Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 1013 (cont.) | 8/1/09 | | Beginning Balance | | | |
| | 8/3/09<br>0803D01 | CRJ | Loan Track deposits - PYT | | 1,920.27 | |
| | 8/3/09<br>0803WT1 | CRJ | Loan Track deposits - PYT - BP METALS LLC | | 31.06 | |
| | 8/3/09<br>0803WT2 | CRJ | Loan Track deposits - PYT - CHARLIE BROWN'S - SKIM INT. - JULY 09 | | 1,236.86 | |
| | 8/3/09<br>0803WT2 | CRJ | Loan Track deposits - PYT - CHARLIE BROWN'S | | 10,978.00 | |
| | 8/4/09<br>0804D01 | CRJ | Loan Track deposits - PYT | | 45.00 | |
| | 8/4/09<br>0804ACH1 | CRJ | CHAO TENGA LLC - ACH | | 10,303.57 | |
| | 8/4/09<br>0804ACH2 | CRJ | GWE INC. - ACH | | 12,181.94 | |
| | 8/4/09<br>0804ACH3 | CRJ | SOUNDVIEW BROADCASTING LLC - ACH | | 14,381.99 | |
| | 8/4/09<br>0804ACH4 | CRJ | PWT HOLDINGS INC. - ACH | | 15,000.00 | |
| | 8/6/09<br>0806D01 | CRJ | Loan Track deposits - PYT - MI TREN GEENLAWN | | 40,000.00 | |
| | 8/6/09<br>0806D02 | CRJ | Loan Track deposits - PYT | | 8,677.03 | |
| | 8/6/09<br>0806WT | CRJ | Loan Track deposits - PYT - LEARNING CARE GROUP INC. | | 2,570.16 | |
| | 8/7/09<br>0807D01 | CRJ | Loan Track deposits - PYT | | 847.57 | |
| | 8/12/09<br>0812D01 | CRJ | Loan Track deposits - PYT | | 200.00 | |
| | 8/13/09<br>0813WT | CRJ | Loan Track deposits - PYT - BP METALS LLC - SKIM INT 7/09 | | 1.76 | |
| | 8/18/09<br>0818D01 | CRJ | Loan Track deposits - PYT | | 3,445.93 | |
| | 8/20/09<br>0820D01 | CRJ | Loan Track deposits - PYT | | 119.69 | |
| | 8/21/09<br>0821D01 | CRJ | Loan Track deposits - PYT - FUNDEX | | 12,005.27 | |
| | 8/25/09<br>0825D01 | CRJ | Loan Track deposits - PYT | | 550.81 | |
| | 8/27/09<br>0827D01 | CRJ | Loan Track deposits - PAYOFF LOAN #53349 - VALLEY CAB CO. | | 48,838.05 | |
| | 8/31/09<br>0831ACH | CRJ | GOLDEN TRIANGLE ENT. LLC - ACH | | 6,250.89 | |
| | 8/31/09<br>0831D01 | CRJ | Loan Track deposits - D/I/T 9/1/09 - PYT | | 2,687.98 | |
| | 8/31/09<br>0831D02 | CRJ | Loan Track deposits - D/I/T 9/3/09 - PYT | | 2,569.82 | |
| | 8/31/09<br>AJE4 | GENJ | RECLASS OLS OTHER AMOUNTS | 3,700.00 | | |
| | 8/31/09<br>AJE1 | GENJ | RECLASS RECEIPTS | 55,662.05 | | |
| | 8/31/09<br>AJE1 | GENJ | RECLASS RECEIPTS | 132,259.68 | | |

# Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 1013 (cont.) | 8/31/09<br>AJE1 | GENJ | RECLASS RECEIPTS | 2,588.99 | | |
| | 8/31/09<br>AJE1 | GENJ | RECLASS RECEIPTS | | 632.93 | |
| | | | Current Period Change | 194,843.65 | 194,843.65 | |
| | 9/1/09 | | Beginning Balance | | | |
| | 9/1/09<br>0901WT1 | CRJ | Loan Track deposits - PYT - RESCO PRODUCTS INC. | | 25,000.00 | |
| | 9/1/09<br>0901WT2 | CRJ | Loan Track deposits - PYT - RESCO PRODUCTS INC. | | 17,001.47 | |
| | 9/1/09<br>0901WT3 | CRJ | Loan Track deposits - PYT - X-RITE INC. | | 17,037.04 | |
| | 9/1/09<br>0901WT4 | CRJ | Loan Track deposits - PYT - X-RITE INC. | | 213.20 | |
| | 9/1/09<br>0901WT5 | CRJ | Loan Track deposits - PYT - BP METALS LLC | | 31.05 | |
| | 9/1/09<br>0901WT6 | CRJ | Loan Track deposits - PYT - CHARLIE BROWN'S | | 12,240.90 | |
| | 9/1/09<br>0901ACH1 | CRJ | CHAO TENGA LLC - ACH | | 10,303.57 | |
| | 9/1/09<br>0901ACH2 | CRJ | SOUNDVIEW BROADCASTING LLC - ACH | | 14,381.99 | |
| | 9/1/09<br>0901ACH3 | CRJ | GWE INC. - ACH | | 12,181.94 | |
| | 9/1/09<br>0901ACH4 | CRJ | PWT HOLDINGS INC. - ACH | | 15,000.00 | |
| | 9/8/09<br>0908D01 | CRJ | Loan Track deposits - PYT | | 3,586.94 | |
| | 9/9/09<br>0909D01 | CRJ | Loan Track deposits - PYT | | 172.13 | |
| | 9/9/09<br>0909WT1 | CRJ | Loan Track deposits - PYT - HUDSON PRODUCTS HOLDINGS INC. | | 30,360.00 | |
| | 9/9/09<br>0909WT2 | CRJ | Loan Track deposits - PYT - HUDSON PRODUCTS HOLDINGS INC. | | 76.67 | |
| | 9/10/09<br>0910D01 | CRJ | Loan Track deposits - PYT | | 10,677.03 | |
| | 9/10/09<br>0910WT1 | CRJ | Loan Track deposits - PYT - BP METALS LLC - SKIM INT AUG 09 | | 14.47 | |
| | 9/14/09<br>0914D01 | CRJ | Loan Track deposits - PYT | | 6,001.64 | |
| | 9/15/09<br>0915D01 | CRJ | Loan Track deposits - PYT | | 100.00 | |
| | 9/17/09<br>0917BC1 | CDJ | SIGNATURE BANK - BOUNCE CHECK - MONTICELLO DESSERTS INC. | 3,327.26 | | |
| | 9/18/09<br>0918901 | CRJ | Loan Track deposits - PYT - FUNDEX - LIFEHOUSE | | 22,707.68 | |
| | 9/18/09<br>0918D02 | CRJ | Loan Track deposits - PYT - REDEPOSIT MONTICELLO DESSERTS CHECK | | 3,327.26 | |

6/22/11 at 14:44:29.98

**Page: 64**

### Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| | | | DESSERTS CHECK | | | |
| 1013 (cont.) | 9/22/09<br>0922D01 | CRJ | Loan Track deposits -<br>PYT | | 6,552.50 | |
| | 9/23/09<br>0923wt1 | CRJ | Loan Track deposits -<br>PYT - X-RITE INC. | | 37,037.04 | |
| | 9/23/09<br>0923wt2 | CRJ | Loan Track deposits -<br>PYT - X-RITE INC. | | 625.32 | |
| | 9/23/09<br>0923BC1 | CDJ | SIGNATURE BANK -<br>BOUNCED CHECK -<br>MONTICELLO<br>DESSERTS INC. | 3,327.26 | | |
| | 9/28/09<br>0928WT1 | CRJ | Loan Track deposits -<br>PYT - CENTAUR LLC | | 89.93 | |
| | 9/30/09<br>0930wt1 | CRJ | Loan Track deposits -<br>PYT - BP METALS LLC | | 17,219.39 | |
| | 9/30/09<br>0930wt2 | CRJ | Loan Track deposits -<br>PYT - HUDSON<br>PRODUCTS<br>HOLDINGS INC. | | 3,750.00 | |
| | 9/30/09<br>0930wt3 | CRJ | Loan Track deposits -<br>PYT - X-RITE INC. | | 3,045.74 | |
| | 9/30/09<br>0930wt4 | CRJ | Loan Track deposits -<br>PYT - LEARNING CARE<br>GROUP INC. | | 2,874.48 | |
| | 9/30/09<br>0930wt5 | CRJ | Loan Track deposits -<br>PYT - LEARNING CARE<br>GROUP INC. | | 2,102.86 | |
| | 9/30/09<br>0930wt6 | CRJ | Loan Track deposits -<br>PYT - BP METALS LLC | | 346.84 | |
| | 9/30/09<br>0930wt7 | CRJ | Loan Track deposits -<br>PYT - X-RITE INC. | | 311.11 | |
| | 9/30/09<br>0930wt8 | CRJ | Loan Track deposits -<br>PYT - HUDSON<br>PRODUCTS<br>HOLDINGS INC. | | 17.26 | |
| | 9/30/09<br>AJE4 | GENJ | RECLASS OLS OTHER<br>AMOUNTS VELOCITY<br>INTEREST | 28,292.30 | | |
| | 9/30/09<br>AJE2 | GENJ | RECLASS OLS<br>RETURNED RECEIPTS | | 6,654.52 | |
| | 9/30/09<br>AJE1 | GENJ | RECLASS RECEIPTS | 136,592.94 | | |
| | 9/30/09<br>AJE1 | GENJ | RECLASS RECEIPTS | 109,502.21 | | |
| | | | Current Period Change | 281,041.97 | 281,041.97 | |
| | 10/1/09 | | Beginning Balance | | | |
| | 10/1/09<br>1001WT1 | CRJ | Loan Track deposits -<br>PYT - BP METALS LLC | | 31.09 | |
| | 10/2/09<br>1002D01 | CRJ | Loan Track deposits -<br>PYT | | 150.00 | |
| | 10/2/09<br>1002WT2 | CRJ | Loan Track deposits -<br>PYT - CHARLIE<br>BROWN'S | | 10,670.40 | |
| | 10/2/09<br>1002WT2 | CRJ | Loan Track deposits -<br>PYT - CHARLIE<br>BROWNS - SKIM INT.<br>9/09 | | 1,199.20 | |
| | 10/5/09<br>1005ACH1 | CRJ | PWT HOLDINGS INC. -<br>ACH | | 20,000.00 | |
| | 10/5/09<br>1005ACH2 | CRJ | SOUNDVIEW<br>BROADCASTING LLC - | | 14,381.99 | |

6/22/11 at 14:44:30.01

Page: 65

# Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| | | | ACH | | | |
| 1013 (cont.) | 10/5/09<br>1005ACH3 | CRJ | GWE INC. - ACH | | 12,181.94 | |
| | 10/5/09<br>1005ACH4 | CRJ | CHAO TENGA LLC - ACH | | 10,303.57 | |
| | 10/5/09<br>1005D01 | CRJ | Loan Track deposits - PYT | | 1,920.27 | |
| | 10/6/09<br>1006WT1 | CRJ | Loan Track deposits - PYT - X-RITE INC. | | 24,079.01 | |
| | 10/7/09<br>1007D01 | CRJ | Loan Track deposits - PYT | | 165.30 | |
| | 10/7/09<br>1007ACH1 | CRJ | GOLDEN TRIANGLE ENT. LLC - ACH | | 6,250.89 | |
| | 10/9/09<br>1009D01 | CRJ | Loan Track deposits - PYT | | 2,687.98 | |
| | 10/13/09<br>1013D02 | CRJ | Loan Track deposits - PYT - ODNEY CAB INC. | | 344.28 | |
| | 10/14/09<br>1014D01 | CRJ | Loan Track deposits - PYT - JUST SALAD | | 2,674.38 | |
| | 10/14/09<br>1014D02 | CRJ | Loan Track deposits - PYT - A LOT OF CARS | | 2,000.00 | |
| | 10/16/09<br>1016D01 | CRJ | Loan Track deposits - PYT - MONTICELLO DESSERTS | | 6,674.52 | |
| | 10/19/09<br>1019D01 | CRJ | Loan Track deposits - PYT - CLEANERS OF NORTH BEACH LLC | | 2,569.82 | |
| | 10/20/09<br>1020D01 | CRJ | Loan Track deposits - PYT - JUST SALAD LLC | | 20,925.00 | |
| | 10/21/09<br>1021WT1 | CRJ | Loan Track deposits - PYT - LEARNING CARE GROUP INC. | | 15,187.30 | |
| | 10/23/09<br>1023D01 | CRJ | Loan Track deposits - PYT - FUNDEX | | 19,298.31 | |
| | 10/26/09<br>1026D01 | CRJ | Loan Track deposits - PYT | | 9,371.44 | |
| | 10/30/09<br>1030WT1 | CRJ | Loan Track deposits - PYT - BP METALS LLC | | 22,507.80 | |
| | 10/30/09<br>1030WT2 | CRJ | Loan Track deposits - PYT - BP METALS LLC - SKIM INT. 7/31/09-10/30/09 | | 1,923.05 | |
| | 10/30/09<br>1030ACH1 | CRJ | GOLDEN TRIANGLE ENT. LLC - ACH | | 6,250.89 | |
| | 10/30/09<br>1030D01 | CRJ | Loan Track deposits - D/I/T 11/2/09 - PYT | | 6,937.26 | |
| | 10/30/09<br>1030D02 | CRJ | Loan Track deposits - D/I/T 11/3/09 - PAYOFF - CARLOS D. RAVELO - #64331 | | 92,500.00 | |
| | 10/31/09<br>AJE1 | GENJ | Reclass OLS receipts | 126,275.33 | | |
| | 10/31/09<br>AJE1 | GENJ | Reclass OLS receipts | 158,960.79 | | |
| | 10/31/09<br>AJE4 | GENJ | Reclass OLS other amount receipts - Velocity Interest | 27,949.57 | | |
| | | | Current Period Change | 313,185.69 | 313,185.69 | |
| | 11/1/09 | | Beginning Balance | | | |
| | 11/2/09<br>1102ACH1 | CRJ | PWT HOLDINGS INC. - ACH | | 20,000.00 | |

6/22/11 at 14:44:30.05

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 1013 (cont.) | 11/2/09<br>1102ACH2 | CRJ | SOUNDVIEW BROADCASTING LLC - ACH | | 14,381.99 | |
| | 11/2/09<br>1102ACH3 | CRJ | GWE INC. - ACH | | 12,181.94 | |
| | 11/2/09<br>1102ACH4 | CRJ | CHAO TENGA LLC - ACH | | 10,303.57 | |
| | 11/2/09<br>1102WT1 | CRJ | Loan Track deposits - PYT - CHARLIE BROWN'S | | 11,049.58 | |
| | 11/2/09<br>1102WT1 | CRJ | Loan Track deposits - PYT - CHARLIE BROWN'S - SKIM INT 10/09 | | 1,162.07 | |
| | 11/3/09<br>1103WT1 | CRJ | Loan Track deposits - PRINCIPAL PAYOFF - #24281 LIFEHOUSE-GOLDEN ACRES PROPERTIES | | 770,840.00 | |
| | 11/3/09<br>1103WT2 | CRJ | Loan Track deposits - PYT - BP METALS LLC | | 63.40 | |
| | 11/4/09<br>1104WT | CRJ | Loan Track deposits - PYT - BP METALS LLC - SKIM INT. 10/09 | | 10.01 | |
| | 11/6/09<br>1106wt | CRJ | Loan Track deposits - PYT - LEARNING CARE GROUP INC. | | 2,570.16 | |
| | 11/9/09<br>1109D01 | CRJ | Loan Track deposits - PYT | | 21,895.68 | |
| | 11/10/09<br>1110D01 | CRJ | Loan Track deposits - PAYOFF LOAN #03453 - A LOT OF CARS LLC | | 58,545.00 | |
| | 11/16/09<br>1116D01 | CRJ | Loan Track deposits - PYT - GOLDEN TRIANGLE ENTERPRISES LLC | | 157.47 | |
| | 11/16/09<br>1116D02 | CRJ | Loan Track deposits - BALANCE OF PAYOFF - LIFEHOUSE GOLDEN ACRES | | 30,965.28 | |
| | 11/17/09<br>1117d01 | CRJ | Loan Track deposits - PYT - A LOT OF CARS LLC | | 2,000.00 | |
| | 11/19/09<br>1119d01 | CRJ | Loan Track deposits - PYT - PPCP INC. | | 45.00 | |
| | 11/23/09<br>1123D01 | CRJ | Loan Track deposits - PYT - PIER-TECH INC. | | 6,345.95 | |
| | 11/25/09<br>1125D01 | CRJ | Loan Track deposits - PYT - GREAVES-PETERS LAUNDRY SYSTEMS | | 8,677.03 | |
| | 11/30/09<br>1130D01 | CRJ | Loan Track deposits - PYT | | 5,257.80 | |
| | 11/30/09<br>1130D02 | CRJ | Loan Track deposits - PYT - SEALMAX INC. | | 238.68 | |
| | 11/30/09<br>1130ach1 | CRJ | GOLDEN TRIANGLE ENT. LLC - ACH | | 6,250.89 | |
| | 11/30/09<br>AJE1 | GENJ | Reclass OLS receipts | 148,606.22 | | |
| | 11/30/09<br>AJE1 | GENJ | Reclass OLS receipts | 2,711.60 | | |
| | 11/30/09<br>AJE1 | GENJ | Reclass OLS receipts | 831,623.68 | | |

**Elk Associates Funding Corporation**
**General Ledger**
**For the Period From Jul 1, 2009 to Jun 30, 2010**

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID / Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 1013 (cont.) | | | Current Period Change | 982,941.50 | 982,941.50 | |
| | 12/1/09 | | Beginning Balance | | | |
| | 12/1/09 1201ACH1 | CRJ | PWT HOLDINGS INC. - ACH | | 20,000.00 | |
| | 12/1/09 1201ACH2 | CRJ | SOUNDVIEW BROADCASTING LLC - ACH | | 14,381.99 | |
| | 12/1/09 1201ACH3 | CRJ | GWE INC. - ACH | | 12,181.94 | |
| | 12/1/09 1201ach4 | CRJ | CHAO TENGA LLC - ACH | | 10,303.57 | |
| | 12/1/09 1201wt1 | CRJ | Loan Track deposits - PYT - CHARLIE BROWN'S | | 10,716.33 | |
| | 12/1/09 1201wt1 | CRJ | Loan Track deposits - PYT - CHARLIE BROWN'S - SKIM INT. - NOV 09 | | 1,126.52 | |
| | 12/1/09 1201wt2 | CRJ | Loan Track deposits - PYT - RESCO PRODUCTS INC. | | 25,000.00 | |
| | 12/1/09 1201wt3 | CRJ | Loan Track deposits - PYT - RESCO PRODUCTS INC. | | 17,655.84 | |
| | 12/3/09 1203BC1 | CDJ | ISRAEL DISCOUNT BANK - BOUNCE ACH - GOLDEN TRIANGLE ENTERPRISES LLC | 6,250.89 | | |
| | 12/4/09 1204WT1 | CRJ | Loan Track deposits - PYT - BP METALS LLC | | 61.36 | |
| | 12/7/09 1207wt1 | CRJ | Loan Track deposits - PYT - BP METALS LLC - SKIM INT. - NOV 09 | | 43.43 | |
| | 12/8/09 1208D01 | CRJ | Loan Track deposits - PYT - CLAUDE ANGRAND | | 1,920.27 | |
| | 12/9/09 1209D01 | CRJ | Loan Track deposits - PYT - JUST SALAD LLC | | 2,500.00 | |
| | 12/9/09 1209WT1 | CRJ | Loan Track deposits - PYT - RESCO PRODUCTS INC. | | 86,956.52 | |
| | 12/9/09 1209WT2 | CRJ | Loan Track deposits - PYT - HUDSON PRODUCTS HOLDINGS INC. | | 30,030.00 | |
| | 12/11/09 1211ACH1 | CRJ | GOLDEN TRIANGLE ENT. LLC - ACH | | 6,250.89 | |
| | 12/16/09 1216D01 | CRJ | Loan Track deposits - PYT - MEDALLION BANK | | 904.99 | |
| | 12/21/09 1221D01 | CRJ | Loan Track deposits - PYT - PPCP INC. | | 35.00 | |
| | 12/22/09 1222D01 | CRJ | Loan Track deposits - PYT - MONTICELLO DESSERTS INC. | | 3,500.00 | |
| | 12/22/09 1222WT1 | CRJ | Loan Track deposits - PYT - X-RITE INC. | | 25,925.93 | |
| | 12/22/09 1222WT2 | CRJ | Loan Track deposits - PYT - X-RITE INC. | | 413.57 | |
| | 12/28/09 1228D01 | CRJ | Loan Track deposits - PYT - CLEANERS OF NORTH BEACH LLC | | 2,569.82 | |

6/22/11 at 14:44:30.15

Page: 68

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 1013 (cont.) | | | NORTH BEACH LLC | | | |
| | 12/29/09 1229D01 | CRJ | Loan Track deposits - PYT - MEDALLION BANK - VARIOUS LOANS | | 905.09 | |
| | 12/31/09 1231ACH | CRJ | GOLDEN TRIANGLE ENT. LLC - ACH | | 6,250.89 | |
| | 12/31/09 1231Wt1 | CRJ | Loan Track deposits - PYT - LEARNING CARE GROUP INC. | | 2,102.85 | |
| | 12/31/09 1231Wt2 | CRJ | Loan Track deposits - PYT - LEARNING CARE GROUP INC. | | 324.07 | |
| | 12/31/09 1231Wt3 | CRJ | Loan Track deposits - PYT - LEARNING CARE GROUP INC. | | 2,500.00 | |
| | 12/31/09 1231Wt4 | CRJ | Loan Track deposits - PYT - BP METALS LLC | | 17,219.39 | |
| | 12/31/09 1231Wt5 | CRJ | Loan Track deposits - PYT - BP METALS LLC | | 352.53 | |
| | 12/31/09 1231Wt6 | CRJ | Loan Track deposits - PYT - X-RITE INC. | | 801.15 | |
| | 12/31/09 1231Wt7 | CRJ | Loan Track deposits - PYT - X-RITE INC. | | 2,979.61 | |
| | 12/31/09 1231Wt8 | CRJ | Loan Track deposits - PYT - HUDSON PRODUCTS HOLDINGS INC. | | 18.08 | |
| | 12/31/09 1231Wt9 | CRJ | Loan Track deposits - PYT - HUDSON PRODUCTS HOLDINGS INC. | | 3,750.00 | |
| | 12/31/09 1231D01 | CRJ | Loan Track deposits - D/I/T 1/5/10 - CROWN CLEANERS OF MIAMI LAKES | | 2,687.98 | |
| | 12/31/09 1231Wt10 | CRJ | Loan Track deposits - D/I/T 1/6/10 - PYT - CONKLIN CONSTRUCTION SERVICES | | 127,752.90 | |
| | 12/31/09 AJE1 | GENJ | Reclass OLS receipts | 280,402.65 | | |
| | 12/31/09 AJE1 | GENJ | Reclass OLS receipts | 132,042.85 | | |
| | 12/31/09 AJE2 | GENJ | Reclass OLS returned receipts | | 6,250.89 | |
| | 12/31/09 AJE4 | GENJ | Reclass OLS other amount receipts - Velocity interest | 27,677.01 | | |
| | | | Current Period Change | 446,373.40 | 446,373.40 | |
| | 1/1/10 | | Beginning Balance | | | |
| | 1/4/10 0104ACH1 | CRJ | PWT HOLDINGS INC. - ACH | | 30,000.00 | |
| | 1/4/10 0104ACH2 | CRJ | SOUNDVIEW BROADCASTING LLC - ACH | | 14,381.99 | |
| | 1/4/10 0104ACH3 | CRJ | GWE INC. - ACH | | 12,181.94 | |
| | 1/4/10 0104ACH4 | CRJ | CHAO TENGA LLC - ACH | | 10,303.57 | |

6/22/11 at 14:44:30.20

# Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 1013 (cont.) | 1/4/10<br>0104WT1 | CRJ | Loan Track deposits -<br>PYT - CHARLIE<br>BROWN'S | | 11,096.80 | |
| | 1/4/10<br>0104WT1 | CRJ | Loan Track deposits -<br>PYT - CHARLIE<br>BROWNS - SKIM INT. -<br>DEC 09 | | 1,166.01 | |
| | 1/5/10<br>0105D01 | CRJ | Loan Track deposits -<br>PYT - MONTICELLO<br>DESSERTS INC. | | 3,500.00 | |
| | 1/6/10<br>0106WT1 | CRJ | Loan Track deposits -<br>PYT - X-RITE INC. | | 22,028.60 | |
| | 1/6/10<br>0106WT2 | CRJ | Loan Track deposits -<br>PYT - BP METALS LLC | | 64.44 | |
| | 1/10/10<br>0110D01 | CRJ | Loan Track deposits -<br>PYT - CLAUDE<br>ANGRAND | | 1,920.27 | |
| | 1/11/10<br>0111WT | CRJ | Loan Track deposits -<br>PYT - FAIRWAY<br>GROUP HOLDINGS<br>CORP. | | 8,000.00 | |
| | 1/14/10<br>0114WT | CRJ | Loan Track deposits -<br>PYT - BP METALS LLC<br>- SKIM INT - DEC 09 | | 3.44 | |
| | 1/15/10<br>0115D01 | CRJ | Loan Track deposits -<br>PYT | | 2,577.31 | |
| | 1/19/10<br>0119WT | CRJ | Loan Track deposits -<br>PYT - EDUCATION<br>AFFILIATES INC. | | 7,111.11 | |
| | 1/21/10<br>0121WT1 | CRJ | Loan Track deposits -<br>PYT - LEARNING CARE<br>GROUP INC. | | 15,187.30 | |
| | 1/25/10<br>0125D01 | CRJ | Loan Track deposits -<br>PYT - MEDALLION<br>BANK | | 905.15 | |
| | 1/26/10<br>0126D01 | CRJ | Loan Track deposits -<br>PYT - PPCP INC. | | 10.00 | |
| | 1/27/10<br>0127D01 | CRJ | Loan Track deposits -<br>PYT -<br>GREAVES-PETERS<br>LAUNDY SYSTEMS<br>LLC | | 8,677.03 | |
| | 1/29/10<br>0129wt1 | CRJ | Loan Track deposits -<br>PYT - EDUCATION<br>AFFILIATES INC. | | 15,000.00 | |
| | 1/29/10<br>0129wt2 | CRJ | Loan Track deposits -<br>PYT - EDUCATION<br>AFFILIATES INC. | | 2,222.22 | |
| | 1/29/10<br>0129wt3 | CRJ | Loan Track deposits -<br>PYT - BP METALS LLC | | 21,990.38 | |
| | 1/29/10<br>0129wt4 | CRJ | Loan Track deposits -<br>PYT - BP METALS LLC<br>- SKIM INT.<br>10/30/09-1/28/10 | | 1,351.33 | |
| | 1/29/10<br>0129ACH1 | CRJ | GOLDEN TRIANGLE<br>ENT. LLC - ACH | | 6,250.89 | |
| | 1/29/10<br>0129D01 | CRJ | Loan Track deposits -<br>PYT | | 5,257.80 | |
| | 1/31/10<br>AJE1 | GENJ | Reclass OLS receipts | 1.74 | | |
| | 1/31/10<br>AJE1 | GENJ | Reclass OLS receipts | 15,062.17 | | |
| | 1/31/10 | GENJ | Reclass OLS receipts | 159,484.50 | | |

6/22/11 at 14:44:30.23

**Elk Associates Funding Corporation**
**General Ledger**
**For the Period From Jul 1, 2009 to Jun 30, 2010**

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 1013 (cont.) | AJE1 | | | | | |
| | 1/31/10<br>AJE4 | GENJ | Reclass OLS other amount receipts - Velocity Interest | 26,639.17 | | |
| | | | Current Period Change | 201,187.58 | 201,187.58 | |
| | 2/1/10 | | Beginning Balance | | | |
| | 2/1/10<br>201ACH1 | CRJ | PWT HOLDINGS INC. - ACH | | 30,000.00 | |
| | 2/1/10<br>0201ACH2 | CRJ | SOUNDVIEW BROADCASTING LLC - ACH | | 14,381.99 | |
| | 2/1/10<br>0201ACH3 | CRJ | GOLDEN TRIANGLE ENT. LLC - ACH | | 12,181.94 | |
| | 2/1/10<br>0201ACH4 | CRJ | CHAO TENGA LLC - ACH | | 10,303.57 | |
| | 2/1/10<br>0201WT1 | CRJ | Loan Track deposits - PYT - CHARLIE BROWNS | | 14,679.53 | |
| | 2/1/10<br>0201WT1 | CRJ | Loan Track deposits - PYT - CHARLIE BROWNS - SKIM INT JAN 2010 | | 1,168.02 | |
| | 2/3/10<br>0203ACH1 | CRJ | GWE INC. - ACH | | 12,181.94 | |
| | 2/4/10<br>0204BC1 | CDJ | ISRAEL DISCOUNT BANK - BOUNCED ACH - GOLDEN TRIANGLE ENTERPRISES LLC | 12,181.94 | | |
| | 2/5/10<br>0205WT | CRJ | Loan Track deposits - PYT - BP METALS LLC | | 95.75 | |
| | 2/8/10<br>0208D01 | CRJ | Loan Track deposits - PYT | | 6,268.68 | |
| | 2/8/10<br>0208WT1 | CRJ | Loan Track deposits - PYT - LEARNING CARE GROUP INC. | | 2,626.03 | |
| | 2/8/10<br>0208WT2 | CRJ | Loan Track deposits - PYT - BP METALS LLC - SKIM INT. - JAN 2010 | | 20.48 | |
| | 2/9/10<br>0209D01 | CRJ | Loan Track deposits - PYT - CLAUDE ANGRAND | | 1,920.27 | |
| | 2/11/10<br>0211WT1 | CRJ | Loan Track deposits - PYT - PIER TECH INC. (FUNDEX) | | 7,314.94 | |
| | 2/11/10<br>0211WT2 | CRJ | Loan Track deposits - PYT - FAIRWAY GROUP HOLDINGS CORP. | | 6,200.00 | |
| | 2/12/10<br>0212WT | CRJ | Loan Track deposits - PYT - CONKLIN SERVICES & CONSTRUCTION | | 10,128.09 | |
| | 2/18/10<br>0218D01 | CRJ | Loan Track deposits - PYT - GREAVES-PETERS LAUNDRY SYSTEMS LLC | | 8,677.03 | |
| | 2/22/10<br>0222D01 | CRJ | Loan Track deposits - PYT - GOLDEN TRIANGLE ENTERPRISES LLC | | 76.65 | |

6/22/11 at 14:44:30.27

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 1013 (cont.) | 2/25/10<br>0225D01 | CRJ | Loan Track deposits - PYT - SEALMAX INC. | | 238.68 | |
| | 2/25/10<br>0225D01 | CRJ | Loan Track deposits - PYT - MEDALLION BANK | | 838.25 | |
| | 2/26/10<br>0226ACH1 | CRJ | GOLDEN TRIANGLE ENT. LLC - ACH | | 6,250.89 | |
| | 2/28/10<br>0228D01 | CRJ | Loan Track deposits - D/I/T 3/1/10 - PYT | | 5,257.80 | |
| | 2/28/10<br>AJE1 | GENJ | Reclass OLS receipts | 523.10 | | |
| | 2/28/10<br>AJE1 | GENJ | Reclass OLS receipts | 317.42 | | |
| | 2/28/10<br>AJE1 | GENJ | Reclass OLS receipts | 149,388.19 | | |
| | 2/28/10<br>AJE1 | GENJ | Reclass OLS receipts | 581.82 | | |
| | 2/28/10<br>AJE2 | GENJ | Reclass OLS returned receipts | | 12,181.94 | |
| | | | Current Period Change | 162,992.47 | 162,992.47 | |
| | 3/1/10 | | Beginning Balance | | | |
| | 3/1/10<br>0301WT1 | CRJ | Loan Track deposits - PYT - X-RITE INC. | | 462.33 | |
| | 3/1/10<br>0301WT2 | CRJ | Loan Track deposits - PYT - X-RITE INC. | | 41,666.67 | |
| | 3/1/10<br>0301WT3 | CRJ | Loan Track deposits - PYT - BP METALS LLC - SKIM INT. - FEB 2010 | | 67.18 | |
| | 3/1/10<br>0301WT4 | CRJ | Loan Track deposits - PYT - BP METALS LLC | | 86.48 | |
| | 3/1/10<br>0301WT5 | CRJ | Loan Track deposits - PYT - RESCO PRODUCTS INC. | | 25,000.00 | |
| | 3/1/10<br>0301WT6 | CRJ | Loan Track deposits - PYT - RESCO PRODUCTS INC. | | 25,049.46 | |
| | 3/1/10<br>0301WT7 | CRJ | Loan Track deposits - PYT - RESCO PRODUCTS INC. | | 2,881.60 | |
| | 3/1/10<br>0301ACH1 | CRJ | PWT HOLDINGS INC. - ACH | | 30,000.00 | |
| | 3/1/10<br>0301ACH2 | CRJ | GWE INC. - ACH | | 12,181.94 | |
| | 3/1/10<br>0301ACH3 | CRJ | SOUNDVIEW BROADCASTING LLC - ACH | | 14,381.99 | |
| | 3/1/10<br>0301ACH4 | CRJ | CHAO TENGA LLC - ACH | | 10,303.57 | |
| | 3/2/10<br>0302wt1 | CRJ | Loan Track deposits - PYT - CHARLIE BROWN'S SKIM INT - FEB 2010 | | 1,056.80 | |
| | 3/2/10<br>0302wt2 | CRJ | Loan Track deposits - PYT - RESCO PRODUCTS INC. | | 7,836.04 | |
| | 3/3/10<br>0303D01 | CRJ | Loan Track deposits - PAYOFF - MI TREN GREENLAWN INC. - #24233 | | 27,734.69 | |
| | 3/3/10<br>0303BC1 | CDJ | CITIBANK - BOUNCED CHECK - SEALMAX INC. | 1,710.30 | | |

6/22/11 at 14:44:30.32

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 1013 (cont.) | 3/5/10<br>0305D01 | CRJ | INC.<br>Loan Track deposits -<br>PYT - STANDARD TAXI<br>CORP. (MEDALLION<br>BANK) | | 239.20 | |
| | 3/9/10<br>0309wt1 | CRJ | Loan Track deposits -<br>PYT - HUDSON<br>PRODUCTS<br>HOLDINGS INC. | | 29,550.00 | |
| | 3/9/10<br>0309wt2 | CRJ | Loan Track deposits -<br>PYT - HUDSON<br>PRODUCTS<br>HOLDINGS INC. | | 75.00 | |
| | 3/10/10<br>0310D01 | CRJ | Loan Track deposits -<br>PYT | | 10,597.30 | |
| | 3/11/10<br>0311WT | CRJ | Loan Track deposits -<br>PYT - FAIRWAY<br>GROUP HOLDINGS<br>CORP. | | 5,600.00 | |
| | 3/15/10<br>0315D01 | CRJ | Loan Track deposits -<br>PYT - JUST SALAD LLC | | 2,500.00 | |
| | 3/16/10<br>0316D01 | CRJ | Loan Track deposits -<br>PYT - CLEANERS OF<br>NORTH BEACH LLC | | 2,569.82 | |
| | 3/23/10<br>0323D01 | CRJ | Loan Track deposits -<br>PYT - MEDALLION<br>BANK | | 905.34 | |
| | 3/26/10<br>0326WT | CRJ | Loan Track deposits -<br>PYT - FAIRWAY<br>GROUP HOLDINGS<br>CORP. | | 12,231.51 | |
| | 3/30/10<br>0330D01 | CRJ | Loan Track deposits -<br>PYT - CROWN<br>CLEANERS OF MIAMI<br>LAKES | | 2,687.98 | |
| | 3/30/10<br>0330wt1 | CRJ | Loan Track deposits -<br>PYT - X-RITE INC. | | 3,185.19 | |
| | 3/30/10<br>0330wt2 | CRJ | Loan Track deposits -<br>PYT - X-RITE INC. | | 52.73 | |
| | 3/31/10<br>331WT1 | CRJ | Loan Track deposits -<br>PYT - LEARNING CARE<br>GROUP INC. | | 2,767.71 | |
| | 3/31/10<br>331WT2 | CRJ | Loan Track deposits -<br>PYT - LEARNING CARE<br>GROUP INC. | | 2,057.15 | |
| | 3/31/10<br>331WT3 | CRJ | Loan Track deposits -<br>PYT - BP METALS LLC | | 17,219.39 | |
| | 3/31/10<br>331WT4 | CRJ | Loan Track deposits -<br>PYT - BP METALS LLC | | 346.84 | |
| | 3/31/10<br>331WT5 | CRJ | Loan Track deposits -<br>PYT - HUDSON<br>PRODUCTS<br>HOLDINGS INC. | | 3,750.00 | |
| | 3/31/10<br>331WT6 | CRJ | Loan Track deposits -<br>PYT - HUDSON<br>PRODUCTS<br>HOLDINGS INC. | | 18.08 | |
| | 3/31/10<br>331WT7 | CRJ | Loan Track deposits -<br>PYT - X-RITE INC. | | 2,864.89 | |
| | 3/31/10<br>331WT8 | CRJ | Loan Track deposits -<br>PYT - X-RITE INC. | | 491.25 | |
| | 3/31/10 | CRJ | GOLDEN TRIANGLE<br>ENT. LLC - ACH | | 6,250.89 | |

6/22/11 at 14:44:30.37

## Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 1013 (cont.) | 331ACH1 | | ENT. LLC - ACH | | | |
| | 3/31/10 AJE1 | GENJ | Reclass OLS receipts | 137,338.21 | | |
| | 3/31/10 AJE1 | GENJ | Reclass OLS receipts | 126,658.93 | | |
| | 3/31/10 AJE2 | GENJ | Reclass OLS returned receipts | | 1,710.30 | |
| | 3/31/10 AJE4 | GENJ | Reclass OLS other amount receipts | 40,671.88 | | |
| | | | Current Period Change | 306,379.32 | 306,379.32 | |
| | 4/1/10 | | Beginning Balance | | | |
| | 4/1/10 0401wt | CRJ | Loan Track deposits - PYT - BP METALS LLC | | 96.78 | |
| | 4/1/10 0401ACH1 | CRJ | PWT HOLDINGS INC. - ACH | | 30,000.00 | |
| | 4/1/10 0401ACH2 | CRJ | GWE INC. - ACH | | 12,181.94 | |
| | 4/1/10 0401ACH3 | CRJ | SOUNDVIEW BROADCASTING LLC - ACH | | 14,381.99 | |
| | 4/1/10 0401ACH4 | CRJ | CHAO TENGA LLC - ACH | | 10,303.57 | |
| | 4/1/10 0401wt1 | CRJ | Loan Track deposits - PYT - CHARLIE BROWN SKIM INT. - MAR 2010 | | 1,171.85 | |
| | 4/2/10 0402wt | CRJ | Loan Track deposits - PYT - BP METALS LLC - SKIM INT. - MAR 2010 | | 68.01 | |
| | 4/5/10 0405D01 | CRJ | Loan Track deposits - PYT | | 8,850.74 | |
| | 4/6/10 0406WT | CRJ | Loan Track deposits - PYT - X-RITE INC. | | 20,628.40 | |
| | 4/9/10 0409D01 | CRJ | Loan Track deposits - PYT | | 2,152.15 | |
| | 4/12/10 0412WT1 | CRJ | Loan Track deposits - PYT - X-RITE INC. | | 44,444.44 | |
| | 4/12/10 0412WT2 | CRJ | Loan Track deposits - PYT - X-RITE INC. | | 105.94 | |
| | 4/12/10 0412WT3 | CRJ | Loan Track deposits - PYT - FAIRWAY GROUP HOLDINGS CORP. | | 6,400.00 | |
| | 4/15/10 0415D01 | CRJ | Loan Track deposits - PYT - MONTICELLO DESSERTS INC. | | 4,000.00 | |
| | 4/15/10 0415WT | CRJ | Loan Track deposits - PYT- RESCO PRODUCTS INC. | | 12,886.96 | |
| | 4/21/10 0421WT1 | CRJ | Loan Track deposits - PYT - LEARNING CARE GROUP INC. | | 14,857.14 | |
| | 4/22/10 0422D01 | CRJ | Loan Track deposits - PYT - GREAVES-PETERS LAUNDRY SYSTEMS LLC | | 8,677.03 | |
| | 4/22/10 0422WT | CRJ | Loan Track deposits - PYT - CONKLIN SERVICES & CONSTRUCTION INC. | | 10,151.21 | |

6/22/11 at 14:44:30.40

Page: 74

# Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID / Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 1013 (cont.) | 4/23/10 0423D01 | CRJ | Loan Track deposits - PYT - MEDALLION BANK | | 733.22 | |
| | 4/26/10 0426D01 | CRJ | Loan Track deposits - PYT - CLEANERS OF NORTH BEACH LLC | | 2,569.82 | |
| | 4/27/10 0427WT1 | CRJ | Loan Track deposits - PAYOFF - LEARNING CARE GROUP INC. | | 743,847.62 | |
| | 4/27/10 0427WT2 | CRJ | Loan Track deposits - PAYOFF - LEARNING CARE GROUP INC. | | 127,893.34 | |
| | 4/27/10 0427WT3 | CRJ | Loan Track deposits - PAYOFF - LEARNING CARE GROUP INC. | | 114,602.75 | |
| | 4/27/10 0427WT4 | CRJ | Loan Track deposits - PAYOFF - LEARNING CARE GROUP INC. | | 9,825.00 | |
| | 4/30/10 0430wt1 | CRJ | Loan Track deposits - PYT - EDUCATION AFFILIATES INC. | | 34,918.89 | |
| | 4/30/10 0430wt2 | CRJ | Loan Track deposits - PYT - BP METALS LLC | | 21,472.95 | |
| | 4/30/10 0430wt3 | CRJ | Loan Track deposits - PYT - BP METALS LLC - SKIM INT. - 1/29/10-4/30/10 | | 1,351.33 | |
| | 4/30/10 0430ACH1 | CRJ | GOLDEN TRIANGLE ENT. LLC - ACH | | 6,250.89 | |
| | 4/30/10 0430D02 | CRJ | Loan Track deposits - D/I/T 5/3/10 - CROWN CLEANERS OF MIAMI LAKES | | 2,687.98 | |
| | 4/30/10 AJE1 | GENJ | Reclass OLS receipts - Learning Care Group payoff | 982,500.00 | | |
| | 4/30/10 AJE1 | GENJ | Reclass OLS receipts | 162,497.80 | | |
| | 4/30/10 AJE1 | GENJ | Reclass OLS receipts | 763.76 | | |
| | 4/30/10 AJE1 | GENJ | Reclass OLS receipts | 78,786.66 | | |
| | 4/30/10 AJE4 | GENJ | Reclass OLS other amount receipts | 42,963.72 | | |
| | | | Current Period Change | 1,267,511.94 | 1,267,511.94 | |
| | 5/1/10 | | Beginning Balance | | | |
| | 5/3/10 0503WT1 | CRJ | Loan Track deposits - PYT - X-RITE INC. | | 22,222.22 | |
| | 5/3/10 0503WT2 | CRJ | Loan Track deposits - PYT - X-RITE INC. | | 145.66 | |
| | 5/3/10 0503WT3 | CRJ | Loan Track deposits - PYT - CHARLIE BROWNS - SKIM INT - APR 2010 | | 1,136.00 | |
| | 5/3/10 0503ACH1 | CRJ | PWT HOLDINGS INC. - ACH | | 100,000.00 | |
| | 5/4/10 0504WT12 | CRJ | Loan Track deposits - PYT - BP METALS LLC | | 123.96 | |
| | 5/4/10 0504wt2 | CRJ | Loan Track deposits - PYT - BP METALS LLC - SKIM INT. - APR 2010 | | 99.77 | |

6/22/11 at 14:44:30.45

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 1013 (cont.) | 5/4/10 0504ACH1 | CRJ | SOUNDVIEW BROADCASTING LLC - ACH | | 14,381.99 | |
| | 5/4/10 0504ACH2 | CRJ | GWE INC. - ACH | | 12,181.94 | |
| | 5/5/10 0505WT1 | CRJ | Loan Track deposits - PYT - SHEARER'S FOODS INC. | | 10,000.00 | |
| | 5/10/10 0510D01 | CRJ | Loan Track deposits - PYT - CLAUDE ANGRAND | | 1,920.27 | |
| | 5/12/10 0512WT | CRJ | Loan Track deposits - PYT - FAIRWAY GROUP HOLDINGS CORP. | | 6,000.00 | |
| | 5/12/10 0512D01 | CRJ | Loan Track deposits - PYT - JUST SALAD LLC | | 2,500.00 | |
| | 5/17/10 0517D01 | CRJ | Loan Track deposits - PYT - GREAVES-PETERS LAUNDRY SYSTEMS | | 12,147.83 | |
| | 5/17/10 0517WT | CRJ | Loan Track deposits - PYT - CONKLIN SERVICES & CONSTRUCTION | | 24,685.09 | |
| | 5/20/10 0520D01 | CRJ | Loan Track deposits - PYT - MEDALLION BANK | | 1,077.70 | |
| | 5/24/10 0524D01 | CRJ | Loan Track deposits - PYT - GOLDEN TRIANGLE ENTERPRISES LLC | | 83.64 | |
| | 5/25/10 0525WT | CRJ | Loan Track deposits - PYT - EDUCATION AFFILIATES INC. | | 85,462.03 | |
| | 5/31/10 0531D01 | CRJ | Loan Track deposits - D/I/T 6/1/10 - PYT - CLEANERS OF NORTH BEACH LLC | | 2,569.82 | |
| | 5/31/10 0531ACH1 | CRJ | GOLDEN TRIANGLE ENT. LLC - D/I/T 6/1/10 - ACH | | 6,250.89 | |
| | 5/31/10 0531D02 | CRJ | Loan Track deposits - D/I/T 6/2/10 - PYT - CROWN CLEANERS OF MIAMI LAKES | | 2,687.98 | |
| | 5/31/10 AJE1 | GENJ | Reclass OLS receipts | 3,470.80 | | |
| | 5/31/10 AJE1 | GENJ | Reclass OLS receipts | 194,417.13 | | |
| | 5/31/10 AJE1 | GENJ | Reclass OLS receipts | 107,788.86 | | |
| | | | Current Period Change | 305,676.79 | 305,676.79 | |
| | 6/1/10 | | Beginning Balance | | | |
| | 6/1/10 0601wt1 | CRJ | Loan Track deposits - PYT - CHARLIE BROWNS - SKIM INT. - MAY 09 | | 1,175.82 | |
| | 6/1/10 0601wt2 | CRJ | Loan Track deposits - PYT - EDUCATION AFFILIATES INC. | | 0.15 | |

6/22/11 at 14:44:30.49

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 1013 (cont.) | | | AFFILIATES INC. | | | |
| | 6/1/10<br>0601wt3 | CRJ | Loan Track deposits -<br>PYT - RESCO<br>PRODUCTS INC. | | 32,866.67 | |
| | 6/1/10<br>0601wt4 | CRJ | Loan Track deposits -<br>PYT - RESCO<br>PRODUCTS INC. | | 18,638.12 | |
| | 6/1/10<br>0601wt5 | CRJ | Loan Track deposits -<br>PYT - BP METALS LLC<br>- SKIM INT. - MAY 2010 | | 196.83 | |
| | 6/1/10<br>0601wt6 | CRJ | Loan Track deposits -<br>PYT - BP METALS LLC | | 128.10 | |
| | 6/2/10<br>0602WT | CRJ | Loan Track deposits -<br>PYT - RESCO<br>PRODUCTS INC. | | 6,361.87 | |
| | 6/2/10<br>0602ACH1 | CRJ | PWT HOLDINGS INC. -<br>ACH | | 100,000.00 | |
| | 6/2/10<br>0602ACH2 | CRJ | GWE INC. - ACH | | 12,181.94 | |
| | 6/2/10<br>0602ACH3 | CRJ | SOUNDVIEW<br>BROADCASTING LLC -<br>ACH | | 14,381.99 | |
| | 6/4/10<br>0604WT1 | CRJ | Loan Track deposits -<br>PYT - RESCO<br>PRODUCTS INC. | | 283.20 | |
| | 6/8/10<br>0608D01 | CRJ | Loan Track deposits -<br>PYT | | 3,538.81 | |
| | 6/9/10<br>0609d01 | CRJ | Loan Track deposits -<br>PYT - JUST SALAD LLC | | 2,500.00 | |
| | 6/9/10<br>0609WT1 | CRJ | Loan Track deposits -<br>PYT - HUDSON<br>PRODUCTS<br>HOLDINGS INC. | | 30,206.67 | |
| | 6/14/10<br>0614WT | CRJ | Loan Track deposits -<br>PYT - FAIRWAY<br>GROUP HOLDINGS<br>CORP. | | 6,600.00 | |
| | 6/23/10<br>0623WT1 | CRJ | Loan Track deposits -<br>PYT - HUDSON<br>PRODUCTS<br>HOLDINGS INC. | | 204,545.45 | |
| | 6/23/10<br>0623WT2 | CRJ | Loan Track deposits -<br>PYT - HUDSON<br>PRODUCTS<br>HOLDINGS INC. | | 627.65 | |
| | 6/24/10<br>0624WT1 | CRJ | Loan Track deposits -<br>PYT - FAIRWAY<br>GROUP HOLDINGS<br>CORP. | | 2,500.00 | |
| | 6/24/10<br>0624D01 | CRJ | Loan Track deposits -<br>PYT - MEDALLION<br>BANK | | 733.38 | |
| | 6/25/10<br>0625D01 | CRJ | Loan Track deposits -<br>PYT | | 4,490.09 | |
| | 6/28/10<br>0628WT | CRJ | Loan Track deposits -<br>PYT - FAIRWAY<br>GROUP HOLDINGS<br>CORP. | | 12,281.10 | |
| | 6/29/10<br>0629D01 | CRJ | Loan Track deposits -<br>PYT | | 10,597.30 | |
| | 6/30/10<br>0630ACh1 | CRJ | PWT HOLDINGS INC. -<br>ACH - PAYOFF | | 136,945.01 | |
| | 6/30/10 | CRJ | GOLDEN TRIANGLE<br>ENT. LLC - ACH | | 6,250.89 | |

6/22/11 at 14:44:30.54

# Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 1013 (cont.) | 0630ACH2 | | ENT. LLC - ACH | | | |
| | 6/30/10 0630Wt1 | CRJ | Loan Track deposits - PYT - EDUCATION AFFILIATES INC. | | 0.61 | |
| | 6/30/10 0630Wt2 | CRJ | Loan Track deposits - PYT - HUDSON PRODUCTS HOLDINGS INC. | | 5,981.14 | |
| | 6/30/10 0630Wt3 | CRJ | Loan Track deposits - PYT - X-RITE INC. | | 2,693.95 | |
| | 6/30/10 0630Wt4 | CRJ | Loan Track deposits - PYT - X-RITE INC. | | 175.36 | |
| | 6/30/10 0630Wt5 | CRJ | Loan Track deposits - PYT - BP METALS LLC | | 173.42 | |
| | 6/30/10 AJE1 | GENJ | Reclass OLS receipts | 251.23 | | |
| | 6/30/10 AJE1 | GENJ | Reclass OLS receipts | 370,377.27 | | |
| | 6/30/10 AJE1 | GENJ | Reclass OLS receipts | 225,321.35 | | |
| | 6/30/10 AJE4 | GENJ | Reclass OLS other amount receipts | 21,105.67 | | |
| | | | Current Period Change | 617,055.52 | 617,055.52 | |
| | **6/30/10** | | **Ending Balance** | | | |
| | | | | | | |
| 1020 Loans Receivable | 7/1/09 | | Beginning Balance | | | 17,044,868.14 |
| | 7/1/09 AJE21 | GENJ | To capitalize interest per restated agreement Alpha Media | | 58,503.78 | |
| | 7/1/09 AJE22 | GENJ | To capitalize PIK Interest - Charlie Brown's | | 35,003.06 | |
| | 7/1/09 AJE25 | GENJ | To correct OLS accruals due to rate errors - Chao Tenga LLC | | 1,698.61 | |
| | 7/1/09 AJE26 | GENJ | To correct accruals due to rare errors - Sealmax Inc. | | 5,982.95 | |
| | 7/31/09 AJE1 | GENJ | Reclass OLS receipts | | 48,083.31 | |
| | 7/31/09 AJE1 | GENJ | Reclass OLS receipts | | 140,921.16 | |
| | 7/31/09 AJE2 | GENJ | Reclass OLS returned receipts | 733.40 | | |
| | 7/31/09 AJE3 | GENJ | To reclass OLS autopayments | | 517.24 | |
| | 7/31/09 AJE5 | GENJ | To record non-cash adj. - apply credits | 89,389.03 | | |
| | 7/31/09 AJE8 | GENJ | To reclass PWT Holdings Inc. to loans receivable | 508,158.77 | | |
| | | | Current Period Change | 598,281.20 | 290,710.11 | 307,571.09 |
| | 8/1/09 | | Beginning Balance | | | 17,352,439.23 |
| | 8/31/09 AJE3 | GENJ | RECLASS OLS AUTOPAYMENTS | | 135.05 | |
| | 8/31/09 AJE1 | GENJ | RECLASS RECEIPTS | | 55,662.05 | |
| | 8/31/09 | GENJ | RECLASS RECEIPTS | | 60,832.83 | |

6/22/11 at 14:44:30.59

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 1020 (cont.) | AJE1 | | | | | |
| | | | Current Period Change | | 116,629.93 | -116,629.93 |
| | 9/1/09 | | Beginning Balance | | | 17,235,809.30 |
| | 9/30/09 AJE5 | GENJ | TO RECORD NON-CASH ADJ APPLY CREDITS & CAPITALIZE INTEREST | 39,223.01 | | |
| | 9/30/09 AJE2 | GENJ | RECLASS OLS RETURNED RECEIPTS | 5,941.98 | | |
| | 9/30/09 AJE1 | GENJ | RECLASS RECEIPTS | | 109,502.21 | |
| | 9/30/09 AJE1 | GENJ | RECLASS RECEIPTS | | 41,857.34 | |
| | | | Current Period Change | 45,164.99 | 151,359.55 | -106,194.56 |
| | 10/1/09 | | Beginning Balance | | | 17,129,614.74 |
| | 10/16/09 101609 | PJ | CONTINENTAL CASUALTY COMPANY D - RE: 130-41 91 AVE LLC - SEALMAX INC. - POLICY #4017779052 - 10/7/09-10/7/10 | 2,864.07 | | |
| | 10/31/09 AJE1 | GENJ | Reclass OLS receipts | | 66,879.47 | |
| | 10/31/09 AJE1 | GENJ | Reclass OLS receipts | | 126,275.33 | |
| | 10/31/09 AJE5 | GENJ | To record non-cash adj. - apply credits & capitalize interest | 23,902.36 | | |
| | 10/31/09 AJE6 | GENJ | To writeoff balance of Carlos D. Ravelo | | 5,911.04 | |
| | 10/31/09 AJE7 | GENJ | To adjust for Conklin loan paydowns | 4,939.24 | | |
| | | | Current Period Change | 31,705.67 | 199,065.84 | -167,360.17 |
| | 11/1/09 | | Beginning Balance | | | 16,962,254.57 |
| | 11/30/09 AJE1 | GENJ | Reclass OLS receipts | | 60,423.32 | |
| | 11/30/09 AJE1 | GENJ | Reclass OLS receipts | | 831,623.68 | |
| | 11/30/09 AJE3 | GENJ | To reclass OLS autopayments | | 11.53 | |
| | 11/30/09 AJE5 | GENJ | To record non-cash adj. - apply credits & capitalize interest | 4,356.83 | | |
| | 11/30/09 AJE6 | GENJ | To write off balance on A Lot of Cars loan | | 6,505.00 | |
| | | | Current Period Change | 4,356.83 | 898,563.53 | -894,206.70 |
| | 12/1/09 | | Beginning Balance | | | 16,068,047.87 |
| | 12/18/09 1218WT1 | CDJ | BANK OF MONTREAL - PROCEEDS - EDUCATION AFFILIATES | 500,000.00 | | |
| | 12/18/09 1218WT2 | CDJ | DEUTSCHE BANK - PROCEEDS - EDUCATION AFFILIATES | 500,000.00 | | |

6/22/11 at 14:44:30.63

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 1020 (cont.) | 12/18/09 1218WT3 | CDJ | BANK OF NEW YORK - PROCEEDS - FAIRWAY GROUP | 1,000,000.00 | | |
| | 12/31/09 AJE1 | GENJ | Reclass OLS receipts | | 52,456.80 | |
| | 12/31/09 AJE1 | GENJ | Reclass OLS receipts | | 280,402.65 | |
| | 12/31/09 AJE2 | GENJ | Reclass OLS returned receipts | 4,963.10 | | |
| | 12/31/09 AJE3 | GENJ | To reclass OLS autopayments | | 2,378.13 | |
| | 12/31/09 AJE5 | GENJ | To record non-cash adj. - apply credits | 44,736.34 | | |
| | 12/31/09 AJE6 | GENJ | To adjust Western Pottery restructured as a loan | 361,609.00 | | |
| | 12/31/09 AJE6 | GENJ | To adjust for Conklin loan paydowns | 116,071.20 | | |
| | | | Current Period Change | 2,527,379.64 | 335,237.58 | 2,192,142.06 |
| | 1/1/10 | | Beginning Balance | | | 18,260,189.93 |
| | 1/31/10 AJE1 | GENJ | Reclass OLS receipts | | 15,062.17 | |
| | 1/31/10 AJE1 | GENJ | Reclass OLS receipts | | 57,779.96 | |
| | 1/31/10 AJE3 | GENJ | To reclass OLS autopayments | | 4,938.04 | |
| | 1/31/10 AJE5 | GENJ | To record non-cash adj. - apply credits | 25,071.24 | | |
| | | | Current Period Change | 25,071.24 | 77,780.17 | -52,708.93 |
| | 2/1/10 | | Beginning Balance | | | 18,207,481.00 |
| | 2/28/10 AJE1 | GENJ | Reclass OLS receipts | | 67,558.53 | |
| | 2/28/10 AJE1 | GENJ | Reclass OLS receipts | | 581.82 | |
| | 2/28/10 AJE2 | GENJ | Reclass OLS returned receipts | 76.65 | | |
| | 2/28/10 AJE3 | GENJ | To reclass OLS autopayments | | 9.71 | |
| | 2/28/10 AJE5 | GENJ | To record non-cash adj. - apply credits | 20,511.43 | | |
| | | | Current Period Change | 20,588.08 | 68,150.06 | -47,561.98 |
| | 3/1/10 | | Beginning Balance | | | 18,159,919.02 |
| | 3/30/10 26219V | CDJ | GAROFALO & THIERSCH, P.C. - PROCEEDS - OLYMPIC EXPRESS CORP. - BALANCE DUE ESTATE OF MALIK AHMED - STOCKHOLDER MALIK INC. | | 20,000.00 | |
| | 3/30/10 0330WT | CDJ | CHARLES GOODBAR IOLTA ACCT. - PROCEEDS - OLYMPIC EXPRESS CORP. - BALANCE DUE MALIK INC. | 20,000.00 | | |

6/22/11 at 14:44:30.66

Page: 80

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 1020 (cont.) | 3/31/10<br>AJE1 | GENJ | Reclass OLS receipts | | 126,658.93 | |
| | 3/31/10<br>AJE1 | GENJ | Reclass OLS receipts | | 61,039.10 | |
| | 3/31/10<br>AJE2 | GENJ | Reclass OLS returned receipts | 238.68 | | |
| | 3/31/10<br>AJE3 | GENJ | To reclass OLS autopayments | | 2,453.92 | |
| | 3/31/10<br>AJE5 | GENJ | To record non-cash adj. - apply credits | 19,155.42 | | |
| | | | Current Period Change | 39,394.10 | 210,151.95 | -170,757.85 |
| | 4/1/10 | | Beginning Balance | | | 17,989,161.17 |
| | 4/1/10<br>0401WT | CDJ | HARRIS N.A. - PROCEEDS - SHEARER'S FOODS INC. | 1,000,000.00 | | |
| | 4/30/10<br>AJE5 | GENJ | To record non-cash adj. - apply credits & capitalize interest | 21,400.49 | | |
| | 4/30/10<br>AJE1 | GENJ | Reclass OLS receipts | | 78,786.66 | |
| | 4/30/10<br>AJE1 | GENJ | Reclass OLS receipts | | 64,547.47 | |
| | 4/30/10<br>AJE1 | GENJ | Reclass OLS receipts - Learning Care Group payoff | | 982,500.00 | |
| | 4/30/10<br>AJE3 | GENJ | To reclass OLS autopayments | | 2,460.76 | |
| | | | Current Period Change | 1,021,400.49 | 1,128,294.89 | -106,894.40 |
| | 5/1/10 | | Beginning Balance | | | 17,882,266.77 |
| | 5/19/10<br>0519WT | CDJ | JEFFERIES & COMPANY INC. - PROCEEDS - KRATOS DEFENSE AND SECURITY SOLUTIONS INC. | 1,250,000.00 | | |
| | 5/31/10<br>AJE5 | GENJ | To record non-cash adj. - apply credits | 20,924.79 | | |
| | 5/31/10<br>AJE1 | GENJ | Reclass OLS receipts | | 107,788.86 | |
| | 5/31/10<br>AJE1 | GENJ | Reclass OLS receipts | | 124,238.07 | |
| | | | Current Period Change | 1,270,924.79 | 232,026.93 | 1,038,897.86 |
| | 6/1/10 | | Beginning Balance | | | 18,921,164.63 |
| | 6/8/10<br>27336 | CDJ | ELK ASSOCIATES FUNDING - PROCEEDS - PATROON OPERATING COMPANY, LLC - ORIGINATION FEE | 2,500.00 | | |
| | 6/8/10<br>27337 | CDJ | MARINO & ASSOCIATES, P.C. - PROCEEDS - PATROON OPERATING COMPANY, LLC - LENDER'S LEGAL FEE | 2,500.00 | | |

6/22/11 at 14:44:30.71

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 1020 (cont.) | 6/8/10 27338 | CDJ | MARINO & ASSOCIATES, P.C. - PROCEEDS - PATROON OPERATING COMPANY, LLC - FILING FEES | 600.00 | | |
| | 6/8/10 27339 | CDJ | PATROON OPERATING COMPANY,LLC - PROCEEDS - PATROON OPERATING COMPANY, LLC - BALANCE OF PROCEEDS | 4,536.00 | | |
| | 6/8/10 0608WT | CDJ | CPM BUILDERS INC. d/b/a MG &CO - PROCEEDS - PATROON OPERATING COMPANY, LLC - CONSTRUCTION EXPENSES | 239,864.00 | | |
| | 6/30/10 AJE1 | GENJ | Reclass OLS receipts | | 123,336.09 | |
| | 6/30/10 AJE1 | GENJ | Reclass OLS receipts | | 370,377.27 | |
| | 6/30/10 AJE5 | GENJ | To record non-cash adj. - apply credits | 20,924.78 | | |
| | 6/30/10 AJE3 | GENJ | To reclass OLS autopayments | | 2,488.29 | |
| | 6/30/10 AJE15 | GENJ | To capitalize Charlie Brown interest and Shearer's Foods PIK interest | 82,253.77 | | |
| | | | Current Period Change | 353,178.55 | 496,201.65 | -143,023.10 |
| | 6/30/10 | | Ending Balance | | | 18,778,141.53 |
| 1020.10 PAYOUTS OF PRINC | 7/1/09 | | Beginning Balance | | | 2,270,857.04 |
| | 8/1/09 | | Beginning Balance | | | 2,270,857.04 |
| | 8/18/09 JULY 09 | PJ | BRIAN ACKERMAN - PARTICIPATION - FLORIDA LOANS - JULY 09 | 31.89 | | |
| | 8/18/09 JULY 09 | PJ | FRESHSTART VENTURE CAPITAL CO - PARTICIPATION - FLORIDA LOANS - JULY 09 | 676.44 | | |
| | 8/18/09 JULY 09 | PJ | HANAM CAPITAL CORPORATION - PARTICIPATION - FLORIDA LOANS - JULY 09 | 302.13 | | |
| | 8/18/09 JULY 09 | PJ | MEDALLION FUNDING CORP. - PARTICIPATION - | 662.99 | | |

# Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| | | | CLEANERS OF NORTH BEACH LLC - JULY 09 | | | |
| 1020.10 (cont.) | 8/18/09<br>JULY 09 | PJ | MEYER ACKERMAN - PARTICIPATION - FLORIDA LOANS - JULY 09 | 111.43 | | |
| | 8/18/09<br>JULY 09 | PJ | MILESTONE GROWTH FUND INC. - PARTICIPATION - FLORIDA LOANS - JULY 09 | 597.06 | | |
| | 8/18/09<br>JULY 09 | PJ | STEVE PORTNOY TRUSTEE - PARTICIPATION - FLORIDA LOANS - JULY 09 | 47.64 | | |
| | 8/18/09<br>JULY 09 | PJ | STEVE PORTNOY TRUSTEE - PARTICIPATION - FLORIDA LOANS - JULY 09 | 47.64 | | |
| | 8/18/09<br>JULY 09 | PJ | THE OSG CORP. - PARTICIPATION - GWE INC. - JULY 09 | 544.72 | | |
| | 8/18/09<br>JULY 09 | PJ | JERROLD MARCH - PARTICIPATION - FLORIDA LOANS - JULY 09 | 483.27 | | |
| | 8/18/09<br>JULY 09 | PJ | Pinnacle Commercial Capital, L - PARTICIPATION - GOLDEN TRIANGLE ENTERPRISES LLC - JULY 09 | 410.82 | | |
| | 8/31/09<br>AUG 09 | PJ | BRIAN ACKERMAN - PARTICIPATION - FLORIDA LOANS - AUG 09 | 32.01 | | |
| | 8/31/09<br>AUG 09 | PJ | FRESHSTART VENTURE CAPITAL CO - PARTICIPATION - FLORIDA LOANS - AUG 09 | 679.27 | | |
| | 8/31/09<br>AUG 09 | PJ | HANAM CAPITAL CORPORATION - PARTICIPATION - FLORIDA LOANS - AUG 09 | 303.33 | | |
| | 8/31/09<br>AUG 09 | PJ | MEDALLION FUNDING CORP. - PARTICIPATION - CLEANERS OF NORTH BEACH LLC - AUG 09 | 665.48 | | |
| | 8/31/09<br>AUG 09 | PJ | MEYER ACKERMAN - PARTICIPATION - FLORIDA LOANS - AUG 09 | 106.60 | | |
| | 8/31/09<br>AUG 09 | PJ | MILESTONE GROWTH FUND INC. - PARTICIPATION - FLORIDA LOANS - AUG 09 | 599.42 | | |
| | 8/31/09 | PJ | Pinnacle Commercial Capital, L | 410.94 | | |

6/22/11 at 14:44:30.77

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 1020.10 (cont.) | AUG 09 | | Capital, L - PARTICIPATION - GOLDEN TRIANGLE ENTERPRISES LLC - AUG 09 | | | |
| | 8/31/09 AUG 09 | PJ | STEVE PORTNOY TRUSTEE - PARTICIPATION - FLORIDA LOANS - AUG 09 | 47.83 | | |
| | 8/31/09 AUG 09 | PJ | STEVE PORTNOY TRUSTEE - PARTICIPATION - FLORIDA LOANS - AUG 09 | 47.83 | | |
| | 8/31/09 AUG 09 | PJ | THE OSG CORP. - PARTICIPATION - GWE INC. - AUG 09 | 549.94 | | |
| | 8/31/09 AUG 09 | PJ | JERROLD MARCH - PARTICIPATION - FLORIDA LOANS - AUG 09 | 485.19 | | |
| | | | Current Period Change | 7,843.87 | | 7,843.87 |
| | 9/1/09 | | Beginning Balance | | | 2,278,700.91 |
| | 10/1/09 | | Beginning Balance | | | 2,278,700.91 |
| | 10/7/09 SEP 09 | PJ | THE OSG CORP. - PARTICIPATION - GWE INC. - SEP 09 | 526.97 | | |
| | 10/21/09 SEP 09 | PJ | BRIAN ACKERMAN - PARTICIPATION - FLORIDA LOANS - SEP 09 | 32.14 | | |
| | 10/21/09 SEP 09 | PJ | FRESHSTART VENTURE  CAPITAL CO - PARTICIPATION FLORIDA LOANS - SEP 09 | 682.09 | | |
| | 10/21/09 SEP 09 | PJ | HANAM CAPITAL CORPORATION - PARTICIPATION FLORIDA LOANS - SEP 09 | 304.53 | | |
| | 10/21/09 SEP 09 | PJ | MEDALLION FUNDING CORP. - PARTICIPATION - CLEANERS OF NORTH BEACH LLC - SEP 09 | 667.97 | | |
| | 10/21/09 SEP 09 | PJ | MEYER ACKERMAN - PARTICIPATION FLORIDA LOANS - SEP 09 | 112.07 | | |
| | 10/21/09 SEP 09 | PJ | MILESTONE GROWTH FUND INC. - PARTICIPATION FLORIDA LOANS - SEP 09 | 601.79 | | |
| | 10/21/09 SEP 09 | PJ | Pinnacle Commercial Capital, L - PARTICIPATION - GOLDEN TRIANGLE ENTERPRISES LLC | 414.70 | | |

6/22/11 at 14:44:30.82                                                                      Page: 84

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| | | | ENTERPRISES LLC - SEP 09 | | | |
| 1020.10 (cont.) | 10/21/09<br>SEP 09 | PJ | STEVE PORTNOY TRUSTEE - PARTICIPATION FLORIDA LOANS - SEP 09 | 48.01 | | |
| | 10/21/09<br>SEP 09 | PJ | STEVE PORTNOY TRUSTEE - PARTICIPATION FLORIDA LOANS - SEP 09 | 48.01 | | |
| | 10/21/09<br>SEP 09 | PJ | JERROLD MARCH - PARTICIPATION FLORIDA LOANS - SEP 09 | 487.12 | | |
| | 10/31/09<br>OCT 09 | PJ | BRIAN ACKERMAN - PARTICIPATION FLORIDA LOANS - OCT 09 | 32.26 | | |
| | 10/31/09<br>OCT 09 | PJ | FRESHSTART VENTURE  CAPITAL CO - PARTICIPATION FLORIDA LOANS - OCT 09 | 684.93 | | |
| | 10/31/09<br>OCT 09 | PJ | HANAM CAPITAL CORPORATION - PARTICIPATION FLORIDA LOANS - OCT 09 | 305.74 | | |
| | 10/31/09<br>OCT 09 | PJ | MEDALLION FUNDING CORP. - PARTICIPATION - CLEANERS OF NORTH BEACH LLC - OCT 09 | 670.48 | | |
| | 10/31/09<br>OCT 09 | PJ | MEYER ACKERMAN - PARTICIPATION FLORIDA LOANS - OCT 09 | 112.75 | | |
| | 10/31/09<br>OCT 09 | PJ | MILESTONE GROWTH FUND INC. - PARTICIPATION FLORIDA LOANS - OCT 09 | 604.18 | | |
| | 10/31/09<br>OCT 09 | PJ | STEVE PORTNOY TRUSTEE - PARTICIPATION FLORIDA LOANS - OCT 09 | 48.20 | | |
| | 10/31/09<br>OCT 09 | PJ | STEVE PORTNOY TRUSTEE - PARTICIPATION FLORIDA LOANS - OCT 09 | 48.20 | | |
| | 10/31/09<br>OCT 09 | PJ | THE OSG CORP. - PARTICIPATION - GWE INC. - OCT 09 | 588.77 | | |
| | 10/31/09<br>OCT 09 | PJ | JERROLD MARCH - PARTICIPATION FLORIDA LOANS - OCT 09 | 489.05 | | |
| | 10/31/09<br>OCT 09 | PJ | Pinnacle Commercial Capital, L - PARTICIPATION | 416.51 | | |

6/22/11 at 14:44:30.85

Page: 85

# Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| | | | PARTICIPATION - GOLDEN TRIANGLE ENTERPRISES LLC - OCT 09 | | | |
| 1020.10 (cont.) | | | Current Period Change | 7,926.47 | | 7,926.47 |
| | 11/1/09 | | Beginning Balance | | | 2,286,627.38 |
| | 11/30/09 NOV 09 | PJ | BRIAN ACKERMAN - PARTICIPATION FLORIDA LOANS - NOV 09 | 32.39 | | |
| | 11/30/09 NOV 09 | PJ | FRESHSTART VENTURE CAPITAL CO - PARTICIPATION FLORIDA LOANS - NOV 09 | 687.79 | | |
| | 11/30/09 NOV 09 | PJ | HANAM CAPITAL CORPORATION - PARTICIPATION FLORIDA LOANS - NOV 09 | 306.95 | | |
| | 11/30/09 NOV 09 | PJ | MEDALLION FUNDING CORP. - PARTICIPATION - CLEANERS OF NORTH BEACH LLC - NOV 09 | 672.99 | | |
| | 11/30/09 NOV 09 | PJ | MEYER ACKERMAN - PARTICIPATION FLORIDA LOANS - NOV 09 | 113.19 | | |
| | 11/30/09 NOV 09 | PJ | MILESTONE GROWTH FUND INC. - PARTICIPATION FLORIDA LOANS - NOV 09 | 606.57 | | |
| | 11/30/09 NOV 09 | PJ | Pinnacle Commercial Capital, L - PARTICIPATION - GOLDEN TRIANGLE ENTERPRISES LLC - NOV 09 | 418.20 | | |
| | 11/30/09 NOV 09 | PJ | STEVE PORTNOY TRUSTEE - PARTICIPATION FLORIDA LOANS - NOV 09 | 48.39 | | |
| | 11/30/09 NOV 09 | PJ | STEVE PORTNOY TRUSTEE - PARTICIPATION FLORIDA LOANS - NOV 09 | 48.39 | | |
| | 11/30/09 NOV 09 | PJ | THE OSG CORP. - PARTICIPATION - GWE INC. - NOV 09 | 538.35 | | |
| | 11/30/09 NOV 09 | PJ | JERROLD MARCH - PARTICIPATION FLORIDA LOANS - NOV 09 | 491.00 | | |
| | | | Current Period Change | 3,964.21 | | 3,964.21 |
| | 12/1/09 | | Beginning Balance | | | 2,290,591.59 |

# Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 1020.10 (cont.) | 12/31/09<br>DEC 09 | PJ | BRIAN ACKERMAN - PARTICIPATION - FLORIDA LOANS - DEC 09 | 32.52 | | |
| | 12/31/09<br>DEC 09 | PJ | FRESHSTART VENTURE CAPITAL CO - PARTICIPATION - FLORIDA LOANS - DEC 09 | 690.66 | | |
| | 12/31/09<br>DEC 09 | PJ | HANAM CAPITAL CORPORATION - PARTICIPATION - FLORIDA LOANS - DEC 09 | 308.16 | | |
| | 12/31/09<br>DEC 09 | PJ | MEDALLION FUNDING CORP. - PARTICIPATION - CLEANERS OF NORTH BEACH LLC - DEC 09 | 675.52 | | |
| | 12/31/09<br>DEC 09 | PJ | MEYER ACKERMAN - PARTICIPATION - FLORIDA LOANS - DEC 09 | 113.63 | | |
| | 12/31/09<br>DEC 09 | PJ | MILESTONE GROWTH FUND INC. - PARTICIPATION - FLORIDA LOANS - DEC 09 | 608.97 | | |
| | 12/31/09<br>DEC 09 | PJ | Pinnacle Commercial Capital, L - PARTICIPATION - GOLDEN TRIANGLE ENTERPRISES LLC - DEC 09 | 419.95 | | |
| | 12/31/09<br>DEC 09 | PJ | STEVE PORTNOY TRUSTEE - PARTICIPATION - FLORIDA LOANS - DEC 09 | 48.58 | | |
| | 12/31/09<br>DEC 09 | PJ | STEVE PORTNOY TRUSTEE - PARTICIPATION - FLORIDA LOANS - DEC 09 | 48.58 | | |
| | 12/31/09<br>DEC 09 | PJ | THE OSG CORP. - PARTICIPATION - GWE INC. - DEC 09 | 571.06 | | |
| | 12/31/09<br>DEC 09 | PJ | JERROLD MARCH - PARTICIPATION - FLORIDA LOANS - DEC 09 | 492.95 | | |
| | | | Current Period Change | 4,010.58 | | 4,010.58 |
| | 1/1/10 | | Beginning Balance | | | 2,294,602.17 |
| | 1/31/10<br>JAN 2010 | PJ | BRIAN ACKERMAN - PARTICIPATION - FLORIDA LOANS - JAN 2010 | 32.65 | | |
| | 1/31/10<br>JAN 2010 | PJ | FRESHSTART VENTURE CAPITAL CO - PARTICIPATION - FLORIDA LOANS - JAN 2010 | 693.53 | | |

# Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| | | | 2010 | | | |
| 1020.10 (cont.) | 1/31/10<br>JAN 2010 | PJ | HANAM CAPITAL CORPORATION - PARTICIPATION - FLORIDA LOANS - JAN 2010 | 309.37 | | |
| | 1/31/10<br>JAN 2010 | PJ | MEDALLION FUNDING CORP. - PARTICIPATION - CLEANERS OF NORTH BEACH LLC - JAN 2010 | 678.05 | | |
| | 1/31/10<br>JAN 2010 | PJ | MEYER ACKERMAN - PARTICIPATION - FLORIDA LOANS - JAN 2010 | 114.08 | | |
| | 1/31/10<br>JAN 2010 | PJ | MILESTONE GROWTH FUND INC. - PARTICIPATION - FLORIDA LOANS - JAN 2010 | 611.38 | | |
| | 1/31/10<br>JAN 2010 | PJ | STEVE PORTNOY TRUSTEE - PARTICIPATION - FLORIDA LOANS - JAN 2010 | 48.77 | | |
| | 1/31/10<br>JAN 2010 | PJ | STEVE PORTNOY TRUSTEE - PARTICIPATION - FLORIDA LOANS - JAN 2010 | 48.77 | | |
| | 1/31/10<br>JAN 2010 | PJ | JERROLD MARCH - PARTICIPATION - FLORIDA LOANS - JAN 2010 | 494.91 | | |
| | 1/31/10<br>JAN 2010 | PJ | THE OSG CORP. - PARTICIPATION - GWE INC. - JAN 2010 | 576.53 | | |
| | 1/31/10<br>JAN 2010 | PJ | Pinnacle Commercial Capital, L - PARTICIPATION - GOLDEN TRIANGLE ENTERPRISES LLC - JAN 2010 | 421.68 | | |
| | | | Current Period Change | 4,029.72 | | 4,029.72 |
| | 2/1/10 | | Beginning Balance | | | 2,298,631.89 |
| | 2/28/10<br>FEB 2010 | PJ | BRIAN ACKERMAN - PARTICIPATION - FLORIDA LOANS - FEB 2010 | 32.77 | | |
| | 2/28/10<br>FEB 2010 | PJ | FRESHSTART VENTURE CAPITAL CO - PARTICIPATION - FLORIDA LOANS - FEB 2010 | 696.43 | | |
| | 2/28/10<br>FEB 2010 | PJ | HANAM CAPITAL CORPORATION - PARTICIPATION - FLORIDA LOANS - FEB 2010 | 310.60 | | |
| | 2/28/10<br>FEB 2010 | PJ | MEDALLION FUNDING CORP. - PARTICIPATION | 680.59 | | |

6/22/11 at 14:44:30.96

**Elk Associates Funding Corporation**
**General Ledger**
**For the Period From Jul 1, 2009 to Jun 30, 2010**

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

Page: 88

| Account ID Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| | | | PARTICIPATION - CLEANERS OF NORTH BEACH LLC - FEB 2010 | | | |
| 1020.10 (cont.) | 2/28/10 FEB 2010 | PJ | MEYER ACKERMAN - PARTICIPATION - FLORIDA LOANS - FEB 2010 | 114.53 | | |
| | 2/28/10 FEB 2010 | PJ | MILESTONE GROWTH FUND INC. - PARTICIPATION - FLORIDA LOANS - FEB 2010 | 613.81 | | |
| | 2/28/10 FEB 2010 | PJ | Pinnacle Commercial Capital, L - PARTICIPATION - GOLDEN TRIANGLE ENTERPRISES LLC - FEB 2010 | 423.37 | | |
| | 2/28/10 FEB 2010 | PJ | STEVE PORTNOY TRUSTEE - PARTICIPATION - FLORIDA LOANS - FEB 2010 | 48.96 | | |
| | 2/28/10 FEB 2010 | PJ | STEVE PORTNOY TRUSTEE - PARTICIPATION - FLORIDA LOANS - FEB 2010 | 48.96 | | |
| | 2/28/10 FEB 2010 | PJ | THE OSG CORP. - PARTICIPATION - GWE INC. - FEB 2010 | 582.06 | | |
| | 2/28/10 FEB 2010 | PJ | JERROLD MARCH - PARTICIPATION - FLORIDA LOANS - FEB 2010 | 496.87 | | |
| | | | Current Period Change | 4,048.95 | | 4,048.95 |
| | 3/1/10 | | Beginning Balance | | | 2,302,680.84 |
| | 3/30/10 MAR 2010 | PJ | BRIAN ACKERMAN - PARTICIPATION - FLORIDA LOANS - MAR 2010 | 32.91 | | |
| | 3/30/10 MAR 2010 | PJ | FRESHSTART VENTURE CAPITAL CO - PARTICIPATION - FLORIDA LOANS - MAR 2010 | 699.33 | | |
| | 3/30/10 MAR 2010 | PJ | HANAM CAPITAL CORPORATION - PARTICIPATION - FLORIDA LOANS - MAR 2010 | 311.83 | | |
| | 3/30/10 MAR 2010 | PJ | MEDALLION FUNDING CORP. - PARTICIPATION - CLEANERS OF NORTH BEACH LLC - MAR 2010 | 683.14 | | |
| | 3/30/10 MAR 2010 | PJ | MEYER ACKERMAN - PARTICIPATION - FLORIDA LOANS - MAR 2010 | 114.98 | | |

6/22/11 at 14:44:31.01

# Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 1020.10 (cont.) | 3/30/10 MAR 2010 | PJ | MILESTONE GROWTH FUND INC. - PARTICIPATION - FLORIDA LOANS - MAR 2010 | 616.23 | | |
| | 3/30/10 MAR 2010 | PJ | Pinnacle Commercial Capital, L - PARTICIPATION - GOLDEN TRIANGLE ENTERPRISES LLC - MAR 2010 | 425.07 | | |
| | 3/30/10 MAR 2010 | PJ | STEVE PORTNOY TRUSTEE - PARTICIPATION - FLORIDA LOANS - MAR 2010 | 49.16 | | |
| | 3/30/10 MAR 2010 | PJ | STEVE PORTNOY TRUSTEE - PARTICIPATION - FLORIDA LOANS - MAR 2010 | 49.16 | | |
| | 3/30/10 MAR 2010 | PJ | THE OSG CORP. - PARTICIPATION - GWE INC. - MAR 2010 | 587.64 | | |
| | 3/30/10 MAR 2010 | PJ | JERROLD MARCH - PARTICIPATION - FLORIDA LOANS - MAR 2010 | 498.84 | | |
| | | | Current Period Change | 4,068.29 | | 4,068.29 |
| | 4/1/10 | | Beginning Balance | | | 2,306,749.13 |
| | 4/30/10 APR 2010 | PJ | BRIAN ACKERMAN - PARTICIPATION - FLORIDA LOANS - APRIL 2010 | 33.03 | | |
| | 4/30/10 APRIL 201 | PJ | FRESHSTART VENTURE CAPITAL CO - PARTICIPATION - FLORIDA LOANS - APRIL 2010 | 702.24 | | |
| | 4/30/10 APRIL 201 | PJ | HANAM CAPITAL CORPORATION - PARTICIPATION - FLORIDA LOANS - APRIL 2010 | 313.07 | | |
| | 4/30/10 APR 2010 | PJ | MEDALLION FUNDING CORP. - PARTICIPATION - CLEANERS OF NORTH BEACH LLC - APRIL 2010 | 685.71 | | |
| | 4/30/10 APR 2010 | PJ | MEYER ACKERMAN - PARTICIPATION - FLORIDA LOANS - APRIL 2010 | 115.44 | | |
| | 4/30/10 APR 2010 | PJ | MILESTONE GROWTH FUND INC. - PARTICIPATION - FLORIDA LOANS - APRIL 2010 | 618.68 | | |
| | 4/30/10 APR 2010 | PJ | Pinnacle Commercial Capital, L - PARTICIPATION - | 426.56 | | |

6/22/11 at 14:44:31.04

Page: 90

# Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| | | | PARTICIPATION - GOLDEN TRIANGLE ENTERPRISES LLC - APR 2010 | | | |
| 1020.10 (cont.) | 4/30/10<br>APR 2010 | PJ | STEVE PORTNOY TRUSTEE - PARTICIPATION - FLORIDA LOANS - APRIL 2010 | 49.35 | | |
| | 4/30/10<br>APR 2010 | PJ | STEVE PORTNOY TRUSTEE - PARTICIPATION - FLORIDA LOANS - APRIL 2010 | 49.35 | | |
| | 4/30/10<br>APR 2010 | PJ | THE OSG CORP. - PARTICIPATION - GWE INC. - APR 2010 | 593.27 | | |
| | 4/30/10<br>APR 2010 | PJ | JERROLD MARCH - PARTICIPATION - FLORIDA LOANS - APRIL 2010 | 500.83 | | |
| | | | Current Period Change | 4,087.53 | | 4,087.53 |
| | 5/1/10 | | Beginning Balance | | | 2,310,836.66 |
| | 5/27/10<br>MAY 2010 | PJ | BRIAN ACKERMAN - PARTICIPATION FLORIDA LOANS - MAY 2010 | 33.16 | | |
| | 5/27/10<br>MAY 2010 | PJ | FRESHSTART VENTURE  CAPITAL CO - PARTICIPATION FLORIDA LOANS - MAY 2010 | 705.16 | | |
| | 5/27/10<br>MAY 2010 | PJ | HANAM CAPITAL CORPORATION - PARTICIPATION FLORIDA LOANS - MAY 2010 | 314.32 | | |
| | 5/27/10<br>MAY 2010 | PJ | MEDALLION FUNDING CORP. - PARTICIPATION - CLEANERS OF NORTH BEACH LLC - MAY 2010 | 688.28 | | |
| | 5/27/10<br>MAY 2010 | PJ | MEYER ACKERMAN - PARTICIPATION FLORIDA LOANS - MAY 2010 | 115.90 | | |
| | 5/27/10<br>MAY 2010 | PJ | MILESTONE GROWTH FUND INC. - PARTICIPATION FLORIDA LOANS - MAY 2010 | 621.12 | | |
| | 5/27/10<br>MAY 2010 | PJ | Pinnacle Commercial Capital, L - PARTICIPATION - GOLDEN TRIANGLE ENTERPRISES LLC - MAY 2010 | 427.94 | | |
| | 5/27/10<br>MAY 2010 | PJ | STEVE PORTNOY TRUSTEE - PARTICIPATION FLORIDA LOANS - MAY | 49.54 | | |

# Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 1020.10 (cont.) | 5/27/10 MAY 2010 | PJ | STEVE PORTNOY TRUSTEE - PARTICIPATION - FLORIDA LOANS - MAY 2010 | 49.54 | | |
| | 5/27/10 MAY 2010 | PJ | THE OSG CORP. - PARTICIPATION - GWE INC. - MAY 2010 | 598.95 | | |
| | 5/27/10 MAY 2010 | PJ | JERROLD MARCH - PARTICIPATION FLORIDA LOANS - MAY 2010 | 502.82 | | |
| | | | Current Period Change | 4,106.73 | | 4,106.73 |
| | 6/1/10 | | Beginning Balance | | | 2,314,943.39 |
| | 6/30/10 JUNE 2010 | PJ | BRIAN ACKERMAN - PARTICIPATION - FLORIDA LOANS - JUNE 2010 | 33.30 | | |
| | 6/30/10 JUNE 2010 | PJ | FRESHSTART VENTURE CAPITAL CO - PARTICIPATION - FLORIDA LOANS - JUNE 2010 | 708.10 | | |
| | 6/30/10 JUNE 2010 | PJ | HANAM CAPITAL CORPORATION - PARTICIPATION - FLORIDA LOANS - JUNE 2010 | 315.55 | | |
| | 6/30/10 JUNE 2010 | PJ | MEDALLION FUNDING CORP. - PARTICIPATION - CLEANERS OF NORTH BEACH LLC - JUNE 2010 | 690.86 | | |
| | 6/30/10 JUNE 2010 | PJ | MEYER ACKERMAN - PARTICIPATION - FLORIDA LOANS - JUNE 2010 | 116.34 | | |
| | 6/30/10 JUNE 2010 | PJ | MILESTONE GROWTH FUND INC. - PARTICIPATION - FLORIDA LOANS - JUNE 2010 | 623.59 | | |
| | 6/30/10 JUNE 2010 | PJ | STEVE PORTNOY TRUSTEE - PARTICIPATION - FLORIDA LOANS - JUNE 2010 | 49.74 | | |
| | 6/30/10 JUNE 2010 | PJ | STEVE PORTNOY TRUSTEE - PARTICIPATION - FLORIDA LOANS - JUNE 2010 | 49.74 | | |
| | 6/30/10 JUNE 2010 | PJ | THE OSG CORP. - PARTICIPATION - GWE INC. - JUNE 2010 | 604.69 | | |
| | 6/30/10 JUNE 2010 | PJ | VENTURE OPPORTUNITY LLC - PARTICIPATION - FLORIDA LOANS | 504.81 | | |

| | | | FLORIDA LOANS - MAY 2010 | | | |

6/22/11 at 14:44:31.10

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 1020.10 (cont.) | 6/30/10<br>JUNE 2010 | PJ | FLORIDA LOANS - JUNE 2010 Pinnacle Commercial Capital, L - PARTICIPATION - GOLDEN TRIANGLE ENTERPRISES LLC - JUNE 2010 | 428.97 | | |
| | 6/30/10<br>AJE11 | GENJ | To adjust for timing diff. between payment received & part. checks cut - Crown Cleaners of Miami Lakes Inc. | | 1,565.04 | |
| | | | Current Period Change | 4,125.69 | 1,565.04 | 2,560.65 |
| | 6/30/10 | | **Ending Balance** | | | **2,317,504.04** |
| 1020.30<br>Loans Receivable - Di | 7/1/09 | | Beginning Balance | | | -198,684.18 |
| | 7/31/09<br>RJE3 | GENJ | To record monthly discount amort. on loan to Hudson Products Holdings Inc. | 535.71 | | |
| | 7/31/09<br>RJE3 | GENJ | To record monthly discount amort. on loan to Learning Care Group Inc. | 476.19 | | |
| | 7/31/09<br>RJE3 | GENJ | To record monthly discount amort. on loan to Alpha Media Group Inc. | 1,428.57 | | |
| | 7/31/09<br>RJE3 | GENJ | To record monthly discount amort. on loan to Centaur LLC | 684.15 | | |
| | 7/31/09<br>RJE3 | GENJ | To record monthly discount amort. on loan to X-Rite Inc. | 83.33 | | |
| | 7/31/09<br>RJE3 | GENJ | To record monthly discount amort. on loan to X-Rite Inc. | 83.33 | | |
| | | | Current Period Change | 3,291.28 | | 3,291.28 |
| | 8/1/09 | | Beginning Balance | | | -195,392.90 |
| | 8/31/09<br>RJE 3 | GENJ | MONTHLY DISCOUNT AMORTIZATION ON LOAN TO ALPHA MEDIA GROUP | 1,428.57 | | |
| | 8/31/09<br>RJE 3 | GENJ | MONTHLY DISCOUNT AMORTIZATION ON LOAN TO LEARNING CARE GROUP | 476.19 | | |
| | 8/31/09<br>RJE 3 | GENJ | MONTHLY DISCOUNT AMORTIZATION ON LOAN TO X-RITE INC. | 83.33 | | |
| | 8/31/09<br>RJE 3 | GENJ | MONTHLY DISCOUNT AMORTIZATION ON LOAN TO CENTAUR LLC | 684.15 | | |
| | 8/31/09<br>RJE 3 | GENJ | MONTHLY DISCOUNT AMORTIZATION ON LOAN TO X-RITE INC. | 83.33 | | |

# Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 1020.30 (cont.) | 8/31/09<br>RJE 3 | GENJ | MONTHLY DISCOUNT AMORTIZATION ON LOAN TO HUDSON PRODUCTS | 535.71 | | |
| | | | Current Period Change | 3,291.28 | | 3,291.28 |
| | 9/1/09 | | Beginning Balance | | | -192,101.62 |
| | 9/30/09<br>RJE3 | GENJ | To record monthly discount amort. on loan to Hudson Products Holdings Inc. | 535.71 | | |
| | 9/30/09<br>RJE3 | GENJ | To record monthly discount amort. on loan to Alpha Media Group Inc. | 1,428.57 | | |
| | 9/30/09<br>RJE3 | GENJ | To record monthly discount amort. on loan to Learning Care Group Inc. | 476.19 | | |
| | 9/30/09<br>RJE3 | GENJ | To record monthly discount amort. on loan to Centaur LLC | 684.15 | | |
| | 9/30/09<br>RJE3 | GENJ | To record monthly discount amort. on loan to X-Rite Inc. | 83.33 | | |
| | 9/30/09<br>RJE3 | GENJ | To record monthly discount amort. on loan to X-Rite Inc. | 83.33 | | |
| | | | Current Period Change | 3,291.28 | | 3,291.28 |
| | 10/1/09 | | Beginning Balance | | | -188,810.34 |
| | 10/31/09<br>RJE3 | GENJ | To record monthly discount amort. on loan to Alpha Media Group Inc. | 1,428.57 | | |
| | 10/31/09<br>RJE3 | GENJ | To record monthly discount amort. on loan to Learning Care Group Inc. | 476.19 | | |
| | 10/31/09<br>RJE3 | GENJ | To record monthly discount amort. on loan to X-Rite Inc. | 83.33 | | |
| | 10/31/09<br>RJE3 | GENJ | To record monthly discount amort. on loan to X-Rite Inc. | 83.33 | | |
| | 10/31/09<br>RJE3 | GENJ | To record monthly discount amort. on loan to Centaur LLC | 684.15 | | |
| | 10/31/09<br>RJE3 | GENJ | To record monthly discount amort. on loan to Hudson Products Holdings Inc. | 535.71 | | |
| | | | Current Period Change | 3,291.28 | | 3,291.28 |
| | 11/1/09 | | Beginning Balance | | | -185,519.06 |
| | 11/30/09<br>RJE3 | GENJ | To record monthly discount amort. on loan to Learning Care Group Inc. | 476.19 | | |
| | 11/30/09 | GENJ | To record monthly discount amort. on loan | 83.33 | | |

6/22/11 at 14:44:31.18

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 1020.30 (cont.) | RJE3 | | discount amort. on loan to X-Rite Inc. | | | |
| | 11/30/09 RJE3 | GENJ | To record monthly discount amort. on loan to X-Rite Inc. | 83.33 | | |
| | 11/30/09 RJE3 | GENJ | To record monthly discount amort. on loan to Alpha Media Group Inc. | 1,428.57 | | |
| | 11/30/09 RJE3 | GENJ | To record monthly discount amort. on loan to Hudson Products Holdings Inc. | 535.71 | | |
| | 11/30/09 RJE3 | GENJ | To record monthly discount amort. on loan to Centaur LLC | 684.15 | | |
| | | | Current Period Change | 3,291.28 | | 3,291.28 |
| | 12/1/09 | | Beginning Balance | | | -182,227.78 |
| | 12/18/09 1218WT1 | CDJ | BANK OF MONTREAL - DISCOUNT - EDUCATION AFFILIATES | | 10,000.00 | |
| | 12/18/09 1218WT2 | CDJ | DEUTSCHE BANK - DISCOUNT - EDUCATION AFFILIATES | | 10,000.00 | |
| | 12/18/09 1218WT3 | CDJ | BANK OF NEW YORK - DISCOUNT - FAIRWAY GROUP | | 30,000.00 | |
| | 12/31/09 RJE3 | GENJ | To record monthly discount amort. on loan to Centaur LLC | 684.15 | | |
| | 12/31/09 RJE3 | GENJ | To record monthly discount amort. on loan to Learning Care Group Inc. | 476.19 | | |
| | 12/31/09 RJE3 | GENJ | To record monthly discount amort. on loan to X-Rite Inc. | 83.33 | | |
| | 12/31/09 RJE3 | GENJ | To record monthly discount amort. on loan to X-Rite Inc. | 83.33 | | |
| | 12/31/09 RJE3 | GENJ | To record monthly discount amort. on loan to Fairway Group Holdings Corp. | 180.00 | | |
| | 12/31/09 RJE3 | GENJ | To record monthly discount amort. on loan to Hudson Products Holdings Inc. | 535.71 | | |
| | 12/31/09 RJE3 | GENJ | To record monthly discount amort. on loan to Education Affiliates Inc. | 140.00 | | |
| | 12/31/09 RJE3 | GENJ | To record monthly discount amort. on loan to Alpha Media Group Inc. | 1,428.57 | | |
| | | | Current Period Change | 3,611.28 | 50,000.00 | -46,388.72 |
| | 1/1/10 | | Beginning Balance | | | -228,616.50 |

6/22/11 at 14:44:31.21

Page: 95

# Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 1020.30 (cont.) | 1/31/10 RJE3 | GENJ | To record monthly discount amort. on loan to X-Rite Inc. | 83.33 | | |
| | 1/31/10 RJE3 | GENJ | To record monthly discount amort. on loan to Learning Care Group Inc. | 476.19 | | |
| | 1/31/10 RJE3 | GENJ | To record monthly discount amort. on loan to Fairway Group Holdings Corp. | 497.00 | | |
| | 1/31/10 RJE3 | GENJ | To record monthly discount amort. on loan to Centaur LLC | 684.15 | | |
| | 1/31/10 RJE3 | GENJ | To record monthly discount amort. on loan to X-Rite Inc. | 83.33 | | |
| | 1/31/10 RJE3 | GENJ | To record monthly discount amort. on loan to Education Affiliates Inc. | 331.00 | | |
| | 1/31/10 RJE3 | GENJ | To record monthly discount amort. on loan to Alpha Media Group Inc. | 1,428.57 | | |
| | 1/31/10 RJE3 | GENJ | To record monthly discount amort. on loan to Hudson Products Holdings Inc. | 535.71 | | |
| | | | Current Period Change | 4,119.28 | | 4,119.28 |
| | 2/1/10 | | Beginning Balance | | | -224,497.22 |
| | 2/28/10 RJE3 | GENJ | To record monthly discount amort. on loan to X-Rite Inc. | 83.33 | | |
| | 2/28/10 RJE3 | GENJ | To record monthly discount amort. on loan to Education Affiliates Inc. | 331.00 | | |
| | 2/28/10 RJE3 | GENJ | To record monthly discount amort. on loan to Centaur LLC | 684.15 | | |
| | 2/28/10 RJE3 | GENJ | To record monthly discount amort. on loan to Learning Care Group Inc. | 476.19 | | |
| | 2/28/10 RJE3 | GENJ | To record monthly discount amort. on loan to X-Rite Inc. | 83.33 | | |
| | 2/28/10 RJE3 | GENJ | To record monthly discount amort. on loan to Hudson Products Holdings Inc. | 535.71 | | |
| | 2/28/10 RJE3 | GENJ | To record monthly discount amort. on loan to Fairway Group Holdings Corp. | 497.00 | | |
| | 2/28/10 RJE3 | GENJ | To record monthly discount amort. on loan to Alpha Media Group Inc. | 1,428.57 | | |

6/22/11 at 14:44:31.26                                                                                    Page: 96

# Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 1020.30 (cont.) | | | Current Period Change | 4,119.28 | | 4,119.28 |
| | 3/1/10 | | Beginning Balance | | | -220,377.94 |
| | 3/31/10 RJE3 | GENJ | To record monthly discount amort. on loan to X-Rite Inc. | 83.33 | | |
| | 3/31/10 RJE3 | GENJ | To record monthly discount amort. on loan to Centaur LLC | 684.15 | | |
| | 3/31/10 RJE3 | GENJ | To record monthly discount amort. on loan to Alpha Media Group Inc. | 1,428.57 | | |
| | 3/31/10 RJE3 | GENJ | To record monthly discount amort. on loan to X-Rite Inc. | 83.33 | | |
| | 3/31/10 RJE3 | GENJ | To record monthly discount amort. on loan to Fairway Group Holdings Corp. | 497.00 | | |
| | 3/31/10 RJE3 | GENJ | To record monthly discount amort. on loan to Learning Care Group Inc. | 476.19 | | |
| | 3/31/10 RJE3 | GENJ | To record monthly discount amort. on loan to Education Affiliates Inc. | 331.00 | | |
| | 3/31/10 RJE3 | GENJ | To record monthly discount amort. on loan to Hudson Products Holdings Inc. | 535.71 | | |
| | | | Current Period Change | 4,119.28 | | 4,119.28 |
| | 4/1/10 | | Beginning Balance | | | -216,258.66 |
| | 4/1/10 0401WT | CDJ | HARRIS N.A. - DISCOUNT - SHEARER'S FOODS INC. | | 25,000.00 | |
| | 4/30/10 AJE6 | GENJ | To record realized gain from payoff of Learning Care Group Inc. | 30,158.58 | | |
| | 4/30/10 RJE3 | GENJ | To record monthly discount amort. on loan to Fairway Group Holdings Corp. | 497.00 | | |
| | 4/30/10 RJE3 | GENJ | To record monthly discount amort. on loan to Education Affiliates Inc. | 331.00 | | |
| | 4/30/10 RJE3 | GENJ | To record monthly discount amort. on loan to Shearer's Foods Inc. | 347.22 | | |
| | 4/30/10 RJE3 | GENJ | To record monthly discount amort. on loan to X-Rite Inc. | 83.33 | | |
| | 4/30/10 RJE3 | GENJ | To record monthly discount amort. on loan to Hudson Products Holdings Inc. | 535.71 | | |
| | 4/30/10 | GENJ | To record monthly | 684.15 | | |

6/22/11 at 14:44:31.29

# Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 1020.30 (cont.) | RJE3 | | discount amort. on loan to Centaur LLC | | | |
| | 4/30/10<br>RJE3 | GENJ | To record monthly discount amort. on loan to X-Rite Inc. | 83.33 | | |
| | 4/30/10<br>RJE3 | GENJ | To record monthly discount amort. on loan to Alpha Media Group Inc. | 1,428.57 | | |
| | | | Current Period Change | 34,148.89 | 25,000.00 | 9,148.89 |
| | 5/1/10 | | Beginning Balance | | | -207,109.77 |
| | 5/31/10<br>RJE3 | GENJ | To record monthly discount amort. on loan to X-Rite Inc. | 83.33 | | |
| | 5/31/10<br>RJE3 | GENJ | To record monthly discount amort. on loan to Fairway Group Holdings Corp. | 497.00 | | |
| | 5/31/10<br>RJE3 | GENJ | To record monthly discount amort. on loan to Alpha Media Group Inc. | 1,428.57 | | |
| | 5/31/10<br>RJE3 | GENJ | To record monthly discount amort. on loan to X-Rite Inc. | 83.33 | | |
| | 5/31/10<br>RJE3 | GENJ | To record monthly discount amort. on loan to Education Affiliates Inc. | 331.00 | | |
| | 5/31/10<br>RJE3 | GENJ | To record monthly discount amort. on loan to Hudson Products Holdings Inc. | 535.71 | | |
| | 5/31/10<br>RJE3 | GENJ | To record monthly discount amort. on loan to Centaur LLC | 684.15 | | |
| | 5/31/10<br>RJE3 | GENJ | To record monthly discount amort. on loan to Shearer's Foods Inc. | 347.22 | | |
| | | | Current Period Change | 3,990.31 | | 3,990.31 |
| | 6/1/10 | | Beginning Balance | | | -203,119.46 |
| | 6/30/10<br>RJE3 | GENJ | To record monthly discount amort. on loan to Hudson Products Holdings Inc. | 535.71 | | |
| | 6/30/10<br>RJE3 | GENJ | To record monthly discount amort. on loan to Shearer's Foods Inc. | 347.22 | | |
| | 6/30/10<br>RJE3 | GENJ | To record monthly discount amort. on loan to Education Affiliates Inc. | 331.00 | | |
| | 6/30/10<br>RJE3 | GENJ | To record monthly discount amort. on loan to X-Rite Inc. | 83.33 | | |
| | 6/30/10<br>RJE3 | GENJ | To record monthly discount amort. on loan to Alpha Media Group | 1,428.57 | | |

6/22/11 at 14:44:31.34

Page: 98

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| | | | to Alpha Media Group Inc. | | | |
| 1020.30 (cont.) | 6/30/10<br>RJE3 | GENJ | To record monthly discount amort. on loan to X-Rite Inc. | 83.33 | | |
| | 6/30/10<br>RJE3 | GENJ | To record monthly discount amort. on loan to Fairway Group Holdings Corp. | 497.00 | | |
| | 6/30/10<br>RJE3 | GENJ | To record monthly discount amort. on loan to Centaur LLC | 684.15 | | |
| | | | Current Period Change | 3,990.31 | | 3,990.31 |
| | **6/30/10** | | **Ending Balance** | | | **-199,129.15** |
| 1020.95<br>UNREALIZED GAIN/L | 7/1/09 | | Beginning Balance | | | -286,127.59 |
| | 8/1/09 | | Beginning Balance | | | -286,127.59 |
| | 9/1/09 | | Beginning Balance | | | -286,127.59 |
| | 9/30/09<br>J/E 2 A34 | GENJ | TO REVERSE 6/30/09 FAIR VALUE ADJUSTMENT | 286,127.00 | | |
| | 9/30/09<br>J/E 2 A34 | GENJ | TO RECORD 9/30/09 FAIR VALUE ADJUSTMENT | | 295,806.00 | |
| | 9/30/09<br>J/E 2A35 | GENJ | To adjust Alpha Media per Audit Committee | | 689,909.00 | |
| | | | Current Period Change | 286,127.00 | 985,715.00 | -699,588.00 |
| | 10/1/09 | | Beginning Balance | | | -985,715.59 |
| | 11/1/09 | | Beginning Balance | | | -985,715.59 |
| | 12/1/09 | | Beginning Balance | | | -985,715.59 |
| | 12/31/09<br>J/E 2 A34 | GENJ | TO RECORD 12/31/09 FAIR VALUE ADJUSTMENT | | 1,134,229.00 | |
| | 12/31/09<br>J/E 2 A34 | GENJ | TO REVERSE 9/30/09 FAIR VALUE ADJUSTMENT | 295,806.00 | | |
| | 12/31/09<br>J/E 2 A34 | GENJ | TO REVERSE CENTAUR 9/30/09 FAIR VALUE ADJUSTMENT | 689,910.00 | | |
| | | | Current Period Change | 985,716.00 | 1,134,229.00 | -148,513.00 |
| | 1/1/10 | | Beginning Balance | | | -1,134,228.59 |
| | 2/1/10 | | Beginning Balance | | | -1,134,228.59 |
| | 3/1/10 | | Beginning Balance | | | -1,134,228.59 |
| | 3/31/10<br>J/E 2 A34 | GENJ | TO REVERSE 12/31/09 FAIR VALUE ADJUSTMENT | 1,134,229.00 | | |
| | 3/31/10<br>J/E 2 A34 | GENJ | TO RECORD 3/31/10 FAIR VALUE ADJUSTMENT | | 1,412,066.00 | |
| | | | Current Period Change | 1,134,229.00 | 1,412,066.00 | -277,837.00 |

6/22/11 at 14:44:31.37

# Elk Associates Funding Corporation
## General Ledger
## For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 1020.95 (cont.) | 4/1/10 | | Beginning Balance | | | -1,412,065.59 |
| | 5/1/10 | | Beginning Balance | | | -1,412,065.59 |
| | 6/1/10 | | Beginning Balance | | | -1,412,065.59 |
| | 6/30/10 J/E 2A34 | GENJ | To record 6/30/10 fair value adjustment | | 2,021,544.00 | |
| | 6/30/10 J/E 2A34 | GENJ | To reverse 3/31/10 fair value adjustment | 1,412,066.00 | | |
| | | | Current Period Change | 1,412,066.00 | 2,021,544.00 | -609,478.00 |
| | 6/30/10 | | **Ending Balance** | | | **-2,021,543.59** |
| 1021 Equity investments | 7/1/09 | | Beginning Balance | | | 392,527.76 |
| | 8/1/09 | | Beginning Balance | | | 392,527.76 |
| | 9/1/09 | | Beginning Balance | | | 392,527.76 |
| | 10/1/09 | | Beginning Balance | | | 392,527.76 |
| | 11/1/09 | | Beginning Balance | | | 392,527.76 |
| | 12/1/09 | | Beginning Balance | | | 392,527.76 |
| | 1/1/10 | | Beginning Balance | | | 392,527.76 |
| | 2/1/10 | | Beginning Balance | | | 392,527.76 |
| | 3/1/10 | | Beginning Balance | | | 392,527.76 |
| | 4/1/10 | | Beginning Balance | | | 392,527.76 |
| | 5/1/10 | | Beginning Balance | | | 392,527.76 |
| | 6/1/10 | | Beginning Balance | | | 392,527.76 |
| | 6/30/10 | | **Ending Balance** | | | **392,527.76** |
| 1021.50 UNREALIZED GAIN/L | 7/1/09 | | Beginning Balance | | | -377,961.00 |
| | 8/1/09 | | Beginning Balance | | | -377,961.00 |
| | 9/1/09 | | Beginning Balance | | | -377,961.00 |
| | 9/30/09 J/E 2 A34 | GENJ | TO REVERSE 6/30/09 FAIR VALUE ADJUSTMENT | 377,961.00 | | |
| | 9/30/09 J/E 2 A34 | GENJ | TO RECORD 9/30/09 FAIR VALUE ADJUSTMENT | | 373,777.00 | |
| | | | Current Period Change | 377,961.00 | 373,777.00 | 4,184.00 |
| | 10/1/09 | | Beginning Balance | | | -373,777.00 |
| | 11/1/09 | | Beginning Balance | | | -373,777.00 |
| | 12/1/09 | | Beginning Balance | | | -373,777.00 |

6/22/11 at 14:44:31.40

## Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 1021.50 (cont.) | 12/31/09 J/E 2 A34 | GENJ | TO REVERSE 9/30/09 FAIR VALUE ADJUSTMENT | 373,777.00 | | |
| | 12/31/09 J/E 2 A34 | GENJ | TO RECORD 12/31/09 FAIR VALUE ADJUSTMENT | | 377,961.00 | |
| | | | Current Period Change | 373,777.00 | 377,961.00 | -4,184.00 |
| | 1/1/10 | | Beginning Balance | | | -377,961.00 |
| | 2/1/10 | | Beginning Balance | | | -377,961.00 |
| | 3/1/10 | | Beginning Balance | | | -377,961.00 |
| | 3/31/10 J/E 2 A34 | GENJ | TO RECORD 3/31/10 FAIR VALUE ADJUSTMENT | | 377,264.00 | |
| | 3/31/10 J/E 2 A34 | GENJ | TO REVERSE 12/31/09 FAIR VALUE ADJUSTMENT | 377,961.00 | | |
| | | | Current Period Change | 377,961.00 | 377,264.00 | 697.00 |
| | 4/1/10 | | Beginning Balance | | | -377,264.00 |
| | 5/1/10 | | Beginning Balance | | | -377,264.00 |
| | 6/1/10 | | Beginning Balance | | | -377,264.00 |
| | 6/30/10 J/E 2A34 | GENJ | To record 6/30/10 fair value adjustment | | 375,869.00 | |
| | 6/30/10 J/E 2A34 | GENJ | To reverse 3/31/10 fair value adjustment | 377,264.00 | | |
| | | | Current Period Change | 377,264.00 | 375,869.00 | 1,395.00 |
| | 6/30/10 | | **Ending Balance** | | | **-375,869.00** |
| 1032.00 ASSETS ACQUIRED | 7/1/09 | | Beginning Balance | | | 98,325.00 |
| | 8/1/09 | | Beginning Balance | | | 98,325.00 |
| | 9/1/09 | | Beginning Balance | | | 98,325.00 |
| | 10/1/09 | | Beginning Balance | | | 98,325.00 |
| | 11/1/09 | | Beginning Balance | | | 98,325.00 |
| | 12/1/09 | | Beginning Balance | | | 98,325.00 |
| | 1/1/10 | | Beginning Balance | | | 98,325.00 |
| | 2/1/10 | | Beginning Balance | | | 98,325.00 |
| | 3/1/10 | | Beginning Balance | | | 98,325.00 |
| | 4/1/10 | | Beginning Balance | | | 98,325.00 |
| | 5/1/10 | | Beginning Balance | | | 98,325.00 |
| | 6/1/10 | | Beginning Balance | | | 98,325.00 |
| | 6/30/10 | | **Ending Balance** | | | **98,325.00** |

6/22/11 at 14:44:31.45

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 1033.00<br>REC. FROM DEBTOR | 7/1/09 | | Beginning Balance | | | 138,874.06 |
| | 7/6/09<br>0706D01 | CRJ | MISCELLANEOUS DEPOSIT - PYT - CHARLES L GOODBAR | | 2,908.51 | |
| | 7/20/09<br>0720ACH1 | CRJ | MISCELLANEOUS DEPOSIT - ACH - CITYWIDE SUPER LAUNDRY CENTER INC. | | 800.00 | |
| | 7/31/09<br>AAL1 | GENJ | To record Newtex Inc. auto payment | | 93.43 | |
| | | | Current Period Change | | 3,801.94 | -3,801.94 |
| | 8/1/09 | | Beginning Balance | | | 135,072.12 |
| | 8/18/09<br>0818D02 | CRJ | MISCELLANEOUS DEPOSIT - PYT - NEWTEX INC. | | 93.74 | |
| | 8/19/09<br>0819ACH1 | CRJ | MISCELLANEOUS DEPOSIT - PYT - CITYWIDE SUPER LAUNDRY CENTER INC. | | 800.00 | |
| | | | Current Period Change | | 893.74 | -893.74 |
| | 9/1/09 | | Beginning Balance | | | 134,178.38 |
| | 9/21/09<br>0921ACH1 | CRJ | MISCELLANEOUS DEPOSIT - ACH - CITYWIDE SUPER LAUNDRY CENTER INC. | | 800.00 | |
| | 9/30/09<br>AAL1 | GENJ | TO RECORD NEWTEX INC AUTO PAYMENT | | 94.06 | |
| | | | Current Period Change | | 894.06 | -894.06 |
| | 10/1/09 | | Beginning Balance | | | 133,284.32 |
| | 10/13/09<br>1013D01 | CRJ | MISCELLANEOUS DEPOSIT - PYT - CHARLES GOODBAR | | 2,967.03 | |
| | 10/16/09<br>1016D02 | CRJ | MISCELLANEOUS DEPOSIT - PYT - NEWTEX INC. | | 94.37 | |
| | 10/19/09<br>1019ACH1 | CRJ | MISCELLANEOUS DEPOSIT - ACH - CITYWIDE SUPER LAUNDRY CENTER INC. | | 800.00 | |
| | | | Current Period Change | | 3,861.40 | -3,861.40 |
| | 11/1/09 | | Beginning Balance | | | 129,422.92 |
| | 11/19/09<br>1119ACH1 | CRJ | MISCELLANEOUS DEPOSIT - ACH - CITYWIDE SUPER LAUNDRY CENTER INC. | | 800.00 | |
| | 11/25/09<br>1125D02 | CRJ | MISCELLANEOUS DEPOSIT - PYT - NEWTEX INC. | | 94.68 | |

6/22/11 at 14:44:31.48

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 1032.00 (cont.) | | | Current Period Change | | 894.68 | -894.68 |
| | 12/1/09 | | Beginning Balance | | | 128,528.24 |
| | 12/1/09 1201D01 | CRJ | MISCELLANEOUS DEPOSIT - PYT - NEWTEX INC. | | 95.00 | |
| | 12/21/09 1221ACH1 | CRJ | MISCELLANEOUS DEPOSIT - ACH - CITWIDE SUPER LAUNDRY CENTER INC. | | 800.00 | |
| | | | Current Period Change | | 895.00 | -895.00 |
| | 1/1/10 | | Beginning Balance | | | 127,633.24 |
| | 1/11/10 0111D01 | CRJ | MISCELLANEOUS DEPOSIT - PYT - NEWTEX INC. | | 95.32 | |
| | 1/20/10 0120ACH1 | CRJ | MISCELLANEOUS DEPOSIT - ACH - CITWIDE SUPER LAUNDRY CENTER INC. | | 800.00 | |
| | | | Current Period Change | | 895.32 | -895.32 |
| | 2/1/10 | | Beginning Balance | | | 126,737.92 |
| | 2/16/10 0216D01 | CRJ | MISCELLANEOUS DEPOSIT - PYT - NEWTEX INC. | | 95.55 | |
| | 2/19/10 0219ACH1 | CRJ | MISCELLANEOUS DEPOSIT - ACH - CITWIDE SUPER LAUNDRY CENTER INC. | | 800.00 | |
| | | | Current Period Change | | 895.55 | -895.55 |
| | 3/1/10 | | Beginning Balance | | | 125,842.37 |
| | 3/5/10 0305D02 | CRJ | MISCELLANEOUS DEPOSIT - PYT - NEWTEX INC. | | 95.95 | |
| | 3/19/10 0319Ach1 | CRJ | MISCELLANEOUS DEPOSIT - PYT - CITYWIDE SUPER LAUNDRY CENTER INC. | | 800.00 | |
| | | | Current Period Change | | 895.95 | -895.95 |
| | 4/1/10 | | Beginning Balance | | | 124,946.42 |
| | 4/19/10 0419D01 | CRJ | MISCELLANEOUS DEPOSIT - ACH - CITWIDE SUPER LAUNDRY CENTER INC. | | 800.00 | |
| | 4/30/10 AAL1 | GENJ | To record Newtex Inc. auto payment | | 96.35 | |
| | | | Current Period Change | | 896.35 | -896.35 |
| | 5/1/10 | | Beginning Balance | | | 124,050.07 |

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 1032.00 (cont.) | 5/19/10<br>0519ach1 | CRJ | MISCELLANEOUS DEPOSIT - PYT - CITYWIDE SUPER LAUNDRY CENTER INC. | | 800.00 | |
| | 5/31/10<br>AAL1 | GENJ | To record Newtex Inc. auto payment | | 96.40 | |
| | | | Current Period Change | | 896.40 | -896.40 |
| | 6/1/10 | | Beginning Balance | | | 123,153.67 |
| | 6/22/10<br>0622ACH | CRJ | MISCELLANEOUS DEPOSIT - ACH - CITYWIDE SUPER LAUNDRY CENTER INC. | | 800.00 | |
| | 6/30/10<br>AAL1 | GENJ | To record Newtex Inc. auto payment | | 96.91 | |
| | | | Current Period Change | | 896.91 | -896.91 |
| | **6/30/10** | | **Ending Balance** | | | **122,256.76** |
| 1108.00<br>MISC RECEIVABLE - | 7/1/09 | | Beginning Balance | | | 8,908.71 |
| | 7/1/09<br>JULY 09 | PJ | MEDALLION FUNDING CORP. AS SER - MONTHLY PAYMENT JULY 09 - ST. FIRMIN MICHEL | 1,323.19 | | |
| | | | Current Period Change | 1,323.19 | | 1,323.19 |
| | 8/1/09 | | Beginning Balance | | | 10,231.90 |
| | 8/3/09<br>AUG 09 | PJ | MEDALLION FUNDING CORP. AS SER - MONTHLY PAYMENT AUGUST 09 - ST. FIRMIN MICHEL | 1,323.19 | | |
| | | | Current Period Change | 1,323.19 | | 1,323.19 |
| | 9/1/09 | | Beginning Balance | | | 11,555.09 |
| | 9/1/09<br>SEP 09 | PJ | MEDALLION FUNDING CORP. AS SER - MONTHLY PAYMENT SEPTEMBER 09 - ST. FIRMIN MICHEL | 1,323.19 | | |
| | | | Current Period Change | 1,323.19 | | 1,323.19 |
| | 10/1/09 | | Beginning Balance | | | 12,878.28 |
| | 10/1/09<br>OCT 09 | PJ | MEDALLION FUNDING CORP. AS SER - MONTHLY PAYMENT OCTOBER 09 - ST. FIRMIN MICHEL | 1,323.19 | | |
| | | | Current Period Change | 1,323.19 | | 1,323.19 |
| | 11/1/09 | | Beginning Balance | | | 14,201.47 |
| | 11/10/09 | PJ | MEDALLION FUNDING | 1,323.19 | | |

6/22/11 at 14:44:31.55

## Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 1108.00 (cont.) | NOV 09 | | CORP. AS SER -<br>MONTHLY PAYMENT<br>NOVEMBER 09 - ST.<br>FIRMIN MICHEL | | | |
| | | | Current Period Change | 1,323.19 | | 1,323.19 |
| | 12/1/09 | | Beginning Balance | | | 15,524.66 |
| | 12/11/09<br>1211D01 | CRJ | MISCELLANEOUS<br>DEPOSIT - MEDALLION<br>BANK PAYMENT RE:<br>ST. FIRMIN MICHEL | | 15,524.66 | |
| | | | Current Period Change | | 15,524.66 | -15,524.66 |
| | 1/1/10 | | Beginning Balance | | | |
| | 2/1/10 | | Beginning Balance | | | |
| | 3/1/10 | | Beginning Balance | | | |
| | 4/1/10 | | Beginning Balance | | | |
| | 5/1/10 | | Beginning Balance | | | |
| | 6/1/10 | | Beginning Balance | | | |
| | 6/30/10 | | **Ending Balance** | | | |
| 1109.00<br>MISC RECEIVABLE - | 7/1/09 | | Beginning Balance | | | 11,358.27 |
| | 7/1/09<br>JULY 09 | PJ | MEDALLION FUNDING<br>CORP. AS SER -<br>MONTHLY PAYMENT<br>JULY 09 - CHARLES<br>LAURISTON | 1,262.03 | | |
| | | | Current Period Change | 1,262.03 | | 1,262.03 |
| | 8/1/09 | | Beginning Balance | | | 12,620.30 |
| | 8/3/09<br>AUG 09 | PJ | MEDALLION FUNDING<br>CORP. AS SER -<br>MONTHLY PAYMENT<br>AUGUST 09 -<br>CHARLES LAURISTON | 1,262.03 | | |
| | | | Current Period Change | 1,262.03 | | 1,262.03 |
| | 9/1/09 | | Beginning Balance | | | 13,882.33 |
| | 9/1/09<br>SEP 09 | PJ | MEDALLION FUNDING<br>CORP. AS SER -<br>MONTHLY PAYMENT<br>SEPTEMBER 09 -<br>CHARLES LAURISTON | 1,262.03 | | |
| | | | Current Period Change | 1,262.03 | | 1,262.03 |
| | 10/1/09 | | Beginning Balance | | | 15,144.36 |
| | 10/1/09<br>OCT 09 | PJ | MEDALLION FUNDING<br>CORP. AS SER -<br>MONTHLY PAYMENT<br>OCTOBER 09 -<br>CHARLES LAURISTON | 1,262.03 | | |

# Elk Associates Funding Corporation
## General Ledger
## For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID / Account Description | Date / Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| | | | CHARLES LAURISTON | | | |
| 1109.00 (cont.) | | | Current Period Change | 1,262.03 | | 1,262.03 |
| | 11/1/09 | | Beginning Balance | | | 16,406.39 |
| | 11/10/09 NOV 09 | PJ | MEDALLION FUNDING CORP. AS SER - MONTHLY PAYMENT NOVEMBER 09 - CHARLES LAURISTON | 1,262.03 | | |
| | | | Current Period Change | 1,262.03 | | 1,262.03 |
| | 12/1/09 | | Beginning Balance | | | 17,668.42 |
| | 12/2/09 DEC 09 | PJ | MEDALLION FUNDING CORP. AS SER - MONTHLY PAYMENT DECEMBER 09 - CHARLES LAURISTON | 1,262.03 | | |
| | | | Current Period Change | 1,262.03 | | 1,262.03 |
| | 1/1/10 | | Beginning Balance | | | 18,930.45 |
| | 1/8/10 JAN 2010 | PJ | MEDALLION FUNDING CORP. AS SER - MONTHLY PAYMENT - CHARLES LAURISTON | 1,262.03 | | |
| | | | Current Period Change | 1,262.03 | | 1,262.03 |
| | 2/1/10 | | Beginning Balance | | | 20,192.48 |
| | 2/1/10 FEB 2010 | PJ | MEDALLION FUNDING CORP. AS SER - MONTHLY PAYMENT RE: CHARLES LAURISTON | 1,262.03 | | |
| | | | Current Period Change | 1,262.03 | | 1,262.03 |
| | 3/1/10 | | Beginning Balance | | | 21,454.51 |
| | 3/1/10 MAR 2010 | PJ | MEDALLION FUNDING CORP. AS SER - MONTHLY PAYMENT RE: CHARLES LAURISTON - MAR 2010 | 1,262.03 | | |
| | | | Current Period Change | 1,262.03 | | 1,262.03 |
| | 4/1/10 | | Beginning Balance | | | 22,716.54 |
| | 5/1/10 | | Beginning Balance | | | 22,716.54 |
| | 6/1/10 | | Beginning Balance | | | 22,716.54 |
| | 6/30/10 | | **Ending Balance** | | | **22,716.54** |
| 1156 EXCHANGE | 7/1/09 | | Beginning Balance | | | |
| | 7/2/09 | CDJ | AT&T - AT&T PAYMENT FOR INFINITI CAPITAL | 169.76 | | |

# Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 1156 (cont.) | 0702IDB | | FOR INFINITY CAPITAL TO BE REIMBURSED BY M.FEINSOD | | | |
| | | | Current Period Change | 169.76 | | 169.76 |
| | 8/1/09 | | Beginning Balance | | | 169.76 |
| | 8/24/09<br>0824D02 | CRJ | MISCELLANEOUS DEPOSIT - M.FEINSOD REIMBURSEMENT FOR AT&T BILL | | 169.76 | |
| | | | Current Period Change | | 169.76 | -169.76 |
| | 9/1/09 | | Beginning Balance | | | |
| | 10/1/09 | | Beginning Balance | | | |
| | 11/1/09 | | Beginning Balance | | | |
| | 12/1/09 | | Beginning Balance | | | |
| | 12/23/09<br>1142 | CDJ | DOLLIE CAMPBELL - GROSS BONUS $1,650 -LESS FICA $126.22 | 1,523.78 | | |
| | 12/23/09<br>1143 | CDJ | DOMINIC GRANITO - GROSS BONUS $5,500 LESS FICA $420.75 | 5,079.25 | | |
| | 12/23/09<br>122309200 | GENJ | Office Salaries - Signature Bank - Net Pay 2009 OFFICE BONUSES | | 6,603.03 | |
| | | | Current Period Change | 6,603.03 | 6,603.03 | |
| | 1/1/10 | | Beginning Balance | | | |
| | 2/1/10 | | Beginning Balance | | | |
| | 3/1/10 | | Beginning Balance | | | |
| | 4/1/10 | | Beginning Balance | | | |
| | 5/1/10 | | Beginning Balance | | | |
| | 6/1/10 | | Beginning Balance | | | |
| | 6/30/10 | | Ending Balance | | | |
| 1500<br>OFFICE EQUIPMENT | 7/1/09 | | Beginning Balance | | | 8,517.36 |
| | 8/1/09 | | Beginning Balance | | | 8,517.36 |
| | 9/1/09 | | Beginning Balance | | | 8,517.36 |
| | 10/1/09 | | Beginning Balance | | | 8,517.36 |
| | 11/1/09 | | Beginning Balance | | | 8,517.36 |
| | 12/1/09 | | Beginning Balance | | | 8,517.36 |
| | 1/1/10 | | Beginning Balance | | | 8,517.36 |
| | 2/1/10 | | Beginning Balance | | | 8,517.36 |

# Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 1500 (cont.) | 3/1/10 | | Beginning Balance | | | 8,517.36 |
| | 4/1/10 | | Beginning Balance | | | 8,517.36 |
| | 5/1/10 | | Beginning Balance | | | 8,517.36 |
| | 6/1/10 | | Beginning Balance | | | 8,517.36 |
| | 6/30/10 | | **Ending Balance** | | | **8,517.36** |
| 1501<br>OFFICE EQUIPMENT | 7/1/09 | | Beginning Balance | | | 11,804.36 |
| | 8/1/09 | | Beginning Balance | | | 11,804.36 |
| | 9/1/09 | | Beginning Balance | | | 11,804.36 |
| | 10/1/09 | | Beginning Balance | | | 11,804.36 |
| | 11/1/09 | | Beginning Balance | | | 11,804.36 |
| | 12/1/09 | | Beginning Balance | | | 11,804.36 |
| | 1/1/10 | | Beginning Balance | | | 11,804.36 |
| | 2/1/10 | | Beginning Balance | | | 11,804.36 |
| | 3/1/10 | | Beginning Balance | | | 11,804.36 |
| | 4/1/10 | | Beginning Balance | | | 11,804.36 |
| | 5/1/10 | | Beginning Balance | | | 11,804.36 |
| | 6/1/10 | | Beginning Balance | | | 11,804.36 |
| | 6/30/10<br>AJE12 | GENJ | To write off retired /<br>disposed of assets | | 11,804.36 | |
| | | | Current Period Change | | 11,804.36 | -11,804.36 |
| | 6/30/10 | | **Ending Balance** | | | |
| 1510<br>FURNITURE AND FIX | 7/1/09 | | Beginning Balance | | | 48,196.93 |
| | 7/31/09<br>SPK982-00 | PJ | W.B. MASON CO. INC.<br>- SPK982-000 - 5<br>LEATHER CHAIRS | 758.57 | | |
| | | | Current Period Change | 758.57 | | 758.57 |
| | 8/1/09 | | Beginning Balance | | | 48,955.50 |
| | 9/1/09 | | Beginning Balance | | | 48,955.50 |
| | 10/1/09 | | Beginning Balance | | | 48,955.50 |
| | 11/1/09 | | Beginning Balance | | | 48,955.50 |
| | 12/1/09 | | Beginning Balance | | | 48,955.50 |
| | 1/1/10 | | Beginning Balance | | | 48,955.50 |
| | 2/1/10 | | Beginning Balance | | | 48,955.50 |

6/22/11 at 14:44:31.68

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 1510 (cont.) | 3/1/10 | | Beginning Balance | | | 48,955.50 |
| | 4/1/10 | | Beginning Balance | | | 48,955.50 |
| | 5/1/10 | | Beginning Balance | | | 48,955.50 |
| | 6/1/10 | | Beginning Balance | | | 48,955.50 |
| | 6/30/10 AJE12 | GENJ | To write off retired / disposed of assets | | 38,421.44 | |
| | | | Current Period Change | | 38,421.44 | -38,421.44 |
| | 6/30/10 | | **Ending Balance** | | | **10,534.06** |
| 1510.1 FURNITURE AND FIX | 7/1/09 | | Beginning Balance | | | 8,411.50 |
| | 8/1/09 | | Beginning Balance | | | 8,411.50 |
| | 9/1/09 | | Beginning Balance | | | 8,411.50 |
| | 10/1/09 | | Beginning Balance | | | 8,411.50 |
| | 11/1/09 | | Beginning Balance | | | 8,411.50 |
| | 12/1/09 | | Beginning Balance | | | 8,411.50 |
| | 1/1/10 | | Beginning Balance | | | 8,411.50 |
| | 2/1/10 | | Beginning Balance | | | 8,411.50 |
| | 3/1/10 | | Beginning Balance | | | 8,411.50 |
| | 4/1/10 | | Beginning Balance | | | 8,411.50 |
| | 5/1/10 | | Beginning Balance | | | 8,411.50 |
| | 6/1/10 | | Beginning Balance | | | 8,411.50 |
| | 6/30/10 AJE12 | GENJ | To write off retired / disposed of assets | | 8,411.50 | |
| | | | Current Period Change | | 8,411.50 | -8,411.50 |
| | 6/30/10 | | **Ending Balance** | | | |
| 1515 COMPUTER EQUIPM | 7/1/09 | | Beginning Balance | | | 271,985.52 |
| | 7/30/09 1841 | PJ | SURGE ELECTRONIC MEDIA GROUP L - PRINTER HP M3027 | 1,702.11 | | |
| | | | Current Period Change | 1,702.11 | | 1,702.11 |
| | 8/1/09 | | Beginning Balance | | | 273,687.63 |
| | 9/1/09 | | Beginning Balance | | | 273,687.63 |
| | 10/1/09 | | Beginning Balance | | | 273,687.63 |
| | 11/1/09 | | Beginning Balance | | | 273,687.63 |
| | 12/1/09 | | Beginning Balance | | | 273,687.63 |

6/22/11 at 14:44:31.73

## Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 1515 (cont.) | 1/1/10 | | Beginning Balance | | | 273,687.63 |
| | 2/1/10 | | Beginning Balance | | | 273,687.63 |
| | 3/1/10 | | Beginning Balance | | | 273,687.63 |
| | 3/22/10<br>MAR 2010 | PJ | AMERICAN EXPRESS -<br>65001 - COMPUTER | 1,058.23 | | |
| | | | Current Period Change | 1,058.23 | | 1,058.23 |
| | 4/1/10 | | Beginning Balance | | | 274,745.86 |
| | 4/21/10<br>APRIL 201 | PJ | AMERICAN EXPRESS -<br>65001 - COMPUTER<br>EQUIPMENT | 1,076.78 | | |
| | | | Current Period Change | 1,076.78 | | 1,076.78 |
| | 5/1/10 | | Beginning Balance | | | 275,822.64 |
| | 6/1/10 | | Beginning Balance | | | 275,822.64 |
| | 6/30/10<br>AJE12 | GENJ | To write off retired /<br>disposed of assets | | 262,181.73 | |
| | | | Current Period Change | | 262,181.73 | -262,181.73 |
| | **6/30/10** | | **Ending Balance** | | | **13,640.91** |
| 1515.1<br>COMPUTER EQUIPM | 7/1/09 | | Beginning Balance | | | 15,418.59 |
| | 8/1/09 | | Beginning Balance | | | 15,418.59 |
| | 9/1/09 | | Beginning Balance | | | 15,418.59 |
| | 10/1/09 | | Beginning Balance | | | 15,418.59 |
| | 11/1/09 | | Beginning Balance | | | 15,418.59 |
| | 12/1/09 | | Beginning Balance | | | 15,418.59 |
| | 1/1/10 | | Beginning Balance | | | 15,418.59 |
| | 2/1/10 | | Beginning Balance | | | 15,418.59 |
| | 3/1/10 | | Beginning Balance | | | 15,418.59 |
| | 4/1/10 | | Beginning Balance | | | 15,418.59 |
| | 5/1/10 | | Beginning Balance | | | 15,418.59 |
| | 6/1/10 | | Beginning Balance | | | 15,418.59 |
| | 6/30/10<br>AJE12 | GENJ | To write off retired /<br>disposed of assets | | 15,418.59 | |
| | | | Current Period Change | | 15,418.59 | -15,418.59 |
| | **6/30/10** | | **Ending Balance** | | | |
| 1525<br>LEASEHOLD IMPRO | 7/1/09 | | Beginning Balance | | | 23,674.95 |
| | 8/1/09 | | Beginning Balance | | | 23,674.95 |

6/22/11 at 14:44:31.76                                                             Page: 110

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID / Account Description | Date / Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 1525 (cont.) | 9/1/09 | | Beginning Balance | | | 23,674.95 |
| | 10/1/09 | | Beginning Balance | | | 23,674.95 |
| | 11/1/09 | | Beginning Balance | | | 23,674.95 |
| | 12/1/09 | | Beginning Balance | | | 23,674.95 |
| | 1/1/10 | | Beginning Balance | | | 23,674.95 |
| | 2/1/10 | | Beginning Balance | | | 23,674.95 |
| | 3/1/10 | | Beginning Balance | | | 23,674.95 |
| | 4/1/10 | | Beginning Balance | | | 23,674.95 |
| | 5/1/10 | | Beginning Balance | | | 23,674.95 |
| | 6/1/10 | | Beginning Balance | | | 23,674.95 |
| | 6/30/10 AJE12 | GENJ | To write off retired / disposed of assets | | 23,674.95 | |
| | | | Current Period Change | | 23,674.95 | -23,674.95 |
| | **6/30/10** | | **Ending Balance** | | | |
| 1526 LEASEHOLD IMPRO | 7/1/09 | | Beginning Balance | | | 151,958.22 |
| | 8/1/09 | | Beginning Balance | | | 151,958.22 |
| | 9/1/09 | | Beginning Balance | | | 151,958.22 |
| | 10/1/09 | | Beginning Balance | | | 151,958.22 |
| | 11/1/09 | | Beginning Balance | | | 151,958.22 |
| | 12/1/09 | | Beginning Balance | | | 151,958.22 |
| | 1/1/10 | | Beginning Balance | | | 151,958.22 |
| | 2/1/10 | | Beginning Balance | | | 151,958.22 |
| | 3/1/10 | | Beginning Balance | | | 151,958.22 |
| | 4/1/10 | | Beginning Balance | | | 151,958.22 |
| | 5/1/10 | | Beginning Balance | | | 151,958.22 |
| | 6/1/10 | | Beginning Balance | | | 151,958.22 |
| | 6/30/10 AJE12 | GENJ | To write off retired / disposed of assets | | 151,958.22 | |
| | | | Current Period Change | | 151,958.22 | -151,958.22 |
| | **6/30/10** | | **Ending Balance** | | | |
| 1535 ARTWORK | 7/1/09 | | Beginning Balance | | | 20,684.66 |
| | 8/1/09 | | Beginning Balance | | | 20,684.66 |

# Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 1535 (cont.) | 9/1/09 | | Beginning Balance | | | 20,684.66 |
| | 10/1/09 | | Beginning Balance | | | 20,684.66 |
| | 11/1/09 | | Beginning Balance | | | 20,684.66 |
| | 12/1/09 | | Beginning Balance | | | 20,684.66 |
| | 1/1/10 | | Beginning Balance | | | 20,684.66 |
| | 2/1/10 | | Beginning Balance | | | 20,684.66 |
| | 3/1/10 | | Beginning Balance | | | 20,684.66 |
| | 4/1/10 | | Beginning Balance | | | 20,684.66 |
| | 5/1/10 | | Beginning Balance | | | 20,684.66 |
| | 6/1/10 | | Beginning Balance | | | 20,684.66 |
| | **6/30/10** | | **Ending Balance** | | | **20,684.66** |
| 1536<br>VISUAL BASIC LOAN | 7/1/09 | | Beginning Balance | | | 64,734.90 |
| | 8/1/09 | | Beginning Balance | | | 64,734.90 |
| | 9/1/09 | | Beginning Balance | | | 64,734.90 |
| | 10/1/09 | | Beginning Balance | | | 64,734.90 |
| | 11/1/09 | | Beginning Balance | | | 64,734.90 |
| | 12/1/09 | | Beginning Balance | | | 64,734.90 |
| | 1/1/10 | | Beginning Balance | | | 64,734.90 |
| | 2/1/10 | | Beginning Balance | | | 64,734.90 |
| | 3/1/10 | | Beginning Balance | | | 64,734.90 |
| | 4/1/10 | | Beginning Balance | | | 64,734.90 |
| | 5/1/10 | | Beginning Balance | | | 64,734.90 |
| | 6/1/10 | | Beginning Balance | | | 64,734.90 |
| | **6/30/10** | | **Ending Balance** | | | **64,734.90** |
| 1540<br>ACCUMULATED DEP | 7/1/09 | | Beginning Balance | | | -495,169.58 |
| | 7/31/09<br>RJE2 | GENJ | To record depreciation expense | | 2,510.17 | |
| | | | Current Period Change | | 2,510.17 | -2,510.17 |
| | 8/1/09 | | Beginning Balance | | | -497,679.75 |
| | 8/31/09<br>RJE 2 | GENJ | TO RECORD DEPRECIATION EXPENSE FOR AUGUST 2009 | | 2,547.57 | |
| | | | Current Period Change | | 2,547.57 | -2,547.57 |

6/22/11 at 14:44:31.82

# Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 1540 (cont.) | 9/1/09 | | Beginning Balance | | | -500,227.32 |
| | 9/30/09<br>RJE2 | GENJ | To record depreciation expense | | 2,547.57 | |
| | | | Current Period Change | | 2,547.57 | -2,547.57 |
| | 10/1/09 | | Beginning Balance | | | -502,774.89 |
| | 10/31/09<br>RJE2 | GENJ | To record depreciation expense | | 2,605.99 | |
| | | | Current Period Change | | 2,605.99 | -2,605.99 |
| | 11/1/09 | | Beginning Balance | | | -505,380.88 |
| | 11/30/09<br>RJE2 | GENJ | To record depreciation expense | | 2,489.15 | |
| | | | Current Period Change | | 2,489.15 | -2,489.15 |
| | 12/1/09 | | Beginning Balance | | | -507,870.03 |
| | 12/31/09<br>RJE2 | GENJ | To record depreciation expense | | 2,547.53 | |
| | | | Current Period Change | | 2,547.53 | -2,547.53 |
| | 1/1/10 | | Beginning Balance | | | -510,417.56 |
| | 1/31/10<br>RJE2 | GENJ | To record depreciation expense | | 2,529.70 | |
| | | | Current Period Change | | 2,529.70 | -2,529.70 |
| | 2/1/10 | | Beginning Balance | | | -512,947.26 |
| | 2/28/10<br>RJE2 | GENJ | To record depreciation expense | | 2,529.70 | |
| | | | Current Period Change | | 2,529.70 | -2,529.70 |
| | 3/1/10 | | Beginning Balance | | | -515,476.96 |
| | 3/31/10<br>RJE2 | GENJ | To record depreciation expense | | 2,521.60 | |
| | | | Current Period Change | | 2,521.60 | -2,521.60 |
| | 4/1/10 | | Beginning Balance | | | -517,998.56 |
| | 4/30/10<br>RJE2 | GENJ | To record depreciation expense | | 2,539.95 | |
| | | | Current Period Change | | 2,539.95 | -2,539.95 |
| | 5/1/10 | | Beginning Balance | | | -520,538.51 |
| | 5/31/10<br>RJE2 | GENJ | To record depreciation expense | | 2,551.32 | |
| | | | Current Period Change | | 2,551.32 | -2,551.32 |
| | 6/1/10 | | Beginning Balance | | | -523,089.83 |
| | 6/30/10<br>RJE2 | GENJ | To record depreciation expense | | 2,548.67 | |
| | 6/30/10<br>AJE12 | GENJ | To write off retired / disposed of assets | 446,247.76 | | |
| | | | Current Period Change | 446,247.76 | 2,548.67 | 443,699.09 |

6/22/11 at 14:44:31.87

## Elk Associates Funding Corporation
## General Ledger
## For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 1540 (cont.) | 6/30/10 | | Ending Balance | | | -79,390.74 |
| 1600<br>PREPAID INSURANC | 7/1/09 | | Beginning Balance | | | 58,579.27 |
| | 7/1/09<br>J/E 2W3 | GENJ | To accrue Fireman's fund | | 17,367.34 | |
| | 7/11/09<br>AUG 09 | PJ | EMPIRE HEALTH CHOICE HMO - AUG 09 | 4,544.54 | | |
| | 7/15/09<br>A6559693 | PJ | AETNA US HEALTHCARE - A6559693 - E.WALKER - AUG 09 | 893.00 | | |
| | 7/17/09<br>000315752 | PJ | FIREMAN FUND - COMMERCIAL 5/9/09 - MZX80906824 | 17,367.34 | | |
| | 7/17/09<br>34753283 | PJ | OXFORD HEALTH PLANS - 34753283 8/09 EA08401 | 5,746.08 | | |
| | 7/31/09<br>RJE2 | GENJ | To expense insurance | | 20,892.94 | |
| | | | Current Period Change | 28,550.96 | 38,260.28 | -9,709.32 |
| | 8/1/09 | | Beginning Balance | | | 48,869.95 |
| | 8/5/09<br>34926199 | PJ | OXFORD HEALTH PLANS - 34926199 - SEP 09 | 6,318.18 | | |
| | 8/8/09<br>SEP 09 | PJ | EMPIRE HEALTH CHOICE HMO - SEP 09 | 5,641.36 | | |
| | 8/12/09<br>A6671633 | PJ | AETNA US HEALTHCARE - A6671633 - E.WALKER - SEP 09 | 1,156.00 | | |
| | 8/18/09<br>95070 | PJ | BWD GROUP LIMITED - 95070 - RENEWAL OF DIRECTORS & OFFICERS LIABILITY COVERAGE - 8/18/09-8/18/10 - POLICY #DOL9925251 | 73,698.00 | | |
| | 8/31/09<br>RJE 2 | GENJ | TO EXPENSE INSURANCE FOR AUGUST 2009 | | 21,033.99 | |
| | | | Current Period Change | 86,813.54 | 21,033.99 | 65,779.55 |
| | 9/1/09 | | Beginning Balance | | | 114,649.50 |
| | 9/3/09<br>35097447 | PJ | OXFORD HEALTH PLANS - 35097447 - OCTOBER 2009 | 5,952.02 | | |
| | 9/14/09<br>OCT 09 | PJ | AETNA US HEALTHCARE - OCT 09 - E.WALKER | 1,156.00 | | |
| | 9/15/09<br>OCT 09 | PJ | EMPIRE HEALTH CHOICE HMO - OCT 09 | 3,035.76 | | |
| | 9/30/09<br>RJE2 | GENJ | To expense insurance | | 23,347.42 | |
| | | | Current Period Change | 10,143.78 | 23,347.42 | -13,203.64 |
| | 10/1/09 | | Beginning Balance | | | 101,445.86 |
| | 10/2/09 | PJ | OXFORD HEALTH PLANS - 35283835 | 6,135.10 | | |

# Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 1600 (cont.) | 35269255 | | PLANS - 35269255 - NOV 09 | | | |
| | 10/10/09<br>NOV 09 | PJ | EMPIRE HEALTH CHOICE HMO - NOV 09 | 4,338.56 | | |
| | 10/15/09<br>A6895660 | PJ | AETNA US HEALTHCARE - NOV 09 - E.WALKER | 1,156.00 | | |
| | 10/31/09<br>RJE2 | GENJ | To expense insurance | | 20,375.65 | |
| | | | Current Period Change | 11,629.66 | 20,375.65 | -8,745.99 |
| | 11/1/09 | | Beginning Balance | | | 92,699.87 |
| | 11/4/09<br>35438016 | PJ | OXFORD HEALTH PLANS - 35438016 - DECEMBER 09 | 6,135.10 | | |
| | 11/14/09<br>DEC 09 | PJ | EMPIRE HEALTH CHOICE HMO - DECEMBER 09 | 4,338.56 | | |
| | 11/16/09<br>A7007977 | PJ | AETNA US HEALTHCARE - E.WALKER - DEC 09 | 1,156.00 | | |
| | 11/30/09<br>RJE2 | GENJ | To expense insurance | | 21,861.53 | |
| | | | Current Period Change | 11,629.66 | 21,861.53 | -10,231.87 |
| | 12/1/09 | | Beginning Balance | | | 82,468.00 |
| | 12/3/09<br>35608605 | PJ | OXFORD HEALTH PLANS - 35608605 - jan 2010 | 6,135.10 | | |
| | 12/12/09<br>JAN 2010 | PJ | EMPIRE HEALTH CHOICE HMO - JANUARY 2010 | 4,338.56 | | |
| | 12/14/09<br>A7120019 | PJ | AETNA US HEALTHCARE - E.WALKER - JAN 2010 | 1,156.00 | | |
| | 12/31/09<br>RJE2 | GENJ | To expense insurance | | 21,861.53 | |
| | | | Current Period Change | 11,629.66 | 21,861.53 | -10,231.87 |
| | 1/1/10 | | Beginning Balance | | | 72,236.13 |
| | 1/5/10<br>35787125 | PJ | OXFORD HEALTH PLANS - 35787125 - FEB 2010 | 6,135.10 | | |
| | 1/14/10<br>A7233272 | PJ | AETNA US HEALTHCARE - A7233272  FEB 2010 | 1,156.00 | | |
| | 1/28/10<br>FEB 2010 | PJ | EMPIRE HEALTH CHOICE HMO - FEB 2010 | 3,789.00 | | |
| | 1/31/10<br>RJE2 | GENJ | To expense insurance | | 21,861.51 | |
| | | | Current Period Change | 11,080.10 | 21,861.51 | -10,781.41 |
| | 2/1/10 | | Beginning Balance | | | 61,454.72 |
| | 2/1/10<br>15897781 | PJ | NEW YORK STATE INSurance FUND - 15897781 - WORKERS' COMPENSATION - 1/5/10 - 10/1/10 | 1,352.16 | | |

6/22/11 at 14:44:31.95

## Elk Associates Funding Corporation
## General Ledger
## For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 1600 (cont.) | 2/4/10 35957024 | PJ | OXFORD HEALTH PLANS - 35957024 - MARCH 2010 | 6,135.10 | | |
| | 2/13/10 MAR 2010 | PJ | EMPIRE HEALTH CHOICE HMO - MAR 2010 | 4,271.62 | | |
| | 2/15/10 A7346562 | PJ | AETNA US HEALTHCARE - A7346562 - E.WALKER - MAR 2010 | 1,156.00 | | |
| | 2/17/10 103151 | PJ | BWD GROUP LIMITED - 103151 - EMPLOYMENT PRACTICES LIABILITY - 2/2710-2/27/11 | 6,228.00 | | |
| | 2/28/10 RJE2 | GENJ | To expense insurance | | 21,288.23 | |
| | | | Current Period Change | 19,142.88 | 21,288.23 | -2,145.35 |
| | 3/1/10 | | Beginning Balance | | | 59,309.37 |
| | 3/4/10 36128987 | PJ | OXFORD HEALTH PLANS - 36128987 - APRIL 2010 | 6,135.10 | | |
| | 3/13/10 APR 2010 | PJ | EMPIRE HEALTH CHOICE HMO - APR 2010 | 4,271.62 | | |
| | 3/15/10 A7459538 | PJ | AETNA US HEALTHCARE - A7459538 - E.WALKER - APRIL 2010 | 1,156.00 | | |
| | 3/31/10 RJE2 | GENJ | To expense insurance | | 21,770.81 | |
| | | | Current Period Change | 11,562.72 | 21,770.81 | -10,208.09 |
| | 4/1/10 | | Beginning Balance | | | 49,101.28 |
| | 4/2/10 105393 | PJ | BWD GROUP LIMITED - 105393 - RENEWAL - FINANCIAL INSTITUTION BINDER - 4/8/10-4/8/11 | 1,687.00 | | |
| | 4/5/10 36307056 | PJ | OXFORD HEALTH PLANS - 36307056 - MAY 2010 | 6,135.10 | | |
| | 4/10/10 MAY 2010 | PJ | EMPIRE HEALTH CHOICE HMO - MAY 2010 | 4,271.62 | | |
| | 4/13/10 A7572158 | PJ | AETNA US HEALTHCARE - A7572158 - E.WALKER - MAY 2010 | 1,156.00 | | |
| | 4/19/10 041910 | PJ | CHUBB GROUP OF INSURANCE CO. - UMBRELLA POLICY - 79811160 - 5/9/10 - 5/9/11 | 4,688.00 | | |
| | 4/30/10 RJE2 | GENJ | To expense insurance | | 21,405.44 | |
| | | | Current Period Change | 17,937.72 | 21,405.44 | -3,467.72 |
| | 5/1/10 | | Beginning Balance | | | 45,633.56 |

6/22/11 at 14:44:31.98                                                                                        Page: 116

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 1600 (cont.) | 5/6/10 36484714 | PJ | OXFORD HEALTH PLANS - 36484714 - JUNE 2010 | 6,135.10 | | |
| | 5/12/10 A7684453 | PJ | AETNA US HEALTHCARE - A7684453 - E.WALKER - JUNE 2010 | 1,156.00 | | |
| | 5/17/10 JUNE 2010 | PJ | EMPIRE HEALTH CHOICE HMO - JUNE 2010 | 3,303.22 | | |
| | 5/31/10 RJE2 | GENJ | To expense insurance | | 18,889.69 | |
| | | | Current Period Change | 10,594.32 | 18,889.69 | -8,295.37 |
| | 6/1/10 | | Beginning Balance | | | 37,338.19 |
| | 6/7/10 36665165 | PJ | OXFORD HEALTH PLANS - 36665165 - JULY 2010 | 6,135.10 | | |
| | 6/9/10 2010-2011 | PJ | FIREMAN FUND - COMMERCIAL 5/9/10 - MZX80919261 | 17,825.10 | | |
| | 6/12/10 JULY 2010 | PJ | EMPIRE HEALTH CHOICE HMO - JULY 2010 | 4,858.53 | | |
| | 6/14/10 A7796358 | PJ | AETNA US HEALTHCARE - A7796358 - E.WALKER - JULY 2010 | 1,156.00 | | |
| | 6/30/10 RJE2 | GENJ | To expense insurance | | 20,892.15 | |
| | | | Current Period Change | 29,974.73 | 20,892.15 | 9,082.58 |
| | 6/30/10 | | Ending Balance | | | 46,420.77 |
| 1601 PREPAID EXPENSES | 7/1/09 | | Beginning Balance | | | 12,326.10 |
| | 7/31/09 J/E 2M | GENJ | To record Prepaid expense amortization | | 4,845.00 | |
| | | | Current Period Change | | 4,845.00 | -4,845.00 |
| | 8/1/09 | | Beginning Balance | | | 7,481.10 |
| | 8/31/09 J/E 2-M | GENJ | PREPAID ADJ 8/31/09 | | 1,445.00 | |
| | | | Current Period Change | | 1,445.00 | -1,445.00 |
| | 9/1/09 | | Beginning Balance | | | 6,036.10 |
| | 9/7/09 560055110 | PJ | BLOOMBERG FINANCE LP - BLOOMBERG ANYWHERE - 9/2/09-12/1/09 | 6,205.88 | | |
| | 9/28/09 14226 | PJ | NCIC IT CONSULTING INC. - 1/2 IT PREMIUM SERVICE PLAN - 9/28/09-12/27/09 | 2,177.50 | | |
| | 9/30/09 J/E 2M | GENJ | Prepaid adjustment 9/30/09 | | 2,068.63 | |
| | | | Current Period Change | 8,383.38 | 2,068.63 | 6,314.75 |

6/22/11 at 14:44:32.02

## Elk Associates Funding Corporation
## General Ledger
## For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 1601 (cont.) | 10/1/09 | | Beginning Balance | | | 12,350.85 |
| | 10/31/09 J/E 2M | GENJ | Prepaid Expense amortization Oct 09 | | 2,794.47 | |
| | | | Current Period Change | | 2,794.47 | -2,794.47 |
| | 11/1/09 | | Beginning Balance | | | 9,556.38 |
| | 11/30/09 J/E 2M | GENJ | Prepaid Expense Amortization | | 2,794.47 | |
| | | | Current Period Change | | 2,794.47 | -2,794.47 |
| | 12/1/09 | | Beginning Balance | | | 6,761.91 |
| | 12/7/09 560063643 | PJ | BLOOMBERG FINANCE LP - 5600636430 - BLOOMBERG ANYWHERE - 12/2/09-3/1/10 | 6,205.88 | | |
| | 12/31/09 J/E 2M | GENJ | Prepaid adjustment 12/31/09 | | 2,794.47 | |
| | | | Current Period Change | 6,205.88 | 2,794.47 | 3,411.41 |
| | 1/1/10 | | Beginning Balance | | | 10,173.32 |
| | 1/31/10 J/E 2M | GENJ | Prepaid Expense adjustment 1/31/10 | | 2,068.63 | |
| | | | Current Period Change | | 2,068.63 | -2,068.63 |
| | 2/1/10 | | Beginning Balance | | | 8,104.69 |
| | 2/28/10 J/E 2M | GENJ | Prepaid adjustment 2/28/10 | | 2,068.62 | |
| | | | Current Period Change | | 2,068.62 | -2,068.62 |
| | 3/1/10 | | Beginning Balance | | | 6,036.07 |
| | 3/3/10 560072046 | PJ | BLOOMBERG FINANCE LP - 5600720460 - BLOOMBERG ANYWHERE - 3/2/10-6/1/10 | 6,205.88 | | |
| | 3/31/10 J/E 2M | GENJ | PREPAID ADJ 3/31/10 | | 2,068.63 | |
| | | | Current Period Change | 6,205.88 | 2,068.63 | 4,137.25 |
| | 4/1/10 | | Beginning Balance | | | 10,173.32 |
| | 4/30/10 J/E 2M | GENJ | Prepaid adjustment 4/30/10 | | 2,068.63 | |
| | | | Current Period Change | | 2,068.63 | -2,068.63 |
| | 5/1/10 | | Beginning Balance | | | 8,104.69 |
| | 5/31/10 J/E 2M | GENJ | To expense Bloomberg Fee | | 2,068.62 | |
| | | | Current Period Change | | 2,068.62 | -2,068.62 |
| | 6/1/10 | | Beginning Balance | | | 6,036.07 |
| | 6/7/10 | PJ | BLOOMBERG FINANCE LP | 6,205.88 | | |

# Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID / Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 1601 (cont.) | 560080893 | | FINANCE LP - 5600808933 - BLOOMBERG ANYWHERE 6/2/10 - 9/1/10 | | | |
| | 6/30/10 J/E 2M | GENJ | Prepaid adjustment 6/30/10 | | 2,068.63 | |
| | | | Current Period Change | 6,205.88 | 2,068.63 | 4,137.25 |
| | 6/30/10 | | **Ending Balance** | | | **10,173.32** |
| 1604.6 PREPAID INVESTOR | 7/1/09 | | Beginning Balance | | | 0.01 |
| | 8/1/09 | | Beginning Balance | | | 0.01 |
| | 9/1/09 | | Beginning Balance | | | 0.01 |
| | 10/1/09 | | Beginning Balance | | | 0.01 |
| | 11/1/09 | | Beginning Balance | | | 0.01 |
| | 12/1/09 | | Beginning Balance | | | 0.01 |
| | 1/1/10 | | Beginning Balance | | | 0.01 |
| | 2/1/10 | | Beginning Balance | | | 0.01 |
| | 3/1/10 | | Beginning Balance | | | 0.01 |
| | 4/1/10 | | Beginning Balance | | | 0.01 |
| | 5/1/10 | | Beginning Balance | | | 0.01 |
| | 6/1/10 | | Beginning Balance | | | 0.01 |
| | 6/30/10 | | **Ending Balance** | | | **0.01** |
| 1609.2 PREPD SBA COMM F | 7/1/09 | | Beginning Balance | | | 420,000.00 |
| | 8/1/09 | | Beginning Balance | | | 420,000.00 |
| | 9/1/09 | | Beginning Balance | | | 420,000.00 |
| | 10/1/09 | | Beginning Balance | | | 420,000.00 |
| | 11/1/09 | | Beginning Balance | | | 420,000.00 |
| | 11/2/09 1102WT | CDJ | SMALL BUSINESS ADMINISTRATION - SBA COMMITMENT FEE | 91,750.00 | | |
| | | | Current Period Change | 91,750.00 | | 91,750.00 |
| | 12/1/09 | | Beginning Balance | | | 511,750.00 |
| | 12/2/09 1202WT1 | CRJ | MISCELLANEOUS DEPOSIT - SBA LEVERAGE FEE | 222,493.75 | | |
| | | | Current Period Change | 222,493.75 | | 222,493.75 |
| | 1/1/10 | | Beginning Balance | | | 734,243.75 |

# Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 1609.2 (cont.) | 2/1/10 | | Beginning Balance | | | 734,243.75 |
| | 3/1/10 | | Beginning Balance | | | 734,243.75 |
| | 4/1/10 | | Beginning Balance | | | 734,243.75 |
| | 5/1/10 | | Beginning Balance | | | 734,243.75 |
| | 6/1/10 | | Beginning Balance | | | 734,243.75 |
| | **6/30/10** | | **Ending Balance** | | | **734,243.75** |
| 1609.21 Accum. amort. - SBA | 7/1/09 | | Beginning Balance | | | -273,903.83 |
| | 7/31/09 RJE2 | GENJ | To amortize SBA Fee | | 3,370.00 | |
| | | | Current Period Change | | 3,370.00 | -3,370.00 |
| | 8/1/09 | | Beginning Balance | | | -277,273.83 |
| | 8/31/09 RJE 2 | GENJ | TO AMORTIZE SBA FEE FOR AUGUST 2009 | | 3,370.00 | |
| | | | Current Period Change | | 3,370.00 | -3,370.00 |
| | 9/1/09 | | Beginning Balance | | | -280,643.83 |
| | 9/30/09 RJE2 | GENJ | To amortize SBA Fee | | 3,370.00 | |
| | | | Current Period Change | | 3,370.00 | -3,370.00 |
| | 10/1/09 | | Beginning Balance | | | -284,013.83 |
| | 10/31/09 RJE2 | GENJ | To amortize SBA Fee | | 3,370.00 | |
| | | | Current Period Change | | 3,370.00 | -3,370.00 |
| | 11/1/09 | | Beginning Balance | | | -287,383.83 |
| | 11/30/09 RJE2 | GENJ | To amortize SBA Fee | | 3,370.00 | |
| | | | Current Period Change | | 3,370.00 | -3,370.00 |
| | 12/1/09 | | Beginning Balance | | | -290,753.83 |
| | 12/31/09 RJE2 | GENJ | To amortize SBA Fee | | 5,904.22 | |
| | | | Current Period Change | | 5,904.22 | -5,904.22 |
| | 1/1/10 | | Beginning Balance | | | -296,658.05 |
| | 1/31/10 RJE2 | GENJ | To amortize SBA Fee | | 5,904.22 | |
| | | | Current Period Change | | 5,904.22 | -5,904.22 |
| | 2/1/10 | | Beginning Balance | | | -302,562.27 |
| | 2/28/10 RJE2 | GENJ | To amortize SBA Fee | | 5,904.22 | |
| | | | Current Period Change | | 5,904.22 | -5,904.22 |

# Elk Associates Funding Corporation
## General Ledger
## For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 1609.21 (cont.) | 3/1/10 | | Beginning Balance | | | -308,466.49 |
| | 3/31/10<br>RJE2 | GENJ | To amortize SBA Fee | | 5,904.22 | |
| | | | Current Period Change | | 5,904.22 | -5,904.22 |
| | 4/1/10 | | Beginning Balance | | | -314,370.71 |
| | 4/30/10<br>RJE2 | GENJ | To amortize SBA Fee | | 5,904.22 | |
| | | | Current Period Change | | 5,904.22 | -5,904.22 |
| | 5/1/10 | | Beginning Balance | | | -320,274.93 |
| | 5/31/10<br>RJE2 | GENJ | To amortize SBA Fee | | 5,904.22 | |
| | | | Current Period Change | | 5,904.22 | -5,904.22 |
| | 6/1/10 | | Beginning Balance | | | -326,179.15 |
| | 6/30/10<br>RJE2 | GENJ | To amortize SBA Fee | | 5,904.22 | |
| | | | Current Period Change | | 5,904.22 | -5,904.22 |
| | 6/30/10 | | **Ending Balance** | | | **-332,083.37** |
| 1610<br>SECURITY DEPOSIT | 7/1/09 | | Beginning Balance | | | 10,750.00 |
| | 8/1/09 | | Beginning Balance | | | 10,750.00 |
| | 9/1/09 | | Beginning Balance | | | 10,750.00 |
| | 10/1/09 | | Beginning Balance | | | 10,750.00 |
| | 11/1/09 | | Beginning Balance | | | 10,750.00 |
| | 12/1/09 | | Beginning Balance | | | 10,750.00 |
| | 1/1/10 | | Beginning Balance | | | 10,750.00 |
| | 2/1/10 | | Beginning Balance | | | 10,750.00 |
| | 3/1/10 | | Beginning Balance | | | 10,750.00 |
| | 4/1/10 | | Beginning Balance | | | 10,750.00 |
| | 5/1/10 | | Beginning Balance | | | 10,750.00 |
| | 6/1/10 | | Beginning Balance | | | 10,750.00 |
| | 6/30/10 | | **Ending Balance** | | | **10,750.00** |
| 1613.00<br>Cash Surrender Value | 7/1/09 | | Beginning Balance | | | 36,197.24 |
| | 8/1/09 | | Beginning Balance | | | 36,197.24 |
| | 9/1/09 | | Beginning Balance | | | 36,197.24 |
| | 10/1/09 | | Beginning Balance | | | 36,197.24 |
| | 11/1/09 | | Beginning Balance | | | 36,197.24 |

6/22/11 at 14:44:32.16                                                           Page: 121

# Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 1613.00 (cont.) | 12/1/09 | | Beginning Balance | | | 36,197.24 |
| | 12/31/09<br>AJE7 | GENJ | To distribute policy to GCG | | 28,679.69 | |
| | 12/31/09<br>AJE7 | GENJ | To record reduction in value due to premiums | | 7,517.55 | |
| | | | Current Period Change | | 36,197.24 | -36,197.24 |
| | 1/1/10 | | Beginning Balance | | | |
| | 2/1/10 | | Beginning Balance | | | |
| | 3/1/10 | | Beginning Balance | | | |
| | 4/1/10 | | Beginning Balance | | | |
| | 5/1/10 | | Beginning Balance | | | |
| | 6/1/10 | | Beginning Balance | | | |
| | **6/30/10** | | **Ending Balance** | | | |
| 1622.20<br>Prepaid Payroll | 7/1/09 | | Beginning Balance | | | |
| | 7/31/09<br>J/E 2D | GENJ | To record Prepaid Payroll | 119,621.02 | | |
| | | | Current Period Change | 119,621.02 | | 119,621.02 |
| | 8/1/09 | | Beginning Balance | | | 119,621.02 |
| | 8/1/09<br>J/E 2D | GENJ | To record Prepaid Payroll | | 119,621.02 | |
| | 8/31/09<br>J/E 2-D | GENJ | PAYROLL DEDUCTED 0N 8/31/09 OFFICERS SALARY | 117,091.15 | | |
| | | | Current Period Change | 117,091.15 | 119,621.02 | -2,529.87 |
| | 9/1/09 | | Beginning Balance | | | 117,091.15 |
| | 9/1/09<br>J/E 2-D | GENJ | PAYROLL DEDUCTED 0N 8/31/09 OFFICERS SALARY | | 117,091.15 | |
| | 9/30/09<br>J/E 2D | GENJ | PAYROLL DEDUCTED ON 9/30/09 OFFICERS SALARY | 118,474.44 | | |
| | | | Current Period Change | 118,474.44 | 117,091.15 | 1,383.29 |
| | 10/1/09 | | Beginning Balance | | | 118,474.44 |
| | 10/1/09<br>J/E 2D | GENJ | PAYROLL DEDUCTED ON 9/30/09 OFFICERS SALARY | | 118,474.44 | |
| | 10/31/09<br>J/E 2D | GENJ | To record Prepaid Payroll | 118,403.00 | | |
| | | | Current Period Change | 118,403.00 | 118,474.44 | -71.44 |
| | 11/1/09 | | Beginning Balance | | | 118,403.00 |
| | 11/1/09<br>J/E 2D | GENJ | To record Prepaid Payroll | | 118,403.00 | |
| | 11/30/09 | GENJ | To record Prepaid | 35,124.20 | | |

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID / Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 1622.20 (cont.) | J/E 2D | | Payroll | | | |
| | | | Current Period Change | 35,124.20 | 118,403.00 | -83,278.80 |
| | 12/1/09 | | Beginning Balance | | | 35,124.20 |
| | 12/1/09 J/E 2D | GENJ | To record Prepaid Payroll | | 35,124.20 | |
| | 12/31/09 J/E 2D | GENJ | To record Prepaid Payroll | 4,076.05 | | |
| | | | Current Period Change | 4,076.05 | 35,124.20 | -31,048.15 |
| | 1/1/10 | | Beginning Balance | | | 4,076.05 |
| | 1/1/10 J/E 2D | GENJ | To record Prepaid Payroll | | 4,076.05 | |
| | | | Current Period Change | | 4,076.05 | -4,076.05 |
| | 2/1/10 | | Beginning Balance | | | |
| | 2/28/10 J/E 2D | GENJ | To record Prepaid Payroll | 124,867.97 | | |
| | | | Current Period Change | 124,867.97 | | 124,867.97 |
| | 3/1/10 | | Beginning Balance | | | 124,867.97 |
| | 3/1/10 J/E 2D | GENJ | To record Prepaid Payroll | | 124,867.97 | |
| | 3/31/10 J/E 2D | GENJ | PAYROLL DEDUCTED ON 3/31/10 OFFICER SALARY | 122,097.77 | | |
| | | | Current Period Change | 122,097.77 | 124,867.97 | -2,770.20 |
| | 4/1/10 | | Beginning Balance | | | 122,097.77 |
| | 4/1/10 J/E 2D | GENJ | PAYROLL DEDUCTED ON 3/31/10 OFFICER SALARY | | 122,097.77 | |
| | 4/30/10 J/E 2D | GENJ | To record Prepaid Payroll | 120,864.62 | | |
| | | | Current Period Change | 120,864.62 | 122,097.77 | -1,233.15 |
| | 5/1/10 | | Beginning Balance | | | 120,864.62 |
| | 5/1/10 J/E 2D | GENJ | To record Prepaid Payroll | | 120,864.62 | |
| | 5/31/10 J/E 2D | GENJ | To record Prepaid Payroll | 120,864.64 | | |
| | | | Current Period Change | 120,864.64 | 120,864.62 | 0.02 |
| | 6/1/10 | | Beginning Balance | | | 120,864.64 |
| | 6/1/10 J/E 2D | GENJ | To record Prepaid Payroll | | 120,864.64 | |
| | 6/30/10 J/E 2D | GENJ | To record Prepaid Payroll | 107,709.49 | | |
| | | | Current Period Change | 107,709.49 | 120,864.64 | -13,155.15 |
| | **6/30/10** | | **Ending Balance** | | | **107,709.49** |
| 1676 Exchange | 7/1/09 | | Beginning Balance | | | |
| | 8/1/09 | | Beginning Balance | | | |

6/22/11 at 14:44:32.29                                                                                    Page: 123

# Elk Associates Funding Corporation
## General Ledger
## For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 1676 (cont.) | 9/1/09 | | Beginning Balance | | | |
| | 10/1/09 | | Beginning Balance | | | |
| | 11/1/09 | | Beginning Balance | | | |
| | 12/1/09 | | Beginning Balance | | | |
| | 1/1/10 | | Beginning Balance | | | |
| | 2/1/10 | | Beginning Balance | | | |
| | 2/1/10<br>201DM | CDJ | SIGNATURE BANK - NET OFFICERS PAYROLL - FEB 2010 | 69,069.83 | | |
| | 2/1/10<br>202DM | CDJ | SIGNATURE BANK - OFFICERS PAYROLL TAXES - FEB 2010 | 47,671.07 | | |
| | 2/1/10<br>0210OFFIC | GENJ | Officer Salaries - Signature Bank  Net Pay 0210 OFFICERS SALARIES | | 69,069.83 | |
| | 2/1/10<br>0210OFFIC | GENJ | Officer Salaries - Signature Bank - Taxes 0210 OFFICERS SALARIES | | 47,671.07 | |
| | 2/1/10<br>0210OFFIC | GENJ | Officer Salaries - MANUAL CHECK SMULLENS #2803 0210 OFFICERS SALARIES | | 8,127.12 | |
| | 2/3/10<br>203DM | CDJ | SIGNATURE BANK - MANUAL CHECK S.MULLENS #2803 - OFFICERS SALARIES - FEB 2010 | 8,127.12 | | |
| | 2/11/10<br>204DM | CDJ | SIGNATURE BANK - NET OFFICE PAYROLL - 2/12/10 | 3,557.83 | | |
| | 2/11/10<br>205DM | CDJ | SIGNATURE BANK - OFFICE PAYROLL TAXES - 2/12/10 | 1,627.72 | | |
| | 2/12/10<br>021210OF | GENJ | Office Salaries - Signature Bank - Net Pay 021210 OFFICE PAYROLL | | 3,557.83 | |
| | 2/12/10<br>021210OF | GENJ | Office Salaries - Signature Bank - Taxes 021210 OFFICE PAYROLL | | 1,627.72 | |
| | 2/16/10<br>021610OF | GENJ | Officer Salaries - Signature Bank - Taxes 021610 OFFICER BONUS 2009 | | 13,862.50 | |
| | 2/16/10<br>021610OF | GENJ | Officer Salaries - Signature Bank  Net Pay 021610 OFFICER BONUS 2009 | | 23,934.00 | |
| | 2/16/10<br>206DM | CDJ | SIGNATURE BANK - NET OFFICERS' BONUS 2009 - 2/16/10 | 23,934.00 | | |
| | 2/16/10<br>207DM | CDJ | SIGNATURE BANK - OFFICERS' BONUS 2009 TAXES - 2/16/10 | 13,862.50 | | |

6/22/11 at 14:44:32.32

### Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 1676 (cont.) | 2/25/10<br>208DM | CDJ | 2009 TAXES - 2/16/10<br>SIGNATURE BANK -<br>NET OFFICE PAYROLL<br>- 2/26/10 | 3,521.35 | | |
| | 2/25/10<br>209DM | CDJ | SIGNATURE BANK -<br>OFFICE PAYROLL<br>TAXES - 2/26/10 | 1,647.55 | | |
| | 2/26/10<br>022610OF | GENJ | Office Salaries -<br>Signature Bank - Taxes<br>02/26/10 OFFICE<br>SALARIES | | 1,647.55 | |
| | 2/26/10<br>022610OF | GENJ | Office Salaries -<br>Signature Bank - Net<br>Pay  02/26/10 OFFICE<br>SALARIES | | 3,521.35 | |
| | 2/26/10<br>210DM | CDJ | SIGNATURE BANK -<br>NET OFFICERS<br>PAYROLL - MARCH<br>2010 | 77,197.00 | | |
| | 2/26/10<br>211DM | CDJ | SIGNATURE BANK -<br>OFFICERS PAYROLL<br>TAXES - MARCH 2010 | 47,670.97 | | |
| | 2/28/10<br>J/E 2D | GENJ | To record Prepaid<br>Payroll | | 47,670.97 | |
| | 2/28/10<br>J/E 2D | GENJ | To record Prepaid<br>Payroll | | 77,197.00 | |
| | | | Current Period Change | 297,886.94 | 297,886.94 | |
| | 3/1/10 | | Beginning Balance | | | |
| | 3/1/10<br>0310OFFIC | GENJ | Officer Salaries -<br>Signature Bank  Net Pay<br>03/10 OFFICERS<br>SALARIES | | 77,197.00 | |
| | 3/1/10<br>0310OFFIC | GENJ | Officer Salaries -<br>Signature Bank - Taxes<br>03/10 OFFICERS<br>SALARIES | | 47,670.97 | |
| | 3/1/10<br>J/E 2D | GENJ | To record Prepaid<br>Payroll | 47,670.97 | | |
| | 3/1/10<br>J/E 2D | GENJ | To record Prepaid<br>Payroll | 77,197.00 | | |
| | 3/12/10<br>2804 | CDJ | MANUAL PAYROLL<br>CHECK #2804 -<br>MANUAL CHECK<br>PAYROLL 3/12/10 | 1,468.86 | | |
| | 3/12/10<br>031210OF | GENJ | Office Salaries -<br>Signature Bank - Taxes<br>03/12/10 OFFICE<br>SALARIES | | 2,534.63 | |
| | 3/12/10<br>031210OF | GENJ | Office Salaries -<br>Signature Bank - Net<br>Pay 03/12/10 OFFICE<br>SALARIES | | 3,557.84 | |
| | 3/12/10<br>031210OF | GENJ | Office Salaries - Manual<br>Check #2804 03/12/10<br>OFFICE SALARIES | | 1,468.86 | |
| | 3/12/10<br>031210OF | GENJ | Office Salaries -<br>Signature Bank - ADP<br>FEE 03/12/10 OFFICE<br>SALARIES | | 45.40 | |
| | 3/12/10<br>301DM | CDJ | SIGNATURE BANK -<br>NET OFFICE PAYROLL<br>3/12/10 | 3,557.84 | | |

6/22/11 at 14:44:32.37                                                                          Page: 125

# Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| | | | - 3/12/10 | | | |
| 1676 (cont.) | 3/12/10<br>302DM | CDJ | SIGNATURE BANK -<br>NET OFFICE PAYROLL<br>TAXES - 3/12/10 | 2,534.63 | | |
| | 3/12/10<br>303DM | CDJ | SIGNATURE BANK -<br>ADP FEE 3/12/10 -<br>OFFICE SALARIES | 45.40 | | |
| | 3/22/10<br>032210SUI | GENJ | Office Salaries -<br>Signature Bank -<br>ADJUST SUTA -<br>1.6000% TO 4.4000%<br>STATE<br>UNEMPLOYMENT<br>INSURANCE<br>CONTRIBUTION RATE | | 2,006.11 | |
| | 3/22/10<br>304DM | CDJ | SIGNATURE BANK -<br>ADJUST SUTA -<br>1.6000% TO 4.4000%<br>STATE<br>UNEMPLOYMENT<br>INSURANCE<br>CONTRIBUTION RATE | 2,006.11 | | |
| | 3/25/10<br>305DM | CDJ | SIGNATURE BANK -<br>NET OFFICE PAYROLL<br>3/26/10 | 15,470.30 | | |
| | 3/25/10<br>306DM | CDJ | SIGNATURE BANK -<br>NET OFFICE PAYROLL<br>TAXES 3/26/10 | 3,861.50 | | |
| | 3/26/10<br>032610OF | GENJ | Office Salaries -<br>Signature Bank - Taxes<br>03/26/10 OFFICE<br>SALARIES | | 3,861.50 | |
| | 3/26/10<br>032610OF | GENJ | Office Salaries -<br>Signature Bank - ADP<br>FEE 03/26/10 OFFICE<br>SALARIES | | 45.70 | |
| | 3/26/10<br>032610OF | GENJ | Office Salaries -<br>Signature Bank - Net<br>Pay  03/26/10 OFFICE<br>SALARIES | | 15,470.30 | |
| | 3/31/10<br>307DM | CDJ | SIGNATURE BANK -<br>NET OFFICERS<br>PAYROLL - APR 2010 | 79,967.20 | | |
| | 3/31/10<br>308DM | CDJ | SIGNATURE BANK -<br>NET OFFICERS<br>PAYROLL TAXES -<br>APR 2010 | 42,130.57 | | |
| | 3/31/10<br>309DM | CDJ | SIGNATURE BANK -<br>ADP FEE - OFFICE<br>PAYROLL - 3/26/10 | 45.70 | | |
| | 3/31/10<br>J/E 2D | GENJ | PAYROLL DEDUCTED<br>ON 3/31/10 OFFICER<br>SALARY | | 42,130.57 | |
| | 3/31/10<br>J/E 2D | GENJ | PAYROLL DEDUCTED<br>ON 3/31/10 OFFICER<br>SALARY | | 79,967.20 | |
| | | | Current Period Change | 275,956.08 | 275,956.08 | |
| | 4/1/10 | | Beginning Balance | | | |
| | 4/1/10<br>0410OFFIC | GENJ | Officer Salaries -<br>Signature Bank  Net Pay | | 79,967.20 | |

6/22/11 at 14:44:32.40                                                                 Page: 126

## Elk Associates Funding Corporation
## General Ledger
## For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID / Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 1676 (cont.) | 4/1/10 0410OFFIC | GENJ | 0410 OFFICER SALARIES Officer Salaries - Signature Bank - ADP FEE 0410 OFFICER SALARIES | | 59.78 | |
| | 4/1/10 0410OFFIC | GENJ | Officer Salaries - Signature Bank - Taxes 0410 OFFICER SALARIES | | 42,130.57 | |
| | 4/1/10 J/E 2D | GENJ | PAYROLL DEDUCTED ON 3/31/10 OFFICER SALARY | 79,967.20 | | |
| | 4/1/10 J/E 2D | GENJ | PAYROLL DEDUCTED ON 3/31/10 OFFICER SALARY | 42,130.57 | | |
| | 4/7/10 401DM | CDJ | SIGNATURE BANK - ADP FEE - OFFICERS PAYROLL - APRIL 2010 | 59.78 | | |
| | 4/9/10 040910OF | GENJ | Office Salaries - Signature Bank - Taxes 040910 OFFICE SALARIES | | 1,639.15 | |
| | 4/9/10 040910OF | GENJ | Office Salaries - Signature Bank - ADP FEE 040910 OFFICE SALARIES | | 44.00 | |
| | 4/9/10 040910OF | GENJ | Office Salaries - Signature Bank - Net Pay 040910 OFFICE SALARIES | | 3,584.26 | |
| | 4/9/10 402DM | CDJ | SIGNATURE BANK - NET OFFICE PAYROLL - 4/9/10 | 3,584.26 | | |
| | 4/9/10 403DM | CDJ | SIGNATURE BANK - NET OFFICE PAYROLL TAXES - 4/9/10 | 1,639.15 | | |
| | 4/14/10 404DM | CDJ | SIGNATURE BANK - ADP FEE OFFICE PAYROLL 4/9/10 | 44.00 | | |
| | 4/16/10 405DM | CDJ | SIGNATURE BANK - NET OFFICE PAYROLL - 4/19/10 | 2,031.70 | | |
| | 4/16/10 406DM | CDJ | SIGNATURE BANK - NET OFFICE PAYROLL TAXES - 4/19/10 | 450.36 | | |
| | 4/19/10 041910OF | GENJ | Office Salaries - Signature Bank - Taxes 041910 OFFICE SALARIES | | 450.36 | |
| | 4/19/10 041910OF | GENJ | Office Salaries - Signature Bank - Net Pay 041910 OFFICE SALARIES | | 2,031.70 | |
| | 4/19/10 041910OF | GENJ | Office Salaries - Signature Bank - ADP FEE 041910 OFFICE SALARIES | | 40.60 | |
| | 4/21/10 407DM | CDJ | SIGNATURE BANK - ADP FEE - OFFICE PAYROLL 4/19/10 | 40.60 | | |
| | 4/22/10 408DM | CDJ | SIGNATURE BANK - NET OFFICE PAYROLL 4/22/10 | 3,121.16 | | |

6/22/11 at 14:44:32.43

## Elk Associates Funding Corporation
## General Ledger
## For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| | | | - 4/23/10 | | | |
| 1676 (cont.) | 4/22/10<br>409DM | CDJ | SIGNATURE BANK - NET OFFICE PAYROLL TAXES - 4/23/10 | 1,531.92 | | |
| | 4/22/10<br>410DM | CDJ | SIGNATURE BANK - ADP TAX ADJUSTMENT | 9.27 | | |
| | 4/22/10<br>042210AD | GENJ | Office Salaries - Signature Bank - Taxes 04/22/10 - FUTA/NYMET K GALLISHAW DISABILITY BENEFITS PD 1/26/10 | | 9.27 | |
| | 4/23/10<br>042310OF | GENJ | Office Salaries - Signature Bank - Net Pay  042310 OFFICE SALARIES | | 3,121.16 | |
| | 4/23/10<br>042310OF | GENJ | Office Salaries - Signature Bank - Taxes 042310 OFFICE SALARIES | | 1,531.92 | |
| | 4/23/10<br>042310OF | GENJ | Office Salaries - Signature Bank - ADP FEE 042310 OFFICE SALARIES | | 42.30 | |
| | 4/28/10<br>411DM | CDJ | SIGNATURE BANK - ADP FEE - OFFICE PAYROLL 4/23/10 | 42.30 | | |
| | 4/30/10<br>412DM | CDJ | SIGNATURE BANK - NET OFFICERS PAYROLL - MAY 2010 | 81,200.35 | | |
| | 4/30/10<br>413DM | CDJ | SIGNATURE BANK - NET OFFICERS PAYROLL TAXES - MAY 2010 | 39,664.27 | | |
| | 4/30/10<br>J/E 2D | GENJ | To record Prepaid Payroll | | 81,200.35 | |
| | 4/30/10<br>J/E 2D | GENJ | To record Prepaid Payroll | | 39,664.27 | |
| | | | Current Period Change | 255,516.89 | 255,516.89 | |
| | 5/1/10 | | Beginning Balance | | | |
| | 5/1/10<br>J/E 2D | GENJ | To record Prepaid Payroll | 39,664.27 | | |
| | 5/1/10<br>J/E 2D | GENJ | To record Prepaid Payroll | 81,200.35 | | |
| | 5/3/10<br>0510OFFIC | GENJ | Officer Salaries - Signature Bank - Taxes 05/10 OFFICERS SALARIES | | 39,664.27 | |
| | 5/3/10<br>0510OFFIC | GENJ | Officer Salaries - Signature Bank  Net Pay 05/10 OFFICERS OFFICERS | | 81,200.35 | |
| | 5/3/10<br>0510OFFIC | GENJ | Officer Salaries - Signature Bank - ADP FEE 05/10 OFFICERS SALARIES | | 49.28 | |
| | 5/5/10<br>501DM | CDJ | SIGNATURE BANK - ADP FEE - OFFICERS PAYROLL - MAY 2010 | 49.28 | | |

6/22/11 at 14:44:32.48                                                                          Page: 128

## Elk Associates Funding Corporation
## General Ledger
## For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 1676 (cont.) | 5/6/10<br>502DM | CDJ | SIGNATURE BANK - NET OFFICE PAYROLL - 5/7/10 | 3,178.88 | | |
| | 5/6/10<br>503DM | CDJ | SIGNATURE BANK - NET OFFICE PAYROLL TAXES - 5/7/10 | 1,495.48 | | |
| | 5/7/10<br>050710OF | GENJ | Office Salaries - Signature Bank - ADP FEE 05/07/10 OFFICE SALARIES | | 42.30 | |
| | 5/7/10<br>050710OF | GENJ | Office Salaries - Signature Bank - Net Pay 05/07/10 OFFICE SALARIES | | 3,178.88 | |
| | 5/7/10<br>050710OF | GENJ | Office Salaries - Signature Bank - Taxes 05/07/10 OFFICE SALARIES | | 1,495.48 | |
| | 5/12/10<br>504DM | CDJ | SIGNATURE BANK - ADP FEE - OFFICE SALARIES - 5/7/10 | 42.30 | | |
| | 5/21/10<br>052110OF | GENJ | Office Salaries - Signature Bank - ADP FEE 052110 OFFICE SALARIES | | 42.30 | |
| | 5/21/10<br>052110OF | GENJ | Office Salaries - Signature Bank - Taxes 052110 OFFICE SALARIES | | 1,478.47 | |
| | 5/21/10<br>052110OF | GENJ | Office Salaries - Signature Bank - Net Pay 052110 OFFICE SALARIES | | 3,172.47 | |
| | 5/21/10<br>505DM | CDJ | SIGNATURE BANK - NET OFFICE PAYROLL - 5/21/10 | 3,172.47 | | |
| | 5/21/10<br>506DM | CDJ | SIGNATURE BANK - NET OFFICE PAYROLL TAXES - 5/21/10 | 1,478.47 | | |
| | 5/26/10<br>507DM | CDJ | SIGNATURE BANK - ADP FEE - OFFICE SALARIES - 5/21/10 | 42.30 | | |
| | 5/28/10<br>508DM | CDJ | SIGNATURE BANK - NET OFFICERS PAYROLL - JUNE 2010 | 81,200.33 | | |
| | 5/28/10<br>509DM | CDJ | SIGNATURE BANK - NET OFFICERS PAYROLL TAXES - JUNE 2010 | 39,664.31 | | |
| | 5/31/10<br>J/E 2D | GENJ | To record Prepaid Payroll | | 81,200.33 | |
| | 5/31/10<br>J/E 2D | GENJ | To record Prepaid Payroll | | 39,664.31 | |
| | | | Current Period Change | 251,188.44 | 251,188.44 | |
| | 6/1/10 | | Beginning Balance | | | |
| | 6/1/10<br>0610OFFIC | GENJ | Officer Salaries - Signature Bank - ADP FEE 06/10 OFFICER SALARIES | | 49.28 | |
| | 6/1/10<br>0610OFFIC | GENJ | Officer Salaries - Signature Bank Net Pay 06/10 OFFICER | | 81,200.33 | |

6/22/11 at 14:44:32.51

## Elk Associates Funding Corporation
## General Ledger
## For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 1676 (cont.) | 6/1/10 0610OFFIC | GENJ | 06/10 OFFICER SALARIES Officer Salaries - Signature Bank - Taxes 06/10 OFFICER SALARIES | | 39,664.31 | |
| | 6/1/10 J/E 2D | GENJ | To record Prepaid Payroll | 81,200.33 | | |
| | 6/1/10 J/E 2D | GENJ | To record Prepaid Payroll | 39,664.31 | | |
| | 6/3/10 601DM | CDJ | SIGNATURE BANK - ADP FEE - OFFICERS PAYROLL - JUNE 2010 | 49.28 | | |
| | 6/3/10 602DM | CDJ | SIGNATURE BANK - NET OFFICE PAYROLL TAXES - 6/4/10 | 1,431.88 | | |
| | 6/4/10 603DM | CDJ | SIGNATURE BANK - NET OFFICE PAYROLL - 6/4/10 | 3,121.16 | | |
| | 6/4/10 060410OF | GENJ | Office Salaries - Signature Bank - Net Pay 060410 OFFICE SALARIES | | 3,121.16 | |
| | 6/4/10 060410OF | GENJ | Office Salaries - Signature Bank - Taxes 060410 OFFICE SALARIES | | 1,431.88 | |
| | 6/4/10 060410OF | GENJ | Office Salaries - Signature Bank - ADP FEE 060410 OFFICE SALARIES | | 42.30 | |
| | 6/8/10 060810SU | GENJ | Office Salaries - Signature Bank - Net Pay ADJUST SUTA PER ADP | 5.42 | | |
| | 6/8/10 608CM | CRJ | MISCELLANEOUS DEPOSIT - OFFICE PAYROLL - ADJUST SUTA PER ADP | | 5.42 | |
| | 6/10/10 605DM | CDJ | SIGNATURE BANK - ADP FEE - OFFICE PAYROLL 6/4/10 | 42.30 | | |
| | 6/15/10 606DM | CDJ | SIGNATURE BANK - ADP TAX FEE ON SALARY ADJUSTMENT M.FEINSOD | 245.77 | | |
| | 6/16/10 607DM | CDJ | SIGNATURE BANK - SALARY ADJUSTMENT M.FEINSOD | 2,879.07 | | |
| | 6/16/10 061610OF | GENJ | Officer Salaries - Signature Bank - Taxes - 6/16/10 ADJUST M FEINSOD 5/28/10 - 6/30/10 | | 245.77 | |
| | 6/16/10 061610OF | GENJ | Officer Salaries - Signature Bank  Net Pay 6/16/10 ADJUST M FEINSOD 5/28/10 - 6/30/10 | | 2,879.07 | |
| | 6/16/10 061610OF | GENJ | Officer Salaries - Signature Bank - ADP FEE 06/16/10 ADJUST M FEINSOD 5/28/10 - | | 40.60 | |

6/22/11 at 14:44:32.55

Page: 130

# Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| | | | 6/30/10 | | | |
| 1676 (cont.) | 6/17/10<br>608DM | CDJ | SIGNATURE BANK -<br>NET OFFICE PAYROLL<br>6/18/10 | 3,121.16 | | |
| | 6/17/10<br>609DM | CDJ | SIGNATURE BANK -<br>NET OFFICE PAYROLL<br>TAXES 6/18/10 | 1,431.88 | | |
| | 6/18/10<br>061810OF | GENJ | Office Salaries -<br>Signature Bank - Taxes<br>6/18/10 OFFICE<br>PAYROLL | | 1,431.88 | |
| | 6/18/10<br>061810OF | GENJ | Office Salaries -<br>Signature Bank - ADP<br>FEE 6/18/10 OFFICE<br>PAYROLL | | 42.30 | |
| | 6/18/10<br>061810OF | GENJ | Office Salaries -<br>Signature Bank - Net<br>Pay  6/18/10 OFFICE<br>PAYROLL | | 3,121.16 | |
| | 6/23/10<br>610DM | CDJ | SIGNATURE BANK -<br>ADP FEE<br>ADJUSTMENT -M.<br>FEINSOD  5/28/10 -<br>6/30/10 | 40.60 | | |
| | 6/23/10<br>611DM | CDJ | SIGNATURE BANK -<br>ADP FEE - OFFICE<br>PAYROLL 6/18/10 | 42.30 | | |
| | 6/30/10<br>612DM | CDJ | SIGNATURE BANK -<br>NET OFFICER'S<br>PAYROLL - JULY 2010 | 72,512.88 | | |
| | 6/30/10<br>613DM | CDJ | SIGNATURE BANK -<br>NET OFFICER'S<br>PAYROLL TAXES -<br>JULY 2010 | 35,196.61 | | |
| | 6/30/10<br>J/E 2D | GENJ | To record Prepaid<br>Payroll | | 72,512.88 | |
| | 6/30/10<br>J/E 2D | GENJ | To record Prepaid<br>Payroll | | 35,196.61 | |
| | | | Current Period Change | 240,984.95 | 240,984.95 | |
| | **6/30/10** | | **Ending Balance** | | | |
| 1699.00<br>DUE FROM AMERIT | 7/1/09 | | Beginning Balance | | | 418,595.48 |
| | 7/21/09<br>0721D01 | CRJ | MISCELLANEOUS<br>DEPOSIT -<br>REIMBURSEMENT<br>M.FEINSOD SALARY -<br>JULY 09 | | 34,220.42 | |
| | 7/31/09<br>0731D03 | CRJ | MISCELLANEOUS<br>DEPOSIT -<br>REIMBURSEMENT OF<br>INTERCOMPANY<br>EXPENSES THROUGH<br>3/31/09 | | 263,380.43 | |
| | 7/31/09<br>0731D05 | CRJ | MISCELLANEOUS<br>DEPOSIT - D/I/T 8/4/09<br>- REIMBURSEMENT<br>M.FEINSOD SALARY -<br>AUG 09 | | 34,220.42 | |
| | | | Current Period Change | | 331,821.27 | -331,821.27 |

6/22/11 at 14:44:32.59                                                                                           Page: 131

# Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 1699.00 (cont.) | 8/1/09 | | Beginning Balance | | | 86,774.21 |
| | 9/1/09 | | Beginning Balance | | | 86,774.21 |
| | 9/15/09<br>0915D02 | CRJ | MISCELLANEOUS DEPOSIT - AMTC REIMBURSEMENT - M.FEINSOD SALARY - SEP 09 | | 34,220.42 | |
| | 9/30/09<br>0930D01 | CRJ | MISCELLANEOUS DEPOSIT - D/I/T 10/6/09 AMTC REIMBURSEMENT - M.FEINSOD SALARY - OCT 09 | | 34,220.38 | |
| | 9/30/09<br>J/E 2BZ1 | GENJ | To allocate additional costs to Ameritrans | 214,630.00 | | |
| | | | Current Period Change | 214,630.00 | 68,440.80 | 146,189.20 |
| | 10/1/09 | | Beginning Balance | | | 232,963.41 |
| | 11/1/09 | | Beginning Balance | | | 232,963.41 |
| | 11/9/09<br>1109D02 | CRJ | MISCELLANEOUS DEPOSIT - AMTC REIMBURSEMENT M.FEINSOD SALARY - NOV 09 | | 35,070.88 | |
| | 11/25/09<br>1125D04 | CRJ | MISCELLANEOUS DEPOSIT - AMTC SALARY REIMBURSEMENT M.FEINSOD - DEC 09 | | 35,070.88 | |
| | | | Current Period Change | | 70,141.76 | -70,141.76 |
| | 12/1/09 | | Beginning Balance | | | 162,821.65 |
| | 12/31/09<br>J/E 2 BZ | GENJ | TO ALLOCATE ADD'L COSTS TO AMERITRANS | 221,724.00 | | |
| | | | Current Period Change | 221,724.00 | | 221,724.00 |
| | 1/1/10 | | Beginning Balance | | | 384,545.65 |
| | 1/20/10<br>0120D01 | CRJ | MISCELLANEOUS DEPOSIT - AMTC EXPENSE REIMBURSEMENT 12/31/09 | | 162,821.65 | |
| | 1/21/10<br>0121D01 | CRJ | MISCELLANEOUS DEPOSIT - AMTC REIMBURSEMENT M.FEINSOD SALARY - JAN 2010 | | 37,048.68 | |
| | 1/29/10<br>0129D02 | CRJ | MISCELLANEOUS DEPOSIT - AMTC REIMBURSEMENT - M.FEINSOD SALARY - FEB 2010 | | 37,048.68 | |
| | | | Current Period Change | | 236,919.01 | -236,919.01 |
| | 2/1/10 | | Beginning Balance | | | 147,626.64 |

6/22/11 at 14:44:32.62

## Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 1699.00 (cont.) | 2/28/10 0228D02 | CRJ | MISCELLANEOUS DEPOSIT - D/I/T 3/2/10 - AMTC REIMBURSEMENT M.FEINSOD SALARY - MARCH 2010 | | 37,048.68 | |
| | | | Current Period Change | | 37,048.68 | -37,048.68 |
| | 3/1/10 | | Beginning Balance | | | 110,577.96 |
| | 3/31/10 J/E 2BZ | GENJ | To allocate costs to AMTC | 202,658.00 | | |
| | | | Current Period Change | 202,658.00 | | 202,658.00 |
| | 4/1/10 | | Beginning Balance | | | 313,235.96 |
| | 4/6/10 0406D01 | CRJ | MISCELLANEOUS DEPOSIT - AMTC REIMBURSEMENT FOR M.FEINSOD SALARY - APR 2010 | | 35,740.84 | |
| | | | Current Period Change | | 35,740.84 | -35,740.84 |
| | 5/1/10 | | Beginning Balance | | | 277,495.12 |
| | 5/11/10 0511D01 | CRJ | MISCELLANEOUS DEPOSIT - AMTC REIMBURSEMENT - M.FEINSOD SALARY - MAY 2010 | | 35,070.88 | |
| | | | Current Period Change | | 35,070.88 | -35,070.88 |
| | 6/1/10 | | Beginning Balance | | | 242,424.24 |
| | 6/8/10 0608D02 | CRJ | MISCELLANEOUS DEPOSIT - AMTC REIMBURSEMENT FOR M.FEINSOD SALARY - JUNE 2010 | | 35,070.88 | |
| | 6/30/10 J/E 2 BZ | GENJ | TO ALLOCATE ADD'L COSTS TO AMERITRANS | 382,846.00 | | |
| | | | Current Period Change | 382,846.00 | 35,070.88 | 347,775.12 |
| | **6/30/10** | | **Ending Balance** | | | **590,199.36** |
| 2000 ACCRUED EXPENSE | 7/1/09 | | Beginning Balance | | | -160,320.69 |
| | 7/1/09 J/E 2W2 | GENJ | To accrue for June 2009 | 161,287.35 | | |
| | 7/1/09 J/E 2W3 | GENJ | To accrue Fireman's fund | 17,367.34 | | |
| | 7/1/09 AJE23 | GENJ | To accrue PIK Interest Fee | 15,166.00 | | |
| | 7/1/09 J/E 2W4 | GENJ | To adjust RSSM accrual to actual | | 33,500.00 | |
| | 7/31/09 J/E 2W2 | GENJ | To accrue expenses for July 2009 | | 129,627.09 | |
| | | | Current Period Change | 193,820.69 | 163,127.09 | 30,693.60 |
| | 8/1/09 | | Beginning Balance | | | -129,627.09 |

6/22/11 at 14:44:32.66

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 2000 (cont.) | 8/1/09<br>J/E 2W2 | GENJ | To accrue expenses for July 2009 | 129,627.09 | | |
| | 8/31/09<br>J/E 2 W2 | GENJ | TO ACCRUE FOR AUGUST 2009 | | 147,948.45 | |
| | | | Current Period Change | 129,627.09 | 147,948.45 | -18,321.36 |
| | 9/1/09 | | Beginning Balance | | | -147,948.45 |
| | 9/1/09<br>J/E 2 W2 | GENJ | TO ACCRUE FOR AUGUST 2009 | 147,948.45 | | |
| | 9/30/09<br>J/E 2W2 | GENJ | To accrue for Sept 09 | | 103,503.55 | |
| | 9/30/09<br>AJE8 | GENJ | To accrue Charlie Brown PIK Interest due at maturity | | 20,277.00 | |
| | | | Current Period Change | 147,948.45 | 123,780.55 | 24,167.90 |
| | 10/1/09 | | Beginning Balance | | | -123,780.55 |
| | 10/1/09<br>J/E 2W2 | GENJ | To accrue for Sept 09 | 103,503.55 | | |
| | 10/1/09<br>AJE8 | GENJ | To accrue Charlie Brown PIK Interest due at maturity | 20,277.00 | | |
| | 10/31/09<br>J/E 2W2 | GENJ | To accrue for Oct 2009 | | 96,563.85 | |
| | 10/31/09<br>AJE10 | GENJ | To accrue Charle Brown PIK interest due at maturity | | 21,832.66 | |
| | | | Current Period Change | 123,780.55 | 118,396.51 | 5,384.04 |
| | 11/1/09 | | Beginning Balance | | | -118,396.51 |
| | 11/1/09<br>J/E 2W2 | GENJ | To accrue for Oct 2009 | 96,563.85 | | |
| | 11/1/09<br>AJE10 | GENJ | To accrue Charle Brown PIK interest due at maturity | 21,832.66 | | |
| | 11/30/09<br>AJE8 | GENJ | To accrue Charlie Brown PIK Interest due at maturity | | 23,499.00 | |
| | 11/30/09<br>J/E 2W2 | GENJ | To accrue for November 2009 | | 82,533.33 | |
| | | | Current Period Change | 118,396.51 | 106,032.33 | 12,364.18 |
| | 12/1/09 | | Beginning Balance | | | -106,032.33 |
| | 12/1/09<br>AJE8 | GENJ | To accrue Charlie Brown PIK Interest due at maturity | 23,499.00 | | |
| | 12/1/09<br>J/E 2W2 | GENJ | To accrue for November 2009 | 82,533.33 | | |
| | 12/31/09<br>AJE8 | GENJ | To accrue Charlie Brown PIK interest due at maturity | | 25,165.99 | |
| | 12/31/09<br>J/E 2W2 | GENJ | To accrue for Dec 09 | | 96,738.86 | |
| | | | Current Period Change | 106,032.33 | 121,904.85 | -15,872.52 |
| | 1/1/10 | | Beginning Balance | | | -121,904.85 |
| | 1/1/10<br>AJE8 | GENJ | To accrue Charlie Brown PIK interest due at maturity | 25,165.99 | | |

## Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 2000 (cont.) | 1/1/10 J/E 2W2 | GENJ | To accrue for Dec 09 | 96,738.86 | | |
| | 1/31/10 AJE8 | GENJ | To accrue Charlie Brown PIK interest due at maturity | | 26,832.00 | |
| | 1/31/10 J/E 2W2 | GENJ | To accrue for Jan 2010 | | 90,290.93 | |
| | | | Current Period Change | 121,904.85 | 117,122.93 | 4,781.92 |
| | 2/1/10 | | Beginning Balance | | | -117,122.93 |
| | 2/1/10 AJE8 | GENJ | To accrue Charlie Brown PIK interest due at maturity | 26,832.00 | | |
| | 2/1/10 J/E 2W2 | GENJ | To accrue for Jan 2010 | 90,290.93 | | |
| | 2/28/10 AJE8 | GENJ | To accrue Charlie Brown PIK interest due at maturity | | 28,499.00 | |
| | 2/28/10 J/E 2W2 | GENJ | To accrue for Feb 2010 | | 80,946.68 | |
| | | | Current Period Change | 117,122.93 | 109,445.68 | 7,677.25 |
| | 3/1/10 | | Beginning Balance | | | -109,445.68 |
| | 3/1/10 AJE8 | GENJ | To accrue Charlie Brown PIK interest due at maturity | 28,499.00 | | |
| | 3/1/10 J/E 2W2 | GENJ | To accrue for Feb 2010 | 80,946.68 | | |
| | 3/31/10 J/E 2W2 | GENJ | To accrue for March 2010 | | 105,257.05 | |
| | 3/31/10 AJE8 | GENJ | To accrue Charlie Brown PIK interest due at maturity | | 30,165.00 | |
| | 3/31/10 AJE10 | GENJ | To accrue 3/4 of pay defferal of $33,725 | | 25,294.00 | |
| | | | Current Period Change | 109,445.68 | 160,716.05 | -51,270.37 |
| | 4/1/10 | | Beginning Balance | | | -160,716.05 |
| | 4/1/10 J/E 2W2 | GENJ | To accrue for March 2010 | 105,257.05 | | |
| | 4/1/10 AJE8 | GENJ | To accrue Charlie Brown PIK interest due at maturity | 30,165.00 | | |
| | 4/1/10 AJE10 | GENJ | To accrue 3/4 of pay defferal of $33,725 | 25,294.00 | | |
| | 4/30/10 AJE10 | GENJ | To accrue 3/4 pay defferal of $33,725 - to be adjusted at end of quarter | | 25,294.00 | |
| | 4/30/10 AJE8 | GENJ | To accrue Charlie Browns PIK interest due at maturity | | 31,831.00 | |
| | 4/30/10 J/E 2W2 | GENJ | To accrue for April 2010 | | 83,587.57 | |
| | | | Current Period Change | 160,716.05 | 140,712.57 | 20,003.48 |
| | 5/1/10 | | Beginning Balance | | | -140,712.57 |
| | 5/1/10 | GENJ | To accrue 3/4 pay defferal of $33,725 - to | 25,294.00 | | |

6/22/11 at 14:44:32.74

## Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 2000 (cont.) | AJE10 | | deferral of $33,725 - to be adjusted at end of quarter | | | |
| | 5/1/10 AJE8 | GENJ | To accrue Charlie Browns PIK interest due at maturity | 31,831.00 | | |
| | 5/1/10 J/E 2W2 | GENJ | To accrue for April 2010 | 83,587.57 | | |
| | 5/31/10 J/E 2W2 | GENJ | To accrue for May 2010 | | 91,906.72 | |
| | 5/31/10 AJE8 | GENJ | To accrue Charlie Brown PIK interest due at maturity | | 26,833.00 | |
| | 5/31/10 AJE10 | GENJ | To accrue 11/12 of pay deferral of $33,725 | | 30,915.00 | |
| | | | Current Period Change | 140,712.57 | 149,654.72 | -8,942.15 |
| | 6/1/10 | | Beginning Balance | | | -149,654.72 |
| | 6/1/10 J/E 2W2 | GENJ | To accrue for May 2010 | 91,906.72 | | |
| | 6/1/10 AJE8 | GENJ | To accrue Charlie Brown PIK interest due at maturity | 26,833.00 | | |
| | 6/1/10 AJE10 | GENJ | To accrue 11/12 of pay deferral of $33,725 | 30,915.00 | | |
| | 6/30/10 AJE10 | GENJ | To accrue pay deferral of $33,725 | | 33,725.00 | |
| | 6/30/10 J/E 2W2 | GENJ | To accrue for June 2010 | | 132,556.12 | |
| | 6/30/10 AJE8 | GENJ | To accrue Charlie Brown PIK interest due at maturity | | 26,833.00 | |
| | | | Current Period Change | 149,654.72 | 193,114.12 | -43,459.40 |
| | 6/30/10 | | **Ending Balance** | | | -193,114.12 |
| 2000.7 ACCOUNTS PAYABL | 7/1/09 | | Beginning Balance | | | -33,069.20 |
| | 7/1/09 JULY 09 | PJ | MEDALLION FUNDING CORP. AS SER | | 1,323.19 | |
| | 7/1/09 JULY 09 | PJ | MEDALLION FUNDING CORP. AS SER | | 1,262.03 | |
| | 7/1/09 27043 | CDJ | MEDALLION FUNDING CORP. AS SER - Invoice: JULY 09 - MONTHLY PAYMENT JULY 09 - ST. FIRMIN MICHEL | 1,323.19 | | |
| | 7/1/09 27044 | CDJ | MEDALLION FUNDING CORP. AS SER - Invoice: JULY 09 - MONTHLY PAYMENT JULY 09 - CHARLES LAURISTON | 1,262.03 | | |
| | 7/2/09 070209 | PJ | SURGE ELECTRONIC MEDIA GROUP L | | 8,000.00 | |
| | 7/2/09 27045 | CDJ | SURGE ELECTRONIC MEDIA GROUP L - Invoice: 070209 - HOSTED FILE SERVER 50% DEPOSIT, ONE MONTHLY FEE ONE | 8,000.00 | | |

# Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 2000.7 (cont.) | 7/2/09<br>27046 | CDJ | MONTH FEE, ONE MONTH DEPOSIT<br>AMERICAN EXPRESS - Invoice: 062209 - 062209 | 1,408.29 | | |
| | 7/2/09<br>27047 | CDJ | BLOOMBERG FINANCE LP - Invoice: 5600458893 - 5600458593 | 6,177.38 | | |
| | 7/2/09<br>27048 | CDJ | BLOOMBERG FINANCE LP - Invoice: 5600458591 - 5600458591 | 1,154.25 | | |
| | 7/2/09<br>27049 | CDJ | BLOOMBERG FINANCE LP - Invoice: 5600458592 - 5600458592 | 14.13 | | |
| | 7/2/09<br>27050 | CDJ | CABLEVISION - Invoice: 062309 - 06/23/09 - 07/22/09 | 49.95 | | |
| | 7/2/09<br>27051 | CDJ | LAW OFFICES OF JACOB FISHMAN - Invoice: 0624 ANGRAND - SERVICES THROUGH 6/24/09 RE: CLAUDE ANGRAND | 2,500.00 | | |
| | 7/2/09<br>27052 | CDJ | Gary C. Granoff - Invoice: 062909 - BALANCE DUE FOR REIMBURSABLES AT 6/30/09 | 49.33 | | |
| | 7/2/09<br>27053 | CDJ | STEPHEN H. TARNOFSKY CPA - Invoice: 062909 - 062909 | 6,600.00 | | |
| | 7/2/09<br>27054 | CDJ | T-MOBILE - Invoice: 062309 - (646) 339-3027 | 82.99 | | |
| | 7/2/09<br>27055 | CDJ | TRANSITCENTER INC. - Invoice: 062909 - TRANSIT CHECK METRO CARDS | 2,782.03 | | |
| | 7/2/09<br>27056 | CDJ | VERIZON - Invoice: 061909 - (718) 609-0771 | 272.27 | | |
| | 7/2/09<br>27057 | CDJ | GRANOFF WALKER FORLENZA PC - Invoice: 15578 - 15578 - PWT HOLDINGS INC. | 450.00 | | |
| | 7/2/09<br>27058 | CDJ | PETER BOOCKVAR - Invoice: 0618BDMTG - SPECIAL BOARD MEETING BY CONFERENCE CALL 6/18/09 | 1,000.00 | | |
| | 7/2/09<br>27059 | CDJ | STEVEN ETRA - Invoice: 0618BDMTG - SPECIAL BOARD MEETING BY CONFERENCE CALL 6/18/09 | 1,000.00 | | |
| | 7/2/09<br>27060 | CDJ | HOWARD SOMMER - Invoice: 0618BDMTG - SPECIAL BOARD | 1,000.00 | | |

6/22/11 at 14:44:32.82                                                      Page: 137

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 2000.7 (cont.) | 7/2/09 27061 | CDJ | SPECIAL BOARD MEETING BY CONFERENCE CALL 6/18/09 JOHN R. LAIRD - Invoice: 0618BDMTG - SPECIAL BOARD MEETING BY CONFERENCE CALL 6/18/09 | 1,000.00 | | |
| | 7/2/09 27062 | CDJ | PRIDES CAPITAL LLC - Invoice: 0618BDMTG - SPECIAL BOARD MEETING BY CONFERENCE CALL 6/18/09 | 1,000.00 | | |
| | 7/2/09 27063 | CDJ | IVAN WOLPERT - Invoice: 0618BDMTG - SPECIAL BOARD MEETING BY CONFERENCE CALL 6/18/09 | 1,000.00 | | |
| | 7/4/09 070409 | PJ | VERIZON | | 527.70 | |
| | 7/6/09 06909814 | PJ | TRANS UNION | | 43.35 | |
| | 7/8/09 090044489 | PJ | ARIZONA DEPT OF REVENUE | | 54.05 | |
| | 7/8/09 15599 | PJ | GRANOFF WALKER FORLENZA PC | | 26,612.76 | |
| | 7/9/09 070809 | PJ | STURSBERG AND ASSOCIATES LLC | | 3,902.11 | |
| | 7/9/09 27075 | CDJ | GRANOFF WALKER FORLENZA PC - Invoice: 15599 - 15599 7/09 | 26,612.76 | | |
| | 7/10/09 154 | PJ | TRUE TYPE PRINTING CO. INC. | | 4,386.39 | |
| | 7/10/09 27023V | CDJ | THE FLORIDA BAR - Invoice: 2009-2010 - 2009-2010 ANNUAL MEMBERSHIP FEES - GARY C. GRANOFF | | 360.00 | |
| | 7/10/09 A206 | PJ | CLAREWOOD CONSULTING LLC | | 10,000.00 | |
| | 7/10/09 A301 | PJ | CLAREWOOD CONSULTING LLC | | 676.29 | |
| | 7/10/09 IT901 | PJ | CLAREWOOD CONSULTING LLC | | 1,331.25 | |
| | 7/10/09 063009 | PJ | CAFE BASIL | | 33.26 | |
| | 7/10/09 071009 | PJ | STEPHEN H. TARNOFSKY CPA | | 6,600.00 | |
| | 7/11/09 AUG 09 | PJ | EMPIRE HEALTH CHOICE HMO | | 4,544.54 | |
| | 7/14/09 27076 | CDJ | THE FLORIDA BAR - Invoice: 2009-2010 - 2009-2010 ANNUAL MEMBERSHIP FEES - GARY C. GRANOFF | 380.00 | | |
| | 7/15/09 JUNE 09 | PJ | ROSEN SEYMOUR SHAPSS | | 11,789.30 | |
| | 7/15/09 | PJ | AETNA US HEALTHCARE | | 893.00 | |

6/22/11 at 14:44:32.87

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 2000.7 (cont.) | A6559693 | | HEALTHCARE | | | |
| | 7/16/09<br>0417455 | PJ | THE WEEKS-LERMAN<br>GROUP | | 75.59 | |
| | 7/16/09<br>0417473 | PJ | THE WEEKS-LERMAN<br>GROUP | | 93.74 | |
| | 7/17/09<br>000315752 | PJ | FIREMAN FUND | | 17,367.34 | |
| | 7/17/09<br>0709 REIM | PJ | MARGARET CHANCE | | 97.86 | |
| | 7/17/09<br>34753283 | PJ | OXFORD HEALTH<br>PLANS | | 5,746.08 | |
| | 7/17/09<br>071809 | PJ | TIME WARNER CABLE<br>OF NYC | | 79.69 | |
| | 7/17/09<br>0418582 | PJ | THE WEEKS-LERMAN<br>GROUP | | 78.30 | |
| | 7/19/09<br>071909 | PJ | VERIZON | | 271.17 | |
| | 7/20/09<br>5-630-6706 | PJ | FEDERAL EXPRESS | | 49.42 | |
| | 7/20/09<br>339 | PJ | PPCP INC. | | 225.00 | |
| | 7/20/09<br>9-266-8459 | PJ | FEDERAL EXPRESS | | 173.85 | |
| | 7/22/09<br>072209 #1 | PJ | JOHN R. LAIRD | | 1,250.00 | |
| | 7/22/09<br>072209 #2 | PJ | JOHN R. LAIRD | | 1,250.00 | |
| | 7/22/09<br>072209 #3 | PJ | IVAN WOLPERT | | 1,000.00 | |
| | 7/22/09<br>072209 #4 | PJ | IVAN WOLPERT | | 1,000.00 | |
| | 7/22/09<br>072209 #5 | PJ | STEVEN ETRA | | 1,000.00 | |
| | 7/22/09<br>072209 #6 | PJ | STEVEN ETRA | | 1,000.00 | |
| | 7/22/09<br>072209 #7 | PJ | JOHN R. LAIRD | | 1,250.00 | |
| | 7/22/09<br>072209 #8 | PJ | PETER BOOCKVAR | | 1,000.00 | |
| | 7/22/09<br>072209 #9 | PJ | HOWARD SOMMER | | 1,000.00 | |
| | 7/22/09<br>27077 | CDJ | JOHN R. LAIRD -<br>Invoice: 072209 #1 -<br>07/22/09<br>COMPENSATION<br>COMMITTEE MTG | 1,250.00 | | |
| | 7/22/09<br>27078 | CDJ | JOHN R. LAIRD -<br>Invoice: 072209 #2 -<br>6/4/09<br>COMPENSATION<br>COMMITTEE MTG | 1,250.00 | | |
| | 7/22/09<br>27082 | CDJ | IVAN WOLPERT -<br>Invoice: 072209 #3 -<br>7/22/09<br>COMPENSATION<br>COMMITTEE MTG | 1,000.00 | | |
| | 7/22/09<br>27083 | CDJ | IVAN WOLPERT -<br>Invoice: 072209 #4 -<br>6/4/09<br>COMPENSATION<br>COMMITTEE MTG | 1,000.00 | | |
| | 7/22/09<br>27080 | CDJ | STEVEN ETRA -<br>Invoice: 072209 #5 -<br>7/22/09 | 1,000.00 | | |

6/22/11 at 14:44:32.90

Page: 139

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID / Account Description | Date / Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 2000.7 (cont.) | 7/22/09 27081 | CDJ | 7/22/09 COMPENSATION COMMITTEE MTG STEVEN ETRA - Invoice: 072209 #6 - 6/4/09 | 1,000.00 | | |
| | 7/22/09 27079 | CDJ | COMPENSATION COMMITTEE MTG JOHN R. LAIRD - Invoice: 072209 #7 - 7/22/09 AUDIT | 1,250.00 | | |
| | 7/22/09 27084 | CDJ | COMMITTEE MTG PETER BOOCKVAR - Invoice: 072209 #8 - 7/22/09 AUDIT | 1,000.00 | | |
| | 7/22/09 27085 | CDJ | COMMITTEE MTG HOWARD SOMMER - Invoice: 072209 #9 - 7/22/09 AUDIT COMMITTEE MTG | 1,000.00 | | |
| | 7/22/09 072209 | PJ | AMERICAN EXPRESS | | 1,572.49 | |
| | 7/23/09 072309 | PJ | T-MOBILE | | 19.24 | |
| | 7/27/09 072709 | PJ | STEPHEN H. TARNOFSKY CPA | | 8,800.00 | |
| | 7/27/09 072709 | PJ | MARGARET CHANCE | | 84.78 | |
| | 7/27/09 AUG 09 | PJ | ROBERT MAZLIACH | | 255.56 | |
| | 7/27/09 07909635 | PJ | TRANS UNION | | 43.35 | |
| | 7/28/09 BDMTG 07 | PJ | HOWARD SOMMER | | 1,000.00 | |
| | 7/28/09 BDMTG 07 | PJ | STEVEN ETRA | | 1,000.00 | |
| | 7/28/09 BDMTG 07 | PJ | JOHN R. LAIRD | | 1,000.00 | |
| | 7/28/09 BDMTG 07 | PJ | PETER BOOCKVAR | | 1,000.00 | |
| | 7/28/09 BDMTG 07 | PJ | IVAN WOLPERT | | 1,000.00 | |
| | 7/28/09 BDMTG 07 | PJ | PRIDES CAPITAL LLC | | 1,000.00 | |
| | 7/28/09 072809 | PJ | STAPLES | | 355.98 | |
| | 7/29/09 27086 | CDJ | AETNA US HEALTHCARE - Invoice: A6559693 - A6559693 - E.WALKER - AUG 09 | 893.00 | | |
| | 7/29/09 27087 | CDJ | ARIZONA DEPT OF REVENUE - Invoice: 09004448997 - 09004448997 | 54.05 | | |
| | 7/29/09 27088 | CDJ | CAFE BASIL - Invoice: 063009 - JUNE 09 | 33.26 | | |
| | 7/29/09 27089 | CDJ | MARGARET CHANCE - Invoice: 0709 REIMBURSE - REIMBURSEMENT OF EXPENSES 7/1-7/8 | 97.86 | | |
| | 7/29/09 | CDJ | MARGARET CHANCE - Invoice: 070700 | 84.78 | | |

6/22/11 at 14:44:32.95                                                                         Page: 140

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 2000.7 (cont.) | 27090 | | Invoice: 072709 - REIMBURSEMENT OF EXPENSES 7/18-7/27 | | | |
| | 7/29/09<br>27091 | CDJ | Continental Stock Transfer & - Invoice: 136089 - 136089 | 933.57 | | |
| | 7/29/09<br>27092 | CDJ | EMPIRE HEALTH CHOICE HMO - Invoice: AUG 09 - AUG 09 | 4,544.54 | | |
| | 7/29/09<br>27093 | CDJ | FEDERAL EXPRESS - Invoice: 5-630-67066 - 5-630-67066 | 49.42 | | |
| | 7/29/09<br>27094 | CDJ | FEDERAL EXPRESS - Invoice: 9-266-84590 - 9-266-84590 | 173.85 | | |
| | 7/29/09<br>27095 | CDJ | ROSEN SEYMOUR SHAPSS - Invoice: JUNE 09 - JUNE 09 | 11,789.30 | | |
| | 7/29/09<br>27096 | CDJ | STEPHEN H. TARNOFSKY CPA - Invoice: 071009 - 071009 | 6,600.00 | | |
| | 7/29/09<br>27097 | CDJ | STEPHEN H. TARNOFSKY CPA - Invoice: 072709 - 072709 | 8,800.00 | | |
| | 7/29/09<br>27098 | CDJ | STURSBERG AND ASSOCIATES LLC - Invoice: 070809 - JUNE 09 | 3,902.11 | | |
| | 7/29/09<br>27099 | CDJ | TIME WARNER CABLE OF NYC - Invoice: 071809 - 7/18/09 - 8/17/09 | 79.69 | | |
| | 7/29/09<br>27100 | CDJ | TRANS UNION - Invoice: 06909814 - 06909814 | 43.35 | | |
| | 7/29/09<br>27101 | CDJ | VERIZON - Invoice: 070409 - (212) 355-2449 | 527.70 | | |
| | 7/29/09<br>27102 | CDJ | VERIZON - Invoice: 071909 - (718) 609-0771 | 271.17 | | |
| | 7/29/09<br>10602 | CDJ | CLAREWOOD CONSULTING LLC - Invoice: A206 - A206 - JULY 09 | 10,000.00 | | |
| | 7/29/09<br>10603 | CDJ | CLAREWOOD CONSULTING LLC - Invoice: A301 - A301 EXPENSES 2/24 - 6/30/09 | 676.29 | | |
| | 7/29/09<br>10604 | CDJ | CLAREWOOD CONSULTING LLC - Invoice: IT901 - IT 901 - IT CONSULTING | 1,331.25 | | |
| | 7/29/09<br>10605 | CDJ | FIREMAN FUND - Invoice: 000315752 - POLICY #MZX80906824 EFFECTIVE 5/9/09 | 17,367.34 | | |
| | 7/29/09<br>10606 | CDJ | OXFORD HEALTH PLANS - Invoice: | 5,746.08 | | |

6/22/11 at 14:44:32.98

Page: 141

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| | | | 34753283 - 34753283 - AUG 09 | | | |
| 2000.7 (cont.) | 7/29/09<br>10607 | CDJ | PPCP INC. - Invoice: 339 - 339 | 180.00 | | |
| | 7/29/09<br>10608 | CDJ | PPCP INC. - Invoice: 339 - 339 | 45.00 | | |
| | 7/29/09<br>10609 | CDJ | ROBERT MAZLIACH - Invoice: AUG 09 - SERVICE FEE - AUG 09 | 255.56 | | |
| | 7/29/09<br>10610 | CDJ | TRUE TYPE PRINTING CO. INC. - Invoice: 154 - 154 | 4,386.39 | | |
| | 7/29/09<br>27103 | CDJ | HOWARD SOMMER - Invoice: BDMTG 0728 - BOARD MEETING 7/28/09 | 1,000.00 | | |
| | 7/29/09<br>27104 | CDJ | PETER BOOCKVAR - Invoice: BDMTG 0728 - BOARD MEETING 7/28/09 | 1,000.00 | | |
| | 7/29/09<br>27105 | CDJ | STEVEN ETRA - Invoice: BDMTG 0728 - BOARD MEETING 7/28/09 | 1,000.00 | | |
| | 7/29/09<br>27106 | CDJ | JOHN R. LAIRD - Invoice: BDMTG 0728 - BOARD MEETING 7/28/09 | 1,000.00 | | |
| | 7/29/09<br>27107 | CDJ | PRIDES CAPITAL LLC - Invoice: BDMTG 0728 - BOARD MEETING 7/28/09 | 1,000.00 | | |
| | 7/29/09<br>27108 | CDJ | IVAN WOLPERT - Invoice: BDMTG 0728 - BOARD MEETING 7/28/09 | 1,000.00 | | |
| | 7/30/09<br>340 | PJ | PPCP INC. | | 384.42 | |
| | 7/30/09<br>JULY 09 | PJ | STURSBERG AND ASSOCIATES LLC | | 5,305.84 | |
| | 7/30/09<br>1841 | PJ | SURGE ELECTRONIC MEDIA GROUP L | | 1,702.11 | |
| | 7/31/09<br>073109 | PJ | IVAN WOLPERT | | 167.16 | |
| | 7/31/09<br>14131 | PJ | NCIC IT CONSULTING INC. | | 260.10 | |
| | 7/31/09<br>137086 | PJ | Continental Stock Transfer & | | 900.00 | |
| | 7/31/09<br>1791752 | PJ | Executive Charge Inc. | | 109.28 | |
| | 7/31/09<br>SPK982-00 | PJ | W.B. MASON CO. INC. | | 758.57 | |
| | 7/31/09<br>0709 REIM | PJ | ELLEN WALKER | | 101.35 | |
| | 7/31/09<br>0709 REIM | PJ | SILVIA MULLENS | | 53.49 | |
| | 7/31/09<br>641895 | PJ | STRATEGIC INFORMATION | | 22.39 | |
| | | | Current Period Change | 159,734.16 | 143,243.37 | 16,490.79 |
| | 8/1/09 | | Beginning Balance | | | -16,578.41 |

6/22/11 at 14:44:33.02 | Page: 142

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 2000.7 (cont.) | 8/1/09<br>A207 | PJ | CLAREWOOD CONSULTING LLC | | 10,000.00 | |
| | 8/1/09<br>1848 | PJ | SURGE ELECTRONIC MEDIA GROUP L | | 2,050.00 | |
| | 8/1/09<br>314 | PJ | FAIRVIEW INVESTMENT SERVICES | | 1,302.09 | |
| | 8/3/09<br>AUG 09 | PJ | MEDALLION FUNDING CORP. AS SER | | 1,323.19 | |
| | 8/3/09<br>AUG 09 | PJ | MEDALLION FUNDING CORP. AS SER | | 1,262.03 | |
| | 8/3/09<br>10611 | CDJ | MEDALLION FUNDING CORP. AS SER - Invoice: AUG 09 - MONTHLY PAYMENT AUG 09 - ST. FIRMIN MICHEL | 1,323.19 | | |
| | 8/3/09<br>10612 | CDJ | MEDALLION FUNDING CORP. AS SER - Invoice: AUG 09 - MONTHLY PAYMENT AUG 09 - CHARLES LAURISTON | 1,262.03 | | |
| | 8/4/09<br>15657 | PJ | GRANOFF WALKER FORLENZA PC | | 18,092.53 | |
| | 8/4/09<br>080409 | PJ | VERIZON | | 527.07 | |
| | 8/5/09<br>34926199 | PJ | OXFORD HEALTH PLANS | | 6,318.18 | |
| | 8/6/09<br>JULY 09 | PJ | CAFE BASIL | | 59.29 | |
| | 8/8/09<br>SEP 09 | PJ | EMPIRE HEALTH CHOICE HMO | | 5,641.36 | |
| | 8/10/09<br>10613 | CDJ | GRANOFF WALKER FORLENZA PC - Invoice: 15657 - 15657 - AUGUST RENT & SHARED EXPENSES | 18,092.53 | | |
| | 8/10/09<br>0809 REIM | PJ | Lee A. Forlenza | | 249.95 | |
| | 8/10/09<br>025341133 | PJ | SAFEGUARD BUSINESS SYSTEMS | | 137.03 | |
| | 8/11/09<br>11708 | PJ | GRANOFF WALKER FORLENZA PC | | 240.00 | |
| | 8/11/09<br>11705 | PJ | GRANOFF WALKER FORLENZA PC | | 65.00 | |
| | 8/11/09<br>155 | PJ | TRUE TYPE PRINTING CO. INC. | | 4,411.92 | |
| | 8/12/09<br>081209 | PJ | STEPHEN H. TARNOFSKY CPA | | 8,800.00 | |
| | 8/12/09<br>A6671633 | PJ | AETNA US HEALTHCARE | | 1,156.00 | |
| | 8/12/09<br>081209 | PJ | JOHN LAIRD | | 2,472.06 | |
| | 8/13/09<br>341 | PJ | PPCP INC. | | 214.00 | |
| | 8/13/09<br>AUG REIM | PJ | ELLEN WALKER | | 296.47 | |
| | 8/15/09<br>26054 | PJ | COMPUWEB | | 149.85 | |
| | 8/17/09<br>9-298-0589 | PJ | FEDERAL EXPRESS | | 133.09 | |
| | 8/18/09 | CDJ | AMERICAN EXPRESS - | 1,572.49 | | |

6/22/11 at 14:44:33.07                                                                                                   Page: 143

# Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID / Account Description | Date / Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 2000.7 (cont.) | 1012 | | Invoice: 072209 - 072209 | | | |
| | 8/18/09 1013 | CDJ | CAFE BASIL - Invoice: JULY 09 - JULY 09 | 59.29 | | |
| | 8/18/09 1014 | CDJ | CLAREWOOD CONSULTING LLC - Invoice: A207 - A207 - AUGUST 09 | 10,000.00 | | |
| | 8/18/09 1015 | CDJ | Continental Stock Transfer & - Invoice: 137086 - 137086 | 900.00 | | |
| | 8/18/09 1016 | CDJ | ELLEN WALKER - Invoice: 0709 REIMBURSE - JULY REIMBURSEMENT OF MONTHLY EXPENSES | 101.35 | | |
| | 8/18/09 1017 | CDJ | Executive Charge Inc. - Invoice: 1791752 - 1791752 | 109.28 | | |
| | 8/18/09 1018 | CDJ | Lee A. Forlenza - Invoice: 0809 REIMBURSE - REIMBURSEMENT OF MONTHLY EXPENSES | 249.95 | | |
| | 8/18/09 1019 | CDJ | NCIC IT CONSULTING INC. - Invoice: 14131 - 14131 | 260.10 | | |
| | 8/18/09 1020 | CDJ | PPCP INC. - Invoice: 340 - 340 | 307.53 | | |
| | 8/18/09 1021 | CDJ | PPCP INC. - Invoice: 340 - 340 | 76.89 | | |
| | 8/18/09 1022 | CDJ | PPCP INC. - Invoice: 341 - 341 | 171.20 | | |
| | 8/18/09 1023 | CDJ | PPCP INC. - Invoice: 341 - 341 | 42.80 | | |
| | 8/18/09 1024 | CDJ | SILVIA MULLENS - Invoice: 0709 REIMBURSE - REIMBURSEMENT OF MONTHLY EXPENSES - JULY 09 | 53.49 | | |
| | 8/18/09 1025 | CDJ | STAPLES - Invoice: 072809 - 072809 | 355.98 | | |
| | 8/18/09 1026 | CDJ | STEPHEN H. TARNOFSKY CPA - Invoice: 081209 - 081209 | 8,800.00 | | |
| | 8/18/09 1027 | CDJ | STRATEGIC INFORMATION - Invoice: 641895 - 641895 | 22.39 | | |
| | 8/18/09 1028 | CDJ | STURSBERG AND ASSOCIATES LLC - Invoice: JULY 09 - JULY 09 | 5,305.84 | | |
| | 8/18/09 1029 | CDJ | SURGE ELECTRONIC MEDIA GROUP L - Invoice: 1841 - 1841 | 1,702.11 | | |
| | 8/18/09 1030 | CDJ | SURGE ELECTRONIC MEDIA GROUP L - Invoice: 1848 - 1848 | 2,050.00 | | |
| | 8/18/09 1031 | CDJ | T-MOBILE - Invoice: 072309 - 072309 | 19.24 | | |

6/22/11 at 14:44:33.12

Page: 144

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 2000.7 (cont.) | 8/18/09 1032 | CDJ | TRANS UNION - Invoice: 07909635 - 07909635 | 43.35 | | |
| | 8/18/09 1033 | CDJ | VERIZON - Invoice: 080409 - 080409 | 527.07 | | |
| | 8/18/09 1034 | CDJ | W.B. MASON CO. INC. - Invoice: SPK982-000 - SPK982-000 | 758.57 | | |
| | 8/18/09 1035 | CDJ | GRANOFF WALKER FORLENZA PC - Invoice: 11708 - 11708 - MARIO REESE - WHITER THAN SNOW LAUNDRY | 240.00 | | |
| | 8/18/09 1036 | CDJ | GRANOFF WALKER FORLENZA PC - Invoice: 11705 - 11705 - MI TREN GREENLAWN INC. | 65.00 | | |
| | 8/18/09 1037 | CDJ | THE WEEKS-LERMAN GROUP - Invoice: 0417455 - 0417455 | 75.59 | | |
| | 8/18/09 1038 | CDJ | THE WEEKS-LERMAN GROUP - Invoice: 0417473 - 0417473 | 93.74 | | |
| | 8/18/09 1039 | CDJ | THE WEEKS-LERMAN GROUP - Invoice: 0418582 - 0418582 | 78.30 | | |
| | 8/18/09 1040 | CDJ | IVAN WOLPERT - Invoice: 073109 - REIMBURSEMENT OF PHONE CHARGES RE:BOARD MEETING 6/16/09 | 167.16 | | |
| | 8/18/09 JULY 09 | PJ | BRIAN ACKERMAN | | 34.65 | |
| | 8/18/09 JULY 09 | PJ | FRESHSTART VENTURE CAPITAL CO | | 743.60 | |
| | 8/18/09 JULY 09 | PJ | HANAM CAPITAL CORPORATION | | 328.28 | |
| | 8/18/09 JULY 09 | PJ | MEDALLION FUNDING CORP. | | 712.35 | |
| | 8/18/09 JULY 09 | PJ | MEYER ACKERMAN | | 121.03 | |
| | 8/18/09 JULY 09 | PJ | MILESTONE GROWTH FUND INC. | | 650.39 | |
| | 8/18/09 JULY 09 | PJ | STEVE PORTNOY TRUSTEE | | 51.74 | |
| | 8/18/09 JULY 09 | PJ | STEVE PORTNOY TRUSTEE | | 51.74 | |
| | 8/18/09 JULY 09 | PJ | THE OSG CORP. | | 1,218.19 | |
| | 8/18/09 JULY 09 | PJ | JERROLD MARCH | | 525.53 | |
| | 8/18/09 JULY 09 | PJ | Pinnacle Commercial Capital, L | | 534.22 | |
| | 8/18/09 1041 | CDJ | BRIAN ACKERMAN - Invoice: JULY 09 - PARTICIPATION - FLORIDA LOANS - JULY 09 | 34.65 | | |
| | 8/18/09 | CDJ | FRESHSTART VENTURE CAPITAL | 743.60 | | |

6/22/11 at 14:44:33.16                                                                      Page: 145

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 2000.7 (cont.) | 1042 | | VENTURE CAPITAL CO - Invoice: JULY 09 - PARTICIPATION - FLORIDA LOANS - JULY 09 | | | |
| | 8/18/09 1043 | CDJ | HANAM CAPITAL CORPORATION - Invoice: JULY 09 - PARTICIPATION - FLORIDA LOANS - JULY 09 | 328.28 | | |
| | 8/18/09 1044 | CDJ | MEDALLION FUNDING CORP. - Invoice: JULY 09 - PARTICIPATION - CLEANERS OF NORTH BEACH LLC - JULY 09 | 712.35 | | |
| | 8/18/09 1045 | CDJ | MEYER ACKERMAN - Invoice: JULY 09 - PARTICIPATION - FLORIDA LOANS - JULY 09 | 121.03 | | |
| | 8/18/09 1046 | CDJ | MILESTONE GROWTH FUND INC. - Invoice: JULY 09 - PARTICIPATION - FLORIDA LOANS - JULY 09 | 650.39 | | |
| | 8/18/09 1047 | CDJ | Pinnacle Commercial Capital, L - Invoice: JULY 09 - PARTICIPATION - GOLDEN TRIANGLE ENTERPRISES LLC - JULY 09 | 534.22 | | |
| | 8/18/09 1048 | CDJ | STEVE PORTNOY TRUSTEE - Invoice: JULY 09 - PARTICIPATION - FLORIDA LOANS - JULY 09 | 51.74 | | |
| | 8/18/09 1049 | CDJ | STEVE PORTNOY TRUSTEE - Invoice: JULY 09 - PARTICIPATION - FLORIDA LOANS - JULY 09 | 51.74 | | |
| | 8/18/09 1050 | CDJ | THE OSG CORP. - Invoice: JULY 09 - PARTICIPATION - GWE INC. - JULY 09 | 1,218.19 | | |
| | 8/18/09 1051 | CDJ | JERROLD MARCH - Invoice: JULY 09 - PARTICIPATION - FLORIDA LOANS - JULY 09 | 525.53 | | |
| | 8/18/09 081809 | PJ | TIME WARNER CABLE OF NYC | | 79.69 | |
| | 8/18/09 95070 | PJ | BWD GROUP LIMITED | | 73,698.00 | |
| | 8/19/09 081909 | PJ | VERIZON | | 271.55 | |
| | 8/20/09 AUG REIM | PJ | MARGARET CHANCE | | 282.86 | |

6/22/11 at 14:44:33.20                                                                Page: 146

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 2000.7 (cont.) | 8/20/09<br>AUG REIM | PJ | Lee A. Forlenza | | 29.95 | |
| | 8/20/09<br>AUG REIM | PJ | SILVIA MULLENS | | 53.49 | |
| | 8/20/09<br>JULY 09 | PJ | ROSEN SEYMOUR<br>SHAPSS | | 6,526.50 | |
| | 8/21/09<br>082109 | PJ | AMERICAN EXPRESS | | 351.92 | |
| | 8/24/09<br>1052 | CDJ | AETNA US<br>HEALTHCARE -<br>Invoice: A6671633 -<br>A6671633 - SEP 09 | 1,156.00 | | |
| | 8/24/09<br>1053 | CDJ | MARGARET CHANCE -<br>Invoice: AUG REIMB -<br>AUGUST EXPENSES<br>REIMBURSEMENT | 282.86 | | |
| | 8/24/09<br>1054 | CDJ | EMPIRE HEALTH<br>CHOICE HMO - Invoice:<br>SEP 09 - SEPTEMBER<br>09 | 5,641.36 | | |
| | 8/24/09<br>1055 | CDJ | FAIRVIEW<br>INVESTMENT<br>SERVICES - Invoice:<br>314 - 314 -<br>COMPLIANCE<br>SERVICES 1/2 OF<br>JULY 2009 | 1,302.09 | | |
| | 8/24/09<br>1056 | CDJ | FEDERAL EXPRESS -<br>Invoice: 9-298-05894 -<br>9-298-05894 | 133.09 | | |
| | 8/24/09<br>1057 | CDJ | JOHN LAIRD - Invoice:<br>081209 -<br>REIMBURSEMENT OF<br>TRAVEL EXPENSES<br>RE: STAMFORD<br>BOARD COLLEGE | 2,472.06 | | |
| | 8/24/09<br>1058 | CDJ | Lee A. Forlenza -<br>Invoice: AUG REIMB -<br>AUGUST EXPENSE<br>REIMBURSEMENT | 29.95 | | |
| | 8/24/09<br>1059 | CDJ | OXFORD HEALTH<br>PLANS - Invoice:<br>34926199 - 34926199 -<br>SEPT 09 | 6,318.18 | | |
| | 8/24/09<br>1060 | CDJ | SAFEGUARD<br>BUSINESS SYSTEMS -<br>Invoice: 025341133 -<br>025341133 | 137.03 | | |
| | 8/24/09<br>1061 | CDJ | SILVIA MULLENS -<br>Invoice: AUG REIMB -<br>AUGUST EXPENSE<br>REIMBURSEMENT | 53.49 | | |
| | 8/24/09<br>1062 | CDJ | TIME WARNER CABLE<br>OF NYC - Invoice:<br>081809 - 8/18/09 -<br>9/17/09 | 79.69 | | |
| | 8/24/09<br>1063 | CDJ | TRUE TYPE PRINTING<br>CO. INC. - Invoice: 155 -<br>155 - AUGUST 09<br>RENT | 4,411.92 | | |
| | 8/24/09<br>082409 | PJ | STEPHEN H.<br>TARNOFSKY CPA | | 7,700.00 | |
| | 8/24/09 | PJ | NATIONAL<br>REGULATORY | 3,050.00 | | |

# Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 2000.7 (cont.) | 082409 | | REGULATORY SERVICES | | | |
| | 8/25/09 082509-VA | PJ | CHARLES L. GOODBAR, III, ESQ. | | 1,200.00 | |
| | 8/27/09 JUL/AUG R | PJ | Gary C. Granoff | | 320.17 | |
| | 8/27/09 1929 | PJ | SURGE ELECTRONIC MEDIA GROUP L | | 906.00 | |
| | 8/27/09 08909619 | PJ | TRANS UNION | | 43.55 | |
| | 8/27/09 1922 | PJ | SURGE ELECTRONIC MEDIA GROUP L | | 299.00 | |
| | 8/31/09 AUG 09 | PJ | BRIAN ACKERMAN | | 34.65 | |
| | 8/31/09 AUG 09 | PJ | FRESHSTART VENTURE CAPITAL CO | | 743.60 | |
| | 8/31/09 AUG 09 | PJ | HANAM CAPITAL CORPORATION | | 328.28 | |
| | 8/31/09 AUG 09 | PJ | MEDALLION FUNDING CORP. | | 712.35 | |
| | 8/31/09 AUG 09 | PJ | MEYER ACKERMAN | | 121.03 | |
| | 8/31/09 AUG 09 | PJ | MILESTONE GROWTH FUND INC. | | 650.39 | |
| | 8/31/09 AUG 09 | PJ | Pinnacle Commercial Capital, L | | 533.81 | |
| | 8/31/09 AUG 09 | PJ | STEVE PORTNOY TRUSTEE | | 51.74 | |
| | 8/31/09 AUG 09 | PJ | STEVE PORTNOY TRUSTEE | | 51.74 | |
| | 8/31/09 AUG 09 | PJ | THE OSG CORP. | | 1,218.19 | |
| | 8/31/09 AUG 09 | PJ | JERROLD MARCH | | 525.53 | |
| | 8/31/09 10614 | CDJ | BRIAN ACKERMAN - Invoice: AUG 09 - PARTICIPATION - FLORIDA LOANS - AUG 09 | 34.65 | | |
| | 8/31/09 10615 | CDJ | FRESHSTART VENTURE CAPITAL CO - Invoice: AUG 09 - PARTICIPATION - FLORIDA LOANS - AUG 09 | 743.60 | | |
| | 8/31/09 10616 | CDJ | HANAM CAPITAL CORPORATION - Invoice: AUG 09 - PARTICIPATION - FLORIDA LOANS - AUG 09 | 328.28 | | |
| | 8/31/09 10617 | CDJ | MEDALLION FUNDING CORP. - Invoice: AUG 09 - PARTICIPATION - CLEANERS OF NORTH BEACH LLC - AUG 09 | 712.35 | | |
| | 8/31/09 10618 | CDJ | MEYER ACKERMAN - Invoice: AUG 09 - PARTICIPATION - FLORIDA LOANS - AUG 09 | 121.03 | | |
| | 8/31/09 | CDJ | MILESTONE GROWTH FUND INC. - Invoice: | 650.39 | | |

6/22/11 at 14:44:33.27

# Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 2000.7 (cont.) | 10619 | | FUND INC. - Invoice: AUG 09 - PARTICIPATION - FLORIDA LOANS - AUG 09 | | | |
| | 8/31/09<br>10620 | CDJ | Pinnacle Commercial Capital, L - Invoice: AUG 09 - PARTICIPATION - GOLDEN TRIANGLE ENTERPRISES LLC - AUG 09 | 533.81 | | |
| | 8/31/09<br>10621 | CDJ | STEVE PORTNOY TRUSTEE - Invoice: AUG 09 - PARTICIPATION - FLORIDA LOANS - AUG 09 | 51.74 | | |
| | 8/31/09<br>10625 | CDJ | STEVE PORTNOY TRUSTEE - Invoice: AUG 09 - PARTICIPATION - FLORIDA LOANS - AUG 09 | 51.74 | | |
| | 8/31/09<br>10623 | CDJ | THE OSG CORP. - Invoice: AUG 09 - PARTICIPATION - GWE INC. - AUG 09 | 1,218.19 | | |
| | 8/31/09<br>10624 | CDJ | JERROLD MARCH - Invoice: AUG 09 - PARTICIPATION - FLORIDA LOANS - AUG 09 | 525.53 | | |
| | 8/31/09<br>138090 | PJ | Continental Stock Transfer & | | 1,000.00 | |
| | 8/31/09<br>326 | PJ | FAIRVIEW INVESTMENT SERVICES | | 2,604.17 | |
| | 8/31/09<br>1822676 | PJ | Executive Charge Inc. | | 164.64 | |
| | | | Current Period Change | 89,897.21 | 170,375.63 | -80,478.42 |
| | 9/1/09 | | Beginning Balance | | | -97,056.83 |
| | 9/1/09<br>SEP 09 | PJ | ROBERT MAZLIACH | | 254.91 | |
| | 9/1/09<br>27109 | CDJ | AMERICAN EXPRESS - Invoice: 082109 - 082109 | 351.92 | | |
| | 9/1/09<br>27110 | CDJ | ROBERT MAZLIACH - Invoice: SEP 09 - SERVICE FEE - SEPT 09 | 254.91 | | |
| | 9/1/09<br>SEP 09 | PJ | MEDALLION FUNDING CORP. AS SER | | 1,323.19 | |
| | 9/1/09<br>SEP 09 | PJ | MEDALLION FUNDING CORP. AS SER | | 1,262.03 | |
| | 9/1/09<br>1931 | PJ | SURGE ELECTRONIC MEDIA GROUP L | | 2,140.00 | |
| | 9/1/09<br>A208 | PJ | CLAREWOOD CONSULTING LLC | | 10,000.00 | |
| | 9/1/09<br>1931A | PJ | SURGE ELECTRONIC MEDIA GROUP L | | 43.13 | |

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 2000.7 (cont.) | 9/2/09<br>27111 | CDJ | MEDALLION FUNDING CORP. AS SER - Invoice: SEP 09 - MONTHLY PAYMENT SEPTEMBER 09 - ST. FIRMIN MICHEL | 1,323.19 | | |
| | 9/2/09<br>27112 | CDJ | MEDALLION FUNDING CORP. AS SER - Invoice: SEP 09 - MONTHLY PAYMENT SEPTEMBER 09 - CHARLES LAURISTON | 1,262.03 | | |
| | 9/3/09<br>AUG 09 | PJ | STURSBERG AND ASSOCIATES LLC | | 1,875.85 | |
| | 9/3/09<br>468 | PJ | PPCP INC. | | 1,250.00 | |
| | 9/3/09<br>35097447 | PJ | OXFORD HEALTH PLANS | | 5,952.02 | |
| | 9/4/09<br>090409 | PJ | VERIZON | | 534.41 | |
| | 9/7/09<br>560055110 | PJ | BLOOMBERG FINANCE LP | | 6,205.88 | |
| | 9/7/09<br>560055099 | PJ | BLOOMBERG FINANCE LP | | 370.78 | |
| | 9/7/09<br>560055099 | PJ | BLOOMBERG FINANCE LP | | 1,159.65 | |
| | 9/7/09<br>090709 | PJ | STEPHEN H. TARNOFSKY CPA | | 8,800.00 | |
| | 9/8/09<br>15714 | PJ | GRANOFF WALKER FORLENZA PC | | 17,889.07 | |
| | 9/8/09<br>20550 | PJ | JUSLER ELECTRICAL CORP. | | 700.07 | |
| | 9/8/09<br>14269 | PJ | NCIC IT CONSULTING INC. | | 2,593.60 | |
| | 9/8/09<br>14270 | PJ | NCIC IT CONSULTING INC. | | 522.60 | |
| | 9/10/09<br>AUG 09 | PJ | ROSEN SEYMOUR SHAPSS | | 45,121.75 | |
| | 9/11/09<br>156 | PJ | TRUE TYPE PRINTING CO. INC. | | 5,108.89 | |
| | 9/14/09<br>10627 | CDJ | BLOOMBERG FINANCE LP - Invoice: 5600551100 - 5600551100 | 6,205.88 | | |
| | 9/14/09<br>10628 | CDJ | BLOOMBERG FINANCE LP - Invoice: 5600550995 - 5600550995 | 370.78 | | |
| | 9/14/09<br>10629 | CDJ | BLOOMBERG FINANCE LP - Invoice: 5600550999 - 5500550999 | 1,159.65 | | |
| | 9/14/09<br>10630 | CDJ | CHARLES L. GOODBAR, III, ESQ. - Invoice: 082509-VALLEY CAB - VALLEY CAB CO. - FORECLOSURE | 1,200.00 | | |
| | 9/14/09<br>10631 | CDJ | CLAREWOOD CONSULTING LLC - Invoice: A208 - A208 - SEPTEMBER 2009 | 10,000.00 | | |
| | 9/14/09 | CDJ | COMPUWEB - Invoice: | 149.85 | | |

6/22/11 at 14:44:33.35                                                                    Page: 150

## Elk Associates Funding Corporation
## General Ledger
## For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 2000.7 (cont.) | 10632<br>9/14/09<br>10633 | CDJ | 26054 - 26054<br>Continental Stock<br>Transfer & - Invoice:<br>138090 - 138090 | 1,000.00 | | |
| | 9/14/09<br>10634 | CDJ | FAIRVIEW<br>INVESTMENT<br>SERVICES - Invoice:<br>326 - 326 - AUGUST<br>2009 | 2,604.17 | | |
| | 9/14/09<br>10635 | CDJ | Gary C. Granoff -<br>Invoice: JUL/AUG<br>REIMB - EXPENSE<br>REIMBURSEMENT -<br>JULY / AUGUST 2009 | 320.17 | | |
| | 9/14/09<br>10636 | CDJ | JUSLER ELECTRICAL<br>CORP. - Invoice: 20550<br>- 20550 | 700.07 | | |
| | 9/14/09<br>10637 | CDJ | ROSEN SEYMOUR<br>SHAPSS - Invoice:<br>JULY 09 - JULY 09 | 6,526.50 | | |
| | 9/14/09<br>10638 | CDJ | STEPHEN H.<br>TARNOFSKY CPA -<br>Invoice: 082409 -<br>082409 | 7,700.00 | | |
| | 9/14/09<br>10639 | CDJ | STEPHEN H.<br>TARNOFSKY CPA -<br>Invoice: 090709 -<br>090709 | 8,800.00 | | |
| | 9/14/09<br>10640 | CDJ | STURSBERG AND<br>ASSOCIATES LLC -<br>Invoice: AUG 09 -<br>AUGUST 09 | 1,875.85 | | |
| | 9/14/09<br>27113 | CDJ | BWD GROUP LIMITED<br>- Invoice: 95070 -<br>#95070 - POLICY<br>#DOL9925251 -<br>8/18/09-8/18/10 | 73,698.00 | | |
| | 9/14/09<br>27114 | CDJ | NATIONAL<br>REGULATORY<br>SERVICES - Invoice:<br>44190 - 44190 | 1,525.00 | | |
| | 9/14/09<br>27115 | CDJ | SURGE ELECTRONIC<br>MEDIA GROUP L -<br>Invoice: 1929 - 1929 | 906.00 | | |
| | 9/14/09<br>27116 | CDJ | SURGE ELECTRONIC<br>MEDIA GROUP L -<br>Invoice: 1931 - 1931 | 2,140.00 | | |
| | 9/14/09<br>27117 | CDJ | TRANS UNION -<br>Invoice: 08909619 -<br>08909619 | 43.55 | | |
| | 9/14/09<br>27118 | CDJ | VERIZON - Invoice:<br>081909 - 081909  (718)<br>609-0771 | 271.55 | | |
| | 9/14/09<br>27119 | CDJ | GRANOFF WALKER<br>FORLENZA PC -<br>Invoice: 15714 - 15714 -<br>RENT & EXPENSES -<br>AUG 09 | 17,889.07 | | |
| | 9/14/09<br>27120 | CDJ | PPCP INC. - Invoice:<br>468 - 468 | 400.00 | | |
| | 9/14/09<br>27121 | CDJ | PPCP INC. - Invoice:<br>468 - 468 | 100.00 | | |
| | 9/14/09 | PJ | AETNA US<br>HEALTHCARE | | 1,156.00 | |

6/22/11 at 14:44:33.40

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 2000.7 (cont.) | OCT 09 9/15/09 48031 | PJ | HEALTHCARE NATIONAL REGULATORY SERVICES | | 81.11 | |
| | 9/15/09 091809 | PJ | TIME WARNER CABLE OF NYC | | 79.69 | |
| | 9/15/09 CT-5 | PJ | NYS CORPORATION TAX | | 2,000.00 | |
| | 9/15/09 NYC EXT | PJ | NYC DEPT. OF FINANCE | | 300.00 | |
| | 9/15/09 CT-5 EAF | PJ | NYS CORPORATION TAX | | 155.00 | |
| | 9/15/09 NYC EXT E | PJ | NYC DEPT. OF FINANCE | | 300.00 | |
| | 9/15/09 27123 | CDJ | NYS CORPORATION TAX - Invoice: CT-5 - CT-5 - EXTENSION 6/30/09 - ID #11-2502336 | 2,000.00 | | |
| | 9/15/09 27124 | CDJ | NYC DEPT. OF FINANCE - Invoice: NYC EXT - NYC EXT EXTENSION 6/30/09 - ID #11-2502336 | 300.00 | | |
| | 9/15/09 27127 | CDJ | NYS CORPORATION TAX - Invoice: CT-5 EAF HOLDING - CT-5 - EXTENSION 6/30/09 - EAF HOLDING CORPORATION - ID #13-3670487 | 155.00 | | |
| | 9/15/09 27128 | CDJ | NYC DEPT. OF FINANCE - Invoice: NYC EXT EAF HOLDING - NYC EXT - EXTENSION 6/30/09 - EAF HOLDING CORPORATION - ID #13-3670487 | 300.00 | | |
| | 9/15/09 OCT 09 | PJ | EMPIRE HEALTH CHOICE HMO | | 3,035.76 | |
| | 9/16/09 11717 | PJ | GRANOFF WALKER FORLENZA PC | | 15.00 | |
| | 9/16/09 11713 | PJ | GRANOFF WALKER FORLENZA PC | | 15.00 | |
| | 9/17/09 SEP 09 | PJ | MARGARET CHANCE | | 133.16 | |
| | 9/17/09 SEP 09 | PJ | Lee A. Forlenza | | 139.95 | |
| | 9/17/09 SEP 09 | PJ | ELLEN WALKER | | 418.29 | |
| | 9/19/09 091909 | PJ | VERIZON | | 277.97 | |
| | 9/21/09 9-337-2047 | PJ | FEDERAL EXPRESS | | 159.02 | |
| | 9/21/09 SEP 09 | PJ | AMERICAN EXPRESS | | 260.72 | |
| | 9/22/09 092209 | PJ | STEPHEN H. TARNOFSKY CPA | | 7,700.00 | |
| | 9/23/09 0921ACMT | PJ | JOHN R. LAIRD | | 1,250.00 | |
| | 9/23/09 0921ACMT | PJ | HOWARD SOMMER | | 1,000.00 | |

6/22/11 at 14:44:33.43                                                                                     Page: 152

## Elk Associates Funding Corporation
## General Ledger
## For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 2000.7 (cont.) | 9/23/09<br>0921CCMT | PJ | JOHN R. LAIRD | | 1,250.00 | |
| | 9/23/09<br>0921CCMT | PJ | STEVEN ETRA | | 1,000.00 | |
| | 9/23/09<br>0921CCMT | PJ | IVAN WOLPERT | | 1,000.00 | |
| | 9/23/09<br>0923BDMT | PJ | PETER BOOCKVAR | | 1,000.00 | |
| | 9/23/09<br>0923BDMT | PJ | STEVEN ETRA | | 1,000.00 | |
| | 9/23/09<br>0923BDMT | PJ | JOHN R. LAIRD | | 1,000.00 | |
| | 9/23/09<br>0923BDMT | PJ | HOWARD SOMMER | | 1,000.00 | |
| | 9/23/09<br>0923BDMT | PJ | IVAN WOLPERT | | 1,000.00 | |
| | 9/23/09<br>0923BDMT | PJ | PRIDES CAPITAL LLC | | 1,000.00 | |
| | 9/23/09<br>2177 | CDJ | JOHN R. LAIRD -<br>Invoice: 0921ACMTG -<br>AUDIT COMMITTEE<br>MEETING 9/21/09 | 1,250.00 | | |
| | 9/23/09<br>2178 | CDJ | HOWARD SOMMER -<br>Invoice: 0921ACMTG -<br>AUDIT COMMITTEE<br>MTG 9/21/09 | 1,000.00 | | |
| | 9/23/09<br>2179 | CDJ | JOHN R. LAIRD -<br>Invoice: 0921CCMTG -<br>COMPENSATION<br>COMMITTEE MTG<br>9/21/09 | 1,250.00 | | |
| | 9/23/09<br>2180 | CDJ | STEVEN ETRA -<br>Invoice: 0921CCMTG -<br>COMPENSATION<br>COMMITTEE MEETING<br>9/21/09 | 1,000.00 | | |
| | 9/23/09<br>2181 | CDJ | IVAN WOLPERT -<br>Invoice: 0921CCMTG -<br>COMPENSATION<br>COMMITTEE MEETING<br>9/21/09 | 1,000.00 | | |
| | 9/23/09<br>2182 | CDJ | PETER BOOCKVAR -<br>Invoice: 0923BDMTG -<br>BOARD MEETING<br>9/23/09 | 1,000.00 | | |
| | 9/23/09<br>2183 | CDJ | STEVEN ETRA -<br>Invoice: 0923BDMTG -<br>BOARD MEETING<br>9/23/09 | 1,000.00 | | |
| | 9/23/09<br>2184 | CDJ | JOHN R. LAIRD -<br>Invoice: 0923BDMTG -<br>BOARD MEETING<br>9/23/09 | 1,000.00 | | |
| | 9/23/09<br>2185 | CDJ | HOWARD SOMMER -<br>Invoice: 0923BDMTG -<br>BOARD MEETING<br>9/23/09 | 1,000.00 | | |
| | 9/23/09<br>2186 | CDJ | IVAN WOLPERT -<br>Invoice: 0923BDMTG -<br>BOARD MEETING<br>9/23/09 | 1,000.00 | | |
| | 9/23/09<br>2187 | CDJ | PRIDES CAPITAL LLC -<br>Invoice: 0923BDMTG -<br>BOARD MEETING | 1,000.00 | | |

6/22/11 at 14:44:33.48

# Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| | | | BOARD MEETING<br>9/23/09 | | | |
| 2000.7 (cont.) | 9/25/09<br>092509 | PJ | MURRAY INDICK | | 1,127.55 | |
| | 9/25/09<br>092509 | PJ | STAPLES | | 644.30 | |
| | 9/28/09<br>14226 | PJ | NCIC IT CONSULTING INC. | | 2,177.50 | |
| | 9/28/09<br>09909561 | PJ | TRANS UNION | | 43.55 | |
| | 9/29/09<br>092909 | PJ | STEPHEN H.<br>TARNOFSKY CPA | | 7,700.00 | |
| | 9/29/09<br>3622380 | PJ | BUSINESS WIRE, INC. | | 1,685.00 | |
| | 9/30/09<br>1064 | CDJ | AETNA US<br>HEALTHCARE -<br>Invoice: OCT 09 -<br>OCTOBER 09 -<br>E.WALKER | 1,156.00 | | |
| | 9/30/09<br>1065 | CDJ | MARGARET CHANCE -<br>Invoice: SEP 09 -<br>SEPTEMBER 09<br>EXPENSE<br>REIMBURSEMENT | 133.16 | | |
| | 9/30/09<br>1066 | CDJ | EMPIRE HEALTH<br>CHOICE HMO - Invoice:<br>OCT 09 - OCTOBER 09 | 3,035.76 | | |
| | 9/30/09<br>1067 | CDJ | ELLEN WALKER -<br>Invoice: AUG REIMB -<br>AUG 09 EXPENSE<br>REIMBURSEMENT | 296.47 | | |
| | 9/30/09<br>1068 | CDJ | ELLEN WALKER -<br>Invoice: SEP 09 -<br>SEPTEMBER 09<br>EXPENSE<br>REIMBURSEMENT | 418.29 | | |
| | 9/30/09<br>1069 | CDJ | Executive Charge Inc. -<br>Invoice: 1822676 -<br>1822676 | 164.64 | | |
| | 9/30/09<br>1070 | CDJ | FEDERAL EXPRESS -<br>Invoice: 9-337-20475 -<br>9-337-20475 | 159.02 | | |
| | 9/30/09<br>1071 | CDJ | Lee A. Forlenza -<br>Invoice: SEP 09 -<br>SEPTEMBER 09<br>EXPENSE<br>REIMBURSEMENT | 139.95 | | |
| | 9/30/09<br>1072 | CDJ | NCIC IT CONSULTING<br>INC. - Invoice: 14226 -<br>14226 - 1/2 ANNUAL IT<br>PREMIUM SERVICE<br>PLAN -<br>9/28/09-12/27/09 | 2,177.50 | | |
| | 9/30/09<br>1073 | CDJ | NATIONAL<br>REGULATORY<br>SERVICES - Invoice:<br>48031 - 48031 - 2/22/09 | 81.11 | | |
| | 9/30/09<br>1074 | CDJ | OXFORD HEALTH<br>PLANS - Invoice:<br>35097447 - 35097447 -<br>OCT 09 | 5,952.02 | | |
| | 9/30/09<br>1075 | CDJ | STEPHEN H.<br>TARNOFSKY CPA -<br>Invoice: 092909 | 7,700.00 | | |

6/22/11 at 14:44:33.51

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| | | | Invoice: 092209 - 092209 | | | |
| 2000.7 (cont.) | 9/30/09<br>1076 | CDJ | STEPHEN H. TARNOFSKY CPA - Invoice: 092909 - 092909 | 7,700.00 | | |
| | 9/30/09<br>1077 | CDJ | SURGE ELECTRONIC MEDIA GROUP L - Invoice: 1922 - 1922 | 299.00 | | |
| | 9/30/09<br>1078 | CDJ | SURGE ELECTRONIC MEDIA GROUP L - Invoice: 1931A - 1931A | 43.13 | | |
| | 9/30/09<br>1079 | CDJ | TIME WARNER CABLE OF NYC - Invoice: 091809 - 091809 | 79.69 | | |
| | 9/30/09<br>1080 | CDJ | TRUE TYPE PRINTING CO. INC. - Invoice: 156 - 156 - SEP 09 RENT | 5,108.89 | | |
| | 9/30/09<br>1081 | CDJ | VERIZON - Invoice: 091909 - 091909 | 277.97 | | |
| | 9/30/09<br>1082 | CDJ | VERIZON - Invoice: 090409 - 090409 | 534.41 | | |
| | 9/30/09<br>1083 | CDJ | GRANOFF WALKER FORLENZA PC - Invoice: 11717 - 11717 - MI TREN GREENLAWN INC. | 15.00 | | |
| | 9/30/09<br>1084 | CDJ | GRANOFF WALKER FORLENZA PC - Invoice: 11713 - 11717 - MI TREN GREENLAWN INC. | 15.00 | | |
| | 9/30/09<br>1085 | CDJ | PPCP INC. - Invoice: 468 - INVOICE #343 | 600.00 | | |
| | 9/30/09<br>1086 | CDJ | PPCP INC. - Invoice: 468 - INVOICE #343 | 150.00 | | |
| | 9/30/09<br>139091 | PJ | Continental Stock Transfer & | | 925.20 | |
| | 9/30/09<br>082609 | PJ | STAPLES | | 289.53 | |
| | 9/30/09<br>SEP 09 | PJ | STURSBERG AND ASSOCIATES LLC | | 3,294.90 | |
| | 9/30/09<br>SEP 09 | PJ | CAFE BASIL | | 79.93 | |
| | 9/30/09<br>341 | PJ | FAIRVIEW INVESTMENT SERVICES | | 2,604.16 | |
| | 9/30/09<br>1853267 | PJ | Executive Charge Inc. | | 330.39 | |
| | | | Current Period Change | 199,270.15 | 161,736.51 | 37,533.64 |
| | 10/1/09 | | Beginning Balance | | | -59,523.19 |
| | 10/1/09<br>OCT 09 | PJ | ROBERT MAZLIACH | | 254.26 | |
| | 10/1/09<br>OCT 09 | PJ | MEDALLION FUNDING CORP. AS SER | | 1,323.19 | |
| | 10/1/09<br>OCT 09 | PJ | MEDALLION FUNDING CORP. AS SER | | 1,262.03 | |
| | 10/1/09<br>1087 | CDJ | ROBERT MAZLIACH - Invoice: OCT 09 - SERVICE FEE - OCT 09 | 254.26 | | |
| | 10/1/09 | CDJ | MEDALLION FUNDING CORP. AS SER | 1,323.19 | | |

6/22/11 at 14:44:33.55 Page: 155

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID / Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 2000.7 (cont.) | 1088 | | CORP. AS SER - Invoice: OCT 09 - MONTHLY PAYMENT - OCTOBER 09 - ST. FIRMIN MICHEL | | | |
| | 10/1/09 1089 | CDJ | MEDALLION FUNDING CORP. AS SER - Invoice: OCT 09 - MONTHLY PAYMENT - OCTOBER 09 - CHARLES LAURISTON | 1,262.03 | | |
| | 10/1/09 A209 | PJ | CLAREWOOD CONSULTING LLC | | 10,000.00 | |
| | 10/1/09 1949 | PJ | SURGE ELECTRONIC MEDIA GROUP L | | 2,183.13 | |
| | 10/2/09 157 | PJ | TRUE TYPE PRINTING CO. INC. | | 4,521.09 | |
| | 10/2/09 35269255 | PJ | OXFORD HEALTH PLANS | | 6,135.10 | |
| | 10/4/09 100409 | PJ | VERIZON | | 546.36 | |
| | 10/5/09 15754 | PJ | GRANOFF WALKER FORLENZA PC | | 17,879.71 | |
| | 10/5/09 SEPT 09 | PJ | ROSEN SEYMOUR SHAPSS | | 31,718.00 | |
| | 10/5/09 5-661-2057 | PJ | FEDERAL EXPRESS | | 77.41 | |
| | 10/5/09 OCT 09 | PJ | SILVIA MULLENS | | 106.98 | |
| | 10/6/09 30 | PJ | FUNDEX CAPITAL CORPORATION | | 17,329.85 | |
| | 10/7/09 SEP 09 | PJ | THE OSG CORP. | | 1,218.19 | |
| | 10/7/09 428516 | PJ | MARKIT WSO CORPORATION | | 964.09 | |
| | 10/8/09 082909 | PJ | ADRIAN R JONES | | 93.75 | |
| | 10/9/09 OCT 09 | PJ | ELLEN WALKER | | 430.82 | |
| | 10/9/09 428825 | PJ | MARKIT WSO CORPORATION | | 2,510.55 | |
| | 10/10/09 NOV 09 | PJ | EMPIRE HEALTH CHOICE HMO | | 4,338.56 | |
| | 10/12/09 27129 | CDJ | BUSINESS WIRE, INC. - Invoice: 3622380 - 3622380 | 1,685.00 | | |
| | 10/12/09 27130 | CDJ | CAFE BASIL - Invoice: SEP 09 - SEP 09 | 79.93 | | |
| | 10/12/09 27131 | CDJ | Continental Stock Transfer & - Invoice: 139091 - 139091 | 925.20 | | |
| | 10/12/09 27132 | CDJ | ELLEN WALKER - Invoice: OCT 09 - EXPENSE REIMBURSEMENT - OCT 09 | 430.82 | | |
| | 10/12/09 27133 | CDJ | FAIRVIEW INVESTMENT SERVICES - Invoice: 341 - 341 - COMPLIANCE SERVICES - SEP 09 | 2,604.16 | | |
| | 10/12/09 | CDJ | FUNDEX CAPITAL CORPORATION | 17,329.85 | | |

6/22/11 at 14:44:33.59                                                                                     Page: 156

## Elk Associates Funding Corporation
## General Ledger
## For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 2000.7 (cont.) | 27134 | | CORPORATION - Invoice: 30 - PROPORTIONATE SHARE OF REAL ESTATE TAXES - MOUNTAIN VIEW BAR & GRILL | | | |
| | 10/12/09<br>27135 | CDJ | MURRAY INDICK - Invoice: 092509 - TRAVEL EXPENSES | 1,127.55 | | |
| | 10/12/09<br>27136 | CDJ | ADRIAN R JONES - Invoice: 082909 - 082909 - E-MAIL SUPPORT FOR OLS | 93.75 | | |
| | 10/12/09<br>27137 | CDJ | NCIC IT CONSULTING INC. - Invoice: 14269 - 14269 - SERVICE TICKET 16230 5/12/09 | 2,593.60 | | |
| | 10/12/09<br>27138 | CDJ | NCIC IT CONSULTING INC. - Invoice: 14270 - 14270 - SERVICE TICKET 16232 - 5/13-5/15/09 | 522.60 | | |
| | 10/12/09<br>27139 | CDJ | THE OSG CORP. - Invoice: SEP 09 - PARTICIPATION - GWE INC. - SEP 09 | 1,218.19 | | |
| | 10/12/09<br>27140 | CDJ | STAPLES - Invoice: 092509 - 092509 | 644.30 | | |
| | 10/12/09<br>27141 | CDJ | STAPLES - Invoice: 082609 - 082609 | 289.53 | | |
| | 10/12/09<br>27142 | CDJ | STURSBERG AND ASSOCIATES LLC - Invoice: SEP 09 - SEPTEMBER 09 | 3,294.90 | | |
| | 10/12/09<br>27143 | CDJ | TRANS UNION - Invoice: 09909561 - 09909561 | 43.55 | | |
| | 10/12/09<br>27144 | CDJ | MARKIT WSO CORPORATION - Invoice: 428516 - 428516 - 2ND QTR 2009 DATA SERVICES FEE | 964.09 | | |
| | 10/12/09<br>10641 | CDJ | AMERICAN EXPRESS - Invoice: SEP 09 - SEP 09 | 260.72 | | |
| | 10/12/09<br>10642 | CDJ | CLAREWOOD CONSULTING LLC - Invoice: A209 - A209 - OCTOBER 09 | 10,000.00 | | |
| | 10/12/09<br>10643 | CDJ | ROSEN SEYMOUR SHAPSS - Invoice: AUG 09 - AUGUST 09 | 45,121.75 | | |
| | 10/12/09<br>10644 | CDJ | SURGE ELECTRONIC MEDIA GROUP L - Invoice: 1949 - 1949 - MONTHLY HOSTED FEE | 2,183.13 | | |
| | 10/12/09<br>10645 | CDJ | TRUE TYPE PRINTING CO. INC. - Invoice: 157 - 157 - OCTOBER 09 | 4,521.09 | | |
| | 10/12/09 | CDJ | GRANOFF WALKER FORLENZA PC | 17,879.71 | | |

6/22/11 at 14:44:33.63

# Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 2000.7 (cont.) | 10646 | | FORLENZA PC -<br>Invoice: 15754 - 15754 -<br>OCTOBER RENT &<br>EXPENSES | | | |
| | 10/15/09<br>11724 - MI | PJ | GRANOFF WALKER<br>FORLENZA PC | | 292.50 | |
| | 10/15/09<br>A6895660 | PJ | AETNA US<br>HEALTHCARE | | 1,156.00 | |
| | 10/16/09<br>101609 | PJ | CONTINENTAL<br>CASUALTY COMPANY<br>D | | 2,864.07 | |
| | 10/18/09<br>101809 | PJ | TIME WARNER CABLE<br>OF NYC | | 79.70 | |
| | 10/18/09<br>OCT 09 | PJ | MARGARET CHANCE | | 108.82 | |
| | 10/19/09<br>9-368-9710 | PJ | FEDERAL EXPRESS | | 170.96 | |
| | 10/19/09<br>101909 | PJ | VERIZON | | 277.02 | |
| | 10/21/09<br>SEP 09 | PJ | BRIAN ACKERMAN | | 34.65 | |
| | 10/21/09<br>SEP 09 | PJ | FRESHSTART<br>VENTURE  CAPITAL<br>CO | | 743.60 | |
| | 10/21/09<br>SEP 09 | PJ | HANAM CAPITAL<br>CORPORATION | | 328.28 | |
| | 10/21/09<br>SEP 09 | PJ | MEDALLION FUNDING<br>CORP. | | 712.35 | |
| | 10/21/09<br>SEP 09 | PJ | MEYER ACKERMAN | | 121.03 | |
| | 10/21/09<br>SEP 09 | PJ | MILESTONE GROWTH<br>FUND INC. | | 650.39 | |
| | 10/21/09<br>SEP 09 | PJ | Pinnacle Commercial<br>Capital, L | | 533.53 | |
| | 10/21/09<br>SEP 09 | PJ | STEVE PORTNOY<br>TRUSTEE | | 51.74 | |
| | 10/21/09<br>SEP 09 | PJ | STEVE PORTNOY<br>TRUSTEE | | 51.74 | |
| | 10/21/09<br>SEP 09 | PJ | JERROLD MARCH | | 525.53 | |
| | 10/21/09<br>27145 | CDJ | BRIAN ACKERMAN -<br>Invoice: SEP 09 -<br>PARTICIPATION<br>FLORIDA LOANS - SEP<br>09 | 34.65 | | |
| | 10/21/09<br>27146 | CDJ | FRESHSTART<br>VENTURE  CAPITAL<br>CO - Invoice: SEP 09 -<br>PARTICIPATION<br>FLORIDA LOANS - SEP<br>09 | 743.60 | | |
| | 10/21/09<br>27147 | CDJ | HANAM CAPITAL<br>CORPORATION -<br>Invoice: SEP 09 -<br>PARTICIPATION<br>FLORIDA LOANS - SEP<br>09 | 328.28 | | |
| | 10/21/09<br>27148 | CDJ | MEDALLION FUNDING<br>CORP. - Invoice: SEP<br>09 - PARTICIPATION -<br>CLEANERS OF NORTH<br>BEACH LLC - SEP 09 | 712.35 | | |
| | 10/21/09 | CDJ | MEYER ACKERMAN -<br>Invoice: SEP 09 | 121.03 | | |

# Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 2000.7 (cont.) | 27149 | | Invoice: SEP 09 - PARTICIPATION FLORIDA LOANS - SEP 09 | | | |
| | 10/21/09<br>27150 | CDJ | MILESTONE GROWTH FUND INC. - Invoice: SEP 09 - PARTICIPATION FLORIDA LOANS - SEP 09 | 650.39 | | |
| | 10/21/09<br>27151 | CDJ | Pinnacle Commercial Capital, L - Invoice: SEP 09 - PARTICIPATION - GOLDEN TRIANGLE ENTERPRISES LLC - SEP 09 | 533.53 | | |
| | 10/21/09<br>27152 | CDJ | STEVE PORTNOY TRUSTEE - Invoice: SEP 09 - PARTICIPATION FLORIDA LOANS - SEP 09 | 51.74 | | |
| | 10/21/09<br>27155 | CDJ | STEVE PORTNOY TRUSTEE - Invoice: SEP 09 - PARTICIPATION - FLORIDA LOANS - SEP 09 | 51.74 | | |
| | 10/21/09<br>27154 | CDJ | JERROLD MARCH - Invoice: SEP 09 - PARTICIPATION FLORIDA LOANS - SEP 09 | 525.53 | | |
| | 10/21/09<br>OCT 09 | PJ | Lee A. Forlenza | | 249.95 | |
| | 10/21/09<br>100109 | PJ | NYC Dept. of Finance | | 4,414.85 | |
| | 10/21/09<br>27156 | CDJ | NYC Dept. of Finance - Invoice: 100109 - QUARTERLY TAX PAYMENT RE: 130-41 91 AVE. LLC | 4,414.85 | | |
| | 10/21/09<br>OCT 09 | PJ | AMERICAN EXPRESS | | 341.79 | |
| | 10/23/09<br>102309 | PJ | STEPHEN H. TARNOFSKY CPA | | 11,000.00 | |
| | 10/26/09<br>3637166 | PJ | BUSINESS WIRE, INC. | | 410.00 | |
| | 10/27/09<br>102709 | PJ | STAPLES | | 225.54 | |
| | 10/27/09<br>10909520 | PJ | TRANS UNION | | 43.55 | |
| | 10/28/09<br>1090 | CDJ | MARGARET CHANCE - Invoice: OCT 09 - OCTOBER EXPENSE REIMBURSEMENT | 108.82 | | |
| | 10/28/09<br>1091 | CDJ | EMPIRE HEALTH CHOICE HMO - Invoice: NOV 09 - NOVEMBER 09 | 4,338.56 | | |
| | 10/28/09<br>1092 | CDJ | Executive Charge Inc. - Invoice: 1853267 - 1853267 | 330.39 | | |

6/22/11 at 14:44:33.71

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 2000.7 (cont.) | 10/28/09<br>1093 | CDJ | FEDERAL EXPRESS - Invoice: 5-661-20572 - 5-661-20572 | 77.41 | | |
| | 10/28/09<br>1094 | CDJ | FEDERAL EXPRESS - Invoice: 9-368-97103 - 9-368-97103 | 170.96 | | |
| | 10/28/09<br>1095 | CDJ | Lee A. Forlenza - Invoice: OCT 09 - OCTOBER EXPENSE REIMBURSEMENT | 249.95 | | |
| | 10/28/09<br>1096 | CDJ | OXFORD HEALTH PLANS - Invoice: 35269255 - 35269255 - NOV 09 | 6,135.10 | | |
| | 10/28/09<br>1097 | CDJ | SILVIA MULLENS - Invoice: OCT 09 - OCTOBER EXPENSE REIMBURSEMENT | 106.98 | | |
| | 10/28/09<br>1098 | CDJ | TIME WARNER CABLE OF NYC - Invoice: 101809 - 10/18/09 - 11/17/09 | 79.70 | | |
| | 10/28/09<br>1099 | CDJ | VERIZON - Invoice: 100409 - 10/04/09 | 546.36 | | |
| | 10/28/09<br>1100 | CDJ | GRANOFF WALKER FORLENZA PC - Invoice: 11724 - MI TREN - 11724 - MI TREN GREENLAWN INC. | 292.50 | | |
| | 10/28/09<br>1101 | CDJ | MARKIT WSO CORPORATION - Invoice: 428825 - 428825 - 3RD QTR 2009 DATA SERVICES BILLING | 2,510.55 | | |
| | 10/28/09<br>10647 | CDJ | ROSEN SEYMOUR SHAPSS - Invoice: SEPT 09 - SEPT 09 | 31,718.00 | | |
| | 10/31/09<br>103109 | PJ | STEPHEN H. TARNOFSKY CPA | | 4,400.00 | |
| | 10/31/09<br>OCT 09 | PJ | BRIAN ACKERMAN | | 34.65 | |
| | 10/31/09<br>OCT 09 | PJ | FRESHSTART VENTURE CAPITAL CO | | 743.60 | |
| | 10/31/09<br>OCT 09 | PJ | HANAM CAPITAL CORPORATION | | 328.28 | |
| | 10/31/09<br>OCT 09 | PJ | MEDALLION FUNDING CORP. | | 712.35 | |
| | 10/31/09<br>OCT 09 | PJ | MEYER ACKERMAN | | 121.03 | |
| | 10/31/09<br>OCT 09 | PJ | MILESTONE GROWTH FUND INC. | | 650.39 | |
| | 10/31/09<br>OCT 09 | PJ | STEVE PORTNOY TRUSTEE | | 51.74 | |
| | 10/31/09<br>OCT 09 | PJ | STEVE PORTNOY TRUSTEE | | 51.74 | |
| | 10/31/09<br>OCT 09 | PJ | THE OSG CORP. | | 1,218.19 | |
| | 10/31/09<br>OCT 09 | PJ | JERROLD MARCH | | 525.53 | |
| | 10/31/09 | PJ | Pinnacle Commercial Capital L | | 533.36 | |

# Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 2000.7 (cont.) | OCT 09 | | Capital, L | | | |
| | 10/31/09 27160 | CDJ | BRIAN ACKERMAN - Invoice: OCT 09 - PARTICIPATION - FLORIDA LOANS - OCT 09 | 34.65 | | |
| | 10/31/09 27161 | CDJ | FRESHSTART VENTURE CAPITAL CO - Invoice: OCT 09 - PARTICIPATION - FLORIDA LOANS - OCT 09 | 743.60 | | |
| | 10/31/09 27162 | CDJ | HANAM CAPITAL CORPORATION - Invoice: OCT 09 - PARTICIPATION - FLORIDA LOANS - OCT 09 | 328.28 | | |
| | 10/31/09 27163 | CDJ | MEDALLION FUNDING CORP. - Invoice: OCT 09 - PARTICIPATION - CLEANERS OF NORTH BEACH LLC - OCT 09 | 712.35 | | |
| | 10/31/09 27164 | CDJ | MEYER ACKERMAN - Invoice: OCT 09 - PARTICIPATION - FLORIDA LOANS - OCT 09 | 121.03 | | |
| | 10/31/09 27165 | CDJ | MILESTONE GROWTH FUND INC. - Invoice: OCT 09 - PARTICIPATION - FLORIDA LOANS - OCT 09 | 650.39 | | |
| | 10/31/09 27166 | CDJ | Pinnacle Commercial Capital, L - Invoice: OCT 09 - PARTICIPATION - GOLDEN TRIANGLE ENTERPRISES LLC - OCT 09 | 533.36 | | |
| | 10/31/09 27167 | CDJ | STEVE PORTNOY TRUSTEE - Invoice: OCT 09 - PARTICIPATION - FLORIDA LOANS - OCT 09 | 51.74 | | |
| | 10/31/09 27168 | CDJ | STEVE PORTNOY TRUSTEE - Invoice: OCT 09 - PARTICIPATION - FLORIDA LOANS - OCT 09 | 51.74 | | |
| | 10/31/09 27169 | CDJ | THE OSG CORP. - Invoice: OCT 09 - PARTICIPATION - GWE INC. - OCT 09 | 1,218.19 | | |
| | 10/31/09 27170 | CDJ | JERROLD MARCH - Invoice: OCT 09 - PARTICIPATION - FLORIDA LOANS - OCT 09 | 525.53 | | |
| | 10/31/09 140181 | PJ | Continental Stock Transfer & | | 964.94 | |

6/22/11 at 14:44:33.79                                                                                                    Page: 161

## Elk Associates Funding Corporation
## General Ledger
## For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 2000.7 (cont.) | 10/31/09<br>1892113 | PJ | Executive Charge Inc. | | 326.51 | |
| | 10/31/09<br>356 | PJ | FAIRVIEW<br>INVESTMENT<br>SERVICES | | 2,604.17 | |
| | | | Current Period Change | 176,456.73 | 141,547.14 | 34,909.59 |
| | 11/1/09 | | Beginning Balance | | | -24,613.60 |
| | 11/1/09<br>1986 | PJ | SURGE ELECTRONIC<br>MEDIA GROUP L | | 2,183.13 | |
| | 11/3/09<br>NOV 09 | PJ | ELLEN WALKER | | 438.93 | |
| | 11/4/09<br>110409 | PJ | VERIZON | | 537.00 | |
| | 11/4/09<br>35438016 | PJ | OXFORD HEALTH<br>PLANS | | 6,135.10 | |
| | 11/5/09<br>15811 | PJ | GRANOFF WALKER<br>FORLENZA PC | | 18,845.13 | |
| | 11/5/09<br>344 | PJ | PPCP INC. | | 225.00 | |
| | 11/6/09<br>A302 | PJ | CLAREWOOD<br>CONSULTING LLC | | 662.78 | |
| | 11/6/09<br>A210 | PJ | CLAREWOOD<br>CONSULTING LLC | | 6,620.00 | |
| | 11/6/09<br>OCT 09 | PJ | STURSBERG AND<br>ASSOCIATES LLC | | 3,919.07 | |
| | 11/9/09<br>27171 | CDJ | AETNA US<br>HEALTHCARE -<br>Invoice: A6895660 -<br>A6895660 - NOV 09 | 1,156.00 | | |
| | 11/9/09<br>27172 | CDJ | AMERICAN EXPRESS -<br>Invoice: OCT 09 - OCT<br>09 | 341.79 | | |
| | 11/9/09<br>27173 | CDJ | BUSINESS WIRE, INC.<br>- Invoice: 3637166 -<br>3637166 | 410.00 | | |
| | 11/9/09<br>27174 | CDJ | CONTINENTAL<br>CASUALTY COMPANY<br>D - Invoice: 101609 -<br>RE: 130-41 91 AVENUE<br>LLC - POLICY<br>#4017779052 | 2,864.07 | | |
| | 11/9/09<br>27175 | CDJ | ELLEN WALKER -<br>Invoice: NOV 09 - NOV<br>09 MONTHLY<br>EXPENSE<br>REIMBURSEMENT | 438.93 | | |
| | 11/9/09<br>27176 | CDJ | STAPLES - Invoice:<br>102709 - 10/27/09 | 225.54 | | |
| | 11/9/09<br>27177 | CDJ | STEPHEN H.<br>TARNOFSKY CPA -<br>Invoice: 102309 -<br>10/23/09 | 11,000.00 | | |
| | 11/9/09<br>27178 | CDJ | STEPHEN H.<br>TARNOFSKY CPA -<br>Invoice: 103109 -<br>10/31/09 | 4,400.00 | | |
| | 11/9/09<br>27179 | CDJ | SURGE ELECTRONIC<br>MEDIA GROUP L -<br>Invoice: 1986 - 1986 -<br>MONTHLY HOSTED<br>FEE, SUPPORT &<br>UPGRADE | 2,183.13 | | |

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 2000.7 (cont.) | 11/9/09 27180 | CDJ | UPGRADE VERIZON - Invoice: 101909 - 10/19/09 | 277.02 | | |
| | 11/9/09 27181 | CDJ | GRANOFF WALKER FORLENZA PC - Invoice: 15811 - 15811 - NOV RENT & SHARED EXPENSES | 18,845.13 | | |
| | 11/9/09 1109ACMT | PJ | JOHN R. LAIRD | | 1,250.00 | |
| | 11/9/09 1109ACMT | PJ | PETER BOOCKVAR | | 1,000.00 | |
| | 11/9/09 1109ACMT | PJ | HOWARD SOMMER | | 1,000.00 | |
| | 11/9/09 27182 | CDJ | HOWARD SOMMER - Invoice: 1109ACMTG - 11/09 - AUDIT COMMITTEE MEETING | 1,000.00 | | |
| | 11/9/09 27183 | CDJ | JOHN R. LAIRD - Invoice: 1109ACMTG - 11/09 - AUDIT COMMITTEE MEETING | 1,250.00 | | |
| | 11/9/09 27184 | CDJ | PETER BOOCKVAR - Invoice: 1109ACMTG - 11/09 - AUDIT COMMITTEE MEETING | 1,000.00 | | |
| | 11/9/09 345 | PJ | PPCP INC. | | 175.00 | |
| | 11/10/09 NOV 09 | PJ | MEDALLION FUNDING CORP. AS SER | | 1,323.19 | |
| | 11/10/09 NOV 09 | PJ | MEDALLION FUNDING CORP. AS SER | | 1,262.03 | |
| | 11/10/09 NOV 09 | PJ | ROBERT MAZLIACH | | 253.60 | |
| | 11/10/09 1102 | CDJ | ROBERT MAZLIACH - Invoice: NOV 09 - SERVICE FEE - NOVEMBER 09 | 253.60 | | |
| | 11/10/09 1103 | CDJ | MEDALLION FUNDING CORP. AS SER - Invoice: NOV 09 - MONTHLY PAYMENT NOVEMBER 09 - ST. FIRMIN MICHEL | 1,323.19 | | |
| | 11/10/09 1104 | CDJ | MEDALLION FUNDING CORP. AS SER - Invoice: NOV 09 - MONTHLY PAYMENT NOVEMBER 09 - CHARLES LAURISTON | 1,262.03 | | |
| | 11/11/09 111109BD | PJ | PETER BOOCKVAR | | 1,000.00 | |
| | 11/11/09 111109BD | PJ | STEVEN ETRA | | 1,000.00 | |
| | 11/11/09 111109BD | PJ | PRIDES CAPITAL LLC | | 1,000.00 | |
| | 11/11/09 111109BD | PJ | IVAN WOLPERT | | 1,000.00 | |
| | 11/11/09 111109BD | PJ | JOHN R. LAIRD | | 1,000.00 | |

6/22/11 at 14:44:33.87                                                                 Page: 163

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 2000.7 (cont.) | 11/11/09<br>111109BD | PJ | HOWARD SOMMER | | 1,000.00 | |
| | 11/11/09<br>27185 | CDJ | STEVEN ETRA -<br>Invoice: 111109BDMTG<br>- BOARD MEETING<br>11/11/09 | 1,000.00 | | |
| | 11/11/09<br>27186 | CDJ | HOWARD SOMMER -<br>Invoice: 111109BDMTG<br>- BOARD MEETING<br>11/11/09 | 1,000.00 | | |
| | 11/11/09<br>27187 | CDJ | JOHN R. LAIRD -<br>Invoice: 111109BDMTG<br>- BOARD MEETING<br>11/11/09 | 1,000.00 | | |
| | 11/11/09<br>27188 | CDJ | PRIDES CAPITAL LLC -<br>Invoice: 111109BDMTG<br>- BOARD MEETING<br>11/11/09 | 1,000.00 | | |
| | 11/11/09<br>27189 | CDJ | IVAN WOLPERT -<br>Invoice: 111109BDMTG<br>- BOARD MEETING<br>11/11/09 | 1,000.00 | | |
| | 11/11/09<br>27190 | CDJ | PETER BOOCKVAR -<br>Invoice: 111109BDMTG<br>- BOARD MEETING<br>11/11/09 | 1,000.00 | | |
| | 11/11/09<br>5521995-RI | PJ | CT CORPORATION | | 113.50 | |
| | 11/12/09<br>111209 | PJ | STEPHEN H.<br>TARNOFSKY CPA | | 9,900.00 | |
| | 11/12/09<br>111209 | PJ | JOHN LAIRD | | 266.50 | |
| | 11/13/09<br>NOV 09 | PJ | SILVIA MULLENS | | 53.49 | |
| | 11/13/09<br>158 | PJ | TRUE TYPE PRINTING<br>CO. INC. | | 4,536.11 | |
| | 11/14/09<br>DEC 09 | PJ | EMPIRE HEALTH<br>CHOICE HMO | | 4,338.56 | |
| | 11/15/09<br>26347 | PJ | COMPUWEB | | 149.85 | |
| | 11/16/09<br>NOV 09 | PJ | MARGARET CHANCE | | 111.86 | |
| | 11/16/09<br>111809 | PJ | TIME WARNER CABLE<br>OF NYC | | 79.70 | |
| | 11/16/09<br>2056 | PJ | SURGE ELECTRONIC<br>MEDIA GROUP L | | 1,317.84 | |
| | 11/16/09<br>OCT 09 | PJ | ROSEN SEYMOUR<br>SHAPSS | | 28,483.00 | |
| | 11/16/09<br>9-400-4305 | PJ | FEDERAL EXPRESS | | 443.59 | |
| | 11/16/09<br>111209 | PJ | MURRAY INDICK | | 1,082.69 | |
| | 11/16/09<br>A7007977 | PJ | AETNA US<br>HEALTHCARE | | 1,156.00 | |
| | 11/16/09<br>3648855 | PJ | BUSINESS WIRE, INC. | | 1,345.00 | |
| | 11/16/09<br>327101 | PJ | BROADRIDGE<br>INVESTORS<br>COMMUNICA | | 1,568.61 | |
| | 11/18/09<br>0609 SEP | PJ | SMITH BARNEY AS<br>CUSTODIAN | | 972.33 | |
| | 11/18/09<br>0909 SEP | PJ | SMITH BARNEY AS<br>CUSTODIAN | | 1,136.96 | |

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 2000.7 (cont.) | 11/18/09<br>0609 SEP | PJ | SMITH BARNEY AS<br>SEP\IRA CUST | | 4,322.70 | |
| | 11/18/09<br>0909 SEP | PJ | SMITH BARNEY AS<br>SEP\IRA CUST | | 4,339.33 | |
| | 11/18/09<br>0609 SEP | PJ | PERSHING LLC AS<br>CUSTODIAN | | 14,672.81 | |
| | 11/18/09<br>0909 SEP | PJ | PERSHING LLC AS<br>CUSTODIAN | | 7,404.38 | |
| | 11/18/09<br>0609 SEP | PJ | SOUTHWEST<br>SECURITIES AS<br>SEP\IR | | 5,809.83 | |
| | 11/18/09<br>0909 SEP | PJ | SOUTHWEST<br>SECURITIES AS<br>SEP\IR | | 6,100.32 | |
| | 11/18/09<br>0609 SEP | PJ | SMITH BARNEY SEP<br>PLAN FOR THE | | 1,467.72 | |
| | 11/18/09<br>0909 SEP | PJ | SMITH BARNEY SEP<br>PLAN FOR THE | | 1,712.34 | |
| | 11/18/09<br>0609 SEP | PJ | STATEN ISLAND BANK<br>AND TRUST | | 2,181.78 | |
| | 11/18/09<br>0909 SEP | PJ | STATEN ISLAND BANK<br>AND TRUST | | 2,545.41 | |
| | 11/18/09<br>0609 SEP | PJ | SOUTHWEST<br>SECURITIES | | 3,936.16 | |
| | 11/18/09<br>0909 SEP | PJ | SOUTHWEST<br>SECURITIES | | 4,078.61 | |
| | 11/18/09<br>0609 SEP | PJ | MICHAEL FEINSOD<br>CGM SEP IRA | | 14,580.00 | |
| | 11/18/09<br>0909 SEP | PJ | MICHAEL FEINSOD<br>CGM SEP IRA | | 7,590.00 | |
| | 11/18/09<br>1105 | CDJ | SMITH BARNEY AS<br>CUSTODIAN - Invoice:<br>0609 SEP - 2ND QTR<br>2009 SEP<br>CONTRIBUTION | 972.33 | | |
| | 11/18/09<br>1106 | CDJ | SMITH BARNEY AS<br>CUSTODIAN - Invoice:<br>0909 SEP - 3RD QTR<br>2009 SEP<br>CONTRIBUTION | 1,136.96 | | |
| | 11/18/09<br>1107 | CDJ | SMITH BARNEY AS<br>SEP\IRA CUST -<br>Invoice: 0609 SEP -<br>2ND QTR 2009 SEP<br>CONTRIBUTION | 4,322.70 | | |
| | 11/18/09<br>1108 | CDJ | SMITH BARNEY AS<br>SEP\IRA CUST -<br>Invoice: 0909 SEP -<br>3RD QTR 2009 SEP<br>CONTRIBUTION | 4,339.33 | | |
| | 11/18/09<br>1109 | CDJ | PERSHING LLC AS<br>CUSTODIAN - Invoice:<br>0609 SEP - 2ND QTR<br>2009 SEP<br>CONTRIBUTION | 14,672.81 | | |
| | 11/18/09<br>1110 | CDJ | PERSHING LLC AS<br>CUSTODIAN - Invoice:<br>0909 SEP - 3RD QTR<br>2009 SEP<br>CONTRIBUTION | 7,404.38 | | |
| | 11/18/09<br>1111 | CDJ | SOUTHWEST<br>SECURITIES AS<br>SEP\IR - Invoice: 0609 | 5,809.83 | | |

# Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| | | | SEP - 2ND QTR 2009<br>SEP CONTRIBUTION | | | |
| 2000.7 (cont.) | 11/18/09<br>1112 | CDJ | SOUTHWEST SECURITIES AS SEP\IR - Invoice: 0909 SEP - 3RD QTR 2009 SEP CONTRIBUTION | 6,100.32 | | |
| | 11/18/09<br>1113 | CDJ | SMITH BARNEY SEP PLAN FOR THE - Invoice: 0609 SEP - 2ND QTR 2009 SEP CONTRIBUTION | 1,467.72 | | |
| | 11/18/09<br>1114 | CDJ | SMITH BARNEY SEP PLAN FOR THE - Invoice: 0909 SEP - 3RD QTR 2009 SEP CONTRIBUTION | 1,712.34 | | |
| | 11/18/09<br>1115 | CDJ | STATEN ISLAND BANK AND TRUST - Invoice: 0609 SEP - 2ND QTR 2009 SEP CONTRIBUTION | 2,181.78 | | |
| | 11/18/09<br>1116 | CDJ | STATEN ISLAND BANK AND TRUST - Invoice: 0909 SEP - 3RD QTR 2009 SEP CONTRIBUTION | 2,545.41 | | |
| | 11/18/09<br>1117 | CDJ | SOUTHWEST SECURITIES - Invoice: 0609 SEP - 2ND QTR 2009 SEP CONTRIBUTION | 3,936.16 | | |
| | 11/18/09<br>1118 | CDJ | SOUTHWEST SECURITIES - Invoice: 0909 SEP - 3RD QTR 2009 SEP CONTRIBUTION | 4,078.61 | | |
| | 11/18/09<br>1121 | CDJ | MICHAEL FEINSOD CGM SEP IRA - Invoice: 0609 SEP - 2ND QTR 2009 SEP CONTRIBUTION | 14,580.00 | | |
| | 11/18/09<br>1122 | CDJ | MICHAEL FEINSOD CGM SEP IRA - Invoice: 0909 SEP - 3RD QTR 2009 SEP CONTRIBUTION | 7,590.00 | | |
| | 11/18/09<br>27191 | CDJ | MARGARET CHANCE - Invoice: NOV 09 - MONTHLY EXPENSE REIMBURSEMENT - NOV 09 | 111.86 | | |
| | 11/18/09<br>27192 | CDJ | CLAREWOOD CONSULTING LLC - Invoice: A302 - A302 EXPENSES 7/1/09 - 10/31/09 | 662.78 | | |
| | 11/18/09<br>27193 | CDJ | CLAREWOOD CONSULTING LLC - Invoice: A210 - A210 - NOV 09 | 6,620.00 | | |

6/22/11 at 14:44:33.98

# Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 2000.7 (cont.) | 11/18/09<br>27194 | CDJ | Continental Stock Transfer & - Invoice: 140181 - 140181 | 964.94 | | |
| | 11/18/09<br>27195 | CDJ | Executive Charge Inc. - Invoice: 1892113 - 1892113 | 326.51 | | |
| | 11/18/09<br>27196 | CDJ | FAIRVIEW INVESTMENT SERVICES - Invoice: 356 - 356 - COMPLIANCE SERVICES OCT 09 | 2,604.17 | | |
| | 11/18/09<br>27197 | CDJ | JOHN LAIRD - Invoice: 111209 - BOARD MEETING TRAVEL EXPENSES | 266.50 | | |
| | 11/18/09<br>27198 | CDJ | OXFORD HEALTH PLANS - Invoice: 35438016 - 3548016 - DEC 09 | 6,135.10 | | |
| | 11/18/09<br>27199 | CDJ | PPCP INC. - Invoice: 344 - 344 | 45.00 | | |
| | 11/18/09<br>27200 | CDJ | PPCP INC. - Invoice: 344 - 344 | 180.00 | | |
| | 11/18/09<br>27201 | CDJ | SILVIA MULLENS - Invoice: NOV 09 - MONTHLY EXPENSE REIMBURSEMENT - NOV 09 | 53.49 | | |
| | 11/18/09<br>27202 | CDJ | STEPHEN H. TARNOFSKY CPA - Invoice: 111209 - 111209 | 9,900.00 | | |
| | 11/18/09<br>27203 | CDJ | STURSBERG AND ASSOCIATES LLC - Invoice: OCT 09 - OCT 09 | 3,919.07 | | |
| | 11/18/09<br>27204 | CDJ | SURGE ELECTRONIC MEDIA GROUP L - Invoice: 2056 - 2056 - ADOBE ACROBAT - 5 USERS | 1,317.84 | | |
| | 11/18/09<br>27205 | CDJ | TIME WARNER CABLE OF NYC - Invoice: 111809 - 11/18/09 - 12/17/09 | 79.70 | | |
| | 11/18/09<br>27206 | CDJ | TRANS UNION - Invoice: 10909520 - 10909520 | 43.55 | | |
| | 11/18/09<br>27207 | CDJ | VERIZON - Invoice: 110409 - 110409 | 537.00 | | |
| | 11/18/09<br>2009/ACC/ | PJ | SECURE CONCEPTS LLC | | 141.54 | |
| | 11/18/09<br>6227 | PJ | True Type Printing | | 3,837.84 | |
| | 11/19/09<br>0609 SEP | PJ | WELLS FARGO ADVISORS LLC AS CU | | 5,329.95 | |
| | 11/19/09<br>0909 SEP | PJ | WELLS FARGO ADVISORS LLC AS CU | | 5,350.82 | |
| | 11/19/09<br>1123 | CDJ | WELLS FARGO ADVISORS LLC AS CU - Invoice: 0609 SEP - 2ND QTR 2009 SEP CONTRIBUTION | 5,329.95 | | |

6/22/11 at 14:44:34.02                                                                     Page: 167

## Elk Associates Funding Corporation
## General Ledger
## For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 2000.7 (cont.) | 11/19/09 1124 | CDJ | CONTRIBUTION - SILVIA MULLENS WELLS FARGO ADVISORS LLC AS CU - Invoice: 0909 SEP - 3RD QTR 2009 SEP CONTRIBUTION - SILVIA MULLENS | 5,350.82 | | |
| | 11/19/09 11734 SEA | PJ | GRANOFF WALKER FORLENZA PC | | 3,440.00 | |
| | 11/19/09 11735 E&Y | PJ | GRANOFF WALKER FORLENZA PC | | 2,945.00 | |
| | 11/19/09 111909 | PJ | VERIZON | | 277.27 | |
| | 11/19/09 0530455 | PJ | THE WEEKS-LERMAN GROUP | | 24.32 | |
| | 11/20/09 0824CCMT | PJ | JOHN R. LAIRD | | 1,250.00 | |
| | 11/20/09 0824CCMT | PJ | IVAN WOLPERT | | 1,000.00 | |
| | 11/20/09 0824CCMT | PJ | STEVEN ETRA | | 1,000.00 | |
| | 11/20/09 1104CCMT | PJ | IVAN WOLPERT | | 1,250.00 | |
| | 11/20/09 1104CCMT | PJ | JOHN R. LAIRD | | 1,000.00 | |
| | 11/20/09 1104CCMT | PJ | STEVEN ETRA | | 1,000.00 | |
| | 11/20/09 NOV 09 | PJ | AMERICAN EXPRESS | | 518.67 | |
| | 11/20/09 112009 | PJ | NYC Dept. of Finance | | 4,283.41 | |
| | 11/23/09 DEC 09 | PJ | ROBERT MAZLIACH | | 252.94 | |
| | 11/23/09 IT 902 | PJ | CLAREWOOD CONSULTING LLC | | 2,921.14 | |
| | 11/24/09 2188 | CDJ | STEVEN ETRA - Invoice: 0824CCMTG - COMPENSATION COMMITTEE MEETING 8/24/09 | 1,000.00 | | |
| | 11/24/09 2189 | CDJ | STEVEN ETRA - Invoice: 1104CCMTG - COMPENSATION COMMITTEE MEETING 11/4/09 | 1,000.00 | | |
| | 11/24/09 2190 | CDJ | JOHN R. LAIRD - Invoice: 0824CCMTG - COMPENSATION COMMITTEE MEETING 8/24/09 | 1,250.00 | | |
| | 11/24/09 2191 | CDJ | JOHN R. LAIRD - Invoice: 1104CCMTG - COMPENSATION COMMITTEE MEETING 11/4/09 | 1,000.00 | | |
| | 11/24/09 2192 | CDJ | IVAN WOLPERT - Invoice: 0824CCMTG - COMPENSATION COMMITTEE MEETING 8/24/09 | 1,000.00 | | |
| | 11/24/09 2193 | CDJ | IVAN WOLPERT - Invoice: 1104CCMTG - COMPENSATION | 1,250.00 | | |

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| | | | COMPENSATION COMMITTEE MEETING 11/4/09 | | | |
| 2000.7 (cont.) | 11/24/09 2194 | CDJ | FEDERAL EXPRESS - Invoice: 9-400-43054 - 9-400-43054 | 443.59 | | |
| | 11/24/09 2195 | CDJ | MURRAY INDICK - Invoice: 111209 - BOARD MEETING TRAVEL EXPENSES | 1,082.69 | | |
| | 11/24/09 2196 | CDJ | ROBERT MAZLIACH - Invoice: DEC 09 - SERVICE FEE - DEC 09 | 252.94 | | |
| | 11/24/09 2197 | CDJ | ROSEN SEYMOUR SHAPSS - Invoice: OCT 09 - OCTOBER 09 | 28,483.00 | | |
| | 11/24/09 2198 | CDJ | SECURE CONCEPTS LLC - Invoice: 2009/ACC/001 - 2009/ACC/001 | 141.54 | | |
| | 11/24/09 2199 | CDJ | TRUE TYPE PRINTING CO. INC. - Invoice: 158 - 158 - RENT NOV 09 | 4,536.11 | | |
| | 11/24/09 2200 | CDJ | GRANOFF WALKER FORLENZA PC - Invoice: 11734 SEALMAX - 11734 - SEALMAX INC. | 3,440.00 | | |
| | 11/24/09 2201 | CDJ | GRANOFF WALKER FORLENZA PC - Invoice: 11735 E&Y - 11735 - E&Y GENERAL CONSTRUCTION CO. | 2,945.00 | | |
| | 11/25/09 112509 | PJ | STAPLES | | 967.11 | |
| | 11/25/09 025615171 | PJ | SAFEGUARD BUSINESS SYSTEMS | | 139.21 | |
| | 11/27/09 11909373 | PJ | TRANS UNION | | 43.55 | |
| | 11/30/09 NOV 09 | PJ | BRIAN ACKERMAN | | 34.65 | |
| | 11/30/09 NOV 09 | PJ | FRESHSTART VENTURE CAPITAL CO | | 743.60 | |
| | 11/30/09 NOV 09 | PJ | HANAM CAPITAL CORPORATION | | 328.28 | |
| | 11/30/09 NOV 09 | PJ | MEDALLION FUNDING CORP. | | 712.35 | |
| | 11/30/09 NOV 09 | PJ | MEYER ACKERMAN | | 121.03 | |
| | 11/30/09 NOV 09 | PJ | MILESTONE GROWTH FUND INC. | | 650.39 | |
| | 11/30/09 NOV 09 | PJ | Pinnacle Commercial Capital, L | | 533.33 | |
| | 11/30/09 NOV 09 | PJ | STEVE PORTNOY TRUSTEE | | 51.74 | |
| | 11/30/09 NOV 09 | PJ | STEVE PORTNOY TRUSTEE | | 51.74 | |
| | 11/30/09 NOV 09 | PJ | THE OSG CORP. | | 1,218.19 | |
| | 11/30/09 NOV 09 | PJ | JERROLD MARCH | | 525.53 | |
| | 11/30/09 | CDJ | BRIAN ACKERMAN - Invoice: NOV 09 | 34.65 | | |

### Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 2000.7 (cont.) | 27208 | | Invoice: NOV 09 - PARTICIPATION - FLORIDA LOANS - NOV 09 | | | |
| | 11/30/09<br>27209 | CDJ | FRESHSTART VENTURE CAPITAL CO - Invoice: NOV 09 - PARTICIPATION - FLORIDA LOANS - NOV 09 | 743.60 | | |
| | 11/30/09<br>27210 | CDJ | HANAM CAPITAL CORPORATION - Invoice: NOV 09 - PARTICIPATION - FLORIDA LOANS - NOV 09 | 328.28 | | |
| | 11/30/09<br>27211 | CDJ | MEDALLION FUNDING CORP. - Invoice: NOV 09 - PARTICIPATION - CLEANERS OF NORTH BEACH LLC - NOV 09 | 712.35 | | |
| | 11/30/09<br>27212 | CDJ | MEYER ACKERMAN - Invoice: NOV 09 - PARTICIPATION - FLORIDA LOANS - NOV 09 | 121.03 | | |
| | 11/30/09<br>27213 | CDJ | MILESTONE GROWTH FUND INC. - Invoice: NOV 09 - PARTICIPATION - FLORIDA LOANS - NOV 09 | 650.39 | | |
| | 11/30/09<br>27214 | CDJ | Pinnacle Commercial Capital, L - Invoice: NOV 09 - PARTICIPATION - GOLDEN TRIANGLE ENTERPRISES LLC - NOV 09 | 533.33 | | |
| | 11/30/09<br>27215 | CDJ | STEVE PORTNOY TRUSTEE - Invoice: NOV 09 - PARTICIPATION - FLORIDA LOANS - NOV 09 | 51.74 | | |
| | 11/30/09<br>27216 | CDJ | STEVE PORTNOY TRUSTEE - Invoice: NOV 09 - PARTICIPATION - FLORIDA LOANS - NOV 09 | 51.74 | | |
| | 11/30/09<br>27217 | CDJ | THE OSG CORP. - Invoice: NOV 09 - PARTICIPATION - GWE INC. - NOV 09 | 1,218.19 | | |
| | 11/30/09<br>27218 | CDJ | JERROLD MARCH - Invoice: NOV 09 - PARTICIPATION - FLORIDA LOANS - NOV 09 | 525.53 | | |
| | 11/30/09<br>NOV 09 | PJ | Lee A. Forlenza | | 139.95 | |
| | 11/30/09 | PJ | STEPHEN H. TARNOFSKY CPA | | 5,500.00 | |

6/22/11 at 14:44:34.13                                                                     Page: 170

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 2000.7 (cont.) | 113009 | | TARNOFSKY CPA | | | |
| | 11/30/09 1925824 | PJ | Executive Charge Inc. | | 54.33 | |
| | 11/30/09 112809 | PJ | CRAIN'S | | 69.95 | |
| | 11/30/09 113009 | PJ | JOHN LAIRD | | 50.65 | |
| | 11/30/09 372 | PJ | FAIRVIEW INVESTMENT SERVICES | | 2,604.17 | |
| | 11/30/09 141415 | PJ | Continental Stock Transfer & | | 1,311.09 | |
| | | | Current Period Change | 234,325.09 | 241,300.68 | -6,975.59 |
| | 12/1/09 | | Beginning Balance | | | -31,589.19 |
| | 12/1/09 120109 | PJ | VISITING NURSE SERVICE OF NEW | | 250.00 | |
| | 12/1/09 120109 | PJ | TEMPLE BETH EL OF GREAT NECK | | 250.00 | |
| | 12/1/09 120109 | PJ | TRANSITCENTER INC. | | 1,864.52 | |
| | 12/1/09 2071 | PJ | SURGE ELECTRONIC MEDIA GROUP L | | 2,183.13 | |
| | 12/1/09 DEC 09 | PJ | ELLEN WALKER | | 430.06 | |
| | 12/2/09 DEC 09 | PJ | MEDALLION FUNDING CORP. AS SER | | 1,262.03 | |
| | 12/2/09 27219 | CDJ | MEDALLION FUNDING CORP. AS SER - Invoice: DEC 09 - MONTHLY PAYMENT DECEMBER 09 - CHARLES LAURISTON | 1,262.03 | | |
| | 12/2/09 120209 | PJ | GEORGE WASHINGTON UNIVERSITY | | 3,000.00 | |
| | 12/3/09 27220 | CDJ | GEORGE WASHINGTON UNIVERSITY - Invoice: 120209 - THIRD PAYMENT RE: PLEDGE #160477 | 3,000.00 | | |
| | 12/3/09 NOV 09 | PJ | STURSBERG AND ASSOCIATES LLC | | 1,770.35 | |
| | 12/3/09 35608605 | PJ | OXFORD HEALTH PLANS | | 6,135.10 | |
| | 12/4/09 120409 | PJ | VERIZON | | 537.98 | |
| | 12/7/09 27221 | CDJ | AETNA US HEALTHCARE - Invoice: A7007977 - A7007977 - DECEMBER 09 | 1,156.00 | | |
| | 12/7/09 27222 | CDJ | AMERICAN EXPRESS - Invoice: NOV 09 - NOVEMBER 09 | 518.67 | | |
| | 12/7/09 27223 | CDJ | BROADRIDGE INVESTORS COMMUNICA - Invoice: 327101 - 327101 | 1,568.61 | | |
| | 12/7/09 27224 | CDJ | BUSINESS WIRE, INC. - Invoice: 3648855 - | 1,345.00 | | |

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 2000.7 (cont.) | 12/7/09 27225 | CDJ | 3648855 CT CORPORATION - Invoice: 5521995-RI - 5521995 - RI | 113.50 | | |
| | 12/7/09 27226 | CDJ | EMPIRE HEALTH CHOICE HMO - Invoice: DEC 09 - DECEMBER 09 | 4,338.56 | | |
| | 12/7/09 27227 | CDJ | Lee A. Forlenza - Invoice: NOV 09 - REIMBURSEMENT OF MONTHLY EXPENSES - NOV 09 | 139.95 | | |
| | 12/7/09 27228 | CDJ | PPCP INC. - Invoice: 345 - INVOICE #345 | 140.00 | | |
| | 12/7/09 27229 | CDJ | PPCP INC. - Invoice: 345 - INVOICE #345 | 35.00 | | |
| | 12/7/09 27230 | CDJ | STEPHEN H. TARNOFSKY CPA - Invoice: 113009 - 113009 | 5,500.00 | | |
| | 12/7/09 27231 | CDJ | TEMPLE BETH EL OF GREAT NECK - Invoice: 120109 - IN MEMORY OF JEANNETTE GRANOFF | 250.00 | | |
| | 12/7/09 27232 | CDJ | TRANSITCENTER INC. - Invoice: 120109 - 120109 | 1,864.52 | | |
| | 12/7/09 27233 | CDJ | True Type Printing - Invoice: 6227 - 6227 | 3,837.84 | | |
| | 12/7/09 27234 | CDJ | VERIZON - Invoice: 111909 - 111909 718-609-0771 | 277.27 | | |
| | 12/7/09 27235 | CDJ | VISITING NURSE SERVICE OF NEW - Invoice: 120109 - IN MEMORY OF MARION HECKLER | 250.00 | | |
| | 12/7/09 27236 | CDJ | NYC Dept. of Finance - Invoice: 112009 - QUARTERLY TAX PAYMENT RE: 130-41 91 AVE. LLC - BLOCK# 09358, LOT# 0038 | 4,283.41 | | |
| | 12/7/09 3658580 | PJ | BUSINESS WIRE, INC. | | 325.00 | |
| | 12/7/09 560063643 | PJ | BLOOMBERG FINANCE LP | | 6,205.88 | |
| | 12/7/09 560063642 | PJ | BLOOMBERG FINANCE LP | | 1,159.65 | |
| | 12/7/09 560063642 | PJ | BLOOMBERG FINANCE LP | | 128.39 | |
| | 12/9/09 15866 | PJ | GRANOFF WALKER FORLENZA PC | | 18,080.08 | |
| | 12/10/09 3660608 | PJ | BUSINESS WIRE, INC. | | 325.00 | |
| | 12/11/09 NOV 09 | PJ | ROSEN SEYMOUR SHAPSS | | 14,385.00 | |
| | 12/12/09 JAN 2010 | PJ | EMPIRE HEALTH CHOICE HMO | | 4,338.56 | |
| | 12/14/09 10649 | CDJ | GRANOFF WALKER FORLENZA PC - Invoice: 15866 - 15866 | 18,080.08 | | |

6/22/11 at 14:44:34.21                                                                    Page: 172

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| | | | Invoice: 15866 - 15866 - DECEMBER RENT & EXPENSES | | | |
| 2000.7 (cont.) | 12/14/09 DEC 09 | PJ | SILVIA MULLENS | | 53.49 | |
| | 12/14/09 121809 | PJ | TIME WARNER CABLE OF NYC | | 79.70 | |
| | 12/14/09 A7120019 | PJ | AETNA US HEALTHCARE | | 1,156.00 | |
| | 12/16/09 159 | PJ | TRUE TYPE PRINTING CO. INC. | | 4,485.49 | |
| | 12/16/09 160 | PJ | TRUE TYPE PRINTING CO. INC. | | 4,490.96 | |
| | 12/17/09 1895 | PJ | INVESHARE INC. | | 25.60 | |
| | 12/17/09 1894 | PJ | INVESHARE INC. | | 25.60 | |
| | 12/18/09 Dec 09 | PJ | MARGARET CHANCE | | 97.86 | |
| | 12/18/09 DEC 09 #2 | PJ | MARGARET CHANCE | | 870.00 | |
| | 12/19/09 121909 | PJ | VERIZON | | 277.27 | |
| | 12/21/09 1125 | CDJ | BUSINESS WIRE, INC. - Invoice: 3658580 - 3658580 | 325.00 | | |
| | 12/21/09 1126 | CDJ | CLAREWOOD CONSULTING LLC - Invoice: IT 902 - IT 902 7/16/09 - 9/30/09 | 2,921.14 | | |
| | 12/21/09 1127 | CDJ | COMPUWEB - Invoice: 26347 - 26347 - 1ST QTR 2010 | 149.85 | | |
| | 12/21/09 1128 | CDJ | Continental Stock Transfer & - Invoice: 141415 - 141415 | 1,311.09 | | |
| | 12/21/09 1129 | CDJ | CRAIN'S - Invoice: 112809 - 1 YEAR SUBSCRIPTION REF CODE: RADVC60 | 69.95 | | |
| | 12/21/09 1130 | CDJ | ELLEN WALKER - Invoice: DEC 09 - REIMBURSEMENT OF EXPENSES - DEC 09 | 430.06 | | |
| | 12/21/09 1131 | CDJ | Executive Charge Inc. - Invoice: 1925824 - 1925824 | 54.33 | | |
| | 12/21/09 1132 | CDJ | FAIRVIEW INVESTMENT SERVICES - Invoice: 372 - 372 - 1/2 COMPLIANCE SERVICES NOV 09 | 2,604.17 | | |
| | 12/21/09 1133 | CDJ | JOHN LAIRD - Invoice: 113009 - REIMBURSEMENT OF EXPENSES 11/17/09 | 50.65 | | |
| | 12/21/09 1134 | CDJ | SAFEGUARD BUSINESS SYSTEMS - Invoice: 025615171 - 025615171 | 139.21 | | |
| | 12/21/09 1135 | CDJ | SILVIA MULLENS - Invoice: DEC 09 - REIMBURSEMENT OF | 53.49 | | |

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| | | | REIMBURSEMENT OF EXPENSES - DEC 09 | | | |
| 2000.7 (cont.) | 12/21/09 1136 | CDJ | STAPLES - Invoice: 112509 - 112509 | 967.11 | | |
| | 12/21/09 1137 | CDJ | STURSBERG AND ASSOCIATES LLC - Invoice: NOV 09 - NOVEMBER 09 | 1,770.35 | | |
| | 12/21/09 1138 | CDJ | SURGE ELECTRONIC MEDIA GROUP L - Invoice: 2071 - 2071 - MONTHLY HOSTED FEE & SUPPORT - DEC 09 | 2,183.13 | | |
| | 12/21/09 1139 | CDJ | TIME WARNER CABLE OF NYC - Invoice: 121809 - 12/18/09 - 1/17/10 | 79.70 | | |
| | 12/21/09 1140 | CDJ | TRANS UNION - Invoice: 11909373 - 11909373 | 43.55 | | |
| | 12/21/09 1141 | CDJ | VERIZON - Invoice: 120409 - 120409 | 537.98 | | |
| | 12/21/09 2010 | PJ | ZURICH INSURANCE GROUP | | 306.48 | |
| | 12/21/09 9-439-4569 | PJ | FEDERAL EXPRESS | | 287.69 | |
| | 12/21/09 DEC 09 | PJ | AMERICAN EXPRESS | | 1,708.73 | |
| | 12/22/09 2114 | PJ | SURGE ELECTRONIC MEDIA GROUP L | | 4,151.25 | |
| | 12/22/09 2115 | PJ | SURGE ELECTRONIC MEDIA GROUP L | | 1,679.81 | |
| | 12/22/09 3665618 | PJ | BUSINESS WIRE, INC. | | 325.00 | |
| | 12/22/09 10690 | PJ | INTERNATIONAL PRINT GROUP LLC | | 919.99 | |
| | 12/23/09 10694 | PJ | INTERNATIONAL PRINT GROUP LLC | | 424.61 | |
| | 12/23/09 10705 | PJ | INTERNATIONAL PRINT GROUP LLC | | 244.97 | |
| | 12/26/09 10709 | PJ | INTERNATIONAL PRINT GROUP LLC | | 244.97 | |
| | 12/27/09 10720 | PJ | INTERNATIONAL PRINT GROUP LLC | | 228.64 | |
| | 12/28/09 122809 | PJ | STAPLES | | 1,680.30 | |
| | 12/28/09 12909187 | PJ | TRANS UNION | | 43.55 | |
| | 12/29/09 10650 | CDJ | AETNA US HEALTHCARE - Invoice: A7120019 - A7120019 - JAN 2010 | 1,156.00 | | |
| | 12/29/09 10651 | CDJ | BLOOMBERG FINANCE LP - Invoice: 5600636430 - 5600636430 - BLOOMBERG ANYWHERE | 6,205.88 | | |
| | 12/29/09 10652 | CDJ | BLOOMBERG FINANCE LP - Invoice: 5600636428 - 5600636428 | 1,159.65 | | |

6/22/11 at 14:44:34.30

Page: 174

## Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 2000.7 (cont.) | 12/29/09<br>10653 | CDJ | BLOOMBERG FINANCE LP - Invoice: 5600636429 - 5600636429 - DOCUMENT & DOCKET RETRIEVALS | 128.39 | | |
| | 12/29/09<br>10654 | CDJ | BUSINESS WIRE, INC. - Invoice: 3660608 - 3660608 | 325.00 | | |
| | 12/29/09<br>10655 | CDJ | MARGARET CHANCE - Invoice: Dec 09 - REIMBURSEMENT OF EXPENSES - DEC 09 | 97.86 | | |
| | 12/29/09<br>10656 | CDJ | MARGARET CHANCE - Invoice: DEC 09 #2 - REIMBURSEMENT FOR 2009 YEAR END GIFTS | 870.00 | | |
| | 12/29/09<br>10657 | CDJ | EMPIRE HEALTH CHOICE HMO - Invoice: JAN 2010 - JANUARY 2010 | 4,338.56 | | |
| | 12/29/09<br>10658 | CDJ | OXFORD HEALTH PLANS - Invoice: 35608605 - 35608605 - JAN 2010 | 6,135.10 | | |
| | 12/29/09<br>10659 | CDJ | SURGE ELECTRONIC MEDIA GROUP L - Invoice: 2114 - 2114 - SET UP DATA CENTER & NYC OFFICE | 4,151.25 | | |
| | 12/29/09<br>10660 | CDJ | SURGE ELECTRONIC MEDIA GROUP L - Invoice: 2115 - 2115 - FIREWALL, MANAGED SWITCH, UPS 7/6/09 | 1,679.81 | | |
| | 12/29/09<br>10661 | CDJ | TRUE TYPE PRINTING CO. INC. - Invoice: 159 - 159 - DECEMBER RENT | 4,485.49 | | |
| | 12/29/09<br>10662 | CDJ | TRUE TYPE PRINTING CO. INC. - Invoice: 160 - 160 - JANUARY 2010 RENT | 4,490.96 | | |
| | 12/29/09<br>10663 | CDJ | THE WEEKS-LERMAN GROUP - Invoice: 0530455 - 0530455 | 24.32 | | |
| | 12/29/09<br>10664 | CDJ | ZURICH INSURANCE GROUP - Invoice: 2010 - 2010 DISABILITY PREMIUM | 306.48 | | |
| | 12/30/09<br>123009 | PJ | STEPHEN H. TARNOFSKY CPA | | 13,200.00 | |
| | 12/31/09<br>DEC 09 | PJ | BRIAN ACKERMAN | | 34.65 | |
| | 12/31/09<br>DEC 09 | PJ | FRESHSTART VENTURE CAPITAL CO | | 743.60 | |
| | 12/31/09<br>DEC 09 | PJ | HANAM CAPITAL CORPORATION | | 328.28 | |
| | 12/31/09<br>DEC 09 | PJ | MEDALLION FUNDING CORP. | | 712.35 | |
| | 12/31/09 | PJ | MEYER ACKERMAN | | 121.03 | |

6/22/11 at 14:44:34.34

Page: 175

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 2000.7 (cont.) | DEC 09 12/31/09 DEC 09 | PJ | MILESTONE GROWTH FUND INC. | | 650.39 | |
| | 12/31/09 DEC 09 | PJ | Pinnacle Commercial Capital, L | | 533.22 | |
| | 12/31/09 DEC 09 | PJ | STEVE PORTNOY TRUSTEE | | 51.74 | |
| | 12/31/09 DEC 09 | PJ | STEVE PORTNOY TRUSTEE | | 51.74 | |
| | 12/31/09 DEC 09 | PJ | THE OSG CORP. | | 1,218.19 | |
| | 12/31/09 DEC 09 | PJ | JERROLD MARCH | | 525.53 | |
| | 12/31/09 27237 | CDJ | BRIAN ACKERMAN - Invoice: DEC 09 - PARTICIPATION - FLORIDA LOANS - DEC 09 | 34.65 | | |
| | 12/31/09 27238 | CDJ | FRESHSTART VENTURE CAPITAL CO - Invoice: DEC 09 - PARTICIPATION - FLORIDA LOANS - DEC 09 | 743.60 | | |
| | 12/31/09 27239 | CDJ | HANAM CAPITAL CORPORATION - Invoice: DEC 09 - PARTICIPATION - FLORIDA LOANS - DEC 09 | 328.28 | | |
| | 12/31/09 27240 | CDJ | MEDALLION FUNDING CORP. - Invoice: DEC 09 - PARTICIPATION - CLEANERS OF NORTH BEACH LLC - DEC 09 | 712.35 | | |
| | 12/31/09 27241 | CDJ | MEYER ACKERMAN - Invoice: DEC 09 - PARTICIPATION - FLORIDA LOANS - DEC 09 | 121.03 | | |
| | 12/31/09 27242 | CDJ | MILESTONE GROWTH FUND INC. - Invoice: DEC 09 - PARTICIPATION - FLORIDA LOANS - DEC 09 | 650.39 | | |
| | 12/31/09 27243 | CDJ | Pinnacle Commercial Capital, L - Invoice: DEC 09 - PARTICIPATION - GOLDEN TRIANGLE ENTERPRISES LLC - DEC 09 | 533.22 | | |
| | 12/31/09 27244 | CDJ | STEVE PORTNOY TRUSTEE - Invoice: DEC 09 - PARTICIPATION - FLORIDA LOANS - DEC 09 | 51.74 | | |
| | 12/31/09 27245 | CDJ | STEVE PORTNOY TRUSTEE - Invoice: DEC 09 - PARTICIPATION - FLORIDA LOANS - DEC 09 | 51.74 | | |

6/22/11 at 14:44:34.37                                                                              Page: 176

# Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| | | | 09 | | | |
| 2000.7 (cont.) | 12/31/09<br>27246 | CDJ | THE OSG CORP. -<br>Invoice: DEC 09 -<br>PARTICIPATION - GWE<br>INC. - DEC 09 | 1,218.19 | | |
| | 12/31/09<br>27247 | CDJ | JERROLD MARCH -<br>Invoice: DEC 09 -<br>PARTICIPATION -<br>FLORIDA LOANS - DEC<br>09 | 525.53 | | |
| | 12/31/09<br>10730 | PJ | INTERNATIONAL<br>PRINT GROUP LLC | | 293.96 | |
| | 12/31/09<br>129761 | PJ | THE TRIEBER GROUP,<br>LLC | | 243.91 | |
| | 12/31/09<br>389 | PJ | FAIRVIEW<br>INVESTMENT<br>SERVICES | | 2,604.16 | |
| | 12/31/09<br>142084 | PJ | Continental Stock<br>Transfer & | | 2,213.60 | |
| | 12/31/09<br>765009 | PJ | BROADRIDGE<br>INVESTORS<br>COMMUNICA | | 36.32 | |
| | | | Current Period Change | 102,176.67 | 110,001.36 | -7,824.69 |
| | 1/1/10 | | Beginning Balance | | | -39,413.88 |
| | 1/1/10<br>2132 | PJ | SURGE ELECTRONIC<br>MEDIA GROUP L | | 2,183.13 | |
| | 1/4/10<br>JAN 2010 | PJ | ELLEN WALKER | | 432.16 | |
| | 1/4/10<br>JAN 2010 | PJ | ROBERT MAZLIACH | | 252.27 | |
| | 1/4/10<br>A1001 | PJ | CLAREWOOD<br>CONSULTING LLC | | 19,155.00 | |
| | 1/4/10<br>15801386 | PJ | NEW YORK STATE<br>INSURANCE FUND | | 1,342.16 | |
| | 1/4/10<br>010410 | PJ | VERIZON | | 538.86 | |
| | 1/4/10<br>DEC 09 | PJ | CAFE BASIL | | 14.23 | |
| | 1/5/10<br>27248 | CDJ | ROBERT MAZLIACH -<br>Invoice: JAN 2010 -<br>SERVICE FEE - JAN<br>2010 | 252.27 | | |
| | 1/5/10<br>35787125 | PJ | OXFORD HEALTH<br>PLANS | | 6,135.10 | |
| | 1/6/10<br>346 | PJ | PPCP INC. | | 50.00 | |
| | 1/7/10<br>BPX-0911- | PJ | MEDIANT<br>COMMUNICATIONS<br>LLC | | 30.19 | |
| | 1/8/10<br>JAN 2010 | PJ | MEDALLION FUNDING<br>CORP. AS SER | | 1,262.03 | |
| | 1/11/10<br>15920 | PJ | GRANOFF WALKER<br>FORLENZA PC | | 17,726.23 | |
| | 1/14/10<br>A7233272 | PJ | AETNA US<br>HEALTHCARE | | 1,156.00 | |
| | 1/15/10<br>10665 | CDJ | AMERICAN EXPRESS -<br>Invoice: DEC 09 -<br>DECEMBER 09 | 1,708.73 | | |
| | 1/15/10<br>10666 | CDJ | BUSINESS WIRE, INC.<br>- Invoice: 3665618 -<br>3665618 | 325.00 | | |

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 2000.7 (cont.) | 1/15/10 10667 | CDJ | CLAREWOOD CONSULTING LLC - Invoice: A1001 - A1001 - JAN 2010 | 19,155.00 | | |
| | 1/15/10 10668 | CDJ | ELLEN WALKER - Invoice: JAN 2010 - REIMBURSEMENT OF EXPENSES - JAN 2010 | 432.16 | | |
| | 1/15/10 10669 | CDJ | FEDERAL EXPRESS - Invoice: 9-439-45691 - 9-439-45691 | 287.69 | | |
| | 1/15/10 10670 | CDJ | INTERNATIONAL PRINT GROUP LLC - Invoice: 10690 - 10690 | 919.99 | | |
| | 1/15/10 10671 | CDJ | INTERNATIONAL PRINT GROUP LLC - Invoice: 10694 - 10694 | 424.61 | | |
| | 1/15/10 10672 | CDJ | INTERNATIONAL PRINT GROUP LLC - Invoice: 10705 - 10705 | 244.97 | | |
| | 1/15/10 10673 | CDJ | INTERNATIONAL PRINT GROUP LLC - Invoice: 10709 - 10709 | 244.97 | | |
| | 1/15/10 10674 | CDJ | INTERNATIONAL PRINT GROUP LLC - Invoice: 10720 - 10720 | 228.64 | | |
| | 1/15/10 10675 | CDJ | INTERNATIONAL PRINT GROUP LLC - Invoice: 10730 - 10730 | 293.96 | | |
| | 1/15/10 10676 | CDJ | INVESHARE INC. - Invoice: 1895 - 1895 | 25.60 | | |
| | 1/15/10 10677 | CDJ | INVESHARE INC. - Invoice: 1894 - 1894 | 25.60 | | |
| | 1/15/10 10678 | CDJ | MEDALLION FUNDING CORP. AS SER - Invoice: JAN 2010 - MONTHLY PAYMENT - CHARLES LAURISTON - JAN 2010 | 1,262.03 | | |
| | 1/15/10 10679 | CDJ | NEW YORK STATE INSURANCE FUND - Invoice: 15801386 - 15801386 - WORKERS' COMPENSATION 2/1/10 - 2/1/11 | 1,342.16 | | |
| | 1/15/10 10680 | CDJ | PPCP INC. - Invoice: 346 - 346 | 40.00 | | |
| | 1/15/10 10681 | CDJ | PPCP INC. - Invoice: 346 - 346 | 10.00 | | |
| | 1/15/10 10682 | CDJ | ROSEN SEYMOUR SHAPSS - Invoice: NOV 09 - NOVEMBER 09 | 14,385.00 | | |
| | 1/15/10 10683 | CDJ | STAPLES - Invoice: 122809 - 122809 | 1,680.30 | | |
| | 1/15/10 10684 | CDJ | STEPHEN H. TARNOFSKY CPA - Invoice: 123009 - 123009 | 13,200.00 | | |
| | 1/15/10 10685 | CDJ | TRANS UNION - Invoice: 12909187 - 12909187 | 43.55 | | |
| | 1/15/10 10686 | CDJ | THE TRIEBER GROUP, LLC - Invoice: 129761 - 129761 - WORKERS' | 243.91 | | |

# Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 2000.7 (cont.) | 1/15/10<br>10687 | CDJ | 129761 - WORKERS' COMPENSATION SERVICE CHARGE VERIZON - Invoice: 121909 - 121909 | 277.27 | | |
| | 1/15/10<br>11746 | PJ | GRANOFF WALKER FORLENZA PC | | 870.00 | |
| | 1/15/10<br>10688 | CDJ | GRANOFF WALKER FORLENZA PC - Invoice: 15920 - 15920 - JAN 2010 RENT - DISBURSEMENTS & EXPENSES | 17,726.23 | | |
| | 1/15/10<br>10689 | CDJ | GRANOFF WALKER FORLENZA PC - Invoice: 11746 - 11746 - SEALMAX INC. FORECLOSURE | 870.00 | | |
| | 1/15/10<br>JAN 2010 | PJ | MARGARET CHANCE | | 77.86 | |
| | 1/18/10<br>011810 | PJ | TIME WARNER CABLE OF NYC | | 79.70 | |
| | 1/18/10<br>1132-2754- | PJ | FEDERAL EXPRESS | | 108.04 | |
| | 1/19/10<br>Feb 2010 | PJ | ROBERT MAZLIACH | | 251.59 | |
| | 1/19/10<br>011910 | PJ | VERIZON | | 283.53 | |
| | 1/19/10<br>0119ACMT | PJ | JOHN R. LAIRD | | 1,250.00 | |
| | 1/19/10<br>0119ACMT | PJ | HOWARD SOMMER | | 1,000.00 | |
| | 1/19/10<br>0119ACMT | PJ | PETER BOOCKVAR | | 1,000.00 | |
| | 1/21/10<br>JAN 2010 | PJ | AMERICAN EXPRESS | | 290.58 | |
| | 1/25/10<br>012510 | PJ | STEPHEN H. TARNOFSKY CPA | | 14,300.00 | |
| | 1/25/10<br>0522200 | PJ | THE WEEKS-LERMAN GROUP | | 40.29 | |
| | 1/25/10<br>0586883 | PJ | THE WEEKS-LERMAN GROUP | | 145.29 | |
| | 1/26/10<br>JAN 2010 | PJ | Lee A. Forlenza | | 279.90 | |
| | 1/27/10<br>012710 | PJ | STAPLES | | 1,477.62 | |
| | 1/27/10<br>01009193 | PJ | TRANS UNION | | 43.55 | |
| | 1/28/10<br>27249 | CDJ | AETNA US HEALTHCARE - Invoice: A7233272 - A7233272 - FEB 2010 | 1,156.00 | | |
| | 1/28/10<br>27250 | CDJ | AMERICAN EXPRESS - Invoice: JAN 2010 - JAN 2010 | 290.58 | | |
| | 1/28/10<br>27251 | CDJ | BROADRIDGE INVESTORS COMMUNICA - Invoice: 765009 - 765009 | 36.32 | | |
| | 1/28/10<br>27252 | CDJ | CAFE BASIL - Invoice: DEC 09 - DEC 09 | 14.23 | | |
| | 1/28/10<br>27253 | CDJ | MARGARET CHANCE - Invoice: JAN 2010 - REIMBURSEMENT OF | 77.86 | | |

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID / Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 2000.7 (cont.) | 1/28/10 27254 | CDJ | REIMBURSEMENT OF EXPENSES - JAN 2010 Continental Stock Transfer & - Invoice: 142084 - 142084 | 2,213.60 | | |
| | 1/28/10 27255 | CDJ | FAIRVIEW INVESTMENT SERVICES - Invoice: 389 - 389 - 1/2 COMPLIANCE SERVICES - DEC 09 | 2,604.16 | | |
| | 1/28/10 27256 | CDJ | FEDERAL EXPRESS - Invoice: 1132-2754-0 - 1132-2754-0 | 108.04 | | |
| | 1/28/10 27257 | CDJ | Lee A. Forlenza - Invoice: JAN 2010 - REIMBURSEMENT OF EXPENSES - JAN 2010 | 279.90 | | |
| | 1/28/10 27258 | CDJ | MEDIANT COMMUNICATIONS LLC - Invoice: BPX-0911-0296 - BPX-0911-0296 | 30.19 | | |
| | 1/28/10 27259 | CDJ | OXFORD HEALTH PLANS - Invoice: 35787125 - 35787125 - FEB 2010 | 6,135.10 | | |
| | 1/28/10 27260 | CDJ | ROBERT MAZLIACH - Invoice: Feb 2010 - SEVICE FEE - FEB 2010 | 251.59 | | |
| | 1/28/10 27261 | CDJ | STEPHEN H. TARNOFSKY CPA - Invoice: 012510 - 012510 | 14,300.00 | | |
| | 1/28/10 27262 | CDJ | SURGE ELECTRONIC MEDIA GROUP L - Invoice: 2132 - 2132 - MONTHLY HOSTED FEE | 2,183.13 | | |
| | 1/28/10 27263 | CDJ | TIME WARNER CABLE OF NYC - Invoice: 011810 - 01/18/10 - 02/17/10 | 79.70 | | |
| | 1/28/10 27264 | CDJ | VERIZON - Invoice: 010410 - BILLING DATE - 01/04/10 | 538.86 | | |
| | 1/28/10 27265 | CDJ | VERIZON - Invoice: 011910 - BILLING DATE - 01/19/10 | 283.53 | | |
| | 1/28/10 27266 | CDJ | THE WEEKS-LERMAN GROUP - Invoice: 0522200 - 0522200 | 40.29 | | |
| | 1/28/10 0128CCMT | PJ | IVAN WOLPERT | | 1,250.00 | |
| | 1/28/10 0128CCMT | PJ | JOHN R. LAIRD | | 1,000.00 | |
| | 1/28/10 0128CCMT | PJ | STEVEN ETRA | | 1,000.00 | |
| | 1/28/10 407 | PJ | FAIRVIEW INVESTMENT SERVICES | | 2,604.17 | |
| | 1/28/10 | PJ | EMPIRE HEALTH CHOICE HMO | | 3,789.00 | |

## Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 2000.7 (cont.) | FEB 2010 | | CHOICE HMO | | | |
| | 1/31/10<br>JAN 2010 | PJ | BRIAN ACKERMAN | | 34.65 | |
| | 1/31/10<br>JAN 2010 | PJ | FRESHSTART<br>VENTURE  CAPITAL<br>CO | | 743.60 | |
| | 1/31/10<br>JAN 2010 | PJ | HANAM CAPITAL<br>CORPORATION | | 328.28 | |
| | 1/31/10<br>JAN 2010 | PJ | MEDALLION FUNDING<br>CORP. | | 712.35 | |
| | 1/31/10<br>JAN 2010 | PJ | MEYER ACKERMAN | | 121.03 | |
| | 1/31/10<br>JAN 2010 | PJ | MILESTONE GROWTH<br>FUND INC. | | 650.39 | |
| | 1/31/10<br>JAN 2010 | PJ | STEVE PORTNOY<br>TRUSTEE | | 51.74 | |
| | 1/31/10<br>JAN 2010 | PJ | STEVE PORTNOY<br>TRUSTEE | | 51.74 | |
| | 1/31/10<br>JAN 2010 | PJ | JERROLD MARCH | | 525.53 | |
| | 1/31/10<br>JAN 2010 | PJ | THE OSG CORP. | | 1,218.19 | |
| | 1/31/10<br>JAN 2010 | PJ | Pinnacle Commercial<br>Capital, L | | 533.17 | |
| | 1/31/10<br>27267 | CDJ | BRIAN ACKERMAN -<br>Invoice: JAN 2010 -<br>PARTICIPATION -<br>FLORIDA LOANS - JAN<br>2010 | 34.65 | | |
| | 1/31/10<br>27268 | CDJ | FRESHSTART<br>VENTURE  CAPITAL<br>CO - Invoice: JAN 2010<br>- PARTICIPATION -<br>FLORIDA LOANS - JAN<br>2010 | 743.60 | | |
| | 1/31/10<br>27269 | CDJ | HANAM CAPITAL<br>CORPORATION -<br>Invoice: JAN 2010 -<br>PARTICIPATION -<br>FLORIDA LOANS - JAN<br>2010 | 328.28 | | |
| | 1/31/10<br>27270 | CDJ | MEDALLION FUNDING<br>CORP. - Invoice: JAN<br>2010 - PARTICIPATION<br>- CLEANERS OF<br>NORTH BEACH LLC -<br>JAN 2010 | 712.35 | | |
| | 1/31/10<br>27271 | CDJ | MEYER ACKERMAN -<br>Invoice: JAN 2010 -<br>PARTICIPATION -<br>FLORIDA LOANS - JAN<br>2010 | 121.03 | | |
| | 1/31/10<br>27272 | CDJ | MILESTONE GROWTH<br>FUND INC. - Invoice:<br>JAN 2010 -<br>PARTICIPATION -<br>FLORIDA LOANS - JAN<br>2010 | 650.39 | | |
| | 1/31/10<br>27273 | CDJ | STEVE PORTNOY<br>TRUSTEE - Invoice:<br>JAN 2010 -<br>PARTICIPATION -<br>FLORIDA LOANS - JAN<br>2010 | 51.74 | | |

6/22/11 at 14:44:34.57

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 2000.7 (cont.) | 1/31/10 27274 | CDJ | 2010 STEVE PORTNOY TRUSTEE - Invoice: JAN 2010 - PARTICIPATION - FLORIDA LOANS - JAN 2010 | 51.74 | | |
| | 1/31/10 27275 | CDJ | JERROLD MARCH - Invoice: JAN 2010 - PARTICIPATION - FLORIDA LOANS - JAN 2010 | 525.53 | | |
| | 1/31/10 27276 | CDJ | THE OSG CORP. - Invoice: JAN 2010 - PARTICIPATION - GWE INC. - JAN 2010 | 1,218.19 | | |
| | 1/31/10 27277 | CDJ | Pinnacle Commercial Capital, L - Invoice: JAN 2010 - PARTICIPATION - GOLDEN TRIANGLE ENTERPRISES LLC - JAN 2010 | 533.17 | | |
| | 1/31/10 013110 | PJ | STEPHEN H. TARNOFSKY CPA | | 5,500.00 | |
| | 1/31/10 143083 | PJ | Continental Stock Transfer & | | 1,317.38 | |
| | | | Current Period Change | 111,243.39 | 93,206.53 | 18,036.86 |
| | 2/1/10 | | Beginning Balance | | | -21,377.02 |
| | 2/1/10 347 | PJ | PPCP INC. | | 400.00 | |
| | 2/1/10 FEB 2010 | PJ | MEDALLION FUNDING CORP. AS SER | | 1,262.03 | |
| | 2/1/10 15897781 | PJ | NEW YORK STATE INSURANCE FUND | | 1,352.16 | |
| | 2/1/10 2197 | PJ | SURGE ELECTRONIC MEDIA GROUP L | | 2,183.13 | |
| | 2/2/10 JAN 2010 | PJ | CAFE BASIL | | 9.61 | |
| | 2/3/10 A1002 | PJ | CLAREWOOD CONSULTING LLC | | 19,155.00 | |
| | 2/4/10 27278 | CDJ | PPCP INC. - Invoice: 347 - INVOICE #347 | 320.00 | | |
| | 2/4/10 27279 | CDJ | PPCP INC. - Invoice: 347 - INVOICE #347 | 80.00 | | |
| | 2/4/10 27280 | CDJ | MEDALLION FUNDING CORP. AS SER - Invoice: FEB 2010 - MONTHLY PAYMENT RE: CHARLES LAURISTON - FEB 2010 | 1,262.03 | | |
| | 2/4/10 27281 | CDJ | THE WEEKS-LERMAN GROUP - Invoice: 0586883 - 0586883 | 145.29 | | |
| | 2/4/10 27282 | CDJ | JOHN R. LAIRD - Invoice: 0119ACMTG - AUDIT COMMITTEE MEETING 1/19/10 | 1,250.00 | | |
| | 2/4/10 27283 | CDJ | HOWARD SOMMER - Invoice: 0119ACMTG - AUDIT COMMITTEE MEETING 1/19/10 | 1,000.00 | | |

# Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 2000.7 (cont.) | 2/4/10<br>27284 | CDJ | MEETING 1/19/10<br>PETER BOOCKVAR -<br>Invoice: 0119ACMTG -<br>AUDIT COMMITTEE<br>MEETING 1/19/10 | 1,000.00 | | |
| | 2/4/10<br>27285 | CDJ | IVAN WOLPERT -<br>Invoice: 0128CCMTG -<br>COMPENSATION<br>COMMITTEE MEETING<br>1/28/10 | 1,250.00 | | |
| | 2/4/10<br>27286 | CDJ | JOHN R. LAIRD -<br>Invoice: 0128CCMTG -<br>COMPENSATION<br>COMMITTEE MEETING<br>1/28/10 | 1,000.00 | | |
| | 2/4/10<br>27287 | CDJ | STEVEN ETRA -<br>Invoice: 0128CCMTG -<br>COMPENSATION<br>COMMITTEE MEETING<br>1/28/10 | 1,000.00 | | |
| | 2/4/10<br>020410 | PJ | VERIZON | | 546.93 | |
| | 2/4/10<br>159676 | PJ | GRANOFF WALKER<br>FORLENZA PC | | 18,301.12 | |
| | 2/4/10<br>35957024 | PJ | OXFORD HEALTH<br>PLANS | | 6,135.10 | |
| | 2/5/10<br>020510 | PJ | NYC Dept. of Finance | | 7,911.97 | |
| | 2/5/10<br>2010 RENE | PJ | NASBIC | | 6,060.00 | |
| | 2/8/10<br>FEB 2010 | PJ | ELLEN WALKER | | 432.16 | |
| | 2/8/10<br>020810 | PJ | STEPHEN H.<br>TARNOFSKY CPA | | 4,400.00 | |
| | 2/9/10<br>209ACMTG | PJ | PETER BOOCKVAR | | 1,000.00 | |
| | 2/9/10<br>209ACMTG | PJ | HOWARD SOMMER | | 1,000.00 | |
| | 2/10/10<br>0210BDMT | PJ | PETER BOOCKVAR | | 1,000.00 | |
| | 2/10/10<br>0210BDMT | PJ | HOWARD SOMMER | | 1,000.00 | |
| | 2/10/10<br>0210BDMT | PJ | PRIDES CAPITAL LLC | | 1,000.00 | |
| | 2/10/10<br>0210BDMT | PJ | STEVEN ETRA | | 1,000.00 | |
| | 2/10/10<br>0210BDMT | PJ | IVAN WOLPERT | | 1,000.00 | |
| | 2/10/10<br>0210BDMT | PJ | ELLIOT H SINGER | | 1,000.00 | |
| | 2/12/10<br>11756 SEA | PJ | GRANOFF WALKER<br>FORLENZA PC | | 455.50 | |
| | 2/12/10<br>18177 | PJ | TANTON AND<br>COMPANY LLP | | 6,500.00 | |
| | 2/12/10<br>18179 | PJ | TANTON AND<br>COMPANY LLP | | 600.00 | |
| | 2/12/10<br>11757 - E& | PJ | GRANOFF WALKER<br>FORLENZA PC | | 2,026.00 | |
| | 2/13/10<br>MAR 2010 | PJ | EMPIRE HEALTH<br>CHOICE HMO | | 4,271.62 | |
| | 2/15/10<br>9-500-0943 | PJ | FEDERAL EXPRESS | | 634.52 | |
| | 2/15/10 | PJ | COMPUWEB | | 149.85 | |

# Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 2000.7 (cont.) | 26747<br>2/15/10<br>JAN 2010 | PJ | ROSEN SEYMOUR SHAPSS | | 19,469.00 | |
| | 2/15/10<br>A7346562 | PJ | AETNA US HEALTHCARE | | 1,156.00 | |
| | 2/16/10<br>48780 E&Y | PJ | GRANOFF WALKER FORLENZA PC | | 2,855.00 | |
| | 2/16/10<br>27288 | CDJ | CLAREWOOD CONSULTING LLC - Invoice: A1002 - A1002 - 1/2 FEB 2010 | 19,155.00 | | |
| | 2/16/10<br>27289 | CDJ | EMPIRE HEALTH CHOICE HMO - Invoice: FEB 2010 - FEB 2010 | 3,789.00 | | |
| | 2/16/10<br>27290 | CDJ | ELLEN WALKER - Invoice: FEB 2010 - REIMBURSEMENT OF EXPENSES - FEB 2010 | 432.16 | | |
| | 2/16/10<br>27291 | CDJ | FAIRVIEW INVESTMENT SERVICES - Invoice: 407 - 407 - 1/2 COMPLIANCE SERVICES - JAN 2010 | 2,604.17 | | |
| | 2/16/10<br>27292 | CDJ | NEW YORK STATE INSURANCE FUND - Invoice: 15897781 - 15897781 - WORKERS' COMPENSATION | 1,352.16 | | |
| | 2/16/10<br>27293 | CDJ | STAPLES - Invoice: 012710 - 012710 | 1,477.62 | | |
| | 2/16/10<br>27294 | CDJ | STEPHEN H. TARNOFSKY CPA - Invoice: 013110 - 013110 | 5,500.00 | | |
| | 2/16/10<br>27295 | CDJ | STEPHEN H. TARNOFSKY CPA - Invoice: 020810 - 020810 | 4,400.00 | | |
| | 2/16/10<br>27296 | CDJ | TRANS UNION - Invoice: 01009193 - 01009193 | 43.55 | | |
| | 2/16/10<br>27297 | CDJ | GRANOFF WALKER FORLENZA PC - Invoice: 159676 - 159676 - FEB RENT | 18,301.12 | | |
| | 2/16/10<br>27298 | CDJ | GRANOFF WALKER FORLENZA PC - Invoice: 48780 E&Y - 48780 - E&Y FORECLOSURE | 2,855.00 | | |
| | 2/17/10<br>FEB 2010 | PJ | SILVIA MULLENS | | 106.98 | |
| | 2/17/10<br>161 | PJ | TRUE TYPE PRINTING CO. INC. | | 4,483.60 | |
| | 2/17/10<br>103151 | PJ | BWD GROUP LIMITED | | 6,228.00 | |
| | 2/18/10<br>021810 | PJ | TIME WARNER CABLE OF NYC | | 79.67 | |
| | 2/18/10<br>021810 | PJ | SMALL BUSINESS ADMINISTRATION | | 200.00 | |
| | 2/18/10<br>27300 | CDJ | SMALL BUSINESS ADMINISTRATION - | 200.00 | | |

# Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| | | | Invoice: 021810 - PROCESSING FEE RE: UPDATED BACKGROUND CHECK FOR SILVIA M. MULLENS | | | |
| 2000.7 (cont.) | 2/19/10<br>FEB 2010 | PJ | MARGARET CHANCE | | 255.12 | |
| | 2/19/10<br>021910 | PJ | STEPHEN H. TARNOFSKY CPA | | 8,800.00 | |
| | 2/19/10<br>FEB 2010 | PJ | AMERICAN EXPRESS | | 414.59 | |
| | 2/19/10<br>021910 | PJ | VERIZON | | 279.69 | |
| | 2/20/10<br>10766 | PJ | INTERNATIONAL PRINT GROUP LLC | | 822.01 | |
| | 2/23/10<br>MAR 2010 | PJ | ROBERT MAZLIACH | | 250.91 | |
| | 2/24/10<br>FEB 2010 | PJ | STAPLES | | 1,213.66 | |
| | 2/25/10<br>1144 | CDJ | PETER BOOCKVAR - Invoice: 209ACMTG - AUDIT COMMITTEE MEETING 2/9/10 | 1,000.00 | | |
| | 2/25/10<br>1145 | CDJ | PETER BOOCKVAR - Invoice: 0210BDMTG - BOARD MEETING 2/10/10 | 1,000.00 | | |
| | 2/25/10<br>1146 | CDJ | HOWARD SOMMER - Invoice: 209ACMTG - AUDIT COMMITTEE MEETING 2/9/10 | 1,000.00 | | |
| | 2/25/10<br>1147 | CDJ | HOWARD SOMMER - Invoice: 0210BDMTG - BOARD MEETING 2/10/10 | 1,000.00 | | |
| | 2/25/10<br>1148 | CDJ | PRIDES CAPITAL LLC - Invoice: 0210BDMTG - BOARD MEETING 2/10/10 | 1,000.00 | | |
| | 2/25/10<br>1149 | CDJ | STEVEN ETRA - Invoice: 0210BDMTG - BOARD MEETING 2/10/10 | 1,000.00 | | |
| | 2/25/10<br>1150 | CDJ | IVAN WOLPERT - Invoice: 0210BDMTG - BOARD MEETING 2/10/10 | 1,000.00 | | |
| | 2/25/10<br>1151 | CDJ | ELLIOTT H SINGER - Invoice: 0210BDMTG - BOARD MEETING 2/10/10 | 1,000.00 | | |
| | 2/25/10<br>1152 | CDJ | CAFE BASIL - Invoice: JAN 2010 - JAN 2010 | 9.61 | | |
| | 2/25/10<br>1154 | CDJ | COMPUWEB - Invoice: 26747 - 26747 - JAN-MAR 2010 - HOSTING FEE | 149.85 | | |
| | 2/25/10<br>1155 | CDJ | Continental Stock Transfer & - Invoice: 143083 - 143083 | 1,317.38 | | |
| | 2/25/10<br>1156 | CDJ | EMPIRE HEALTH CHOICE HMO - Invoice: MAR 2010 - MAR 2010 | 4,271.62 | | |

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 2000.7 (cont.) | 2/25/10 1157 | CDJ | MAR 2010 - MAR 2010 FEDERAL EXPRESS - Invoice: 9-500-09437 - 9-500-09437 | 634.52 | | |
| | 2/25/10 1158 | CDJ | INTERNATIONAL PRINT GROUP LLC - Invoice: 10766 - 10766 | 822.01 | | |
| | 2/25/10 1159 | CDJ | NASBIC - Invoice: 2010 RENEWAL - 2010 ACTIVE MEMBERSHIP RENEWAL | 6,060.00 | | |
| | 2/25/10 1160 | CDJ | OXFORD HEALTH PLANS - Invoice: 35957024 - 35957024 - MAR 2010 | 6,135.10 | | |
| | 2/25/10 1161 | CDJ | ROBERT MAZLIACH - Invoice: MAR 2010 - SERVICE FEE - MAR 2010 | 250.91 | | |
| | 2/25/10 1162 | CDJ | ROSEN SEYMOUR SHAPSS - Invoice: JAN 2010 - JAN 2010 | 19,469.00 | | |
| | 2/25/10 1163 | CDJ | NYC Dept. of Finance - Invoice: 020510 - PROPERTY TAX & WATER/SEWER CHARGES RE: 130-41 91 AVE LLC | 7,911.97 | | |
| | 2/25/10 1164 | CDJ | SILVIA MULLENS - Invoice: FEB 2010 - FEB 2010 | 106.98 | | |
| | 2/25/10 1165 | CDJ | STEPHEN H. TARNOFSKY CPA - Invoice: 021910 - 021910 | 8,800.00 | | |
| | 2/25/10 1166 | CDJ | TIME WARNER CABLE OF NYC - Invoice: 021810 - 2/18/10 - 3/17/10 | 79.67 | | |
| | 2/25/10 1167 | CDJ | TRUE TYPE PRINTING CO. INC. - Invoice: 161 - 161 - FEB RENT | 4,483.60 | | |
| | 2/25/10 1168 | CDJ | VERIZON - Invoice: 020410 - 020410 212-355-2449 | 546.93 | | |
| | 2/25/10 1169 | CDJ | GRANOFF WALKER FORLENZA PC - Invoice: 11756 SEALMAX - 11756 - SEALMAX FORECLOSURE | 455.50 | | |
| | 2/25/10 10764 | PJ | INTERNATIONAL PRINT GROUP LLC | | 195.98 | |
| | 2/25/10 3695075 | PJ | BUSINESS WIRE, INC. | | 400.00 | |
| | 2/27/10 02009224 | PJ | TRANS UNION | | 43.55 | |
| | 2/28/10 FEB 2010 | PJ | BRIAN ACKERMAN | | 34.65 | |
| | 2/28/10 FEB 2010 | PJ | FRESHSTART VENTURE  CAPITAL CO | | 743.60 | |
| | 2/28/10 | PJ | HANAM CAPITAL CORPORATION | | 328.28 | |

# Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 2000.7 (cont.) | FEB 2010 | | CORPORATION | | | |
| | 2/28/10 | PJ | MEDALLION FUNDING CORP. | | 712.35 | |
| | FEB 2010 | | | | | |
| | 2/28/10 | PJ | MEYER ACKERMAN | | 121.03 | |
| | FEB 2010 | | | | | |
| | 2/28/10 | PJ | MILESTONE GROWTH FUND INC. | | 650.39 | |
| | FEB 2010 | | | | | |
| | 2/28/10 | PJ | Pinnacle Commercial Capital, L | | 533.14 | |
| | FEB 2010 | | | | | |
| | 2/28/10 | PJ | STEVE PORTNOY TRUSTEE | | 51.74 | |
| | FEB 2010 | | | | | |
| | 2/28/10 | PJ | STEVE PORTNOY TRUSTEE | | 51.74 | |
| | FEB 2010 | | | | | |
| | 2/28/10 | PJ | THE OSG CORP. | | 1,218.19 | |
| | FEB 2010 | | | | | |
| | 2/28/10 | PJ | JERROLD MARCH | | 525.53 | |
| | FEB 2010 | | | | | |
| | 2/28/10<br>10690 | CDJ | BRIAN ACKERMAN - Invoice: FEB 2010 - PARTICIPATION - FLORIDA LOANS - FEB 2010 | 34.65 | | |
| | 2/28/10<br>10691 | CDJ | FRESHSTART VENTURE CAPITAL CO - Invoice: FEB 2010 - PARTICIPATION - FLORIDA LOANS - FEB 2010 | 743.60 | | |
| | 2/28/10<br>10692 | CDJ | HANAM CAPITAL CORPORATION - Invoice: FEB 2010 - PARTICIPATION - FLORIDA LOANS - FEB 2010 | 328.28 | | |
| | 2/28/10<br>10693 | CDJ | MEDALLION FUNDING CORP. - Invoice: FEB 2010 - PARTICIPATION - CLEANERS OF NORTH BEACH LLC - FEB 2010 | 712.35 | | |
| | 2/28/10<br>10694 | CDJ | MEYER ACKERMAN - Invoice: FEB 2010 - PARTICIPATION - FLORIDA LOANS - FEB 2010 | 121.03 | | |
| | 2/28/10<br>10695 | CDJ | MILESTONE GROWTH FUND INC. - Invoice: FEB 2010 - PARTICIPATION - FLORIDA LOANS - FEB 2010 | 650.39 | | |
| | 2/28/10<br>10696 | CDJ | Pinnacle Commercial Capital, L - Invoice: FEB 2010 - PARTICIPATION - GOLDEN TRIANGLE ENTERPRISES LLC - FEB 2010 | 533.14 | | |
| | 2/28/10<br>10697 | CDJ | STEVE PORTNOY TRUSTEE - Invoice: FEB 2010 - PARTICIPATION - FLORIDA LOANS - FEB 2010 | 51.74 | | |

6/22/11 at 14:44:34.80                                                                                              Page: 187

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID / Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 2000.7 (cont.) | 2/28/10 10698 | CDJ | STEVE PORTNOY TRUSTEE - Invoice: FEB 2010 - PARTICIPATION - FLORIDA LOANS - FEB 2010 | 51.74 | | |
| | 2/28/10 10699 | CDJ | THE OSG CORP. - Invoice: FEB 2010 - PARTICIPATION - GWE INC. - FEB 2010 | 1,218.19 | | |
| | 2/28/10 10700 | CDJ | JERROLD MARCH - Invoice: FEB 2010 - PARTICIPATION - FLORIDA LOANS - FEB 2010 | 525.53 | | |
| | 2/28/10 FEB 2010 | PJ | CAFE BASIL | | 9.93 | |
| | 2/28/10 410 | PJ | FAIRVIEW INVESTMENT SERVICES | | 2,604.17 | |
| | | | Current Period Change | 142,892.39 | 145,625.20 | -2,732.81 |
| | 3/1/10 | | Beginning Balance | | | -24,109.83 |
| | 3/1/10 2253 | PJ | SURGE ELECTRONIC MEDIA GROUP L | | 2,183.13 | |
| | 3/1/10 MAR 2010 | PJ | MEDALLION FUNDING CORP. AS SER | | 1,262.03 | |
| | 3/1/10 P11127 | PJ | GLOCAP SEARCH LLC | | 13,750.00 | |
| | 3/2/10 3057 | PJ | GLOCAP SEARCH LLC | | 48.47 | |
| | 3/3/10 MAR 2010 | PJ | ELLEN WALKER | | 432.16 | |
| | 3/3/10 700010150 | PJ | PEACHTREE FORMS | | 119.17 | |
| | 3/3/10 Mar 2010 | PJ | MURRAY INDICK | | 551.40 | |
| | 3/3/10 030310 | PJ | A.F. LAMA REALTY SERVICES INC. | | 1,000.00 | |
| | 3/3/10 560072046 | PJ | BLOOMBERG FINANCE LP | | 6,205.88 | |
| | 3/3/10 560072045 | PJ | BLOOMBERG FINANCE LP | | 1,253.27 | |
| | 3/4/10 15606 | PJ | GRANOFF WALKER FORLENZA PC | | 18,164.02 | |
| | 3/4/10 36128987 | PJ | OXFORD HEALTH PLANS | | 6,135.10 | |
| | 3/5/10 025869703 | PJ | SAFEGUARD BUSINESS SYSTEMS | | 61.50 | |
| | 3/8/10 030810 | PJ | TRANSITCENTER INC. | | 1,585.50 | |
| | 3/8/10 INV-06257 | PJ | THE WEEKS-LERMAN GROUP | | 65.98 | |
| | 3/8/10 MAR 2010 | PJ | VERIZON | | 543.68 | |
| | 3/9/10 10701 | CDJ | AETNA US HEALTHCARE - Invoice: A7346562 - A7346562 - MARCH 2010 | 1,156.00 | | |
| | 3/9/10 10702 | CDJ | AMERICAN EXPRESS - Invoice: FEB 2010 - FEB 2010 | 414.59 | | |

6/22/11 at 14:44:34.85

# Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 2000.7 (cont.) | 3/9/10<br>10703 | CDJ | FEB 2010<br>BWD GROUP LIMITED - Invoice: 103151 - 103151 - POLICY#EPL2824250 - EMPLOYMENT PRACTICES LIABILITY | 6,228.00 | | |
| | 3/9/10<br>10704 | CDJ | CAFE BASIL - Invoice: FEB 2010 - FEB 2010 | 9.93 | | |
| | 3/9/10<br>10705 | CDJ | MARGARET CHANCE - Invoice: FEB 2010 - REIMBURSEMENT OF EXPENSES - FEB 2010 | 255.12 | | |
| | 3/9/10<br>10706 | CDJ | ELLEN WALKER - Invoice: MAR 2010 - REIMBURSEMENT OF EXPENSES - MARCH 2010 | 432.16 | | |
| | 3/9/10<br>10707 | CDJ | INTERNATIONAL PRINT GROUP LLC - Invoice: 10764 - 10764 | 195.98 | | |
| | 3/9/10<br>10708 | CDJ | MEDALLION FUNDING CORP. AS SER - Invoice: MAR 2010 - MONTHLY PAYMENT RE: CHARLES LAURISTON - MAR 2010 | 1,262.03 | | |
| | 3/9/10<br>10709 | CDJ | SURGE ELECTRONIC MEDIA GROUP L - Invoice: 2197 - MONTHLY HOSTED FEE - FEB 2010 | 2,183.13 | | |
| | 3/9/10<br>10710 | CDJ | SURGE ELECTRONIC MEDIA GROUP L - Invoice: 2253 - MONTHLY HOSTED FEE - MAR 2010 | 2,183.13 | | |
| | 3/9/10<br>10711 | CDJ | TANTON AND COMPANY LLP - Invoice: 18177 - 18177 - TAX RETURNS FEE - 6/30/09 | 6,500.00 | | |
| | 3/9/10<br>10712 | CDJ | TANTON AND COMPANY LLP - Invoice: 18179 - 18179 - TAX RETURNS FEE - EAF HOLDING CORP. - 6/30/09 | 600.00 | | |
| | 3/9/10<br>10713 | CDJ | VERIZON - Invoice: 021910 - 02/19/10 - (718) 609-0771 | 279.69 | | |
| | 3/9/10<br>10714 | CDJ | GRANOFF WALKER FORLENZA PC - Invoice: 11757 - E&Y - 11757 - E&Y GENERAL CONSTRUCTION - FORECLOSURE | 2,026.00 | | |
| | 3/9/10<br>10715 | CDJ | STAPLES - Invoice: FEB 2010 - FEB 2010 | 1,213.66 | | |
| | 3/9/10<br>10716 | CDJ | TRANSITCENTER INC. - Invoice: 030810 - TRANSITCHEKS - MAR 2010 | 1,585.50 | | |

**Elk Associates Funding Corporation**
**General Ledger**
**For the Period From Jul 1, 2009 to Jun 30, 2010**

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 2000.7 (cont.) | 3/9/10<br>2009 EST | PJ | 2010<br>STATE OF NEW JERSEY CBT | | 1,040.00 | |
| | 3/9/10<br>2009 COR | PJ | STATE OF NEW JERSEY CBT | | 35.00 | |
| | 3/9/10<br>10717 | CDJ | STATE OF NEW JERSEY CBT - Invoice: 2009 EST TAX - ESTIMATED TAX 3/15/10 VOUCHER 3 & 6/15/10 VOUCHER 4 - FORM CBT-150C | 1,040.00 | | |
| | 3/9/10<br>10718 | CDJ | STATE OF NEW JERSEY CBT - Invoice: 2009 CORP TAX - NJ CORPORATION BUSINESS TAX RETURN 6/30/09 - FORM CBT-100 | 35.00 | | |
| | 3/9/10<br>JUNE 09 | PJ | SMALL BUSINESS ADMINISTRATION | | 6,822.00 | |
| | 3/11/10<br>Apr 2010 | PJ | ROBERT MAZLIACH | | 250.22 | |
| | 3/11/10<br>10720 | CDJ | GRANOFF WALKER FORLENZA PC - Invoice: 15606 - 15606 - MAR 2010 RENT & EXPENSES | 18,164.02 | | |
| | 3/11/10<br>MAR 2010 | PJ | PETER BOOCKVAR | | 7,250.00 | |
| | 3/11/10<br>MAR 2010 | PJ | STEVEN ETRA | | 7,250.00 | |
| | 3/11/10<br>MAR 2010 | PJ | PRIDES CAPITAL LLC | | 7,250.00 | |
| | 3/11/10<br>MAR 2010 | PJ | JOHN R. LAIRD | | 8,500.00 | |
| | 3/11/10<br>MAR 2010 | PJ | ELLIOTT H SINGER | | 7,250.00 | |
| | 3/11/10<br>MAR 2010 | PJ | HOWARD SOMMER | | 7,250.00 | |
| | 3/11/10<br>MAR 2010 | PJ | IVAN WOLPERT | | 8,500.00 | |
| | 3/11/10<br>10721 | CDJ | PETER BOOCKVAR - Invoice: MAR 2010 - BALANCE DUE RETAINER & BOARD MEETING FEES | 7,250.00 | | |
| | 3/11/10<br>10722 | CDJ | STEVEN ETRA - Invoice: MAR 2010 - BALANCE DUE RETAINER & BOARD MEETING FEES | 7,250.00 | | |
| | 3/11/10<br>10723 | CDJ | PRIDES CAPITAL LLC - Invoice: MAR 2010 - BALANCE DUE RETAINER & BOARD MEETING FEES | 7,250.00 | | |
| | 3/11/10<br>10724 | CDJ | JOHN R. LAIRD - Invoice: MAR 2010 - BALANCE DUE RETAINER & BOARD MEETING FEES | 8,500.00 | | |
| | 3/11/10 | CDJ | ELLIOTT H SINGER - Invoice: MAR 2010 | 7,250.00 | | |

6/22/11 at 14:44:34.93

Page: 190

## Elk Associates Funding Corporation
## General Ledger
## For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 2000.7 (cont.) | 10725 | | Invoice: MAR 2010 - BALANCE DUE RETAINER & BOARD MEETING FEES | | | |
| | 3/11/10 10726 | CDJ | HOWARD SOMMER - Invoice: MAR 2010 - BALANCE DUE RETAINER & BOARD MEETING FEES | 7,250.00 | | |
| | 3/11/10 10727 | CDJ | IVAN WOLPERT - Invoice: MAR 2010 - BALANCE DUE RETAINER & BOARD MEETING FEES | 8,500.00 | | |
| | 3/11/10 031110 | PJ | STEPHEN H. TARNOFSKY CPA | | 6,600.00 | |
| | 3/11/10 025883438 | PJ | SAFEGUARD BUSINESS SYSTEMS | | 137.93 | |
| | 3/12/10 MARCH 20 | PJ | Lee A. Forlenza | | 169.90 | |
| | 3/12/10 58222 | PJ | IVAN WOLPERT | | 78.51 | |
| | 3/13/10 APR 2010 | PJ | EMPIRE HEALTH CHOICE HMO | | 4,271.62 | |
| | 3/15/10 10790 | PJ | INTERNATIONAL PRINT GROUP LLC | | 206.86 | |
| | 3/15/10 7-021-0921 | PJ | FEDERAL EXPRESS | | 224.65 | |
| | 3/15/10 1367186 | PJ | GNEIL | | 15.00 | |
| | 3/15/10 A7459538 | PJ | AETNA US HEALTHCARE | | 1,156.00 | |
| | 3/15/10 FEB 2010 | PJ | ROSEN SEYMOUR SHAPSS | | 12,049.00 | |
| | 3/16/10 11764 - SE | PJ | GRANOFF WALKER FORLENZA PC | | 409.50 | |
| | 3/17/10 MAR 2010 | PJ | MARGARET CHANCE | | 117.85 | |
| | 3/17/10 MAR 2010 | PJ | SILVIA MULLENS | | 154.93 | |
| | 3/18/10 031810 | PJ | TIME WARNER CABLE OF NYC | | 79.67 | |
| | 3/18/10 144081 | PJ | Continental Stock Transfer & | | 1,595.77 | |
| | 3/19/10 1170 | CDJ | BUSINESS WIRE, INC. - Invoice: 3695075 - 3695075 | 400.00 | | |
| | 3/19/10 1171 | CDJ | FAIRVIEW INVESTMENT SERVICES - Invoice: 410 - 410 - 1/2 COMPLIANCE SERVICES - FEB 2010 | 2,604.17 | | |
| | 3/19/10 1172 | CDJ | MURRAY INDICK - Invoice: Mar 2010 - TRAVEL EXPENSES REIMBURSEMENT - FEB 2010 | 551.40 | | |
| | 3/19/10 1173 | CDJ | INTERNATIONAL PRINT GROUP LLC - Invoice: 10790 - 10790 | 206.86 | | |
| | 3/19/10 1174 | CDJ | Lee A. Forlenza - Invoice: MARCH 2010 - MONTHLY EXPENSES | 169.90 | | |

6/22/11 at 14:44:34.96

# Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 2000.7 (cont.) | 3/19/10<br>1175 | CDJ | MONTHLY EXPENSES REIMBURSEMENT - MAR 2010 OXFORD HEALTH PLANS - Invoice: 36128987 - 36128987 - APRIL 2010 | 6,135.10 | | |
| | 3/19/10<br>1176 | CDJ | PEACHTREE FORMS - Invoice: 70001015067 - 70001015067 | 119.17 | | |
| | 3/19/10<br>1177 | CDJ | ROBERT MAZLIACH - Invoice: Apr 2010 - SERVICE FEE - APRIL 2010 | 250.22 | | |
| | 3/19/10<br>1178 | CDJ | SAFEGUARD BUSINESS SYSTEMS - Invoice: 025869703 - 025869703 | 61.50 | | |
| | 3/19/10<br>1179 | CDJ | SMALL BUSINESS ADMINISTRATION - Invoice: JUNE 09 - SBIC EXAMINATION FEE - 6/30/09 | 6,822.00 | | |
| | 3/19/10<br>1180 | CDJ | STEPHEN H. TARNOFSKY CPA - Invoice: 031110 - 031110 | 6,600.00 | | |
| | 3/19/10<br>1181 | CDJ | TIME WARNER CABLE OF NYC - Invoice: 031810 - 03/18/10 - 04/17/10 | 79.67 | | |
| | 3/19/10<br>1182 | CDJ | TRANS UNION - Invoice: 02009224 - 02009224 | 43.55 | | |
| | 3/19/10<br>1183 | CDJ | VERIZON - Invoice: MAR 2010 - 03/04/10 | 543.68 | | |
| | 3/19/10<br>1184 | CDJ | THE WEEKS-LERMAN GROUP - Invoice: INV-0625780 - INV-0625780 | 65.98 | | |
| | 3/19/10<br>031910 | PJ | VERIZON | | 291.30 | |
| | 3/22/10<br>10822 | PJ | INTERNATIONAL PRINT GROUP LLC | | 206.86 | |
| | 3/22/10<br>MAR 2010 | PJ | AMERICAN EXPRESS | | 1,593.66 | |
| | 3/23/10<br>INV-06412 | PJ | THE WEEKS-LERMAN GROUP | | 42.95 | |
| | 3/26/10<br>90019567 | PJ | MARKIT WSO CORPORATION | | 2,460.74 | |
| | 3/26/10<br>1185 | CDJ | MARKIT WSO CORPORATION - Invoice: 90019567 - 90019567 1/22/10 - 4TH QTR 2009 DATA SERVICES BILLING | 2,460.74 | | |
| | 3/26/10<br>A1003 | PJ | CLAREWOOD CONSULTING LLC | | 10,000.00 | |
| | 3/26/10<br>162 | PJ | TRUE TYPE PRINTING CO. INC. | | 4,387.83 | |
| | 3/26/10<br>3710642 | PJ | BUSINESS WIRE, INC. | | 470.00 | |
| | 3/27/10 | PJ | TRANS UNION | | 43.55 | |

6/22/11 at 14:44:35.01

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 2000.7 (cont.) | 03009168 | | | | | |
| | 3/28/10<br>032810 | PJ | STAPLES | | 203.65 | |
| | 3/30/10<br>MAR 2010 | PJ | BRIAN ACKERMAN | | 34.65 | |
| | 3/30/10<br>MAR 2010 | PJ | FRESHSTART<br>VENTURE CAPITAL<br>CO | | 743.60 | |
| | 3/30/10<br>MAR 2010 | PJ | HANAM CAPITAL<br>CORPORATION | | 328.28 | |
| | 3/30/10<br>MAR 2010 | PJ | MEDALLION FUNDING<br>CORP. | | 712.35 | |
| | 3/30/10<br>MAR 2010 | PJ | MEYER ACKERMAN | | 121.03 | |
| | 3/30/10<br>MAR 2010 | PJ | MILESTONE GROWTH<br>FUND INC. | | 650.39 | |
| | 3/30/10<br>MAR 2010 | PJ | Pinnacle Commercial<br>Capital, L | | 533.14 | |
| | 3/30/10<br>MAR 2010 | PJ | STEVE PORTNOY<br>TRUSTEE | | 51.74 | |
| | 3/30/10<br>MAR 2010 | PJ | STEVE PORTNOY<br>TRUSTEE | | 51.74 | |
| | 3/30/10<br>MAR 2010 | PJ | THE OSG CORP. | | 1,218.19 | |
| | 3/30/10<br>MAR 2010 | PJ | JERROLD MARCH | | 525.53 | |
| | 3/30/10<br>1186 | CDJ | BRIAN ACKERMAN -<br>Invoice: MAR 2010 -<br>PARTICIPATION -<br>FLORIDA LOANS -<br>MAR 2010 | 34.65 | | |
| | 3/30/10<br>1187 | CDJ | FRESHSTART<br>VENTURE CAPITAL<br>CO - Invoice: MAR 2010<br>- PARTICIPATION -<br>FLORIDA LOANS -<br>MAR 2010 | 743.60 | | |
| | 3/30/10<br>1188 | CDJ | HANAM CAPITAL<br>CORPORATION -<br>Invoice: MAR 2010 -<br>PARTICIPATION -<br>FLORIDA LOANS -<br>MAR 2010 | 328.28 | | |
| | 3/30/10<br>1189 | CDJ | MEDALLION FUNDING<br>CORP. - Invoice: MAR<br>2010 - PARTICIPATION<br>- CLEANERS OF<br>NORTH BEACH LLC -<br>MAR 2010 | 712.35 | | |
| | 3/30/10<br>1190 | CDJ | MEYER ACKERMAN -<br>Invoice: MAR 2010 -<br>PARTICIPATION -<br>FLORIDA LOANS -<br>MAR 2010 | 121.03 | | |
| | 3/30/10<br>1191 | CDJ | MILESTONE GROWTH<br>FUND INC. - Invoice:<br>MAR 2010 -<br>PARTICIPATION -<br>FLORIDA LOANS -<br>MAR 2010 | 650.39 | | |
| | 3/30/10<br>1192 | CDJ | Pinnacle Commercial<br>Capital, L - Invoice:<br>MAR 2010 -<br>PARTICIPATION | 533.14 | | |

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| | | | PARTICIPATION - GOLDEN TRIANGLE ENTERPRISES LLC - MAR 2010 | | | |
| 2000.7 (cont.) | 3/30/10<br>1193 | CDJ | STEVE PORTNOY TRUSTEE - Invoice: MAR 2010 - PARTICIPATION - FLORIDA LOANS - MAR 2010 | 51.74 | | |
| | 3/30/10<br>1194 | CDJ | STEVE PORTNOY TRUSTEE - Invoice: MAR 2010 - PARTICIPATION - FLORIDA LOANS - MAR 2010 | 51.74 | | |
| | 3/30/10<br>1195 | CDJ | THE OSG CORP. - Invoice: MAR 2010 - PARTICIPATION - GWE INC. - MAR 2010 | 1,218.19 | | |
| | 3/30/10<br>1196 | CDJ | JERROLD MARCH - Invoice: MAR 2010 - PARTICIPATION - FLORIDA LOANS - MAR 2010 | 525.53 | | |
| | 3/31/10<br>10728 | CDJ | A.F. LAMA REALTY SERVICES INC. - Invoice: 030310 - APPRAISAL FEE - 130-41 91ST AVE, RICHMOND HILL, NY 11418 | 1,000.00 | | |
| | 3/31/10<br>10729 | CDJ | AETNA US HEALTHCARE - Invoice: A7459538 - A7459538 - E.WALKER - APR 2010 | 1,156.00 | | |
| | 3/31/10<br>10730 | CDJ | AMERICAN EXPRESS - Invoice: MAR 2010 - MARCH 2010 | 1,593.66 | | |
| | 3/31/10<br>10731 | CDJ | MARGARET CHANCE - Invoice: MAR 2010 - REIMBURSEMENT OF EXPENSES - MAR 2010 | 117.85 | | |
| | 3/31/10<br>10732 | CDJ | Continental Stock Transfer & - Invoice: 144081 - 144081 - 2/28/10 | 1,595.77 | | |
| | 3/31/10<br>10733 | CDJ | EMPIRE HEALTH CHOICE HMO - Invoice: APR 2010 - APRIL 2010 | 4,271.62 | | |
| | 3/31/10<br>10734 | CDJ | FEDERAL EXPRESS - Invoice: 7-021-09214 - 7-021-09214 | 224.65 | | |
| | 3/31/10<br>10735 | CDJ | GLOCAP SEARCH LLC - Invoice: 3057 - 3057 - BACKGROUND CHECK - BROOKE RUBEN | 48.47 | | |
| | 3/31/10<br>10736 | CDJ | GNEIL - Invoice: 1367186 - 1367186 | 15.00 | | |
| | 3/31/10<br>10737 | CDJ | INTERNATIONAL PRINT GROUP LLC - Invoice: 10822 - 10822 | 206.86 | | |

# Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID / Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 2000.7 (cont.) | 3/31/10 10738 | CDJ | ROSEN SEYMOUR SHAPSS - Invoice: FEB 2010 - FEB 2010 | 12,049.00 | | |
| | 3/31/10 10739 | CDJ | SAFEGUARD BUSINESS SYSTEMS - Invoice: 025883438 - 025883438 | 137.93 | | |
| | 3/31/10 10740 | CDJ | SILVIA MULLENS - Invoice: MAR 2010 - REIMBURSEMENT OF EXPENSES - MARCH 2010 | 154.93 | | |
| | 3/31/10 10741 | CDJ | VERIZON - Invoice: 031910 - BILLING DATE: 03/19/10 | 291.30 | | |
| | 3/31/10 10742 | CDJ | GRANOFF WALKER FORLENZA PC - Invoice: 11764 - SEALMAX - 11764 - SEALMAX INC. FORECLOSURE | 409.50 | | |
| | 3/31/10 10743 | CDJ | THE WEEKS-LERMAN GROUP - Invoice: INV-0641230 - INV-0641230 | 42.95 | | |
| | 3/31/10 MAR 2010 | PJ | CAFE BASIL | | 23.18 | |
| | 3/31/10 145083 | PJ | Continental Stock Transfer & | | 952.11 | |
| | 3/31/10 2068179 | PJ | Executive Charge Inc. | | 120.52 | |
| | 3/31/10 430 | PJ | FAIRVIEW INVESTMENT SERVICES | | 2,604.17 | |
| | | | Current Period Change | 154,414.01 | 170,396.86 | -15,982.85 |
| | 4/1/10 | | Beginning Balance | | | -40,092.68 |
| | 4/1/10 2303 | PJ | SURGE ELECTRONIC MEDIA GROUP L | | 2,183.13 | |
| | 4/2/10 105393 | PJ | BWD GROUP LIMITED | | 1,687.00 | |
| | 4/4/10 040410 | PJ | VERIZON | | 542.47 | |
| | 4/5/10 040510 | PJ | Gary C. Granoff | | 10,000.00 | |
| | 4/5/10 040510 | PJ | STEPHEN H. TARNOFSKY CPA | | 8,800.00 | |
| | 4/5/10 36307056 | PJ | OXFORD HEALTH PLANS | | 6,135.10 | |
| | 4/6/10 10744 | CDJ | BLOOMBERG FINANCE LP - Invoice: 5600720460 - 5600720460 - BLOOMBERG ANYWHERE | 6,205.88 | | |
| | 4/6/10 10745 | CDJ | BLOOMBERG FINANCE LP - Invoice: 5600720459 - 5600720459 - DEC 09 - FEB 10 | 1,253.27 | | |
| | 4/6/10 10746 | CDJ | CLAREWOOD CONSULTING LLC - | 10,000.00 | | |

# Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 2000.7 (cont.) | 4/6/10 10747 | CDJ | Invoice: A1003 - A1003 - MARCH 2010 Gary C. Granoff - Invoice: 040510 - REIMBURSEMENT OF EXPENSES 7/08 - 6/09 | 10,000.00 | | |
| | 4/6/10 10748 | CDJ | SURGE ELECTRONIC MEDIA GROUP L - Invoice: 2303 - 2303 - MONTHLY HOSTED FEE - APRIL 2010 | 2,183.13 | | |
| | 4/6/10 10749 | CDJ | TRUE TYPE PRINTING CO. INC. - Invoice: 162 - 162 - MARCH 2010 RENT | 4,387.83 | | |
| | 4/6/10 A1004 | PJ | CLAREWOOD CONSULTING LLC | | 10,000.00 | |
| | 4/7/10 APR 2010 | PJ | ELLEN WALKER | | 431.02 | |
| | 4/9/10 27301 | CDJ | GLOCAP SEARCH LLC - Invoice: P11127 - P11127 | 13,750.00 | | |
| | 4/9/10 16086 | PJ | GRANOFF WALKER FORLENZA PC | | 18,204.21 | |
| | 4/10/10 MAY 2010 | PJ | EMPIRE HEALTH CHOICE HMO | | 4,271.62 | |
| | 4/11/10 1401808 | PJ | GNEIL | | 57.99 | |
| | 4/12/10 MAY 2010 | PJ | ROBERT MAZLIACH | | 249.52 | |
| | 4/12/10 3717359 | PJ | BUSINESS WIRE, INC. | | 470.00 | |
| | 4/12/10 MAR 2010 | PJ | ROSEN SEYMOUR SHAPSS | | 6,747.25 | |
| | 4/13/10 0413ACMT | PJ | JOHN R. LAIRD | | 1,500.00 | |
| | 4/13/10 0413ACMT | PJ | PETER BOOCKVAR | | 1,000.00 | |
| | 4/13/10 0413ACMT | PJ | HOWARD SOMMER | | 1,000.00 | |
| | 4/13/10 2189 | PJ | SURGE ELECTRONIC MEDIA GROUP L | | 214.58 | |
| | 4/13/10 10750 | CDJ | HOWARD SOMMER - Invoice: 0413ACMTG - AUDIT COMMITTEE MEETING 4/13/10 | 1,000.00 | | |
| | 4/13/10 10751 | CDJ | JOHN R. LAIRD - Invoice: 0413ACMTG - AUDIT COMMITTEE MEETING 4/13/10 | 1,500.00 | | |
| | 4/13/10 10752 | CDJ | PETER BOOCKVAR - Invoice: 0413ACMTG - AUDIT COMMITTEE MEETING 4/13/10 | 1,000.00 | | |
| | 4/13/10 A7572158 | PJ | AETNA US HEALTHCARE | | 1,156.00 | |
| | 4/15/10 APR 2010 | PJ | MARGARET CHANCE | | 172.70 | |
| | 4/15/10 10843 | PJ | INTERNATIONAL PRINT GROUP LLC | | 283.08 | |
| | 4/15/10 INV-06611 | PJ | THE WEEKS-LERMAN GROUP | | 16.33 | |
| | 4/16/10 | CDJ | BUSINESS WIRE, INC. | 470.00 | | |

# Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 2000.7 (cont.) | 10753 | | - Invoice: 3710642 - 3710642 | | | |
| | 4/16/10<br>10754 | CDJ | BWD GROUP LIMITED - Invoice: 105393 - 105393 - RENEWAL - FINANCIAL INSTITUTION BINDER - 4/8/10-4/8/11 | 1,687.00 | | |
| | 4/16/10<br>10755 | CDJ | CAFE BASIL - Invoice: MAR 2010 - MARCH 2010 | 23.18 | | |
| | 4/16/10<br>10756 | CDJ | CLAREWOOD CONSULTING LLC - Invoice: A1004 - A1004 - APRIL 2010 | 10,000.00 | | |
| | 4/16/10<br>10757 | CDJ | Continental Stock Transfer & - Invoice: 145083 - 145083 | 952.11 | | |
| | 4/16/10<br>10758 | CDJ | ELLEN WALKER - Invoice: APR 2010 - REIMBURSEMENT OF EXPENSES - APRIL 2010 | 431.02 | | |
| | 4/16/10<br>10759 | CDJ | Executive Charge Inc. - Invoice: 2068179 - 2068179 | 120.52 | | |
| | 4/16/10<br>10760 | CDJ | FAIRVIEW INVESTMENT SERVICES - Invoice: 430 - 430 - 1/2 COMPLIANCE SERVICES - MARCH 2010 | 2,604.17 | | |
| | 4/16/10<br>10761 | CDJ | ROBERT MAZLIACH - Invoice: MAY 2010 - SERVICE FEE - MAY 2010 | 249.52 | | |
| | 4/16/10<br>10762 | CDJ | STAPLES - Invoice: 032810 - 03/28/10 | 203.65 | | |
| | 4/16/10<br>10763 | CDJ | STEPHEN H. TARNOFSKY CPA - Invoice: 040510 - 04/05/10 | 8,800.00 | | |
| | 4/16/10<br>10764 | CDJ | SURGE ELECTRONIC MEDIA GROUP L - Invoice: 2189 - 2189 - DATED 1/22/10 | 214.58 | | |
| | 4/16/10<br>10765 | CDJ | TRANS UNION - Invoice: 03009168 - 03009168 | 43.55 | | |
| | 4/16/10<br>10766 | CDJ | VERIZON - Invoice: 040410 - 04/04/10 | 542.47 | | |
| | 4/16/10<br>10767 | CDJ | IVAN WOLPERT - Invoice: 58222 - 58222 - REIMBURSEMENT FOR CONFERENCE CALL EXPENSES | 78.51 | | |
| | 4/17/10<br>10859 | PJ | INTERNATIONAL PRINT GROUP LLC | | 217.75 | |
| | 4/18/10<br>20100001 | PJ | TIME WARNER CABLE OF NYC | | 86.14 | |
| | 4/19/10<br>041910 | PJ | STEPHEN H. TARNOFSKY CPA | | 8,800.00 | |

# Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 2000.7 (cont.) | 4/19/10<br>7-060-1779 | PJ | FEDERAL EXPRESS | | 241.14 | |
| | 4/19/10<br>06045300 | PJ | COMMISSIONER OF<br>TAXATION & FIN | | 141.00 | |
| | 4/19/10<br>041910 | PJ | CHUBB GROUP OF<br>INSURANCE CO. | | 4,688.00 | |
| | 4/19/10<br>041910 | PJ | VERIZON | | 309.04 | |
| | 4/20/10<br>10851 | PJ | INTERNATIONAL<br>PRINT GROUP LLC | | 293.96 | |
| | 4/21/10<br>1201 | CDJ | GRANOFF WALKER<br>FORLENZA PC -<br>Invoice: 16086 - 16086 -<br>APRIL 2010 RENT,<br>SHARED OVERHEAD<br>EXPENSES &<br>DISBURSEMENTS | 18,204.21 | | |
| | 4/21/10<br>10874 | PJ | INTERNATIONAL<br>PRINT GROUP LLC | | 370.18 | |
| | 4/21/10<br>APRIL 201 | PJ | AMERICAN EXPRESS | | 1,922.44 | |
| | 4/22/10<br>APR 2010 | PJ | DEPT OF STATE | | 9.00 | |
| | 4/23/10<br>163 | PJ | TRUE TYPE PRINTING<br>CO. INC. | | 4,588.97 | |
| | 4/23/10<br>164 | PJ | TRUE TYPE PRINTING<br>CO. INC. | | 4,533.38 | |
| | 4/26/10<br>27302 | CDJ | AETNA US<br>HEALTHCARE -<br>Invoice: A7572158 -<br>A7572158 - E.WALKER<br>- MAY 2010 | 1,156.00 | | |
| | 4/26/10<br>27303 | CDJ | BUSINESS WIRE, INC.<br>- Invoice: 3717359 -<br>3717359 | 470.00 | | |
| | 4/26/10<br>27304 | CDJ | MARGARET CHANCE -<br>Invoice: APR 2010 -<br>REIMBURSEMENT OF<br>EXPENSES - APRIL<br>2010 | 172.70 | | |
| | 4/26/10<br>27305 | CDJ | COMMISSIONER OF<br>TAXATION & FIN -<br>Invoice: 06045300 -<br>ASSESSMENT ID:<br>L-033543231-6 | 141.00 | | |
| | 4/26/10<br>27306 | CDJ | DEPT OF STATE -<br>Invoice: APR 2010 -<br>CORPORATION FILING<br>FEE - EAF<br>COLLATERAL CORP. | 9.00 | | |
| | 4/26/10<br>27307 | CDJ | EMPIRE HEALTH<br>CHOICE HMO - Invoice:<br>MAY 2010 - MAY 2010 | 4,271.62 | | |
| | 4/26/10<br>27308 | CDJ | FEDERAL EXPRESS -<br>Invoice: 7-060-17797 -<br>7-060-17797 | 241.14 | | |
| | 4/26/10<br>27309 | CDJ | INTERNATIONAL<br>PRINT GROUP LLC -<br>Invoice: 10843 - 10843 | 283.08 | | |
| | 4/26/10<br>27310 | CDJ | INTERNATIONAL<br>PRINT GROUP LLC -<br>Invoice: 10859 - 10859 | 217.75 | | |
| | 4/26/10 | CDJ | INTERNATIONAL<br>PRINT GROUP LLC | 293.96 | | |

6/22/11 at 14:44:35.24

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 2000.7 (cont.) | 27311 | | PRINT GROUP LLC - Invoice: 10851 - 10851 | | | |
| | 4/26/10<br>27312 | CDJ | INTERNATIONAL PRINT GROUP LLC - Invoice: 10874 | 370.18 | | |
| | 4/26/10<br>27313 | CDJ | OXFORD HEALTH PLANS - Invoice: 36307056 - 36307056 - MAY 2010 | 6,135.10 | | |
| | 4/26/10<br>27314 | CDJ | STEPHEN H. TARNOFSKY CPA - Invoice: 041910 - 04/19/10 | 8,800.00 | | |
| | 4/26/10<br>27315 | CDJ | TIME WARNER CABLE OF NYC - Invoice: 20100001 - 20100001 - 4/18/10-5/17/10 | 86.14 | | |
| | 4/26/10<br>27316 | CDJ | THE WEEKS-LERMAN GROUP - Invoice: INV-0661121 - INV-0661121 | 16.33 | | |
| | 4/26/10<br>SEALMAX I | PJ | CON EDISON | | 868.85 | |
| | 4/26/10<br>27317 | CDJ | CON EDISON - Invoice: SEALMAX INC. - PAYMENT DUE RE: SEALMAX INC. - 130-41 AVE ENT - #255738366200050 | 868.85 | | |
| | 4/27/10<br>APR 2010 | PJ | Lee A. Forlenza | | 139.95 | |
| | 4/27/10<br>APR 2010 | PJ | STAPLES | | 392.12 | |
| | 4/27/10<br>04009142 | PJ | TRANS UNION | | 43.55 | |
| | 4/30/10<br>APR 2010 | PJ | BRIAN ACKERMAN | | 34.65 | |
| | 4/30/10<br>APRIL 201 | PJ | FRESHSTART VENTURE CAPITAL CO | | 743.60 | |
| | 4/30/10<br>APRIL 201 | PJ | HANAM CAPITAL CORPORATION | | 328.28 | |
| | 4/30/10<br>APR 2010 | PJ | MEDALLION FUNDING CORP. | | 712.35 | |
| | 4/30/10<br>APR 2010 | PJ | MEYER ACKERMAN | | 121.03 | |
| | 4/30/10<br>APR 2010 | PJ | MILESTONE GROWTH FUND INC. | | 650.39 | |
| | 4/30/10<br>APR 2010 | PJ | Pinnacle Commercial Capital, L | | 533.38 | |
| | 4/30/10<br>APR 2010 | PJ | STEVE PORTNOY TRUSTEE | | 51.74 | |
| | 4/30/10<br>APR 2010 | PJ | STEVE PORTNOY TRUSTEE | | 51.74 | |
| | 4/30/10<br>APR 2010 | PJ | THE OSG CORP. | | 1,218.19 | |
| | 4/30/10<br>APR 2010 | PJ | JERROLD MARCH | | 525.53 | |
| | 4/30/10<br>27306V | CDJ | DEPT OF STATE - Invoice: APR 2010 - CORPORATION FILING FEE - EAF COLLATERAL CORP. | | 9.00 | |

6/22/11 at 14:44:35.29

Page: 199

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 2000.7 (cont.) | 4/30/10 27306 PER | PJ | DEPT OF STATE | 9.00 | | |
| | 4/30/10 10768 | CDJ | BRIAN ACKERMAN - Invoice: APR 2010 - PARTICIPATION - FLORIDA LOANS - APRIL 2010 | 34.65 | | |
| | 4/30/10 10769 | CDJ | MEDALLION FUNDING CORP. - Invoice: APR 2010 - PARTICIPATION - CLEANERS OF NORTH BEACH LLC - APRIL 2010 | 712.35 | | |
| | 4/30/10 10770 | CDJ | MEYER ACKERMAN - Invoice: APR 2010 - PARTICIPATION - FLORIDA LOANS - APRIL 2010 | 121.03 | | |
| | 4/30/10 10771 | CDJ | MILESTONE GROWTH FUND INC. - Invoice: APR 2010 - PARTICIPATION - FLORIDA LOANS - APRIL 2010 | 650.39 | | |
| | 4/30/10 10772 | CDJ | Pinnacle Commercial Capital, L - Invoice: APR 2010 - PARTICIPATION - GOLDEN TRIANGLE ENTERPRISES LLC - APRIL 2010 | 533.38 | | |
| | 4/30/10 10773 | CDJ | STEVE PORTNOY TRUSTEE - Invoice: APR 2010 - PARTICIPATION - FLORIDA LOANS - APRIL 2010 | 51.74 | | |
| | 4/30/10 10774 | CDJ | STEVE PORTNOY TRUSTEE - Invoice: APR 2010 - PARTICIPATION - FLORIDA LOANS - APRIL 2010 | 51.74 | | |
| | 4/30/10 10775 | CDJ | THE OSG CORP. - Invoice: APR 2010 - PARTICIPATION - GWE INC. - APRIL 2010 | 1,218.19 | | |
| | 4/30/10 10776 | CDJ | JERROLD MARCH - Invoice: APR 2010 - PARTICIPATION - FLORIDA LOANS - APRIL 2010 | 525.53 | | |
| | 4/30/10 10777 | CDJ | FRESHSTART VENTURE CAPITAL CO - Invoice: APRIL 2010 - PARTICIPATION - FLORIDA LOANS - APRIL 2010 | 743.60 | | |
| | 4/30/10 10778 | CDJ | HANAM CAPITAL CORPORATION - Invoice: APRIL 2010 - PARTICIPATION - FLORIDA LOANS - APRIL 2010 | 328.28 | | |

6/22/11 at 14:44:35.32                                                                    Page: 200

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 2000.7 (cont.) | 4/30/10 146081 | PJ | Continental Stock Transfer & | | 1,097.55 | |
| | 4/30/10 043010 | PJ | STEPHEN H. TARNOFSKY CPA | | 8,800.00 | |
| | 4/30/10 APRIL 201 | PJ | CAFE BASIL | | 29.97 | |
| | 4/30/10 APR 2010 | PJ | SILVIA MULLENS | | 154.93 | |
| | 4/30/10 444 | PJ | FAIRVIEW INVESTMENT SERVICES | | 2,604.17 | |
| | 4/30/10 10124V | CDJ | CINGULAR - Invoice: 0808 - 0808 | | 146.83 | |
| | 4/30/10 CM043010 | PJ | CINGULAR | 146.83 | | |
| | | | Current Period Change | 124,564.16 | 120,580.80 | 3,983.36 |
| | 5/1/10 | | Beginning Balance | | | -36,109.32 |
| | 5/1/10 2339 | PJ | SURGE ELECTRONIC MEDIA GROUP L | | 2,678.13 | |
| | 5/3/10 2367 | PJ | SURGE ELECTRONIC MEDIA GROUP L | | 5,996.00 | |
| | 5/4/10 MAY 2010 | PJ | ELLEN WALKER | | 430.54 | |
| | 5/4/10 12109 | PJ | NLFDNYC, INC. | | 163.31 | |
| | 5/4/10 050410 | PJ | VERIZON | | 587.57 | |
| | 5/5/10 2181621 | PJ | KENNETH A EDELSTEIN | | 100.00 | |
| | 5/5/10 27318 | CDJ | KENNETH A EDELSTEIN - Invoice: 2181621 - FINGERPRINTS - S. MULLENS - SBA | 100.00 | | |
| | 5/5/10 A1005 | PJ | CLAREWOOD CONSULTING LLC | | 10,000.00 | |
| | 5/5/10 16123 | PJ | GRANOFF WALKER FORLENZA PC | | 18,185.36 | |
| | 5/6/10 10881 | PJ | INTERNATIONAL PRINT GROUP LLC | | 244.97 | |
| | 5/6/10 DEPOSIT | PJ | CON EDISON | | 405.00 | |
| | 5/6/10 27319 | CDJ | CON EDISON - Invoice: DEPOSIT - DEPOSIT RE: SEALMAX INC. - A/C #255738366200068 | 405.00 | | |
| | 5/6/10 36484714 | PJ | OXFORD HEALTH PLANS | | 6,135.10 | |
| | 5/10/10 10779 | CDJ | AMERICAN EXPRESS - Invoice: APRIL 2010 - APRIL 2010 | 1,922.44 | | |
| | 5/10/10 10780 | CDJ | CAFE BASIL - Invoice: APRIL 2010 - APRIL 2010 | 29.97 | | |
| | 5/10/10 10781 | CDJ | CHUBB GROUP OF INSURANCE CO. - Invoice: 041910 - UMBRELLA POLICY - 79811160 - 5/9/10-5/9/11 | 4,688.00 | | |

6/22/11 at 14:44:35.37                                                                                    Page: 201

# Elk Associates Funding Corporation
## General Ledger
## For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 2000.7 (cont.) | 5/10/10 10782 | CDJ | CLAREWOOD CONSULTING LLC - Invoice: A1005 - A1005 - MAY 2010 | 10,000.00 | | |
| | 5/10/10 10783 | CDJ | Continental Stock Transfer & - Invoice: 146081 - 146081 | 1,097.55 | | |
| | 5/10/10 10784 | CDJ | ELLEN WALKER - Invoice: MAY 2010 - REIMBURSEMENT OF EXPENSES - MAY 2010 | 430.54 | | |
| | 5/10/10 10785 | CDJ | FAIRVIEW INVESTMENT SERVICES - Invoice: 444 - 444 - 1/2 COMPLIANCE SERVICES - APRIL 2010 | 2,604.17 | | |
| | 5/10/10 10786 | CDJ | GNEIL - Invoice: 1401808 - 1401808 | 57.99 | | |
| | 5/10/10 10787 | CDJ | INTERNATIONAL PRINT GROUP LLC - Invoice: 10881 - 10881 | 244.97 | | |
| | 5/10/10 10788 | CDJ | Lee A. Forlenza - Invoice: APR 2010 - REIMBURSEMENT OF EXPENSES - APRIL 2010 | 139.95 | | |
| | 5/10/10 10789 | CDJ | NLFDNYC, INC. - Invoice: 12109 - 12109 - PLANT MAINTENANCE | 163.31 | | |
| | 5/10/10 10790 | CDJ | ROSEN SEYMOUR SHAPSS - Invoice: MAR 2010 - MARCH 2010 | 6,747.25 | | |
| | 5/10/10 10791 | CDJ | SILVIA MULLENS - Invoice: APR 2010 - REIMBURSEMENT OF EXPENSES - APRIL 2010 | 154.93 | | |
| | 5/10/10 10792 | CDJ | STAPLES - Invoice: APR 2010 - APRIL 2010 | 392.12 | | |
| | 5/10/10 10793 | CDJ | STEPHEN H. TARNOFSKY CPA - Invoice: 043010 - 043010 | 8,800.00 | | |
| | 5/10/10 10794 | CDJ | SURGE ELECTRONIC MEDIA GROUP L - Invoice: 2339 - 2339 - MONTHLY HOSTED FEE - MAY 2010 | 2,678.13 | | |
| | 5/10/10 10795 | CDJ | TRUE TYPE PRINTING CO. INC. - Invoice: 163 - 163 - APRIL 2010 RENT | 4,588.97 | | |
| | 5/10/10 10796 | CDJ | TRUE TYPE PRINTING CO. INC. - Invoice: 164 - 164 - MAY 2010 RENT | 4,533.38 | | |
| | 5/10/10 10797 | CDJ | VERIZON - Invoice: 041910 - 041910 | 309.04 | | |
| | 5/10/10 154925 | PJ | A-1 INTERNATIONAL INC. | | 17.00 | |
| | 5/11/10 JUNE 2010 | PJ | ROBERT MAZLIACH | | 248.81 | |
| | 5/12/10 | PJ | AETNA US HEALTHCARE | | 1,156.00 | |

# Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 2000.7 (cont.) | A7684453 5/12/10 108 | PJ | HEALTHCARE MELVIN BRANDL/BRANDL ELECTRIC | | 485.00 | |
| | 5/12/10 APRIL 201 | PJ | ROSEN SEYMOUR SHAPSS | | 32,623.05 | |
| | 5/14/10 051410 | PJ | STEPHEN H. TARNOFSKY CPA | | 6,600.00 | |
| | 5/15/10 27253 | PJ | COMPUWEB | | 59.85 | |
| | 5/17/10 7-091-4714 | PJ | FEDERAL EXPRESS | | 477.84 | |
| | 5/17/10 JUNE 2010 | PJ | EMPIRE HEALTH CHOICE HMO | | 3,303.22 | |
| | 5/17/10 JUNE 2010 | PJ | EMPIRE HEALTH CHOICE HMO | | 205.42 | |
| | 5/18/10 20100002 | PJ | TIME WARNER CABLE OF NYC | | 86.14 | |
| | 5/19/10 MAY 2010 | PJ | MARGARET CHANCE | | 117.86 | |
| | 5/19/10 051910 | PJ | VERIZON | | 308.13 | |
| | 5/20/10 10608356 | PJ | PEPPER HAMILTON LLP | | 318.86 | |
| | 5/20/10 10798 | CDJ | AETNA US HEALTHCARE - Invoice: A7684453 - A7684453 - E.WALKER - JUNE 2010 | 1,156.00 | | |
| | 5/20/10 10799 | CDJ | MELVIN BRANDL/BRANDL ELECTRIC - Invoice: 108 - 108 - ELECTRICAL WORK - SEALMAX INC. | 485.00 | | |
| | 5/20/10 10800 | CDJ | MARGARET CHANCE - Invoice: MAY 2010 - REIMBURSEMENT OF EXPENSES - MAY 2010 | 117.86 | | |
| | 5/20/10 10801 | CDJ | FEDERAL EXPRESS - Invoice: 7-091-47140 - 7-091-47140 | 477.84 | | |
| | 5/20/10 10802 | CDJ | OXFORD HEALTH PLANS - Invoice: 36484714 - 36484714 - JUNE 2010 | 6,135.10 | | |
| | 5/20/10 10803 | CDJ | ROBERT MAZLIACH - Invoice: JUNE 2010 - SERVICE FEE - JUNE 2010 | 248.81 | | |
| | 5/20/10 10804 | CDJ | STEPHEN H. TARNOFSKY CPA - Invoice: 051410 - 051410 | 6,600.00 | | |
| | 5/20/10 10805 | CDJ | TIME WARNER CABLE OF NYC - Invoice: 20100002 - 20100002 - 5/18/10 - 6/17/10 | 86.14 | | |
| | 5/20/10 10806 | CDJ | TRANS UNION - Invoice: 04009142 - 04009142 | 43.55 | | |
| | 5/20/10 10807 | CDJ | VERIZON - Invoice: 050410 - BILLING DATE 05/04/10 | 587.57 | | |

# Elk Associates Funding Corporation
## General Ledger
## For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 2000.7 (cont.) | 5/20/10<br>10808 | CDJ | 05/04/10<br>GRANOFF WALKER<br>FORLENZA PC -<br>Invoice: 16123 - 16123 -<br>MAY 2010 RENT &<br>SHARED EXPENSES | 18,185.36 | | |
| | 5/21/10<br>A2001 | PJ | CLAREWOOD<br>CONSULTING LLC | | 6,943.75 | |
| | 5/21/10<br>10809 | CDJ | CLAREWOOD<br>CONSULTING LLC -<br>Invoice: A2001 - A2001<br>- 1/2 FEES PER<br>ENGAGEMENT<br>LETTER DATED 5/6/10 | 6,943.75 | | |
| | 5/21/10<br>10809V | CDJ | CLAREWOOD<br>CONSULTING LLC -<br>Invoice: A2001 - A2001<br>- 1/2 FEES PER<br>ENGAGEMENT<br>LETTER DATED 5/6/10 | | 6,943.75 | |
| | 5/21/10<br>10810 | CDJ | CLAREWOOD<br>CONSULTING LLC -<br>Invoice: A2001 - A2001<br>- 1/2 FEES PER<br>ENGAGEMENT<br>LETTER DATED 5/6/10 | 6,943.75 | | |
| | 5/21/10<br>MAY 2010 | PJ | AMERICAN EXPRESS | | 489.07 | |
| | 5/23/10<br>2441 | PJ | SURGE ELECTRONIC<br>MEDIA GROUP L | | 61.07 | |
| | 5/27/10<br>MAY 2010 | PJ | BRIAN ACKERMAN | | 34.65 | |
| | 5/27/10<br>MAY 2010 | PJ | FRESHSTART<br>VENTURE  CAPITAL<br>CO | | 743.60 | |
| | 5/27/10<br>MAY 2010 | PJ | HANAM CAPITAL<br>CORPORATION | | 328.28 | |
| | 5/27/10<br>MAY 2010 | PJ | MEDALLION FUNDING<br>CORP. | | 712.35 | |
| | 5/27/10<br>MAY 2010 | PJ | MEYER ACKERMAN | | 121.03 | |
| | 5/27/10<br>MAY 2010 | PJ | MILESTONE GROWTH<br>FUND INC. | | 650.39 | |
| | 5/27/10<br>MAY 2010 | PJ | Pinnacle Commercial<br>Capital, L | | 533.75 | |
| | 5/27/10<br>MAY 2010 | PJ | STEVE PORTNOY<br>TRUSTEE | | 51.74 | |
| | 5/27/10<br>MAY 2010 | PJ | STEVE PORTNOY<br>TRUSTEE | | 51.74 | |
| | 5/27/10<br>MAY 2010 | PJ | THE OSG CORP. | | 1,218.19 | |
| | 5/27/10<br>MAY 2010 | PJ | JERROLD MARCH | | 525.53 | |
| | 5/27/10<br>10811 | CDJ | BRIAN ACKERMAN -<br>Invoice: MAY 2010 -<br>PARTICIPATION<br>FLORIDA LOANS - MAY<br>2010 | 34.65 | | |
| | 5/27/10<br>10812 | CDJ | FRESHSTART<br>VENTURE  CAPITAL<br>CO - Invoice: MAY 2010 | 743.60 | | |

6/22/11 at 14:44:35.48

## Elk Associates Funding Corporation
## General Ledger
## For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 2000.7 (cont.) | 5/27/10<br>10813 | CDJ | CO - Invoice: MAY 2010 - PARTICIPATION FLORIDA LOANS - MAY 2010<br>HANAM CAPITAL CORPORATION - Invoice: MAY 2010 - PARTICIPATION FLORIDA LOANS - MAY 2010 | 328.28 | | |
| | 5/27/10<br>10814 | CDJ | MEDALLION FUNDING CORP. - Invoice: MAY 2010 - PARTICIPATION - CLEANERS OF NORTH BEACH LLC - MAY 2010 | 712.35 | | |
| | 5/27/10<br>10815 | CDJ | MEYER ACKERMAN - Invoice: MAY 2010 - PARTICIPATION FLORIDA LOANS - MAY 2010 | 121.03 | | |
| | 5/27/10<br>10816 | CDJ | MILESTONE GROWTH FUND INC. - Invoice: MAY 2010 - PARTICIPATION FLORIDA LOANS - MAY 2010 | 650.39 | | |
| | 5/27/10<br>10817 | CDJ | Pinnacle Commercial Capital, L - Invoice: MAY 2010 - PARTICIPATION - GOLDEN TRIANGLE ENTERPRISES LLC - MAY 2010 | 533.75 | | |
| | 5/27/10<br>10818 | CDJ | STEVE PORTNOY TRUSTEE - Invoice: MAY 2010 - PARTICIPATION FLORIDA LOANS - MAY 2010 | 51.74 | | |
| | 5/27/10<br>10819 | CDJ | STEVE PORTNOY TRUSTEE - Invoice: MAY 2010 - PARTICIPATION FLORIDA LOANS - MAY 2010 | 51.74 | | |
| | 5/27/10<br>10820 | CDJ | THE OSG CORP. - Invoice: MAY 2010 - PARTICIPATION - GWE INC. - MAY 2010 | 1,218.19 | | |
| | 5/27/10<br>10821 | CDJ | JERROLD MARCH - Invoice: MAY 2010 - PARTICIPATION FLORIDA LOANS - MAY 2010 | 525.53 | | |
| | 5/27/10<br>052710 | PJ | STEPHEN H. TARNOFSKY CPA | | 7,700.00 | |
| | 5/27/10<br>05009109 | PJ | TRANS UNION | | 43.55 | |
| | 5/28/10<br>MAY 2010 | PJ | STAPLES | | 297.20 | |
| | 5/31/10<br>90023809 | PJ | MARKIT WSO CORPORATION | | 1,996.71 | |
| | 5/31/10 | PJ | Continental Stock Transfer & | | 1,283.44 | |

6/22/11 at 14:44:35.52

# Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 2000.7 (cont.) | 147407<br>5/31/10<br>463 | PJ | Transfer &<br>FAIRVIEW<br>INVESTMENT<br>SERVICES | | 2,604.17 | |
| | 5/31/10<br>2140755 | PJ | Executive Charge Inc. | | 54.88 | |
| | | | Current Period Change | 103,069.69 | 124,322.00 | -21,252.31 |
| | 6/1/10 | | Beginning Balance | | | -57,361.63 |
| | 6/1/10<br>2413 | PJ | SURGE ELECTRONIC<br>MEDIA GROUP L | | 2,678.13 | |
| | 6/1/10<br>JUNE 2010 | PJ | MARGARET CHANCE | | 946.91 | |
| | 6/1/10<br>109955 | PJ | CT CORPORATION | | 157.18 | |
| | 6/2/10<br>2444 | PJ | SURGE ELECTRONIC<br>MEDIA GROUP L | | 155.06 | |
| | 6/2/10<br>JUNE 2010 | PJ | TRANSITCENTER INC. | | 1,068.23 | |
| | 6/2/10<br>060210 | PJ | CON EDISON | | 16.12 | |
| | 6/3/10<br>11772 E&Y | PJ | GRANOFF WALKER<br>FORLENZA PC | | 1,963.50 | |
| | 6/3/10<br>11771 SEA | PJ | GRANOFF WALKER<br>FORLENZA PC | | 725.50 | |
| | 6/3/10<br>27320 | CDJ | A-1 INTERNATIONAL<br>INC. - Invoice: 154925 -<br>154925 | 17.00 | | |
| | 6/3/10<br>27321 | CDJ | AMERICAN EXPRESS -<br>Invoice: MAY 2010 -<br>MAY 2010 | 489.07 | | |
| | 6/3/10<br>27322 | CDJ | MARGARET CHANCE -<br>Invoice: JUNE 2010 -<br>REIMBURSEMENT OF<br>VACATION EXPENSES<br>- NOT TAKEN DUE TO<br>MOVING OFFICES BY<br>6/30/10 | 946.91 | | |
| | 6/3/10<br>27323 | CDJ | EMPIRE HEALTH<br>CHOICE HMO - Invoice:<br>JUNE 2010 - JUNE<br>2010 | 3,303.22 | | |
| | 6/3/10<br>27324 | CDJ | EMPIRE HEALTH<br>CHOICE HMO - Invoice:<br>JUNE 2010A - JUNE<br>2010A | 205.42 | | |
| | 6/3/10<br>27325 | CDJ | PEPPER HAMILTON<br>LLP - Invoice: 10608356<br>- 10608356 | 318.86 | | |
| | 6/3/10<br>27326 | CDJ | ROSEN SEYMOUR<br>SHAPSS - Invoice:<br>APRIL 2010 - APRIL<br>2010 | 32,623.05 | | |
| | 6/3/10<br>27327 | CDJ | STEPHEN H.<br>TARNOFSKY CPA -<br>Invoice: 052710 -<br>052710 | 7,700.00 | | |
| | 6/3/10<br>27328 | CDJ | SURGE ELECTRONIC<br>MEDIA GROUP L -<br>Invoice: 2367 - 2367 -<br>PERRSYNC<br>SOFTWARE &<br>REAL TIME DR | 5,996.00 | | |

6/22/11 at 14:44:35.57

## Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 2000.7 (cont.) | 6/3/10 27329 | CDJ | REAL-TIME DR SURGE ELECTRONIC MEDIA GROUP L - Invoice: 2441 - 2441 - PARKING REIMBURSEMENT 4/16 & 5/19/10 | 61.07 | | |
| | 6/3/10 27330 | CDJ | SURGE ELECTRONIC MEDIA GROUP L - Invoice: 2413 - 2413 - MONTHLY HOSTED FEE - JUNE 2010 | 2,678.13 | | |
| | 6/3/10 27331 | CDJ | SURGE ELECTRONIC MEDIA GROUP L - Invoice: 2444 - 2444 - HARDWARE & PARKING 5/24/10 | 155.06 | | |
| | 6/3/10 27332 | CDJ | TRANSITCENTER INC. - Invoice: JUNE 2010 - QUARTERLY TRANSITCHEKS - JUNE 2010 | 1,068.23 | | |
| | 6/3/10 27333 | CDJ | VERIZON - Invoice: 051910 - BILLING DATE 5/19/10 | 308.13 | | |
| | 6/3/10 27334 | CDJ | MARKIT WSO CORPORATION - Invoice: 90023809 - 90023809 - 1ST QTR DATA SERVICES BILLING | 1,996.71 | | |
| | 6/3/10 16182 | PJ | GRANOFF WALKER FORLENZA PC | | 18,167.86 | |
| | 6/3/10 INV-07026 | PJ | THE WEEKS-LERMAN GROUP | | 61.51 | |
| | 6/3/10 060310 | PJ | CON EDISON | | 234.49 | |
| | 6/4/10 060410 | PJ | VERIZON | | 606.72 | |
| | 6/7/10 JUNE 2010 | PJ | ELLEN WALKER | | 430.54 | |
| | 6/7/10 27335 | CDJ | GRANOFF WALKER FORLENZA PC - Invoice: 16182 | 18,167.86 | | |
| | 6/7/10 560080893 | PJ | BLOOMBERG FINANCE LP | | 6,205.88 | |
| | 6/7/10 560080893 | PJ | BLOOMBERG FINANCE LP | | 299.00 | |
| | 6/7/10 560080893 | PJ | BLOOMBERG FINANCE LP | | 1,300.08 | |
| | 6/7/10 36665165 | PJ | OXFORD HEALTH PLANS | | 6,135.10 | |
| | 6/8/10 A2002 | PJ | CLAREWOOD CONSULTING LLC | | 13,887.50 | |
| | 6/9/10 2010-2011 | PJ | FIREMAN FUND | | 17,825.10 | |
| | 6/10/10 061010 | PJ | STEPHEN H. TARNOFSKY CPA | | 6,600.00 | |
| | 6/10/10 061010 PA | PJ | MARINO & ASSOCIATES PC | | 6,737.75 | |
| | 6/10/10 773480 | PJ | STRATEGIC INFORMATION | | 11.55 | |
| | 6/11/10 | PJ | NYC Dept. of Finance | | 4,410.19 | |

6/22/11 at 14:44:35.62

# Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 2000.7 (cont.) | JULY 2010 6/12/10 | PJ | EMPIRE HEALTH CHOICE HMO | | 4,858.53 | |
| | JULY 2010 6/12/10 | PJ | EMPIRE HEALTH CHOICE HMO | | 205.42 | |
| | JULY 2010 6/14/10 27341 | CDJ | CLAREWOOD CONSULTING LLC - Invoice: A2002 - A2002 - ENTERPRISE RISK MANAGEMENT FEES - JUNE 2010 | 13,887.50 | | |
| | 6/14/10 27342 | CDJ | CON EDISON - Invoice: 060210 - CHARGES 5/6/10-5/25/10 - SEALMAX INC. | 16.12 | | |
| | 6/14/10 27343 | CDJ | CON EDISON - Invoice: 060310 - BALANCE DUE - SEALMAX INC. | 234.49 | | |
| | 6/14/10 27344 | CDJ | Continental Stock Transfer & - Invoice: 147407 - 147407 | 1,283.44 | | |
| | 6/14/10 27345 | CDJ | CT CORPORATION - Invoice: 109955 - 109955 - ONLINE SERVICES | 157.18 | | |
| | 6/14/10 27346 | CDJ | ELLEN WALKER - Invoice: JUNE 2010 - REIMBURSEMENT OF EXPENSES - JUNE 2010 | 430.54 | | |
| | 6/14/10 27347 | CDJ | FAIRVIEW INVESTMENT SERVICES - Invoice: 463 - 1/2 COMPLIANCE SERVICES - MAY 2010 | 2,604.17 | | |
| | 6/14/10 27348 | CDJ | STAPLES - Invoice: MAY 2010 - MAY 2010 | 297.20 | | |
| | 6/14/10 27349 | CDJ | TRANS UNION - Invoice: 05009109 - 05009109 | 43.55 | | |
| | 6/14/10 27350 | CDJ | GRANOFF WALKER FORLENZA PC - Invoice: 11772 E&Y - 11772 - E&Y GENERAL CONSTRUCTION FORECLOSURE | 1,963.50 | | |
| | 6/14/10 27399 | CDJ | GRANOFF WALKER FORLENZA PC - Invoice: 11771 SEALMAX - 11771 - SEALMAX INC. FORECLOSURE | 725.50 | | |
| | 6/14/10 27400 | CDJ | THE WEEKS-LERMAN GROUP - Invoice: INV-0702627 - INV-0702627 | 61.51 | | |
| | 6/14/10 27340 | CDJ | MARINO & ASSOCIATES PC - Invoice: 061010 PATROON - LEGAL FEES RE: PATROON OPERATING COMPANY LLC | 6,737.75 | | |

6/22/11 at 14:44:35.65                                                                    Page: 208

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 2000.7 (cont.) | 6/14/10 A7796358 | PJ | AETNA US HEALTHCARE | | 1,156.00 | |
| | 6/15/10 061810 | PJ | TIME WARNER CABLE OF NYC | | 86.15 | |
| | 6/18/10 1001 | PJ | STURSBERG AND ASSOCIATES LLC | | 45,000.00 | |
| | 6/18/10 0618WT | CDJ | STURSBERG AND ASSOCIATES LLC - Invoice: 1001 - FOR LEGAL SERVICES RENDERED | 45,000.00 | | |
| | 6/18/10 JUNE 2010 | PJ | MARGARET CHANCE | | 175.98 | |
| | 6/18/10 165 | PJ | TRUE TYPE PRINTING CO. INC. | | 4,442.58 | |
| | 6/19/10 061910 | PJ | VERIZON | | 315.88 | |
| | 6/21/10 7-129-8489 | PJ | FEDERAL EXPRESS | | 129.56 | |
| | 6/21/10 JUNE 2010 | PJ | AMERICAN EXPRESS | | 4,859.43 | |
| | 6/23/10 JUNE 2010 | PJ | Gary C. Granoff | | 891.58 | |
| | 6/24/10 062410 | PJ | GRANOFF WALKER FORLENZA PC | | 530.00 | |
| | 6/24/10 27351 | CDJ | GRANOFF WALKER FORLENZA PC - Invoice: 062410 - MOVING EXPENSES PAYABLE TO 4 THIRD AVENUE LEASEHOLD LLC - 6/26 & 6/28/10 | 530.00 | | |
| | 6/25/10 10822 | CDJ | AETNA US HEALTHCARE - Invoice: A7796358 - A7796358 - E.WALKER - JULY 2010 | 1,156.00 | | |
| | 6/25/10 10823 | CDJ | BLOOMBERG FINANCE LP - Invoice: 5600808933 - 5600808933 - BLOOMBERG ANYWHERE 6/2/10-9/1/10 | 6,205.88 | | |
| | 6/25/10 10824 | CDJ | BLOOMBERG FINANCE LP - Invoice: 5600808931 - 5600808931 - DOCUMENT & DOCKET RETRIEVALS | 299.00 | | |
| | 6/25/10 10825 | CDJ | BLOOMBERG FINANCE LP - Invoice: 5600808932 - 5600808932 | 1,300.08 | | |
| | 6/25/10 10826 | CDJ | MARGARET CHANCE - Invoice: JUNE 2010A - JUNE 2010A | 175.98 | | |
| | 6/25/10 10827 | CDJ | COMPUWEB - Invoice: 27253 - 27253 - JAN-MAR 2010 | 59.85 | | |
| | 6/25/10 10828 | CDJ | EMPIRE HEALTH CHOICE HMO - Invoice: JULY 2010 - JULY 2010 | 4,858.53 | | |

# Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 2000.7 (cont.) | 6/25/10<br>10829 | CDJ | EMPIRE HEALTH CHOICE HMO - Invoice: JULY 2010A - JULY 2010A | 205.42 | | |
| | 6/25/10<br>10830 | CDJ | Executive Charge Inc. - Invoice: 2140755 - 2140755 | 54.88 | | |
| | 6/25/10<br>10831 | CDJ | FIREMAN FUND - Invoice: 2010-2011 - POLICY# MZX80919261 5/9/10-5/8/11 | 17,825.10 | | |
| | 6/25/10<br>10832 | CDJ | Gary C. Granoff - Invoice: JUNE 2010 - REIMBURSABLE EXPENSES 7/09-6/10 | 891.58 | | |
| | 6/25/10<br>10833 | CDJ | OXFORD HEALTH PLANS - Invoice: 36665165 - 36665165 - JULY 2010 | 6,135.10 | | |
| | 6/25/10<br>10834 | CDJ | NYC Dept. of Finance - Invoice: JULY 2010 - PROPERTY TAX RE: 130-41 91 AVE LLC | 4,410.19 | | |
| | 6/25/10<br>10835 | CDJ | STEPHEN H. TARNOFSKY CPA - Invoice: 061010 - 061010 | 6,600.00 | | |
| | 6/25/10<br>10836 | CDJ | STRATEGIC INFORMATION - Invoice: 773480 - 773480 | 11.55 | | |
| | 6/25/10<br>10837 | CDJ | TIME WARNER CABLE OF NYC - Invoice: 061810 - 6/18/10-7/17/10 | 86.15 | | |
| | 6/25/10<br>10838 | CDJ | TRUE TYPE PRINTING CO. INC. - Invoice: 165 - 165 - JUNE 2010 RENT | 4,442.58 | | |
| | 6/25/10<br>10839 | CDJ | VERIZON - Invoice: 060410 - BILLING DATE 6/4/10 | 606.72 | | |
| | 6/25/10<br>062510 | PJ | STEPHEN H. TARNOFSKY CPA | | 8,800.00 | |
| | 6/27/10<br>JUNE 2010 | PJ | STAPLES | | 1,000.05 | |
| | 6/28/10<br>06008980 | PJ | TRANS UNION | | 43.55 | |
| | 6/30/10<br>JUNE 2010 | PJ | BRIAN ACKERMAN | | 34.65 | |
| | 6/30/10<br>JUNE 2010 | PJ | FRESHSTART VENTURE CAPITAL CO | | 743.60 | |
| | 6/30/10<br>JUNE 2010 | PJ | HANAM CAPITAL CORPORATION | | 328.28 | |
| | 6/30/10<br>JUNE 2010 | PJ | MEDALLION FUNDING CORP. | | 712.35 | |
| | 6/30/10<br>JUNE 2010 | PJ | MEYER ACKERMAN | | 121.03 | |
| | 6/30/10<br>JUNE 2010 | PJ | MILESTONE GROWTH FUND INC. | | 650.39 | |
| | 6/30/10<br>JUNE 2010 | PJ | STEVE PORTNOY TRUSTEE | | 51.74 | |

6/22/11 at 14:44:35.73

# Elk Associates Funding Corporation
## General Ledger
## For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 2000.7 (cont.) | 6/30/10<br>JUNE 2010 | PJ | STEVE PORTNOY TRUSTEE | | 51.74 | |
| | 6/30/10<br>JUNE 2010 | PJ | THE OSG CORP. | | 1,218.19 | |
| | 6/30/10<br>JUNE 2010 | PJ | VENTURE OPPORTUNITY LLC | | 525.53 | |
| | 6/30/10<br>JUNE 2010 | PJ | Pinnacle Commercial Capital, L | | 534.59 | |
| | 6/30/10<br>10851 | CDJ | BRIAN ACKERMAN - Invoice: JUNE 2010 - PARTICIPATION - FLORIDA LOANS - JUNE 2010 | 34.65 | | |
| | 6/30/10<br>10852 | CDJ | FRESHSTART VENTURE CAPITAL CO - Invoice: JUNE 2010 - PARTICIPATION - FLORIDA LOANS - JUNE 2010 | 743.60 | | |
| | 6/30/10<br>10853 | CDJ | HANAM CAPITAL CORPORATION - Invoice: JUNE 2010 - PARTICIPATION - FLORIDA LOANS - JUNE 2010 | 328.28 | | |
| | 6/30/10<br>10854 | CDJ | MEDALLION FUNDING CORP. - Invoice: JUNE 2010 - PARTICIPATION - CLEANERS OF NORTH BEACH LLC - JUNE 2010 | 712.35 | | |
| | 6/30/10<br>10855 | CDJ | MEYER ACKERMAN - Invoice: JUNE 2010 - PARTICIPATION - FLORIDA LOANS - JUNE 2010 | 121.03 | | |
| | 6/30/10<br>10856 | CDJ | MILESTONE GROWTH FUND INC. - Invoice: JUNE 2010 - PARTICIPATION - FLORIDA LOANS - JUNE 2010 | 650.39 | | |
| | 6/30/10<br>10857 | CDJ | Pinnacle Commercial Capital, L - Invoice: JUNE 2010 - PARTICIPATION - GOLDEN TRIANGLE ENTERPRISES LLC - JUNE 2010 | 534.59 | | |
| | 6/30/10<br>10858 | CDJ | STEVE PORTNOY TRUSTEE - Invoice: JUNE 2010 - PARTICIPATION - FLORIDA LOANS - JUNE 2010 | 51.74 | | |
| | 6/30/10<br>10859 | CDJ | STEVE PORTNOY TRUSTEE - Invoice: JUNE 2010 - PARTICIPATION - FLORIDA LOANS - JUNE 2010 | 51.74 | | |
| | 6/30/10<br>10860 | CDJ | VENTURE OPPORTUNITY LLC - Invoice: JUNE 2010 | 525.53 | | |

6/22/11 at 14:44:35.76

# Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID / Account Description | Date / Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 2000.7 (cont.) | 6/30/10 10861 | CDJ | Invoice: JUNE 2010 - PARTICIPATION - FLORIDA LOANS - JUNE 2010 THE OSG CORP. - Invoice: JUNE 2010 - PARTICIPATION - GWE INC. - JUNE 2010 | 1,218.19 | | |
| | 6/30/10 479 | PJ | FAIRVIEW INVESTMENT SERVICES | | 2,604.16 | |
| | 6/30/10 148078 | PJ | Continental Stock Transfer & | | 1,881.07 | |
| | | | Current Period Change | 210,303.85 | 172,575.93 | 37,727.92 |
| | 6/30/10 | | Ending Balance | | | -19,633.71 |
| 2001 PENSION PLAN PAY | 7/1/09 | | Beginning Balance | | | -53,273.28 |
| | 7/31/09 J/E 2R | GENJ | To record SEP / Pension accrual | | 18,683.33 | |
| | | | Current Period Change | | 18,683.33 | -18,683.33 |
| | 8/1/09 | | Beginning Balance | | | -71,956.61 |
| | 8/31/09 J/E 2-R | GENJ | AUGUST 2009 SEP/PENSION ACCRUAL PER ATTACHED | | 17,913.54 | |
| | | | Current Period Change | | 17,913.54 | -17,913.54 |
| | 9/1/09 | | Beginning Balance | | | -89,870.15 |
| | 9/30/09 J/E 2R | GENJ | SEPT 2009 SEP/PENSION ACCRUAL PER ATTACHED SCHEDULE | | 3,661.31 | |
| | | | Current Period Change | | 3,661.31 | -3,661.31 |
| | 10/1/09 | | Beginning Balance | | | -93,531.46 |
| | 10/31/09 J/E 2R | GENJ | To record SEP / Pension accrual | | 8,136.50 | |
| | | | Current Period Change | | 8,136.50 | -8,136.50 |
| | 11/1/09 | | Beginning Balance | | | -101,667.96 |
| | 11/30/09 J/E 2R | GENJ | To record SEP / Pension accrual | | 8,146.45 | |
| | 11/30/09 J/E 2R | GENJ | To reclass payment of pension 2nd & 3rd quarter | 93,531.45 | | |
| | | | Current Period Change | 93,531.45 | 8,146.45 | 85,385.00 |
| | 12/1/09 | | Beginning Balance | | | -16,282.96 |
| | 12/31/09 J/E 2R | GENJ | To reverse Oct & Nov pension accrual | 16,282.96 | | |
| | | | Current Period Change | 16,282.96 | | 16,282.96 |
| | 1/1/10 | | Beginning Balance | | | |

# Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 2001 (cont.) | 2/1/10 | | Beginning Balance | | | |
| | 3/1/10 | | Beginning Balance | | | |
| | 4/1/10 | | Beginning Balance | | | |
| | 5/1/10 | | Beginning Balance | | | |
| | 6/1/10 | | Beginning Balance | | | |
| | 6/30/10 | | **Ending Balance** | | | |
| 2002<br>Accrued Payroll | 7/1/09 | | Beginning Balance | | | |
| | 8/1/09 | | Beginning Balance | | | |
| | 9/1/09 | | Beginning Balance | | | |
| | 9/30/09<br>J/E 2D | GENJ | TO ACCRUE OFFICE PAYROLL | | 1,293.28 | |
| | | | Current Period Change | | 1,293.28 | -1,293.28 |
| | 10/1/09 | | Beginning Balance | | | -1,293.28 |
| | 10/1/09<br>J/E 2D | GENJ | TO ACCRUE OFFICE PAYROLL | 1,293.28 | | |
| | | | Current Period Change | 1,293.28 | | 1,293.28 |
| | 11/1/09 | | Beginning Balance | | | |
| | 12/1/09 | | Beginning Balance | | | |
| | 12/31/09<br>J/E 2D | GENJ | To accrue office payroll | | 3,999.57 | |
| | | | Current Period Change | | 3,999.57 | -3,999.57 |
| | 1/1/10 | | Beginning Balance | | | -3,999.57 |
| | 1/1/10<br>J/E 2D | GENJ | To accrue office payroll | 3,999.57 | | |
| | | | Current Period Change | 3,999.57 | | 3,999.57 |
| | 2/1/10 | | Beginning Balance | | | |
| | 3/1/10 | | Beginning Balance | | | |
| | 3/31/10<br>J/E 2D | GENJ | TO ACCRUE OFFICE PAYROLL | | 1,523.37 | |
| | | | Current Period Change | | 1,523.37 | -1,523.37 |
| | 4/1/10 | | Beginning Balance | | | -1,523.37 |
| | 4/1/10<br>J/E 2D | GENJ | TO ACCRUE OFFICE PAYROLL | 1,523.37 | | |
| | | | Current Period Change | 1,523.37 | | 1,523.37 |
| | 5/1/10 | | Beginning Balance | | | |
| | 6/1/10 | | Beginning Balance | | | |
| | 6/30/10 | GENJ | To accrue office payroll | | 3,985.24 | |

6/22/11 at 14:44:35.84

# Elk Associates Funding Corporation
## General Ledger
## For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 2002 (cont.) | J/E 2D | | | | | |
| | | | Current Period Change | | 3,985.24 | -3,985.24 |
| | **6/30/10** | | **Ending Balance** | | | **-3,985.24** |
| 2007.00<br>Rent Concession | 7/1/09 | | Beginning Balance | | | -17,829.00 |
| | 7/31/09<br>RJE2 | GENJ | To amortize rent concession | 307.00 | | |
| | | | Current Period Change | 307.00 | | 307.00 |
| | 8/1/09 | | Beginning Balance | | | -17,522.00 |
| | 8/31/09<br>RJE 2 | GENJ | TO AMORTIZE RENT CONCESSION FOR AUGUST 2009 | 307.00 | | |
| | | | Current Period Change | 307.00 | | 307.00 |
| | 9/1/09 | | Beginning Balance | | | -17,215.00 |
| | 9/30/09<br>RJE2 | GENJ | To amortize rent concession | 307.00 | | |
| | | | Current Period Change | 307.00 | | 307.00 |
| | 10/1/09 | | Beginning Balance | | | -16,908.00 |
| | 10/31/09<br>RJE2 | GENJ | To amortize rent concession | 307.00 | | |
| | | | Current Period Change | 307.00 | | 307.00 |
| | 11/1/09 | | Beginning Balance | | | -16,601.00 |
| | 11/30/09<br>RJE2 | GENJ | To amortize rent concession | 307.00 | | |
| | | | Current Period Change | 307.00 | | 307.00 |
| | 12/1/09 | | Beginning Balance | | | -16,294.00 |
| | 12/31/09<br>RJE2 | GENJ | To amortize rent concession | 307.00 | | |
| | | | Current Period Change | 307.00 | | 307.00 |
| | 1/1/10 | | Beginning Balance | | | -15,987.00 |
| | 1/31/10<br>RJE2 | GENJ | To amortize rent concession | 307.00 | | |
| | | | Current Period Change | 307.00 | | 307.00 |
| | 2/1/10 | | Beginning Balance | | | -15,680.00 |
| | 2/28/10<br>RJE2 | GENJ | To amortize rent concession | 307.00 | | |
| | | | Current Period Change | 307.00 | | 307.00 |
| | 3/1/10 | | Beginning Balance | | | -15,373.00 |
| | 3/31/10<br>RJE2 | GENJ | To amortize rent concession | 307.00 | | |
| | | | Current Period Change | 307.00 | | 307.00 |
| | 4/1/10 | | Beginning Balance | | | -15,066.00 |

6/22/11 at 14:44:35.87

## Elk Associates Funding Corporation
## General Ledger
## For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 2007.00 (cont.) | 4/30/10 RJE2 | GENJ | To amortize rent concession | 307.00 | | |
| | | | Current Period Change | 307.00 | | 307.00 |
| | 5/1/10 | | Beginning Balance | | | -14,759.00 |
| | 5/31/10 RJE2 | GENJ | To amortize rent concession | 307.00 | | |
| | | | Current Period Change | 307.00 | | 307.00 |
| | 6/1/10 | | Beginning Balance | | | -14,452.00 |
| | 6/30/10 RJE2 | GENJ | To amortize rent concession | 307.00 | | |
| | 6/30/10 AJE14 | GENJ | To write off rent concession on cancelled lease | 14,145.00 | | |
| | | | Current Period Change | 14,452.00 | | 14,452.00 |
| | **6/30/10** | | **Ending Balance** | | | |
| 2010 DUE TO BORROWE | 7/1/09 | | Beginning Balance | | | -19,919.08 |
| | 7/31/09 AJE1 | GENJ | Reclass OLS receipts | | 26,249.17 | |
| | 7/31/09 AJE3 | GENJ | To reclass OLS autopayments | 6,979.94 | | |
| | 7/31/09 AJE5 | GENJ | To record non-cash adj. - apply credits | 13,022.42 | | |
| | | | Current Period Change | 20,002.36 | 26,249.17 | -6,246.81 |
| | 8/1/09 | | Beginning Balance | | | -26,165.89 |
| | 8/31/09 AJE3 | GENJ | RECLASS OLS AUTOPAYMENTS | 26,158.53 | | |
| | 8/31/09 AJE1 | GENJ | RECLASS RECEIPTS | | 173.57 | |
| | | | Current Period Change | 26,158.53 | 173.57 | 25,984.96 |
| | 9/1/09 | | Beginning Balance | | | -180.93 |
| | 9/30/09 AJE3 | GENJ | RECLASS OLS AUTOPAYMENTS | 180.93 | | |
| | 9/30/09 AJE1 | GENJ | RECLASS RECEIPTS | | 2,823.36 | |
| | | | Current Period Change | 180.93 | 2,823.36 | -2,642.43 |
| | 10/1/09 | | Beginning Balance | | | -2,823.36 |
| | 10/31/09 AJE1 | GENJ | Reclass OLS receipts | | 13,286.29 | |
| | 10/31/09 AJE3 | GENJ | To reclass OLS autopayments | 2,823.36 | | |
| | 10/31/09 AJE5 | GENJ | To record non-cash adj. - apply credits & capitalize interest | 2,275.09 | | |
| | | | Current Period Change | 5,098.45 | 13,286.29 | -8,187.84 |
| | 11/1/09 | | Beginning Balance | | | -11,011.20 |
| | 11/30/09 AJE1 | GENJ | Reclass OLS receipts | | 78.73 | |

6/22/11 at 14:44:35.91

# Elk Associates Funding Corporation
## General Ledger
## For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 2010 (cont.) | 11/30/09<br>AJE3 | GENJ | To reclass OLS autopayments | 11,089.77 | | |
| | 11/30/09<br>AJE5 | GENJ | To record non-cash adj. - apply credits & capitalize interest | 0.16 | | |
| | | | Current Period Change | 11,089.93 | 78.73 | 11,011.20 |
| | 12/1/09 | | Beginning Balance | | | |
| | 12/31/09<br>AJE1 | GENJ | Reclass OLS receipts | | 5,534.96 | |
| | 12/31/09<br>AJE3 | GENJ | To reclass OLS autopayments | 2,569.82 | | |
| | | | Current Period Change | 2,569.82 | 5,534.96 | -2,965.14 |
| | 1/1/10 | | Beginning Balance | | | -2,965.14 |
| | 1/31/10<br>AJE1 | GENJ | Reclass OLS receipts | | 26,046.89 | |
| | 1/31/10<br>AJE3 | GENJ | To reclass OLS autopayments | 9,216.03 | | |
| | | | Current Period Change | 9,216.03 | 26,046.89 | -16,830.86 |
| | 2/1/10 | | Beginning Balance | | | -19,796.00 |
| | 2/28/10<br>AJE1 | GENJ | Reclass OLS receipts | | 18,705.77 | |
| | 2/28/10<br>AJE2 | GENJ | Reclass OLS returned receipts | 12,105.29 | | |
| | 2/28/10<br>AJE3 | GENJ | To reclass OLS autopayments | 19,796.00 | | |
| | 2/28/10<br>AJE5 | GENJ | To record non-cash adj. - apply credits | 6,250.89 | | |
| | | | Current Period Change | 38,152.18 | 18,705.77 | 19,446.41 |
| | 3/1/10 | | Beginning Balance | | | -349.59 |
| | 3/31/10<br>AJE1 | GENJ | Reclass OLS receipts | | 9,740.82 | |
| | 3/31/10<br>AJE3 | GENJ | To reclass OLS autopayments | 2,781.03 | | |
| | | | Current Period Change | 2,781.03 | 9,740.82 | -6,959.79 |
| | 4/1/10 | | Beginning Balance | | | -7,309.38 |
| | 4/30/10<br>2602V | CDJ | ZUNEERA & HUMNA INC. - REFUND OF OVERPAYMENT RE: PAYOFF OF LOAN #53678 | | 757.72 | |
| | 4/30/10<br>AJE5 | GENJ | To record non-cash adj. - apply credits & capitalize interest | 2,158.26 | | |
| | 4/30/10<br>AJE12 | GENJ | To void payment to Zuneera & Humna - cannot locate borrower | 757.72 | | |
| | 4/30/10<br>AJE1 | GENJ | Reclass OLS receipts | | 19,046.19 | |
| | 4/30/10<br>AJE3 | GENJ | To reclass OLS autopayments | 9,840.84 | | |
| | | | Current Period Change | 12,756.82 | 19,803.91 | -7,047.09 |
| | 5/1/10 | | Beginning Balance | | | -14,356.47 |

6/22/11 at 14:44:35.96

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 2010 (cont.) | 5/31/10<br>AJE1 | GENJ | Reclass OLS receipts | | 573.16 | |
| | 5/31/10<br>AJE3 | GENJ | To reclass OLS autopayments | 14,440.11 | | |
| | | | Current Period Change | 14,440.11 | 573.16 | 13,866.95 |
| | 6/1/10 | | Beginning Balance | | | -489.52 |
| | 6/30/10<br>AJE1 | GENJ | Reclass OLS receipts | | 41,903.36 | |
| | 6/30/10<br>AJE5 | GENJ | To record non-cash adj. - apply credits | 22,387.42 | | |
| | 6/30/10<br>AJE3 | GENJ | To reclass OLS autopayments | 3,037.10 | | |
| | 6/30/10<br>AJE11 | GENJ | To adjust for timing diff. between payment received & part. checks cut - Crown Cleaners of Miami Lakes Inc. | 1,565.04 | | |
| | | | Current Period Change | 26,989.56 | 41,903.36 | -14,913.80 |
| | 6/30/10 | | **Ending Balance** | | | **-15,403.32** |
| 2010.2<br>Due to borrower-Rec | 7/1/09 | | Beginning Balance | | | -378.58 |
| | 7/31/09<br>AAL1 | GENJ | To record Newtex Inc. auto payment | 378.58 | | |
| | | | Current Period Change | 378.58 | | 378.58 |
| | 8/1/09 | | Beginning Balance | | | |
| | 8/24/09<br>0824D01 | CRJ | MISCELLANEOUS DEPOSIT - PYT - NEWTEX INC. | | 378.58 | |
| | | | Current Period Change | | 378.58 | -378.58 |
| | 9/1/09 | | Beginning Balance | | | -378.58 |
| | 9/30/09<br>AAL1 | GENJ | TO RECORD NEWTEX INC AUTO PAYMENT | 378.58 | | |
| | | | Current Period Change | 378.58 | | 378.58 |
| | 10/1/09 | | Beginning Balance | | | |
| | 11/1/09 | | Beginning Balance | | | |
| | 12/1/09 | | Beginning Balance | | | |
| | 1/1/10 | | Beginning Balance | | | |
| | 2/1/10 | | Beginning Balance | | | |
| | 3/1/10 | | Beginning Balance | | | |
| | 3/19/10<br>0319D02 | CRJ | MISCELLANEOUS DEPOSIT - PYT - NEWTEX INC. | | 378.66 | |
| | | | Current Period Change | | 378.66 | -378.66 |
| | 4/1/10 | | Beginning Balance | | | -378.66 |

# Elk Associates Funding Corporation
## General Ledger
## For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 2010.2 (cont.) | 4/23/10<br>0423D02 | CRJ | MISCELLANEOUS DEPOSIT - PYT - NEWTEX INC. | | 378.58 | |
| | 4/30/10<br>AAL1 | GENJ | To record Newtex Inc. auto payment | 378.66 | | |
| | | | Current Period Change | 378.66 | 378.58 | 0.08 |
| | 5/1/10 | | Beginning Balance | | | -378.58 |
| | 5/26/10<br>0526D01 | CRJ | MISCELLANEOUS DEPOSIT - PYT - NEWTEX INC. | | 378.58 | |
| | 5/31/10<br>AAL1 | GENJ | To record Newtex Inc. auto payment | 378.58 | | |
| | | | Current Period Change | 378.58 | 378.58 | |
| | 6/1/10 | | Beginning Balance | | | -378.58 |
| | 6/30/10<br>AAL1 | GENJ | To record Newtex Inc. auto payment | 378.58 | | |
| | | | Current Period Change | 378.58 | | 378.58 |
| | 6/30/10 | | **Ending Balance** | | | |
| 2026<br>SEALMAX INC. - TAX | 7/1/09 | | Beginning Balance | | | -26.36 |
| | 8/1/09 | | Beginning Balance | | | -26.36 |
| | 9/1/09 | | Beginning Balance | | | -26.36 |
| | 10/1/09 | | Beginning Balance | | | -26.36 |
| | 10/21/09<br>100109 | PJ | NYC Dept. of Finance - QUARTERLY TAX PAYMENT RE: 130-41 91 AVE. LLC | 4,414.85 | | |
| | | | Current Period Change | 4,414.85 | | 4,414.85 |
| | 11/1/09 | | Beginning Balance | | | 4,388.49 |
| | 11/20/09<br>112009 | PJ | NYC Dept. of Finance - QUARTERLY TAX BILL RE: 130-41 91 AVE. LLC | 4,283.41 | | |
| | 11/30/09<br>1130D02 | CRJ | Loan Track deposits - PYT - SEALMAX INC. - TAX ESCROW | | 1,710.29 | |
| | | | Current Period Change | 4,283.41 | 1,710.29 | 2,573.12 |
| | 12/1/09 | | Beginning Balance | | | 6,961.61 |
| | 1/1/10 | | Beginning Balance | | | 6,961.61 |
| | 2/1/10 | | Beginning Balance | | | 6,961.61 |
| | 2/5/10<br>020510 | PJ | NYC Dept. of Finance - QUARTERLY TAX PAYMENT - 130-41 91 AVE. LLC | 4,300.19 | | |
| | 2/5/10<br>020510 | PJ | NYC Dept. of Finance - WATER / SEWER CHARGES | 3,611.78 | | |

6/22/11 at 14:44:36.02

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 2026 (cont.) | 2/8/10<br>0208D01 | CRJ | Loan Track deposits - PYT - SEALMAX TAX ESCROW | | 1,471.62 | |
| | 2/25/10<br>0225D01 | CRJ | Loan Track deposits - PYT - SEALMAX TAX ESCROW | | 1,471.62 | |
| | | | Current Period Change | 7,911.97 | 2,943.24 | 4,968.73 |
| | 3/1/10 | | Beginning Balance | | | 11,930.34 |
| | 3/31/10<br>AJE2 | GENJ | Reclass OLS returned receipts | 1,471.62 | | |
| | | | Current Period Change | 1,471.62 | | 1,471.62 |
| | 4/1/10 | | Beginning Balance | | | 13,401.96 |
| | 5/1/10 | | Beginning Balance | | | 13,401.96 |
| | 6/1/10 | | Beginning Balance | | | 13,401.96 |
| | 6/11/10<br>JULY 2010 | PJ | NYC Dept. of Finance - QUARTERLY TAXES RE: SEALMAX INC. | 4,410.19 | | |
| | | | Current Period Change | 4,410.19 | | 4,410.19 |
| | **6/30/10** | | **Ending Balance** | | | **17,812.15** |
| 2100<br>INTEREST PAYABLE | 7/1/09 | | Beginning Balance | | | -1,316.25 |
| | 7/1/09<br>J/E 2W1 | GENJ | To accrue interest on loans | 1,316.25 | | |
| | | | Current Period Change | 1,316.25 | | 1,316.25 |
| | 8/1/09 | | Beginning Balance | | | |
| | 9/1/09 | | Beginning Balance | | | |
| | 10/1/09 | | Beginning Balance | | | |
| | 11/1/09 | | Beginning Balance | | | |
| | 12/1/09 | | Beginning Balance | | | |
| | 12/31/09<br>J/E 2W1 | GENJ | To accrue interest on loans | | 413.58 | |
| | | | Current Period Change | | 413.58 | -413.58 |
| | 1/1/10 | | Beginning Balance | | | -413.58 |
| | 1/1/10<br>J/E 2W1 | GENJ | To accrue interest on loans | 413.58 | | |
| | 1/31/10<br>J/E 2W1 | GENJ | To accrue interest on loans | | 1,342.08 | |
| | | | Current Period Change | 413.58 | 1,342.08 | -928.50 |
| | 2/1/10 | | Beginning Balance | | | -1,342.08 |
| | 2/1/10<br>J/E 2W1 | GENJ | To accrue interest on loans | 1,342.08 | | |
| | 2/28/10<br>J/E 2W1 | GENJ | To accrue interest on loans | | 1,248.33 | |
| | | | Current Period Change | 1,342.08 | 1,248.33 | 93.75 |

6/22/11 at 14:44:36.07

## Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 2100 (cont.) | 3/1/10 | | Beginning Balance | | | -1,248.33 |
| | 3/1/10 J/E 2W1 | GENJ | To accrue interest on loans | 1,248.33 | | |
| | 3/31/10 J/E 2W1 | GENJ | To accrue interest on loans | | 1,345.17 | |
| | | | Current Period Change | 1,248.33 | 1,345.17 | -96.84 |
| | 4/1/10 | | Beginning Balance | | | -1,345.17 |
| | 4/1/10 J/E 2W1 | GENJ | To accrue interest on loans | 1,345.17 | | |
| | 4/30/10 J/E 2W1 | GENJ | To accrue interest on loans | | 400.00 | |
| | | | Current Period Change | 1,345.17 | 400.00 | 945.17 |
| | 5/1/10 | | Beginning Balance | | | -400.00 |
| | 5/1/10 J/E 2W1 | GENJ | To accrue interest on loans | 400.00 | | |
| | 5/31/10 J/E 2W1 | GENJ | To accrue interest on loans | | 1,382.08 | |
| | | | Current Period Change | 400.00 | 1,382.08 | -982.08 |
| | 6/1/10 | | Beginning Balance | | | -1,382.08 |
| | 6/1/10 J/E 2W1 | GENJ | To accrue interest on loans | 1,382.08 | | |
| | 6/30/10 J/E 2W1 | GENJ | To accrue interest on loans | | 431.25 | |
| | | | Current Period Change | 1,382.08 | 431.25 | 950.83 |
| | 6/30/10 | | **Ending Balance** | | | **-431.25** |
| 2200 INTEREST PAYABLE | 7/1/09 | | Beginning Balance | | | -208,849.18 |
| | 7/31/09 J/E 2R | GENJ | To record SBA Interest accrual | | 53,068.18 | |
| | | | Current Period Change | | 53,068.18 | -53,068.18 |
| | 8/1/09 | | Beginning Balance | | | -261,917.36 |
| | 8/31/09 J/E 2-R | GENJ | AUGUST 2009 SBA INTEREST ACCRUAL | | 53,068.18 | |
| | | | Current Period Change | | 53,068.18 | -53,068.18 |
| | 9/1/09 | | Beginning Balance | | | -314,985.54 |
| | 9/30/09 J/E 2R | GENJ | SEPT 2009 SBA INTEREST ACCRUAL | | 51,356.30 | |
| | 9/30/09 J/E 2R | GENJ | TO REVERSE INTEREST ACCRUAL | 314,985.32 | | |
| | | | Current Period Change | 314,985.32 | 51,356.30 | 263,629.02 |
| | 10/1/09 | | Beginning Balance | | | -51,356.52 |
| | 10/31/09 J/E 2R | GENJ | To record SBA Interest accrual | | 53,068.18 | |
| | | | Current Period Change | | 53,068.18 | -53,068.18 |
| | 11/1/09 | | Beginning Balance | | | -104,424.70 |

6/22/11 at 14:44:36.12

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 2200 (cont.) | 11/30/09<br>J/E 2R | GENJ | To record SBA Interest accrual | | 51,356.30 | |
| | | | Current Period Change | | 51,356.30 | -51,356.30 |
| | 12/1/09 | | Beginning Balance | | | -155,781.00 |
| | 12/31/09<br>J/E 2R | GENJ | To record SBA Interest accrual Dec 09 | | 59,513.14 | |
| | | | Current Period Change | | 59,513.14 | -59,513.14 |
| | 1/1/10 | | Beginning Balance | | | -215,294.14 |
| | 1/31/10<br>J/E 2R | GENJ | To record SBA Interest accrual | | 59,720.06 | |
| | | | Current Period Change | | 59,720.06 | -59,720.06 |
| | 2/1/10 | | Beginning Balance | | | -275,014.20 |
| | 2/28/10<br>J/E 2R | GENJ | To record SBA Interest accrual | | 54,055.75 | |
| | | | Current Period Change | | 54,055.75 | -54,055.75 |
| | 3/1/10 | | Beginning Balance | | | -329,069.95 |
| | 3/31/10<br>J/E 2R | GENJ | To record SBA Interest accrual | | 67,572.87 | |
| | 3/31/10<br>J/E 2R | GENJ | To reflect payments of $309,849.66 & $24,890.76 | 334,740.28 | | |
| | | | Current Period Change | 334,740.28 | 67,572.87 | 267,167.41 |
| | 4/1/10 | | Beginning Balance | | | -61,902.54 |
| | 4/30/10<br>J/E 2R | GENJ | To record SBA Interest accrual | | 84,461.71 | |
| | | | Current Period Change | | 84,461.71 | -84,461.71 |
| | 5/1/10 | | Beginning Balance | | | -146,364.25 |
| | 5/31/10<br>J/E 2R | GENJ | To record SBA Interest accrual | | 87,277.11 | |
| | | | Current Period Change | | 87,277.11 | -87,277.11 |
| | 6/1/10 | | Beginning Balance | | | -233,641.36 |
| | 6/30/10<br>J/E 2R | GENJ | To record SBA Interest accrual | | 84,461.71 | |
| | | | Current Period Change | | 84,461.71 | -84,461.71 |
| | **6/30/10** | | **Ending Balance** | | | **-318,103.07** |
| 2300<br>NOTE PAYABLE NO | 7/1/09 | | Beginning Balance | | | -370,000.00 |
| | 8/1/09 | | Beginning Balance | | | -370,000.00 |
| | 9/1/09 | | Beginning Balance | | | -370,000.00 |
| | 10/1/09 | | Beginning Balance | | | -370,000.00 |
| | 11/1/09 | | Beginning Balance | | | -370,000.00 |

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID / Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 2300 (cont.) | 12/1/09 | | Beginning Balance | | | -370,000.00 |
| | 1/1/10 | | Beginning Balance | | | -370,000.00 |
| | 2/1/10 | | Beginning Balance | | | -370,000.00 |
| | 3/1/10 | | Beginning Balance | | | -370,000.00 |
| | 4/1/10 | | Beginning Balance | | | -370,000.00 |
| | 5/1/10 | | Beginning Balance | | | -370,000.00 |
| | 6/1/10 | | Beginning Balance | | | -370,000.00 |
| | **6/30/10** | | **Ending Balance** | | | **-370,000.00** |
| 2500 DEBENTURES PAYA | 7/1/09 | | Beginning Balance | | | -12,000,000.00 |
| | 8/1/09 | | Beginning Balance | | | -12,000,000.00 |
| | 9/1/09 | | Beginning Balance | | | -12,000,000.00 |
| | 10/1/09 | | Beginning Balance | | | -12,000,000.00 |
| | 11/1/09 | | Beginning Balance | | | -12,000,000.00 |
| | 12/1/09 | | Beginning Balance | | | -12,000,000.00 |
| | 12/2/09 1202WT1 | CRJ | MISCELLANEOUS DEPOSIT - SBA DEBENTURE | | 9,175,000.00 | |
| | | | Current Period Change | | 9,175,000.00 | -9,175,000.00 |
| | 1/1/10 | | Beginning Balance | | | -21,175,000.00 |
| | 2/1/10 | | Beginning Balance | | | -21,175,000.00 |
| | 3/1/10 | | Beginning Balance | | | -21,175,000.00 |
| | 4/1/10 | | Beginning Balance | | | -21,175,000.00 |
| | 5/1/10 | | Beginning Balance | | | -21,175,000.00 |
| | 6/1/10 | | Beginning Balance | | | -21,175,000.00 |
| | **6/30/10** | | **Ending Balance** | | | **-21,175,000.00** |
| 2620 CITY TAX PAYABLE | 7/1/09 | | Beginning Balance | | | |
| | 8/1/09 | | Beginning Balance | | | |
| | 9/1/09 | | Beginning Balance | | | |
| | 9/15/09 NYC EXT | PJ | NYC DEPT. OF FINANCE - NYC EXT - EXTENSION 6/30/09 - ID #11-2502336 | 300.00 | | |
| | 9/15/09 NYC EXT E | PJ | NYC DEPT. OF FINANCE - NYC EXT - EXTENSION 6/30/09 - EAF HOLDING CORP. - | 300.00 | | |

## Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 2620 (cont.) | 9/30/09<br>AJE6 | GENJ | ID #13-3670487<br>To reclass to proper account | | 600.00 | |
| | | | Current Period Change | 600.00 | 600.00 | |
| | 10/1/09 | | Beginning Balance | | | |
| | 11/1/09 | | Beginning Balance | | | |
| | 12/1/09 | | Beginning Balance | | | |
| | 1/1/10 | | Beginning Balance | | | |
| | 2/1/10 | | Beginning Balance | | | |
| | 3/1/10 | | Beginning Balance | | | |
| | 4/1/10 | | Beginning Balance | | | |
| | 5/1/10 | | Beginning Balance | | | |
| | 6/1/10 | | Beginning Balance | | | |
| | **6/30/10** | | **Ending Balance** | | | |
| 3000<br>CAPITAL STOCK | 7/1/09 | | Beginning Balance | | | -17,456.00 |
| | 8/1/09 | | Beginning Balance | | | -17,456.00 |
| | 9/1/09 | | Beginning Balance | | | -17,456.00 |
| | 10/1/09 | | Beginning Balance | | | -17,456.00 |
| | 11/1/09 | | Beginning Balance | | | -17,456.00 |
| | 12/1/09 | | Beginning Balance | | | -17,456.00 |
| | 1/1/10 | | Beginning Balance | | | -17,456.00 |
| | 2/1/10 | | Beginning Balance | | | -17,456.00 |
| | 3/1/10 | | Beginning Balance | | | -17,456.00 |
| | 4/1/10 | | Beginning Balance | | | -17,456.00 |
| | 5/1/10 | | Beginning Balance | | | -17,456.00 |
| | 6/1/10 | | Beginning Balance | | | -17,456.00 |
| | **6/30/10** | | **Ending Balance** | | | **-17,456.00** |
| 3015<br>DIVIDENDS PAID | 7/1/09 | | Beginning Balance | | | 580,470.00 |
| | 8/1/09 | | Beginning Balance | | | 580,470.00 |
| | 9/1/09 | | Beginning Balance | | | 580,470.00 |
| | 10/1/09 | | Beginning Balance | | | 580,470.00 |
| | 11/1/09 | | Beginning Balance | | | 580,470.00 |

# Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID / Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 3015 (cont.) | 12/1/09 | | Beginning Balance | | | 580,470.00 |
| | 1/1/10 | | Beginning Balance | | | 580,470.00 |
| | 2/1/10 | | Beginning Balance | | | 580,470.00 |
| | 3/1/10 | | Beginning Balance | | | 580,470.00 |
| | 4/1/10 | | Beginning Balance | | | 580,470.00 |
| | 5/1/10 | | Beginning Balance | | | 580,470.00 |
| | 6/1/10 | | Beginning Balance | | | 580,470.00 |
| | **6/30/10** | | **Ending Balance** | | | **580,470.00** |
| 3015.20 UNDISTRB RETAINE | 7/1/09 | | Beginning Balance | | | 3,875,207.00 |
| | 8/1/09 | | Beginning Balance | | | 3,875,207.00 |
| | 9/1/09 | | Beginning Balance | | | 3,875,207.00 |
| | 9/30/09 AJE7 | GENJ | To reclassify to unrealized gain 6/30/09 | 191,377.00 | | |
| | | | Current Period Change | 191,377.00 | | 191,377.00 |
| | 10/1/09 | | Beginning Balance | | | 4,066,584.00 |
| | 11/1/09 | | Beginning Balance | | | 4,066,584.00 |
| | 12/1/09 | | Beginning Balance | | | 4,066,584.00 |
| | 12/31/09 AJE9 | GENJ | To segregate unrealized appreciation as of 9/3/09 | | 695,463.00 | |
| | 12/31/09 AJE10 | GENJ | To segregate unrealized appreciation as of 12/31/09 | | 152,698.00 | |
| | | | Current Period Change | | 848,161.00 | -848,161.00 |
| | 1/1/10 | | Beginning Balance | | | 3,218,423.00 |
| | 2/1/10 | | Beginning Balance | | | 3,218,423.00 |
| | 3/1/10 | | Beginning Balance | | | 3,218,423.00 |
| | 3/31/10 AJE7 | GENJ | To segregate unrealized appreciation / depreciation as of 3/31/10 | | 277,140.00 | |
| | | | Current Period Change | | 277,140.00 | -277,140.00 |
| | 4/1/10 | | Beginning Balance | | | 2,941,283.00 |
| | 5/1/10 | | Beginning Balance | | | 2,941,283.00 |
| | 6/1/10 | | Beginning Balance | | | 2,941,283.00 |
| | 6/30/10 AJE16 | GENJ | TO SEGREGATE UNREALIZED DEPRECIATION ON INVESTMENTS | | 608,083.00 | |
| | | | Current Period Change | | 608,083.00 | -608,083.00 |

6/22/11 at 14:44:36.26

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| **3015.20 (cont.)** | 6/30/10 | | **Ending Balance** | | | **2,333,200.00** |
| 3015.3 UNREALIZED APPRE | 7/1/09 | | Beginning Balance | | | 855,406.00 |
| | 8/1/09 | | Beginning Balance | | | 855,406.00 |
| | 9/1/09 | | Beginning Balance | | | 855,406.00 |
| | 9/30/09 AJE7 | GENJ | To reclassify to unrealized gain 6/30/09 | | 191,377.00 | |
| | | | Current Period Change | | 191,377.00 | -191,377.00 |
| | 10/1/09 | | Beginning Balance | | | 664,029.00 |
| | 11/1/09 | | Beginning Balance | | | 664,029.00 |
| | 12/1/09 | | Beginning Balance | | | 664,029.00 |
| | 12/31/09 AJE9 | GENJ | To segregate unrealized appreciation as of 9/3/09 | 695,463.00 | | |
| | 12/31/09 AJE10 | GENJ | To segregate unrealized appreciation as of 12/31/09 | 152,698.00 | | |
| | | | Current Period Change | 848,161.00 | | 848,161.00 |
| | 1/1/10 | | Beginning Balance | | | 1,512,190.00 |
| | 2/1/10 | | Beginning Balance | | | 1,512,190.00 |
| | 3/1/10 | | Beginning Balance | | | 1,512,190.00 |
| | 3/31/10 AJE7 | GENJ | To segregate unrealized appreciation / depreciation as of 3/31/10 | 277,140.00 | | |
| | | | Current Period Change | 277,140.00 | | 277,140.00 |
| | 4/1/10 | | Beginning Balance | | | 1,789,330.00 |
| | 5/1/10 | | Beginning Balance | | | 1,789,330.00 |
| | 6/1/10 | | Beginning Balance | | | 1,789,330.00 |
| | 6/30/10 AJE16 | GENJ | TO SEGREGATE UNREALIZED DEPRECIATION ON INVESTMENTS | 608,083.00 | | |
| | | | Current Period Change | 608,083.00 | | 608,083.00 |
| | 6/30/10 | | **Ending Balance** | | | **2,397,413.00** |
| 3020 PAID IN SURPLUS | 7/1/09 | | Beginning Balance | | | -12,514,402.00 |
| | 8/1/09 | | Beginning Balance | | | -12,514,402.00 |
| | 9/1/09 | | Beginning Balance | | | -12,514,402.00 |
| | 10/1/09 | | Beginning Balance | | | -12,514,402.00 |
| | 11/1/09 | | Beginning Balance | | | -12,514,402.00 |

# Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID / Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 3020 (cont.) | 12/1/09 | | Beginning Balance | | | -12,514,402.00 |
| | 1/1/10 | | Beginning Balance | | | -12,514,402.00 |
| | 2/1/10 | | Beginning Balance | | | -12,514,402.00 |
| | 3/1/10 | | Beginning Balance | | | -12,514,402.00 |
| | 4/1/10 | | Beginning Balance | | | -12,514,402.00 |
| | 5/1/10 | | Beginning Balance | | | -12,514,402.00 |
| | 6/1/10 | | Beginning Balance | | | -12,514,402.00 |
| | 6/30/10 | | **Ending Balance** | | | **-12,514,402.00** |
| 3020.1 RESTRICTED CAPIT | 7/1/09 | | Beginning Balance | | | -3,557,261.00 |
| | 8/1/09 | | Beginning Balance | | | -3,557,261.00 |
| | 9/1/09 | | Beginning Balance | | | -3,557,261.00 |
| | 10/1/09 | | Beginning Balance | | | -3,557,261.00 |
| | 11/1/09 | | Beginning Balance | | | -3,557,261.00 |
| | 12/1/09 | | Beginning Balance | | | -3,557,261.00 |
| | 1/1/10 | | Beginning Balance | | | -3,557,261.00 |
| | 2/1/10 | | Beginning Balance | | | -3,557,261.00 |
| | 3/1/10 | | Beginning Balance | | | -3,557,261.00 |
| | 4/1/10 | | Beginning Balance | | | -3,557,261.00 |
| | 5/1/10 | | Beginning Balance | | | -3,557,261.00 |
| | 6/1/10 | | Beginning Balance | | | -3,557,261.00 |
| | 6/30/10 | | **Ending Balance** | | | **-3,557,261.00** |
| 4000 INTEREST ON LOAN | 7/1/09 | | Beginning Balance | | | |
| | 7/1/09 AJE21 | GENJ | To capitalize interest per restated agreement Alpha Media | 10,200.83 | | |
| | 7/1/09 AJE22 | GENJ | To capitalize PIK Interest - Charlie Brown's | 5,998.32 | | |
| | 7/1/09 AJE25 | GENJ | To correct OLS accruals due to rate errors - Chao Tenga LLC | 1,698.61 | | |
| | 7/1/09 AJE26 | GENJ | To correct accruals due to rare errors - Sealmax Inc. | 5,982.95 | | |
| | 7/1/09 AJE27 | GENJ | To accrue interest at default rate - Lifehouse-Golden Acres | 22,707.68 | | |
| | 7/6/09 | CRJ | MISCELLANEOUS | | 98.21 | |

6/22/11 at 14:44:36.32

# Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID / Account Description | Date / Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 4000 (cont.) | 0706D01 | | DEPOSIT - PYT - CHARLES L GOODBAR | | | |
| | 7/20/09 0720ACH1 | CRJ | MISCELLANEOUS DEPOSIT - ACH - CITYWIDE SUPER LAUNDRY CENTER INC. | | 110.00 | |
| | 7/31/09 AAL1 | GENJ | To record Newtex Inc. auto payment | | 285.15 | |
| | 7/31/09 AJE1 | GENJ | Reclass OLS receipts | | 89,575.80 | |
| | 7/31/09 AJE2 | GENJ | Reclass OLS returned receipts | 6,641.28 | | |
| | 7/31/09 AJE3 | GENJ | To reclass OLS autopayments | | 6,462.70 | |
| | 7/31/09 AJE4 | GENJ | Reclass OLS other amount receipts | | 39,118.73 | |
| | 7/31/09 AJE5 | GENJ | To record non-cash adj. - apply credits | | 102,411.45 | |
| | 7/31/09 AJE7 | GENJ | Adjust accrual for Conklin & Sealmax loans | 24,390.37 | | |
| | 7/31/09 J/E - 2Z | GENJ | TO REVERSE JUNE ACCRUAL | 92,851.19 | | |
| | 7/31/09 J/E - 2Z | GENJ | TO ACCRUE JULY, 2009 | | 1,801.65 | |
| | 7/31/09 J/E - 2Q | GENJ | TO RECORD JULY 2009 ACCRUED INTEREST RECEIVABLE | | 550,328.17 | |
| | 7/31/09 J/E - 2Q | GENJ | REVERSE JUNE 2009 ACCRUAL | 536,923.04 | | |
| | | | Current Period Change | 707,394.27 | 790,191.86 | -82,797.59 |
| | 8/1/09 | | Beginning Balance | | | -82,797.59 |
| | 8/1/09 AJE7 | GENJ | Adjust accrual for Conklin & Sealmax loans | | 24,390.37 | |
| | 8/18/09 0818D02 | CRJ | MISCELLANEOUS DEPOSIT - PYT - NEWTEX INC. | | 284.84 | |
| | 8/19/09 0819ACH1 | CRJ | MISCELLANEOUS DEPOSIT - PYT - CITYWIDE SUPER LAUNDRY CENTER INC. | | 106.67 | |
| | 8/31/09 J/E - 2Z | GENJ | TO ACCRUE AUGUST 2009 | | 41,765.07 | |
| | 8/31/09 J/E - 2Z | GENJ | TO REVERSE JULY ACCRUAL | 1,801.65 | | |
| | 8/31/09 J/E - 2Q | GENJ | TO RECORD AUG 2009 ACCRUED INTEREST RECEIVABLE | | 587,955.74 | |
| | 8/31/09 J/E - 2Q | GENJ | REVERSE JULY 2009 ACCRUAL | 550,328.17 | | |
| | 8/31/09 AJE3 | GENJ | RECLASS OLS AUTOPAYMENTS | | 26,023.48 | |
| | 8/31/09 AJE1 | GENJ | RECLASS RECEIPTS | | 71,253.28 | |
| | | | Current Period Change | 552,129.82 | 751,779.45 | -199,649.63 |

6/22/11 at 14:44:36.37

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 4000 (cont.) | 9/1/09 | | Beginning Balance | | | -282,447.22 |
| | 9/21/09<br>0921ACH1 | CRJ | MISCELLANEOUS DEPOSIT - ACH - CITYWIDE SUPER LAUNDRY CENTER INC. | | 103.33 | |
| | 9/30/09<br>AJE5 | GENJ | TO RECORD NON-CASH ADJ APPLY CREDITS & CAPITALIZE INTEREST | | 23,892.86 | |
| | 9/30/09<br>AJE5 | GENJ | TO RECORD NON-CASH ADJ APPLY CREDITS & CAPITALIZE INTEREST | | 15,330.15 | |
| | 9/30/09<br>AAL1 | GENJ | TO RECORD NEWTEX INC AUTO PAYMENT | | 284.52 | |
| | 9/30/09<br>AJE4 | GENJ | RECLASS OLS OTHER AMOUNTS VELOCITY INTEREST | | 28,292.30 | |
| | 9/30/09<br>AJE3 | GENJ | RECLASS OLS AUTOPAYMENTS | | 180.93 | |
| | 9/30/09<br>AJE2 | GENJ | RECLASS OLS RETURNED RECEIPTS | 712.54 | | |
| | 9/30/09<br>AJE1 | GENJ | RECLASS RECEIPTS | | 91,912.24 | |
| | 9/30/09<br>J/E 2Q | GENJ | To record Accrued Interest Receivable | | 579,851.37 | |
| | 9/30/09<br>J/E 2Q | GENJ | To reverse prior month's accrual | 587,955.74 | | |
| | 9/30/09<br>J/E 2Z | GENJ | To record Velocity interest accrual | | 40,493.05 | |
| | 9/30/09<br>J/E 2Z | GENJ | To reverse prior month's Velocity accrual | 41,765.07 | | |
| | | | Current Period Change | 630,433.35 | 780,340.75 | -149,907.40 |
| | 10/1/09 | | Beginning Balance | | | -432,354.62 |
| | 10/13/09<br>1013D01 | CRJ | MISCELLANEOUS DEPOSIT - PYT - CHARLES GOODBAR | | 39.65 | |
| | 10/16/09<br>1016D02 | CRJ | MISCELLANEOUS DEPOSIT - PYT - NEWTEX INC. | | 284.21 | |
| | 10/19/09<br>1019ACH1 | CRJ | MISCELLANEOUS DEPOSIT - ACH - CITYWIDE SUPER LAUNDRY CENTER INC. | | 100.00 | |
| | 10/31/09<br>AJE1 | GENJ | Reclass OLS receipts | | 78,795.03 | |
| | 10/31/09<br>AJE3 | GENJ | To reclass OLS autopayments | | 2,823.36 | |
| | 10/31/09<br>AJE4 | GENJ | Reclass OLS other amount receipts - Velocity Interest | | 27,949.57 | |
| | 10/31/09<br>AJE5 | GENJ | To record non-cash adj. - apply credits & capitalize interest | | 26,177.45 | |
| | 10/31/09<br>AJE6 | GENJ | To writeoff balance of Carlos D. Ravelo | | 13,073.29 | |
| | 10/31/09 | GENJ | To record Velocity interest accrual | | 29,950.81 | |

6/22/11 at 14:44:36.41                                                                                    Page: 228

# Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 4000 (cont.) | J/E 2Z 10/31/09 | GENJ | interest accrual To reverse prior month's Velocity accrual | 40,493.05 | | |
| | J/E 2Z 10/31/09 | GENJ | To record Accrued Interest Receivable | | 580,740.88 | |
| | J/E 2Q 10/31/09 | GENJ | To reverse prior month's accrual | 579,851.37 | | |
| | J/E 2Q | | Current Period Change | 620,344.42 | 759,934.25 | -139,589.83 |
| | 11/1/09 | | Beginning Balance | | | -571,944.45 |
| | 11/19/09 1119ACH1 | CRJ | MISCELLANEOUS DEPOSIT - ACH - CITYWIDE SUPER LAUNDRY CENTER INC. | | 96.67 | |
| | 11/25/09 1125D02 | CRJ | MISCELLANEOUS DEPOSIT - PYT - NEWTEX INC. | | 283.90 | |
| | 11/30/09 AJE1 | GENJ | Reclass OLS receipts | | 88,104.17 | |
| | 11/30/09 AJE3 | GENJ | To reclass OLS autopayments | | 11,078.24 | |
| | 11/30/09 AJE5 | GENJ | To record non-cash adj. - apply credits & capitalize interest | | 4,356.99 | |
| | 11/30/09 J/E 2Q | GENJ | To reverse prior month's accrual | 580,740.88 | | |
| | 11/30/09 J/E 2Q | GENJ | To record Accrued Interest Receivable | | 577,317.02 | |
| | 11/30/09 J/E 2Z | GENJ | To reverse prior month's Velocity accrual | 29,950.81 | | |
| | 11/30/09 J/E 2Z | GENJ | To record Velocity interest accrual | | 77,849.13 | |
| | | | Current Period Change | 610,691.69 | 759,086.12 | -148,394.43 |
| | 12/1/09 | | Beginning Balance | | | -720,338.88 |
| | 12/1/09 1201D01 | CRJ | MISCELLANEOUS DEPOSIT - PYT - NEWTEX INC. | | 283.58 | |
| | 12/11/09 1211D01 | CRJ | MISCELLANEOUS DEPOSIT - MEDALLION BANK PAYMENT RE: ST. FIRMIN MICHEL | | 883.18 | |
| | 12/21/09 1221ACH1 | CRJ | MISCELLANEOUS DEPOSIT - ACH - CITWIDE SUPER LAUNDRY CENTER INC. | | 93.33 | |
| | 12/31/09 AJE1 | GENJ | Reclass OLS receipts | | 74,051.09 | |
| | 12/31/09 AJE2 | GENJ | Reclass OLS returned receipts | 1,287.79 | | |
| | 12/31/09 AJE3 | GENJ | To reclass OLS autopayments | | 191.69 | |
| | 12/31/09 AJE4 | GENJ | Reclass OLS other amount receipts - Velocity interest | | 27,677.01 | |
| | 12/31/09 AJE5 | GENJ | To record non-cash adj. - apply credits | | 44,736.34 | |
| | 12/31/09 J/E 2Q | GENJ | To reverse prior month's accrual | 577,317.02 | | |

6/22/11 at 14:44:36.45                                                                   Page: 229

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 4000 (cont.) | 12/31/09<br>J/E 2Q | GENJ | To record Accrued Interest Receivable | | 601,485.66 | |
| | 12/31/09<br>J/E -2Z | GENJ | TO REVERSE NOV ACCRUAL | 77,849.13 | | |
| | 12/31/09<br>J/E -2Z | GENJ | TO ACCRUED DEC 2009 | | 39,377.59 | |
| | | | Current Period Change | 656,453.94 | 788,779.47 | -132,325.53 |
| | 1/1/10 | | Beginning Balance | | | -852,664.41 |
| | 1/11/10<br>0111D01 | CRJ | MISCELLANEOUS DEPOSIT - PYT - NEWTEX INC. | | 283.26 | |
| | 1/20/10<br>0120ACH1 | CRJ | MISCELLANEOUS DEPOSIT - ACH - CITYWIDE SUPER LAUNDRY CENTER INC. | | 90.00 | |
| | 1/31/10<br>AJE1 | GENJ | Reclass OLS receipts | | 75,657.65 | |
| | 1/31/10<br>AJE3 | GENJ | To reclass OLS autopayments | | 4,277.99 | |
| | 1/31/10<br>AJE4 | GENJ | Reclass OLS other amount receipts - Velocity Interest | | 26,639.17 | |
| | 1/31/10<br>AJE5 | GENJ | To record non-cash adj. - apply credits | | 25,071.24 | |
| | 1/31/10<br>J/E 2Q | GENJ | To reverse prior month's accrual | 601,485.66 | | |
| | 1/31/10<br>J/E 2Q | GENJ | To record Accrued Interest Receivable | | 614,028.04 | |
| | 1/31/10<br>J/E 2Z | GENJ | To reverse prior month's Velocity accrual | 39,377.59 | | |
| | 1/31/10<br>J/E 2Z | GENJ | To record Velocity interest accrual | | 31,403.12 | |
| | | | Current Period Change | 640,863.25 | 777,450.47 | -136,587.22 |
| | 2/1/10 | | Beginning Balance | | | -989,251.63 |
| | 2/16/10<br>0216D01 | CRJ | MISCELLANEOUS DEPOSIT - PYT - NEWTEX INC. | | 282.95 | |
| | 2/19/10<br>0219ACH1 | CRJ | MISCELLANEOUS DEPOSIT - ACH - CITWIDE SUPER LAUNDRY CENTER INC. | | 86.67 | |
| | 2/28/10<br>AJE1 | GENJ | Reclass OLS receipts | | 63,123.89 | |
| | 2/28/10<br>AJE3 | GENJ | To reclass OLS autopayments | | 19,786.29 | |
| | 2/28/10<br>AJE5 | GENJ | To record non-cash adj. - apply credits | | 26,762.32 | |
| | 2/28/10<br>J/E 2Q | GENJ | To reverse prior month's accrual | 614,028.04 | | |
| | 2/28/10<br>J/E 2Q | GENJ | To record Accrued Interest Receivable | | 633,537.43 | |
| | 2/28/10<br>J/E 2Z | GENJ | To reverse prior month's Velocity accrual | 31,403.12 | | |
| | 2/28/10<br>J/E 2Z | GENJ | To record Velocity interest accrual | | 30,686.45 | |
| | | | Current Period Change | 645,431.16 | 774,266.00 | -128,834.84 |

# Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID / Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 4000 (cont.) | 3/1/10 | | Beginning Balance | | | -1,118,086.47 |
| | 3/5/10 0305D02 | CRJ | MISCELLANEOUS DEPOSIT - PYT - NEWTEX INC. | | 282.63 | |
| | 3/19/10 0319Ach1 | CRJ | MISCELLANEOUS DEPOSIT - PYT - CITYWIDE SUPER LAUNDRY CENTER INC. | | 83.33 | |
| | 3/31/10 AJE1 | GENJ | Reclass OLS receipts | | 66,558.29 | |
| | 3/31/10 AJE3 | GENJ | To reclass OLS autopayments | | 327.11 | |
| | 3/31/10 AJE4 | GENJ | Reclass OLS other amount receipts | | 40,349.38 | |
| | 3/31/10 AJE5 | GENJ | To record non-cash adj. - apply credits | | 19,155.42 | |
| | 3/31/10 J/E 2Q | GENJ | To reverse prior month's accrual | 633,537.43 | | |
| | 3/31/10 J/E 2Q | GENJ | To record Accrued Interest Receivable | | 648,124.02 | |
| | 3/31/10 J/E 2Z | GENJ | To record Velocity interest accrual | | 53,085.83 | |
| | 3/31/10 J/E 2Z | GENJ | To reverse prior month's Velocity accrual | 30,686.45 | | |
| | 3/31/10 AJE9 | GENJ | To adjust reserve for net realized gain to interest income for payment received | | 28,538.76 | |
| | | | Current Period Change | 664,223.88 | 856,504.77 | -192,280.89 |
| | 4/1/10 | | Beginning Balance | | | -1,310,367.36 |
| | 4/19/10 0419D01 | CRJ | MISCELLANEOUS DEPOSIT - ACH - CITYWIDE SUPER LAUNDRY CENTER INC. | | 80.00 | |
| | 4/30/10 AAL1 | GENJ | To record Newtex Inc. auto payment | | 282.31 | |
| | 4/30/10 AJE5 | GENJ | To record non-cash adj. - apply credits & capitalize interest | | 23,558.75 | |
| | 4/30/10 AJE1 | GENJ | Reclass OLS receipts | | 78,904.14 | |
| | 4/30/10 AJE3 | GENJ | To reclass OLS autopayments | | 7,380.08 | |
| | 4/30/10 AJE4 | GENJ | Reclass OLS other amount receipts - Prepayment penalty - Learning Care Group Inc. | | 9,825.00 | |
| | 4/30/10 AJE4 | GENJ | Reclass OLS other amount receipts - Velocity interest | | 33,138.72 | |
| | 4/30/10 AJE11 | GENJ | To adjust Reserve for Interest Receivable for payments received | | 10,151.21 | |
| | 4/30/10 J/E 2Q | GENJ | To reverse prior month's accrual | 648,124.02 | | |
| | 4/30/10 J/E 2Q | GENJ | To record Accrued Interest Receivable | | 648,038.03 | |

6/22/11 at 14:44:36.54

Page: 231

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 4000 (cont.) | 4/30/10<br>J/E 2Z | GENJ | To reverse prior month's Velocity accrual | 53,085.83 | | |
| | 4/30/10<br>J/E 2Z | GENJ | To record Velocity interest accrual | | 32,011.17 | |
| | | | Current Period Change | 701,209.85 | 843,369.41 | -142,159.56 |
| | 5/1/10 | | Beginning Balance | | | -1,452,526.92 |
| | 5/19/10<br>0519ach1 | CRJ | MISCELLANEOUS DEPOSIT - PYT - CITYWIDE SUPER LAUNDRY CENTER INC. | | 76.67 | |
| | 5/31/10<br>AJE5 | GENJ | To record non-cash adj. - apply credits | | 20,924.79 | |
| | 5/31/10<br>AJE1 | GENJ | Reclass OLS receipts | | 69,605.90 | |
| | 5/31/10<br>AJE3 | GENJ | To reclass OLS autopayments | | 14,440.11 | |
| | 5/31/10<br>AAL1 | GENJ | To record Newtex Inc. auto payment | | 282.18 | |
| | 5/31/10<br>AJE11 | GENJ | To adjust reserve for net realized gain for payment received | | 24,685.09 | |
| | 5/31/10<br>J/E 2Q | GENJ | To reverse prior month's accrual | 648,038.03 | | |
| | 5/31/10<br>J/E 2Q | GENJ | To record Accrued Interest Receivable | | 668,938.91 | |
| | 5/31/10<br>J/E 2Z | GENJ | To record Velocity interest accrual | | 62,944.19 | |
| | 5/31/10<br>J/E 2Z | GENJ | To reverse prior month's Velocity accrual | 32,011.17 | | |
| | | | Current Period Change | 680,049.20 | 861,897.84 | -181,848.64 |
| | 6/1/10 | | Beginning Balance | | | -1,634,375.56 |
| | 6/22/10<br>0622ACH | CRJ | MISCELLANEOUS DEPOSIT - ACH - CITYWIDE SUPER LAUNDRY CENTER INC. | | 73.33 | |
| | 6/30/10<br>AAL1 | GENJ | To record Newtex Inc. auto payment | | 281.67 | |
| | 6/30/10<br>AJE1 | GENJ | Reclass OLS receipts | | 60,081.90 | |
| | 6/30/10<br>AJE5 | GENJ | To record non-cash adj. - apply credits | | 21,013.80 | |
| | 6/30/10<br>AJE5 | GENJ | To record non-cash adj. - apply credits | | 22,298.40 | |
| | 6/30/10<br>AJE3 | GENJ | To reclass OLS autopayments | | 548.81 | |
| | 6/30/10<br>AJE4 | GENJ | Reclass OLS other amount receipts - Velocity Interest | | 21,105.67 | |
| | 6/30/10<br>J/E 2Q | GENJ | To record Accrued Interest Receivable | | 678,096.58 | |
| | 6/30/10<br>J/E 2Q | GENJ | To reverse prior month's accrual | 668,938.91 | | |
| | 6/30/10<br>AJE13 | GENJ | To write off interest income on Centaur sold in July 2010 | 87,600.66 | | |
| | 6/30/10<br>J/E 2Z | GENJ | To reverse prior month's Velocity accrual | 62,944.19 | | |

6/22/11 at 14:44:36.60

# Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 4000 (cont.) | 6/30/10<br>J/E 2Z | GENJ | To record Velocity interest accrual | | 62,788.65 | |
| | | | Current Period Change | 819,483.76 | 866,288.81 | -46,805.05 |
| | 6/30/10 | | **Ending Balance** | | | **-1,681,180.61** |
| 4001<br>Discount Amortization | 7/1/09 | | Beginning Balance | | | |
| | 7/31/09<br>RJE3 | GENJ | To record monthly discount amort. on loan to Learning Care Group Inc. | | 476.19 | |
| | 7/31/09<br>RJE3 | GENJ | To record monthly discount amort. on loan to X-Rite Inc. | | 83.33 | |
| | 7/31/09<br>RJE3 | GENJ | To record monthly discount amort. on loan to Hudson Products Holdings Inc. | | 535.71 | |
| | 7/31/09<br>RJE3 | GENJ | To record monthly discount amort. on loan to X-Rite Inc. | | 83.33 | |
| | 7/31/09<br>RJE3 | GENJ | To record monthly discount amort. on loan to Centaur LLC | | 684.15 | |
| | 7/31/09<br>RJE3 | GENJ | To record monthly discount amort. on loan to Alpha Media Group Inc. | | 1,428.57 | |
| | | | Current Period Change | | 3,291.28 | -3,291.28 |
| | 8/1/09 | | Beginning Balance | | | -3,291.28 |
| | 8/31/09<br>RJE 3 | GENJ | MONTHLY DISCOUNT AMORTIZATION ON LOAN TO HUDSON PRODUCTS | | 535.71 | |
| | 8/31/09<br>RJE 3 | GENJ | MONTHLY DISCOUNT AMORTIZATION ON LOAN TO X-RITE INC. | | 83.33 | |
| | 8/31/09<br>RJE 3 | GENJ | MONTHLY DISCOUNT AMORTIZATION ON LOAN TO CENTAUR LLC | | 684.15 | |
| | 8/31/09<br>RJE 3 | GENJ | MONTHLY DISCOUNT AMORTIZATION ON LOAN TO ALPHA MEDIA GROUP | | 1,428.57 | |
| | 8/31/09<br>RJE 3 | GENJ | MONTHLY DISCOUNT AMORTIZATION ON LOAN TO X-RITE INC. | | 83.33 | |
| | 8/31/09<br>RJE 3 | GENJ | MONTHLY DISCOUNT AMORTIZATION ON LOAN TO LEARNING CARE GROUP | | 476.19 | |
| | | | Current Period Change | | 3,291.28 | -3,291.28 |
| | 9/1/09 | | Beginning Balance | | | -6,582.56 |
| | 9/30/09<br>RJE3 | GENJ | To record monthly discount amort. on loan to Hudson Products | | 535.71 | |

6/22/11 at 14:44:36.65

Page: 233

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 4001 (cont.) | 9/30/09<br>RJE3 | GENJ | Holdings Inc.<br>To record monthly discount amort. on loan to Learning Care Group Inc. | | 476.19 | |
| | 9/30/09<br>RJE3 | GENJ | To record monthly discount amort. on loan to Alpha Media Group Inc. | | 1,428.57 | |
| | 9/30/09<br>RJE3 | GENJ | To record monthly discount amort. on loan to X-Rite Inc. | | 83.33 | |
| | 9/30/09<br>RJE3 | GENJ | To record monthly discount amort. on loan to Centaur LLC | | 684.15 | |
| | 9/30/09<br>RJE3 | GENJ | To record monthly discount amort. on loan to X-Rite Inc. | | 83.33 | |
| | | | Current Period Change | | 3,291.28 | -3,291.28 |
| | 10/1/09 | | Beginning Balance | | | -9,873.84 |
| | 10/31/09<br>RJE3 | GENJ | To record monthly discount amort. on loan to X-Rite Inc. | | 83.33 | |
| | 10/31/09<br>RJE3 | GENJ | To record monthly discount amort. on loan to Alpha Media Group Inc. | | 1,428.57 | |
| | 10/31/09<br>RJE3 | GENJ | To record monthly discount amort. on loan to X-Rite Inc. | | 83.33 | |
| | 10/31/09<br>RJE3 | GENJ | To record monthly discount amort. on loan to Hudson Products Holdings Inc. | | 535.71 | |
| | 10/31/09<br>RJE3 | GENJ | To record monthly discount amort. on loan to Learning Care Group Inc. | | 476.19 | |
| | 10/31/09<br>RJE3 | GENJ | To record monthly discount amort. on loan to Centaur LLC | | 684.15 | |
| | | | Current Period Change | | 3,291.28 | -3,291.28 |
| | 11/1/09 | | Beginning Balance | | | -13,165.12 |
| | 11/30/09<br>RJE3 | GENJ | To record monthly discount amort. on loan to Learning Care Group Inc. | | 476.19 | |
| | 11/30/09<br>RJE3 | GENJ | To record monthly discount amort. on loan to X-Rite Inc. | | 83.33 | |
| | 11/30/09<br>RJE3 | GENJ | To record monthly discount amort. on loan to Hudson Products Holdings Inc. | | 535.71 | |
| | 11/30/09<br>RJE3 | GENJ | To record monthly discount amort. on loan to Centaur LLC | | 684.15 | |
| | 11/30/09<br>RJE3 | GENJ | To record monthly discount amort. on loan | | 83.33 | |

6/22/11 at 14:44:36.68

Page: 234

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| | | | to X-Rite Inc. | | | |
| 4001 (cont.) | 11/30/09<br>RJE3 | GENJ | To record monthly discount amort. on loan to Alpha Media Group Inc. | | 1,428.57 | |
| | | | Current Period Change | | 3,291.28 | -3,291.28 |
| | 12/1/09 | | Beginning Balance | | | -16,456.40 |
| | 12/31/09<br>RJE3 | GENJ | To record monthly discount amort. on loan to Hudson Products Holdings Inc. | | 535.71 | |
| | 12/31/09<br>RJE3 | GENJ | To record monthly discount amort. on loan to Education Affiliates Inc. | | 140.00 | |
| | 12/31/09<br>RJE3 | GENJ | To record monthly discount amort. on loan to Alpha Media Group Inc. | | 1,428.57 | |
| | 12/31/09<br>RJE3 | GENJ | To record monthly discount amort. on loan to Fairway Group Holdings Corp. | | 180.00 | |
| | 12/31/09<br>RJE3 | GENJ | To record monthly discount amort. on loan to X-Rite Inc. | | 83.33 | |
| | 12/31/09<br>RJE3 | GENJ | To record monthly discount amort. on loan to X-Rite Inc. | | 83.33 | |
| | 12/31/09<br>RJE3 | GENJ | To record monthly discount amort. on loan to Learning Care Group Inc. | | 476.19 | |
| | 12/31/09<br>RJE3 | GENJ | To record monthly discount amort. on loan to Centaur LLC | | 684.15 | |
| | | | Current Period Change | | 3,611.28 | -3,611.28 |
| | 1/1/10 | | Beginning Balance | | | -20,067.68 |
| | 1/31/10<br>RJE3 | GENJ | To record monthly discount amort. on loan to Hudson Products Holdings Inc. | | 535.71 | |
| | 1/31/10<br>RJE3 | GENJ | To record monthly discount amort. on loan to Centaur LLC | | 684.15 | |
| | 1/31/10<br>RJE3 | GENJ | To record monthly discount amort. on loan to Alpha Media Group Inc. | | 1,428.57 | |
| | 1/31/10<br>RJE3 | GENJ | To record monthly discount amort. on loan to X-Rite Inc. | | 83.33 | |
| | 1/31/10<br>RJE3 | GENJ | To record monthly discount amort. on loan to Education Affiliates Inc. | | 331.00 | |
| | 1/31/10<br>RJE3 | GENJ | To record monthly discount amort. on loan to Learning Care Group Inc. | | 476.19 | |

6/22/11 at 14:44:36.71

## Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 4001 (cont.) | 1/31/10<br>RJE3 | GENJ | Inc.<br>To record monthly discount amort. on loan to Fairway Group Holdings Corp. | | 497.00 | |
| | 1/31/10<br>RJE3 | GENJ | To record monthly discount amort. on loan to X-Rite Inc. | | 83.33 | |
| | | | Current Period Change | | 4,119.28 | -4,119.28 |
| | 2/1/10 | | Beginning Balance | | | -24,186.96 |
| | 2/28/10<br>RJE3 | GENJ | To record monthly discount amort. on loan to Fairway Group Holdings Corp. | | 497.00 | |
| | 2/28/10<br>RJE3 | GENJ | To record monthly discount amort. on loan to X-Rite Inc. | | 83.33 | |
| | 2/28/10<br>RJE3 | GENJ | To record monthly discount amort. on loan to Centaur LLC | | 684.15 | |
| | 2/28/10<br>RJE3 | GENJ | To record monthly discount amort. on loan to Hudson Products Holdings Inc. | | 535.71 | |
| | 2/28/10<br>RJE3 | GENJ | To record monthly discount amort. on loan to Education Affiliates Inc. | | 331.00 | |
| | 2/28/10<br>RJE3 | GENJ | To record monthly discount amort. on loan to X-Rite Inc. | | 83.33 | |
| | 2/28/10<br>RJE3 | GENJ | To record monthly discount amort. on loan to Alpha Media Group Inc. | | 1,428.57 | |
| | 2/28/10<br>RJE3 | GENJ | To record monthly discount amort. on loan to Learning Care Group Inc. | | 476.19 | |
| | | | Current Period Change | | 4,119.28 | -4,119.28 |
| | 3/1/10 | | Beginning Balance | | | -28,306.24 |
| | 3/31/10<br>RJE3 | GENJ | To record monthly discount amort. on loan to Centaur LLC | | 684.15 | |
| | 3/31/10<br>RJE3 | GENJ | To record monthly discount amort. on loan to Education Affiliates Inc. | | 331.00 | |
| | 3/31/10<br>RJE3 | GENJ | To record monthly discount amort. on loan to Fairway Group Holdings Corp. | | 497.00 | |
| | 3/31/10<br>RJE3 | GENJ | To record monthly discount amort. on loan to Hudson Products Holdings Inc. | | 535.71 | |
| | 3/31/10<br>RJE3 | GENJ | To record monthly discount amort. on loan to X-Rite Inc. | | 83.33 | |

6/22/11 at 14:44:36.76

## Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 4001 (cont.) | 3/31/10<br>RJE3 | GENJ | To record monthly discount amort. on loan to Alpha Media Group Inc. | | 1,428.57 | |
| | 3/31/10<br>RJE3 | GENJ | To record monthly discount amort. on loan to X-Rite Inc. | | 83.33 | |
| | 3/31/10<br>RJE3 | GENJ | To record monthly discount amort. on loan to Learning Care Group Inc. | | 476.19 | |
| | | | Current Period Change | | 4,119.28 | -4,119.28 |
| | 4/1/10 | | Beginning Balance | | | -32,425.52 |
| | 4/30/10<br>RJE3 | GENJ | To record monthly discount amort. on loan to X-Rite Inc. | | 83.33 | |
| | 4/30/10<br>RJE3 | GENJ | To record monthly discount amort. on loan to Centaur LLC | | 684.15 | |
| | 4/30/10<br>RJE3 | GENJ | To record monthly discount amort. on loan to Hudson Products Holdings Inc. | | 535.71 | |
| | 4/30/10<br>RJE3 | GENJ | To record monthly discount amort. on loan to X-Rite Inc. | | 83.33 | |
| | 4/30/10<br>RJE3 | GENJ | To record monthly discount amort. on loan to Education Affiliates Inc. | | 331.00 | |
| | 4/30/10<br>RJE3 | GENJ | To record monthly discount amort. on loan to Shearer's Foods Inc. | | 347.22 | |
| | 4/30/10<br>RJE3 | GENJ | To record monthly discount amort. on loan to Fairway Group Holdings Corp. | | 497.00 | |
| | 4/30/10<br>RJE3 | GENJ | To record monthly discount amort. on loan to Alpha Media Group Inc. | | 1,428.57 | |
| | | | Current Period Change | | 3,990.31 | -3,990.31 |
| | 5/1/10 | | Beginning Balance | | | -36,415.83 |
| | 5/31/10<br>RJE3 | GENJ | To record monthly discount amort. on loan to X-Rite Inc. | | 83.33 | |
| | 5/31/10<br>RJE3 | GENJ | To record monthly discount amort. on loan to Shearer's Foods Inc. | | 347.22 | |
| | 5/31/10<br>RJE3 | GENJ | To record monthly discount amort. on loan to Centaur LLC | | 684.15 | |
| | 5/31/10<br>RJE3 | GENJ | To record monthly discount amort. on loan to Hudson Products Holdings Inc. | | 535.71 | |
| | 5/31/10<br>RJE3 | GENJ | To record monthly discount amort. on loan to Education Affiliates | | 331.00 | |

6/22/11 at 14:44:36.79

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| | | | to Education Affiliates Inc. | | | |
| 4001 (cont.) | 5/31/10<br>RJE3 | GENJ | To record monthly discount amort. on loan to Alpha Media Group Inc. | | 1,428.57 | |
| | 5/31/10<br>RJE3 | GENJ | To record monthly discount amort. on loan to Fairway Group Holdings Corp. | | 497.00 | |
| | 5/31/10<br>RJE3 | GENJ | To record monthly discount amort. on loan to X-Rite Inc. | | 83.33 | |
| | | | Current Period Change | | 3,990.31 | -3,990.31 |
| | 6/1/10 | | Beginning Balance | | | -40,406.14 |
| | 6/30/10<br>RJE3 | GENJ | To record monthly discount amort. on loan to X-Rite Inc. | | 83.33 | |
| | 6/30/10<br>RJE3 | GENJ | To record monthly discount amort. on loan to Education Affiliates Inc. | | 331.00 | |
| | 6/30/10<br>RJE3 | GENJ | To record monthly discount amort. on loan to Fairway Group Holdings Corp. | | 497.00 | |
| | 6/30/10<br>RJE3 | GENJ | To record monthly discount amort. on loan to Centaur LLC | | 684.15 | |
| | 6/30/10<br>RJE3 | GENJ | To record monthly discount amort. on loan to Alpha Media Group Inc. | | 1,428.57 | |
| | 6/30/10<br>RJE3 | GENJ | To record monthly discount amort. on loan to Shearer's Foods Inc. | | 347.22 | |
| | 6/30/10<br>RJE3 | GENJ | To record monthly discount amort. on loan to X-Rite Inc. | | 83.33 | |
| | 6/30/10<br>RJE3 | GENJ | To record monthly discount amort. on loan to Hudson Products Holdings Inc. | | 535.71 | |
| | | | Current Period Change | | 3,990.31 | -3,990.31 |
| | 6/30/10 | | Ending Balance | | | -44,396.45 |
| 4101<br>MONEY MARKET INT | 7/1/09 | | Beginning Balance | | | |
| | 7/31/09<br>0731Int | CRJ | MISCELLANEOUS DEPOSIT - INTEREST | | 0.59 | |
| | | | Current Period Change | | 0.59 | -0.59 |
| | 8/1/09 | | Beginning Balance | | | -0.59 |
| | 8/31/09<br>0831JPMCI | CRJ | MISCELLANEOUS DEPOSIT - INTEREST | | 0.59 | |
| | | | Current Period Change | | 0.59 | -0.59 |

6/22/11 at 14:44:36.84

## Elk Associates Funding Corporation
## General Ledger
## For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 4101 (cont.) | 9/1/09 | | Beginning Balance | | | -1.18 |
| | 9/30/09 0930JPINT | CRJ | MISCELLANEOUS DEPOSIT - INTEREST | | 0.57 | |
| | | | Current Period Change | | 0.57 | -0.57 |
| | 10/1/09 | | Beginning Balance | | | -1.75 |
| | 10/30/09 1030INT | CRJ | MISCELLANEOUS DEPOSIT - INTEREST | | 0.57 | |
| | | | Current Period Change | | 0.57 | -0.57 |
| | 11/1/09 | | Beginning Balance | | | -2.32 |
| | 11/30/09 1130INT | CRJ | MISCELLANEOUS DEPOSIT - INTEREST | | 0.59 | |
| | | | Current Period Change | | 0.59 | -0.59 |
| | 12/1/09 | | Beginning Balance | | | -2.91 |
| | 12/31/09 1231Int | CRJ | MISCELLANEOUS DEPOSIT - INTEREST | | 0.59 | |
| | | | Current Period Change | | 0.59 | -0.59 |
| | 1/1/10 | | Beginning Balance | | | -3.50 |
| | 1/29/10 0129INT | CRJ | MISCELLANEOUS DEPOSIT - INTEREST | | 0.55 | |
| | | | Current Period Change | | 0.55 | -0.55 |
| | 2/1/10 | | Beginning Balance | | | -4.05 |
| | 2/26/10 0226INT | CRJ | MISCELLANEOUS DEPOSIT - INTEREST | | 0.53 | |
| | | | Current Period Change | | 0.53 | -0.53 |
| | 3/1/10 | | Beginning Balance | | | -4.58 |
| | 3/31/10 0331Int | CRJ | MISCELLANEOUS DEPOSIT - INTEREST | | 0.63 | |
| | | | Current Period Change | | 0.63 | -0.63 |
| | 4/1/10 | | Beginning Balance | | | -5.21 |
| | 4/30/10 0430Int | CRJ | MISCELLANEOUS DEPOSIT - INTEREST | | 0.55 | |
| | | | Current Period Change | | 0.55 | -0.55 |
| | 5/1/10 | | Beginning Balance | | | -5.76 |
| | 5/28/10 0528INT | CRJ | MISCELLANEOUS DEPOSIT - INTEREST | | 0.42 | |
| | | | Current Period Change | | 0.42 | -0.42 |
| | 6/1/10 | | Beginning Balance | | | -6.18 |
| | 6/30/10 0630INT | CRJ | MISCELLANEOUS DEPOSIT - INTEREST | | 0.50 | |
| | | | Current Period Change | | 0.50 | -0.50 |
| | 6/30/10 | | Ending Balance | | | -6.68 |

6/22/11 at 14:44:36.87

**Elk Associates Funding Corporation**
**General Ledger**
**For the Period From Jul 1, 2009 to Jun 30, 2010**

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 4101.10<br>INTEREST INCOME | 7/1/09 | | Beginning Balance | | | |
| | 7/6/09<br>0706CDINT | CRJ | MISCELLANEOUS DEPOSIT - CD INTEREST | | 43.79 | |
| | 7/31/09<br>AJE6 | GENJ | To record Bank Leumi C.D. Interest income | | 124.27 | |
| | | | Current Period Change | | 168.06 | -168.06 |
| | 8/1/09 | | Beginning Balance | | | -168.06 |
| | 8/5/09<br>0805CDINT | CRJ | MISCELLANEOUS DEPOSIT - CD INTEREST | | 41.06 | |
| | | | Current Period Change | | 41.06 | -41.06 |
| | 9/1/09 | | Beginning Balance | | | -209.12 |
| | 9/4/09<br>0904IDB | CRJ | MISCELLANEOUS DEPOSIT - CD INTEREST | | 41.05 | |
| | | | Current Period Change | | 41.05 | -41.05 |
| | 10/1/09 | | Beginning Balance | | | -250.17 |
| | 10/5/09<br>1005IDB | CRJ | MISCELLANEOUS DEPOSIT - C.D. INTEREST INCOME | | 31.83 | |
| | | | Current Period Change | | 31.83 | -31.83 |
| | 11/1/09 | | Beginning Balance | | | -282.00 |
| | 11/4/09<br>1104INT | CRJ | MISCELLANEOUS DEPOSIT - C.D. INTEREST | | 30.80 | |
| | 11/30/09<br>AJE7 | GENJ | To record Bank Leumi C.D. interest income | | 163.24 | |
| | | | Current Period Change | | 194.04 | -194.04 |
| | 12/1/09 | | Beginning Balance | | | -476.04 |
| | 12/4/09<br>1204IDB | CRJ | MISCELLANEOUS DEPOSIT - C.D. INTEREST | | 30.80 | |
| | | | Current Period Change | | 30.80 | -30.80 |
| | 1/1/10 | | Beginning Balance | | | -506.84 |
| | 1/4/10<br>0104IDB | CRJ | MISCELLANEOUS DEPOSIT - C.D. INTEREST INCOME | | 31.83 | |
| | 1/31/10<br>AJE6 | GENJ | To record Bank Leumi C.D. interest income | | 47.46 | |
| | | | Current Period Change | | 79.29 | -79.29 |
| | 2/1/10 | | Beginning Balance | | | -586.13 |
| | 2/3/10<br>0203IDB | CRJ | MISCELLANEOUS DEPOSIT - C.D. INTEREST | | 30.80 | |
| | | | Current Period Change | | 30.80 | -30.80 |
| | 3/1/10 | | Beginning Balance | | | -616.93 |

6/22/11 at 14:44:36.91                                                                    Page: 240

## Elk Associates Funding Corporation
## General Ledger
## For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 4101 (cont.) | 3/5/10<br>0305INT | CRJ | MISCELLANEOUS<br>DEPOSIT - IDB C.D.<br>INTEREST INCOME | | 30.80 | |
| | | | Current Period Change | | 30.80 | -30.80 |
| | 4/1/10 | | Beginning Balance | | | -647.73 |
| | 4/5/10<br>0405IDB | CRJ | MISCELLANEOUS<br>DEPOSIT - C.D.<br>INTEREST INCOME | | 31.83 | |
| | | | Current Period Change | | 31.83 | -31.83 |
| | 5/1/10 | | Beginning Balance | | | -679.56 |
| | 5/5/10<br>0505IDB | CRJ | MISCELLANEOUS<br>DEPOSIT - C.D.<br>INTEREST INCOME | | 30.80 | |
| | | | Current Period Change | | 30.80 | -30.80 |
| | 6/1/10 | | Beginning Balance | | | -710.36 |
| | 6/4/10<br>0604IDBIN | CRJ | MISCELLANEOUS<br>DEPOSIT - C.D.<br>INTEREST INCOME | | 30.80 | |
| | | | Current Period Change | | 30.80 | -30.80 |
| | 6/30/10 | | Ending Balance | | | -741.16 |
| 4102.00<br>DELINQUENT INTER | 7/1/09 | | Beginning Balance | | | |
| | 7/6/09<br>0706D01 | CRJ | MISCELLANEOUS<br>DEPOSIT - PYT -<br>CHARLES L GOODBAR | | 19.30 | |
| | 7/31/09<br>AJE1 | GENJ | Reclass OLS receipts | | 233.35 | |
| | | | Current Period Change | | 252.65 | -252.65 |
| | 8/1/09 | | Beginning Balance | | | -252.65 |
| | 8/31/09<br>AJE1 | GENJ | RECLASS RECEIPTS | | 632.93 | |
| | | | Current Period Change | | 632.93 | -632.93 |
| | 9/1/09 | | Beginning Balance | | | -885.58 |
| | 10/1/09 | | Beginning Balance | | | -885.58 |
| | 10/13/09<br>1013D01 | CRJ | MISCELLANEOUS<br>DEPOSIT - PYT -<br>CHARLES GOODBAR | | 0.22 | |
| | | | Current Period Change | | 0.22 | -0.22 |
| | 11/1/09 | | Beginning Balance | | | -885.80 |
| | 12/1/09 | | Beginning Balance | | | -885.80 |
| | 1/1/10 | | Beginning Balance | | | -885.80 |
| | 1/31/10 | GENJ | Reclass OLS receipts | | 1.74 | |

6/22/11 at 14:44:36.95

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 4102.00 (cont.) | AJE1 | | | | | |
| | | | Current Period Change | | 1.74 | -1.74 |
| | 2/1/10 | | Beginning Balance | | | -887.54 |
| | 2/28/10 AJE1 | GENJ | Reclass OLS receipts | | 317.42 | |
| | | | Current Period Change | | 317.42 | -317.42 |
| | 3/1/10 | | Beginning Balance | | | -1,204.96 |
| | 4/1/10 | | Beginning Balance | | | -1,204.96 |
| | 4/30/10 AJE1 | GENJ | Reclass OLS receipts | | 763.76 | |
| | | | Current Period Change | | 763.76 | -763.76 |
| | 5/1/10 | | Beginning Balance | | | -1,968.72 |
| | 6/1/10 | | Beginning Balance | | | -1,968.72 |
| | 6/30/10 AJE1 | GENJ | Reclass OLS receipts | | 251.23 | |
| | | | Current Period Change | | 251.23 | -251.23 |
| | **6/30/10** | | **Ending Balance** | | | **-2,219.95** |
| 4500.00 ORIGINATION FEE | 7/1/09 | | Beginning Balance | | | |
| | 8/1/09 | | Beginning Balance | | | |
| | 9/1/09 | | Beginning Balance | | | |
| | 10/1/09 | | Beginning Balance | | | |
| | 11/1/09 | | Beginning Balance | | | |
| | 12/1/09 | | Beginning Balance | | | |
| | 1/1/10 | | Beginning Balance | | | |
| | 2/1/10 | | Beginning Balance | | | |
| | 3/1/10 | | Beginning Balance | | | |
| | 4/1/10 | | Beginning Balance | | | |
| | 5/1/10 | | Beginning Balance | | | |
| | 6/1/10 | | Beginning Balance | | | |
| | 6/9/10 0609d02 | CRJ | MISCELLANEOUS DEPOSIT - ORIG FEE - PATROON OPERATING COMPANY LLC | | 2,500.00 | |
| | | | Current Period Change | | 2,500.00 | -2,500.00 |
| | **6/30/10** | | **Ending Balance** | | | **-2,500.00** |
| 4501.00 | 7/1/09 | | Beginning Balance | | | |

6/22/11 at 14:44:36.98

## Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| LATE FEEont.) | | | | | | |
| | 7/6/09 0706D01 | CRJ | MISCELLANEOUS DEPOSIT - PYT - CHARLES L GOODBAR | | 29.03 | |
| | 7/31/09 AJE1 | GENJ | Reclass OLS receipts | | 512.37 | |
| | | | Current Period Change | | 541.40 | -541.40 |
| | 8/1/09 | | Beginning Balance | | | -541.40 |
| | 8/31/09 AJE1 | GENJ | RECLASS RECEIPTS | | 2,588.99 | |
| | | | Current Period Change | | 2,588.99 | -2,588.99 |
| | 9/1/09 | | Beginning Balance | | | -3,130.39 |
| | 10/1/09 | | Beginning Balance | | | -3,130.39 |
| | 11/1/09 | | Beginning Balance | | | -3,130.39 |
| | 11/30/09 AJE1 | GENJ | Reclass OLS receipts | | 2,711.60 | |
| | | | Current Period Change | | 2,711.60 | -2,711.60 |
| | 12/1/09 | | Beginning Balance | | | -5,841.99 |
| | 1/1/10 | | Beginning Balance | | | -5,841.99 |
| | 2/1/10 | | Beginning Balance | | | -5,841.99 |
| | 2/28/10 AJE1 | GENJ | Reclass OLS receipts | | 523.10 | |
| | | | Current Period Change | | 523.10 | -523.10 |
| | 3/1/10 | | Beginning Balance | | | -6,365.09 |
| | 4/1/10 | | Beginning Balance | | | -6,365.09 |
| | 5/1/10 | | Beginning Balance | | | -6,365.09 |
| | 5/31/10 AJE1 | GENJ | Reclass OLS receipts | | 3,470.80 | |
| | | | Current Period Change | | 3,470.80 | -3,470.80 |
| | 6/1/10 | | Beginning Balance | | | -9,835.89 |
| | 6/30/10 | | **Ending Balance** | | | **-9,835.89** |
| 4600 OTHER INCOME | 7/1/09 | | Beginning Balance | | | |
| | 8/1/09 | | Beginning Balance | | | |
| | 8/18/09 0818WT | CRJ | MISCELLANEOUS DEPOSIT - FLAT FEE PAYMENT - X-RITE INC. | | 1,251.05 | |
| | | | Current Period Change | | 1,251.05 | -1,251.05 |
| | 9/1/09 | | Beginning Balance | | | -1,251.05 |
| | 10/1/09 | | Beginning Balance | | | -1,251.05 |

6/22/11 at 14:44:37.01

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID / Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 4600 (cont.) | 11/1/09 | | Beginning Balance | | | -1,251.05 |
| | 11/16/09 1116D02 | CRJ | Loan Track deposits - SHARE OF 3 EXTENSION FEES - LIFEHOUSE GOLDEN ACRES | | 5,780.78 | |
| | 11/16/09 1116D02 | CRJ | Loan Track deposits - SHARE OF EXIT FEE - LIFEHOUSE GOLDEN ACRES | | 3,854.20 | |
| | | | Current Period Change | | 9,634.98 | -9,634.98 |
| | 12/1/09 | | Beginning Balance | | | -10,886.03 |
| | 12/9/09 1209WT3 | CRJ | MISCELLANEOUS DEPOSIT - AMENDMENT FEE - RESCO PRODUCTS INC. | | 7,800.90 | |
| | 12/17/09 1217WT | CRJ | MISCELLANEOUS DEPOSIT - WAIVER FEE - HUDSON PRODUCTS HOLDINGS INC. | | 1,856.25 | |
| | 12/24/09 1224WT1 | CRJ | MISCELLANEOUS DEPOSIT - SECOND AMENDMENT CLOSING FEES - BP METALS LLC | | 8,940.05 | |
| | | | Current Period Change | | 18,597.20 | -18,597.20 |
| | 1/1/10 | | Beginning Balance | | | -29,483.23 |
| | 2/1/10 | | Beginning Balance | | | -29,483.23 |
| | 3/1/10 | | Beginning Balance | | | -29,483.23 |
| | 3/19/10 0319WT1 | CRJ | MISCELLANEOUS DEPOSIT - WAIVER FEE - HUDSON PRODUCTS HOLDINGS INC. | | 3,703.13 | |
| | | | Current Period Change | | 3,703.13 | -3,703.13 |
| | 4/1/10 | | Beginning Balance | | | -33,186.36 |
| | 4/30/10 AJE12 | GENJ | To void payment to Zuneera & Humna - cannot locate borrower | 757.72 | | |
| | | | Current Period Change | 757.72 | | -757.72 |
| | 5/1/10 | | Beginning Balance | | | -33,944.08 |
| | 5/7/10 0507D02 | CRJ | MISCELLANEOUS DEPOSIT - REFUND - FIRST AMERICAN TITLE INS. CO. OF NY - 9/22/93 | | 600.00 | |
| | | | Current Period Change | | 600.00 | -600.00 |
| | 6/1/10 | | Beginning Balance | | | -34,544.08 |

6/22/11 at 14:44:37.05

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 4600 (cont.) | 6/1/10<br>0601wt7 | CRJ | MISCELLANEOUS DEPOSIT - WAIVER FEE - HUDSON PRODUCTS HOLDINGS INC. | | 1,477.50 | |
| | 6/24/10<br>0624WT2 | CRJ | MISCELLANEOUS DEPOSIT - AMENDMENT FEE - HUDSON PRODUCTS HOLDINGS INC. | | 6,364.77 | |
| | | | Current Period Change | | 7,842.27 | -7,842.27 |
| | 6/30/10 | | **Ending Balance** | | | **-42,386.35** |
| 4602.10<br>INSURANCE RECOV | 7/1/09 | | Beginning Balance | | | |
| | 8/1/09 | | Beginning Balance | | | |
| | 9/1/09 | | Beginning Balance | | | |
| | 10/1/09 | | Beginning Balance | | | |
| | 11/1/09 | | Beginning Balance | | | |
| | 12/1/09 | | Beginning Balance | | | |
| | 1/1/10 | | Beginning Balance | | | |
| | 2/1/10 | | Beginning Balance | | | |
| | 2/17/10<br>0217D01 | CRJ | MISCELLANEOUS DEPOSIT - SHARE OF SETTLEMENT - EAFC/GWF LITIGATION V. ITN NETWORKS LLC | | 3,535.85 | |
| | | | Current Period Change | | 3,535.85 | -3,535.85 |
| | 3/1/10 | | Beginning Balance | | | -3,535.85 |
| | 4/1/10 | | Beginning Balance | | | -3,535.85 |
| | 5/1/10 | | Beginning Balance | | | -3,535.85 |
| | 6/1/10 | | Beginning Balance | | | -3,535.85 |
| | 6/30/10 | | **Ending Balance** | | | **-3,535.85** |
| 4604.00<br>State & local tax refun | 7/1/09 | | Beginning Balance | | | |
| | 8/1/09 | | Beginning Balance | | | |
| | 9/1/09 | | Beginning Balance | | | |
| | 10/1/09 | | Beginning Balance | | | |
| | 11/1/09 | | Beginning Balance | | | |
| | 12/1/09 | | Beginning Balance | | | |

6/22/11 at 14:44:37.09

## Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 4604.00 (cont.) | 1/1/10 | | Beginning Balance | | | |
| | 2/1/10 | | Beginning Balance | | | |
| | 3/1/10 | | Beginning Balance | | | |
| | 4/1/10 | | Beginning Balance | | | |
| | 4/23/10 0423D03 | CRJ | MISCELLANEOUS DEPOSIT - CORPORATE FRANCHISE TAX REFUND - EAF HOLDING CORP. | | 75.00 | |
| | 4/23/10 0423D03 | CRJ | MISCELLANEOUS DEPOSIT - CORPORATE FRANCHISE TAX REFUND - METROPLITAN TRANSPORTATION BUSINESS TAX SURCHARGE - EAF HOLDING CORP. | | 51.00 | |
| | | | Current Period Change | | 126.00 | -126.00 |
| | 5/1/10 | | Beginning Balance | | | -126.00 |
| | 6/1/10 | | Beginning Balance | | | -126.00 |
| | 6/30/10 | | Ending Balance | | | -126.00 |
| 4802.00 REALIZED GAIN ON | 7/1/09 | | Beginning Balance | | | |
| | 8/1/09 | | Beginning Balance | | | |
| | 9/1/09 | | Beginning Balance | | | |
| | 10/1/09 | | Beginning Balance | | | |
| | 10/31/09 AJE6 | GENJ | To writeoff balance of Carlos D. Ravelo | 18,984.33 | | |
| | 10/31/09 AJE9 | GENJ | To reclassify reserve on Ravelo to realized | | 13,073.29 | |
| | | | Current Period Change | 18,984.33 | 13,073.29 | 5,911.04 |
| | 11/1/09 | | Beginning Balance | | | 5,911.04 |
| | 11/30/09 AJE6 | GENJ | To write off balance on A Lot of Cars loan | 6,505.00 | | |
| | | | Current Period Change | 6,505.00 | | 6,505.00 |
| | 12/1/09 | | Beginning Balance | | | 12,416.04 |
| | 1/1/10 | | Beginning Balance | | | 12,416.04 |
| | 2/1/10 | | Beginning Balance | | | 12,416.04 |
| | 3/1/10 | | Beginning Balance | | | 12,416.04 |
| | 4/1/10 | | Beginning Balance | | | 12,416.04 |

6/22/11 at 14:44:37.12

Page: 246

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 4802.00 (cont.) | 4/30/10 AJE6 | GENJ | To record realized gain from payoff of Learning Care Group Inc. | | 30,158.58 | |
| | | | Current Period Change | | 30,158.58 | -30,158.58 |
| | 5/1/10 | | Beginning Balance | | | -17,742.54 |
| | 6/1/10 | | Beginning Balance | | | -17,742.54 |
| | 6/30/10 | | Ending Balance | | | -17,742.54 |
| 4980.00 UNREALIZED GAIN/L | 7/1/09 | | Beginning Balance | | | |
| | 8/1/09 | | Beginning Balance | | | |
| | 9/1/09 | | Beginning Balance | | | |
| | 9/30/09 J/E 2 A34 | GENJ | TO RECORD 9/30/09 FAIR VALUE ADJUSTMENT | 295,806.00 | | |
| | 9/30/09 J/E 2 A34 | GENJ | TO REVERSE 6/30/09 FAIR VALUE ADJUSTMENT | | 286,127.00 | |
| | 9/30/09 J/E 2A35 | GENJ | To adjust Alpha Media per Audit Committee | 689,909.00 | | |
| | | | Current Period Change | 985,715.00 | 286,127.00 | 699,588.00 |
| | 10/1/09 | | Beginning Balance | | | 699,588.00 |
| | 11/1/09 | | Beginning Balance | | | 699,588.00 |
| | 12/1/09 | | Beginning Balance | | | 699,588.00 |
| | 12/31/09 J/E 2 A34 | GENJ | TO REVERSE 9/30/09 FAIR VALUE ADJUSTMENT | | 295,806.00 | |
| | 12/31/09 J/E 2 A34 | GENJ | TO REVERSE CENTAUR 9/30/09 FAIR VALUE ADJUSTMENT | | 689,910.00 | |
| | 12/31/09 J/E 2 A34 | GENJ | TO RECORD 12/31/09 FAIR VALUE ADJUSTMENT | 1,134,229.00 | | |
| | | | Current Period Change | 1,134,229.00 | 985,716.00 | 148,513.00 |
| | 1/1/10 | | Beginning Balance | | | 848,101.00 |
| | 2/1/10 | | Beginning Balance | | | 848,101.00 |
| | 3/1/10 | | Beginning Balance | | | 848,101.00 |
| | 3/31/10 J/E 2 A34 | GENJ | TO REVERSE 12/31/09 FAIR VALUE ADJUSTMENT | | 1,134,229.00 | |
| | 3/31/10 J/E 2 A34 | GENJ | TO RECORD 3/31/10 FAIR VALUE ADJUSTMENT | 1,412,066.00 | | |
| | | | Current Period Change | 1,412,066.00 | 1,134,229.00 | 277,837.00 |
| | 4/1/10 | | Beginning Balance | | | 1,125,938.00 |
| | 5/1/10 | | Beginning Balance | | | 1,125,938.00 |

6/22/11 at 14:44:37.15

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 4980.00 (cont.) | 6/1/10 | | Beginning Balance | | | 1,125,938.00 |
| | 6/30/10 J/E 2A34 | GENJ | To reverse 3/31/10 fair value adjustment | | 1,412,066.00 | |
| | 6/30/10 J/E 2A34 | GENJ | To record 6/30/10 fair value adjustment | 2,021,544.00 | | |
| | | | Current Period Change | 2,021,544.00 | 1,412,066.00 | 609,478.00 |
| | 6/30/10 | | Ending Balance | | | 1,735,416.00 |
| 4980.10 UNREALIZED GAIN/L | 7/1/09 | | Beginning Balance | | | |
| | 8/1/09 | | Beginning Balance | | | |
| | 9/1/09 | | Beginning Balance | | | |
| | 9/30/09 J/E 2 A34 | GENJ | TO REVERSE 6/30/09 FAIR VALUE ADJUSTMENT | | 377,961.00 | |
| | 9/30/09 J/E 2 A34 | GENJ | TO RECORD 9/30/09 FAIR VALUE ADJUSTMENT | 373,777.00 | | |
| | | | Current Period Change | 373,777.00 | 377,961.00 | -4,184.00 |
| | 10/1/09 | | Beginning Balance | | | -4,184.00 |
| | 11/1/09 | | Beginning Balance | | | -4,184.00 |
| | 12/1/09 | | Beginning Balance | | | -4,184.00 |
| | 12/31/09 J/E 2 A34 | GENJ | TO REVERSE 9/30/09 FAIR VALUE ADJUSTMENT | | 373,777.00 | |
| | 12/31/09 J/E 2 A34 | GENJ | TO RECORD 12/31/09 FAIR VALUE ADJUSTMENT | 377,961.00 | | |
| | | | Current Period Change | 377,961.00 | 373,777.00 | 4,184.00 |
| | 1/1/10 | | Beginning Balance | | | |
| | 2/1/10 | | Beginning Balance | | | |
| | 3/1/10 | | Beginning Balance | | | |
| | 3/31/10 J/E 2 A34 | GENJ | TO RECORD 3/31/10 FAIR VALUE ADJUSTMENT | 377,264.00 | | |
| | 3/31/10 J/E 2 A34 | GENJ | TO REVERSE 12/31/09 FAIR VALUE ADJUSTMENT | | 377,961.00 | |
| | | | Current Period Change | 377,264.00 | 377,961.00 | -697.00 |
| | 4/1/10 | | Beginning Balance | | | -697.00 |
| | 5/1/10 | | Beginning Balance | | | -697.00 |
| | 6/1/10 | | Beginning Balance | | | -697.00 |
| | 6/30/10 J/E 2A34 | GENJ | To reverse 3/31/10 fair value adjustment | | 377,264.00 | |
| | 6/30/10 J/E 2A34 | GENJ | To record 6/30/10 fair value adjustment | 375,869.00 | | |

# Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID / Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 4980.10 (cont.) | | | Current Period Change | 375,869.00 | 377,264.00 | -1,395.00 |
| | 6/30/10 | | **Ending Balance** | | | **-2,092.00** |
| 5000 Interest expense - SB | 7/1/09 | | Beginning Balance | | | |
| | 7/31/09 J/E 2R | GENJ | To record SBA Interest accrual | 53,068.18 | | |
| | | | Current Period Change | 53,068.18 | | 53,068.18 |
| | 8/1/09 | | Beginning Balance | | | 53,068.18 |
| | 8/31/09 J/E 2-R | GENJ | AUGUST 2009 SBA INTEREST ACCRUAL | 53,068.18 | | |
| | | | Current Period Change | 53,068.18 | | 53,068.18 |
| | 9/1/09 | | Beginning Balance | | | 106,136.36 |
| | 9/1/09 0901IDB | CDJ | SMALL BUSINESS ADMINISTRATION - SBA INTEREST | 314,985.32 | | |
| | 9/30/09 J/E 2R | GENJ | SEPT 2009 SBA INTEREST ACCRUAL | 51,356.30 | | |
| | 9/30/09 J/E 2R | GENJ | TO REVERSE INTEREST ACCRUAL | | 314,985.32 | |
| | | | Current Period Change | 366,341.62 | 314,985.32 | 51,356.30 |
| | 10/1/09 | | Beginning Balance | | | 157,492.66 |
| | 10/31/09 J/E 2R | GENJ | To record SBA Interest accrual | 53,068.18 | | |
| | | | Current Period Change | 53,068.18 | | 53,068.18 |
| | 11/1/09 | | Beginning Balance | | | 210,560.84 |
| | 11/30/09 J/E 2R | GENJ | To record SBA Interest accrual | 51,356.30 | | |
| | | | Current Period Change | 51,356.30 | | 51,356.30 |
| | 12/1/09 | | Beginning Balance | | | 261,917.14 |
| | 12/3/09 1203WT | CDJ | BANK OF NEW YORK - SBA DEBENTURE INTEREST $9,175,000 12/2/09 - 3/23/10 | 24,890.76 | | |
| | 12/4/09 1204SBIC | CRJ | MISCELLANEOUS DEPOSIT - REFUND OF SBA DEBENTURE INTEREST NOT DUE UNTIL 3/23/10 | | 24,890.76 | |
| | 12/31/09 J/E 2R | GENJ | To record SBA Interest accrual Dec 09 | 59,513.14 | | |
| | | | Current Period Change | 84,403.90 | 24,890.76 | 59,513.14 |
| | 1/1/10 | | Beginning Balance | | | 321,430.28 |
| | 1/31/10 J/E 2R | GENJ | To record SBA Interest accrual | 59,720.06 | | |
| | | | Current Period Change | 59,720.06 | | 59,720.06 |
| | 2/1/10 | | Beginning Balance | | | 381,150.34 |

6/22/11 at 14:44:37.23

# Elk Associates Funding Corporation
## General Ledger
## For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 5000 (cont.) | 2/28/10<br>J/E 2R | GENJ | To record SBA Interest accrual | 54,055.75 | | |
| | | | Current Period Change | 54,055.75 | | 54,055.75 |
| | 3/1/10 | | Beginning Balance | | | 435,206.09 |
| | 3/1/10<br>0301SBAIN | CDJ | SMALL BUSINESS ADMINISTRATION - SBA INTEREST | 309,849.66 | | |
| | 3/22/10<br>0322WT | CDJ | BANK OF NEW YORK - SBA DEBENTURE INTEREST $9,175,000 12/2/09 - 3/23/10 | 24,890.76 | | |
| | 3/31/10<br>J/E 2R | GENJ | To record SBA Interest accrual | 67,572.87 | | |
| | 3/31/10<br>J/E 2R | GENJ | To reflect payments of $309,849.66 & $24,890.76 | | 334,740.28 | |
| | | | Current Period Change | 402,313.29 | 334,740.28 | 67,573.01 |
| | 4/1/10 | | Beginning Balance | | | 502,779.10 |
| | 4/30/10<br>J/E 2R | GENJ | To record SBA Interest accrual | 84,461.71 | | |
| | | | Current Period Change | 84,461.71 | | 84,461.71 |
| | 5/1/10 | | Beginning Balance | | | 587,240.81 |
| | 5/31/10<br>J/E 2R | GENJ | To record SBA Interest accrual | 87,277.11 | | |
| | | | Current Period Change | 87,277.11 | | 87,277.11 |
| | 6/1/10 | | Beginning Balance | | | 674,517.92 |
| | 6/30/10<br>J/E 2R | GENJ | To record SBA Interest accrual | 84,461.71 | | |
| | | | Current Period Change | 84,461.71 | | 84,461.71 |
| | 6/30/10 | | Ending Balance | | | 758,979.63 |
| 5001.00<br>Interest expense - No | 7/1/09 | | Beginning Balance | | | |
| | 7/1/09<br>J/E 2W1 | GENJ | To accrue interest on loans | | 1,316.25 | |
| | 7/2/09<br>0702IDBIN | CDJ | ISRAEL DISCOUNT BANK - INTEREST | 906.25 | | |
| | 7/2/09<br>0702IDB | CRJ | MISCELLANEOUS DEPOSIT - IDB REVERSE INTEREST PAYMENT | | 25.00 | |
| | 7/10/09<br>0717BLINT | CDJ | BANK LEUMI - INTEREST $120,000 @3.9% | 409.99 | | |
| | 7/30/09<br>0730IDBIN | CDJ | ISRAEL DISCOUNT BANK - INTEREST $250,000 @4.5% 6/30/09-7/29/09 | 937.50 | | |
| | | | Current Period Change | 2,253.74 | 1,341.25 | 912.49 |
| | 8/1/09 | | Beginning Balance | | | 912.49 |
| | 8/4/09<br>0730IDBIN | CDJ | BANK LEUMI - INTEREST $120,000 | 403.01 | | |

6/22/11 at 14:44:37.27

Page: 250

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 5001.00 (cont.) | 0804BLINT | | INTEREST $120,000<br>@3.9% | | | |
| | | | Current Period Change | 403.01 | | 403.01 |
| | 9/1/09 | | Beginning Balance | | | 1,315.50 |
| | 9/1/09<br>0901IDBIN | CDJ | ISRAEL DISCOUNT<br>BANK - INTEREST<br>$250,000 @ 4.50%<br>7/30-8/31/09 | 1,031.25 | | |
| | 9/1/09<br>0901BLINT | CDJ | BANK LEUMI -<br>INTEREST $120,000 @<br>3.9% | 403.00 | | |
| | 9/30/09<br>0930IDBIN | CDJ | ISRAEL DISCOUNT<br>BANK - INTEREST<br>$250,000 @4.5% -<br>9/1-9/29/09 | 906.25 | | |
| | | | Current Period Change | 2,340.50 | | 2,340.50 |
| | 10/1/09 | | Beginning Balance | | | 3,656.00 |
| | 10/1/09<br>1001BLInt | CDJ | BANK LEUMI -<br>INTEREST $120,000 @<br>3.9% | 390.00 | | |
| | | | Current Period Change | 390.00 | | 390.00 |
| | 11/1/09 | | Beginning Balance | | | 4,046.00 |
| | 11/2/09<br>1102IDB | CDJ | ISRAEL DISCOUNT<br>BANK - INTEREST<br>$250,000 @4.5% -<br>9/30-10/29/09 | 937.50 | | |
| | 11/30/09<br>1130IDBIN | CDJ | ISRAEL DISCOUNT<br>BANK - INTEREST<br>$250,000 @4.5% -<br>10/30/09 - 11/29/09 | 968.75 | | |
| | 11/30/09<br>1130BLINT | CDJ | BANK LEUMI -<br>INTEREST $120,000 @<br>3.9% | 416.00 | | |
| | | | Current Period Change | 2,322.25 | | 2,322.25 |
| | 12/1/09 | | Beginning Balance | | | 6,368.25 |
| | 12/1/09<br>1201BLINT | CDJ | BANK LEUMI -<br>INTEREST $120,000 @<br>3.7% | 357.66 | | |
| | 12/31/09<br>123IIDB | CDJ | ISRAEL DISCOUNT<br>BANK - INTEREST<br>$250,000 @4.5% -<br>11/30-12/30/09 | 968.75 | | |
| | 12/31/09<br>J/E 2W1 | GENJ | To accrue interest on<br>loans | 413.58 | | |
| | | | Current Period Change | 1,739.99 | | 1,739.99 |
| | 1/1/10 | | Beginning Balance | | | 8,108.24 |
| | 1/1/10<br>J/E 2W1 | GENJ | To accrue interest on<br>loans | | 413.58 | |
| | 1/4/10<br>0104BL | CDJ | BANK LEUMI -<br>INTEREST $120,000 @<br>3.7% | 382.34 | | |
| | 1/13/10<br>0113BLINT | CDJ | BANK LEUMI -<br>INTEREST $120,000<br>@3.9% | 36.99 | | |

6/22/11 at 14:44:37.30

Page: 251

# Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 5001.00 (cont.) | 1/31/10 J/E 2W1 | GENJ | @4.00% To accrue interest on loans | 1,342.08 | | |
| | | | Current Period Change | 1,761.41 | 413.58 | 1,347.83 |
| | 2/1/10 | | Beginning Balance | | | 9,456.07 |
| | 2/1/10 0201INT | CDJ | ISRAEL DISCOUNT BANK - INTEREST $250,000 @4.5% - 12/31/09-2/1/10 | 1,000.00 | | |
| | 2/1/10 0201BLINT | CDJ | BANK LEUMI - INTEREST $120,000 @4.00% | 373.34 | | |
| | 2/1/10 J/E 2W1 | GENJ | To accrue interest on loans | | 1,342.08 | |
| | 2/28/10 J/E 2W1 | GENJ | To accrue interest on loans | 1,248.33 | | |
| | | | Current Period Change | 2,621.67 | 1,342.08 | 1,279.59 |
| | 3/1/10 | | Beginning Balance | | | 10,735.66 |
| | 3/1/10 0301IDBIN | CDJ | ISRAEL DISCOUNT BANK - INTEREST $250,000 @4.5% - 2/1-2/28/10 | 875.00 | | |
| | 3/1/10 0301BLINT | CDJ | BANK LEUMI - INTEREST $120,000 @4.00% | 373.33 | | |
| | 3/1/10 J/E 2W1 | GENJ | To accrue interest on loans | | 1,248.33 | |
| | 3/31/10 J/E 2W1 | GENJ | To accrue interest on loans | 1,345.17 | | |
| | | | Current Period Change | 2,593.50 | 1,248.33 | 1,345.17 |
| | 4/1/10 | | Beginning Balance | | | 12,080.83 |
| | 4/1/10 0401BL | CDJ | BANK LEUMI - INTEREST $120,000 @4.00% | 413.33 | | |
| | 4/1/10 0401IDB | CDJ | ISRAEL DISCOUNT BANK - INTEREST $250,000 @4.5% - MAR 2010 | 937.50 | | |
| | 4/1/10 J/E 2W1 | GENJ | To accrue interest on loans | | 1,345.17 | |
| | 4/5/10 0405WT | CDJ | DEUTSCHE BANK TRUST CO. AMERIC - 1 DAY INTEREST RE: SHEARER'S FOODS INC. - $1,000,000 @15% | 416.66 | | |
| | 4/30/10 0430IDBIN | CDJ | ISRAEL DISCOUNT BANK - INTEREST $250,000 @4.5% 3/31/10-4/29/10 | 937.50 | | |
| | 4/30/10 J/E 2W1 | GENJ | To accrue interest on loans | 400.00 | | |
| | | | Current Period Change | 3,104.99 | 1,345.17 | 1,759.82 |
| | 5/1/10 | | Beginning Balance | | | 13,840.65 |
| | 5/1/10 | GENJ | To accrue interest on loans | | 400.00 | |

6/22/11 at 14:44:37.35

Page: 252

## Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 5001.00 (cont.) | J/E 2W1 | | loans | | | |
| | 5/3/10 0504BLINT | CDJ | BANK LEUMI - INTEREST $120,000 @4.00% | 400.00 | | |
| | 5/31/10 J/E 2W1 | GENJ | To accrue interest on loans | 1,382.08 | | |
| | | | Current Period Change | 1,782.08 | 400.00 | 1,382.08 |
| | 6/1/10 | | Beginning Balance | | | 15,222.73 |
| | 6/1/10 0601IDB | CDJ | ISRAEL DISCOUNT BANK - INTEREST $250,000 @4.5% - 4/30-5/31/10 | 1,000.00 | | |
| | 6/1/10 0601BL | CDJ | BANK LEUMI - INTEREST $120,000 @4.00% | 413.34 | | |
| | 6/1/10 J/E 2W1 | GENJ | To accrue interest on loans | | 1,382.08 | |
| | 6/30/10 0630INT | CDJ | ISRAEL DISCOUNT BANK - INTEREST $250,000 @4.5% 6/1-6/29/10 | 906.25 | | |
| | 6/30/10 J/E 2W1 | GENJ | To accrue interest on loans | 431.25 | | |
| | | | Current Period Change | 2,750.84 | 1,382.08 | 1,368.76 |
| | **6/30/10** | | **Ending Balance** | | | **16,591.49** |
| 5003.00 Miscellaneous Interest | 7/1/09 | | Beginning Balance | | | |
| | 7/1/09 AJE23 | GENJ | To accrue PIK Interest Fee | | 15,166.00 | |
| | | | Current Period Change | | 15,166.00 | -15,166.00 |
| | 8/1/09 | | Beginning Balance | | | -15,166.00 |
| | 9/1/09 | | Beginning Balance | | | -15,166.00 |
| | 9/30/09 AJE8 | GENJ | To accrue Charlie Brown PIK Interest due at maturity | 20,277.00 | | |
| | | | Current Period Change | 20,277.00 | | 20,277.00 |
| | 10/1/09 | | Beginning Balance | | | 5,111.00 |
| | 10/1/09 AJE8 | GENJ | To accrue Charlie Brown PIK Interest due at maturity | | 20,277.00 | |
| | 10/31/09 AJE10 | GENJ | To accrue Charle Brown PIK interest due at maturity | 21,832.66 | | |
| | | | Current Period Change | 21,832.66 | 20,277.00 | 1,555.66 |
| | 11/1/09 | | Beginning Balance | | | 6,666.66 |
| | 11/1/09 AJE10 | GENJ | To accrue Charle Brown PIK interest due at maturity | | 21,832.66 | |
| | 11/30/09 AJE8 | GENJ | To accrue Charlie Brown PIK Interest due at maturity | 23,499.00 | | |

6/22/11 at 14:44:37.38

Page: 253

# Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 5003.00 (cont.) | | | Current Period Change | 23,499.00 | 21,832.66 | 1,666.34 |
| | 12/1/09 | | Beginning Balance | | | 8,333.00 |
| | 12/1/09<br>AJE8 | GENJ | To accrue Charlie Brown PIK Interest due at maturity | | 23,499.00 | |
| | 12/31/09<br>AJE8 | GENJ | To accrue Charlie Brown PIK interest due at maturity | 25,165.99 | | |
| | | | Current Period Change | 25,165.99 | 23,499.00 | 1,666.99 |
| | 1/1/10 | | Beginning Balance | | | 9,999.99 |
| | 1/1/10<br>AJE8 | GENJ | To accrue Charlie Brown PIK interest due at maturity | | 25,165.99 | |
| | 1/31/10<br>AJE8 | GENJ | To accrue Charlie Brown PIK interest due at maturity | 26,832.00 | | |
| | | | Current Period Change | 26,832.00 | 25,165.99 | 1,666.01 |
| | 2/1/10 | | Beginning Balance | | | 11,666.00 |
| | 2/1/10<br>AJE8 | GENJ | To accrue Charlie Brown PIK interest due at maturity | | 26,832.00 | |
| | 2/28/10<br>AJE8 | GENJ | To accrue Charlie Brown PIK interest due at maturity | 28,499.00 | | |
| | | | Current Period Change | 28,499.00 | 26,832.00 | 1,667.00 |
| | 3/1/10 | | Beginning Balance | | | 13,333.00 |
| | 3/1/10<br>AJE8 | GENJ | To accrue Charlie Brown PIK interest due at maturity | | 28,499.00 | |
| | 3/31/10<br>AJE8 | GENJ | To accrue Charlie Brown PIK interest due at maturity | 30,165.00 | | |
| | | | Current Period Change | 30,165.00 | 28,499.00 | 1,666.00 |
| | 4/1/10 | | Beginning Balance | | | 14,999.00 |
| | 4/1/10<br>AJE8 | GENJ | To accrue Charlie Brown PIK interest due at maturity | | 30,165.00 | |
| | 4/30/10<br>AJE8 | GENJ | To accrue Charlie Browns PIK interest due at maturity | 31,831.00 | | |
| | | | Current Period Change | 31,831.00 | 30,165.00 | 1,666.00 |
| | 5/1/10 | | Beginning Balance | | | 16,665.00 |
| | 5/1/10<br>AJE8 | GENJ | To accrue Charlie Browns PIK interest due at maturity | | 31,831.00 | |
| | 5/31/10<br>AJE8 | GENJ | To accrue Charlie Brown PIK interest due at maturity | 26,833.00 | | |
| | | | Current Period Change | 26,833.00 | 31,831.00 | -4,998.00 |
| | 6/1/10 | | Beginning Balance | | | 11,667.00 |

6/22/11 at 14:44:37.43

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 5003.00 (cont.) | 6/1/10 AJE8 | GENJ | To accrue Charlie Brown PIK interest due at maturity | | 26,833.00 | |
| | 6/30/10 AJE8 | GENJ | To accrue Charlie Brown PIK interest due at maturity | 26,833.00 | | |
| | | | Current Period Change | 26,833.00 | 26,833.00 | |
| | **6/30/10** | | **Ending Balance** | | | **11,667.00** |
| 5100.16 PART. - HANAM CAPI | 7/1/09 | | Beginning Balance | | | |
| | 8/1/09 | | Beginning Balance | | | |
| | 8/18/09 JULY 09 | PJ | HANAM CAPITAL CORPORATION - INTEREST | 26.15 | | |
| | 8/31/09 AUG 09 | PJ | HANAM CAPITAL CORPORATION - INTEREST | 24.95 | | |
| | | | Current Period Change | 51.10 | | 51.10 |
| | 9/1/09 | | Beginning Balance | | | 51.10 |
| | 10/1/09 | | Beginning Balance | | | 51.10 |
| | 10/21/09 SEP 09 | PJ | HANAM CAPITAL CORPORATION - INTEREST | 23.75 | | |
| | 10/31/09 OCT 09 | PJ | HANAM CAPITAL CORPORATION - INTEREST | 22.54 | | |
| | | | Current Period Change | 46.29 | | 46.29 |
| | 11/1/09 | | Beginning Balance | | | 97.39 |
| | 11/30/09 NOV 09 | PJ | HANAM CAPITAL CORPORATION - INTEREST | 21.33 | | |
| | | | Current Period Change | 21.33 | | 21.33 |
| | 12/1/09 | | Beginning Balance | | | 118.72 |
| | 12/31/09 DEC 09 | PJ | HANAM CAPITAL CORPORATION - INTEREST | 20.12 | | |
| | | | Current Period Change | 20.12 | | 20.12 |
| | 1/1/10 | | Beginning Balance | | | 138.84 |
| | 1/31/10 JAN 2010 | PJ | HANAM CAPITAL CORPORATION - INTEREST | 18.91 | | |
| | | | Current Period Change | 18.91 | | 18.91 |
| | 2/1/10 | | Beginning Balance | | | 157.75 |
| | 2/28/10 FEB 2010 | PJ | HANAM CAPITAL CORPORATION - INTEREST | 17.68 | | |
| | | | Current Period Change | 17.68 | | 17.68 |

6/22/11 at 14:44:37.46

# Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 5100.16 (cont.) | 3/1/10 | | Beginning Balance | | | 175.43 |
| | 3/30/10<br>MAR 2010 | PJ | HANAM CAPITAL<br>CORPORATION -<br>INTEREST | 16.45 | | |
| | | | Current Period Change | 16.45 | | 16.45 |
| | 4/1/10 | | Beginning Balance | | | 191.88 |
| | 4/30/10<br>APRIL 201 | PJ | HANAM CAPITAL<br>CORPORATION -<br>INTEREST | 15.21 | | |
| | | | Current Period Change | 15.21 | | 15.21 |
| | 5/1/10 | | Beginning Balance | | | 207.09 |
| | 5/27/10<br>MAY 2010 | PJ | HANAM CAPITAL<br>CORPORATION -<br>INTEREST | 13.96 | | |
| | | | Current Period Change | 13.96 | | 13.96 |
| | 6/1/10 | | Beginning Balance | | | 221.05 |
| | 6/30/10<br>JUNE 2010 | PJ | HANAM CAPITAL<br>CORPORATION -<br>INTEREST | 12.73 | | |
| | | | Current Period Change | 12.73 | | 12.73 |
| | 6/30/10 | | **Ending Balance** | | | **233.78** |
| 5100.18<br>MILESTONE GROWT | 7/1/09 | | Beginning Balance | | | |
| | 8/1/09 | | Beginning Balance | | | |
| | 8/18/09<br>JULY 09 | PJ | MILESTONE GROWTH<br>FUND INC. - INTEREST | 53.33 | | |
| | 8/31/09<br>AUG 09 | PJ | MILESTONE GROWTH<br>FUND INC. - INTEREST | 50.97 | | |
| | | | Current Period Change | 104.30 | | 104.30 |
| | 9/1/09 | | Beginning Balance | | | 104.30 |
| | 10/1/09 | | Beginning Balance | | | 104.30 |
| | 10/21/09<br>SEP 09 | PJ | MILESTONE GROWTH<br>FUND INC. - INTEREST | 48.60 | | |
| | 10/31/09<br>OCT 09 | PJ | MILESTONE GROWTH<br>FUND INC. - INTEREST | 46.21 | | |
| | | | Current Period Change | 94.81 | | 94.81 |
| | 11/1/09 | | Beginning Balance | | | 199.11 |
| | 11/30/09<br>NOV 09 | PJ | MILESTONE GROWTH<br>FUND INC. - INTEREST | 43.82 | | |
| | | | Current Period Change | 43.82 | | 43.82 |
| | 12/1/09 | | Beginning Balance | | | 242.93 |
| | 12/31/09<br>DEC 09 | PJ | MILESTONE GROWTH<br>FUND INC. - INTEREST | 41.42 | | |
| | | | Current Period Change | 41.42 | | 41.42 |

6/22/11 at 14:44:37.49

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 5100.18 (cont.) | 1/1/10 | | Beginning Balance | | | 284.35 |
| | 1/31/10 JAN 2010 | PJ | MILESTONE GROWTH FUND INC. - INTEREST | 39.01 | | |
| | | | Current Period Change | 39.01 | | 39.01 |
| | 2/1/10 | | Beginning Balance | | | 323.36 |
| | 2/28/10 FEB 2010 | PJ | MILESTONE GROWTH FUND INC. - INTEREST | 36.58 | | |
| | | | Current Period Change | 36.58 | | 36.58 |
| | 3/1/10 | | Beginning Balance | | | 359.94 |
| | 3/30/10 MAR 2010 | PJ | MILESTONE GROWTH FUND INC. - INTEREST | 34.16 | | |
| | | | Current Period Change | 34.16 | | 34.16 |
| | 4/1/10 | | Beginning Balance | | | 394.10 |
| | 4/30/10 APR 2010 | PJ | MILESTONE GROWTH FUND INC. - INTEREST | 31.71 | | |
| | | | Current Period Change | 31.71 | | 31.71 |
| | 5/1/10 | | Beginning Balance | | | 425.81 |
| | 5/27/10 MAY 2010 | PJ | MILESTONE GROWTH FUND INC. - INTEREST | 29.27 | | |
| | | | Current Period Change | 29.27 | | 29.27 |
| | 6/1/10 | | Beginning Balance | | | 455.08 |
| | 6/30/10 JUNE 2010 | PJ | MILESTONE GROWTH FUND INC. - INTEREST | 26.80 | | |
| | | | Current Period Change | 26.80 | | 26.80 |
| | 6/30/10 | | Ending Balance | | | 481.88 |
| 5100.19 STEVEN PORTNOY | 7/1/09 | | Beginning Balance | | | |
| | 8/1/09 | | Beginning Balance | | | |
| | 8/18/09 JULY 09 | PJ | STEVE PORTNOY TRUSTEE - INTEREST | 4.10 | | |
| | 8/18/09 JULY 09 | PJ | STEVE PORTNOY TRUSTEE - INTEREST | 4.10 | | |
| | 8/31/09 AUG 09 | PJ | STEVE PORTNOY TRUSTEE - INTEREST | 3.91 | | |
| | 8/31/09 AUG 09 | PJ | STEVE PORTNOY TRUSTEE - INTEREST | 3.91 | | |
| | | | Current Period Change | 16.02 | | 16.02 |
| | 9/1/09 | | Beginning Balance | | | 16.02 |
| | 10/1/09 | | Beginning Balance | | | 16.02 |
| | 10/21/09 SEP 09 | PJ | STEVE PORTNOY TRUSTEE - INTEREST | 3.73 | | |
| | 10/21/09 SEP 09 | PJ | STEVE PORTNOY TRUSTEE - INTEREST | 3.73 | | |
| | 10/31/09 | PJ | STEVE PORTNOY | 3.54 | | |

6/22/11 at 14:44:37.54

## Elk Associates Funding Corporation
## General Ledger
## For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 5100.19 (cont.) | OCT 09 | | TRUSTEE - INTEREST | | | |
| | 10/31/09 | PJ | STEVE PORTNOY | 3.54 | | |
| | OCT 09 | | TRUSTEE - INTEREST | | | |
| | | | Current Period Change | 14.54 | | 14.54 |
| | 11/1/09 | | Beginning Balance | | | 30.56 |
| | 11/30/09 | PJ | STEVE PORTNOY | 3.35 | | |
| | NOV 09 | | TRUSTEE - INTEREST | | | |
| | 11/30/09 | PJ | STEVE PORTNOY | 3.35 | | |
| | NOV 09 | | TRUSTEE - INTEREST | | | |
| | | | Current Period Change | 6.70 | | 6.70 |
| | 12/1/09 | | Beginning Balance | | | 37.26 |
| | 12/31/09 | PJ | STEVE PORTNOY | 3.16 | | |
| | DEC 09 | | TRUSTEE - INTEREST | | | |
| | 12/31/09 | PJ | STEVE PORTNOY | 3.16 | | |
| | DEC 09 | | TRUSTEE - INTEREST | | | |
| | | | Current Period Change | 6.32 | | 6.32 |
| | 1/1/10 | | Beginning Balance | | | 43.58 |
| | 1/31/10 | PJ | STEVE PORTNOY | 2.97 | | |
| | JAN 2010 | | TRUSTEE - INTEREST | | | |
| | 1/31/10 | PJ | STEVE PORTNOY | 2.97 | | |
| | JAN 2010 | | TRUSTEE - INTEREST | | | |
| | | | Current Period Change | 5.94 | | 5.94 |
| | 2/1/10 | | Beginning Balance | | | 49.52 |
| | 2/28/10 | PJ | STEVE PORTNOY | 2.78 | | |
| | FEB 2010 | | TRUSTEE - INTEREST | | | |
| | 2/28/10 | PJ | STEVE PORTNOY | 2.78 | | |
| | FEB 2010 | | TRUSTEE - INTEREST | | | |
| | | | Current Period Change | 5.56 | | 5.56 |
| | 3/1/10 | | Beginning Balance | | | 55.08 |
| | 3/30/10 | PJ | STEVE PORTNOY | 2.58 | | |
| | MAR 2010 | | TRUSTEE - INTEREST | | | |
| | 3/30/10 | PJ | STEVE PORTNOY | 2.58 | | |
| | MAR 2010 | | TRUSTEE - INTEREST | | | |
| | | | Current Period Change | 5.16 | | 5.16 |
| | 4/1/10 | | Beginning Balance | | | 60.24 |
| | 4/30/10 | PJ | STEVE PORTNOY | 2.39 | | |
| | APR 2010 | | TRUSTEE - INTEREST | | | |
| | 4/30/10 | PJ | STEVE PORTNOY | 2.39 | | |
| | APR 2010 | | TRUSTEE - INTEREST | | | |
| | | | Current Period Change | 4.78 | | 4.78 |
| | 5/1/10 | | Beginning Balance | | | 65.02 |
| | 5/27/10 | PJ | STEVE PORTNOY | 2.20 | | |
| | MAY 2010 | | TRUSTEE - INTEREST | | | |
| | 5/27/10 | PJ | STEVE PORTNOY | 2.20 | | |
| | MAY 2010 | | TRUSTEE - INTEREST | | | |
| | | | Current Period Change | 4.40 | | 4.40 |
| | 6/1/10 | | Beginning Balance | | | 69.42 |

6/22/11 at 14:44:37.59

Page: 258

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 5100.19 (cont.) | 6/30/10<br>JUNE 2010 | PJ | STEVE PORTNOY<br>TRUSTEE - INTEREST | 2.00 | | |
| | 6/30/10<br>JUNE 2010 | PJ | STEVE PORTNOY<br>TRUSTEE - INTEREST | 2.00 | | |
| | | | Current Period Change | 4.00 | | 4.00 |
| | 6/30/10 | | **Ending Balance** | | | **73.42** |
| 5100.2<br>Freshstart Participatio | 7/1/09 | | Beginning Balance | | | |
| | 8/1/09 | | Beginning Balance | | | |
| | 8/18/09<br>JULY 09 | PJ | FRESHSTART<br>VENTURE  CAPITAL<br>CO - INTEREST | 67.16 | | |
| | 8/31/09<br>AUG 09 | PJ | FRESHSTART<br>VENTURE  CAPITAL<br>CO - INTEREST | 64.33 | | |
| | | | Current Period Change | 131.49 | | 131.49 |
| | 9/1/09 | | Beginning Balance | | | 131.49 |
| | 10/1/09 | | Beginning Balance | | | 131.49 |
| | 10/21/09<br>SEP 09 | PJ | FRESHSTART<br>VENTURE  CAPITAL<br>CO - INTEREST | 61.51 | | |
| | 10/31/09<br>OCT 09 | PJ | FRESHSTART<br>VENTURE  CAPITAL<br>CO - INTEREST | 58.67 | | |
| | | | Current Period Change | 120.18 | | 120.18 |
| | 11/1/09 | | Beginning Balance | | | 251.67 |
| | 11/30/09<br>NOV 09 | PJ | FRESHSTART<br>VENTURE  CAPITAL<br>CO - INTEREST | 55.81 | | |
| | | | Current Period Change | 55.81 | | 55.81 |
| | 12/1/09 | | Beginning Balance | | | 307.48 |
| | 12/31/09<br>DEC 09 | PJ | FRESHSTART<br>VENTURE  CAPITAL<br>CO - INTEREST | 52.94 | | |
| | | | Current Period Change | 52.94 | | 52.94 |
| | 1/1/10 | | Beginning Balance | | | 360.42 |
| | 1/31/10<br>JAN 2010 | PJ | FRESHSTART<br>VENTURE  CAPITAL<br>CO - INTEREST | 50.07 | | |
| | | | Current Period Change | 50.07 | | 50.07 |
| | 2/1/10 | | Beginning Balance | | | 410.49 |
| | 2/28/10<br>FEB 2010 | PJ | FRESHSTART<br>VENTURE  CAPITAL<br>CO - INTEREST | 47.17 | | |
| | | | Current Period Change | 47.17 | | 47.17 |
| | 3/1/10 | | Beginning Balance | | | 457.66 |

**Elk Associates Funding Corporation**
**General Ledger**
**For the Period From Jul 1, 2009 to Jun 30, 2010**

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 5100.2 (cont.) | 3/30/10 MAR 2010 | PJ | FRESHSTART VENTURE CAPITAL CO - INTEREST | 44.27 | | |
| | | | Current Period Change | 44.27 | | 44.27 |
| | 4/1/10 | | Beginning Balance | | | 501.93 |
| | 4/30/10 APRIL 201 | PJ | FRESHSTART VENTURE CAPITAL CO - INTEREST | 41.36 | | |
| | | | Current Period Change | 41.36 | | 41.36 |
| | 5/1/10 | | Beginning Balance | | | 543.29 |
| | 5/27/10 MAY 2010 | PJ | FRESHSTART VENTURE CAPITAL CO - INTEREST | 38.44 | | |
| | | | Current Period Change | 38.44 | | 38.44 |
| | 6/1/10 | | Beginning Balance | | | 581.73 |
| | 6/30/10 JUNE 2010 | PJ | FRESHSTART VENTURE CAPITAL CO - INTEREST | 35.50 | | |
| | | | Current Period Change | 35.50 | | 35.50 |
| | 6/30/10 | | **Ending Balance** | | | **617.23** |
| 5100.20 MEYER ACKERMAN | 7/1/09 | | Beginning Balance | | | |
| | 8/1/09 | | Beginning Balance | | | |
| | 8/18/09 JULY 09 | PJ | MEYER ACKERMAN - INTEREST | 9.60 | | |
| | 8/31/09 AUG 09 | PJ | MEYER ACKERMAN - INTEREST | 14.43 | | |
| | | | Current Period Change | 24.03 | | 24.03 |
| | 9/1/09 | | Beginning Balance | | | 24.03 |
| | 10/1/09 | | Beginning Balance | | | 24.03 |
| | 10/21/09 SEP 09 | PJ | MEYER ACKERMAN - INTEREST | 8.96 | | |
| | 10/31/09 OCT 09 | PJ | MEYER ACKERMAN - INTEREST | 8.28 | | |
| | | | Current Period Change | 17.24 | | 17.24 |
| | 11/1/09 | | Beginning Balance | | | 41.27 |
| | 11/30/09 NOV 09 | PJ | MEYER ACKERMAN - INTEREST | 7.84 | | |
| | | | Current Period Change | 7.84 | | 7.84 |
| | 12/1/09 | | Beginning Balance | | | 49.11 |
| | 12/31/09 DEC 09 | PJ | MEYER ACKERMAN - INTEREST | 7.40 | | |
| | | | Current Period Change | 7.40 | | 7.40 |
| | 1/1/10 | | Beginning Balance | | | 56.51 |

6/22/11 at 14:44:37.66

Page: 260

# Elk Associates Funding Corporation
## General Ledger
## For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 5100.20 (cont.) | 1/31/10 JAN 2010 | PJ | MEYER ACKERMAN - INTEREST | 6.95 | | |
| | | | Current Period Change | 6.95 | | 6.95 |
| | 2/1/10 | | Beginning Balance | | | 63.46 |
| | 2/28/10 FEB 2010 | PJ | MEYER ACKERMAN - INTEREST | 6.50 | | |
| | | | Current Period Change | 6.50 | | 6.50 |
| | 3/1/10 | | Beginning Balance | | | 69.96 |
| | 3/30/10 MAR 2010 | PJ | MEYER ACKERMAN - INTEREST | 6.05 | | |
| | | | Current Period Change | 6.05 | | 6.05 |
| | 4/1/10 | | Beginning Balance | | | 76.01 |
| | 4/30/10 APR 2010 | PJ | MEYER ACKERMAN - INTEREST | 5.59 | | |
| | | | Current Period Change | 5.59 | | 5.59 |
| | 5/1/10 | | Beginning Balance | | | 81.60 |
| | 5/27/10 MAY 2010 | PJ | MEYER ACKERMAN - INTEREST | 5.13 | | |
| | | | Current Period Change | 5.13 | | 5.13 |
| | 6/1/10 | | Beginning Balance | | | 86.73 |
| | 6/30/10 JUNE 2010 | PJ | MEYER ACKERMAN - INTEREST | 4.69 | | |
| | | | Current Period Change | 4.69 | | 4.69 |
| | 6/30/10 | | **Ending Balance** | | | **91.42** |
| 5100.21 BRIAN ACKERMAN | 7/1/09 | | Beginning Balance | | | |
| | 8/1/09 | | Beginning Balance | | | |
| | 8/18/09 JULY 09 | PJ | BRIAN ACKERMAN - INTEREST | 2.76 | | |
| | 8/31/09 AUG 09 | PJ | BRIAN ACKERMAN - INTEREST | 2.64 | | |
| | | | Current Period Change | 5.40 | | 5.40 |
| | 9/1/09 | | Beginning Balance | | | 5.40 |
| | 10/1/09 | | Beginning Balance | | | 5.40 |
| | 10/21/09 SEP 09 | PJ | BRIAN ACKERMAN - INTEREST | 2.51 | | |
| | 10/31/09 OCT 09 | PJ | BRIAN ACKERMAN - INTEREST | 2.39 | | |
| | | | Current Period Change | 4.90 | | 4.90 |
| | 11/1/09 | | Beginning Balance | | | 10.30 |
| | 11/30/09 NOV 09 | PJ | BRIAN ACKERMAN - INTEREST | 2.26 | | |
| | | | Current Period Change | 2.26 | | 2.26 |

6/22/11 at 14:44:37.70

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 5100.21 (cont.) | 12/1/09 | | Beginning Balance | | | 12.56 |
| | 12/31/09<br>DEC 09 | PJ | BRIAN ACKERMAN -<br>INTEREST | 2.13 | | |
| | | | Current Period Change | 2.13 | | 2.13 |
| | 1/1/10 | | Beginning Balance | | | 14.69 |
| | 1/31/10<br>JAN 2010 | PJ | BRIAN ACKERMAN -<br>INTEREST | 2.00 | | |
| | | | Current Period Change | 2.00 | | 2.00 |
| | 2/1/10 | | Beginning Balance | | | 16.69 |
| | 2/28/10<br>FEB 2010 | PJ | BRIAN ACKERMAN -<br>INTEREST | 1.88 | | |
| | | | Current Period Change | 1.88 | | 1.88 |
| | 3/1/10 | | Beginning Balance | | | 18.57 |
| | 3/30/10<br>MAR 2010 | PJ | BRIAN ACKERMAN -<br>INTEREST | 1.74 | | |
| | | | Current Period Change | 1.74 | | 1.74 |
| | 4/1/10 | | Beginning Balance | | | 20.31 |
| | 4/30/10<br>APR 2010 | PJ | BRIAN ACKERMAN -<br>INTEREST | 1.62 | | |
| | | | Current Period Change | 1.62 | | 1.62 |
| | 5/1/10 | | Beginning Balance | | | 21.93 |
| | 5/27/10<br>MAY 2010 | PJ | BRIAN ACKERMAN -<br>INTEREST | 1.49 | | |
| | | | Current Period Change | 1.49 | | 1.49 |
| | 6/1/10 | | Beginning Balance | | | 23.42 |
| | 6/30/10<br>JUNE 2010 | PJ | BRIAN ACKERMAN -<br>INTEREST | 1.35 | | |
| | | | Current Period Change | 1.35 | | 1.35 |
| | **6/30/10** | | **Ending Balance** | | | **24.77** |
| 5100.27<br>Pinnacle Commercial | 7/1/09 | | Beginning Balance | | | |
| | 8/1/09 | | Beginning Balance | | | |
| | 8/18/09<br>JULY 09 | PJ | Pinnacle Commercial<br>Capital, L - INTEREST | 123.40 | | |
| | 8/31/09<br>AUG 09 | PJ | Pinnacle Commercial<br>Capital, L - INTEREST | 122.87 | | |
| | | | Current Period Change | 246.27 | | 246.27 |
| | 9/1/09 | | Beginning Balance | | | 246.27 |
| | 10/1/09 | | Beginning Balance | | | 246.27 |
| | 10/21/09<br>SEP 09 | PJ | Pinnacle Commercial<br>Capital, L - INTEREST | 118.83 | | |
| | 10/31/09<br>OCT 09 | PJ | Pinnacle Commercial<br>Capital, L - INTEREST | 116.85 | | |

6/22/11 at 14:44:37.74

Page: 262

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID / Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 5100.27 (cont.) | | | Current Period Change | 235.68 | | 235.68 |
| | 11/1/09 | | Beginning Balance | | | 481.95 |
| | 11/30/09 NOV 09 | PJ | Pinnacle Commercial Capital, L - INTEREST | 115.13 | | |
| | | | Current Period Change | 115.13 | | 115.13 |
| | 12/1/09 | | Beginning Balance | | | 597.08 |
| | 12/31/09 DEC 09 | PJ | Pinnacle Commercial Capital, L - INTEREST | 113.27 | | |
| | | | Current Period Change | 113.27 | | 113.27 |
| | 1/1/10 | | Beginning Balance | | | 710.35 |
| | 1/31/10 JAN 2010 | PJ | Pinnacle Commercial Capital, L - INTEREST | 111.49 | | |
| | | | Current Period Change | 111.49 | | 111.49 |
| | 2/1/10 | | Beginning Balance | | | 821.84 |
| | 2/28/10 FEB 2010 | PJ | Pinnacle Commercial Capital, L - INTEREST | 109.77 | | |
| | | | Current Period Change | 109.77 | | 109.77 |
| | 3/1/10 | | Beginning Balance | | | 931.61 |
| | 3/30/10 MAR 2010 | PJ | Pinnacle Commercial Capital, L - INTEREST | 108.07 | | |
| | | | Current Period Change | 108.07 | | 108.07 |
| | 4/1/10 | | Beginning Balance | | | 1,039.68 |
| | 4/30/10 APR 2010 | PJ | Pinnacle Commercial Capital, L - INTEREST | 106.82 | | |
| | | | Current Period Change | 106.82 | | 106.82 |
| | 5/1/10 | | Beginning Balance | | | 1,146.50 |
| | 5/27/10 MAY 2010 | PJ | Pinnacle Commercial Capital, L - INTEREST | 105.81 | | |
| | | | Current Period Change | 105.81 | | 105.81 |
| | 6/1/10 | | Beginning Balance | | | 1,252.31 |
| | 6/30/10 JUNE 2010 | PJ | Pinnacle Commercial Capital, L - INTEREST | 105.62 | | |
| | | | Current Period Change | 105.62 | | 105.62 |
| | 6/30/10 | | Ending Balance | | | 1,357.93 |
| 5100.29 THE OSG CORP. - Pa | 7/1/09 | | Beginning Balance | | | |
| | 8/1/09 | | Beginning Balance | | | |
| | 8/18/09 JULY 09 | PJ | THE OSG CORP. - INTEREST | 673.47 | | |
| | 8/31/09 AUG 09 | PJ | THE OSG CORP. - INTEREST | 668.25 | | |
| | | | Current Period Change | 1,341.72 | | 1,341.72 |

6/22/11 at 14:44:37.77

## Elk Associates Funding Corporation
## General Ledger
## For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 5100.29 (cont.) | 9/1/09 | | Beginning Balance | | | 1,341.72 |
| | 10/1/09 | | Beginning Balance | | | 1,341.72 |
| | 10/7/09<br>SEP 09 | PJ | THE OSG CORP. -<br>INTEREST | 691.22 | | |
| | 10/31/09<br>OCT 09 | PJ | THE OSG CORP. -<br>INTEREST | 629.42 | | |
| | | | Current Period Change | 1,320.64 | | 1,320.64 |
| | 11/1/09 | | Beginning Balance | | | 2,662.36 |
| | 11/30/09<br>NOV 09 | PJ | THE OSG CORP. -<br>INTEREST | 679.84 | | |
| | | | Current Period Change | 679.84 | | 679.84 |
| | 12/1/09 | | Beginning Balance | | | 3,342.20 |
| | 12/31/09<br>DEC 09 | PJ | THE OSG CORP. -<br>INTEREST | 647.13 | | |
| | | | Current Period Change | 647.13 | | 647.13 |
| | 1/1/10 | | Beginning Balance | | | 3,989.33 |
| | 1/31/10<br>JAN 2010 | PJ | THE OSG CORP. -<br>INTEREST | 641.66 | | |
| | | | Current Period Change | 641.66 | | 641.66 |
| | 2/1/10 | | Beginning Balance | | | 4,630.99 |
| | 2/28/10<br>FEB 2010 | PJ | THE OSG CORP. -<br>INTEREST | 636.13 | | |
| | | | Current Period Change | 636.13 | | 636.13 |
| | 3/1/10 | | Beginning Balance | | | 5,267.12 |
| | 3/30/10<br>MAR 2010 | PJ | THE OSG CORP. -<br>INTEREST | 630.55 | | |
| | | | Current Period Change | 630.55 | | 630.55 |
| | 4/1/10 | | Beginning Balance | | | 5,897.67 |
| | 4/30/10<br>APR 2010 | PJ | THE OSG CORP. -<br>INTEREST | 624.92 | | |
| | | | Current Period Change | 624.92 | | 624.92 |
| | 5/1/10 | | Beginning Balance | | | 6,522.59 |
| | 5/27/10<br>MAY 2010 | PJ | THE OSG CORP. -<br>INTEREST | 619.24 | | |
| | | | Current Period Change | 619.24 | | 619.24 |
| | 6/1/10 | | Beginning Balance | | | 7,141.83 |
| | 6/30/10<br>JUNE 2010 | PJ | THE OSG CORP. -<br>INTEREST | 613.50 | | |
| | | | Current Period Change | 613.50 | | 613.50 |
| | **6/30/10** | | **Ending Balance** | | | **7,755.33** |
| 5100.3<br>PARTICIPATION VEN | 7/1/09 | | Beginning Balance | | | |

6/22/11 at 14:44:37.82

# Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 5100.3 (cont.) | 8/1/09 | | Beginning Balance | | | |
| | 8/18/09<br>JULY 09 | PJ | JERROLD MARCH -<br>INTEREST | 42.26 | | |
| | 8/31/09<br>AUG 09 | PJ | JERROLD MARCH -<br>INTEREST | 40.34 | | |
| | | | Current Period Change | 82.60 | | 82.60 |
| | 9/1/09 | | Beginning Balance | | | 82.60 |
| | 10/1/09 | | Beginning Balance | | | 82.60 |
| | 10/21/09<br>SEP 09 | PJ | JERROLD MARCH -<br>INTEREST | 38.41 | | |
| | 10/31/09<br>OCT 09 | PJ | JERROLD MARCH -<br>INTEREST | 36.48 | | |
| | | | Current Period Change | 74.89 | | 74.89 |
| | 11/1/09 | | Beginning Balance | | | 157.49 |
| | 11/30/09<br>NOV 09 | PJ | JERROLD MARCH -<br>INTEREST | 34.53 | | |
| | | | Current Period Change | 34.53 | | 34.53 |
| | 12/1/09 | | Beginning Balance | | | 192.02 |
| | 12/31/09<br>DEC 09 | PJ | JERROLD MARCH -<br>INTEREST | 32.58 | | |
| | | | Current Period Change | 32.58 | | 32.58 |
| | 1/1/10 | | Beginning Balance | | | 224.60 |
| | 1/31/10<br>JAN 2010 | PJ | JERROLD MARCH -<br>INTEREST | 30.62 | | |
| | | | Current Period Change | 30.62 | | 30.62 |
| | 2/1/10 | | Beginning Balance | | | 255.22 |
| | 2/28/10<br>FEB 2010 | PJ | JERROLD MARCH -<br>INTEREST | 28.66 | | |
| | | | Current Period Change | 28.66 | | 28.66 |
| | 3/1/10 | | Beginning Balance | | | 283.88 |
| | 3/30/10<br>MAR 2010 | PJ | JERROLD MARCH -<br>INTEREST | 26.69 | | |
| | | | Current Period Change | 26.69 | | 26.69 |
| | 4/1/10 | | Beginning Balance | | | 310.57 |
| | 4/30/10<br>APR 2010 | PJ | JERROLD MARCH -<br>INTEREST | 24.70 | | |
| | | | Current Period Change | 24.70 | | 24.70 |
| | 5/1/10 | | Beginning Balance | | | 335.27 |
| | 5/27/10<br>MAY 2010 | PJ | JERROLD MARCH -<br>INTEREST | 22.71 | | |
| | | | Current Period Change | 22.71 | | 22.71 |
| | 6/1/10 | | Beginning Balance | | | 357.98 |
| | 6/30/10 | PJ | VENTURE<br>OPPORTUNITY LLC | 20.72 | | |

6/22/11 at 14:44:37.85

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 5100.3 (cont.) | JUNE 2010 | | OPPORTUNITY LLC - INTEREST | | | |
| | | | Current Period Change | 20.72 | | 20.72 |
| | 6/30/10 | | **Ending Balance** | | | **378.70** |
| 5100.6 MEDALLION FINANCI | 7/1/09 | | Beginning Balance | | | |
| | 8/1/09 | | Beginning Balance | | | |
| | 8/18/09 JULY 09 | PJ | MEDALLION FUNDING CORP. - INTEREST | 49.36 | | |
| | 8/31/09 AUG 09 | PJ | MEDALLION FUNDING CORP. - INTEREST | 46.87 | | |
| | | | Current Period Change | 96.23 | | 96.23 |
| | 9/1/09 | | Beginning Balance | | | 96.23 |
| | 10/1/09 | | Beginning Balance | | | 96.23 |
| | 10/21/09 SEP 09 | PJ | MEDALLION FUNDING CORP. - INTEREST | 44.38 | | |
| | 10/31/09 OCT 09 | PJ | MEDALLION FUNDING CORP. - INTEREST | 41.87 | | |
| | | | Current Period Change | 86.25 | | 86.25 |
| | 11/1/09 | | Beginning Balance | | | 182.48 |
| | 11/30/09 NOV 09 | PJ | MEDALLION FUNDING CORP. - INTEREST | 39.36 | | |
| | | | Current Period Change | 39.36 | | 39.36 |
| | 12/1/09 | | Beginning Balance | | | 221.84 |
| | 12/31/09 DEC 09 | PJ | MEDALLION FUNDING CORP. - INTEREST | 36.83 | | |
| | | | Current Period Change | 36.83 | | 36.83 |
| | 1/1/10 | | Beginning Balance | | | 258.67 |
| | 1/31/10 JAN 2010 | PJ | MEDALLION FUNDING CORP. - INTEREST | 34.30 | | |
| | | | Current Period Change | 34.30 | | 34.30 |
| | 2/1/10 | | Beginning Balance | | | 292.97 |
| | 2/28/10 FEB 2010 | PJ | MEDALLION FUNDING CORP. - INTEREST | 31.76 | | |
| | | | Current Period Change | 31.76 | | 31.76 |
| | 3/1/10 | | Beginning Balance | | | 324.73 |
| | 3/30/10 MAR 2010 | PJ | MEDALLION FUNDING CORP. - INTEREST | 29.21 | | |
| | | | Current Period Change | 29.21 | | 29.21 |
| | 4/1/10 | | Beginning Balance | | | 353.94 |
| | 4/30/10 APR 2010 | PJ | MEDALLION FUNDING CORP. - INTEREST | 26.64 | | |
| | | | Current Period Change | 26.64 | | 26.64 |

6/22/11 at 14:44:37.90

# Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 5100.6 (cont.) | 5/1/10 | | Beginning Balance | | | 380.58 |
| | 5/27/10<br>MAY 2010 | PJ | MEDALLION FUNDING<br>CORP. - INTEREST | 24.07 | | |
| | | | Current Period Change | 24.07 | | 24.07 |
| | 6/1/10 | | Beginning Balance | | | 404.65 |
| | 6/30/10<br>JUNE 2010 | PJ | MEDALLION FUNDING<br>CORP. - INTEREST | 21.49 | | |
| | | | Current Period Change | 21.49 | | 21.49 |
| | 6/30/10 | | Ending Balance | | | 426.14 |
| 5150<br>Officers salary | 7/1/09 | | Beginning Balance | | | |
| | 7/1/09<br>070109OF | GENJ | Officer Salaries -<br>Officers SALARIES<br>070109 | 109,159.77 | | |
| | | | Current Period Change | 109,159.77 | | 109,159.77 |
| | 8/1/09 | | Beginning Balance | | | 109,159.77 |
| | 8/3/09<br>0809OFFIC | GENJ | Officer Salaries -<br>Officers 0809<br>OFFICERS SALARIES | 109,159.77 | | |
| | | | Current Period Change | 109,159.77 | | 109,159.77 |
| | 9/1/09 | | Beginning Balance | | | 218,319.54 |
| | 9/1/09<br>090109OF | GENJ | Officer Salaries -<br>Officers 090109<br>OFFICER SALARIES | 109,159.77 | | |
| | 9/30/09<br>J/E 2BZ1 | GENJ | To allocate additional<br>costs to Ameritrans | | 140,592.00 | |
| | | | Current Period Change | 109,159.77 | 140,592.00 | -31,432.23 |
| | 10/1/09 | | Beginning Balance | | | 186,887.31 |
| | 10/1/09<br>1009OFFIC | GENJ | Officer Salaries -<br>Officers 1009 OFFICER<br>SALARIES | 109,159.77 | | |
| | | | Current Period Change | 109,159.77 | | 109,159.77 |
| | 11/1/09 | | Beginning Balance | | | 296,047.08 |
| | 11/2/09<br>1109OFFIC | GENJ | Officer Salaries -<br>Officers 1109 OFFICER<br>SALARIES | 109,159.77 | | |
| | | | Current Period Change | 109,159.77 | | 109,159.77 |
| | 12/1/09 | | Beginning Balance | | | 405,206.85 |
| | 12/1/09<br>1209OFFIC | GENJ | Officer Salaries -<br>Officers 1209 OFFICER<br>SALARIES | 109,159.77 | | |
| | 12/31/09<br>J/E 2 BZ | GENJ | TO ALLOCATE ADD'L<br>COSTS TO<br>AMERITRANS | | 135,615.00 | |
| | | | Current Period Change | 109,159.77 | 135,615.00 | -26,455.23 |
| | 1/1/10 | | Beginning Balance | | | 378,751.62 |

6/22/11 at 14:44:37.93

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 5150 (cont.) | 1/4/10<br>0110OFFIC | GENJ | Officer Salaries -<br>Officers 0110<br>OFFICERS SALARIES | 109,954.45 | | |
| | | | Current Period Change | 109,954.45 | | 109,954.45 |
| | 2/1/10 | | Beginning Balance | | | 488,706.07 |
| | 2/1/10<br>0210OFFIC | GENJ | Officer Salaries -<br>Officers 02/10<br>OFFICERS SALARIES | 109,954.45 | | |
| | 2/16/10<br>021610OF | GENJ | Officer Salaries -<br>Officers 021610<br>OFFICERS BONUS<br>2009 | 35,000.00 | | |
| | | | Current Period Change | 144,954.45 | | 144,954.45 |
| | 3/1/10 | | Beginning Balance | | | 633,660.52 |
| | 3/1/10<br>0310OFFIC | GENJ | Officer Salaries -<br>Officers SALARIES<br>03/10 | 109,954.45 | | |
| | 3/31/10<br>AJE10 | GENJ | To accrue 3/4 of pay<br>defferal of $33,725 | 25,294.00 | | |
| | 3/31/10<br>J/E 2BZ | GENJ | To allocate costs to<br>AMTC | | 164,115.00 | |
| | | | Current Period Change | 135,248.45 | 164,115.00 | -28,866.55 |
| | 4/1/10 | | Beginning Balance | | | 604,793.97 |
| | 4/1/10<br>0410OFFIC | GENJ | Officer Salaries -<br>Officers 0410 OFFICER<br>SALARIES | 109,954.45 | | |
| | 4/1/10<br>AJE10 | GENJ | To accrue 3/4 of pay<br>defferal of $33,725 | | 25,294.00 | |
| | 4/30/14<br>AJE10 | GENJ | To accrue 3/4 pay<br>deferral of $33,725 - to<br>be adjusted at end of<br>quarter | 25,294.00 | | |
| | | | Current Period Change | 135,248.45 | 25,294.00 | 109,954.45 |
| | 5/1/10 | | Beginning Balance | | | 714,748.42 |
| | 5/1/10<br>AJE10 | GENJ | To accrue 3/4 pay<br>deferral of $33,725 - to<br>be adjusted at end of<br>quarter | | 25,294.00 | |
| | 5/3/10<br>0510OFFIC | GENJ | Officer Salaries -<br>Officers 05/10<br>OFFICERS SALARIES | 109,954.45 | | |
| | 5/31/10<br>AJE10 | GENJ | To accrue 11/12 of pay<br>defferal of $33,725 | 30,915.00 | | |
| | | | Current Period Change | 140,869.45 | 25,294.00 | 115,575.45 |
| | 6/1/10 | | Beginning Balance | | | 830,323.87 |
| | 6/1/10<br>0610OFFIC | GENJ | Officer Salaries -<br>Officers 06/10 OFFICER<br>SALARIES | 109,954.45 | | |
| | 6/1/10<br>AJE10 | GENJ | To accrue 11/12 of pay<br>defferal of $33,725 | | 30,915.00 | |
| | 6/16/10<br>061610OF | GENJ | Officer Salaries -<br>Officers ADJUST<br>MEFINOR SALARY | 2,634.00 | | |

6/22/11 at 14:44:37.98

Page: 268

# Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 5150 (cont.) | 6/30/10 AJE10 | GENJ | MFEINSOD SALARY 5/28/10 - 6/30/10 To accrue pay deferral of $33,725 | 33,725.00 | | |
| | 6/30/10 J/E 2 BZ | GENJ | TO ALLOCATE ADD'L COSTS TO AMERITRANS | | 192,070.00 | |
| | | | Current Period Change | 146,313.45 | 222,985.00 | -76,671.55 |
| | 6/30/10 | | Ending Balance | | | 753,652.32 |
| 5160 Office salaries | 7/1/09 | | Beginning Balance | | | |
| | 7/3/09 070309OF | GENJ | Office Salaries  070309 OFFICE SALARIES | 5,131.93 | | |
| | 7/17/09 071709OF | GENJ | Office Salaries  071709 OFFICE SALARIES | 5,131.93 | | |
| | 7/31/09 073109OF | GENJ | Office Salaries  073109 OFFICE SALARIES | 5,131.93 | | |
| | | | Current Period Change | 15,395.79 | | 15,395.79 |
| | 8/1/09 | | Beginning Balance | | | 15,395.79 |
| | 8/14/09 081409OF | GENJ | Office Salaries OFFICE SALARIES 081409 | 5,131.93 | | |
| | 8/28/09 0828OFFIC | GENJ | Office Salaries  082809 OFFICE SALARIES | 5,131.93 | | |
| | | | Current Period Change | 10,263.86 | | 10,263.86 |
| | 9/1/09 | | Beginning Balance | | | 25,659.65 |
| | 9/11/09 091109OF | GENJ | Office Salaries  091109 OFFICE SALARIES | 5,131.93 | | |
| | 9/25/09 092509 OF | GENJ | Office Salaries  092509 OFFICE SALARIES | 5,131.93 | | |
| | 9/25/09 092509 OF | GENJ | Office Salaries - OVERTIME 092509 OFFICE SALARIES | 41.22 | | |
| | 9/30/09 J/E 2D | GENJ | TO ACCRUE OFFICE PAYROLL | 1,293.28 | | |
| | 9/30/09 J/E 2BZ1 | GENJ | To allocate additional costs to Ameritrans | | 3,916.00 | |
| | | | Current Period Change | 11,598.36 | 3,916.00 | 7,682.36 |
| | 10/1/09 | | Beginning Balance | | | 33,342.01 |
| | 10/1/09 J/E 2D | GENJ | TO ACCRUE OFFICE PAYROLL | | 1,293.28 | |
| | 10/9/09 100909OF | GENJ | Office Salaries  100909 OFFICE SALARIES | 5,131.93 | | |
| | 10/9/09 100909OF | GENJ | Office Salaries - OVERTIME 100909 OFFICE SALARIES | 41.22 | | |
| | 10/23/09 102309OF | GENJ | Office Salaries  10/23/09 OFFICE SALARIES | 4,916.55 | | |
| | | | Current Period Change | 10,089.70 | 1,293.28 | 8,796.42 |
| | 11/1/09 | | Beginning Balance | | | 42,138.43 |
| | 11/6/09 110609OF | GENJ | Office Salaries 110609 OFFICE SALARIES | 5,131.93 | | |
| | 11/20/09 | GENJ | Office Salaries 11 20 09 | 5,024.21 | | |

6/22/11 at 14:44:38.01

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 5160 (cont.) | 112009OF | | OFFICE SALARIES | | | |
| | | | Current Period Change | 10,156.14 | | 10,156.14 |
| | 12/1/09 | | Beginning Balance | | | 52,294.57 |
| | 12/4/09<br>120409OF | GENJ | Office Salaries  120409<br>OFFICE SALARIES | 4,647.32 | | |
| | 12/18/09<br>121809OF | GENJ | Office Salaries 121809<br>OFFICE SALARIES | 4,808.86 | | |
| | 12/18/09<br>121809ADJ | GENJ | OFFICE SALARIES -<br>CORRECT 12/18/09<br>OFFICE SALARIES | | 646.14 | |
| | 12/23/09<br>122309200 | GENJ | Office Salaries 2009<br>OFFICE BONUSES | 7,150.00 | | |
| | 12/30/09<br>123009BO | GENJ | Office Salaries  BONUS<br>2009 GROSS | 750.00 | | |
| | 12/31/09<br>J/E 2D | GENJ | To accrue office payroll | 3,999.57 | | |
| | 12/31/09<br>J/E 2 BZ | GENJ | TO ALLOCATE ADD'L<br>COSTS TO<br>AMERITRANS | | 5,168.00 | |
| | | | Current Period Change | 21,355.75 | 5,814.14 | 15,541.61 |
| | 1/1/10 | | Beginning Balance | | | 67,836.18 |
| | 1/1/10<br>J/E 2D | GENJ | To accrue office payroll | | 3,999.57 | |
| | 1/4/10<br>010110OF | GENJ | Office Salaries 010110<br>OFFICE SALARIES | 4,055.00 | | |
| | 1/15/10<br>011510OF | GENJ | Office Salaries  011510<br>OFFICE SALARIES | 4,055.00 | | |
| | 1/29/10<br>012910OF | GENJ | Office Salaries  01/29/10<br>OFFICE SALARIES | 5,131.93 | | |
| | | | Current Period Change | 13,241.93 | 3,999.57 | 9,242.36 |
| | 2/1/10 | | Beginning Balance | | | 77,078.54 |
| | 2/12/10<br>021210OF | GENJ | Office Salaries 021210<br>OFFICE PAYROLL | 5,131.93 | | |
| | 2/26/10<br>022610OF | GENJ | Office Salaries 02/26/10<br>OFFICE SALARIES | 5,078.08 | | |
| | | | Current Period Change | 10,210.01 | | 10,210.01 |
| | 3/1/10 | | Beginning Balance | | | 87,288.55 |
| | 3/12/10<br>031210OF | GENJ | Office Salaries  03/12/10<br>OFFICE PAYROLL | 7,247.32 | | |
| | 3/26/10<br>032610OF | GENJ | Office Salaries  03/26/10<br>OFFICE SALARIES | 18,116.52 | | |
| | 3/31/10<br>J/E 2D | GENJ | TO ACCRUE OFFICE<br>PAYROLL | 1,523.37 | | |
| | 3/31/10<br>J/E 2BZ | GENJ | To allocate costs to<br>AMTC | | 7,075.00 | |
| | | | Current Period Change | 26,887.21 | 7,075.00 | 19,812.21 |
| | 4/1/10 | | Beginning Balance | | | 107,100.76 |
| | 4/1/10<br>J/E 2D | GENJ | TO ACCRUE OFFICE<br>PAYROLL | | 1,523.37 | |
| | 4/9/10<br>040910OF | GENJ | Office Salaries  040910<br>OFFICE SALARIES | 5,077.91 | | |
| | 4/19/10<br>041910OF | GENJ | Office Salaries 041910<br>OFFICE SALARIES | 2,200.00 | | |

6/22/11 at 14:44:38.05

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 5160 (cont.) | 4/23/10 042310OF | GENJ | Office Salaries 042310 OFFICE SALARIES | 4,539.59 | | |
| | | | Current Period Change | 11,817.50 | 1,523.37 | 10,294.13 |
| | 5/1/10 | | Beginning Balance | | | 117,394.89 |
| | 5/7/10 050710OF | GENJ | Office Salaries - OVERTIME 05/07/10 OFFICE SALARIES | 101.99 | | |
| | 5/7/10 050710OF | GENJ | Office Salaries 05/07/10 OFFICE SALARIES | 4,539.59 | | |
| | 5/21/10 052110OF | GENJ | Office Salaries -052110 OFFICE SALARIES | 4,539.59 | | |
| | 5/21/10 052110OF | GENJ | Office Salaries - OVERTIME 052110 OFFICE SALARIES | 90.66 | | |
| | | | Current Period Change | 9,271.83 | | 9,271.83 |
| | 6/1/10 | | Beginning Balance | | | 126,666.72 |
| | 6/4/10 060410OF | GENJ | Office Salaries 060410 OFFICE SALARIES | 4,539.59 | | |
| | 6/18/10 061810OF | GENJ | Office Salaries 6/18/10 OFFICE PAYROLL | 4,539.59 | | |
| | 6/30/10 J/E 2D | GENJ | To accrue office payroll | 3,985.24 | | |
| | 6/30/10 J/E 2 BZ | GENJ | TO ALLOCATE ADD'L COSTS TO AMERITRANS | | 13,055.00 | |
| | | | Current Period Change | 13,064.42 | 13,055.00 | 9.42 |
| | **6/30/10** | | **Ending Balance** | | | **126,676.14** |
| 5165 EMPLOYEE BENEFIT | 7/1/09 | | Beginning Balance | | | |
| | 7/1/09 070109OF | GENJ | Officer Salaries - Transit Checks OFFICERS SALARIES 070109 | | 390.00 | |
| | 7/3/09 070309OF | GENJ | Office Salaries - Transit Checks 070309 OFFICE SALARIES | | 80.50 | |
| | 7/17/09 071709OF | GENJ | Office Salaries - Transit Checks 071709 OFFICE SALARIES | | 40.50 | |
| | 7/31/09 073109OF | GENJ | Office Salaries - Transit Checks 073109 OFFICE SALARIES | | 89.50 | |
| | | | Current Period Change | | 600.50 | -600.50 |
| | 8/1/09 | | Beginning Balance | | | -600.50 |
| | 8/3/09 0809OFFIC | GENJ | Officer Salaries - Transit Checks 0809 OFFICERS SALARIES | | 410.00 | |
| | 8/14/09 081409OF | GENJ | Office Salaries - Transit Checks OFFICE SALARIES 081409 | | 89.50 | |
| | 8/28/09 0828OFFIC | GENJ | Office Salaries - Transit Checks 082809 OFFICE SALARIES | | 89.50 | |
| | | | Current Period Change | | 589.00 | -589.00 |

6/22/11 at 14:44:38.10

Page: 271

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID / Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 5165 (cont.) | 9/1/09 | | Beginning Balance | | | -1,189.50 |
| | 9/1/09 090109OF | GENJ | Officer Salaries - Transit Checks 090109 OFFICER SALARIES | | 410.00 | |
| | 9/11/09 091109OF | GENJ | Office Salaries - Transit Checks  091109 OFFICE SALARIES | | 89.50 | |
| | 9/25/09 092509 OF | GENJ | Office Salaries - Transit Checks  092509 OFFICE SALARIES | | 89.50 | |
| | 9/30/09 J/E 2BZ1 | GENJ | To allocate additional costs to Ameritrans | 187.00 | | |
| | | | Current Period Change | 187.00 | 589.00 | -402.00 |
| | 10/1/09 | | Beginning Balance | | | -1,591.50 |
| | 10/1/09 1009OFFIC | GENJ | Officer Salaries - Transit Checks 1009 OFFICER SALARIES | | 365.00 | |
| | 10/9/09 100909OF | GENJ | Office Salaries - Transit Checks 100909 OFFICE SALARIES | | 89.50 | |
| | 10/23/09 102309OF | GENJ | Office Salaries - Transit Checks 10/23/09 OFFICE SALARIES | | 89.50 | |
| | | | Current Period Change | | 544.00 | -544.00 |
| | 11/1/09 | | Beginning Balance | | | -2,135.50 |
| | 11/2/09 1109OFFIC | GENJ | Officer Salaries - Transit Checks 1109 OFFICER SALARIES | | 410.00 | |
| | 11/6/09 110609OF | GENJ | Office Salaries - Transit Checks  110609 OFFICE SALARIES | | 89.50 | |
| | 11/20/09 112009OF | GENJ | Office Salaries - Transit Checks  11 20 09 OFFICE SALARIES | | 89.50 | |
| | | | Current Period Change | | 589.00 | -589.00 |
| | 12/1/09 | | Beginning Balance | | | -2,724.50 |
| | 12/1/09 1209OFFIC | GENJ | Officer Salaries - Transit Checks 1209 OFFICER SALARIES | | 410.00 | |
| | 12/1/09 120109 | PJ | TRANSITCENTER INC. - QUARTERLY TRANSIT CHEK METRO CARD ORDER | 1,864.52 | | |
| | 12/4/09 120409OF | GENJ | Office Salaries - Transit Checks 120409 OFFICE SALARIES | | 89.50 | |
| | 12/18/09 121809OF | GENJ | Office Salaries - Transit Checks 121809 OFFICE SALARIES | | 89.50 | |
| | 12/31/09 AJE7 | GENJ | To distribute policy to GCG | 28,679.69 | | |
| | 12/31/09 J/E 2 BZ | GENJ | TO ALLOCATE ADD'L COSTS TO AMERITRANS | | 3,381.00 | |
| | | | Current Period Change | 30,544.21 | 3,970.00 | 26,574.21 |

6/22/11 at 14:44:38.13

Page: 272

## Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 5165 (cont.) | 1/1/10 | | Beginning Balance | | | 23,849.71 |
| | 1/4/10 010110OF | GENJ | Office Salaries - Transit Checks 010110 OFFICE SALARIES | | 44.50 | |
| | 1/4/10 0110OFFIC | GENJ | Officer Salaries - Transit Checks 0110 OFFICERS SALARIES | | 410.00 | |
| | 1/15/10 011510OF | GENJ | Office Salaries - Transit Checks 011510 OFFICE SALARIES | | 44.50 | |
| | 1/29/10 012910OF | GENJ | Office Salaries - Transit Checks 01/29/10 OFFICE SALARIES | | 89.50 | |
| | | | Current Period Change | | 588.50 | -588.50 |
| | 2/1/10 | | Beginning Balance | | | 23,261.21 |
| | 2/1/10 0210OFFIC | GENJ | Officer Salaries - Transit Checks 0210 OFFICERS SALARIES | | 410.00 | |
| | 2/12/10 021210OF | GENJ | Office Salaries - Transit Checks 021210 OFFICE PAYROLL | | 89.50 | |
| | 2/26/10 022610OF | GENJ | Office Salaries - Transit Checks 02/26/10 OFFICE SALARIES | | 89.50 | |
| | | | Current Period Change | | 589.00 | -589.00 |
| | 3/1/10 | | Beginning Balance | | | 22,672.21 |
| | 3/1/10 0310OFFIC | GENJ | Officer Salaries - Transit Checks 03/10 OFFICERS SALARIES | | 410.00 | |
| | 3/8/10 030810 | PJ | TRANSITCENTER INC. - TRANSITCHEKS - MAR 2010 | 1,585.50 | | |
| | 3/12/10 031210OF | GENJ | Office Salaries - Transit Checks 03/12/10 OFFICE SALARIES | | 89.50 | |
| | 3/26/10 032610OF | GENJ | Office Salaries - Transit Checks 03/26/10 OFFICE SALARIES | | 45.00 | |
| | 3/31/10 J/E 2BZ | GENJ | To allocate costs to AMTC | | 334.00 | |
| | | | Current Period Change | 1,585.50 | 878.50 | 707.00 |
| | 4/1/10 | | Beginning Balance | | | 23,379.21 |
| | 4/1/10 0410OFFIC | GENJ | Officer Salaries - Transit Checks 0410 OFFICER SALARIES | | 410.00 | |
| | 4/9/10 040910OF | GENJ | Office Salaries - Transit Checks 040910 OFFICE SALARIES | | 45.00 | |
| | | | Current Period Change | | 455.00 | -455.00 |
| | 5/1/10 | | Beginning Balance | | | 22,924.21 |
| | 5/3/10 0510OFFIC | GENJ | Officer Salaries - Transit Checks 05/10 OFFICERS SALARIES | | 410.00 | |
| | | | Current Period Change | | 410.00 | -410.00 |

6/22/11 at 14:44:38.18

## Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 5165 (cont.) | 6/1/10 | | Beginning Balance | | | 22,514.21 |
| | 6/1/10<br>0610OFFIC | GENJ | Officer Salaries - Transit Checks 06/10 OFFICER SALARIES | | 410.00 | |
| | 6/2/10<br>JUNE 2010 | PJ | TRANSITCENTER INC. - QUARTERLY TRANSITCHEKS - JUNE 2010 | 1,068.23 | | |
| | 6/30/10<br>J/E 2 BZ | GENJ | TO ALLOCATE ADD'L COSTS TO AMERITRANS | | 1,476.00 | |
| | | | Current Period Change | 1,068.23 | 1,886.00 | -817.77 |
| | 6/30/10 | | Ending Balance | | | 21,696.44 |
| 5170<br>Payroll taxes | 7/1/09 | | Beginning Balance | | | |
| | 7/1/09<br>070109OF | GENJ | Officer Salaries - FICA / MEDICARE OFFICERS SALARIES 070109 | 4,284.18 | | |
| | 7/3/09<br>070309OF | GENJ | Office Salaries - FICA / MEDICARE  070309 OFFICE SALARIES | 361.69 | | |
| | 7/17/09<br>071709OF | GENJ | Office Salaries - FICA / MEDICARE  071709 OFFICE SALARIES | 364.75 | | |
| | 7/31/09<br>073109OF | GENJ | Office Salaries - FICA / MEDICARE 073109 OFFICE SALARIES | 361.00 | | |
| | | | Current Period Change | 5,371.62 | | 5,371.62 |
| | 8/1/09 | | Beginning Balance | | | 5,371.62 |
| | 8/3/09<br>0809OFFIC | GENJ | Officer Salaries - FICA / MEDICARE 0809 OFFICERS SALARIES | 4,282.65 | | |
| | 8/14/09<br>081409OF | GENJ | Office Salaries - FICA / MEDICARE  OFFICE SALARIES 081409 | 361.00 | | |
| | 8/28/09<br>0828OFFIC | GENJ | Office Salaries - FICA / MEDICARE  082809 OFFICER SALARIES | 361.01 | | |
| | | | Current Period Change | 5,004.66 | | 5,004.66 |
| | 9/1/09 | | Beginning Balance | | | 10,376.28 |
| | 9/1/09<br>090109OF | GENJ | Officer Salaries - FICA / MEDICARE 090109 OFFICER SALARIES | 3,419.44 | | |
| | 9/11/09<br>091109OF | GENJ | Office Salaries - FICA / MEDICARE  091109 OFFICE SALARIES | 361.00 | | |
| | 9/25/09<br>092509 OF | GENJ | Office Salaries - FICA / MEDICARE  092509 OFFICE SALARIES | 364.15 | | |
| | 9/30/09<br>J/E 2BZ1 | GENJ | To allocate additional costs to Ameritrans | | 1,526.00 | |
| | | | Current Period Change | 4,144.59 | 1,526.00 | 2,618.59 |
| | 10/1/09 | | Beginning Balance | | | 12,994.87 |

6/22/11 at 14:44:38.23

## Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 5170 (cont.) | 10/1/09<br>1009OFFIC | GENJ | Officer Salaries - FICA /<br>MEDICARE 1009<br>OFFICER SALARIES | 2,722.64 | | |
| | 10/1/09<br>1009OFFIC | GENJ | Officer Salaries -<br>COMMUTER TAX | 368.43 | | |
| | 10/9/09<br>100909OF | GENJ | Office Salaries - METRO<br>COMMUTER TAX<br>100909 | 16.18 | | |
| | 10/9/09<br>100909OF | GENJ | Office Salaries - FICA /<br>MEDICARE  100909<br>OFFICE SALARIES | 364.17 | | |
| | 10/23/09<br>102309OF | GENJ | Office Salaries -<br>Signature Bank -<br>COMMUTER TAXES<br>10/23/09 OFFICE<br>SALARIES | 15.31 | | |
| | 10/23/09<br>102309OF | GENJ | Office Salaries - FICA /<br>MEDICARE 10/23/09<br>OFFICE SALARIES | 344.53 | | |
| | 10/30/09<br>0109-0909 | GENJ | Salaries - Commuter<br>Taxes - 01/01/09 -<br>09/30/09 COMMUTER<br>TAX | 2,747.47 | | |
| | | | Current Period Change | 6,578.73 | | 6,578.73 |
| | 11/1/09 | | Beginning Balance | | | 19,573.60 |
| | 11/2/09<br>1109OFFIC | GENJ | Officer Salaries -<br>Commuter Taxes 1109<br>OFFICER SALARIES | 368.27 | | |
| | 11/2/09<br>1109OFFIC | GENJ | Officer Salaries - FICA /<br>MEDICARE 1109<br>OFFICER SALARIES | 2,679.19 | | |
| | 11/6/09<br>110609OF | GENJ | Office Salaries - FICA /<br>MEDICARE  110609<br>OFFICE SALARIES | 361.00 | | |
| | 11/6/09<br>110609OF | GENJ | Office Salaries -<br>Commuter Taxes<br>110609 OFFICE<br>SALARIES | 16.04 | | |
| | 11/20/09<br>112009OF | GENJ | Office Salaries -<br>Commuter Taxes 11 20<br>09 OFFICE SALARIES | 15.67 | | |
| | 11/20/09<br>112009OF | GENJ | Office Salaries - FICA /<br>MEDICARE  11 20 09<br>OFFICE SALARIES | 352.76 | | |
| | | | Current Period Change | 3,792.93 | | 3,792.93 |
| | 12/1/09 | | Beginning Balance | | | 23,366.53 |
| | 12/1/09<br>1209OFFIC | GENJ | Officer Salaries -<br>Commuter Taxes 1209<br>OFFICER SALARIES | 368.27 | | |
| | 12/1/09<br>1209OFFIC | GENJ | Officer Salaries - FICA /<br>MEDICARE 1209<br>OFFICER SALARIES | 2,128.54 | | |
| | 12/4/09<br>120409OF | GENJ | Office Salaries - FICA /<br>MEDICARE 120409<br>OFFICE SALARIES | 323.93 | | |
| | 12/4/09<br>120409OF | GENJ | Office Salaries -<br>Commuter Taxes<br>120409 OFFICE<br>SALARIES | 14.39 | | |

6/22/11 at 14:44:38.26

## Elk Associates Funding Corporation
## General Ledger
## For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 5170 (cont.) | 12/18/09<br>121809OF | GENJ | SALARIES<br>Office Salaries - FICA /<br>MEDICARE 121809<br>OFFICE SALARIES | 336.30 | | |
| | 12/18/09<br>121809OF | GENJ | Office Salaries -<br>Commuter Taxes<br>121809 OFFICE<br>SALARIES | 14.94 | | |
| | 12/18/09<br>121809ADJ | GENJ | OFFICE SALARIES -<br>CORRECT 12/18/09<br>OFFICE SALARIES -<br>COMMUTER TAXES | | 2.20 | |
| | 12/18/09<br>121809ADJ | GENJ | OFFICE SALARIES -<br>CORRECT 12/18/09<br>OFFICE SALARIES -<br>FICA/MEDICARE | | 49.43 | |
| | 12/23/09<br>122309200 | GENJ | Office Salaries -<br>Commuter Taxes 2009<br>OFFICE BONUSES | 24.31 | | |
| | 12/23/09<br>122309200 | GENJ | Office Salaries - FICA /<br>MEDICARE 2009<br>OFFICE BONUSES | 546.97 | | |
| | 12/30/09<br>123009BO | GENJ | Office Salaries -<br>Commuter Taxes 2009<br>BONUS | 2.55 | | |
| | 12/30/09<br>123009BO | GENJ | Office Salaries - FICA /<br>MEDICARE BONUS<br>2009 | 57.37 | | |
| | 12/31/09<br>J/E 2 BZ | GENJ | TO ALLOCATE ADD'L<br>COSTS TO<br>AMERITRANS | | 1,859.00 | |
| | | | Current Period Change | 3,817.57 | 1,910.63 | 1,906.94 |
| | 1/1/10 | | Beginning Balance | | | 25,273.47 |
| | 1/4/10<br>010110OF | GENJ | Office Salaries - FICA /<br>MEDICARE 010110<br>OFFICE SALARIES | 282.06 | | |
| | 1/4/10<br>010110OF | GENJ | Office Salaries - FUTA<br>010110 OFFICE<br>SALARIES | 29.50 | | |
| | 1/4/10<br>010110OF | GENJ | Office Salaries -<br>Commuter Taxes<br>010110 OFFICE<br>SALARIES | 12.53 | | |
| | 1/4/10<br>010110OF | GENJ | Office Salaries - SUTA<br>010110 OFFICE<br>SALARIES | 64.88 | | |
| | 1/4/10<br>0110OFFIC | GENJ | Officer Salaries - FICA /<br>MEDICARE 0110<br>OFFICERS SALARIES | 8,346.79 | | |
| | 1/4/10<br>0110OFFIC | GENJ | Officer Salaries - SUTA<br>0110 OFFICERS<br>SALARIES | 816.00 | | |
| | 1/4/10<br>0110OFFIC | GENJ | Officer Salaries -<br>Commuter Taxes 0110<br>OFFICERS SALARIES | 370.97 | | |
| | 1/4/10<br>0110OFFIC | GENJ | Officer Salaries - FUTA<br>0110 OFFICERS<br>SALARIES | 336.00 | | |
| | 1/15/10<br>011510OF | GENJ | Office Salaries - SUTA<br>011510 OFFICE<br>SALARIES | 64.88 | | |

6/22/11 at 14:44:38.30

Page: 276

# Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 5170 (cont.) | 1/15/10<br>011510OF | GENJ | Office Salaries - FUTA<br>011510 OFFICE<br>SALARIES | 29.50 | | |
| | 1/15/10<br>011510OF | GENJ | Office Salaries - FICA /<br>MEDICARE 011510<br>OFFICE SALARIES | 282.06 | | |
| | 1/15/10<br>011510OF | GENJ | Office Salaries -<br>Commuter Taxes<br>011510 OFFICE<br>SALARIES | 12.53 | | |
| | 1/29/10<br>012910OF | GENJ | Office Salaries - SUTA<br>01/29/10 OFFICE<br>SALARIES | 82.11 | | |
| | 1/29/10<br>012910OF | GENJ | Office Salaries - FICA /<br>MEDICARE  01/29/10<br>OFFICE SALARIES | 361.01 | | |
| | 1/29/10<br>012910OF | GENJ | Office Salaries - FUTA<br>01/29/10 OFFICE<br>SALARIES | 37.76 | | |
| | 1/29/10<br>012910OF | GENJ | Office Salaries -<br>Commuter Taxes<br>01/29/10 OFFICES<br>SALARIES | 16.04 | | |
| | | | Current Period Change | 11,144.62 | | 11,144.62 |
| | 2/1/10 | | Beginning Balance | | | 36,418.09 |
| | 2/1/10<br>0210OFFIC | GENJ | Officer Salaries - FICA /<br>MEDICARE 02/10<br>OFFICERS SALARIES | 8,346.83 | | |
| | 2/1/10<br>0210OFFIC | GENJ | Officer Salaries -<br>Commuter Taxes 0210<br>OFFICERS SALARIES | 370.97 | | |
| | 2/12/10<br>021210OF | GENJ | Office Salaries - FUTA<br>021210 OFFICE<br>PAYROLL | 26.53 | | |
| | 2/12/10<br>021210OF | GENJ | Office Salaries -<br>Commuter Taxes<br>021210 OFFICE<br>PAYROLL | 16.04 | | |
| | 2/12/10<br>021210OF | GENJ | Office Salaries - SUTA<br>021210 OFFICE<br>PAYROLL | 62.96 | | |
| | 2/12/10<br>021210OF | GENJ | Office Salaries - FICA /<br>MEDICARE 021210<br>OFFICE PAYROLL | 361.01 | | |
| | 2/16/10<br>021610OF | GENJ | Officer Salaries - FICA /<br>MEDICARE 021610<br>OFFICERS BONUS<br>2009 | 2,677.50 | | |
| | 2/16/10<br>021610OF | GENJ | Officer Salaries -<br>Commuter Taxes<br>021610 OFFICER<br>BONUS 2009 | 119.00 | | |
| | 2/26/10<br>022610OF | GENJ | Office Salaries -<br>Commuter Taxes<br>02/26/10 OFFICE<br>SALARIES | 15.86 | | |
| | 2/26/10<br>022610OF | GENJ | Office Salaries - SUTA<br>02/26/10 OFFICE<br>SALARIES | 55.52 | | |
| | 2/26/10<br>022610OF | GENJ | Office Salaries - FUTA<br>02/26/10 OFFICE<br>SALARIES | 13.06 | | |

6/22/11 at 14:44:38.34

# Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 5170 (cont.) | 2/26/10<br>022610OF | GENJ | SALARIES<br>Office Salaries - FICA /<br>MEDICARE 02/26/10<br>OFFICE SALARIES | 419.30 | | |
| | | | Current Period Change | 12,484.58 | | 12,484.58 |
| | 3/1/10 | | Beginning Balance | | | 48,902.67 |
| | 3/1/10<br>0310OFFIC | GENJ | Officer Salaries - FICA /<br>MEDICARE 03/10<br>OFFICERS | 8,346.78 | | |
| | 3/1/10<br>0310OFFIC | GENJ | Officer Salaries -<br>Commuter Taxes 03/10<br>OFFICERS SALARIES | 370.97 | | |
| | 3/12/10<br>031210OF | GENJ | Office Salaries - FICA /<br>MEDICARE 03/12/10<br>OFFICE PAYROLL | 522.83 | | |
| | 3/12/10<br>031210OF | GENJ | Office Salaries -<br>Commuter Taxes<br>03/12/10 OFFICE<br>SALARIES | 23.23 | | |
| | 3/12/10<br>031210OF | GENJ | Office Salaries - SUTA<br>03/12/10 OFFICE<br>PAYROLL | 155.69 | | |
| | 3/12/10<br>031210OF | GENJ | Office Salaries - FUTA<br>03/12/10 OFFICE<br>PAYROLL | 25.18 | | |
| | 3/22/10<br>032210SUI | GENJ | Office Salaries - SUTA -<br>ADJUST 1.6% TO<br>4.40% STATE<br>UNEMPLOYMENT<br>INSURANCE<br>CONTRIBUTION RATE | 2,006.11 | | |
| | 3/26/10<br>032610OF | GENJ | Office Salaries - FUTA<br>03/26/10 OFFICE<br>SALARIES | 25.18 | | |
| | 3/26/10<br>032610OF | GENJ | Office Salaries - SUTA<br>03/26/10 OFFICE<br>SALARIES | 140.46 | | |
| | 3/26/10<br>032610OF | GENJ | Office Salaries -<br>Commuter Taxes<br>03/26/10 OFFICE<br>SALARIES | 60.34 | | |
| | 3/26/10<br>032610OF | GENJ | Office Salaries - FICA /<br>MEDICARE 03/26/10<br>OFFICE SALARIES | 1,357.72 | | |
| | 3/31/10<br>J/E 2BZ | GENJ | To allocate costs to<br>AMTC | | 5,178.00 | |
| | | | Current Period Change | 13,034.49 | 5,178.00 | 7,856.49 |
| | 4/1/10 | | Beginning Balance | | | 56,759.16 |
| | 4/1/10<br>0410OFFIC | GENJ | Officer Salaries - FICA /<br>MEDICARE 0410<br>OFFICER SALARIES | 5,576.58 | | |
| | 4/1/10<br>0410OFFIC | GENJ | Officer Salaries -<br>Commuter Taxes 0410<br>OFFICER SALARIES | 370.97 | | |
| | 4/9/10<br>040910OF | GENJ | Office Salaries - FICA /<br>MEDICARE 040910<br>OFFICE SALARIES | 360.28 | | |
| | 4/9/10<br>040910OF | GENJ | Office Salaries -<br>Commuter Taxes<br>040910 OFFICE | 16.01 | | |

6/22/11 at 14:44:38.38

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| | | | 040910 OFFICE SALARIES | | | |
| 5170 (cont.) | 4/9/10<br>040910OF | GENJ | Office Salaries - FUTA<br>040910 OFFICE SALARIES | 20.87 | | |
| | 4/9/10<br>040910OF | GENJ | Office Salaries - SUTA<br>040910 OFFICE SALARIES | 116.76 | | |
| | 4/19/10<br>041910OF | GENJ | Office Salaries - FUTA<br>041910 OFFICE SALARIES | 9.48 | | |
| | 4/19/10<br>041910OF | GENJ | Office Salaries - FICA /<br>MEDICARE  041910<br>OFFICE SALARIES | 168.30 | | |
| | 4/19/10<br>041910OF | GENJ | Office Salaries -<br>Commuter Taxes<br>041910 OFFICE SALARIES | 7.48 | | |
| | 4/19/10<br>041910OF | GENJ | Office Salaries - SUTA<br>041910 OFFICE SALARIES | 96.80 | | |
| | 4/22/10<br>042210AD | GENJ | Office Salaries -<br>Commuter Taxes -<br>4/22/10 NY MET K<br>GALLISHAW<br>DISABILITY BENEFITS<br>PD 1/26/10 | 2.76 | | |
| | 4/22/10<br>042210AD | GENJ | Office Salaries - FUTA<br>4/22/10 - FUTA TAX K<br>GALLISHAW<br>DISABILITY BENEFITS<br>PAID 1/26/10 | 6.51 | | |
| | 4/23/10<br>042310OF | GENJ | Office Salaries -<br>Commuter Taxes<br>042310 OFFICE SALARIES | 14.33 | | |
| | 4/23/10<br>042310OF | GENJ | Office Salaries - FUTA -<br>042310 OFFICE SALARIES | 6.96 | | |
| | 4/23/10<br>042310OF | GENJ | Office Salaries - SUTA<br>-42310 OFFICE SALARIES | 93.08 | | |
| | 4/23/10<br>042310OF | GENJ | Office Salaries - FICA /<br>MEDICARE  042310<br>OFFICE SALARIES | 322.54 | | |
| | | | Current Period Change | 7,189.71 | | 7,189.71 |
| | 5/1/10 | | Beginning Balance | | | 63,948.87 |
| | 5/3/10<br>0510OFFIC | GENJ | Officer Salaries -<br>Commuter Taxes 05/10<br>OFFICERS SALARIES | 370.97 | | |
| | 5/3/10<br>0510OFFIC | GENJ | Officer Salaries - FICA /<br>MEDICARE 05/10<br>OFFICERS SALARIES | 4,343.43 | | |
| | 5/7/10<br>050710OF | GENJ | Office Salaries - FICA /<br>MEDICARE 05/07/10<br>OFFICE SALARIES | 330.34 | | |
| | 5/7/10<br>050710OF | GENJ | Office Salaries -<br>Commuter Taxes<br>05/07/10 OFFICE SALARIES | 14.68 | | |
| | 5/7/10 | GENJ | Office Salaries - SUTA<br>05/07/10 OFFICE | 11.18 | | |

6/22/11 at 14:44:38.41

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 5170 (cont.) | 050710OF | | 05/07/10 OFFICE SALARIES | | | |
| | 5/21/10 052110OF | GENJ | Office Salaries - Commuter Taxes 052110 OFFICE SALARIES | 14.64 | | |
| | 5/21/10 052110OF | GENJ | Office Salaries - FICA / MEDICARE 052110OFFICE SALARIES | 329.47 | | |
| | | | Current Period Change | 5,414.71 | | 5,414.71 |
| | 6/1/10 | | Beginning Balance | | | 69,363.58 |
| | 6/1/10 0610OFFIC | GENJ | Officer Salaries - Commuter Taxes 06/10 OFFICER SALARIES | 370.97 | | |
| | 6/1/10 0610OFFIC | GENJ | Officer Salaries - FICA / MEDICARE 06/10 OFFICER SALARIES | 4,343.45 | | |
| | 6/4/10 060410OF | GENJ | Office Salaries - FICA / MEDICARE  060410 OFFICE SALARIES | 322.54 | | |
| | 6/4/10 060410OF | GENJ | Office Salaries - Commuter Taxes 060410 OFFICE SALARIES | 14.33 | | |
| | 6/8/10 060810SU | GENJ | Office Salaries - SUTA ADJUSTMENT PER ADP | | 5.42 | |
| | 6/16/10 061610OF | GENJ | Officer Salaries - FICA / MEDICARE ADJUST M FEINSOD SALARY 5/28/10 - 6/30/10 | 44.51 | | |
| | 6/16/10 061610OF | GENJ | Officer Salaries - Commuter Taxes 6/16/10 ADJUST M FEINSOD 5/28/10 - 6/30/10 | 10.44 | | |
| | 6/18/10 061810OF | GENJ | Office Salaries - Commuter Taxes 6/18/10 OFFICE PAYROLL | 14.33 | | |
| | 6/18/10 061810OF | GENJ | Office Salaries - FICA / MEDICARE  06/18/10 OFFICE PAYROLL | 322.54 | | |
| | 6/30/10 J/E 2 BZ | GENJ | TO ALLOCATE ADD'L COSTS TO AMERITRANS | | 7,059.00 | |
| | | | Current Period Change | 5,443.11 | 7,064.42 | -1,621.31 |
| | 6/30/10 | | Ending Balance | | | 67,742.27 |
| 5171.00 Pension expense | 7/1/09 | | Beginning Balance | | | |
| | 7/31/09 J/E 2R | GENJ | To record SEP / Pension accrual | 18,683.33 | | |
| | | | Current Period Change | 18,683.33 | | 18,683.33 |
| | 8/1/09 | | Beginning Balance | | | 18,683.33 |
| | 8/31/09 | GENJ | AUGUST 2009 SEP PENSION | 17,913.54 | | |

6/22/11 at 14:44:38.46

## Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID / Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 5171.00 (cont.) | J/E 2-R | | SEP/PENSION ACCRUAL PER ATTACHED | | | |
| | | | Current Period Change | 17,913.54 | | 17,913.54 |
| | 9/1/09 | | Beginning Balance | | | 36,596.87 |
| | 9/30/09 J/E 2R | GENJ | SEPT 2009 SEP/PENSION ACCRUAL PER ATTACHED SCHEDULE | 3,661.31 | | |
| | 9/30/09 J/E 2BZ1 | GENJ | To allocate additional costs to Ameritrans | | 32,206.00 | |
| | | | Current Period Change | 3,661.31 | 32,206.00 | -28,544.69 |
| | 10/1/09 | | Beginning Balance | | | 8,052.18 |
| | 10/31/09 J/E 2R | GENJ | To record SEP / Pension accrual | 8,136.50 | | |
| | | | Current Period Change | 8,136.50 | | 8,136.50 |
| | 11/1/09 | | Beginning Balance | | | 16,188.68 |
| | 11/18/09 0609 SEP | PJ | SMITH BARNEY AS CUSTODIAN - 2ND QTR 2009 SEP CONTRIBUTION - KATRINA GALLISHAW | 972.33 | | |
| | 11/18/09 0909 SEP | PJ | SMITH BARNEY AS CUSTODIAN - 3RD QTR 2009 SEP CONTRIBUTION - KATRINA GALLISHAW | 1,136.96 | | |
| | 11/18/09 0609 SEP | PJ | SMITH BARNEY AS SEP\IRA CUST - 2ND QTR 2009 SEP CONTRIBUTION - MARGARET CHANCE | 4,322.70 | | |
| | 11/18/09 0909 SEP | PJ | SMITH BARNEY AS SEP\IRA CUST - 3RD QTR 2009 SEP CONTRIBUTION - MARGARET CHANCE | 4,339.33 | | |
| | 11/18/09 0609 SEP | PJ | PERSHING LLC AS CUSTODIAN - 2ND QTR 2009 SEP CONTRIBUTION - GARY GRANOFF | 14,672.81 | | |
| | 11/18/09 0909 SEP | PJ | PERSHING LLC AS CUSTODIAN - 3RD QTR 2009 SEP CONTRIBUTION - GARY GRANOFF | 7,404.38 | | |
| | 11/18/09 0609 SEP | PJ | SOUTHWEST SECURITIES AS SEP\IR - 2ND QTR 2009 SEP CONTRIBUTION - ELLEN WALKER | 5,809.83 | | |

6/22/11 at 14:44:38.49

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 5171.00 (cont.) | 11/18/09<br>0909 SEP | PJ | ELLEN WALKER SOUTHWEST SECURITIES AS SEP\IR - 3RD QTR 2009 SEP CONTRIBUTION - ELLEN WALKER | 6,100.32 | | |
| | 11/18/09<br>0609 SEP | PJ | SMITH BARNEY SEP PLAN FOR THE - 2ND QTR 2009 SEP CONTRIBUTION - DOLLIE CAMPBELL | 1,467.72 | | |
| | 11/18/09<br>0909 SEP | PJ | SMITH BARNEY SEP PLAN FOR THE - 3RD QTR 2009 SEP CONTRIBUTION - DOLLIE CAMPBELL | 1,712.34 | | |
| | 11/18/09<br>0609 SEP | PJ | STATEN ISLAND BANK AND TRUST - 2ND QTR 2009 SEP CONTRIBUTION - DOMINIC GRANITO | 2,181.78 | | |
| | 11/18/09<br>0909 SEP | PJ | STATEN ISLAND BANK AND TRUST - 3RD QTR 2009 SEP CONTRIBUTION - DOMINIC GRANITO | 2,545.41 | | |
| | 11/18/09<br>0609 SEP | PJ | SOUTHWEST SECURITIES - 2ND QTR 2009 SEP CONTRIBUTION - LEE FORLENZA | 3,936.16 | | |
| | 11/18/09<br>0909 SEP | PJ | SOUTHWEST SECURITIES - 3RD QTR 2009 SEP CONTRIBUTION - LEE FORLENZA | 4,078.61 | | |
| | 11/18/09<br>0609 SEP | PJ | MICHAEL FEINSOD CGM SEP IRA - 2ND QTR 2009 SEP CONTRIBUTION - MICHAEL FEINSOD | 14,580.00 | | |
| | 11/18/09<br>0909 SEP | PJ | MICHAEL FEINSOD CGM SEP IRA - 3RD QTR 2009 SEP CONTRIBUTION - MICHAEL FEINSOD | 7,590.00 | | |
| | 11/19/09<br>0609 SEP | PJ | WELLS FARGO ADVISORS LLC AS CU - 2ND QTR 2009 SEP CONTRIBUTION - SILVIA MULLENS | 5,329.95 | | |
| | 11/19/09<br>0909 SEP | PJ | WELLS FARGO ADVISORS LLC AS CU - 3RD QTR 2009 SEP CONTRIBUTION - SILVIA MULLENS | 5,350.82 | | |
| | 11/30/09<br>J/E 2R | GENJ | To record SEP / Pension accrual | 8,146.45 | | |
| | 11/30/09<br>J/E 2R | GENJ | To reclass payment of pension 2nd & 3rd quarter | | 93,531.45 | |

6/22/11 at 14:44:38.52

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 5171.00 (cont.) | | | quarter<br>Current Period Change | 101,677.90 | 93,531.45 | 8,146.45 |
| | 12/1/09 | | Beginning Balance | | | 24,335.13 |
| | 12/31/09<br>J/E 2R | GENJ | To reverse Oct & Nov pension accrual | | 16,282.96 | |
| | | | Current Period Change | | 16,282.96 | -16,282.96 |
| | 1/1/10 | | Beginning Balance | | | 8,052.17 |
| | 2/1/10 | | Beginning Balance | | | 8,052.17 |
| | 3/1/10 | | Beginning Balance | | | 8,052.17 |
| | 4/1/10 | | Beginning Balance | | | 8,052.17 |
| | 5/1/10 | | Beginning Balance | | | 8,052.17 |
| | 6/1/10 | | Beginning Balance | | | 8,052.17 |
| | 6/30/10<br>J/E 2 BZ | GENJ | TO ALLOCATE ADD'L COSTS TO AMERITRANS | 24,662.00 | | |
| | | | Current Period Change | 24,662.00 | | 24,662.00 |
| | 6/30/10 | | Ending Balance | | | 32,714.17 |
| 5172.00<br>Insurance-Health | 7/1/09 | | Beginning Balance | | | |
| | 7/1/09<br>070109OF | GENJ | Officer Salaries - Medical OFFICERS SALARIES 070109 | | 435.89 | |
| | 7/3/09<br>070309OF | GENJ | Office Salaries - Medical 070309 OFFICE SALARIES | | 323.42 | |
| | 7/17/09<br>071709OF | GENJ | OFFICE SALARIES MEDICAL 071709 OFFICE SALARIES | | 323.42 | |
| | 7/31/09<br>073109OF | GENJ | Office Salaries - Medical 073109 OFFICE SALARIES | | 323.42 | |
| | 7/31/09<br>RJE2 | GENJ | To expense insurance | 11,967.19 | | |
| | | | Current Period Change | 11,967.19 | 1,406.15 | 10,561.04 |
| | 8/1/09 | | Beginning Balance | | | 10,561.04 |
| | 8/3/09<br>0809OFFIC | GENJ | Officer Salaries - Medical 0809 OFFICERS SALARIES | | 435.89 | |
| | 8/14/09<br>081409OF | GENJ | Office Salaries - Medical OFFICE SALARIES 081409 | | 323.42 | |
| | 8/19/09<br>0819D01 | CRJ | MISCELLANEOUS DEPOSIT - GCG REIMBURSEMENT FOR DISABILITY INS. FOR JULY - MASS MUTUAL - PAID BY ELK | | 462.04 | |
| | 8/20/09 | PJ | MARGARET CHANCE - | 185.00 | | |

6/22/11 at 14:44:38.55

Page: 283

## Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 5172.00 (cont.) | AUG REIM | | REIMBURSEMENT AUG 09 | | | |
| | 8/28/09<br>0828OFFIC | GENJ | Office Salaries - Medical 082809 OFFICE SALARIES | | 323.42 | |
| | 8/31/09<br>RJE 2 | GENJ | TO EXPENSE INSURANCE FOR AUGUST 2009 | 5,746.08 | | |
| | 8/31/09<br>RJE 2 | GENJ | TO EXPENSE INSURANCE FOR AUGUST 2009 | 893.00 | | |
| | 8/31/09<br>RJE 2 | GENJ | TO EXPENSE INSURANCE FOR AUGUST 2009 | 4,544.54 | | |
| | | | Current Period Change | 11,368.62 | 1,544.77 | 9,823.85 |
| | 9/1/09 | | Beginning Balance | | | 20,384.89 |
| | 9/1/09<br>090109OF | GENJ | Officer Salaries - Medical - 090109 OFFICER SALARIES | | 435.89 | |
| | 9/11/09<br>091109OF | GENJ | Office Salaries - Medical 091109 OFFICE SALARIES | | 323.42 | |
| | 9/25/09<br>092509 OF | GENJ | Office Salaries - Medical 092509 OFFICE SALARIES | | 323.42 | |
| | 9/30/09<br>RJE2 | GENJ | To expense insurance | 13,115.54 | | |
| | 9/30/09<br>J/E 2BZ1 | GENJ | To allocate additional costs to Ameritrans | | 3,407.00 | |
| | | | Current Period Change | 13,115.54 | 4,489.73 | 8,625.81 |
| | 10/1/09 | | Beginning Balance | | | 29,010.70 |
| | 10/1/09<br>1009OFFIC | GENJ | Officer Salaries - Medical 1009 OFFICER SALARIES | | 435.89 | |
| | 10/9/09<br>100909OF | GENJ | Office Salaries - Medical 100909 OFFICE SALARIES | | 323.42 | |
| | 10/23/09<br>102309OF | GENJ | Office Salaries - Medical 10/23/09 OFFICE SALARIES | | 323.42 | |
| | 10/31/09<br>RJE2 | GENJ | To expense insurance | 10,143.78 | | |
| | | | Current Period Change | 10,143.78 | 1,082.73 | 9,061.05 |
| | 11/1/09 | | Beginning Balance | | | 38,071.75 |
| | 11/2/09<br>1109OFFIC | GENJ | Officer Salaries - Medical 1109 OFFICER SALARIES | | 435.89 | |
| | 11/6/09<br>110609OF | GENJ | Office Salaries - Medical 110609 OFFICE SALARIES | | 323.42 | |
| | 11/20/09<br>112009OF | GENJ | Office Salaries - Medical 11 20 09 OFFICE SALARIES | | 323.42 | |
| | 11/30/09<br>RJE2 | GENJ | To expense insurance | 11,629.66 | | |
| | | | Current Period Change | 11,629.66 | 1,082.73 | 10,546.93 |

6/22/11 at 14:44:38.60

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 5172.00 (cont.) | 12/1/09 | | Beginning Balance | | | 48,618.68 |
| | 12/1/09<br>1209OFFIC | GENJ | Officer Salaries - Medical 1209 OFFICER SALARIES | | 435.89 | |
| | 12/4/09<br>120409OF | GENJ | Office Salaries - Medical 120409 OFFICE SALARIES | | 323.42 | |
| | 12/18/09<br>121809OF | GENJ | Office Salaries - Medical 121809 OFFICE SALARIES | | 323.42 | |
| | 12/31/09<br>RJE2 | GENJ | To expense insurance | 11,629.66 | | |
| | 12/31/09<br>J/E 2 BZ | GENJ | TO ALLOCATE ADD'L COSTS TO AMERITRANS | | 3,983.00 | |
| | | | Current Period Change | 11,629.66 | 5,065.73 | 6,563.93 |
| | 1/1/10 | | Beginning Balance | | | 55,182.61 |
| | 1/4/10<br>010110OF | GENJ | Office Salaries - Medical 010110 OFFICE SALARIES | | 323.42 | |
| | 1/4/10<br>0110OFFIC | GENJ | Officer Salaries - Medical 0110 OFFICERS SALARIES | | 435.89 | |
| | 1/15/10<br>011510OF | GENJ | Office Salaries - Medical 0111510 OFFICE SALARIES | | 323.42 | |
| | 1/29/10<br>012910OF | GENJ | Office Salaries - Medical 01/29/10 OFFICE SALARIES | | 323.42 | |
| | 1/31/10<br>RJE2 | GENJ | To expense insurance | 11,629.66 | | |
| | | | Current Period Change | 11,629.66 | 1,406.15 | 10,223.51 |
| | 2/1/10 | | Beginning Balance | | | 65,406.12 |
| | 2/1/10<br>0210OFFIC | GENJ | Officer Salaries - Medical 0210 OFFICERS SALARIES | | 435.89 | |
| | 2/12/10<br>021210OF | GENJ | Office Salaries - Medical 021210 OFFICE PAYROLL | | 323.42 | |
| | 2/26/10<br>022610OF | GENJ | Office Salaries - Medical 02/26/10 OFFICE SALARIES | | 323.42 | |
| | 2/28/10<br>RJE2 | GENJ | To expense insurance | 11,080.10 | | |
| | | | Current Period Change | 11,080.10 | 1,082.73 | 9,997.37 |
| | 3/1/10 | | Beginning Balance | | | 75,403.49 |
| | 3/1/10<br>0310OFFIC | GENJ | Officer Salaries - Medical 03/10 OFFICER SALARIES | | 435.89 | |
| | 3/12/10<br>031210OF | GENJ | Office Salaries - Medical 03/12/10 OFFICE SALARIES | | 323.42 | |
| | 3/26/10<br>032610OF | GENJ | Office Salaries - Medical 03/26/10 OFFICE SALARIES | | 323.42 | |
| | 3/31/10 | GENJ | To expense insurance | 11,562.72 | | |

6/22/11 at 14:44:38.65

Page: 285

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 5172.00 (cont.) | RJE2 3/31/10 J/E 2BZ | GENJ | To allocate costs to AMTC | | 4,838.00 | |
| | | | Current Period Change | 11,562.72 | 5,920.73 | 5,641.99 |
| | 4/1/10 | | Beginning Balance | | | 81,045.48 |
| | 4/1/10 0410OFFIC | GENJ | Officer Salaries - Medical 0410 OFFICER SALARIES | | 435.89 | |
| | 4/9/10 040910OF | GENJ | Office Salaries - Medical 040910 OFFICE SALARIES | | 323.42 | |
| | 4/23/10 042310OF | GENJ | Office Salaries - Medical 042310 OFFICE SALARIES | | 323.42 | |
| | 4/30/10 RJE2 | GENJ | To expense insurance | 11,562.72 | | |
| | | | Current Period Change | 11,562.72 | 1,082.73 | 10,479.99 |
| | 5/1/10 | | Beginning Balance | | | 91,525.47 |
| | 5/3/10 0510OFFIC | GENJ | Officer Salaries - Medical 05/10 OFFICER SALARIES | | 435.89 | |
| | 5/7/10 050710OF | GENJ | Office Salaries - Medical 05/07/10 OFFICE SALARIES | | 323.42 | |
| | 5/17/10 JUNE 2010 | PJ | EMPIRE HEALTH CHOICE HMO - JUNE 2010 - K.GALLISHAW COBRA | 205.42 | | |
| | 5/21/10 052110OF | GENJ | Office Salaries - Medical 052110 OFFICE SALARIES | | 323.42 | |
| | 5/31/10 RJE2 | GENJ | To expense insurance | 11,562.72 | | |
| | | | Current Period Change | 11,768.14 | 1,082.73 | 10,685.41 |
| | 6/1/10 | | Beginning Balance | | | 102,210.88 |
| | 6/1/10 0610OFFIC | GENJ | Officer Salaries - Medical 06/10 OFFICER SALARIES | | 435.89 | |
| | 6/4/10 060410OF | GENJ | Office Salaries - Medical -60410 OFFICE SALARIES | | 323.42 | |
| | 6/12/10 JULY 2010 | PJ | EMPIRE HEALTH CHOICE HMO - JULY 2010 | 205.42 | | |
| | 6/16/10 061610OF | GENJ | Officer Salaries - Medical 6/16/10 M FEINSOD ADJUST 5/28/10 - 6/30/10 | 435.89 | | |
| | 6/18/10 061810OF | GENJ | Office Salaries - Medical 6/18/10 OFFICE PAYROLL | | 323.42 | |
| | 6/30/10 RJE2 | GENJ | To expense insurance | 10,594.32 | | |
| | 6/30/10 J/E 2 BZ | GENJ | TO ALLOCATE ADD'L COSTS TO AMERITRANS | | 11,121.00 | |
| | | | Current Period Change | 11,235.63 | 12,203.73 | -968.10 |

6/22/11 at 14:44:38.68                                                                                                          Page: 286

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 5172.00 (cont.) | 6/30/10 | | Ending Balance | | | 101,242.78 |
| 5250<br>Rent Expense | 7/1/09 | | Beginning Balance | | | |
| | 7/8/09<br>15599 | PJ | GRANOFF WALKER<br>FORLENZA PC - 15599<br>- 7/09 | 21,647.87 | | |
| | 7/8/09<br>15599 | PJ | GRANOFF WALKER<br>FORLENZA PC - 15599<br>- 7/09 SHARED OFFICE | 4,964.89 | | |
| | 7/31/09<br>RJE2 | GENJ | To amortize rent<br>concession | | 307.00 | |
| | | | Current Period Change | 26,612.76 | 307.00 | 26,305.76 |
| | 8/1/09 | | Beginning Balance | | | 26,305.76 |
| | 8/4/09<br>15657 | PJ | GRANOFF WALKER<br>FORLENZA PC - 15657<br>- AUGUST 09 RENT | 13,139.42 | | |
| | 8/31/09<br>RJE 2 | GENJ | TO AMORTIZE RENT<br>CONCESSION FOR<br>AUGUST 2009 | | 307.00 | |
| | | | Current Period Change | 13,139.42 | 307.00 | 12,832.42 |
| | 9/1/09 | | Beginning Balance | | | 39,138.18 |
| | 9/8/09<br>15714 | PJ | GRANOFF WALKER<br>FORLENZA PC - 15714<br>- RENT SEPTEMBER<br>09 | 13,139.42 | | |
| | 9/30/09<br>RJE2 | GENJ | To amortize rent<br>concession | | 307.00 | |
| | 9/30/09<br>J/E 2BZ1 | GENJ | To allocate additional<br>costs to Ameritrans | | 7,869.00 | |
| | | | Current Period Change | 13,139.42 | 8,176.00 | 4,963.42 |
| | 10/1/09 | | Beginning Balance | | | 44,101.60 |
| | 10/5/09<br>15754 | PJ | GRANOFF WALKER<br>FORLENZA PC - 15754<br>- OCTOBER 09 RENT | 13,139.42 | | |
| | 10/31/09<br>RJE2 | GENJ | To amortize rent<br>concession | | 307.00 | |
| | | | Current Period Change | 13,139.42 | 307.00 | 12,832.42 |
| | 11/1/09 | | Beginning Balance | | | 56,934.02 |
| | 11/5/09<br>15811 | PJ | GRANOFF WALKER<br>FORLENZA PC - 15811<br>- NOV RENT | 13,139.42 | | |
| | 11/30/09<br>RJE2 | GENJ | To amortize rent<br>concession | | 307.00 | |
| | | | Current Period Change | 13,139.42 | 307.00 | 12,832.42 |
| | 12/1/09 | | Beginning Balance | | | 69,766.44 |
| | 12/9/09<br>15866 | PJ | GRANOFF WALKER<br>FORLENZA PC - 15866<br>- DEC RENT | 13,139.42 | | |
| | 12/31/09<br>RJE2 | GENJ | To amortize rent<br>concession | | 307.00 | |

6/22/11 at 14:44:38.73                                                                            Page: 287

## Elk Associates Funding Corporation
## General Ledger
## For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 5250 (cont.) | 12/31/09<br>J/E 2 BZ | GENJ | TO ALLOCATE ADD'L COSTS TO AMERITRANS | | 9,356.00 | |
| | | | Current Period Change | 13,139.42 | 9,663.00 | 3,476.42 |
| | 1/1/10 | | Beginning Balance | | | 73,242.86 |
| | 1/11/10<br>15920 | PJ | GRANOFF WALKER FORLENZA PC - 15920 - JAN 2010 RENT | 12,757.93 | | |
| | 1/31/10<br>RJE2 | GENJ | To amortize rent concession | | 307.00 | |
| | | | Current Period Change | 12,757.93 | 307.00 | 12,450.93 |
| | 2/1/10 | | Beginning Balance | | | 85,693.79 |
| | 2/4/10<br>159676 | PJ | GRANOFF WALKER FORLENZA PC - 159676 - FEB RENT | 13,496.60 | | |
| | 2/28/10<br>RJE2 | GENJ | To amortize rent concession | | 307.00 | |
| | | | Current Period Change | 13,496.60 | 307.00 | 13,189.60 |
| | 3/1/10 | | Beginning Balance | | | 98,883.39 |
| | 3/4/10<br>15606 | PJ | GRANOFF WALKER FORLENZA PC - 15606 - MARCH 2010 RENT | 13,496.60 | | |
| | 3/31/10<br>RJE2 | GENJ | To amortize rent concession | | 307.00 | |
| | 3/31/10<br>J/E 2BZ | GENJ | To allocate costs to AMTC | | 9,982.00 | |
| | | | Current Period Change | 13,496.60 | 10,289.00 | 3,207.60 |
| | 4/1/10 | | Beginning Balance | | | 102,090.99 |
| | 4/9/10<br>16086 | PJ | GRANOFF WALKER FORLENZA PC - 16086 - APRIL 2010 RENT | 13,496.60 | | |
| | 4/30/10<br>RJE2 | GENJ | To amortize rent concession | | 307.00 | |
| | | | Current Period Change | 13,496.60 | 307.00 | 13,189.60 |
| | 5/1/10 | | Beginning Balance | | | 115,280.59 |
| | 5/5/10<br>16123 | PJ | GRANOFF WALKER FORLENZA PC - 16123 - MAY 2010 RENT | 13,496.60 | | |
| | 5/31/10<br>RJE2 | GENJ | To amortize rent concession | | 307.00 | |
| | | | Current Period Change | 13,496.60 | 307.00 | 13,189.60 |
| | 6/1/10 | | Beginning Balance | | | 128,470.19 |
| | 6/3/10<br>16182 | PJ | GRANOFF WALKER FORLENZA PC - 16182 - RENT JUNE 2010 | 13,496.60 | | |
| | 6/30/10<br>RJE2 | GENJ | To amortize rent concession | | 307.00 | |
| | 6/30/10<br>AJE14 | GENJ | To write off rent concession on cancelled lease | | 14,145.00 | |
| | 6/30/10 | GENJ | TO ALLOCATE ADD'L COSTS TO | 108,506.00 | | |

6/22/11 at 14:44:38.76                                                                                       Page: 288

# Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 5250 (cont.) | J/E 2 BZ | | COSTS TO AMERITRANS | | | |
| | | | Current Period Change | 122,002.60 | 14,452.00 | 107,550.60 |
| | **6/30/10** | | **Ending Balance** | | | **236,020.79** |
| 5250.1<br>RENT EXPENSE - LI | 7/1/09 | | Beginning Balance | | | |
| | 7/10/09<br>154 | PJ | TRUE TYPE PRINTING CO. INC. - 154 - JULY 2009 | 4,151.39 | | |
| | | | Current Period Change | 4,151.39 | | 4,151.39 |
| | 8/1/09 | | Beginning Balance | | | 4,151.39 |
| | 8/11/09<br>155 | PJ | TRUE TYPE PRINTING CO. INC. - 155 - RENT AUG09 | 4,176.92 | | |
| | | | Current Period Change | 4,176.92 | | 4,176.92 |
| | 9/1/09 | | Beginning Balance | | | 8,328.31 |
| | 9/11/09<br>156 | PJ | TRUE TYPE PRINTING CO. INC. - 156 - SEPTEMBER RENT & ELECTRIC | 4,873.89 | | |
| | | | Current Period Change | 4,873.89 | | 4,873.89 |
| | 10/1/09 | | Beginning Balance | | | 13,202.20 |
| | 10/2/09<br>157 | PJ | TRUE TYPE PRINTING CO. INC. - 157 - OCTOBER 09 RENT | 4,286.09 | | |
| | | | Current Period Change | 4,286.09 | | 4,286.09 |
| | 11/1/09 | | Beginning Balance | | | 17,488.29 |
| | 11/13/09<br>158 | PJ | TRUE TYPE PRINTING CO. INC. - 158 - NOV 09 RENT | 4,301.11 | | |
| | | | Current Period Change | 4,301.11 | | 4,301.11 |
| | 12/1/09 | | Beginning Balance | | | 21,789.40 |
| | 12/16/09<br>159 | PJ | TRUE TYPE PRINTING CO. INC. - RENT - DEC 09 | 4,250.49 | | |
| | 12/16/09<br>160 | PJ | TRUE TYPE PRINTING CO. INC. - RENT - JANUARY 2010 | 4,255.96 | | |
| | | | Current Period Change | 8,506.45 | | 8,506.45 |
| | 1/1/10 | | Beginning Balance | | | 30,295.85 |
| | 2/1/10 | | Beginning Balance | | | 30,295.85 |
| | 2/17/10<br>161 | PJ | TRUE TYPE PRINTING CO. INC. - 161 - FEB 2010 RENT | 4,248.60 | | |
| | | | Current Period Change | 4,248.60 | | 4,248.60 |
| | 3/1/10 | | Beginning Balance | | | 34,544.45 |

6/22/11 at 14:44:38.80

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 5250.1 (cont.) | 3/26/10 162 | PJ | TRUE TYPE PRINTING CO. INC. - 162 - RENT MAR 2010 | 4,152.83 | | |
| | | | Current Period Change | 4,152.83 | | 4,152.83 |
| | 4/1/10 | | Beginning Balance | | | 38,697.28 |
| | 4/23/10 163 | PJ | TRUE TYPE PRINTING CO. INC. - 163 - APRIL 2010 RENT | 4,353.97 | | |
| | 4/23/10 164 | PJ | TRUE TYPE PRINTING CO. INC. - 164 - MAY 2010 RENT | 4,298.38 | | |
| | | | Current Period Change | 8,652.35 | | 8,652.35 |
| | 5/1/10 | | Beginning Balance | | | 47,349.63 |
| | 6/1/10 | | Beginning Balance | | | 47,349.63 |
| | 6/18/10 165 | PJ | TRUE TYPE PRINTING CO. INC. - 165 - JUNE RENT | 4,207.58 | | |
| | | | Current Period Change | 4,207.58 | | 4,207.58 |
| | 6/30/10 | | Ending Balance | | | 51,557.21 |
| 5251 Shared Office Expens | 7/1/09 | | Beginning Balance | | | |
| | 8/1/09 | | Beginning Balance | | | |
| | 8/4/09 15657 | PJ | GRANOFF WALKER FORLENZA PC - 15657 - SHARED EXPENSES | 4,953.11 | | |
| | | | Current Period Change | 4,953.11 | | 4,953.11 |
| | 9/1/09 | | Beginning Balance | | | 4,953.11 |
| | 9/8/09 15714 | PJ | GRANOFF WALKER FORLENZA PC - 15714 - SHARED EXPENSES & DISBURSEMENTS | 4,749.65 | | |
| | | | Current Period Change | 4,749.65 | | 4,749.65 |
| | 10/1/09 | | Beginning Balance | | | 9,702.76 |
| | 10/5/09 15754 | PJ | GRANOFF WALKER FORLENZA PC - 15754 - SHARED EXPENSES | 4,740.29 | | |
| | | | Current Period Change | 4,740.29 | | 4,740.29 |
| | 11/1/09 | | Beginning Balance | | | 14,443.05 |
| | 11/5/09 15811 | PJ | GRANOFF WALKER FORLENZA PC - 15811 - SHARED EXPENSES | 5,705.71 | | |
| | | | Current Period Change | 5,705.71 | | 5,705.71 |
| | 12/1/09 | | Beginning Balance | | | 20,148.76 |
| | 12/9/09 15866 | PJ | GRANOFF WALKER FORLENZA PC - 15866 | 4,940.66 | | |

6/22/11 at 14:44:38.84

Page: 290

## Elk Associates Funding Corporation
## General Ledger
## For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 5251 (cont.) | | | - SHARED EXPENSES & DISBURSEMENTS Current Period Change | 4,940.66 | | 4,940.66 |
| | 1/1/10 | | Beginning Balance | | | 25,089.42 |
| | 1/11/10 15920 | PJ | GRANOFF WALKER FORLENZA PC - 15920 - EXPENSES & DISBURSEMENTS Current Period Change | 4,968.30 4,968.30 | | 4,968.30 |
| | 2/1/10 | | Beginning Balance | | | 30,057.72 |
| | 2/4/10 159676 | PJ | GRANOFF WALKER FORLENZA PC - 159676 - EXPENSES & DISBURSEMENTS Current Period Change | 4,804.52 4,804.52 | | 4,804.52 |
| | 3/1/10 | | Beginning Balance | | | 34,862.24 |
| | 3/4/10 15606 | PJ | GRANOFF WALKER FORLENZA PC - 15606 - EXPENSES & DISBURSEMENTS Current Period Change | 4,667.42 4,667.42 | | 4,667.42 |
| | 4/1/10 | | Beginning Balance | | | 39,529.66 |
| | 4/9/10 16086 | PJ | GRANOFF WALKER FORLENZA PC - 16086 - SHARED OVERHEAD EXPENSES & DISBURSEMENTS - APRIL 2010 Current Period Change | 4,707.61 4,707.61 | | 4,707.61 |
| | 5/1/10 | | Beginning Balance | | | 44,237.27 |
| | 5/5/10 16123 | PJ | GRANOFF WALKER FORLENZA PC - 16123 - SHARED EXPENSES & DISBURSEMENTS Current Period Change | 4,688.76 4,688.76 | | 4,688.76 |
| | 6/1/10 | | Beginning Balance | | | 48,926.03 |
| | 6/3/10 16182 | PJ | GRANOFF WALKER FORLENZA PC - 16182 - SHARED EXPENSES & DISBURSEMENTS Current Period Change | 4,671.26 4,671.26 | | 4,671.26 |
| | 6/30/10 | | Ending Balance | | | 53,597.29 |
| 5300 Accounting | 7/1/09 | | Beginning Balance | | | |
| | 7/1/09 J/E 2W2 | GENJ | To accrue year end tax return fees | | 21,250.00 | |
| | 7/1/09 J/E 2W2 | GENJ | To accrue accounting fees | | 1,100.00 | |

6/22/11 at 14:44:38.88                                                                                    Page: 291

# Elk Associates Funding Corporation
## General Ledger
## For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 5300 (cont.) | 7/10/09<br>071009 | PJ | STEPHEN H.<br>TARNOFSKY CPA -<br>071009 | 6,600.00 | | |
| | 7/27/09<br>072709 | PJ | STEPHEN H.<br>TARNOFSKY CPA -<br>072709 | 8,800.00 | | |
| | 7/31/09<br>J/E 2W2 | GENJ | To accrue year end tax<br>return fees | 23,325.00 | | |
| | | | Current Period Change | 38,725.00 | 22,350.00 | 16,375.00 |
| | 8/1/09 | | Beginning Balance | | | 16,375.00 |
| | 8/1/09<br>J/E 2W2 | GENJ | To accrue year end tax<br>return fees | | 23,325.00 | |
| | 8/12/09<br>081209 | PJ | STEPHEN H.<br>TARNOFSKY CPA -<br>081209 | 8,800.00 | | |
| | 8/24/09<br>082409 | PJ | STEPHEN H.<br>TARNOFSKY CPA -<br>082409 | 7,700.00 | | |
| | 8/31/09<br>J/E 2 W2 | GENJ | TO ACCRUE YEAR<br>END TAX RETURN<br>FEES | 25,300.00 | | |
| | | | Current Period Change | 41,800.00 | 23,325.00 | 18,475.00 |
| | 9/1/09 | | Beginning Balance | | | 34,850.00 |
| | 9/1/09<br>J/E 2 W2 | GENJ | TO ACCRUE YEAR<br>END TAX RETURN<br>FEES | | 25,300.00 | |
| | 9/7/09<br>090709 | PJ | STEPHEN H.<br>TARNOFSKY CPA -<br>090709 | 8,800.00 | | |
| | 9/22/09<br>092209 | PJ | STEPHEN H.<br>TARNOFSKY CPA -<br>092209 | 7,700.00 | | |
| | 9/29/09<br>092909 | PJ | STEPHEN H.<br>TARNOFSKY CPA -<br>092909 | 7,700.00 | | |
| | 9/30/09<br>J/E 2W2 | GENJ | To accrue year end Tax<br>Return fees | 27,275.00 | | |
| | 9/30/09<br>J/E 2BZ1 | GENJ | To allocate additional<br>costs to Ameritrans | | 6,414.00 | |
| | | | Current Period Change | 51,475.00 | 31,714.00 | 19,761.00 |
| | 10/1/09 | | Beginning Balance | | | 54,611.00 |
| | 10/1/09<br>J/E 2W2 | GENJ | To accrue year end Tax<br>Return fees | | 27,275.00 | |
| | 10/23/09<br>102309 | PJ | STEPHEN H.<br>TARNOFSKY CPA -<br>102309 | 11,000.00 | | |
| | 10/31/09<br>103109 | PJ | STEPHEN H.<br>TARNOFSKY CPA -<br>103109 | 4,400.00 | | |
| | 10/31/09<br>J/E 2W2 | GENJ | To accrue year end tax<br>return fees | 29,250.00 | | |
| | | | Current Period Change | 44,650.00 | 27,275.00 | 17,375.00 |
| | 11/1/09 | | Beginning Balance | | | 71,986.00 |
| | 11/1/09<br>J/E 2W2 | GENJ | To accrue year end tax<br>return fees | | 29,250.00 | |

# Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 5300 (cont.) | 11/12/09<br>111209 | PJ | STEPHEN H. TARNOFSKY CPA - 111209 | 9,900.00 | | |
| | 11/30/09<br>113009 | PJ | STEPHEN H. TARNOFSKY CPA - 113009 | 5,500.00 | | |
| | 11/30/09<br>J/E 2W2 | GENJ | To accrue year end tax return fees | 31,225.00 | | |
| | | | Current Period Change | 46,625.00 | 29,250.00 | 17,375.00 |
| | 12/1/09 | | Beginning Balance | | | 89,361.00 |
| | 12/1/09<br>J/E 2W2 | GENJ | To accrue year end tax return fees | | 31,225.00 | |
| | 12/30/09<br>123009 | PJ | STEPHEN H. TARNOFSKY CPA - 123009 | 13,200.00 | | |
| | 12/31/09<br>J/E 2W2 | GENJ | To accrue year end tax return fees | 33,200.00 | | |
| | 12/31/09<br>J/E 2 BZ | GENJ | TO ALLOCATE ADD'L COSTS TO AMERITRANS | | 6,689.00 | |
| | | | Current Period Change | 46,400.00 | 37,914.00 | 8,486.00 |
| | 1/1/10 | | Beginning Balance | | | 97,847.00 |
| | 1/1/10<br>J/E 2W2 | GENJ | To accrue year end tax return fees | | 33,200.00 | |
| | 1/25/10<br>012510 | PJ | STEPHEN H. TARNOFSKY CPA - 012510 | 14,300.00 | | |
| | 1/31/10<br>013110 | PJ | STEPHEN H. TARNOFSKY CPA - 013110 | 5,500.00 | | |
| | 1/31/10<br>J/E 2W2 | GENJ | To accrue year end tax return fees | 11,400.00 | | |
| | | | Current Period Change | 31,200.00 | 33,200.00 | -2,000.00 |
| | 2/1/10 | | Beginning Balance | | | 95,847.00 |
| | 2/1/10<br>J/E 2W2 | GENJ | To accrue year end tax return fees | | 11,400.00 | |
| | 2/8/10<br>020810 | PJ | STEPHEN H. TARNOFSKY CPA - 020810 | 4,400.00 | | |
| | 2/12/10<br>18177 | PJ | TANTON AND COMPANY LLP - 18177 - 2009 TAX RETURNS FEE | 6,500.00 | | |
| | 2/12/10<br>18179 | PJ | TANTON AND COMPANY LLP - 18179 - 2009 TAX RETURNS FEE - EAF HOLDING CORP. | 600.00 | | |
| | 2/19/10<br>021910 | PJ | STEPHEN H. TARNOFSKY CPA - 021910 | 8,800.00 | | |
| | 2/28/10<br>J/E 2W2 | GENJ | To accrue year end tax return fees | 10,400.00 | | |
| | | | Current Period Change | 30,700.00 | 11,400.00 | 19,300.00 |
| | 3/1/10 | | Beginning Balance | | | 115,147.00 |

6/22/11 at 14:44:38.96

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID / Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 5300 (cont.) | 3/1/10 J/E 2W2 | GENJ | To accrue year end tax return fees | | 10,400.00 | |
| | 3/11/10 031110 | PJ | STEPHEN H. TARNOFSKY CPA - 031110 | 6,600.00 | | |
| | 3/31/10 J/E 2W2 | GENJ | To accrue year end tax return fees | 11,700.00 | | |
| | 3/31/10 J/E 2W2 | GENJ | To accrue accounting fees | 8,800.00 | | |
| | 3/31/10 J/E 2BZ | GENJ | To allocate costs to AMTC | | 1,816.00 | |
| | | | Current Period Change | 27,100.00 | 12,216.00 | 14,884.00 |
| | 4/1/10 | | Beginning Balance | | | 130,031.00 |
| | 4/1/10 J/E 2W2 | GENJ | To accrue accounting fees | | 8,800.00 | |
| | 4/1/10 J/E 2W2 | GENJ | To accrue year end tax return fees | | 11,700.00 | |
| | 4/5/10 040510 | PJ | STEPHEN H. TARNOFSKY CPA - 040510 | 8,800.00 | | |
| | 4/19/10 041910 | PJ | STEPHEN H. TARNOFSKY CPA - 04/19/10 | 8,800.00 | | |
| | 4/30/10 043010 | PJ | STEPHEN H. TARNOFSKY CPA - 04/30/10 | 8,800.00 | | |
| | 4/30/10 J/E 2W2 | GENJ | To accrue year end tax return fees | 13,000.00 | | |
| | | | Current Period Change | 39,400.00 | 20,500.00 | 18,900.00 |
| | 5/1/10 | | Beginning Balance | | | 148,931.00 |
| | 5/1/10 J/E 2W2 | GENJ | To accrue year end tax return fees | | 13,000.00 | |
| | 5/14/10 051410 | PJ | STEPHEN H. TARNOFSKY CPA - 051410 | 6,600.00 | | |
| | 5/27/10 052710 | PJ | STEPHEN H. TARNOFSKY CPA - 052710 | 7,700.00 | | |
| | 5/31/10 J/E 2W2 | GENJ | To accrue year end tax return fees | 14,300.00 | | |
| | | | Current Period Change | 28,600.00 | 13,000.00 | 15,600.00 |
| | 6/1/10 | | Beginning Balance | | | 164,531.00 |
| | 6/1/10 J/E 2W2 | GENJ | To accrue year end tax return fees | | 14,300.00 | |
| | 6/10/10 061010 | PJ | STEPHEN H. TARNOFSKY CPA - 061010 | 6,600.00 | | |
| | 6/25/10 062510 | PJ | STEPHEN H. TARNOFSKY CPA - 062510 | 8,800.00 | | |
| | 6/30/10 J/E 2W2 | GENJ | To accrue year end tax return fees | 15,600.00 | | |
| | 6/30/10 J/E 2W2 | GENJ | To accrue accounting fees | 1,100.00 | | |
| | 6/30/10 J/E 2 BZ | GENJ | TO ALLOCATE ADD'L COSTS TO AMERITRANS | | 18,226.00 | |

6/22/11 at 14:44:39.01

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 5300 (cont.) | | | Current Period Change | 32,100.00 | 32,526.00 | -426.00 |
| | 6/30/10 | | Ending Balance | | | 164,105.00 |
| | | | | | | |
| 5300.2<br>ACCOUNTING - SAR | 7/1/09 | | Beginning Balance | | | |
| | 7/1/09<br>J/E 2W2 | GENJ | To accrue Sarbanes fees | | 2,007.54 | |
| | 7/10/09<br>A206 | PJ | CLAREWOOD CONSULTING LLC - A206 7/09 | 10,000.00 | | |
| | 7/10/09<br>A301 | PJ | CLAREWOOD CONSULTING LLC - A301 - 2/24/09 - 6/30/09 EXPENSES | 676.29 | | |
| | 7/10/09<br>IT901 | PJ | CLAREWOOD CONSULTING LLC - IT901 2/1/09 - 3/31/09 | 1,331.25 | | |
| | 7/31/09<br>J/E 2W2 | GENJ | To accrue Sarbanes fees | 1,302.09 | | |
| | | | Current Period Change | 13,309.63 | 2,007.54 | 11,302.09 |
| | 8/1/09 | | Beginning Balance | | | 11,302.09 |
| | 8/1/09<br>A207 | PJ | CLAREWOOD CONSULTING LLC - AUGUST 09 | 10,000.00 | | |
| | 8/1/09<br>J/E 2W2 | GENJ | To accrue Sarbanes fees | | 1,302.09 | |
| | | | Current Period Change | 10,000.00 | 1,302.09 | 8,697.91 |
| | 9/1/09 | | Beginning Balance | | | 20,000.00 |
| | 9/1/09<br>A208 | PJ | CLAREWOOD CONSULTING LLC - A208 - SEPTEMBER 09 | 10,000.00 | | |
| | 9/30/09<br>J/E 2BZ1 | GENJ | To allocate additional costs to Ameritrans | | 3,153.00 | |
| | | | Current Period Change | 10,000.00 | 3,153.00 | 6,847.00 |
| | 10/1/09 | | Beginning Balance | | | 26,847.00 |
| | 10/1/09<br>A209 | PJ | CLAREWOOD CONSULTING LLC - A209 - OCT 09 | 10,000.00 | | |
| | 10/31/09<br>J/E 2W2 | GENJ | To accrue for Oct 2009 | 662.78 | | |
| | | | Current Period Change | 10,662.78 | | 10,662.78 |
| | 11/1/09 | | Beginning Balance | | | 37,509.78 |
| | 11/1/09<br>J/E 2W2 | GENJ | To accrue for Oct 2009 | | 662.78 | |
| | 11/6/09<br>A302 | PJ | CLAREWOOD CONSULTING LLC - A302 - EXPENSES 7/1/09 - 10/31/09 | 662.78 | | |
| | 11/6/09<br>A210 | PJ | CLAREWOOD CONSULTING LLC - A210 - NOV 2009 | 6,620.00 | | |
| | 11/23/09<br>IT 902 | PJ | CLAREWOOD CONSULTING LLC - IT 902 | 2,921.14 | | |

## Elk Associates Funding Corporation
## General Ledger
## For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID / Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 5300.2 (cont.) | | | 902 Current Period Change | 10,203.92 | 662.78 | 9,541.14 |
| | 12/1/09 | | Beginning Balance | | | 47,050.92 |
| | 12/31/09 J/E 2 BZ | GENJ | TO ALLOCATE ADD'L COSTS TO AMERITRANS | | 2,776.00 | |
| | | | Current Period Change | | 2,776.00 | -2,776.00 |
| | 1/1/10 | | Beginning Balance | | | 44,274.92 |
| | 1/4/10 A1001 | PJ | CLAREWOOD CONSULTING LLC - A1001 - JANUARY 2010 | 19,155.00 | | |
| | | | Current Period Change | 19,155.00 | | 19,155.00 |
| | 2/1/10 | | Beginning Balance | | | 63,429.92 |
| | 2/3/10 A1002 | PJ | CLAREWOOD CONSULTING LLC - A1002 - FEB 2010 | 19,155.00 | | |
| | | | Current Period Change | 19,155.00 | | 19,155.00 |
| | 3/1/10 | | Beginning Balance | | | 82,584.92 |
| | 3/26/10 A1003 | PJ | CLAREWOOD CONSULTING LLC - MARCH BILLING FOR PHASE TWO Q2-Q4 | 10,000.00 | | |
| | 3/31/10 J/E 2BZ | GENJ | To allocate costs to AMTC | | 6,986.00 | |
| | | | Current Period Change | 10,000.00 | 6,986.00 | 3,014.00 |
| | 4/1/10 | | Beginning Balance | | | 85,598.92 |
| | 4/6/10 A1004 | PJ | CLAREWOOD CONSULTING LLC - A1004 - APRIL 2010 | 10,000.00 | | |
| | | | Current Period Change | 10,000.00 | | 10,000.00 |
| | 5/1/10 | | Beginning Balance | | | 95,598.92 |
| | 5/5/10 A1005 | PJ | CLAREWOOD CONSULTING LLC - A1005 - MAY 2010 | 10,000.00 | | |
| | | | Current Period Change | 10,000.00 | | 10,000.00 |
| | 6/1/10 | | Beginning Balance | | | 105,598.92 |
| | 6/30/10 J/E 2W2 | GENJ | To accrue Sarbanes fees | 27,465.00 | | |
| | 6/30/10 J/E 2 BZ | GENJ | TO ALLOCATE ADD'L COSTS TO AMERITRANS | | 133,064.00 | |
| | | | Current Period Change | 27,465.00 | 133,064.00 | -105,599.00 |
| | **6/30/10** | | **Ending Balance** | | | **-0.08** |
| 5300.30 SOX COMPLIANCE | 7/1/09 | | Beginning Balance | | | |
| | 8/1/09 | | Beginning Balance | | | |

6/22/11 at 14:44:39.09

## Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 5300.30 (cont.) | 8/1/09<br>314 | PJ | FAIRVIEW INVESTMENT SERVICES - COMPLIANCE SERVICES 1/2 JULY 09 | 1,302.09 | | |
| | 8/31/09<br>326 | PJ | FAIRVIEW INVESTMENT SERVICES - 326 - COMPLIANCE SERVICES 1/2 AUGUST 09 | 2,604.17 | | |
| | | | Current Period Change | 3,906.26 | | 3,906.26 |
| | 9/1/09 | | Beginning Balance | | | 3,906.26 |
| | 9/30/09<br>341 | PJ | FAIRVIEW INVESTMENT SERVICES - 1/2 COMPLIANCE SERVICES - SEPTEMBER 2009 | 2,604.16 | | |
| | 9/30/09<br>J/E 2BZ1 | GENJ | To allocate additional costs to Ameritrans | 5,142.00 | | |
| | | | Current Period Change | 7,746.16 | | 7,746.16 |
| | 10/1/09 | | Beginning Balance | | | 11,652.42 |
| | 10/31/09<br>356 | PJ | FAIRVIEW INVESTMENT SERVICES - 356 - 1/2 COMPLIANCE SERVICES - OCT 09 | 2,604.17 | | |
| | | | Current Period Change | 2,604.17 | | 2,604.17 |
| | 11/1/09 | | Beginning Balance | | | 14,256.59 |
| | 11/30/09<br>372 | PJ | FAIRVIEW INVESTMENT SERVICES - 372 - 1/2 COMPLIANCE SERVICES - NOV 09 | 2,604.17 | | |
| | | | Current Period Change | 2,604.17 | | 2,604.17 |
| | 12/1/09 | | Beginning Balance | | | 16,860.76 |
| | 12/31/09<br>389 | PJ | FAIRVIEW INVESTMENT SERVICES - 389 - 1/2 COMPLIANCE SERVICES - DEC 09 | 2,604.16 | | |
| | 12/31/09<br>J/E 2 BZ | GENJ | TO ALLOCATE ADD'L COSTS TO AMERITRANS | 5,798.00 | | |
| | | | Current Period Change | 8,402.16 | | 8,402.16 |
| | 1/1/10 | | Beginning Balance | | | 25,262.92 |
| | 1/28/10<br>407 | PJ | FAIRVIEW INVESTMENT SERVICES - 407 - 1/2 COMPLIANCE SERVICES - JAN 2010 | 2,604.17 | | |

6/22/11 at 14:44:39.12

# Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 5300.30 (cont.) | | | Current Period Change | 2,604.17 | | 2,604.17 |
| | 2/1/10 | | Beginning Balance | | | 27,867.09 |
| | 2/28/10<br>410 | PJ | FAIRVIEW INVESTMENT SERVICES - 410 - 1/2 COMPLIANCE SERVICES - FEB 2010 | 2,604.17 | | |
| | | | Current Period Change | 2,604.17 | | 2,604.17 |
| | 3/1/10 | | Beginning Balance | | | 30,471.26 |
| | 3/31/10<br>430 | PJ | FAIRVIEW INVESTMENT SERVICES - 430 - 1/2 COMPLIANCE SERVICES - MARCH 2010 | 2,604.17 | | |
| | 3/31/10<br>J/E 2BZ | GENJ | To allocate costs to AMTC | 5,391.00 | | |
| | | | Current Period Change | 7,995.17 | | 7,995.17 |
| | 4/1/10 | | Beginning Balance | | | 38,466.43 |
| | 4/30/10<br>444 | PJ | FAIRVIEW INVESTMENT SERVICES - 444 - 1/2 COMPLIANCE SERVICES - APR 2010 | 2,604.17 | | |
| | | | Current Period Change | 2,604.17 | | 2,604.17 |
| | 5/1/10 | | Beginning Balance | | | 41,070.60 |
| | 5/31/10<br>463 | PJ | FAIRVIEW INVESTMENT SERVICES - 463 - 1/2 COMPLIANCE SERVICES - MAY 2010 | 2,604.17 | | |
| | | | Current Period Change | 2,604.17 | | 2,604.17 |
| | 6/1/10 | | Beginning Balance | | | 43,674.77 |
| | 6/30/10<br>479 | PJ | FAIRVIEW INVESTMENT SERVICES - 479 - 1/2 COMPLIANCE SEVICES - JUNE 2010 | 2,604.16 | | |
| | 6/30/10<br>J/E 2 BZ | GENJ | TO ALLOCATE ADD'L COSTS TO AMERITRANS | | 46,279.00 | |
| | | | Current Period Change | 2,604.16 | 46,279.00 | -43,674.84 |
| | **6/30/10** | | **Ending Balance** | | | **-0.07** |
| 5300.40<br>ENTERPRISE RISK | 7/1/09 | | Beginning Balance | | | |
| | 8/1/09 | | Beginning Balance | | | |
| | 9/1/09 | | Beginning Balance | | | |
| | 10/1/09 | | Beginning Balance | | | |

6/22/11 at 14:44:39.15

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID / Account Description | Date / Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 5300.40 (cont.) | 11/1/09 | | Beginning Balance | | | |
| | 12/1/09 | | Beginning Balance | | | |
| | 1/1/10 | | Beginning Balance | | | |
| | 2/1/10 | | Beginning Balance | | | |
| | 3/1/10 | | Beginning Balance | | | |
| | 4/1/10 | | Beginning Balance | | | |
| | 5/1/10 | | Beginning Balance | | | |
| | 5/21/10 A2001 | PJ | CLAREWOOD CONSULTING LLC - A2001 - 1/2 FEES PER ENGAGEMENT LETTER DATED 5/6/10 | 6,943.75 | | |
| | | | Current Period Change | 6,943.75 | | 6,943.75 |
| | 6/1/10 | | Beginning Balance | | | 6,943.75 |
| | 6/8/10 A2002 | PJ | CLAREWOOD CONSULTING LLC - A2002 - ENTERPRISE RISK MANAGEMENT FEES - JUNE 2010 | 13,887.50 | | |
| | 6/30/10 J/E 2 BZ | GENJ | TO ALLOCATE ADD'L COSTS TO AMERITRANS | 1,739.00 | | |
| | | | Current Period Change | 15,626.50 | | 15,626.50 |
| | 6/30/10 | | **Ending Balance** | | | **22,570.25** |
| 5305 Audit Fees | 7/1/09 | | Beginning Balance | | | |
| | 7/1/09 J/E 2W2 | GENJ | To accrue annual and quarterly audit fees | | 131,000.00 | |
| | 7/1/09 J/E 2W4 | GENJ | To adjust RSSM accrual to actual | 33,500.00 | | |
| | 7/15/09 JUNE 09 | PJ | ROSEN SEYMOUR SHAPSS - JUNE 09 | 11,789.30 | | |
| | 7/31/09 J/E 2W2 | GENJ | To accrue annual & quarterly audit fees | 105,000.00 | | |
| | | | Current Period Change | 150,289.30 | 131,000.00 | 19,289.30 |
| | 8/1/09 | | Beginning Balance | | | 19,289.30 |
| | 8/1/09 J/E 2W2 | GENJ | To accrue annual & quarterly audit fees | | 105,000.00 | |
| | 8/20/09 JULY 09 | PJ | ROSEN SEYMOUR SHAPSS - JULY 09 | 6,526.50 | | |
| | 8/31/09 J/E 2 W2 | GENJ | TO ACCRUE ANNUAL AND QUARTERLY AUDIT FEES | 119,000.00 | | |
| | | | Current Period Change | 125,526.50 | 105,000.00 | 20,526.50 |
| | 9/1/09 | | Beginning Balance | | | 39,815.80 |
| | 9/1/09 | GENJ | TO ACCRUE ANNUAL AND QUARTERLY | | 119,000.00 | |

6/22/11 at 14:44:39.20

## Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 5305 (cont.) | J/E 2 W2 | | AND QUARTERLY AUDIT FEES | | | |
| | 9/10/09<br>AUG 09 | PJ | ROSEN SEYMOUR SHAPSS - AUG 09 | 45,121.75 | | |
| | 9/30/09<br>J/E 2W2 | GENJ | To accrue annual and quarterly audit fees | 73,718.00 | | |
| | 9/30/09<br>J/E 2BZ1 | GENJ | To allocate additional costs to Ameritrans | | 4,168.00 | |
| | | | Current Period Change | 118,839.75 | 123,168.00 | -4,328.25 |
| | 10/1/09 | | Beginning Balance | | | 35,487.55 |
| | 10/1/09<br>J/E 2W2 | GENJ | To accrue annual and quarterly audit fees | | 73,718.00 | |
| | 10/5/09<br>SEPT 09 | PJ | ROSEN SEYMOUR SHAPSS - SEPT 09 | 31,718.00 | | |
| | 10/31/09<br>J/E 2W2 | GENJ | To accrue annual and quarterly audit fees | 56,000.00 | | |
| | | | Current Period Change | 87,718.00 | 73,718.00 | 14,000.00 |
| | 11/1/09 | | Beginning Balance | | | 49,487.55 |
| | 11/1/09<br>J/E 2W2 | GENJ | To accrue annual and quarterly audit fees | | 56,000.00 | |
| | 11/16/09<br>OCT 09 | PJ | ROSEN SEYMOUR SHAPSS - OCTOBER 09 | 28,483.00 | | |
| | 11/30/09<br>J/E 2W2 | GENJ | To accrue annual & quarterly audit fees | 49,000.00 | | |
| | | | Current Period Change | 77,483.00 | 56,000.00 | 21,483.00 |
| | 12/1/09 | | Beginning Balance | | | 70,970.55 |
| | 12/1/09<br>J/E 2W2 | GENJ | To accrue annual & quarterly audit fees | | 49,000.00 | |
| | 12/11/09<br>NOV 09 | PJ | ROSEN SEYMOUR SHAPSS - NOV 09 | 14,385.00 | | |
| | 12/31/09<br>J/E 2W2 | GENJ | To accrue annual & quarterly audit fees | 63,000.00 | | |
| | 12/31/09<br>J/E 2 BZ | GENJ | TO ALLOCATE ADD'L COSTS TO AMERITRANS | | 8,058.00 | |
| | | | Current Period Change | 77,385.00 | 57,058.00 | 20,327.00 |
| | 1/1/10 | | Beginning Balance | | | 91,297.55 |
| | 1/1/10<br>J/E 2W2 | GENJ | To accrue annual & quarterly audit fees | | 63,000.00 | |
| | 1/31/10<br>J/E 2W2 | GENJ | To accrue annual & quarterly audit fees | 75,489.00 | | |
| | | | Current Period Change | 75,489.00 | 63,000.00 | 12,489.00 |
| | 2/1/10 | | Beginning Balance | | | 103,786.55 |
| | 2/1/10<br>J/E 2W2 | GENJ | To accrue annual & quarterly audit fees | | 75,489.00 | |
| | 2/15/10<br>JAN 2010 | PJ | ROSEN SEYMOUR SHAPSS - JAN 2010 | 19,469.00 | | |
| | 2/28/10<br>J/E 2W2 | GENJ | To accrue Annual and quarterly audit fees | 70,000.00 | | |
| | | | Current Period Change | 89,469.00 | 75,489.00 | 13,980.00 |
| | 3/1/10 | | Beginning Balance | | | 117,766.55 |

6/22/11 at 14:44:39.24

**Elk Associates Funding Corporation**
**General Ledger**
**For the Period From Jul 1, 2009 to Jun 30, 2010**

Page: 300

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 5305 (cont.) | 3/1/10<br>J/E 2W2 | GENJ | To accrue Annual and<br>quarterly audit fees | | 70,000.00 | |
| | 3/15/10<br>FEB 2010 | PJ | ROSEN SEYMOUR<br>SHAPSS - FEB 2010 | 12,049.00 | | |
| | 3/31/10<br>J/E 2W2 | GENJ | To accrue Annual &<br>quarterly audit fees | 84,000.00 | | |
| | 3/31/10<br>J/E 2BZ | GENJ | To allocate costs to<br>AMTC | | 8,231.00 | |
| | | | Current Period Change | 96,049.00 | 78,231.00 | 17,818.00 |
| | 4/1/10 | | Beginning Balance | | | 135,584.55 |
| | 4/1/10<br>J/E 2W2 | GENJ | To accrue Annual &<br>quarterly audit fees | | 84,000.00 | |
| | 4/12/10<br>MAR 2010 | PJ | ROSEN SEYMOUR<br>SHAPSS - MARCH<br>2010 | 6,747.25 | | |
| | 4/30/10<br>J/E 2W2 | GENJ | To accrue annual &<br>quarterly audit fees | 70,000.00 | | |
| | | | Current Period Change | 76,747.25 | 84,000.00 | -7,252.75 |
| | 5/1/10 | | Beginning Balance | | | 128,331.80 |
| | 5/1/10<br>J/E 2W2 | GENJ | To accrue annual &<br>quarterly audit fees | | 70,000.00 | |
| | 5/12/10<br>APRIL 201 | PJ | ROSEN SEYMOUR<br>SHAPSS - APRIL 2010 | 32,623.05 | | |
| | 5/31/10<br>J/E 2W2 | GENJ | To accrue annual &<br>quarterly audit fees | 77,000.00 | | |
| | | | Current Period Change | 109,623.05 | 70,000.00 | 39,623.05 |
| | 6/1/10 | | Beginning Balance | | | 167,954.85 |
| | 6/1/10<br>J/E 2W2 | GENJ | To accrue annual &<br>quarterly audit fees | | 77,000.00 | |
| | 6/30/10<br>J/E 2W2 | GENJ | To accrue annual and<br>quarterly audit fees | 84,000.00 | | |
| | 6/30/10<br>J/E 2 BZ | GENJ | TO ALLOCATE ADD'L<br>COSTS TO<br>AMERITRANS | | 16,163.00 | |
| | | | Current Period Change | 84,000.00 | 93,163.00 | -9,163.00 |
| | **6/30/10** | | **Ending Balance** | | | **158,791.85** |
| 5310<br>Legal - Related | 7/1/09 | | Beginning Balance | | | |
| | 8/1/09 | | Beginning Balance | | | |
| | 8/11/09<br>11708 | PJ | GRANOFF WALKER<br>FORLENZA PC - 11708<br>- MARIO REESE -<br>WHITER THAN SNOW | 240.00 | | |
| | 8/11/09<br>11705 | PJ | GRANOFF WALKER<br>FORLENZA PC - 11705<br>- MI TREN<br>GREENLAWN | 65.00 | | |
| | 8/31/09<br>AJE4 | GENJ | RECLASS OLS OTHER<br>AMOUNTS | | 2,500.00 | |
| | | | Current Period Change | 305.00 | 2,500.00 | -2,195.00 |
| | 9/1/09 | | Beginning Balance | | | -2,195.00 |

6/22/11 at 14:44:39.27

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID / Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 5310 (cont.) | 9/16/09 11717 | PJ | GRANOFF WALKER FORLENZA PC - 11717 - MI TRN GREENLAWN | 15.00 | | |
| | 9/16/09 11713 | PJ | GRANOFF WALKER FORLENZA PC - 11713 - MI TREN GREENLAWN | 15.00 | | |
| | 9/30/09 J/E 2BZ1 | GENJ | To allocate additional costs to Ameritrans | 228.00 | | |
| | | | Current Period Change | 258.00 | | 258.00 |
| | 10/1/09 | | Beginning Balance | | | -1,937.00 |
| | 10/15/09 11724 - MI | PJ | GRANOFF WALKER FORLENZA PC - 11724 - MI TREN GREENLAWN | 292.50 | | |
| | 10/31/09 J/E 2W2 | GENJ | To accrue for Oct 2009 | 2,945.00 | | |
| | | | Current Period Change | 3,237.50 | | 3,237.50 |
| | 11/1/09 | | Beginning Balance | | | 1,300.50 |
| | 11/1/09 J/E 2W2 | GENJ | To accrue for Oct 2009 | | 2,945.00 | |
| | 11/19/09 11734 SEA | PJ | GRANOFF WALKER FORLENZA PC - 11734 - SEALMAX INC. | 3,440.00 | | |
| | 11/19/09 11735 E&Y | PJ | GRANOFF WALKER FORLENZA PC - 11735 - E&Y GENERAL CONSTRUCTION | 2,945.00 | | |
| | | | Current Period Change | 6,385.00 | 2,945.00 | 3,440.00 |
| | 12/1/09 | | Beginning Balance | | | 4,740.50 |
| | 12/31/09 J/E 2 BZ | GENJ | TO ALLOCATE ADD'L COSTS TO AMERITRANS | | 761.00 | |
| | | | Current Period Change | | 761.00 | -761.00 |
| | 1/1/10 | | Beginning Balance | | | 3,979.50 |
| | 1/15/10 11746 | PJ | GRANOFF WALKER FORLENZA PC - 11746 - SEALMAX FORECLOSURE | 870.00 | | |
| | 1/31/10 J/E 2W2 | GENJ | To accrue GWF invoice | 2,855.00 | | |
| | | | Current Period Change | 3,725.00 | | 3,725.00 |
| | 2/1/10 | | Beginning Balance | | | 7,704.50 |
| | 2/1/10 J/E 2W2 | GENJ | To accrue GWF invoice | | 2,855.00 | |
| | 2/12/10 11756 SEA | PJ | GRANOFF WALKER FORLENZA PC - 11756 - SEALMAX FORECLOSURE | 455.50 | | |
| | 2/12/10 11757 - E& | PJ | GRANOFF WALKER FORLENZA PC - 11757 - E&Y GENERAL CONSTRUCTION CO | 2,026.00 | | |

6/22/11 at 14:44:39.32

Page: 302

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| | | | CONSTRUCTION CO INC. - FORECLOSURE | | | |
| 5310 (cont.) | 2/16/10 48780 E&Y | PJ | GRANOFF WALKER FORLENZA PC - 48780 - 12/31/09 - E&Y GENERAL CONSTRUCTION CO INC. - FORECLOSURE | 2,855.00 | | |
| | | | Current Period Change | 5,336.50 | 2,855.00 | 2,481.50 |
| | 3/1/10 | | Beginning Balance | | | 10,186.00 |
| | 3/16/10 11764 - SE | PJ | GRANOFF WALKER FORLENZA PC - 11764 - SEALMAX INC. FORECLOSURE | 409.50 | | |
| | 3/31/10 AJE4 | GENJ | Reclass OLS other amount receipts | | 322.50 | |
| | 3/31/10 J/E 2BZ | GENJ | To allocate costs to AMTC | | 884.00 | |
| | | | Current Period Change | 409.50 | 1,206.50 | -797.00 |
| | 4/1/10 | | Beginning Balance | | | 9,389.00 |
| | 5/1/10 | | Beginning Balance | | | 9,389.00 |
| | 6/1/10 | | Beginning Balance | | | 9,389.00 |
| | 6/3/10 11772 E&Y | PJ | GRANOFF WALKER FORLENZA PC - 11772 4/19/10 - E&Y GENERAL CONSTRUCTION FORECLOSURE | 1,963.50 | | |
| | 6/3/10 11771 SEA | PJ | GRANOFF WALKER FORLENZA PC - 11771 4/19/10 - SEALMAX INC. FORECLOSURE | 725.50 | | |
| | 6/30/10 J/E 2 BZ | GENJ | TO ALLOCATE ADD'L COSTS TO AMERITRANS | | 1,112.00 | |
| | | | Current Period Change | 2,689.00 | 1,112.00 | 1,577.00 |
| | 6/30/10 | | Ending Balance | | | 10,966.00 |
| 5320 Legal - Non-related | 7/1/09 | | Beginning Balance | | | |
| | 7/1/09 J/E 2W2 | GENJ | To accrue | | 3,902.11 | |
| | 7/9/09 070809 | PJ | STURSBERG AND ASSOCIATES LLC - 070809 | 3,902.11 | | |
| | 7/30/09 JULY 09 | PJ | STURSBERG AND ASSOCIATES LLC - JULY 09 | 5,305.84 | | |
| | | | Current Period Change | 9,207.95 | 3,902.11 | 5,305.84 |
| | 8/1/09 | | Beginning Balance | | | 5,305.84 |
| | 8/31/09 J/E 2 W2 | GENJ | TO ACCRUE | 1,875.85 | | |

6/22/11 at 14:44:39.35                                                                                   Page: 303

## Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 5320 (cont.) | | | Current Period Change | 1,875.85 | | 1,875.85 |
| | 9/1/09 | | Beginning Balance | | | 7,181.69 |
| | 9/1/09<br>J/E 2 W2 | GENJ | TO ACCRUE | | 1,875.85 | |
| | 9/2/09<br>0902D01 | CRJ | MISCELLANEOUS DEPOSIT - MCCARTER & ENGLISH LLP RETAINER REFUND | | 4,944.67 | |
| | 9/3/09<br>AUG 09 | PJ | STURSBERG AND ASSOCIATES LLC - AUGUST 09 | 1,875.85 | | |
| | 9/30/09<br>SEP 09 | PJ | STURSBERG AND ASSOCIATES LLC - SEP 09 | 3,294.90 | | |
| | 9/30/09<br>J/E 2BZ1 | GENJ | To allocate additional costs to Ameritrans | | 1,484.00 | |
| | | | Current Period Change | 5,170.75 | 8,304.52 | -3,133.77 |
| | 10/1/09 | | Beginning Balance | | | 4,047.92 |
| | 10/31/09<br>J/E 2W2 | GENJ | To accrue for Oct 2009 | 3,919.07 | | |
| | | | Current Period Change | 3,919.07 | | 3,919.07 |
| | 11/1/09 | | Beginning Balance | | | 7,966.99 |
| | 11/1/09<br>J/E 2W2 | GENJ | To accrue for Oct 2009 | | 3,919.07 | |
| | 11/6/09<br>OCT 09 | PJ | STURSBERG AND ASSOCIATES LLC - OCT 09 | 3,919.07 | | |
| | 11/30/09<br>J/E 2W2 | GENJ | To accrue | 1,770.35 | | |
| | | | Current Period Change | 5,689.42 | 3,919.07 | 1,770.35 |
| | 12/1/09 | | Beginning Balance | | | 9,737.34 |
| | 12/1/09<br>J/E 2W2 | GENJ | To accrue | | 1,770.35 | |
| | 12/3/09<br>NOV 09 | PJ | STURSBERG AND ASSOCIATES LLC - NOVEMBER 09 | 1,770.35 | | |
| | 12/31/09<br>J/E 2 BZ | GENJ | TO ALLOCATE ADD'L COSTS TO AMERITRANS | 5,623.00 | | |
| | | | Current Period Change | 7,393.35 | 1,770.35 | 5,623.00 |
| | 1/1/10 | | Beginning Balance | | | 15,360.34 |
| | 2/1/10 | | Beginning Balance | | | 15,360.34 |
| | 3/1/10 | | Beginning Balance | | | 15,360.34 |
| | 3/31/10<br>J/E 2BZ | GENJ | To allocate costs to AMTC | 8,926.00 | | |
| | | | Current Period Change | 8,926.00 | | 8,926.00 |
| | 4/1/10 | | Beginning Balance | | | 24,286.34 |
| | 5/1/10 | | Beginning Balance | | | 24,286.34 |

6/22/11 at 14:44:39.40

**Elk Associates Funding Corporation**
**General Ledger**
**For the Period From Jul 1, 2009 to Jun 30, 2010**

Page: 304

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 5320 (cont.) | 5/20/10<br>10608356 | PJ | PEPPER HAMILTON<br>LLP - 10608356 -<br>SERVICES THROUGH<br>2/28/10 | 318.86 | | |
| | | | Current Period Change | 318.86 | | 318.86 |
| | 6/1/10 | | Beginning Balance | | | 24,605.20 |
| | 6/10/10<br>061010 PA | PJ | MARINO &<br>ASSOCIATES PC -<br>LEGAL FEES RE:<br>PATROON LLC | 6,737.75 | | |
| | 6/18/10<br>1001 | PJ | STURSBERG AND<br>ASSOCIATES LLC -<br>FOR LEGAL SERVICES | 45,000.00 | | |
| | 6/30/10<br>J/E 2W2 | GENJ | To accrue 6/30/10 | 2,126.52 | | |
| | 6/30/10<br>J/E 2 BZ | GENJ | TO ALLOCATE ADD'L<br>COSTS TO<br>AMERITRANS | | 38,589.00 | |
| | | | Current Period Change | 53,864.27 | 38,589.00 | 15,275.27 |
| | **6/30/10** | | **Ending Balance** | | | **39,880.47** |
| 5320.30<br>Legal - Chicago | 7/1/09 | | Beginning Balance | | | |
| | 8/1/09 | | Beginning Balance | | | |
| | 8/25/09<br>082509-VA | PJ | CHARLES L.<br>GOODBAR, III, ESQ. -<br>VALLEY CAB<br>FORECLOSURE | 1,200.00 | | |
| | 8/31/09<br>AJE4 | GENJ | RECLASS OLS OTHER<br>AMOUNTS | | 1,200.00 | |
| | | | Current Period Change | 1,200.00 | 1,200.00 | |
| | 9/1/09 | | Beginning Balance | | | |
| | 10/1/09 | | Beginning Balance | | | |
| | 11/1/09 | | Beginning Balance | | | |
| | 12/1/09 | | Beginning Balance | | | |
| | 1/1/10 | | Beginning Balance | | | |
| | 2/1/10 | | Beginning Balance | | | |
| | 3/1/10 | | Beginning Balance | | | |
| | 4/1/10 | | Beginning Balance | | | |
| | 5/1/10 | | Beginning Balance | | | |
| | 6/1/10 | | Beginning Balance | | | |
| | **6/30/10** | | **Ending Balance** | | | |
| 5404<br>GCG REIMBURSEME | 7/1/09 | | Beginning Balance | | | |
| | 7/1/09 | GENJ | Officer Salaries - | 3,500.00 | | |

6/22/11 at 14:44:39.43

## Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 5404 (cont.) | 070109OF | | GGRANOFF<br>REIMBURSEMENT OF<br>EXPENSES 070109 | | | |
| | | | Current Period Change | 3,500.00 | | 3,500.00 |
| | 8/1/09 | | Beginning Balance | | | 3,500.00 |
| | 8/3/09<br>0809OFFIC | GENJ | Officer Salaries -<br>Reimburse Expenses<br>Gary Granoff 0809 | 5,166.66 | | |
| | | | Current Period Change | 5,166.66 | | 5,166.66 |
| | 9/1/09 | | Beginning Balance | | | 8,666.66 |
| | 9/1/09<br>090109OF | GENJ | Officer Salaries - GCG<br>REIMBURSEMENT OF<br>EXPENSE 090109<br>OFFICER SALARIES | 3,500.00 | | |
| | 9/30/09<br>J/E 2BZ1 | GENJ | To allocate additional<br>costs to Ameritrans | | 9,734.00 | |
| | | | Current Period Change | 3,500.00 | 9,734.00 | -6,234.00 |
| | 10/1/09 | | Beginning Balance | | | 2,432.66 |
| | 10/1/09<br>1009OFFIC | GENJ | Officer Salaries - GCG<br>Reimbursement of<br>Expenses 1009<br>OFFICER SALARIES | 5,166.66 | | |
| | | | Current Period Change | 5,166.66 | | 5,166.66 |
| | 11/1/09 | | Beginning Balance | | | 7,599.32 |
| | 11/2/09<br>1109OFFIC | GENJ | Officer Salaries - GCG<br>Reimbursement of<br>Expenses 1109<br>OFFICER SALARIES | 4,333.33 | | |
| | | | Current Period Change | 4,333.33 | | 4,333.33 |
| | 12/1/09 | | Beginning Balance | | | 11,932.65 |
| | 12/1/09<br>1209OFFIC | GENJ | Officer Salaries - GCG<br>Reimbursement of<br>Expenses 1209<br>OFFICER SALARIES | 4,333.33 | | |
| | | | Current Period Change | 4,333.33 | | 4,333.33 |
| | 1/1/10 | | Beginning Balance | | | 16,265.98 |
| | 1/4/10<br>0110OFFIC | GENJ | Officer Salaries - GCG<br>Reimbursement of<br>Expenses 0110<br>OFFICERS SALARIES | 4,333.33 | | |
| | | | Current Period Change | 4,333.33 | | 4,333.33 |
| | 2/1/10 | | Beginning Balance | | | 20,599.31 |
| | 2/1/10<br>0210OFFIC | GENJ | Officer Salaries - GCG<br>Reimbursement of<br>Expenses   0210<br>OFFICERS SALARIES | 4,333.33 | | |
| | | | Current Period Change | 4,333.33 | | 4,333.33 |
| | 3/1/10 | | Beginning Balance | | | 24,932.64 |

# Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 5404 (cont.) | 3/1/10<br>0310OFFIC | GENJ | Officer Salaries - GCG Reimbursement of Expenses 03/10 OFFICERS SALARIES | 4,333.33 | | |
| | 3/31/10<br>J/E 2BZ | GENJ | To allocate costs to AMTC | | 9,766.00 | |
| | | | Current Period Change | 4,333.33 | 9,766.00 | -5,432.67 |
| | 4/1/10 | | Beginning Balance | | | 19,499.97 |
| | 4/1/10<br>0410OFFIC | GENJ | Officer Salaries - GCG Reimbursement of Expenses 0410 OFFICER SALARIES | 4,333.33 | | |
| | 4/1/10<br>0401D01 | CRJ | MISCELLANEOUS DEPOSIT - GCG REIMBURSEMENT FOR MET LIFE PREMIUMS - 12/29/08 & 1/13/09 | | 10,001.00 | |
| | 4/5/10<br>040510 | PJ | Gary C. Granoff - REIMBURSEMENT OF EXPENSES - 7/08-6/09 | 10,000.00 | | |
| | | | Current Period Change | 14,333.33 | 10,001.00 | 4,332.33 |
| | 5/1/10 | | Beginning Balance | | | 23,832.30 |
| | 5/3/10<br>0510OFFIC | GENJ | Officer Salaries - GCG Reimbursement of Expenses 05/10 OFFICERS SALARIES | 4,333.33 | | |
| | | | Current Period Change | 4,333.33 | | 4,333.33 |
| | 6/1/10 | | Beginning Balance | | | 28,165.63 |
| | 6/1/10<br>0610OFFIC | GENJ | Officer Salaries - GCG Reimbursement of Expenses 06/10 OFFICER SALARIES | 4,333.33 | | |
| | 6/30/10<br>J/E 2 BZ | GENJ | TO ALLOCATE ADD'L COSTS TO AMERITRANS | | 6,500.00 | |
| | | | Current Period Change | 4,333.33 | 6,500.00 | -2,166.67 |
| | 6/30/10 | | Ending Balance | | | 25,998.96 |
| 5404.3<br>AMTC-M.Feinsod -Rei | 7/1/09 | | Beginning Balance | | | |
| | 7/1/09<br>070109OF | GENJ | Officer Salaries - MFEINSOD REIMBURSEMENT OF EXPENSES 070109 | 1,857.87 | | |
| | | | Current Period Change | 1,857.87 | | 1,857.87 |
| | 8/1/09 | | Beginning Balance | | | 1,857.87 |
| | 8/3/09<br>0809OFFIC | GENJ | Officer Salaries - Reimburse Expenses Michael Feinsod  0809 | 1,857.83 | | |
| | | | Current Period Change | 1,857.83 | | 1,857.83 |

6/22/11 at 14:44:39.51

## Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID / Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 5404.3 (cont.) | 9/1/09 | | Beginning Balance | | | 3,715.70 |
| | 9/1/09 090109OF | GENJ | Officer Salaries - MFEINSOD REIMBURSEMENT OF EXPENSE 090109 OFFICER SALARIES | 1,857.83 | | |
| | 9/30/09 J/E 2BZ1 | GENJ | To allocate additional costs to Ameritrans | | 2,787.00 | |
| | | | Current Period Change | 1,857.83 | 2,787.00 | -929.17 |
| | 10/1/09 | | Beginning Balance | | | 2,786.53 |
| | 10/1/09 1009OFFIC | GENJ | Officer Salaries - MFeinsod Reimbursement of Expenses 1009 OFFICER SALARIES | 1,857.83 | | |
| | | | Current Period Change | 1,857.83 | | 1,857.83 |
| | 11/1/09 | | Beginning Balance | | | 4,644.36 |
| | 11/2/09 1109OFFIC | GENJ | Officer Salaries - MFeinsod Reimbursement of Expenses 1109 OFFICER SALARIES | 2,708.33 | | |
| | | | Current Period Change | 2,708.33 | | 2,708.33 |
| | 12/1/09 | | Beginning Balance | | | 7,352.69 |
| | 12/1/09 1209OFFIC | GENJ | Officer Salaries - MFeinsod Reimbursement of Expenses 1209 OFFICER SALARIES | 2,708.33 | | |
| | 12/31/09 J/E 2 BZ | GENJ | TO ALLOCATE ADD'L COSTS TO AMERITRANS | | 14,703.00 | |
| | | | Current Period Change | 2,708.33 | 14,703.00 | -11,994.67 |
| | 1/1/10 | | Beginning Balance | | | -4,641.98 |
| | 1/4/10 0110OFFIC | GENJ | Officer Salaries - MFeinsod Reimbursement of Expenses 0110 OFFICERS SALARIES | 2,708.33 | | |
| | | | Current Period Change | 2,708.33 | | 2,708.33 |
| | 2/1/10 | | Beginning Balance | | | -1,933.65 |
| | 2/1/10 0210OFFIC | GENJ | Officer Salaries - MFeinsod Reimbursement of Expenses 0210 OFFICERS SALARIES | 2,708.33 | | |
| | | | Current Period Change | 2,708.33 | | 2,708.33 |
| | 3/1/10 | | Beginning Balance | | | 774.68 |
| | 3/1/10 0310OFFIC | GENJ | Officer Salaries - MFeinsod Reimbursement of | 2,708.33 | | |

6/22/11 at 14:44:39.54

Page: 308

## Elk Associates Funding Corporation
## General Ledger
## For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 5404.3 (cont.) | 3/31/10<br>J/E 2BZ | GENJ | Reimbursement of Expenses 03/10 OFFICER SALARIES To allocate costs to AMTC | 712.00 | | |
| | | | Current Period Change | 3,420.33 | | 3,420.33 |
| | 4/1/10 | | Beginning Balance | | | 4,195.01 |
| | 4/1/10<br>0410OFFIC | GENJ | Officer Salaries - MFeinsod | 2,708.33 | | |
| | 4/30/10<br>CM043010 | PJ | Reimbursement of Expenses 0410 OFFICER SALARIES CINGULAR - 0808 MICHAEL FEINSOD | | 146.83 | |
| | | | Current Period Change | 2,708.33 | 146.83 | 2,561.50 |
| | 5/1/10 | | Beginning Balance | | | 6,756.51 |
| | 5/3/10<br>0510OFFIC | GENJ | Officer Salaries - MFeinsod | 2,708.33 | | |
| | | | Reimbursement of Expenses 05/10 OFFICERS SALARIES | | | |
| | | | Current Period Change | 2,708.33 | | 2,708.33 |
| | 6/1/10 | | Beginning Balance | | | 9,464.84 |
| | 6/1/10<br>0610OFFIC | GENJ | Officer Salaries - MFeinsod | 2,708.33 | | |
| | 6/30/10<br>J/E 2 BZ | GENJ | Reimbursement of Expenses 06/10 OFFICER SALARIES TO ALLOCATE ADD'L COSTS TO AMERITRANS | | 6,383.00 | |
| | | | Current Period Change | 2,708.33 | 6,383.00 | -3,674.67 |
| | **6/30/10** | | **Ending Balance** | | | **5,790.17** |
| 5408<br>R.MAZLIACH - SERVI | 7/1/09 | | Beginning Balance | | | |
| | 7/27/09<br>AUG 09 | PJ | ROBERT MAZLIACH - JULY SERVICE FEE | 255.56 | | |
| | | | Current Period Change | 255.56 | | 255.56 |
| | 8/1/09 | | Beginning Balance | | | 255.56 |
| | 9/1/09 | | Beginning Balance | | | 255.56 |
| | 9/1/09<br>SEP 09 | PJ | ROBERT MAZLIACH - SERVICE FEE - SEPT 09 | 254.91 | | |
| | | | Current Period Change | 254.91 | | 254.91 |
| | 10/1/09 | | Beginning Balance | | | 510.47 |
| | 10/1/09<br>OCT 09 | PJ | ROBERT MAZLIACH - SERVICE FEE - OCT 09 | 254.26 | | |
| | | | Current Period Change | 254.26 | | 254.26 |

6/22/11 at 14:44:39.57

## Elk Associates Funding Corporation
## General Ledger
## For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 5408 (cont.) | 11/1/09 | | Beginning Balance | | | 764.73 |
| | 11/10/09<br>NOV 09 | PJ | ROBERT MAZLIACH -<br>SERVICE FEE - NOV<br>09 | 253.60 | | |
| | 11/23/09<br>DEC 09 | PJ | ROBERT MAZLIACH -<br>SERVICE FEE - DEC 09 | 252.94 | | |
| | | | Current Period Change | 506.54 | | 506.54 |
| | 12/1/09 | | Beginning Balance | | | 1,271.27 |
| | 1/1/10 | | Beginning Balance | | | 1,271.27 |
| | 1/4/10<br>JAN 2010 | PJ | ROBERT MAZLIACH -<br>SERVICE FEE - JAN<br>2010 | 252.27 | | |
| | 1/19/10<br>Feb 2010 | PJ | ROBERT MAZLIACH -<br>SERVICE FEE - FEB<br>2010 | 251.59 | | |
| | | | Current Period Change | 503.86 | | 503.86 |
| | 2/1/10 | | Beginning Balance | | | 1,775.13 |
| | 2/23/10<br>MAR 2010 | PJ | ROBERT MAZLIACH -<br>MONTHLY SERVICE<br>FEE - MARCH 2010 | 250.91 | | |
| | | | Current Period Change | 250.91 | | 250.91 |
| | 3/1/10 | | Beginning Balance | | | 2,026.04 |
| | 3/11/10<br>Apr 2010 | PJ | ROBERT MAZLIACH -<br>SERVICE FEE - APRIL<br>2010 | 250.22 | | |
| | | | Current Period Change | 250.22 | | 250.22 |
| | 4/1/10 | | Beginning Balance | | | 2,276.26 |
| | 4/12/10<br>MAY 2010 | PJ | ROBERT MAZLIACH -<br>SERVICE FEE - MAY<br>2010 | 249.52 | | |
| | | | Current Period Change | 249.52 | | 249.52 |
| | 5/1/10 | | Beginning Balance | | | 2,525.78 |
| | 5/11/10<br>JUNE 2010 | PJ | ROBERT MAZLIACH -<br>SERVICE FEE - JUNE<br>2010 | 248.81 | | |
| | | | Current Period Change | 248.81 | | 248.81 |
| | 6/1/10 | | Beginning Balance | | | 2,774.59 |
| | **6/30/10** | | **Ending Balance** | | | **2,774.59** |
| 5410.00<br>MEDALLION TRANS | 7/1/09 | | Beginning Balance | | | |
| | 8/1/09 | | Beginning Balance | | | |
| | 9/1/09 | | Beginning Balance | | | |
| | 10/1/09 | | Beginning Balance | | | |
| | 11/1/09 | | Beginning Balance | | | |

6/22/11 at 14:44:39.62

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 5410.00 (cont.) | 12/1/09 | | Beginning Balance | | | |
| | 12/11/09<br>1211D01 | CRJ | MISCELLANEOUS DEPOSIT - MEDALLION BANK 5% SERVICE FEE RE: ST. FIRMIN MICHEL | 278.39 | | |
| | | | Current Period Change | 278.39 | | 278.39 |
| | 1/1/10 | | Beginning Balance | | | 278.39 |
| | 2/1/10 | | Beginning Balance | | | 278.39 |
| | 3/1/10 | | Beginning Balance | | | 278.39 |
| | 4/1/10 | | Beginning Balance | | | 278.39 |
| | 5/1/10 | | Beginning Balance | | | 278.39 |
| | 6/1/10 | | Beginning Balance | | | 278.39 |
| | 6/30/10 | | **Ending Balance** | | | **278.39** |
| 5426.00<br>Local transportation | 7/1/09 | | Beginning Balance | | | |
| | 7/31/09<br>1791752 | PJ | Executive Charge Inc. - 1791752 | 109.28 | | |
| | | | Current Period Change | 109.28 | | 109.28 |
| | 8/1/09 | | Beginning Balance | | | 109.28 |
| | 8/31/09<br>1822676 | PJ | Executive Charge Inc. - 1822676 | 164.64 | | |
| | | | Current Period Change | 164.64 | | 164.64 |
| | 9/1/09 | | Beginning Balance | | | 273.92 |
| | 9/30/09<br>1853267 | PJ | Executive Charge Inc. - 1853267 | 330.39 | | |
| | | | Current Period Change | 330.39 | | 330.39 |
| | 10/1/09 | | Beginning Balance | | | 604.31 |
| | 10/31/09<br>1892113 | PJ | Executive Charge Inc. - 1892113 | 326.51 | | |
| | | | Current Period Change | 326.51 | | 326.51 |
| | 11/1/09 | | Beginning Balance | | | 930.82 |
| | 11/30/09<br>1925824 | PJ | Executive Charge Inc. - 1925824 | 54.33 | | |
| | | | Current Period Change | 54.33 | | 54.33 |
| | 12/1/09 | | Beginning Balance | | | 985.15 |
| | 1/1/10 | | Beginning Balance | | | 985.15 |
| | 2/1/10 | | Beginning Balance | | | 985.15 |
| | 3/1/10 | | Beginning Balance | | | 985.15 |

6/22/11 at 14:44:39.65

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 5426.00 (cont.) | 3/31/10<br>2068179 | PJ | Executive Charge Inc. -<br>2068179 | 120.52 | | |
| | | | Current Period Change | 120.52 | | 120.52 |
| | 4/1/10 | | Beginning Balance | | | 1,105.67 |
| | 4/15/10<br>APR 2010 | PJ | MARGARET CHANCE -<br>REIMBURSEMENT OF<br>MONTHLY EXPENSES<br>- APR 2010 | 54.84 | | |
| | 4/15/10<br>0415D02 | CRJ | MISCELLANEOUS<br>DEPOSIT - MC<br>REIMBURSEMENT RE:<br>EXECUTIVE CHARGE<br>INVOICE | | 52.67 | |
| | 4/21/10<br>APRIL 201 | PJ | AMERICAN EXPRESS -<br>65001 - LOCAL<br>TRANSP. | 8.50 | | |
| | | | Current Period Change | 63.34 | 52.67 | 10.67 |
| | 5/1/10 | | Beginning Balance | | | 1,116.34 |
| | 5/31/10<br>2140755 | PJ | Executive Charge Inc. -<br>2140755 | 54.88 | | |
| | | | Current Period Change | 54.88 | | 54.88 |
| | 6/1/10 | | Beginning Balance | | | 1,171.22 |
| | 6/30/10 | | Ending Balance | | | 1,171.22 |
| 5427.00<br>Parking | 7/1/09 | | Beginning Balance | | | |
| | 8/1/09 | | Beginning Balance | | | |
| | 9/1/09 | | Beginning Balance | | | |
| | 10/1/09 | | Beginning Balance | | | |
| | 11/1/09 | | Beginning Balance | | | |
| | 11/20/09<br>NOV 09 | PJ | AMERICAN EXPRESS -<br>65001 - PARKING | 61.00 | | |
| | | | Current Period Change | 61.00 | | 61.00 |
| | 12/1/09 | | Beginning Balance | | | 61.00 |
| | 1/1/10 | | Beginning Balance | | | 61.00 |
| | 2/1/10 | | Beginning Balance | | | 61.00 |
| | 3/1/10 | | Beginning Balance | | | 61.00 |
| | 4/1/10 | | Beginning Balance | | | 61.00 |
| | 5/1/10 | | Beginning Balance | | | 61.00 |
| | 6/1/10 | | Beginning Balance | | | 61.00 |
| | 6/30/10 | | Ending Balance | | | 61.00 |
| 5450 | 7/1/09 | | Beginning Balance | | | |

6/22/11 at 14:44:39.68

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| Advertising) | | | | | | |
| | 8/1/09 | | Beginning Balance | | | |
| | 9/1/09 | | Beginning Balance | | | |
| | 9/29/09<br>3622380 | PJ | BUSINESS WIRE, INC.<br>- 3622380 | 1,685.00 | | |
| | 9/30/09<br>J/E 2BZ1 | GENJ | To allocate additional<br>costs to Ameritrans | | 191.00 | |
| | | | Current Period Change | 1,685.00 | 191.00 | 1,494.00 |
| | 10/1/09 | | Beginning Balance | | | 1,494.00 |
| | 10/26/09<br>3637166 | PJ | BUSINESS WIRE, INC.<br>- 3637166 | 410.00 | | |
| | | | Current Period Change | 410.00 | | 410.00 |
| | 11/1/09 | | Beginning Balance | | | 1,904.00 |
| | 11/16/09<br>3648855 | PJ | BUSINESS WIRE, INC.<br>- 3648855 | 1,345.00 | | |
| | | | Current Period Change | 1,345.00 | | 1,345.00 |
| | 12/1/09 | | Beginning Balance | | | 3,249.00 |
| | 12/7/09<br>3658580 | PJ | BUSINESS WIRE, INC.<br>- 3658580 | 325.00 | | |
| | 12/10/09<br>3660608 | PJ | BUSINESS WIRE, INC.<br>- 3660608 | 325.00 | | |
| | 12/22/09<br>3665618 | PJ | BUSINESS WIRE, INC.<br>- 3665618 | 325.00 | | |
| | 12/22/09<br>10690 | PJ | INTERNATIONAL<br>PRINT GROUP LLC -<br>10690 | 919.99 | | |
| | 12/23/09<br>10694 | PJ | INTERNATIONAL<br>PRINT GROUP LLC -<br>10694 | 424.61 | | |
| | 12/23/09<br>10705 | PJ | INTERNATIONAL<br>PRINT GROUP LLC -<br>10705 | 244.97 | | |
| | 12/26/09<br>10709 | PJ | INTERNATIONAL<br>PRINT GROUP LLC -<br>10709 | 244.97 | | |
| | 12/27/09<br>10720 | PJ | INTERNATIONAL<br>PRINT GROUP LLC -<br>10720 | 228.64 | | |
| | 12/31/09<br>10730 | PJ | INTERNATIONAL<br>PRINT GROUP LLC -<br>10730 | 293.96 | | |
| | 12/31/09<br>J/E 2 BZ | GENJ | TO ALLOCATE ADD'L<br>COSTS TO<br>AMERITRANS | | 322.00 | |
| | | | Current Period Change | 3,332.14 | 322.00 | 3,010.14 |
| | 1/1/10 | | Beginning Balance | | | 6,259.14 |
| | 2/1/10 | | Beginning Balance | | | 6,259.14 |
| | 2/20/10<br>10766 | PJ | INTERNATIONAL<br>PRINT GROUP LLC -<br>10766 | 822.01 | | |
| | 2/25/10<br>10764 | PJ | INTERNATIONAL<br>PRINT GROUP LLC -<br>10764 | 195.98 | | |

6/22/11 at 14:44:39.73

Page: 313

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 5450 (cont.) | 2/25/10 3695075 | PJ | 10764 BUSINESS WIRE, INC. - 3695075 | 400.00 | | |
| | | | Current Period Change | 1,417.99 | | 1,417.99 |
| | 3/1/10 | | Beginning Balance | | | 7,677.13 |
| | 3/15/10 10790 | PJ | INTERNATIONAL PRINT GROUP LLC - 10790 | 206.86 | | |
| | 3/22/10 10822 | PJ | INTERNATIONAL PRINT GROUP LLC - 10822 | 206.86 | | |
| | 3/26/10 3710642 | PJ | BUSINESS WIRE, INC. - 3710642 | 470.00 | | |
| | 3/31/10 J/E 2BZ | GENJ | To allocate costs to AMTC | | 99.00 | |
| | | | Current Period Change | 883.72 | 99.00 | 784.72 |
| | 4/1/10 | | Beginning Balance | | | 8,461.85 |
| | 4/12/10 3717359 | PJ | BUSINESS WIRE, INC. - 3717359 | 470.00 | | |
| | 4/15/10 10843 | PJ | INTERNATIONAL PRINT GROUP LLC - 10843 | 283.08 | | |
| | 4/17/10 10859 | PJ | INTERNATIONAL PRINT GROUP LLC - 10859 | 217.75 | | |
| | 4/20/10 10851 | PJ | INTERNATIONAL PRINT GROUP LLC - 10851 | 293.96 | | |
| | 4/21/10 10874 | PJ | INTERNATIONAL PRINT GROUP LLC - 10874 | 370.18 | | |
| | | | Current Period Change | 1,634.97 | | 1,634.97 |
| | 5/1/10 | | Beginning Balance | | | 10,096.82 |
| | 5/6/10 10881 | PJ | INTERNATIONAL PRINT GROUP LLC - 10881 | 244.97 | | |
| | | | Current Period Change | 244.97 | | 244.97 |
| | 6/1/10 | | Beginning Balance | | | 10,341.79 |
| | 6/30/10 J/E 2 BZ | GENJ | TO ALLOCATE ADD'L COSTS TO AMERITRANS | 902.00 | | |
| | | | Current Period Change | 902.00 | | 902.00 |
| | **6/30/10** | | **Ending Balance** | | | **11,243.79** |
| 5525 Conventions and semi | 7/1/09 | | Beginning Balance | | | |
| | 8/1/09 | | Beginning Balance | | | |
| | 9/1/09 | | Beginning Balance | | | |
| | 10/1/09 | | Beginning Balance | | | |
| | 11/1/09 | | Beginning Balance | | | |

6/22/11 at 14:44:39.76

### Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 5525 (cont.) | 12/1/09 | | Beginning Balance | | | |
| | 1/1/10 | | Beginning Balance | | | |
| | 2/1/10 | | Beginning Balance | | | |
| | 2/19/10<br>FEB 2010 | PJ | AMERICAN EXPRESS - 65001 - SEMINARS | 140.00 | | |
| | | | Current Period Change | 140.00 | | 140.00 |
| | 3/1/10 | | Beginning Balance | | | 140.00 |
| | 4/1/10 | | Beginning Balance | | | 140.00 |
| | 5/1/10 | | Beginning Balance | | | 140.00 |
| | 6/1/10 | | Beginning Balance | | | 140.00 |
| | 6/30/10 | | **Ending Balance** | | | **140.00** |
| 5531<br>ANNUAL REPORT E | 7/1/09 | | Beginning Balance | | | |
| | 8/1/09 | | Beginning Balance | | | |
| | 9/1/09 | | Beginning Balance | | | |
| | 10/1/09 | | Beginning Balance | | | |
| | 11/1/09 | | Beginning Balance | | | |
| | 12/1/09 | | Beginning Balance | | | |
| | 1/1/10 | | Beginning Balance | | | |
| | 2/1/10 | | Beginning Balance | | | |
| | 2/19/10<br>FEB 2010 | PJ | AMERICAN EXPRESS - 65001 - ANNUAL REPORT FEE | 100.00 | | |
| | | | Current Period Change | 100.00 | | 100.00 |
| | 3/1/10 | | Beginning Balance | | | 100.00 |
| | 4/1/10 | | Beginning Balance | | | 100.00 |
| | 4/21/10<br>APRIL 201 | PJ | AMERICAN EXPRESS - 65001 - ANNUAL REPORT | 158.75 | | |
| | | | Current Period Change | 158.75 | | 158.75 |
| | 5/1/10 | | Beginning Balance | | | 258.75 |
| | 6/1/10 | | Beginning Balance | | | 258.75 |
| | 6/30/10 | | **Ending Balance** | | | **258.75** |
| 5532<br>INVESTOR RELATIO | 7/1/09 | | Beginning Balance | | | |
| | 8/1/09 | | Beginning Balance | | | |

6/22/11 at 14:44:39.79

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID / Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 5532 (cont.) | 9/1/09 | | Beginning Balance | | | |
| | 10/1/09 | | Beginning Balance | | | |
| | 11/1/09 | | Beginning Balance | | | |
| | 11/16/09 327101 | PJ | BROADRIDGE INVESTORS COMMUNICA - 327101 | 1,568.61 | | |
| | | | Current Period Change | 1,568.61 | | 1,568.61 |
| | 12/1/09 | | Beginning Balance | | | 1,568.61 |
| | 12/17/09 1895 | PJ | INVESHARE INC. - 1895 | 25.60 | | |
| | 12/17/09 1894 | PJ | INVESHARE INC. - 1894 | 25.60 | | |
| | 12/31/09 765009 | PJ | BROADRIDGE INVESTORS COMMUNICA - 765009 | 36.32 | | |
| | 12/31/09 J/E 2 BZ | GENJ | TO ALLOCATE ADD'L COSTS TO AMERITRANS | | 196.00 | |
| | | | Current Period Change | 87.52 | 196.00 | -108.48 |
| | 1/1/10 | | Beginning Balance | | | 1,460.13 |
| | 1/7/10 BPX-0911- | PJ | MEDIANT COMMUNICATIONS LLC - BPX-0911-0296 | 30.19 | | |
| | | | Current Period Change | 30.19 | | 30.19 |
| | 2/1/10 | | Beginning Balance | | | 1,490.32 |
| | 3/1/10 | | Beginning Balance | | | 1,490.32 |
| | 3/31/10 J/E 2BZ | GENJ | To allocate costs to AMTC | 62.00 | | |
| | | | Current Period Change | 62.00 | | 62.00 |
| | 4/1/10 | | Beginning Balance | | | 1,552.32 |
| | 5/1/10 | | Beginning Balance | | | 1,552.32 |
| | 6/1/10 | | Beginning Balance | | | 1,552.32 |
| | 6/30/10 J/E 2 BZ | GENJ | TO ALLOCATE ADD'L COSTS TO AMERITRANS | 1,203.00 | | |
| | | | Current Period Change | 1,203.00 | | 1,203.00 |
| | 6/30/10 | | **Ending Balance** | | | **2,755.32** |
| 5540 Contributions | 7/1/09 | | Beginning Balance | | | |
| | 8/1/09 | | Beginning Balance | | | |
| | 9/1/09 | | Beginning Balance | | | |
| | 10/1/09 | | Beginning Balance | | | |
| | 11/1/09 | | Beginning Balance | | | |

6/22/11 at 14:44:39.82

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 5540 (cont.) | 12/1/09 | | Beginning Balance | | | |
| | 12/1/09<br>120109 | PJ | VISITING NURSE SERVICE OF NEW - DONATION IN MEMORY OF MARION HECKLER | 250.00 | | |
| | 12/1/09<br>120109 | PJ | TEMPLE BETH EL OF GREAT NECK - DONATION IN MEMORY OF JEANNETTE GRANOFF | 250.00 | | |
| | 12/2/09<br>120209 | PJ | GEORGE WASHINGTON UNIVERSITY - THIRD PAYMENT RE: PLEDGE #160477 | 3,000.00 | | |
| | | | Current Period Change | 3,500.00 | | 3,500.00 |
| | 1/1/10 | | Beginning Balance | | | 3,500.00 |
| | 2/1/10 | | Beginning Balance | | | 3,500.00 |
| | 3/1/10 | | Beginning Balance | | | 3,500.00 |
| | 4/1/10 | | Beginning Balance | | | 3,500.00 |
| | 5/1/10 | | Beginning Balance | | | 3,500.00 |
| | 6/1/10 | | Beginning Balance | | | 3,500.00 |
| | 6/21/10<br>JUNE 2010 | PJ | AMERICAN EXPRESS - 65001 - CONTRIBUTION | 250.00 | | |
| | | | Current Period Change | 250.00 | | 250.00 |
| | 6/30/10 | | Ending Balance | | | 3,750.00 |
| 5545<br>Directors fee | 7/1/09 | | Beginning Balance | | | |
| | 7/22/09<br>072209 #1 | PJ | JOHN R. LAIRD - 07/22/09 COMPENSATION COMMITTEE MTG | 1,250.00 | | |
| | 7/22/09<br>072209 #2 | PJ | JOHN R. LAIRD - 06/04/09 COMPENSATION COMMITTEE MTG | 1,250.00 | | |
| | 7/22/09<br>072209 #3 | PJ | IVAN WOLPERT - 07/22/09 COMPENSATION COMMITTEE MTG | 1,000.00 | | |
| | 7/22/09<br>072209 #4 | PJ | IVAN WOLPERT - 06/04/09 COMPENSATION COMMITTEE MTG | 1,000.00 | | |
| | 7/22/09<br>072209 #5 | PJ | STEVEN ETRA - 07/22/09 COMPENSATION COMMITTEE MTG | 1,000.00 | | |
| | 7/22/09 | PJ | STEVEN ETRA - | 1,000.00 | | |

6/22/11 at 14:44:39.87

### Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 5545 (cont.) | 072209 #6 | | 06/04/09 COMPENSATION COMMITTEE MTG | | | |
| | 7/22/09<br>072209 #7 | PJ | JOHN R. LAIRD - 07/22/09 AUDIT COMMITTEE MTG | 1,250.00 | | |
| | 7/22/09<br>072209 #8 | PJ | PETER BOOCKVAR - 07/22/09 AUDIT COMMITTEE MTG | 1,000.00 | | |
| | 7/22/09<br>072209 #9 | PJ | HOWARD SOMMER - 07/22/09 AUDIT COMMITTEE MTG | 1,000.00 | | |
| | 7/28/09<br>BDMTG 07 | PJ | HOWARD SOMMER - BOARD MEETING 7/28/09 | 1,000.00 | | |
| | 7/28/09<br>BDMTG 07 | PJ | STEVEN ETRA - BOARD MEETING 7/28/09 | 1,000.00 | | |
| | 7/28/09<br>BDMTG 07 | PJ | JOHN R. LAIRD - BOARD MEETING 7/28/09 | 1,000.00 | | |
| | 7/28/09<br>BDMTG 07 | PJ | PETER BOOCKVAR - BOARD MEETING 7/28/09 | 1,000.00 | | |
| | 7/28/09<br>BDMTG 07 | PJ | IVAN WOLPERT - BOARD MEETING 7/28/09 | 1,000.00 | | |
| | 7/28/09<br>BDMTG 07 | PJ | PRIDES CAPITAL LLC - BOARD MEETING 7/28/09 | 1,000.00 | | |
| | | | Current Period Change | 15,750.00 | | 15,750.00 |
| | 8/1/09 | | Beginning Balance | | | 15,750.00 |
| | 9/1/09 | | Beginning Balance | | | 15,750.00 |
| | 9/23/09<br>0921ACMT | PJ | JOHN R. LAIRD - AUDIT COMMITTEE MEETING 9/21/09 | 1,250.00 | | |
| | 9/23/09<br>0921ACMT | PJ | HOWARD SOMMER - AUDIT COMMITTEE MEETING 9/21/09 | 1,000.00 | | |
| | 9/23/09<br>0921CCMT | PJ | JOHN R. LAIRD - COMPENSATION COMMITTEE MEETING 9/21/09 | 1,250.00 | | |
| | 9/23/09<br>0921CCMT | PJ | STEVEN ETRA - COMPENSATION COMMITTEE MEETING 9/21/09 | 1,000.00 | | |
| | 9/23/09<br>0921CCMT | PJ | IVAN WOLPERT - COMPENSATION COMMITTEE MEETING 9/21/09 | 1,000.00 | | |
| | 9/23/09<br>0923BDMT | PJ | PETER BOOCKVAR - BOARD MEETING 9/23/09 | 1,000.00 | | |
| | 9/23/09<br>0923BDMT | PJ | STEVEN ETRA - BOARD MEETING 9/23/09 | 1,000.00 | | |
| | 9/23/09<br>0923BDMT | PJ | JOHN R. LAIRD - BOARD MEETING 9/23/09 | 1,000.00 | | |

6/22/11 at 14:44:39.90

Page: 318

# Elk Associates Funding Corporation
## General Ledger
## For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 5545 (cont.) | 9/23/09<br>0923BDMT | PJ | HOWARD SOMMER -<br>BOARD MEETING<br>9/23/09 | 1,000.00 | | |
| | 9/23/09<br>0923BDMT | PJ | IVAN WOLPERT -<br>BOARD MEETING<br>9/23/09 | 1,000.00 | | |
| | 9/23/09<br>0923BDMT | PJ | PRIDES CAPITAL LLC -<br>BOARD MEETING<br>9/23/09 | 1,000.00 | | |
| | 9/30/09<br>J/E 2BZ1 | GENJ | To allocate additional<br>costs to Ameritrans | | 2,864.00 | |
| | | | Current Period Change | 11,500.00 | 2,864.00 | 8,636.00 |
| | 10/1/09 | | Beginning Balance | | | 24,386.00 |
| | 10/31/09<br>J/E 2W2 | GENJ | To accrue for Oct 2009 | 3,250.00 | | |
| | | | Current Period Change | 3,250.00 | | 3,250.00 |
| | 11/1/09 | | Beginning Balance | | | 27,636.00 |
| | 11/1/09<br>J/E 2W2 | GENJ | To accrue for Oct 2009 | | 3,250.00 | |
| | 11/9/09<br>1109ACMT | PJ | JOHN R. LAIRD - 11/09<br>- AUDIT COMMITTEE<br>MEETING | 1,250.00 | | |
| | 11/9/09<br>1109ACMT | PJ | PETER BOOCKVAR -<br>11/09 - AUDIT<br>COMMITTEE MEETING | 1,000.00 | | |
| | 11/9/09<br>1109ACMT | PJ | HOWARD SOMMER -<br>11/09 - AUDIT<br>COMMITTEE MEETING | 1,000.00 | | |
| | 11/11/09<br>111109BD | PJ | PETER BOOCKVAR -<br>BOARD MEETING<br>11/11/09 | 1,000.00 | | |
| | 11/11/09<br>111109BD | PJ | STEVEN ETRA -<br>BOARD MEETING<br>11/11/09 | 1,000.00 | | |
| | 11/11/09<br>111109BD | PJ | PRIDES CAPITAL LLC -<br>BOARD MEETING<br>11/11/09 | 1,000.00 | | |
| | 11/11/09<br>111109BD | PJ | IVAN WOLPERT -<br>BOARD MEETING<br>11/11/09 | 1,000.00 | | |
| | 11/11/09<br>111109BD | PJ | JOHN R. LAIRD -<br>BOARD MEETING<br>11/11/09 | 1,000.00 | | |
| | 11/11/09<br>111109BD | PJ | HOWARD SOMMER -<br>BOARD MEETING<br>11/11/09 | 1,000.00 | | |
| | 11/20/09<br>0824CCMT | PJ | JOHN R. LAIRD -<br>COMPENSATION<br>COMMITTEE MEETING<br>8/24/09 | 1,250.00 | | |
| | 11/20/09<br>0824CCMT | PJ | IVAN WOLPERT -<br>COMPENSATION<br>COMMITTEE MEETING<br>8/24/09 | 1,000.00 | | |
| | 11/20/09<br>0824CCMT | PJ | STEVEN ETRA -<br>COMPENSATION<br>COMMITTEE MEETING<br>8/24/09 | 1,000.00 | | |

6/22/11 at 14:44:39.95

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 5545 (cont.) | 11/20/09 1104CCMT | PJ | 8/24/09 IVAN WOLPERT - COMPENSATION COMMITTEE MEETING 11/4/09 & 11/10/09 | 1,250.00 | | |
| | 11/20/09 1104CCMT | PJ | JOHN R. LAIRD - COMPENSATION COMMITTEE MEETING 11/4/09 & 11/10/09 | 1,000.00 | | |
| | 11/20/09 1104CCMT | PJ | STEVEN ETRA - COMPENSATION COMMITTEE MEETING 11/4/09 & 11/10/09 | 1,000.00 | | |
| | | | Current Period Change | 15,750.00 | 3,250.00 | 12,500.00 |
| | 12/1/09 | | Beginning Balance | | | 40,136.00 |
| | 12/31/09 J/E 2 BZ | GENJ | TO ALLOCATE ADD'L COSTS TO AMERITRANS | | 40,136.00 | |
| | | | Current Period Change | | 40,136.00 | -40,136.00 |
| | 1/1/10 | | Beginning Balance | | | |
| | 1/19/10 0119ACMT | PJ | JOHN R. LAIRD - AUDIT COMMITTEE MEETING 1/19/10 | 1,250.00 | | |
| | 1/19/10 0119ACMT | PJ | HOWARD SOMMER - AUDIT COMMITTEE MEETING 1/19/10 | 1,000.00 | | |
| | 1/19/10 0119ACMT | PJ | PETER BOOCKVAR - AUDIT COMMITTEE MEETING 1/19/10 | 1,000.00 | | |
| | 1/28/10 0128CCMT | PJ | IVAN WOLPERT - COMPENSATION COMMITTEE MEETING 1/28/10 | 1,250.00 | | |
| | 1/28/10 0128CCMT | PJ | JOHN R. LAIRD - COMPENSATION COMMITTEE MEETING 1/28/10 | 1,000.00 | | |
| | 1/28/10 0128CCMT | PJ | STEVEN ETRA - COMPENSATION COMMITTEE MEETING 1/28/10 | 1,000.00 | | |
| | | | Current Period Change | 6,500.00 | | 6,500.00 |
| | 2/1/10 | | Beginning Balance | | | 6,500.00 |
| | 2/9/10 209ACMTG | PJ | PETER BOOCKVAR - AUDIT COMMITTEE MEETING - 2/9/10 | 1,000.00 | | |
| | 2/9/10 209ACMTG | PJ | HOWARD SOMMER - AUDIT COMMITTEE MEETING - 2/9/10 | 1,000.00 | | |
| | 2/10/10 0210BDMT | PJ | PETER BOOCKVAR - BOARD MEETING - 2/10/10 | 1,000.00 | | |
| | 2/10/10 0210BDMT | PJ | HOWARD SOMMER - BOARD MEETING - 2/10/10 | 1,000.00 | | |

6/22/11 at 14:44:39.98

Page: 320

# Elk Associates Funding Corporation
## General Ledger
## For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 5545 (cont.) | 2/10/10<br>0210BDMT | PJ | PRIDES CAPITAL LLC -<br>BOARD MEETING -<br>2/10/10 | 1,000.00 | | |
| | 2/10/10<br>0210BDMT | PJ | STEVEN ETRA -<br>BOARD MEETING -<br>2/10/10 | 1,000.00 | | |
| | 2/10/10<br>0210BDMT | PJ | IVAN WOLPERT -<br>BOARD MEETING -<br>2/10/10 | 1,000.00 | | |
| | 2/10/10<br>0210BDMT | PJ | ELLIOT H SINGER -<br>BOARD MEETING<br>2/10/10 | 1,000.00 | | |
| | | | Current Period Change | 8,000.00 | | 8,000.00 |
| | 3/1/10 | | Beginning Balance | | | 14,500.00 |
| | 3/11/10<br>MAR 2010 | PJ | PETER BOOCKVAR -<br>BALANCE DUE<br>RETAINER & BOARD<br>MEETING FEES | 7,250.00 | | |
| | 3/11/10<br>MAR 2010 | PJ | STEVEN ETRA -<br>BALANCE DUE<br>RETAINER & BOARD<br>MEETING FEES | 7,250.00 | | |
| | 3/11/10<br>MAR 2010 | PJ | PRIDES CAPITAL LLC -<br>BALANCE DUE<br>RETAINER & BOARD<br>MEETING FEES | 7,250.00 | | |
| | 3/11/10<br>MAR 2010 | PJ | JOHN R. LAIRD -<br>BALANCE DUE<br>RETAINER & BOARD<br>MEETING FEES | 8,500.00 | | |
| | 3/11/10<br>MAR 2010 | PJ | ELLIOTT H SINGER -<br>BALANCE DUE<br>RETAINER & BOARD<br>MEETING FEES | 7,250.00 | | |
| | 3/11/10<br>MAR 2010 | PJ | HOWARD SOMMER -<br>BALANCE DUE<br>RETAINER & BOARD<br>MEETING FEES | 7,250.00 | | |
| | 3/11/10<br>MAR 2010 | PJ | IVAN WOLPERT -<br>BALANCE DUE<br>RETAINER & BOARD<br>MEETING FEES | 8,500.00 | | |
| | | | Current Period Change | 53,250.00 | | 53,250.00 |
| | 4/1/10 | | Beginning Balance | | | 67,750.00 |
| | 4/13/10<br>0413ACMT | PJ | JOHN R. LAIRD -<br>AUDIT COMMITTEE<br>MEETING 4/13/10 | 1,500.00 | | |
| | 4/13/10<br>0413ACMT | PJ | PETER BOOCKVAR -<br>AUDIT COMMITTEE<br>MEETING 4/13/10 | 1,000.00 | | |
| | 4/13/10<br>0413ACMT | PJ | HOWARD SOMMER -<br>AUDIT COMMITTEE<br>MEETING 4/13/10 | 1,000.00 | | |
| | | | Current Period Change | 3,500.00 | | 3,500.00 |
| | 5/1/10 | | Beginning Balance | | | 71,250.00 |
| | 6/1/10 | | Beginning Balance | | | 71,250.00 |

6/22/11 at 14:44:40.01

Page: 321

# Elk Associates Funding Corporation
## General Ledger
## For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 5545 (cont.) | 6/30/10 | | Ending Balance | | | 71,250.00 |
| 5546 DIRECTORS TRAVEL | 7/1/09 | | Beginning Balance | | | |
| | 7/1/09 J/E 2W2 | GENJ | To accrue | | 1,500.00 | |
| | | | Current Period Change | | 1,500.00 | -1,500.00 |
| | 8/1/09 | | Beginning Balance | | | -1,500.00 |
| | 8/12/09 081209 | PJ | JOHN LAIRD - TRAVEL RE: STAMFORD BOARD COLLEGE | 2,472.06 | | |
| | | | Current Period Change | 2,472.06 | | 2,472.06 |
| | 9/1/09 | | Beginning Balance | | | 972.06 |
| | 9/25/09 092509 | PJ | MURRAY INDICK - 092509 - TRAVEL EXPENSE REIMBURSEMENT | 1,127.55 | | |
| | 9/30/09 J/E 2BZ1 | GENJ | To allocate additional costs to Ameritrans | | 221.00 | |
| | | | Current Period Change | 1,127.55 | 221.00 | 906.55 |
| | 10/1/09 | | Beginning Balance | | | 1,878.61 |
| | 11/1/09 | | Beginning Balance | | | 1,878.61 |
| | 11/12/09 111209 | PJ | JOHN LAIRD - BOARD MEETING TRAVEL EXPENSES | 266.50 | | |
| | 11/16/09 111209 | PJ | MURRAY INDICK - BOARD MEETING TRAVEL EXPENSES | 1,082.69 | | |
| | | | Current Period Change | 1,349.19 | | 1,349.19 |
| | 12/1/09 | | Beginning Balance | | | 3,227.80 |
| | 12/31/09 J/E 2 BZ | GENJ | TO ALLOCATE ADD'L COSTS TO AMERITRANS | | 3,228.00 | |
| | | | Current Period Change | | 3,228.00 | -3,228.00 |
| | 1/1/10 | | Beginning Balance | | | -0.20 |
| | 2/1/10 | | Beginning Balance | | | -0.20 |
| | 3/1/10 | | Beginning Balance | | | -0.20 |
| | 3/3/10 Mar 2010 | PJ | MURRAY INDICK - REIMBURSEMENT OF TRAVEL EXPENSES RE: BOARD MEETING | 551.40 | | |
| | | | Current Period Change | 551.40 | | 551.40 |
| | 4/1/10 | | Beginning Balance | | | 551.20 |
| | 5/1/10 | | Beginning Balance | | | 551.20 |
| | 6/1/10 | | Beginning Balance | | | 551.20 |

6/22/11 at 14:44:40.05

## Elk Associates Funding Corporation
## General Ledger
## For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| **5546 (cont.)** | 6/30/10 | | **Ending Balance** | | | **551.20** |
| | | | | | | |
| 5550<br>Audit and compliance | 7/1/09 | | Beginning Balance | | | |
| | 8/1/09 | | Beginning Balance | | | |
| | 9/1/09 | | Beginning Balance | | | |
| | 10/1/09 | | Beginning Balance | | | |
| | 11/1/09 | | Beginning Balance | | | |
| | 12/1/09 | | Beginning Balance | | | |
| | 1/1/10 | | Beginning Balance | | | |
| | 2/1/10 | | Beginning Balance | | | |
| | 3/1/10 | | Beginning Balance | | | |
| | 3/9/10<br>JUNE 09 | PJ | SMALL BUSINESS ADMINISTRATION - SBA EXAM FEE FOR FISCAL YEAR ENDED 6/30/09 | 6,822.00 | | |
| | 3/31/10<br>J/E 2BZ | GENJ | To allocate costs to AMTC | | 894.00 | |
| | | | Current Period Change | 6,822.00 | 894.00 | 5,928.00 |
| | 4/1/10 | | Beginning Balance | | | 5,928.00 |
| | 5/1/10 | | Beginning Balance | | | 5,928.00 |
| | 6/1/10 | | Beginning Balance | | | 5,928.00 |
| | 6/30/10<br>J/E 2 BZ | GENJ | TO ALLOCATE ADD'L COSTS TO AMERITRANS | | 384.00 | |
| | | | Current Period Change | | 384.00 | -384.00 |
| | | | | | | |
| | 6/30/10 | | **Ending Balance** | | | **5,544.00** |
| | | | | | | |
| 5561<br>Recruitment Fees | 7/1/09 | | Beginning Balance | | | |
| | 8/1/09 | | Beginning Balance | | | |
| | 9/1/09 | | Beginning Balance | | | |
| | 10/1/09 | | Beginning Balance | | | |
| | 11/1/09 | | Beginning Balance | | | |
| | 12/1/09 | | Beginning Balance | | | |
| | 1/1/10 | | Beginning Balance | | | |
| | 2/1/10 | | Beginning Balance | | | |
| | 3/1/10 | | Beginning Balance | | | |
| | 3/1/10 | PJ | GLOCAP SEARCH LLC | 13,750.00 | | |

6/22/11 at 14:44:40.09

Page: 323

## Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 5561 (cont.) | P11127 | | - P11127 FEE - BRUBEN | | | |
| | 3/31/10<br>J/E 2BZ | GENJ | To allocate costs to AMTC | | 1,803.00 | |
| | | | Current Period Change | 13,750.00 | 1,803.00 | 11,947.00 |
| | 4/1/10 | | Beginning Balance | | | 11,947.00 |
| | 5/1/10 | | Beginning Balance | | | 11,947.00 |
| | 6/1/10 | | Beginning Balance | | | 11,947.00 |
| | 6/30/10<br>J/E 2 BZ | GENJ | TO ALLOCATE ADD'L COSTS TO AMERITRANS | 31.00 | | |
| | | | Current Period Change | 31.00 | | 31.00 |
| | **6/30/10** | | **Ending Balance** | | | **11,978.00** |
| 5565<br>Telephone | 7/1/09 | | Beginning Balance | | | |
| | 7/1/09<br>J/E 2W2 | GENJ | June 2009 Elk AP accrual | | 527.70 | |
| | 7/4/09<br>070409 | PJ | VERIZON - 070409 - (212) 355-2449 | 527.70 | | |
| | 7/17/09<br>0709 REIM | PJ | MARGARET CHANCE - 0709 REIMBURSE PHONE | 67.91 | | |
| | 7/22/09<br>072209 | PJ | AMERICAN EXPRESS - TELEPHONE | 48.63 | | |
| | 7/23/09<br>072309 | PJ | T-MOBILE - (646) 339-3027 | 19.24 | | |
| | 7/31/09<br>073109 | PJ | IVAN WOLPERT - REIMBURSEMENT FOR BOARD MEETING CALL IN EXPENSES | 167.16 | | |
| | 7/31/09<br>0709 REIM | PJ | ELLEN WALKER - 0709 PHONE REIMBURSEMENT | 71.40 | | |
| | | | Current Period Change | 902.04 | 527.70 | 374.34 |
| | 8/1/09 | | Beginning Balance | | | 374.34 |
| | 8/4/09<br>080409 | PJ | VERIZON - 080409 (212) 355-2449 | 527.07 | | |
| | 8/10/09<br>0809 REIM | PJ | Lee A. Forlenza - 0709 PHONE REIMBURSEMENT | 110.00 | | |
| | 8/10/09<br>0809 REIM | PJ | Lee A. Forlenza - 0809 PHONE REIMBURSEMENT | 110.00 | | |
| | 8/20/09<br>AUG REIM | PJ | MARGARET CHANCE - REIMBURSEMENT AUG 09 | 67.91 | | |
| | 8/21/09<br>082109 | PJ | AMERICAN EXPRESS - 65001 - TELEPHONE | 43.93 | | |
| | | | Current Period Change | 858.91 | | 858.91 |
| | 9/1/09 | | Beginning Balance | | | 1,233.25 |
| | 9/4/09<br>090409 | PJ | VERIZON - 090409 212-355-2449 | 534.41 | | |

6/22/11 at 14:44:40.12                                                                    Page: 324

# Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 5565 (cont.) | 9/17/09 SEP 09 | PJ | MARGARET CHANCE - EXPENSE REIMBURSEMENT 9/09 | 67.91 | | |
| | 9/17/09 SEP 09 | PJ | Lee A. Forlenza - EXPENSE REIMBURSEMENT 9/09 | 110.00 | | |
| | 9/17/09 SEP 09 | PJ | ELLEN WALKER - EXPENSE REIMBURSEMENT 9/09 | 79.34 | | |
| | 9/21/09 SEP 09 | PJ | AMERICAN EXPRESS - 65001 - TELEPHONE | 43.93 | | |
| | 9/30/09 J/E 2BZ1 | GENJ | To allocate additional costs to Ameritrans | | 217.00 | |
| | | | Current Period Change | 835.59 | 217.00 | 618.59 |
| | 10/1/09 | | Beginning Balance | | | 1,851.84 |
| | 10/4/09 100409 | PJ | VERIZON - 100409 (212) 355-2449 | 546.36 | | |
| | 10/9/09 OCT 09 | PJ | ELLEN WALKER - EMW EXPENSE REIMBURSEMENT 10/09 | 79.34 | | |
| | 10/18/09 OCT 09 | PJ | MARGARET CHANCE - REIMBURSEMENT OF MONTHLY EXPENSES - OCT 09 | 67.91 | | |
| | 10/21/09 OCT 09 | PJ | Lee A. Forlenza - REIMBURSEMENT OF EXPENSES - SEP 09 | 110.00 | | |
| | 10/21/09 OCT 09 | PJ | Lee A. Forlenza - REIMBURSEMENT OF EXPENSES - OCT 09 | 110.00 | | |
| | 10/21/09 OCT 09 | PJ | AMERICAN EXPRESS - 65001 - TELEPHONE | 43.93 | | |
| | 10/31/09 J/E 2W2 | GENJ | To accrue for Oct 2009 | 537.00 | | |
| | | | Current Period Change | 1,494.54 | | 1,494.54 |
| | 11/1/09 | | Beginning Balance | | | 3,346.38 |
| | 11/1/09 J/E 2W2 | GENJ | To accrue for Oct 2009 | | 537.00 | |
| | 11/3/09 NOV 09 | PJ | ELLEN WALKER - MONTHLY EXPENSE REIMBURSEMENT - NOV 09 | 87.45 | | |
| | 11/4/09 110409 | PJ | VERIZON - 11/04/09 212-355-2449 | 537.00 | | |
| | 11/16/09 NOV 09 | PJ | MARGARET CHANCE - MONTHLY EXPENSE REIMBURSEMENT - NOV 09 | 67.91 | | |
| | 11/20/09 NOV 09 | PJ | AMERICAN EXPRESS - 65001 - TELEPHONE | 50.66 | | |
| | 11/30/09 NOV 09 | PJ | Lee A. Forlenza - REIMBURSEMENT OF MONTHLY EXPENSES - NOV 09 | 110.00 | | |

6/22/11 at 14:44:40.16                                                                    Page: 325

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| | | | - NOV 09 | | | |
| 5565 (cont.) | 11/30/09 J/E 2W2 | GENJ | To accrue | 537.98 | | |
| | | | Current Period Change | 1,391.00 | 537.00 | 854.00 |
| | 12/1/09 | | Beginning Balance | | | 4,200.38 |
| | 12/1/09 DEC 09 | PJ | ELLEN WALKER - REIMBURSEMENT OF EXPENSES - DEC 09 | 78.58 | | |
| | 12/1/09 J/E 2W2 | GENJ | To accrue | | 537.98 | |
| | 12/4/09 120409 | PJ | VERIZON - 120409 - 212-355-2449 - DEC 09 | 537.98 | | |
| | 12/18/09 Dec 09 | PJ | MARGARET CHANCE - REIMBURSEMENT OF EXPENSES - DEC 09 | 22.91 | | |
| | 12/18/09 Dec 09 | PJ | MARGARET CHANCE - REIMBURSEMENT OF EXPENSES - DEC 09 | 45.00 | | |
| | 12/21/09 DEC 09 | PJ | AMERICAN EXPRESS - 65001 - TELEPHONE | 43.93 | | |
| | 12/31/09 J/E 2W2 | GENJ | To accrue for Dec 09 | 538.86 | | |
| | 12/31/09 J/E 2 BZ | GENJ | TO ALLOCATE ADD'L COSTS TO AMERITRANS | | 620.00 | |
| | | | Current Period Change | 1,267.26 | 1,157.98 | 109.28 |
| | 1/1/10 | | Beginning Balance | | | 4,309.66 |
| | 1/1/10 J/E 2W2 | GENJ | To accrue for Dec 09 | | 538.86 | |
| | 1/4/10 JAN 2010 | PJ | ELLEN WALKER - REIMBURSEMENT OF EXPENSES | 80.68 | | |
| | 1/4/10 010410 | PJ | VERIZON - 010110 - 212-355-2449 | 538.86 | | |
| | 1/15/10 JAN 2010 | PJ | MARGARET CHANCE - REIMBURSEMENT OF MONTHLY EXPENSES | 47.91 | | |
| | 1/21/10 JAN 2010 | PJ | AMERICAN EXPRESS - 65001 - TELEPHONE | 43.93 | | |
| | 1/26/10 JAN 2010 | PJ | Lee A. Forlenza - REIMBURSEMENT OF EXPENSES - DEC 2009 | 110.00 | | |
| | 1/26/10 JAN 2010 | PJ | Lee A. Forlenza - REIMBURSEMENT OF EXPENSES - JAN 2010 | 110.00 | | |
| | 1/31/10 J/E 2W2 | GENJ | To accrue Verizon invoice | 546.93 | | |
| | | | Current Period Change | 1,478.31 | 538.86 | 939.45 |
| | 2/1/10 | | Beginning Balance | | | 5,249.11 |
| | 2/1/10 J/E 2W2 | GENJ | To accrue Verizon invoice | | 546.93 | |
| | 2/4/10 | PJ | VERIZON - 020410 - (312) 355 3449 | 546.93 | | |

6/22/11 at 14:44:40.20                                                                    Page: 326

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 5565 (cont.) | 020410 | | (212) 355-2449 | | | |
| | 2/8/10<br>FEB 2010 | PJ | ELLEN WALKER -<br>REIMBURSEMENT OF<br>EXPENSES - FEB 2010 | 80.68 | | |
| | 2/19/10<br>FEB 2010 | PJ | MARGARET CHANCE -<br>REIMBURSEMENT OF<br>EXPENSES - FEB 2010 | 70.90 | | |
| | 2/19/10<br>FEB 2010 | PJ | AMERICAN EXPRESS -<br>65001 - TELEPHONE | 43.93 | | |
| | 2/28/10<br>J/E 2W2 | GENJ | To accrue for Feb 2010 | 546.68 | | |
| | | | Current Period Change | 1,289.12 | 546.93 | 742.19 |
| | 3/1/10 | | Beginning Balance | | | 5,991.30 |
| | 3/1/10<br>J/E 2W2 | GENJ | To accrue for Feb 2010 | | 546.68 | |
| | 3/3/10<br>MAR 2010 | PJ | ELLEN WALKER -<br>REIMBURSEMENT OF<br>MONTHLY EXPENSES<br>- MAR 2010 | 80.68 | | |
| | 3/8/10<br>MAR 2010 | PJ | VERIZON - MAR 2010 -<br>(212) 355-2449 | 543.68 | | |
| | 3/12/10<br>MARCH 20 | PJ | Lee A. Forlenza -<br>REIMBURSEMENT OF<br>EXXPENSES - MAR<br>2010 | 110.00 | | |
| | 3/12/10<br>58222 | PJ | IVAN WOLPERT -<br>REIMBURSEMENT<br>FOR CONFERENCE<br>CALL EXPENSES | 78.51 | | |
| | 3/17/10<br>MAR 2010 | PJ | MARGARET CHANCE -<br>REIMBURSEMENT OF<br>EXPENSES - MAR 2010 | 77.90 | | |
| | 3/17/10<br>MAR 2010 | PJ | SILVIA MULLENS -<br>REIMBURSEMENT OF<br>EXPENSES - MAR 2010 | 101.44 | | |
| | 3/22/10<br>MAR 2010 | PJ | AMERICAN EXPRESS -<br>65001 - TELEPHONE | 46.60 | | |
| | 3/31/10<br>J/E 2W2 | GENJ | To accrue for March<br>2010 | 542.47 | | |
| | 3/31/10<br>J/E 2BZ | GENJ | To allocate costs to<br>AMTC | 48.00 | | |
| | | | Current Period Change | 1,629.28 | 546.68 | 1,082.60 |
| | 4/1/10 | | Beginning Balance | | | 7,073.90 |
| | 4/1/10<br>J/E 2W2 | GENJ | To accrue for March<br>2010 | | 542.47 | |
| | 4/4/10<br>040410 | PJ | VERIZON - 040410 | 542.47 | | |
| | 4/7/10<br>APR 2010 | PJ | ELLEN WALKER -<br>REIMBURSEMENT OF<br>EXPENSES - APRIL-<br>2010 | 79.54 | | |
| | 4/15/10<br>APR 2010 | PJ | MARGARET CHANCE -<br>REIMBURSEMENT OF<br>MONTHLY EXPENSES<br>- APR 2010 | 77.91 | | |
| | 4/21/10<br>APRIL 201 | PJ | AMERICAN EXPRESS -<br>65001 - TELEPHONE | 51.13 | | |

# Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 5565 (cont.) | 4/27/10 APR 2010 | PJ | Lee A. Forlenza - REIMBURSEMENT OF MONTHLY EXPENSES - APRIL 2010 | 110.00 | | |
| | 4/30/10 APR 2010 | PJ | SILVIA MULLENS - REIMBURSEMENT OF EXPENSES - APR 2010 | 101.44 | | |
| | 4/30/10 J/E 2W2 | GENJ | April 2010 Elk AP accrual | 587.57 | | |
| | | | Current Period Change | 1,550.06 | 542.47 | 1,007.59 |
| | 5/1/10 | | Beginning Balance | | | 8,081.49 |
| | 5/1/10 J/E 2W2 | GENJ | April 2010 Elk AP accrual | | 587.57 | |
| | 5/4/10 MAY 2010 | PJ | ELLEN WALKER - REIMBURSEMENT OF EXPENSES - MAY 2010 | 79.06 | | |
| | 5/4/10 050410 | PJ | VERIZON - 05/04/10 - 06/03/10 | 587.57 | | |
| | 5/19/10 MAY 2010 | PJ | MARGARET CHANCE - REIMBURSEMENT OF EXPENSES - MAY 2010 | 77.91 | | |
| | 5/21/10 MAY 2010 | PJ | AMERICAN EXPRESS - 65001 - TELEPHONE | 45.87 | | |
| | 5/31/10 J/E 2W2 | GENJ | To accrue for May 2010 | 606.72 | | |
| | | | Current Period Change | 1,397.13 | 587.57 | 809.56 |
| | 6/1/10 | | Beginning Balance | | | 8,891.05 |
| | 6/1/10 J/E 2W2 | GENJ | To accrue for May 2010 | | 606.72 | |
| | 6/4/10 060410 | PJ | VERIZON - BILLING DATE 6/4/10 | 606.72 | | |
| | 6/7/10 JUNE 2010 | PJ | ELLEN WALKER - REIMBURSEMENT OF EXPENSES - JUNE 2010 | 79.06 | | |
| | 6/18/10 JUNE 2010 | PJ | MARGARET CHANCE - REIMBURSEMENT OF EXPENSES - JUNE 2010 | 77.91 | | |
| | 6/21/10 JUNE 2010 | PJ | AMERICAN EXPRESS - 65001 - TELEPHONE | 45.83 | | |
| | 6/30/10 J/E 2 BZ | GENJ | TO ALLOCATE ADD'L COSTS TO AMERITRANS | | 818.00 | |
| | | | Current Period Change | 809.52 | 1,424.72 | -615.20 |
| | 6/30/10 | | **Ending Balance** | | | **8,275.85** |
| 5565.1 TELEPHONE - LIC | 7/1/09 | | Beginning Balance | | | |
| | 7/10/09 154 | PJ | TRUE TYPE PRINTING CO. INC. - 154 - JULY 2009 | 235.00 | | |
| | 7/19/09 071909 | PJ | VERIZON - 071909 - (718) 609-0771 | 271.17 | | |
| | | | Current Period Change | 506.17 | | 506.17 |

6/22/11 at 14:44:40.29

## Elk Associates Funding Corporation
## General Ledger
## For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 5565.1 (cont.) | 8/1/09 | | Beginning Balance | | | 506.17 |
| | 8/11/09 155 | PJ | TRUE TYPE PRINTING CO. INC. - 155 - TELEPHONE | 235.00 | | |
| | 8/19/09 081909 | PJ | VERIZON - 081909 - (718) 609-0771 | 271.55 | | |
| | | | Current Period Change | 506.55 | | 506.55 |
| | 9/1/09 | | Beginning Balance | | | 1,012.72 |
| | 9/11/09 156 | PJ | TRUE TYPE PRINTING CO. INC. - 156 - TELEPHONE | 235.00 | | |
| | 9/19/09 091909 | PJ | VERIZON - 091909 718-609-0771 | 277.97 | | |
| | 9/30/09 J/E 2BZ1 | GENJ | To allocate additional costs to Ameritrans | | 160.00 | |
| | | | Current Period Change | 512.97 | 160.00 | 352.97 |
| | 10/1/09 | | Beginning Balance | | | 1,365.69 |
| | 10/2/09 157 | PJ | TRUE TYPE PRINTING CO. INC. - 157 - TELEPHONE | 235.00 | | |
| | 10/19/09 101909 | PJ | VERIZON - (718) 609-0771 | 277.02 | | |
| | | | Current Period Change | 512.02 | | 512.02 |
| | 11/1/09 | | Beginning Balance | | | 1,877.71 |
| | 11/13/09 158 | PJ | TRUE TYPE PRINTING CO. INC. - 158 - TELEPHONE | 235.00 | | |
| | 11/19/09 111909 | PJ | VERIZON - 111909 - 718 609 0771 | 277.27 | | |
| | | | Current Period Change | 512.27 | | 512.27 |
| | 12/1/09 | | Beginning Balance | | | 2,389.98 |
| | 12/16/09 159 | PJ | TRUE TYPE PRINTING CO. INC. - TELEPHONE THRU 11/4/09 | 235.00 | | |
| | 12/16/09 160 | PJ | TRUE TYPE PRINTING CO. INC. - TELEPHONE - THRU 12/08/09 | 235.00 | | |
| | 12/19/09 121909 | PJ | VERIZON - 121909 718-609-0771 | 277.27 | | |
| | | | Current Period Change | 747.27 | | 747.27 |
| | 1/1/10 | | Beginning Balance | | | 3,137.25 |
| | 1/19/10 011910 | PJ | VERIZON - 011910 718-609-0771 | 283.53 | | |
| | | | Current Period Change | 283.53 | | 283.53 |
| | 2/1/10 | | Beginning Balance | | | 3,420.78 |
| | 2/17/10 161 | PJ | TRUE TYPE PRINTING CO. INC. - 161 - TELEPHONE | 235.00 | | |
| | 2/19/10 021910 | PJ | VERIZON - 021910 - 718-609-0771 | 279.69 | | |

6/22/11 at 14:44:40.32                                                                              Page: 329

# Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 5565.1 (cont.) | | | Current Period Change | 514.69 | | 514.69 |
| | 3/1/10 | | Beginning Balance | | | 3,935.47 |
| | 3/19/10<br>031910 | PJ | VERIZON - 031910 | 291.30 | | |
| | 3/26/10<br>162 | PJ | TRUE TYPE PRINTING<br>CO. INC. - 162 -<br>TELEPHONE - MAR<br>2010 | 235.00 | | |
| | 3/31/10<br>J/E 2BZ | GENJ | To allocate costs to<br>AMTC | | 446.00 | |
| | | | Current Period Change | 526.30 | 446.00 | 80.30 |
| | 4/1/10 | | Beginning Balance | | | 4,015.77 |
| | 4/19/10<br>041910 | PJ | VERIZON - 04/19/10 | 309.04 | | |
| | 4/23/10<br>163 | PJ | TRUE TYPE PRINTING<br>CO. INC. - 163 - APRIL<br>2010 TELEPHONE | 235.00 | | |
| | 4/23/10<br>164 | PJ | TRUE TYPE PRINTING<br>CO. INC. - 164 - MAY<br>2010 TELEPHONE | 235.00 | | |
| | | | Current Period Change | 779.04 | | 779.04 |
| | 5/1/10 | | Beginning Balance | | | 4,794.81 |
| | 5/19/10<br>051910 | PJ | VERIZON - BILLING<br>DATE - 5/19/10 | 308.13 | | |
| | | | Current Period Change | 308.13 | | 308.13 |
| | 6/1/10 | | Beginning Balance | | | 5,102.94 |
| | 6/18/10<br>165 | PJ | TRUE TYPE PRINTING<br>CO. INC. - 165 0 JUNE<br>TELEPHONE | 235.00 | | |
| | 6/19/10<br>061910 | PJ | VERIZON - 061910 | 315.88 | | |
| | 6/30/10<br>J/E 2 BZ | GENJ | TO ALLOCATE ADD'L<br>COSTS TO<br>AMERITRANS | | 567.00 | |
| | | | Current Period Change | 550.88 | 567.00 | -16.12 |
| | 6/30/10 | | Ending Balance | | | 5,086.82 |
| 5570<br>Moving and storage | 7/1/09 | | Beginning Balance | | | |
| | 8/1/09 | | Beginning Balance | | | |
| | 9/1/09 | | Beginning Balance | | | |
| | 10/1/09 | | Beginning Balance | | | |
| | 11/1/09 | | Beginning Balance | | | |
| | 12/1/09 | | Beginning Balance | | | |
| | 1/1/10 | | Beginning Balance | | | |
| | 2/1/10 | | Beginning Balance | | | |

6/22/11 at 14:44:40.37                                                                    Page: 330

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 5570 (cont.) | 3/1/10 | | Beginning Balance | | | |
| | 4/1/10 | | Beginning Balance | | | |
| | 5/1/10 | | Beginning Balance | | | |
| | 6/1/10 | | Beginning Balance | | | |
| | 6/1/10 JUNE 2010 | PJ | MARGARET CHANCE - REIMBURSEMENT OF VACATION EXPENSES NOT TAKEN DUE TO MOVING OF OFFICES BY 6/30/10 | 946.91 | | |
| | 6/24/10 062410 | PJ | GRANOFF WALKER FORLENZA PC - MOVING EXPENSES PAYABLE TO 4 THIRD AVE. LEASEHOLD LLC - 6/26 & 6/28/10 | 530.00 | | |
| | | | Current Period Change | 1,476.91 | | 1,476.91 |
| | 6/30/10 | | Ending Balance | | | 1,476.91 |
| 5600 REPAIRS & MAINTE | 7/1/09 | | Beginning Balance | | | |
| | 8/1/09 | | Beginning Balance | | | |
| | 9/1/09 | | Beginning Balance | | | |
| | 10/1/09 | | Beginning Balance | | | |
| | 11/1/09 | | Beginning Balance | | | |
| | 12/1/09 | | Beginning Balance | | | |
| | 1/1/10 | | Beginning Balance | | | |
| | 2/1/10 | | Beginning Balance | | | |
| | 3/1/10 | | Beginning Balance | | | |
| | 4/1/10 | | Beginning Balance | | | |
| | 4/21/10 APRIL 201 | PJ | AMERICAN EXPRESS - 65001 - REPAIRS & MAINT. | 217.95 | | |
| | | | Current Period Change | 217.95 | | 217.95 |
| | 5/1/10 | | Beginning Balance | | | 217.95 |
| | 5/21/10 MAY 2010 | PJ | AMERICAN EXPRESS - 65001 - REPAIRS & MAINTENANCE | | 78.05 | |
| | | | Current Period Change | | 78.05 | -78.05 |
| | 6/1/10 | | Beginning Balance | | | 139.90 |
| | 6/30/10 | | Ending Balance | | | 139.90 |
| 5605 | 7/1/09 | | Beginning Balance | | | |

6/22/11 at 14:44:40.40                                                                                                    Page: 331

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| Meals and entertainm | | | | | | |
| | 7/10/09<br>063009 | PJ | CAFE BASIL - 063009 | 33.26 | | |
| | 7/22/09<br>072209 | PJ | AMERICAN EXPRESS - M&E | 33.54 | | |
| | | | Current Period Change | 66.80 | | 66.80 |
| | 8/1/09 | | Beginning Balance | | | 66.80 |
| | 8/6/09<br>JULY 09 | PJ | CAFE BASIL - JULY 09 | 59.29 | | |
| | 8/21/09<br>082109 | PJ | AMERICAN EXPRESS - 65001 - M&E | 47.92 | | |
| | | | Current Period Change | 107.21 | | 107.21 |
| | 9/1/09 | | Beginning Balance | | | 174.01 |
| | 9/21/09<br>SEP 09 | PJ | AMERICAN EXPRESS - 65001 - M&E | 158.37 | | |
| | 9/30/09<br>SEP 09 | PJ | CAFE BASIL - SEP 09 | 79.93 | | |
| | | | Current Period Change | 238.30 | | 238.30 |
| | 10/1/09 | | Beginning Balance | | | 412.31 |
| | 10/18/09<br>OCT 09 | PJ | MARGARET CHANCE - REIMBURSEMENT OF MONTHLY EXPENSES - OCT 09 | 3.76 | | |
| | 10/21/09<br>OCT 09 | PJ | AMERICAN EXPRESS - 65001 - M&E | 200.11 | | |
| | | | Current Period Change | 203.87 | | 203.87 |
| | 11/1/09 | | Beginning Balance | | | 616.18 |
| | 11/30/09<br>113009 | PJ | JOHN LAIRD - REIMBURSEMENT OF EXPENSES 11/17/09 | 38.65 | | |
| | | | Current Period Change | 38.65 | | 38.65 |
| | 12/1/09 | | Beginning Balance | | | 654.83 |
| | 1/1/10 | | Beginning Balance | | | 654.83 |
| | 1/4/10<br>DEC 09 | PJ | CAFE BASIL - DEC 09 | 14.23 | | |
| | 1/21/10<br>JAN 2010 | PJ | AMERICAN EXPRESS - 65001 - M&E | 32.00 | | |
| | | | Current Period Change | 46.23 | | 46.23 |
| | 2/1/10 | | Beginning Balance | | | 701.06 |
| | 2/2/10<br>JAN 2010 | PJ | CAFE BASIL - JAN 2010 | 9.61 | | |
| | 2/19/10<br>FEB 2010 | PJ | MARGARET CHANCE - REIMBURSEMENT OF EXPENSES - FEB 2010 | 7.00 | | |
| | 2/19/10<br>FEB 2010 | PJ | AMERICAN EXPRESS - 65001 - M&E | 27.76 | | |
| | 2/28/10<br>FEB 2010 | PJ | CAFE BASIL - FEB 2010 | 9.93 | | |

6/22/11 at 14:44:40.43

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 5605 (cont.) | | | Current Period Change | 54.30 | | 54.30 |
| | 3/1/10 | | Beginning Balance | | | 755.36 |
| | 3/22/10<br>MAR 2010 | PJ | AMERICAN EXPRESS - 65001 - M&E | 63.44 | | |
| | 3/31/10<br>MAR 2010 | PJ | CAFE BASIL - MARCH 2010 | 23.18 | | |
| | | | Current Period Change | 86.62 | | 86.62 |
| | 4/1/10 | | Beginning Balance | | | 841.98 |
| | 4/21/10<br>APRIL 201 | PJ | AMERICAN EXPRESS - 65001 - M&E | 32.76 | | |
| | 4/30/10<br>APRIL 201 | PJ | CAFE BASIL - APRIL 2010 | 29.97 | | |
| | | | Current Period Change | 62.73 | | 62.73 |
| | 5/1/10 | | Beginning Balance | | | 904.71 |
| | 5/21/10<br>MAY 2010 | PJ | AMERICAN EXPRESS - 65001 - M&E | 130.44 | | |
| | | | Current Period Change | 130.44 | | 130.44 |
| | 6/1/10 | | Beginning Balance | | | 1,035.15 |
| | 6/18/10<br>JUNE 2010 | PJ | MARGARET CHANCE - REIMBURSEMENT OF EXPENSES - JUNE 2010 | 18.12 | | |
| | 6/21/10<br>JUNE 2010 | PJ | AMERICAN EXPRESS - 65001 - M&E | 177.65 | | |
| | | | Current Period Change | 195.77 | | 195.77 |
| | **6/30/10** | | **Ending Balance** | | | **1,230.92** |
| 5608<br>Travel | 7/1/09 | | Beginning Balance | | | |
| | 7/22/09<br>072209 | PJ | AMERICAN EXPRESS - TRAVEL | 561.51 | | |
| | 7/27/09<br>072709 | PJ | MARGARET CHANCE - 7/09 TRAVEL REIMBURSEMENT | 38.30 | | |
| | | | Current Period Change | 599.81 | | 599.81 |
| | 8/1/09 | | Beginning Balance | | | 599.81 |
| | 9/1/09 | | Beginning Balance | | | 599.81 |
| | 9/17/09<br>SEP 09 | PJ | MARGARET CHANCE - EXPENSE REIMBURSEMENT 9/09 | 32.80 | | |
| | | | Current Period Change | 32.80 | | 32.80 |
| | 10/1/09 | | Beginning Balance | | | 632.61 |
| | 10/18/09<br>OCT 09 | PJ | MARGARET CHANCE - REIMBURSEMENT OF MONTHLY EXPENSES - OCT 09 | 7.20 | | |
| | | | Current Period Change | 7.20 | | 7.20 |

6/22/11 at 14:44:40.48

## Elk Associates Funding Corporation
## General Ledger
## For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 5608 (cont.) | 11/1/09 | | Beginning Balance | | | 639.81 |
| | 11/16/09<br>NOV 09 | PJ | MARGARET CHANCE -<br>MONTHLY EXPENSE<br>REIMBURSEMENT -<br>NOV 09 | 14.00 | | |
| | 11/30/09<br>113009 | PJ | JOHN LAIRD -<br>REIMBURSEMENT OF<br>EXPENSES 11/17/09 | 12.00 | | |
| | | | Current Period Change | 26.00 | | 26.00 |
| | 12/1/09 | | Beginning Balance | | | 665.81 |
| | 1/1/10 | | Beginning Balance | | | 665.81 |
| | 2/1/10 | | Beginning Balance | | | 665.81 |
| | 2/19/10<br>FEB 2010 | PJ | MARGARET CHANCE -<br>REIMBURSEMENT OF<br>EXPENSES - FEB 2010 | 77.62 | | |
| | | | Current Period Change | 77.62 | | 77.62 |
| | 3/1/10 | | Beginning Balance | | | 743.43 |
| | 4/1/10 | | Beginning Balance | | | 743.43 |
| | 5/1/10 | | Beginning Balance | | | 743.43 |
| | 6/1/10 | | Beginning Balance | | | 743.43 |
| | **6/30/10** | | **Ending Balance** | | | **743.43** |
| 5610<br>Credit and transfer fee | 7/1/09 | | Beginning Balance | | | |
| | 7/6/09<br>06909814 | PJ | TRANS UNION -<br>06909814 -<br>1702F0000947 | 43.35 | | |
| | 7/27/09<br>07909635 | PJ | TRANS UNION -<br>07909635 | 43.35 | | |
| | 7/31/09<br>641895 | PJ | STRATEGIC<br>INFORMATION -<br>641895 | 22.39 | | |
| | | | Current Period Change | 109.09 | | 109.09 |
| | 8/1/09 | | Beginning Balance | | | 109.09 |
| | 8/27/09<br>08909619 | PJ | TRANS UNION -<br>08909619 | 43.55 | | |
| | | | Current Period Change | 43.55 | | 43.55 |
| | 9/1/09 | | Beginning Balance | | | 152.64 |
| | 9/28/09<br>09909561 | PJ | TRANS UNION -<br>09909561 | 43.55 | | |
| | | | Current Period Change | 43.55 | | 43.55 |
| | 10/1/09 | | Beginning Balance | | | 196.19 |
| | 10/27/09<br>10909520 | PJ | TRANS UNION -<br>10909520 | 43.55 | | |

Case 2:17-cv-03586-JFB-AYS   Document 47-2   Filed 10/06/17   Page 985 of 1053 PageID #: 1559

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 5610 (cont.) | | | Current Period Change | 43.55 | | 43.55 |
| | 11/1/09 | | Beginning Balance | | | 239.74 |
| | 11/27/09 11909373 | PJ | TRANS UNION - 11909373 | 43.55 | | |
| | | | Current Period Change | 43.55 | | 43.55 |
| | 12/1/09 | | Beginning Balance | | | 283.29 |
| | 12/28/09 12909187 | PJ | TRANS UNION - 12909187 | 43.55 | | |
| | | | Current Period Change | 43.55 | | 43.55 |
| | 1/1/10 | | Beginning Balance | | | 326.84 |
| | 1/27/10 01009193 | PJ | TRANS UNION - 01009193 | 43.55 | | |
| | | | Current Period Change | 43.55 | | 43.55 |
| | 2/1/10 | | Beginning Balance | | | 370.39 |
| | 2/27/10 02009224 | PJ | TRANS UNION - 02009224 | 43.55 | | |
| | | | Current Period Change | 43.55 | | 43.55 |
| | 3/1/10 | | Beginning Balance | | | 413.94 |
| | 3/27/10 03009168 | PJ | TRANS UNION - 03009168 | 43.55 | | |
| | | | Current Period Change | 43.55 | | 43.55 |
| | 4/1/10 | | Beginning Balance | | | 457.49 |
| | 4/27/10 04009142 | PJ | TRANS UNION - 04009142 | 43.55 | | |
| | | | Current Period Change | 43.55 | | 43.55 |
| | 5/1/10 | | Beginning Balance | | | 501.04 |
| | 5/27/10 05009109 | PJ | TRANS UNION - 05009109 | 43.55 | | |
| | | | Current Period Change | 43.55 | | 43.55 |
| | 6/1/10 | | Beginning Balance | | | 544.59 |
| | 6/10/10 773480 | PJ | STRATEGIC INFORMATION - 773480 | 11.55 | | |
| | 6/28/10 06008980 | PJ | TRANS UNION - 06008980 | 43.55 | | |
| | | | Current Period Change | 55.10 | | 55.10 |
| | 6/30/10 | | **Ending Balance** | | | **599.69** |
| 5612 Proxy solicitation | 7/1/09 | | Beginning Balance | | | |
| | 8/1/09 | | Beginning Balance | | | |
| | 9/1/09 | | Beginning Balance | | | |
| | 10/1/09 | | Beginning Balance | | | |

# Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID / Account Description | Date / Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 5612 (cont.) | 11/1/09 | | Beginning Balance | | | |
| | 11/20/09 NOV 09 | PJ | AMERICAN EXPRESS - 65001 - PROXY | 100.00 | | |
| | | | Current Period Change | 100.00 | | 100.00 |
| | 12/1/09 | | Beginning Balance | | | 100.00 |
| | 12/21/09 DEC 09 | PJ | AMERICAN EXPRESS - 65001 - PROXY | 100.00 | | |
| | | | Current Period Change | 100.00 | | 100.00 |
| | 1/1/10 | | Beginning Balance | | | 200.00 |
| | 2/1/10 | | Beginning Balance | | | 200.00 |
| | 3/1/10 | | Beginning Balance | | | 200.00 |
| | 4/1/10 | | Beginning Balance | | | 200.00 |
| | 5/1/10 | | Beginning Balance | | | 200.00 |
| | 6/1/10 | | Beginning Balance | | | 200.00 |
| | 6/30/10 | | **Ending Balance** | | | **200.00** |
| 5616 FILING FEES | 7/1/09 | | Beginning Balance | | | |
| | 7/22/09 072209 | PJ | AMERICAN EXPRESS - FILING FEES | 80.00 | | |
| | | | Current Period Change | 80.00 | | 80.00 |
| | 8/1/09 | | Beginning Balance | | | 80.00 |
| | 8/27/09 JUL/AUG R | PJ | Gary C. Granoff - REIMBURSEMENT - FILING FEES | 15.00 | | |
| | | | Current Period Change | 15.00 | | 15.00 |
| | 9/1/09 | | Beginning Balance | | | 95.00 |
| | 10/1/09 | | Beginning Balance | | | 95.00 |
| | 11/1/09 | | Beginning Balance | | | 95.00 |
| | 12/1/09 | | Beginning Balance | | | 95.00 |
| | 1/1/10 | | Beginning Balance | | | 95.00 |
| | 2/1/10 | | Beginning Balance | | | 95.00 |
| | 2/18/10 021810 | PJ | SMALL BUSINESS ADMINISTRATION - PROCESSING FEE RE: UPDATED BACKGROUND CHECK FOR S.MULLENS | 200.00 | | |
| | | | Current Period Change | 200.00 | | 200.00 |
| | 3/1/10 | | Beginning Balance | | | 295.00 |

6/22/11 at 14:44:40.59

Page: 336

# Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 5616 (cont.) | 3/22/10<br>MAR 2010 | PJ | AMERICAN EXPRESS -<br>65001 - FILING FEES | 90.00 | | |
| | | | Current Period Change | 90.00 | | 90.00 |
| | 4/1/10 | | Beginning Balance | | | 385.00 |
| | 4/22/10<br>APR 2010 | PJ | DEPT OF STATE -<br>CORPORATION FILING<br>FEE - EAF<br>COLLATERAL CORP. | 9.00 | | |
| | 4/30/10<br>27306 PER | PJ | DEPT OF STATE -<br>CORPORATION FILING<br>FEE - EAF<br>COLLATERAL CORP. | | 9.00 | |
| | 4/30/10<br>0430IDB1 | CDJ | ISRAEL DISCOUNT<br>BANK - UCC FILING<br>FEE | 52.50 | | |
| | 4/30/10<br>0430IDB2 | CDJ | ISRAEL DISCOUNT<br>BANK - UCC FILING<br>FEE | 55.50 | | |
| | | | Current Period Change | 117.00 | 9.00 | 108.00 |
| | 5/1/10 | | Beginning Balance | | | 493.00 |
| | 5/21/10<br>MAY 2010 | PJ | AMERICAN EXPRESS -<br>65001 - FILING FEES | 155.00 | | |
| | | | Current Period Change | 155.00 | | 155.00 |
| | 6/1/10 | | Beginning Balance | | | 648.00 |
| | 6/1/10<br>109955 | PJ | CT CORPORATION -<br>109955 - ONLINE<br>SERVICES | 157.18 | | |
| | | | Current Period Change | 157.18 | | 157.18 |
| | 6/30/10 | | Ending Balance | | | 805.18 |
| 5618<br>Search fee | 7/1/09 | | Beginning Balance | | | |
| | 8/1/09 | | Beginning Balance | | | |
| | 9/1/09 | | Beginning Balance | | | |
| | 10/1/09 | | Beginning Balance | | | |
| | 11/1/09 | | Beginning Balance | | | |
| | 12/1/09 | | Beginning Balance | | | |
| | 1/1/10 | | Beginning Balance | | | |
| | 2/1/10 | | Beginning Balance | | | |
| | 3/1/10 | | Beginning Balance | | | |
| | 3/2/10<br>3057 | PJ | GLOCAP SEARCH LLC<br>- 3057 - BACKGROUND<br>CHECK FOR BROOKE<br>RUBEN | 48.47 | | |
| | 3/22/10<br>MAR 2010 | PJ | AMERICAN EXPRESS -<br>65001 - SEARCH FEES | 53.00 | | |
| | | | Current Period Change | 101.47 | | 101.47 |

6/22/11 at 14:44:40.62

Page: 337

# Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 5618 (cont.) | 4/1/10 | | Beginning Balance | | | 101.47 |
| | 5/1/10 | | Beginning Balance | | | 101.47 |
| | 6/1/10 | | Beginning Balance | | | 101.47 |
| | 6/18/10<br>JUNE 2010 | PJ | MARGARET CHANCE - REIMBURSEMENT OF EXPENSES - JUNE 2010 | 40.00 | | |
| | | | Current Period Change | 40.00 | | 40.00 |
| | 6/30/10 | | **Ending Balance** | | | **141.47** |
| 5620<br>Computer | 7/1/09 | | Beginning Balance | | | |
| | 7/2/09<br>070209 | PJ | SURGE ELECTRONIC MEDIA GROUP L - HOSTED FILE SERVER 50% DEPOSIT, ONE MONTH FEE, ONE MONTH DEPOSIT | 8,000.00 | | |
| | 7/17/09<br>0709 REIM | PJ | MARGARET CHANCE - 0709 REIMBURSE COMPUTER | 29.95 | | |
| | 7/20/09<br>339 | PJ | PPCP INC. - 339 | 225.00 | | |
| | 7/22/09<br>072209 | PJ | AMERICAN EXPRESS - COMPUTER | 134.25 | | |
| | 7/30/09<br>340 | PJ | PPCP INC. - INVOICE #340 | 384.42 | | |
| | 7/31/09<br>0709 REIM | PJ | ELLEN WALKER - 0709 INTERNET REIMBURSEMENT | 29.95 | | |
| | 7/31/09<br>0709 REIM | PJ | SILVIA MULLENS - 0709 INTERNET REIMBURSEMENT | 53.49 | | |
| | 7/31/09<br>J/E 2M | GENJ | To record Prepaid expense amortization - Computer Maintenance | 1,445.00 | | |
| | | | Current Period Change | 10,302.06 | | 10,302.06 |
| | 8/1/09 | | Beginning Balance | | | 10,302.06 |
| | 8/1/09<br>1848 | PJ | SURGE ELECTRONIC MEDIA GROUP L - MONTHLY HOSTED FEE - AUG 09 | 2,050.00 | | |
| | 8/10/09<br>0809 REIM | PJ | Lee A. Forlenza - 0709 INTERNET REIMBURSEMENT | 29.95 | | |
| | 8/13/09<br>341 | PJ | PPCP INC. - 341 | 214.00 | | |
| | 8/20/09<br>AUG REIM | PJ | MARGARET CHANCE - REIMBURSEMENT AUG 09 | 29.95 | | |
| | 8/20/09<br>AUG REIM | PJ | Lee A. Forlenza - REIMBURSEMENT AUG 09 | 29.95 | | |
| | 8/20/09<br>AUG REIM | PJ | SILVIA MULLENS - REIMBURSEMENT AUG 09 | 53.49 | | |

6/22/11 at 14:44:40.65

Page: 338

# Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID / Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 5620 (cont.) | 8/21/09 082109 | PJ | AUG 09 AMERICAN EXPRESS - 65001 - COMPUTER | 25.90 | | |
| | 8/27/09 JUL/AUG R | PJ | Gary C. Granoff - REIMBURSEMENT - COMPUTER EQUIP | 205.27 | | |
| | 8/27/09 JUL/AUG R | PJ | Gary C. Granoff - REIMBURSEMENT - JULY & AUG | 99.90 | | |
| | 8/27/09 1929 | PJ | SURGE ELECTRONIC MEDIA GROUP L - 1929 - SET UP ADDITIONAL MEMORY, CPU & DRIVE SPACE | 906.00 | | |
| | 8/27/09 1922 | PJ | SURGE ELECTRONIC MEDIA GROUP L - 1922 - DOMAIN NAME | 299.00 | | |
| | 8/31/09 J/E 2 W2 | GENJ | TO ACCRUE COMPUTER EXPENSE | 1,772.60 | | |
| | 8/31/09 J/E 2-M | GENJ | COMPUTER MAINTENANCE AUG 2009 | 1,445.00 | | |
| | | | Current Period Change | 7,161.01 | | 7,161.01 |
| | 9/1/09 | | Beginning Balance | | | 17,463.07 |
| | 9/1/09 1931 | PJ | SURGE ELECTRONIC MEDIA GROUP L - MONTHLY HOSTED FEE & UPGRADE | 2,140.00 | | |
| | 9/1/09 1931A | PJ | SURGE ELECTRONIC MEDIA GROUP L - 1931A | 43.13 | | |
| | 9/1/09 J/E 2 W2 | GENJ | TO ACCRUE COMPUTER EXPENSE | | 1,772.60 | |
| | 9/3/09 468 | PJ | PPCP INC. - 468 - JUNE 30, 2009 | 1,250.00 | | |
| | 9/8/09 20550 | PJ | JUSLER ELECTRICAL CORP. - 20550 - INSTALL 2 DATA LINES | 700.07 | | |
| | 9/17/09 SEP 09 | PJ | MARGARET CHANCE - EXPENSE REIMBURSEMENT 9/09 | 29.95 | | |
| | 9/17/09 SEP 09 | PJ | Lee A. Forlenza - EXPENSE REIMBURSEMENT 9/09 | 29.95 | | |
| | 9/17/09 SEP 09 | PJ | ELLEN WALKER - EXPENSE REIMBURSEMENT 9/09 | 29.95 | | |
| | 9/21/09 SEP 09 | PJ | AMERICAN EXPRESS - 65001 - COMPUTER | 25.90 | | |
| | 9/30/09 J/E 2BZ1 | GENJ | To allocate additional costs to Ameritrans | | 1,074.00 | |
| | | | Current Period Change | 4,248.95 | 2,846.60 | 1,402.35 |
| | 10/1/09 | | Beginning Balance | | | 18,865.42 |
| | 10/1/09 1949 | PJ | SURGE ELECTRONIC MEDIA GROUP L - 1949 - MONTHLY HOSTED FEE | 2,183.13 | | |

6/22/11 at 14:44:40.70                                                              Page: 339

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID / Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 5620 (cont.) | 10/5/09 OCT 09 | PJ | SILVIA MULLENS - REIMBURSEMENT OF MONTHLY EXPENSES - SEPT 09 | 53.49 | | |
| | 10/5/09 OCT 09 | PJ | SILVIA MULLENS - REIMBURSEMENT OF MONTHLY EXPENSES - OCT 09 | 53.49 | | |
| | 10/8/09 082909 | PJ | ADRIAN R JONES - E-MAIL SUPPORT 8/29/09 | 93.75 | | |
| | 10/9/09 OCT 09 | PJ | ELLEN WALKER - EMW EXPENSE REIMBURSEMENT 10/09 | 29.95 | | |
| | 10/18/09 OCT 09 | PJ | MARGARET CHANCE - REIMBURSEMENT OF MONTHLY EXPENSES - OCT 09 | 29.95 | | |
| | 10/21/09 OCT 09 | PJ | Lee A. Forlenza - REIMBURSEMENT OF EXPENSES - OCT 09 | 29.95 | | |
| | 10/21/09 OCT 09 | PJ | AMERICAN EXPRESS - 65001 - COMPUTER | 97.75 | | |
| | 10/31/09 J/E 2M | GENJ | To expense Computer Maintenance fee | 725.84 | | |
| | | | Current Period Change | 3,297.30 | | 3,297.30 |
| | 11/1/09 | | Beginning Balance | | | 22,162.72 |
| | 11/1/09 1986 | PJ | SURGE ELECTRONIC MEDIA GROUP L - MONTHLY HOSTED FEE, SUPPORT & UPGRADE | 2,183.13 | | |
| | 11/3/09 NOV 09 | PJ | ELLEN WALKER - MONTHLY EXPENSE REIMBURSEMENT - NOV 09 | 29.95 | | |
| | 11/5/09 344 | PJ | PPCP INC. - INVOICE #344 | 225.00 | | |
| | 11/9/09 345 | PJ | PPCP INC. - INVOICE #345 | 175.00 | | |
| | 11/13/09 NOV 09 | PJ | SILVIA MULLENS - MONTHLY EXPENSE REIMBURSEMENT - NOV 09 | 53.49 | | |
| | 11/16/09 NOV 09 | PJ | MARGARET CHANCE - MONTHLY EXPENSE REIMBURSEMENT - NOV 09 | 29.95 | | |
| | 11/16/09 2056 | PJ | SURGE ELECTRONIC MEDIA GROUP L - 2056 - ADOBE ACROBAT - 5 USERS | 1,317.84 | | |
| | 11/20/09 NOV 09 | PJ | AMERICAN EXPRESS - 65001 - COMPUTER | 25.90 | | |
| | 11/30/09 NOV 09 | PJ | Lee A. Forlenza - REIMBURSEMENT OF MONTHLY EXPENSES - NOV 09 | 29.95 | | |
| | 11/30/09 J/E 2M | GENJ | To expense NCIC Maintenance Fee | 725.84 | | |

6/22/11 at 14:44:40.73

Page: 340

# Elk Associates Funding Corporation
## General Ledger
## For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 5620 (cont.) | | | Current Period Change | 4,796.05 | | 4,796.05 |
| | 12/1/09 | | Beginning Balance | | | 26,958.77 |
| | 12/1/09<br>2071 | PJ | SURGE ELECTRONIC MEDIA GROUP L - 2071 - MONTHLY HOSTED FEE, SUPPORT & UPGRADE | 2,183.13 | | |
| | 12/1/09<br>DEC 09 | PJ | ELLEN WALKER - REIMBURSEMENT OF EXPENSES - DEC 09 | 29.95 | | |
| | 12/14/09<br>DEC 09 | PJ | SILVIA MULLENS - REIMBURSEMENT OF EXPENSES - DEC 09 | 53.49 | | |
| | 12/18/09<br>Dec 09 | PJ | MARGARET CHANCE - REIMBURSEMENT OF EXPENSES - DEC 09 | 29.95 | | |
| | 12/21/09<br>DEC 09 | PJ | AMERICAN EXPRESS - 65001 - COMPUTER | 73.90 | | |
| | 12/22/09<br>2114 | PJ | SURGE ELECTRONIC MEDIA GROUP L - 2114 - 7/6/09 - SET UP DATA CENTER & NYC OFFICE | 4,151.25 | | |
| | 12/22/09<br>2115 | PJ | SURGE ELECTRONIC MEDIA GROUP L - 2115 - 7/6/09 - SONIC FIREWALL, MANAGED SWITCH, UPS | 1,679.81 | | |
| | 12/31/09<br>J/E 2M | GENJ | Computer Maintenance Dec 2009 | 725.84 | | |
| | 12/31/09<br>J/E 2 BZ | GENJ | TO ALLOCATE ADD'L COSTS TO AMERITRANS | 40.00 | | |
| | | | Current Period Change | 8,967.32 | | 8,967.32 |
| | 1/1/10 | | Beginning Balance | | | 35,926.09 |
| | 1/1/10<br>2132 | PJ | SURGE ELECTRONIC MEDIA GROUP L - 2132 - MONTHLY HOSTED FEE, SUPPORT & UPGRADE | 2,183.13 | | |
| | 1/4/10<br>JAN 2010 | PJ | ELLEN WALKER - REIMBURSEMENT OF EXPENSES | 29.95 | | |
| | 1/6/10<br>346 | PJ | PPCP INC. - INVOICE #346 | 50.00 | | |
| | 1/15/10<br>JAN 2010 | PJ | MARGARET CHANCE - REIMBURSEMENT OF MONTHLY EXPENSES | 29.95 | | |
| | 1/21/10<br>JAN 2010 | PJ | AMERICAN EXPRESS - 65001 - COMPUTER | 25.90 | | |
| | 1/26/10<br>JAN 2010 | PJ | Lee A. Forlenza - REIMBURSEMENT OF EXPENSES - DEC 2009 | 29.95 | | |
| | 1/26/10<br>JAN 2010 | PJ | Lee A. Forlenza - REIMBURSEMENT OF EXPENSES - JAN 2010 | 29.95 | | |
| | | | Current Period Change | 2,378.83 | | 2,378.83 |

6/22/11 at 14:44:40.77

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 5620 (cont.) | 2/1/10 | | Beginning Balance | | | 38,304.92 |
| | 2/1/10 347 | PJ | PPCP INC. - INVOICE #347 | 400.00 | | |
| | 2/1/10 2197 | PJ | SURGE ELECTRONIC MEDIA GROUP L - 2197 - MONTHLY HOSTED FEE - FEB 2010 | 2,183.13 | | |
| | 2/8/10 FEB 2010 | PJ | ELLEN WALKER - REIMBURSEMENT OF EXPENSES - FEB 2010 | 29.95 | | |
| | 2/17/10 FEB 2010 | PJ | SILVIA MULLENS - REIMBURSEMENT OF EXPENSES - JAN & FEB 2010 | 106.98 | | |
| | 2/19/10 FEB 2010 | PJ | MARGARET CHANCE - REIMBURSEMENT OF EXPENSES - FEB 2010 | 39.60 | | |
| | 2/19/10 FEB 2010 | PJ | AMERICAN EXPRESS - 65001 - COMPUTER | 102.90 | | |
| | | | Current Period Change | 2,862.56 | | 2,862.56 |
| | 3/1/10 | | Beginning Balance | | | 41,167.48 |
| | 3/1/10 2253 | PJ | SURGE ELECTRONIC MEDIA GROUP L - 2253 - MONTHLY HOSTED FEE - MAR 2010 | 2,183.13 | | |
| | 3/3/10 MAR 2010 | PJ | ELLEN WALKER - REIMBURSEMENT OF MONTHLY EXPENSES - MAR 2010 | 29.95 | | |
| | 3/12/10 MARCH 20 | PJ | Lee A. Forlenza - REIMBURSEMENT OF EXXPENSES - FEB 2010 | 29.95 | | |
| | 3/12/10 MARCH 20 | PJ | Lee A. Forlenza - REIMBURSEMENT OF EXXPENSES - MAR 2010 | 29.95 | | |
| | 3/17/10 MAR 2010 | PJ | MARGARET CHANCE - REIMBURSEMENT OF EXPENSES - MAR 2010 | 39.95 | | |
| | 3/17/10 MAR 2010 | PJ | SILVIA MULLENS - REIMBURSEMENT OF EXPENSES - MAR 2010 | 53.49 | | |
| | 3/22/10 MAR 2010 | PJ | AMERICAN EXPRESS - 65001 - COMPUTER | 25.90 | | |
| | 3/31/10 J/E 2W2 | GENJ | To accrue for March 2010 | 214.58 | | |
| | 3/31/10 J/E 2BZ | GENJ | To allocate costs to AMTC | 49.00 | | |
| | | | Current Period Change | 2,655.90 | | 2,655.90 |
| | 4/1/10 | | Beginning Balance | | | 43,823.38 |
| | 4/1/10 2303 | PJ | SURGE ELECTRONIC MEDIA GROUP L - 2303 - MONTHLY | 2,183.13 | | |

6/22/11 at 14:44:40.80

Page: 342

# Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| | | | 2303 - MONTHLY HOSTED FEE - APRIL 2010 | | | |
| 5620 (cont.) | 4/1/10<br>J/E 2W2 | GENJ | To accrue for March 2010 | | 214.58 | |
| | 4/7/10<br>APR 2010 | PJ | ELLEN WALKER - REIMBURSEMENT OF EXPENSES - APRIL-2010 | 29.95 | | |
| | 4/13/10<br>2189 | PJ | SURGE ELECTRONIC MEDIA GROUP L - 2189 - 1/22/10 - ONE TIME CHARGE BLACKBERRY SERVICE FOR SM & MC | 214.58 | | |
| | 4/15/10<br>APR 2010 | PJ | MARGARET CHANCE - REIMBURSEMENT OF MONTHLY EXPENSES - APR 2010 | 39.95 | | |
| | 4/21/10<br>APRIL 201 | PJ | AMERICAN EXPRESS - 65001 - COMPUTER | 25.90 | | |
| | 4/27/10<br>APR 2010 | PJ | Lee A. Forlenza - REIMBURSEMENT OF MONTHLY EXPENSES - APRIL 2010 | 29.95 | | |
| | 4/30/10<br>APR 2010 | PJ | SILVIA MULLENS - REIMBURSEMENT OF EXPENSES - APR 2010 | 53.49 | | |
| | | | Current Period Change | 2,576.95 | 214.58 | 2,362.37 |
| | 5/1/10 | | Beginning Balance | | | 46,185.75 |
| | 5/1/10<br>2339 | PJ | SURGE ELECTRONIC MEDIA GROUP L - 2339 - MONTHLY HOSTED FEE - MAY 2010 | 2,678.13 | | |
| | 5/3/10<br>2367 | PJ | SURGE ELECTRONIC MEDIA GROUP L - 2367 - PEERSYNC SOFTWARE & REAL-TIME DR | 5,996.00 | | |
| | 5/4/10<br>MAY 2010 | PJ | ELLEN WALKER - REIMBURSEMENT OF EXPENSES - MAY 2010 | 29.95 | | |
| | 5/19/10<br>MAY 2010 | PJ | MARGARET CHANCE - REIMBURSEMENT OF EXPENSES - MAY 2010 | 39.95 | | |
| | 5/21/10<br>MAY 2010 | PJ | AMERICAN EXPRESS - 65001 - COMPUTER | 25.90 | | |
| | 5/23/10<br>2441 | PJ | SURGE ELECTRONIC MEDIA GROUP L - 2441 - PARKING REIMBURSEMENT 5/19/10 | 38.07 | | |
| | 5/23/10<br>2441 | PJ | SURGE ELECTRONIC MEDIA GROUP L - 2441 - PARKING REIMBURSEMENT 4/16/10 | 23.00 | | |

6/22/11 at 14:44:40.85

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 5620 (cont.) | | | Current Period Change | 8,831.00 | | 8,831.00 |
| | 6/1/10 | | Beginning Balance | | | 55,016.75 |
| | 6/1/10 2413 | PJ | SURGE ELECTRONIC MEDIA GROUP L - MONTHLY HOSTED FEE - JUNE 2010 | 2,678.13 | | |
| | 6/2/10 2444 | PJ | SURGE ELECTRONIC MEDIA GROUP L - 2444 - 5/24/10 HARDWARE & PARKING | 155.06 | | |
| | 6/7/10 JUNE 2010 | PJ | ELLEN WALKER - REIMBURSEMENT OF EXPENSES - JUNE 2010 | 29.95 | | |
| | 6/18/10 JUNE 2010 | PJ | MARGARET CHANCE - REIMBURSEMENT OF EXPENSES - JUNE 2010 | 39.95 | | |
| | 6/21/10 JUNE 2010 | PJ | AMERICAN EXPRESS - 65001 - COMPUTER | 25.90 | | |
| | 6/23/10 JUNE 2010 | PJ | Gary C. Granoff - GCG REIMBURSABLE EXPENSES 7/09-6/10 | 716.58 | | |
| | 6/30/10 J/E 2W2 | GENJ | To accrue for Jan-June 2010 | 2,264.60 | | |
| | 6/30/10 J/E 2 BZ | GENJ | TO ALLOCATE ADD'L COSTS TO AMERITRANS | | 4,582.00 | |
| | | | Current Period Change | 5,910.17 | 4,582.00 | 1,328.17 |
| | 6/30/10 | | Ending Balance | | | 56,344.92 |
| 5620.1 COMPUTER - LIC | 7/1/09 | | Beginning Balance | | | |
| | 7/31/09 14131 | PJ | NCIC IT CONSULTING INC. - SERVICE TICKET #16244 | 260.10 | | |
| | | | Current Period Change | 260.10 | | 260.10 |
| | 8/1/09 | | Beginning Balance | | | 260.10 |
| | 9/1/09 | | Beginning Balance | | | 260.10 |
| | 9/8/09 14269 | PJ | NCIC IT CONSULTING INC. - 14269 - TEST FOR P/T & OLS, SET UP 5 NEW WORKSTATIONS | 2,593.60 | | |
| | 9/8/09 14270 | PJ | NCIC IT CONSULTING INC. - 14270 - LIC POWER ISSUE 5/13-5/15/09 | 522.60 | | |
| | 9/30/09 J/E 2BZ1 | GENJ | To allocate additional costs to Ameritrans | | 355.00 | |
| | | | Current Period Change | 3,116.20 | 355.00 | 2,761.20 |
| | 10/1/09 | | Beginning Balance | | | 3,021.30 |
| | 11/1/09 | | Beginning Balance | | | 3,021.30 |

6/22/11 at 14:44:40.88

Page: 344

## Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 5620.1 (cont.) | 12/1/09 | | Beginning Balance | | | 3,021.30 |
| | 1/1/10 | | Beginning Balance | | | 3,021.30 |
| | 2/1/10 | | Beginning Balance | | | 3,021.30 |
| | 3/1/10 | | Beginning Balance | | | 3,021.30 |
| | 3/31/10<br>J/E 2BZ | GENJ | To allocate costs to AMTC | | 88.00 | |
| | | | Current Period Change | | 88.00 | -88.00 |
| | 4/1/10 | | Beginning Balance | | | 2,933.30 |
| | 5/1/10 | | Beginning Balance | | | 2,933.30 |
| | 6/1/10 | | Beginning Balance | | | 2,933.30 |
| | 6/30/10<br>J/E 2 BZ | GENJ | TO ALLOCATE ADD'L COSTS TO AMERITRANS | | 190.00 | |
| | | | Current Period Change | | 190.00 | -190.00 |
| | 6/30/10 | | **Ending Balance** | | | **2,743.30** |
| 5621.00<br>LOAN PROCESSING | 7/1/09 | | Beginning Balance | | | |
| | 8/1/09 | | Beginning Balance | | | |
| | 9/1/09 | | Beginning Balance | | | |
| | 9/30/09<br>J/E 2W2 | GENJ | To accrue for Sept 09 | 2,510.55 | | |
| | | | Current Period Change | 2,510.55 | | 2,510.55 |
| | 10/1/09 | | Beginning Balance | | | 2,510.55 |
| | 10/1/09<br>J/E 2W2 | GENJ | To accrue for Sept 09 | | 2,510.55 | |
| | 10/7/09<br>428516 | PJ | MARKIT WSO CORPORATION - 2ND QTR 2009 DATA SERVICES FEE | 964.09 | | |
| | 10/9/09<br>428825 | PJ | MARKIT WSO CORPORATION - 428825 - 3RD QTR 2009 DATA SERVICES BILLING | 2,510.55 | | |
| | | | Current Period Change | 3,474.64 | 2,510.55 | 964.09 |
| | 11/1/09 | | Beginning Balance | | | 3,474.64 |
| | 12/1/09 | | Beginning Balance | | | 3,474.64 |
| | 1/1/10 | | Beginning Balance | | | 3,474.64 |
| | 2/1/10 | | Beginning Balance | | | 3,474.64 |
| | 3/1/10 | | Beginning Balance | | | 3,474.64 |
| | 3/26/10 | PJ | MARKIT WSO CORPORATION | 2,460.74 | | |

# Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 5621.00 (cont.) | 90019567 | | CORPORATION - 90019567 1/22/10 - 4TH QTR 2009 DATA SERVICES BILLING | | | |
| | | | Current Period Change | 2,460.74 | | 2,460.74 |
| | 4/1/10 | | Beginning Balance | | | 5,935.38 |
| | 5/1/10 | | Beginning Balance | | | 5,935.38 |
| | 5/31/10 90023809 | PJ | MARKIT WSO CORPORATION - 90023809 4/23/10 - 1ST QTR DATA SERVICES BILLING | 1,996.71 | | |
| | | | Current Period Change | 1,996.71 | | 1,996.71 |
| | 6/1/10 | | Beginning Balance | | | 7,932.09 |
| | **6/30/10** | | **Ending Balance** | | | **7,932.09** |
| 5623 Office | 7/1/09 | | Beginning Balance | | | |
| | 7/16/09 0417455 | PJ | THE WEEKS-LERMAN GROUP - 0417455 | 75.59 | | |
| | 7/16/09 0417473 | PJ | THE WEEKS-LERMAN GROUP - 0417473 | 93.74 | | |
| | 7/17/09 071809 | PJ | TIME WARNER CABLE OF NYC - 8150200070374290 | 79.69 | | |
| | 7/17/09 0418582 | PJ | THE WEEKS-LERMAN GROUP - 0418582 | 78.30 | | |
| | 7/27/09 072709 | PJ | MARGARET CHANCE - 7/09 OFFICE REIMBURSEMENT | 46.48 | | |
| | 7/28/09 072809 | PJ | STAPLES - 072809 | 355.98 | | |
| | | | Current Period Change | 729.78 | | 729.78 |
| | 8/1/09 | | Beginning Balance | | | 729.78 |
| | 8/10/09 025341133 | PJ | SAFEGUARD BUSINESS SYSTEMS - 025341133 | 137.03 | | |
| | 8/18/09 081809 | PJ | TIME WARNER CABLE OF NYC - 08/18/09 - 09/17/09 | 79.69 | | |
| | 8/21/09 082109 | PJ | AMERICAN EXPRESS - 65001 - OFFICE | 34.17 | | |
| | | | Current Period Change | 250.89 | | 250.89 |
| | 9/1/09 | | Beginning Balance | | | 980.67 |
| | 9/15/09 091809 | PJ | TIME WARNER CABLE OF NYC - 09/18/09 - 10/17/09 | 79.69 | | |
| | 9/17/09 SEP 09 | PJ | MARGARET CHANCE - EXPENSE REIMBURSEMENT 9/09 | 2.50 | | |
| | 9/21/09 SEP 09 | PJ | AMERICAN EXPRESS - 65001 - OFFICE | 32.52 | | |

6/22/11 at 14:44:40.96

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 5623 (cont.) | 9/25/09 092509 | PJ | STAPLES - 092509 | 644.30 | | |
| | 9/30/09 082609 | PJ | STAPLES - 082609 | 289.53 | | |
| | 9/30/09 J/E 2BZ1 | GENJ | To allocate additional costs to Ameritrans | | 213.00 | |
| | | | Current Period Change | 1,048.54 | 213.00 | 835.54 |
| | 10/1/09 | | Beginning Balance | | | 1,816.21 |
| | 10/18/09 101809 | PJ | TIME WARNER CABLE OF NYC - 10/18/09 - 11/17/09 | 79.70 | | |
| | 10/27/09 102709 | PJ | STAPLES - 10/27/09 | 225.54 | | |
| | | | Current Period Change | 305.24 | | 305.24 |
| | 11/1/09 | | Beginning Balance | | | 2,121.45 |
| | 11/11/09 5521995-RI | PJ | CT CORPORATION - 5521995-RI SUBSISTENCE CERTIFICATE & DISBURSEMENTS | 113.50 | | |
| | 11/16/09 111809 | PJ | TIME WARNER CABLE OF NYC - 11/18/09 - 12/17/09 | 79.70 | | |
| | 11/19/09 0530455 | PJ | THE WEEKS-LERMAN GROUP - 0530455 | 24.32 | | |
| | 11/20/09 NOV 09 | PJ | AMERICAN EXPRESS - 65001 - OFFICE | 81.11 | | |
| | 11/25/09 112509 | PJ | STAPLES - 112509 | 967.11 | | |
| | 11/25/09 025615171 | PJ | SAFEGUARD BUSINESS SYSTEMS - 025615171 | 139.21 | | |
| | | | Current Period Change | 1,404.95 | | 1,404.95 |
| | 12/1/09 | | Beginning Balance | | | 3,526.40 |
| | 12/14/09 121809 | PJ | TIME WARNER CABLE OF NYC - 12/18/09 - 1/17/10 | 79.70 | | |
| | 12/28/09 122809 | PJ | STAPLES - 122809 | 1,680.30 | | |
| | 12/31/09 J/E 2 BZ | GENJ | TO ALLOCATE ADD'L COSTS TO AMERITRANS | | 434.00 | |
| | | | Current Period Change | 1,760.00 | 434.00 | 1,326.00 |
| | 1/1/10 | | Beginning Balance | | | 4,852.40 |
| | 1/18/10 011810 | PJ | TIME WARNER CABLE OF NYC - 01/18/10 - 02/17/10 | 79.70 | | |
| | 1/21/10 JAN 2010 | PJ | AMERICAN EXPRESS - 65001 - OFFICE | 19.99 | | |
| | 1/25/10 0522200 | PJ | THE WEEKS-LERMAN GROUP - 11/10/09 0522200 | 40.29 | | |
| | 1/25/10 0586883 | PJ | THE WEEKS-LERMAN GROUP - INV - 0586883 | 145.29 | | |
| | 1/27/10 | PJ | STAPLES - 012710 | 1,477.62 | | |

# Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 5623 (cont.) | 012710 | | | | | |
| | | | Current Period Change | 1,762.89 | | 1,762.89 |
| | 2/1/10 | | Beginning Balance | | | 6,615.29 |
| | 2/18/10 021810 | PJ | TIME WARNER CABLE OF NYC - 02/18/10 - 03/17/10 | 79.67 | | |
| | 2/24/10 FEB 2010 | PJ | STAPLES - FEB 2010 | 1,213.66 | | |
| | | | Current Period Change | 1,293.33 | | 1,293.33 |
| | 3/1/10 | | Beginning Balance | | | 7,908.62 |
| | 3/3/10 700010150 | PJ | PEACHTREE FORMS - 70001015067 | 119.17 | | |
| | 3/5/10 025869703 | PJ | SAFEGUARD BUSINESS SYSTEMS - 025869703 | 61.50 | | |
| | 3/8/10 INV-06257 | PJ | THE WEEKS-LERMAN GROUP - INV-0625780 | 65.98 | | |
| | 3/11/10 025883438 | PJ | SAFEGUARD BUSINESS SYSTEMS - 025883438 | 137.93 | | |
| | 3/15/10 1367186 | PJ | GNEIL - 1367186 | 15.00 | | |
| | 3/18/10 031810 | PJ | TIME WARNER CABLE OF NYC - 03/18/10 - 04/17/10 | 79.67 | | |
| | 3/22/10 MAR 2010 | PJ | AMERICAN EXPRESS - 65001 - OFFICE | 94.66 | | |
| | 3/23/10 INV-06412 | PJ | THE WEEKS-LERMAN GROUP - INV-0641230 | 42.95 | | |
| | 3/28/10 032810 | PJ | STAPLES - 032810 | 203.65 | | |
| | 3/31/10 J/E 2BZ | GENJ | To allocate costs to AMTC | | 474.00 | |
| | | | Current Period Change | 820.51 | 474.00 | 346.51 |
| | 4/1/10 | | Beginning Balance | | | 8,255.13 |
| | 4/11/10 1401808 | PJ | GNEIL - 1401808 | 57.99 | | |
| | 4/15/10 INV-06611 | PJ | THE WEEKS-LERMAN GROUP - INV-0661121 | 16.33 | | |
| | 4/18/10 20100001 | PJ | TIME WARNER CABLE OF NYC - 20100001 - 4/18/10-5/17/10 | 86.14 | | |
| | 4/21/10 APRIL 201 | PJ | AMERICAN EXPRESS - 65001 - OFFICE | 148.05 | | |
| | 4/27/10 APR 2010 | PJ | STAPLES - APR 2010 | 392.12 | | |
| | | | Current Period Change | 700.63 | | 700.63 |
| | 5/1/10 | | Beginning Balance | | | 8,955.76 |
| | 5/4/10 12109 | PJ | NLFDNYC, INC. - 12109 - PLANT MAINTENANCE | 163.31 | | |
| | 5/18/10 20100002 | PJ | TIME WARNER CABLE OF NYC - 20100002 - 5/18/10-6/17/10 | 86.14 | | |
| | 5/21/10 | PJ | AMERICAN EXPRESS - 65001 - OFFICE | 9.91 | | |

6/22/11 at 14:44:41.04

Page: 348

# Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 5623 (cont.) | MAY 2010 5/28/10 MAY 2010 | PJ | 65001 - OFFICE STAPLES - MAY 2010 | 297.20 | | |
| | | | Current Period Change | 556.56 | | 556.56 |
| | 6/1/10 | | Beginning Balance | | | 9,512.32 |
| | 6/3/10 INV-07026 | PJ | THE WEEKS-LERMAN GROUP - INV-0702627 | 61.51 | | |
| | 6/15/10 061810 | PJ | TIME WARNER CABLE OF NYC - 06/18/10 - 07/17/10 | 86.15 | | |
| | 6/27/10 JUNE 2010 | PJ | STAPLES - JUNE 2010 | 1,000.05 | | |
| | 6/30/10 J/E 2 BZ | GENJ | TO ALLOCATE ADD'L COSTS TO AMERITRANS | | 748.00 | |
| | | | Current Period Change | 1,147.71 | 748.00 | 399.71 |
| | **6/30/10** | | **Ending Balance** | | | **9,912.03** |
| 5624 WEBSITE COSTS/SE | 7/1/09 | | Beginning Balance | | | |
| | 8/1/09 | | Beginning Balance | | | |
| | 8/15/09 26054 | PJ | COMPUWEB - 26054 - MONTHLY HOSTING SERVICE - JUL, AUG & SEP 2009 | 149.85 | | |
| | | | Current Period Change | 149.85 | | 149.85 |
| | 9/1/09 | | Beginning Balance | | | 149.85 |
| | 9/30/09 J/E 2BZ1 | GENJ | To allocate additional costs to Ameritrans | 3,617.00 | | |
| | | | Current Period Change | 3,617.00 | | 3,617.00 |
| | 10/1/09 | | Beginning Balance | | | 3,766.85 |
| | 11/1/09 | | Beginning Balance | | | 3,766.85 |
| | 11/15/09 26347 | PJ | COMPUWEB - 26347 | 149.85 | | |
| | | | Current Period Change | 149.85 | | 149.85 |
| | 12/1/09 | | Beginning Balance | | | 3,916.70 |
| | 12/31/09 J/E 2 BZ | GENJ | TO ALLOCATE ADD'L COSTS TO AMERITRANS | 3,507.00 | | |
| | | | Current Period Change | 3,507.00 | | 3,507.00 |
| | 1/1/10 | | Beginning Balance | | | 7,423.70 |
| | 2/1/10 | | Beginning Balance | | | 7,423.70 |
| | 2/15/10 26747 | PJ | COMPUWEB - MONTHLY HOSTING SERVICE - JAN-MAR 2010 | 149.85 | | |
| | | | Current Period Change | 149.85 | | 149.85 |

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 5624 (cont.) | 3/1/10 | | Beginning Balance | | | 7,573.55 |
| | 3/31/10<br>J/E 2BZ | GENJ | To allocate costs to AMTC | | 129.00 | |
| | | | Current Period Change | | 129.00 | -129.00 |
| | 4/1/10 | | Beginning Balance | | | 7,444.55 |
| | 5/1/10 | | Beginning Balance | | | 7,444.55 |
| | 5/15/10<br>27253 | PJ | COMPUWEB - 27253 - MONTHLY HOSYING SERVICES - JAN-MAR 2010 | 59.85 | | |
| | | | Current Period Change | 59.85 | | 59.85 |
| | 6/1/10 | | Beginning Balance | | | 7,504.40 |
| | 6/21/10<br>JUNE 2010 | PJ | AMERICAN EXPRESS - 65001 - WEBSITE PRINTING | 4,360.05 | | |
| | 6/30/10<br>J/E 2 BZ | GENJ | TO ALLOCATE ADD'L COSTS TO AMERITRANS | 1,988.00 | | |
| | | | Current Period Change | 6,348.05 | | 6,348.05 |
| | **6/30/10** | | **Ending Balance** | | | **13,852.45** |
| 5625<br>Bank charges | 7/1/09 | | Beginning Balance | | | |
| | 7/2/09<br>0702WT | CRJ | Loan Track deposits - BANK CHARGE | 10.00 | | |
| | 7/6/09<br>0706IDBBK | CDJ | ISRAEL DISCOUNT BANK - STOP PAYMENT #27015 PINNACLE COMMERCIAL | 30.00 | | |
| | 7/9/09<br>0709SIGBK | CDJ | SIGNATURE BANK - BANK CHARGE - BOUNCED CHECK E&Y | 10.00 | | |
| | 7/10/09<br>0710BL | CDJ | BANK LEUMI - BANK CHARGE | 45.46 | | |
| | 7/20/09<br>0720CITI | CDJ | CITIBANK - SERVICE CHARGE | 118.11 | | |
| | | | Current Period Change | 213.57 | | 213.57 |
| | 8/1/09 | | Beginning Balance | | | 213.57 |
| | 8/3/09<br>0803WT2 | CRJ | Loan Track deposits - BANK CHARGE | 10.00 | | |
| | 8/11/09<br>0811BL | CDJ | BANK LEUMI - BANK CHARGE | 44.01 | | |
| | 8/18/09<br>0818CITI | CDJ | CITIBANK - BANK CHARGE | 94.91 | | |
| | 8/24/09<br>0824IDB2 | CDJ | ISRAEL DISCOUNT BANK - BANK CONFIRMATION FEE | 25.00 | | |
| | 8/24/09<br>0824IDB1 | CDJ | ISRAEL DISCOUNT BANK - BANK CONFIRMATION FEE | 25.00 | | |
| | | | Current Period Change | 198.92 | | 198.92 |

6/22/11 at 14:44:41.12

# Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 5625 (cont.) | 9/1/09 | | Beginning Balance | | | 412.49 |
| | 9/1/09 0901WT6 | CRJ | Loan Track deposits - BANK CHARGE | 10.00 | | |
| | 9/17/09 0917SBK | CDJ | SIGNATURE BANK - BOUNCED CHECK FEE | 10.00 | | |
| | 9/18/09 0918CITI | CDJ | CITIBANK - SERVICE CHARGE | 46.79 | | |
| | 9/23/09 0923SBK | CDJ | SIGNATURE BANK - BOUNCED CHECK FEE | 10.00 | | |
| | 9/24/09 0924BL | CDJ | BANK LEUMI - BANK CHARGE | 42.53 | | |
| | 9/30/09 J/E 2BZ1 | GENJ | To allocate additional costs to Ameritrans | 119.00 | | |
| | | | Current Period Change | 238.32 | | 238.32 |
| | 10/1/09 | | Beginning Balance | | | 650.81 |
| | 10/2/09 1002WT2 | CRJ | Loan Track deposits - BANK CHARGE | 10.00 | | |
| | 10/15/09 1015CITIB | CDJ | CITIBANK - SAFE DEPOSIT BOX FEE | 816.56 | | |
| | 10/16/09 1016BL | CDJ | BANK LEUMI - BANK CHARGE | 45.54 | | |
| | 10/20/09 1020CITI | CDJ | CITIBANK - BANK CHARGES | 192.67 | | |
| | 10/31/09 5219V | CDJ | JP MORGAN CHASE - AUDIT CONFIRMATION FEE | | 25.00 | |
| | 10/31/09 AJE8 | GENJ | Ck# 10645 10/12/09 - $4,521.09 debited by Citibank $4,521.08 | | 0.01 | |
| | | | Current Period Change | 1,064.77 | 25.01 | 1,039.76 |
| | 11/1/09 | | Beginning Balance | | | 1,690.57 |
| | 11/2/09 1102WT | CDJ | SMALL BUSINESS ADMINISTRATION - BANK CHARGE | 50.00 | | |
| | 11/2/09 1102WT1 | CRJ | Loan Track deposits - BANK CHARGE | 10.00 | | |
| | 11/3/09 1103WT1 | CRJ | Loan Track deposits - BANK CHARGE | 10.00 | | |
| | 11/6/09 1106COB | CDJ | CAPITAL ONE BANK - SAFE DEPOSIT BOX FEE | 125.21 | | |
| | 11/18/09 1118CITI | CDJ | CITIBANK - BANK CHARGES | 45.63 | | |
| | 11/23/09 1123BL | CDJ | BANK LEUMI - BANK CHARGE | 49.14 | | |
| | | | Current Period Change | 289.98 | | 289.98 |
| | 12/1/09 | | Beginning Balance | | | 1,980.55 |
| | 12/1/09 1201wt1 | CRJ | Loan Track deposits - BANK CHARGE | 10.00 | | |
| | 12/2/09 1202WT1 | CRJ | MISCELLANEOUS DEPOSIT - BANK CHARGE | 10.00 | | |
| | 12/3/09 1203WT | CDJ | BANK OF NEW YORK - BANK CHARGE | 50.00 | | |
| | 12/4/09 1204SBIC | CRJ | MISCELLANEOUS DEPOSIT - BANK CHARGE | 10.00 | | |

6/22/11 at 14:44:41.20

## Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 5625 (cont.) | | | CHARGE | | | |
| | 12/18/09 1218WT1 | CDJ | BANK OF MONTREAL - BANK CHARGE | 50.00 | | |
| | 12/18/09 1218WT2 | CDJ | DEUTSCHE BANK - BANK CHARGE | 50.00 | | |
| | 12/18/09 1218BL | CDJ | BANK LEUMI - BANK CHARGES | 44.02 | | |
| | 12/18/09 1218WT3 | CDJ | BANK OF NEW YORK - BANK CHARGE | 50.00 | | |
| | 12/31/09 1231Wt10 | CRJ | Loan Track deposits - BANK CHARGE | 10.00 | | |
| | 12/31/09 J/E 2 BZ | GENJ | TO ALLOCATE ADD'L COSTS TO AMERITRANS | | 42.00 | |
| | | | Current Period Change | 284.02 | 42.00 | 242.02 |
| | 1/1/10 | | Beginning Balance | | | 2,222.57 |
| | 1/4/10 0104WT1 | CRJ | Loan Track deposits - BANK CHARGE | 10.00 | | |
| | 1/7/10 0107WT | CDJ | ELK ASSOCIATES FUNDING - BANK CHARGE | 50.00 | | |
| | 1/19/10 0119WT | CRJ | Loan Track deposits - BANK CHARGE | 10.00 | | |
| | 1/20/10 0120CITI | CDJ | CITIBANK - BANK CHARGES | 99.30 | | |
| | 1/20/10 0120BL | CDJ | BANK LEUMI - BANK CHARGE | 42.49 | | |
| | 1/29/10 0129wt1 | CRJ | Loan Track deposits - BANK CHARGE | 10.00 | | |
| | 1/29/10 0129wt2 | CRJ | Loan Track deposits - BANK CHARGE | 10.00 | | |
| | | | Current Period Change | 231.79 | | 231.79 |
| | 2/1/10 | | Beginning Balance | | | 2,454.36 |
| | 2/1/10 0201WT1 | CRJ | Loan Track deposits - BANK CHARGE | 10.00 | | |
| | 2/1/10 0201IDB | CDJ | ISRAEL DISCOUNT BANK - AMENDMENT FEE | 750.00 | | |
| | 2/8/10 0208COB | CDJ | CAPITAL ONE BANK - SAFE DEPOSIT BOX FEE | 310.29 | | |
| | 2/11/10 0211WT1 | CRJ | Loan Track deposits - BANK CHARGE | 10.00 | | |
| | 2/12/10 0212WT | CRJ | Loan Track deposits - BANK CHARGE | 10.00 | | |
| | 2/24/10 0224BL | CDJ | BANK LEUMI - BANK CHARGES | 35.86 | | |
| | | | Current Period Change | 1,126.15 | | 1,126.15 |
| | 3/1/10 | | Beginning Balance | | | 3,580.51 |
| | 3/2/10 0302wt1 | CRJ | Loan Track deposits - BANK CHARGE | 10.00 | | |
| | 3/22/10 0322WT | CDJ | BANK OF NEW YORK - BANK CHARGE | 50.00 | | |
| | 3/22/10 0322BL | CDJ | BANK LEUMI - BANK CHARGES | 35.43 | | |
| | 3/31/10 J/E 2BZ | GENJ | To allocate costs to AMTC | 159.00 | | |

# Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 5625 (cont.) | | | Current Period Change | 254.43 | | 254.43 |
| | 4/1/10 | | Beginning Balance | | | 3,834.94 |
| | 4/1/10 0401WT | CDJ | HARRIS N.A. - BANK CHARGE | 50.00 | | |
| | 4/1/10 0401wt1 | CRJ | Loan Track deposits - BANK CHARGE | 10.00 | | |
| | 4/20/10 0420CITI | CDJ | CITIBANK - SERVICE CHARGE | 182.32 | | |
| | 4/21/10 0421BL | CDJ | BANK LEUMI - BANK CHARGES | 24.23 | | |
| | 4/22/10 0422WT | CRJ | Loan Track deposits - BANK CHARGE | 10.00 | | |
| | 4/22/10 0422IDB | CDJ | ISRAEL DISCOUNT BANK - BANK CONFIRMATION FEE | 25.00 | | |
| | 4/30/10 0430wt1 | CRJ | Loan Track deposits - BANK CHARGE | 10.00 | | |
| | | | Current Period Change | 311.55 | | 311.55 |
| | 5/1/10 | | Beginning Balance | | | 4,146.49 |
| | 5/3/10 0503WT3 | CRJ | Loan Track deposits - BANK CHARGE | 10.00 | | |
| | 5/17/10 0517WT | CRJ | Loan Track deposits - BANK CHARGE | 10.00 | | |
| | 5/18/10 0518CITI | CDJ | CITIBANK - SERVICE CHARGE | 90.09 | | |
| | 5/18/10 0518BL | CDJ | BANK LEUMI - BANK CHARGE | 22.80 | | |
| | 5/19/10 0519WT | CDJ | JEFFERIES & COMPANY INC. - BANK CHARGE | 50.00 | | |
| | 5/25/10 0525WT | CRJ | Loan Track deposits - BANK CHARGE | 10.00 | | |
| | | | Current Period Change | 192.89 | | 192.89 |
| | 6/1/10 | | Beginning Balance | | | 4,339.38 |
| | 6/1/10 0601wt1 | CRJ | Loan Track deposits - BANK CHARGE | 10.00 | | |
| | 6/8/10 0608WT | CDJ | CPM BUILDERS INC. d/b/a MG &CO - BANK CHARGE | 50.00 | | |
| | 6/16/10 0616BL | CDJ | BANK LEUMI - BANK CHARGES | 21.94 | | |
| | 6/18/10 0618Citi | CDJ | CITIBANK - SERVICE CHARGE | 5.62 | | |
| | 6/21/10 0618IDB | CDJ | ISRAEL DISCOUNT BANK - WIRE TRANSFER FEE RE: PAYMENT OF STURSBERG BILL #1001 | 50.00 | | |
| | 6/29/10 0629D01 | CRJ | Loan Track deposits - BANK ERROR DEPOSIT S/B $10,597.30 | 0.24 | | |
| | 6/30/10 J/E 2 BZ | GENJ | TO ALLOCATE ADD'L COSTS TO AMERITRANS | | 247.00 | |
| | | | Current Period Change | 137.80 | 247.00 | -109.20 |

6/22/11 at 14:44:41.27

Page: 353

# Elk Associates Funding Corporation
## General Ledger
## For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 5625 (cont.) | 6/30/10 | | Ending Balance | | | 4,230.18 |
| 5628.00 MARKET DATA | 7/1/09 | | Beginning Balance | | | |
| | 8/1/09 | | Beginning Balance | | | |
| | 9/1/09 | | Beginning Balance | | | |
| | 9/7/09 560055099 | PJ | BLOOMBERG FINANCE LP - DOCKET & DOCUMENT RETRIEVALS 5/1/09-8/31/09 | 370.78 | | |
| | 9/7/09 560055099 | PJ | BLOOMBERG FINANCE LP - 5600550999 | 1,159.65 | | |
| | 9/30/09 J/E 2M | GENJ | To expense Bloomberg Fee | 2,068.63 | | |
| | 9/30/09 J/E 2BZ1 | GENJ | To allocate additional costs to Ameritrans | | 378.00 | |
| | | | Current Period Change | 3,599.06 | 378.00 | 3,221.06 |
| | 10/1/09 | | Beginning Balance | | | 3,221.06 |
| | 10/31/09 J/E 2M | GENJ | To expense Bloomberg fee | 2,068.63 | | |
| | | | Current Period Change | 2,068.63 | | 2,068.63 |
| | 11/1/09 | | Beginning Balance | | | 5,289.69 |
| | 11/30/09 J/E 2M | GENJ | To expense Bloomberg Fee | 2,068.63 | | |
| | | | Current Period Change | 2,068.63 | | 2,068.63 |
| | 12/1/09 | | Beginning Balance | | | 7,358.32 |
| | 12/7/09 560063642 | PJ | BLOOMBERG FINANCE LP - 5600636428 - 9/1/09 - 11/1/09 | 1,159.65 | | |
| | 12/7/09 560063642 | PJ | BLOOMBERG FINANCE LP - 5600636429 - DOCKET & DOCUMENT RETRIEVALS | 128.39 | | |
| | 12/31/09 J/E 2M | GENJ | To expense Bloomberg fee | 2,068.63 | | |
| | 12/31/09 J/E 2 BZ | GENJ | TO ALLOCATE ADD'L COSTS TO AMERITRANS | | 932.00 | |
| | | | Current Period Change | 3,356.67 | 932.00 | 2,424.67 |
| | 1/1/10 | | Beginning Balance | | | 9,782.99 |
| | 1/31/10 J/E 2M | GENJ | To expense Bloomberg fee - Jan 2010 | 2,068.63 | | |
| | | | Current Period Change | 2,068.63 | | 2,068.63 |
| | 2/1/10 | | Beginning Balance | | | 11,851.62 |
| | 2/28/10 | GENJ | To expense Bloomberg | 2,068.62 | | |

6/22/11 at 14:44:41.32                                                                 Page: 354

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 5628.00 (cont.) | J/E 2M | | Fee | | | |
| | | | Current Period Change | 2,068.62 | | 2,068.62 |
| | 3/1/10 | | Beginning Balance | | | 13,920.24 |
| | 3/3/10<br>560072045 | PJ | BLOOMBERG FINANCE LP - 5600720459 - 12/1/09-2/28/09 | 1,253.27 | | |
| | 3/31/10<br>J/E 2M | GENJ | TO EXPENSE BLOOMBERG FEE | 2,068.63 | | |
| | 3/31/10<br>J/E 2BZ | GENJ | To allocate costs to AMTC | | 1,122.00 | |
| | | | Current Period Change | 3,321.90 | 1,122.00 | 2,199.90 |
| | 4/1/10 | | Beginning Balance | | | 16,120.14 |
| | 4/30/10<br>J/E 2M | GENJ | To expense Bloomberg fee | 2,068.63 | | |
| | | | Current Period Change | 2,068.63 | | 2,068.63 |
| | 5/1/10 | | Beginning Balance | | | 18,188.77 |
| | 5/31/10<br>J/E 2M | GENJ | To expense Bloomberg Fee | 2,068.62 | | |
| | | | Current Period Change | 2,068.62 | | 2,068.62 |
| | 6/1/10 | | Beginning Balance | | | 20,257.39 |
| | 6/7/10<br>560080893 | PJ | BLOOMBERG FINANCE LP - 5600808931 - DOCUMENT & DOCKET RETRIEVALS | 299.00 | | |
| | 6/7/10<br>560080893 | PJ | BLOOMBERG FINANCE LP - 5600808932 | 1,300.08 | | |
| | 6/30/10<br>J/E 2M | GENJ | To expense Bloomberg Fee | 2,068.63 | | |
| | 6/30/10<br>J/E 2 BZ | GENJ | TO ALLOCATE ADD'L COSTS TO AMERITRANS | | 23,925.00 | |
| | | | Current Period Change | 3,667.71 | 23,925.00 | -20,257.29 |
| | 6/30/10 | | Ending Balance | | | 0.10 |
| 5630<br>Transfer agent | 7/1/09 | | Beginning Balance | | | |
| | 7/31/09<br>137086 | PJ | Continental Stock Transfer & - 137086 - JULY 09 | 900.00 | | |
| | | | Current Period Change | 900.00 | | 900.00 |
| | 8/1/09 | | Beginning Balance | | | 900.00 |
| | 8/24/09<br>082409 | PJ | NATIONAL REGULATORY SERVICES - 44190 - 1005706 | | 3,050.00 | |
| | 8/31/09<br>138090 | PJ | Continental Stock Transfer & - 138090 | 1,000.00 | | |
| | | | Current Period Change | 1,000.00 | 3,050.00 | -2,050.00 |

6/22/11 at 14:44:41.35

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 5630 (cont.) | 9/1/09 | | Beginning Balance | | | -1,150.00 |
| | 9/15/09<br>48031 | PJ | NATIONAL REGULATORY SERVICES - #48031 2/22/09 | 81.11 | | |
| | 9/30/09<br>139091 | PJ | Continental Stock Transfer & - 139091 | 925.20 | | |
| | | | Current Period Change | 1,006.31 | | 1,006.31 |
| | 10/1/09 | | Beginning Balance | | | -143.69 |
| | 10/31/09<br>140181 | PJ | Continental Stock Transfer & - 140181 | 964.94 | | |
| | | | Current Period Change | 964.94 | | 964.94 |
| | 11/1/09 | | Beginning Balance | | | 821.25 |
| | 11/30/09<br>141415 | PJ | Continental Stock Transfer & - 141415 | 1,311.09 | | |
| | | | Current Period Change | 1,311.09 | | 1,311.09 |
| | 12/1/09 | | Beginning Balance | | | 2,132.34 |
| | 12/31/09<br>142084 | PJ | Continental Stock Transfer & - 142084 | 2,213.60 | | |
| | | | Current Period Change | 2,213.60 | | 2,213.60 |
| | 1/1/10 | | Beginning Balance | | | 4,345.94 |
| | 1/31/10<br>143083 | PJ | Continental Stock Transfer & - 143083 | 1,317.38 | | |
| | | | Current Period Change | 1,317.38 | | 1,317.38 |
| | 2/1/10 | | Beginning Balance | | | 5,663.32 |
| | 3/1/10 | | Beginning Balance | | | 5,663.32 |
| | 3/18/10<br>144081 | PJ | Continental Stock Transfer & - 144081 2/28/10 | 1,595.77 | | |
| | 3/31/10<br>145083 | PJ | Continental Stock Transfer & - 145083 | 952.11 | | |
| | | | Current Period Change | 2,547.88 | | 2,547.88 |
| | 4/1/10 | | Beginning Balance | | | 8,211.20 |
| | 4/30/10<br>146081 | PJ | Continental Stock Transfer & - 146081 | 1,097.55 | | |
| | | | Current Period Change | 1,097.55 | | 1,097.55 |
| | 5/1/10 | | Beginning Balance | | | 9,308.75 |
| | 5/31/10<br>147407 | PJ | Continental Stock Transfer & - 147407 | 1,283.44 | | |
| | | | Current Period Change | 1,283.44 | | 1,283.44 |
| | 6/1/10 | | Beginning Balance | | | 10,592.19 |
| | 6/30/10<br>148078 | PJ | Continental Stock Transfer & - 148078 | 1,881.07 | | |
| | 6/30/10 | GENJ | TO ALLOCATE ADD'L COSTS TO | 9,826.00 | | |

# Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 5630 (cont.) | J/E 2 BZ | | COSTS TO AMERITRANS | | | |
| | | | Current Period Change | 11,707.07 | | 11,707.07 |
| | 6/30/10 | | **Ending Balance** | | | **22,299.26** |
| 5631<br>NASDAQ LISTING EX | 7/1/09 | | Beginning Balance | | | |
| | 8/1/09 | | Beginning Balance | | | |
| | 9/1/09 | | Beginning Balance | | | |
| | 10/1/09 | | Beginning Balance | | | |
| | 11/1/09 | | Beginning Balance | | | |
| | 12/1/09 | | Beginning Balance | | | |
| | 12/31/09<br>J/E 2 BZ | GENJ | TO ALLOCATE ADD'L COSTS TO AMERITRANS | 5,184.00 | | |
| | | | Current Period Change | 5,184.00 | | 5,184.00 |
| | 1/1/10 | | Beginning Balance | | | 5,184.00 |
| | 2/1/10 | | Beginning Balance | | | 5,184.00 |
| | 3/1/10 | | Beginning Balance | | | 5,184.00 |
| | 3/31/10<br>J/E 2BZ | GENJ | To allocate costs to AMTC | 1,613.00 | | |
| | | | Current Period Change | 1,613.00 | | 1,613.00 |
| | 4/1/10 | | Beginning Balance | | | 6,797.00 |
| | 5/1/10 | | Beginning Balance | | | 6,797.00 |
| | 6/1/10 | | Beginning Balance | | | 6,797.00 |
| | 6/30/10 | | **Ending Balance** | | | **6,797.00** |
| 5635<br>Investigator fee | 7/1/09 | | Beginning Balance | | | |
| | 8/1/09 | | Beginning Balance | | | |
| | 9/1/09 | | Beginning Balance | | | |
| | 10/1/09 | | Beginning Balance | | | |
| | 11/1/09 | | Beginning Balance | | | |
| | 11/18/09<br>2009/ACC/ | PJ | SECURE CONCEPTS LLC - MOBILE FINGERPRINTING TRAVEL FEE & 3 CARDS | 141.54 | | |
| | | | Current Period Change | 141.54 | | 141.54 |
| | 12/1/09 | | Beginning Balance | | | 141.54 |
| | 1/1/10 | | Beginning Balance | | | 141.54 |

6/22/11 at 14:44:41.43

## Elk Associates Funding Corporation
## General Ledger
## For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 5635 (cont.) | 2/1/10 | | Beginning Balance | | | 141.54 |
| | 3/1/10 | | Beginning Balance | | | 141.54 |
| | 4/1/10 | | Beginning Balance | | | 141.54 |
| | 5/1/10 | | Beginning Balance | | | 141.54 |
| | 5/5/10 2181621 | PJ | KENNETH A EDELSTEIN - 218621 - FINGERPRINTS S.MULLENS - SBA | 100.00 | | |
| | | | Current Period Change | 100.00 | | 100.00 |
| | 6/1/10 | | Beginning Balance | | | 241.54 |
| | **6/30/10** | | **Ending Balance** | | | **241.54** |
| 5640.1 Insurance - Other | 7/1/09 | | Beginning Balance | | | |
| | 7/31/09 RJE2 | GENJ | To expense insurance | 7,857.21 | | |
| | | | Current Period Change | 7,857.21 | | 7,857.21 |
| | 8/1/09 | | Beginning Balance | | | 7,857.21 |
| | 8/31/09 RJE 2 | GENJ | TO EXPENSE INSURANCE FOR AUGUST 2009 | 1,447.28 | | |
| | 8/31/09 RJE 2 | GENJ | TO EXPENSE INSURANCE FOR AUGUST 2009 | 519.00 | | |
| | 8/31/09 RJE 2 | GENJ | TO EXPENSE INSURANCE FOR AUGUST 2009 | 2,866.08 | | |
| | 8/31/09 RJE 2 | GENJ | TO EXPENSE INSURANCE FOR AUGUST 2009 | 2,600.96 | | |
| | 8/31/09 RJE 2 | GENJ | TO EXPENSE INSURANCE FOR AUGUST 2009 | 505.92 | | |
| | 8/31/09 RJE 2 | GENJ | TO EXPENSE INSURANCE FOR AUGUST 2009 | 390.67 | | |
| | 8/31/09 RJE 2 | GENJ | TO EXPENSE INSURANCE FOR AUGUST 2009 | 451.92 | | |
| | | | Current Period Change | 8,781.83 | | 8,781.83 |
| | 9/1/09 | | Beginning Balance | | | 16,639.04 |
| | 9/30/09 RJE2 | GENJ | To expense insurance | 9,163.34 | | |
| | 9/30/09 J/E 2BZ1 | GENJ | To allocate additional costs to Ameritrans | | 3,112.00 | |
| | | | Current Period Change | 9,163.34 | 3,112.00 | 6,051.34 |
| | 10/1/09 | | Beginning Balance | | | 22,690.38 |
| | 10/31/09 RJE2 | GENJ | To expense insurance | 9,163.33 | | |

6/22/11 at 14:44:41.46

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 5640.1 (cont.) | | | Current Period Change | 9,163.33 | | 9,163.33 |
| | 11/1/09 | | Beginning Balance | | | 31,853.71 |
| | 11/30/09 RJE2 | GENJ | To expense insurance | 9,163.33 | | |
| | | | Current Period Change | 9,163.33 | | 9,163.33 |
| | 12/1/09 | | Beginning Balance | | | 41,017.04 |
| | 12/21/09 2010 | PJ | ZURICH INSURANCE GROUP - POLICY #1980689-2 1/1/10-12/31/10 | 306.48 | | |
| | 12/31/09 129761 | PJ | THE TRIEBER GROUP, LLC - THE STATE INS. FUND POLICY #13141197 - SEVICE CHSRGE - WORKERS COMP. - 2/1/10-2/1/11 | 243.91 | | |
| | 12/31/09 RJE2 | GENJ | To expense insurance | 9,163.33 | | |
| | 12/31/09 J/E 2 BZ | GENJ | TO ALLOCATE ADD'L COSTS TO AMERITRANS | | 5,077.00 | |
| | | | Current Period Change | 9,713.72 | 5,077.00 | 4,636.72 |
| | 1/1/10 | | Beginning Balance | | | 45,653.76 |
| | 1/4/10 15801386 | PJ | NEW YORK STATE INSURANCE FUND - 50% RENEWAL WORKER'S COMP. 2/1/10 - 2/1/11 - POLICY #G 1314 119-7 | 1,342.16 | | |
| | 1/31/10 RJE2 | GENJ | To expense insurance | 9,163.31 | | |
| | | | Current Period Change | 10,505.47 | | 10,505.47 |
| | 2/1/10 | | Beginning Balance | | | 56,159.23 |
| | 2/28/10 RJE2 | GENJ | To expense insurance | 9,139.59 | | |
| | | | Current Period Change | 9,139.59 | | 9,139.59 |
| | 3/1/10 | | Beginning Balance | | | 65,298.82 |
| | 3/31/10 RJE2 | GENJ | To expense insurance | 9,139.55 | | |
| | 3/31/10 J/E 2BZ | GENJ | To allocate costs to AMTC | | 5,222.00 | |
| | | | Current Period Change | 9,139.55 | 5,222.00 | 3,917.55 |
| | 4/1/10 | | Beginning Balance | | | 69,216.37 |
| | 4/16/10 0416D01 | CRJ | MISCELLANEOUS DEPOSIT - THE STATE INSURANCE FUND REFUND (2/17/9-2/17/10) | | 1,229.04 | |
| | 4/30/10 RJE2 | GENJ | To expense insurance | 8,774.19 | | |
| | | | Current Period Change | 8,774.19 | 1,229.04 | 7,545.15 |

6/22/11 at 14:44:41.51

Page: 359

# Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 5640.1 (cont.) | 5/1/10 | | Beginning Balance | | | 76,761.52 |
| | 5/7/10 0507D01 | CRJ | MISCELLANEOUS DEPOSIT - REFUND SERVICE FEE - TREIBER GROUP - WORKERS COMP. 2/17/09-2/1/10 | | 131.00 | |
| | 5/31/10 RJE2 | GENJ | To expense insurance | 7,326.97 | | |
| | | | Current Period Change | 7,326.97 | 131.00 | 7,195.97 |
| | 6/1/10 | | Beginning Balance | | | 83,957.49 |
| | 6/30/10 RJE2 | GENJ | To expense insurance | 10,297.83 | | |
| | 6/30/10 J/E 2 BZ | GENJ | TO ALLOCATE ADD'L COSTS TO AMERITRANS | | 10,833.00 | |
| | | | Current Period Change | 10,297.83 | 10,833.00 | -535.17 |
| | **6/30/10** | | **Ending Balance** | | | **83,422.32** |
| 5640.30 INSURANCE - OFFIC | 7/1/09 | | Beginning Balance | | | |
| | 7/31/09 RJE2 | GENJ | To expense insurance | 1,068.54 | | |
| | | | Current Period Change | 1,068.54 | | 1,068.54 |
| | 8/1/09 | | Beginning Balance | | | 1,068.54 |
| | 8/13/09 AUG REIM | PJ | ELLEN WALKER - REIMBURSEMENT OF MONTHLY EXPENSES AUG 09 | 296.47 | | |
| | 8/31/09 RJE 2 | GENJ | TO EXPENSE INSURANCE FOR AUGUST 2009 | 1,068.54 | | |
| | | | Current Period Change | 1,365.01 | | 1,365.01 |
| | 9/1/09 | | Beginning Balance | | | 2,433.55 |
| | 9/17/09 SEP 09 | PJ | ELLEN WALKER - EXPENSE REIMBURSEMENT 9/09 | 309.00 | | |
| | 9/30/09 RJE2 | GENJ | To expense insurance | 1,068.54 | | |
| | | | Current Period Change | 1,377.54 | | 1,377.54 |
| | 10/1/09 | | Beginning Balance | | | 3,811.09 |
| | 10/9/09 OCT 09 | PJ | ELLEN WALKER - EMW EXPENSE REIMBURSEMENT 10/09 | 321.53 | | |
| | 10/31/09 RJE2 | GENJ | To expense insurance | 1,068.54 | | |
| | | | Current Period Change | 1,390.07 | | 1,390.07 |
| | 11/1/09 | | Beginning Balance | | | 5,201.16 |

6/22/11 at 14:44:41.54

## Elk Associates Funding Corporation
## General Ledger
## For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 5640.30 (cont.) | 11/3/09<br>NOV 09 | PJ | ELLEN WALKER -<br>MONTHLY EXPENSE<br>REIMBURSEMENT -<br>NOV 09 | 321.53 | | |
| | 11/30/09<br>RJE2 | GENJ | To expense insurance | 1,068.54 | | |
| | | | Current Period Change | 1,390.07 | | 1,390.07 |
| | 12/1/09 | | Beginning Balance | | | 6,591.23 |
| | 12/1/09<br>DEC 09 | PJ | ELLEN WALKER -<br>REIMBURSEMENT OF<br>EXPENSES - DEC 09 | 321.53 | | |
| | 12/31/09<br>RJE2 | GENJ | To expense insurance | 1,068.54 | | |
| | 12/31/09<br>AJE7 | GENJ | To record reduction in<br>value due to premiums | 7,517.55 | | |
| | | | Current Period Change | 8,907.62 | | 8,907.62 |
| | 1/1/10 | | Beginning Balance | | | 15,498.85 |
| | 1/4/10<br>JAN 2010 | PJ | ELLEN WALKER -<br>REIMBURSEMENT OF<br>EXPENSES | 321.53 | | |
| | 1/31/10<br>RJE2 | GENJ | To expense insurance | 1,068.54 | | |
| | | | Current Period Change | 1,390.07 | | 1,390.07 |
| | 2/1/10 | | Beginning Balance | | | 16,888.92 |
| | 2/8/10<br>FEB 2010 | PJ | ELLEN WALKER -<br>REIMBURSEMENT OF<br>EXPENSES - FEB 2010 | 321.53 | | |
| | 2/28/10<br>RJE2 | GENJ | To expense insurance | 1,068.54 | | |
| | | | Current Period Change | 1,390.07 | | 1,390.07 |
| | 3/1/10 | | Beginning Balance | | | 18,278.99 |
| | 3/3/10<br>MAR 2010 | PJ | ELLEN WALKER -<br>REIMBURSEMENT OF<br>MONTHLY EXPENSES<br>- MAR 2010 | 321.53 | | |
| | 3/31/10<br>RJE2 | GENJ | To expense insurance | 1,068.54 | | |
| | | | Current Period Change | 1,390.07 | | 1,390.07 |
| | 4/1/10 | | Beginning Balance | | | 19,669.06 |
| | 4/7/10<br>APR 2010 | PJ | ELLEN WALKER -<br>REIMBURSEMENT OF<br>EXPENSES - APRIL-<br>2010 | 321.53 | | |
| | 4/30/10<br>RJE2 | GENJ | To expense insurance | 1,068.53 | | |
| | | | Current Period Change | 1,390.06 | | 1,390.06 |
| | 5/1/10 | | Beginning Balance | | | 21,059.12 |
| | 5/4/10 | PJ | ELLEN WALKER -<br>REIMBURSEMENT OF | 321.53 | | |

6/22/11 at 14:44:41.59

## Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 5640.30 (cont.) | MAY 2010 | | REIMBURSEMENT OF EXPENSES - MAY 2010 | | | |
| | | | Current Period Change | 321.53 | | 321.53 |
| | 6/1/10 | | Beginning Balance | | | 21,380.65 |
| | 6/7/10<br>JUNE 2010 | PJ | ELLEN WALKER - REIMBURSEMENT OF EXPENSES - JUNE 2010 | 321.53 | | |
| | | | Current Period Change | 321.53 | | 321.53 |
| | 6/30/10 | | **Ending Balance** | | | **21,702.18** |
| 5645<br>Association dues & P | 7/1/09 | | Beginning Balance | | | |
| | 8/1/09 | | Beginning Balance | | | |
| | 8/21/09<br>082109 | PJ | AMERICAN EXPRESS - 65001 - MEMBERSHIP RENEWAL FEE | 200.00 | | |
| | | | Current Period Change | 200.00 | | 200.00 |
| | 9/1/09 | | Beginning Balance | | | 200.00 |
| | 10/1/09 | | Beginning Balance | | | 200.00 |
| | 11/1/09 | | Beginning Balance | | | 200.00 |
| | 11/20/09<br>NOV 09 | PJ | AMERICAN EXPRESS - 65001 - MEMBERSHIP FEES | 200.00 | | |
| | 11/30/09<br>112809 | PJ | CRAIN'S - 112809 | 69.95 | | |
| | | | Current Period Change | 269.95 | | 269.95 |
| | 12/1/09 | | Beginning Balance | | | 469.95 |
| | 1/1/10 | | Beginning Balance | | | 469.95 |
| | 1/21/10<br>JAN 2010 | PJ | AMERICAN EXPRESS - 65001 - PUBLICATIONS | 168.76 | | |
| | | | Current Period Change | 168.76 | | 168.76 |
| | 2/1/10 | | Beginning Balance | | | 638.71 |
| | 2/5/10<br>2010 RENE | PJ | NASBIC - 2010 ACTIVE MEMBERSHIP RENEWAL | 6,060.00 | | |
| | 2/19/10<br>FEB 2010 | PJ | MARGARET CHANCE - REIMBURSEMENT OF EXPENSES - FEB 2010 | 60.00 | | |
| | | | Current Period Change | 6,120.00 | | 6,120.00 |
| | 3/1/10 | | Beginning Balance | | | 6,758.71 |
| | 4/1/10 | | Beginning Balance | | | 6,758.71 |
| | 4/21/10<br>APRIL 201 | PJ | AMERICAN EXPRESS - 65001 - DUES & PUBLICATIONS | 202.62 | | |

## Elk Associates Funding Corporation
## General Ledger
## For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 5645 (cont.) | | | PUBLICATIONS Current Period Change | 202.62 | | 202.62 |
| | 5/1/10 | | Beginning Balance | | | 6,961.33 |
| | 5/21/10 MAY 2010 | PJ | AMERICAN EXPRESS - 65001 - ASSN DUES & PUBLICATIONS | 200.00 | | |
| | | | Current Period Change | 200.00 | | 200.00 |
| | 6/1/10 | | Beginning Balance | | | 7,161.33 |
| | 6/23/10 JUNE 2010 | PJ | Gary C. Granoff - GCG REIMBURSABLE EXPENSES 7/09-6/10 | 175.00 | | |
| | | | Current Period Change | 175.00 | | 175.00 |
| | 6/30/10 | | **Ending Balance** | | | **7,336.33** |
| 5650 Printing | 7/1/09 | | Beginning Balance | | | |
| | 8/1/09 | | Beginning Balance | | | |
| | 9/1/09 | | Beginning Balance | | | |
| | 10/1/09 | | Beginning Balance | | | |
| | 11/1/09 | | Beginning Balance | | | |
| | 11/18/09 6227 | PJ | True Type Printing - 6227 - NOTICE OF SHAREHOLDERS MEETING 11/25/09 & PROXY SHEETS | 3,837.84 | | |
| | | | Current Period Change | 3,837.84 | | 3,837.84 |
| | 12/1/09 | | Beginning Balance | | | 3,837.84 |
| | 1/1/10 | | Beginning Balance | | | 3,837.84 |
| | 2/1/10 | | Beginning Balance | | | 3,837.84 |
| | 3/1/10 | | Beginning Balance | | | 3,837.84 |
| | 4/1/10 | | Beginning Balance | | | 3,837.84 |
| | 5/1/10 | | Beginning Balance | | | 3,837.84 |
| | 6/1/10 | | Beginning Balance | | | 3,837.84 |
| | 6/30/10 | | **Ending Balance** | | | **3,837.84** |
| 5655 Gifts | 7/1/09 | | Beginning Balance | | | |
| | 8/1/09 | | Beginning Balance | | | |
| | 9/1/09 | | Beginning Balance | | | |
| | 10/1/09 | | Beginning Balance | | | |

6/22/11 at 14:44:41.65

# Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 5655 (cont.) | 11/1/09 | | Beginning Balance | | | |
| | 12/1/09 | | Beginning Balance | | | |
| | 12/18/09<br>DEC 09 #2 | PJ | MARGARET CHANCE -<br>REIMBURSEMENT<br>FOR YEAR END GIFTS | 870.00 | | |
| | 12/21/09<br>DEC 09 | PJ | AMERICAN EXPRESS -<br>65001 - GIFTS | 1,490.90 | | |
| | | | Current Period Change | 2,360.90 | | 2,360.90 |
| | 1/1/10 | | Beginning Balance | | | 2,360.90 |
| | 2/1/10 | | Beginning Balance | | | 2,360.90 |
| | 3/1/10 | | Beginning Balance | | | 2,360.90 |
| | 4/1/10 | | Beginning Balance | | | 2,360.90 |
| | 5/1/10 | | Beginning Balance | | | 2,360.90 |
| | 6/1/10 | | Beginning Balance | | | 2,360.90 |
| | **6/30/10** | | **Ending Balance** | | | **2,360.90** |
| 5661<br>Overnight\messenger | 7/1/09 | | Beginning Balance | | | |
| | 7/20/09<br>5-630-6706 | PJ | FEDERAL EXPRESS -<br>5-630-67066 | 49.42 | | |
| | 7/20/09<br>9-266-8459 | PJ | FEDERAL EXPRESS -<br>9-266-84590 | 173.85 | | |
| | 7/31/09<br>0731D02 | CRJ | MISCELLANEOUS<br>DEPOSIT - GCG<br>REIMBURSEMENT<br>FOR PERSONAL FED<br>EX | | 16.39 | |
| | | | Current Period Change | 223.27 | 16.39 | 206.88 |
| | 8/1/09 | | Beginning Balance | | | 206.88 |
| | 8/17/09<br>9-298-0589 | PJ | FEDERAL EXPRESS -<br>9-298-05894 | 133.09 | | |
| | 8/26/09<br>0826D01 | CRJ | MISCELLANEOUS<br>DEPOSIT - GCG<br>FED-EX<br>REIMBURSEMENT | | 24.59 | |
| | | | Current Period Change | 133.09 | 24.59 | 108.50 |
| | 9/1/09 | | Beginning Balance | | | 315.38 |
| | 9/21/09<br>9-337-2047 | PJ | FEDERAL EXPRESS -<br>9-337-20475 | 159.02 | | |
| | | | Current Period Change | 159.02 | | 159.02 |
| | 10/1/09 | | Beginning Balance | | | 474.40 |
| | 10/5/09<br>5-661-2057 | PJ | FEDERAL EXPRESS -<br>5-661-20572 | 77.41 | | |
| | 10/19/09<br>9-368-9710 | PJ | FEDERAL EXPRESS -<br>9-368-97103 | 170.96 | | |
| | | | Current Period Change | 248.37 | | 248.37 |

6/22/11 at 14:44:41.68

# Elk Associates Funding Corporation
## General Ledger
## For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 5661 (cont.) | 11/1/09 | | Beginning Balance | | | 722.77 |
| | 11/16/09 9-400-4305 | PJ | FEDERAL EXPRESS - 9-400-43054 | 443.59 | | |
| | 11/25/09 1125D03 | CRJ | MISCELLANEOUS DEPOSIT - GCG FED EX REIMBURSEMENT | | 55.71 | |
| | | | Current Period Change | 443.59 | 55.71 | 387.88 |
| | 12/1/09 | | Beginning Balance | | | 1,110.65 |
| | 12/21/09 9-439-4569 | PJ | FEDERAL EXPRESS - 9-439-45691 | 287.69 | | |
| | | | Current Period Change | 287.69 | | 287.69 |
| | 1/1/10 | | Beginning Balance | | | 1,398.34 |
| | 1/18/10 1132-2754- | PJ | FEDERAL EXPRESS - 1132-2754-0 | 108.04 | | |
| | | | Current Period Change | 108.04 | | 108.04 |
| | 2/1/10 | | Beginning Balance | | | 1,506.38 |
| | 2/15/10 9-500-0943 | PJ | FEDERAL EXPRESS - 9-500-09437 | 634.52 | | |
| | | | Current Period Change | 634.52 | | 634.52 |
| | 3/1/10 | | Beginning Balance | | | 2,140.90 |
| | 3/15/10 7-021-0921 | PJ | FEDERAL EXPRESS - 7-021-09214 | 224.65 | | |
| | 3/19/10 0319D01 | CRJ | MISCELLANEOUS DEPOSIT - GCG FED-EX REIMBURSEMENT | | 228.92 | |
| | | | Current Period Change | 224.65 | 228.92 | -4.27 |
| | 4/1/10 | | Beginning Balance | | | 2,136.63 |
| | 4/1/10 0401D02 | CRJ | MISCELLANEOUS DEPOSIT - GCG FED EX REIMBURSEMENT | | 62.02 | |
| | 4/19/10 7-060-1779 | PJ | FEDERAL EXPRESS - 7-060-17797 | 241.14 | | |
| | 4/30/10 0430D01 | CRJ | MISCELLANEOUS DEPOSIT - GCG FED EX REIMBURSEMENT | | 41.59 | |
| | 4/30/10 AJE13 | GENJ | To adjust deposi 4/1/10 - $62.02 per bank is $62.00 | 0.02 | | |
| | | | Current Period Change | 241.16 | 103.61 | 137.55 |
| | 5/1/10 | | Beginning Balance | | | 2,274.18 |
| | 5/10/10 154925 | PJ | A-1 INTERNATIONAL INC. - 154925 | 17.00 | | |
| | 5/17/10 7-091-4714 | PJ | FEDERAL EXPRESS - 7-091-47140 | 477.84 | | |
| | | | Current Period Change | 494.84 | | 494.84 |
| | 6/1/10 | | Beginning Balance | | | 2,769.02 |
| | 6/21/10 | PJ | FEDERAL EXPRESS - 7-120-91903 | 129.56 | | |

6/22/11 at 14:44:41.73

## Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 5661 (cont.) | 7-129-8489 | | 7-129-84892<br>Current Period Change | 129.56 | | 129.56 |
| | 6/30/10 | | **Ending Balance** | | | **2,898.58** |
| 5661.1<br>Postage | 7/1/09 | | Beginning Balance | | | |
| | 8/1/09 | | Beginning Balance | | | |
| | 9/1/09 | | Beginning Balance | | | |
| | 10/1/09 | | Beginning Balance | | | |
| | 11/1/09 | | Beginning Balance | | | |
| | 12/1/09 | | Beginning Balance | | | |
| | 1/1/10 | | Beginning Balance | | | |
| | 2/1/10 | | Beginning Balance | | | |
| | 3/1/10 | | Beginning Balance | | | |
| | 3/22/10<br>MAR 2010 | PJ | AMERICAN EXPRESS -<br>65001 - POSTAGE<br>Current Period Change | 161.83<br>161.83 | | 161.83 |
| | 4/1/10 | | Beginning Balance | | | 161.83 |
| | 5/1/10 | | Beginning Balance | | | 161.83 |
| | 6/1/10 | | Beginning Balance | | | 161.83 |
| | 6/30/10 | | **Ending Balance** | | | **161.83** |
| 5663<br>Appraisal fees | 7/1/09 | | Beginning Balance | | | |
| | 8/1/09 | | Beginning Balance | | | |
| | 9/1/09 | | Beginning Balance | | | |
| | 10/1/09 | | Beginning Balance | | | |
| | 11/1/09 | | Beginning Balance | | | |
| | 12/1/09 | | Beginning Balance | | | |
| | 1/1/10 | | Beginning Balance | | | |
| | 2/1/10 | | Beginning Balance | | | |
| | 3/1/10 | | Beginning Balance | | | |
| | 3/3/10<br>030310 | PJ | A.F. LAMA REALTY<br>SERVICES INC. - RE:<br>130-41 91ST AVE -<br>SEALMAX INC.<br>Current Period Change | 1,000.00<br>1,000.00 | | 1,000.00 |
| | 4/1/10 | | Beginning Balance | | | 1,000.00 |

6/22/11 at 14:44:41.76

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 5663 (cont.) | 5/1/10 | | Beginning Balance | | | 1,000.00 |
| | 6/1/10 | | Beginning Balance | | | 1,000.00 |
| | **6/30/10** | | **Ending Balance** | | | **1,000.00** |
| 5666<br>LINE FEE | 7/1/09 | | Beginning Balance | | | |
| | 7/31/09<br>J/E 2M | GENJ | To record Prepaid expense amortization - Citibank Line Fee | 3,400.00 | | |
| | | | Current Period Change | 3,400.00 | | 3,400.00 |
| | 8/1/09 | | Beginning Balance | | | 3,400.00 |
| | 9/1/09 | | Beginning Balance | | | 3,400.00 |
| | 10/1/09 | | Beginning Balance | | | 3,400.00 |
| | 11/1/09 | | Beginning Balance | | | 3,400.00 |
| | 12/1/09 | | Beginning Balance | | | 3,400.00 |
| | 1/1/10 | | Beginning Balance | | | 3,400.00 |
| | 2/1/10 | | Beginning Balance | | | 3,400.00 |
| | 3/1/10 | | Beginning Balance | | | 3,400.00 |
| | 4/1/10 | | Beginning Balance | | | 3,400.00 |
| | 5/1/10 | | Beginning Balance | | | 3,400.00 |
| | 6/1/10 | | Beginning Balance | | | 3,400.00 |
| | 6/30/10<br>0631IDB | CDJ | ISRAEL DISCOUNT BANK - LOAN AMENDMENT FEE PAYMENT | 750.00 | | |
| | | | Current Period Change | 750.00 | | 750.00 |
| | **6/30/10** | | **Ending Balance** | | | **4,150.00** |
| 5669.1<br>SBA commitment fee | 7/1/09 | | Beginning Balance | | | |
| | 7/31/09<br>RJE2 | GENJ | To amortize SBA Fee | 3,370.00 | | |
| | | | Current Period Change | 3,370.00 | | 3,370.00 |
| | 8/1/09 | | Beginning Balance | | | 3,370.00 |
| | 8/31/09<br>RJE 2 | GENJ | TO AMORTIZE SBA FEE FOR AUGUST 2009 | 3,370.00 | | |
| | | | Current Period Change | 3,370.00 | | 3,370.00 |
| | 9/1/09 | | Beginning Balance | | | 6,740.00 |
| | 9/30/09<br>RJE2 | GENJ | To amortize SBA Fee | 3,370.00 | | |
| | | | Current Period Change | 3,370.00 | | 3,370.00 |

6/22/11 at 14:44:41.82

## Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 5669.1 (cont.) | 10/1/09 | | Beginning Balance | | | 10,110.00 |
| | 10/31/09 RJE2 | GENJ | To amortize SBA Fee | 3,370.00 | | |
| | | | Current Period Change | 3,370.00 | | 3,370.00 |
| | 11/1/09 | | Beginning Balance | | | 13,480.00 |
| | 11/30/09 RJE2 | GENJ | To amortize SBA Fee | 3,370.00 | | |
| | | | Current Period Change | 3,370.00 | | 3,370.00 |
| | 12/1/09 | | Beginning Balance | | | 16,850.00 |
| | 12/31/09 RJE2 | GENJ | To amortize SBA Fee | 5,904.22 | | |
| | | | Current Period Change | 5,904.22 | | 5,904.22 |
| | 1/1/10 | | Beginning Balance | | | 22,754.22 |
| | 1/31/10 RJE2 | GENJ | To amortize SBA Fee | 5,904.22 | | |
| | | | Current Period Change | 5,904.22 | | 5,904.22 |
| | 2/1/10 | | Beginning Balance | | | 28,658.44 |
| | 2/28/10 RJE2 | GENJ | To amortize SBA Fee | 5,904.22 | | |
| | | | Current Period Change | 5,904.22 | | 5,904.22 |
| | 3/1/10 | | Beginning Balance | | | 34,562.66 |
| | 3/31/10 RJE2 | GENJ | To amortize SBA Fee | 5,904.22 | | |
| | | | Current Period Change | 5,904.22 | | 5,904.22 |
| | 4/1/10 | | Beginning Balance | | | 40,466.88 |
| | 4/30/10 RJE2 | GENJ | To amortize SBA Fee | 5,904.22 | | |
| | | | Current Period Change | 5,904.22 | | 5,904.22 |
| | 5/1/10 | | Beginning Balance | | | 46,371.10 |
| | 5/31/10 RJE2 | GENJ | To amortize SBA Fee | 5,904.22 | | |
| | | | Current Period Change | 5,904.22 | | 5,904.22 |
| | 6/1/10 | | Beginning Balance | | | 52,275.32 |
| | 6/30/10 RJE2 | GENJ | To amortize SBA Fee | 5,904.22 | | |
| | | | Current Period Change | 5,904.22 | | 5,904.22 |
| | **6/30/10** | | **Ending Balance** | | | **58,179.54** |
| 5670 Miscellaneous | 7/1/09 | | Beginning Balance | | | |
| | 8/1/09 | | Beginning Balance | | | |
| | 9/1/09 | | Beginning Balance | | | |

6/22/11 at 14:44:41.85

## Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 5670 (cont.) | 9/30/09<br>J/E 2BZ1 | GENJ | To allocate additional costs to Ameritrans | 2,118.00 | | |
| | | | Current Period Change | 2,118.00 | | 2,118.00 |
| | 10/1/09 | | Beginning Balance | | | 2,118.00 |
| | 10/6/09<br>30 | PJ | FUNDEX CAPITAL CORPORATION - PROPORTIONATE SHARE OF REAL ESTATE TAXES DUE FOR MOUNTAIN VIEW BAR & GRILL INC. | 17,329.85 | | |
| | | | Current Period Change | 17,329.85 | | 17,329.85 |
| | 11/1/09 | | Beginning Balance | | | 19,447.85 |
| | 12/1/09 | | Beginning Balance | | | 19,447.85 |
| | 12/31/09<br>J/E 2 BZ | GENJ | TO ALLOCATE ADD'L COSTS TO AMERITRANS | 1,460.00 | | |
| | | | Current Period Change | 1,460.00 | | 1,460.00 |
| | 1/1/10 | | Beginning Balance | | | 20,907.85 |
| | 2/1/10 | | Beginning Balance | | | 20,907.85 |
| | 3/1/10 | | Beginning Balance | | | 20,907.85 |
| | 3/31/10<br>J/E 2BZ | GENJ | To allocate costs to AMTC | 9,864.00 | | |
| | | | Current Period Change | 9,864.00 | | 9,864.00 |
| | 4/1/10 | | Beginning Balance | | | 30,771.85 |
| | 5/1/10 | | Beginning Balance | | | 30,771.85 |
| | 6/1/10 | | Beginning Balance | | | 30,771.85 |
| | 6/30/10<br>J/E 2 BZ | GENJ | TO ALLOCATE ADD'L COSTS TO AMERITRANS | 1,688.00 | | |
| | | | Current Period Change | 1,688.00 | | 1,688.00 |
| | 6/30/10 | | Ending Balance | | | 32,459.85 |
| 5674<br>CITY TAX | 7/1/09 | | Beginning Balance | | | |
| | 8/1/09 | | Beginning Balance | | | |
| | 9/1/09 | | Beginning Balance | | | |
| | 9/30/09<br>AJE6 | GENJ | To reclass to proper account | 600.00 | | |
| | | | Current Period Change | 600.00 | | 600.00 |
| | 10/1/09 | | Beginning Balance | | | 600.00 |
| | 11/1/09 | | Beginning Balance | | | 600.00 |

6/22/11 at 14:44:41.88

## Elk Associates Funding Corporation
## General Ledger
## For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 5674 (cont.) | 12/1/09 | | Beginning Balance | | | 600.00 |
| | 1/1/10 | | Beginning Balance | | | 600.00 |
| | 2/1/10 | | Beginning Balance | | | 600.00 |
| | 3/1/10 | | Beginning Balance | | | 600.00 |
| | 4/1/10 | | Beginning Balance | | | 600.00 |
| | 5/1/10 | | Beginning Balance | | | 600.00 |
| | 6/1/10 | | Beginning Balance | | | 600.00 |
| | 6/30/10 | | **Ending Balance** | | | **600.00** |
| 5675 State and local taxes | 7/1/09 | | Beginning Balance | | | |
| | 8/1/09 | | Beginning Balance | | | |
| | 9/1/09 | | Beginning Balance | | | |
| | 9/15/09 CT-5 | PJ | NYS CORPORATION TAX - CT-5 - EXTENSION 6/30/09 - ID #11-2502336 | 2,000.00 | | |
| | 9/15/09 CT-5 EAF | PJ | NYS CORPORATION TAX - CT-5 - EXTENSION 6/30/09 - EAF HOLDING CORP. - ID #13-3670487 | 155.00 | | |
| | | | Current Period Change | 2,155.00 | | 2,155.00 |
| | 10/1/09 | | Beginning Balance | | | 2,155.00 |
| | 11/1/09 | | Beginning Balance | | | 2,155.00 |
| | 12/1/09 | | Beginning Balance | | | 2,155.00 |
| | 1/1/10 | | Beginning Balance | | | 2,155.00 |
| | 2/1/10 | | Beginning Balance | | | 2,155.00 |
| | 3/1/10 | | Beginning Balance | | | 2,155.00 |
| | 3/9/10 2009 EST | PJ | STATE OF NEW JERSEY CBT - ESTIMATED TAX 3/15/10 VOUCHER 3 & 6/15/10 VOUCHER 4 - FORM CBT-150C | 1,040.00 | | |
| | 3/9/10 2009 COR | PJ | STATE OF NEW JERSEY CBT - NJ CORPORATION BUSINESS TAX RETURN 6/30/09 - FORM CBT-100 | 35.00 | | |
| | | | Current Period Change | 1,075.00 | | 1,075.00 |
| | 4/1/10 | | Beginning Balance | | | 3,230.00 |
| | 4/19/10 | PJ | COMMISSIONER OF TAXATION & FIN - TAX | 141.00 | | |

6/22/11 at 14:44:41.91

## Elk Associates Funding Corporation
## General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 5675 (cont.) | 06045300 | | TAXATION & FIN - TAX ASSESSMENT 6/30/09 RE: CT-3M/4M | | | |
| | | | Current Period Change | 141.00 | | 141.00 |
| | 5/1/10 | | Beginning Balance | | | 3,371.00 |
| | 6/1/10 | | Beginning Balance | | | 3,371.00 |
| | **6/30/10** | | **Ending Balance** | | | **3,371.00** |
| 5677<br>STATE TAX FILING F | 7/1/09 | | Beginning Balance | | | |
| | 7/8/09<br>090044489 | PJ | ARIZONA DEPT OF REVENUE - 09004448997 - 112502336 - Y/E 6/30/09 | 54.05 | | |
| | | | Current Period Change | 54.05 | | 54.05 |
| | 8/1/09 | | Beginning Balance | | | 54.05 |
| | 9/1/09 | | Beginning Balance | | | 54.05 |
| | 10/1/09 | | Beginning Balance | | | 54.05 |
| | 11/1/09 | | Beginning Balance | | | 54.05 |
| | 12/1/09 | | Beginning Balance | | | 54.05 |
| | 1/1/10 | | Beginning Balance | | | 54.05 |
| | 2/1/10 | | Beginning Balance | | | 54.05 |
| | 3/1/10 | | Beginning Balance | | | 54.05 |
| | 4/1/10 | | Beginning Balance | | | 54.05 |
| | 5/1/10 | | Beginning Balance | | | 54.05 |
| | 6/1/10 | | Beginning Balance | | | 54.05 |
| | **6/30/10** | | **Ending Balance** | | | **54.05** |
| 5680<br>Depreciation | 7/1/09 | | Beginning Balance | | | |
| | 7/31/09<br>RJE2 | GENJ | To record depreciation expense | 2,510.17 | | |
| | | | Current Period Change | 2,510.17 | | 2,510.17 |
| | 8/1/09 | | Beginning Balance | | | 2,510.17 |
| | 8/31/09<br>RJE 2 | GENJ | TO RECORD DEPRECIATION EXPENSE FOR AUGUST 2009 | 2,547.57 | | |
| | | | Current Period Change | 2,547.57 | | 2,547.57 |
| | 9/1/09 | | Beginning Balance | | | 5,057.74 |
| | 9/30/09 | GENJ | To record depreciation | 2,547.57 | | |

6/22/11 at 14:44:41.96

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 5680 (cont.) | RJE2 | | expense | | | |
| | | | Current Period Change | 2,547.57 | | 2,547.57 |
| | 10/1/09 | | Beginning Balance | | | 7,605.31 |
| | 10/31/09<br>RJE2 | GENJ | To record depreciation expense | 2,605.99 | | |
| | | | Current Period Change | 2,605.99 | | 2,605.99 |
| | 11/1/09 | | Beginning Balance | | | 10,211.30 |
| | 11/30/09<br>RJE2 | GENJ | To record depreciation expense | 2,489.15 | | |
| | | | Current Period Change | 2,489.15 | | 2,489.15 |
| | 12/1/09 | | Beginning Balance | | | 12,700.45 |
| | 12/31/09<br>RJE2 | GENJ | To record depreciation expense | 2,547.53 | | |
| | | | Current Period Change | 2,547.53 | | 2,547.53 |
| | 1/1/10 | | Beginning Balance | | | 15,247.98 |
| | 1/31/10<br>RJE2 | GENJ | To record depreciation expense | 2,529.70 | | |
| | | | Current Period Change | 2,529.70 | | 2,529.70 |
| | 2/1/10 | | Beginning Balance | | | 17,777.68 |
| | 2/28/10<br>RJE2 | GENJ | To record depreciation expense | 2,529.70 | | |
| | | | Current Period Change | 2,529.70 | | 2,529.70 |
| | 3/1/10 | | Beginning Balance | | | 20,307.38 |
| | 3/31/10<br>RJE2 | GENJ | To record depreciation expense | 2,521.60 | | |
| | | | Current Period Change | 2,521.60 | | 2,521.60 |
| | 4/1/10 | | Beginning Balance | | | 22,828.98 |
| | 4/30/10<br>RJE2 | GENJ | To record depreciation expense | 2,539.95 | | |
| | | | Current Period Change | 2,539.95 | | 2,539.95 |
| | 5/1/10 | | Beginning Balance | | | 25,368.93 |
| | 5/31/10<br>RJE2 | GENJ | To record depreciation expense | 2,551.32 | | |
| | | | Current Period Change | 2,551.32 | | 2,551.32 |
| | 6/1/10 | | Beginning Balance | | | 27,920.25 |
| | 6/30/10<br>RJE2 | GENJ | To record depreciation expense | 2,548.67 | | |
| | | | Current Period Change | 2,548.67 | | 2,548.67 |
| | 6/30/10 | | Ending Balance | | | 30,468.92 |
| 5681.20<br>ADP fees | 7/1/09 | | Beginning Balance | | | |
| | 7/1/09 | GENJ | Officer Salaries - ADP<br>FEE OFFICERS | 59.78 | | |

6/22/11 at 14:44:41.99

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 5681.20 (cont.) | 070109OF | | FEE OFFICERS SALARIES 070109 | | | |
| | 7/3/09 070309OF | GENJ | Office Salaries - ADP FEE  070309 OFFICE SALARIES | 44.00 | | |
| | 7/17/09 071709OF | GENJ | Office Salaries - ADP FEE 071709 OFFICE SALARIES | 44.00 | | |
| | 7/31/09 073109OF | GENJ | Office Salaries - ADP FEE 073109 OFFICE SALARIES | 44.00 | | |
| | | | Current Period Change | 191.78 | | 191.78 |
| | 8/1/09 | | Beginning Balance | | | 191.78 |
| | 8/3/09 0809OFFIC | GENJ | Officer Salaries - ADP FEE 0809 OFFICERS SALARIES | 49.28 | | |
| | 8/14/09 081409OF | GENJ | Office Salaries - ADP FEE OFFICE SALARIES 081409 | 44.00 | | |
| | 8/28/09 0828OFFIC | GENJ | Office Salaries - ADP FEE 082809 OFFICE SALARIES | 44.00 | | |
| | | | Current Period Change | 137.28 | | 137.28 |
| | 9/1/09 | | Beginning Balance | | | 329.06 |
| | 9/1/09 090109OF | GENJ | Officer Salaries - ADP FEE 090109 OFFICER SALARIES | 49.28 | | |
| | 9/11/09 091109OF | GENJ | Office Salaries - ADP FEE 091109 OFFICE SALARIES | 44.00 | | |
| | 9/25/09 092509 OF | GENJ | Office Salaries - ADP FEE 092509 OFFICE SALARIES | 44.00 | | |
| | | | Current Period Change | 137.28 | | 137.28 |
| | 10/1/09 | | Beginning Balance | | | 466.34 |
| | 10/1/09 1009OFFIC | GENJ | Officer Salaries - ADP FEE 1009 OFFICER SALARIES | 59.78 | | |
| | 10/9/09 100909OF | GENJ | Office Salaries - ADP FEE 100909 OFFICE SALARIES | 44.00 | | |
| | 10/23/09 102309OF | GENJ | Office Salaries - ADP FEE 10/23/09 OFFICE SALARIES | 44.00 | | |
| | | | Current Period Change | 147.78 | | 147.78 |
| | 11/1/09 | | Beginning Balance | | | 614.12 |
| | 11/2/09 1109OFFIC | GENJ | Officer Salaries - ADP FEE 1109 OFFICER SALARIES | 49.28 | | |
| | 11/6/09 110609OF | GENJ | Office Salaries - ADP FEE 110609 OFFICE SALARIES | 44.00 | | |
| | 11/20/09 112009OF | GENJ | Office Salaries - ADP FEE 11 20 09 OFFICE SALARIES | 44.00 | | |

6/22/11 at 14:44:42.04

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID / Account Description | Date / Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 5681.20 (cont.) | | | Current Period Change | 137.28 | | 137.28 |
| | 12/1/09 | | Beginning Balance | | | 751.40 |
| | 12/1/09 1209OFFIC | GENJ | Officer Salaries - ADP FEE 1209 OFFICER SALARIES | 49.28 | | |
| | 12/4/09 120409OF | GENJ | Office Salaries - ADP FEE 120409 OFFICE SALARIES | 44.00 | | |
| | | | Current Period Change | 93.28 | | 93.28 |
| | 1/1/10 | | Beginning Balance | | | 844.68 |
| | 1/4/10 0110OFFIC | GENJ | Officer Salaries - ADP FEE 0110 OFFICERS SALARIES | 14.50 | | |
| | 1/8/10 123109ADJ | GENJ | ADJUST ADP FEE 1/1/10 PAYROLL | | 14.50 | |
| | 1/8/10 010810AD | GENJ | ADP FEE W2 FORMS 2009 | 94.10 | | |
| | | | Current Period Change | 108.60 | 14.50 | 94.10 |
| | 2/1/10 | | Beginning Balance | | | 938.78 |
| | 3/1/10 | | Beginning Balance | | | 938.78 |
| | 3/12/10 031210OF | GENJ | Office Salaries - ADP FEE 03/12/10 OFFICE SALARIES | 45.40 | | |
| | 3/26/10 032610OF | GENJ | Office Salaries - ADP FEE 03/26/10 OFFICE SALARIES | 45.70 | | |
| | | | Current Period Change | 91.10 | | 91.10 |
| | 4/1/10 | | Beginning Balance | | | 1,029.88 |
| | 4/1/10 0410OFFIC | GENJ | Officer Salaries - ADP FEE 0410 OFFICER SALARIES | 59.78 | | |
| | 4/9/10 040910OF | GENJ | Office Salaries - ADP FEE 040910 OFFICE SALARIES | 44.00 | | |
| | 4/19/10 041910OF | GENJ | Office Salaries - ADP FEE 041910 OFFICE SALARIES | 40.60 | | |
| | 4/23/10 042310OF | GENJ | Office Salaries - ADP FEE 042310 OFFICE SALARIES | 42.30 | | |
| | | | Current Period Change | 186.68 | | 186.68 |
| | 5/1/10 | | Beginning Balance | | | 1,216.56 |
| | 5/3/10 0510OFFIC | GENJ | Officer Salaries - ADP FEE 05/10 OFFICER SALARIES | 49.28 | | |
| | 5/7/10 050710OF | GENJ | Office Salaries - ADP FEE 05/07/10 OFFICE SALARIES | 42.30 | | |
| | 5/21/10 052110OF | GENJ | Office Salaries - ADP FEE 052110 OFFICE SALARIES | 42.30 | | |
| | | | Current Period Change | 133.88 | | 133.88 |

6/22/11 at 14:44:42.07

### Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID Account Description | Date Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 5681.20 (cont.) | 6/1/10 | | Beginning Balance | | | 1,350.44 |
| | 6/1/10 0610OFFIC | GENJ | Officer Salaries - ADP FEE 06/10 OFFICER SALARIES | 49.28 | | |
| | 6/4/10 060410OF | GENJ | Office Salaries - ADP FEE 060410 OFFICE SALARIES | 42.30 | | |
| | 6/16/10 061610OF | GENJ | Officer Salaries - ADP FEE - 6/16/10 M FEINSOD ADJUST 5/28/10 - 6/30/10 | 40.60 | | |
| | 6/18/10 061810OF | GENJ | Office Salaries - ADP FEE 06/18/10 OFFICE PAYROLL | 42.30 | | |
| | | | Current Period Change | 174.48 | | 174.48 |
| | **6/30/10** | | **Ending Balance** | | | **1,524.92** |
| 5681.40 Foreclosure expenses | 7/1/09 | | Beginning Balance | | | |
| | 7/22/09 072209 | PJ | AMERICAN EXPRESS - FORECLOSURE EXPENSES | 714.56 | | |
| | | | Current Period Change | 714.56 | | 714.56 |
| | 8/1/09 | | Beginning Balance | | | 714.56 |
| | 9/1/09 | | Beginning Balance | | | 714.56 |
| | 10/1/09 | | Beginning Balance | | | 714.56 |
| | 11/1/09 | | Beginning Balance | | | 714.56 |
| | 12/1/09 | | Beginning Balance | | | 714.56 |
| | 1/1/10 | | Beginning Balance | | | 714.56 |
| | 2/1/10 | | Beginning Balance | | | 714.56 |
| | 3/1/10 | | Beginning Balance | | | 714.56 |
| | 4/1/10 | | Beginning Balance | | | 714.56 |
| | 4/26/10 SEALMAX I | PJ | CON EDISON - PAYMENT DUE RE: SEALMAX INC. - 130-41 91 AVE ENT | 868.85 | | |
| | | | Current Period Change | 868.85 | | 868.85 |
| | 5/1/10 | | Beginning Balance | | | 1,583.41 |
| | 5/6/10 DEPOSIT | PJ | CON EDISON - DEPOSIT RE: SEALMAX INC. - A/C #255738366200068 | 405.00 | | |
| | 5/12/10 108 | PJ | MELVIN BRANDL/BRANDL ELECTRIC - ELECTRICAL WORK - SEALMAX INC. | 485.00 | | |

6/22/11 at 14:44:42.10

Page: 375

## Elk Associates Funding Corporation
### General Ledger
### For the Period From Jul 1, 2009 to Jun 30, 2010

Filter Criteria includes: 1) IDs from 1001 to 9999. Report order is by ID. Report is printed in Detail Format.

| Account ID<br>Account Description | Date<br>Reference | Jrnl | Trans Description | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 5681.40 (cont.) | 5/25/10<br>0525DM | CDJ | FORECLOSURE<br>CON EDISON -<br>ADJUSTMENT TO<br>CHECK #27319<br>SUBMITTED<br>ELECTRONICALLY<br>FOR $450 NOT $405 | 45.00 | | |
| | | | Current Period Change | 935.00 | | 935.00 |
| | 6/1/10 | | Beginning Balance | | | 2,518.41 |
| | 6/2/10<br>060210 | PJ | CON EDISON -<br>CHARGES<br>5/6/10-5/25/10 -<br>SEALMAX INC. | 16.12 | | |
| | 6/3/10<br>060310 | PJ | CON EDISON -<br>BALANCE DUE -<br>SEALMAX INC. | 234.49 | | |
| | | | Current Period Change | 250.61 | | 250.61 |
| | **6/30/10** | | **Ending Balance** | | | **2,769.02** |
| 5900.00<br>Gain on Sale of Asset | 7/1/09 | | Beginning Balance | | | |
| | 8/1/09 | | Beginning Balance | | | |
| | 9/1/09 | | Beginning Balance | | | |
| | 10/1/09 | | Beginning Balance | | | |
| | 11/1/09 | | Beginning Balance | | | |
| | 12/1/09 | | Beginning Balance | | | |
| | 1/1/10 | | Beginning Balance | | | |
| | 2/1/10 | | Beginning Balance | | | |
| | 3/1/10 | | Beginning Balance | | | |
| | 4/1/10 | | Beginning Balance | | | |
| | 5/1/10 | | Beginning Balance | | | |
| | 6/1/10 | | Beginning Balance | | | |
| | 6/30/10<br>AJE12 | GENJ | To write off retired /<br>disposed of assets | 65,623.03 | | |
| | | | Current Period Change | 65,623.03 | | 65,623.03 |
| | **6/30/10** | | **Ending Balance** | | | **65,623.03** |

# Exhibit T

## SBA FORM 468

(CORPORATE SBICs)

OMB Approval No 3245-0063
Expiration Date 10/31/2007

## SHORT FORM

| | |
|---|---|
| NAME OF LICENSEE: | ELK ASSOCIATES FUNDING CORP. |
| LICENSE NUMBER: | 02/02-5377 |
| STREET ADDRESS: | 50 Jericho Quadrangle Suite 109 |
| CITY, STATE, AND ZIP CODE: | Jericho, NY 11753 |
| COUNTY: | NEW YORK |
| EMPLOYER ID NUMBER: | 11-2502336 |
| FOR THE REPORTING PERIOD ENDED: | 12/31/2011      MONTHS: 6 |

A - TOTAL ASSETS AT COST         $10 MILLION OR MORE

B - OWNERSHIP         PUBLICLY OWNED FINANCIAL CORP.

C - INDUSTRY CONCENTRATION         NON-DIVERSIFIED

　　Non-Diversified NAICS Code         485310

Please Note: The estimated burden for completing this form is 15 hours per response. You will not be required to respond to this information collection if a valid OMB approval number is not displayed. If you have questions or comments concerning this estimate or other aspects of this information collection, please contact the US Small Business Administration, Chief, Administrative Information Branch, Washington, D.C. 20416 and/or Office of Management and Budget, Clearance Officer, Paperwork Reduction Project (3425-0063), Washington, D.C. 20503. PLEASE DO NOT SEND FORMS TO OMB.

STATEMENT OF FINANCIAL POSITION
AS OF <u>12/31/2011</u>
(Amounts rounded to nearest dollar)

OMB Approval No. 3245-0063
Expiration Date 10/31/2007

Name of Licensee: ELK ASSOCIATES FUNDING CORP.　　　　　License No.: 02/02-5377

**ASSETS**
**LOANS AND INVESTMENTS:**

| | COST | UNREALIZED DEPRECIATION | UNREALIZED APPRECIATION | VALUE (1) |
|---|---|---|---|---|
| Portfolio Securities: | (Col. 1) | (Col. 2) | (Col. 3) | (Col. 4) |
| 1  Loans | 18,966,772 | 2,716,585 | 0 | 16,250,187 |
| 2  Debt Securities | 1,648,181 | 198,181 | 0 | 1,450,000 |
| 3  Equity Securities | 367,027 | 361,448 | 0 | 5,579 |
| **4  TOTAL PORTFOLIO SECURITIES:** | 20,981,980 | 3,276,214 | 0 | 17,705,766 |
| Assets Acquired in Liquidation of Portfolio Securities: | | | | |
| 5  Receivables from Sale of Assets Acquired | 115,656 | 21,054 | 0 | 94,602 |
| 6  Assets Acquired | 970,547 | 0 | 0 | 970,547 |
| **7  TOTAL ASSETS ACQUIRED** | 1,086,203 | 21,054 | 0 | 1,065,149 |
| 8  Operating Concerns Acquired | 0 | 0 | 0 | 0 |
| 9  Notes and Other Securities Received | 0 | 0 | 0 | 0 |
| **10  TOTAL LOANS AND INVESTMENTS** | 22,068,183 | 3,297,268 | 0 | 18,770,915 |
| 11  Less Current Maturities | | | | 0 |
| 12  Loans and Investments Net of Current Maturities | | | | 18,770,915 |

Investment in 301(d) Licensee (2):

13  Name　　　　　　　　　　　　　　　　　　　　　　　　　0
　　　License No.

**CURRENT ASSETS**

| | | | | |
|---|---|---|---|---|
| 14  Cash and Cash Equivalents | | 2,393,700 | | |
| 15  Invested Idle Funds | | 0 | 2,393,700 | |
| 16  Interest and Dividends Receivable | | 380,966 | | |
| 17  Notes and Accounts Receivable | | 0 | | |
| 18  Receivables from Parent or Other Associates | | 0 | | |
| 19  Less: Allowance for Losses (lines 16, 17 & 18) | | 0 | 380,966 | |
| 20  Current Maturities of Portfolio Securities | | 0 | | |
| 21  Current Maturities of Assets Acquired | | 0 | | |
| 22  Current Maturities of Operating Concerns Acquired | | 0 | | |
| 23  Current Maturities of Other Securities | | 0 | 0 | |
| 24  Other (specify) <u>Due from parent</u> | | | 5,124,413 | |
| 25  Other (specify) | | | 0 | 7,899,079 |

**OTHER ASSETS**

| | | | | |
|---|---|---|---|---|
| 26  a.  Furniture and Equipment | | 134,249 | | |
| 　　 b.  Less: Accumulated Depreciation | | 90,847 | 43,402 | |
| 27  Other (specify) <u>Prepaid Expenses & Other receivables</u> | | | 194,415 | |
| 28  Other (specify) <u>Loan Cost</u> | | | 295,885 | 533,702 |
| **29  TOTAL ASSETS** | | | | 27,203,696 |

(1) Column Headings apply to items 1 through 12 only. (Cost - Unrealized Depreciation + Unrealized Appreciation = Value).
(2) Note to item 13 should include percent owned, cost basis and changes resulting from equity method of accounting.

STATEMENT OF FINANCIAL POSITION
AS OF 12/31/2011
(Amounts rounded to nearest dollar)

OMB Approval No. 3245-0063
Expiration Date 10/31/2007

Name of Licensee:  ELK ASSOCIATES FUNDING CORP.                    License No.: 02/02-5377

## LIABILITIES AND CAPITAL
### LONG-TERM DEBT (Net of Current Maturities)

| | | | |
|---|---|---:|---:|
| 30 | Notes and Debentures Payable to or Guaranteed by SBA | 21,175,000 | |
| 31 | Notes and Debentures Payable to Others | 0 | 21,175,000 |

### CURRENT LIABILITIES

| | | | | |
|---|---|---:|---:|---:|
| 32 | Accounts Payable and Accrued Expenses | | 432,996 | |
| 33 | Due to Parent or Other Associates | | 0 | |
| 34 | Accrued Interest Payable | | 343,572 | |
| 35 | Accrued Taxes Payable | | 0 | |
| 36 | a. Current Maturities of Line 30 | 0 | | |
| | b. Current Maturities of Line 31 | 0 | 0 | |
| 37 | Dividends Payable | | 0 | |
| 38 | Short-term Notes Payable/Lines of Credit | | 0 | |
| 39 | Other (specify) | | 0 | |
| 40 | Other (specify) | | 0 | 776,568 |

### OTHER LIABILITIES

| | | | |
|---|---|---:|---:|
| 41 | Deferred Credits | 0 | |
| 42 | Other (specify) | 0 | |
| 43 | Other (specify) | 0 | 0 |
| 44 | **TOTAL LIABILITIES** | | **21,951,568** |

### REDEEMABLE SECURITIES (guaranteed or purchased by SBA)

| | | | |
|---|---|---:|---:|
| 45 | a. 4% Redeemable Preferred Stock (301(d) Licensees only) | 0 | |
| | b. Cumulative Undeclared 4% Dividends | 0 | **0** |
| 46 | **TOTAL REDEEMABLE SECURITIES** | | **0** |

### CAPITAL

| | | | | |
|---|---|---:|---:|---:|
| 47 | Capital Stock | 17,456 | | |
| 48 | Paid-in Surplus | 10,611,699 | 10,629,155 | |
| 49 | Restricted Contributed Capital Surplus | | 3,557,261 | |
| 50 | Capital Stock and Surplus | | 14,186,416 | |
| 51 | 3% Preferred Stock Purchased by SBA | | 0 | |
| 52 | Unrealized Gain (Loss) on Securities Held | | -3,297,268 | |
| 53 | Non-Cash Gains/Income | 0 | | |
| 54 | Undistributed Net Realized Earnings: | | | |
| | a. Restricted (Equal to Cost of Treasury Stock) | 0 | | |
| | b. Unrestricted | -5,637,020 | | |
| | c. Total (54a plus 54b) | -5,637,020 | | |
| 55 | Undistributed Realized Earnings (53 plus 54c) | | -5,637,020 | |
| 56 | **Total** | | | **5,252,128** |
| 57 | Less:  Cost of Treasury Stock | | | 0 |
| 58 | **TOTAL CAPITAL** | | | **5,252,128** |
| 59 | **TOTAL LIABILITIES, REDEEMABLE SECURITIES AND CAPITAL (lines 44 plus 46 plus 58)** | | | **27,203,696** |

STATEMENT OF OPERATIONS REALIZED
FOR   6 MONTHS ENDED 12/31/2011
(Amounts rounded to nearest dollar)

OMB Approval No. 3245-0063
Expiration Date 10/31/2007

Name of Licensee: ELK ASSOCIATES FUNDING CORP.

License No.: 02/02-5377

## INVESTMENT INCOME

| | |
|---|---:|
| 1 Interest Income | 938,625 |
| 2 Dividend Income | 0 |
| 3 Income (Loss) from Investments in Partnerships/Flow-through Entities | 0 |
| 4 Income (Loss) from Investment in Section 301(d) Licensee | 0 |
| 5 Fees for Management Services | 0 |
| 6 Application, Closing and Other Fees | 0 |
| 7 Interest on Cash Equivalents and Invested Idle Funds | 0 |
| 8 Income from Assets Acquired in Liquidation of Loans and Investments (net of $   0 Expenses) | 0 |
| 9 Other Income | 3,639 |
| **10 GROSS INVESTMENT INCOME** | **942,264** |

## EXPENSES

| | |
|---|---:|
| 11 Interest Expense | 518,171 |
| 12 Commitment Fees | 0 |
| 13 Other Financial Costs | 0 |
| 14 Officers' Compensation and Benefits | 146,532 |
| 15 Employee Compensation and Benefits | 44,768 |
| 16 Investment Advisory and Management Services | 0 |
| 17 Directors' and Stockholders' Meetings | 44,051 |
| 18 Advertising and Promotion | 433 |
| 19 Appraisal and Investigation | 0 |
| 20 Communication | 4,379 |
| 21 Travel | 6,677 |
| 22 Cost of Space Occupied | 43,296 |
| 23 Depreciation and Amortization | 39,438 |
| 24 Insurance | 24,191 |
| 25 Payroll Taxes | 5,862 |
| 26 Other Taxes (excluding income taxes) | 0 |
| 27 Provision for Losses on Receivables (excluding loans receivable) | 0 |
| 28 Legal Fees | 266,626 |
| 29 Audit and Examination Fees | 171,315 |
| 30 Miscellaneous Expenses (attach schedule) | 97,089 |
| **31 TOTAL EXPENSES** | **1,412,828** |
| **32 NET INVESTMENT INCOME (LOSS) BEFORE INCOME TAXES** | **-470,564** |
| **33 NET REALIZED GAIN (LOSS) ON INVESTMENTS BEFORE INCOME TAXES (1)** | **-7,983** |
| **34 NET INCOME (LOSS) BEFORE INCOME TAXES AND NONRECURRING ITEMS** | **-478,547** |
| 35 Income Tax Expense (Benefit) | 150 |
| **36 NET INCOME (LOSS) BEFORE NONRECURRING ITEMS** | **-478,697** |
| 37 Extraordinary Item | 0 |
| 38 Cumulative Effect of Change in Accounting Principle | 0 |
| **39 NET INCOME (LOSS)** | **-478,697** |

(1) Provide supporting detail for all realized gains and losses on Page 14C of this form.

Misc Exp - Line 30 -

**ELK ASSOCIATES FUNDING CORPORATION &**
**SUBSIDIARIES**
**MISCELLANEOUS EXPENSES - LINE 30 PAGE 4C**
**FOR THE PERIOD ENDING December 31,2011**

| | |
|---|---:|
| INVESTOR RELATIONS | 111 |
| MEALS & ENTERTAINMENT | 3,863 |
| LOAN Expenses | 51,142 |
| TRANSFER AGENT | 12,064 |
| REPAIRS & MAINTENANCE | 51 |
| SERVICE FEES | 591 |
| COMPUTER | 10,324 |
| OFFICE | 4,639 |
| ASSOCIATION DUES | 394 |
| MESSENGER/OVERNIGHT FEES | 2,247 |
| PAYROLL SERVICE | 1,159 |
| Sundry | 10,504 |
| **TOTAL MISCELLANEOUS EXPENSES** | **97,089** |

| STATEMENT OF CASH FLOWS<br>FOR   6  MONTHS ENDED 12/31/2011<br>(page 1 of 2)<br>(Amounts rounded to nearest dollar) | OMB Approval No. 3245-0063<br>Expiration Date 10/31/2004 |
|---|---|
| Name of Licensee:   ELK ASSOCIATES FUNDING CORP. | License No.: 02/02-5377 |

**OPERATING ACTIVITIES:**

**Cash Inflows:**

| | | |
|---|---:|---:|
| 1  Interest Received from Portfolio Concerns | 893,308 | |
| 2  Dividends Received from Portfolio Concerns | 0 | |
| 3  Other Income Received from Portfolio Concerns | 0 | |
| 4  Management Services and Other Fees Received | 0 | |
| 5  Interest on Cash Equivalents and Invested Idle Funds | 0 | |
| 6  Cash Received from Assets Acquired in Liquidation | 0 | |
| 7  Other Operating Cash Receipts | 3,639 | |

**Cash Outflows:**

| | | |
|---|---:|---:|
| 8  Interest Paid | 518,171 | |
| 9  Commitment Fees and Other Financial Costs | 0 | |
| 10 Investment Advisory and Management Fees | 0 | |
| 11 Officers, Directors and Employees' Compensation and Benefits | 197,162 | |
| 12 Operating Expenditures (excluding compensation and benefits) | 744,844 | |
| 13 Income Taxes Paid | 150 | |
| 14 Other Operating Cash Disbursements | 0 | |
| **15 NET CASH PROVIDED BY (USED IN) OPERATING ACTIVITIES** | | **-563,380** |

**INVESTING ACTIVITIES:**

**Cash Inflows:**

| | | |
|---|---:|---:|
| 16 Loan Principal Payments Received from Portfolio Concerns | 2,733,351 | |
| 17 Returns of Capital Received from Portfolio Concerns | 0 | |
| 18 Net Proceeds from Disposition of Portfolio Securities | 0 | |
| 19 Liquidation of Idle Funds Investments | 0 | |
| 20 Other (Specify) | 0 | |

**Cash Outflows:**

| | | |
|---|---:|---:|
| 21 Purchase of Portfolio Securities | 0 | |
| 22 Loans to Portfolio Concerns | 1,735,848 | |
| 23 Idle Funds Investments | 0 | |
| 24 Other (Specify)    Due from Parent & Other | 2,176,862 | |
| **25 NET CASH PROVIDED BY (USED IN) INVESTING ACTIVITIES** | | **-1,179,359** |

**FINANCING ACTIVITIES:**

**Cash Inflows:**

| | | |
|---|---:|---:|
| 26 Proceeds from Issuance of SBA-Guaranteed Debentures | 0 | |
| 27 Proceeds from Non-SBA Borrowing | 0 | |
| 28 Proceeds from Sale of Stock or Other Capital Contribution | 0 | |
| 29 Other (Specify) | 0 | |

**Cash Outflows:**

| | | |
|---|---:|---:|
| 30 SBA Leverage Fees | 0 | |
| 31 Principal Payments on SBA-Guaranteed Debentures | 0 | |
| 32 Principal Payments on Non-SBA Borrowing | 0 | |
| 33 Redemption of 4% Preferred Stock | 0 | |
| 34 Redemption of 3% Preferred Stock | 0 | |
| 35 Redemption of Stock (excluding 3% and 4% Preferred) | 0 | |
| 36 Dividends Paid | 0 | |
| 37 Other (Specify) | 0 | |
| **38 NET CASH PROVIDED BY (USED IN) FINANCING ACTIVITIES** | | **0** |

| STATEMENT OF CASH FLOWS<br>FOR  6 MONTHS ENDED 12/31/2011<br>(page 2 of 2)<br>(Amount rounded to nearest dollar) | OMB Approval No. 3245-0063<br>Expiration Date  10/31/2007 |
|---|---|
| Name of Licensee:   ELK ASSOCIATES FUNDING CORP. | License No.:  02/02-5377 |

| | |
|---|---|
| 39 INCREASE (DECREASE) IN CASH AND CASH EQUIVALENTS | -1,742,739 |
| 40 CASH AND CASH EQUIVALENTS AT BEGINNING OF PERIOD | 4,136,439 |
| **41 CASH AND CASH EQUIVALENTS AT END OF PERIOD (line 14, page 2C)** | 2,393,700 |

**RECONCILIATION OF NET INCOME (LOSS) TO NET CASH PROVIDED**
**BY (USED IN) OPERATING ACTIVITIES:**

| | |
|---|---|
| 42 Net Income (Loss) (page 4C, line 39) | -478,697 |
| **Adjustments to Reconcile Net Income (Loss) to Net**<br>  **Cash Provided by (Used in) Operating Activities:** | |
| 43 Depreciation and Amortization | 39,438 |
| 44 Provision for Losses on Accounts Receivable | 0 |
| 45 Provision for Deferred Income Taxes | 0 |
| 46 (Income) Loss from Investments in Partnerships/Flow-through<br>  Entities (excluding income received in cash) | 0 |
| 47 Realized (Gain) Losses on Investments | 7,983 |
| 48 Other (Specify) | 0 |
| **Changes in Operating Assets and Liabilities**<br>  **Net of Noncash Items:** | |
| 49 (Increase) Decrease in Interest and Dividends Receivable | -45,317 |
| 50 (Increase) Decrease in Other Current Assets | -42,238 |
| 51 Increase (Decrease) in Accounts Payable | -44,549 |
| 52 Increase (Decrease) in Accrued Interest Payable | 0 |
| 53 Increase (Decrease) in Accrued Taxes Payable | 0 |
| 54 Increase (Decrease) in Dividends Payable | 0 |
| 55 Increase (Decrease) in Other Current Liabilities | 0 |
| 56 Other (Specify) | 0 |
| 57 Other (Specify) | 0 |

| | |
|---|---|
| **58  NET CASH PROVIDED BY (USED IN) OPERATING ACTIVITIES**<br>   **(total must agree with line 15, page 5C)** | -563,380 |

**Supplemental disclosure of non-cash financing and investing activities may be required.**
**See FASB Statement No. 95, paragraph 32.**

| STATEMENT OF STOCKHOLDERS' EQUITY AS OF 12/31/2011 (page 1 of 2) (Amount rounded to nearest dollar) | OMB Approval No. 3245-0063 Expiration Date 10/31/2007 |
|---|---|

| Name of Licensee:  ELK ASSOCIATES FUNDING CORP. | License No.:  02/02-5377 |
|---|---|

**PART I.   CAPITAL STOCK AND PAID-IN SURPLUS (excluding capital contributed by SBA)**

| | CAPITAL STOCK (page 3C, line 47) | PAID-IN SURPLUS (page 3C, line 48) | TOTAL |
|---|---|---|---|
| 1 BALANCE AT BEGINNING OF PERIOD | 17,456 | 10,611,699 | 10,629,155 |
| 2 ADDITIONS: | | | |
| a. Capital stock issued for cash | 0 | 0 | 0 |
| b. Capital stock issued for services rendered | 0 | 0 | 0 |
| c. Capital stock issued for contributed non-cash assets | 0 | 0 | 0 |
| d. Capitalization of Retained Earnings Available for Distribution | 0 | 0 | 0 |
| e. Gain on Sale of Treasury Stock | 0 | 0 | 0 |
| f. Other credits (specify) | 0 | 0 | 0 |
| 3 Total additions (sum of 2a through 2f) | 0 | 0 | 0 |
| 4 Subtotal (line 1 plus line 3) | 17,456 | 10,611,699 | 10,629,155 |
| 5 DEDUCTIONS: | | | |
| a. Retirement of capital stock | 0 | 0 | 0 |
| b. Distributions in partial liquidation | 0 | 0 | 0 |
| c. Loss on sale of Treasury Stock | 0 | 0 | 0 |
| d. Other debits (specify) | 0 | 0 | 0 |
| 6 Total deductions (sum of 5a through 5d) | 0 | 0 | 0 |
| 7 BALANCE AT END OF PERIOD (line 4 minus line 6)-- total must agree with lines 47 and 48, page 3C | 17,456 | 10,611,699 | 10,629,155 |

**PART II.   UNDISTRIBUTED REALIZED EARNINGS**

| | NON-CASH GAINS/ INCOME (1) | UNDISTRIBUTED NET REALIZED EARNINGS (2) | UNDISTRIBUTED REALIZED EARNINGS (1)+(2) |
|---|---|---|---|
| 1 BALANCE AT BEGINNING OF PERIOD | 0 | -5,158,323 | -5,158,323 |
| 2 ADDITIONS: | | | |
| a. Net investment income | 0 | -470,714 | -470,714 |
| b. Realized gain (loss) on investments | 0 | -7,983 | -7,983 |
| c. Gain on appreciation of securities distributed in kind | 0 | 0 | 0 |
| d. Other (specify) | 0 | 0 | 0 |
| 3 Total additions (sum of 2a through 2d) | 0 | -478,697 | -478,697 |
| 4 Subtotal (line 1 plus line 3) | 0 | -5,637,020 | -5,637,020 |
| 5 DEDUCTIONS: | | | |
| a. Dividends-Cash | | 0 | 0 |
| b. Dividends-Stock | | 0 | 0 |
| c. Dividends-in-kind (at fair value) | 0 | 0 | 0 |
| d. Capitalization of Retained Earnings Available for Distribution | | 0 | 0 |
| e. Other (specify) | 0 | 0 | 0 |
| 6 Total deductions (sum of 5a through 5e) | 0 | 0 | 0 |
| 7 Total before collection of non-cash gains/income(line 4 minus line 6) | 0 | -5,637,020 | -5,637,020 |
| 8 ADJUSTMENT: Collection of non-cash gains/income | 0 | 0 | |
| 9 BALANCE AT END OF PERIOD (line 7 plus line 8)-- totals must agree with lines 53, 54c and 55, page 3C | 0 | -5,637,020 | -5,637,020 |

SBA Form 468.1 (7/04) Previous editions obsolete

| | |
|---|---|
| STATEMENT OF STOCKHOLDERS' EQUITY<br>AS OF 12/31/2011<br>(page 2 of 2)<br>(Amount rounded to nearest dollar) | OMB Approval No. 3245-0063<br>Expiration Date  10/31/2007 |

| | |
|---|---|
| Name of Licensee:   ELK ASSOCIATES FUNDING CORP. | License No.:  02/02-5377 |

## PART III.    UNREALIZED GAIN (LOSS) ON SECURITIES HELD

1  **NET UNREALIZED APPRECIATION (DEPRECIATION)**
   **AT BEGINNING OF PERIOD**                                                                    -2,403,759

2  **INCREASE (DECREASE) IN UNREALIZED APPRECIATION**
   a. Portfolio securities:
      (i) Increases                                             0
      (ii) Decreases due to revaluation of securities        -893,509
      (iii) Decreases due to sale of securities                0
      (iv) Decreases due to write-off of securities            0             -893,509
   b. Assets acquired in liquidation of portfolio securities                      0
   c. Operating concerns acquired                                                 0
   d. Notes and other securities received                                         0
3  TOTAL (sum of 2a through 2d)                                                            -893,509

4  Subtotal (line 1 plus line 3)                                                          -3,297,268

5  **(INCREASE) DECREASE IN UNREALIZED DEPRECIATION**
   a. Portfolio securities
      (i) Increases                                             0
      (ii) Decreases due to revaluation of securities          0
      (iii) Decreases due to sale of securities/repayment of principal   0
      (iv) Decreases due to write-off of securities            0                  0
   b. Assets acquired in liquidation of portfolio securities                      0
   c. Operating concerns acquired                                                 0
   d. Notes and other securities received                                         0
6  TOTAL (sum of 5a through 5d)                                                                   0

7  **NET UNREALIZED APPRECIATION (DEPRECIATION) AT**
   **END OF PERIOD (line 4 plus line 6)**                                                  -3,297,268

8  LESS:  Estimated future tax expense (benefit) on
   net unrealized appreciation (depreciation)                                                     0

9  **UNREALIZED GAIN (LOSS) ON SECURITIES HELD --**
   **total must agree with line 52, page 3C**                                              -3,297,268

| I. RETAINED EARNINGS AVAILABLE FOR DISTRIBUTION II. REGULATORY AND LEVERAGEABLE CAPITAL AS OF 12/31/2011 (Amounts rounded to nearest dollar) | OMB Approval No. 3245-0063 Expiration Date 10/31/2007 |
|---|---|

| Name of Licensee:  ELK ASSOCIATES FUNDING CORP. | License No.:  02/02-5377 |
|---|---|

## PART I.    RETAINED EARNINGS AVAILABLE FOR DISTRIBUTION OR CAPITALIZATION

| | |
|---|---:|
| 1 Undistributed Net Realized Earnings--Unrestricted  (line 54b, page 3C) | -5,637,020 |
| 2 LESS:  Unrealized Depreciation (line 10, column 2, page 2C) | 3,297,268 |
| 3 ADD:  Cumulative Undeclared Dividends on 4% Redeemable<br>   Preferred Stock--Section 301(d) Licensees only (line 45b, page 3C) | 0 |
| **4 RETAINED EARNINGS AVAILABLE FOR DISTRIBUTION OR CAPITALIZATION** | **-8,934,288** |

## PART II.    SCHEDULE OF REGULATORY AND LEVERAGEABLE CAPITAL

| | | |
|---|---:|---:|
| 1 Capital Stock and Paid-in Surplus (sum of lines 47 and 48, page 3C) | | 10,629,155 |
| 2 ADD:  Unfunded binding commitments from Institutional Investors | | 0 |
| 3 LESS:  Regulatory Deductions | | |
|   a. Organization Expenses Not Approved by SBA (1) | 0 | |
|   b. Capital Stock Issued for Services | 0 | |
|   c. Capital Stock Issued for Non-cash Assets (unless approved by SBA<br>       for inclusion in Regulatory Capital or converted to cash) | 0 | |
|   d. Investment in 301(d) Licensee | 0 | |
|   e. Treasury Stock at Cost | 0 | |
|   f. Other (specify) | 0 | |
| 4 Total Regulatory Deductions (Sum of 3a through 3f) | | 0 |
| 5 Other Adjustments to Regulatory Capital | | 0 |
| **6 REGULATORY CAPITAL (sum of lines 1, 2, 4 and 5)** | | **10,629,155** |
| 7 LESS:  Unfunded binding commitments from Institutional Investors | | 0 |
| 8 LESS:  Non-cash assets included in Regulatory Capital, other than<br>       eligible investments in Small Concerns | | 0 |
| 9 LESS:  Other deductions (specify) | | 0 |
| **10 LEVERAGEABLE CAPITAL (sum of lines 6 through 9)** | | **10,629,155** |

## PART IIa.    ADJUSTMENTS TO REGULATORY CAPITAL FOR CAPITAL IMPAIRMENT AND OVERLINE PURPOSES

COMPLETE THIS PART IIa ONLY IF (1) LICENSEE HAS COMPLETED THE REPURCHASE OF ITS 3% PREFERRED STOCK FROM SBA, AND/OR (2) PURSUANT TO 13 CFR 107.740(c), LICENSEE WISHES TO INCREASE ITS OVERLINE LIMITATION BY THE AMOUNT OF ITS NET UNREALIZED GAINS ON MARKETABLE SECURITIES.  NOTE: Licensee must have positive Retained Earnings Available for Distribution at the time the increased overline limit is established.

| | |
|---|---:|
| **11 REGULATORY CAPITAL (Part II, line 6)** | **10,629,155** |
| 12 ADD:  Restricted Contributed Capital Surplus (line 49, page 3C) | 3,557,261 |
| **13 ADJUSTED REGULATORY CAPITAL FOR IMPAIRMENT PURPOSES (line 11 plus line 12)** | **14,186,416** |
| 14 ADD:  Net Unrealized Gains on Marketable Securities (2) | 0 |
| **15 ADJUSTED REGULATORY CAPITAL FOR OVERLINE PURPOSES (line 13 plus line 14)** | **14,186,416** |

(1)  Deduct only those organizational expenses which were not accepted as reasonable by SBA.

(2)  As defined in 13 CFR 107.740(c). Attach a schedule showing the following for each marketable security: name of Small Business Concern, Market in which traded, names of market makers for companies not listed on a stock exchange or NASDAQ, class of security, cost, valuation, and unrealized gain or loss in accordance with the requirements of Section 107.740(c).

SCHEDULE OF COMMITMENTS
AS OF 12/31/2011

OMB Approval No. 3245-0063
Expiration Date 10/31/2007

Name of Licensee:  ELK ASSOCIATES FUNDING CORP.

License No.:  02/02-5377

| Name of Small Business | Amount of Commitment | Date Made | Expiration Date | Loan, Debt, or Equity? | New investment or follow-on? | If follow-on, is existing investment a Portfolio Security, Asset Acquired, or Operating Concern Acquired? |
|---|---|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| No Information | | | | | | |

SBA Form 468.1 (7/04) Previous editions obsolete

OMB Approval No. 3245-0063
Expiration Date 10/31/2007

SCHEDULE OF GUARANTEES
AS OF 12/31/2011

Name of Licensee: ELK ASSOCIATES FUNDING CORP.

License No.: 02/02-5377

| Name of Small Business | Guarantee Amount | Date Made | Expiration Date | Name of Guaranteed Party | Is guarantee collateralized? If so, by what? | Description of underlying obligation of Small Business |
|---|---|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| No Information | | | | | | |

SBA Form 468.1 (7/04) Previous editions obsolete

Page 11C

SCHEDULE 1

SCHEDULE OF LOANS AND INVESTMENTS
AS OF 12/31/2011

OMB Approval No. 3245-0063
Expiration Date 10/31/2007

Name of Licensee: ELK ASSOCIATES FUNDING CORP.

License No.: 02/02-5377

| 1 | 2 | | | 3 | | | 4 | 5 | 6 | 7 | 8 | 9 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Description of Investment | See Note (1) Below | | | Security Type- See Note (2) Below | | | Cost at Beginning of Period | Additions/ (Deductions) | Description of Addition/Deduction | Cost at End of Period | Unrealized Appreciation (Depreciation) | Fair Value as Determined by Board of Directors |
| | (a) | (b) | (c) | (a) | (b) | (c) | | | | | | |
| **Affinity Group Inc.** | S | L | NP | | | | 1,226,456 | 2,207 | Loan Discount Amortization | 1,228,663 | -3,663 | 1,225,000 |
| Employer ID No.: 13-3377709 | LMI Investment: | | | | | | | | | | | |
| Invest Date: 11/30/2010   Invest Amt: 1,500,000 | | | | Interest: 11.50 | | | | | | | | |
| Mat. Date: 12/01/2016 | | | | | | | | | | | | |
| NAICS Code: 561599   Address: 2575 Vista Del Mar Ventura, CA 93001- | | | | | | | | | | | | |
| Other Comments: EAF084647 | | | | | | | | | | | | |
| **Alpha Media Group Inc.** | S | L | NP | | | | 2,304,012 | 171,955 | Loan Addition | 2,484,539 | -695,671 | 1,788,868 |
| Employer ID No.: 13-3927614   LMI Investment: EAF084508 | | | | | | | | 8,572 | Loan Discount Amortization | | | |
| Invest Date: 09/18/2007   Invest Amt: 2,000,000 | | | | Interest: 12.00 | | | | | | | | |
| Mat. Date: 01/01/2013 | | | | | | | | | | | | |
| NAICS Code: 511120   Address: 1040 Avenue of the Americas New York, NY 10018 | | | | | | | | | | | | |
| **Andy Fur Dry Cleaning, Inc.** | D P S | L | NP | | | | 12,103 | 0 | | 12,103 | -12,103 | 0 |
| Employer ID No.:   LMI Investment: EAF004078 | | | | | | | | | | | | |
| Invest Date: 11/11/2004   Invest Amt: 60,000 | | | | Interest: 14.50 | | | | | | | | |
| Mat. Date: 10/13/2009 | | | | | | | | | | | | |
| NAICS Code: 812320   Address: 224 West 29th Street New York, NY 10001- | | | | | | | | | | | | |
| **Artwork** | S | AA | NP | | | | 28,325 | 0 | | 28,325 | 0 | 28,325 |
| Employer ID No.:   LMI Investment: EAF000011 | | | | | | | | | | | | |
| Invest Date: 01/01/1992   Invest Amt: 38,250 | | | | | | | | | | | | |
| NAICS Code:   Address: 50 Jericho Quadrangle Jericho, NY 11753- | | | | | | | | | | | | |

SCHEDULE 1

SCHEDULE OF LOANS AND INVESTMENTS
AS OF 12/31/2011

OMB Approval No. 3245-0063
Expiration Date 10/31/2007

Name of Licensee: ELK ASSOCIATES FUNDING CORP.

License No.: 02/02-5377

| Description of Investment | See Note (1) Below | Security Type- See Note (2) Below | Cost at Beginning of Period | Additions/ (Deductions) | Description of Addition/Deduction | Cost at End of Period | Unrealized Appreciation (Depreciation) | Fair Value as Determined by Board of Directors |
|---|---|---|---|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 |
| | (a) (b) (c) | (a) (b) (c) | | | | | | |
| **Centerplate Inc.** | S L NP | | 967,150 | -2,500 | Loan Payments | 967,650 | 0 | 967,650 |
| Employer ID No.: 57-0969174 | LMI Investment: | | | 3,000 | Loan Discount Amortization | | | |
| Invest Date: 09/22/2010 | Invest Amt: 1,000,000 | Interest: 10.75 | | | | | | |
| Mat. Date: 09/16/2015 | | | | | | | | |
| NAICS Code: 722310 | Address: 2187 Atlantic Street Stamford, CT 06902- | | | | | | | |
| Other Comments: EAF084644 | | | | | | | | |
| **Charlie Brown's Acquisition Co** | D S L NP | | 2,356,682 | 0 | | 2,356,682 | -1,702,253 | 654,429 |
| Employer ID No.: 13-3948367 | LMI Investment: EAF084466 | | | | | | | |
| Invest Date: 06/28/2007 | Invest Amt: 2,000,000 | Interest: 10.25 | | | | | | |
| Mat. Date: 11/14/2014 | | | | | | | | |
| NAICS Code: 722110 | Address: 1450 Route 22 West Mountainside, NJ 07092 | | | | | | | |
| **Claude Angrand #671** | S L NP | | 144,343 | -144,343 | Loan Payoff | 0 | 0 | 0 |
| Employer ID No.: | LMI Investment: EAF064536 | | | | | | | |
| Invest Date: 11/29/2007 | Invest Amt: 160,000 | Interest: 12.00 | | | | | | |
| Mat. Date: 11/01/2010 | | | | | | | | |
| NAICS Code: 485310 | Address: 1738 NW 108 Street Miami, FL 33167 | | | | | | | |
| **Conklin Svcs.&Construction Inc** | D S D NP | | 1,648,181 | 0 | | 1,648,181 | -198,181 | 1,450,000 |
| Employer ID No.: | LMI Investment: EAF024495 | | | | | | | |
| Invest Date: 08/17/2007 | Invest Amt: 263,197 | | | | | | | |
| NAICS Code: 236220 | Address: 94 Stewart Avenue Newburgh, NY 12550- | | | | | | | |

| SCHEDULE 1 | | | SCHEDULE OF LOANS AND INVESTMENTS AS OF 12/31/2011 | | | | | | OMB Approval No. 3245-0063 Expiration Date 10/31/2007 |

Name of Licensee: ELK ASSOCIATES FUNDING CORP.

License No.: 02/02-5377

| 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 |
|---|---|---|---|---|---|---|---|---|
| Description of Investment | See Note (1) Below (a) (b) (c) | Security Type– See Note (2) Below (a) (b) (c) | Cost at Beginning of Period | Additions/ (Deductions) | Description of Addition/Deduction | Cost at End of Period | Unrealized Appreciation (Depreciation) | Fair Value as Determined by Board of Directors |
| E&Y General Construction Co. Employer ID No.: Invest. Date:  08/26/2005 Mat. Date:  08/01/2008 NAICS Code:  236210 | D      LMI Investment: Invest Amt:  900,000 Address:  5201 2nd Avenue Brooklyn, NY 11232 | S    L    NP EAF024247 Interest:  10.50 | 870,791 | 0 | | 870,791 | 0 | 870,791 |
| Education Affiliates Inc. (BMO) Employer ID No.:  20-1589793 Invest. Date:  12/18/2009 Mat. Date:  01/01/2015 NAICS Code:  611310 Other Comments:  EAF084636 | LMI Investment: Invest Amt:  500,000 Address:  5024A Campbell Blvd. Baltimore, MD 21236- | S    L    NP Interest:  8.00 | 407,960 | -14,539 993 | Loan payments Loan Discount Amortization | 394,414 | -26,071 | 368,343 |
| Education Affiliates Inc. (GE) Employer ID No.:  20-1589793 Invest. Date:  12/18/2009 Mat. Date:  01/01/2015 NAICS Code:  611310 Other Comments:  EAF084634 | LMI Investment: Invest Amt:  500,000 Address:  5024A Campbell Blvd Baltimore, MD 21236- | S    L    NP Interest:  8.00 | 407,962 | -14,538 993 | Loan Payments Loan Discount Amortization | 394,417 | -26,072 | 368,345 |
| Eragen Bioscience Employer ID No.:  59-3564685 Invest. Date:  03/06/2000 NAICS Code:  541711 | LMI Investment: Invest Amt:  25,500 Address:  918 Deming Way Madison, WI 53717-1944 | S    E    NP EAF000008 | 25,500 | -850 -24,650 | Proceeds of Sale Loss on Sale | 0 | 0 | 0 |

SBA Form 468.1 (7/04) Previous editions obsolete

Page 12C

**SCHEDULE 1**

SCHEDULE OF LOANS AND INVESTMENTS
AS OF 12/31/2011

OMB Approval No. 3245-0063
Expiration Date 10/31/2007

Name of Licensee: ELK ASSOCIATES FUNDING CORP.

License No.: 02/02-5377

| 1 | 2 | 3 | | | 4 | 5 | 6 | 7 | 8 | 9 |
|---|---|---|---|---|---|---|---|---|---|---|
| Description of Investment | See Note (1) Below | Security Type- See Note (2) Below | | | Cost at Beginning of Period | Additions/ (Deductions) | Description of Addition/Deduction | Cost at End of Period | Unrealized Appreciation (Depreciation) | Fair Value as Determined by Board of Directors |
| | (a) (b) (c) | (a) (b) (c) | | | | | | | | |
| **Fairway Group Acquisition Company** | S | L | NP | | 1,485,635 | -11,248 | Loan Payments | 1,475,637 | 0 | 1,475,637 |
| Employer ID No.: 20-5942788 | LMI Investment: | | | | | 1,250 | Loan Discount Amortization | | | |
| Invest Date: 03/15/2011 | Invest Amt: 1,500,000 | Interest: 7.50 | | | | | | | | |
| Mat. Date: 03/03/2017 | | | | | | | | | | |
| NAICS Code: 445110     Address: 2284 12th Avenue New York, NY 10027- | | | | | | | | | | |
| Other Comments: EAF084649 | | | | | | | | | | |
| **Fusion Telecommunications Int** | S | E | NP | | 367,027 | 0 | | 367,027 | -361,448 | 5,579 |
| Employer ID No.: 58-2342021 | LMI Investment: 75,000 | EAF000010 | | | | | | | | |
| Invest Date: 02/26/1999 | Invest Amt: 75,000 | | | | | | | | | |
| NAICS Code: 517919     Address: 420 Lexington Avenue New York, NY 10170- | | | | | | | | | | |
| **Geronimo ATM Fund LLC** | D | L | NP | | 123,282 | 0 | | 123,282 | -123,282 | 0 |
| Employer ID No.: | LMI Investment: 150,000 | EAF003987 | | | | | | | | |
| Invest Date: 03/26/2004 | Invest Amt: 150,000 | Interest: 12.00 | | | | | | | | |
| Mat. Date: 01/01/2010 | | | | | | | | | | |
| NAICS Code: 238290     Address: 7332 East Earll Drive Scottsdale, AZ 85251 | | | | | | | | | | |
| **Golden Triangle Enterprises LLC** | P | S | L | NP | 218,824 | -21,180 | Loan Payments | 197,644 | 0 | 197,644 |
| Employer ID No.: | LMI Investment: 425,000 | EAF024366 | | | | | | | | |
| Invest Date: 12/05/2006 | Invest Amt: 425,000 | Interest: 4.7355 | | | | | | | | |
| Mat. Date: 03/01/2010 | | | | | | | | | | |
| NAICS Code: 722211     Address: 16350 E. Valley Blvd. La Puente, CA 91744 | | | | | | | | | | |

SBA Form 468.1 (7/04) Previous editions obsolete

Page 12C

SCHEDULE 1

SCHEDULE OF LOANS AND INVESTMENTS
AS OF 12/31/2011

OMB Approval No. 3245-0063
Expiration Date 10/31/2007

Name of Licensee:  ELK ASSOCIATES FUNDING CORP.

License No:  02/02-5377

| 1 Description of Investment | 2 See Note (1) Below (a) (b) (c) | 3 Security Type-See Note (2) Below (a) (b) (c) | 4 Cost at Beginning of Period | 5 Additions/ (Deductions) | 6 Description of Addition/Deduction | 7 Cost at End of Period | 8 Unrealized Appreciation (Depreciation) | 9 Fair Value as Determined by Board of Directors |
|---|---|---|---|---|---|---|---|---|
| **Greaves-Peters Laundry Systems**<br>Employer ID No.:<br>Invest Date: 08/06/2008<br>Mat. Date: 09/01/2013<br>NAICS Code: 327216<br>LMI Investment:<br>Invest Amt: 400,000<br>Address: 1519 Avenue J Brooklyn, NY 11230- | D   S   (c) | L   NP<br>EAF004616<br>Interest: 10.90 | 20,471 | 0 | | 20,471 | 0 | 20,471 |
| **Hudson Products Holdings Inc.**<br>Employer ID No.: 20-5908912<br>Invest Date: 09/22/2008<br>Mat. Date: 10/01/2015<br>NAICS Code: 332410<br>LMI Investment:<br>Invest Amt: 1,500,000<br>Address: 1307 Soldiers Field Drive Sugarland, TX 77479- | S | L   NP<br>EAF084621<br>Interest: 8.50 | 1,242,511 | -6,528<br>3,214 | Loan Payments<br>Loan Discount Amortization | 1,239,197 | -64,456 | 1,174,741 |
| **Impact Confections Inc.**<br>Employer ID No.: 85-0308777<br>Invest Date: 09/30/2010<br>Mat. Date: 07/15/2015<br>NAICS Code: 311340<br>Other Comments:  EAF084645<br>LMI Investment:<br>Invest Amt: 1,500,000<br>Address: 888 Garden of the Gods Road Colorado Springs, CO 80907- | S | L   NP<br>Interest: 17.00 | 1,538,367 | 39,348 | Loan Addition | 1,577,715 | 0 | 1,577,715 |
| **Miramax Film NY LLC**<br>Employer ID No.: 27-3102725<br>Invest Date: 12/30/2010<br>Mat. Date: 06/01/2016<br>NAICS Code: 512110<br>Other Comments:  EAF084648<br>LMI Investment:<br>Invest Amt: 1,000,000<br>Address: 2450 Broadway, 6th Floor Santa Monica, CA 90404- | S | L   NP<br>Interest: 7.25 | 874,126 | -53,846<br>-838,462<br>18,182 | Loan Payments<br>Loan Payoff<br>Loan Discount Amortization | 0 | 0 | 0 |

SBA Form 468.1 (7/04) Previous editions obsolete

Page 12C

SCHEDULE 1

SCHEDULE OF LOANS AND INVESTMENTS
AS OF 12/31/2011

OMB Approval No. 3245-0063
Expiration Date 10/31/2007

Name of Licensee:  ELK ASSOCIATES FUNDING CORP.

License No.:  02/02-5377

| Description of Investment | 2 See Note (1) Below (a) (b) (c) | 3 Security Type- See Note (2) Below (a) (b) (c) | 4 Cost at Beginning of Period | 5 Additions/ (Deductions) | 6 Description of Addition/Deduction | 7 Cost at End of Period | 8 Unrealized Appreciation (Depreciation) | 9 Fair Value as Determined by Board of Directors |
|---|---|---|---|---|---|---|---|---|
| Miramax Film NY, LLC | S | L  NP  BC | 0 | 1,500,000 | Loan Proceeds | 1,462,322 | -10,940 | 1,451,382 |
| Employer ID No.:  27-3102725 | LMI Investment: | | | -37,923 | Loan Discount | | | |
| Invest Date:  12/09/2011   Invest Amt:  1,500,000 | | Interest:  12.00 | | 245 | Loan Discount Amortization | | | |
| Mat. Date:  10/20/2021 | | | | | | | | |
| NAICS Code:  512110     Address:  1601 Cloverfield Blvd. Santa Monica, CA 90404 | | | | | | | | |
| Other Comments:  EAF084650 | | | | | | | | |
| Mountain View Bar & Grill Inc. | D        S | L  NP | 406,067 | 0 | | 406,067 | 0 | 406,067 |
| Employer ID No.: | LMI Investment:  EAF024581 | | | | | | | |
| Invest Date:  03/26/2008   Invest Amt:  412,500 | | Interest:  12.00 | | | | | | |
| Mat. Date:  07/01/2010 | | | | | | | | |
| NAICS Code:  722110     Address:  141 Schooler's Mountain Road Long Valley, NJ 07853 | | | | | | | | |
| Patron Operating Co. LLC | S | L  NP | 250,000 | -250,000 | Loan Payoff | 0 | 0 | 0 |
| Employer ID No.:  13-3857372 | LMI Investment: | | | | | | | |
| Invest Date:  06/08/2010   Invest Amt:  250,000 | | Interest:  10.00 | | | | | | |
| Mat. Date:  01/01/2012 | | | | | | | | |
| NAICS Code:  722110     Address:  169 East 46th Street New York, NY 10017- | | | | | | | | |
| Other Comments:  EAF004640 | | | | | | | | |
| PPCP Inc. | D        S | L  NP | 14,272 | 0 | | 14,272 | -14,272 | 0 |
| Employer ID No.: | LMI Investment:  EAF003810 | | | | | | | |
| Invest Date:  05/01/2002   Invest Amt:  15,000 | | Interest:  8.00 | | | | | | |
| Mat. Date:  03/01/2009 | | | | | | | | |
| NAICS Code:  541511     Address:  4 Court Square Long Island City, NY 11101 | | | | | | | | |

SBA Form 468.1 (7/04) Previous editions obsolete

Page 12C

**SCHEDULE 1**

**SCHEDULE OF LOANS AND INVESTMENTS AS OF 12/31/2011**

OMB Approval No. 3245-0063
Expiration Date 10/31/2007

Name of Licensee: ELK ASSOCIATES FUNDING CORP.

License No.: 02/02-5377

| Description of Investment | See Note (1) Below (a) (b) (c) | Security Type- See Note (2) Below (a) (b) (c) | Cost at Beginning of Period | Additions/ (Deductions) | Description of Addition/Deduction | Cost at End of Period | Unrealized Appreciation (Depreciation) | Fair Value as Determined by Board of Directors |
|---|---|---|---|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 |
| **PPCP Inc.** Employer ID No.: Invest Date: 05/08/2003 Mat. Date: 04/01/2009 NAICS Code: 541511 | D  S LMI Investment: EAF003809 Invest Amt: 20,000 Address: 4 Court Square Long Island City, NY 11101 | L  NP Interest: 8.00 | 16,454 | 0 | | 16,454 | -16,454 | 0 |
| **PPCP Inc.** Employer ID No.: Invest Date: 11/19/2004 Mat. Date: 03/01/2009 NAICS Code: 541511 | D  S LMI Investment: EAF004081 Invest Amt: 6,500 Address: 10 Lewis Parkway Yonkers, NY 10705 | L  NP Interest: 8.00 | 5,965 | 0 | | 5,965 | -5,965 | 0 |
| **Receivables reclass as Loan** Employer ID No.: Invest Date: Invest Amt: 0 NAICS Code: | AA LMI Investment: EAF000026 Address: 50 Jericho Quadrangle Jericho, NY 11753- | | 116,268 | -612 | Loan Payments | 115,656 | -21,054 | 94,602 |
| **Resco Products Inc.** Employer ID No.: 23-1279448 Invest Date: 06/28/2007 Mat. Date: 08/01/2013 NAICS Code: 424690 | D  S LMI Investment: EAF084475 Invest Amt: 2,000,000 Address: Penn Center West, Two Pittsburgh, PA 15276 | L  NP Interest: 8.50 | 1,301,945 | -1,301,945 | Loan Payoff | 0 | 0 | 0 |

SCHEDULE 1

SCHEDULE OF LOANS AND INVESTMENTS AS OF 12/31/2011

OMB Approval No. 3245-0063
Expiration Date 10/31/2007

Name of Licensee: ELK ASSOCIATES FUNDING CORP.

License No.: 02/02-5377

| 1 Description of Investment | 2 See Note (1) Below (a)(b)(c) | 3 Security Type - See Note (2) Below (a)(b)(c) | 4 Cost at Beginning of Period | 5 Additions/ (Deductions) | 6 Description of Addition/Deduction | 7 Cost at End of Period | 8 Unrealized Appreciation (Depreciation) | 9 Fair Value as Determined by Board of Directors |
|---|---|---|---|---|---|---|---|---|
| **Sealmax Inc.** Employer ID No.: Invest Date: NAICS Code: | LMI Investment: Invest Amt: 0 Address: 130-41 91st Avenue Queens, NY 11418- | AA NP Interest: | 872,222 | 0 | | 872,222 | 0 | 872,222 |
| **Shearer's Foods Inc.** Employer ID No.: 34-1319359 Invest Date: 04/01/2010 Mat. Date: 03/31/2016 NAICS Code: 311919 Other Comments: EAF084638 | LMI Investment: Invest Amt: 1,000,000 Address: 692 Wabash Avenue North Brewster, OH 44613- | S L NP Interest: 15.50 | 1,015,960 | 19,547 2,083 | Loan Additions Loan Discount Amortization | 1,037,590 | -3,398 | 1,034,192 |
| **Soundview Broadcasting LLC** Employer ID No.: 20-0806825 Invest Date: 08/22/2006 Mat. Date: 09/01/2011 NAICS Code: 515120 | LMI Investment: Invest Amt: 2,000,000 Address: 11 Soundview Drive Bayville, NY 11709 | S L NP EAF024342 Interest: 6.00 | 1,820,868 | -32,064 | Loan Payments | 1,788,804 | 0 | 1,788,804 |
| **Syncsort Incorporated** Employer ID No.: 22-1854351 Invest Date: 07/13/2010 Mat. Date: 03/01/2015 NAICS Code: 511210 Other Comments: EAF084641 | LMI Investment: Invest Amt: 1,000,000 Address: 50 Tice Boulevard Woodcliff Lake, NJ 07677- | S L NP Interest: 7.50 | 894,298 | -23,949 2,182 | Loan Payments Loan Discount Amortization | 872,531 | 0 | 872,531 |

SCHEDULE 1

SCHEDULE OF LOANS AND INVESTMENTS
AS OF 12/31/2011

OMB Approval No. 3245-0063
Expiration Date 10/31/2007

Name of Licensee: ELK ASSOCIATES FUNDING CORP.

License No.: 02/02-5377

| Description of Investment | See Note (1) Below | | | Security Type-See Note (2) Below | | | 4 Cost at Beginning of Period | 5 Additions/ (Deductions) | 6 Description of Addition/Deduction | 7 Cost at End of Period | 8 Unrealized Appreciation (Depreciation) | 9 Fair Value as Determined by Board of Directors |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 2 | | | 3 | | | | | | | | |
| | (a) | (b) | (c) | (a) | (b) | (c) | | | | | | |
| **Treasury Stock Acquired** | | | S | AA | NP | | 70,000 | 0 | | 70,000 | 0 | 70,000 |
| Employer ID No.: | LMI Investment: EAF000005 | | | | | | | | | | | |
| Invest Date: 05/30/2001 | Invest Amt: 70,000 | | | | | | | | | | | |
| NAICS Code: | Address: 50 Jericho Quadrangle Jericho, NY 11753- | | | | | | | | | | | |
| **Vivas & Associates, Inc.** | D | | S | L | NP | | 11,985 | 0 | | 11,985 | -11,985 | 0 |
| Employer ID No.: | LMI Investment: EAF004080 | | | | | | | | | | | |
| Invest Date: 11/15/2004 | Invest Amt: 50,000 | | Interest: 9.00 | | | | | | | | | |
| Mat. Date: 12/13/2009 | | | | | | | | | | | | |
| NAICS Code: 812113 | Address: 766 Third Avenue New York, NY 10017 | | | | | | | | | | | |
| **W.L.E.J. Inc.** | | | S | L | NP | | 7,657 | -80 | Loan Payments | 7,577 | 0 | 7,577 |
| Employer ID No.: 80-0260955 | LMI Investment: EAF044632 | | | | | | | | | | | |
| Invest Date: 01/14/2009 | Invest Amt: 8,000 | | Interest: 8.25 | | | | | | | | | |
| Mat. Date: 02/01/2031 | | | | | | | | | | | | |
| NAICS Code: 485310 | Address: 15 William Street Medford, MA 02155- | | | | | | | | | | | |

(1) (a): Put a "D" in this column if the Financing has become delinquent as to interest and/or principal.
    (b): Put a "P" in this column if the Financing is a participation or a joint financing with an Associate as defined in the instructions for Schedule5.
    (c): Put an "S" in this column if this is a Financing of a "Smaller Concern" in accordance with section 107.710(a).
(2) (a): Indicate the category of Loans and Investments in which the financing is included on page 2P: L=Loans; D=Debt; E=Equity; R=Receivables from
    sale of assets acquired; AA=Assets acquired; OC=Operating concerns acquired; NS=Notes and other securities received
    (b): P=Publicly Traded and Marketable (as defined in section 107.50); PR=Public-Restricted; PE=Public-Encumbered; NP=Nonpublic
    (c): EC=Equity Capital Investment (as defined in section 107.50), V=Venture Capital Financing (as defined in section 107.1160(i))

SCHEDULE 1 A/B      1 A. SUMMARY OF LOANS AND INVESTMENTS
     1 B. SMALLER ENTERPRISE FINANCINGS

OMB Approval No. 3245-0063
Expiration Date 10/31/2007

Name of Licensee: ELK ASSOCIATES FUNDING CORP.

License No.: 02/02-5377

### 1 A. SUMMARY OF LOANS AND INVESTMENTS

| Investment Category | 2<br>Cost at<br>Beginning<br>of Period | 3<br>Additions/<br>(Deductions) | 4<br>Cost at<br>End of<br>Period | 5<br>Unrealized<br>Appreciation<br>(Depreciation) | 6<br>Fair Value as<br>Determined by<br>Board of Directors |
|---|---|---|---|---|---|
| TOTAL LOANS (line1, page 2C) | 19,946,146 | -979,374 | 18,966,772 | -2,716,585 | 16,250,187 |
| TOTAL DEBT SECURITIES (line 2, page 2C) | 1,648,181 | 0 | 1,648,181 | -198,181 | 1,450,000 |
| TOTAL EQUITY SECURITIES (line 3, page 2C) | 392,527 | -25,500 | 367,027 | -361,448 | 5,579 |
| **TOTAL PORTFOLIO SECURITIES (line 4, page 2C)** | 21,986,854 | -1,004,874 | 20,981,980 | -3,276,214 | 17,705,766 |
| TOTAL ASSETS ACQUIRED (line 7, page 2C) | 1,086,815 | -612 | 1,086,203 | -21,054 | 1,065,149 |
| TOTAL OPERATING CONCERNS ACQUIRED (line 8, page 2C) | 0 | 0 | 0 | 0 | 0 |
| TOTAL NOTES AND OTHER SECS. RECEIVED (line 9, page 2C) | 0 | 0 | 0 | 0 | 0 |
| **TOTAL LOANS AND INVESTMENTS (line 10, page 2C)** | 23,073,669 | -1,005,486 | 22,068,183 | -3,297,268 | 18,770,915 |

### 1 B. SMALLER ENTERPRISE FINANCINGS

1 Cumulative dollar amount of Smaller Enterprise Financings extended between April 25, 1994 and close of reporting fiscal year.      120,195,531

2 Cumulative dollar amount of all Financings extended between April 25, 1994 and close of reporting fiscal year.      121,813,517

3 Percentage of total Financings extended to Smaller Enterprises (line 1 divided by line 2)      98.7%

SEE 13 CFR 107.710 FOR PERCENTAGE OF TOTAL FINANCINGS WHICH MUST BE IN SMALLER ENTERPRISES.

SCHEDULE 2

OMB Approval No. 3245-0063
Expiration Date 10/31/2007

SCHEDULE OF REALIZED GAINS AND
LOSSES ON LOANS AND INVESTMENTS
FOR 6 MONTHS ENDED 12/31/2011

Name of Licensee: ELK ASSOCIATES FUNDING CORP.

License No. 02/02-5377

| 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 |
|---|---|---|---|---|---|---|---|---|
| Name of Small Business | Security Type (1) | Transaction Type (2) | Net Sales Price | Cost | Net Realized Gain (Loss) | | | Name and Address of Purchaser (applies to sales and exchanges) |
| | | | | | Total | Cash | Non-cash (gains only) | |
| Eragen Bioscience | E | S | 850 | 25,500 | -24,650 | -24,650 | 0 | |
| Miramax Film NY LLC | L | S | 838,461 | 821,794 | 16,667 | 16,667 | 0 | |
| TOTAL | | | $839,311 | $847,294 | ($7,983) | ($7,983) | $0 | |

(1) Security Type: L = Loans, D = Debt, E = Equity, AA = Assets Acquired, OC = Operating concerns acquired, NS = Notes and Other Securities Received
(2) Transaction Type: S = Sale, E = Exchange, C = Charge-off

| SCHEDULE 4 | | | | | | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |

SCHEDULE OF DELINQUENT LOANS AND INVESTMENTS
AS OF 12/31/2011

OMB Approval No. 3245-0063
Expiration Date 10/31/2007

Name of Licensee:  ELK ASSOCIATES FUNDING CORP.

License No.   02/02-5377

| 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | | Delinquent Principal: | | Delinquent Interest: | | Date of Last Payment: | | Amount of Last Payment: | | Fair Market Value of Collateral |
| Name of Small Business | Outstanding Principal Balance | Amount Past Due | Days Past Due | Amount Past Due | Days Past Due | Principal | Interest | Principal | Interest | |
| Andy Fur Dry Cleaning, Inc. | 12,103 | 12,103 | 1,060 | 795 | 1,060 | 01/21/2009 | 01/21/2009 | 1,226 | 149 | 0 |
| Charlie Brown's Acquisition Co | 2,356,682 | 0 | 0 | 146,679 | 243 | | 10/01/2010 | 0 | 1,146 | 654,429 |
| Conklin Svcs.&Construction Inc | 1,648,181 | 1,648,181 | 545 | 138,500 | 453 | 12/31/2009 | 09/20/2011 | 60,160 | 8,410 | 1,450,000 |
| E&Y General Construction Co. | 870,791 | 870,791 | 483 | 112,649 | 1,091 | 08/15/2008 | 09/22/2009 | 5,000 | 6,000 | 870,791 |
| Geronimo ATM Fund LLC | 123,282 | 123,282 | 2,370 | 26,910 | 2,520 | 09/14/2010 | 01/14/2005 | 23,540 | 1,475 | 0 |
| Greaves-Peters Laundry Systems | 20,471 | 20,471 | 483 | 2,598 | 361 | 12/30/2010 | 12/30/2010 | 244,951 | 13,576 | 20,471 |
| Mountain View Bar & Grill Inc. | 406,067 | 406,067 | 1,001 | 61,388 | 1,183 | 10/30/2009 | 10/30/2009 | 1,433 | 247 | 406,067 |
| PPCP Inc. | 14,272 | 14,272 | 2,278 | 1,206 | 2,278 | 03/23/2007 | 02/28/2010 | 86 | 80 | 0 |
| PPCP Inc. | 16,454 | 16,454 | 1,913 | 0 | 0 | 08/04/2009 | 05/28/2009 | 45 | 3 | 0 |
| PPCP, Inc. | 5,965 | 5,965 | 1,305 | 728 | 1,305 | 04/03/2007 | 04/03/2007 | 233 | 117 | 0 |
| Vivas & Associates, Inc. | 11,985 | 11,985 | 757 | 0 | 0 | 08/12/2009 | 04/10/2006 | 200 | 296 | 0 |
| TOTAL | $5,486,253 | $3,129,571 | | $491,453 | | | | $336,874 | $31,499 | $3,401,758 |

SBA Form 468.1 (7/04)  Previous editions obsolete

## QUARTERLY CERTIFICATIONS

OMB Approval No. 3245-0063
Expiration Date 10/31/2007

Name of Licensee: ELK ASSOCIATES FUNDING CORP.                           License No. 02/02-5377

### MANAGEMENT CERTIFICATION

I, Richard Feinstein                          , the Chief Financial Offier of ELK ASSOCIATES FUNDING CORP.

(Licensee), do hereby certify that the financial report for the 6 months ended 12/31/2011 submitted by

ELK ASSOCIATES FUNDING CORP.              (Licensee) to the Small Business Administration on SBA Form 468 is true

and correct in all aspects. The statements and schedules listed below have been omitted from the submission.

> STATEMENTS AND SCHEDULES OMITTED:

Date: 02/15/2012                                      By: _____

Name: Richard Feinstein
Title: Chief Financial Officer

### SECRETARY'S CERTIFICATION

I, Silvia Mullens                                  the duly elected, qualified and acting Secretary of
ELK ASSOCIATES FUNDING CORP.              (Licensee), do hereby certify as follows:

1. ELK ASSOCIATES FUNDING CORP.              (Licensee) is in good standing under the laws of the State

of New York

2. The minutes of the meeting of the Board of Directors of ELK ASSOCIATES FUNDING CORP.              (Licensee) on

02/15/2012 , document that the Board at such meeting, reviewed and approved the Financial Report of such company

for the 6 months ended 12/31/2011

Date: 02/15/2012                                      By: _____

Name: Silvia Mullens
Title: Secretary

Title 18, Sections 1001 and 1006 of the U.S. Code subjects to punishment by fine and/or imprisonment any person who makes any oral or written statement, entry or representation to SBA, knowing it to be false, or willfully conceals a material fact, in a matter within SBA's jurisdiction or who with intent to defraud shares, directly or indirectly, any benefits derived from any act of an SBIC. Title 15, Section 645(a) subjects to punishment by fine and/or imprisonment any person making a false statement or willfully overvaluing any security, for the purpose of obtaining for himself or another any loan, extension thereof, or the acceptance, release or substitution of security therefor, or for the purpose of influencing in any way the action of SBA, or for the purpose of obtaining money or anything of value.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing document with the Clerk of the Court for the United States District Court for the Eastern District of New York by using the CM/ECF system on October 6, 2017.  The system will send notice of service to all parties who are registered CM/ECF users.


Dated:  October 6, 2017                    <u>/s/ Justin V. Shur</u>